**KIMBELL D. GOURLEY, ISB# 3578**
JONES♦WILLIAMS♦FUHRMAN♦GOURLEY, P.A.
The 9th and Idaho Center
225 N. 9th Street, Suite 820
P.O. Box 1097
Boise, ID 83701
Telephone (208)331-1170
Facsimile (208)331-1529
kgourley@idalawcom

Nikolaus F. Schandlbauer, DC Bar No. 434314 (pro hac vice pending)
ADAMS AND REESE LLP
20 F Street NW, Suite 500
Washington, DC 20001
Telephone: (202) 478-1221
Nick.schandlbauer@arlaw.com

Ron C. Bingham, II, Ga Bar No. 057240 (pro hac vice pending)
ADAMS AND REESE LLP
3424 Peachtree Road NE, Suite 1600
Atlanta, GA 30326
Telephone: (470) 427-3701
Ron.Bingham@arlaw.com

Attorneys for Metropolitan Life Insurance Company
and MetLife Real Estate Lending LLC

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| In the matter of:<br><br>MILLENKAMP CALTTLE INC.,<br><br>Debtor. | Case No.: 24-40158-NGH<br><br>**Chapter 11** |

**DECLARATION OF JEREMY RASMUSSEN**

I, Jeremy Rasmussen, declare under the penalty of perjury:

1. I am at least eighteen (18) years of age and am competent to testify regarding the matters set forth herein. The contents of this declaration are based on my personal knowledge and

DECLARATION OF JEREMY RASMUSSEN – 1

belief and, in certain cases, my review of business records described herein.

2.   I am a director in the Agricultural Strategies Group of MetLife Investment Management, LLC ("**MIM**"), which is an affiliate of MetLife Real Estate Lending LLC ("**MLRE**") and Metropolitan Life Insurance Company ("**MLIC**", and together with MLRE, "**MetLife**"), which are secured creditors of the Debtor and other related Millenkamp entities and individuals (collectively, the "**Debtors**"). MIM is the investment manager for MetLife. MetLife is a senior secured creditor of the Debtors with respect to certain collateral, pursuant to certain loan agreements, security agreements, mortgages, and intercreditor agreements described below. I am one of the directors of MIM, acting on behalf of MetLife and responsible for the account of the Debtors.

3.   I make this declaration in support of MetLife's participation in this case and affiliated cases as a senior secured lender to the affiliated debtors and a party in interest.

4.   MetLife maintains records in the ordinary course of its business, including loan documents and related correspondence and records (collectively, the "**Loan Documentation**"). MetLife employees have a business duty to accurately preserve the Loan Documentation. The Loan Documentation is generally preserved at or near the time of each event recorded, by someone with personal knowledge of the events, or from information transmitted by someone with personal knowledge of the events, or from information transmitted by someone with personal knowledge of each event and a business duty to set forth information in a report or record. Based on my job responsibilities at MetLife, I am generally and specifically familiar with the Loan Documentation related to MetLife's loans to the Debtors (the "**Millenkamp Loan Documentation**"). The Millenkamp Loan Documentation referenced in this Declaration was maintained in the ordinary course of MetLife's business.

DECLARATION OF JEREMY RASMUSSEN – 2

5.  MetLife is the owner and holder of certain commercial real estate loans (collectively, the "**MetLife Loans**") made by MetLife to William John Millenkamp, Susan Jo Millenkamp, East Valley Cattle, LLC, Idaho Jersey Girls LLC, Idaho Jersey Girls Jerome Dairy LLC, Goose Ranch LLC, Millenkamp Properties, L.L.C., Millenkamp Cattle, Inc., Millenkamp Family LLC, and Millenkamp Properties II, LLC (collectively, the "**MetLife Borrowers**").

6.  As of April 2, 2024, the outstanding principal and interest amount of the MetLife Loans is approximately $180,473,929.72 plus fees, costs, and other charges (the "**MetLife Debt**").

7.  The MetLife Loans are evidenced in part by (i) that certain Promissory Note A, dated as of September 26, 2018, in the original principal amount of $106,000,000.00 (as amended, restated, replaced, supplemented, or otherwise modified from time to time, "**Note A**"), the makers of which are William John Millenkamp, Susan Jo Millenkamp, East Valley Cattle, LLC ("**East Valley**"), Idaho Jersey Girls Jerome Dairy LLC ("**Jersey Girls Dairy**"), Goose Ranch LLC ("**Goose Ranch**"), Millenkamp Properties, L.L.C. ("**Millenkamp Properties**"), Millenkamp Cattle, Inc. ("**Cattle Inc.**"), and Millenkamp Family LLC ("**Family LLC**"); (ii) that certain Promissory Note B, dated as of September 26, 2018, in the original principal amount of $59,400,000.00 (as amended, restated, replaced, supplemented, or otherwise modified from time to time, "**Note B**"), the makers of which are William John Millenkamp, Susan Jo Millenkamp, East Valley, Jersey Girls Dairy, Goose Ranch, Millenkamp Properties, Cattle Inc., and Family LLC; (iii) that certain Promissory Note C, dated as of April 15, 2020, in the original principal amount of $13,000,000.00 (as amended, restated, replaced, supplemented, or otherwise modified from time to time, "**Note C**"), the makers of which are William John Millenkamp, Susan Jo Millenkamp, East Valley, Jersey Girls Dairy, Goose Ranch, Millenkamp Properties, Cattle Inc., Family LLC, and Millenkamp Properties II LLC ("**Millenkamp Properties II**"); (iv) that certain

DECLARATION OF JEREMY RASMUSSEN – 3

Promissory Note D, dated as of April 21, 2021, in the original principal amount of $17,954,226.00 (as amended, restated, replaced, supplemented, or otherwise modified from time to time, "**Note D**"), the makers of which are William John Millenkamp, Susan Jo Millenkamp, East Valley, Jersey Girls Dairy, Goose Ranch, Millenkamp Properties, Cattle Inc., Family LLC, and Millenkamp Properties II; (v) that certain Promissory Note E, dated as of April 21, 2021, in the original principal amount of $15,978,409.00 (as amended, restated, replaced, supplemented, or otherwise modified from time to time, "**Note E**"), the makers of which are William John Millenkamp, Susan Jo Millenkamp, East Valley, Jersey Girls Dairy, Goose Ranch, Millenkamp Properties, Cattle Inc., Family LLC, and Millenkamp Properties II; and (vi) that certain Promissory Note, dated as of March 12, 2019, in the original principal amount of $5,508,350.00 (as amended, restated, replaced, supplemented, or otherwise modified from time to time, the "**199858 Note**," and collectively with Note A, Note B, Note C, Note D, and Note E, the "**MetLife Notes**"), the makers of which are William John Millenkamp, Susan Jo Millenkamp, East Valley, Jersey Girls Dairy, Goose Ranch, Millenkamp Properties, Cattle Inc., Family LLC, Millenkamp Properties II, and Idaho Jersey Girls LLC ("**Jersey Girls LLC**").

8. A true and correct copy of Note A, as maintained in the ordinary course of business by MetLife, is annexed hereto as **Exhibit 1**. A true and correct copy of Note B, as maintained in the ordinary course of business by MetLife, is annexed hereto as **Exhibit 2**. A true and correct copy of Note C, as maintained in the ordinary course of business by MetLife, is annexed hereto as **Exhibit 3** A true and correct copy of Note D, as maintained in the ordinary course of business by MetLife, is annexed hereto as **Exhibit 4**. A true and correct copy of Note E, as maintained in the ordinary course of business by MetLife, is annexed hereto as **Exhibit 5**. A true and correct copy of 199858 Note, as maintained in the ordinary course of business by MetLife, is annexed hereto as **Exhibit 6**.

DECLARATION OF JEREMY RASMUSSEN – 4

9. As security for Note A, Note B, Note C, Note D, and Note E, William John Millenkamp, Susan Jo Millenkamp, East Valley, Jersey Girls Dairy, Goose Ranch and Millenkamp Properties executed that certain Mortgage, Assignment of Rents, Security Agreement and Fixture Filing dated as of September 26, 2018 and recorded in the Official Records of Cassia County, Idaho, under Document No. 2018-003845, and in the Official Records of Jerome County, Idaho, under Document No. 2184031 (as amended by the First Amendment to 2018 Mortgage and Second Amendment to 2018 Mortgage, and as further amended, restated, replaced, supplemented, or otherwise modified from time to time, the "**2018 Mortgage**"), pursuant to which MLRE is the holder of a first-priority lien on certain real property described therein and improvements thereon (the "**2018 Mortgage Real Property**," legally described on Exhibit A thereto), and on certain other collateral (as more particularly described in the 2018 Mortgage and amendments thereto, collectively, the "**2018 Mortgage Property**"). The 2018 Mortgage was thereafter amended by that certain (i) First Amendment to Mortgage, Assignment of Rents, Security Agreement and Fixture Filing dated April 15, 2020, and recorded with the Jerome County, Idaho Recorder's Office on April 15, 2020, as Instrument No. 2201724, and Cassia County, Idaho Recorder's Office on April 15, 2020, as Instrument No., 2020-001707 (the "**First Amendment to 2018 Mortgage**"), and (ii) Second Amendment to Mortgage, Assignment of Rents, Security Agreement and Fixture Filing dated April 21, 2021, and recorded with the Jerome County, Idaho Recorder's Office on April 21, 2021, as Instrument No. 2212265, and Cassia County, Idaho Recorder's Office on April 21, 2021, as Instrument No., 2021-002100 (the "**Second Amendment to 2018 Mortgage**").

10. True and correct copies of the 2018 Mortgage, the First Amendment to 2018 Mortgage, and the Second Amendment to 2018 Mortgage, as maintained in the ordinary course of business by MetLife, are annexed hereto as **Exhibits 7, 8, and 9**.

DECLARATION OF JEREMY RASMUSSEN – 5

11. As additional security for Note A, Note B, Note C, Note D, and Note E, Millenkamp Cattle, Inc. executed five (5) Milk Check Assignment Agreements for Glanbia Foods, Inc., whereby Millenkamp Cattle, Inc. assigned to MetLife a senior right in and to, among other things, milk proceeds (collectively, the "**Milk Assignments**").

12. True and correct copies of the Milk Assignments, as maintained in the ordinary course of business by MetLife, are annexed hereto as **Exhibits 11, 12, 13, 14, and 15**.

13. As security for the 199858 Note, William John Millenkamp, Susan Jo Millenkamp, East Valley, Jersey Girls Dairy, Jersey Girls LLC, Goose Ranch, Millenkamp Properties, Cattle Inc., Family LLC, and Millenkamp Properties II executed that certain Mortgage, Assignment of Rents, Security Agreement and Fixture Filing dated as of March 12, 2019 and recorded in the Official Records of Jerome County, Idaho, under Document No. 2190993, and in the Official Records of Twin Falls, Idaho, under Document No. 2019003382 (as amended, restated, replaced, supplemented, or otherwise modified from time to time, the "**2019 Mortgage**," and collectively with the 2018 Mortgage, the "**MetLife Mortgages**"), pursuant to which MLIC is the holder of a first-priority lien on certain real property described therein and improvements thereon (the "**2019 Mortgage Real Property**," legally described on Exhibit A thereto), and collectively with the 2018 Mortgage Real Property, the "**Real Property**"), and on certain other collateral (as more particularly described in the 2019 Mortgage and amendments thereto, collectively, the "**2019 Mortgage Property**," and collectively with the 2018 Mortgage Property, the "**Property**". The Real Property and the Property shall be referred to herein collectively as the "**MetLife Collateral**".).

14. A true and correct copy of the 2019 Mortgage as maintained in the ordinary course of business by MetLife, is annexed hereto as **Exhibit 10**.

15. The collateral provided to MetLife as security for the MetLife Loans pursuant to

DECLARATION OF JEREMY RASMUSSEN – 6

the 2018 Mortgage and the 2019 Mortgage consists of: (i) virtually all of the MetLife Borrowers' real property, approximately 18,863.51 acres of land in and around Twin Falls, Idaho (including fixtures, structures and improvements); and (ii) certain personal property owned by Debtors, including (a) crops grown after a foreclosure; (b) all wells, underground pipelines, sprinklers, and similar irrigation equipment (but excluding rolling stock) located at the Real Property, as well as all lines, valve openers, pipes, and similar items pertaining to such irrigation equipment; and (c) all milking equipment located at the real property; as well as (d) certain Milk Receivables in a capped amount referred to as the "MetLife Milk Proceeds Priority Claim".

16.     MetLife's security interests were duly recorded with the Idaho Secretary of State and the various County Clerks, as appropriate.

17.     MetLife and Rabo Agrifinance LLC ("**Rabo**") entered into a certain Intercreditor Agreement dated as of September 18, 2018 and recorded on October 1, 2018 in the Official Records of Cassia County, Idaho, as Document No. 2018-003847, and in the Official Records of Jerome County, Idaho, as Document No. 2184033, as amended by that certain First Amendment to Intercreditor Agreement (the "**First Amendment**") dated as of July 10, 2019 and recorded in the Official Records of Cassia County, Idaho, as Document No. 2019-002759, in the Official Records of Gooding County, Idaho, as Instrument No. 265476, and in the Official Records of Jerome County, Idaho, as Document No. 2193388, as further amended by that certain Second Amendment to Intercreditor Agreement (the "**Second Amendment**") dated as of April 15, 2020 and recorded in the Official Records of Cassia County, Idaho, as Document No. 2020-001709, and in the Official Records of Jerome County, Idaho, as Document No. 2201726, and as further amended by that certain Third Amendment to Intercreditor Agreement (the "**Third Amendment**") dated as of April 21, 2021 and recorded in the Official Records of Cassia County, Idaho, as

DECLARATION OF JEREMY RASMUSSEN – 7

Document No. 2021-002102, and in the Official Records of Jerome County, Idaho, as Document No. 2212267 (as amended, the "**First Intercreditor Agreement**").

18. True and correct copies of the First Intercreditor Agreement, the First Amendment, the Second Amendment, and the Third Amendment, as maintained in the ordinary course of business by MetLife, are annexed hereto as **Exhibits 16, 17, 18, and 19**.

19. Generally, the First Intercreditor Agreement gives MetLife a senior security interest over Rabo's junior security interest in certain personal property owned by Debtors and in the MetLife Real Estate Collateral (which is now governed by the Second Intercreditor Agreement, below). That is, Rabo's Agent agreed to subordinate any interests it, as Agent, may have or thereafter acquire in the MetLife Personal Property Collateral to those of MetLife, and MetLife agreed to subordinate any interests it may have or thereafter acquire in Rabo's Collateral (other than any Collateral that may also constitute MetLife Collateral) to those of Rabo's Agent.

20. The First Intercreditor Agreement provides, among other things, as follows:

- Pursuant to paragraph 4(a), Rabo agrees to subordinate any and all security interests or liens that Rabo now has or hereafter acquires in any MetLife Priority Personal Property Collateral, to the perfected security interests or liens that MetLife now has or may hereafter acquire therein or thereon.

- Pursuant to paragraph 4(c), Rabo acknowledges that it does not have any security interest in the MetLife Priority Personal Property Collateral (excluding the Milk Receivables), while in paragraph 4(d) MetLife acknowledges that it does not have any security interest or any other lien or encumbrance in the Milk Receivables in excess of the MetLife Milk Proceeds Priority Claim.

- Pursuant to paragraph 5, prior to any enforcement action by MetLife or Rabo, among other things, all proceeds of the sale or other disposition of the Milk Receivables shall be distributed to MetLife in an amount up to the amount of the MetLife Milk Proceeds Priority Claim, and the balance, if

DECLARATION OF JEREMY RASMUSSEN – 8

- any, to Rabo. The same distribution scheme with respect to the Milk Receivables also applies after any enforcement action by MetLife or Rabo.

- Pursuant to paragraph 11(a), Rabo agrees that the subordinations, agreements and priorities set forth in the First Intercreditor Agreement shall remain in full force and effect regardless of whether any party in the future seeks to rescind, amend, terminate or reform their respective agreements with any of the borrowers.

- Pursuant to paragraph 21, the parties agree that the First Intercreditor Agreement shall remain enforceable notwithstanding any bankruptcy or other insolvency proceeding by or against the Borrowers.

21. The First Intercreditor Agreement recognizes that Rabo's Agent and MetLife have separately entered into certain "Milk Check Assignment Agreements" with Millenkamp Cattle and a certain purchaser, which purchases milk inventory from Millenkamp Cattle and pays the purchase price to MetLife (on a monthly basis) and to Rabo's Agent (in certain situations) rather than to Millenkamp Cattle. The First Intercreditor Agreement [§ 1.] generally provides that MetLife's priority interest in any Milk Receivables is equal to the aggregate amount of, in any month, the amount of the monthly installment payment of principal and accrued interest then due and payable by the MetLife Borrowers to MetLife, with such amount being capped at one month's principal and interest payment, unless MetLife has provided written notice to Rabo's Agent that amounts exceeding one month's principal and interest payment are due, owing, and unpaid. MetLife's priority claim is cumulative, to the extent that the Milk Receivables accrue each month but are not paid to MetLife on a monthly basis for whatever reason, in an amount not to exceed six times the monthly scheduled principal and interest payments of the MetLife Loans; provided that MetLife's right to priority in Milk Receivables in excess of one month's priority amount is subject to MetLife providing written notice to Rabo's Agent of each Milk Receivable not paid to MetLife, with such

DECLARATION OF JEREMY RASMUSSEN – 9

notice to be provided within twenty days of any such missed payments (subject to certain other conditions).

22. MetLife and Rabo entered into a certain Subordination and Intercreditor Agreement (as amended, the "**Second Intercreditor Agreement**") dated as of October 20, 2022.

23. A true and correct copy of the Second Intercreditor Agreement, as maintained in the ordinary course of business by MetLife, is annexed hereto as **Exhibit 20**.

24. Generally, the Second Intercreditor Agreement gives MetLife a senior security interest over Rabo's then recently granted junior security interest in the MetLife Real Estate Collateral to which MetLife consented.

25. The Second Intercreditor Agreement provides, among other things, that Rabo's interest in the MetLife Real Estate Collateral is fully subordinated to MetLife's interest therein, and that Rabo waives certain rights and remedies concerning that collateral, summarized as follows:

- Pursuant to paragraph 3, Rabo's Mortgage and all right, title and interest ( now existing or later acquired) including but not limited to liens, security interests, collateral assignments and rights to payment, of Rabo in the Real Property is and shall always be fully and unconditionally subject and subordinate to MetLife's mortgages and all right, title and interest ( now existing or later acquired), including but not limited, to liens, security interests, collateral assignments, and rights to payment, of MetLife in the Real Property, including, without limitation, as to all of the present and future indebtedness and obligations now or hereafter evidenced or secured by MetLife's loan documentation.

- Pursuant to paragraph 9, Rabo agrees, for itself and all who may claim through it (and this covenant shall be a real property covenant running with the Real Property), that, except as set forth below, until such time as all of the indebtedness under the MetLife Loans is indefeasibly paid and discharged in full and no further advances can be made by MetLife to the MetLife Borrowers, Rabo "shall not take

DECLARATION OF JEREMY RASMUSSEN – 10

any action to commence foreclosure of its liens on or security interest in any of the [MetLife Real Estate Collateral], accept a deed in lieu of foreclosure or pursue any other remedies under [Rabo's junior mortgage] without the prior express written consent from" MetLife, which MetLife may give or withhold in its sole and absolute discretion.

- Pursuant to paragraph 5, without MetLife's prior written consent, except for protective advances, Rabo shall not increase the principal amount of the loans secured by Rabo's Mortgage. Any such increases (other than protective advances) made in violation of paragraph 5 shall not be secured by Rabo's junior mortgage.

- Pursuant to paragraph 8, the parties agreed that the Second Intercreditor Agreement would be applicable and enforceable both before and after the filing of any bankruptcy petition by or against any of the MetLife Borrowers under any existing or future law of any jurisdiction related to bankruptcy, insolvency, reorganization or relief of debtors.

26. MetLife and Conterra Agricultural Capital, LLC, an Iowa limited liability company, entered into a certain Subordination and Intercreditor Agreement dated as of October 20, 2022 (the "**Conterra Intercreditor Agreement**").

27. A true and correct copy of the Conterra Intercreditor Agreement, as maintained in the ordinary course of business by MetLife, is annexed hereto as **Exhibit 21**.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA AND THE STATE OF IDAHO THAT THE FOREGOING IS TRUE AND CORRECT.

Dated: April 3, 2024

_____
JEREMY RASMUSSEN

DECLARATION OF JEREMY RASMUSSEN – 11

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 3rd day of April, 2024, a true and correct copy of the foregoing document was filed with the Clerk of the Court using the CM/ECF System which sent a Notice of Electronic Filing to the following persons:

- **Matthew T. Christensen**      mtc@johnsonmaylaw.com
- **US Trustee/Brett R. Cahoon**  ustp.region18.bs.ecf@usdoj.gov
- **Sheila Rae Schwager**         sschwager@hawleytroxell.com
- **Brent Russel Wilson**         bwilson@hawleytroxell.com
- **Heidi Buck Morrison**         heidi@racineolson.com
- **Daniel C. Green**             dan@racineolson.com

　　　　　　　　　　　　　　　　　　*/s/ Kimbell D. Gourley*
　　　　　　　　　　　　　　　　　　Kimbell D. Gourley

DECLARATION OF JEREMY RASMUSSEN – 12