April 21, 2021

Millenkamp

$17,954,226.00 Loan No. 201559

## PROMISSORY NOTE D

FOR VALUE RECEIVED, WILLIAM JOHN MILLENKAMP a/k/a Bill Millenkamp ("**W. Millenkamp**"), SUSAN JO MILLENKAMP a/k/a Susie Millenkamp ("**S. Millenkamp**"), EAST VALLEY CATTLE, LLC, an Idaho limited liability company ("**East Valley**"), IDAHO JERSEY GIRLS JEROME DAIRY LLC, an Idaho limited liability company ("**Idaho Jersey**"), GOOSE RANCH LLC, an Idaho limited liability company ("**Goose Ranch**"), MILLENKAMP PROPERTIES, L.L.C., an Idaho limited liability company ("**Millenkamp Properties**"), MILLENKAMP CATTLE, INC., an Idaho corporation ("**Millenkamp Cattle**"), MILLENKAMP FAMILY LLC, an Idaho limited liability company ("**Millenkamp Family**"), and MILLENKAMP PROPERTIES II LLC, an Idaho limited liability company ("**Millenkamp Properties II**"), (W. Millenkamp, S. Millenkamp, East Valley, Idaho Jersey, Goose Ranch, Millenkamp Properties, Millenkamp Cattle, Millenkamp Family and Millenkamp Properties II, are herein individually and collectively, "**Borrower**"), hereby promise to pay to the order of METLIFE REAL ESTATE LENDING LLC, a Delaware limited liability company ("**Lender**"), the principal sum of up to SEVENTEEN MILLION NINE HUNDRED FIFTY-FOUR THOUSAND TWO HUNDRED TWENTY-SIX and 00/100 DOLLARS ($17,954,226.00) and interest at the rate pursuant to the terms and conditions set forth below.

### PART 1:  The Loan

Lender will make a term loan to Borrower in the amount of up to $17,954,226.00 (the "**Loan**").  The Loan is evidenced by this note.  The Loan will be disbursed to or for the account of Borrower in accordance with the terms of that certain Amended and Restated Construction and Disbursement Agreement between Borrower and Lender dated as of April 15, 2020, as amended by that certain First Amendment thereto dated as of even date herewith.

The unpaid principal balance of the Loan will bear interest from the Funding Date at the rate of 4.25% per annum (the "**Initial Rate**") fixed to September 15, 2028.

On September 15, 2028 (the "**First Rate Adjustment Date**"), Lender may, at its option, Adjust the applicable rate of interest on the Loan to any rate of interest per annum specified by Lender (that rate, the "**First Adjusted Rate**"), and the unpaid principal balance of the Loan will bear interest from the First Rate Adjustment Date at the First Adjusted Rate, fixed to the Loan Second Rate Adjustment Date (defined below).

On September 15, 2035 (the "**Second Rate Adjustment Date**" and the First Rate Adjustment Date and the Second Rate Adjustment Date are each a "**Rate Adjustment Date**"), Lender may, at its option, Adjust the applicable rate of interest on the Loan to any rate of interest per annum specified by Lender (that rate, the "**Second Adjusted Rate**" and the First Adjusted Rate and the Second Adjusted Rate, an "**Adjusted Rate**"), and the unpaid principal balance of the Loan will bear interest from the Second Rate Adjustment Date at the Second Adjusted Rate, fixed to the Maturity Date (defined below).

On or prior to the effective date of each Adjustment of the rate of interest applicable to the Loan pursuant to the terms of this note (each, a "**Rate Adjustment**"), Lender shall notify Borrower of the respective new rate of interest applicable to the Loan (each such notice, a "**Notice of Rate Adjustment**", and the Initial Rate, and, if applicable, the Adjusted Rate, the "**Contract Rate**").

Accrued interest on the Loan shall be paid on May 15, 2021.  On June 15, 2021, and on the fifteenth day of each month thereafter to the Maturity Date (each such date, a "**Regular Payment Date**"), subject to the provisions of this section, Borrower shall make equal combined payments of principal and accrued interest in the amount required to fully amortize the then unpaid principal balance of the Loan accruing interest at the Initial Rate (each such payment, an "**Amortizing Payment**").  Beginning on the first Regular Payment Date following each Rate Adjustment the Amortizing Payment will be Adjusted to that amount required to fully amortize the then unpaid principal balance of the Loan accruing interest at the Adjusted Rate, over the period from the respective Rate Adjustment Date to May 15, 2041.  The unpaid principal balance of the Loan, accrued interest thereon, and any other outstanding Obligations, shall be paid on March 15, 2041 (the "**Maturity Date**").

Promissory Note (Note D)
Millenkamp
Loan No. 201559
109820221.3 0053564-00504

Page **1 of 14**

**EXHIBIT 4**

Borrower may make Prepayments as follows: (1) during each calendar year Borrower may make one or more Prepayments each in an amount not to exceed the sum of: (A) 25% of the original principal amount of the Loan; minus (B) the sum total of all principal payments previously received by Lender during the calendar year in which the Prepayment occurs, whether such principal payments were other Prepayments or the principal component of an Amortizing Payment; minus (C) the principal component of all remaining Amortizing Payments for the calendar year; (2) a Prepayment of the Loan in whole or in part during the later of (A) the 30 day period immediately preceding the Loan Rate Adjustment Date; or (B) the 30 day period following the Loan Notice of Rate Adjustment; (3) a Prepayment equal to the entire unpaid principal balance of the Loan during the 30 day period immediately preceding the Loan Maturity Date; and (4) Prepayments other than at a time, or in excess of the amount, permitted above if Borrower also pays to Lender a prepayment premium equal to the Yield Maintenance Amount (defined herein), which shall be calculated using (i) a "Reinvestment Spread" equal to 100 basis points and (ii) a "Yield Maintenance Minimum Amount" equal to 5.000% of that portion of the Prepayment not permitted under this note. For avoidance of doubt, (i) no prepayment premium shall be due for Prepayments made under sections *(1), (2)* or *(3)* above and (ii) the Yield Maintenance Amount shall not exceed five percent (5%) of the Prepayment not permitted under this note.

[REMAINDER OF PAGE INTENTIONALLY BLANK – PROMISSORY NOTE CONTINUED ON NEXT PAGE]

## PART 2: General Terms and Conditions

**Default Rate**. If there is an Event of Default, then the principal balance of the Loan and to the extent permitted by Applicable Law, all other Obligations, will at the option of Lender, from the day of the Event of Default, bear interest at 18.000% per annum (the "**Default Rate**"). Interest payable at the Default Rate shall be paid from time to time on demand, or if not sooner demanded, on the first day of each month. The provisions of this section may result in compounding of interest. The imposition and receipt of a Default Rate will not waive Lender's other rights with respect to an Event of Default.

**Prohibited Transfer Rate**. If there is a Prohibited Transfer (as defined in the Security Instrument), Lender may, at Lender's option, without limitation to any other rights or remedies available to Lender upon an Event of Default, deem that the principal balance of the Loan and, to the extent permitted by Applicable Law, all other Obligations, will bear interest at the Contract Rate plus 2.000% per annum (the "**Prohibited Transfer Rate**"), retroactive to the date of the Prohibited Transfer (without regard to the date that the Prohibited Transfer is discovered by Lender) to the Maturity Date, and Borrower shall pay to Lender, upon demand, the difference between the amount of interest calculated at the Contract Rate in effect at the time of the Prohibited Transfer and the amount of interest calculated at the Prohibited Transfer Rate from the date of the Prohibited Transfer to the date payment is received by Lender. Lender's rights under this section are an option available to Lender. Lender may at any time after a Prohibited Transfer, and notwithstanding Lender's prior election that all Obligations will bear interest at the Prohibited Transfer Rate, elect to declare the Prohibited Transfer an Event of Default and all Obligations will, after declaration of an Event of Default bear interest at the Default Rate.

**Maximum Rate**. Notwithstanding any provision of this note to the contrary: (1) no interest will be due on any amount due under this note if, under Applicable Law, Lender is not permitted to charge interest on that amount; and (2) in all other cases interest due under this note will be calculated at a rate not to exceed the Maximum Rate. If Borrower is requested by Lender to pay interest on any amount due under this note at a rate greater than the Maximum Rate, the amount of interest due on that amount will be deemed the Maximum Rate and all payments in excess of the Maximum Rate will be deemed to have been Prepayments without prepayment fee or penalty, and not interest. All amounts other than interest which are charged, reserved, paid or agreed to be paid to Lender for the use, forbearance, or detention of Borrower's indebtedness to Lender under this note will, to the extent permitted by Applicable Law, be amortized over the full stated term of the indebtedness, so that the rate of interest on account of that indebtedness does not exceed the Maximum Rate for so long as the indebtedness is outstanding.

**Prepayments**. Prepayments may be made only if and to the extent expressly permitted in Part 1 of this note. If Lender receives any Prepayment which is not permitted under this note, Lender may accept the Prepayment; except that Lender may, as a condition of acceptance, require the payment of interest which would accrue on the amount Prepaid to the date when Lender would be obligated to accept the Prepayment, or the date the principal amount Prepaid would be due under this note, whichever is earlier. All Prepayments permitted under this note must, at the option of Lender, be accompanied by all unpaid accrued interest on the Prepayment and all other amounts due under this note. Each Prepayment of less than the entire unpaid principal balance of the Loan will, to the extent permitted by Applicable Law, be applied to the unpaid principal amount of the Loan in the order determined by Lender.

**Application of Payments**. All computations of accrued interest due under the Loan Documents will be made on the basis of a 360 day year comprised of 12 months of 30 days each. All payments of principal, interest, and other amounts to be made under the Loan Documents shall be made to Lender in U.S. dollars and in immediately available funds, without set-off, deduction, or counterclaim, not later than 2:00 PM, Chicago, Illinois time, on the dates on which those payments will become due (any of those payments made after the time on the due date will be deemed to have been made on the next succeeding Business Day). All payments received by Lender (including, to the extent permitted by Applicable Law, all proceeds received from the sale or other liquidation of the Collateral) will be applied to the Obligations in any order determined by Lender. At the option of Lender, the early or late date of making a regularly scheduled payment will be disregarded for purposes of allocating the payment between principal and interest. For this purpose, the payment will be treated as though made on the date due. In any legal action or proceeding, the entries made by Lender in accordance with its usual practice and evidencing the Obligations, will be *prima facie* evidence of the existence and amounts of those Obligations. Whenever any payment under any Loan Document is stated to be due on a day that is not a Business Day,

that payment may be made on the next succeeding Business Day, and that extension of time will in that case be included in the computation of the payment of interest and fees, as the case may be.

**Books and Records**. Borrower shall maintain and cause each of its Subsidiaries to maintain proper books of record and account including full, true, and correct entries of all dealings and transactions relating to its and their business and activities, in all material respects acceptable to Lender. Borrower shall not make any material change or modification of Borrower's manner and method of accounting except as required by the applicable accounting standard.

**Reporting Requirements and Additional Required Financial Information**. Borrower's financial reporting requirements and requirements for additional financial information are set forth in that certain Financial Covenant and Reporting Agreement between Borrower and Lender dated as of even date herewith, as the same may be amended or modified from time to time by the parties thereto.

**Notice to Lender**. Borrower shall notify Lender of the occurrence of any of the following, promptly, but in any event no later than five days after such occurrence: (1) any change in Borrower's name, legal structure, place of business, or chief executive office; (2) the failure by Borrower to comply with the terms and provisions of this note; (3) any lawsuit, tax claim or other dispute if filed or threatened against Borrower in an amount greater than $100,000.00; (4) any other substantial dispute between Borrower and any Governmental Authority; (5) any other Material Adverse Effect as to Borrower or the Real Estate Collateral; and (6) the death of any Borrower (provided, however, Borrower shall have an additional 30 days to notify Lender).

**Existence and Good Standing**. If Borrower is anything other than an individual, Borrower shall preserve and maintain its existence and good standing in the jurisdiction of its formation, and qualify and remain qualified to conduct its business in each jurisdiction in which such qualification is required.

**Change in Business or Organizational Structure**. Borrower shall not engage in any material line of business substantially different from those lines of business conducted by Borrower and its Subsidiaries on the date hereof; and if Borrower is anything other than an individual, Borrower shall not: (1) form or otherwise acquire any Subsidiary, unless that Subsidiary executes and delivers to Lender a guaranty of all of the Obligations and all other instruments and agreements required by Lender; or (2) merge, dissolve, liquidate, consolidate with or into another Person, or dispose of (whether in one transaction or in a series of transactions) all or substantially all of its assets (whether now owned or hereafter acquired) to or in favor of any Person or change its name or jurisdiction of organization.

**Contributions, Dividends**. Borrower also acknowledges that Borrower's future financial condition constitutes a significant inducement to Lender to make the Loan, and Borrower agrees that if there is an Event of Default or any event (including the nonpayment of any amount due under the Loan Documents) which, with the giving of notice or the passage of time would be an Event of Default, or if Borrower will not be able to make any payment of principal or interest due under the Loan Documents during the following 12 months then Borrower shall not make or declare (1) any direct or indirect contribution, dividend (whether in cash, stock or any other form) loan or other cash advance, or redeem any interest in Borrower; and (2) any direct or indirect contribution, dividend (cash, stock or other forms), loan or other cash advance to any family member, Subsidiary or Affiliate.

**Compliance with Laws**. Borrower shall comply in all respects with all Applicable Laws and pay before delinquency, all taxes, assessments, and governmental charges imposed upon Borrower or its property.

**Insurance**. Borrower shall maintain all insurance required by Lender and in accordance with Applicable Laws. Borrower shall keep insured all buildings and improvements now or later located on the Real Estate Collateral against loss or damage by fire, wind, flood (if Lender requires) and extended coverage perils, as well as liability coverage (if Lender requires) for claims occurring upon, on or about the Real Estate Collateral, in companies and amounts satisfactory to Lender and to provide on request satisfactory proof of insurance. Lender is to be named additional insured on all liability policies. The all-risk insurance policy shall contain a loss payable clause in favor of Lender providing all rights customarily granted under the standard mortgagee clause and naming Lender as mortgagee. At Lender's option, insurance proceeds may be applied to the Obligations, or be used for reconstruction of the damaged property or be released to Borrower for reconstruction. If and whenever Lender believes that any required insurance is not in effect, Lender may (but will not be obligated to) procure that insurance at Borrower's expense. Borrower shall reimburse Lender, on demand, for all premiums on that insurance paid by Lender.

Promissory Note (Note D)
Millenkamp
Loan No. 201559
109820221.3 0053564-00504

**Arms' Length Dealing with respect to the Collateral.** If Borrower enters into a transaction of any kind with any family member, Subsidiary or Affiliate, whether or not in the ordinary course of business, with respect to the Collateral, Borrower shall enter into such transaction on fair and reasonable terms substantially as favorable to Borrower as would be obtainable by any Borrower at the time in a comparable arm's length transaction with a Person other than a family member, Subsidiary or Affiliate.

**ERISA.** Borrower will not be reconstituted as a Plan or as an entity whose assets constitute "plan assets."

**Payment of Lender Fees and Expenses.** Borrower shall upon demand, pay to Lender or, at Lender's option, shall reimburse Lender, for all out of pocket fees and expenses, including Professional Fees, incurred by Lender in connection with the Loan (whether incurred prior to, on, or after the Closing Date), including any Insolvency Proceeding involving a claim under the Loan Documents.

**Further Assurances.** Borrower shall promptly execute and deliver, or cause to be executed and delivered, all such other documents, agreements and instruments requested by Lender to (1) further evidence and describe the Collateral; (2) correct any defects in the execution of the Loan Documents or omissions or errors in the Loan Documents; (3) perfect, protect or preserve any Liens created under any of the Loan Documents; (4) make any recordings, file any notices, or obtain any consents, as may be necessary; (5) confirm the amount due on the Loan, the terms of repayment of the Loan, the date to which interest has been paid, whether any offsets or defenses exist against the Loan and, if any are alleged to exist, the nature thereof in detail, and such other matters as Lender reasonably may request; and (6) otherwise carry out the intent of the Loan Documents. Upon receipt of an affidavit of an officer of Lender as to the loss, theft, destruction or mutilation of this note or any other document(s) which is not of public record and, in the case of any mutilation, upon surrender and cancellation of this note or other document(s), Borrower shall promptly issue, in lieu thereof, a replacement note or other document(s) of like tenor.

**Events of Default.** The following each will be an event of default under this note (an "**Event of Default**"): (1) any payment required under the Loan Documents is not made when due; (2) the Financial Information or any representation in the Loan Documents is materially incorrect or misleading; (3) Borrower does not: (A) pay (or cause payment of) all taxes assessed on the Collateral prior to the date when delinquent; (B) maintain (or cause to be maintained) all policies of insurance required under the Loan Documents and pay (or cause payment of) all premiums for that insurance on or prior to the date when due; and (C) maintain the Collateral (or cause the Collateral to be maintained) in good condition and repair, all in accordance with the terms and conditions of the Loan Documents; (4) the death or dissolution of any Borrower with no surviving Borrower(s); (5) the filing of any federal tax lien against Borrower, any member or general partner, as applicable, of Borrower, or against the Collateral and same is not discharged of record within 30 days after the date filed; (6) an Insolvency Proceeding is initiated by Borrower; or any Insolvency Proceeding initiated against Borrower by another Person is not dismissed within 60 days after filing; (7) Borrower or any Subsidiary are or become subject to a Judgment or Judgments for the payment of money in an aggregate amount (as to all such Judgments or orders) exceeding $100,000.00, which are not covered by independent third-party insurance as to which the insurer does not dispute coverage and (A) enforcement proceedings are commenced by any creditor upon any such Judgment, or (B) there is a period of 30 consecutive days during which a stay of enforcement of any such Judgment, by reason of a pending appeal or otherwise, is not in effect; (8) any "Event of Default" as that term is defined in the Loan Documents other than this note; (9) a default, beyond any applicable notice or cure period, under the Environmental Indemnity Agreement; (10) for more than ten days after notice from Lender, Borrower is in default under any term, covenant or condition of this note not previously described in this section, which can be cured by the payment of a sum of money; (11) default under any other promissory note or other loan document executed by Borrower for the benefit of Lender (subject to any applicable notice and cure period thereunder). Except for any monetary default and except as otherwise specifically provided in this Section, none of the foregoing events shall constitute an "Event of Default" unless, for 30 days after notice from Lender, Borrower is in default under any term, covenant or condition of this note not previously described in this section; provided that if: (A) it is reasonably certain that the default cannot be cured by Borrower within that 30 day period; and (B) Borrower has commenced curing that default within that 30 day period and thereafter diligently and expeditiously proceeds to cure that default, then that 30 day period will be extended for so long as reasonably required by Borrower in the exercise of due diligence to cure that default, up to a maximum of 90 days after the notice to Borrower of the Event of Default.

Page **5** of **14**

Promissory Note (Note D)
Millenkamp
Loan No. 201559
109820221.3 0053564-00504

**Remedies**.  Upon the occurrence of an Event of Default, Lender may: (1) declare all Obligations due and payable, without presentment, notice of intent to accelerate, notice of acceleration, demand, protest or further notice of any kind, all of which are expressly waived by Borrower; and (2) exercise all other rights and remedies afforded to Lender under the Loan Documents or Applicable Law or in equity; except that upon an actual or deemed entry of an order for relief with respect to Borrower or any of its Subsidiaries in any Insolvency Proceeding, all Obligations will automatically become due and payable, without presentment, demand, protest or any notice of any kind, all of which are expressly waived by Borrower.  All remedies shall be cumulative to the fullest extent permitted by law.

**Notices**.  All requests, notices, approvals, consents, and other communications between the Parties (individually and collectively, **"Notices"**) under the terms and conditions of the Loan Documents must be in writing and mailed or delivered to the address specified in that Loan Document, or to the address designated by any Party in a notice to the other Parties; and in the case of any other Person, to the address designated by that Person in a notice to Borrower and Lender.  All Notices will be deemed to be given or made upon the earlier to occur of:  (1) actual receipt by the intended recipient; or (2) (A) if delivered by hand or by courier, upon delivery; or (B) if delivered by mail, four Business Days after deposit in the U.S. mail, properly addressed, postage prepaid; except that notices and other communications to Lender will not be effective until actually received by Lender.  All telephonic Notices to and other telephonic communications with Lender may be recorded by Lender, and each Party consents to such recording.

**Optically Imaged Reproductions**.  Lender may make an optically imaged reproduction of any or all Loan Documents and, at its election, destroy the original or originals.  Borrower consents to the destruction of the original or originals and agrees that a copy of the optically imaged reproduction of any Loan Document will be the equivalent of and for all purposes constitute an "original" document.  For purposes of this section, **"for all purposes"** includes use of the optically imaged reproduction:  (1) to prove the content of the original document at trial, mediation, arbitration or administrative hearing; (2) for any business purpose; (3) for internal or external audits and/or examination by or on behalf of Governmental Authorities;  (4) in canceling or transferring any document; and (5) in conjunction with any other transaction evidenced by the original document.

**Defined Terms**.  Except as otherwise expressly provided herein, capitalized terms used in this note will have the respective meanings assigned to such terms below.  Except as otherwise defined in this note, or unless the context otherwise requires, each term that is used in this note which is defined in Article 9 of the UCC is used as defined in Article 9 of the UCC.

"**Adjust**" means to increase or decrease; "**Adjusted**" means increased or decreased; and "**Adjustment**" means an increase or a decrease.

"**Affiliate**" of a Person other than an individual means another Person that directly, or indirectly through one or more intermediaries, Controls or is Controlled by or is under common Control with the Person specified. Unless otherwise specified, all references to an "Affiliate" or to "Affiliates" refer to any Affiliate or Affiliates, if any.

"**Applicable Law**" means all existing and future laws, orders, ordinances, rules and regulations of or by a Governmental Authority; except that in determining the Maximum Rate, Applicable Law means those laws, orders, ordinances, rules and regulations in effect as of the date hereof or if there is a change in Applicable Law which (1) permits Lender to charge interest on amounts which Lender would not otherwise be permitted to charge interest, or (2) increases the permissible rate of interest, then the new Applicable Law as of its effective date.

"**Authorized Representative**" means, (1) for any Person that is an individual, that individual, and (2) for any other Person, including Borrower, an authorized Executive Officer, member, manager, trustee, general partner or agent of such Person whose responsibilities with such Person requires that he/she has knowledge relating to the subject matter of the applicable representation, certification or affidavit.

"**Business Day**" means any day other than a Saturday, Sunday, or other day on which commercial banks are authorized or required to close under the Applicable Laws of the State of Kansas, or are in fact closed in the State of Kansas.

"**Closing**" means the closing of the transaction contemplated by this note in accordance with the Escrow Instructions.

"**Closing Certificate**" means the Closing Certificate executed by Borrower in favor of Lender and dated as of this note.

"**Closing Date**" means the date of the Closing.

Page **6** of **14**

Promissory Note (Note D)
Millenkamp
Loan No. 201559
109820221.3 0053564-00504

"**Collateral**" means the real and personal property encumbered by the Liens created under the Collateral Documents.

"**Collateral Documents**" means the Security Instrument and any other written instrument or agreement stating expressly that it secures any of the Obligations.

"**Control**" of a Person other than an individual means the power to direct the management and policies of that Person, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise, and the terms "Controlling", "Controlled" and "Controls" have meanings correlative to the foregoing.

"**Converted Treasury Yield**" means the yield available, or if there is more than one yield available, the average yields of United States Treasury non-callable bonds and notes having a maturity date closest to (before, on, or after) the applicable Rate Adjustment Date, if any, or the Loan Maturity Date (whichever date is next following the prepayment), as reported in the Wall Street Journal or similar publication on the 5th Business Day preceding the date Prepayment will be made (as calculated by Lender in its reasonable judgment), converted to an annualized yield which reflects the frequency of the interest payments made during a calendar year as calculated by Lender.

"**Drafting Conventions**" means the rules on interpretation specified in the section of this note captioned "Drafting Conventions."

"**Environmental Indemnity Agreement**" means the Unsecured Environmental Indemnity Agreement between Borrower and Lender dated as of the date of this note.

"**Escrow Agent**" means the company issuing lender's policy of title insurance with respect to the lien of the Security Instrument, or other Person appointed by Lender for purposes of the escrow closing of the Loan.

"**Escrow Instructions**" means Lender's written instructions to the Escrow Agent regarding the conditions precedent to the Closing.

"**Executive Officer**" means, as to any Person, the president, chief executive or operating officer, vice president or secretary of such Person.

"**Financial Information**" means all financial statements and other reports, documents, instruments, information and forms of evidence concerning Borrower, the Collateral, or any other fact or circumstance delivered to Lender in connection with this note or the other Loan Documents.

"**Funding Date**" means the date all or any portion of the proceeds of the Loan were delivered to the Escrow Agent, without regard to when Borrower actually receives the proceeds.

"**Governmental Authority**" means any nation or government, any state or other political subdivision thereof, any agency, authority, instrumentality, regulatory body, court, administrative tribunal, central bank or other entity exercising executive, legislative, judicial, taxing, regulatory or administrative powers or functions of or pertaining to government.

"**Indemnified Persons**" means Lender, Lender's Subsidiaries and Affiliates, and all officers, directors, agents, employees, servants, attorneys, and representatives of Lender or any Subsidiary or Affiliate of Lender.

"**Insolvency Proceeding**" means the insolvency of a Person, the appointment of a receiver of any part of Person's property, an assignment by a Person for the benefit of creditors, or the commencement of any proceeding under the Federal Bankruptcy Code or any other bankruptcy or insolvency law, by or against a Person.

"**Judgment**" means a judgment, order, writ, injunction, decree, or rule of any Governmental Authority or arbitrator.

"**Legal Fees**" means any and all counsel, attorney, paralegal and law clerk fees and disbursements including, but not limited to fees and disbursements at the pre-trial, trial, appellate, bankruptcy proceeding, discretionary review, or any other level.

"**Lien**" means any mortgage, deed of trust, deed to secure debt, pledge, assignment, deposit arrangement, privilege, encumbrance, lien (statutory or other), charge, or preference, priority or other security interest or preferential arrangement in the nature of a security interest of any kind or nature whatsoever (including any conditional sale or other title retention agreement, any easement, right of way or other encumbrance on title to real property, and any financing lease having substantially the same economic effect as any of the foregoing).

"**Loan Documents**" means this note, the Collateral Documents, the Closing Certificate, and all other agreements and instruments required by Lender for purposes of evidencing or securing the Loan provided, however, that the Loan Documents do not include the Environmental Indemnity Agreement.

"**Losses**" shall mean all liabilities, losses, charges, costs, damages (including foreseeable and unforeseeable consequential damages), debts, reasonable expenses, claims, and Professional Fees of any kind or of any nature whatsoever. For the purposes of this definition, such losses, costs and damages shall include remedial, removal, response, abatement, cleanup, legal, investigative and monitoring costs and related costs, expenses, losses, damages, penalties, fees, fines, obligations, defenses, judgments, awards, actions, suits, proceedings, disbursements, and amounts paid in settlement, of whatever kind or nature.

"**Material Adverse Effect**" means any set of circumstances or events which:  (1) in the case of a Person, (A) has or could reasonably be expected to have any material adverse effect as to the validity or enforceability of any Loan Document or any material term or condition therein against the applicable Person; (B) is or could reasonably be expected to be material and adverse to the financial condition, business assets, or operations of the applicable Person; or (C) materially impairs or could reasonably be expected to materially impair the ability of the applicable Person to perform the Obligations; or (2) in the case of real or personal property, materially impairs or could reasonably be expected to materially impair the market value of that property or the ability of Borrower or the grantor or trustor under any Collateral Document to continue their present use of that property and any other uses expressly described in the Loan Documents.

"**Maximum Rate**" means that rate per annum which, under Applicable Law, may be charged without subjecting Lender to civil or criminal liability, or limiting Lender's rights under the Loan Documents as a result of charging, reserving, taking or receiving a rate of interest in excess of the maximum interest rate which Borrower is permitted to contract or agree to pay; except that the Maximum Rate on any amount upon which Lender is not permitted to charge interest will be 0.0%.

"**Mortgaged Land**" means the "*Land*" as defined in the Security Instrument.

"**Obligations**" means all indebtedness, liabilities and obligations of Borrower to Lender arising pursuant to any of the Loan Documents, whether now existing or hereafter arising, whether direct, indirect, related, unrelated, fixed, contingent, liquidated, unliquidated, joint, several, or joint and several.

"**Original Payment Dates**" mean the dates on which the Prepaid principal would have been paid if there had been no Prepayment. If any of the principal would have been paid later than the end of the Interest Period in effect at the time of Prepayment, then the Original Payment Date for that amount will be the last day of the Interest Period.

"**Party**" means a named party to this note or another Loan Document, as the context requires.

"**Person**" means an individual, a corporation, limited liability company, partnership, joint venture, association, joint-stock company, trust, unincorporated organization, or other business entity, or a government or any agency or political subdivision thereof.

"**Prepaid**" means paid by means of a Prepayment.

"**Prepayment**" means a payment of all or a portion of the unpaid principal balance of the Loans prior to the date when due, whether voluntary, by reason of acceleration, or otherwise.

"**Professional Fees**" means: (1) Legal Fees; and (2) all other fees and disbursements of environmental engineers and other third-party consultants or professionals associated with the enforcement of Lender's rights and remedies of Lender under the Loan Documents.

"**Prohibited Transfer**" means any sale, contract to sell, conveyance, encumbrance, pledge, mortgage, lease, or other event or circumstance constituting a "Prohibited Transfer" as defined in the Security Instrument.

"**Real Estate Collateral**" means the Mortgaged Land and all other Collateral which is real property, as opposed to personal property, including any and all improvements located on the Mortgaged Land and all easements or other rights or interests benefiting the Mortgaged Land.

"**Security Instrument**" means that certain Mortgage, Assignment of Rents, Security Agreement and Fixture Filing executed by W. Millenkamp, S. Millenkamp, East Valley, Goose Ranch, Millenkamp Properties and Idaho Jersey in favor of Lender, dated as of September 26, 2018 and recorded October 1, 2018 as Instrument No. 2018-003845 in the records of Cassia County, Idaho, and as Instrument No. 2184031 in the records of Jerome County, Idaho, as modified by that certain First Amendment thereto dated as of April 15, 2020 and recorded April 15, 2020 as Instrument No. 2020-001707 in the records of Cassia County, Idaho, and as Instrument No. 2201724 in the records of Jerome County, Idaho, as further amended by that certain Second Amendment to Mortgage, Assignment of Rents, Security Agreement and Fixture Filing dated as of even date herewith to be recorded in Cassia and Jerome

Counties, Idaho, and as further modified or amended from time to time.

**"Subsidiary"** of a Person which is anything other than an individual means a business entity of which a majority of the shares of securities or other interests having ordinary voting power for the election of directors or other governing body are at the time beneficially owned, or the management of which is otherwise Controlled by that Person. Unless otherwise specified, all references to a "Subsidiary" or to "Subsidiaries" refer to any Subsidiary or Subsidiaries, if any.

**"UCC"** means the Uniform Commercial Code in the Governing Law State.

**"U.S. Treasury Reinvestment Rate"** means the U.S. Treasury Rate which Lender determines could be obtained by reinvesting a specified Prepaid installment payment in U.S. Treasury Securities maturing on the Original Payment Date.

**"Yield Maintenance Amount"** means an amount to compensate Lender for the present value of the difference between the rate at which the respective Loan or portion thereof being Prepaid and the U.S. Treasury Reinvestment Rate increased by the Reinvestment Spread, if any; and is equal to the lesser of (1) the Yield Maintenance Minimum Amount, if any; or (2) an amount determined by: (A) calculating the sum of the present values of all unpaid principal and interest payments required under the terms of the Loan being Prepaid through and including the Loan Maturity Date or the next applicable Rate Adjustment Date, if any (whichever is next following the date of Prepayment), including the present value of the outstanding principal balance as of such date (prior to the application of the principal being Prepaid), utilizing a discount rate equal to the Converted Treasury Yield, divided by the frequency of the interest payments made during a calendar year; and (B) subtracting from such sum the outstanding principal balance (prior to application of the principal being Prepaid) as of the date the Prepayment will be made; and (C) multiplying such remainder by the quotient of (A) the principal being Prepaid, divided by (B) the outstanding principal balance as of the date of prepayment (prior to application of the principal being Prepaid).

**Drafting Conventions**. Evidence of the occurrence or non-occurrence of any event, or the existence or non-existence of any circumstance to be delivered to Lender must be in a form satisfactory to Lender; and any report or document to be received by Lender must be in form and content satisfactory to Lender. Wherever: (1) Lender exercises any right given to it to approve or disapprove; (2) any arrangement or term is to be satisfactory to Lender; or (3) any other decision or determination is to be made by Lender, then except as may be otherwise expressly and specifically provided therein, the decision to approve or disapprove, all decisions that arrangements or terms are satisfactory or not satisfactory, and all other decisions and determinations made by Lender, will be in the sole discretion of Lender, without regard for the adequacy of any security for the Obligations. The words **"include,"** **"includes,"** and **"including"** are to be read as if they were followed by the phrase "without limitation"; headings and captions are provided for convenience only and do not affect the meaning of the text which follows; the definitions in this note apply equally to both singular and plural forms of the terms defined; and for purposes of computing periods of time from a specified date to a later specified date, the word **"from"** means "from and including" and the words **"to"** and **"until"** each mean "to but excluding;" and the term "upon demand" means "within three Business Days after written demand by Lender."

**Entire Agreement**. This note and the other Loan Documents, individually and collectively: (1) represent the sum of the understandings and agreements between Lender and Borrower concerning this credit; (2) replace any prior oral or written agreements between Lender and Borrower concerning this credit; and (3) are intended by Lender and Borrower as the final, complete and exclusive statement of the terms agreed to by them. In the event of any conflict between this note and any other agreements required by this note, this note will prevail.

**Joint and Several Obligations**. Each Person defined as Borrower: (1) expressly acknowledges that it has benefited and will benefit, directly and indirectly, from the Loan and acknowledges and undertakes, together with the other Borrowers, joint and several liability for the punctual payment when due, whether at stated maturity, by acceleration or otherwise, of all Obligations; (2) acknowledges that this note is the independent and several obligation of each Borrower and may be enforced against each Borrower separately, whether or not enforcement of any right or remedy hereunder has been sought against any other Borrower; and (3) agrees that its liability hereunder and under any other Loan Document is absolute, unconditional, continuing and irrevocable. BORROWER EXPRESSLY WAIVES ANY REQUIREMENT THAT LENDER EXHAUST ANY RIGHT, POWER OR REMEDY AND PROCEED AGAINST THE OTHER BORROWERS UNDER THIS NOTE, OR ANY OTHER LOAN DOCUMENTS,

OR AGAINST ANY OTHER PERSON UNDER ANY GUARANTY OF, OR SECURITY FOR, ANY OF THE OBLIGATIONS.

**Obligations of Married Persons**. Any Borrower who is a married Person signs this note on his or her own behalf and on behalf of Borrower's marital community, if any and agrees that recourse may be had against community assets, if any, and against Borrower's separate property for the satisfaction of all Indemnity Obligations.

**Successive Actions**. To the extent permitted by Applicable Law, separate and successive actions may be brought hereunder to enforce any of the provisions of this note and the other Loan Documents. No action hereunder shall prevent a subsequent action, and Borrower hereby waives and covenants not to assert any defense in the nature of splitting of causes of action or merger of judgments.

**Waiver of Right of Contribution**. Each Person defined as Borrower agrees that it will have no right of contribution (including any right of contribution under CERCLA) or subrogation against any other Person comprising Borrower under this note unless and until all Obligations have been paid, satisfied, and performed, in full. Each such Person further agrees, to the extent that the waiver of its rights of subrogation and contribution in this note is found by a court of competent jurisdiction to be void or voidable for any reason, any rights of subrogation or contribution that Person may have will be junior and subordinate to the rights of Lender against Borrower under this note.

**Authority to Bind Borrower**. Any Person defined as Borrower is authorized to bind all parties comprising Borrower. Without limitation of the foregoing, Lender may require any request, authorization, or other action by or on behalf of Borrower be by one or more individuals designated in writing by the parties comprising Borrower (a "**Designated Person**"). Lender may, at any time and without notice, waive any prior requirement that requests, authorizations, or other actions be taken only by a Designated Person.

**Binding Effect; Successors and Assigns**. The Loan Documents will inure to the benefit of and be binding upon the Parties and their respective successors and assigns.

**Assignment; Participations**. Borrower shall not assign its rights or obligations hereunder without Lender's consent. Lender may assign all or any portion of its interest in the Loan or under the Loan Documents, or grant participations therein, to any Person (each, a "**Loan Transferee**"). Lender may disclose to any actual or potential Loan Transferee any information that Borrower has delivered to Lender in connection with the Loan Documents; and Borrower shall cooperate fully with Lender in providing that information. Without limitation, Borrower shall within ten days after request from Lender, deliver to any Loan Transferee an estoppel certificate in form reasonably requested by Lender, and current or updated Financial Information.

**Severability**. Any provision of any Loan Document which is prohibited or unenforceable in any jurisdiction will, as to that jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions of that Loan Document or affecting the validity or enforceability of that provision in any other jurisdiction; except that if such provision relates to the payment of any monetary sum, then Lender may, at its option, declare all Obligations immediately due and payable.

**Amendments in Writing**. The Loan Documents may not be amended, changed, modified, altered or terminated without the prior written consent of all Parties to the respective Loan Document.

**Governing Law**. Except as expressly stated therein, the Loan Documents will be governed exclusively by the laws of the State of Idaho (the "**Governing Law State**") without regard or reference to its conflict of laws principles, except the perfection, priority and procedures for enforcement of liens on real property collateral for the Obligations will be governed by the Applicable Laws of the state where that real property is located.

**JURISDICTION AND VENUE**. BORROWER IRREVOCABLY AGREES THAT, AT THE OPTION OF LENDER, ALL ACTIONS, PROCEEDINGS OR COUNTERCLAIMS ARISING OUT OF OR RELATING TO THE LOAN DOCUMENTS WILL BE LITIGATED IN THE DISTRICT COURT IN AND FOR THE COUNTY IN WHICH THE MORTGAGED LAND IS LOCATED, OR THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO IN WHICH SUCH COUNTY IS LOCATED. BORROWER IRREVOCABLY CONSENTS TO SERVICE, JURISDICTION, AND VENUE OF THOSE COURTS FOR ALL SUCH ACTIONS, PROCEEDINGS AND COUNTERCLAIMS AND WAIVES ANY OTHER VENUE TO WHICH IT MIGHT BE ENTITLED BY VIRTUE OF DOMICILE, HABITUAL RESIDENCE OR OTHERWISE.

**Counterpart Execution**. The Loan Documents may be executed in counterparts, each of which will be an original and all of which together are deemed one and the same instrument.

Promissory Note (Note D)
Millenkamp
Loan No. 201559
109820221.3 0053564-00504

**Necessary Action**. Lender is authorized to execute any other documents or take any other actions necessary to effectuate the Loan Documents and the consummation of the transactions contemplated therein.

**Credit Report**. Lender is authorized to order a credit report and verify all other credit information, including past and present loans and standard references from time to time to evaluate the creditworthiness of Borrower. Without limitation, a copy of the consent for release of information, general authorization or similar document on file with Lender will authorize third Persons to provide the information requested from time to time.

**No Construction Against Drafter**. Each Party has participated in negotiating and drafting this note, so if an ambiguity or a question of intent or interpretation arises, this note is to be construed as if the Parties had drafted it jointly, as opposed to being construed against a Party because it was responsible for drafting one or more provisions of this note.

**GENERAL INDEMNIFICATION**. BORROWER SHALL DEFEND, INDEMNIFY AND HOLD INDEMNIFIED PERSONS HARMLESS AGAINST ANY AND ALL LOSSES OF ANY KIND OR NATURE WHATSOEVER THAT MAY BE IMPOSED ON, INCURRED BY, OR ASSERTED AGAINST THE INDEMNIFIED PERSONS: (1) INCURRED AS A RESULT OF THE FAILURE BY BORROWER TO BORROW THE AMOUNT SPECIFIED IN A LOAN REQUEST (INCLUDING ANY FAILURE RESULTING FROM THE FAILURE TO FULFILL THE APPLICABLE CONDITIONS PRECEDENT), INCLUDING ANY LOSS OF ANTICIPATED PROFITS AND LOSSES BY REASON OF THE LIQUIDATION OR REEMPLOYMENT OF DEPOSITS OR OTHER FUNDS ACQUIRED BY LENDER TO FUND THE LOAN; (2) AS A RESULT OF ITS ACTS OR OMISSIONS WHICH RESULT FROM COMMUNICATIONS GIVEN OR PURPORTED TO BE GIVEN, BY BORROWER OR ANY DESIGNATED PERSON, WHICH ARE INTERRUPTED, WHICH ARE MISUNDERSTOOD, OR WHICH ARE IN FACT FROM UNAUTHORIZED PERSONS; (3) ARISING OUT OF OR RESULTING FROM THE VIOLATION BY BORROWER OF ANY ENVIRONMENTAL LAW; (4) RESULTING FROM THE RELIANCE BY LENDER ON EACH NOTICE PURPORTEDLY GIVEN BY OR ON BEHALF OF BORROWER; AND (5) ARISING OUT OF CLAIMS ASSERTED AGAINST THE INDEMNIFIED PERSONS AS A RESULT OF LENDER BEING PARTY TO THIS NOTE OR THE TRANSACTIONS CONSUMMATED PURSUANT TO THIS NOTE; EXCEPT THAT BORROWER SHALL HAVE NO OBLIGATION TO AN INDEMNIFIED PERSON UNDER THIS SECTION WITH RESPECT TO LOSSES RESULTING FROM THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF THAT INDEMNIFIED PERSON AS DETERMINED BY A COURT OF COMPETENT JURISDICTION. IF AND TO THE EXTENT THAT ANY INDEMNITY UNDER THE LOAN DOCUMENTS IN FAVOR OF INDEMNIFIED PERSONS IS UNENFORCEABLE FOR ANY REASON, BORROWER SHALL MAKE THE MAXIMUM CONTRIBUTION TO THE PAYMENT AND SATISFACTION THEREOF WHICH IS PERMISSIBLE UNDER APPLICABLE LAW. ALL INDEMNITIES UNDER THE LOAN DOCUMENTS IN FAVOR OF INDEMNIFIED PARTIES SHALL SURVIVE THE TERMINATION OF THIS NOTE.

**WAIVER OF TRIAL BY JURY**. TO THE EXTENT PERMITTED BY APPLICABLE LAW, THE PARTIES: (1) COVENANT AND AGREE NOT TO ELECT A TRIAL BY JURY IN ANY ACTION OR PROCEEDING FOR THE RESOLUTION OF ANY CONTROVERSY OR CLAIM THAT ARISES OUT OF OR RELATES TO: (A) THIS NOTE; OR (B) ANY OTHER LOAN DOCUMENT, WHETHER ARISING IN CONTRACT, TORT OR BY STATUTE (INDIVIDUALLY AND COLLECTIVELY, A "**CONTROVERSY OR CLAIM**"); AND (2) WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY CONTROVERSY OR CLAIM TO THE EXTENT SUCH RIGHT EXISTS NOW OR IN THE FUTURE. THE PROVISIONS OF THIS SECTION ARE SEPARATELY GIVEN BY EACH PARTY KNOWINGLY AND VOLUNTARILY AND ARE A MATERIAL INDUCEMENT FOR LENDER ENTERING INTO THE LOAN DOCUMENTS.

**Office of Foreign Assets Control; Patriot Act**. Without limiting the provisions of any other provision hereof, Borrower shall, and Borrower shall cause each of its Subsidiaries to: (1) ensure that no Person who owns a Controlling interest in or otherwise Controls such Person is listed on the Specially Designated Nationals and Blocked Person List or other similar lists maintained by the Office of Foreign Assets Control ("**OFAC**"), the Department of the Treasury or included in any Executive Orders; (2) not use or permit the use of the proceeds of the Loan to violate any of the foreign asset control regulations of OFAC or any enabling statute or Executive Order relating thereto; and (3) comply with all applicable Bank Secrecy Act laws and regulations, as amended. As required by federal law and Lender's policies and practices, Lender may need to obtain, verify and record certain Borrower identification information and documentation in connection with opening or

maintaining accounts, or establishing or continuing to provide services.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

[SIGNATURE PAGE TO PROMISSORY NOTE]

Borrower has executed this note effective as of the date first written above.

**BORROWER**

Address for notices:
471 North 300 West
Jerome, Idaho  83338

_/s/ William John Millenkamp_
WILLIAM JOHN MILLENKAMP

Address for notices:
471 North 300 West
Jerome, Idaho  83338

_/s/ Susan Jo Millenkamp_
SUSAN JO MILLENKAMP

Address for notices:
471 North 300 West
Jerome, Idaho  83338

**EAST VALLEY CATTLE, LLC**,
an Idaho limited liability company

By: _/s/ William J. Millenkamp_
WILLIAM J. MILLENKAMP
Member

Address for notices:
471 North 300 West
Jerome, Idaho  83338

**IDAHO JERSEY GIRLS JEROME DAIRY LLC**,
an Idaho limited liability company

By: _/s/ William J. Millenkamp_
WILLIAM J. MILLENKAMP
Manager

Address for notices:
471 North 300 West
Jerome, Idaho  83338

**GOOSE RANCH LLC**,
an Idaho limited liability company

By:    Millenkamp Family LLC,
       an Idaho limited liability company
       its sole member

       By: _/s/ William J. Millenkamp_
       WILLIAM J. MILLENKAMP
       Manager

[Signatures continue on following page]

Page 13 of 14

Promissory Note (Note D)
Millenkamp
Loan No. 201559
109820221.3 0053564-00504

Address for notices:
471 North 300 West
Jerome, Idaho 83338

**MILLENKAMP PROPERTIES, L.L.C.**,
an Idaho limited liability company

By:   Millenkamp Family LLC,
      an Idaho limited liability company
      its sole member

      By: _____
           WILLIAM J. MILLENKAMP
           Manager

Address for notices:
471 North 300 West
Jerome, Idaho 83338

**MILLENKAMP CATTLE, INC.**,
an Idaho corporation

By: _____
WILLIAM J. MILLENKAMP
President

By: _____
SUSAN J. MILLENKAMP
Secretary

Address for notices:
471 North 300 West
Jerome, Idaho 83338

**MILLENKAMP FAMILY LLC**,
an Idaho limited liability company

By: _____
WILLIAM J. MILLENKAMP
Manager

Address for notices:
471 North 300 West
Jerome, Idaho 83338

**MILLENKAMP PROPERTIES II LLC**,
an Idaho limited liability company

By:   Millenkamp Family LLC,
      an Idaho limited liability company
      its sole member

      By: _____
           WILLIAM J. MILLENKAMP
           Manager

Promissory Note (Note D)
Millenkamp
Loan No. 201559
109820221.3 0053564-00504