CASSIA COUNTY
RECORDED FOR:
TITLEONE - BURLEY
04:10:34 PM 10-20-2022
**2022-004550**
NO. PAGES: 45    FEE: $65.00
**JOSEPH W. LARSEN
COUNTY CLERK
DEPUTY: EV**
Electronically Recorded by Simplifile

RECORDING REQUESTED BY AND
WHEN RECORDED RETURN TO:

Metropolitan Life Insurance Company
Attn: Roberta Black
10801 Mastin Blvd., Suite 700
Overland Park, KS 66210

## Subordination and Intercreditor Agreement

This Subordination and Intercreditor Agreement ("**Agreement**") is made as of this 20th day of October, 2022 by and between MetLife Real Estate Lending LLC ("**MREL**") and Metropolitan Life Insurance Company ("**MLIC**," and collectively with MREL, "**First Lender**"), having a place of business at 10801 Mastin Blvd., Suite 700, Overland Park, KS 66210, and Rabo Agrifinance LLC, a Delaware limited liability company, in its capacity as agent for the benefit of certain lenders and other secured parties ("**Second Lender**"), with offices at 14767 North Outer 40 Road, Suite 400, Chesterfield, MO 63017.

### Recitals:

A.  First Lender is the owner and holder of certain commercial real estate loans (collectively, the "**First Lender's Loans**") made by Lender to William John Millenkamp, Susan Jo Millenkamp, East Valley Cattle, LLC, Idaho Jersey Girls LLC, Idaho Jersey Girls Jerome Dairy LLC, Goose Ranch LLC, Millenkamp Properties, L.L.C., Millenkamp Cattle, Inc., Millenkamp Family LLC, and Millenkamp Properties II, LLC. The Loans are evidenced in part by (i) that certain Promissory Note A, dated as of September 26, 2018, in the original principal amount of $106,000,000.00 (as anytime amended, restated, replaced, supplemented, or otherwise modified, "**Note A**"), the makers of which are William John Millenkamp, Susan Jo Millenkamp, East Valley Cattle, LLC ("**East Valley**"), Idaho Jersey Girls Jerome Dairy LLC ("**Jersey Girls Dairy**"), Goose Ranch LLC ("**Goose Ranch**"), Millenkamp Properties, L.L.C. ("**Millenkamp Properties**"), Millenkamp Cattle, Inc. ("**Cattle Inc.**"), and Millenkamp Family LLC ("**Family LLC**"); (ii) that certain Promissory Note B, dated as of September 26, 2018, in the original principal amount of $59,400,000.00 (as anytime amended, restated, replaced, supplemented, or otherwise modified, "**Note B**"), the makers of which are William John Millenkamp, Susan Jo Millenkamp, East Valley, Jersey Girls Dairy, Goose Ranch, Millenkamp Properties, Cattle Inc., and Family LLC; (iii) that certain Promissory Note C, dated as of April 15, 2020, in the original principal amount of $13,000,000.00 (as anytime amended, restated, replaced, supplemented, or otherwise modified, "**Note C**"), the makers of which

TWIN FALLS COUNTY
RECORDED FOR:
TITLEONE - BURLEY
03:45:40 PM  10-20-2022
**2022018720**
NO. PAGES 45      FEE: $142.00
KRISTINA GLASCOCK
COUNTY CLERK
DEPUTY: CT
Electronically Recorded by Simplifile

RECORDING REQUESTED BY AND
WHEN RECORDED RETURN TO:

Metropolitan Life Insurance Company
Attn: Roberta Black
10801 Mastin Blvd., Suite 700
Overland Park, KS 66210

## Subordination and Intercreditor Agreement

This Subordination and Intercreditor Agreement ("**Agreement**") is made as of this 20th day of October, 2022 by and between MetLife Real Estate Lending LLC ("**MREL**") and Metropolitan Life Insurance Company ("**MLIC**," and collectively with MREL, "**First Lender**"), having a place of business at 10801 Mastin Blvd., Suite 700, Overland Park, KS 66210, and Rabo Agrifinance LLC, a Delaware limited liability company, in its capacity as agent for the benefit of certain lenders and other secured parties ("**Second Lender**"), with offices at 14767 North Outer 40 Road, Suite 400, Chesterfield, MO 63017.

### Recitals:

A.   First Lender is the owner and holder of certain commercial real estate loans (collectively, the "**First Lender's Loans**") made by Lender to William John Millenkamp, Susan Jo Millenkamp, East Valley Cattle, LLC, Idaho Jersey Girls LLC, Idaho Jersey Girls Jerome Dairy LLC, Goose Ranch LLC, Millenkamp Properties, L.L.C., Millenkamp Cattle, Inc., Millenkamp Family LLC, and Millenkamp Properties II, LLC.  The Loans are evidenced in part by (i) that certain Promissory Note A, dated as of September 26, 2018, in the original principal amount of $106,000,000.00 (as anytime amended, restated, replaced, supplemented, or otherwise modified, "**Note A**"), the makers of which are William John Millenkamp, Susan Jo Millenkamp, East Valley Cattle, LLC ("**East Valley**"), Idaho Jersey Girls Jerome Dairy LLC ("**Jersey Girls Dairy**"), Goose Ranch LLC ("**Goose Ranch**"), Millenkamp Properties, L.L.C. ("**Millenkamp Properties**"), Millenkamp Cattle, Inc. ("**Cattle Inc.**"), and Millenkamp Family LLC ("**Family LLC**"); (ii) that certain Promissory Note B, dated as of September 26, 2018, in the original principal amount of $59,400,000.00 (as anytime amended, restated, replaced, supplemented, or otherwise modified, "**Note B**"), the makers of which are William John Millenkamp, Susan Jo Millenkamp, East Valley, Jersey Girls Dairy, Goose Ranch, Millenkamp Properties, Cattle Inc., and Family LLC; (iii) that certain Promissory Note C, dated as of April 15, 2020, in the original principal amount of $13,000,000.00 (as anytime amended, restated, replaced, supplemented, or otherwise modified, "**Note C**"), the makers of which

1

Subordination and Intercreditor Agreement
Millenkamp

Instrument # 2224757
JEROME COUNTY, JEROME, IDAHO
10-20-2022    03:43:25 PM    No. of Pages: 45
Recorded for: TITLEONE - BURLEY
MICHELLE EMERSON    Fee: $142.00
Ex-Officio Recorder Deputy: jw
Electronically Recorded by Simplifile

RECORDING REQUESTED BY AND
WHEN RECORDED RETURN TO:

Metropolitan Life Insurance Company
Attn: Roberta Black
10801 Mastin Blvd., Suite 700
Overland Park, KS 66210

## Subordination and Intercreditor Agreement

This Subordination and Intercreditor Agreement ("**Agreement**") is made as of this 20th day of October, 2022 by and between MetLife Real Estate Lending LLC ("**MREL**") and Metropolitan Life Insurance Company ("**MLIC**," and collectively with MREL, "**First Lender**"), having a place of business at 10801 Mastin Blvd., Suite 700, Overland Park, KS 66210, and Rabo Agrifinance LLC, a Delaware limited liability company, in its capacity as agent for the benefit of certain lenders and other secured parties ("**Second Lender**"), with offices at 14767 North Outer 40 Road, Suite 400, Chesterfield, MO 63017.

## Recitals:

A.  First Lender is the owner and holder of certain commercial real estate loans (collectively, the "**First Lender's Loans**") made by Lender to William John Millenkamp, Susan Jo Millenkamp, East Valley Cattle, LLC, Idaho Jersey Girls LLC, Idaho Jersey Girls Jerome Dairy LLC, Goose Ranch LLC, Millenkamp Properties, L.L.C., Millenkamp Cattle, Inc., Millenkamp Family LLC, and Millenkamp Properties II, LLC. The Loans are evidenced in part by (i) that certain Promissory Note A, dated as of September 26, 2018, in the original principal amount of $106,000,000.00 (as anytime amended, restated, replaced, supplemented, or otherwise modified, "**Note A**"), the makers of which are William John Millenkamp, Susan Jo Millenkamp, East Valley Cattle, LLC ("**East Valley**"), Idaho Jersey Girls Jerome Dairy LLC ("**Jersey Girls Dairy**"), Goose Ranch LLC ("**Goose Ranch**"), Millenkamp Properties, L.L.C. ("**Millenkamp Properties**"), Millenkamp Cattle, Inc. ("**Cattle Inc.**"), and Millenkamp Family LLC ("**Family LLC**"); (ii) that certain Promissory Note B, dated as of September 26, 2018, in the original principal amount of $59,400,000.00 (as anytime amended, restated, replaced, supplemented, or otherwise modified, "**Note B**"), the makers of which are William John Millenkamp, Susan Jo Millenkamp, East Valley, Jersey Girls Dairy, Goose Ranch, Millenkamp Properties, Cattle Inc., and Family LLC; (iii) that certain Promissory Note C, dated as of April 15, 2020, in the original principal amount of $13,000,000.00 (as anytime amended, restated, replaced, supplemented, or otherwise modified, "**Note C**"), the makers of which

RECORDING REQUESTED BY AND
WHEN RECORDED RETURN TO:

Metropolitan Life Insurance Company
Attn: Roberta Black
10801 Mastin Blvd., Suite 700
Overland Park, KS 66210

## Subordination and Intercreditor Agreement

This Subordination and Intercreditor Agreement ("**Agreement**") is made as of this 20th day of October, 2022 by and between MetLife Real Estate Lending LLC ("**MREL**") and Metropolitan Life Insurance Company ("**MLIC**," and collectively with MREL, "**First Lender**"), having a place of business at 10801 Mastin Blvd., Suite 700, Overland Park, KS 66210, and Rabo Agrifinance LLC, a Delaware limited liability company, in its capacity as agent for the benefit of certain lenders and other secured parties ("**Second Lender**"), with offices at 14767 North Outer 40 Road, Suite 400, Chesterfield, MO 63017.

### Recitals:

A.  First Lender is the owner and holder of certain commercial real estate loans (collectively, the "**First Lender's Loans**") made by Lender to William John Millenkamp, Susan Jo Millenkamp, East Valley Cattle, LLC, Idaho Jersey Girls LLC, Idaho Jersey Girls Jerome Dairy LLC, Goose Ranch LLC, Millenkamp Properties, L.L.C., Millenkamp Cattle, Inc., Millenkamp Family LLC, and Millenkamp Properties II, LLC. The Loans are evidenced in part by (i) that certain Promissory Note A, dated as of September 26, 2018, in the original principal amount of $106,000,000.00 (as anytime amended, restated, replaced, supplemented, or otherwise modified, "**Note A**"), the makers of which are William John Millenkamp, Susan Jo Millenkamp, East Valley Cattle, LLC ("**East Valley**"), Idaho Jersey Girls Jerome Dairy LLC ("**Jersey Girls Dairy**"), Goose Ranch LLC ("**Goose Ranch**"), Millenkamp Properties, L.L.C. ("**Millenkamp Properties**"), Millenkamp Cattle, Inc. ("**Cattle Inc.**"), and Millenkamp Family LLC ("**Family LLC**"); (ii) that certain Promissory Note B, dated as of September 26, 2018, in the original principal amount of $59,400,000.00 (as anytime amended, restated, replaced, supplemented, or otherwise modified, "**Note B**"), the makers of which are William John Millenkamp, Susan Jo Millenkamp, East Valley, Jersey Girls Dairy, Goose Ranch, Millenkamp Properties, Cattle Inc., and Family LLC; (iii) that certain Promissory Note C, dated as of April 15, 2020, in the original principal amount of $13,000,000.00 (as anytime amended, restated, replaced, supplemented, or otherwise modified, "**Note C**"), the makers of which

are William John Millenkamp, Susan Jo Millenkamp, East Valley, Jersey Girls Dairy, Goose Ranch, Millenkamp Properties, Cattle Inc., Family LLC, and Millenkamp Properties II LLC ("**Millenkamp Properties II**"); (iv) that certain Promissory Note D, dated as of April 21, 2021, in the original principal amount of $17,954,226.00 (as anytime amended, restated, replaced, supplemented, or otherwise modified, "**Note D**"), the makers of which are William John Millenkamp, Susan Jo Millenkamp, East Valley, Jersey Girls Dairy, Goose Ranch, Millenkamp Properties, Cattle Inc., Family LLC, and Millenkamp Properties II; (v) that certain Promissory Note E, dated as of April 21, 2021, in the original principal amount of $15,978,409.00 (as anytime amended, restated, replaced, supplemented, or otherwise modified, "**Note E**"), the makers of which are William John Millenkamp, Susan Jo Millenkamp, East Valley, Jersey Girls Dairy, Goose Ranch, Millenkamp Properties, Cattle Inc., Family LLC, and Millenkamp Properties II; and (vi) that certain Promissory Note, dated as of March 12, 2019, in the original principal amount of $5,508,350.00 (as anytime amended, restated, replaced, supplemented, or otherwise modified, the "**199858 Note**," and collectively with Note A, Note B, Note C, Note D, and Note E, the "**First Lender's Notes**"), the makers of which are William John Millenkamp, Susan Jo Millenkamp, East Valley, Jersey Girls Dairy, Goose Ranch, Millenkamp Properties, Cattle Inc., Family LLC, Millenkamp Properties II, and Idaho Jersey Girls LLC ("**Jersey Girls LLC**"). William John Millenkamp, Susan Jo Millenkamp, East Valley, Jersey Girls Dairy, Goose Ranch, Millenkamp Properties, Cattle Inc., Family LLC, Millenkamp Properties II and Jersey Girls LLC are each, individually, a "**Debtor**," and are collectively referred to herein as the "**Debtors**."

B.  As security for Note A, Note B, Note C, Note D, and Note E, William John Millenkamp, Susan Jo Millenkamp, East Valley, Jersey Girls Dairy, Goose Ranch and Millenkamp Properties executed that certain Mortgage, Assignment of Rents, Security Agreement and Fixture Filing, dated as of September 26, 2018 and recorded in the Official Records of Cassia County, Idaho, under Document No. 2018-003845, and in the Official Records of Jerome County, Idaho, under Document No. 2184031, as amended by that certain First Amendment dated April 15, 2020 and recorded in the Official Records of Cassia County, Idaho, under Document No. 2020-001707, and in the Official Records of Jerome County, Idaho, under Document No. 2201724, as amended by that certain Second Amendment dated April 21, 2021 and recorded in the Official Records of Cassia County, Idaho, under Document No. 2021-002100, and in the Official Records of Jerome County, Idaho, under Document No. 2212265 (as anytime further amended, restated, replaced, supplemented, or otherwise modified, the "**2018 Mortgage**"), pursuant to which MREL is the holder of a first-priority lien on certain real property described therein and improvements thereon (the "**2018 Mortgage Real Property**," legally described on <u>Exhibit A-1</u> hereto), and on certain other collateral (as more particularly described in the 2018 Mortgage and amendments thereto, collectively, the "**2018 Mortgage Property**").

C.  As security for the 199858 Note, William John Millenkamp, Susan Jo Millenkamp, East Valley, Jersey Girls Dairy, Jersey Girls LLC, Goose Ranch, Millenkamp Properties, Cattle Inc., Family LLC, and Millenkamp Properties II executed that certain Mortgage, Assignment of Rents, Security Agreement and Fixture Filing, dated as of March 12, 2019 and recorded in the Official Records of Jerome County, Idaho, under Document No.

2190993, and in the Official Records of Twin Falls, Idaho, under Document No. 2019003382 (as anytime amended, restated, replaced, supplemented, or otherwise modified, the "**2019 Mortgage**," and collectively with the 2018 Mortgage, the "**First Lender's Mortgages**"), pursuant to which MLIC is the holder of a first-priority lien on certain real property described therein and improvements thereon (the "**2019 Mortgage Real Property**," legally described on Exhibit A-2 hereto), and collectively with the 2018 Mortgage Real Property, the "**Real Property**"), and on certain other collateral (as more particularly described in the 2019 Mortgage and amendments thereto, collectively, the "**2019 Mortgage Property**," and collectively with the 2018 Mortgage Property, the "**Property**").

D. In connection with the First Lender's Notes, Debtors executed that certain Cross Default Agreement, dated as of March 12, 2019 (as anytime amended, restated, replaced, supplemented, or otherwise modified, the "**Cross Default Agreement**"), pursuant to which Debtors agreed, among other things, that a default under any of the First Lender's Notes shall constitute a default under all of the First Lender's Notes.

E. The First Lender's Notes, the First Lender's Mortgages, and all other existing or future documents evidencing, securing, or executed in connection with the First Lender's Loans, together with all documents that now or hereafter modify, amend, extend, restate, replace, or otherwise affect the First Lender's Loans or any of the foregoing documents, are hereinafter sometimes collectively referred to as the "**First Lender's Loan Documents**." First Lender is the owner and holder of the First Lender's Loan Documents.

F. First Lender and Second Lender have previously entered into that certain Intercreditor Agreement dated as of September 18, 2018 and recorded on October 1, 2018 in the Official Records of Cassia County, Idaho, as Document No. 2018-003947, and in the Official Records of Jerome County, Idaho, as Document No. 2184033, as amended by that certain First Amendment thereto dated as of July 10, 2019 and recorded in the Official Records of Cassia County, Idaho, as Document No. 2019002759, in the Official Records of Gooding County, Idaho, as Instrument No. 265476, and in the Official Records of Jerome County, Idaho, as Document No. 2193388, as further amended by that certain Second Amendment thereto dated as of April 15, 2020 and recorded in the Official Records of Cassia County, Idaho, as Document No. 2020-001709, and in the Official Records of Jerome County, Idaho, as Document No. 2201726, and as further amended by that certain Third Amendment thereto dated as of April 21, 2021 and recorded in the Official Records of Cassia County, Idaho, as Document No. 2021-002100, and in the Official Records of Jerome County, Idaho, as Document No. 2212267 (as amended, the "**2018 Intercreditor Agreement**").

G. First Lender has agreed to enter into this Agreement to assist Debtors in obtaining or having continued financial accommodations, whether by way of loan, commitment to loan, extension of credit or otherwise, from Second Lender, which financial accommodations are or will be secured by, among other things, a mortgage made by Debtors in favor of Second Lender with respect to all or a part of the Property (as it may

be amended or extended from time to time, collectively, the "**Second Lender's Mortgage**").

H. Second Lender serves as administrative agent for the benefit and on behalf of certain financial institutions as lenders and other secured parties, which, along with Debtors and certain of their affiliates and other related parties, are parties to that certain Third Amended and Restated Loan and Security Agreement, dated April 21, 2021 (that agreement, and any other documents relating to, evidencing, or securing such loan, as may be amended, restated, or modified from time to time, collectively the "**Second Lender's Loan Documents**").

As an inducement to and in consideration of Second Lender's forbearance from exercising remedies against Debtors relating to existing defaults, and other good and valuable consideration, the receipt and sufficiency of which are acknowledged, the parties agree as follows:

1. First Lender stipulates and agrees that the term "Property," as used herein, shall not include (i) Crops, (ii) Milk Receivables, (iii) Rolling Stock, (iv) RAF Priority Collateral, (v) MetLife Personal Property Collateral, and (vi) any other Collateral pledged to Second Lender (as each such capitalized term used within the foregoing clauses (i) through (vi) is defined in the 2018 Intercreditor Agreement) (the foregoing clauses (i) through (vi), collectively, the "**2018 Intercreditor Agreement Collateral**"). First Lender and Second Lender stipulate and agree that notwithstanding anything to the contrary herein, the 2018 Intercreditor Agreement shall exclusively control the First Lender's and Second Lender's rights with respect to the 2018 Intercreditor Agreement Collateral, and to the extent of any conflict or inconsistency between the terms and conditions of this Agreement and the terms and conditions of the 2018 Intercreditor Agreement, the 2018 Intercreditor Agreement shall control.

2. First Lender has consented to the granting of Second Lender's Mortgage on the Property, and acknowledges that the granting of Second Lender's Mortgage on the Property is not a default under First Lender's Mortgages or First Lender's Loan Documents (or such default is hereby waived in this instance only) and does not give rise to a right to accelerate the maturity of any indebtedness secured or evidenced by First Lender's Mortgages (or such acceleration is hereby waived in this instance only).

3. Second Lender's Mortgage and all right, title and interest (now existing or later acquired) including but not limited to liens, security interests, collateral assignments and rights to payment, of Second Lender in the Property is and shall always be fully and unconditionally subject and subordinate to First Lender's Mortgages and all right, title and interest (now existing or later acquired), including but not limited, to liens, security interests, collateral assignments, and rights to payment, of First Lender in the Property, including, without limitation, as to all of the present and future indebtedness and obligations now or hereafter evidenced or secured by First Lender's Loan Documents in accordance with this Agreement and the 2018 Intercreditor Agreement (the "**First Lender's Indebtedness**").

4

Further, in the event and to the extent that both First Lender and Second Lender have under their respective loan documents certain approval or consent rights over the Property, Second Lender agrees that First Lender may exercise the approval rights set forth in First Lender's Loan Documents and Second Lender shall follow the decision of First Lender with respect to any such action or approval made by First Lender; provided that the foregoing shall not apply to any act or consent that would directly subordinate or otherwise have the effect of subordinating the priority (both the lien and payment) of Second Lender's Mortgage or Second Lender's rights under the 2018 Intercreditor Agreement (the "**Anti-Subordination Limitation**."). Without limiting the generality of the foregoing, First Lender shall have all approval, consent and oversight rights in connection with any partial releases of the liens securing First Lender's Indebtedness under First Lender's Loan Documents with respect to the Property, insurance claims or condemnation matters relating to the Property, any decisions regarding the use of such insurance proceeds after a casualty loss or condemnation action, the leasing of the Property or any portion thereof, or otherwise related in any way to the Property or First Lender's Indebtedness, except to the extent that the exercise of such consent, approval, or oversights is prohibited by law or the 2018 Intercreditor Agreement. Second Lender agrees to reasonably cooperate with First Lender in executing and delivering any partial releases of the Property from Second Lender's Mortgage or endorsing any payments representing insurance or condemnation proceeds, within such reasonable period as requested by First Lender.

In addition to the foregoing, First Lender may make such advances and payments under First Lender's Loan Documents as First Lender deems reasonably necessary to preserve and protect the Property. Subject to the Anti-Subordination Limitation, First Lender may also, as it deems appropriate in its sole discretion, increase the principal amount of any of First Lender's Loans to an amount such that the aggregate principal owed on First lender's Loans does not exceed 75% of the loan-to-value ratio based on the then-existing appraised aggregate value of the Property, which, as increased, shall remain secured by First Lender's Mortgages. Second Lender agrees that Second Lender's rights and interests with respect to any Property on which First Lender then holds the senior lien pursuant to this Agreement shall continue to be subordinated to such advances, payments and principal amount increases, as provided for herein.

4. The relative priorities of the parties in the Property as set forth in this Agreement shall control irrespective of the time, order or method of attachment or perfection of the liens or security interests granted in the Property by Debtors or acquired by the parties. The priorities of any liens or security interests of the parties in any assets of Debtors other than the Property are not affected by this Agreement and shall be subject to the 2018 Intercreditor Agreement. Without limiting the priorities set forth in Paragraph 3 above, the priorities of the parties in the Property as set forth in this Agreement govern the ultimate control and disposition of casualty insurance and condemnation proceeds and rents from the Property.

5. Without First Lender's prior written consent, except for protective advances, Second Lender shall not increase the principal amount of the loans secured by Second Lender's

Mortgage. Any such increases (other than protective advances) made in violation of this provision shall not be secured by Second Lender's Mortgage.

6. The agreements contained herein shall continue in full force and effect until all Debtors' obligations and liabilities to either of First Lender or Second Lender, as applicable, are paid and satisfied in full and all corresponding financing arrangements, liens, and security interests are terminated and/or released. At such time, First Lender and Second Lender, as applicable, shall execute and deliver to the other any reasonable documentation evidencing such releases and the termination of this Agreement.

7. All notices under this Agreement shall be in writing and sent to First Lender as set forth in the top left corner of page 1 of this Agreement and to Second Lender at its address as set forth above, or as changed by either party from time to time by written notice in accordance with this paragraph.

8. This Agreement shall be applicable both before and after the filing of any bankruptcy petition by or against any Debtor under any existing or future law of any jurisdiction relating to bankruptcy, insolvency, reorganization or relief of debtors (a "**Proceeding**"), and all references to Debtors shall be deemed to apply to a trustee for Debtors and Debtors as debtors-in-possession, and all allocations of payments between First Lender and Second Lender shall, subject to any court order approving the financing of Debtors as debtors-in-possession, continue to be made after the bankruptcy petition filing on the same basis that the payments were to be applied prior to the filing subject to the terms hereof and the 2018 Intercreditor Agreement.

If Second Lender is a creditor of any of the Debtors in any Proceeding, Second Lender shall not challenge the validity or amount of any claim arising under First Lender's Loan Documents submitted in good faith by First Lender or any valuations of the Property or any portion thereof submitted in good faith by First Lender, or take any other action in such Proceeding which is adverse to (i) First Lender's enforcement of its claim with respect to First Lender's Indebtedness in respect of the Property or (ii) First Lender's receipt of adequate protection (as such term is defined in the Bankruptcy Code and interpreted in the jurisdiction in which the Proceeding is pending) in respect to the Property, subject to the 2018 Intercreditor Agreement and to the extent permitted by the Bankruptcy Code.

If First Lender is a creditor of any of the Debtors in any Proceeding, First Lender shall not challenge the validity or amount of any claim arising under Second Lender's Loan Document submitted in good faith by Second Lender or any valuations of the RAF Collateral (as defined in the 2018 Intercreditor Agreement), or any portion thereof submitted in good faith by Second Lender, or take any other action in such Proceeding which is adverse to (i) Second Lender's enforcement of its claim with respect to any indebtedness Debtors owe to Second Lenders in respect of the RAF Collateral or (ii) Second Lender's receipt of adequate protection (as such term is defined in the Bankruptcy Code and interpreted in the jurisdiction in which the Proceeding is pending)

in respect to the RAF Collateral, subject to the 2018 Intercreditor Agreement and to the extent permitted by the Bankruptcy Code.

9. Second Lender hereby further covenants and agrees, for itself and all who may claim through it (and this covenant shall be a real property covenant running with the Property), that, except as set forth herein below, until such time as all of First Lender's Indebtedness is indefeasibly paid and discharged in full and no further advances can be made by First Lender to Debtors, Second Lender shall not take any action to commence foreclosure of its liens on or security interest in any of the Property, accept a deed in lieu of foreclosure or pursue any other remedies under Second Lender's Mortgage without the prior express written consent from First Lender, which First Lender may give or withhold in its sole and absolute discretion. Second Lender agrees to give First Lender a copy of any notice of default which Second Lender gives any of the Debtors under the Second Lender's Mortgage simultaneously with the giving of such notice to Debtors. First Lender shall have the right, but not the obligation, to cure such default within thirty (30) days of notice of Debtors' default, but First Lender shall at no time be obligated to cure or to continue to cure such default.

10. A default by Debtors under Second Lender's Mortgage shall at First Lender's option be a default under First Lender's Loan Documents. Second Lender waives all rights to require First Lender to marshal the Property for First Lender's Indebtedness or any other property First Lender may at any time have as security for First Lender's Indebtedness, and waives all right to require First Lender to proceed first against any guarantor or other person before proceeding against the Property. Second Lender shall not contest the validity, priority or perfection of First Lender's lien, security interest or other interest in the Property. The priorities of First Lender and Second Lender in the Property shall be in accordance with this Agreement, regardless of whether First Lender's security interest or lien on the Property is valid or perfected. First Lender may take action to foreclose or otherwise realize upon, or protect its interest in, the Property, in accordance with its agreements with Debtors or such other party, at any time, without the consent of Second Lender, and Second Lender agrees not to interfere in a manner which would defeat the purpose of this Agreement in connection therewith; provided that nothing contained in this Agreement shall limit Second Lender's rights and remedies under the 2018 Intercreditor Agreement to the extent First Lender's actions constitute a breach thereof. Second Lender shall not acquire, by subrogation or otherwise, any lien, estate, right or other interest in the Property that is or may be prior in right to First Lender's Mortgages.

First Lender shall not contest the validity, priority or perfection of Second Lender's lien, security interest, or other interest in the Property or the RAF Collateral. Nothing contained herein shall limit First Lender's rights and remedies under the 2018 Intercreditor Agreement to the extent Second Lender's actions constitute a breach thereof. First Lender shall not acquire, by subrogation or otherwise, any additional lien, estate, right or other interest in the RAF Collateral that is or may be prior in right to Second Lender's security interests, except to the extent otherwise explicitly allowed under the 2018 Intercreditor Agreement. For the avoidance of doubt, the MetLife Milk

7

Subordination and Intercreditor Agreement
Millenkamp

        Proceeds Priority Claim (as defined in the 2018 Intercreditor Agreement) is not affected by this Agreement.

11. First Lender shall give Second Lender written notice of any default upon First Lender's Mortgages simultaneously with the giving of such notice to Debtors. A default by Debtors under First Lender's Mortgages shall at Second Lender's option be a default upon the Second Lender's Loan Documents. If Debtors are in default under First Lender's Mortgages, then before First Lender accepts a deed in lieu from Debtors, Second Lender shall have the right, but not the obligation, to pay off First Lender within thirty (30) days of notice of Debtors' default, and if Second Lender pays off First Lender, then First Lender shall promptly execute releases and discharges of First Lender's liens and security interests in such Property in a timely manner. If Second Lender does not pay off First Lender within thirty (30) days of Notice of Default of First Lender's Mortgages, then First Lender may, in its sole and absolute discretion, accept a deed in lieu of foreclosure with respect to the Property or any portion thereof, and Second Lender shall promptly execute releases and discharges of Second Lender's liens and security interests in such Property.

12. To the extent Second Lender at any time obtains possession of the Property or of any proceeds (as such term is defined by the Uniform Commercial Code) thereof, Second Lender shall hold such Property or such proceeds in trust for First Lender and shall promptly deliver such collateral in original form (or such other form in which such collateral was received) and such proceeds to First Lender. First Lender may further accept and retain payments under the terms of First Lender's Loan Documents from Debtors or such other party or source, subject to this Agreement and the 2018 Intercreditor Agreement. In the event First Lender receives, directly or indirectly, any payment or distribution in respect of RAF Priority Collateral or that is otherwise subject to the 2018 Intercreditor Agreement, First Lender shall promptly comply with its obligations under the 2018 Intercreditor Agreement.

13. This Agreement sets forth the entire agreement between the parties with respect to the subject matter hereof, and this Agreement supersedes any and all of other agreements between any of the parties as to the subject matter hereof, **provided, however**, that notwithstanding any other provision of this Agreement, this Agreement does not, and is not intended to, affect the terms of the 2018 Intercreditor Agreement. To the extent there is a conflict between this Agreement and the 2018 Intercreditor Agreement other than with respect to the Property, the 2018 Intercreditor Agreement shall control.

14. If any provision or provisions, or if any portion of any provision or provisions in this Agreement is found by a court of competent jurisdiction to be in violation of any applicable local, state or federal ordinance, statute, law, administrative or judicial decisions, or public policy, and if such court should declare such portion, provision or provisions of this Agreement to be illegal, invalid, unlawful, void or unenforceable as written, then it is the intent of the parties that such portion, provision or provisions shall be given force to the fullest possible extent that it or they are legal, valid and enforceable, that the remainder of this Agreement shall be construed as if such illegal, invalid,

8

Subordination and Intercreditor Agreement
Millenkamp

unlawful, void or unenforceable portion, provision or provisions were not contained therein, and that the rights, obligations and interests of the parties under the remainder of this Agreement shall continue in full force and effect.

15. This Agreement shall be interpreted according to the internal laws of the state of Idaho without regard to conflict of laws principles. This Agreement may be executed in one or more duplicates and/or counterparts as, each of which shall be deemed an original and all of which together shall constitute one and the same original instrument. Debtors shall be responsible for all costs and expense related to this Agreement and the satisfaction of the conditions thereto, including, without limitation, attorneys' fees, title insurance and search charges, escrow and recording fees.

16. The terms and conditions of this Agreement shall be binding upon and solely for the benefit of Second Lender and First Lender and their respective successors and assigns, and no other person, including without limitation Debtors, shall have any right, remedy, claim, benefit, priority or other interest under, or because of the existence of, this Agreement, whether as third party beneficiary or otherwise.

17. Words in the singular include the plural, and words in the plural include the singular, as the context may require.

18. Each of the parties hereto has entered into its own respective loans or financial accommodations to the Debtors and any related parties based upon its own independent investigations and due diligence, and neither party hereto makes any representation or warranty whatsoever with respect to the Debtors' financial status or ability to repay any such loan or financial accommodation to the other party hereto or with respect to any other matter. The parties hereto shall each be entitled to manage and administer their respective loans and financial accommodations to Debtors and any related parties in their sole discretion except as expressly set forth herein. No party hereto shall have any claim or cause of action against the other party hereto arising out of the administration or management of its or such other party's management or administration of its or such other party's loans or financial accommodations to Debtors and any related parties except as expressly set forth herein. Nothing set forth herein shall create or evidence a joint venture, partnership or agency relationship between the parties hereto.

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the day and year first above written.

| First Lender: | Second Lender: |
|---|---|
| **METLIFE REAL ESTATE LENDING LLC,** a Delaware limited liability company | **RABO AGRIFINANCE, LLC,** a Delaware limited liability company, in its capacity as agent for the benefit of certain lenders and other secured parties |

By: MetLife Investment Management, LLC, a Delaware limited liability company, its investment manager

By: */s/ David C. Russell/*
Name: David C. Russell
Title: Authorized Signatory and Director

By: _____
Name: _____
Title: _____

**METROPOLITAN LIFE INSURANCE COMPANY,**
a New York corporation

By: MetLife Investment Management, LLC, a Delaware limited liability company, its investment manager

By: */s/ David C. Russell/*
Name: David C. Russell
Title: Authorized Signatory and Director

10

STATE OF __Kansas__   )
                     ) ss.
COUNTY OF __Johnson__ )

    Before me, the undersigned Notary Public in and for the State and County aforesaid, personally appeared David C. Russell, with whom I am personally acquainted, and who acknowledged himself to be an Authorized Signatory and Director of MetLife Investment Management, LLC, a Delaware limited liability company, the investment manager of MetLife Real Estate Lending LLC, a Delaware limited liability company, and that he, on behalf of such limited liability company as investment manager of such company, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing the name of MetLife Investment Management, LLC, the investment manager of MetLife Real Estate Lending LLC by himself as Authorized Signatory and Director of such limited liability company as his free act and deed and the free act and deed of said limited liability company as investment manager of such company.

WITNESS my hand and official seal this __11th__ day of August, 2022.

[SEAL]

                     Signature: _____
                                 Notary Public in and for said
                                 County and State

My Commission Expires: __March 28, 2023__

ZIVA SELF
Notary Public - State of Kansas
My Appointment Expires 3/28/23

11

STATE OF __Kansas__      )
                         ) ss.
COUNTY OF __Johnson__    )

    Before me, the undersigned Notary Public in and for the State and County aforesaid, personally appeared David C. Russell, with whom I am personally acquainted, and who acknowledged himself to be an Authorized Signatory and Director of MetLife Investment Management, LLC, a Delaware limited liability company, the investment manager of Metropolitan Life Insurance Company, a New York corporation, and that he, on behalf of such limited liability company as investment manager of such company, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing the name of MetLife Investment Management, LLC, the investment manager of Metropolitan Life Insurance Company by himself as Authorized Signatory and Director of such limited liability company as his free act and deed and the free act and deed of said limited liability company as investment manager of such company.

WITNESS my hand and official seal this __11th__ day of August, 2022.

[SEAL]

Signature: _____
Notary Public in and for said
County and State

My Commission Expires: __March 28, 2023__

```
ZIVA SELF
Notary Public - State of Kansas
My Appointment Expires 3/28/23
```

12