# EXHIBIT 10

NRF draft 4/3/24

| | |
|---|---|
| **SECURED CREDITORS**<br>BR 4001(c)(1)(B)<br>LBR 4001-1 | Rabo (AgriFinance LLC, as defined above Agent ("RAF")<br>MetLife (as defined above<br>Metropolitan Life Insurance Company and MetLife Real Estate Lending LLC (collectively "MetLife")<br>Conterra (as defined above)Agricultural Capital LLC ("Conterra") |
| **BORROWERS**<br>BR 4001(c)(1)(B)<br>LBR 4001-1 | Millenkamp Cattle, Inc.<br>Idaho Jersey Girls LLC<br>East Valley Cattle, LLC<br>Millenkamp Properties, L.L.C.<br>Millenkamp Properties II LLC<br>Millenkamp Family LLC<br>Goose Ranch, LLC<br>Idaho Jersey Girls Jerome Dairy LLC<br>Black Pine Cattle LLC<br>Millenkamp Enterprises LLC |
| **GUARANTORS**<br>BR 4001(c)(1)(B)<br>LBR 4001-1 | None |
| **DIP LENDER**<br>BR 4001(c)(1)(B)<br>LBR 4001-1 | Sandton Capital Partners LP and/or one or more of its affiliated funds and accounts.Rabo AgriFinance LLC or its designee ("DIP Lender") |
| **DIP FACILITY**<br>BR 4001(c)(1)(B)<br>LBR 4001-1 | Senior revolving creditdelayed draw term loan facility in an aggregate principal amount of up to $3532 million (the "DIP Loan Commitment")<sub></sub>, with the priority as described by the header "Security and Priority" below, provided that, prior to the entry of the Final Order, only up to $15 million (the "Interim Funding Amount") will be made available by the DIP Lender. |
| **FUNDING DATES**<br>BR 4001(c)(1)(B)<br>LBR 4001-1 | **Initial Draw, $15 million**, available on the entry of the Interim Order approving the DIP Loan on an interim basis.<br><br>**Additional Draws of an Additional $2017 million**. Available for the firstup to 9 months (subject to extension) of the DIP Loan, subject to mutually agreed Revenue, Restructuring and Operating Milestones. Minimum Additional Draws of $5 million and subject to a 7-day advance notice. |
| **USE OF PROCEEDS** | The DIP Loan will be available to the |

| | |
|---|---|
| BR 4001(c)(1)(B)<br>LBR 4001-1 | Borrowers to fund each Borrower's expenses in accordance with the Budget attached to the DIP Financing Motion as Exhibit C.  The Budget shall be agreed to by the Borrowers and the DIP Lender and will include, without limitation, budgeted professional fees. |
| **REPAYMENT DATE**<br>BR 4001(c)(1)(B)<br>LBR 4001-1 | The DIP Lender will be entitled to immediate repayment of all outstanding obligations under the DIP ~~Loan~~Facility on the earliest of (the "Repayment Date"):<br><br>(a) the effective date of the plan of reorganization or closing on a sale of all or a material portion of the Borrowers' assets;<br><br>(b) 7 months from the entry of the Interim Order in the event the Debtors shall not have filed a confirmable plan of reorganization with the Bankruptcy Court that is reasonably acceptable to the DIP Lender and provides for, among other things, the payment of the DIP Loan in full in cash on the effective date of the plan of reorganization; and<br><br>(c) ~~(b)~~ 9 months from the ~~date~~entry of ~~origination~~the Interim Order, subject to ~~extensions~~extension as set forth below (for a total of up to 12 months from the date of origination). |
| | ~~total of up to 12 months from the date of origination).~~<br><br>~~(c ) Lender will consider converting some or all of the DIP to an exit financing facility in conjunction with an emergence from Chapter 11 (subject to terms agreeable to Lender and Lender's internal approvals.)~~ |
| **PREPAYMENT** | The DIP Loan will be prepayable in full or in part by the Borrowers on one or more occasions.  There will be a mandatory repayment of the DIP Loan upon the sale of any assets outside of the ordinary course of business or the Budget. |
| **LOAN INTEREST RATES & FEES**<br>BR 4001(c)(1)(B)<br>LBR 4001-1 | ~~(i)~~<br>(i)    Issuance Fee: issuance fee of ~~2.5~~2.0% on the Initial Draw and each Additional Draw, which fee will |

2

|     |     |
| --- | --- |
|     | be earned and payable on the date of each draw (Issuance Fee will be capitalized on the balance of the DIP Loan). |
| (ii) | Cash Interest: None. |
| (iii) | PIK Interest: PIK interest at 12% per annum on the outstanding Principal Amount, which shall be added to the Principal Amount on a monthly basis. PIK'ed interest will not be counted against draw limits for any of the contemplated draws. |
| (iv) | Exit Fee: exit fee of 2.0% on the total drawn amount. Such exit fees will be earned on the date of the applicable draw and payable on the earlier to occur of the date: (a) the DIP Loan is required to be repaid in full; and (b) the DIP Loan is paid in full or in part prior (on a pro rata basis) to the Repayment Date. |
| (v) | Default Interest Rate: During the occurrence and continuance of an Event of Default, the PIK Interest rate will increase by 200 b.p. |
| (vi) | Renewal Fee: If the DIP Loan is not repaid on or before the Repayment Date, time being of the essence, the Borrowers will pay to the DIP Lender, in addition to all other amounts as set forth in this Term Sheet, a renewal fee of 2.0% of the Total Principal Amount, which shall extend the Repayment Date by an additional 3 months (the Renewal Fee will be capitalized on the balance of the DIP Loan at the time of extension). Borrowers shall be entitled to one (1) 3- month extension period at the Repayment Date (based on mutually agreed Revenue, Restructuring and Operating Milestones). |
| (vii) | Unused Fee: Unused Fee at 2.0% per annum on the undrawn outstanding Principal Amount, which shall be added to the Principal |

3

| | |
|---|---|
| | Amount on a monthly basis. Unused Fee will not be counted against draw limits for any of the draws contemplated herein.<br>(viii) Minimum Multiple of Invested Capital: ~~cash fee at exit such that the Lender's multiple of invested capital for each advance (the Initial Advance and each Additional Advance individually), exclusive of any fees, shall be no less than 1.15x~~ None. |
| **REVENUE & OPERATING MILESTONES**<br>BR 4001(c)(1)(B)<br>LBR 4001-1 | Revenue Milestone to be such that ~~Borrower is~~Borrowers are within 20% of their rolling Budget revenue projections. Operating Milestones will be typical for a business of this nature and ensure that ~~Borrower maintains~~Borrowers maintain inventory and property plant and equipment in good standing~~.~~ |
| **COLLATERAL SECURITY & PRIORITY**<br>BR 4001(c)(1)(B)<br>LBR 4001-1 | The DIP Loan shall be secured by the DIP Liens, which shall be granted in the DIP Credit Documents and approved by the Bankruptcy Court in the DIP Orders, on the existing and after-acquired real property and personal, tangible and intangible, assets of the Borrowers including, without limitation, all cash, cash equivalents, bank deposit and securities accounts, accounts, other receivables, chattel paper, contract rights, inventory, instruments, documents, securities (whether or not marketable), equipment, fixtures, real property interests, franchise rights, general intangibles, ~~avoidance actions to the extent provided in the Interim DIP Order and Final DIP Order,~~ investment property, supporting obligations, tax refunds, securities, franchise rights, letter of credit rights, commercial tort claims, causes of action and all substitutions, accessions and proceeds of the foregoing, wherever located, including insurance or other proceeds, patents, tradenames, trademarks, copyrights, intellectual property and all substitutions, accessions and proceeds of such intellectual property, wherever located, including insurance or other proceeds (the "DIP Collateral"). The DIP Liens shall be effective and perfected as of the Petition Date upon |

entry of the ~~Interim~~Final DIP Order, without need for any additional filings or documentation, except to the extent requested by the DIP Lender in its sole discretion.

The DIP Liens securing the DIP Loan shall, pursuant to section 364(d)(1) of the Bankruptcy Code, be valid, perfected, continuing, enforceable, non- avoidable first priority liens and security interests on the DIP Collateral ~~of each Borrower,~~ and shall prime all other liens and security interests on the DIP Collateral, including any liens and security interests in existence on the Petition Date, and any other current or future liens granted on the DIP Collateral, including any adequate protection or replacement liens granted on the DIP Collateral (the "Primed Liens").  Notwithstanding anything herein to the contrary, the DIP Liens shall be (i) senior to the Prepetition MetLife Liens but only to the extent of the MetLife Primed Portion and (ii) senior to the Prepetition RLOC Liens but only to the extent of the RLOC Primed Portion.

The term "MetLife Primed Portion" means an amount equal to the product of (i) the DIP Facility, multiplied by (ii) a fraction, the numerator of which is the aggregate Pre-Petition MetLife Obligations and the denominator of which is the sum of the Pre-Petition MetLife Obligations and the Pre-Petition RLOC Obligations.  The term "RLOC Primed Portion" shall mean an amount equal to the product of (i) the total DIP Facility, multiplied by (ii) a fraction, the numerator of which is the aggregate Pre-Petition RLOC Obligations and the denominator of which is the Pre-Petition MetLife Obligations and the Pre-Petition RLOC Obligations.

Except with respect to the Carve-Out, the DIP Liens shall not be subject to surcharge under section 506(c) or any other provision

5

| | |
|---|---|
| | of the Bankruptcy Code. <br><br> The DIP Loan shall, pursuant to section 364(c)(1) of the Bankruptcy Code, be entitled to superpriority administrative expense claim status in the Chapter 11 Cases of each Borrower (the "DIP Superpriority Claims"), which DIP Superpriority Claims in respect of the DIP Facility shall have priority over any and all claims against the Borrowers. |
| **ADEQUATE PROTECTION** <br> BR 4001(b)(1)(B)(iv), (c)(1)(B)(i), <br><br> (c)(1)(B)(ii), (d)(1)(A)(i) <br> LBR 4001-1 | (1) ~~adequate~~Adequate protection payments. (2) replacement lien, (3) preservation of Debtors' equity cushion through continuous maintenance of real property and (4) super priority expenses of administration for any proven Diminution of Value, as follows~~.~~: <br><br> First, use of DIP Facility proceeds and Cash Collateral in accordance with the Budget to provide adequate protection payments equivalent to post-petition, non-default interest on the outstanding balances of (1) ~~Rabo~~RAF; (2) MetLife; and (3) Conterra, for the Debtors following the closing of the DIP Facility. Adequate protection payments and other advances under the DIP Facility will be subject to compliance with minimum liquidity or maximum ~~DIP budget~~Budget variance financial covenants and the absence of any other Default or Event of Default which has not been cured to the extent provided in the DIP Facility. <br><br> Second, to the extent of the Diminution of Value of the interest of the Pre-Petition Secured Lenders in the Prepetition Collateral, the Debtors propose to provide replacement liens. The Prepetition Secured Lenders shall have, subject to the terms and conditions set forth below, pursuant to sections 361, 363(e), and 364(d) of the Bankruptcy Code, additional and replacement security interests and Liens in the DIP Collateral, which shall be junior only to the Carve Out and the DIP Liens securing the DIP Loan. Proceeds of Prepetition Replacement Liens shall be allocated amongst Prepetition Secured Lenders in accordance with the terms of the |

Intercreditor Agreements. ~~"Bankruptcy Recoveries" shall mean any claims and causes of action to which the Debtors may be entitled to assert by reason of any avoidance or other power vested in or on behalf of the Debtors or the estates of the Debtors under Chapter 5 of the Bankruptcy Code and any and all recoveries and settlements thereof.~~

Third, to preserve the prepetition value of the Debtors real property and improvements, the Debtors will use DIP Facility proceeds and Cash Collateral in accordance with the Budget and in the ordinary course to continue to maintain all of the pre-petition real property securing the Debtors' obligations due to the Prepetition Secured Lenders in good repair.

Fourth, to the extent of the Diminution of Value of the allowed interests of the Prepetition Secured Lenders in the Prepetition Collateral, the Prepetition Secured Lenders shall have an allowed superpriority administrative expense claim (the "Prepetition Superpriority Claim"), which shall have priority (except with respect to (i) the DIP Liens, (ii) the DIP Superpriority Claim, and (iii) the Carve Out), in the Chapter 11 Cases under section 364(c)(1), 503(b), and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 552, 726, 1113, and 1114 of the Bankruptcy Code, and, upon entry of the Final Order, section 506(c) of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment Lien or other non- consensual Lien, levy, or attachment. Other than the DIP Liens, the DIP Superpriority Claim, and the Carve Out, no costs or expenses of administration,

7

|  | |
|---|---|
|  | including, without limitation, professional fees allowed and payable under sections 328, 330, and 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in the Chapter 11 Cases will be senior to, prior to, or on parity with the Prepetition Superpriority Claim (for purposes hereof, such liens will be deemed part of the ''Prepetition Replacement Liens''). |
| **CARVE-OUT** | The DIP Liens, DIP Superpriority Claim the Prepetition Liens, the Prepetition Replacement Liens, and the Prepetition Superiority Claims are subordinate only to the following (collectively, the "Carve-Out"):<br><br>(i)  all fees required to be paid to the Clerk of the Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code *plus* interest at the statutory rate;<br><br>(ii)  all reasonable and documented fees and expenses incurred by a trustee under Bankruptcy Code section 726(b), in an aggregate amount not to exceed $250,000; and<br><br>(iii)  to the extent allowed by the Court at any time, whether by interim order, procedural order or otherwise (unless subsequently disallowed), all unpaid fees and expenses (the "Professional Fees") incurred by persons or firms retained by the Debtors pursuant to Bankruptcy Code sections 327, 328, or 363 or by the Committee, pursuant to Bankruptcy Code sections 328 and 1103 (collectively, the "Professional Persons"). |
| **COVENANTS**<br>BR 4001(c)(1)(B)<br>LBR 4001-1 | Affirmative, negative, and other financial and operational covenants customary for transactions of this type, including:<br><br>i)  Minimum cash balance of at least $1,500,000 (which may be funded from borrowed funds). |

8

|  | |
|---|---|
|  | ii) Maximum capital expenditures.<br>iii) No dividends or any other upstream payments.<br>iv) No change of control, except as may be permitted under applicable provisions of the Bankruptcy Code, including, but not limited to Sections 363 or 1129 of the Bankruptcy Code.<br>v) Maintenance of appropriate insurances and having the Lender as a beneficiary of such insurance policies.<br>vi) Limitations on additional debt, guarantees, and hedging arrangements, including the subordination of all intercompany indebtedness.<br>vii) Limitations on liens and further negative pledges.<br>viii) Limitations on sales, transfers, and other dispositions of assets, except as may be permitted under applicable provisions of the Bankruptcy Code, including, but not limited to Sections 363 or 1129 of the Bankruptcy Code.<br>ix) Limitations on loans and investments.<br>x) Limitations on creating new subsidiaries or becoming a general partner in any partnership.<br>xi) Limitations on transactions with affiliates except as permitted.<br>xii) Weekly borrowing base certificates prepared in a manner consistent with the Pre-Petition RLOC Credit Agreement.<br>xiii) In the event the weekly borrowing base certificates to be delivered by Debtors to the DIP Lender during any period of two (2) consecutive weeks show a reduction in the amount of the Borrowing Base Excess relative to the preceding calendar week, Debtors shall promptly establish a cash reserve (which may be funded with borrowed funds) in an amount not less than the aggregate decrease in the amount of the Borrowing Base Excess. Such cash reserve shall be held for the benefit of the Pre-Petition RLOC Secured Parties for distribution on the effective date of |

| | |
|---|---|
| | the Debtors' plan of reorganization. |
| **CONDITIONS**<br>BR 4001(c)(1)(B)<br>LBR 4001-1 | The obligation of the DIP Lender to make available the DIP Facility shall be subject to the satisfaction (or waiver by the DIP Lender, in its sole and absolute discretion) of the following conditions:<br><br>(a) The DIP Credit Documents shall have been executed and delivered by each party thereto, in form and substance satisfactory to the DIP Lender;<br>(b) The Petition Date shall have occurred, and each Borrower shall be a debtor and debtor in possession;<br>(c) The Interim Order shall have been entered, authorizing and approving the making of the loans in the amounts consistent with those set forth in the "DIP Facility" section above and the granting of the superpriority claims and liens and other liens referred to under the heading "Security and Priority" (such order, the "Interim Order" and together with the Final Order, the "DIP Orders"), which Interim Order shall not have been vacated, reversed or stayed in any respect;. |
| **REPRESENTATIONS & WARRANTIES**<br>BR 4001(c)(1)(B)<br>LBR 4001-1 | Usual and customary representations and warranties, including organization in good standing, validity of agreements, tax status, compliance with law, and operational and financial disclosures. |
| **EVENTS OF DEFAULT**<br>BR 4001(c)(1)(B)<br>LBR 4001-1 | Events of Default will include, in addition to other such events customarily found in transactions similar to the DIP LoanFacility:<br>　i) Payment defaults.<br>　ii) Covenant defaults.<br>　iii) Representation or warranty breaches.<br>Among other remedies, upon the occurrence of an Event of Default, the DIP Lender may accelerate all of the DIP LoanFacility obligations. |
| **EXPENSES**<br>BR 4001(c)(1)(B)<br>LBR 4001-1 | The Borrowers will be responsible for the DIP Lender's out of pocket fees and expenses incurred by the Lender to put the DIP LoanFacility in place, to manage the DIP Loan, and to enforce the terms of the DIP LoanFacility (absent an event of default) up |

10

|  |  |
|---|---|
|  | ~~to an amount not to exceed $200,000~~<ins>in accordance with the Budget</ins>. |
| **CONTINGENCIES**<br>BR 4001(c)(1)(B)<br>LBR 4001-1 | ~~Lender has completed its due~~<ins>None. Due</ins> diligence<ins> complete</ins>. |

11

Document comparison by Workshare Compare on Wednesday, April 3, 2024 5:24:43 PM

| Input: | |
|---|---|
| Document 1 ID | file://C:\Users\eg58862\OneDrive - Norton Rose Fulbright LLP\Desktop\DIP Priming Filings\Sandton DIP Term Sheet.docx |
| Description | Sandton DIP Term Sheet |
| Document 2 ID | file://C:\Users\eg58862\OneDrive - Norton Rose Fulbright LLP\Desktop\RAF standalone DIP term sheet (002).docx |
| Description | RAF standalone DIP term sheet (002) |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 68 |
| Deletions | 52 |
| Moved from | 0 |
| Moved to | 0 |
| Style changes | 0 |
| Format changes | 0 |
| Total changes | 120 |

Case 24-40158-NGH    Doc 81-10    Filed 04/03/24    Entered 04/03/24 19:49:44    Desc Exhibit Exhibit 10 - Receivership Terms    Page 14 of 14