## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IN RE: ) | |
| ) | |
| Millenkamp Cattle, Inc. ) | Case No. 24-40158 |
| ) | |
| Debtors. ) | Chapter 11 |
| ) | |

**OBJECTION TO THE EMERGENCY MOTION OF DEBTORS FOR INTERIM AND FINAL ORDERS (A) AUTHORIZING THE DEBTORS TO OBTAIN POST-PETITION FINANCING; (B) GRANTING ADEQUATE PROTECTION TO PRE-PETITION SECURED CREDITORS; AND (C) SETTING A FINAL HEARING**

Conterra Holdings, LLC d/b/a Conterra Ag Capital as loan servicer and power of attorney ("Conterra") for Ag Funding SC II LLC ("Ag Funding") and Rooster Capital IV LLC ("Rooster Capital") by and through its attorneys, Spencer Fane LLP, for its Objection ("Objection") to the Emergency Motion of Debtors for Interim and Final Orders (A) Authorizing the Debtors to Obtain Post-Petition Financing; (B) Granting Adequate Protection to Pre-Petition Secured Creditors; and (C) Setting a Final Hearing ("DIP Motion"), and states as follows:

### RELEVANT BACKGROUND

1. The Debtors (as defined in the DIP Motion) filed the DIP Motion on April 2, 2024.

2. The Declaration in Support of First Day Motions [Doc. 26] ("Millenkamp Declaration") indicates that the Debtors solicited debtor-in-possession financing proposals and received three. Millenkamp Declaration ¶ 72.

3. Upon information and belief, those proposals were from Idaho Milk, LLC ("Idaho Milk"), Rabo AgriFinance, LLC ("Rabo"), and Sandton Capital Partners, LP ("Sandton").

4. Conterra, in its capacity as the loan servicer and power of attorney for lienholders—Ag Funding and Rooster Capital—that are junior on certain assets of the Debtors (and first on

certain assets), submits that a DIP facility on the most-advantageous terms and conditions—including costs and fees—available, is in the best interest of the junior lienholders and creditors and parties in interest generally. As such, Conterra sought to identify potential providers of debtor-in-possession financing, and as part of that process, identified Idaho Milk for the Debtors. Conterra's efforts, as detailed herein, have yielded a cost savings to the Debtors of upwards of $3,031,999.50, not including improved terms (including the exclusion of avoidance actions from the DIP collateral), greatly benefiting parties in interest and the Debtors' estates accordingly.

5. Prior to the Debtors submitting the DIP Motion, Idaho Milk and the Debtors engaged in negotiations and exchanged term sheets for proposed debtor-in-possession financing.

6. After the Debtors filed the DIP Motion, Idaho Milk proposed a revised term sheet against the term sheet attached as Exhibit B to the DIP Motion ("Idaho Milk Term Sheet"), a true and accurate copy of which is attached hereto as **Exhibit A**.

7. Pursuant to the Idaho Milk Term Sheet, Idaho Milk proposed improved terms and conditions compared to Sandton's proposed DIP Facility ("Sandton DIP Facility"), and approximately $3,031,999.50 cheaper ("Idaho Milk DIP Facility").

8. As detailed herein, the Idaho Milk DIP Facility is the best, most economical debtor-in-possession financing proposal that the Debtors have received to date.

9. First, the Idaho Milk DIP Facility excludes avoidance actions from the DIP collateral.

10. Moreover, the Idaho Milk DIP Facility is much cheaper as compared to the Sandton DIP Facility, which proposes to charge a PIK Interest of 15% per annum, where the Idaho Milk DIP Facility proposes only a CME One Month Term SOFR plus 9% interest rate.

11. Also, with respect to costs and fees, where Sandton requires a 2.5% issuance fee and 2.5% exit fee, Idaho Milk proposes 2% and 1% respectively. This carries an estimated cost savings to the estates of up to approximately $700,000.00 in costs and fees alone, not including Idaho Milk's removal of Sandton's required Minimum Multiple of Invested Capital.

12. Removal of Sandton's required Minimum Multiple of Invested Capital plus the other reduced fees, yields a total savings of approximately $3,031,999.50. The estimated cost comparison is detailed on the attached **Exhibit B**.

13. Conterra understands and agrees that the Debtors require debtor-in-possession financing. Conterra also understands, and expects that the Debtors will agree, that such debtor-in-possession financing should be on the best, most economical terms available. That means that the Court should approve the Idaho Milk DIP Facility over the Sandton DIP Facility.

## REQUESTED RELIEF

14. Conterra respectfully requests that the Court enter an order (i) denying the DIP Motion to the extent it seeks approval of the Sandton DIP Facility, whether on an interim or final basis; (ii) approving the DIP Motion to the extent it seeks approval of the Idaho Milk DIP Facility on an interim and final basis; and (iii) granting such other and further relief as the Court deems just and appropriate.

## BASIS FOR RELIEF

15. To obtain post-petition financing, the debtor must demonstrate that "the relief requested is an appropriate exercise of the debtor's business judgment." *See U.S. Bank N.A. v. Am. Airlines, Inc.*, 485 B.R. 279, 287 (Bankr. S.D.N.Y.), *aff'd* 730 F.3d 88 (2d Cir. 2013).

16. When negotiating post-petition financing, debtors often have limited bargaining power. *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990). As a result,

bankruptcy courts are called upon to independently scrutinize the reasonableness of a debtor's proposed financing prior to approving it. *See In re Aqua Assocs.*, 123 B.R. 192, 196 (Bankr. E.D. Pa. 1991) (debtor must prove the "terms of the transaction are fair, reasonable, and adequate, given the circumstances of the debtor-borrower and the proposed lender"); *In re Ames Dep't Stores*, 115 B.R. at 39.

17. The debtor has the burden of proving that a post-petition financing transaction is fair, reasonable, and adequate given the circumstances. *See, e.g. In re L.A. Dodgers LLC*, 457 B.R. 308, 312-13 (Bankr. D. Del. 2011).

18. The Sandton DIP Facility is not the best option available to the Debtors. Section 364(d)(1)(A) of the Bankruptcy Code provides that a court may authorize a debtor in possession to borrow money with priming liens "***only if***…[the debtor] is unable to obtain such credit otherwise." *See* 11 U.S.C. § 364(d)(1)(A) (emphasis added). The Debtors bear the burden of proving that less onerous post-petition financing was unavailable. *In re Reading Tube Indus.*, 72 B.R. 329, 332 (Bankr. E.D. Pa. 1987) (citing *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986)).

19. Here, the Debtors cannot establish that less onerous post-petition financing was unavailable as compared to the Sandton DIP Facility.

20. Conterra appreciates and understands that the Idaho Milk Term Sheet came in ***after*** the filing of the Millenkamp Declaration and DIP Motion. Now, however, Mr. Millenkamp can no longer represent that the Sandton DIP Facility is "superior in multiple responses to the other proposals received, including . . . duration, availability, overall cost, other terms and conditions and openness to converting some or all of the DIP financing into an exit facility." Millenkamp Declaration ¶ 72. Indeed, since receiving the Idaho Milk Term Sheet, Conterra expects that Mr.

Millenkamp's declaration should appropriately be revised considering the change in facts since making the declaration. This is because, as detailed on the attached Exhibit A, the Idaho Milk DIP Facility improves upon the terms and conditions of the Sandton DIP Facility and is $3,031,999.50 cheaper. That gives the advantage of "overall cost" to Idaho Milk by a significant margin. This significant disparity in cost yields a significant savings to the Debtors' estates, and ultimately, to recovery for the stakeholders in these cases, including Ag Funding and Rooster Capital. This makes the Idaho Milk DIP Facility far superior to the Sandton DIP Facility.

21. Conterra, in its capacity as the loan servicer and power of attorney for Ag Funding SC II LLC and Rooster Capital IV LLC—holders of certain junior liens—submits that the Idaho Milk DIP Facility, with its significantly lower costs and improved terms, provides for a significant savings to the estate and creditors generally. On the other hand, the Sandton DIP Facility, with its $3,031,999.50 higher price tag, erodes potential recoveries for Ag Funding SC II LLC and Rooster Capital IV LLC and creditors generally. Sandton's requirement for a lien on avoidance actions further erodes recoveries to creditors. The Sandton DIP Facility is not in the best interest of creditors or the Debtors' estates generally.

22. The current Idaho Milk DIP Facility requires the Debtors, in an appropriate exercise of their business judgment, to support approval of the Idaho Milk DIP Facility, versus the much more expensive Sandton DIP Facility.

23. The Idaho Milk DIP Facility is accordingly superior to the Sandton DIP Facility in terms of fairness, reasonableness, and adequacy given the circumstances. *In re L.A. Dodgers LLC*, 457 B.R. at 312-13; *U.S. Bank N.A.*, 485 B.R. at 287.

24. Shortly before Conterra filed this Objection, Rabo proposed a revised DIP Proposal ("Rabo DIP Facility"), which is attached as Exhibit 10 to its objection to the DIP Motion [Doc.

81-10]. Conterra is still reviewing and analyzing the Rabo DIP Facility, however, it appears on its face that the Idaho Milk DIP Facility is more economical and superior on terms.

25. In the alternative of the requested relief herein, given the fluidity of the circumstances and the Debtors' immediate need for financing, Conterra suggests that the Court set a deadline of **10:00AM Mountain on April 5, 2024**, for Idaho Milk, Rabo, and Sandton to submit to the Debtors their best and final DIP proposals, in the term sheet form used by Idaho Milk and Sandton, which the Court should then consider at a hearing as soon as the Court's schedule allows thereafter.

WHEREFORE, Conterra respectfully requests that the Court enter an order (i) denying the DIP Motion to the extent it seeks approval of the Sandton DIP Facility pursuant to the Term Sheet attached as Exhibit B to the DIP Motion; (ii) approving the DIP Motion to the extent it seeks approval of the Idaho Milk DIP Facility pursuant to the Idaho Milk Term Sheet; and (iii) granting such other and further relief as the Court deems just and appropriate

DATED April 4, 2024.

Respectfully submitted,

SPENCER FANE LLP

/s/*Zachary R.G. Fairlie*
John O'Brien (Pro Hac Vice)
Spencer Fane LLP
1700 Lincoln Street, Suite 2000
Denver, CO 80203-4554
Telephone: 303-839-3800
Email: jobrien@spencerfane.com

Scott C. Powers #9958
Spencer Fane LLP
10 Exchange Place, 11th Floor
Salt Lake City, UT 84111
Telephone: 801-322-9164
Email: spowers@spencerfane.com

Zachary R.G. Fairlie (Pro Hac Vice)
Spencer Fane LLP
1000 Walnut Street, Suite 1400
Kansas City, MO 64106-2140
Telephone: 816-474-8100
Fax: 816-474-3216
Email: zfairlie@spencerfane.com

Attorney for Conterra Holdings, LLC d/b/a
Conterra Ag Capital as loan servicer and power of
attorney for Ag Funding SC II LLC and Conterra
Holdings, LLC d/b/a Conterra Ag Capital as loan
servicer and power of attorney for Rooster Capital
IV LLC

## CERTIFICATE OF SERVICE

The undersigned certifies that on April 4, 2024 I served via CM/ECF system an electronic copy of the foregoing on all parties against whom relief is sought and those otherwise entitled to service pursuant to the Fed. R. Bankr. P. and the L.B.R. at the following addresses:

| | |
|---|---|
| Matthew T. Christensen | mtc@johnsonmaylaw.com |
| U.S. Trustee | Ustp.region18.bs.ecf@usdoj.gov |
| Sheila R. Schwager | sschwager@hawleytroxell.com |
| Brent R. Wilson | bwilson@hawleytroxell.com |
| Daniel C. Green | dan@racineolson.com |
| Heidi Buck Morrison | heidi@racineolson.com |

The undersigned further certifies that on April 4, 2024 a true and correct copy of the foregoing was served to the following by first class, postage prepaid U.S. Mail:

| | |
|---|---|
| Millenkamp Cattle, Inc.<br>471 N 300 Rd W<br>Jerome, ID  83338 | Matthew T. Christensen<br>Johnson May<br>199 N. Capitol Blvd Ste 200<br>Boise, ID  83702 |

*/s/ Zachary R.G. Fairlie*
Zachary R.G. Fairlie