Matthew T. Christensen, ISB: 7213
J. Justin May, ISB: 5818
JOHNSON MAY
199 N. Capitol Blvd, Ste 200
Boise, Idaho 83702
Phone: (208) 384-8588
Fax: (208) 629-2157
Email: mtc@johnsonmaylaw.com
        jjm@johnsonmaylaw.com


Krystal Mikkilineni, *pro hac vice*
Robert E. Richards, *pro hac vice*
Tirzah Roussell, *pro hac vice*
DENTONS
215 10th Street, Ste 1300
Des Moines, IA 50309
Phone: (515) 288-2500
Fax: (515) 243-0654
Email: krystal.mikkilineni@dentons.com
        robert.richards@dentons.com
        tirzah.roussell@dentons.com

Attorneys for the Debtor

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| In re | Case No. 24-40158-NGH |
| MILLENKAMP CATTLE, INC., *et. al.*, | |
| Debtors.[1] | Chapter 11 |

[1] The Debtors in the Chapter 11 Cases along with the last four digits of their respective tax identification number or registration number in the applicable jurisdiction are: Millenkamp Cattle, Inc. (26-0603892); Idaho Jersey Girls LLC (46-3084467); East Valley Cattle, LLC (20-3238613); Millenkamp Properties, L.L.C. (26-0604003); Millenkamp Properties II LLC (84-3797719); Millenkamp Family LLC (46-1868279); Goose Ranch, LLC; Idaho Jersey Girls Jerome Dairy LLC (81-4713431); Black Pine Cattle LLC; and Millenkamp Enterprises LLC. The location of the Debtors' service address for purposes of the Chapter 11 Cases is 471 N 300 W., Jerome, ID 83338.

DEBTOR'S MOTION FOR ORDER AUTHORIZING ASSUMPTION OF WESTERN STATES LEASE – Page 1

**DEBTOR'S MOTION FOR ORDER AUTHORIZING THE DEBTOR TO ASSUME
UNEXPIRED LEASE WITH WESTERN STATES EQUIPMENT COMPANY**

Millenkamp Cattle, Inc. ("Millenkamp Cattle") debtor and debtor in possession (the "Debtor") in the above-captioned chapter 11 case (the "Chapter 11 Case"), by and through its undersigned counsel, respectfully moves the Court (the "Motion") pursuant to section 365 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), and Rules 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order substantially in the form attached as Exhibit A hereto, authorizing the assumption of its unexpired lease agreement with Western States Equipment Company. In support of this Motion the Debtor states as follows:

**JURISDICTION**

1.        This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 105 and 365 of the Bankruptcy Code and Bankruptcy Rules 6006(f) and 9014.

**BACKGROUND**

2.        On April 2, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for District of Idaho (the "Court") commencing the Chapter 11 Case.  The Debtor has continued in the management and operation of its business and property as debtor-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  No trustee, examiner, or official statutory committee

of unsecured creditors (such official committee, the "<u>Committee</u>") has yet been appointed in the Chapter 11 Case.

3.      The Debtor is one of ten affiliates that collectively own and operate several businesses, including a calf ranch raising approximately 50,000 calves located in Jerome, Idaho; a dairy heifer feedlot in Declo, Idaho, raising approximately 60,000 head of dairy cattle; a dairy operation at the Declo facility where the dairy cattle are milked several times a day; farming operations in Jerome, Twin Falls and Cassia counties; and custom harvest & trucking throughout the Magic Valley.

4.      On or about July 1, 2022, Western States Equipment Company ("<u>Western States</u>") and Debtor entered into a Rental Agreement (the "<u>Previous Rental Agreement</u>") pursuant to which Western States provided equipment to the Debtor on the terms and conditions set forth therein.  The equipment that Western States provided and continues to provide to the Debtor consists of Caterpillar loaders that are absolutely essential to the Debtors' operations and more specifically, the health of the Debtors' cattle.

5.      On February 16, 2024, the District Court of the Fourth Judicial District of the State of Idaho, in and for the County of Ada (the "<u>Receivership Court</u>") entered an order (the "<u>Receivership Order,</u>" giving rise to the "<u>Receivership Case</u>") appointing Ampleo as the court-appointed receiver (the "<u>Receiver</u>") of certain of the assets of the Debtor and its Debtor affiliates and principals ("<u>Receivership Assets</u>"). The Receivership Order required that the Receiver approve and be a party to any agreement proposed to be entered into on behalf of Debtor.

6.      On March 8, 2023, Western States provided Debtor with a notice of default under the Previous Rental Agreement.

7.      After negotiations, on March 25, 2024, the Debtor, Receiver, and Western States Equipment Company ("Western States") entered into an amended and restated rental agreement wherein Western States agreed to rent certain equipment to the Debtor (the "Lease"). A copy of the Lease is attached hereto as Exhibit B.

8.      Pursuant to the Lease, Western States agreed to rent forty-one units of Caterpillar Equipment through June 30, 2024, in exchange for, among other things, rent and expense payments for April 2024 ($171,097.42), May 2024 ($173,268.74), and June 2024 ($175,440.05) ("Rent") and (2) Back Rent payments (as defined in the Rental Agreement) totaling $596,071.03 ("Back Rent"). Pursuant to the Lease, the Back Rent payments are to be paid in three equal installments of $198,690.34 on April 15, May 15, and June 15, 2024.

## RELIEF REQUESTED

9.      By this Motion and for the reasons set forth herein, the Debtor seeks relief pursuant to Bankruptcy Code sections 105 and 365 for the entry of an order authorizing assumption of the Lease. The Debtor requests that the assumption of the Lease be effective as of the date corresponding to such Lease.

## BASIS FOR RELIEF REQUESTED

10.     Bankruptcy Code section 365(a) provides, in pertinent part, that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." U.S.C. § 365(a).

11.     The Court may approve a debtor's assumption of an unexpired lease or executory contract if such assumption is made in the exercise of such debtor's sound business judgment, and if such assumption benefits its estate. *See, e.g., Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 39 (3d Cir. 1989); *NLRB v. Bildisco & Bildisco* (In re Bildisco), 682 F.2d

Case 24-40158-NGH    Doc 114    Filed 04/05/24    Entered 04/05/24 15:41:56    Desc Main
Document    Page 5 of 30

72, 79 (3d Cir. 1982), aff'd, 465 U.S. 513 (1984); *In re Network Access Solutions, Corp.*, 330

B.R. 67 (Bankr. D. Del. 2005) ("The standard for approving the assumption of an executory

contract is the business judgment rule"); *Westbury Real Estate Ventures, Inc. v. Bradlees, Inc.*

(In re Bradlees, Inc.), 194 B.R. 555, 558 n. l (Bankr. S.D.N.Y. 1996) ("In reviewing a debtor's

decision to assume . . . an executory contract, the court must examine the contract and

circumstances and apply its best 'business judgment' to determine if the assumption . . . would

be beneficial . . . to the estate").

12.     It is enough if a debtor determines in its business judgment that a benefit will be

realized. *Sharon Steel Corp.*, 872 F.2d at 39. The business judgment standard requires that the

Court approve the debtor's business decision unless it is the product of bad faith, whim, or

caprice. *See In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001); *see also*

*Lubrizol Enter., Inc. v. Richmond Metal Finishers*, 756 F.2d 1043, 1047 (4th Cir. 1985).

13.     The purpose behind allowing the assumption or rejection of executory contracts

is to permit the debtor in possession to maximize the value of its estate by exercising business

judgment to assume contracts that are beneficial to the estate and to reject such contracts and

leases that are not. *See, e.g., In re Rickel Home Centers*, 209 F.3d 291, 298 (3d Cir. 2001). In

assuming a contract or a lease, the debtor must assume the entire contract. *See, e.g., In re Fifth*

*Taste Concepts Las Olas*, LLC, 325 B.R. 42 (Bankr. S.D. Fla. 2005).

14.     Upon finding that a debtor has exercised its sound business judgment in

determining the assumption of an executory contract is in the best interest of the estate, the

bankruptcy court should approve the assumption under Bankruptcy Code section 365, provided

the debtor also demonstrates it can satisfy the statutory requirements for assumption under

Bankruptcy Code section 365, if applicable. *See In re Quantegy, Inc*., 326 B.R. 467, 470 (Bankr. M.D. Ala. 2005).

15.    The Debtor's assumption of the Lease is an exercise of its sound business judgment and is in the best interest of the Debtor's estate.

16.    Here, there is more than ample business justification for the Debtor to assume the Lease. As noted above, this equipment is vital to Debtors' operations. The Debtors would not be able to feed or maintain their cattle without the equipment. Western States also cannot be easily replaced by another party, as Western States is familiar with the Debtor's business, and many other equipment vendors in the area are not equipped to handle the size and complexity of the Debtor's operations.

17.    Further, the Debtor also meets the requirements set forth in section 365 of the Bankruptcy Code. According to section 365(b)(1), in order for a debtor to assume a contract or unexpired lease, the debtor must (a) cure any existing defaults or provide adequate assurance that the debtor will promptly cure such default; (b) compensate or provide adequate assurance that the debtor will promptly compensate the non-debtor party to such contract, for any loss to such party resulting from the default; and (c) provide adequate assurance of future performance under such contract.

18.    The Debtor intends to provide adequate assurance of future performance by paying the Rent and Back Rent payments in the ordinary course pursuant to the Lease Agreement. The Rent and Back Rent payments are included in the Debtor's budget (the "Budget") that has been filed with the court as an exhibit to the Debtor's motion to use cash collateral (the "Cash Collateral Motion").

19.     The Debtor is not aware of any other outstanding prepetition obligations under the Lease. As such, the Debtor submits that the post-petition performance under the Lease provides adequate assurance of future performance under the Lease.

20.     Based on the foregoing, the Debtor has satisfied all requirements to assume the Lease pursuant to section 365 of the Bankruptcy Code. As such, the Debtor respectfully requests that the Court enter an Order authorizing the assumption of the Lease with Western States.

### <u>REQUEST FOR WAIVER OF STAY</u>

21.     To immediately implement the relief sought in this Motion and avoid interruption in the Debtors' business operations, the Debtor respectfully requests a waiver of the notice requirements under Rule 6004(a) of the Bankruptcy Rules and seek a waiver of the stay imposed by Rule 6004(h) of the Bankruptcy Rules. As explained above, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors. Accordingly, ample cause exists to justify the waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent such stay applies.

### <u>NO PREVIOUS REQUEST</u>

22.     No previous request for the relief sought herein has been made by the Debtor to this or any other court.

### <u>NOTICE</u>

23.     The Debtor will provide notice of the Motion to: (a) the U.S. Trustee; (b) the parties included on the Debtors' list of 20 largest unsecured creditors; and (e) all parties who have appeared and requested notice via ECF. The Debtor submits that no other or further notice is required.

**<u>CONCLUSION</u>**

**WHEREFORE,** the Debtor respectfully requests this Court enter an order authorizing the assumption and assignment of the Lease with Western States and order such other and further relief as this Court deems just and appropriate under the circumstances.

DATED this 5th day of April 2024.

JOHNSON MAY

*/s/ Matt Christensen*
_____
MATTHEW T. CHRISTENSEN
Attorney for the Debtor

CERTIFICATE OF SERVICE


I HEREBY CERTIFY that on this 5TH day of April 2024, I caused to be served a true and correct copy of the foregoing MOTION electronically through the CM/ECF system, which caused the following parties to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:


| | |
|---|---|
| Matthew T. Christensen | mtc@johnsonmaylaw.com |
| Krystal R. Mikkilineni | krystal.mikkilineni@dentons.com |
| Tirzah R. Rousell | Tirzah.rousell@dentons.com |
| US Trustee | ustp.region18.bs.ecf@usdoj.gov |
| Heidi Buck Morrison | heidi@racineolson.com |
| David A. Coleman | david@colemanjacobsonlaw.com |
| Gery W. Edson | gedson@gedson.com |
| J.B. Evans | evans.jb@dorsey.com |
| Zachary Fairlie | zfairlie@spencerfane.com |
| Kimbell D. Gourley | kgourley@idalaw.com |
| Daniel C. Green | dan@racineolson.com |
| John O'Brien | jobrien@spencerfane.com |
| Scott C. Powers | spowers@spencerfane.com |
| Janine P. Reynard | janine@averylaw.net |
| Sheila R. Schwager | sschwager@hawleytroxell.com |
| Brent R. Wilson | bwilson@hawleytroxell.com |


Any others as listed on the Court's ECF Notice.

I FURTHER CERTIFY that on the 5th day of April, I served a copy of the foregoing on the 20 largest unsecured creditors, as listed on Docket No. 75, via US Mail, postage prepaid.


/s/ Matt Christensen
_____
MATTHEW T. CHRISTENSEN

DEBTOR'S MOTION FOR ORDER AUTHORIZING ASSUMPTION OF WESTERN STATES LEASE – Page 9

## EXHIBIT A

**Proposed Order**

**ORDER GRANTING DEBTORS' MOTION FOR ORDER AUTHORIZING THE DEBTOR TO ASSUME UNEXPIRED LEASE WITH WESTERN STATES EQUIPMENT COMPANY**

The *Debtor's Motion for Order Authorizing the Debtor to Assume Unexpired Lease with Western States Equipment Company* (the "Motion") and the Court, having reviewed the Motion, finds that the Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334, that this is a core matter under 28 U.S.C. § 157(b)(2), that notice of the Motion was sufficient under the circumstances and that no further notice need be given; and the legal and factual bases set forth in the Motion and at the hearing establish just cause for the relief granted herein; and any objections to the requested relief having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing, therefore

**IT IS HEREBY ORDERED** that:

1.      The Motion is GRANTED as requested.

//end of text//

Order submitted by:  Matthew T. Christensen, Attorneys for the Debtor

*Execution Version*

## AMENDED AND RESTATED RENTAL AGREEMENT

This AMENDED AND RESTATED RENTAL AGREEMENT ("**Agreement**"), dated as of March 25, 2024 (the "**Effective Date**"), is entered into by and between Western States Equipment Company, an Idaho corporation ("**Western States**") and Ampleo, as court-appointed receiver ("**Receiver**"), on behalf of Millenkamp Cattle, Inc., an Idaho corporation ("**MK Cattle**"). Western States and the Receiver are each hereby referred to herein as a "**Party**" and together, as the "**Parties**." This Agreement amends, restates, and supersedes the Previous Rental Agreement (as defined herein) and any and all other agreements between Western States and MK Cattle.

WHEREAS, on or about July 1, 2022, Western States and MK Cattle entered into a Rental Agreement (together with the terms and conditions applicable thereto, the "**Previous Rental Agreement**") pursuant to which Western States provided equipment to MK Cattle on the terms and conditions set forth therein; and

WHEREAS, on February 16, 2024, the District Court of the Fourth Judicial District of the State of Idaho, in and for the County of Ada (the "**Receivership Court**") entered an order (the "**Receivership Order**") appointing the Receiver as receiver with respect to William John Millenkamp ("**Mr. Millenkamp**"), certain entities affiliated with Mr. Millenkamp, including MK Cattle (together with Mr. Millenkamp, the "**Millenkamp Entities**"), and certain property of the Millenkamp Entities (the "**Receivership Assets**"); and

WHEREAS, the Receivership Order grants the Receiver authority to enter into certain contracts, including this Agreement, and Receiver hereby enters into this Agreement on behalf of MK Cattle, such that MK Cattle, by and through the Receiver, are each bound by its terms; and

WHEREAS, MK Cattle failed to make timely payments to Western States as required under the terms of the Previous Rental Agreement, which failure constituted an event of default under the Previous Rental Agreement; and

WHEREAS, on March 8, 2024, Western States provided MK Cattle with notice of the event of default as to the Previous Rental Agreement;

WHEREAS, the Rental Equipment, as defined herein, is essential to the operations of MK Cattle; and

WHEREAS, the Parties wish to enter into this Agreement, which sets forth the terms upon which Western States rents certain of its equipment to MK Cattle.

NOW, THEREFORE, in consideration of the mutual premises and covenants contained herein and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Parties hereto covenant and agree as follows:

1

1. **General Agreement**.

    *a. Equipment.* Western States rents the equipment set forth on **<u>Exhibit A</u>** (the "**Rental Equipment**") to MK Cattle pursuant to the terms and conditions set forth in this Agreement. This Agreement is a short-term rental of the Rental Equipment to MK Cattle and is not a sale of the Rental Equipment.

    b. *Term.* This Agreement is effective on the Effective Date and terminates on the earlier of (i) June 30, 2024, or (ii) the occurrence of an Event of Default, as defined herein; (the "**Termination Date**"). Upon the Termination Date, Western States shall have the immediate right to physical possession of the Rental Equipment, and MK Cattle shall not use or add hours to any of the Rental Equipment except to assemble the Rental Equipment at a reasonable location no later than Noon (Mountain Time) on the day immediately following the Termination Date. Western States' right to possession of the Rental Equipment and MK Cattle's duty to cease use except to deliver the Rental Equipment to the location designated by Western States shall be self-effectuating and require no further action by any court, any Party, or any third party. Receiver hereby acknowledges, on behalf of MK Cattle, that Western States has no obligation to rent any equipment to MK Cattle after the Termination Date.

    *c. Payment of Rent.*

        i.    Western States shall deliver an invoice to MK Cattle by the twenty-fifth (25th) of each month detailing the next month's monthly rent (the "**Rent**") and estimated service contract expense amounts ("**Estimated Expenses**") due for the next month based on the current monthly rental rate and the estimated service contract expense amounts derived from the projected over hours usage of the Rental Equipment, in each case as set forth on **<u>Exhibit B</u>** to this Agreement (each, a "**Monthly Invoice**").

        ii.    MK Cattle shall pay the Rent and Estimated Expenses due under each Monthly Invoice within ten (10) calendar days (the "**Payment Due Date**"). MK Cattle shall be entitled to a three (3) business day grace period after the Payment Due Date to cure any default in the payment timing.  If payment is not delivered to Western States by the end of the grace period after a Payment Due Date then MK Cattle is not authorized to use and shall not use or operate the Rental Equipment. Prior to the filing of any bankruptcy petition by MK Cattle, the Parties agree that any such timely payment shall be deemed and agreed by the Parties to have been in the ordinary course of MK Cattle's business.  After the filing of any bankruptcy petition by MK Cattle, such payment shall be made pursuant to one or more bankruptcy court orders authorizing the assumption of this Agreement, requiring adequate protection of Western States by MK Cattle, and/or authorizing a cash collateral budget of MK Cattle.

        iii.    Within ten (10) days of the Termination Date, Western States will use electronic data retrieved from the Rental Equipment to provide MK Cattle with an accounting of the actual expenses for service contract expenses (the "**Expense Accounting**") based on the actual usage of the Rental Equipment (the "**Actual Expenses**") for the purpose of comparing it with the Estimated Expenses.  If the Overage Accounting reflects that the amount of the Actual Expenses is greater than the amount of the Estimated Expenses, then MK Cattle shall pay to

2

Western States the difference in costs within ten (10) days of Western States' determination. If the Overage Accounting reflects that the amount of the Estimated Expenses is greater than the amount of the Actual Expenses, then Western States shall pay the difference to MK Cattle within ten (10) days of Western States' determination. All payments pursuant to this Section 1(c)(iii) shall be subject to offset against any other amounts due under this Agreement.

          iv.      MK Cattle shall cure back rent owing in the amount of $597,552.23 pursuant to the schedule set forth on **Exhibit C** (the "**Back Rent**"). This Back Rent shall be paid in equal monthly installments over the remaining term of this Amended Lease. Payment of the Back Rent shall be due no later than the 15th day of the month, starting with April 15, 2024. In the event MK Cattle files a bankruptcy petition, MK Cattle is not authorized to use the Rental Equipment without adequate protection and it shall seek approval to cure the Back Rent owing in connection with the Assumption Motion (as defined herein). MK Cattle's obligation to cure Back Rent shall survive the termination of this Agreement.

     *d.*  *Grant of Security Interest (Section 7 of Previous Rental Agreement survives)*. To the extent permitted by applicable law, in order to secure payment and adequate performance of MK Cattle's obligations arising under this Agreement, MK Cattle authorizes the filing of a financing statement reflecting this Agreement as a lease or rental and further MK Cattle grants Western States a security interest in and to all right, title, and interest of MK Cattle in, to, and under the Rental Equipment and any and all accessions, additions, replacements, substitutions, and proceeds of the same ("**Collateral**") to secure payment of the Rent and Actual Expenses and any and all other obligations or amounts owed or owing by MK Cattle hereunder whether now existing or hereafter created and all renewals, extensions, and rearrangement of such liabilities. MK Cattle appoints Western States as MK Cattle's irrevocable attorney-in-fact to file, at MK Cattle's cost any financing statement(s) (and any amendments, renewals, and related instruments) to perfect such security interest. MK Cattle shall execute any such statements or other documentation necessary to perfect such security interest. The security interest granted under this provision constitutes a purchase money security interest under the Idaho Uniform Commercial Code ("**UCC**"). During the period in which Western States has a security interest in and to the Rental Equipment, MK Cattle may not purport to assign, transfer, or otherwise claim to sell any of the Collateral as it is not the owner thereof.

  **2.**  **Conditions to Effectiveness**. Each of the following conditions in this Section 2 shall constitute a condition precedent to the effectiveness of this Agreement.

     a.   *Pre-Judgment Writ of Replevin*. Concurrent with the execution and delivery of this Agreement, MK Cattle shall execute and deliver to Western States an executed consent to pre-judgment writ of replevin in favor of Western States in substantially the form attached hereto as **Exhibit D**, to be held by Western States, which Western States may file in any court in the State of Idaho as necessary to effect the immediate return of the Rental Equipment to Western States after the Termination Date ("**Writ of Replevin**"). Notwithstanding the foregoing, in the event a Bankruptcy Case is filed, this paragraph does not act as a waiver of the automatic stay imposed by the bankruptcy filing.

b.      *Acknowledgement of Support*. William Millenkamp, on behalf of himself and the Millenkamp Entities, shall have approved the form of this Agreement, the Writ of Replevin, and agreed not to object to any of the terms of this Agreement in any subsequent proceeding in the Receivership Court, in bankruptcy court, or in any other court.

**3.  MK Cattle's Covenants**.

a.      *Efficient Movement of Rental Equipment.* Receiver and Millenkamp (both on behalf of MK Cattle) agrees to move those units of Rental Equipment which have exceeded or will exceed during the Term, 3,000 or 4,000 hours of use (as applicable), to MK Cattle operation sites where less usage is anticipated and to move lower-hour Rental Equipment to sites where more usage is anticipated. This obligation shall include, but not be limited to, moving the 18 loaders with the highest hours of usage as of the Effective Date of this Agreement to locations where lower usage is anticipated (if such locations are available).  Such Rental Equipment shall be moved on or before March 31, 2024.

b.      *Assumption of this Agreement.* In the event that MK Cattle files a bankruptcy petition, MK Cattle shall file a motion no later than three (3) business days after the petition is filed, requesting the expedited assumption of this Agreement in connection with debtor-in-possession financing and/or its cash collateral budget (the "**Assumption Motion**").  The Assumption Motion shall seek an order authorizing the assumption of this Agreement and providing for adequate protection of Western States' interest in the Rental Equipment.

c.      *Surrender of Rental Equipment.* Upon the occurrence of the Termination Date, MK Cattle shall cooperate in all respects with the orderly return of the Rental Equipment. MK Cattle agrees to return the Rental Equipment in good working condition, reasonable wear and tear excepted. MK Cattle further agrees to repair/replace all or any portion of the Rental Equipment which becomes necessary because of damage, including that damage caused by MK Cattle, or its employees, agents, subcontractors, or affiliates, and also shall continue to pay rental on the Rental Equipment at the regular rental rate until repairs have been completed. The following shall not be deemed reasonable wear and tear: damage resulting from lack of lubrication or failing to maintain necessary oil, water, and air pressure levels; damage resulting from lack of daily inspection and maintenance; and damage resulting from exposure to leach pads, scrap metal operations or other corrosive or harsh environments. Repairs to the Rental Equipment shall be made to the reasonable satisfaction of Western States, and in a manner that will not adversely affect the operation or value of the Rental Equipment as determined by Western States (for example, welding repairs rather than replacing a part will be at Western States' discretion).

d.      *Further Assurances Regarding Replevin.* MK Cattle shall not oppose or object to the filing of the Writ of Replevin.

e.      *Notification of Damage*. Western States and its designated representatives and agents shall have the right at all reasonable times to examine and inspect the Rental Equipment. MK Cattle will not commit or permit damage to or destruction of the Rental Equipment or any material part of the Rental Equipment. MK Cattle shall immediately notify Western States of all

4

cases involving the loss or damage of or to any material portion of the Rental Equipment and generally of all material happenings and events affecting the Rental Equipment.

f.      *Rental Equipment Operation and Care.* The Rental Equipment is authorized for use only for its ordinary purpose. MK Cattle understands that the operation of the Rental Equipment requires skill and experience and that failure to operate it safely may result in serious personal injury or death and/or property damage. MK Cattle is responsible for ensuring that all persons in and around the Rental Equipment follow the manufacturer's operation, maintenance, and safety instructions, and acknowledge that those instructions have been provided by MK Cattle. MK Cattle's operation and use of the Rental Equipment must comply with all laws, ordinances, and regulations relating to the possession, use, or maintenance of the Rental Equipment, including registration and/or licensing requirements, if any. Operating instructions and safety manuals have been provided to MK Cattle. MK Cattle must (i) protect the Rental Equipment against misuse, exposure to adverse conditions and any other abuse or neglect, (ii) ensure that it remains in good operating condition and (iii) is returned to Western States as required herein. MK Cattle will provide a qualified operator for each unit of the Rental Equipment, pay all costs of its operation, and provide all necessary fuel, lubricants, accessories, and supplies.

g.      *Maintain Insurance.* MK Cattle shall not operate, use, move, load, transport or otherwise handle the Rental Equipment without first having obtained insurance coverage, including for loss, theft, damage, or destruction, and the loss of income from the Rental Equipment. During the term of this Agreement, each Party shall, at its own expense, maintain and carry insurance in full force and effect which includes, but is not limited to, (i) commercial general liability in occurrence form with a minimum limit of $1,000,000 per occurrence, plus a minimum $2,000,000 general aggregate limit; (ii) workers' compensation in an amount no *less* than the minimum required by law and employers' liability in a sum no less than $1,000,000; and (iii) any additional insurance Western States may reasonably require, in each case with financially sound and reputable insurers. MK Cattle will maintain insurance for the loss, theft, damage, or destruction to the Rental Equipment in the amount of the replacement value of the Rental Equipment.  Upon either Party's request, the other Party shall provide the requesting Party with a certificate of insurance from such Party's insurer evidencing the insurance coverage specified above. The certificate of insurance shall name the requesting Party as an additional insured. The insured Party shall provide the requesting Party with thirty (30) days' advance written notice in the event of a cancellation or material change in the insured Party's insurance policy. Except where prohibited by law, the insured Party shall require its insurer to waive all rights of subrogation against the requesting Party and the requesting Party's insurers.

h.      *Compliance with Laws.* MK Cattle shall at all times comply with all federal, state, and local laws, rules, or regulations applicable to this Agreement, MK Cattle's performance of its *obligations* hereunder, and MK Cattle's use of the Rental Equipment. Without limiting the generality of the foregoing, MK Cattle shall (i) at its own expense, maintain all certifications, credentials, licenses and permits necessary to conduct its business relating to the use of the Rental Equipment and (ii) not engage in any activity or transaction involving the Rental Equipment, by way of shipment, use or otherwise, that violates any federal, state, and local laws, rules, or regulations.

i.       *Daily Inspection, Maintenance, and Safekeeping*. MK Cattle will conduct daily inspection and routine maintenance of the Rental Equipment consistent with the procedures in the manufacturer's operation *and* maintenance manuals provided with the Rental Equipment. Unless otherwise agreed by the parties, Western States will perform the required preventative maintenance during the Term, consistent with the procedures in the manufacturer's operation and maintenance manual. Upon request, MK Cattle will make the Rental Equipment available for Western States to perform such preventative maintenance during Western States' regular business hours.

j.       *Risk of Damage.* MK Cattle or its insurer bears the risk of loss as to the Rental Equipment while it is in the possession of MK Cattle and during the rental Term, and bears all risk of loss, theft, damage, or destruction to the Rental Equipment, regardless of cause (ordinary wear excepted). If the Rental Equipment is lost, stolen, damaged or destroyed during MK Cattle's possession or the rental period, whether or not the same is MK Cattle's fault, MK Cattle will notify Western States immediately and MK Cattle or its insurer will pay Western States (i) the retail value of the parts and labor necessary to repair the Rental Equipment if damaged, or (ii) the actual replacement value of a replacement unit if lost, stolen, destroyed or damaged beyond Western States' reasonable ability to repair it; and in either case, all packing, shipping, handling, storage and other associated costs. Rent previously paid will not be applied against the above-referenced charges and rental payments will continue to accrue during all repair and replacement periods. MK Cattle shall furnish Western States with a complete written report of any accident involving the Rental Equipment, including, but not limited to names and addresses of all witnesses and persons involved.

k.       *Replacement Obligation*. If the Rental Equipment is lost, stolen, destroyed, or rendered unfit for use (as determined by Western States, at its sole discretion), MK Cattle or its insurer agrees to pay the full market replacement value and loss of rental income (as determined by Western States), necessary repairs, or lost rent, as the case may be.

**4.   Events of Default**. An "**Event of Default**" shall occur if:

a.       MK Cattle fails to timely pay any Rent or Estimated Expenses when due; or

b.       MK Cattle fails to perform or observe any covenant, condition, or agreement to be performed by it in connection with this Agreement; or

c.       MK Cattle attempts to sell, transfer, encumber, sublease or convey any of the Rental Equipment; or

d.       Western States, in good faith, believes that the Rental Equipment is being subjected to improper use, including excessive hours.

**5.    Indemnification**. MK Cattle agrees to indemnify, defend and hold harmless Western States from and against any and all claims, actions, suits, proceedings, costs, expenses, damages (including but not limited to consequential and incidental damages), liabilities, deficiencies, fees, interest, awards, penalties, fines, costs (including, but not limited to, attorney fees and court costs), judgements, and settlements, (including those brought or incurred by or in

6

favor of MK Cattle's employees, agents and subcontractors), arising out of or related to (i) the selection, delivery, loading, unloading, towing, possession, use, misuse, failure or maintenance of the Rental Equipment, operation, handling, retaking, or transportation of the Rental Equipment (inclusive of any of the foregoing by employees or agents of MK Cattle, or third parties), (ii) personal injury, death or property damage or loss of any nature whatsoever arising out of or related to the Rental Equipment while on rent or subject to this Agreement, (iii) any breach by MK Cattle of this Rental Agreement or any applicable law, (iv) use of the Rental Equipment in any manner that does not materially conform with the usage specifications provided by Western States or the equipment manufacturer, as applicable, or (v) any act or omission of MK Cattle or its employees, agents, contractors, subcontractors, affiliates or invitees. Additionally, MK Cattle agrees to defend, at its expense, any and all suits brought against Western States, either alone or in conjunction with others (including any third-party suits or actions) and additionally to satisfy, pay and discharge any and all judgments and fines against Western States in any such suits or actions, whether based in gross negligence, willful misconduct, negligence or otherwise.

6.  **Miscellaneous**.

a.    *Disclaimer of Warranties*. As of the date hereof, MK Cattle is in possession of the Rental Equipment and by continuing to possess the Rental Equipment pursuant to this Agreement, MK Cattle acknowledges the Rental Equipment to be in good, safe, and serviceable condition, and accepts the Rental Equipment "**AS-IS, WHERE-IS**" and "**WITH ALL FAULTS**", regardless of defects, latent or otherwise. Western States makes no warranties, express or implied, for any Rental Equipment, goods, product, service, or other items sold or furnished under this Agreement unless agreed to in a separate writing between MK Cattle and Western States. **WESTERN STATES MAKES NO WARRANTY WHATSOEVER WITH RESPECT TO THE RENTAL EQUIPMENT, INCLUDING ANY (a) WARRANTY OF MERCHANTABILITY; (b) WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE; (c) WARRANTY OF TITLE; OR (d) WARRANTY AGAINST INFRINGEMENT OF INTELLECTUAL PROPERTY RIGHTS OF A THIRD PARTY; WHETHER ARISING BY LAW, COURSE OF DEALING, COURSE OF PERFORMANCE, USAGE OF TRADE OR OTHERWISE. MK CATTLE ACKNOWLEDGES THAT IT HAS NOT RELIED UPON ANY REPRESENTATION OR WARRANTY MADE BY WESTERN STATES, OR ANY OTHER PERSON ON WESTERN STATES' BEHALF, EXCEPT AS SPECIFICALLY SET FORTH IN THIS RENTAL AGREEMENT.** Any warranty by Western States shall be null and void and have no legal effect if MK Cattle fails to pay any amounts due for the Rental Equipment at issue.

b.    *Limitation of Liability*. In no event will Western States, its subsidiaries, affiliates, agents or employees be liable for any liquidated, incidental, indirect, exemplary, punitive, enhanced, special, or consequential damages in connection with, arising out of, or relating to this Agreement or furnishing of any equipment, goods, services or other items or any third party's ownership, maintenance, or use of any equipment, goods, services or other items furnished under this Agreement, including, but not limited to, lost profits or revenues, loss of use of the Rental Equipment or any associated goods, damage to associated goods, costs of capital, cost of substitute goods, or claims of MK Cattle for such damages, whether or not the possibility of such damages has been disclosed in advance or could have been reasonably foreseen by MK Cattle, regardless

7

of the legal or equitable theory (contract, tort or otherwise) upon which the claim is based, and notwithstanding the failure of any agreed or other remedy of its essential purpose. Western States is not responsible for meeting any federal, state, local or municipal code, rules, regulations, or specifications (whether statutory, regulatory, or contractual), unless MK Cattle specifies it in writing and Western States agrees to it in writing. MK Cattle agrees that it has selected the Rental Equipment based upon its own judgment and particular needs and disclaims any reliance upon any statements or presentations made by Western States. **IN NO EVENT SHALL WESTERN STATES' AGGREGATE LIABILITY ARISING OUT OF OR RELATED TO THIS AGREEMENT, WHETHER ARISING OUT OF OR RELATED TO BREACH OF AGREEMENT, WARRANTY, STRICT LIABILITY TORT (INCLUDING NEGLIGENCE) OR OTHERWISE, EXCEED THE TOTAL RENT PAID UNDER THE PREVIOUS RENTAL AGREEMENT AND THIS AGREEMENT FOR THE PRIOR SIX (6) MONTHS.** The Parties recognize that the pricing associated with Rental Equipment reflects this allocation of risk and is the basis of the bargain between the Parties.

      c.    *Force Majeure*. Western States shall not be responsible or liable, and Western States' obligation to perform under this Agreement will be excused during each period of delay, for any delay or failure to deliver any or all of the Rental Equipment and/or performance of the services where such delay or failure is caused by any act of God, any worldwide or *national* epidemic or pandemic, fire, flood, inclement weather, explosion, war, insurrection, riot, embargo, stature, ordinance, regulation or order of any government or agent thereof, shortage of power, shortage of labor, material fuel, supplies or transportation, strike or other labor dispute, or any other cause, contingency, occurrence or circumstance of any nature, whether or not similar to those herein before specified beyond Western States' control, which prevents, hinders or interferes with manufacture, assembly or delivery of the Rental Equipment or performance of the services. Any such cause, contingency, occurrence, or circumstances shall release Western States from performance of its obligations hereunder. In the event of a Force Majeure event, Western States shall: (i) immediately notify MK Cattle of the Force Majeure event and its expected duration, and (ii) take all reasonable steps to recommence performance as soon as possible.

      d.    *Waiver*. No waiver of any provision of Agreement shall be effective unless it shall (a) be in writing; (b) specifically identify this Agreement; (c) specifically state that such document waives certain terms of this Agreement; and (d) be accepted and signed by an authorized representative of *Western* States. Any waiver authorized on one occasion is effective only in that instance and only for the purpose stated and does not operate as a waiver on any future occasion. None of the following constitutes a waiver or estoppel of any right, remedy, power, privilege, or condition arising from this Agreement: (i) any failure or delay in exercising any right, remedy, power, or privilege or in enforcing any condition under this Rental Agreement; or (ii) any act, omission, or course of dealing between the Parties. Unless otherwise specified, remedies hereunder shall not be exclusive, but shall be cumulative and in addition to all other remedies existing at law or in equity. The receipt, acceptance and/or negotiation of, or any endorsement on, any check or draft received from one Party will not operate to waive or release, in whole or in part, any claim of the other Party arising hereunder or in connection herewith (except as to the portion thereof actually received by the other Party in cash or other good funds). No delay or failure by either party to exercise any right or remedy under this Agreement, and no partial or single exercise of

that right or remedy, shall constitute a waiver of that or any other right or remedy, unless otherwise expressly provided in this Agreement.

e.     *Counterparts*. This Agreement may be executed in several counterparts, each of which shall be deemed an original but all of which counterparts collectively shall constitute one instrument, and *in* making proof of this Agreement, it shall never be necessary to produce or account for more than one such counterpart. Signatures of a Party to this Agreement or other documents executed in connection herewith which are sent to the other parties by facsimile or PDF transmission shall be binding as evidence of acceptance of the terms hereof or thereof by such signatory party, with originals to be circulated to the other parties in due course.

f.     *Expenses*. Each Party shall be responsible for its own expenses in connection with the preparation, execution, *and* delivery of this Agreement.

g.     *Governing Law, Jurisdiction and Venue*. This Agreement and the relationship between Western States and MK Cattle shall be governed and construed according to the laws of the State of Idaho. At the sole and exclusive election of Western States, jurisdiction and venue for any action or dispute arising under this Agreement shall be in the Fifth Judicial District of the State of Idaho, in and for Jerome County, which is MK Cattle's corporate headquarters and principal place of business, wherein the parties acknowledge having done business sufficient to establish minimum contacts under the Idaho long arm statute, and which is a mutually convenient forum. In addition, Western States waives any and all rights to jurisdiction and/or venue in any other forum, including waiver of any and all rights to remove the action from any court originally acquiring jurisdiction. This Agreement, and the Rental Equipment rented herein, is controlled by the laws of the State of Idaho.

h.     *Invalid Provisions / Severability*. If any part of this *Agreement* shall be determined to be invalid, illegal, or unenforceable, or declared null and void by any court of competent jurisdiction, then (i) such part shall be reformed, if possible, to conform to the law and (ii) in any event the remaining parts of this Agreement shall be fully effective and operative insofar as reasonably possible

i.     *Assignments*. No right or interest in this Agreement shall be assigned by MK Cattle without the written consent and permission of Western States, and no delegation of any obligation owed or of the performance of any obligation by MK Cattle shall be made without written permission of Western States. Any attempted assignment or delegation by MK Cattle or the Receiver shall be wholly void and totally ineffective for all purposes unless made in conformity with this paragraph

j.     *Amendments*. No amendment to or modification of or rescission, termination or discharge of this *Agreement* is effective unless in a writing signed by an authorized representative of each Party.

k.     *Entire Agreement*. This Agreement, and associated invoices, constitute the entire agreement between the Parties and supersedes all prior oral and written agreements and understandings between the Parties. The Parties intend for the express terms and conditions

9

contained in this Agreement (including any invoice and these Agreement terms and conditions) to exclusively govern and control each of the Parties' respective *rights* and obligations regarding the subject matter of this Agreement, and this Agreement is expressly limited to such terms and conditions. Without limitation of the foregoing, any additional, contrary, or different terms contained in any purchase order, third-party agreement, or other request or communication by MK Cattle pertaining to the rental of equipment by Western States, and any attempt to modify, supersede, supplement, or otherwise alter this Agreement, will not modify this Agreement or be binding on the Parties.

*[remainder of page intentionally left blank; signatures on next page]*

10

**PARTIES:**

WESTERN STATES EQUIPMENT COMPANY,
an Idaho corporation

*Kelly Olson*

By: Kelly Olson
Its: President


AMPLĒO, as Court-Appointed Receiver for
Millenkamp Cattle, Inc., an Idaho corporation

*Matt McKinlay*

By: Matt McKinlay
Its: Managing Partner


**ACKNOWLEDGED AND AGREED TO:**



William Millenkamp, in his capacity as an individual

11

## **Exhibit A**

Rental Equipment

[see attached]

12

| Subject | (Client unit #) | Serial Number | Machine ID# | Bucket ID# |
|---|---|---|---|---|
| Millenkamp Cattle  930M 4.2 S&G | #26 - new | J5K00654 | E0124383 | E0101050 |
| Millenkamp Cattle  930M 4.2 S&G | #24 - new | J5K00652 | E0123981 | E0060175 |
| Millenkamp Cattle  930M 4.2 S&G | #27 - new | J5K00655 | E0124383 | E0082353 |
| Millenkamp Cattle  930M 4.2 S&G | #25 - new | J5K00653 | E0123978 | E0087398 |
| Millenkamp Cattle  930M 4.2 S&G | #20 - new | J5K00596 | E0114955 | E0090866 |
| Millenkamp Cattle  930M 4.2 S&G | 2 | J5K00470 | E0097691 | E0098491 |
| Millenkamp Cattle  930M 4.2 S&G | 5 | J5K00473 | E0097688 | E0098484 |
| Millenkamp Cattle  930M 4.2 S&G | 6 | J5K00474 | E0097687 | E0098483 |
| Millenkamp Cattle  930M 4.2 S&G | 18 | J5K00486 | E0097673 | E0098400 |
| Millenkamp Cattle  930M 4.2 S&G | 4 | J5K00472 | E0097689 | E0098485 |
| Millenkamp Cattle  930M 4.2 S&G | 3 | J5K00471 | E0097690 | E0098486 |
| Millenkamp Cattle  930M 4.2 S&G | 1 | J5K00469 | E0097692 | E0098492 |
| Millenkamp Cattle  930M 4.2 S&G | 9 | J5K00477 | E0097684 | E0098479 |
| Millenkamp Cattle  930M 4.2 S&G | 11 | J5K00479 | E0097681 | E0098475 |
| Millenkamp Cattle  930M 4.2 S&G | 14 | J5K00482 | E0097678 | E0098473 |
| Millenkamp Cattle  930M 4.2 S&G | 17 | J5K00485 | E0097674 | E0098403 |
| Millenkamp Cattle  930M 4.2 S&G | 10 | J5K00478 | E0097683 | E0098478 |
| Millenkamp Cattle  930M 4.2 S&G | 13 | J5K00481 | E0097677 | E0098472 |
| Millenkamp Cattle  930M 4.2 S&G | 16 | J5K00484 | E0097675 | E0098404 |
| Millenkamp Cattle  930M 4.2 S&G | 8 | J5K00476 | E0097685 | E0098481 |
| Millenkamp Cattle  930M 4.2 S&G | 12 | J5K00480 | E0097680 | E0098474 |
| Millenkamp Cattle  930M 4.2 S&G | 7 | J5K00475 | E0097686 | E0098482 |
| Millenkamp Cattle  930M 4.2 S&G | 15 | J5K00483 | E0097676 | E0098405 |
| Millenkamp Cattle 930M HD BKTs | 38 | J5K00506 | E0097631 | E0098323 |
| Millenkamp Cattle 930M HD BKTs | 37 | J5K00505 | E0097633 | E0098326 |
| Millenkamp Cattle 930M HD BKTs | 33 | J5K00501 | E0097641 | E0098315 |
| Millenkamp Cattle 930M HD BKTs | 35 | J5K00503 | E0097638 | E0098329 |
| Millenkamp Cattle 930M HD BKTs | 34 | J5K00502 | E0097639 | E0098330 |
| Millenkamp Cattle  - 966M | MK#1 | EJA03963 | E0093020 | E0093464 |
| Millenkamp Cattle  930M 4.2 S&G | 21 | J5K00489 | E0097670 | E0098395 |
| Millenkamp Cattle  930M 4.2 S&G | 28 | J5K00496 | E0097653 | E0098384 |
| Millenkamp Cattle  - 966M | MK#5 | EJA04085 | E0094815 | E0098320 |
| Millenkamp Cattle 930M HD BKTs | 36 | J5K00504 | E0097636 | E0098328 |
| Millenkamp Cattle  930M 4.2 S&G | 30 | J5K00498 | E0097647 | E0098380 |
| Millenkamp Cattle  930M 4.2 S&G | 19 | J5K00487 | E0097672 | E0098397 |
| Millenkamp Cattle  930M 4.2 S&G | 29 | J5K00497 | E0097650 | E0098382 |
| Millenkamp Cattle  930M 4.2 S&G | 22 | J5K00490 | E0097669 | E0098393 |
| Millenkamp Cattle  - 966M | MK#4 | EJA03996 | E0093033 | E0093473 |
| Millenkamp Cattle  - 966M | MK#3 | EJA03971 | E0093031 | E0093470 |
| Millenkamp Cattle  930M 4.2 S&G | 31 | J5K00499 | E0097644 | E0098379 |
| Millenkamp Cattle  930M 4.2 S&G | 23 | J5K00491 | E0097665 | E0098392 |

**Exhibit B**

Rent and Estimated Expenses

| Payment Type | April | May | June |
|---|---|---|---|
| **Rent** | $91,603.91 | $91,603.91 | $91,603.91 |
| **Estimated Expenses** | $79,493.51 | $81,664.83 | $83,836.14 |
| **Total** | $171,097.42 | $173,268.74 | $175,440.05 |

13

**Exhibit C**

Back Rent

| Amount | Due Date |
|---|---|
| $198,690.34 | April 15, 2024 |
| $198,690.34 | May 15, 2024 |
| $198,690.34 | June 15, 2024 |
| *TOTAL: $596,071.03* | |

14

4894-9853-7390\4

## **Exhibit D**

Form of Writ of Replevin

[see attached]

15

**IN THE FIFTH JUDICIAL DISTRICT COURT**
**JEROME COUNTY, STATE OF IDAHO**

| | |
|---|---|
| WESTERN STATES EQUIPMENT COMPANY, an Idaho corporation,<br><br>     Plaintiff,<br><br>v.<br><br>MILLENKAMP CATTLE, an Idaho corporation,<br><br>     Defendant. | **PREJUDGMENT WRIT OF REPLEVIN**<br><br>Case No. _____<br><br>Judge _____ |

In accordance with this Court's *Order Granting Plaintiff's Motion for Prejudgment Writ of Replevin*, entered in the above-captioned matter:

**YOU ARE HEREBY COMMANDED** by this Prejudgment Writ of Replevin, within 14 days of being served with this Prejudgment Writ of Replevin, to deliver to Western States Equipment Company ("**Western States**") the vehicles set forth on Schedule 1 attached hereto (collectively, the "**Vehicles**").

**YOU ARE FURTHER COMMANDED** to coordinate the delivery of the Vehicles to Western States, at a reasonably convenient location, by contacting Western States representative, Alex Freter, at (208) 501-4642.

**YOU ARE PROHIBITED** from removing any property, parts or things from the Vehicles, including any parts, accessions, attachments, accessories, replacements of, or additions to any of the Vehicles.

4857-1372-2800\1

**END OF WRIT**
**(The Court's signature appears at the top of this page)**

ACKNOWLEDGED AND AGREED TO:

MILLENKAMP CATTLE, INC.

_____
William Millenkamp
Its: _____

**<u>Schedule 1</u>**

Equipment List

[see attached]

| Subject | (Client unit #) | Serial Number | Machine ID# | Bucket ID# |
|---|---|---|---|---|
| Millenkamp Cattle  930M 4.2 S&G | #26 - new | J5K00654 | E0124383 | E0101050 |
| Millenkamp Cattle  930M 4.2 S&G | #24 - new | J5K00652 | E0123981 | E0060175 |
| Millenkamp Cattle  930M 4.2 S&G | #27 - new | J5K00655 | E0124383 | E0082353 |
| Millenkamp Cattle  930M 4.2 S&G | #25 - new | J5K00653 | E0123978 | E0087398 |
| Millenkamp Cattle  930M 4.2 S&G | #20 - new | J5K00596 | E0114955 | E0090866 |
| Millenkamp Cattle  930M 4.2 S&G | 2 | J5K00470 | E0097691 | E0098491 |
| Millenkamp Cattle  930M 4.2 S&G | 5 | J5K00473 | E0097688 | E0098484 |
| Millenkamp Cattle  930M 4.2 S&G | 6 | J5K00474 | E0097687 | E0098483 |
| Millenkamp Cattle  930M 4.2 S&G | 18 | J5K00486 | E0097673 | E0098400 |
| Millenkamp Cattle  930M 4.2 S&G | 4 | J5K00472 | E0097689 | E0098485 |
| Millenkamp Cattle  930M 4.2 S&G | 3 | J5K00471 | E0097690 | E0098486 |
| Millenkamp Cattle  930M 4.2 S&G | 1 | J5K00469 | E0097692 | E0098492 |
| Millenkamp Cattle  930M 4.2 S&G | 9 | J5K00477 | E0097684 | E0098479 |
| Millenkamp Cattle  930M 4.2 S&G | 11 | J5K00479 | E0097681 | E0098475 |
| Millenkamp Cattle  930M 4.2 S&G | 14 | J5K00482 | E0097678 | E0098473 |
| Millenkamp Cattle  930M 4.2 S&G | 17 | J5K00485 | E0097674 | E0098403 |
| Millenkamp Cattle  930M 4.2 S&G | 10 | J5K00478 | E0097683 | E0098478 |
| Millenkamp Cattle  930M 4.2 S&G | 13 | J5K00481 | E0097677 | E0098472 |
| Millenkamp Cattle  930M 4.2 S&G | 16 | J5K00484 | E0097675 | E0098404 |
| Millenkamp Cattle  930M 4.2 S&G | 8 | J5K00476 | E0097685 | E0098481 |
| Millenkamp Cattle  930M 4.2 S&G | 12 | J5K00480 | E0097680 | E0098474 |
| Millenkamp Cattle  930M 4.2 S&G | 7 | J5K00475 | E0097686 | E0098482 |
| Millenkamp Cattle  930M 4.2 S&G | 15 | J5K00483 | E0097676 | E0098405 |
| Millenkamp Cattle 930M HD BKTs | 38 | J5K00506 | E0097631 | E0098323 |
| Millenkamp Cattle 930M HD BKTs | 37 | J5K00505 | E0097633 | E0098326 |
| Millenkamp Cattle 930M HD BKTs | 33 | J5K00501 | E0097641 | E0098315 |
| Millenkamp Cattle 930M HD BKTs | 35 | J5K00503 | E0097638 | E0098329 |
| Millenkamp Cattle 930M HD BKTs | 34 | J5K00502 | E0097639 | E0098330 |
| Millenkamp Cattle  - 966M | MK#1 | EJA03963 | E0093020 | E0093464 |
| Millenkamp Cattle  930M 4.2 S&G | 21 | J5K00489 | E0097670 | E0098395 |
| Millenkamp Cattle  930M 4.2 S&G | 28 | J5K00496 | E0097653 | E0098384 |
| Millenkamp Cattle  - 966M | MK#5 | EJA04085 | E0094815 | E0098320 |
| Millenkamp Cattle 930M HD BKTs | 36 | J5K00504 | E0097636 | E0098328 |
| Millenkamp Cattle  930M 4.2 S&G | 30 | J5K00498 | E0097647 | E0098380 |
| Millenkamp Cattle  930M 4.2 S&G | 19 | J5K00487 | E0097672 | E0098397 |
| Millenkamp Cattle  930M 4.2 S&G | 29 | J5K00497 | E0097650 | E0098382 |
| Millenkamp Cattle  930M 4.2 S&G | 22 | J5K00490 | E0097669 | E0098393 |
| Millenkamp Cattle  - 966M | MK#4 | EJA03996 | E0093033 | E0093473 |
| Millenkamp Cattle  - 966M | MK#3 | EJA03971 | E0093031 | E0093470 |
| Millenkamp Cattle  930M 4.2 S&G | 31 | J5K00499 | E0097644 | E0098379 |
| Millenkamp Cattle  930M 4.2 S&G | 23 | J5K00491 | E0097665 | E0098392 |