Meredith L. Thielbahr, ISB No. 9733
mthielbahr@grsm.com
Karyn Lloyd, ISB No. 5482
klloyd@grsm.com
Gordon Rees Scully Mansukhani, LLP
999 W. Main Street, #100
Boise, ID  83702
Telephone:   (208) 489-9095
Facsimile:    (208) 957-5704

*Attorneys for CNH Industrial Capital America LLC*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| In re: | Case No. 24-40158-NGH |
| Millencamp Cattle, Inc., | Chapter 11 |
| Debtors. | |

## DECLARATION OF CNH INDUSTRIAL CAPITAL AMERICA LLC

I, Greg Arkatin, declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am the High Risk Bankruptcy Manager of CNH Industrial Capital America LLC ("CNH"). I make this declaration from my own personal knowledge and review of the books and records of CNH. If called as a witness, I would and could testify competently to the matters contained herein.

2.      CNH is a party to two (2) Retail Installment Sales Contracts and Security Agreements ("**CNH Loans**") with Debtor pursuant to which CNH (as

assignee of the seller Burks Tractor Company, Inc. ("**Burks Tractor**")) financed certain items of CNH Collateral for Debtor.

3.    CNH Loan 765530 ("**CNH Loan 1**") by and between CNH (as assignee of the seller Burks Tractor) and Debtor was entered into on February 6, 2024. Pursuant to CNH Loan 1, Burks Tractor financed twenty-five (25) Kubota tractors for Debtor as set forth in CNH Loan 1. A true and correct copy of CNH Loan 1, the Assignment of CNH Loan 1 by Burks Tractor to CNH and the UCC filing of CNH are attached hereto as **Exhibit 1**.

4.    On the Petition Date, CNH was owed $469,379.13 on CNH Loan 1. The value of the CNH Loan 1 collateral is unknown without an inspection of condition and hours.

5.    CNH Loan 765552 ("**CNH Loan 2**") by and between CNH (as assignee of the seller Burks Tractor) and Debtor was entered into on February 6, 2024. Pursuant to CNH Loan 2, Burks Tractor financed thirty (30) Case IH Maxxum tractors for Debtor as set forth in CNH Loan 2. A true and correct copy of CNH Loan 2, the Assignment of CNH Loan 2 by Burks Tractor to CNH and the UCC filing of CNH are attached hereto as **Exhibit 2**.

6.    On the Petition Date, CNH was owed $2,582,774.66 on CNH Loan 2. The value of the CNH Loan 2 collateral is unknown without an inspection of condition and hours.

7.    CNH is a party to four (4) Equipment Operating Lease Agreements ("**CNH Leases**") with Debtor pursuant to which CNH (as assignee of the lessor Burks Tractor Company, Inc. ("**Burks Tractor**")) leased certain items of farm equipment for Debtor.

8.    CNH Lease 210982 ("**CNH Lease 1**") by and between CNH (as assignee of the lessor Burks Tractor) and Debtor was entered into on October 31, 2020. Pursuant to CNH Lease 1, Burks Tractor leased twenty-six (26) Case IH Magnum Tractors to Debtor as set forth in CNH Lease 1. A true and correct copy of CNH Lease 1, the Assignment of CNH Lease 1 by Burks Tractor to CNH and the UCC filing of CNH are attached hereto as **Exhibit 3**.

9.    On the Petition Date, CNH was owed $5,107,302.45 on CNH Lease 1. The value of the CNH Lease 1 equipment is unknown without an inspection of condition and hours.

10.    CNH Lease 765784 ("**CNH Lease 2**") by and between CNH (as assignee of the lessor Burks Tractor) and Debtor was entered into on February 6, 2024. Pursuant to CNH Lease 2, Burks Tractor leased sixteen (16) Case IH Magnum Tractors and sixteen (16) CaseIH Rear Remotes to Debtor as set forth in CNH Lease 2. A true and correct copy of CNH Lease 2, the Assignment of CNH Lease 2 by Burks Tractor to CNH and the UCC filing of CNH are attached hereto as **Exhibit 4**.

11.    On the Petition Date, CNH was owed $4,592,156.53 on CNH Lease 2.

The value of the CNH Lease 2 equipment is unknown without an inspection of condition and hours.

12.    CNH Lease 765512 ("**CNH Lease 3**") by and between CNH (as assignee of the lessor Burks Tractor) and Debtor was entered into on February 6, 2024. Pursuant to CNH Lease 3, Burks Tractor leased six (6) Case IH Magnum Tractors to Debtor as set forth in CNH Lease 3. A true and correct copy of CNH Lease 3, the Assignment of CNH Lease 3 by Burks Tractor to CNH and the UCC filing of CNH are attached hereto as **Exhibit 5**.

13.    On the Petition Date, CNH was owed $1,957,523.27 on CNH Lease 3. The value of the CNH Lease 3 collateral is unknown without an inspection of condition and hours.

14.    CNH Lease 765542 ("**CNH Lease 4**") by and between CNH (as assignee of the lessor Burks Tractor) and Debtor was entered into on February 6, 2024. Pursuant to CNH Lease 4, Burks Tractor leased four (4) Case IH Steiger Tractors and four (4) Case IH Rear Remotes to Debtor as set forth in CNH Lease 4. A true and correct copy of CNH Lease 4, the Assignment of CNH Lease 4 by Burks Tractor to CNH and the UCC filing of CNH are attached hereto as **Exhibit 6**.

15.    On the Petition Date, CNH was owed $1,957,523.27 on CNH Lease 4. The value of the CNH Lease 1 collateral is unknown without an inspection of condition and hours.

I declare under penalty of perjury under the laws of the United State of America that the foregoing is true and correct and this declaration was executed within the United States the 8th day of April  2024.

_/s/ Greg Arkatin_

# CNH CAPITAL

**RETAIL INSTALLMENT SALE CONTRACT AND SECURITY AGREEMENT**

**FIXED RATE**

020089  / 2793587

P%00000283701121004A0109

| "Buyer(s)": Legal Name(s) | Address | City | St | Zip Code |
|---|---|---|---|---|
| MILLENKAMP CATTLE, INC. | 471 NORTH 300 WEST | JEROME | ID | 83338-5078 |

| "Seller": Legal Name | Address | City | St | Zip Code |
|---|---|---|---|---|
| BURKS TRACTOR COMPANY,INC. | 3140 KIMBERLY RD. | TWIN FALLS | ID | 83301 |

The undersigned Buyer(s) (collectively called "Buyer") hereby purchases from Seller and Seller hereby sells to Buyer the following goods (the "Equipment") at the Time Sale Price and the terms set forth herein. The Equipment is purchased for commercial ☐ business use ☑ agricultural use.

| NEW*/USED | EQUIPMENT DESCRIPTION | MODEL | SERIAL NUMBER/PIN | "CASH SALE PRICE" |
|---|---|---|---|---|
| | See attached Multiple Unit Addendum | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

*New Equipment is unused equipment, a rental unit or a demonstrator, not previously sold, for which the manufacturer will supply all or a portion of a new equipment warranty; this Equipment may have been manufactured in a year prior to the year of this purchase.

| TRADE-IN EQUIPMENT | MODEL | SERIAL NUMBER/PIN | ALLOWANCE | AMT. OWED | NET TRADE-IN | OWED TO (Address details Page 4) |
|---|---|---|---|---|---|---|
| See attached Trade-In Addendum | | | | | | |

## STATEMENT OF TRANSACTION

| | | |
|---|---|---|
| 1. Cash Price (Cash Sale Price) | 1. $ | 999,270.00 |
| 2. Cash Down Payment $ | N/A | |
| Net Trade-In Allowance $ | 512,104.00 | |
| Manufacturer's Rebate $ | N/A | |
| Total Down Payment | 2. $ | 512,104.00 |
| 3. Unpaid Balance of Cash Price (1 minus 2) | 3. $ | 487,166.00 |
| 4. Other Charges | | |
| (a) Taxes (Not in Cash Price) $ | N/A | |
| (b) Official Fees (Filing and Termination) $ | 5.00 | |
| (c) UCC Service Fee (Filing and Termination) $ | 22.00 | |
| (d) Administrative Fee $ | N/A | |
| (e) Physical Damage Insurance $ | N/A | |
| (f) Credit Life Insurance $ | N/A | |
| (g) Credit Accident & Health Insurance $ | N/A | |
| (h) Purchased Protection Plan $ | N/A | |
| (i) Other $ | N/A | |
| Total Other Charges | 4. $ | 27.00 |
| 5. Unpaid Balance (Amount Financed) (3+4) | 5. $ | 487,193.00 |
| 6. INTEREST CHARGE | 6. $ | 35,521.55 |
| 7. Total of Payments (Time Balance) (5+6) | 7. $ | 522,714.55 |
| 8. Deferred Payment Price (Time Sale Price) (1+4+6) | 8. $ | 1,034,818.55 |

9. The Unpaid Balance (Amount Financed) shall bear an Interest Charge computed at a per annum rate [the INTEREST RATE] equal to **6.85 %** (this is a *FIXED RATE* contract).

10. Date Interest Rate begins accruing:  02-06-2024

**Buyer agrees to pay to the Seller the Time Balance as follows:**

| NBR OF PAYMENTS | PERIOD OF PAYMENTS | AMOUNT OF EACH PAYMENT | BEGINNING MM/DD/YYYY |
|---|---|---|---|
| 23 | 1 MONTHS | $   21,779.76 | 03/06/2024 |
| 1 | 1 MONTHS | $   21,779.61 | 02/06/2026 |

The payments have been calculated to pay in full principal and interest over the term of this Agreement using the Interest Rate in effect on the date of this Agreement, and assuming that all required payments are made in full on the scheduled due dates. The final payment due hereunder shall be recalculated to pay the Obligations in full.

Buyer hereby conveys to Seller all rights, title and interest in the Trade-in Equipment free and clear of all encumbrances except as noted above.

☑ If checked, Seller represents and warrants that the above Amt. Owed has been paid.

Buyer agrees to the terms of the above titled agreement (herein the "Agreement").  Buyer has received and examined the Equipment, which is in good operating order and condition and is as described above.  Buyer acknowledges receipt of a copy of this Agreement.  Buyer agrees to purchase the Equipment described above and pay the Time Balance based on the terms of this Agreement.

NOTICE TO THE BUYER:
1. DO NOT SIGN THIS BEFORE YOU READ THE TERMS ON THE FOUR AGREEMENT PAGES (PLUS ANY ADDENDUMS), EVEN IF OTHERWISE ADVISED.
2. DO NOT SIGN THIS IF IT CONTAINS ANY BLANK SPACES.
3. YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN.  KEEP IT TO PROTECT YOUR LEGAL RIGHTS.
4. BUYER REPRESENTS THAT THE EQUIPMENT IS NOT BEING PURCHASED FOR FAMILY, HOUSEHOLD OR PERSONAL USE.
ADDITIONAL PROVISIONS CONCERNING RIGHTS AND DUTIES OF THE PARTIES ON THE ADDITIONAL PAGES OF THIS AGREEMENT ARE A PART OF THIS AGREEMENT.

| X | MILLENKAMP CATTLE, INC. | President | 02-06-2024 |
|---|---|---|---|
| Signature of Buyer/Buyer's Representative | Printed Name | Title (not for an individual Buyer) | Date |

| X | | | |
|---|---|---|---|
| Signature of Buyer/Buyer's Representative | Printed Name | Title (not for an individual Buyer) | Date |

Dealer (hereinafter "Assignor" or "Seller") hereby assigns all of its rights, title and interest in and to the Agreement and the Equipment to CNH Industrial Capital America LLC (hereinafter "Assignee" or "CNH Capital"), under terms also described in the Retail Finance Agreement, Program Procedures, Dealer Handbook or other related documents (collectively hereinafter the "RFA") executed by the Assignor and Assignee.  Seller has obtained a signed credit application for this Agreement.  The Equipment has been paid in full or will be paid in full with Assignor proceeds pursuant to the terms of the RFA.  Assignor waives notice of acceptance of this Assignment and notice of non-payment and non-performance of the Agreement and any other actions required by law and waives any and all setoffs and counterclaims.  This Assignment shall become effective upon delivery of the Agreement to Assignee or upon Assignee's payment of the purchase price thereof, whichever occurs first.

Basis of Acceptance: ☐ Nonrecourse    ☐ Repurchase    ☐ Full Recourse    ☑ Limited Recourse
Other explanation: If the first 12 payments are not paid by the Buyer, then the Agreement becomes Full Recourse

| X | BURKS TRACTOR COMPANY,INC. | 02-06-2024 |
|---|---|---|
| Signature of Seller's Representative | Printed Seller Name | Date |

21004A     Rev. 01/24 Previous editions may not be used.

EXHIBIT 1 of 6





020069   / 2793587

## Agreement Provisions

1. **NO WARRANTY. THE EQUIPMENT IS SOLD AS IS AND WITH ALL FAULTS, SUBJECT TO ANY APPLICABLE MANUFACTURER'S EXPRESS, WRITTEN WARRANTY. NEITHER SELLER NOR MANUFACTURER MAKE ANY OTHER REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AND SPECIFICALLY DISCLAIM THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR PARTICULAR PURPOSES.\* NEITHER SELLER NOR MANUFACTURER WILL BE LIABLE FOR ANY SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES RESULTING FROM A BREACH OF THE EXPRESS WARRANTY OR ANY IMPLIED WARRANTY IMPOSED BY LAW.\***

   *\*Some states do not allow these limitations and exclusions, and they shall not apply to the extent such limitations or exclusions are not allowed by applicable state law.*

2. **Prepayments.** Buyer may make a partial prepayment of the unpaid Time Balance at any time, but any partial prepayments will not change or defer Buyer's next scheduled payments.

3. **Late Charges/Default Rate/Returned Checks.** Buyer shall pay a late charge on each payment not paid within 10 days after the due date at the highest amount, both as permitted by applicable law. Buyer shall pay interest on the unpaid balance after maturity (as scheduled, by acceleration or otherwise) at the highest rate, as permitted by applicable law. If a check is returned for any reason, Assignee may charge Buyer a returned check processing fee as established by Assignee from time to time not to exceed the maximum permitted under applicable law. Assignee may apply any payment or proceed received toward the Obligations, in its sole discretion regardless of how requested or directed.

4. **Fees.** All parties to this Agreement acknowledge and agree that some fees and charges scheduled under section 4 in the Statement of Transaction may be shared between the Seller and CNH Capital as permitted by law and may result in profit for the Seller and CNH Capital. The parties further agree that Administrative or Other Fees are reasonable consideration for credit determination, handling, review, and approval of the transaction, and are not a document preparation fee nor an official fee. CNH Capital may make UCC related filings and/or termination statements pursuant to this Agreement. CNH Capital reserves its right to assess additional fees and other charges to the Obligations including but not limited to, if fees and other charges increase or other actions are needed to protect its lien upon the Equipment. If any fees and/or other charges scheduled and/or assessed under any part of this Agreement exceed the maximum permitted by applicable law, any excess shall be applied toward a reduction of the principal balance and that shall be the sole and satisfactory remedy under this Agreement.

5. **Extensions and Refinancing.** If Assignee extends, defers or refinances any payments due under this Agreement, Assignee may, at its option, increase the Interest Rate or Interest Charge (herein collectively referred to as the Interest Rate).

6. **Security Interests/Cross Collateralization.** Buyer hereby grants to Seller and its successors and assigns (including Assignee) a first priority purchase money security interest in the Equipment, and in all improvements, parts and accessories belonging to the Equipment, and all substitutions, replacements, products, proceeds (including any insurance proceeds) thereof and premium refunds, refunds of any other charges hereunder and all accessions related to the Equipment (the Equipment and such items are collectively referred to herein as the "Collateral"), to secure payment and performance of all existing and future obligations of Buyer under this Agreement or any other agreement between Buyer and Seller, between Buyer and Assignee or any affiliate of Assignee, or where Buyer, under another agreement in favor of Seller or Assignee, is a guarantor or obligor (the "Obligations"). Loss of or damage to the Equipment shall not release Buyer from any of the Obligations. Upon request, Buyer shall take any action reasonably deemed necessary by Assignee to protect and enforce Assignee's interest in the Collateral or rights under this Agreement. Assignee or Seller is authorized to examine the Collateral wherever located at any reasonable time or times. Buyer authorizes Assignee to insert in this Agreement, or amend any financing statement or title registration documentation to reflect the serial/PIN and/or model numbers of the Equipment if unknown at the time this Agreement is executed and to correct any errors in such numbers or any other errors in the description of the Equipment.

7. **Assignment.** Seller hereby assigns this Agreement, and any guarantee(s) ("Guarantee") hereof (together, "Assignment") to Assignee. Buyer acknowledges that Seller has the right to assign this Agreement and such Guarantee, that all rights and benefits but no obligations (if any) of Seller under this Agreement may be exercised by Assignee and that no obligations (if any) of Seller pass to Assignee. Buyer shall make all payments due under this Agreement directly to Assignee. This Agreement shall be binding on and inure to the benefit of Buyer, Seller and Assignee and their respective heirs, personal representatives, successors and assigns, provided however, that Buyer may not assign its interest in the Collateral, rights, nor its obligations under this Agreement to any person without Assignee's prior written consent. CNH Capital may pay a fee to the Assignor as consideration for the Assignor's assignment of this Agreement to CNH Capital.

8. **Notification of Change in Residence, Principal Office, or Organizational Form.** If Buyer changes (as applicable): (a) its state of principal residence; or (b) the state in which its chief executive office is located; or (c) the state in which it is organized; or (d) its form of organization (such as from an individual to a corporation); or (e) its name, as printed on a State filed registration document or individual name, as printed on a valid driver's license, then Buyer will notify Assignee in writing promptly, but in no event more than 30 days after such change.

9. **Waiver of Defenses Against Assignee; Indemnification.** Buyer will not assert against Assignee any claim or defense which Buyer may have against Seller, the manufacturer of the Equipment, or any other person. Buyer agrees that its obligation to remit payments will not be subject to, and it will not make any claim against Assignee for breach of any representation, warranty or condition with respect to the Equipment and that its obligation to pay Assignee all amounts under this Agreement is absolute and unconditional without abatement, reduction, set-off, counterclaim or interruption for any reason whatsoever, including any dispute which now or hereafter arises between Buyer and Seller or any other person. Time is of the essence. Buyer shall indemnify and hold harmless Seller, Assignee and their respective officers, directors, employees and agents from and against any damage, loss, theft or destruction of the Equipment or any part thereof, and from and against any and all loss, damage, injuries, claims, demands, costs and expenses (including without limitation reasonable attorneys' fees and expenses) of any kind and nature, arising out of or connected with this Agreement or the use, condition (including without limitation, all defects whether or not discoverable by Buyer, Seller or Assignee) or operation of the Equipment or any part thereof. Buyer shall promptly notify Seller and Assignee in writing of any loss, damage, theft, destruction, injury, claim, demand, cost or expense related to this Agreement or the Equipment of which Buyer has knowledge.

10. **Buyer's Covenants.** Buyer shall: (a) keep the Equipment in the state listed on page 1 of this Agreement and not remove the Equipment from such location, except temporarily in connection with its ordinary use or repair, unless Assignee consents in writing; (b) maintain the Equipment in good condition and repair and not permit its intended function or value to be impaired; (c) keep the Collateral free of all liens, encumbrances and security interests of all persons other than Seller and Assignee; (d) defend the Collateral against all claims and legal proceedings by persons other than Assignee; (e) pay and discharge when due all taxes, fees, levies and other charges upon the Collateral (including all personal property and ad valorem taxes); (f) pay when due all taxes arising from the purchase of the Equipment under this Agreement, excluding any taxes based upon Seller's net income; (g) use the Equipment solely in the conduct of Buyer's business; (h) ensure the Equipment will be used solely within the intended uses of the manufacturer and that manufacturer warranty remains valid; (i) not sell, lease or otherwise dispose of the Equipment nor permit the Equipment to become an accession to other goods or a fixture; and (j) not permit the Equipment to be used in violation of any law, regulation or policy of insurance; and (k) strictly follow the terms on page 1 of this Agreement, (l) perform (at Buyer's expense) all maintenance and repairs necessary to keep the Equipment in as good a condition as when delivered to Buyer, reasonable wear excepted; (m) not permit the Equipment to be used by, or to be in the possession of, anyone other than Buyer or Buyer's employees. Buyer represents and warrants that: (i) each individual executing this Agreement authorized by or on behalf of Buyer has the requisite power and authority to execute this Agreement and all related documents; (ii) Buyer is fully authorized to perform its obligations and consummate the transactions contemplated under this Agreement and related documents; (iii) the execution and delivery of this Agreement and all related documents and the consummation of the transactions under this Agreement have been duly authorized by Buyer; and (iv) this Agreement and all related documents constitute valid and legally binding obligations of Buyer, enforceable against Buyer in accordance with their respective terms.

21004A     Rev. 01/24 Previous editions may not be used.                                        Page 2 of 9

EXHIBIT 1 of 6



020069   / 2793587                          Agreement Provisions



**11. Insurance.** Buyer shall keep Assignee's interests in the Equipment insured against fire, theft, physical damage and other hazards under policies listing Assignee as Lender's loss payee or as an additional insured, with such provisions, for such amounts (but not less than the unpaid balance outstanding under this Agreement) and by such insurers and terms as shall be satisfactory to Assignee from time to time, and shall furnish to Assignee evidence of such insurance satisfactory to Assignee. Such insurance shall provide at least 30 days' written notice of cancellation, lapse or expiration to Assignee. Buyer assigns (and directs any insurer to pay) to Assignee Buyer's interest in the proceeds of any and all insurance related to the Equipment and any premium refund, and Assignee may, at its option, apply such proceeds and refunds to any unpaid balance of the Obligations, whether or not due, and/or to repair or restore the Equipment. Buyer must make all payments due under this Agreement whether or not the Equipment is insured or underinsured. Assignee is authorized, in the name of Buyer or otherwise, to make, adjust and/or settle claims under any insurance on the Equipment, or cancel the same after the occurrence of an event of default, or set off amounts owed Assignee against any rebates, credits or refunds due Buyer and/or any guarantor. If Buyer purchased physical damage insurance that is financed under this Agreement, Buyer hereby requests and authorizes Seller (provided Seller is properly licensed to do so) or its designee: (a) to arrange physical damage insurance for the benefit of Seller or Assignee and Buyer that covers physical damage to the Equipment; (b) to replace or otherwise modify such insurance as Seller deems appropriate; and (c) to be Buyer's attorney-in-fact to make claim for, receive payment of and execute, endorse and negotiate all documents, checks or drafts received in payment of loss, damage or premium refunds under any insurance. This Agreement includes and hereby incorporates by reference any Insurance Addendum signed in connection with this Agreement.

STATEMENT TO BUYER: THE PHYSICAL DAMAGE INSURANCE PURCHASED UNDER THE TERMS OF THIS AGREEMENT COVERS ONLY LOSS OF OR DAMAGE TO THE EQUIPMENT. LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED AS PART OF THE PHYSICAL DAMAGE INSURANCE. BUYER UNDERSTANDS THAT IF INSURANCE IS FINANCED UNDER THIS AGREEMENT, PREPAYMENT OF BUYER'S OBLIGATIONS OR TERMINATION OF THIS AGREEMENT WILL RESULT IN CANCELLATION OF INSURANCE COVERAGE, UNLESS OTHERWISE EXPLICITLY AGREED TO IN WRITING BY ASSIGNEE.

**12. Modifications and Waivers.** This Agreement sets forth the entire understanding among Seller, Assignee and Buyer. No modification, amendment or extension of this Agreement and no waiver of any provision of this Agreement shall be valid unless in writing and signed by the parties and a waiver of any default hereunder by Assignee shall not constitute a waiver of any other prior or subsequent default, except that Buyer authorizes Assignee to insert in this Agreement the serial number/PIN and/or model number of any Equipment if this information is unknown when this Agreement is executed or to correct any errors in such numbers or any other patent errors in the description of the Equipment.

**13. Authority of Assignee to Perform for Buyer.** If Buyer fails to perform any of Buyer's duties set forth in this Agreement (including, without limitation, the purchase of insurance), Assignee may at its option, in Buyer's name or otherwise, take any such action, including, without limitation, signing Buyer's name or paying any amount so required, and all costs and expenses incurred by Assignee in connection therewith shall form part of the Obligations and shall be payable by Buyer upon demand with interest from the date of payment by Assignee at the highest rate permitted by applicable law.

**14. Default/Cross Default.** Buyer shall be in default under this Agreement, and any other agreement with or assigned to Assignee, if any of the following occurs (each, an "event of default"): (a) Buyer fails to pay when due any of the Obligations, or to perform any covenant or other obligation of Buyer under this Agreement or any other agreement with or assigned to Assignee; (b) Buyer or any guarantor dies, ceases to exist, becomes insolvent or the subject of bankruptcy, insolvency or liquidation proceedings, attempts to or does assign this Agreement or attempts to or does remove, sell, transfer, further encumber, part with possession of or sublet any Equipment; (c) any warranty or representation made by Buyer or any guarantor to induce Seller or Assignee to extend credit to Buyer, under this Agreement or otherwise, is false in any material respect when made; (d) Buyer fails to maintain insurance required hereunder or fails to comply with the requirements of any such insurance; (e) any other event occurs that causes Assignee, in good faith, to consider that payment or performance of the Obligations is impaired or that the Equipment is at risk; (f) the Equipment is impounded or confiscated by any federal, state or local governmental authority; (g) Buyer fails to produce Collateral for inspection within 10 days, upon demand; or (h) Buyer breaches any of the other terms of this Agreement or any other agreement with or assigned to Assignee.

**15. Expenses.** To the extent not prohibited by law, Buyer shall reimburse Seller or Assignee for any expense incurred by Seller or Assignee in protecting, defending or enforcing their rights under this Agreement, including, without limitation, reasonable attorneys' fees and legal expenses and all expenses of taking possession, transporting, holding, repairing, refurbishing, preparing for disposition and disposing of the Collateral, and all expenses and costs incurred in collecting the Obligations, including collection agency fees based on a maximum of 25% of the Obligations, and all shall be part of the Obligations.

**16. Conflict with Law.** Any provision of this Agreement prohibited by applicable law shall be ineffective to the extent of the prohibition without invalidating the remaining portions of this Agreement. The validity, construction and enforcement of this Agreement shall be governed by the laws of the State of the Seller (without regard to conflict of law principles of such State). All terms not otherwise defined have the meanings assigned to them by the applicable Uniform Commercial Code.

**17. Authorization to Execute and File Financing Statements and Lien Documents.** Buyer hereby authorizes Assignee or its designee to execute and file financing statements, and any motor vehicle title, registration and lien notification documentation, and any amendments thereto, on behalf and in the name of Buyer to evidence the security interest in the Collateral granted pursuant to this Agreement. Buyer irrevocably appoints Assignee or its designee as Buyer's agent and attorney-in-fact to sign such instruments on Buyer's behalf and to file them.

**18. Time Price Calculations.** If this is a variable rate contract, the Prime Rate for a given calendar month shall be the rate designated as the "Prime Rate" published in The Wall Street Journal on the twentieth day of the prior calendar month (or on the next day published if not published on the twentieth day). If The Wall Street Journal ceases publication permanently or no longer publishes a "Prime Rate", the Prime Rate shall mean the prime loan rate of any federally chartered bank selected by Assignee. For all contracts the Interest Rate shall never be less than 0%. Interest Rate shall be calculated using a daily rate determined by dividing the annual rate by 365. Buyer shall make all payments in lawful money of the United States of America.

**19. Remedies.** Upon the occurrence of any event of default, Seller or Assignee shall have all rights and remedies provided by the Uniform Commercial Code or any other applicable law and Seller or Assignee may, except where prohibited by law, at its option: (i) declare all Obligations immediately due and payable without notice or demand; (ii) enter onto any premises where the Collateral may be located, take possession of all Collateral, without notice or hearing, and, Buyer or any guarantor, also expressly waives any right to notice or a prior hearing or to require Assignee to post any bond; (iii) render the Equipment unusable; (iv) require Buyer to assemble all Collateral and make it available to Assignee at any convenient place designated by Assignee within 10 days after notice from Assignee; (v) sell (including at wholesale) or otherwise dispose of all Collateral at public or private sale for cash or on credit terms, without notice; and if notice is required by law, ten (10) days' notice to Buyer shall be deemed reasonable notice; and/or (vi) obtain a consumer credit bureau upon any Buyer or any guarantor. All rights and remedies may be exercised by Seller or Assignee either separately or in combination and any action taken by Assignee to recover payment from Buyer of the Obligations shall not limit Assignee's rights with respect to all Collateral. Assignee may apply all proceeds of realization of the Collateral to such part or parts of the Obligations as Assignee may decide. If there is a deficiency, Buyer will pay the amount of the deficiency upon demand. Buyer waives notice of dishonor, presentment and demand as to this Agreement.

21004A     Rev. 01/24 Previous editions may not be used.                                              Page 3 of 9

EXHIBIT 1 of 6



**CNH** | CAPITAL

020069  / 2793587

Agreement Provisions

FX0000028370112100 4A0409

**20. Miscellaneous.** In the event that this contract is determined by a court of competent jurisdiction to be characterized as a loan or forbearance agreement, and not a sale, despite the terms and conditions found in this contract, then all parties agree that any interest charges computed and assessed on this contract that are in excess of the maximum allowed interest charges allowed by law shall be applied as a reduction to the principal balance owed on this contract only, and this shall be the agreed upon and satisfactory remedy to all parties. By providing any address, email address or telephone number, including a mobile phone number, either now or in the future to Seller, Assignee, any of Assignee's affiliates or any debt collectors retained by Assignee, Buyer agrees that any of the above may contact Buyer using that address or number, including contact through calls or texts using an automatic dialing and announcing device and prerecorded calls, and that such calls are not "unsolicited" under state or federal law. Any attempted revocation of this consent to contact, if allowable by law, must be made in writing. Buyer acknowledges and agrees that CNH Capital and its third party service providers can access and use telematics data and other information regarding location, maintenance and operation of the Equipment for any lawful purpose, including without limitation, to locate and repossess the Equipment.  See https://www.cnhindustrialcapital.com/en_us/Pages/Privacy.aspx for additional details. If a court finds that any part of this Agreement to be invalid or unenforceable, the remainder of this Agreement will remain in effect.  All of Assignee's rights shall remain in effect after the expiration or termination of this Agreement.  If more than one Buyer is named in the Agreement, the liability of each shall be joint and several.  All notices required or permitted hereunder shall be in writing and shall be deemed adequate if sent to the first Buyer on page 1 of the Agreement.  The captions and headings of the sections of this Agreement are for convenience only and are not to be used to interpret or define the provisions hereof. Restrictive endorsements on checks or other forms of payment that Buyer sends to Assignee will not change or reduce Buyer's obligations to Assignee.  Assignee will not lose any rights if Assignee accepts late or partial payments or delays enforcing its rights under this Agreement. South Dakota Residents:  If there are any improprieties in making the loan or in loan practices, you may contact the South Dakota Division of Banking:  South Dakota Division of Banking, 1714 Lincoln Ave, Suite 2, Pierre, SD 57501, phone number: (605) 773-3421.

**21.** **WAIVER OF JURY TRIAL.** EXCEPT IN GEORGIA OR CALIFORNIA OR WHERE OTHERWISE PROHIBITED BY LAW, EACH BUYER, SELLER AND CNH CAPITAL WAIVES ANY AND ALL RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING RELATING TO THE OBLIGATIONS, THIS AGREEMENT, OR ANY OTHER DOCUMENT CONNECTED HEREWITH, OR ANY TRANSACTION ARISING FROM OR CONNECTED TO ANY OF THE FOREGOING.  EACH BUYER, SELLER AND CNH CAPITAL REPRESENTS THAT THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY GIVEN.

**22.** **Electronic Contracting, Signature Acknowledgment, Future Notices.** Buyer agrees that (i) this Agreement is an electronic agreement executed by Buyer using Buyer's electronic signature or that Assignee may convert this Agreement into an electronic agreement; (ii) Buyer's electronic signature signifies Buyer's intent to enter into this Agreement and that this Agreement shall be a legally valid and enforceable Agreement in accordance with its terms to the same extent as if Buyer had executed this Agreement using Buyer's written signature and (iii) the authoritative copy of this Agreement ("Authoritative Copy") shall be that electronic copy that resides in a document management system designated by Assignee for the storage and authoritative copies of electronic records, which shall be deemed held by us in the ordinary course of business.  Notwithstanding the forgoing, if the Authoritative Copy is converted by printing a paper copy which is marked by Assignee as the original (the "Paper Contract"), then Buyer acknowledges and agrees that (1) your signing of this Agreement with your electronic signature also constitutes issuance and delivery of such Paper Contract, (2) your electronic signature associated with this Agreement, when affixed to the Paper Contract, constitutes your legally valid and binding signature on the Paper Contract and (3) subsequent to such conversion, Buyer's duties and Obligations will be evidenced by the Paper Contract alone.  By providing your e-mail address and electing to execute this Agreement electronically, Buyer agrees that all future notices, statements and communications relating to this Agreement shall be delivered to the Buyer via e-mail transmission to the e-mail address provided to Assignee by Buyer. It is the Buyer's duty to provide any changes to Buyer's e-mail address to Assignee so that future communications can reach Buyer in a timely manner.

EXHIBIT 1 of 6



**CNH** | CAPITAL

020069  / 2793587

## MULTIPLE UNIT ADDENDUM

This Multiple Unit Addendum is hereby incorporated into the commercial Retail Installment Contract and Security Agreement or Lease Agreement dated February 06      2024      with Seller  BURKS TRACTOR COMPANY,INC.                          herein the ("Agreement"), and this addendum equipment list is made a part of the Equipment, as defined in the Agreement.  Buyer or Lessee acknowledges receipt of this Multiple Unit Addendum at the time it is executed, along with a copy of the Agreement and all its pages and agrees to all the Agreement terms.

| # | New or Used | Equipment Description | Model | Serial Number/PIN | Hours | Maximum Annual Usage | Excess Usage Rate | Cash Price |
|---|---|---|---|---|---|---|---|---|
| 1 | NEW | Kubota Tractor | L3902 | 11862 | | N/A | N/A | $ 33,850.00 |
| 2 | NEW | Kubota Tractor | L3902 | 11873 | | N/A | N/A | $ 33,850.00 |
| 3 | NEW | Kubota Tractor | L3902 | 11876 | | N/A | N/A | $ 33,850.00 |
| 4 | NEW | Kubota Tractor | L3902 | 11877 | | N/A | N/A | $ 33,850.00 |
| 5 | NEW | Kubota Tractor | L3902 | 11888 | | N/A | N/A | $ 33,850.00 |
| 6 | NEW | Kubota Tractor | L3902 | 11897 | | N/A | N/A | $ 33,850.00 |
| 7 | NEW | Kubota Tractor | L3902 | 11901 | | N/A | N/A | $ 33,850.00 |
| 8 | NEW | Kubota Tractor | L3902 | 11902 | | N/A | N/A | $ 33,850.00 |
| 9 | NEW | Kubota Tractor | L3902 | 11903 | | N/A | N/A | $ 33,850.00 |
| 10 | NEW | Kubota Tractor | L3902 | 11904 | | N/A | N/A | $ 33,850.00 |
| 11 | NEW | Kubota Tractor | L3902 | 11907 | | N/A | N/A | $ 33,850.00 |
| 12 | NEW | Kubota Tractor | L4701 | 80496 | | N/A | N/A | $ 37,630.00 |
| 13 | NEW | Kubota Tractor | L4701 | 80712 | | N/A | N/A | $ 37,630.00 |
| 14 | NEW | Kubota Tractor | L4701 | 79332 | | N/A | N/A | $ 37,630.00 |
| 15 | NEW | Kubota Tractor | L4701 | 79344 | | N/A | N/A | $ 37,630.00 |

Executed this  06    day of  February          ,  2024      .

X _____
Signature of Buyer/Buyer's Representative

MILLENKAMP CATTLE, INC.
Printed Name

_____
Title (not for an individual Buyer)

X _____
Signature of Seller's Representative

BURKS TRACTOR COMPANY,INC.
Printed Seller Name

21008A    Rev. 01/24 Previous editions may not be used.

Page 5 of 9

EXHIBIT 1 of 6



020069  / 2793587

FX0000028370112100BA0609

# MULTIPLE UNIT ADDENDUM

This Multiple Unit Addendum is hereby incorporated into the commercial Retail Installment Contract and Security Agreement or Lease Agreement dated February 06          2024          with Seller BURKS TRACTOR COMPANY,INC.                                          herein the ("Agreement"), and this addendum equipment list is made a part of the Equipment, as defined in the Agreement.  Buyer or Lessee acknowledges receipt of this Multiple Unit Addendum at the time it is executed, along with a copy of the Agreement and all its pages and agrees to all the Agreement terms.

| # | New or Used | Equipment Description | Model | Serial Number/PIN | Hours | Maximum Annual Usage | Excess Usage Rate | Cash Price |
|---|---|---|---|---|---|---|---|---|
| 16 | NEW | Kubota Tractor | L4701 | 79519 | | N/A | N/A | $ 37,630.00 |
| 17 | NEW | Kubota Tractor | L4701 | 79654 | | N/A | N/A | $ 37,630.00 |
| 18 | NEW | Kubota Tractor | L4701 | 79694 | | N/A | N/A | $ 37,630.00 |
| 19 | NEW | Kubota Tractor | M5091 | 58881 | | N/A | N/A | $ 51,930.00 |
| 20 | NEW | Kubota Tractor | M5091 | 58884 | | N/A | N/A | $ 51,930.00 |
| 21 | NEW | Kubota Tractor | M5091 | 58885 | | N/A | N/A | $ 51,930.00 |
| 22 | NEW | Kubota Tractor | M5091 | 58905 | | N/A | N/A | $ 51,930.00 |
| 23 | NEW | Kubota Tractor | M5091 | 58906 | | N/A | N/A | $ 51,930.00 |
| 24 | NEW | Kubota Tractor | M5091 | 58909 | | N/A | N/A | $ 51,930.00 |
| 25 | NEW | Kubota Tractor | M5091 | 58910 | | N/A | N/A | $ 51,930.00 |

Executed this  06     day of  February          ,  2024      .

X _____
Signature of Buyer/Buyer's Representative

MILLENKAMP CATTLE, INC.
Printed Name

_____
Title (not for an individual Buyer)

X _____
Signature of Seller's Representative

BURKS TRACTOR COMPANY,INC.
Printed Seller Name

21008A    Rev. 01/24 Previous editions may not be used.                                                Page 6 of 9

EXHIBIT 1 of 6



020069  / 2793587

# MULTIPLE TRADE-IN UNIT ADDENDUM

This Multiple Trade-In Unit Addendum is hereby incorporated into the commercial Retail Installment Contract and Security Agreement or Lease Agreement dated February 06 , 2024 with Seller BURKS TRACTOR COMPANY,INC. herein the ("Agreement"). Buyer or Lessee acknowledges receipt of this Multiple Trade-In Unit Addendum at the time it is executed, along with a copy of the Agreement and all its pages.

| # | Equipment Description | | Model | Serial Number/PIN | Allowance | Amt. Owed | Net Trade-In | Owed To |
|---|---|---|---|---|---|---|---|---|
| 1 | Kubota | Tractor 61-99 PTO HP | M5091 | 56581 | $ 28,560.00 | $ 0.00 | $ 28,560.00 | |
| 2 | Kubota | Tractor 61-99 PTO HP | M5091 | 56290 | $ 28,110.00 | $ 0.00 | $ 28,110.00 | |
| 3 | Kubota | Tractor 61-99 PTO HP | M5091 | 56235 | $ 28,752.00 | $ 0.00 | $ 28,752.00 | |
| 4 | Kubota | Tractor 61-99 PTO HP | M5091 | 56232 | $ 35,745.00 | $ 0.00 | $ 35,745.00 | |
| 5 | Kubota | Tractor 61-99 PTO HP | M5091 | 55770 | $ 25,198.00 | $ 0.00 | $ 25,198.00 | |
| 6 | Kubota | Tractor 61-99 PTO HP | M5091 | 55635 | $ 28,220.00 | $ 0.00 | $ 28,220.00 | |
| 7 | Kubota | Tractor 61-99 PTO HP | M5091 | 56583 | $ 28,535.00 | $ 0.00 | $ 28,535.00 | |
| 8 | Kubota | Tractor 60 PTO HP and below | L4701 | 68824 | $ 21,648.00 | $ 0.00 | $ 21,648.00 | |
| 9 | Kubota | Tractor 60 PTO HP and below | L4701 | 70033 | $ 21,000.00 | $ 0.00 | $ 21,000.00 | |
| 10 | Kubota | Tractor 60 PTO HP and below | L4701 | 69153 | $ 19,760.00 | $ 0.00 | $ 19,760.00 | |
| 11 | Kubota | Tractor 60 PTO HP and below | L4701 | 68844 | $ 17,356.00 | $ 0.00 | $ 17,356.00 | |
| 12 | Kubota | Tractor 60 PTO HP and below | L4701 | 68830 | $ 18,416.00 | $ 0.00 | $ 18,416.00 | |
| 13 | Kubota | Tractor 60 PTO HP and below | L4701 | 68812 | $ 21,000.00 | $ 0.00 | $ 21,000.00 | |
| 14 | Kubota | Tractor 60 PTO HP and below | L4701 | 68834 | $ 14,956.00 | $ 0.00 | $ 14,956.00 | |
| 15 | Kubota | Tractor 60 PTO HP and below | L3901 | 84853 | $ 14,816.00 | $ 0.00 | $ 14,816.00 | |

Buyer hereby conveys to Seller all rights, title and interest in the Trade-in Equipment free and clear of all encumbrances except as noted above.

✓ If checked, Seller represents and warrants that the above Amt. Owed has been paid.

Executed this 06 day of February , 2024

X _____     MILLENKAMP CATTLE, INC.
Signature of Buyer/Buyer's Representative     Printed Name                     Title (not for an individual Buyer)

X _____     BURKS TRACTOR COMPANY,INC.
Signature of Seller's Representative     Printed Seller Name

21142A    Rev. 01/24 Previous editions may not be used.                                         Page 7 of 9

EXHIBIT 1 of 6



020069   / 2793587

FX000002837011211142A0809

## MULTIPLE TRADE-IN UNIT ADDENDUM

This Multiple Trade-In Unit Addendum is hereby incorporated into the commercial Retail Installment Contract and Security Agreement or Lease Agreement dated February 06    2024    with Seller   BURKS TRACTOR COMPANY,INC.    herein the ("Agreement").  Buyer or Lessee acknowledges receipt of this Multiple Trade-In Unit Addendum at the time it is executed, along with a copy of the Agreement and all its pages.

| # | Equipment Description | | Model | Serial Number/PIN | Allowance | Amt. Owed | Net Trade-In | Owed To |
|---|---|---|---|---|---|---|---|---|
| 16 | Kubota | Tractor 60 PTO HP and below | L3901 | 84850 | $ 14,984.00 | $ 0.00 | $ 14,984.00 | |
| 17 | Kubota | Tractor 60 PTO HP and below | L3901 | 84829 | $ 22,080.00 | $ 0.00 | $ 22,080.00 | |
| 18 | Kubota | Tractor 60 PTO HP and below | L3901 | 90038 | $ 16,012.00 | $ 0.00 | $ 16,012.00 | |
| 19 | Kubota | Tractor 60 PTO HP and below | L3901 | 90020 | $ 14,412.00 | $ 0.00 | $ 14,412.00 | |
| 20 | Kubota | Tractor 60 PTO HP and below | L3901 | 88244 | $ 22,904.00 | $ 0.00 | $ 22,904.00 | |
| 21 | Kubota | Tractor 60 PTO HP and below | L3901 | 84858 | $ 16,300.00 | $ 0.00 | $ 16,300.00 | |
| 22 | Kubota | Tractor 60 PTO HP and below | L3901 | 89939 | $ 16,360.00 | $ 0.00 | $ 16,360.00 | |
| 23 | Kubota | Tractor 60 PTO HP and below | L3901 | 89908 | $ 15,000.00 | $ 0.00 | $ 15,000.00 | |
| 24 | Kubota | Tractor 60 PTO HP and below | L3901 | 89904 | $ 15,000.00 | $ 0.00 | $ 15,000.00 | |
| 25 | Kubota | Tractor 60 PTO HP and below | L3901 | 88242 | $ 15,000.00 | $ 0.00 | $ 15,000.00 | |

Buyer hereby conveys to Seller all rights, title and interest in the Trade-In Equipment free and clear of all encumbrances except as noted above.

[✓] If checked, Seller represents and warrants that the above Amt. Owed has been paid.

Executed this  06   day of February    ,  2024

X _____
Signature of Buyer/Buyer's Representative

MILLENKAMP CATTLE, INC.
Printed Name

_____
Title (not for an Individual Buyer)

X _____
Signature of Seller's Representative

BURKS TRACTOR COMPANY,INC.
Printed Seller Name

21142A    Rev. 01/24 Previous editions may not be used.

Page 8 of 9

EXHIBIT 1 of 6

**CNH** | CAPITAL

020069 / 2793587

F%0000028370112103 0A0909

## GUARANTEE

In consideration of the extension of credit as referenced by the application number above, and to induce the Secured Party, as hereinafter defined, to extend credit on the agreement dated ___February 06___, ___2024___, (herein "Agreement") to:

MILLENKAMP CATTLE, INC.

of  471 NORTH 300 WEST, JEROME, ID 83338-5078

(collectively the "Buyer"), and for other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, each of the executing parties below (collectively the "Guarantor", whether one or more) makes this guarantee ("Guarantee") in favor of the Secured Party.

1.   The Guarantor, pursuant to the terms of this Guarantee, unconditionally and irrevocably guarantees the payment, performance and complete fulfillment of all Obligations, as defined in the Agreement described above, of the Buyer to Secured Party, and any amendments or supplements thereto, whether heretofore or hereafter incurred, including any revisions, renewals, consolidations and extensions thereof, any of which may be made without notice to the Guarantor. Guarantor has received and reviewed a copy of the Agreement prior to executing this Guarantee.

2.   This Guarantee does not limit, modify or cancel any unlimited guarantee that may have been previously given by the Guarantor, if any.

3.   Notice of acceptance is waived (and, in Louisiana, all pleas of division and discussion are waived). Presentment, protest, demand, and notice of protest, demand and dishonor of any of the Obligations, and the exercise of possessory, collection or other remedies for the Obligations, are  also hereby waived.

4.   Without further authorization from or notice to Guarantor, Secured Party, in its sole discretion, may renew, refinance, revise, settle, alter, compromise, accelerate, extend, consolidate or otherwise change the time or manner of payments of any of the Obligations or increase or reduce the rate of interest thereon; or add or release any one or more other Guarantors. No exercise or nonexercise by Secured Party of any right hereby given to it, no dealing by Secured Party with Buyer or any other Guarantor, and no change, impairment, or extension of any right or remedy of Secured Party shall in any way affect the Guarantor's liability hereunder or give Guarantor any recourse against Secured Party. Notice of default in any of the Obligations is expressly waived by Guarantor.

5.   With or without notice to Guarantor, and without affecting the liability of Guarantor hereunder, Secured Party may from time to time before, at, or after any default by Buyer, together or separately, (1) accept additional collateral for the Obligations, (2) accept other collateral in exchange or substitution for the collateral then securing the Obligations, (3) obtain a credit bureau report for any Guarantor, and/or (4) surrender or release any collateral securing the Obligations.

6.   This is a Guarantee of prompt payment and performance, and not of collection. Secured Party does not have to exercise or exhaust its rights against the Buyer (or any other person or entity obligated with respect to the Obligations) or enforce its rights against any collateral before a claim is made against Guarantor.

7.   It is the mutual intention of the parties hereto that the Guarantor shall be bound notwithstanding any claim or defense Buyer may have or raise, and Guarantor waives any defense Buyer may have.  Guarantor agrees to pay reasonable attorneys' fees and all costs and other expenses incurred by Secured Party in collecting or compromising any of the Obligations or in enforcing this Guarantee against Guarantor.

8.   In the event that any payment by Buyer to Secured Party is held to constitute a preference under the bankruptcy laws, or if for any other reason the Secured Party is required to refund such payment or pay the amount thereof to any other person or party, such payment by Buyer to Secured Party shall not constitute a release of Guarantor from any liability hereunder, but Guarantor agrees to pay such amount to Secured Party on demand.

9.   "Secured Party" shall mean CNH Industrial Capital America LLC and CNH Industrial America LLC and all parent, subsidiary and affiliated corporations and all successors and assigns of any of the foregoing. This Guarantee shall bind the respective heirs, executors, administrators, successors, legal representatives and assigns of each Guarantor and shall inure to the benefit of any Secured Party.

10.  Each Guarantor shall be jointly and severally (and, in Louisiana, "in solido" with the Buyer) liable to Secured Party.

11.  EXCEPT IN GEORGIA OR CALIFORNIA OR WHERE OTHERWISE PROHIBITED BY LAW, EACH GUARANTOR WAIVES ANY AND ALL RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING RELATING TO THE OBLIGATIONS, THIS GUARANTEE, OR ANY OTHER DOCUMENT CONNECTED HEREWITH, OR ANY TRANSACTION ARISING FROM OR CONNECTED TO ANY OF THE FOREGOING.  EACH GUARANTOR REPRESENTS THAT THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY GIVEN.

Executed this ___06___ day of ___February___, ___2024___

X _____              WILLIAM J MILLENKAMP                    Not Applicable
Signature of Guarantor/Guarantor Representative    Printed Name                          Title (not for Individual Guarantor)

EXHIBIT 1 of 6



### ADDENDUM
### TO EQUIPMENT OPERATING LEASE AGREEMENT

This Addendum to Equipment Operating Lease Agreement dated February 6th, 2024 (the "Addendum") supplements that certain Equipment Operating Lease Agreement dated February 6th, 2024 (hereafter the "Lease") between Millenkamp Cattle, Inc. (hereafter the "Lessee") and CNH Industrial Capital America LLC (hereafter the "CNH"). By signing this Addendum, the Lessee and CNH (collectively, the "Parties") agree to amend the terms and conditions of the Lease as set forth herein. The Addendum does not otherwise modify or supersede the provisions of the Lease beyond the terms contained herein. Unless otherwise specified, capitalized terms in this Addendum have the same meaning as defined in the Assurant Agreements, and those definitions are incorporated herein by reference.

NOW, THEREFORE, in consideration of the mutual promises and agreements set forth in this Addendum, the Parties agree as follows:

1. **Representations, Warranties and Affirmative Covenants.** For so long as any Obligations remain unpaid and/or the Lease remains in effect, Lessee represents, warrants and covenants to and with CNH:

   (a) <u>Notices of Claims and Litigation.</u> Promptly provide written notice of: (1) all material adverse changes in Lessee's financial condition, and (2) all existing and all threatened litigation, claims, investigations, administrative proceedings or similar actions affecting Lessee or any Guarantor which could materially affect the financial condition of Lessee or the financial condition of any Guarantor.

   (b) <u>Financial Records.</u> Maintain its books and records in accordance with GAAP reasonably acceptable to CNH, applied on a consistent basis, and permit CNH to examine and audit Lessee's books and records at reasonable times.

   (c) <u>Financial Reporting.</u> Furnish CNH with financial statements audited by a firm of independent certified public accountants selected by Lessee and reasonably acceptable to CNH. If requested by CNH, Lessee shall provide consolidating balance sheets and statements of the entities included in consolidated financial statements.

2. **Entire Addendum.** This Addendum shall be governed by the laws of the State of Wisconsin and shall become effective upon its acceptance by CNH. This Addendum shall not be deemed or construed to be modified, amended, rescinded, cancelled or waived, in whole or in part, unless in writing and signed by the parties hereto.

| **Millenkamp Cattle, Inc.** | **CNH Industrial Capital America LLC** |
|---|---|
| By: _____ | By: _____ |
| Name: _____ | Name: _____ |
| Its: _____ | Its: _____ |

EXHIBIT 1 of 6



**ADDENDUM**
**TO RETAIL INSTALLMENT CONTRACT**

This Addendum to Retail Installment Contract dated February 6th, 2024 (the "Addendum") supplements that certain Retail Installment Contract and Security Agreement dated February 6th, 2024 (hereafter the "Loan Agreement") between Millenkamp Cattle, Inc. (hereafter the "Borrower") and CNH Industrial Capital America LLC (hereafter the "CNH"). By signing this Addendum, the Borrower and CNH (collectively, the "Parties") agree to amend the terms and conditions of the Loan Agreement as set forth herein. The Addendum does not otherwise modify or supersede the provisions of the Loan Agreement beyond the terms contained herein. Unless otherwise specified, capitalized terms in this Addendum have the same meaning as defined in the Assurant Agreements, and those definitions are incorporated herein by reference.

NOW, THEREFORE, in consideration of the mutual promises and agreements set forth in this Addendum, the Parties agree as follows:

1. <u>Representations, Warranties and Affirmative Covenants</u>. For so long as any Obligations remain unpaid and/or the Loan Agreement remains in effect, Borrower represents, warrants and covenants to and with CNH:

   (a) <u>Notices of Claims and Litigation</u>. Promptly provide written notice of: (1) all material adverse changes in Borrower's financial condition, and (2) all existing and all threatened litigation, claims, investigations, administrative proceedings or similar actions affecting Borrower or any Guarantor which could materially affect the financial condition of Borrower or the financial condition of any Guarantor.

   (b) <u>Financial Records</u>. Maintain its books and records in accordance with GAAP reasonably acceptable to CNH, applied on a consistent basis, and permit CNH to examine and audit Borrower's books and records at reasonable times.

   (c) <u>Financial Reporting</u>. Furnish CNH with financial statements audited by a firm of independent certified public accountants selected by Borrower and reasonably acceptable to CNH. If requested by CNH, Borrower shall provide consolidating balance sheets and statements of the entities included in consolidated financial statements.

2. <u>Entire Addendum</u>. This Addendum shall be governed by the laws of the State of Wisconsin and shall become effective upon its acceptance by CNH. This Addendum shall not be deemed or construed to be modified, amended, rescinded, cancelled or waived, in whole or in part, unless in writing and signed by the parties hereto.

**Millenkamp Cattle, Inc.**

By: ~~_____~~
Name: _____
Its: _____

**CNH Industrial Capital America LLC**

By: _____
Name: _____
Its: _____

EXHIBIT 1 of 6

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)
CSC   1-800-858-5294

B. E-MAIL CONTACT AT SUBMITTER (optional)
SPRFiling@cscglobal.com

C. SEND ACKNOWLEDGMENT TO:   (Name and Address)

2759 67512
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: Idaho
(S.O.S.)

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME MILLENKAMP CATTLE, INC. | | | |
|---|---|---|---|
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS 471 NORTH 300 WEST | CITY Jerome | STATE ID | POSTAL CODE 83338 | COUNTRY USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Individual Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME CNH Industrial Capital America LLC | | | |
|---|---|---|---|
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS 5729 Washington Avenue | CITY Racine | STATE WI | POSTAL CODE 53406 | COUNTRY USA |

4. COLLATERAL: This financing statement covers the following collateral:
2023, Kubota, M5091, Serial No.: 58908, Tractor 61-99 PTO HP.
2023, Kubota, M5091, Serial No.: 58885, Tractor 61-99 PTO HP.
2023, Kubota, M5091, Serial No.: 58910, Tractor 61-99 PTO HP.
2023, Kubota, M5091, Serial No.: 58909, Tractor 61-99 PTO HP.
2023, Kubota, M5091, Serial No.: 58881, Tractor 61-99 PTO HP.
2023, Kubota, M5091, Serial No.: 58884, Tractor 60 PTO HP and below.
2023, Kubota, M5091, Serial No.: 58905, Tractor 60 PTO HP and below.
2023, Kubota, L4701, Serial No.: 79519, Tractor 60 PTO HP and below.
2023, Kubota, L4701, Serial No.: 79694, Tractor 60 PTO HP and below.
2023, Kubota, L4701, Serial No.: 79344, Tractor 60 PTO HP and below.
2023, Kubota, L4701, Serial No.: 79332, Tractor 60 PTO HP and below.
2023, Kubota, L4701, Serial No.: 80712, Tractor 60 PTO HP and below.

5. Check only if applicable and check only one box:   Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions)   ☐ being administered by a Decedent's Personal Representative
6a. Check only if applicable and check only one box:     6b. Check only if applicable and check only one box:
☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility   ☐ Agricultural Lien   ☐ Non-UCC Filing
7. ALTERNATIVE DESIGNATION (if applicable):   ☐ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor
8. OPTIONAL FILER REFERENCE DATA:

2759 67512

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 07/01/23)

EXHIBIT 1 of 6

# UCC FINANCING STATEMENT **ADDENDUM**

FOLLOW INSTRUCTIONS

**9. NAME OF FIRST DEBTOR:** Same as line 1a or 1b on Financing Statement; if line 1b was left blank
because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME

MILLENKAMP CATTLE, INC.

OR

9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S)                    SUFFIX

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**10. DEBTOR'S NAME:** Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name;
do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME

OR

10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)                    SUFFIX

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

**11.** ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

11a. ORGANIZATION'S NAME

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):**

2023, Kubota, L4701, Serial No.: 80496, Tractor 60 PTO HP and below.
2023, Kubota, L4701, Serial No.: 79654, Tractor 60 PTO HP and below. 2023, Kubota, L3902, Serial No.: 11901, Tractor 60 PTO HP and below.
2023, Kubota, L3902, Serial No.: 11903, Tractor 60 PTO HP and below.
2023, Kubota, L3902, Serial No.: 11904, Tractor 60 PTO HP and below.
2023, Kubota, L3902, Serial No.: 11907, Tractor 60 PTO HP and below.

**13.** ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the
REAL ESTATE RECORDS (if applicable)

**14.** This FINANCING STATEMENT:
☐ covers timber to be cut ☐ covers as-extracted collateral ☐ is filed as a fixture filing

**15.** Name and address of a RECORD OWNER of real estate described in item 16
(if Debtor does not have a record interest):

**16.** Description of real estate:

**17. MISCELLANEOUS:**

EXHIBIT 1 of 6

**SECURED PARTY COPY** — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 07/01/23)

# UCC FINANCING STATEMENT **ADDENDUM**
FOLLOW INSTRUCTIONS

**9. NAME OF FIRST DEBTOR:** Same as line 1a or 1b on Financing Statement; if line 1b was left blank
because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME

MILLENKAMP CATTLE, INC.

OR

9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S)                SUFFIX

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**10. DEBTOR'S NAME:** Provide (10a or 10b) only <u>one</u> additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name;
do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME

OR

10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)                SUFFIX

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**11.** ☐ ADDITIONAL SECURED PARTY'S NAME  <u>or</u>  ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only <u>one</u> name (11a or 11b)

11a. ORGANIZATION'S NAME

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):**
2023, Kubota, L3902, Serial No.: 11888, Tractor 60 PTO HP and below.
2023, Kubota, L3902, Serial No.: 11873, Tractor 60 PTO HP and below.
2023, Kubota, L3902, Serial No.: 11876, Tractor 60 PTO HP and below.
2023, Kubota, L3902, Serial No.: 11902, Tractor 60 PTO HP and below.
2023, Kubota, L3902, Serial No.: 11862, Tractor 60 PTO HP and below.
2023, Kubota, L3902, Serial No.: 11897, Tractor 60 PTO HP and below.

**13.** ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the
REAL ESTATE RECORDS  (if applicable)

**14.** This FINANCING STATEMENT:
☐ covers timber to be cut    ☐ covers as-extracted collateral    ☐ is filed as a fixture filing

**15.** Name and address of a RECORD OWNER of real estate described in item 16
(if Debtor does not have a record interest):

**16.** Description of real estate:

**17. MISCELLANEOUS:**

EXHIBIT 1 of 6

**SECURED PARTY COPY — UCC FINANCING STATEMENT ADDENDUM** (Form UCC1Ad) (Rev. 07/01/23)

## UCC FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME

MILLENKAMP CATTLE, INC.

OR

9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S)     SUFFIX

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME

OR

10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)     SUFFIX

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

11. ☐ ADDITIONAL SECURED PARTY'S NAME  or  ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

11a. ORGANIZATION'S NAME

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):
2023, Kubota, L3902, Serial No.: 11877, Tractor 60 PTO HP and below
SECURED CREDITOR ASSERTS A FIRST PRIORITY PURCHASE MONEY SECURITY INTEREST IN THE FOREGOING EQUIPMENT, AND INCLUDING BUT NOT LIMITED TO, ALL ITS IMPROVEMENTS, PARTS, ACCESSORIES, SUBSTITUTIONS, REPLACEMENTS, PRODUCTS, PROCEEDS, INSURANCE PROCEEDS, PREMIUM REFUNDS AND ACCESSIONS. THE EQUIPMENT MAY DISPLAY A SERIAL NUMBER OR OTHER IDENTIFYING NUMBER, INCLUDING BUT NOT LIMITED TO, THE FOLLOWING - PRODUCT IDENTIFICATION

13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

14. This FINANCING STATEMENT:
☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

16. Description of real estate:

17. MISCELLANEOUS:

EXHIBIT 1 of 6

SECURED PARTY COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 07/01/23)

## UCC FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS

**9. NAME OF FIRST DEBTOR:** Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME

MILLENKAMP CATTLE, INC.

OR

9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S)          SUFFIX

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**10. DEBTOR'S NAME:** Provide (10a or 10b) only _one_ additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME

OR

10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)          SUFFIX

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**11.** ☐ ADDITIONAL SECURED PARTY'S NAME _or_ ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only _one_ name (11a or 11b)

11a. ORGANIZATION'S NAME

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):**

NUMBER, TRACTOR NUMBER OR CHASSIS NUMBER..

**13.** ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS  (if applicable)

**14.** This FINANCING STATEMENT:
☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ is filed as a fixture filing

**15.** Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

**16.** Description of real estate:

**17. MISCELLANEOUS:**

<span style="color:red">EXHIBIT 1 of 6</span>

**SECURED PARTY COPY** — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 07/01/23)

B0081-2746 02/13/2024 6:48 AM Received by Office of the Idaho Secretary of State

20240209278



**STATE OF IDAHO**
*Office of the secretary of state, Phil McGrane*
**UCC1 FINANCING STATEMENT**
Idaho Secretary of State
PO Box 83720
Boise, ID 83720-0080
(208) 334-2301
Filing Fee - $3 submitted online, $6 print & mail or $12 if 3 or more
pages. Make checks payable to Secretary of State.

Contact at Filer:

| | |
|---|---|
| Contact Name | CORPORATION SERVICE COMPANY |
| Contact Phone | 1-800-858-5294 |
| Contact Email | SPRFiling@cscglobal.com |

Send acknowledgment to:

| | |
|---|---|
| Name | CORPORATION SERVICE COMPANY |
| Address | 801 ADLAI STEVENSON DRIVE<br>SPRINGFIELD, IL 62703 |

Debtors:

| DEBTOR'S NAME | MAILING ADDRESS |
|---|---|
| MILLENKAMP CATTLE, INC. | 471 NORTH 300 WEST<br>JEROME, ID 83338 |

Secured Parties:

| SECURED PARTY'S NAME | MAILING ADDRESS |
|---|---|
| CNH INDUSTRIAL CAPITAL AMERICA LLC | 5729 WASHINGTON AVENUE<br>RACINE, WI 53406 |

Collateral:

**EXHIBIT 1 of 6**

The financing statement covers the following collateral:

2023, Kubota, M5091, Serial No.: 58908, Tractor 61-99 PTO HP.
2023, Kubota, M5091, Serial No.: 58885, Tractor 61-99 PTO HP.
2023, Kubota, M5091, Serial No.: 58910, Tractor 61-99 PTO HP.
2023, Kubota, M5091, Serial No.: 58909, Tractor 61-99 PTO HP.
2023, Kubota, M5091, Serial No.: 58881, Tractor 61-99 PTO HP.
2023, Kubota, M5091, Serial No.: 58884, Tractor 60 PTO HP and below.
2023, Kubota, M5091, Serial No.: 58905, Tractor 61-99 PTO HP.
2023, Kubota, L4701, Serial No.: 79519, Tractor 60 PTO HP and below.
2023, Kubota, L4701, Serial No.: 79694, Tractor 60 PTO HP and below.
2023, Kubota, L4701, Serial No.: 79344, Tractor 60 PTO HP and below.
2023, Kubota, L4701, Serial No.: 79332, Tractor 60 PTO HP and below.
2023, Kubota, L4701, Serial No.: 80712, Tractor 60 PTO HP and below.
2023, Kubota, L4701, Serial No.: 80496, Tractor 60 PTO HP and below.
2023, Kubota, L4701, Serial No.: 79654, Tractor 60 PTO HP and below.
2023, Kubota, L3902, Serial No.: 11901, Tractor 60 PTO HP and below.
2023, Kubota, L3902, Serial No.: 11903, Tractor 60 PTO HP and below.
2023, Kubota, L3902, Serial No.: 11904, Tractor 60 PTO HP and below.
2023, Kubota, L3902, Serial No.: 11907, Tractor 60 PTO HP and below.
2023, Kubota, L3902, Serial No.: 11888, Tractor 60 PTO HP and below.
2023, Kubota, L3902, Serial No.: 11873, Tractor 60 PTO HP and below.
2023, Kubota, L3902, Serial No.: 11876, Tractor 60 PTO HP and below.
2023, Kubota, L3902, Serial No.: 11902, Tractor 60 PTO HP and below.
2023, Kubota, L3902, Serial No.: 11862, Tractor 60 PTO HP and below.
2023, Kubota, L3902, Serial No.: 11897, Tractor 60 PTO HP and below.
2023, Kubota, L3902, Serial No.: 11877, Tractor 60 PTO HP and below
SECURED CREDITOR ASSERTS A FIRST PRIORITY PURCHASE MONEY SECURITY INTEREST IN THE FOREGOING EQUIPMENT, AND INCLUDING BUT NOT LIMITED TO, ALL ITS IMPROVEMENTS, PARTS, ACCESSORIES, SUBSTITUTIONS, REPLACEMENTS, PRODUCTS, PROCEEDS, INSURANCE PROCEEDS, PREMIUM REFUNDS AND ACCESSIONS.  THE EQUIPMENT MAY DISPLAY A SERIAL NUMBER OR OTHER IDENTIFYING NUMBER, INCLUDING BUT NOT LIMITED TO, THE FOLLOWING - PRODUCT IDENTIFICATION NUMBER, TRACTOR NUMBER OR CHASSIS NUMBER..

The collateral is:

Designations:
Select a designation which describes this financing statement:    Not Applicable

EXHIBIT 1 of 6

B0081-2747 02/13/2024 6:48 AM Received by Office of the Idaho Secretary of State

B0081-2748 02/13/2024 6:48 AM Received by Office of the Idaho Secretary of State

| | |
|---|---|
| Select an additional designation which describes this financing statement: | Not Applicable |
| **Alternative Designations:** Select the alternative designation which describes this financing statement: | Not Applicable |
| **Optional Filer Reference Data:** 2759 67512 | |

EXHIBIT 1 of 6

**CNH CAPITAL**

**RETAIL INSTALLMENT SALE CONTRACT AND SECURITY AGREEMENT**

**SPLIT RATE**

020069  / 2793674

P%0000002 83736221004A0112

| "Buyer(s): Legal Name(s) | Address | City | St | Zip Code |
|---|---|---|---|---|
| MILLENKAMP CATTLE, INC. | 471 NORTH 300 WEST | JEROME | ID | 83338-5078 |

| "Seller: Legal Name | Address | City | St | Zip Code |
|---|---|---|---|---|
| BURKS TRACTOR COMPANY,INC. | 3140 KIMBERLY RD. | TWIN FALLS | ID | 83301 |

The undersigned Buyer(s) (collectively called "Buyer") hereby purchases from Seller and Seller hereby sells to Buyer the following goods (the "Equipment") at the Time Sale Price and the terms set forth herein. The Equipment is purchased for commercial ☐ business use ☑ agricultural use.

| NEW*/USED | EQUIPMENT DESCRIPTION | MODEL | SERIAL NUMBER/PIN | "CASH SALE PRICE" |
|---|---|---|---|---|
| | See attached Multiple Unit Addendum | | | |
| | | | | |
| | | | | |
| | | | | |

*New Equipment is unused equipment, a rental unit or a demonstrator, not previously sold, for which the manufacturer will supply all or a portion of a new equipment warranty; this Equipment may have been manufactured in a year prior to the year of this purchase.

| TRADE-IN EQUIPMENT | MODEL | SERIAL NUMBER/PIN | ALLOWANCE | AMT. OWED | NET TRADE-IN | OWED TO (Address details Page 4) |
|---|---|---|---|---|---|---|
| See attached Trade-In Addendum | | | | | | |

**STATEMENT OF TRANSACTION**

| | | | |
|---|---|---|---|
| 1. Cash Price (Cash Sale Price) | | 1. $ | 3,046,650.00 |
| 2. Cash Down Payment | $ N/A | | |
| Net Trade-In Allowance | $ 1,155,000.00 | | |
| Manufacturer's Rebate | $ N/A | | |
| Total Down Payment | | 2. $ | 1,155,000.00 |
| 3. Unpaid Balance of Cash Price (1 minus 2) | | 3. $ | 1,891,650.00 |
| 4. Other Charges | | | |
| (a) Taxes (Not in Cash Price) | $ N/A | | |
| (b) Official Fees (Filing and Termination) | $ 5.00 | | |
| (c) UCC Service Fee (Filing and Termination) | $ 22.00 | | |
| (d) Administrative Fee | $ N/A | | |
| (e) Physical Damage Insurance | $ N/A | | |
| (f) Credit Life Insurance | $ N/A | | |
| (g) Credit Accident & Health Insurance | $ N/A | | |
| (h) Purchased Protection Plan | $ 241,350.00 | | |
| (i) Other    Maintenance Plan CNHi | $ 495,508.50 | | |
| Total Other Charges | | 4. $ | 736,885.50 |
| 5. Unpaid Balance (Amount Financed) (3+4) | | 5. $ | 2,628,535.50 |
| 6. INTEREST CHARGE | | 6. $ | 379,371.08 |
| 7. Total of Payments (Time Balance) (5+6) | | 7. $ | 3,007,906.58 |
| 8. Deferred Payment Price (Time Sale Price) (1+4+6) | | 8. $ | 4,162,906.58 |

9. The Unpaid Balance shall bear an Interest Charge computed at a per annum rate [the INTEREST RATE] equal to    5.38 % from the date the Interest Rate begins accruing (see item 10, below) through and including 02 / 05 / 2025;

| | | | |
|---|---|---|---|
| 7.90 % from | 02 / 06 / 2025 | through and including | 02 / 06 / 2028 |
| % from | / / | through and including | / / |
| % from | / / | through and including | / / |
| % from | / / | through and including the date the Time | |

Balance is paid in full (this is a *SPLIT RATE* contract).

10. Date Interest Rate begins accruing:    2024-02-06

**Buyer agrees to pay to the Seller the Time Balance as follows:**

| NBR OF PAYMENTS | PERIOD OF PAYMENTS | AMOUNT OF EACH PAYMENT | BEGINNING MM/DD/YYYY |
|---|---|---|---|
| 47 | 1 MONTHS | $ 62,664.72 | 03/06/2024 |
| 1 | 1 MONTHS | $ 62,664.74 | 02/06/2028 |

The payments have been calculated to pay in full principal and interest over the term of this Agreement using the Interest Rate in effect on the date of this Agreement, and assuming that all required payments are made in full on the scheduled due dates. The final payment due hereunder shall be recalculated to pay the Obligations in full.

Buyer hereby conveys to Seller all rights, title and interest in the Trade-in Equipment free and clear of all encumbrances except as noted above.

☑ If checked, Seller represents and warrants that the above Amt. Owed has been paid.

Buyer agrees to the terms of the above titled agreement (herein the "Agreement"). Buyer has received and examined the Equipment, which is in good operating order and condition and is as described above. Buyer acknowledges receipt of a copy of this Agreement. Buyer agrees to purchase the Equipment described above and pay the Time Balance based on the terms of this Agreement.

NOTICE TO THE BUYER:
1. DO NOT SIGN THIS BEFORE YOU READ THE TERMS ON THE FOUR AGREEMENT PAGES (PLUS ANY ADDENDUMS), EVEN IF OTHERWISE ADVISED.
2. DO NOT SIGN THIS IF IT CONTAINS ANY BLANK SPACES.
3. YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN. KEEP IT TO PROTECT YOUR LEGAL RIGHTS.
4. BUYER REPRESENTS THAT THE EQUIPMENT IS NOT BEING PURCHASED FOR FAMILY, HOUSEHOLD OR PERSONAL USE.
ADDITIONAL PROVISIONS CONCERNING RIGHTS AND DUTIES OF THE PARTIES ON THE ADDITIONAL PAGES OF THIS AGREEMENT ARE A PART OF THIS AGREEMENT.

| X _(signature)_ | MILLENKAMP CATTLE, INC. | _(signature)_ President | 02-06-2024 |
|---|---|---|---|
| Signature of Buyer/Buyer's Representative | Printed Name | Title (not for an individual Buyer) | Date |
| X | | | |
| Signature of Buyer/Buyer's Representative | Printed Name | Title (not for an individual Buyer) | Date |

Dealer (hereinafter "Assignor" or "Seller") hereby assigns all of its rights, title and interest in and to the Agreement and the Equipment to CNH Industrial Capital America LLC (hereinafter "Assignee" or "CNH Capital"), under terms also described in the Retail Finance Agreement, Program Procedures, Dealer Handbook or other related documents (collectively hereinafter the "RFA") executed by the Assignor and Assignee. Seller has obtained a signed credit application for this Agreement. The Equipment has been paid in full or will be paid in full with Agreement proceeds pursuant to the terms of the RFA. Assignor waives notice of acceptance of this Assignment and notice of non-payment and non-performance of the Agreement and any other remedies required by law and waives any and all setoffs and counterclaims. This Assignment shall become effective upon delivery of the Agreement to Assignee or upon Assignee's payment of the purchase price thereof, whichever occurs first.

Basis of Acceptance: ☐ Nonrecourse    ☐ Repurchase    ☑ Full Recourse

Other explanation:  If the first 12 payments are not paid by the Buyer, then the Agreement becomes Full Recourse

| X _(signature)_ | BURKS TRACTOR COMPANY,INC. | 02-06-2024 |
|---|---|---|
| Signature of Seller's Representative | Printed Seller Name | Date |

21004A    Rev. 01/24 Previous editions may not be used.

EXHIBIT 2 of 6



**CNH** | **CAPITAL**

020069    / 2793674

**Agreement Provisions**

F%0000028373622I004A0212

**1. NO WARRANTY. THE EQUIPMENT IS SOLD AS IS AND WITH ALL FAULTS, SUBJECT TO ANY APPLICABLE MANUFACTURER'S EXPRESS, WRITTEN WARRANTY. NEITHER SELLER NOR MANUFACTURER MAKE ANY OTHER REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AND SPECIFICALLY DISCLAIM THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR PARTICULAR PURPOSES.* NEITHER SELLER NOR MANUFACTURER WILL BE LIABLE FOR ANY SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES RESULTING FROM A BREACH OF THE EXPRESS WARRANTY OR ANY IMPLIED WARRANTY IMPOSED BY LAW.***

*Some states do not allow these limitations and exclusions, and they shall not apply to the extent such limitations or exclusions are not allowed by applicable state law.*

**2. Prepayments.** Buyer may make a partial prepayment of the unpaid Time Balance at any time, but any partial prepayments will not change or defer Buyer's next scheduled payments.

**3. Late Charges/Default Rate/Returned Checks.** Buyer shall pay a late charge on each payment not paid within 10 days after the due date at the highest amount, both as permitted by applicable law. Buyer shall pay interest on the unpaid balance after maturity (as scheduled, by acceleration or otherwise) at the highest rate, as permitted by applicable law. If a check is returned for any reason, Assignee may charge Buyer a returned check processing fee as established by Assignee from time to time not to exceed the maximum permitted under applicable law. Assignee may apply any payment or proceed received toward the Obligations, in its sole discretion regardless of how requested or directed.

**4. Fees.** All parties to this Agreement acknowledge and agree that some fees and charges scheduled under section 4 in the Statement of Transaction may be shared between the Seller and CNH Capital as permitted by law and may result in profit for the Seller and CNH Capital. The parties further agree that Administrative or Other Fees are reasonable consideration for credit determination, handling, review, and approval of the transaction, and are not a document preparation fee nor an official fee. CNH Capital may make UCC related filings and/or termination statements pursuant to this Agreement. CNH Capital reserves its right to assess additional fees and other charges to the Obligations including but not limited to, if fees and other charges increase or other actions are needed to protect its lien upon the Equipment. If any fees and/or other charges scheduled and/or assessed under any part of this Agreement exceed the maximum permitted by applicable law, any excess shall be applied toward a reduction of the principal balance and that shall be the sole and satisfactory remedy under this Agreement.

**5. Extensions and Refinancing.** If Assignee extends, defers or refinances any payments due under this Agreement, Assignee may, at its option, increase the Interest Rate or Interest Charge (herein collectively referred to as the Interest Rate).

**6. Security Interests/Cross Collateralization.** Buyer hereby grants to Seller and its successors and assigns (including Assignee) a first priority purchase money security interest in the Equipment, and in all improvements, parts and accessories belonging to the Equipment, and all substitutions, replacements, products, proceeds (including any insurance proceeds) thereof and premium refunds, refunds of any other charges hereunder and all accessions related to the Equipment (the Equipment and such items are collectively referred to herein as the "Collateral"), to secure payment and performance of all existing and future obligations of Buyer under this Agreement or any other agreement between Buyer and Seller, between Buyer and Assignee or any affiliate of Assignee, or where Buyer, under another agreement in favor of Seller or Assignee, is a guarantor or obligor (the "Obligations"). Loss of or damage to the Equipment shall not release Buyer from any of the Obligations. Upon request, Buyer shall take any action reasonably deemed necessary by Assignee to protect and enforce Assignee's interest in the Collateral or rights under this Agreement. Assignee or Seller is authorized to examine the Collateral wherever located at any reasonable time or times. Buyer authorizes Assignee to insert in this Agreement, or amend any financing statement or title registration documentation to reflect the serial/PIN and/or model numbers of the Equipment if unknown at the time this Agreement is executed and to correct any errors in such numbers or any other errors in the description of the Equipment.

**7. Assignment.** Seller hereby assigns this Agreement, and any guarantee(s) ("Guarantee") hereof (together, "Assignment") to Assignee. Buyer acknowledges that Seller has the right to assign this Agreement and such Guarantee, that all rights and benefits but no obligations (if any) of Seller under this Agreement may be exercised by Assignee and that no obligations (if any) of Seller pass to Assignee. Buyer shall make all payments due under this Agreement directly to Assignee. This Agreement shall be binding on and inure to the benefit of Buyer, Seller and Assignee and their respective heirs, personal representatives, successors and assigns, provided however, that Buyer may not assign its interest in the Collateral, rights, nor its obligations under this Agreement to any person without Assignee's prior written consent. CNH Capital may pay a fee to the Assignor as consideration for the Assignor's assignment of this Agreement to CNH Capital.

**8. Notification of Change in Residence, Principal Office, or Organizational Form.** If Buyer changes (as applicable): (a) its state of principal residence; or (b) the state in which its chief executive office is located; or (c) the state in which it is organized; or (d) its form of organization (such as from an individual to a corporation); or (e) its name, as printed on a State filed registration document or individual name, as printed on a valid driver's license, then Buyer will notify Assignee in writing promptly, but in no event more than 30 days after such change.

**9. Waiver of Defenses Against Assignee; Indemnification.** Buyer will not assert against Assignee any claim or defense which Buyer may have against Seller, the manufacturer of the Equipment, or any other person. Buyer agrees that its obligation to remit payments will not be subject to, and it will not make any claim against Assignee for breach of any representation, warranty or condition with respect to the Equipment and that its obligation to pay Assignee all amounts under this Agreement is absolute and unconditional without abatement, reduction, set-off, counterclaim or interruption for any reason whatsoever, including any dispute which now or hereafter arises between Buyer and Seller or any other person. Time is of the essence. Buyer shall indemnify and hold harmless Seller, Assignee and their respective officers, directors, employees and agents from and against any damage, loss, theft or destruction of the Equipment or any part thereof, and from and against any and all loss, damages, injuries, claims, demands, costs and expenses (including without limitation reasonable attorneys' fees and expenses) of any kind and nature, arising out of or connected with this Agreement or the use, condition (including without limitation, all defects whether or not discoverable by Buyer, Seller or Assignee) or operation of the Equipment or any part thereof. Buyer shall promptly notify Seller and Assignee in writing of any loss, damage, theft, destruction, injury, claim, demand, cost or expense related to this Agreement or the Equipment of which Buyer has knowledge.

**10. Buyer's Covenants.** Buyer shall: (a) keep the Equipment in the state listed on page 1 of this Agreement and not remove the Equipment from such location, except temporarily in connection with its ordinary use or repair, unless Assignee consents in writing; (b) maintain the Equipment in good condition and repair and not permit its intended function or value to be impaired; (c) keep the Collateral free of all liens, encumbrances and security interests of all persons other than Seller and Assignee; (d) defend the Collateral against all claims and legal proceedings by persons other than Assignee; (e) pay and discharge when due all taxes, fees, levies and other charges upon the Collateral (including all personal property and ad valorem taxes); (f) pay when due all taxes arising from the purchase of the Equipment under this Agreement, excluding any taxes based upon Seller's net income; (g) use the Equipment solely in the conduct of Buyer's business; (h) ensure the Equipment will be used solely within the intended uses of the manufacturer and that manufacturer warranty remains valid; (i) not sell, lease or otherwise dispose of the Equipment nor permit the Equipment to become an accession to other goods or a fixture; and (j) not permit the Equipment to be used in violation of any law, regulation or policy of insurance; and (k) strictly follow the terms on page 1 of this Agreement; (l) perform (at Buyer's expense) all maintenance and repairs necessary to keep the Equipment in as good a condition as when delivered to Buyer, reasonable wear excepted; (m) not permit the Equipment to be used by, or to be in the possession of, anyone other than Buyer or Buyer's employees. Buyer represents and warrants that: (i) each individual executing this Agreement authorized by or on behalf of Buyer has the requisite power and authority to execute this Agreement and all related documents; (ii) Buyer is fully authorized to perform its obligations and consummate the transactions contemplated under this Agreement and related documents; (iii) the execution and delivery of this Agreement and all related documents and the consummation of the transactions under this Agreement have been duly authorized by Buyer; and (iv) this Agreement and all related documents constitute valid and legally binding obligations of Buyer, enforceable against Buyer in accordance with their respective terms.

EXHIBIT 2 of 6





020069    / 2793674                                    **Agreement Provisions**

**11. Insurance.** Buyer shall keep Assignee's interests in the Equipment insured against fire, theft, physical damage and other hazards under policies listing Assignee as Lender's loss payee or as an additional insured, with such provisions, for such amounts (but not less than the unpaid balance outstanding under this Agreement) and by such insurers and terms as shall be satisfactory to Assignee from time to time, and shall furnish to Assignee evidence of such insurance satisfactory to Assignee. Such insurance shall provide at least 30 days' written notice of cancellation, lapse or expiration to Assignee. Buyer assigns (and directs any insurer to pay) to Assignee Buyer's interest in the proceeds of any and all insurance related to the Equipment and any premium refund, and Assignee may, at its option, apply such proceeds and refunds to any unpaid balance of the Obligations, whether or not due, and/or to repair or restore the Equipment. Buyer must make all payments due under this Agreement whether or not the Equipment is insured or underinsured. Assignee is authorized, in the name of Buyer or otherwise, to make, adjust and/or settle claims under any insurance on the Equipment, or cancel the same after the occurrence of an event of default, or set off amounts owed Assignee against any rebates, credits or refunds due Buyer and/or any guarantor. If Buyer purchased physical damage insurance that is financed under this Agreement, Buyer hereby requests and authorizes Seller (provided Seller is properly licensed to do so) or its designee: (a) to arrange physical damage insurance for the benefit of Seller or Assignee and Buyer that covers physical damage to the Equipment; (b) to replace or otherwise modify such insurance as Seller deems appropriate; and (c) to be Buyer's attorney-in-fact to make claim for, receive payment of and execute, endorse and negotiate all documents, checks or drafts received in payment of loss, damage or premium refunds under any insurance. This Agreement includes and hereby incorporates by reference any Insurance Addendum signed in connection with this Agreement.

STATEMENT TO BUYER: THE PHYSICAL DAMAGE INSURANCE PURCHASED UNDER THE TERMS OF THIS AGREEMENT COVERS ONLY LOSS OF OR DAMAGE TO THE EQUIPMENT. LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED AS PART OF THE PHYSICAL DAMAGE INSURANCE. BUYER UNDERSTANDS THAT IF INSURANCE IS FINANCED UNDER THIS AGREEMENT, PREPAYMENT OF BUYER'S OBLIGATIONS OR TERMINATION OF THIS AGREEMENT WILL RESULT IN CANCELLATION OF INSURANCE COVERAGE, UNLESS OTHERWISE EXPLICITLY AGREED TO IN WRITING BY ASSIGNEE.

**12. Modifications and Waivers.** This Agreement sets forth the entire understanding among Seller, Assignee and Buyer. No modification, amendment or extension of this Agreement and no waiver of any provision of this Agreement shall be valid unless in writing and signed by the parties and a waiver of any default hereunder by Assignee shall not constitute a waiver of any other prior or subsequent default, except that Buyer authorizes Assignee to insert in this Agreement the serial number/PIN and/or model number of any Equipment if this information is unknown when this Agreement is executed or to correct any errors in such numbers or any other patent errors in the description of the Equipment.

**13. Authority of Assignee to Perform for Buyer.** If Buyer fails to perform any of Buyer's duties set forth in this Agreement (including, without limitation, the purchase of insurance), Assignee may, at its option, in Buyer's name or otherwise, take any such action, including, without limitation, signing Buyer's name or paying any amount so required, and all costs and expenses incurred by Assignee in connection therewith shall form part of the Obligations and shall be payable by Buyer upon demand with interest from the date of payment by Assignee at the highest rate permitted by applicable law.

**14. Default/Cross Default.** Buyer shall be in default under this Agreement, and any other agreement with or assigned to Assignee, if any of the following occurs (each, an "event of default"): (a) Buyer fails to pay when due any of the Obligations, or to perform any covenant or other obligation of Buyer under this Agreement or any other agreement with or assigned to Assignee; (b) Buyer or any guarantor dies, ceases to exist, becomes insolvent or the subject of bankruptcy, insolvency or liquidation proceedings, attempts to or does assign this Agreement or attempts to or does remove, sell, transfer, further encumber, part with possession of or sublet any Equipment; (c) any warranty or representation made by Buyer or any guarantor to induce Seller or Assignee to extend credit to Buyer, under this Agreement or otherwise, is false in any material respect when made; (d) Buyer fails to maintain insurance required hereunder or fails to comply with the requirements of any such insurance; (e) any other event occurs that causes Assignee, in good faith, to consider that payment or performance of the Obligations is impaired or that the Equipment is at risk; (f) the Equipment is impounded or confiscated by any federal, state or local governmental authority; (g) Buyer fails to produce Collateral for inspection within 10 days, upon demand; or (h) Buyer breaches any of the other terms of this Agreement or any other agreement with or assigned to Assignee.

**15. Expenses.** To the extent not prohibited by law, Buyer shall reimburse Seller or Assignee for any expense incurred by Seller or Assignee in protecting, defending or enforcing their rights under this Agreement, including, without limitation, reasonable attorneys' fees and legal expenses and all expenses of taking possession, transporting, holding, repairing, refurbishing, preparing for disposition and disposing of the Collateral, and all expenses and costs incurred in collecting the Obligations, including collection agency fees based on a maximum of 25% of the Obligations, and all shall be part of the Obligations.

**16. Conflict with Law.** Any provision of this Agreement prohibited by applicable law shall be ineffective to the extent of the prohibition without invalidating the remaining portions of this Agreement. The validity, construction and enforcement of this Agreement shall be governed by the laws of the State of the Seller (without regard to conflict of law principles of such State). All terms not otherwise defined have the meanings assigned to them by the applicable Uniform Commercial Code.

**17. Authorization to Execute and File Financing Statements and Lien Documents.** Buyer hereby authorizes Assignee or its designee to execute and file financing statements, and any motor vehicle title, registration and lien notification documentation, and any amendments thereto, on behalf and in the name of Buyer to evidence the security interest in the Collateral granted pursuant to this Agreement. Buyer hereby irrevocably appoints Assignee or its designee as Buyer's agent and attorney-in-fact to sign such instruments on Buyer's behalf and to file them.

**18. Time Price Calculations.** If this is a variable rate contract, the Prime Rate for a given calendar month shall be the rate designated as the "Prime Rate" published in The Wall Street Journal on the twentieth day of the prior calendar month (or on the next day published if not published on the twentieth day). If The Wall Street Journal ceases publication permanently or no longer publishes a "Prime Rate", the Prime Rate shall mean the prime loan rate of any federally chartered bank selected by Assignee. For all contracts the Interest Rate shall never be less than 0%. Interest Rate shall be calculated using a daily rate determined by dividing the annual rate by 365. Buyer shall make all payments in lawful money of the United States of America.

**19. Remedies.** Upon the occurrence of any event of default, Seller or Assignee shall have all rights and remedies provided by the Uniform Commercial Code or any other applicable law and Seller or Assignee may, except where prohibited by law, at its option: (i) declare all Obligations immediately due and payable without notice or demand; (ii) enter onto any premises where the Collateral may be located, take possession of all Collateral, without notice or hearing, and, Buyer or any guarantor, also expressly waives any right to notice or a prior hearing or to require Assignee to post any bond; (iii) render the Equipment unusable; (iv) require Buyer to assemble all Collateral and make it available to Assignee at any convenient place designated by Assignee within 10 days after notice from Assignee; (v) sell (including at wholesale) or otherwise dispose of all Collateral at public or private sale for cash or on credit terms, without notice; and if notice is required by law, ten (10) days' notice to Buyer shall be deemed reasonable notice; and/or (vi) obtain a consumer credit bureau upon any Buyer or any guarantor. All rights and remedies may be exercised by Seller or Assignee either separately or in combination and any action taken by Assignee to recover payment from Buyer of the Obligations shall not limit Assignee's rights with respect to all Collateral. Assignee may apply all proceeds of realization of the Collateral to such part or parts of the Obligations as Assignee may decide. If there is a deficiency, Buyer will pay the amount of the deficiency upon demand. Buyer waives notice of dishonor, presentment and demand as to this Agreement.

21004A      Rev. 01/24 Previous editions may not be used.                                    Page 3 of 12

EXHIBIT 2 of 6



020069  / 2793674

**Agreement Provisions**

P%0000028373622I004A0412

**20. Miscellaneous.** In the event that this contract is determined by a court of competent jurisdiction to be characterized as a loan or forbearance agreement, and not a sale, despite the terms and conditions found in this contract, then all parties agree that any interest charges computed and assessed in this contract that are in excess of the maximum allowed interest charges allowed by law shall be applied as a reduction to the principal balance owed on this contract only, and this shall be the agreed upon and satisfactory remedy to all parties. By providing any address, email address or telephone number, including a mobile phone number, either now or in the future to Seller, Assignee, any of Assignee's affiliates or any debt collectors retained by Assignee, Buyer agrees that any of the above may contact Buyer using that address or number, including contact through calls or texts using an automatic dialing and announcing device and prerecorded calls, and that such calls are not "unsolicited" under state or federal law. Any attempted revocation of this consent to contact, if allowable by law, must be made in writing. Buyer acknowledges and agrees that CNH Capital and its third party service providers can access and use telematics data and other information regarding location, maintenance and operation of the Equipment for any lawful purpose, including without limitation, to locate and repossess the Equipment. See https://www.cnhindustrialcapital.com/en_us/Pages/Privacy.aspx for additional details. If a court finds that any part of this Agreement to be invalid or unenforceable, the remainder of this Agreement will remain in effect. All of Assignee's rights shall remain in effect after the expiration or termination of this Agreement. If more than one Buyer is named in the Agreement, the liability of each shall be joint and several. All notices required or permitted hereunder shall be in writing and shall be deemed adequate if sent to the first Buyer on page 1 of the Agreement. The captions and headings of the sections of this Agreement are for convenience only and are not to be used to interpret or define the provisions hereof. Restrictive endorsements on checks or other forms of payment that Buyer sends to Assignee will not change or reduce Buyer's obligations to Assignee. Assignee will not lose any rights if Assignee accepts late or partial payments or delays enforcing its rights under this Agreement. **South Dakota Residents:** If there are any improprieties in making the loan or in loan practices, you may contact the South Dakota Division of Banking: South Dakota Division of Banking, 1714 Lincoln Ave, Suite 2, Pierre, SD 57501, phone number: (605) 773-3421.

**21. WAIVER OF JURY TRIAL.** EXCEPT IN GEORGIA OR CALIFORNIA OR WHERE OTHERWISE PROHIBITED BY LAW, EACH BUYER, SELLER AND CNH CAPITAL WAIVES ANY AND ALL RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING RELATING TO THE OBLIGATIONS, THIS AGREEMENT, OR ANY OTHER DOCUMENT CONNECTED HEREWITH, OR ANY TRANSACTION ARISING FROM OR CONNECTED TO ANY OF THE FOREGOING. EACH BUYER, SELLER AND CNH CAPITAL REPRESENTS THAT THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY GIVEN.

**22. Electronic Contracting, Signature Acknowledgment, Future Notices.** Buyer agrees that (i) this Agreement is an electronic agreement executed by Buyer using Buyer's electronic signature or that Assignee may convert this Agreement into an electronic agreement; (ii) Buyer's electronic signature signifies Buyer's intent to enter into this Agreement and that this Agreement shall be a legally valid and enforceable Agreement in accordance with its terms to the same extent as if Buyer had executed this Agreement using Buyer's written signature and (iii) the authoritative copy of this Agreement ("Authoritative Copy") shall be that electronic copy that resides in a document management system designated by Assignee for the storage and authoritative copies of electronic records, which shall be deemed held by us in the ordinary course of business. Notwithstanding the forgoing, if the Authoritative Copy is converted by printing a paper copy which is marked by Assignee as the original (the "Paper Contract"), then Buyer acknowledges and agrees that (1) your signing of this Agreement with your electronic signature also constitutes issuance and delivery of such Paper Contract, (2) your electronic signature associated with this Agreement, when affixed to the Paper Contract, constitutes your legally valid and binding signature on the Paper Contract and (3) subsequent to such conversion, Buyer's duties and Obligations will be evidenced by the Paper Contract alone. By providing your e-mail address and electing to execute this Agreement electronically, Buyer agrees that all future notices, statements and communications relating to this Agreement shall be delivered to the Buyer via e-mail transmission to the e-mail address provided to Assignee by the Buyer. It is the Buyer's duty to provide any changes to Buyer's e-mail address to Assignee so that future communications can reach Buyer in a timely manner.

EXHIBIT 2 of 6



**CNH** | CAPITAL

020069   / 2793674

FX000002837362210 08A0512

## MULTIPLE UNIT ADDENDUM

This Multiple Unit Addendum is hereby incorporated into the commercial Retail Installment Contract and Security Agreement or Lease Agreement dated
February 06    2024    with Seller  BURKS TRACTOR COMPANY,INC.    herein the ("Agreement"), and this addendum
equipment list is made a part of the Equipment, as defined in the Agreement.   Buyer or Lessee acknowledges receipt of this Multiple Unit Addendum at the time
it is executed, along with a copy of the Agreement and all its pages and agrees to all the Agreement terms.

| # | New or Used | Equipment Description | Model | Serial Number/PIN | Hours | Maximum Annual Usage | Excess Usage Rate | Cash Price |
|---|---|---|---|---|---|---|---|---|
| 1 | NEW | Case IH Maxxum | 115 | HACMX115EPDH01475 | | N/A | N/A | $ 101,555.00 |
| 2 | NEW | Case IH Maxxum | 115 | HACMX115APDH01598 | | N/A | N/A | $ 101,555.00 |
| 3 | NEW | Case IH Maxxum | 115 | HACMX115CPDH01601 | | N/A | N/A | $ 101,555.00 |
| 4 | NEW | Case IH Maxxum | 115 | HACMX115TPDH01608 | | N/A | N/A | $ 101,555.00 |
| 5 | NEW | Case IH Maxxum | 115 | HACMX115PPDH01710 | | N/A | N/A | $ 101,555.00 |
| 6 | NEW | Case IH Maxxum | 115 | HACMX115LPDH04728 | | N/A | N/A | $ 101,555.00 |
| 7 | NEW | Case IH Maxxum | 115 | HACMX115APDH02069 | | N/A | N/A | $ 101,555.00 |
| 8 | NEW | Case IH Maxxum | 115 | HACMX115EPDH02027 | | N/A | N/A | $ 101,555.00 |
| 9 | NEW | Case IH Maxxum | 115 | HACMX115LPDH04325 | | N/A | N/A | $ 101,555.00 |
| 10 | NEW | Case IH Maxxum | 115 | HACMX115KPDH04513 | | N/A | N/A | $ 101,555.00 |
| 11 | NEW | Case IH Maxxum | 115 | HACMX115EPDH04621 | | N/A | N/A | $ 101,555.00 |
| 12 | NEW | Case IH Maxxum | 115 | HACMX115KPDH04625 | | N/A | N/A | $ 101,555.00 |
| 13 | NEW | Case IH Maxxum | 115 | HACMX115JPDH04724 | | N/A | N/A | $ 101,555.00 |
| 14 | NEW | Case IH Maxxum | 115 | HACMX115HPDH04729 | | N/A | N/A | $ 101,555.00 |
| 15 | NEW | Case IH Maxxum | 115 | HACMX115LPDH04731 | | N/A | N/A | $ 101,555.00 |

Executed this  06    day of  February    , 2024  .

X _____    MILLENKAMP CATTLE, INC.    _____
Signature of Buyer/Buyer's Representative    Printed Name    Title (not for an individual Buyer)

X _____    BURKS TRACTOR COMPANY,INC.
Signature of Seller's Representative    Printed Seller Name

21008A    Rev. 01/24 Previous editions may not be used.    Page 5 of 12

EXHIBIT 2 of 6

**CNH** | **CAPITAL**

020069 / 2793674

FX000002837362210008A0612

## MULTIPLE UNIT ADDENDUM

This Multiple Unit Addendum is hereby incorporated into the commercial Retail Installment Contract and Security Agreement or Lease Agreement dated February 06 2024 with Seller BURKS TRACTOR COMPANY,INC. herein the ("Agreement"), and this addendum equipment list is made a part of the Equipment, as defined in the Agreement. Buyer or Lessee acknowledges receipt of this Multiple Unit Addendum at the time it is executed, along with a copy of the Agreement and all its pages and agrees to all the Agreement terms.

| # | New or Used | Equipment Description | Model | Serial Number/PIN | Hours | Maximum Annual Usage | Excess Usage Rate | Cash Price |
|---|---|---|---|---|---|---|---|---|
| 16 | NEW | Case IH Maxxum | 115 | HACMX115CPDH04823 | | N/A | N/A | $ 101,555.00 |
| 17 | NEW | Case IH Maxxum | 115 | HACMX115EPDH04828 | | N/A | N/A | $ 101,555.00 |
| 18 | NEW | Case IH Maxxum | 115 | HACMX115TPDH04878 | | N/A | N/A | $ 101,555.00 |
| 19 | NEW | Case IH Maxxum | 115 | HACMX115PPDH04879 | | N/A | N/A | $ 101,555.00 |
| 20 | NEW | Case IH Maxxum | 115 | HACMX115CPDH04921 | | N/A | N/A | $ 101,555.00 |
| 21 | NEW | Case IH Maxxum | 115 | HACMX115VPDH05035 | | N/A | N/A | $ 101,555.00 |
| 22 | NEW | Case IH Maxxum | 115 | HACMX115HPDH05038 | | N/A | N/A | $ 101,555.00 |
| 23 | NEW | Case IH Maxxum | 115 | HACMX115EPDH05235 | | N/A | N/A | $ 101,555.00 |
| 24 | NEW | Case IH Maxxum | 115 | HACMX115JPDH05078 | | N/A | N/A | $ 101,555.00 |
| 25 | NEW | Case IH Maxxum | 115 | HACMX115APDH06302 | | N/A | N/A | $ 101,555.00 |
| 26 | NEW | Case IH Maxxum | 115 | HACMX115CPDH05910 | | N/A | N/A | $ 101,555.00 |
| 27 | NEW | Case IH Maxxum | 115 | HACMX115JPDH06375 | | N/A | N/A | $ 101,555.00 |
| 28 | NEW | Case IH Maxxum | 115 | HACMX115CPDH06466 | | N/A | N/A | $ 101,555.00 |
| 29 | NEW | Case IH Maxxum | 115 | HACMX115HPDH06707 | | N/A | N/A | $ 101,555.00 |
| 30 | NEW | Case IH Maxxum | 115 | HACMX115LPDH04826 | | N/A | N/A | $ 101,555.00 |

Executed this 06 day of February , 2024 .

X _____
Signature of Buyer/Buyer's Representative

MILLENKAMP CATTLE, INC.
Printed Name

_____
Title (not for an individual Buyer)

X _____
Signature of Seller's Representative

BURKS TRACTOR COMPANY,INC.
Printed Seller Name

21008A    Rev. 01/24 Previous editions may not be used.

Page 6 of 12

EXHIBIT 2 of 6



**CNH** | **CAPITAL**

020069    / 2793674

## MULTIPLE TRADE-IN UNIT ADDENDUM

This Multiple Trade-In Unit Addendum is hereby incorporated into the commercial Retail Installment Contract and Security Agreement or Lease Agreement dated February 06      2024    with Seller  BURKS TRACTOR COMPANY, INC.                                                herein the ("Agreement").  Buyer or Lessee acknowledges receipt of this Multiple Trade-In Unit Addendum at the time it is executed, along with a copy of the Agreement and all its pages.

| # | Equipment Description | Model | Serial Number/PIN | Allowance | Amt. Owed | Net Trade-In | Owed To |
|---|----------------------|-------|-------------------|-----------|-----------|--------------|---------|
| 1 | Case IH  Maxxum Tractor | 115 | HACMX115PLEH20410 | $ 38,500.00 | $ 0.00 | $ 38,500.00 | |
| 2 | Case IH  Maxxum Tractor | 115 | HACMX115JLEH20829 | $ 38,500.00 | $ 0.00 | $ 38,500.00 | |
| 3 | Case IH  Maxxum Tractor | 115 | HACMX115KLEH20423 | $ 38,500.00 | $ 0.00 | $ 38,500.00 | |
| 4 | Case IH  Maxxum Tractor | 115 | HACMX115CLEH20413 | $ 38,500.00 | $ 0.00 | $ 38,500.00 | |
| 5 | Case IH  Maxxum Tractor | 115 | HACMX115VLEH20414 | $ 38,500.00 | $ 0.00 | $ 38,500.00 | |
| 6 | Case IH  Maxxum Tractor | 115 | HACMX115ELEH20421 | $ 38,500.00 | $ 0.00 | $ 38,500.00 | |
| 7 | Case IH  Maxxum Tractor | 115 | HACMX115ALEH20432 | $ 38,500.00 | $ 0.00 | $ 38,500.00 | |
| 8 | Case IH  Maxxum Tractor | 115 | HACMX115LLEH20433 | $ 38,500.00 | $ 0.00 | $ 38,500.00 | |
| 9 | Case IH  Maxxum Tractor | 115 | HACMX115JLEH20457 | $ 38,500.00 | $ 0.00 | $ 38,500.00 | |
| 10 | Case IH  Maxxum Tractor | 115 | HACMX115HLEH20434 | $ 38,500.00 | $ 0.00 | $ 38,500.00 | |
| 11 | Case IH  Maxxum Tractor | 115 | HACMX115ELEH20435 | $ 38,500.00 | $ 0.00 | $ 38,500.00 | |
| 12 | Case IH  Maxxum Tractor | 115 | HACMX115CLEH20436 | $ 38,500.00 | $ 0.00 | $ 38,500.00 | |
| 13 | Case IH  Maxxum Tractor | 115 | HACMX115TLEH20437 | $ 38,500.00 | $ 0.00 | $ 38,500.00 | |
| 14 | Case IH  Maxxum Tractor | 115 | HACMX115LLEH20438 | $ 38,500.00 | $ 0.00 | $ 38,500.00 | |
| 15 | Case IH  Maxxum Tractor | 115 | HACMX115CLEH20587 | $ 38,500.00 | $ 0.00 | $ 38,500.00 | |

Buyer hereby conveys to Seller all rights, title and interest in the Trade-in Equipment free and clear of all encumbrances except as noted above.

☑ If checked, Seller represents and warrants that the above Amt. Owed has been paid.

Executed this  06    day of  February                  ,  2024

X _____    MILLENKAMP CATTLE, INC.                                 _____
Signature of Buyer/Buyer's Representative    Printed Name                                 Title (not for an individual Buyer)

X _____
Signature of Seller's Representative

BURKS TRACTOR COMPANY, INC.
Printed Seller Name

21142A    Rev. 01/24 Previous editions may not be used.                                                    Page 7 of 12

EXHIBIT 2 of 6

**CNH | CAPITAL**

F%0000028373622 1142A0812

020089    / 2793674

## MULTIPLE TRADE-IN UNIT ADDENDUM

This Multiple Trade-In Unit Addendum is hereby incorporated into the commercial Retail Installment Contract and Security Agreement or Lease Agreement dated February 06      2024      with Seller   BURKS TRACTOR COMPANY,INC.                                     herein the ("Agreement").  Buyer or Lessee acknowledges receipt of this Multiple Trade-In Unit Addendum at the time it is executed, along with a copy of the Agreement and all its pages.

| # | Equipment Description | Model | Serial Number/PIN | Allowance | Amt. Owed | Net Trade-In | Owed To |
|----|----------------------|-------|-------------------|-----------|-----------|--------------|---------|
| 16 | Case IH   Maxxum Tractor | 115 | HACMX115TLEH20583 | $ 38,500.00 | $ 0.00 | $ 38,500.00 | |
| 17 | Case IH   Maxxum Tractor | 115 | HACMX115VLEH20560 | $ 38,500.00 | $ 0.00 | $ 38,500.00 | |
| 18 | Case IH   Maxxum Tractor | 115 | HACMX115ALEH20589 | $ 38,500.00 | $ 0.00 | $ 38,500.00 | |
| 19 | Case IH   Maxxum Tractor | 115 | HACMX115JLEH20412 | $ 38,500.00 | $ 0.00 | $ 38,500.00 | |
| 20 | Case IH   Maxxum Tractor | 115 | HACMX115CLEH20590 | $ 38,500.00 | $ 0.00 | $ 38,500.00 | |
| 21 | Case IH   Maxxum Tractor | 115 | HACMX115LLEH20688 | $ 38,500.00 | $ 0.00 | $ 38,500.00 | |
| 22 | Case IH   Maxxum Tractor | 115 | HACMX115CLEH20744 | $ 38,500.00 | $ 0.00 | $ 38,500.00 | |
| 23 | Case IH   Maxxum Tractor | 115 | HACMX115LLEH20738 | $ 38,500.00 | $ 0.00 | $ 38,500.00 | |
| 24 | Case IH   Maxxum Tractor | 115 | HACMX115KLEH20778 | $ 38,500.00 | $ 0.00 | $ 38,500.00 | |
| 25 | Case IH   Maxxum Tractor | 115 | HACMX115TLEH20745 | $ 38,500.00 | $ 0.00 | $ 38,500.00 | |
| 26 | Case IH   Maxxum Tractor | 115 | HACMX115ELEH20791 | $ 38,500.00 | $ 0.00 | $ 38,500.00 | |
| 27 | Case IH   Maxxum Tractor | 115 | HACMX115HLEH20787 | $ 38,500.00 | $ 0.00 | $ 38,500.00 | |
| 28 | Case IH   Maxxum Tractor | 115 | HACMX115ELEH20841 | $ 38,500.00 | $ 0.00 | $ 38,500.00 | |
| 29 | Case IH   Maxxum Tractor | 115 | HACMX115ELEH20838 | $ 38,500.00 | $ 0.00 | $ 38,500.00 | |
| 30 | Case IH   Maxxum Tractor | 115 | HACMX115KLEH20411 | $ 38,500.00 | $ 0.00 | $ 38,500.00 | |

Buyer hereby conveys to Seller all rights, title and interest in the Trade-in Equipment free and clear of all encumbrances except as noted above.

☑ If checked, Seller represents and warrants that the above Amt. Owed has been paid.

Executed this   06   day of   February            ,   2024   .

X _____    MILLENKAMP CATTLE, INC.                    _Presilent_
Signature of Buyer/Lessee's Representative    Printed Name                    Title (not for an individual Buyer)

X _____    BURKS TRACTOR COMPANY,INC.
Signature of Seller's Representative    Printed Seller Name

211142      Rev. 01/24 Previous editions may not be used.                    Page 8 of 12

EXHIBIT 2 of 6



020069  / 2793674

## PURCHASED PROTECTION PLAN ADDENDUM

This is the Purchased Protection Plan Addendum to that certain commercial _____ Retail Installment Sale Contract and Security Agreement _____ dated _____ February 06 _____, _____ 2024 _____ between the Buyer and the Seller for the Equipment identified therein (herein the "Agreement"), into which this Purchased Protection Plan Addendum is hereby incorporated.  If the price of a Purchased Protection Plan is financed  under the Agreement, Buyer understands that a portion of the price may be paid to Seller, to Seller's designee or to Case New Holland Insurance Agency, LLC, as an administrative or marketing fee.  Assignee may deliver the Purchased Protection Plan price to Seller and if Assignee does so, Seller is solely responsible for remitting payment to the provider.  Provider and Buyer agree that they shall not raise any claim, defense or setoff against Assignee if the Seller fails to remit payment to the provider, unless prohibited by law. Your Dealer may receive certain brand discounts, program funds and incentives (hereafter the "Discounts"), and may elect to use or keep those Discounts, as part of their overall pricing package options presented to you.  The Discounts are owned by your Dealer.  Some of the cost of your potential Purchased Protection Plan may be paid for by your Dealer, utilizing those Discounts and/or rolled into your payment. You may ask your Dealer for additional information concerning the potential separate costs contained in your payment of a potential Purchased Protection Plan, prior to executing your Agreement. Buyer's electronic signature below indicates Buyer's consent to receive this disclosure statement electronically at the email address provided by Buyer to Seller. Buyer accepts this disclosure statement in electronic form, and has retained a copy of the disclosure statement electronically or otherwise.

The Purchased Protection Plan is recommended but is not required. The precise protection afforded is subject to the terms, conditions and exclusions of the contract as issued.  Purchased Protection Plans are issued by a licensed, independent third party unrelated to CNH Industrial Capital America LLC or Case New Holland Insurance Agency, LLC.

Buyer requests Seller/Assignee to attempt to obtain a Purchased Protection Plan from a third party provider and to finance as part of the Unpaid Balance (Amount Financed) the price as shown for the term as shown or for the total machine hours stated in the Purchased Protection Plan contract, whichever occurs first, for the Equipment listed below.

*Where NEW plan is shown below the Total Months and Total Machine Hours selected on new equipment plans include the Manufacturer's Base Warranty Period.*

*Where USED plan is shown below the Months and Machine Hours selected commence on the used equipment Purchase Protection Plan contract effective date.*

| | PLAN | EQUIPMENT SERIAL/PIN | PRICE | TERM (MONTHS) | | PLAN | EQUIPMENT SERIAL/PIN | PRICE | TERM (MONTHS) |
|---|---|---|---|---|---|---|---|---|---|
| 1 | NEW | HACMX115APDH01598 | $8,045.00 | 36 | 14 | NEW | HACMX115LPDH04826 | $8,045.00 | 36 |
| 2 | NEW | HACMX115JPDH04724 | $8,045.00 | 36 | 15 | NEW | HACMX115TPDH01608 | $8,045.00 | 36 |
| 3 | NEW | HACMX115LPDH04731 | $8,045.00 | 36 | 16 | NEW | HACMX115KPDH04513 | $8,045.00 | 36 |
| 4 | NEW | HACMX115EPDH04828 | $8,045.00 | 36 | 17 | NEW | HACMX115EPDH02027 | $8,045.00 | 36 |
| 5 | NEW | HACMX115PPDH04879 | $8,045.00 | 36 | 18 | NEW | HACMX115APDH02069 | $8,045.00 | 36 |
| 6 | NEW | HACMX115CPDH01601 | $8,045.00 | 36 | 19 | NEW | HACMX115EPDH01475 | $8,045.00 | 36 |
| 7 | NEW | HACMX115HPDH05038 | $8,045.00 | 36 | 20 | NEW | HACMX115EPDH04621 | $8,045.00 | 36 |
| 8 | NEW | HACMX115JPDH05078 | $8,045.00 | 36 | 21 | NEW | HACMX115KPDH04625 | $8,045.00 | 36 |
| 9 | NEW | HACMX115CPDH05910 | $8,045.00 | 36 | 22 | NEW | HACMX115HPDH04729 | $8,045.00 | 36 |
| 10 | NEW | HACMX115CPDH06466 | $8,045.00 | 36 | 23 | NEW | HACMX115CPDH04823 | $8,045.00 | 36 |
| 11 | NEW | HACMX115PPDH01710 | $8,045.00 | 36 | 24 | NEW | HACMX115TPDH04878 | $8,045.00 | 36 |
| 12 | NEW | HACMX115LPDH04325 | $8,045.00 | 36 | 25 | NEW | HACMX115CPDH04921 | $8,045.00 | 36 |
| 13 | NEW | HACMX115LPDH04728 | $8,045.00 | 36 | 26 | NEW | HACMX115VPDH05035 | $8,045.00 | 36 |

Executed this  06 ___ day of  February _____, 2024 ___

X _____     MILLENKAMP CATTLE, INC.          _____
Signature of Buyer/Buyer's Representative     Printed Name                    Title (not for an individual Buyer)

21017A   Rev. 01/24 Previous editions may not be used.

EXHIBIT 2 of 6



**CNH** CAPITAL

020069  / 2793674

## PURCHASED PROTECTION PLAN ADDENDUM

This is the Purchased Protection Plan Addendum to that certain commercial _____ Retail Installment Sale Contract and Security Agreement _____ dated _____ February 06 _____, _____ 2024 _____ between the Buyer and the Seller for the Equipment identified therein (herein the "Agreement"), into which this Purchased Protection Plan Addendum is hereby incorporated.  If the price of a Purchased Protection Plan is financed under the Agreement, Buyer understands that a portion of the price may be paid to Seller, to Seller's designee or to Case New Holland Insurance Agency, LLC, as an administrative or marketing fee.  Assignee may deliver the Purchased Protection Plan price to Seller and if Assignee does so, Seller is solely responsible for remitting payment to the provider.  Provider and Buyer agree that they shall not raise any claim, defense or setoff against Assignee if the Seller fails to remit payment to the provider, unless prohibited by law. Your Dealer may receive certain brand discounts, program funds and incentives (hereafter the "Discounts"), and may elect to use or keep those Discounts, as part of their overall pricing package options presented to you.  The Discounts are owned by your Dealer.  Some of the cost of your potential Purchased Protection Plan may be paid for by your Dealer, utilizing those Discounts and/or rolled into your payment.  You may ask your Dealer for additional information concerning the potential separate costs contained in your payment of a potential Purchased Protection Plan, prior to executing your Agreement. Buyer's electronic signature below indicates Buyer's consent to receive this disclosure statement electronically at the email address provided by Buyer to Seller. Buyer accepts this disclosure statement in electronic form, and has retained a copy of the disclosure statement electronically or otherwise.

The Purchased Protection Plan is recommended but is not required. The precise protection afforded is subject to the terms, conditions and exclusions of the contract as issued.  Purchased Protection Plans are issued by a licensed, independent third party unrelated to CNH Industrial Capital America LLC or Case New Holland Insurance Agency, LLC.

Buyer requests Seller/Assignee to attempt to obtain a Purchased Protection Plan from a third party provider and to finance as part of the Unpaid Balance (Amount Financed) the price as shown for the term as shown or for the total machine hours stated in the Purchased Protection Plan contract, whichever occurs first, for the Equipment listed below.

*Where NEW plan is shown below the Total Months and Total Machine Hours selected on new equipment plans include the Manufacturer's Base Warranty Period.*

*Where USED plan is shown below the Months and Machine Hours selected commence on the used equipment Purchase Protection Plan contract effective date.*

| PLAN | EQUIPMENT SERIAL/PIN | PRICE | TERM (MONTHS) | PLAN | EQUIPMENT SERIAL/PIN | PRICE | TERM (MONTHS) |
|---|---|---|---|---|---|---|---|
| 27 NEW | HACMX115EPDH05235 | $8,045.00 | 36 | | | | |
| 28 NEW | HACMX115APDH06302 | $8,045.00 | 36 | | | | |
| 29 NEW | HACMX115JPDH06375 | $8,045.00 | 36 | | | | |
| 30 NEW | HACMX115HPDH06707 | $8,045.00 | 36 | | | | |

Executed this 06 day of February , 2024 .

X ~~[signature]~~                          MILLENKAMP CATTLE, INC.                          *[signature]*
Signature of Buyer/Buyer's Representative          Printed Name                          Title (not for an individual Buyer)

<span style="color:red">EXHIBIT 2 of 6</span>



**CNH** | CAPITAL

020069 / 2793674

## MAINTENANCE PLAN ADDENDUM

This is the Maintenance Plan Addendum to that certain commercial _____ Retail Installment Sale Contract and Security Agreement _____ dated February 06 , 2024 between the Buyer and the Seller for the Equipment identified therein (herein the "Agreement"), into which this Maintenance Plan Addendum is hereby incorporated. If the price of a Maintenance Plan is financed under the Agreement, Buyer understands that a portion of the price may be paid to Seller by the manufacturer. Assignee may deliver the Maintenance Plan price to Seller and if Assignee does so, Seller is solely responsible for remitting payment to the manufacturer. Buyer agrees that they shall not raise any claim, defense or setoff against Assignee if the Seller fails to remit payment to the manufacturer, unless prohibited by law. Your dealer may receive certain brand discounts, program funds and incentives (hereafter the "Discounts"), and may elect to use or keep those Discounts, as part of their overall pricing package options presented to you. The Discounts are owned by your Dealer. Some of the cost of your potential maintenance plan may be paid for by your dealer, utilizing those Discounts and/or rolled into your payment. You may ask your dealer for additional information concerning the potential separate costs contained in your payment of a potential maintenance plan, prior to executing your Agreement.

The Maintenance Plan is recommended but is not required. The precise protection afforded is subject to the terms, conditions and exclusions of the contract as issued by the manufacturer. Program may not be available in all states. Eligible equipment or other program details may vary by state based on state regulations.

Buyer requests Seller/Assignee to attempt to obtain a Maintenance Plan from the manufacturer and to include as part of the payments the price as shown for the term as shown or for the total machine hours stated in the Maintenance Agreement Form, whichever occurs first, for the Equipment listed below.

_Where **NEW** plan is shown below the Total Months and Total Machine Hours selected on new equipment plans._

| PLAN* | EQUIPMENT SERIAL/PIN | PRICE | TERM (MONTHS) | HOURS | PLAN* | EQUIPMENT SERIAL/PIN | PRICE | TERM (MONTHS) | HOUR |
|---|---|---|---|---|---|---|---|---|---|
| 1 NEW | HACMX115EPDH01475 | see Maintenance Agreement Form for full details | | | 14 NEW | HACMX115HPDH04729 | see Maintenance Agreement Form for full details | | |
| 2 NEW | HACMX115APDH01598 | see Maintenance Agreement Form for full details | | | 15 NEW | HACMX115LPDH04731 | see Maintenance Agreement Form for full details | | |
| 3 NEW | HACMX115CPDH01601 | see Maintenance Agreement Form for full details | | | 16 NEW | HACMX115CPDH04823 | see Maintenance Agreement Form for full details | | |
| 4 NEW | HACMX115TPDH01608 | see Maintenance Agreement Form for full details | | | 17 NEW | HACMX115EPDH04828 | see Maintenance Agreement Form for full details | | |
| 5 NEW | HACMX115PPDH01710 | see Maintenance Agreement Form for full details | | | 18 NEW | HACMX115TPDH04878 | see Maintenance Agreement Form for full details | | |
| 6 NEW | HACMX115LPDH04728 | see Maintenance Agreement Form for full details | | | 19 NEW | HACMX115PPDH04879 | see Maintenance Agreement Form for full details | | |
| 7 NEW | HACMX115APDH02069 | see Maintenance Agreement Form for full details | | | 20 NEW | HACMX115CPDH04921 | see Maintenance Agreement Form for full details | | |
| 8 NEW | HACMX115EPDH02027 | see Maintenance Agreement Form for full details | | | 21 NEW | HACMX115VPDH05035 | see Maintenance Agreement Form for full details | | |
| 9 NEW | HACMX115LPDH04325 | see Maintenance Agreement Form for full details | | | 22 NEW | HACMX115HPDH05038 | see Maintenance Agreement Form for full details | | |
| 10 NEW | HACMX115KPDH04513 | see Maintenance Agreement Form for full details | | | 23 NEW | HACMX115EPDH05235 | see Maintenance Agreement Form for full details | | |
| 11 NEW | HACMX115EPDH04621 | see Maintenance Agreement Form for full details | | | 24 NEW | HACMX115JPDH05078 | see Maintenance Agreement Form for full details | | |
| 12 NEW | HACMX115KPDH04625 | see Maintenance Agreement Form for full details | | | 25 NEW | HACMX115APDH06302 | see Maintenance Agreement Form for full details | | |
| 13 NEW | HACMX115JPDH04724 | see Maintenance Agreement Form for full details | | | 26 NEW | HACMX115CPDH05910 | see Maintenance Agreement Form for full details | | |

**Total Cost of Maintenance Plan** _____

*See Maintenance Agreement Form for the serial number(s) under plan.

Executed this 06 day of February , 2024 .

X _____
Signature of Buyer/Buyer's Representative

MILLENKAMP CATTLE, INC.
Printed Name _____

_____
Title (not for an Individual Buyer)

23384A  Rev. 01/24 Previous editions may not be used.

EXHIBIT 2 of 6



**CNH** | **CAPITAL**

020069  /  2793674

FX0000028373622103DA1212

## GUARANTEE

In consideration of the extension of credit as referenced by the application number above, and to induce the Secured Party, as hereinafter defined, to extend credit on the agreement dated    February 06    ,   2024    , (herein "Agreement") to:

MILLENKAMP CATTLE, INC.

of  471 NORTH 300 WEST, JEROME, ID 83338-5078

(collectively the "Buyer"), and for other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, each of the executing parties below (collectively the "Guarantor", whether one or more) makes this guarantee ("Guarantee") in favor of the Secured Party.

1. The Guarantor, pursuant to the terms of this Guarantee, unconditionally and irrevocably guarantees the payment, performance and complete fulfillment of all Obligations, as defined in the Agreement described above, of the Buyer to Secured Party, and any amendments or supplements thereto, whether heretofore or hereafter incurred, including any revisions, renewals, consolidations and extensions thereof, any of which may be made without notice to the Guarantor. Guarantor has received and reviewed a copy of the Agreement prior to executing this Guarantee.

2. This Guarantee does not limit, modify or cancel any unlimited guarantee that may have been previously given by the Guarantor, if any.

3. Notice of acceptance is waived (and, in Louisiana, all pleas of division and discussion are waived). Presentment, protest, demand, and notice of protest, demand and dishonor of any of the Obligations, and the exercise of possessory, collection or other remedies for the Obligations, are also hereby waived.

4. Without further authorization from or notice to Guarantor, Secured Party, in its sole discretion, may renew, refinance, revise, settle, alter, compromise, accelerate, extend, consolidate or otherwise change the time or manner of payments of any of the Obligations or increase or reduce the rate of interest thereon; or add or release any one or more other Guarantors. No exercise or nonexercise by Secured Party of any right hereby given to it, no dealing by Secured Party with Buyer or any other Guarantor, and no change, impairment, or extension of any right or remedy of Secured Party shall in any way affect the Guarantor's liability hereunder or give Guarantor any recourse against Secured Party. Notice of default in any of the Obligations is expressly waived by Guarantor.

5. With or without notice to Guarantor, and without affecting the liability of Guarantor hereunder, Secured Party may from time to time before, at, or after any default by Buyer, together or separately, (1) accept additional collateral for the Obligations, (2) accept other collateral in exchange or substitution for the collateral then securing the Obligations, (3) obtain a credit bureau report for any Guarantor, and/or (4) surrender or release any collateral securing the Obligations.

6. This is a Guarantee of prompt payment and performance, and not of collection. Secured Party does not have to exercise or exhaust its rights against the Buyer (or any other person or entity obligated with respect to the Obligations) or enforce its rights against any collateral before a claim is made against Guarantor.

7. It is the mutual intention of the parties hereto that the Guarantor shall be bound notwithstanding any claim or defense Buyer may have or raise, and Guarantor waives any defense Buyer may have. Guarantor agrees to pay reasonable attorneys' fees and all costs and other expenses incurred by Secured Party in collecting or compromising any of the Obligations or in enforcing this Guarantee against Guarantor.

8. In the event that any payment by Buyer to Secured Party is held to constitute a preference under the bankruptcy laws, or if for any other reason the Secured Party is required to refund such payment or pay the amount thereof to any other person or party, such payment by Buyer to Secured Party shall not constitute a release of Guarantor from any liability hereunder, but Guarantor agrees to pay such amount to Secured Party on demand.

9. "Secured Party" shall mean CNH Industrial Capital America LLC and CNH Industrial America LLC and all parent, subsidiary and affiliated corporations and all successors and assigns of any of the foregoing. This Guarantee shall bind the respective heirs, executors, administrators, successors, legal representatives and assigns of each Guarantor and shall inure to the benefit of any Secured Party.

10. Each Guarantor shall be jointly and severally (and, in Louisiana, "in solido" with the Buyer) liable to Secured Party.

11. EXCEPT IN GEORGIA OR CALIFORNIA OR WHERE OTHERWISE PROHIBITED BY LAW, EACH GUARANTOR WAIVES ANY AND ALL RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING RELATING TO THE OBLIGATIONS, THIS GUARANTEE, OR ANY OTHER DOCUMENT CONNECTED HEREWITH, OR ANY TRANSACTION ARISING FROM OR CONNECTED TO ANY OF THE FOREGOING. EACH GUARANTOR REPRESENTS THAT THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY GIVEN.

Executed this    06    day of    February    ,   2024    .

X _____

Signature of Guarantor/Guarantor Representative

WILLIAM J MILLENKAMP
Printed Name

Not Applicable
Title (not for individual Guarantor)

21030A      Rev. 01/24 Previous editions may not be used.

Page 12 of 12

**EXHIBIT 2 of 6**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)**
CSC    1-800-858-5294

**B. E-MAIL CONTACT AT SUBMITTER (optional)**
SPRFiling@cscglobal.com

**C. SEND ACKNOWLEDGMENT TO:** (Name and Address)

2759 75030
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: Idaho
(S.O.S.)

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME MILLENKAMP CATTLE, INC. | | | |
|---|---|---|---|
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 1c. MAILING ADDRESS 471 NORTH 300 WEST | CITY Jerome | STATE ID | POSTAL CODE 83338 | COUNTRY USA |
|---|---|---|---|---|

**2. DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME CNH Industrial Capital America LLC | | | |
|---|---|---|---|
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 3c. MAILING ADDRESS 5729 Washington Avenue | CITY Racine | STATE WI | POSTAL CODE 53406 | COUNTRY USA |
|---|---|---|---|---|

**4. COLLATERAL:** This financing statement covers the following collateral:

2023, Case IH, 115, Serial No.: HACMX115LPDH04731, Maxxum Tractor.
2023, Case IH, 115, Serial No.: HACMX115HPDH06707, Maxxum Tractor.
2023, Case IH, 115, Serial No.: HACMX115EPDH01475, Maxxum Tractor.
2023, Case IH, 115, Serial No.: HACMX115CPDH01601, Maxxum Tractor.
2023, Case IH, 115, Serial No.: HACMX115TPDH01608, Maxxum Tractor.
2023, Case IH, 115, Serial No.: HACMX115LPDH04728, Maxxum Tractor.
2023, Case IH, 115, Serial No.: HACMX115APDH02069, Maxxum Tractor.
2023, Case IH, 115, Serial No.: HACMX115KPDH04513, Maxxum Tractor.
2023, Case IH, 115, Serial No.: HACMX115TPDH04878, Maxxum Tractor.
2023, Case IH, 115, Serial No.: HACMX115JPDH06375, Maxxum Tractor.
2023, Case IH, 115, Serial No.: HACMX115APDH01598, Maxxum Tractor.
2023, Case IH, 115, Serial No.: HACMX115PPDH01710, Maxxum Tractor.

**5.** Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

**6a.** Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility
**6b.** Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

**7. ALTERNATIVE DESIGNATION** (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:**

2759 75030

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 07/01/23)

EXHIBIT 2 of 6

# UCC FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS

**9. NAME OF FIRST DEBTOR:** Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME

MILLENKAMP CATTLE, INC.

OR

9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S)          SUFFIX

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**10. DEBTOR'S NAME:** Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME

OR

10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)          SUFFIX

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**11.** ☐ ADDITIONAL SECURED PARTY'S NAME  or  ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

11a. ORGANIZATION'S NAME

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):**
2023, Case IH, 115, Serial No.: HACMX115EPDH04621, Maxxum Tractor.
2023, Case IH, 115, Serial No.: HACMX115CPDH04823, Maxxum Tractor. 2023, Case IH, 115, Serial No.: HACMX115PPDH04879, Maxxum Tractor.
2023, Case IH, 115, Serial No.: HACMX115CPDH04921, Maxxum Tractor.
2023, Case IH, 115, Serial No.: HACMX115EPDH05235, Maxxum Tractor.
2023, Case IH, 115, Serial No.: HACMX115APDH06302, Maxxum Tractor.

**13.** ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS  (if applicable)

**14.** This FINANCING STATEMENT:
☐ covers timber to be cut    ☐ covers as-extracted collateral    ☐ is filed as a fixture filing

**15.** Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

**16.** Description of real estate:

**17. MISCELLANEOUS:**

SECURED PARTY COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 07/01/23)

EXHIBIT 2 of 6

# UCC FINANCING STATEMENT **ADDENDUM**
FOLLOW INSTRUCTIONS

**9. NAME OF FIRST DEBTOR:** Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME

MILLENKAMP CATTLE, INC.

OR

9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S)                    SUFFIX

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**10. DEBTOR'S NAME:** Provide (10a or 10b) only <u>one</u> additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME

OR

10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)                    SUFFIX

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

**11.** ☐ ADDITIONAL SECURED PARTY'S NAME  or  ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only <u>one</u> name (11a or 11b)

11a. ORGANIZATION'S NAME

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):**
2023, Case IH, 115, Serial No.: HACMX115CPDH05910, Maxxum Tractor.
2023, Case IH, 115, Serial No.: HACMX115CPDH06466, Maxxum Tractor.
2023, Case IH, 115, Serial No.: HACMX115LPDH04826, Maxxum Tractor.
2023, Case IH, 115, Serial No.: HACMX115EPDH02027, Maxxum Tractor.
2023, Case IH, 115, Serial No.: HACMX115LPDH04325, Maxxum Tractor.
2023, Case IH, 115, Serial No.: HACMX115KPDH04625, Maxxum Tractor.

**13.** ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS  (if applicable)

**14.** This FINANCING STATEMENT:
☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ is filed as a fixture filing

**15.** Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

**16.** Description of real estate:

**17. MISCELLANEOUS:**

EXHIBIT 2 of 6

SECURED PARTY COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 07/01/23)

# UCC FINANCING STATEMENT **ADDENDUM**
FOLLOW INSTRUCTIONS

**9. NAME OF FIRST DEBTOR:** Same as line 1a or 1b on Financing Statement; if line 1b was left blank
because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME

MILLENKAMP CATTLE, INC.

OR

9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S)    SUFFIX

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**10. DEBTOR'S NAME:** Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name;
do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME

OR

10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)    SUFFIX

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**11.** ☐ ADDITIONAL SECURED PARTY'S NAME  or  ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

11a. ORGANIZATION'S NAME

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):**
2023, Case IH, 115, Serial No.: HACMX115JPDH04724, Maxxum Tractor.
2023, Case IH, 115, Serial No.: HACMX115HPDH04729, Maxxum Tractor.
2023, Case IH, 115, Serial No.: HACMX115VPDH05035, Maxxum Tractor.
2023, Case IH, 115, Serial No.: HACMX115HPDH05038, Maxxum Tractor.
2023, Case IH, 115, Serial No.: HACMX115JPDH05078, Maxxum Tractor.
2023, Case IH, 115, Serial No.: HACMX115EPDH04828, Maxxum Tractor

**13.** ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the
REAL ESTATE RECORDS  (if applicable)

**14.** This FINANCING STATEMENT:
☐ covers timber to be cut    ☐ covers as-extracted collateral    ☐ is filed as a fixture filing

**15.** Name and address of a RECORD OWNER of real estate described in item 16
(if Debtor does not have a record interest):

**16.** Description of real estate:

**17. MISCELLANEOUS:**

EXHIBIT 2 of 6
SECURED PARTY COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 07/01/23)

# UCC FINANCING STATEMENT **ADDENDUM**
FOLLOW INSTRUCTIONS

**9. NAME OF FIRST DEBTOR:** Same as line 1a or 1b on Financing Statement; if line 1b was left blank
because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME

MILLENKAMP CATTLE, INC.

OR

9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S)                          SUFFIX

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**10. DEBTOR'S NAME:** Provide (10a or 10b) only <u>one</u> additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name;
do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME

OR

10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)                          SUFFIX

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**11.** ☐ ADDITIONAL SECURED PARTY'S NAME  or  ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only <u>one</u> name (11a or 11b)

11a. ORGANIZATION'S NAME

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):**
SECURED CREDITOR ASSERTS A FIRST PRIORITY PURCHASE MONEY SECURITY INTEREST IN THE
FOREGOING EQUIPMENT, AND INCLUDING BUT NOT LIMITED TO, ALL ITS IMPROVEMENTS, PARTS,
ACCESSORIES, SUBSTITUTIONS, REPLACEMENTS, PRODUCTS, PROCEEDS, INSURANCE PROCEEDS,
PREMIUM REFUNDS AND ACCESSIONS.  THE EQUIPMENT MAY DISPLAY A SERIAL NUMBER OR OTHER
IDENTIFYING NUMBER, INCLUDING BUT NOT LIMITED TO, THE FOLLOWING - PRODUCT IDENTIFICATION
NUMBER, TRACTOR NUMBER OR CHASSIS NUMBER..

**13.** ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the
REAL ESTATE RECORDS  (if applicable)

**14.** This FINANCING STATEMENT:
☐ covers timber to be cut    ☐ covers as-extracted collateral    ☐ is filed as a fixture filing

**15.** Name and address of a RECORD OWNER of real estate described in item 16
(if Debtor does not have a record interest):

**16.** Description of real estate:

**17. MISCELLANEOUS:**

**SECURED PARTY COPY** — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 07/01/23)

EXHIBIT 2 of 6

B0081-2888 02/13/2024 8:13 AM Received by Office of the Idaho Secretary of State

20240209607



**STATE OF IDAHO**
*Office of the secretary of state, Phil McGrane*
**UCC1 FINANCING STATEMENT**
Idaho Secretary of State
PO Box 83720
Boise, ID 83720-0080
(208) 334-2301
Filing Fee - $3 submitted online, $6 print & mail or $12 if 3 or more
pages. Make checks payable to Secretary of State.

Contact at Filer:

| | |
|---|---|
| Contact Name | CORPORATION SERVICE COMPANY |
| Contact Phone | 1-800-858-5294 |
| Contact Email | SPRFiling@cscglobal.com |

Send acknowledgment to:

| | |
|---|---|
| Name | CORPORATION SERVICE COMPANY |
| Address | 801 ADLAI STEVENSON DRIVE SPRINGFIELD, IL 62703 |

Debtors:

| DEBTOR'S NAME | MAILING ADDRESS |
|---|---|
| MILLENKAMP CATTLE, INC. | 471 NORTH 300 WEST JEROME, ID 83338 |

Secured Parties:

| SECURED PARTY'S NAME | MAILING ADDRESS |
|---|---|
| CNH INDUSTRIAL CAPITAL AMERICA LLC | 5729 WASHINGTON AVENUE RACINE, WI 53406 |

Collateral:

EXHIBIT 2 of 6

B0081-2889 02/13/2024 8:13 AM Received by Office of the Idaho Secretary of State

The financing statement covers the following collateral:

2023, Case IH, 115, Serial No.: HACMX115LPDH04731, Maxxum Tractor.
2023, Case IH, 115, Serial No.: HACMX115HPDH06707, Maxxum Tractor.
2023, Case IH, 115, Serial No.: HACMX115EPDH01475, Maxxum Tractor.
2023, Case IH, 115, Serial No.: HACMX115CPDH01601, Maxxum Tractor.
2023, Case IH, 115, Serial No.: HACMX115TPDH01608, Maxxum Tractor.
2023, Case IH, 115, Serial No.: HACMX115LPDH04728, Maxxum Tractor.
2023, Case IH, 115, Serial No.: HACMX115APDH02069, Maxxum Tractor.
2023, Case IH, 115, Serial No.: HACMX115KPDH04513, Maxxum Tractor.
2023, Case IH, 115, Serial No.: HACMX115TPDH04878, Maxxum Tractor.
2023, Case IH, 115, Serial No.: HACMX115JPDH06375, Maxxum Tractor.
2023, Case IH, 115, Serial No.: HACMX115APDH01598, Maxxum Tractor.
2023, Case IH, 115, Serial No.: HACMX115PPDH01710, Maxxum Tractor.
2023, Case IH, 115, Serial No.: HACMX115EPDH04621, Maxxum Tractor.
2023, Case IH, 115, Serial No.: HACMX115CPDH04823, Maxxum Tractor.
2023, Case IH, 115, Serial No.: HACMX115PPDH04879, Maxxum Tractor.
2023, Case IH, 115, Serial No.: HACMX115CPDH04921, Maxxum Tractor.
2023, Case IH, 115, Serial No.: HACMX115EPDH05235, Maxxum Tractor.
2023, Case IH, 115, Serial No.: HACMX115APDH06302, Maxxum Tractor.
2023, Case IH, 115, Serial No.: HACMX115CPDH05910, Maxxum Tractor.
2023, Case IH, 115, Serial No.: HACMX115CPDH06466, Maxxum Tractor.
2023, Case IH, 115, Serial No.: HACMX115LPDH04826, Maxxum Tractor.
2023, Case IH, 115, Serial No.: HACMX115EPDH02027, Maxxum Tractor.
2023, Case IH, 115, Serial No.: HACMX115LPDH04325, Maxxum Tractor.
2023, Case IH, 115, Serial No.: HACMX115KPDH04625, Maxxum Tractor.
2023, Case IH, 115, Serial No.: HACMX115JPDH04724, Maxxum Tractor.
2023, Case IH, 115, Serial No.: HACMX115HPDH04729, Maxxum Tractor.
2023, Case IH, 115, Serial No.: HACMX115VPDH05035, Maxxum Tractor.
2023, Case IH, 115, Serial No.: HACMX115HPDH05038, Maxxum Tractor.
2023, Case IH, 115, Serial No.: HACMX115JPDH05078, Maxxum Tractor.
2023, Case IH, 115, Serial No.: HACMX115EPDH04828, Maxxum Tractor
SECURED CREDITOR ASSERTS A FIRST PRIORITY PURCHASE MONEY SECURITY INTEREST IN THE FOREGOING EQUIPMENT, AND INCLUDING BUT NOT LIMITED TO, ALL ITS IMPROVEMENTS, PARTS, ACCESSORIES, SUBSTITUTIONS, REPLACEMENTS, PRODUCTS, PROCEEDS, INSURANCE PROCEEDS, PREMIUM

EXHIBIT 2 of 6

REFUNDS AND ACCESSIONS.  THE EQUIPMENT MAY
DISPLAY A SERIAL NUMBER OR OTHER IDENTIFYING
NUMBER, INCLUDING BUT NOT LIMITED TO, THE
FOLLOWING - PRODUCT IDENTIFICATION NUMBER,
TRACTOR NUMBER OR CHASSIS NUMBER..

The collateral is:

Designations:

Select a designation which describes this financing statement:    Not Applicable

Select an additional designation which describes this
financing statement:    Not Applicable

Alternative Designations:

Select the alternative designation which describes this
financing statement:    Not Applicable

Optional Filer Reference Data:
2759 75030

B0081-2890 02/13/2024 8:13 AM Received by Office of the Idaho Secretary of State

EXHIBIT 2 of 6

**CNH INDUSTRIAL | CAPITAL**

EQUIPMENT OPERATING
LEASE AGREEMENT

020069  / 2609637

FX0000023667102 1009A0109

| "Lessee(s) Legal Name(s) | Address | City | St | Zip |
|---|---|---|---|---|
| MILLENKAMP CATTLE, INC. | 471 NORTH 300 WEST | JEROME | ID | 83338-5078 |

| "Lessor" Legal Name | Address | City | St | Zip |
|---|---|---|---|---|
| BURKS TRACTOR COMPANY,INC. | 3140 KIMBERLY RD. | TWIN FALLS | ID | 83301 |

The undersigned Lessee(s) (collectively called "Lessee") hereby leases from Lessor and Lessor hereby leases to Lessee the following goods (the "Equipment") under the terms set forth herein. The Equipment is leased for commercial ☐ business use ☑ agricultural use.

| NEW*/USED | EQUIPMENT DESCRIPTION | MODEL | SERIAL#/PIN | HOURS | "MAX ANN USE" | "EXCESS USE" |
|---|---|---|---|---|---|---|
| | | | | | | |
| | See attached Multiple Unit Addendum | | | | | |

*New Equipment is unused equipment, a rental unit or a demonstrator, not previously sold, for which the manufacturer will supply all or a portion of a new equipment warranty; this Equipment may have been manufactured in a year prior to the year of this lease.

| Location of Equipment: Address (if other than Lessee address) | | City | St | Zip |
|---|---|---|---|---|
| | | | | |

The beginning date of this agreement (the "Agreement" or this "Lease") is  10-31-2020  ("Beginning Date") and the termination date of the Agreement is  11-01-2023  ("Termination Date"). There shall be a security deposit of $  N/A  ("Security Deposit") and a purchase option price of $  4,977,125.12  ("Purchase Option Price"). Lease Payments: Advance Payment of $  40,472.24  followed by payments in accordance with the following schedule, PLUS APPLICABLE TAXES.

| NUMBER OF PAYMENTS | PERIOD OF PAYMENTS | AMOUNT OF EACH PAYMENT | BEGINNING MM/DD/YYYY | NUMBER OF PAYMENTS | PERIOD OF PAYMENTS | AMOUNT OF EACH PAYMENT | BEGINNING MM/DD/YYYY |
|---|---|---|---|---|---|---|---|
| 34 | 1 MONTHS | $ 40,472.24 | 12/01/2020 | | | $ | |
| 1 | 1 MONTHS | 40,472.18 | 10/01/2023 | | | $ | |
| | | $ | | | | $ | |
| | | $ | | | | $ | |
| | | $ | | | | $ | |
| | | $ | | | | $ | |

The "Obligations" shall mean Lessee's responsibility to pay the payments noted in this Lease (the "Lease Payments") and to perform any other existing or future obligations of Lessee to Lessor, or to the Assignee under this Lease or any other agreement between or among Lessee and Assignee, or Lessor or affiliate of Lessor and Assignee.

LESSEE HAS SELECTED THE EQUIPMENT. THE MANUFACTURER AND ITS REPRESENTATIVES ARE NOT LESSOR'S NOR ASSIGNEE'S AGENTS AND ARE NOT AUTHORIZED TO MODIFY THE TERMS OF THIS LEASE. LESSEE IS AWARE OF THE NAME OF THE MANUFACTURER OF EACH ITEM OF EQUIPMENT AND LESSEE WILL CONTACT MANUFACTURER FOR A DESCRIPTION OF WARRANTY RIGHTS, LIMITATIONS AND DISCLAIMERS. LESSOR MAKES NO WARRANTIES TO LESSEE, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, SUITABILITY OR OTHERWISE. LESSOR PROVIDES THE EQUIPMENT TO LESSEE AS-IS. LESSOR, NOR ASSIGNEE, SHALL BE LIABLE FOR SPECIAL, INCIDENTIAL OR CONSEQUENTIAL DAMAGES.*

*Some states do not allow these limitations and exclusions, and they shall not apply to the extent such limitations or exclusions are not allowed by applicable state law.

Lessee has received and examined the Equipment, which is in good operating order and condition and is as described above.  Lessee acknowledges receipt of a copy of this Agreement.  Lessee agrees to lease the Equipment described above and based on the terms of this Agreement.  The parties intend that this agreement: (a) creates a "Lease" under Section 1-203 of the Uniform Commercial Code ("UCC"); (b) is a "Lease" as defined in Section 2A-103(1)(j) of the UCC and (c) satisfies every element under Section 2A-103(1)(g) of the UCC.

Lessee acknowledges responsibility for paying all taxes related in any way to the Equipment. If Lessee is in possession of the Equipment on the personal property tax assessment date, Lessee is responsible for the entire year's assessment. Such amounts shall be included in the periodic invoices Lessee receives from Assignee. Lessee's failure to timely pay the entire invoice, including any portion related to taxes, shall create a default under the Lease.

NOTICE TO THE LESSEE:
1.  DO NOT SIGN THIS BEFORE YOU READ THE TERMS ON THE FIVE AGREEMENT PAGES (PLUS ANY ADDENDUMS), EVEN IF OTHERWISE ADVISED.
2.  DO NOT SIGN THIS IF IT CONTAINS ANY BLANK SPACES.
3.  YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN. KEEP IT TO PROTECT YOUR LEGAL RIGHTS.
4.  LESSEE REPRESENTS THAT THE EQUIPMENT IS NOT BEING LEASED FOR FAMILY, HOUSEHOLD OR PERSONAL USE.
ADDITIONAL PROVISIONS CONCERNING RIGHTS AND DUTIES OF THE PARTIES ON THE ADDITIONAL PAGES OF THIS AGREEMENT ARE A PART OF THIS AGREEMENT.

| X _(signature)_ | MILLENKAMP CATTLE, INC. | _(signature)_ | 10-31-2020 |
|---|---|---|---|
| Signature of Lessee/Lessee's Representative | Printed Name | Title (not for an individual Lessee ) | Date |
| X | | | |
| Signature of Lessee/Lessee's Representative | Printed Name | Title (not for an individual Lessee ) | Date |

Dealer (herein "Assignor" or "Lessor") hereby assigns all of its rights, title and interest in and to this Agreement and the Equipment to CNH Industrial Capital America LLC (herein "Assignee"or "CNH Capital"), under terms also described in the Retail Finance Agreement, Program Procedures, Dealer Handbook or other related documents (collectively hereinafter the "RFA") executed by the Assignor and Assignee. Lessor has obtained a signed credit application for this Agreement. The Equipment has been paid in full to Dealer or will be paid in full with Agreement proceeds pursuant to the terms of the RFA. Assignor waives notice of acceptance of this Assignment and notice of non-payment and non-performance of this Agreement and any other notices required by law and waives any and all setoffs and counterclaims. The Assignment shall become effective upon delivery of this Agreement to Assignee or upon Assignee's payment of the lease price therefor, whichever occurs first.
Basis of Acceptance ☐ Nonrecourse ☐ Repurchase ☐ Full Recourse ☑ Other

Other explanation   See attached Lease Guarantee Addendum

| X _(signature)_ | BURKS TRACTOR COMPANY,INC. | 10-31-2020 |
|---|---|---|
| Signature of Lessor's Representative | Printed Lessor Name | Date |

21009A    Rev 06/18 Previous editions may not be used.

EXHIBIT 3 of 6


020069   / 2609637

**Agreement Provisions**

FX6000002366710210098A0209

1. **Assignment; Conditions to Lease.** Lessor hereby assigns this Agreement, and any related guarantee(s) ("Guarantee") (together collectively the "Assignment") to Assignee. Lessee acknowledges that Lessor has the right to assign this Agreement and such Guarantee, that all rights and benefits but no obligations (if any) of Lessor under this Agreement may be exercised by Assignee and that no obligations (if any) of Lessor pass to Assignee. Lessee shall make all payments due under this Agreement directly to Assignee. This Agreement shall be binding on and inure to the benefit of Lessee, Lessor and Assignee and their respective heirs, personal representatives, successors and assigns; provided, however, that Lessee may not assign its interest in the Equipment or its rights or obligations under this Agreement to any person without Assignee's prior written consent. LESSEE SHALL NOT ASSERT AGAINST CNH INDUSTRIAL CAPITAL AMERICA LLC ANY CLAIM OR DEFENSE WHICH LESSEE MAY HAVE AGAINST THE INITIAL LESSOR (I.E., THE ENTITY APPEARING IN THE TOP OF PAGE 1 OF THIS LEASE). Lessor and Assignee have no obligation to lease the Equipment to Lessee until they receive: (a) a fully executed Agreement; (b) evidence of insurance that complies with the requirements of Assignee; (c) such precautionary financing statements, or other documents, as Lessor deems necessary or appropriate to evidence and/or perfect Lessor's interest in the Equipment in accordance with the applicable UCC or other appropriate law; and (d) such other documents as they may reasonably request. Lessee hereby authorizes Assignee or its designee to execute and file any precautionary financing statements and other public notification documentation, and any amendments thereto describing the Equipment as Lessor deems necessary or appropriate. Lessee hereby irrevocably appoints Assignee or its designee as Lessee's agent and attorney-in-fact to sign such instruments on Lessee's behalf and to file them. CNH Capital may make UCC related filings and/or termination statements pursuant to this Agreement. CNH Capital reserves its right to assess additional fees and other charges to the Obligations including but not limited to, if fees and other charges increase or other actions are needed to protect its lien upon the Equipment.

2. **Title.** This Agreement is a true lease only (and not a conditional sale). Lessee does not have any right, title or interest in the Equipment, except, so long as no event of default has occurred and is continuing hereunder, the right to use it during the term hereof and, if so indicated, the option to purchase it as provided under this Agreement.

3. **Late Charges/Default Rate/Returned Checks.** Lessee shall pay a late charge on each payment not paid within 10 days after the due date at the highest amount, both as permitted by applicable law. Lessee shall pay interest on the unpaid balance after maturity (as scheduled, by acceleration or otherwise) and at the highest rate, as permitted by applicable law. If a check is returned for any reason, Assignee may charge Lessee a returned check processing fee as established by Lessor or Assignee from time to time not to exceed the maximum permitted under applicable law. Lessee may apply any payment or proceed received toward the Obligations, in its sole discretion regardless of how requested or directed. Lessee shall make all payments in lawful money of the United States of America. If any fees and/or other charges scheduled and/or assessed under any part of this Agreement exceed the maximum permitted by applicable law, any excess shall be applied toward a reduction of the principal balance and that shall be the sole and satisfactory remedy under this Agreement.

4. **Notification of Change in Residence, Principal Office, or Organizational Form.** If Lessee changes (as applicable): (a) its state of principal residence; or (b) the state in which its chief executive office is located; or (c) the state in which it is organized; or (d) its form of organization (such as from an individual to a corporation); or (e) its name, as printed on a State filed registration document or individual name, as printed on a valid driver's license, then Lessee will notify Assignee in writing promptly, but in no event more than 30 days after such change.

5. **Waiver of Defenses; Indemnification.** Lessee shall not assert against Assignee any claim or defense which Lessee might have against Lessor, the manufacturer of the Equipment or any other person. Lessee agrees that its obligation to remit payments will not be subject to, and it will not make any claim against Assignee for breach of any representation, warranty or condition with respect to the Equipment and that its obligation to pay Assignee amounts under this Lease is absolute and unconditional without abatement, reduction, set-off, counterclaim or interruption for any reason whatsoever, including any dispute which now or hereafter arises between Lessee and Lessor or any other person. Time is of the essence. Lessee shall defend and indemnify Lessor and Assignee and its officers, directors, employees, affiliates and agents from and against any damage, loss, theft or destruction of the Equipment or any part thereof, and from and/or connected with this Lease, the use, condition (including without limitation, all defects whether or not discoverable by Lessee or Lessor) or operation of the Equipment or any part thereof. Lessee shall promptly notify Assignee of any loss, damage, theft, destruction, injury, claim, demand, cost or expense related to this Lease or the Equipment. Lessee shall also defend and indemnify Lessor and Assignee and its officers, directors, employees, affiliates and agents from and against all claims, losses and out-of-pocket costs (including attorneys' fees) arising out of: (a) the use (by Lessee, sublessee or any other party) or condition of the Equipment; (b) default by Lessee under the Lease; or (c) the repossession of the Equipment, after default by the Lessee, by the Lessor or the Assignee. TO THE EXTENT PERMITTED BY APPLICABLE LAW, LESSEE HEREBY WAIVES ANY AND ALL RIGHTS AND REMEDIES CONFERED UPON A LESSEE UNDER ARTICLE 2A OF THE UCC AND ANY RIGHTS NOW OR HEREAFTER CONFERED BY ANY OTHER STATUTE OR OTHERWISE, WHICH MAY LIMIT OR MODIFY ANY OF LESSOR'S RIGHTS OR REMEDIES.

6. **Lessee's Covenants.** Lessee shall: (a) keep the Equipment at the Equipment Location listed on page 1 of this Agreement and not remove the Equipment from such locations, except temporarily in connection with its ordinary use or repair, unless Assignee consents in writing; (b) maintain the Equipment in good condition and repair and not permit its intended function or value to be impaired and Lessee will make sure that the manufacturer's warranty remains valid. Lessee will pay all the costs of performing these obligations; (c) keep the Equipment free of all liens, encumbrances and security interests of all persons other than Lessor and Assignee; (d) defend the Equipment against all claims and legal proceedings by persons other than Assignee; (e) pay and discharge when due all taxes, fees, levies and other charges upon the Equipment (including all personal property and ad valorem taxes); (f) pay when due all taxes arising from the purchase of the Equipment under this Agreement, excluding any taxes based upon Lessor's net income; (g) use the Equipment solely in the conduct of Lessee's business; (h) ensure the Equipment will be used solely within the intended uses of the manufacturer; (i) not sell, lease or otherwise dispose of the Equipment nor permit the Equipment to become an accession to other goods or a fixture; (j) not permit the Equipment to be used in violation of any law, regulation or policy of insurance; (k) strictly follow the terms on page 1 of this Agreement; (l) perform (at Lessee's expense) all maintenance and repairs necessary to keep the Equipment in as good a condition as when delivered to Lessee, reasonable wear excepted; (m) not permit the Equipment to be used by, or to be in the possession of, anyone other than Lessee or Lessee's employees; and (n) timely pay the nonrefundable Obligations from the Beginning Date through the term on the Lease, as set forth on page 1. Lessee represents and warrants that: (i) each individual executing this Agreement authorized by or on behalf of Lessee has the requisite power and authority to execute this Agreement and all related documents; (ii) Lessee is fully authorized to perform its obligations and consummate the transactions contemplated under this Agreement and related documents the execution and delivery of this Agreement and all related documents; (iii) the execution and delivery of this Agreement and all related documents and the consummation of the transactions under this Agreement have been duly authorized by Lessee; and (iv) this Agreement and all related documents constitute valid and legally binding obligations of Lessee, enforceable against Lessee in accordance with their respective terms.

7. **Insurance.** Lessee shall keep Assignee's interests in the Equipment insured against fire, theft, physical damage and other hazards under policies listing Assignee as Lender's loss payee, with such provisions, for such amounts (but not less than the Termination Value, under this Agreement) and by such insurers and terms as shall be satisfactory to Assignee from time to time, and shall furnish to Assignee evidence of such insurance satisfactory to Assignee. Such insurance shall provide at least 30 days' written notice of cancellation, lapse or expiration to Assignee. Lessee assigns (and directs any insurer to pay) to Assignee Lessee's interest in the proceeds of any and all insurance related to the Equipment and any premium refund, and Assignee may, at its option, apply such proceeds and refunds to any unpaid balance of the Obligations, whether or not due, and/or to repair or restore the Equipment. Lessee must make all payments due under this Agreement whether or not the Equipment is insured or underinsured. Assignee is authorized, in the name of Lessee or otherwise, to make, adjust and/or settle claims under any insurance on the Equipment, or cancel the same after the occurrence of an event of default, or set off amounts owed Assignee against any rebates, credits or refunds due Lessee and/or any guarantor. If Lessee purchased physical damage insurance that is financed under this Agreement, Lessee hereby requests and authorizes Lessor (provided Lessor is properly licensed to do so) or its designee: (a) to arrange physical damage insurance for the benefit of Lessor or Assignee and Lessee that covers physical damage to the Equipment; (b) to replace or otherwise modify such insurance as Lessor deems appropriate; and (c) to be Lessee's attorney-in-fact to make claim for, receive payment of and execute, endorse and negotiate all documents, checks or drafts received in payment of loss, damage or premium refunds under any insurance. This Agreement includes and hereby incorporates by reference any Insurance Addendum signed in connection with this Agreement. STATEMENT TO LESSEE: THE PHYSICAL DAMAGE INSURANCE PURCHASED UNDER THE TERMS OF THIS AGREEMENT COVERS ONLY LOSS OF OR DAMAGE TO THE EQUIPMENT. LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED AS PART OF THE PHYSICAL DAMAGE INSURANCE. LESSEE UNDERSTANDS THAT IF INSURANCE IS FINANCED UNDER THIS AGREEMENT, PREPAYMENT OF LESSEE'S OBLIGATIONS OR TERMINATION OF THIS AGREEMENT WILL RESULT IN CANCELLATION OF INSURANCE COVERAGE, UNLESS OTHERWISE EXPLICITLY AGREED TO IN WRITING BY ASSIGNEE.

EXHIBIT 3 of 6




020069   / 2609637

**Agreement Provisions**

FX600000236671021009A0309

8.  **Liability Insurance.**  Lessee shall obtain and maintain, liability insurance from a carrier acceptable to Assignee in such form and subject to such limits as Assignee may reasonably require protecting the interests of Lessee and Assignee against claims for damages or injuries to persons or property caused by the use, condition, holding or operation of the Equipment.  Lessor shall ensure that Lessee has liability insurance in place before the lease commences, having minimum coverage of at least $1,000,000.00 total liability per occurrence, with CNH Industrial Capital America LLC named as additional insured.

9.  **Modifications and Waivers.**  This Agreement sets forth the entire understanding among Lessor, Assignee and Lessee. No modification, amendment or extension of this Agreement and no waiver of any provision of this Agreement shall be valid unless in writing and signed by the parties and a waiver of any default hereunder by Assignee shall not constitute a waiver of any other prior or subsequent default, except that Lessee authorizes Assignee to insert in this Agreement the serial number/PIN and/or model number of any Equipment if this information is unknown when this Agreement is executed or to correct any errors in such numbers or any other patent errors in the description of the Equipment.

10.  **Taxes.**  Lessee agrees to pay all taxes (or reimburse Assignee for any taxes) imposed by any government, political subdivision or taxing authority upon or with respect to: (a) the purchase, ownership, possession, acceptance, relocation, repair, lease, return, sale or use of the Equipment; (b) the Lease Payments or any other payment required under this Agreement; or (c) any of the transactions contemplated by this Agreement. The term "taxes" shall mean any and all fees (including, without limitation, license, documentation, recording and registration fees), taxes (including, without limitation, gross receipts, sales, lease, use, value added, goods and services, property [tangible and intangible], excise and stamp taxes), licenses, levies, duties, assessments or withholdings of any nature whatsoever (together with any and all penalties, fines, additions to tax and interest thereon), except all taxes on or measured by Assignee's net income.

11.  **Tax Representations and Indemnification.**  As the owner, Assignee shall be entitled to claim all items of deduction, including depreciation, on the Equipment that are consistent with ownership for tax purposes (the "Tax Benefits"). Lessee will not take or omit to take any action which would cause this Agreement not to be treated as a true lease for U.S. federal tax purposes. If Assignee loses the right to claim or is not entitled to claim all or any portion of the Tax Benefits, or if all or any of the Tax Benefits claimed by Lessor are disallowed, recaptured, reduced, or eliminated, or if Assignee originally contemplated after-tax return is adversely affected (a "Loss of Tax Benefits") as a result of: (a) the inaccuracy or falsity of any representation or warranty made by Lessee in this Agreement; (b) Lessee's breach of or failure to perform any covenant or agreement hereunder; or (c) any other act or omission by Lessee, then Lessee shall pay Assignee such amount as shall, in Assignee's reasonable opinion, cause Assignee to receive over the full term of this Agreement the same after-tax return that Assignee would have realized if there had not been a Loss of Tax Benefits (the "Original Net Economic Return"). If, as a result of any change in U.S. federal and/or applicable state income tax law enacted after the date of this Agreement, Lessor shall have a Loss of Tax Benefits, Lessee shall pay Assignee, upon Assignee's request, that amount which will provide Assignee the Original Net Economic Return. Any amounts due hereunder shall be payable at Assignee's election either as supplemental Lease Payments during the remaining term of this Agreement or as a lump sum payable on demand. Neither Lessor, Assignee nor Lessee makes any representation to the other concerning the proper treatment of this Agreement for tax purposes by either party.

12.  **Authority of Assignee to Perform for Lessee.**  If Lessee fails to perform any of Lessee's duties set forth in this Agreement (including, without limitation, the purchase of insurance), Assignee may at its option, in Lessee's name or otherwise, take any such action, including, without limitation, signing Lessee's name or paying any amount so required, and all costs and expenses incurred by Assignee in connection therewith shall form part of the Obligations and shall be payable by Lessee upon demand with interest from the date of payment by Assignee at the highest rate permitted by applicable law.

13.  **Default/Cross Default.**  Lessee shall be in default under this Agreement, and any other agreement with or assigned to Assignee, if any of the following occurs (each, an "event of default"): (a) Lessee fails to pay when due any of the Obligations, or to perform any covenant or other obligation of Lessee under this Agreement or any other agreement with or assigned to Assignee; (b) Lessee or any guarantor dies, ceases to exist, becomes insolvent or the subject of bankruptcy, insolvency or liquidation proceedings, attempts to or does assign this Agreement or attempts to or does remove, sell, transfer, further encumber, part with possession of or sublet any Equipment; (c) any warranty or representation made by Lessee or any guarantor to induce Lessor or Assignee to extend credit to Lessee, under this Agreement or otherwise, is false in any material respect when made; (d) Lessee fails to maintain insurance required hereunder or fails to comply with the requirements of any such insurance; (e) any other event occurs that causes Assignee, in good faith, to consider that payment or performance of the Obligations is impaired or that the Equipment is at risk; (f) the Equipment is impounded or confiscated by any federal, state, local governmental authority or third party; (g) Lessee fails to produce Equipment for inspection within 10 days, upon demand; or (h) Lessee breaches any of the other terms of this Agreement or any other agreement with or assigned to Assignee.

14.  **Expenses.**  To the extent not prohibited by law, Lessee shall reimburse Lessor or Assignee for any expense incurred by Lessor or Assignee in protecting, defending or enforcing their rights under this Agreement, including, without limitation, reasonable attorneys' fees and legal expenses and all expenses of taking possession, transporting, holding, repairing, refurbishing, preparing for disposition and disposing of the Equipment, and all expenses and costs incurred in collecting the Obligations, including collection agency fees based on a maximum of 25% of the Obligations, and all shall be part of the Obligations.

15.  **Remedies.**  If Lessee is in default, Assignee may terminate this Agreement and/or exercise all other rights and remedies provided by law and by this Agreement, and Lessee will lose all rights to keep the Equipment. Assignee will have the right to take the Equipment, without notice or hearing, and, Lessee or any guarantor also expressly waives any right to notice or a prior hearing or to require Assignee to post any bond. To take it, Lessee consents that Assignee may enter the premises where the Equipment is stored and remove it. Assignee may take any property contained within the Equipment at the time of repossession and hold it for Lessee. Neither the termination of this Agreement nor the repossession of the Equipment by Assignee shall release Lessee from its Obligations under this Agreement. Lessee agrees that Assignee may sell the Equipment (including at wholesale), re-lease it or otherwise dispose of it in a commercially reasonable manner. Lessee agrees to pay Assignee, as liquidated damages for loss of bargain and not as a penalty, an amount equal to: (a) the Termination Value (as hereinafter defined); plus (b) a processing fee ("Processing Fee") equal to the lower of $500.00 or the maximum amount permitted by applicable law. The net proceeds of the disposition of the Equipment by sale or re-lease for the remaining term of lease under this Agreement, shall reduce the Lessee's Obligations pursuant to the preceding sentence. Any costs to Lessor and/or Assignee arising from repossessing the Equipment and/or selling the Equipment and/or re-leasing the Equipment for the remaining term of lease under this Agreement, including, without limitation, reasonable legal fees and costs, shall increase the Lessee's Obligations pursuant to the preceding sentences. Lessee shall remain liable for any deficiency. All Lessees and Guarantors consent to Assignee obtaining credit bureau reports upon them. Any surplus following any disposition of the Equipment shall belong to Assignee. All rights and remedies may be exercised by Assignee either separately or in combination and any action taken by Assignee to recover payment from Lessee of the Obligations shall not limit Assignee's rights with respect to the Equipment. Assignee can apply all proceeds or payments in its discretion.

16.  **Excessive Wear and Tear.**  All warranty and product improvement programs are to be completed prior to the Termination Date of the lease relating to the Equipment. For purposes of this Agreement, excessive wear and tear shall mean and include any of the following: (a.) Cab/Operator Platform. (a.1) Heavy interior soil or strong odor. (a.2) Unclean condition of the cab. (a.3) Holes, tears or burns on the dash, floor covers, seats, headliners, upholstery or interior. (a.4) Hour Meter: If the hour meter or dash has been tampered with, Assignee has the right to estimate excess hours plus any additional penalties deemed appropriate. (a.5) Seat and/or seat belts broken. (b.) Exterior. (b.1) Dents larger than 2" in diameter or excessive number of dents. (b.2) Scratches - Any excess scratches to the paint or any one individual scratch that exceeds 8" in length. (b.3) Chips - Any single chip the size of a quarter or larger or multiple smaller chips within 1 square foot. (b.4) Paint - Substandard paint, such as peeling, bubbling or mismatched shades that evidence poor condition in comparison with original paint. (b.5) Rust - Rust holes in the body metal or any rust spots. (b.6) Glass Damage - Any glass that must be replaced due to cracks or missing glass and any windshield damages. (b.7) Frame Damage - All frame damage and substandard frame repairs in addition to modifications made to the frame. (b.8) Blades, Buckets and Other Attachments - Any broken or cracked teeth on any attachments included with the Equipment. (b.9) Tires/Tracks - Any tires/tracks on returned Equipment that have any of the following: are in an unsafe condition, are not matching, non compatible and/or have excessive cuts/cracks/missing chunks or missing/damaged drive lugs, excessive stubble damage, have broken side walls, are not original casings, have improper ballasting, have less than 50% of original tread remaining, or are not of the same size, type, grade or manufacturer (or equivalent-quality manufacturer) as were originally included on the Equipment, then Lessee will be required to pay for the cost of a new tire/track if the above conditions are not met. (b.10) Unclean exterior requiring but not limited to steam cleaning. (b.11) Broken or inoperable lights. (b.12) Any Mirror damage. (b.13) Bent or broken steps. (b.14) Dented or bent wheel rims. (c.) Mechanical. (c.1) Mechanical - Mechanical components that are missing, broken or unsafe or that do not operate normally. The battery will need to be replaced if the battery is dead upon the delivery of the unit at lease end. (c.2) Equipment - Computer and precision farming/guidance systems or safety or emission control equipment not in proper working order. (c.3) Brakes - Brake drums that are cracked or exceed manufacturer's recommended wear limits, brake linings showing less than 50% remaining wear, or brakes that leak oil or fluid. (c.4) Power Train - Wear on power train assembly that exceeds manufacturer's then-current standards for normal wear (as shown by oil sample analysis). (c.5) Undercarriage - Leaky lubrication seals, improperly tightened/aligned track tension, cracked or broken track shoes or fasteners or drive/idler/roller/bogie wheels, less than 50% of original life remaining on any parts, or any undercarriage components not being of the original size, type, grade or manufacturer. (c.6) Combine threshing components - with less than 50% of original life remaining on any parts. (c.7) Hydraulic System - Any pumps, motors, valves or cylinders not in good operating condition or that fail to meet manufacturer's rated specifications, or hydraulic system exceeds manufacturer's then-current contaminant standards (as shown by oil sample analysis).

EXHIBIT 3 of 6



020069 / 2609637

**Agreement Provisions**

FX0000023667102100 9A0409

(c.8) Air Filters - Any filters not within manufacturer's specifications. (c.9) Electrical System - Any gauges or fluid indicators that are damaged or do not function, an alternator that fails to operate properly, a battery that fails to hold a charge, or any wire harnesses that are not tied down and kept secure, dry, clean and dust-free. (c.10) Leaks - Any general lubricant, engine coolant, water or A/C leaks that cost in excess of $100 to repair including labor. (c.11) Mufflers/Exhaust Pipes burnt out. (c.12) Damaged or Inoperable horn. (d.) General; Other. (d.1) General - Failure to operate and maintain the Equipment in accordance with the manufacturer's specifications, or use of components, fuels or fluids on or in connection with the Equipment that do not meet manufacturer's standards. (d.2) Other - Any other damage or repair including but not limited to unlawful or unsafe operating conditions, or that make the Equipment either unlawful or unsafe to operate. (d.3) Any missing accessories or attachments. Upon any return of the Equipment, we shall, in our sole discretion, determine the existence of any Excessive Wear and Tear. All repair estimates will be based upon applicable Lessor rates or, if Lessor is unable to estimate and repair such excessive wear and tear, then at rates applicable to another outlet as reasonably selected by Lessor. Your failure to pay the invoiced wear and tear charges and/or to instead, make the required repair at an authorized dealer within 10 days of demand, shall constitute a default under the Agreement.

17.  **Alterations/Repairs.** Lessee will not, without Assignee's prior written consent, affix or install any accessories or attachments to the Equipment nor change it so that it cannot be used by similarly situated lessees. Any improvements, replacements, additions, accessories, or repair parts to the Equipment shall become Assignee's property, free of all liens and encumbrances, and shall be deemed part of the Equipment. The Equipment is, and shall be, personal property, even if it or any part of it becomes affixed or attached to real property or any improvement to real property.

18.  **Security Deposit.** The Security Deposit may be applied to any amounts that Lessee fails to pay under this Agreement, including but not limited to damages to the Equipment in Assignment. Lessor will assign this Agreement to CNH Industrial Capital America LLC (herein "Assignee" or "CNH Capital"). Lessee acknowledges that Lessor has the right to assign this Agreement and that all rights and benefits but no obligations (if any) of Lessor under this Agreement may be exercised by any such Assignee and that no obligations (if any) of Lessor pass to Assignee. Upon receipt of notice from Assignee with instructions for payment, Lessee shall make all payments due under this Agreement directly to Assignee. This Agreement shall be binding on and inure to the benefit of Lessee and Lessor and their respective heirs, personal representatives, successors or assigns; provided, however, that Lessee may not assign its obligations under this Agreement to any person without Assignee's prior written consent.

19.  **Risk of Loss.** All risk of loss, theft or damage to the Equipment is assumed by the Lessee, until the Equipment is returned to the Lessor. If the Equipment can be repaired for a cost less than its fair market value, Lessee will repair the Equipment at Lessee's sole expense but damage to the Equipment shall not release Lessee from the Obligations. If the Equipment cannot be so repaired, or is lost, stolen or destroyed, Lessee shall at Assignee's option and written consent either: (a) replace the Equipment at Lessee's sole expense with equivalent equipment of equal or greater value, as determined in the sole discretion of and with the consent of the Assignee and transfer clear title to such replacement equipment to Assignee, whereupon such replacement equipment shall be deemed the Equipment for all purposes of this Agreement; or (b) pay Assignee the Termination Value. Upon payment of the requisite Termination Value, Lessee shall be entitled to retain possession of the affected unit(s) of Equipment. Assignee may, at Assignee's sole option, apply proceeds of insurance, in whole or in part, to repair or comparably replace the Equipment or to satisfy such Termination Value or any of Lessee's Obligations pursuant to this Agreement. The "Termination Value" shall be an amount equal to: (a) any past due, unpaid Lease Payments and any late charges related thereto; plus (b) all remaining Lease Payments hereunder, less any future interest payments embedded therein; plus (c) (i) the Purchase Option Price, or (ii) if no purchase option is granted, the estimated residual value used to calculate the Lease Payments by Assignee; plus (d) any other costs to Lessor and/or Assignee arising from the loss, theft, wear and tear, or damage to the Equipment or from the collection of any amount due under this Lease. In no event shall the Termination Value exceed the maximum amount permitted by applicable law.

20.  **Purchase Option.** So long as no default exists under this Lease and it has not been earlier terminated, Lessee may on the Termination Date, upon at least 90 days, but not more than 180 days, prior written notice to Assignee, purchase all (but not less than all) of the Equipment: (a) if stated dollar amount is provided as the Purchase Option Price, then for that amount together with all applicable taxes and other charges due in connection with such sale and all other amounts due and unpaid under this Lease; or (b) if no Purchase Option Price is identified, then at the fair market value, as determined at Assignee's sole discretion, at the time the Purchase Option is exercised, together with all applicable taxes and other charges due in connection with such sale and all other amounts due and unpaid under this Lease. Lessee's purchase of the Equipment shall be on an AS-IS, WHERE-IS BASIS.

21.  **EARLY RETURN.** IF LESSEE RETURNS THE EQUIPMENT PRIOR TO THE TERMINATION DATE, LESSEE SHALL BE OBLIGATED TO IMMEDIATELY PAY TO LESSOR AN EARLY TERMINATION FEE EQUAL TO 1.0% OF: (A) IF A STATED DOLLAR AMOUNT IS PROVIDED AS THE PURCHASE OPTION PRICE, THEN FOR THAT AMOUNT, TOGETHER WITH ALL UNPAID LEASE PAYMENTS, REMAINING LEASE PAYMENTS, PLUS SEPARATELY, ANY AND ALL OTHER AMOUNTS PROVIDED FOR UNDER THIS LEASE; OR (B) IF NO PURCHASE OPTION PRICE IS IDENTIFIED OR IS STATED AS FMV, THE ESTIMATED RESIDUAL VALUE OF THE EQUIPMENT USED TO CALCULATE THE LEASE PAYMENTS DUE UNDER THE LEASE AS DETERMINED BY ASSIGNEE TOGETHER WITH ALL UNPAID LEASE PAYMENTS, REMAINING LEASE PAYMENTS, AND ALL OTHER AMOUNTS PROVIDED FOR UNDER THIS LEASE. THIS FEE IS IN ADDITION TO THE OTHER OBLIGATIONS OWED BY THE LESSEE TO THE ASSIGNEE.

22.  **Return.** If Lessee does not exercise the purchase option (if any) as provided in this Lease, Lessee shall on the Termination Date or such earlier date of termination of this Lease: (a) at its expense, deliver the Equipment to a location designated by Assignee; (b) pay $400.00 per serial numbered unit to the Lessor as a return fee; and (c) pay all charges incurred by Lessor to repair any excessive wear and tear and for any hours in excess of the Maximum Annual Usage at the Excess Usage Rate. The risk of loss of the Equipment shall remain with Lessee until Assignee accepts the Equipment by executing a written acceptance. Unless and until all the Equipment is returned and accepted, or is otherwise disposed of by written agreement between Assignee, and Lessee, and until all other terms and conditions have been met, the term of the Lease with respect to such Equipment shall continue. This fee is in addition to the other Obligations owed by the Lessee to the Assignee.

23.  **Failure to Return Equipment.** If Lessee does not exercise its option, if any, to purchase the Equipment in accordance with this Agreement and fails to return the Equipment at the termination of this Agreement, due to default or otherwise, then, in addition to any other amounts that may be due to Assignee under this Agreement or under applicable law, Lessee will be liable for a daily amount computed on the basis of the scheduled Lease Payment, if unequal, the highest lease payment will be used.

24.  **Conflict with Law.** Any provision of this Agreement prohibited by applicable law shall be ineffective to the extent of the prohibition without invalidating the remaining portions of this Agreement. The validity, construction and enforcement of this Agreement shall be governed by the laws of the State of the Lessor (without regard to conflict of law principles of such State). All terms not otherwise defined have the meanings assigned to them by the UCC.

25.  **Miscellaneous.** In the event that this contract is determined by a court of competent jurisdiction to be characterized as a loan or forbearance agreement, and not a lease, despite the terms and conditions found in this contract, then all parties agree that any interest charges computed and assessed in this contract that are in excess of the maximum allowed interest charges allowed by law shall be applied as a reduction to the principal balance owed on this contract only, and this shall be the agreed upon and satisfactory remedy to all parties. By providing any address, email address or telephone number, including a mobile phone number, either now or in the future to Lessor, Assignee, any of Assignee's affiliates or any debt collectors retained by Assignee, Lessee agrees that any of the above may contact Lessee using that address or number, including contact through calls or texts using an automatic dialing and announcing device and prerecorded calls, and that such calls are not "unsolicited" under state or federal law. Any attempted revocation of this consent to contact, if allowable by law, must be made in writing. Lessee acknowledges and agrees that CNH Capital and its third party service providers can access and use telematics data and other information regarding location, maintenance and operation of the Equipment for any lawful purpose, including without limitation, to locate and repossess the Equipment. See https://www.cnhindustrialcapital.com/en_us/Pages/Privacy.aspx for additional details. If a court finds that any part of this Agreement to be invalid or unenforceable, the remainder of this Agreement will remain in effect. All of Assignee's rights shall remain in effect after the expiration or termination of this Agreement. If more than one Lessee is named in the Agreement, the liability of each shall be joint and several. All notices required or permitted hereunder shall be in writing and shall be deemed adequate if sent to the first Lessee on the Lease and at its address noted herein or to such other address as such party may have specified in writing by notice as prescribed in this Agreement. The captions and headings of the sections of this Agreement are for convenience only and are not to be used to interpret or define the provisions hereof. Restrictive endorsements on checks or other forms of payment that Lessee sends to Assignee will not change or reduce Lessee's obligations to Assignee. Assignee will not lose any rights if Assignee accepts late or partial payments or delays enforcing its rights under this Agreement. For combine leases, the hours used will be based on separator hours rather than engine hours.

26.  **WAIVER OF JURY TRIAL.** EXCEPT IN GEORGIA OR CALIFORNIA OR WHERE OTHERWISE PROHIBITED BY LAW, EACH LESSEE, LESSOR AND CNH CAPITAL WAIVE ANY AND ALL RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING RELATING TO THE OBLIGATIONS, THIS AGREEMENT, OR ANY OTHER DOCUMENT CONNECTED HEREWITH, OR ANY TRANSACTION ARISING FROM OR CONNECTED TO ANY OF THE FOREGOING. EACH LESSEE, LESSOR AND CNH CAPITAL REPRESENT THAT THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY GIVEN.

**EXHIBIT 3 of 6**





020069    / 2609637

Agreement Provisions

27. **Additional Waivers.** To the extent permitted by applicable law, Lessee hereby waives any and all rights and remedies conferred upon a Lessee by Sections 2A-508 through 2A-522 of the UCC, including, without limitation, Lessee's rights to: (a) cancel any Lease; (b) repudiate any Lease; (c) reject any Equipment; (d) revoke acceptance of any Equipment; (e) recover damages from Lessor for any breaches of warranty or for any other reason; (f) a security interest in the Equipment in Lessee's possession or control for any reason; (g) deduct from amounts owed all or any part of any claimed damages resulting from Lessor's default, if any, under any Lease; (h) accept partial delivery of the Equipment; (i) "cover" by making any purchase or lease of or contract to purchase or lease Equipment in substitution for those due from Lessor; (j) recover any general, special, incidental or consequential damages for any reason whatsoever; and (k) specific performance, replevin, detinue, sequestration, claim and delivery or the like for any Equipment identified in any Lease. To the extent permitted by applicable law, Lessee also hereby waives any rights now or hereafter conferred by statute or otherwise which may require Lessor to sell, lease or otherwise use any Equipment in mitigation of Lessor's damages as set forth in Section 15 or which may otherwise limit or modify any of Lessor's rights or remedies under Section 15.

28. **Electronic Contracting, Signature Acknowledgment, Future Notices.** Lessee agrees that (i) this Agreement is an electronic agreement executed by Lessee using Lessee's electronic signature or that Assignee may convert this Agreement into an electronic agreement; (ii) Lessee's electronic signature signifies Lessee's intent to enter into this Agreement and that this Agreement shall be a legally valid and enforceable Agreement in accordance with its terms to the same extent as if Lessee had executed this Agreement using Lessee's written signature and (iii) the authorative copy of this Agreement ("Authoritative Copy") shall be that electronic copy that resides in a document management system designated by Assignee for the storage and authoritative copies of electronic records, which shall be deemed held by us in the ordinary course of business. Notwithstanding the forgoing, if the Authorative Copy is converted by printing a paper copy which is marked by Assignee as the original (the "Paper Copy", then Lessee acknowledges and agrees that (1) your signing of this Agreement with your electronic signature also constitutes issuance and delivery of such Paper Contract, (2) your electronic signature associated with this Agreement, when affixed to the Paper Contract, constitutes your legally valid and binding signature on the Paper Contract and (3) subsequent to such conversion, Lessee's duties and Obligations will be evidenced by the Paper Contract alone. By providing your e-mail address and electing to execute this Agreement electronically, Lessee agrees that all future notices, statements and communications relating to this Agreement shall be delivered to the Lessee via e-mail transmission to the e-mail address provided to Assignee by the Lessee. It is the Lessee's duty to provide any changes to Lessee's e-mail address to Assignee so that future communications can reach Lessee in a timely manner.

EXHIBIT 3 of 6



020069   / 2609637

FX0000002 366 71023143A0609

# MULTIPLE UNIT ADDENDUM

This Multiple Unit Addendum is hereby incorporated into the Lease Agreement dated    October 31    2020

with Lessor    BURKS TRACTOR COMPANY,INC.    herein the ("Agreement"), and this addendum equipment list is made a part of the
Equipment, as defined in the Agreement. Lessee acknowledges receipt of this Multiple Unit Addendum at the time it is executed, along with a copy of the
Agreement and all its pages.

| # | New or Used | Equipment Description | Model | Serial Number/PIN | Hours | Maximum Annual Usage | Excess Usage Rate | Cash Price |
|---|---|---|---|---|---|---|---|---|
| 1 | NEW | Case IH Magnum | 250 | JJAMG250LLRK02821 | 25.0 | 900 | 50 | N/A |
| 2 | NEW | Case IH Magnum | 250 | JJAMG250LLRK02785 | 25.0 | 900 | 50 | N/A |
| 3 | NEW | Case IH Magnum | 250 | JJAMG250ALRK02770 | 25.0 | 900 | 50 | N/A |
| 4 | NEW | Case IH Magnum | 250 | JJAMG250CLRK02855 | 25.0 | 900 | 50 | N/A |
| 5 | NEW | Case IH Magnum | 250 | JJAMG250PLRK02809 | 25.0 | 900 | 50 | N/A |
| 6 | NEW | Case IH Magnum | 250 | JJAMG250ELRK02790 | 25.0 | 900 | 50 | N/A |
| 7 | NEW | Case IH Magnum | 250 | JJAMG250LLRK02771 | 25.0 | 900 | 50 | N/A |
| 8 | NEW | Case IH Magnum | 250 | JJAMG250ALRK02820 | 25.0 | 900 | 50 | N/A |
| 9 | NEW | Case IH Magnum | 250 | JJAMG250KLRK02830 | 25.0 | 900 | 50 | N/A |
| 10 | NEW | Case IH Magnum | 250 | JJAMG250VLRK02816 | 25.0 | 900 | 50 | N/A |
| 11 | NEW | Case IH Magnum | 250 | JJAMG250LLRK02818 | 25.0 | 900 | 50 | N/A |
| 12 | NEW | Case IH Magnum | 250 | JJAMG250ALRK02834 | 25.0 | 900 | 50 | N/A |
| 13 | NEW | Case IH Magnum | 250 | JJAMG250CLRK02841 | 25.0 | 900 | 50 | N/A |
| 14 | NEW | Case IH Magnum | 250 | JJAMG250LLRK02804 | 25.0 | 900 | 50 | N/A |
| 15 | NEW | Case IH Magnum | 250 | JJAMG250CLRK02796 | 25.0 | 900 | 50 | N/A |

Executed this  31   day of October   2020   .

X

Signature of Lessee/Lessee's Representative    MILLENKAMP CATTLE, INC.    Member

    Printed Name    Title (not for an individual Lessee)

X

Signature of Lessor's Representative    BURKS TRACTOR COMPANY,INC.

    Printed Lessor Name

23143A   Rev 10/14 Previous editions may not be used.    Page 6 of 9

EXHIBIT 3 of 6





020069   / 2609637

## MULTIPLE UNIT ADDENDUM

This Multiple Unit Addendum is hereby incorporated into the Lease Agreement dated _____October 31_____, __2020___
with Lessor __BURKS TRACTOR COMPANY,INC._____ herein the ("Agreement"), and this addendum equipment list is made a part of the
Equipment, as defined in the Agreement. Lessee acknowledges receipt of this Multiple Unit Addendum at the time it is executed, along with a copy of the
Agreement and all its pages.

| # | New or Used | Equipment Description | Model | Serial Number/PIN | Hours | Maximum Annual Usage | Excess Usage Rate | Cash Price |
|---|---|---|---|---|---|---|---|---|
| 16 | NEW | Case IH Magnum | 250 | JJAMG250CLRK02791 | 25.0 | 900 | 50 | N/A |
| 17 | NEW | Case IH Magnum | 250 | JJAMG250ELRK02823 | 25.0 | 900 | 50 | N/A |
| 18 | NEW | Case IH Magnum | 250 | JJAMG250KLRK02844 | 25.0 | 900 | 50 | N/A |
| 19 | NEW | Case IH Magnum | 250 | JJAMG250ELRK02840 | 25.0 | 900 | 50 | N/A |
| 20 | NEW | Case IH Magnum | 250 | JJAMG250CLRK02788 | 25.0 | 900 | 50 | N/A |
| 21 | NEW | Case IH Magnum | 250 | JJAMG250TLRK04056 | 25.0 | 900 | 50 | N/A |
| 22 | NEW | Case IH Magnum | 250 | JJAMG250ALRK04017 | 25.0 | 900 | 50 | N/A |
| 23 | NEW | Case IH Magnum | 250 | JJAMG250TLRK04087 | 25.0 | 900 | 50 | N/A |
| 24 | NEW | Case IH Magnum | 250 | JJAMG250PLRK04060 | 25.0 | 900 | 50 | N/A |
| 25 | NEW | Case IH Magnum | 250 | JJAMG250ELRK04054 | 25.0 | 900 | 50 | N/A |
| 26 | NEW | Case IH Magnum | 250 | JJAMG250KLRK04075 | 25.0 | 900 | 50 | N/A |

Executed this 31 day of October _____, 2020 .

X _____   MILLENKAMP CATTLE, INC.          _____Manager_____
Signature of Lessee/Lessee's Representative   Printed Name                  Title (not for an individual Lessee)

X _____   BURKS TRACTOR COMPANY,INC.
Signature of Lessor's Representative   Printed Lessor Name

23143A   Rev 10/14 Previous editions may not be used.                          Page 7 of 9

EXHIBIT 3 of 6



CNH | CAPITAL
INDUSTRIAL

020069    / 2609637

FX000002366710231 40A0809

## PURCHASED PROTECTION PLAN ADDENDUM

This is the Purchased Protection Plan Addendum to that certain _____ Lease Agreement _____ dated
____October 31_____, ____2020____ between the Lessee and the Lessor for the Equipment identified therein (herein the "Agreement"), into which this Purchased Protection Plan Addendum is hereby incorporated. If the price of a Purchased Protection Plan is financed under the Agreement, Lessee understands that a portion of the price may be paid to Lessor, to Lessor's designee and to CNH Industrial Insurance Agency Inc. as an administrative or marketing fee. Assignee may deliver the Purchased Protection Plan price to Lessor and if Assignee does so, Lessor is solely responsible for remitting payment to the provider. Provider and Lessee agree that they shall not raise any claim, defense or setoff against Assignee if the Lessor fails to remit payment to the provider, unless prohibited by law.

The Purchased Protection Plan is recommended but is not required. The precise protection afforded is subject to the terms, conditions and exclusions of the contract as issued. Purchased Protection Plans are issued by an independent third party unrelated to CNH Industrial Capital America LLC. CNH Industrial Insurance Agency Inc. is a subsidiary of AmTrust North America, Inc.

Lessee requests Lessor/Assignee to attempt to obtain a Purchased Protection Plan from a third party provider and to include as part of the Rental Payments the price as shown for the term as shown or for the total machine hours stated in the Purchased Protection Plan contract, whichever occurs first, for the Equipment listed below.

*Where **NEW** plan is shown below the Total Months and Total Machine Hours selected on new equipment plans include the Manufacturer's Base Warranty Period.*

*Where **USED** plan is shown below the Months and Machine Hours selected commence on the used equipment Purchase Protection Plan contract effective date.*

| | PLAN | EQUIPMENT SERIAL/PIN | PRICE | TERM (MONTHS) | | PLAN | EQUIPMENT SERIAL/PIN | PRICE | TERM (MONTHS) |
|---|---|---|---|---|---|---|---|---|---|
| 1 | NEW | JJAMG250TLRK04056 | $7,145.00 | 48 | 14 | NEW | JJAMG250ALRK02770 | $7,145.00 | 48 |
| 2 | NEW | JJAMG250TLRK04087 | $7,145.00 | 48 | 15 | NEW | JJAMG250ALRK02820 | $7,145.00 | 48 |
| 3 | NEW | JJAMG250ALRK04017 | $7,145.00 | 48 | 16 | NEW | JJAMG250VLRK02816 | $7,145.00 | 48 |
| 4 | NEW | JJAMG250ELRK04054 | $7,145.00 | 48 | 17 | NEW | JJAMG250LLRK02818 | $7,145.00 | 48 |
| 5 | NEW | JJAMG250PLRK04060 | $7,145.00 | 48 | 18 | NEW | JJAMG250CLRK02841 | $7,145.00 | 48 |
| 6 | NEW | JJAMG250KLRK04075 | $7,145.00 | 48 | 19 | NEW | JJAMG250LLRK02804 | $7,145.00 | 48 |
| 7 | NEW | JJAMG250LLRK02821 | $7,145.00 | 48 | 20 | NEW | JJAMG250ALRK02834 | $7,145.00 | 48 |
| 8 | NEW | JJAMG250CLRK02791 | $7,145.00 | 48 | 21 | NEW | JJAMG250CLRK02796 | $7,145.00 | 48 |
| 9 | NEW | JJAMG250ELRK02823 | $7,145.00 | 48 | 22 | NEW | JJAMG250ELRK02840 | $7,145.00 | 48 |
| 10 | NEW | JJAMG250KLRK02844 | $7,145.00 | 48 | 23 | NEW | JJAMG250LLRK02785 | $7,145.00 | 48 |
| 11 | NEW | JJAMG250CLRK02788 | $7,145.00 | 48 | 24 | NEW | JJAMG250LLRK02771 | $7,145.00 | 48 |
| 12 | NEW | JJAMG250ELRK02790 | $7,145.00 | 48 | 25 | NEW | JJAMG250CLRK02855 | $7,145.00 | 48 |
| 13 | NEW | JJAMG250PLRK02809 | $7,145.00 | 48 | 26 | NEW | JJAMG250KLRK02830 | $7,145.00 | 48 |

Executed this ____ day of October ____, 2020 ____.

X _____    MILLENKAMP CATTLE, INC.    _____
Signature of Lessee/Lessee's Representative    Printed Name    Title (not for an individual Lessee)

23140A   Rev 10/14 Previous editions may not be used.    Page 8 of 9

EXHIBIT 3 of 6

CNH CAPITAL

020069 / 2609637

F%0000023667102313 9A0909

## GUARANTEE

In consideration of the extension of credit as referenced by the application number above, and to induce the Secured Party, as hereinafter defined, to extend credit on the agreement dated _____October 31_____ , ___2020___ , (herein "Agreement") to:

MILLENKAMP CATTLE, INC.

of 471 NORTH 300 WEST, JEROME, ID 83338-5078

(collectively the "Lessee"), and for other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, each of the executing parties below (collectively the "Guarantor", whether one or more) makes this guarantee ("Guarantee") in favor of the Secured Party.

1.  The Guarantor, pursuant to the terms of this Guarantee, unconditionally and irrevocably guarantees the payment, performance and complete fulfillment of all Obligations, as defined in the Agreement described above, of the Lessee to Secured Party, and any amendments or supplements thereto, whether heretofore or hereafter incurred, including any revisions, renewals, consolidations and extensions thereof, any of which may be made without notice to the Guarantor. Guarantor has received and reviewed a copy of the Agreement prior to executing this Guarantee.

2.  This Guarantee does not limit, modify or cancel any unlimited guarantee that may have been previously given by the Guarantor, if any.

3.  Notice of acceptance is waived (and, in Louisiana, all pleas of division and discussion are waived). Presentment, protest, demand, and notice of protest, demand and dishonor of any of the Obligations, and the exercise of possessory, collection or other remedies for the Obligations, are also hereby waived.

4.  Without further authorization from or notice to Guarantor, Secured Party, in its sole discretion, may renew, refinance, revise, settle, alter, compromise, accelerate, extend, consolidate or otherwise change the time or manner of payments of any of the Obligations or increase or reduce the rate of interest thereon; or add or release any one or more other Guarantors. No exercise or nonexercise by Secured Party of any right hereby given to it, no dealing by Secured Party with Lessee or any other Guarantor, and no change, impairment, or extension of any right or remedy of Secured Party shall in any way affect the Guarantor's liability hereunder or give Guarantor any recourse against Secured Party. Notice of default in any of the Obligations is expressly waived by Guarantor.

5.  With or without notice to Guarantor, and without affecting the liability of Guarantor hereunder, Secured Party may from time to time before, at, or after any default by Lessee, together or separately, (1) accept additional collateral for the Obligations, (2) accept other collateral in exchange or substitution for the collateral then securing the Obligations, (3) obtain a credit bureau report for any Guarantor, and/or (4) surrender or release any collateral securing the Obligations.

6.  This is a Guarantee of prompt payment and performance, and not of collection. Secured Party does not have to exercise or exhaust its rights against the Lessee (or any other person or entity obligated with respect to the Obligations) or enforce its rights against any collateral before a claim is made against Guarantor.

7.  It is the mutual intention of the parties hereto that the Guarantor shall be bound notwithstanding any claim or defense Lessee may have or raise, and Guarantor waives any defense Lessee may have. Guarantor agrees to pay reasonable attorneys' fees and all costs and other expenses incurred by Secured Party in collecting or compromising any of the Obligations or in enforcing this Guarantee against Guarantor.

8.  In the event that any payment by Lessee to Secured Party is held to constitute a preference under the bankruptcy laws, or if for any other reason the Secured Party is required to refund such payment or pay the amount thereof to any other person or party, such payment by Lessee to Secured Party shall not constitute a release of Guarantor from any liability hereunder, but Guarantor agrees to pay such amount to Secured Party on demand.

9.  "Secured Party" shall mean CNH Industrial Capital America LLC and CNH Industrial America LLC and all parent, subsidiary and affiliated corporations and all successors and assigns of any of the foregoing. This Guarantee shall bind the respective heirs, executors, administrators, successors, legal representatives and assigns of each Guarantor and shall inure to the benefit of any Secured Party.

10.  Each Guarantor shall be jointly and severally (and, in Louisiana, "in solido" with the Lessee) liable to Secured Party.

11.  EXCEPT IN GEORGIA OR CALIFORNIA OR WHERE OTHERWISE PROHIBITED BY LAW, EACH GUARANTOR WAIVES ANY AND ALL RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING RELATING TO THE OBLIGATIONS, THIS GUARANTEE, OR ANY OTHER DOCUMENT CONNECTED HEREWITH, OR ANY TRANSACTION ARISING FROM OR CONNECTED TO ANY OF THE FOREGOING. EACH GUARANTOR REPRESENTS THAT THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY GIVEN.

Executed this ___31___ day of ___October___ , ___2020___ .

X _____     WILLIAM J MILLENKAMP          Not Applicable
Signature of Guarantor/Guarantor Representative     Printed Name          Title (not for individual Guarantor)

23139A    Rev 10/14 Previous editions may not be used.          Page 9 of 9

EXHIBIT 3 of 6

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
CSC    1-800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**
SPRFiling@cscglobal.com

**C. SEND ACKNOWLEDGMENT TO:  (Name and Address)**

2010 75978
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: Idaho
(S.O.S.)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | MILLENKAMP CATTLE, INC. | | | |
|---|---|---|---|---|
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS 471 NORTH 300 WEST | CITY Jerome | STATE ID | POSTAL CODE 83338-5078 | COUNTRY USA |

**2. DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | CNH Industrial Capital America LLC | | | |
|---|---|---|---|---|
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS 5729 Washington Avenue | CITY Racine | STATE WI | POSTAL CODE 53406 | COUNTRY USA |

**4. COLLATERAL:** This financing statement covers the following collateral:

2020, Case IH, 250, Serial No.: JJAMG250LLRK02821, Magnum Tractor.
2020, Case IH, 250, Serial No.: JJAMG250LLRK02785, Magnum Tractor.
2020, Case IH, 250, Serial No.: JJAMG250KLRK02844, Magnum Tractor.
2020, Case IH, 250, Serial No.: JJAMG250ALRK02834, Magnum Tractor.
2020, Case IH, 250, Serial No.: JJAMG250CLRK02855, Magnum Tractor.
2020, Case IH, 250, Serial No.: JJAMG250PLRK02809, Magnum Tractor.
2020, Case IH, 250, Serial No.: JJAMG250ELRK02840, Magnum Tractor.
2020, Case IH, 250, Serial No.: JJAMG250ALRK02820, Magnum Tractor.
2020, Case IH, 250, Serial No.: JJAMG250KLRK02830, Magnum Tractor.
2020, Case IH, 250, Serial No.: JJAMG250LLRK02818, Magnum Tractor.
2020, Case IH, 250, Serial No.: JJAMG250LLRK02804, Magnum Tractor.
2020, Case IH, 250, Serial No.: JJAMG250CLRK02796, Magnum Tractor.

**5.** Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

| 6a. Check only if applicable and check only one box: | 6b. Check only if applicable and check only one box: |
|---|---|
| ☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien  ☐ Non-UCC Filing |

**7. ALTERNATIVE DESIGNATION (if applicable):** ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:**

2010 75978

EXHIBIT 3 of 6

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

## UCC FINANCING STATEMENT **ADDENDUM**

FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank
because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME
MILLENKAMP CATTLE, INC.

OR

9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name;
do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME

OR

10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

11. ☐ ADDITIONAL SECURED PARTY'S NAME  or  ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

11a. ORGANIZATION'S NAME

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):
2020, Case IH, 250, Serial No.: JJAMG250CLRK02791, Magnum Tractor.
2020, Case IH, 250, Serial No.: JJAMG250CLRK02788, Magnum Tractor. 2020, Case IH, 250, Serial No.:
JJAMG250LLRK02771, Magnum Tractor.
2020, Case IH, 250, Serial No.: JJAMG250ELRK02790, Magnum Tractor.
2020, Case IH, 250, Serial No.: JJAMG250ALRK02770, Magnum Tractor.
2020, Case IH, 250, Serial No.: JJAMG250VLRK02816, Magnum Tractor.

13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the
REAL ESTATE RECORDS  (if applicable)

14. This FINANCING STATEMENT:
☐ covers timber to be cut  ☐ covers as-extracted collateral  ☐ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16
(if Debtor does not have a record interest):

16. Description of real estate:

17. MISCELLANEOUS:

EXHIBIT 3 of 6

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

## UCC FINANCING STATEMENT **ADDENDUM**

FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR:  Same as line 1a or 1b on Financing Statement; if line 1b was left blank
because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME

MILLENKAMP CATTLE, INC.

OR

9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S)                                SUFFIX

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

10. DEBTOR'S NAME:  Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name;
do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME

OR

10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)                                SUFFIX

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

11. ☐ ADDITIONAL SECURED PARTY'S NAME  or  ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

11a. ORGANIZATION'S NAME

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):
2020, Case IH, 250, Serial No.: JJAMG250CLRK02841, Magnum Tractor.
2020, Case IH, 250, Serial No.: JJAMG250ELRK02823, Magnum Tractor.
2021, Case IH, 250, Serial No.: JJAMG250ELRK04054, Magnum Tractor.
2021, Case IH, 250, Serial No.: JJAMG250PLRK04060, Magnum Tractor.
2021, Case IH, 250, Serial No.: JJAMG250KLRK04075, Magnum Tractor.
2021, Case IH, 250, Serial No.: JJAMG250TLRK04056, Magnum Tractor.

13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the
REAL ESTATE RECORDS  (if applicable)

14. This FINANCING STATEMENT:
☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16
(if Debtor does not have a record interest):

16. Description of real estate:

17. MISCELLANEOUS:

**EXHIBIT 3 of 6**

**FILING OFFICE COPY** — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

## UCC FINANCING STATEMENT **ADDENDUM**

FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR:  Same as line 1a or 1b on Financing Statement; if line 1b was left blank
because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME

MILLENKAMP CATTLE, INC.

OR

9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

10. DEBTOR'S NAME:  Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME

OR

10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

11. ☐ ADDITIONAL SECURED PARTY'S NAME  or  ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

11a. ORGANIZATION'S NAME

OR

11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):
2021, Case IH, 250, Serial No.: JJAMG250ALRK04017, Magnum Tractor.
2021, Case IH, 250, Serial No.: JJAMG250TLRK04087, Magnum Tractor
THIS FINANCING STATEMENT IS BEING FILED SOLELY AS A PRECAUTION IF, CONTRARY TO THE INTENTION
OF THE PARTIES DESCRIBED ABOVE AS LESSEE AND LESSOR, THE TRANSACTION RELATING TO THE
PROPERTY DESCRIBED HEREIN IS DEEMED TO BE A SECURITY AGREEMENT RATHER THAN A LEASE WITHIN
THE MEANING OF 1-201 (37) OF THE UNIFORM COMMERICAL CODE..

13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS  (if applicable)

14. This FINANCING STATEMENT:
☐ covers timber to be cut  ☐ covers as-extracted collateral  ☐ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

16. Description of real estate:

17. MISCELLANEOUS:

EXHIBIT 3 of 6

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)





20201609850



**STATE OF IDAHO**
*Office of the secretary of state, Lawerence Denney*
**UCC1 FINANCING STATEMENT**
Idaho Secretary of State
PO Box 83720
Boise, ID 83720-0080
(208) 334-2301
Filing Fee - $3 submitted online, $6 print & mail or $12 if 3 or more pages.
Make checks payable to Secretary of State.

| Contact at Filer: | |
|---|---|
| Contact Name | CORPORATION SERVICE COMPANY |
| Contact Phone | 800-858-5294 |
| Contact Email | FilingDept@cscinfo.com |

| Send acknowledgment to: | |
|---|---|
| Name | CORPORATION SERVICE COMPANY |
| Address | 801 ADLAI STEVENSON DR
SPRINGFIELD, IL 62703 |

Debtors:

| DEBTOR'S NAME | MAILING ADDRESS |
|---|---|
| MILLENKAMP CATTLE, INC. | 471 NORTH 300 WEST
JEROME, ID 83338-5078 |

Secured Parties:

| SECURED PARTY'S NAME | MAILING ADDRESS |
|---|---|
| CNH INDUSTRIAL CAPITAL AMERICA LLC | 5729 WASHINGTON AVENUE
RACINE, WI 53406 |

Collateral:

EXHIBIT 3 of 6

B0547-3099 10/31/2020 9:08 AM Received by ID Secretary of State Lawerence Denney

B0547-3100 10/31/2020 9:08 AM Received by ID Secretary of State Lawerence Denney

| The financing statement covers the following collateral: | 2020, Case IH, 250, Serial No.: JJAMG250LLRK02821, Magnum Tractor. |
|---|---|
| | 2020, Case IH, 250, Serial No.: JJAMG250LLRK02785, Magnum Tractor. |
| | 2020, Case IH, 250, Serial No.: JJAMG250KLRK02844, Magnum Tractor. |
| | 2020, Case IH, 250, Serial No.: JJAMG250ALRK02834, Magnum Tractor. |
| | 2020, Case IH, 250, Serial No.: JJAMG250CLRK02855, Magnum Tractor. |
| | 2020, Case IH, 250, Serial No.: JJAMG250PLRK02809, Magnum Tractor. |
| | 2020, Case IH, 250, Serial No.: JJAMG250ELRK02840, Magnum Tractor. |
| | 2020, Case IH, 250, Serial No.: JJAMG250ALRK02820, Magnum Tractor. |
| | 2020, Case IH, 250, Serial No.: JJAMG250KLRK02830, Magnum Tractor. |
| | 2020, Case IH, 250, Serial No.: JJAMG250LLRK02818, Magnum Tractor. |
| | 2020, Case IH, 250, Serial No.: JJAMG250LLRK02804, Magnum Tractor. |
| | 2020, Case IH, 250, Serial No.: JJAMG250CLRK02796, Magnum Tractor. |
| | 2020, Case IH, 250, Serial No.: JJAMG250CLRK02791, Magnum Tractor. |
| | 2020, Case IH, 250, Serial No.: JJAMG250CLRK02788, Magnum Tractor. 2020, Case IH, 250, Serial No.: JJAMG250LLRK02771, Magnum Tractor. |
| | 2020, Case IH, 250, Serial No.: JJAMG250ELRK02790, Magnum Tractor. |
| | 2020, Case IH, 250, Serial No.: JJAMG250ALRK02770, Magnum Tractor. |
| | 2020, Case IH, 250, Serial No.: JJAMG250VLRK02816, Magnum Tractor. |
| | 2020, Case IH, 250, Serial No.: JJAMG250CLRK02841, Magnum Tractor. |
| | 2020, Case IH, 250, Serial No.: JJAMG250ELRK02823, Magnum Tractor. |
| | 2021, Case IH, 250, Serial No.: JJAMG250ELRK04054, Magnum Tractor. |
| | 2021, Case IH, 250, Serial No.: JJAMG250PLRK04060, Magnum Tractor. |
| | 2021, Case IH, 250, Serial No.: JJAMG250KLRK04075, Magnum Tractor. |
| | 2021, Case IH, 250, Serial No.: JJAMG250TLRK04056, Magnum Tractor. |
| | 2021, Case IH, 250, Serial No.: JJAMG250ALRK04017, Magnum Tractor. |
| | 2021, Case IH, 250, Serial No.: JJAMG250TLRK04087, Magnum Tractor |
| | THIS FINANCING STATEMENT IS BEING FILED SOLELY AS A PRECAUTION IF, CONTRARY TO THE INTENTION OF THE PARTIES DESCRIBED ABOVE AS LESSEE AND LESSOR, THE TRANSACTION RELATING TO THE PROPERTY DESCRIBED HEREIN IS DEEMED TO BE A SECURITY AGREEMENT RATHER THAN A LEASE WITHIN THE MEANING OF 1-201 (37) OF THE UNIFORM COMMERICAL CODE.. |
| The collateral is: | |

Designations:

| Select a designation which describes this financing statement: | Not Applicable |
|---|---|
| Select an additional designation which describes this financing statement: | Not Applicable |

Alternative Designations:

| Select the alternative designation which describes this financing statement: | Not Applicable |
|---|---|

EXHIBIT 3 of 6

Optional Filer Reference Data:
  [201075978]

B0547-3101 10/31/2020 9:08 AM Received by ID Secretary of State Lawerence Denney

EXHIBIT 3 of 6

**CNH** | **CAPITAL**

**EQUIPMENT OPERATING LEASE AGREEMENT**



020089  / 2793339

| "Lessee(s)" Legal Name(s) | Address | City | St | Zip |
|---|---|---|---|---|
| MILLENKAMP CATTLE, INC. | 471 NORTH 300 WEST | JEROME | ID | 83338-5078 |

| "Lessor" Legal Name | Address | City | St | Zip |
|---|---|---|---|---|
| BURKS TRACTOR COMPANY,INC. | 3140 KIMBERLY RD. | TWIN FALLS | ID | 83301 |

The undersigned Lessee(s) (collectively called "Lessee") hereby leases from Lessor and Lessor hereby leases to Lessee the following goods (the "Equipment") under the terms set forth herein. The Equipment is leased for commercial ☐ business use ☑ agricultural use.

| NEW*/USED | EQUIPMENT DESCRIPTION | MODEL | SERIAL#/PIN | HOURS | "MAX ANN USE" | "EXCESS USE" |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | See attached Multiple Unit Addendum | | | | | |
| | | | | | | |

*New Equipment is unused equipment, a rental unit or a demonstrator, not previously sold, for which the manufacturer will supply all or a portion of a new equipment warranty; this Equipment may have been manufactured in a year prior to the year of this lease.

Location of Equipment: Address (if other than Lessee address)_____ City_____ St___ Zip____

The beginning date of this agreement (the "Agreement" or this "Lease") is  02-06-2024  ("Beginning Date) and the termination date of the Agreement is  02-06-2027  ("Termination Date"). There shall be a security deposit of $        N/A ("Security Deposit") and a purchase option price of $  2,466,821.76 ("Purchase Option Price").
Lease Payments: Advance Payment of $       30,000.00 followed by payments in accordance with the following schedule, PLUS APPLICABLE TAXES.

| NUMBER OF PAYMENTS | PERIOD OF PAYMENTS | AMOUNT OF EACH PAYMENT | BEGINNING MM/DD/YYYY | | NUMBER OF PAYMENTS | PERIOD OF PAYMENTS | AMOUNT OF EACH PAYMENT | BEGINNING MM/DD/YYYY |
|---|---|---|---|---|---|---|---|---|
| 34 | 1 MONTHS | $  68,528.17 | 03/06/2024 | | | | $ | |
| 1 | 1 MONTHS | $  68,528.57 | 01/06/2027 | | | | $ | |
| | | $ | | | | | $ | |
| | | $ | | | | | $ | |
| | | $ | | | | | $ | |

The "Obligations" shall mean Lessee's responsibility to pay the payments noted in this Lease (the "Lease Payments") and to perform any other existing or future obligations of Lessee to Lessor, or to the Assignee under this Lease or any other agreement between or among Lessee and Assignee, or Lessor or affiliate of Lessor and Assignee.

**LESSEE HAS SELECTED THE EQUIPMENT. THE MANUFACTURER AND ITS REPRESENTATIVES ARE NOT LESSOR'S NOR ASSIGNEE'S AGENTS AND ARE NOT AUTHORIZED TO MODIFY THE TERMS OF THIS LEASE. LESSEE IS AWARE OF THE NAME OF THE MANUFACTURER OF EACH ITEM OF EQUIPMENT AND LESSEE WILL CONTACT EACH MANUFACTURER FOR A DESCRIPTION OF WARRANTY RIGHTS, LIMITATIONS AND DISCLAIMERS. LESSOR MAKES NO WARRANTIES TO LESSEE, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, SUITABILITY OR OTHERWISE. LESSOR PROVIDES THE EQUIPMENT TO LESSEE AS-IS. LESSOR, NOR ASSIGNEE, SHALL BE LIABLE FOR SPECIAL, INCIDENTIAL OR CONSEQUENTIAL DAMAGES.**

*Some states do not allow these limitations and exclusions, and they shall not apply to the extent such limitations or exclusions are not allowed by applicable state law.*

Lessee has received and examined the Equipment, which is in good operating order and condition and is as described above.  Lessee acknowledges receipt of a copy of this Agreement.  Lessee agrees to lease the Equipment described above and based on the terms of this Agreement.  The parties intend that this agreement: (a) creates a "Lease" under Section 1-203 of the Uniform Commercial Code ("UCC"); (b) is a "Lease" as defined in Section 2A-103(1)(j) of the UCC and (c) satisfies every element under Section 2A-103(1)(g) of the UCC.

**NOTICE TO THE LESSEE:**
1.   DO NOT SIGN THIS BEFORE YOU READ THE TERMS ON THE FIVE AGREEMENT PAGES (PLUS ANY ADDENDUMS), EVEN IF OTHERWISE ADVISED.
2.   DO NOT SIGN THIS IF IT CONTAINS ANY BLANK SPACES.
3.   YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN. KEEP IT TO PROTECT YOUR LEGAL RIGHTS.
4.   LESSEE REPRESENTS THAT THE EQUIPMENT IS NOT BEING LEASED FOR FAMILY, HOUSEHOLD OR PERSONAL USE.

ADDITIONAL PROVISIONS CONCERNING RIGHTS AND DUTIES OF THE PARTIES ON THE ADDITIONAL PAGES OF THIS AGREEMENT ARE A PART OF THIS AGREEMENT.

| X _[signature]_ | MILLENKAMP CATTLE, INC. | _[signature]_ | 02-06-2024 |
|---|---|---|---|
| Signature of Lessee/Lessee's Representative | Printed Name | Title (not for an individual Lessee ) | Date |

| X | | | |
|---|---|---|---|
| Signature of Lessee/Lessee's Representative | Printed Name | Title (not for an individual Lessee ) | Date |

Dealer (herein "Assignor" or "Lessor") hereby assigns all of its rights, title and interest in and to this Agreement and the Equipment to CNH Industrial Capital America LLC (herein "Assignee"or "CNH Capital"), under terms also described in the Retail Finance Agreement, Program Procedures, Dealer Handbook or other related documents (collectively hereinafter the "RFA") executed by the Assignor and Assignee. Assignor has obtained a signed credit application for this Agreement. The Equipment has been paid in full to Dealer or will be paid in full with Agreement proceeds pursuant to the terms of the RFA. Assignor waives notice of acceptance of this Assignment and notice of non-payment and non-performance of this Agreement and any other notices required by law and waives any and all setoffs and counterclaims. The Assignment shall become effective upon delivery of this Agreement to Assignee or upon Assignee's payment of the lease price therefor, whichever occurs first.

Basis of Acceptance ☐ Nonrecourse  ☐ Repurchase  ☐ Full Recourse  ☑ Other

Other explanation  See attached Lease Guarantee Addendum

| X _[signature]_ | BURKS TRACTOR COMPANY,INC. | 02-06-2024 |
|---|---|---|
| Signature of Lessor's Representative | Printed Lessor Name | Date |

21003A    Rev 01/24 Previous editions may not be used.

EXHIBIT 4 of 6

 **CAPITAL**



020069  / 2793339

## Agreement Provisions

1. **Assignment; Conditions to Lease.** Lessor hereby assigns this Agreement, and any related guarantee(s) ("Guarantee") (together collectively the "Assignment") to Assignee. Lessee acknowledges that Lessor has the right to assign this Agreement and such Guarantee, that all rights and benefits but no obligations (if any) of Lessor shall pass to Assignee. This Agreement shall be binding on and inure to the benefit of Lessor, Lessor and Assignee and their respective heirs, personal representatives, successors and assigns; provided, however, that Lessee may not assign its interest in the Equipment or its rights or obligations under this Agreement to any person without Assignee's prior written consent. LESSEE SHALL NOT ASSERT AGAINST CNH INDUSTRIAL CAPITAL AMERICA LLC ANY CLAIM OR DEFENSE WHICH LESSEE MAY HAVE AGAINST THE INITIAL LESSOR (I.E., THE ENTITY APPEARING IN THE TOP OF PAGE 1 OF THIS LEASE). Lessor and Assignee have no obligation to lease the Equipment to Lessee until they receive: (a) a fully executed Agreement; (b) evidence of insurance that complies with the requirements of Assignee; (c) such precautionary financing statements, or other documents, as Lessor deems necessary or appropriate to evidence and/or perfect Lessor's interest in the Equipment in accordance with the applicable UCC or other appropriate law; and (d) such other documents as they may reasonably request. Lessee hereby authorizes Assignee or its designee to execute and file any precautionary financing statements and other public notification documentation, and any amendments thereto describing the Equipment as Lessor deems necessary or appropriate. Lessee hereby irrevocably appoints Assignee or its designee as Lessee's agent and attorney-in-fact to sign such instruments on Lessee's behalf and to file them. CNH Capital may make UCC related filings and/or termination statements pursuant to this Agreement. CNH Capital reserves its right to assess additional fees and other charges to the Obligations including but not limited to, if fees and other charges increase or other actions are needed to protect its lien upon the Equipment.

2. **Title.** This Agreement is a true lease only (and not a conditional sale). Lessee does not have any right, title or interest in the Equipment, except, so long as no event of default has occurred and is continuing hereunder, the right to use it during the term hereof and, if so indicated, the option to purchase it as provided under this Agreement.

3. **Late Charges/Default Rate/Returned Checks.** Lessee shall pay a late charge on each payment not paid within 10 days after the due date at the highest amount, both as permitted by applicable law. Lessee shall pay interest on the unpaid balance after maturity (as scheduled, by acceleration or otherwise) and at the highest rate, as permitted by applicable law. If a check is returned for any reason, Assignee may charge Lessee a returned check processing fee as established by Lessor or Assignee from time to time not to exceed the maximum permitted under applicable law. Assignee may apply any payment or proceed received toward the Obligations, in its sole discretion regardless of how requested or directed. Lessee shall make all payments in lawful money of the United States of America. If any fees and/or other charges scheduled and/or assessed under any part of this Agreement exceed the maximum permitted by applicable law, any excess shall be applied toward a reduction of the principal balance and that shall be the sole and satisfactory remedy under this Agreement.

4. **Notification of Change in Residence, Principal Office, or Organizational Form.** If Lessee changes (as applicable): (a) its state of principal residence; or (b) the state in which its chief executive office is located; or (c) the state in which it is organized; or (d) its form of organization (such as from an individual to a corporation); or (e) its name, as printed on a State filed registration document or individual name, as printed on a valid driver's license, then Lessee will notify Assignee in writing promptly, but in no event more than 30 days after such change.

5. **Waiver of Defenses; Indemnification.** Lessee shall not assert against Assignee any claim or defense which Lessee might have against Lessor, the manufacturer of the Equipment or any other person. Lessee agrees that its obligation to remit payments will not be subject to, and it will not make any claim against Assignee for breach of any representation, warranty or condition with respect to the Equipment and that its obligation to pay Assignee amounts under this Lease is absolute and unconditional without abatement, reduction, set-off, counterclaim or interruption for any reason whatsoever, including any dispute which now or hereafter arises between Lessee and Lessor or any other person. Time is of the essence. Lessee shall defend and indemnify Lessor and Assignee and its officers, directors, employees, affiliates and agents from and against any damage, loss, theft or destruction of the Equipment or any part thereof, and from and arising out of or connected with this Lease, the use, condition (including without limitation, all defects whether or not discoverable by Lessee or Lessor) or operation of the Equipment or any part thereof. Lessee shall promptly notify Assignee of any loss, damage, theft, destruction, injury, claim, demand, cost or expense related to this Lease or the Equipment. Lessee shall also defend and indemnify Lessor and Assignee and its officers, directors, employees, affiliates and agents from and against all claims, losses and out-of-pocket costs (including attorneys' fees) arising out of: (a) the use (by Lessee, sublessee or any other party) or condition of the Equipment; (b) default by Lessee under the Lease; or (c) the repossession of the Equipment, after default by the Lessee, by the Lessor or the Assignee. TO THE EXTENT PERMITTED BY APPLICABLE LAW, LESSEE HEREBY WAIVES ANY AND ALL RIGHTS AND REMEDIES CONFERRED UPON A LESSEE UNDER ARTICLE 2A OF THE UCC AND ANY RIGHTS NOW OR HEREAFTER CONFERRED BY ANY OTHER STATUTE OR OTHERWISE, WHICH MAY LIMIT OR MODIFY ANY OF LESSOR'S RIGHTS OR REMEDIES.

6. **Lessee's Covenants.** Lessee shall: (a) keep the Equipment at the Equipment Location listed on page 1 of this Agreement and not remove the Equipment from such locations, except temporarily in connection with its ordinary use or repair, unless Assignee consents in writing; (b) maintain the Equipment in good condition and repair and not permit its intended function or value to be impaired and Lessee will make sure that the manufacturer's warranty remains valid. Lessee will pay all the costs of performing these obligations; (c) keep the Equipment free of all liens, encumbrances and security interests of all persons other than Lessor and Assignee; (d) defend the Equipment against all claims and legal proceedings by persons other than Assignee; (e) pay and discharge when due all taxes, fees, levies and other charges upon the Equipment; (f) pay when due all taxes arising from the purchase of the Equipment under this Agreement, excluding any taxes based upon Lessor's net income; (g) use the Equipment solely in the conduct of Lessee's business; (h) ensure the Equipment will be used solely within the intended uses of the manufacturer; (i) not sell, lease or otherwise dispose of the Equipment nor permit the Equipment to become an accession to other goods or a fixture; (j) not permit the Equipment to be used in violation of any law, regulation or policy of insurance; (k) strictly follow the terms on page 1 of this Agreement; (l) perform (at Lessee's expense) all maintenance and repairs necessary to keep the Equipment in as good a condition as when delivered to Lessee, reasonable wear excepted; (m) not permit the Equipment to be used by, or to be in the possession of, anyone other than Lessee or Lessee's employees; and (n) timely pay the nonrefundable Obligations from the Beginning Date through the term on the Lease, as set forth on page 1. Lessee represents and warrants that: (i) each individual executing this Agreement authorized by or on behalf of Lessee has the requisite power and authority to execute this Agreement and all related documents; (ii) Lessee is fully authorized to perform its obligations and consummate the transactions contemplated under this Agreement and related documents the execution and delivery of this Agreement and all related documents; (iii) the execution and delivery of this Agreement and all related documents and the consummation of the transactions under this Agreement have been duly authorized by Lessee; and (iv) this Agreement and all related documents constitute valid and legally binding obligations of Lessee, enforceable against Lessee in accordance with their respective terms.

7. **Insurance.** Lessee shall keep Assignee's interests in the Equipment insured against fire, theft, physical damage and other hazards under policies listing Assignee as Lender's loss payee, with such provisions, for such amounts (but not less than the Termination Value, under this Agreement) and by such insurers and terms as shall be satisfactory to Assignee from time to time, and shall furnish to Assignee evidence of such insurance satisfactory to Assignee. Such insurance shall provide at least 30 days' written notice of cancellation, lapse or expiration to Assignee. Lessee assigns (and directs any insurer to pay) to Assignee Lessee's interest in the proceeds of any and all insurance related to the Equipment and any premium refund, and Assignee may, at its option, apply such proceeds and refunds to any unpaid balance of the Obligations, whether or not due, and/or to repair or restore the Equipment. Lessee must make all payments due under this Agreement whether or not the Equipment is insured or underinsured. Assignee is authorized, in the name of Lessee or otherwise, to make, adjust and/or settle claims under any insurance on the Equipment, or cancel the same after the occurrence of an event of default, or set off amounts owed Assignee against any rebates, credits or refunds due Lessee and/or any guarantor. If Lessee purchased physical damage insurance that is financed under this Agreement, Lessee hereby requests and authorizes Lessor (provided Lessor is properly licensed to do so) or its designee: (a) to arrange physical damage insurance for the benefit of Lessor or Assignee and Lessee that covers physical damage to the Equipment; (b) to replace or otherwise modify such insurance as Lessor deems appropriate; and (c) to be Lessee's attorney-in-fact to make claim for, receive payment of and execute, endorse and negotiate all documents, checks or drafts received in payment of loss, damage or premium refunds under any insurance. This Agreement includes and hereby incorporates by reference any Insurance Addendum signed in connection with this Agreement. STATEMENT TO LESSEE: THE PHYSICAL DAMAGE INSURANCE PURCHASED UNDER THE TERMS OF THIS AGREEMENT COVERS ONLY LOSS OF OR DAMAGE TO THE EQUIPMENT. LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED AS PART OF THE PHYSICAL DAMAGE INSURANCE. LESSEE UNDERSTANDS THAT IF INSURANCE IS FINANCED UNDER THIS AGREEMENT, PREPAYMENT OF LESSEE'S OBLIGATIONS OR TERMINATION OF THIS AGREEMENT WILL RESULT IN CANCELLATION OF INSURANCE COVERAGE, UNLESS OTHERWISE EXPLICITLY AGREED TO IN WRITING BY ASSIGNEE.

21009A    Rev 01/24 Previous editions may not be used.                                                                                      Page 2 of 11

EXHIBIT 4 of 6



**CNH | CAPITAL**

020069    / 2793339

**Agreement Provisions**

FX000002837364210 09A0311

8. **Liability Insurance.** Lessee shall obtain and maintain, liability insurance from a carrier acceptable to Assignee in such form and subject to such limits as Assignee may reasonably require protecting the interests of Lessee and Assignee against claims for damages or injuries to persons or property caused by the use, condition, holding or operation of the Equipment. Lessor shall ensure that Lessee has liability insurance in place before the lease commences, having minimum coverage of at least $1,000,000.00 total liability per occurrence, with CNH Industrial Capital America LLC named as additional insured.

9. **Modifications and Waivers.** This Agreement sets forth the entire understanding among Lessor, Assignee and Lessee. No modification, amendment or extension of this Agreement and no waiver of any provision of this Agreement shall be valid unless in writing and signed by the parties and a waiver of any default hereunder by Assignee shall not constitute a waiver of any other prior or subsequent default, except that Lessee authorizes Assignee to insert in this Agreement the serial number/PIN and/or model number of any Equipment if this information is unknown when this Agreement is executed or to correct any errors in such numbers or any other patent errors in the description of the Equipment.

10. **Taxes.** Lessee agrees to pay all taxes (or reimburse Assignee for any taxes) imposed by any government, political subdivision or taxing authority upon or with respect to: (a) the purchase, ownership, possession, acceptance, relocation, repair, lease, return, sale or use of the Equipment; (b) the Lease Payments or any other payment required under this Agreement; or (c) any of the transactions contemplated by this Agreement. The term "taxes" shall mean any and all fees (including, without limitation, license, documentation, recording and registration fees), taxes (including, without limitation, gross receipts, sales, lease, use, value added, goods and services, property [tangible and intangible], excise and stamp taxes), licenses, levies, duties, assessments or withholdings of any nature whatsoever (together with any and all penalties, fines, additions to tax and interest thereon), except all taxes on or measured by Assignee's net income. Taxes may be included as part of your Lease Payments.

11. **Tax Representations and Indemnification.** As the owner, Assignee shall be entitled to claim all items of deduction, including depreciation, on the Equipment that are consistent with ownership for tax purposes (the "Tax Benefits"). Lessee will not take or omit to take any action which would cause this Agreement not to be treated as a true lease for U.S. federal tax purposes. If Assignee loses the right to claim or is not entitled to claim all or any portion of the Tax Benefits, or if all or any of the Tax Benefits claimed by Lessor are disallowed, recaptured, reduced, or eliminated, or if Assignee originally contemplated after-tax return is adversely affected (a "Loss of Tax Benefits") as a result of: (a) the inaccuracy or falsity of any representation or warranty made by Lessee in this Agreement; (b) Lessee's breach of or failure to perform any covenant or agreement hereunder; or (c) any other act or omission by Lessee, then Lessee shall pay Assignee such amount as shall, in Assignee's reasonable opinion, cause Assignee to receive over the full term of this Agreement the same after-tax return that Assignee would have realized if there had not been a Loss of Tax Benefits (the "Original Net Economic Return"). If, as a result of any change in U.S. federal and/or applicable state income tax law enacted after the date of this Agreement, Lessor shall have a Loss of Tax Benefits, Lessee shall pay Assignee, upon Assignee's request, that amount which will provide Assignee the Original Net Economic Return. Any amounts due hereunder shall be payable at Assignee's election either as supplemental Lease Payments during the remaining term of this Agreement or as a lump sum payable on demand. Neither Lessor, Assignee nor Lessee makes any representation to the other concerning the proper treatment of this Agreement for tax purposes by either party.

12. **Authority of Assignee to Perform for Lessee.** If Lessee fails to perform any of Lessee's duties set forth in this Agreement (including, without limitation, the purchase of insurance), Assignee may at its option, in Lessee's name or otherwise, take any such action, including, without limitation, signing Lessee's name or paying any amount so required, and all costs and expenses incurred by Assignee in connection therewith shall form part of the Obligations and shall be payable by Lessee upon demand with interest from the date of payment by Assignee at the highest rate permitted by applicable law.

13. **Default/Cross Default.** Lessee shall be in default under this Agreement, and any other agreement with or assigned to Assignee, if any of the following occurs (each, an "event of default"): (a) Lessee fails to pay when due any of the Obligations, or to perform any covenant or other obligation of Lessee under this Agreement or any other agreement with or assigned to Assignee; (b) Lessee or any guarantor dies, ceases to exist, becomes insolvent or the subject of bankruptcy, insolvency or liquidation proceedings, attempts to or does assign this Agreement or attempts to or does remove, sell, transfer, further encumber, part with possession of or sublet any Equipment; (c) any warranty or representation made by Lessee or any guarantor to induce Lessor or Assignee to extend credit to Lessee, under this Agreement or otherwise, is false in any material respect when made; (d) Lessee fails to maintain insurance required hereunder or fails to comply with the requirements of any such insurance; (e) any other event occurs that causes Assignee, in good faith, to consider that payment or performance of the Obligations is impaired or that the Equipment is at risk; (f) the Equipment is impounded or confiscated by any federal, state, local governmental authority or third party; (g) Lessee fails to produce Equipment for inspection within 10 days, upon demand; or (h) Lessee breaches any of the other terms of this Agreement or any other agreement with or assigned to Assignee.

14. **Expenses.** To the extent not prohibited by law, Lessee shall reimburse Lessor or Assignee for any expense incurred by Lessor or Assignee in protecting, defending or enforcing their rights under this Agreement, including, without limitation, reasonable attorneys' fees and legal expenses and all expenses of taking possession, transporting, holding, repairing, refurbishing, preparing for disposition and disposing of the Equipment, and all expenses and costs incurred in collecting the Obligations, including collection agency fees based on a maximum of 25% of the Obligations, and all shall be part of the Obligations.

15. **Remedies.** If Lessee is in default, Assignee may terminate this Agreement and/or exercise all other rights and remedies provided by law and by this Agreement, and Lessee will lose all rights to keep the Equipment. Assignee will have the right to take the Equipment, without notice or hearing, and, Lessee or any guarantor also expressly waives any right to notice or a prior hearing or to require Assignee to post any bond. To take it, Lessee consents that Assignee may enter the premises where the Equipment is stored and remove it. Assignee may take any property contained within the Equipment at the time of repossession and hold it for Lessee. Neither the termination of this Agreement nor the repossession of the Equipment by Assignee shall release Lessee from its Obligations under this Agreement. Lessee agrees that Assignee may sell the Equipment (including at wholesale), re-lease it or otherwise dispose of it in a commercially reasonable manner. Lessee agrees to pay Assignee, as liquidated damages for loss of bargain and not as a penalty, an amount equal to: (a) the Termination Value (as hereinafter defined); plus (b) a processing fee ("Processing Fee") equal to the lower of $500.00 or the maximum amount permitted by applicable law. The net proceeds of the disposition of the Equipment by sale or re-lease for the remaining term of lease under this Agreement, shall reduce the Lessee's Obligations pursuant to the preceding sentence. Any costs to Lessor and/or Assignee arising from repossessing the Equipment and/or selling the Equipment and/or re-leasing the Equipment for the remaining term of lease under this Agreement, including, without limitation, reasonable legal fees and costs, shall increase the Lessee's Obligations pursuant to the preceding sentences. Lessee shall remain liable for any deficiency. All Lessees and Guarantors consent to Assignee obtaining credit bureau reports upon them. Any surplus following any disposition of the Equipment shall belong to Assignee. All rights and remedies may be exercised by Assignee either separately or in combination and any action taken by Assignee to recover payment from Lessee of the Obligations shall not limit Assignee's rights with respect to the Equipment. Assignee can apply all proceeds or payments in its discretion.

16. **Excessive Wear and Tear.** All warranty and product improvement programs are to be completed prior to the Termination Date of the lease relating to the Equipment. For purposes of this Agreement, excessive wear and tear shall mean and include any of the following: (a.) Cab/Operator Platform. (a.1) Heavy interior soil or strong odor. (a.2) Unclean condition of the cab. (a.3) Holes, tears or burns on the dash, floor covers, seats, headliners, upholstery or interior. (a.4) Hour Meter: if the hour meter or dash has been tampered with, Assignee has the right to estimate excess hours plus any additional penalties deemed appropriate. (a.5) Seat and/or seat belts broken. (b.) Exterior. (b.1) Dents larger than 2" in diameter or excessive number of dents. (b.2) Scratches - Any excess scratches to the paint or any one individual scratch that exceeds 8" in length. (b.3) Chips - Any single chip the size of a quarter or larger or multiple smaller chips within 1 square foot. (b.4) Paint - Substandard paint, such as peeling, bubbling or mismatched shades that evidence poor condition in comparison with original paint. (b.5) Rust - Rust holes in the body metal or any rust spots. (b.6) Glass Damage - Any glass that must be replaced due to cracks or missing glass and any windshield damages. (b.7) Frame Damage - All frame damage and substandard frame repairs in addition to modifications made to the frame. (b.8) Blades, Buckets and Other Attachments - Any broken or cracked teeth on any attachments included with the Equipment. (b.9) Tires/Tracks - Any tires/tracks on returned Equipment that have any of the following: are in an unsafe condition, are not matching, non compatible and/or have excessive cuts/cracks/missing chunks or missing/damaged drive lugs, excessive stubble damage, have broken side walls, are not original casings, have improper ballasting, have less than 50% of original tread remaining, or are not of the same size, type, grade or manufacturer (or equivalent-quality manufacturer) as were originally included on the Equipment, then Lessee will be required to pay for the cost of a new tire/track if the above conditions are not met. (b.10) Unclean exterior requiring but not limited to steam cleaning. (b.11) Broken or inoperable lights. (b.12) Any Mirror damage. (b.13) Bent or broken steps. (b.14) Dented or bent wheel rims. (c.) Mechanical. (c.1) Mechanical - Mechanical components that are missing, broken or unsafe or that do not operate normally. The battery will need to be replaced if the battery is dead upon the delivery of the unit at lease end. (c.2) Equipment - Computer and precision farming/guidance systems or safety or emission control equipment not in proper working order. (c.3) Brakes - Brakes that are cracked or exceed manufacturer's recommended wear limits, brake linings showing less than 50% remaining wear, or brakes that leak oil or fluid. (c.4) Power Train - Wear on power train assembly that exceeds manufacturer's then-current standards for normal wear (as shown by oil sample analysis). (c.5) Undercarriage - Leaky lubrication seals, improperly tightened/aligned track tension, cracked or broken track shoes or fasteners or drive/idler/roller/bogie wheels, less than 50% of original life remaining on any parts, or any undercarriage components not being of the original size, type, grade or manufacturer. (c.6) Combine threshing components - with less than 50% of original life remaining on any parts. (c.7) Hydraulic System - Any pumps, motors, valves or cylinders not in good operating condition or that fail to meet manufacturer's rated specifications, or hydraulic system exceeds manufacturer's then-current contaminant standards (as shown by oil sample analysis).

EXHIBIT 4 of 6



020069  / 2793339

**Agreement Provisions**

FX0000002 8373642 1009A0411

(c.8) Air Filters - Any filters not within manufacturer's specifications. (c.9) Electrical System - Any gauges or fluid indicators that are damaged or do not function, an alternator that fails to operate properly, a battery that fails to hold a charge, or any wire harnesses that are not tied down and kept secure, dry, clean and dust-free. (c.10) Leaks - Any general lubricant, engine coolant, water or A/C leaks that cost in excess of $100 to repair including labor. (c.11)Mufflers/Exhaust Pipes burnt out. (c.12) Damaged or inoperable horn. (d.) General; Other. (d.1) General - Failure to operate and maintain the Equipment in accordance with the manufacturer's specifications, or use of components, fuels or fluids on or in connection with the Equipment that do not meet manufacturer's standards. (d.2) Other - Any other damage or repair including but not limited to unlawful or unsafe operating conditions, or that make the Equipment either unlawful or unsafe to operate. (d.3) Any missing accessories or attachments. Upon any return of the Equipment, we shall, in our sole discretion, determine the existence of any Excessive Wear and Tear. All repair estimates will be based upon applicable Lessor rates or, if Lessor is unable to estimate and repair such excessive wear and tear, then at rates applicable to another outlet as reasonably selected by Lessor. Your failure to pay the invoiced wear and tear charges and/or to instead, make the required repair at an authorized dealer within 10 days of demand, shall constitute a default under the Agreement.

17. **Alterations/Repairs.** Lessee will not, without Assignee's prior written consent, affix or install any accessories or attachments to the Equipment nor change it so that it cannot be used by similarly situated lessees. Any improvements, replacements, additions, accessories, or repair parts to the Equipment shall become Assignee's property, free of all liens and encumbrances, and shall be deemed part of the Equipment. The Equipment is, and shall be personal property, even if it or any part of it becomes affixed or attached to real property or any improvement to real property.

18. **Security Deposit.** The Security Deposit may be applied to any amounts that Lessee fails to pay under this Agreement, including but not limited to damages to the Equipment in Assignment. Lessor will assign this Agreement to CNH Industrial Capital America LLC (herein "Assignee"or "CNH Capital"). Lessee acknowledges that Lessor has the right to assign this Agreement and that all rights and benefits but no obligations (if any) of Lessor under this Agreement may be exercised by any such Assignee and that no obligations (if any) of Lessor pass to Assignee. Upon receipt of notice from Assignee with instructions for payment, Lessee shall make all payments due under this Agreement directly to Assignee. This Agreement shall be binding on and inure to the benefit of Lessee and Lessor and their respective heirs, personal representatives, successors or assigns; provided, however, that Lessee may not assign its obligations under this Agreement to any person without Assignee's prior written consent.

19. **Risk of Loss.** All risk of loss, theft or damage to the Equipment is assumed by the Lessee, until the Equipment is returned to the Lessor. If the Equipment can be repaired for a cost less than its fair market value, Lessee will repair the Equipment at Lessee's sole expense but damage to the Equipment shall not release Lessee from the Obligations. If the Equipment cannot be so repaired, or is lost, stolen or destroyed, Lessee shall at Assignee's option and written consent either: (a) replace the Equipment at Lessee's sole expense with equivalent equipment of equal or greater value, as determined in the sole discretion of and with the consent of the Assignee and transfer clear title to such replacement equipment to Assignee, whereupon such replacement equipment shall be deemed the Equipment for all purposes of this Agreement; or (b) pay Assignee the Termination Value. Upon payment of the requisite Termination Value, Lessee shall be entitled to retain possession of the affected unit(s) of Equipment. Assignee may, at Assignee's sole option, apply proceeds of insurance, in whole or in part, to repair or comparably replace the Equipment or to satisfy such Termination Value or any of Lessee's Obligations pursuant to this Agreement. The "Termination Value" shall be an amount equal to: (a) any past due, unpaid Lease Payments and any late charges related thereto; plus (b) all remaining Lease Payments hereunder, less any future interest payments embedded therein; plus (c) (i) the Purchase Option Price, or (ii) if no purchase option is granted, the estimated residual value used to calculate the Lease Payments by Assignee; plus (d) any other costs to Lessor and/or Assignee arising from the loss, theft, wear and tear, or damage to the Equipment or from the collection of any amount due under this Lease. In no event shall the Termination Value exceed the maximum amount permitted by applicable law.

20. **Purchase Option.** So long as no default exists under this Lease and it has not been earlier terminated, Lessee may on the Termination Date, upon at least 90 days, but not more than 180 days, prior written notice to Assignee, purchase all (but not less than all) of the Equipment: (a) if stated dollar amount is provided as the Purchase Option Price, then for that amount together with all applicable taxes and other charges due in connection with such sale and all other amounts due and unpaid under this Lease; or (b) if no Purchase Option Price is identified, then at the fair market value, as determined at Assignee's sole discretion, at the time the Purchase Option is exercised, together with all applicable taxes and other charges due in connection with such sale and all other amounts due and unpaid under this Lease. Lessee's purchase of the Equipment shall be on an AS-IS, WHERE-IS BASIS.

21. **EARLY RETURN.** IF LESSEE RETURNS THE EQUIPMENT PRIOR TO THE TERMINATION DATE, LESSEE SHALL BE OBLIGATED TO IMMEDIATELY PAY TO LESSOR AN EARLY TERMINATION FEE EQUAL TO 1.0% OF: (A) IF A STATED DOLLAR AMOUNT IS PROVIDED AS THE PURCHASE OPTION PRICE, THEN FOR THAT AMOUNT, TOGETHER WITH ALL UNPAID LEASE PAYMENTS, REMAINING LEASE PAYMENTS, PLUS SEPARATELY, ANY AND ALL OTHER AMOUNTS PROVIDED FOR UNDER THIS LEASE; OR (B) IF NO PURCHASE OPTION PRICE IS IDENTIFIED OR IS STATED AS FMV, THE ESTIMATED RESIDUAL VALUE OF THE EQUIPMENT USED TO CALCULATE THE LEASE PAYMENTS DUE UNDER THE LEASE AS DETERMINED BY ASSIGNEE TOGETHER WITH ALL UNPAID LEASE PAYMENTS, REMAINING LEASE PAYMENTS, AND ALL OTHER AMOUNTS PROVIDED FOR UNDER THIS LEASE. THIS FEE IS IN ADDITION TO THE OTHER OBLIGATIONS OWED BY THE LESSEE TO THE ASSIGNFF.

22. **Return.** If Lessee does not exercise the purchase option (if any) as provided in this Lease, Lessee shall on the Termination Date or such earlier date of termination of this Lease: (a) at its expense, deliver the Equipment to a location designated by Assignee; (b) pay $400.00 per serial numbered unit to the Lessor as a return fee; and (c) pay all charges incurred by Lessor to repair any excessive wear and tear and for any hours in excess of the Maximum Annual Usage at the Excess Usage Rate. The risk of loss of the Equipment shall remain with Lessee until Assignee accepts the Equipment by executing a written acceptance. Unless and until all the Equipment is returned and accepted, or is otherwise disposed of by written agreement between Assignee, and Lessee, and until all other terms and conditions have been met, the term of the Lease with respect to such Equipment shall continue. This fee is in addition to the other Obligations owed by the Lessee to the Assignee.

23. **Failure to Return Equipment.** If Lessee does not exercise its option, if any, to purchase the Equipment in accordance with this Agreement and fails to return the Equipment at the termination of this Agreement, due to default or otherwise, then, in addition to any other amounts that may be due to Assignee under this Agreement or under applicable law, Lessee will be liable for a daily amount computed on the basis of the scheduled Lease Payment, if unequal, the highest lease payment will be used.

24. **Conflict with Law.** Any provision of this Agreement prohibited by applicable law shall be ineffective to the extent of the prohibition without invalidating the remaining portions of this Agreement. The validity, construction and enforcement of this Agreement shall be governed by the laws of the State of the Lessor (without regard to conflict of law principles of such State). All terms not otherwise defined have the meanings assigned to them by the UCC.

25. **Miscellaneous.** In the event that this contract is determined by a court of competent jurisdiction to be characterized as a loan or forbearance agreement, and not a lease, despite the terms and conditions found in this contract, then all parties agree that any interest charges computed and assessed in this contract that are in excess of the maximum allowed interest charges allowed by law shall be applied as a reduction to the principal balance owed on this contract only, and this shall be the agreed upon and satisfactory remedy to all parties. By providing any address, email address or telephone number, including a mobile phone number, either now or in the future to Lessor, Assignee, any of Assignee's affiliates or any debt collectors retained by Assignee, Lessee agrees that any of the above may contact Lessee using that address or number, including contact through calls or texts using an automatic dialing and announcing device and prerecorded calls, and that such calls are not "unsolicited" under state or federal law. Any attempted revocation of this consent to contact, if allowable by law, must be made in writing. Lessee acknowledges and agrees that CNH Capital and its third party service providers can access and use telematics data and other information regarding location, maintenance and operation of the Equipment for any lawful purpose, including without limitation, to locate and repossess the Equipment. See https://www.cnhindustrialcapital.com/en_us/Pages/Privacy.aspx for additional details. If a court finds that any part of this Agreement to be invalid or unenforceable, the remainder of this Agreement will remain in effect. All of Assignee's rights shall remain in effect after the expiration or termination of this Agreement. If more than one Lessee is named in the Agreement, the liability of each shall be joint and several. All notices required or permitted hereunder shall be in writing and shall be deemed adequate if sent to the first Lessee on the Lease and at its address noted herein or to such other address as such party may have specified in writing by notice as prescribed in this Agreement. The captions and headings of the sections of this Agreement are for convenience only and are not to be used to interpret or define the provisions hereof. Restrictive endorsements on checks or other forms of payment that Lessee sends to Assignee will not change or reduce Lessee's obligations to Assignee. Assignee will not lose any rights if Assignee accepts late or partial payments or delays enforcing its rights under this Agreement. For combine leases, the hours used will be based on separator hours rather than engine hours.

26. **WAIVER OF JURY TRIAL.** EXCEPT IN GEORGIA OR CALIFORNIA OR WHERE OTHERWISE PROHIBITED BY LAW, EACH LESSEE, LESSOR AND CNH CAPITAL WAIVE ANY AND ALL RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING RELATING TO THE OBLIGATIONS, THIS AGREEMENT, OR ANY OTHER DOCUMENT CONNECTED HEREWITH, OR ANY TRANSACTION ARISING FROM OR CONNECTED TO ANY OF THE FOREGOING. EACH LESSEE, LESSOR AND CNH CAPITAL REPRESENT THAT THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY GIVEN.

21009A    Rev 01/24 Previous editions may not be used.

EXHIBIT 4 of 6

**CNH** CAPITAL

020069   / 2793339

Agreement Provisions

FX0000028373642100 9A0511

27. **Additional Waivers.** To the extent permitted by applicable law, Lessee hereby waives any and all rights and remedies conferred upon a Lessee by Sections 2A-508 through 2A-522 of the UCC, including, without limitation, Lessee's rights to: (a) cancel any Lease; (b) repudiate any Lease; (c) reject any Equipment; (d) revoke acceptance of any Equipment; (e) recover damages from Lessor for any breaches of warranty or for any other reason; (f) a security interest in the Equipment in Lessee's possession or control for any reason; (g) deduct from amounts owed all or any part of any claimed damages resulting from Lessor's default, if any, under any Lease; (h) accept partial delivery of the Equipment; (i) "cover" by making any purchase or lease of or contract to purchase or lease Equipment in substitution for those due from Lessor; (j) recover any general, special, incidental or consequential damages for any reason whatsoever; and (k) specific performance, replevin, detinue, sequestration, claim and delivery or the like for any Equipment identified in any Lease. To the extent permitted by applicable law, Lessee also hereby waives any rights now or hereafter conferred by statute or otherwise which may require Lessor to sell, lease or otherwise use any Equipment in mitigation of Lessor's damages as set forth in Section 15 or which may otherwise limit or modify any of Lessor's rights or remedies under Section 15.

28. **Electronic Contracting, Signature Acknowledgment, Future Notices.** Lessee agrees that (i) this Agreement is an electronic agreement executed by Lessee using Lessee's electronic signature or that Assignee may convert this Agreement into an electronic agreement; (ii) Lessee's electronic signature signifies Lessee's intent to enter into this Agreement and that this Agreement shall be a legally valid and enforceable Agreement in accordance with its terms to the same extent as if Lessee had executed this Agreement using Lessee's written signature and (iii) the authoritative copy of this Agreement ("Authoritative Copy") shall be that electronic copy that resides in a document management system designated by Assignee for the storage and authoritative copies of electronic records, which shall be deemed held by us in the ordinary course of business. Notwithstanding the forgoing, if the Authoritative Copy is converted by printing a paper copy which is marked by Assignee as the original (the "Paper Contract", then Lessee acknowledges and agrees that (1) your signing of this Agreement with your electronic signature also constitutes issuance and delivery of such Paper Contract, (2) your electronic signature associated with this Agreement, when affixed to the Paper Contract, constitutes your legally valid and binding signature on the Paper Contract and (3) subsequent to such conversion, Lessee's duties and Obligations will be evidenced by the Paper Contract alone. By providing your e-mail address and electing to execute this Agreement electronically, Lessee agrees that all future notices, statements and communications relating to this Agreement shall be delivered to the Lessee via e-mail transmission to the e-mail address provided to Assignee by the Lessee. It is the Lessee's duty to provide any changes to Lessee's e-mail address to Assignee so that future communications can reach Lessee in a timely manner.

21009A     Rev 01/24 Previous editions may not be used.

Page 5 of 11

EXHIBIT 4 of 6

**CNH | CAPITAL**

020069   / 2793339

FX0000002837364231143A0611

# MULTIPLE UNIT ADDENDUM

This Multiple Unit Addendum is hereby incorporated into the Lease Agreement dated ___February 06___, ___2024___
with Lessor ___BURKS TRACTOR COMPANY, INC.___ herein the ("Agreement"), and this addendum equipment list is made a part of the
Equipment, as defined in the Agreement. Lessee acknowledges receipt of this Multiple Unit Addendum at the time it is executed, along with a copy of the
Agreement and all its pages.

| # | New or Used | Equipment Description | Model | Serial Number/PIN | Hours | Maximum Annual Usage | Excess Usage Rate | Cash Price |
|---|---|---|---|---|---|---|---|---|
| 1 | NEW | Case IH Magnum | 250 | JJAMJ250CPRK03138 | 6.0 | 1,500 | 70 | N/A |
| 2 | NEW | Case IH Magnum | 250 | JJAMJ250KPRK03130 | 7.0 | 1,500 | 70 | N/A |
| 3 | NEW | Case IH Magnum | 250 | JJAMJ250CPRK03154 | 6.0 | 1,500 | 70 | N/A |
| 4 | NEW | Case IH Magnum | 250 | ~~JJAMJ250EPRK03150~~ | 28.0 | 1,500 | 70 | N/A |
| 5 | NEW | Case IH Magnum | 250 | JJAMJ250CPRK03155 | 9.0 | 1,500 | 70 | N/A |
| 6 | NEW | Case IH Magnum | 250 | JJAMJ250VPRK03164 | 8.0 | 1,500 | 70 | N/A |
| 7 | NEW | Case IH Magnum | 250 | JJAMJ250CPRK03172 | 11.0 | 1,500 | 70 | N/A |
| 8 | NEW | Case IH Magnum | 250 | JJAMJ250TPRK03173 | 8.0 | 1,500 | 70 | N/A |
| 9 | NEW | Case IH Magnum | 250 | JJAMJ250JPRK03176 | 9.0 | 1,500 | 70 | N/A |
| 10 | NEW | Case IH Magnum | 250 | JJAMJ250CPRK03177 | 9.0 | 1,500 | 70 | N/A |
| 11 | NEW | Case IH Magnum | 250 | JJAMJ250HPRK03184 | 7.0 | 1,500 | 70 | N/A |
| 12 | NEW | Case IH Magnum | 250 | JJAMJ250HPRK03203 | 8.0 | 1,500 | 70 | N/A |
| 13 | NEW | Case IH Magnum | 250 | JJAMJ250CPRK03205 | 6.0 | 1,500 | 70 | N/A |
| 14 | NEW | Case IH Magnum | 250 | JJAMJ250LPRK03233 | 46.0 | 1,500 | 70 | N/A |
| 15 | NEW | Case IH Magnum | 250 | JJAMJ250LPRK03295 | 75.0 | 1,500 | 70 | N/A |

Executed this __06__ day of February _____, __2024__.

X _____          MILLENKAMP CATTLE, INC.                              _President_____
Signature of Lessee/Lessee's Representative      Printed Name                                              Title (not for an individual Lessee)

JJAMJVPRK03150.

X _____          BURKS TRACTOR COMPANY, INC.
Signature of Lessor's Representative              Printed Lessor Name

23143A    Rev. 01/24 Previous editions may not be used.                                                          Page 6 of 11

EXHIBIT 4 of 6



**CNH CAPITAL**

020069   / 2793339

## MULTIPLE UNIT ADDENDUM

This Multiple Unit Addendum is hereby incorporated into the Lease Agreement dated ___February 06___, ___2024___
with Lessor ___BURKS TRACTOR COMPANY,INC._____ herein the ("Agreement"), and this addendum equipment list is made a part of the
Equipment, as defined in the Agreement. Lessee acknowledges receipt of this Multiple Unit Addendum at the time it is executed, along with a copy of the
Agreement and all its pages.

| # | New or Used | Equipment Description | Model | Serial Number/PIN | Hours | Maximum Annual Usage | Excess Usage Rate | Cash Price |
|---|---|---|---|---|---|---|---|---|
| 16 | NEW | Case IH Magnum | 250 | JJAMJ250JPRK03386 ✓ | 20.0 | 1,500 | 70 | N/A |
| 17 | NEW | Case IH Rear Re | N/A | NA | N/A | 1,500 | N/A | N/A |
| 18 | NEW | Case IH Rear Re | N/A | NA | N/A | 1,500 | N/A | N/A |
| 19 | NEW | Case IH Rear Re | N/A | NA | N/A | 1,500 | N/A | N/A |
| 20 | NEW | Case IH Rear Re | N/A | NA | N/A | 1,500 | N/A | N/A |
| 21 | NEW | Case IH Rear Re | N/A | NA | N/A | 1,500 | N/A | N/A |
| 22 | NEW | Case IH Rear Re | N/A | NA | N/A | 1,500 | N/A | N/A |
| 23 | NEW | Case IH Rear Re | N/A | NA | N/A | 1,500 | N/A | N/A |
| 24 | NEW | Case IH Rear Re | N/A | NA | N/A | 1,500 | N/A | N/A |
| 25 | NEW | Case IH Rear Re | N/A | NA | N/A | 1,500 | N/A | N/A |
| 26 | NEW | Case IH Rear Re | N/A | NA | N/A | 1,500 | N/A | N/A |
| 27 | NEW | Case IH Rear Re | N/A | NA | N/A | 1,500 | N/A | N/A |
| 28 | NEW | Case IH Rear Re | N/A | NA | N/A | 1,500 | N/A | N/A |
| 29 | NEW | Case IH Rear Re | N/A | NA | N/A | 1,500 | N/A | N/A |
| 30 | NEW | Case IH Rear Re | N/A | NA | N/A | 1,500 | N/A | N/A |

Executed this __06__ day of __February__, __2024__.

X _____    MILLENKAMP CATTLE, INC.              _____
Signature of Lessee/Lessee's Representative    Printed Name                 Title (not for an individual Lessee)

X _____    BURKS TRACTOR COMPANY,INC.
Signature of Lessor's Representative          Printed Lessor Name

23143A   Rev. 01/24 Previous editions may not be used.

EXHIBIT 4 of 6

 **CAPITAL**

020069   / 2793339

FX60000028373642314 3A0811

# MULTIPLE UNIT ADDENDUM

This Multiple Unit Addendum is hereby incorporated into the Lease Agreement dated _____ February 06 ____, 2024 ____ with Lessor BURKS TRACTOR COMPANY,INC. _____ herein the ("Agreement"), and this addendum equipment list is made a part of the Equipment, as defined in the Agreement. Lessee acknowledges receipt of this Multiple Unit Addendum at the time it is executed, along with a copy of the Agreement and all its pages.

| # | New or Used | Equipment Description | Model | Serial Number/PIN | Hours | Maximum Annual Usage | Excess Usage Rate | Cash Price |
|---|---|---|---|---|---|---|---|---|
| 31 | NEW | Case IH Rear Re | N/A | NA | N/A | 1,500 | N/A | N/A |
| 32 | NEW | Case IH Rear Re | N/A | NA | N/A | 1,500 | N/A | N/A |

Executed this  06   day of  February ____ ,  2024  .

X _____
Signature of Lessee/Lessee's Representative

MILLENKAMP CATTLE, INC.
Printed Name

_President_
Title (not for an individual Lessee)

X _____
Signature of Lessor's Representative

BURKS TRACTOR COMPANY,INC.
Printed Lessor Name

23143A    Rev. 01/24 Previous editions may not be used.

Page 8 of 11

EXHIBIT 4 of 6



020069   / 2793339

**PURCHASED PROTECTION PLAN ADDENDUM**

This is the Purchased Protection Plan Addendum to that certain _____ Lease Agreement _____ dated _____ February 06, 2024 _____ between the Lessee and the Lessor for the Equipment identified therein (herein the "Agreement"), into which this Purchased Protection Plan Addendum is hereby incorporated. If the price of a Purchased Protection Plan is financed under the Agreement, Lessee understands that a portion of the price may be paid to Lessor, to Lessor's designee or to Case New Holland Insurance Agency, LLC as an administrative or marketing fee. Assignee may deliver the Purchased Protection Plan price to Lessor and if Assignee does so, Lessor is solely responsible for remitting payment to the provider. Provider and Lessee agree that they shall not raise any claim, defense or setoff against Assignee if the Lessor fails to remit payment to the provider, unless prohibited by law. Your Dealer may receive certain brand discounts, program funds and incentives (hereafter the "Discounts"), and may elect to use or keep those Discounts, as part of their overall pricing package options presented to you. The Discounts are owned by your Dealer. Some of the cost of your potential Purchased Protection Plan may be paid for by your Dealer, utilizing those Discounts and/or rolled into your lease payment. You may ask your Dealer for additional information concerning the potential separate costs contained in your lease payment of a potential Purchased Protection Plan, prior to executing your lease Agreement. Lessee's electronic signature below indicates Lessee's consent to receive this disclosure statement electronically at the email address provided by Lessee to Lessor. Lessee accepts this disclosure statement in electronic form, and has retained a copy of the disclosure statement electronically or otherwise.

The Purchased Protection Plan is recommended but is not required. The precise protection afforded is subject to the terms, conditions and exclusions of the contract as issued. Purchased Protection Plans are issued by a licensed, independent third party unrelated to CNH Industrial Capital America LLC or Case New Holland Insurance Agency, LLC.

Lessee requests Lessor/Assignee to attempt to obtain a Purchased Protection Plan from a third party provider and to include as part of the Rental Payments the price shown for the term as shown or for the total machine hours stated in the Purchased Protection Plan contract, whichever occurs first, for the Equipment listed below.

*Where NEW plan is shown below the Total Months and Total Machine Hours selected on new equipment plans include the Manufacturer's Base Warranty Period.*

*Where USED plan is shown below the Months and Machine Hours selected commence on the used equipment Purchase Protection Plan contract effective date.*

| | PLAN | EQUIPMENT SERIAL/PIN | PRICE | TERM (MONTHS) | | PLAN | EQUIPMENT SERIAL/PIN | PRICE | TERM (MONTHS) |
|---|---|---|---|---|---|---|---|---|---|
| 1 | NEW | JJAMJ250CPRK03138 | $6,840.00 | 48 | 14 | NEW | JJAMJ250CPRK03155 | $6,840.00 | 48 |
| 2 | NEW | JJAMJ250HPRK03203 | $6,840.00 | 48 | 15 | NEW | JJAMJ250CPRK03172 | $6,840.00 | 48 |
| 3 | NEW | JJAMJ250LPRK03233 | $6,840.00 | 48 | 16 | NEW | JJAMJ250JPRK03176 | $6,840.00 | 48 |
| 4 | NEW | JJAMJ250KPRK03130 | $6,840.00 | 48 | | | | | |
| 5 | NEW | JJAMJ250JPRK03386 | $6,840.00 | 48 | | | | | |
| 6 | NEW | JJAMJ250EPRK03150 | $6,840.00 | 48 | | | | | |
| 7 | NEW | JJAMJ250VPRK03164 | $6,840.00 | 48 | | | | | |
| 8 | NEW | JJAMJ250TPRK03173 | $6,840.00 | 48 | | | | | |
| 9 | NEW | JJAMJ250CPRK03177 | $6,840.00 | 48 | | | | | |
| 10 | NEW | JJAMJ250HPRK03184 | $6,840.00 | 48 | | | | | |
| 11 | NEW | JJAMJ250CPRK03205 | $6,840.00 | 48 | | | | | |
| 12 | NEW | JJAMJ250LPRK03295 | $6,840.00 | 48 | | | | | |
| 13 | NEW | JJAMJ250EPRK03154 | $6,840.00 | 48 | | | | | |

Executed this 06 day of February, 2024

X _____     MILLENKAMP CATTLE, INC.     _____
Signature of Lessee/Lessee's Representative     Printed Name     Title (not for an individual Lessee)

23140A   Rev. 01/24 Previous editions may not be used.

EXHIBIT 4 of 6

**CNH | CAPITAL**

020089   7 2793339

FX0000028373642338 3A1011

## MAINTENANCE PLAN ADDENDUM

This is the Maintenance Plan Addendum to that certain _____ Lease Agreement _____ dated _____ February 06 _____, 2024

between the Lessee and the Lessor for the Equipment identified therein (herein the "Agreement"), into which this Maintenance Plan Addendum is hereby incorporated. If the price of a Maintenance Plan is financed under the Agreement, Lessee understands that a portion of the price may be paid to Lessor by the manufacturer. Assignee may deliver the Maintenance Plan price to Lessor and if Assignee does so, Lessor is solely responsible for remitting payment to the manufacturer. Lessee agrees that they shall not raise any claim, defense or setoff against Assignee if the Lessor fails to remit payment to the manufacturer, unless prohibited by law. Your dealer may receive certain brand discounts, program funds and incentives (hereafter the "Discounts"), and may elect to use or keep those Discounts, as part of their overall pricing package options presented to you. The Discounts are owned by your Dealer. Some of the cost of your potential maintenance plan may be paid for by your dealer, utilizing those Discounts and/or rolled into your lease payment. You may ask your dealer for additional information concerning the potential separate costs contained in your lease payment of a potential maintenance plan, prior to executing your lease.

The Maintenance Plan is recommended but is not required. The precise protection afforded is subject to the terms, conditions and exclusions of the contract as issued by the manufacturer. Program may not be available in all states. Eligible equipment or other program details may vary by state based on state regulations.

Lessee requests Lessor/Assignee to attempt to obtain a Maintenance Plan from the manufacturer and to include as part of the Lease Payments the price as shown for the term as shown or for the total machine hours stated in the Maintenance Agreement Form, whichever occurs first, for the Equipment listed below.

_Where NEW plan is shown below the Total Months and Total Machine Hours selected on new equipment plans._

| | PLAN* | EQUIPMENT SERIAL/PIN | PRICE | TERM (MONTHS) | HOURS | | PLAN* | EQUIPMENT SERIAL/PIN | PRICE | TERM (MONTHS) | HOUR |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | NEW | JJAMJ250CPRK03138 | see Maintenance Agreement Form for full details | | | 14 | NEW | JJAMJ250LPRK03233 | see Maintenance Agreement Form for full details | | |
| 2 | NEW | JJAMJ250KPRK03130 | see Maintenance Agreement Form for full details | | | 15 | NEW | JJAMJ250LPRK03295 | see Maintenance Agreement Form for full details | | |
| 3 | NEW | JJAMJ250EPRK03154 | see Maintenance Agreement Form for full details | | | 16 | NEW | JJAMJ250JPRK03386 | see Maintenance Agreement Form for full details | | |
| 4 | NEW | JJAMJ250EPRK03150 | see Maintenance Agreement Form for full details | | | 17 | NEW | NA | see Maintenance Agreement Form for full details | | |
| 5 | NEW | JJAMJ250CPRK03155 | see Maintenance Agreement Form for full details | | | 18 | NEW | NA | see Maintenance Agreement Form for full details | | |
| 6 | NEW | JJAMJ250VPRK03164 | see Maintenance Agreement Form for full details | | | 19 | NEW | NA | see Maintenance Agreement Form for full details | | |
| 7 | NEW | JJAMJ250CPRK03172 | see Maintenance Agreement Form for full details | | | 20 | NEW | NA | see Maintenance Agreement Form for full details | | |
| 8 | NEW | JJAMJ250TPRK03173 | see Maintenance Agreement Form for full details | | | 21 | NEW | NA | see Maintenance Agreement Form for full details | | |
| 9 | NEW | JJAMJ250JPRK03176 | see Maintenance Agreement Form for full details | | | 22 | NEW | NA | see Maintenance Agreement Form for full details | | |
| 10 | NEW | JJAMJ250CPRK03177 | see Maintenance Agreement Form for full details | | | 23 | NEW | NA | see Maintenance Agreement Form for full details | | |
| 11 | NEW | JJAMJ250HPRK03184 | see Maintenance Agreement Form for full details | | | 24 | NEW | NA | see Maintenance Agreement Form for full details | | |
| 12 | NEW | JJAMJ250HPRK03203 | see Maintenance Agreement Form for full details | | | 25 | NEW | NA | see Maintenance Agreement Form for full details | | |
| 13 | NEW | JJAMJ250CPRK03205 | see Maintenance Agreement Form for full details | | | 26 | NEW | NA | see Maintenance Agreement Form for full details | | |

**Total Cost of Maintenance Plan**   261,588.00

*See Maintenance Agreement Form for the serial number(s) under plan.

Executed this  06  day of February , 2024

X_____
Signature of Lessee/Lessee's Representative

MILLENKAMP CATTLE, INC.
Printed Name

_____
Title (not for an individual Lessee)

23383A  Rev. 01/24 Previous editions may not be used.

**EXHIBIT 4 of 6**



020069   / 2793339

F%0000028373642313 9A1111

## GUARANTEE

In consideration of the extension of credit as referenced by the application number above, and to induce the Secured Party, as hereinafter defined, to extend credit on the agreement dated _____February 06_____ , _____2024_____ , (herein "Agreement") to:

MILLENKAMP CATTLE, INC.

of  471 NORTH 300 WEST, JEROME, ID 83338-5078

(collectively the "Lessee"), and for other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, each of the executing parties below (collectively the "Guarantor", whether one or more) makes this guarantee ("Guarantee") in favor of the Secured Party.

1. The Guarantor, pursuant to the terms of this Guarantee, unconditionally and irrevocably guarantees the payment, performance and complete fulfillment of all Obligations, as defined in the Agreement described above, of the Lessee to Secured Party, and any amendments or supplements thereto, whether heretofore or hereafter incurred, including any revisions, renewals, consolidations and extensions thereof, any of which may be made without notice to the Guarantor. Guarantor has received and reviewed a copy of the Agreement prior to executing this Guarantee.

2. This Guarantee does not limit, modify or cancel any unlimited guarantee that may have been previously given by the Guarantor, if any.

3. Notice of acceptance is waived (and, in Louisiana, all pleas of division and discussion are waived). Presentment, protest, demand, and notice of protest, demand and dishonor of any of the Obligations, and the exercise of possessory, collection or other remedies for the Obligations, are also hereby waived.

4. Without further authorization from or notice to Guarantor, Secured Party, in its sole discretion, may renew, refinance, revise, settle, alter, compromise, accelerate, extend, consolidate or otherwise change the time or manner of payments of any of the Obligations or increase or reduce the rate of interest thereon; or add or release any one or more other Guarantors. No exercise or nonexercise by Secured Party of any right hereby given to it, no dealing by Secured Party with Lessee or any other Guarantor, and no change, impairment, or extension of any right or remedy of Secured Party shall in any way affect the Guarantor's liability hereunder or give Guarantor any recourse against Secured Party.  Notice of default in any of the Obligations is expressly waived by Guarantor.

5. With or without notice to Guarantor, and without affecting the liability of Guarantor hereunder, Secured Party may from time to time before, at, or after any default by Lessee, together or separately, (1) accept additional collateral for the Obligations, (2) accept other collateral in exchange or substitution for the collateral then securing the Obligations, (3) obtain a credit bureau report for any Guarantor, and/or (4) surrender or release any collateral securing the Obligations.

6. This is a Guarantee of prompt payment and performance, and not of collection.  Secured Party does not have to exercise or exhaust its rights against the Lessee (or any other person or entity obligated with respect to the Obligations) or enforce its rights against any collateral before a claim is made against Guarantor.

7. It is the mutual intention of the parties hereto that the Guarantor shall be bound notwithstanding any claim or defense Lessee may have or raise, and Guarantor waives any defense Lessee may have.  Guarantor agrees to pay reasonable attorneys' fees and all costs and other expenses incurred by Secured Party in collecting or compromising any of the Obligations or in enforcing this Guarantee against Guarantor.

8. In the event that any payment by Lessee to Secured Party is held to constitute a preference under the bankruptcy laws, or if for any other reason the Secured Party is required to refund such payment or pay the amount thereof to any other person or party, such payment by Lessee to Secured Party shall not constitute a release of Guarantor from any liability hereunder, but Guarantor agrees to pay such amount to Secured Party on demand.

9. "Secured Party" shall mean CNH Industrial Capital America LLC and CNH Industrial America LLC and all parent, subsidiary and affiliated corporations and all successors and assigns of any of the foregoing.  This Guarantee shall bind the respective heirs, executors, administrators, successors, legal representatives and assigns of each Guarantor and shall inure to the benefit of any Secured Party.

10. Each Guarantor shall be jointly and severally (and, in Louisiana, "in solido" with the Lessee) liable to Secured Party.

11. EXCEPT IN GEORGIA OR CALIFORNIA OR WHERE OTHERWISE PROHIBITED BY LAW, EACH GUARANTOR WAIVES ANY AND ALL RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING RELATING TO THE OBLIGATIONS, THIS GUARANTEE, OR ANY OTHER DOCUMENT CONNECTED HEREWITH, OR ANY TRANSACTION ARISING FROM OR CONNECTED TO ANY OF THE FOREGOING.  EACH GUARANTOR REPRESENTS THAT THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY GIVEN.

Executed this  06  Day of  February  , 2024

X _____        WILLIAM J MILLENKAMP                              Not Applicable
Signature of Guarantor/Guarantor Representative        Printed Name                                             Title (not for individual Guarantor)

23139A      Rev. 01/24 Previous editions may not be used.                                                      Page 11 of 11

EXHIBIT 4 of 6

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)
CSC    1-800-858-5294

B. E-MAIL CONTACT AT SUBMITTER (optional)
SPRFiling@cscglobal.com

C. SEND ACKNOWLEDGMENT TO:   (Name and Address)

2759 94455
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: Idaho
(S.O.S.)

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME MILLENKAMP CATTLE, INC. | | | | |
|---|---|---|---|---|
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS 471 NORTH 300 WEST | CITY Jerome | STATE ID | POSTAL CODE 83338 | COUNTRY USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME CNH Industrial Capital America LLC | | | | |
|---|---|---|---|---|
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS 5729 Washington Avenue | CITY Racine | STATE WI | POSTAL CODE 53406 | COUNTRY USA |

4. COLLATERAL: This financing statement covers the following collateral:
2023, Case IH, 250, Serial No.: JJAMJ250HPRK03203, Magnum Tractor.
2023, Case IH, 250, Serial No.: JJAMJ250LPRK03233, Magnum Tractor.
2023, Case IH, 250, Serial No.: JJAMJ250CPRK03205, Magnum Tractor.
2023, Case IH, 250, Serial No.: JJAMJ250HPRK03184, Magnum Tractor.
2023, Case IH, 250, Serial No.: JJAMJ250CPRK03177, Magnum Tractor.
2023, Case IH, 250, Serial No.: JJAMJ250JPRK03176, Magnum Tractor.
2023, Case IH, 250, Serial No.: JJAMJ250CPRK03172, Magnum Tractor.
2023, Case IH, 250, Serial No.: JJAMJ250VPRK03164, Magnum Tractor.
2023, Case IH, 250, Serial No.: JJAMJ250VPRK03150, Magnum Tractor.
2023, Case IH, 250, Serial No.: JJAMJ250LPRK03295, Magnum Tractor.
2023, Case IH, 250, Serial No.: JJAMJ250CPRK03138, Magnum Tractor.
2023, Case IH, 250, Serial No.: JJAMJ250TPRK03173, Magnum Tractor.

5. Check only if applicable and check only one box:   Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility
6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
2759 94455

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 07/01/23)

EXHIBIT 4 of 6

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank
because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME

MILLENKAMP CATTLE, INC.

OR

9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME

OR

10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

11. ☐ ADDITIONAL SECURED PARTY'S NAME  or  ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

11a. ORGANIZATION'S NAME

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

2023, Case IH, 250, Serial No.: JJAMJ250CPRK03155, Magnum Tractor.
2023, Case IH, 250, Serial No.: JJAMJ250EPRK03154, Magnum Tractor. 2023, Case IH, 250, Serial No.:
JJAMJ250KPRK03130, Magnum Tractor.
2023, Case IH, 250, Serial No.: JJAMJ250JPRK03386, Magnum Tractor.
2023, Case IH, N/A, Serial No.: NA, Rear Remotes.
2023, Case IH, N/A, Serial No.: NA, Rear Remotes.

13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the
REAL ESTATE RECORDS  (if applicable)

14. This FINANCING STATEMENT:
☐ covers timber to be cut    ☐ covers as-extracted collateral    ☐ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16
(if Debtor does not have a record interest):

16. Description of real estate:

17. MISCELLANEOUS:

EXHIBIT 4 of 6

SECURED PARTY COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 07/01/23)

# UCC FINANCING STATEMENT **ADDENDUM**
FOLLOW INSTRUCTIONS

**9. NAME OF FIRST DEBTOR:**  Same as line 1a or 1b on Financing Statement; if line 1b was left blank
because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME

MILLENKAMP CATTLE, INC.

OR

9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S)　　SUFFIX

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**10. DEBTOR'S NAME:**  Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name;
do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME

OR

10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)　　SUFFIX

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**11.** ☐ ADDITIONAL SECURED PARTY'S NAME  or  ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

11a. ORGANIZATION'S NAME

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):**
2023, Case IH, N/A, Serial No.: NA, Rear Remotes.
2023, Case IH, N/A, Serial No.: NA, Rear Remotes.
2023, Case IH, N/A, Serial No.: NA, Rear Remotes.
2023, Case IH, N/A, Serial No.: NA, Rear Remotes.
2023, Case IH, N/A, Serial No.: NA, Rear Remotes.
2023, Case IH, N/A, Serial No.: NA, Rear Remotes.

**13.** ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the
REAL ESTATE RECORDS  (if applicable)

**14.** This FINANCING STATEMENT:
☐ covers timber to be cut  ☐ covers as-extracted collateral  ☐ is filed as a fixture filing

**15.** Name and address of a RECORD OWNER of real estate described in item 16
(if Debtor does not have a record interest):

**16.** Description of real estate:

**17. MISCELLANEOUS:**

EXHIBIT 4 of 6

# UCC FINANCING STATEMENT **ADDENDUM**

FOLLOW INSTRUCTIONS

**9. NAME OF FIRST DEBTOR:** Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

| | |
|---|---|
| 9a. ORGANIZATION'S NAME | |
| **MILLENKAMP CATTLE, INC.** | |

OR

9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S)        SUFFIX

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**10. DEBTOR'S NAME:** Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME

OR

10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)        SUFFIX

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**11.** ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

11a. ORGANIZATION'S NAME

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):**
2023, Case IH, N/A, Serial No.: NA, Rear Remotes.
2023, Case IH, N/A, Serial No.: NA, Rear Remotes.
2023, Case IH, N/A, Serial No.: NA, Rear Remotes.
2023, Case IH, N/A, Serial No.: NA, Rear Remotes.
2023, Case IH, N/A, Serial No.: NA, Rear Remotes.
2023, Case IH, N/A, Serial No.: NA, Rear Remotes.

| **13.** ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable) | **14.** This FINANCING STATEMENT: ☐ covers timber to be cut  ☐ covers as-extracted collateral  ☐ is filed as a fixture filing |
|---|---|
| **15.** Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest): | **16.** Description of real estate: |

**17. MISCELLANEOUS:**

EXHIBIT 4 of 6

SECURED PARTY COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 07/01/23)

## UCC FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank
because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME

MILLENKAMP CATTLE, INC.

OR

9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S)                                    SUFFIX

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name;
do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME

OR

10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)                                    SUFFIX

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

11. ☐ ADDITIONAL SECURED PARTY'S NAME  or  ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

11a. ORGANIZATION'S NAME

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):
2023, Case IH, N/A, Serial No.: NA, Rear Remotes.
2023, Case IH, N/A, Serial No.: NA, Rear Remotes
THIS FINANCING STATEMENT IS BEING FILED SOLELY AS A PRECAUTION IF, CONTRARY TO THE INTENTION
OF THE PARTIES DESCRIBED ABOVE AS LESSEE AND LESSOR, THE TRANSACTION RELATING TO THE
PROPERTY DESCRIBED HEREIN IS DEEMED TO BE A SECURITY AGREEMENT RATHER THAN A LEASE WITHIN
THE MEANING OF 1-201 (37) OF THE UNIFORM COMMERICAL CODE.  THE EQUIPMENT MAY DISPLAY A
SERIAL

13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the
REAL ESTATE RECORDS  (if applicable)

14. This FINANCING STATEMENT:
☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16
(if Debtor does not have a record interest):

16. Description of real estate:

17. MISCELLANEOUS:

EXHIBIT 4 of 6

SECURED PARTY COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 07/01/23)

# UCC FINANCING STATEMENT **ADDENDUM**
FOLLOW INSTRUCTIONS

**9. NAME OF FIRST DEBTOR:** Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

| | |
|---|---|
| 9a. ORGANIZATION'S NAME | |
| MILLENKAMP CATTLE, INC. | |

OR

| |
|---|
| 9b. INDIVIDUAL'S SURNAME |
| FIRST PERSONAL NAME |
| ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**10. DEBTOR'S NAME:** Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| | | | |
|---|---|---|---|
| 10a. ORGANIZATION'S NAME | | | |

OR

| 10b. INDIVIDUAL'S SURNAME | | | | |
|---|---|---|---|---|
| INDIVIDUAL'S FIRST PERSONAL NAME | | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | | SUFFIX |
| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**11.** ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

| 11a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| 11c. MAILING ADDRESS | CITY | STATE POSTAL CODE | COUNTRY |

**12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):**
NUMBER OR OTHER IDENTIFYING NUMBER, INCLUDING BUT NOT LIMITED TO, THE FOLLOWING: PRODUCT IDENTIFICATION NUMBER, TRACTOR NUMBER OR CHASSIS NUMBER..

**13.** ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

**14.** This FINANCING STATEMENT:
☐ covers timber to be cut ☐ covers as-extracted collateral ☐ is filed as a fixture filing

**15.** Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

**16.** Description of real estate:

**17. MISCELLANEOUS:**

EXHIBIT 4 of 6

**SECURED PARTY COPY** — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 07/01/23)

B0881-3269 02/13/2024 10:03 AM Received by Office of the Idaho Secretary of State

20240210191



**STATE OF IDAHO**
*Office of the secretary of state, Phil McGrane*
**UCC1 FINANCING STATEMENT**
Idaho Secretary of State
PO Box 83720
Boise, ID 83720-0080
(208) 334-2301
Filing Fee - $3 submitted online, $6 print & mail or $12 if 3 or more
pages. Make checks payable to Secretary of State.

| Contact at Filer: | |
|---|---|
| Contact Name | CORPORATION SERVICE COMPANY |
| Contact Phone | 1-800-858-5294 |
| Contact Email | SPRFiling@cscglobal.com |

| Send acknowledgment to: | |
|---|---|
| Name | CORPORATION SERVICE COMPANY |
| Address | 801 ADLAI STEVENSON DRIVE SPRINGFIELD, IL 62703 |

Debtors:

| DEBTOR'S NAME | MAILING ADDRESS |
|---|---|
| MILLENKAMP CATTLE, INC. | 471 NORTH 300 WEST JEROME, ID 83338 |

Secured Parties:

| SECURED PARTY'S NAME | MAILING ADDRESS |
|---|---|
| CNH INDUSTRIAL CAPITAL AMERICA LLC | 5729 WASHINGTON AVENUE RACINE, WI 53406 |

Collateral:

EXHIBIT 4 of 6

The financing statement covers the following collateral:

2023, Case IH, 250, Serial No.: JJAMJ250HPRK03203, Magnum Tractor.
2023, Case IH, 250, Serial No.: JJAMJ250LPRK03233, Magnum Tractor.
2023, Case IH, 250, Serial No.: JJAMJ250CPRK03205, Magnum Tractor.
2023, Case IH, 250, Serial No.: JJAMJ250HPRK03184, Magnum Tractor.
2023, Case IH, 250, Serial No.: JJAMJ250CPRK03177, Magnum Tractor.
2023, Case IH, 250, Serial No.: JJAMJ250JPRK03176, Magnum Tractor.
2023, Case IH, 250, Serial No.: JJAMJ250CPRK03172, Magnum Tractor.
2023, Case IH, 250, Serial No.: JJAMJ250VPRK03164, Magnum Tractor.
2023, Case IH, 250, Serial No.: JJAMJ250VPRK03150, Magnum Tractor.
2023, Case IH, 250, Serial No.: JJAMJ250LPRK03295, Magnum Tractor.
2023, Case IH, 250, Serial No.: JJAMJ250CPRK03138, Magnum Tractor.
2023, Case IH, 250, Serial No.: JJAMJ250TPRK03173, Magnum Tractor.
2023, Case IH, 250, Serial No.: JJAMJ250CPRK03155, Magnum Tractor.
2023, Case IH, 250, Serial No.: JJAMJ250EPRK03154, Magnum Tractor.
2023, Case IH, 250, Serial No.: JJAMJ250KPRK03130, Magnum Tractor.
2023, Case IH, 250, Serial No.: JJAMJ250JPRK03386, Magnum Tractor.
2023, Case IH, N/A, Serial No.: NA, Rear Remotes.
2023, Case IH, N/A, Serial No.: NA, Rear Remotes.
2023, Case IH, N/A, Serial No.: NA, Rear Remotes.
2023, Case IH, N/A, Serial No.: NA, Rear Remotes.
2023, Case IH, N/A, Serial No.: NA, Rear Remotes.
2023, Case IH, N/A, Serial No.: NA, Rear Remotes.
2023, Case IH, N/A, Serial No.: NA, Rear Remotes.
2023, Case IH, N/A, Serial No.: NA, Rear Remotes.
2023, Case IH, N/A, Serial No.: NA, Rear Remotes.
2023, Case IH, N/A, Serial No.: NA, Rear Remotes.
2023, Case IH, N/A, Serial No.: NA, Rear Remotes.
2023, Case IH, N/A, Serial No.: NA, Rear Remotes.
2023, Case IH, N/A, Serial No.: NA, Rear Remotes.
2023, Case IH, N/A, Serial No.: NA, Rear Remotes.
2023, Case IH, N/A, Serial No.: NA, Rear Remotes.
2023, Case IH, N/A, Serial No.: NA, Rear Remotes
THIS FINANCING STATEMENT IS BEING FILED SOLELY AS A PRECAUTION IF, CONTRARY TO THE INTENTION OF THE PARTIES DESCRIBED ABOVE AS LESSEE AND LESSOR, THE TRANSACTION RELATING TO THE PROPERTY DESCRIBED HEREIN IS DEEMED TO BE A SECURITY AGREEMENT RATHER THAN A LEASE WITHIN THE MEANING OF 1-201 (37) OF THE UNIFORM COMMERICAL CODE.  THE EQUIPMENT MAY DISPLAY A SERIAL NUMBER OR OTHER IDENTIFYING NUMBER, INCLUDING BUT NOT LIMITED TO, THE FOLLOWING: PRODUCT IDENTIFICATION NUMBER, TRACTOR NUMBER OR CHASSIS NUMBER..

The collateral is:

Designations:
Select a designation which describes this financing statement:  Not Applicable

EXHIBIT 4 of 6

B0081-3270 02/13/2024 10:03 AM Received by Office of the Idaho Secretary of State

**CNH | CAPITAL**

**EQUIPMENT OPERATING
LEASE AGREEMENT**



020069 / 2793337

| *Lessee(s) Legal Name(s) | Address | City | St | Zip |
|---|---|---|---|---|
| MILLENKAMP CATTLE, INC. | 471 NORTH 300 WEST | JEROME | ID | 83338-5078 |

| *Lessor Legal Name | Address | City | St | Zip |
|---|---|---|---|---|
| BURKS TRACTOR COMPANY, INC. | 3140 KIMBERLY RD. | TWIN FALLS | ID | 83301 |

The undersigned Lessee(s) (collectively called "Lessee") hereby leases from Lessor and Lessor hereby leases to Lessee the following goods (the "Equipment") under the terms set forth herein. The Equipment is leased for commercial ☐ business use ☑ agricultural use.

| NEW*/USED | EQUIPMENT DESCRIPTION | MODEL | SERIAL#/PIN | HOURS | "MAX ANN USE" | "EXCESS USE" |
|---|---|---|---|---|---|---|
| | See attached Multiple Unit Addendum | | | | | |

*New Equipment is unused equipment, a rental unit or a demonstrator, not previously sold, for which the manufacturer will supply all or a portion of a new equipment warranty; this Equipment may have been manufactured in a year prior to the year of this lease.

Location of Equipment: Address (if other than Lessee address) _____ City _____ St ___ Zip ___

The beginning date of this agreement (the "Agreement" or this "Lease") is  02-06-2024  ("Beginning Date") and the termination date of the Agreement is  02-06-2027  ("Termination Date"). There shall be a security deposit of $  N/A  ("Security Deposit") and a purchase option price of $  1,396,318.52  ("Purchase Option Price").
Lease Payments:  Advance Payment of $  15,000.00  followed by payments in accordance with the following schedule, PLUS APPLICABLE TAXES.

| NUMBER OF PAYMENTS | PERIOD OF PAYMENTS | AMOUNT OF EACH PAYMENT | BEGINNING MM/DD/YYYY | NUMBER OF PAYMENTS | PERIOD OF PAYMENTS | AMOUNT OF EACH PAYMENT | BEGINNING MM/DD/YYYY |
|---|---|---|---|---|---|---|---|
| 34 | 1 MONTHS | $ 17,169.92 | 03/06/2024 | | | $ | |
| 1 | 1 MONTHS | $ 17,169.89 | 01/06/2027 | | | $ | |
| | | $ | | | | $ | |
| | | $ | | | | $ | |
| | | $ | | | | $ | |
| | | $ | | | | $ | |

The "Obligations" shall mean Lessee's responsibility to pay the payments noted in this Lease (the "Lease Payments") and to perform any other existing or future obligations of Lessee to Lessor, or to the Assignee under this Lease or any other agreement between or among Lessee and Assignee, or Lessor or affiliate of Lessor and Assignee.

**LESSEE HAS SELECTED THE EQUIPMENT. THE MANUFACTURER AND ITS REPRESENTATIVES ARE NOT LESSOR'S NOR ASSIGNEE'S AGENTS AND ARE NOT AUTHORIZED TO MODIFY THE TERMS OF THIS LEASE. LESSEE IS AWARE OF THE NAME OF THE MANUFACTURER OF EACH ITEM OF EQUIPMENT AND LESSEE WILL CONTACT EACH MANUFACTURER FOR A DESCRIPTION OF WARRANTY RIGHTS, LIMITATIONS AND DISCLAIMERS. LESSOR MAKES NO WARRANTIES TO LESSEE, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, SUITABILITY OR OTHERWISE. LESSOR PROVIDES THE EQUIPMENT TO LESSEE AS-IS. LESSOR, NOR ASSIGNEE, SHALL BE LIABLE FOR SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES.***

*Some states do not allow these limitations and exclusions, and they shall not apply to the extent such limitations or exclusions are not allowed by applicable state law.*

Lessee has received and examined the Equipment, which is in good operating order and condition and is as described above.  Lessee acknowledges receipt of a copy of this Agreement. Lessee agrees to lease the Equipment described above and based on the terms of this Agreement. The parties intend that this agreement: (a) creates a "Lease" under Section 1-203 of the Uniform Commercial Code ("UCC"); (b) is a "Lease" as defined in Section 2A-103(1)(j) of the UCC and (c) satisfies every element under Section 2A-103(1)(g) of the UCC.

**NOTICE TO THE LESSEE:**
1. DO NOT SIGN THIS BEFORE YOU READ THE TERMS ON THE FIVE AGREEMENT PAGES (PLUS ANY ADDENDUMS), EVEN IF OTHERWISE ADVISED.
2. DO NOT SIGN THIS IF IT CONTAINS ANY BLANK SPACES.
3. YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN. KEEP IT TO PROTECT YOUR LEGAL RIGHTS.
4. LESSEE REPRESENTS THAT THE EQUIPMENT IS NOT BEING LEASED FOR FAMILY, HOUSEHOLD OR PERSONAL USE.

**ADDITIONAL PROVISIONS CONCERNING RIGHTS AND DUTIES OF THE PARTIES ON THE ADDITIONAL PAGES OF THIS AGREEMENT ARE A PART OF THIS AGREEMENT.**

| X _____ | MILLENKAMP CATTLE, INC. | X _____ | 02-06-2024 |
|---|---|---|---|
| Signature of Lessee/Lessee's Representative | Printed Name | Title (not for an Individual Lessee ) | Date |

| X _____ | | | |
|---|---|---|---|
| Signature of Lessee/Lessee's Representative | Printed Name | Title (not for an Individual Lessee ) | Date |

Dealer (herein "Assignor" or "Lessor") hereby assigns all of its rights, title and interest in and to this Agreement and the Equipment to CNH Industrial Capital America LLC (herein "Assignee" or "CNH Capital"), under terms also described in the Retail Finance Agreement, Program Procedures, Dealer Handbook or other related documents (collectively hereinafter the "RFA") executed by the Assignor and Assignee. Lessor has obtained a signed credit application for this Agreement. The Equipment has been paid in full to Dealer or will be paid in full with Agreement proceeds pursuant to the terms of the RFA. Assignor waives notice of acceptance of this Assignment and notice of non-payment and non-performance of this Agreement and any other notices required by law and waives any and all setoffs and counterclaims. The Assignment shall become effective upon delivery of this Agreement to Assignee or upon Assignee's payment of the lease price therefor, whichever occurs first.

Basis of Acceptance ☐ Nonrecourse ☐ Repurchase ☐ Full Recourse ☑ Other
Other explanation  See attached Lease Guarantee Addendum

| X _____ | BURKS TRACTOR COMPANY, INC. | 02-06-2024 |
|---|---|---|
| Signature of Lessor's Representative | Printed Lessor Name | Date |

21009A    Rev 01/24  Previous editions may not be used.                                                                   Page 1 of 9

EXHIBIT 5 of 6



**CNH CAPITAL**

020069   / 2793337

FX000002 8373662 1009A0209

**Agreement Provisions**

1. **Assignment; Conditions to Lease.** Lessor hereby assigns this Agreement, and any related guarantee(s) ("Guarantee") (together collectively the "Assignment") to Assignee. Lessee acknowledges that Lessor has the right to assign this Agreement and such Guarantee, that all rights and benefits but no obligations (if any) of Lessor under this Agreement may be exercised by Assignee and that no obligations (if any) of Lessor pass to Assignee. Lessee shall make all payments due under this Agreement directly to Assignee. This Agreement shall be binding on and inure to the benefit of Lessee, Lessor and Assignee and their respective heirs, personal representatives, successors and assigns; provided, however, that Lessee may not assign its interest in the Equipment or its rights or obligations under this Agreement to any person without Assignee's prior written consent. LESSEE SHALL NOT ASSERT AGAINST CNH INDUSTRIAL CAPITAL AMERICA LLC ANY CLAIM OR DEFENSE WHICH LESSEE MAY HAVE AGAINST THE INITIAL LESSOR (I.E., THE ENTITY APPEARING IN THE TOP OF PAGE 1 OF THIS LEASE. Lessor and Assignee have no obligation to lease the Equipment to Lessee until they receive: (a) a fully executed Agreement; (b) evidence of insurance that complies with the requirements of Assignee; (c) such precautionary financing statements, or other documents, as Lessor deems necessary or appropriate to evidence and/or perfect Lessor's interest in the Equipment in accordance with the applicable UCC or other appropriate law; and (d) such other documents as they may reasonably request. Lessee hereby authorizes Assignee or its designee to execute and file any precautionary financing statements and other public notification documentation, and any amendments thereto describing the Equipment as Lessor deems necessary or appropriate. Lessee hereby irrevocably appoints Assignee or its designee as Lessee's agent and attorney-in-fact to sign such instruments on Lessee's behalf and to file them. CNH Capital may make UCC related filings and/or termination statements pursuant to this Agreement. CNH Capital reserves its right to assess additional fees and other charges to the Obligations including but not limited to, if fees and other charges increase or other actions are needed to protect its lien upon the Equipment.

2. **Title.** This Agreement is a true lease only (and not a conditional sale). Lessee does not have any right, title or interest in the Equipment, except, so long as no event of default has occurred and is continuing hereunder, the right to use it during the term hereof and, if so indicated, the option to purchase it as provided under this Agreement.

3. **Late Charges/Default Rate/Returned Checks.** Lessee shall pay a late charge on each payment not paid within 10 days after the due date at the highest amount, both as permitted by applicable law. Lessee shall pay interest on the unpaid balance after maturity (as scheduled, by acceleration or otherwise) and at the highest rate, as permitted by applicable law. If a check is returned for any reason, Assignee may charge Lessee a returned check processing fee as established by Lessor or Assignee from time to time not to exceed the maximum permitted under applicable law. Assignee may apply any payment or proceed received toward the Obligations, in its sole discretion regardless of how requested or directed. Lessee shall make all payments in lawful money of the United States of America. If any fees and/or other charges scheduled and/or assessed under any part of this Agreement exceed the maximum permitted by applicable law, any Excess shall be applied toward a reduction of the principal balance and that shall be the sole and satisfactory remedy under this Agreement.

4. **Notification of Change in Residence, Principal Office, or Organizational Form.** If Lessee changes (as applicable): (a) its state of principal residence; or (b) the state in which its chief executive office is located; or (c) the state in which it is organized; or (d) its form of organization (such as from an individual to a corporation); or (e) its name, as printed on a State filed registration document or individual name, as printed on a valid driver's license, then Lessee will notify Assignee in writing promptly, but in no event more than 30 days after such change.

5. **Waiver of Defenses; Indemnification.** Lessee shall not assert against Assignee any claim or defense which Lessee might have against Lessor, the manufacturer of the Equipment or any other person. Lessee agrees that its obligation to remit payments will not be subject to, and it will not make any claim against Assignee for breach of any representation, warranty or condition with respect to the Equipment and that its obligation to pay Assignee amounts under this Lease is absolute and unconditional without abatement, reduction, setoff, counterclaim or interruption for any reason whatsoever, including any dispute which now or hereafter arises between Lessee and Lessor or any other person. Time is of the essence. Lessee shall defend and indemnify Lessor and Assignee and its officers, directors, employees, affiliates and agents from and against any damage, loss, theft or destruction of the Equipment or any part thereof, and from and arising out of or connected with this Lease, the use, condition (including without limitation, all defects whether or not discoverable by Lessee or Lessor) or operation of the Equipment or any part thereof. Lessee shall promptly notify Assignee of any loss, damage, theft, destruction, injury, claim, demand, cost or expense related to this Lease or the Equipment. Lessee shall also defend and indemnify Lessor and Assignee and its officers, directors, employees, affiliates and agents from and against all claims, losses and out-of-pocket costs (including attorneys' fees) arising out of: (a) the use (by Lessee, sublessee or any other party) or condition of the Equipment; (b) default by Lessee under the Lease; or (c) the repossession of the Equipment, after default by the Lessee, by the Lessor or the Assignee. TO THE EXTENT PERMITTED BY APPLICABLE LAW, LESSEE HEREBY WAIVES ANY AND ALL RIGHTS AND REMEDIES CONFERRED UPON A LESSEE UNDER ARTICLE 2A OF THE UCC AND ANY RIGHTS NOW OR HEREAFTER CONFERRED BY ANY OTHER STATUTE OR OTHERWISE, WHICH MAY LIMIT OR MODIFY ANY OF LESSOR'S RIGHTS OR REMEDIES.

6. **Lessee's Covenants.** Lessee shall: (a) keep the Equipment at the Equipment Location listed on page 1 of this Agreement and not remove the Equipment from such locations, except temporarily in connection with its ordinary use or repair, unless Assignee consents in writing; (b) maintain the Equipment in good condition and repair and not permit its intended function or value to be impaired and Lessee will make sure that the manufacturer's warranty remains valid. Lessee will pay all the costs of performing these obligations; (c) keep the Equipment free of all liens, encumbrances and security interests of all persons other than Lessor and Assignee; (d) defend the Equipment against all claims and legal proceedings by persons other than Assignee; (e) pay and discharge when due all taxes, fees, levies and other charges upon the Equipment; (f) pay when due all taxes arising from the purchase of the Equipment under this Agreement, excluding any taxes based upon Lessor's net income; (g) use the Equipment solely in the conduct of Lessee's business; (h) ensure the Equipment will be used solely within the intended uses of the manufacturer; (i) not sell, lease or otherwise dispose of the Equipment nor permit the Equipment to become an accession to other goods or a fixture; (j) not permit the Equipment to be used in violation of any law, regulation or policy of insurance; (k) strictly follow the terms on page 1 of this Agreement; (l) perform (at Lessee's expense) all maintenance and repairs necessary to keep the Equipment in a good a condition as when delivered to Lessee, reasonable wear excepted; (m) not permit the Equipment to be used by, or to be in the possession of, anyone other than Lessee or Lessee's employees; and (n) timely pay the nonrefundable Obligations from the Beginning Date through the term on the Lease, as set forth on page 1. Lessee represents and warrants that: (i) each individual executing this Agreement authorized by or on behalf of Lessee has the requisite power and authority to execute this Agreement and all related documents; (ii) Lessee is fully authorized to perform its obligations and consummate the transactions contemplated under this Agreement and related documents the execution and delivery of this Agreement and all related documents; (iii) the execution and delivery of this Agreement and all related documents and the consummation of the transactions under this Agreement have been duly authorized by Lessee; and (iv) this Agreement and all related documents constitute valid and legally binding obligations of Lessee, enforceable against Lessee in accordance with their respective terms.

7. **Insurance.** Lessee shall keep Assignee's interests in the Equipment insured against fire, theft, physical damage and other hazards under policies listing Assignee as Lender's loss payee, with such provisions, for such amounts (but not less than the Termination Value, under this Agreement) and by such insurers and terms as shall be satisfactory to Assignee from time to time, and shall furnish to Assignee evidence of such insurance satisfactory to Assignee. Such insurance shall provide at least 30 days' written notice of cancellation, lapse or expiration to Assignee. Lessee assigns (and directs any insurer to pay) to Assignee Lessee's interest in the proceeds of any and all insurance related to the Equipment and any premium refund, and Assignee may, at its option, apply such proceeds and refunds to any unpaid balance of the Obligations, whether or not due, and/or to repair or restore the Equipment. Lessee must make all payments due under this Agreement whether or not the Equipment is insured or underinsured. Assignee is authorized, in the name of Lessee or otherwise, to make, adjust and/or settle claims under any insurance on the Equipment, or cancel the same after the occurrence of an event of default, or set off amounts owed Assignee against any rebates, credits or refunds due Lessee and/or any guarantor. If Lessee purchased physical damage insurance that is financed under this Agreement, Lessee hereby requests and authorizes Lessor (provided Lessor is properly licensed to do so) or its designee: (a) to arrange physical damage insurance for the benefit of Lessor or Assignee and Lessee that covers physical damage to the Equipment; (b) to replace or otherwise modify such insurance as Lessor deems appropriate, and (c) to be Lessee's attorney-in-fact to make claim for, receive payment of and execute, endorse and negotiate all documents, checks or drafts received in payment of loss, damage or premium refunds under any insurance. This Agreement includes and hereby incorporates by reference any Insurance Addendum signed in connection with this Agreement. STATEMENT TO LESSEE: THE PHYSICAL DAMAGE INSURANCE PURCHASED UNDER THE TERMS OF THIS AGREEMENT COVERS ONLY LOSS OF OR DAMAGE TO THE EQUIPMENT. LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED AS PART OF THE PHYSICAL DAMAGE INSURANCE. LESSEE UNDERSTANDS THAT IF INSURANCE IS FINANCED UNDER THIS AGREEMENT, PREPAYMENT OF LESSEE'S OBLIGATIONS OR TERMINATION OF THIS AGREEMENT WILL RESULT IN CANCELLATION OF INSURANCE COVERAGE, UNLESS OTHERWISE EXPLICITLY AGREED TO IN WRITING BY ASSIGNEE.

EXHIBIT 5 of 6



020069  / 2793337

Agreement Provisions

FX0000028373662 1009A0309

8. **Liability Insurance.** Lessee shall obtain and maintain, liability insurance from a carrier acceptable to Assignee in such form and subject to such limits as Assignee may reasonably require protecting the interests of Lessee and Assignee against claims for damages or injuries to persons or property caused by the use, condition, holding or operation of the Equipment. Lessor shall ensure that Lessee has liability insurance in place before the lease commences, having minimum coverage of at least $1,000,000.00 total liability per occurrence, with CNH Industrial Capital America LLC named as additional insured.

9. **Modifications and Waivers.** This Agreement sets forth the entire understanding among Lessor, Assignee and Lessee. No modification, amendment or extension of this Agreement and no waiver of any provision of this Agreement shall be valid unless in writing and signed by the parties and a waiver of any default hereunder by Assignee shall not constitute a waiver of any other prior or subsequent default, except that Lessee authorizes Assignee to insert in this Agreement the serial number/PIN and/or model number of any Equipment if this information is unknown when this Agreement is executed or to correct any errors in such numbers or any other patent errors in the description of the Equipment.

10. **Taxes.** Lessee agrees to pay all taxes (or reimburse Assignee for any taxes) imposed by any government, political subdivision or taxing authority upon or with respect to: (a) the purchase, ownership, possession, acceptance, relocation, repair, lease, return, sale or use of the Equipment; (b) the Lease Payments or any other payment required under this Agreement; or (c) any of the transactions contemplated by this Agreement. The term "taxes" shall mean any and all fees (including, without limitation, license, documentation, recording and registration fees), taxes (including, without limitation, gross receipts, sales, lease, use, value added, goods and services, property (tangible and intangible), excise and stamp taxes), licenses, levies, duties, assessments or withholdings of any nature whatsoever (together with any and all penalties, fines, additions to tax and interest thereon), except all taxes on or measured by Assignee's net income. Taxes may be included as part of your Lease Payments.

11. **Tax Representations and Indemnification.** As the owner, Assignee shall be entitled to claim all items of deduction, including depreciation, on the Equipment that are consistent with ownership for tax purposes (the "Tax Benefits"). Lessee will not take or omit to take any action which would cause this Agreement not to be treated as a true lease for U.S. federal tax purposes. If Assignee loses the right to claim or is not entitled to claim all or any portion of the Tax Benefits, or if all or any of the Tax Benefits claimed by Lessor are disallowed, recaptured, reduced, or eliminated, or if Assignee originally contemplated after-tax return is adversely affected (a "Loss of Tax Benefits") as a result of: (a) the inaccuracy or falsity of any representation or warranty made by Lessee in this Agreement; (b) Lessee's breach of or failure to perform any covenant or agreement hereunder; or (c) any other act or omission by Lessee, then Lessee shall pay Assignee such amount as shall, in Assignee's reasonable opinion, cause Assignee to receive over the full term of this Agreement the same after-tax return that Assignee would have realized if there had not been a Loss of Tax Benefits (the "Original Net Economic Return"). If, as a result of any change in U.S. federal and/or applicable state income tax law enacted after the date of this Agreement, Lessor shall have a Loss of Tax Benefits, Lessee shall pay Assignee, upon Assignee's request, that amount which will provide Assignee the Original Net Economic Return. Any amounts due hereunder shall be payable at Assignee's election either as supplemental Lease Payments during the remaining term of this Agreement or as a lump sum payable on demand. Neither Lessor, Assignee nor Lessee makes any representation to the other concerning the proper treatment of this Agreement for tax purposes by either party.

12. **Authority of Assignee to Perform for Lessee.** If Lessee fails to perform any of Lessee's duties set forth in this Agreement (including, without limitation, the purchase of insurance), Assignee may at its option, in Lessee's name or otherwise, take any such action, including, without limitation, signing Lessee's name or paying any amount so required, and all costs and expenses incurred by Assignee in connection therewith shall form part of the Obligations and shall be payable by Lessee upon demand with interest from the date of payment by Assignee at the highest rate permitted by applicable law.

13. **Default/Cross Default.** Lessee shall be in default under this Agreement, and any other agreement with or assigned to Assignee, if any of the following occurs (each, an "event of default"): (a) Lessee fails to pay when due any of the Obligations, or to perform any covenant or other obligation of Lessee under this Agreement or any other agreement with or assigned to Assignee; (b) Lessee or any guarantor dies, ceases to exist, becomes insolvent or the subject of bankruptcy, insolvency or liquidation proceedings, attempts to or does assign this Agreement or attempts to or does remove, sell, transfer, further encumber, part with possession of or sublet any Equipment; (c) any warranty or representation made by Lessee or any guarantor to induce Lessor or Assignee to extend credit to Lessee, under this Agreement or otherwise, is false in any material respect when made; (d) Lessee fails to maintain insurance required hereunder or fails to comply with the requirements of any such insurance; (e) any other event occurs that causes Assignee, in good faith, to consider that payment or performance of the Obligations is impaired or that the Equipment is at risk; (f) the Equipment is impounded or confiscated by any federal, state, local governmental authority or third party; (g) Lessee fails to produce Equipment for inspection within 10 days, upon demand; or (h) Lessee breaches any of the other terms of this Agreement or any other agreement with or assigned to Assignee.

14. **Expenses.** To the extent not prohibited by law, Lessee shall reimburse Lessor or Assignee for any expense incurred by Lessor or Assignee in protecting, defending or enforcing their rights under this Agreement, including, without limitation, reasonable attorneys' fees and legal expenses and all expenses of taking possession, transporting, holding, repairing, refurbishing, preparing for disposition and disposing of the Equipment, and all expenses and costs incurred in collecting the Obligations, including collection agency fees based on a maximum of 25% of the Obligations, and all shall be part of the Obligations.

15. **Remedies.** If Lessee is in default, Assignee may terminate this Agreement and/or exercise all other rights and remedies provided by law and by this Agreement, and Lessee will lose all rights to keep the Equipment. Assignee will have the right to take the Equipment, without notice or hearing, and, Lessee or any guarantor also expressly waives any right to notice or a prior hearing or to require Assignee to post any bond. To take it, Lessee consents that Assignee may enter the premises where the Equipment is stored and remove it. Assignee may take any property contained within the Equipment at the time of repossession and hold it for Lessee. Neither the termination of this Agreement nor the repossession of the Equipment by Assignee shall release Lessee from its Obligations under this Agreement. Lessee agrees that Assignee may sell the Equipment (including at wholesale), re-lease it or otherwise dispose of it in a commercially reasonable manner. Lessee agrees to pay Assignee, as liquidated damages for loss of bargain and not as a penalty, an amount equal to: (a) the Termination Value (as hereinafter defined); plus (b) a processing fee ("Processing Fee") equal to the lower of $500.00 or the maximum amount permitted by applicable law. The net proceeds of the disposition of the Equipment by sale or re-lease for the remaining term of lease under this Agreement, shall reduce the Lessee's Obligations pursuant to the preceding sentence. Any costs to Lessor and/or Assignee arising from repossessing the Equipment and/or selling the Equipment and/or re-leasing the Equipment for the remaining term of lease under this Agreement, including, without limitation, reasonable legal fees and costs, shall increase the Lessee's Obligations pursuant to the preceding sentences. Lessee shall remain liable for any deficiency. All Lessees and Guarantors consent to Assignee obtaining credit bureau reports upon them. Any surplus following any disposition of the Equipment shall belong to Assignee. All rights and remedies may be exercised by Assignee either separately or in combination and any action taken by Assignee to recover payment from Lessee of the Obligations shall not limit Assignee's rights with respect to the Equipment. Assignee can apply all proceeds or payments in its discretion.

16. **Excessive Wear and Tear.** All warranty and product improvement programs are to be completed prior to the Termination Date of the lease relating to the Equipment. For purposes of this Agreement, excessive wear and tear shall mean and include any of the following: (a.) Cab/Operator Platform. (a.1) Heavy interior soil or strong odor. (a.2) Unclean condition of the cab. (a.3) Holes, tears or burns on the dash, floor covers, seats, headliners, upholstery or interior. (a.4) Hour Meter: If the hour meter or dash has been tampered with, Assignee has the right to estimate excess hours plus any additional penalties deemed appropriate. (a.5) Seat and/or seat belts broken. (b.) Exterior. (b.1) Dents larger than 2" in diameter or excessive number of dents. (b.2) Scratches - Any excess scratches to the paint or any one individual scratch that exceeds 8" in length. (b.3) Chips - Any single chip the size of a quarter or larger or multiple smaller chips within 1 square foot. (b.4) Paint - Substandard paint, such as peeling, bubbling or mismatched shades that evidence poor condition in comparison with original paint. (b.5) Rust - Rust holes in the body metal or any rust spots. (b.6) Glass Damage - Any glass that must be replaced due to cracks or missing glass and any windshield damages. (b.7) Frame Damage - All frame damage and substandard frame repairs in addition to modifications made to the frame. (b.8) Blades, Buckets and Other Attachments - Any broken or cracked teeth on any attachments included with the Equipment. (b.9) Tires/Tracks - Any tires/tracks on returned Equipment that have any of the following: are in an unsafe condition, are not matching, non compatible and/or have excessive cuts/cracks/missing chunks or missing/damaged drive lugs, excessive stubble damage, have broken side walls, are not original casings, have improper ballasting, have less than 50% of original tread remaining, or are not of the same size, type, grade or manufacturer (or equivalent quality manufacturer) as were originally included on the Equipment, then Lessee will be required to pay for the cost of a new tire/track if the above conditions are not met. (b.10) Unclean exterior requiring but not limited to steam cleaning. (b.11) Broken or inoperable lights. (b.12) Any Mirror damage. (b.13) Bent or broken steps. (b.14) Dented or bent wheel rims. (c.) Mechanical. (c.1) Mechanical - Mechanical components that are missing, broken or unsafe or that do not operate normally. The battery will need to be replaced if the battery is dead upon the delivery of the unit at lease end. (c.2) Equipment - Computer and precision farming/guidance systems or safety or emission control equipment not in proper working order. (c.3) Brakes - Brake drums that are cracked or exceed manufacturer's recommended wear limits, brake linings showing less than 50% remaining wear, or brakes that leak oil or fluid. (c.4) Power Train - Wear on power train assembly that exceeds manufacturer's then-current standards for normal wear [as shown by oil sample analysis]. (c.5) Undercarriage - Leaky lubrication seals, improperly tightened/aligned track tension, cracked or broken track shoes or fasteners or drive/idler/roller/bogie wheels, less than 50% of original life remaining on any parts, or any undercarriage components not being of the original size, type, grade or manufacturer. (c.6) Combine threshing components - with less than 50% of original life remaining on any parts. (c.7) Hydraulic System - Any pumps, motors, valves or cylinders not in good operating condition or that fail to meet manufacturer's rated specifications, or hydraulic system exceeds manufacturer's then-current contaminant standards (as shown by oil sample analysis).

**EXHIBIT 5 of 6**



**CNH | CAPITAL**

| | |
|---|---|
| 020069  / 2793337 | **Agreement Provisions** |

(c.8) Air Filters - Any filters not within manufacturer's specifications. (c.9) Electrical System - Any gauges or fluid indicators that are damaged or do not function, an alternator that fails to operate properly, a battery that fails to hold a charge, or any wire harnesses that are not tied down and kept secure, dry, clean and dust-free. (c.10) Leaks - Any general lubricant, engine coolant, water or A/C leaks that cost in excess of $100 to repair including labor. (c.11)Mufflers/Exhaust Pipes burnt out. (c.12) Damaged or inoperable horn. (d.) General; Other. (d.1) General - Failure to operate and maintain the Equipment in accordance with the manufacturer's specifications, or use of components, fuels or fluids on or in connection with the Equipment that do not meet manufacturer's standards. (d.2) Other - Any other damage or repair including but not limited to unlawful or unsafe operating conditions, or that make the Equipment either unlawful or unsafe to operate. (d.3) Any missing accessories or attachments. Upon any return of the Equipment, we shall, in our sole discretion, determine the existence of any Excessive Wear and Tear. All repair estimates will be based upon applicable Lessor rates or, if Lessor is unable to estimate and repair such excessive wear and tear, then at rates applicable to another outlet as reasonably selected by Lessor. Your failure to pay the invoiced wear and tear charges and/or to instead, make the required repair at an authorized dealer within 10 days of demand, shall constitute a default under this Agreement.

17.  **Alterations/Repairs.**  Lessee will not, without Assignee's prior written consent, affix or install any accessories or attachments to the Equipment nor change it so that it cannot be used by similarly situated lessees. Any improvements, replacements, additions, accessories, or repair parts to the Equipment shall become Assignee's property, free of all liens and encumbrances, and shall be deemed part of the Equipment. The Equipment is, and shall be personal property, even if it or any part of it becomes affixed or attached to real property or any improvement to real property.

18.  **Security Deposit.**  The Security Deposit may be applied to any amounts that Lessee fails to pay under this Agreement, including but not limited to damages to the Equipment in Assignment. Lessor will assign this Agreement to CNH Industrial Capital America LLC (herein "Assignee"or "CNH Capital"). Lessee acknowledges that Lessor has the right to assign this Agreement and that all rights and benefits but no obligations (if any) of Lessor under this Agreement may be exercised by any such Assignee and that no obligations (if any) of Lessor pass to Assignee. Upon receipt of notice from Assignee with instructions for payment, Lessee shall make all payments due under this Agreement directly to Assignee. This Agreement shall be binding on and inure to the benefit of Lessee and Lessor and their respective heirs, personal representatives, successors or assigns; provided, however, that Lessee may not assign its obligations under this Agreement to any person without Assignee's prior written consent.

19.  **Risk of Loss.**  All risk of loss, theft or damage to the Equipment is assumed by the Lessee, until the Equipment is returned to the Lessor. If the Equipment can be repaired for a cost less than its fair market value, Lessee will repair the Equipment at Lessee's sole expense but damage to the Equipment shall not release Lessee from the Obligations. If the Equipment cannot be so repaired, or is lost, stolen or destroyed, Lessee shall at Assignee's option and written consent either: (a) replace the Equipment at Lessee's sole expense with equivalent equipment of equal or greater value, as determined in the sole discretion of and with the consent of the Assignee and transfer clear title to such replacement equipment to Assignee, whereupon such replacement equipment shall be deemed the Equipment for all purposes of this Agreement; or (b) pay Assignee the Termination Value. Upon payment of the requisite Termination Value, Lessee shall be entitled to retain possession of the affected unit(s) of Equipment. Assignee may, at Assignee's sole option, apply proceeds of insurance, in whole or in part, to repair or comparably replace the Equipment or to satisfy such Termination Value or any of Lessee's Obligations pursuant to this Agreement. The "Termination Value" shall be an amount equal to: (a) any past due, unpaid Lease Payments and any late charges related thereto; plus (b) all remaining Lease Payments hereunder, less any future interest payments embedded therein; plus (c) (i) the Purchase Option Price, or (ii) if no purchase option is granted, the estimated residual value used to calculate the Lease Payments by Assignee; plus (d) any other costs to Lessor and/or Assignee arising from the loss, theft, wear and tear, or damage to the Equipment or from the collection of any amount due under this Lease. In no event shall the Termination Value exceed the maximum amount permitted by applicable law.

20.  **Purchase Option.**  So long as no default exists under this Lease and it has not been earlier terminated,  Lessee may on the Termination Date, upon at least 90 days, but not more than 180 days, prior written notice to Assignee, purchase all (but not less than all) of the Equipment: (a) if stated dollar amount is provided as the Purchase Option Price, then for that amount together with all applicable taxes and other charges due in connection with such sale and all other amounts due and unpaid under this Lease; or (b) if no Purchase Option Price is identified, then at the fair market value, as determined at Assignee's sole discretion, at the time the Purchase Option is exercised, together with all applicable taxes and other charges due in connection with such sale and all other amounts due and unpaid under this Lease. Lessee's purchase of the Equipment shall be on an AS-IS, WHERE-IS BASIS.

21.  **EARLY RETURN.**  IF LESSEE RETURNS THE EQUIPMENT PRIOR TO THE TERMINATION DATE, LESSEE SHALL BE OBLIGATED TO IMMEDIATELY PAY TO LESSOR AN EARLY TERMINATION FEE EQUAL TO 1.0% OF: (A) IF A STATED DOLLAR AMOUNT IS PROVIDED AS THE PURCHASE OPTION PRICE, THEN FOR THAT AMOUNT, TOGETHER WITH ALL UNPAID LEASE PAYMENTS, REMAINING LEASE PAYMENTS, PLUS SEPARATELY, ANY AND ALL OTHER AMOUNTS PROVIDED FOR UNDER THIS LEASE; OR (B) IF NO PURCHASE OPTION PRICE IS IDENTIFIED OR IS STATED AS FMV, THE ESTIMATED RESIDUAL VALUE OF THE EQUIPMENT USED TO CALCULATE THE LEASE PAYMENTS DUE UNDER THE LEASE AS DETERMINED BY ASSIGNEE TOGETHER WITH ALL UNPAID LEASE PAYMENTS, REMAINING LEASE PAYMENTS, AND ALL OTHER AMOUNTS PROVIDED FOR UNDER THIS LEASE. THIS FEE IS IN ADDITION TO THE OTHER OBLIGATIONS OWED BY THE LESSEE TO THE ASSIGNEE.

22.  **Return.**  If Lessee does not exercise the purchase option (if any) as provided in this Lease, Lessee shall on the Termination Date or such earlier date of termination of this Lease: (a) at its expense, deliver the Equipment to a location designated by Assignee; (b) pay $400.00 per serial numbered unit to the Lessor as a return fee; and (c) pay all charges incurred by Lessor to repair any excessive wear and tear and for any hours in excess of the Maximum Annual Usage at the Excess Usage Rate. The risk of loss of the Equipment shall remain with Lessee until Assignee accepts the Equipment by executing a written acceptance. Unless and until all the Equipment is returned and accepted, or is otherwise disposed of by written agreement between Assignee, and Lessee, and until all other terms and conditions have been met, the term of the Lease with respect to such Equipment shall continue. This fee is in addition to the other Obligations owed by the Lessee to the Assignee.

23.  **Failure to Return Equipment.**  If Lessee does not exercise its option, if any, to purchase the Equipment in accordance with this Agreement and fails to return the Equipment at the termination of this Agreement, due to default or otherwise, then, in addition to any other amounts that may be due to Assignee under this Agreement or under applicable law, Lessee will be liable for a daily amount computed on the basis of the scheduled Lease Payment, if unequal, the highest lease payment will be used.

24.  **Conflict with Law.**  Any provision of this Agreement prohibited by applicable law shall be ineffective to the extent of the prohibition without invalidating the remaining portions of this Agreement. The validity, construction and enforcement of this Agreement shall be governed by the laws of the State of the Lessor (without regard to conflict of law principles of such State). All terms not otherwise defined have the meanings assigned to them by the UCC.

25.  **Miscellaneous.**  In the event that this contract is determined by a court of competent jurisdiction to be characterized as a loan or forbearance agreement, and not a lease, despite the terms and conditions found in this contract, then all parties agree that any interest charges computed and assessed in this contract that are in excess of the maximum allowed interest charges allowed by law shall be applied as a reduction to the principal balance owed on this contract only, and this shall be the agreed upon and satisfactory remedy to all parties. By providing any address, email address or telephone number, including a mobile phone number, either now or in the future to Lessor, Assignee, any of Assignee's affiliates or any debt collectors retained by Assignee, Lessee agrees that any of the above may contact Lessee using that address or number, including contact through calls or texts using an automatic dialing and announcing device and prerecorded calls, and that such calls are not "unsolicited" under state or federal law. Any attempted revocation of this consent to contact, if allowable by law, must be made in writing. Lessee acknowledges and agrees that CNH Capital and its third party service providers can access and use telematics data and other information regarding location, maintenance and operation of the Equipment for any lawful purpose, including without limitation, to locate and repossess the Equipment.  See https://www.cnhindustrialcapital.com_us/Pages/Privacy.aspx for additional details. If a court finds that any part of this Agreement to be invalid or unenforceable, the remainder of this Agreement will remain in effect. All of Assignee's rights shall remain in effect after the expiration or termination of this Agreement. If more than one Lessee is named in the Agreement, the liability of each shall be joint and several. All notices required or permitted hereunder shall be in writing and shall be deemed adequate if sent to the first Lessee on the Lease and at its address noted herein or to such other address as such party may have specified in writing by notice as prescribed in this Agreement.  The captions and headings of the sections of this Agreement are for convenience only and are not to be used to interpret or define the provisions hereof. Restrictive endorsements on checks or other forms of payment that Lessee sends to Assignee will not change or reduce Lessee's obligations to Assignee. Assignee will not lose any rights if Assignee accepts late or partial payments or delays enforcing its rights under this Agreement. For combine leases, the hours used will be based on separator hours rather than engine hours.

26.  **WAIVER OF JURY TRIAL.**  EXCEPT IN GEORGIA OR CALIFORNIA OR WHERE OTHERWISE PROHIBITED BY LAW, EACH LESSEE, LESSOR AND CNH CAPITAL WAIVE ANY AND ALL RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING RELATING TO THE OBLIGATIONS, THIS AGREEMENT, OR ANY OTHER DOCUMENT CONNECTED HEREWITH, OR ANY TRANSACTION ARISING FROM OR CONNECTED TO ANY OF THE FOREGOING.  EACH LESSEE, LESSOR AND CNH CAPITAL REPRESENT THAT THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY GIVEN.

21009A     Rev 01/24 Previous editions may not be used.                                                                                                                   Page 4 of 9

EXHIBIT 5 of 6





020069   / 2793337

**Agreement Provisions**

27. **Additional Waivers.** To the extent permitted by applicable law, Lessee hereby waives any and all rights and remedies conferred upon a Lessee by Sections 2A-508 through 2A-522 of the UCC, including, without limitation, Lessee's rights to: (a) cancel any Lease; (b) repudiate any Lease; (c) reject any Equipment; (d) revoke acceptance of any Equipment; (e) recover damages from Lessor for any breaches of warranty or for any other reason; (f) a security interest in the Equipment in Lessee's possession or control for any reason; (g) deduct from amounts owed all or any part of any claimed damages resulting from Lessor's default, if any, under any Lease; (h) accept partial delivery of the Equipment; (i) "cover" by making any purchase or lease of or contract to purchase or lease Equipment in substitution for those due from Lessor; (j) recover any general, special, incidental or consequential damages for any reason whatsoever; and (k) specific performance, replevin, detinue, sequestration, claim and delivery or the like for any Equipment identified in any Lease. To the extent permitted by applicable law, Lessee also hereby waives any rights now or hereafter conferred by statute or otherwise which may require Lessor to sell, lease or otherwise use any Equipment in mitigation of Lessor's damages as set forth in Section 15 or which may otherwise limit or modify any of Lessor's rights or remedies under Section 15.

28. **Electronic Contracting, Signature Acknowledgment, Future Notices.** Lessee agrees that (i) this Agreement is an electronic agreement executed by Lessee using Lessee's electronic signature or that Assignee may convert this Agreement into an electronic agreement; (ii) Lessee's electronic signature signifies Lessee's intent to enter into this Agreement and that this Agreement shall be a legally valid and enforceable Agreement in accordance with its terms to the same extent as if Lessee had executed this Agreement using Lessee's written signature and (iii) the authoritative copy of this Agreement ("Authoritative Copy") shall be that electronic copy that resides in a document management system designated by Assignee for the storage and authoritative copies of electronic records, which shall be deemed held by us in the ordinary course of business. Notwithstanding the forgoing, if the Authoritative Copy is converted by printing a paper copy which is marked by Assignee as the original (the "Paper Contract", then Lessee acknowledges and agrees that (1) your signing of this Agreement with your electronic signature also constitutes issuance and delivery of such Paper Contract, (2) your electronic signature associated with this Agreement, when affixed to the Paper Contract, constitutes your legally valid and binding signature on the Paper Contract and (3) subsequent to such conversion, Lessee's duties and Obligations will be evidenced by the Paper Contract alone. By providing your e-mail address and electing to execute this Agreement electronically, Lessee agrees that all future notices, statements and communications relating to this Agreement shall be delivered to the Lessee via e-mail transmission to the e-mail address provided to Assignee by the Lessee. It is the Lessee's duty to provide any changes to Lessee's e-mail address to Assignee so that future communications can reach Lessee in a timely manner.

EXHIBIT 5 of 6

**CNH | CAPITAL**

020069  / 2793337

# MULTIPLE UNIT ADDENDUM

This Multiple Unit Addendum is hereby incorporated into the Lease Agreement dated __February 08__  __2024__
with Lessor __BURKS TRACTOR COMPANY, INC.__ herein the ("Agreement"), and this addendum equipment list is made a part of the Equipment, as defined in the Agreement. Lessee acknowledges receipt of this Multiple Unit Addendum at the time it is executed, along with a copy of the Agreement and all its pages.

| # | New or Used | Equipment Description | Model | Serial Number/PIN | Hours | Maximum Annual Usage | Excess Usage Rate | Cash Price |
|---|------|----------------|------|-----------------|-------|-------|-----|------|
| 1 | NEW | Case IH Magnum | 280 | JJAMJ280PPRK02747 | 105.0 | 900 | 70 | N/A |
| 2 | NEW | Case IH Magnum | 280 | JJAMJ280LPRK02756 | 139.0 | 900 | 70 | N/A |
| 3 | NEW | Case IH Magnum | 280 | JJAMJ280CPRK04647 | 128.0 | 900 | 70 | N/A |
| 4 | NEW | Case IH Magnum | 280 | JJAMJ280CPRK04656 | 9.0 | 900 | 70 | N/A |
| 5 | NEW | Case IH Magnum | 280 | JJAMJ280PPRK04675 | 10.0 | 900 | 70 | N/A |
| 6 | NEW | Case IH Magnum | 280 | JJAMJ280CPRK04681 | 8.0 | 900 | 70 | N/A |

Executed this __08__ day of __February__, __2024__.

X _____
Signature of Lessee/Lessee's Representative

MILLENKAMP CATTLE, INC.
Printed Name

_____
Title (not for an individual Lessee)

X _____
Signature of Lessor's Representative

BURKS TRACTOR COMPANY, INC.
Printed Lessor Name

23143A    Rev. 01/24 Previous editions may not be used.

EXHIBIT 5 of 6



**CNH CAPITAL**

020069  / 2793337

F%00000283736623140A0709

## PURCHASED PROTECTION PLAN ADDENDUM

This is the Purchased Protection Plan Addendum to that certain _____ Lease Agreement _____ dated _____ February 06 _____, _____ 2024 _____ between the Lessee and the Lessor for the Equipment identified therein (herein the "Agreement"), into which this Purchased Protection Plan Addendum is hereby incorporated. If the price of a Purchased Protection Plan is financed under the Agreement, Lessee understands that a portion of the price may be paid to Lessor, to Lessor's designee or to Case New Holland Insurance Agency, LLC as an administrative or marketing fee. Assignee may deliver the Purchased Protection Plan price to Lessor and if Assignee does so, Lessor is solely responsible for remitting payment to the provider. Provider and Lessee agree that they shall not raise any claim, defense or setoff against Assignee if the Lessor fails to remit payment to the provider, unless prohibited by law. Your Dealer may receive certain brand discounts, program funds and incentives (hereafter the "Discounts"), and may elect to use or keep those Discounts, as part of their overall pricing package options presented to you.  The Discounts are owned by your Dealer.  Some of the cost of your potential Purchased Protection Plan may be paid for by your Dealer, utilizing those Discounts and/or rolled into your lease payment.  You may ask your Dealer for additional information concerning the potential separate costs contained in your lease payment of a potential Purchased Protection Plan, prior to executing your lease Agreement. Lessee's electronic signature below indicates Lessee's consent to receive this disclosure statement electronically at the email address provided by Lessee to Lessor. Lessee accepts this disclosure statement in electronic form, and has retained a copy of the disclosure statement electronically or otherwise.

The Purchased Protection Plan is recommended but is not required. The precise protection afforded is subject to the terms, conditions and exclusions of the contract as issued.  Purchased Protection Plans are issued by a licensed, independent third party unrelated to CNH Industrial Capital America LLC or Case New Holland Insurance Agency, LLC.

Lessee requests Lessor/Assignee to attempt to obtain a Purchased Protection Plan from a third party provider and to include as part of the Rental Payments the price as shown for the term as shown or for the total machine hours stated in the Purchased Protection Plan contract, whichever occurs first, for the Equipment listed below.

*Where NEW plan is shown below the Total Months and Total Machine Hours selected on new equipment plans include the Manufacturer's Base Warranty Period.*

*Where USED plan is shown below the Months and Machine Hours selected commence on the used equipment Purchase Protection Plan contract effective date.*

|   | PLAN | EQUIPMENT SERIAL/PIN | PRICE | TERM (MONTHS) |
|---|------|---------------------|-------|---------------|
| 1 | NEW | JJAMJ280LPRK02756 | $4,915.00 | 48 |
| 2 | NEW | JJAMJ280CPRK04656 | $4,915.00 | 48 |
| 3 | NEW | JJAMJ280CPRK04681 | $4,915.00 | 48 |
| 4 | NEW | JJAMJ280PPRK02747 | $4,915.00 | 48 |
| 5 | NEW | JJAMJ280CPRK04647 | $4,915.00 | 48 |
| 6 | NEW | JJAMJ280PPRK04675 | $4,915.00 | 48 |

Executed this  06   day of  February  _____,  2024  .

X_____   MILLENKAMP CATTLE, INC.   _____
Signature of Lessee/Lessee's Representative   Printed Name   Title (not for an individual Lessee)

23140A  Rev. 01/24 Previous editions may not be used.

EXHIBIT 5 of 6

**CNH | CAPITAL**

P%0000028373662338 3A0809

020069   7 2793337

## MAINTENANCE PLAN ADDENDUM

This is the Maintenance Plan Addendum to that certain _____ Lease Agreement _____ dated _____ February 06 _____ , 2024

between the Lessee and the Lessor for the Equipment identified therein (herein the "Agreement"), into which this Maintenance Plan Addendum is hereby incorporated. If the price of a Maintenance Plan is financed under the Agreement, Lessee understands that a portion of the price may be paid to Lessor by the manufacturer. Assignee may deliver the Maintenance Plan price to Lessor and if Assignee does so, Lessor is solely responsible for remitting payment to the manufacturer. Lessee agrees that they shall not raise any claim, defense or setoff against Assignee if the Lessor fails to remit payment to the manufacturer, unless prohibited by law. Your dealer may receive certain brand discounts, program funds and incentives (hereafter the "Discounts"), and may elect to use or keep those Discounts, as part of their overall pricing package options presented to you. The Discounts are owned by your Dealer. Some of the cost of your potential maintenance plan may be paid for by your dealer, utilizing those Discounts and/or rolled into your lease payment. You may ask your dealer for additional information concerning the potential separate costs contained in your lease payment of a potential maintenance plan, prior to executing your lease.

The Maintenance Plan is recommended but is not required. The precise protection afforded is subject to the terms, conditions and exclusions of the contract as issued by the manufacturer. Program may not be available in all states. Eligible equipment or other program details may vary by state based on state regulations.

Lessee requests Lessor/Assignee to attempt to obtain a Maintenance Plan from the manufacturer and to include as part of the Lease Payments the price as shown for the term as shown or for the total machine hours stated in the Maintenance Agreement Form, whichever occurs first, for the Equipment listed below.

_Where **NEW** plan is shown below the Total Months and Total Machine Hours selected on new equipment plans._

| | PLAN* | EQUIPMENT SERIAL/PIN | PRICE | TERM (MONTHS) | HOURS |
|---|---|---|---|---|---|
| 1 | NEW | JJAMJ280PPRK02747 | see Maintenance Agreement Form for full details | | |
| 2 | NEW | JJAMJ280LPRK02756 | see Maintenance Agreement Form for full details | | |
| 3 | NEW | JJAMJ280CPRK04647 | see Maintenance Agreement Form for full details | | |
| 4 | NEW | JJAMJ280CPRK04656 | see Maintenance Agreement Form for full details | | |
| 5 | NEW | JJAMJ280PPRK04675 | see Maintenance Agreement Form for full details | | |
| 6 | NEW | JJAMJ280CPRK04681 | see Maintenance Agreement Form for full details | | |

**Total Cost of Maintenance Plan** _____ 62,516.10 _____

*See Maintenance Agreement Form for the serial number(s) under plan.

Executed this 06 day of February , 2024 .

X ~~[signature]~~                     MILLENKAMP CATTLE, INC.                     _[signature]_
Signature of Lessee/Lessee's Representative        Printed Name                     Title (not for an individual Lessee)

EXHIBIT 5 of 6

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)**
CSC    1-800-858-5294

**B. E-MAIL CONTACT AT SUBMITTER (optional)**
SPRFiling@cscglobal.com

**C. SEND ACKNOWLEDGMENT TO:   (Name and Address)**

2759 34451
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: Idaho
(S.O.S.)

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | MILLENKAMP CATTLE, INC. | | | |
|---|---|---|---|---|

OR

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

| 1c. MAILING ADDRESS 471 NORTH 300 WEST | CITY Jerome | STATE ID | POSTAL CODE 83338 | COUNTRY USA |
|---|---|---|---|---|

**2. DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | CNH Industrial Capital America LLC | | | |
|---|---|---|---|---|

OR

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

| 3c. MAILING ADDRESS 5729 Washington Avenue | CITY Racine | STATE WI | POSTAL CODE 53406 | COUNTRY USA |
|---|---|---|---|---|

**4. COLLATERAL:** This financing statement covers the following collateral:

2023, Case IH, 280, Serial No.: JJAMJ280PPRK02747, Magnum Tractor.
2023, Case IH, 280, Serial No.: JJAMJ280CPRK04656, Magnum Tractor.
2023, Case IH, 280, Serial No.: JJAMJ280CPRK04647, Magnum Tractor.
2023, Case IH, 280, Serial No.: JJAMJ280LPRK02756, Magnum Tractor.
2023, Case IH, 280, Serial No.: JJAMJ280PPRK04675, Magnum Tractor.
2023, Case IH, 280, Serial No.: JJAMJ280CPRK04681, Magnum Tractor
THIS FINANCING STATEMENT IS BEING FILED SOLELY AS A PRECAUTION IF, CONTRARY TO THE INTENTION
OF THE PARTIES DESCRIBED ABOVE AS LESSEE AND LESSOR, THE TRANSACTION RELATING TO THE
PROPERTY DESCRIBED HEREIN IS DEEMED TO BE A SECURITY AGREEMENT RATHER THAN A LEASE WITHIN
THE MEANING OF 1-201 (37) OF THE UNIFORM COMMERICAL CODE. THE EQUIPMENT MAY DISPLAY A SERIAL
NUMBER OR OTHER IDENTIFYING NUMBER, INCLUDING BUT NOT LIMITED TO, THE FOLLOWING: PRODUCT
IDENTIFICATION NUMBER, TRACTOR NUMBER OR CHASSIS NUMBER..

**5.** Check only if applicable and check only one box:   Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

**6a.** Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

**6b.** Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

**7. ALTERNATIVE DESIGNATION** (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:**

2759 34451

EXHIBIT 5 of 6

20240207443



**STATE OF IDAHO**
*Office of the secretary of state, Phil McGrane*
**UCC1 FINANCING STATEMENT**
Idaho Secretary of State
PO Box 83720
Boise, ID 83720-0080
(208) 334-2301
Filing Fee - $3 submitted online, $6 print & mail or $12 if 3 or more
pages. Make checks payable to Secretary of State.

B0081-1089 02/12/2024 2:47 PM Received by Office of the Idaho Secretary of State

| Contact at Filer: | |
|---|---|
| Contact Name | CORPORATION SERVICE COMPANY |
| Contact Phone | 1-800-858-5294 |
| Contact Email | SPRFiling@cscglobal.com |

| Send acknowledgment to: | |
|---|---|
| Name | CORPORATION SERVICE COMPANY |
| Address | 801 ADLAI STEVENSON DRIVE SPRINGFIELD, IL 62703 |

Debtors:

| DEBTOR'S NAME | MAILING ADDRESS |
|---|---|
| MILLENKAMP CATTLE, INC. | 471 NORTH 300 WEST JEROME, ID 83338 |

Secured Parties:

| SECURED PARTY'S NAME | MAILING ADDRESS |
|---|---|
| CNH INDUSTRIAL CAPITAL AMERICA LLC | 5729 WASHINGTON AVENUE RACINE, WI 53406 |

Collateral:

The financing statement covers the following collateral:

2023, Case IH, 280, Serial No.: JJAMJ280PPRK02747, Magnum Tractor.
2023, Case IH, 280, Serial No.: JJAMJ280CPRK04656, Magnum Tractor.
2023, Case IH, 280, Serial No.: JJAMJ280CPRK04647, Magnum Tractor.
2023, Case IH, 280, Serial No.: JJAMJ280LPRK02756, Magnum Tractor.
2023, Case IH, 280, Serial No.: JJAMJ280PPRK04675, Magnum Tractor.
2023, Case IH, 280, Serial No.: JJAMJ280CPRK04681, Magnum Tractor
THIS FINANCING STATEMENT IS BEING FILED SOLELY AS A PRECAUTION IF, CONTRARY TO THE INTENTION OF THE PARTIES DESCRIBED ABOVE AS LESSEE AND LESSOR, THE TRANSACTION RELATING TO THE PROPERTY DESCRIBED HEREIN IS DEEMED TO BE A SECURITY AGREEMENT RATHER THAN A LEASE WITHIN THE MEANING OF 1-201 (37) OF THE UNIFORM COMMERICAL CODE.  THE EQUIPMENT MAY DISPLAY A SERIAL NUMBER OR OTHER IDENTIFYING NUMBER, INCLUDING BUT NOT LIMITED TO, THE FOLLOWING: PRODUCT IDENTIFICATION NUMBER, TRACTOR NUMBER OR CHASSIS NUMBER..

The collateral is:

Designations:

Select a designation which describes this financing statement:  Not Applicable

EXHIBIT 5 of 6

| | |
|---|---|
| Select an additional designation which describes this financing statement: | Not Applicable |

Alternative Designations:

| | |
|---|---|
| Select the alternative designation which describes this financing statement: | Not Applicable |

Optional Filer Reference Data:

2759 34451

B0881-1090 02/12/2024 2:47 PM Received by Office of the Idaho Secretary of State

EXHIBIT 5 of 6

 **CAPITAL**



**EQUIPMENT OPERATING**
**LEASE AGREEMENT**

020069  / 2793443

FX0000028373692I009A0109

| *Lessee(s) Legal Name(s) | Address | City | St | Zip |
|---|---|---|---|---|
| MILLENKAMP CATTLE, INC. | 471 NORTH 300 WEST | JEROME | ID | 83338-5078 |

| *Lessor* Legal Name | Address | City | St | Zip |
|---|---|---|---|---|
| BURKS TRACTOR COMPANY,INC. | 3140 KIMBERLY RD. | TWIN FALLS | ID | 83301 |

The undersigned Lessee(s) (collectively called "Lessee") hereby leases from Lessor and Lessor hereby leases to Lessee the following goods (the "Equipment") under the terms set forth herein. The Equipment is leased for commercial ☐ business use ☑ agricultural use.

| NEW*/USED | EQUIPMENT DESCRIPTION | MODEL | SERIAL#/PIN | HOURS | "MAX ANN USE" | "EXCESS USE" |
|---|---|---|---|---|---|---|
| | See attached Multiple Unit Addendum | | | | | |

*New Equipment is unused equipment, a rental unit or a demonstrator, not previously sold, for which the manufacturer will supply all or a portion of a new equipment warranty; this Equipment may have been manufactured in a year prior to the year of this lease.

Location of Equipment: Address (if other than Lessee address) _____ City _____ St _____ Zip _____

The beginning date of this agreement (the "Agreement" or this "Lease") is  02-06-2024  ("Beginning Date) and the termination date of the Agreement is  02-06-2027 ("Termination Date"). There shall be a security deposit of $ ___N/A___ ("Security Deposit") and a purchase option price of $ ___1,514,310.29___ ("Purchase Option Price").
Lease Payments: Advance Payment of $ ___195,000.00___ followed by payments in accordance with the following schedule, PLUS APPLICABLE TAXES.

| NUMBER OF PAYMENTS | PERIOD OF PAYMENTS | AMOUNT OF EACH PAYMENT | BEGINNING MM/DD/YYYY | NUMBER OF PAYMENTS | PERIOD OF PAYMENTS | AMOUNT OF EACH PAYMENT | BEGINNING MM/DD/YYYY |
|---|---|---|---|---|---|---|---|
| 34 | 1 MONTHS | $ 27,172.91 | 03/06/2024 | | | $ | |
| 1 | 1 MONTHS | $ 27,172.82 | 01/06/2027 | | | $ | |
| | | $ | | | | $ | |
| | | $ | | | | $ | |
| | | $ | | | | $ | |
| | | $ | | | | $ | |

The "Obligations" shall mean Lessee's responsibility to pay the payments noted in this Lease (the "Lease Payments") and to perform any other existing or future obligations of Lessee to Lessor, or to the Assignee under this Lease or any other agreement between or among Lessee and Assignee, or Lessor or affiliate of Lessor and Assignee.

**LESSEE HAS SELECTED THE EQUIPMENT. THE MANUFACTURER AND ITS REPRESENTATIVES ARE NOT LESSOR'S NOR ASSIGNEE'S AGENTS AND ARE NOT AUTHORIZED TO MODIFY THE TERMS OF THIS LEASE. LESSEE IS AWARE OF THE NAME OF THE MANUFACTURER OF EACH ITEM OF EQUIPMENT AND LESSEE WILL CONTACT EACH MANUFACTURER FOR A DESCRIPTION OF WARRANTY RIGHTS, LIMITATIONS AND DISCLAIMERS. LESSOR MAKES NO WARRANTIES TO LESSEE, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, SUITABILITY OR OTHERWISE. LESSOR PROVIDES THE EQUIPMENT TO LESSEE AS-IS. LESSOR, NOR ASSIGNEE, SHALL BE LIABLE FOR SPECIAL, INCIDENTIAL OR CONSEQUENTIAL DAMAGES.***

*Some states do not allow these limitations and exclusions, and they shall not apply to the extent such limitations or exclusions are not allowed by applicable state law.*

Lessee has received and examined the Equipment, which is in good operating order and condition and is as described above.  Lessee acknowledges receipt of a copy of this Agreement.  Lessee agrees to lease the Equipment described above and based on the terms of this Agreement.  The parties intend that this agreement: (a) creates a "Lease" under Section 1-203 of the Uniform Commercial Code ("UCC"); (b) is a "Lease" as defined in Section 2A-103(1)(j) of the UCC and (c) satisfies every element under Section 2A-103(1)(g) of the UCC.

**NOTICE TO THE LESSEE:**
1.  DO NOT SIGN THIS BEFORE YOU READ THE TERMS ON THE FIVE AGREEMENT PAGES (PLUS ANY ADDENDUMS), EVEN IF OTHERWISE ADVISED.
2.  DO NOT SIGN THIS IF IT CONTAINS ANY BLANK SPACES.
3.  YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN. KEEP IT TO PROTECT YOUR LEGAL RIGHTS.
4.  LESSEE REPRESENTS THAT THE EQUIPMENT IS NOT BEING LEASED FOR FAMILY, HOUSEHOLD OR PERSONAL USE.

ADDITIONAL PROVISIONS CONCERNING RIGHTS AND DUTIES OF THE PARTIES ON THE ADDITIONAL PAGES OF THIS AGREEMENT ARE A PART OF THIS AGREEMENT.

X _____  MILLENKAMP CATTLE, INC.  _____  X _President_  02-06-2024
Signature of Lessee/Lessee's Representative  Printed Name  Title (not for an individual Lessee )  Date

X _____  _____  _____  _____
Signature of Lessee/Lessee's Representative  Printed Name  Title (not for an individual Lessee )  Date

Dealer (herein "Assignor" or "Lessor") hereby assigns all of its rights, title and interest in and to this Agreement and the Equipment to CNH Industrial Capital America LLC (herein "Assignee"or "CNH Capital"), under terms also described in the Retail Finance Agreement, Program Procedures, Dealer Handbook or other related documents (collectively hereinafter the "RFA") executed by the Assignor and Assignee. Lessor has obtained a signed credit application for this Agreement. The Equipment has been paid in full to Dealer or will be paid in full with Agreement proceeds pursuant to the terms of the RFA. Assignor waives notice of acceptance of this Assignment and notice of non-payment and non-performance of this Agreement and any other notices required by law and waives any and all setoffs and counterclaims. The Assignment shall become effective upon delivery of this Agreement to Assignee or upon Assignee's payment of the lease price therefor, whichever occurs first.
Basis of Acceptance  ☐ Nonrecourse  ☐ Repurchase  ☐ Full Recourse  ☑ Other
Other explanation  See attached Lease Guarantee Addendum

X _____  BURKS TRACTOR COMPANY,INC.  02-06-2024
Signature of Lessor's Representative  Printed Lessor Name  Date

21009A  Rev 01/24  Previous editions may not be used.  Page 1 of 9

EXHIBIT 6 of 6



**CNH | CAPITAL**

020069   / 2793443

**Agreement Provisions**

1. **Assignment; Conditions to Lease.** Lessor hereby assigns this Agreement, and any related guarantee(s) ("Guarantee") (together collectively the "Assignment") to Assignee. Lessee acknowledges that Lessor has the right to assign this Agreement and such Guarantee, that all rights and benefits but no obligations (if any) of Lessor under this Agreement may be exercised by Assignee and that no obligations (if any) of Lessor pass to Assignee. Lessee shall make all payments due under this Agreement directly to Assignee. This Agreement shall be binding on and inure to the benefit of Lessee, Lessor and Assignee and their respective heirs, personal representatives, successors and assigns; provided, however, that Lessee may not assign its interest in the Equipment or its rights or obligations under this Agreement to any person without Assignee's prior written consent. LESSEE SHALL NOT ASSERT AGAINST CNH INDUSTRIAL CAPITAL AMERICA LLC ANY CLAIM OR DEFENSE WHICH LESSEE MAY HAVE AGAINST THE INITIAL LESSOR (I.E., THE ENTITY APPEARING IN THE TOP OF PAGE 1 OF THIS LEASE. Lessor and Assignee have no obligation to lease the Equipment to Lessee until they receive: (a) a fully executed Agreement; (b) evidence of insurance that complies with the requirements of Assignee; (c) such precautionary financing statements, or other documents, as Lessor deems necessary or appropriate to evidence and/or perfect Lessor's interest in the Equipment in accordance with the applicable UCC or other appropriate law; and (d) such other documents as they may reasonably request. Lessee hereby authorizes Assignee or its designee to execute and file any precautionary financing statements and other public notification documentation, and any amendments thereto describing the Equipment as Lessor deems necessary or appropriate. Lessee hereby irrevocably appoints Assignee or its designee as Lessee's agent and attorney-in-fact to sign such instruments on Lessee's behalf and to file them. CNH Capital may make UCC related filings and/or termination statements pursuant to this Agreement. CNH Capital reserves its right to assess additional fees and other charges to the Obligations including but not limited to, if fees and other charges increase or other actions are needed to protect its lien upon the Equipment.

2. **Title.** This Agreement is a true lease only (and not a conditional sale). Lessee does not have any right, title or interest in the Equipment, except, so long as no event of default has occurred and is continuing hereunder, the right to use it during the term hereof and, if so indicated, the option to purchase it as provided under this Agreement.

3. **Late Charges/Default Rate/Returned Checks.** Lessee shall pay a late charge on each payment not paid within 10 days after the due date at the highest amount, both as permitted by applicable law. Lessee shall pay interest on the unpaid balance after maturity (as scheduled, by acceleration or otherwise) and at the highest rate, as permitted by applicable law. If a check is returned for any reason, Assignee may charge Lessee a returned check processing fee as established by Lessor or Assignee from time to time not to exceed the maximum permitted under applicable law. Assignee may apply any payment or proceed received toward the Obligations, in its sole discretion regardless of how requested or directed. Lessee shall make all payments in lawful money of the United States of America. If any fees and/or other charges scheduled and/or assessed under any part of this Agreement exceed the maximum permitted by applicable law, any excess shall be applied toward a reduction of the principal balance and that shall be the sole and satisfactory remedy under this Agreement.

4. **Notification of Change in Residence, Principal Office, or Organizational Form.** If Lessee changes (as applicable): (a) its state of principal residence; or (b) the state in which its chief executive office is located; or (c) the state in which it is organized; or (d) its form of organization (such as from an individual to a corporation); or (e) its name, as printed on a State filed registration document or individual name, as printed on a valid driver's license, then Lessee will notify Assignee in writing promptly, but in no event more than 30 days after such change.

5. **Waiver of Defenses; Indemnification.** Lessee shall not assert against Assignee any claim or defense which Lessee might have against Lessor, the manufacturer of the Equipment or any other person. Lessee agrees that its obligation to remit payments will not be subject to, and it will not make any claim against Assignee for breach of any representation, warranty or condition with respect to the Equipment and that its obligation to pay Assignee amounts under this Lease is absolute and unconditional without abatement, reduction, set-off, counterclaim or interruption for any reason whatsoever, including any dispute which now or hereafter arises between Lessee and Lessor or any other person. Time is of the essence. Lessee shall defend and indemnify Lessor and Assignee and its officers, directors, employees, affiliates and agents from and against any damage, loss, theft or destruction of the Equipment or any part thereof, and from and arising out of or connected with this Lease, the use, condition (including without limitation, all defects whether or not discoverable by Lessee or Lessor) or operation of the Equipment or any part thereof. Lessee shall promptly notify Assignee of any loss, damage, theft, destruction, injury, claim, demand, cost or expense related to this Lease or the Equipment. Lessee shall also defend and indemnify Lessor and Assignee and its officers, directors, employees, affiliates and agents from and against all claims, losses and out-of-pocket costs (including attorneys' fees) arising out of: (a) the use (by Lessee, sublessee or any other party) or condition of the Equipment; (b) default by Lessee under the Lease; or (c) the repossession of the Equipment, after default by the Lessee, by the Lessor or the Assignee. TO THE EXTENT PERMITTED BY APPLICABLE LAW, LESSEE HEREBY WAIVES ANY AND ALL RIGHTS AND REMEDIES CONFERED UPON A LESSEE UNDER ARTICLE 2A OF THE UCC AND ANY RIGHTS NOW OR HEREAFTER CONFERED BY ANY OTHER STATUTE OR OTHERWISE, WHICH MAY LIMIT OR MODIFY ANY OF LESSOR'S RIGHTS OR REMEDIES.

6. **Lessee's Covenants.** Lessee shall: (a) keep the Equipment at the Equipment Location listed on page 1 of this Agreement and not remove the Equipment from such locations, except temporarily in connection with its ordinary use or repair, unless Assignee consents in writing; (b) maintain the Equipment in good condition and repair and not permit its intended function or value to be impaired and Lessee will make sure that the manufacturer's warranty remains valid. Lessee will pay all the costs of performing these obligations; (c) keep the Equipment free of all liens, encumbrances and security interests of all persons other than Lessor and Assignee; (d) defend the Equipment against all claims and legal proceedings by persons other than Assignee; (e) pay and discharge when due all taxes, fees, levies and other charges upon the Equipment; (f) pay when due all taxes arising from the purchase of the Equipment under this Agreement, excluding any taxes based upon Lessor's net income; (g) use the Equipment solely in the conduct of Lessee's business; (h) ensure the Equipment will be used solely within the intended uses of the manufacturer; (i) not sell, lease or otherwise dispose of the Equipment nor permit the Equipment to become an accession to other goods or a fixture; (j) not permit the Equipment to be used in violation of any law, regulation or policy of insurance; (k) strictly follow the terms on page 1 of this Agreement; (l) perform (at Lessee's expense) all maintenance and repairs necessary to keep the Equipment in as good a condition as when delivered to Lessee, reasonable wear excepted; (m) not permit the Equipment to be used by, or to be in the possession of, anyone other than Lessee or Lessee's employees; and (n) timely pay the nonrefundable Obligations from the Beginning Date through the term on the Lease, as set forth on page 1. Lessee represents and warrants that: (i) each individual executing this Agreement authorized by or on behalf of Lessee has the requisite power and authority to execute this Agreement and all related documents; (ii) Lessee is fully authorized to perform its obligations and consummate the transactions contemplated under this Agreement and related documents the execution and delivery of this Agreement and all related documents; (iii) the execution and delivery of this Agreement and all related documents and the consummation of the transactions under this Agreement have been duly authorized by Lessee; and (iv) this Agreement and all related documents constitute valid and legally binding obligations of Lessee, enforceable against Lessee in accordance with their respective terms.

7. **Insurance.** Lessee shall keep Assignee's interests in the Equipment insured against fire, theft, physical damage and other hazards under policies listing Assignee as Lender's loss payee, with such provisions, for such amounts (but not less than the Termination Value, under this Agreement) and by such insurers and terms as shall be satisfactory to Assignee from time to time, and shall furnish to Assignee evidence of such insurance satisfactory to Assignee. Such insurance shall provide at least 30 days' written notice of cancellation, lapse or expiration to Assignee. Lessee assigns (and directs any insurer to pay) to Assignee Lessee's interest in the proceeds of any and all insurance related to the Equipment and any premium refund, and Assignee may, at its option, apply such proceeds and refunds to any unpaid balance of the Obligations, whether or not due, and/or to repair or restore the Equipment. Lessee must make all payments due under this Agreement whether or not the Equipment is insured or underinsured. Assignee is authorized, in the name of Lessee or otherwise, to make, adjust and/or settle claims under any insurance on the Equipment, or cancel the same after the occurrence of an event of default, or set off amounts owed Assignee against any rebates, credits or refunds due Lessee and/or any guarantor. If Lessee purchased physical damage insurance that is financed under this Agreement, Lessee hereby requests and authorizes Lessor (should Lessor be properly licensed to do so) or its designee: (a) to arrange physical damage insurance for the benefit of Lessor or Assignee and Lessee that covers physical damage to the Equipment; (b) to replace or otherwise modify such insurance as Lessor deems appropriate; and (c) to be Lessee's attorney-in-fact to make claim for, receive payment of and execute, endorse and negotiate all documents, checks or drafts received in payment of loss, damage or premium refunds under any insurance. This Agreement includes and hereby incorporates by reference any Insurance Addendum signed in connection with this Agreement. STATEMENT TO LESSEE: THE PHYSICAL DAMAGE INSURANCE PURCHASED UNDER THE TERMS OF THIS AGREEMENT COVERS ONLY LOSS OF OR DAMAGE TO THE EQUIPMENT. LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED AS PART OF THE PHYSICAL DAMAGE INSURANCE. LESSEE UNDERSTANDS THAT IF INSURANCE IS FINANCED UNDER THIS AGREEMENT, PREPAYMENT OF LESSEE'S OBLIGATIONS OR TERMINATION OF THIS AGREEMENT WILL RESULT IN CANCELLATION OF INSURANCE COVERAGE, UNLESS OTHERWISE EXPLICITLY AGREED TO IN WRITING BY ASSIGNEE.

EXHIBIT 6 of 6



**CNH CAPITAL**

020089    / 2793443

**Agreement Provisions**

FX0000028373692100 9A0309

8. **Liability Insurance.** Lessee shall obtain and maintain, liability insurance from a carrier acceptable to Assignee in such form and subject to such limits as Assignee may reasonably require protecting the interests of Lessee and Assignee against claims for damages or injuries to persons or property caused by the use, condition, holding or operation of the Equipment. Lessor shall ensure that Lessee has liability insurance in place before the lease commences, having minimum coverage of at least $1,000,000.00 total liability per occurrence, with CNH Industrial Capital America LLC named as additional insured.

9. **Modifications and Waivers.** This Agreement sets forth the entire understanding among Lessor, Assignee and Lessee. No modification, amendment or extension of this Agreement and no waiver of any provision of this Agreement shall be valid unless in writing and signed by the parties and a waiver of any default hereunder by Assignee shall not constitute a waiver of any other prior or subsequent default, except that Lessee authorizes Assignee to insert in this Agreement the serial number/PIN and/or model number of any Equipment if this information is unknown when this Agreement is executed or to correct any errors in such numbers or any other patent errors in the description of the Equipment.

10. **Taxes.** Lessee agrees to pay all taxes (or reimburse Assignee for any taxes) imposed by any government, political subdivision or taxing authority upon or with respect to: (a) the purchase, ownership, possession, acceptance, relocation, repair, lease, return, sale or use of the Equipment; (b) the Lease Payments or any other payment required under this Agreement; or (c) any of the transactions contemplated by this Agreement. The term "taxes" shall mean any and all taxes (including, without limitation, license, documentation, recording and registration fees), taxes (including, without limitation, gross receipts, sales, lease, use, value added, goods and services, property (tangible and intangible), excise and stamp taxes), licenses, levies, duties, assessments or withholdings of any nature whatsoever (together with any and all penalties, fines, additions to tax and interest thereon), except all taxes on or measured by Assignee's net income. Taxes may be included as part of your Lease Payments.

11. **Tax Representations and Indemnification.** As the owner, Assignee shall be entitled to claim all items of deduction, including depreciation, on the Equipment that are consistent with ownership for tax purposes (the "Tax Benefits"). Lessee will not take or omit to take any action which would cause this Agreement not to be treated as a true lease for U.S. federal tax purposes. If Assignee loses the right to claim or is not entitled to claim all or any portion of the Tax Benefits, or if all or any of the Tax Benefits claimed by Lessor are disallowed, recaptured, reduced, or eliminated, or if Assignee originally contemplated after-tax return is adversely affected (a "Loss of Tax Benefits") as a result of: (a) the inaccuracy or falsity of any representation or warranty made by Lessee in this Agreement; (b) Lessee's breach of or failure to perform any covenant or agreement hereunder; or (c) any other act or omission by Lessee, then Lessee shall pay Assignee such amount as shall, in Assignee's reasonable opinion, cause Assignee to receive over the full term of this Agreement the same after-tax return that Assignee would have realized if there had not been a Loss of Tax Benefits (the "Original Net Economic Return"). If, as a result of any change in U.S. federal and/or applicable state income tax law enacted after the date of this Agreement, Lessor shall have a Loss of Tax Benefits, Lessee shall pay Assignee, upon Assignee's request, that amount which will provide Assignee the Original Net Economic Return. Any amounts due hereunder shall be payable at Assignee's election either as supplemental Lease Payments during the remaining term of this Agreement or as a lump sum payable on demand. Neither Lessor, Assignee nor Lessee makes any representation to the other concerning the proper treatment of this Agreement for tax purposes by either party.

12. **Authority of Assignee to Perform for Lessee.** If Lessee fails to perform any of Lessee's duties set forth in this Agreement (including, without limitation, the purchase of insurance), Assignee may at its option, in Lessee's name or otherwise, take any such action, including, without limitation, signing Lessee's name or paying any amount so required, and all costs and expenses incurred by Assignee in connection therewith shall form part of the Obligations and shall be payable by Lessee upon demand with interest from the date of payment by Assignee at the highest rate permitted by applicable law.

13. **Default/Cross Default.** Lessee shall be in default under this Agreement, and any other agreement with or assigned to Assignee, if any of the following occurs (each, an "event of default"): (a) Lessee fails to pay when due any of the Obligations, or to perform any covenant or other obligation of Lessee under this Agreement or any other agreement with or assigned to Assignee; (b) Lessee or any guarantor dies, ceases to exist, becomes insolvent or the subject of bankruptcy, insolvency or liquidation proceedings, attempts to or does assign this Agreement or attempts to or does remove, sell, transfer, further encumber, part with possession of or sublet any Equipment; (c) any warranty or representation made by Lessee or any guarantor to induce Lessor or Assignee to extend credit to Lessee, under this Agreement or otherwise, is false in any material respect when made; (d) Lessee fails to maintain insurance required hereunder or fails to comply with the requirements of any such insurance; (e) any other event occurs that causes Assignee, in good faith, to consider that payment or performance of the Obligations is impaired or that the Equipment is at risk; (f) the Equipment is impounded or confiscated by any federal, state, local governmental authority or third party; (g) Lessee fails to produce Equipment for inspection within 10 days, upon demand; or (h) Lessee breaches any of the other terms of this Agreement or any other agreement with or assigned to Assignee.

14. **Expenses.** To the extent not prohibited by law, Lessee shall reimburse Lessor or Assignee for any expense incurred by Lessor and Assignee in protecting, defending or enforcing their rights under this Agreement, including, without limitation, reasonable attorneys' fees and legal expenses and all expenses of taking possession, transporting, holding, repairing, refurbishing, preparing for disposition and disposing of the Equipment, and all expenses and costs incurred in collecting the Obligations, including collection agency fees based on a maximum of 25% of the Obligations, and all shall be part of the Obligations.

15. **Remedies.** If Lessee is in default, Assignee may terminate this Agreement and/or exercise all other rights and remedies provided by law and by this Agreement, and Lessee will lose all rights to keep the Equipment. Assignee will have the right to take the Equipment, without notice or hearing, and Lessee or any guarantor also expressly waives any right to notice or a prior hearing or to require Assignee to post any bond. To take it, Lessee consents that Assignee may enter the premises where the Equipment is stored and remove it. Assignee may take any property contained within the Equipment at the time of repossession and hold it for Lessee. Neither the termination of this Agreement nor the repossession of the Equipment by Assignee shall release Lessee from its Obligations under this Agreement. Lessee agrees that Assignee may sell the Equipment (including at wholesale), re-lease it or otherwise dispose of it in a commercially reasonable manner. Lessee agrees to pay Assignee, as liquidated damages for loss of bargain and not as a penalty, an amount equal to: (a) the Termination Value (as hereinafter defined); plus (b) a processing fee ("Processing Fee") equal to the lower of $500.00 or the maximum amount permitted by applicable law. The net proceeds of the disposition of the Equipment by sale or re-lease for the remaining term of lease under this Agreement, shall reduce the Lessee's Obligations pursuant to the preceding sentence. Any costs to Lessor and/or Assignee arising from repossessing the Equipment and/or selling the Equipment and/or re-leasing the Equipment for the remaining term of lease under this Agreement, including, without limitation, reasonable legal fees and costs, shall increase the Lessee's Obligations pursuant to the preceding sentences. Lessee shall remain liable for any deficiency. All Lessees and Guarantors consent to Assignee obtaining credit bureau reports upon them. Any surplus following any disposition of the Equipment shall belong to Assignee. All rights and remedies may be exercised by Assignee either separately or in combination and any action taken by Assignee to recover payment from Lessee of the Obligations shall not limit Assignee's rights with respect to the Equipment. Assignee can apply all proceeds or payments in its discretion.

16. **Excessive Wear and Tear.** All warranty and product improvement programs are to be completed prior to the Termination Date of the lease relating to the Equipment. For purposes of this Agreement, excessive wear and tear shall mean and include any of the following: (a.) Cab/Operator Platform. (a.1) Heavy interior soil or strong odor. (a.2) Unclean condition of the cab. (a.3) Holes, tears or burns on the dash, floor covers, seats, headliners, upholstery or interior. (a.4) Hour Meter: If the hour meter or dash has been tampered with, Assignee has the right to estimate excess hours plus any additional penalties deemed appropriate. (a.5) Seat and/or seat belts broken. (b.) Exterior. (b.1) Dents larger than 2" in diameter or excessive number of dents. (b.2) Scratches - Any excess scratches to the paint or any one individual scratch that exceeds 8" in length. (b.3) Chips - Any single chip the size of a quarter or larger or multiple smaller chips within 1 square foot. (b.4) Paint - Substandard paint, such as peeling, bubbling or mismatched shades that evidence poor condition in comparison with original paint. (b.5) Rust - Rust holes in the body metal or any rust spots. (b.6) Glass Damage - Any glass that must be replaced due to cracks or missing glass and any windshield damages. (b.7) Frame Damage - All frame damage and substandard frame repairs in addition to modifications made to the frame. (b.8) Blades, Buckets and Other Attachments - Any broken or cracked teeth on any attachments included with the Equipment. (b.9) Tires/Tracks - Any tires/tracks on returned Equipment that have any of the following: are in an unsafe condition, are not matching, non compatible and/or have excessive cuts/cracks/missing chunks or missing/damaged drive lugs, excessive stubble damage, have broken slide walls, are not original casings, have improper ballasting, have less than 50% of original tread remaining, or are not of the same size, type, grade or manufacturer (or equivalent-quality manufacturer) as were originally included on the Equipment, then Lessee will be required to pay for the cost of a new tire/track if the above conditions are not met. (b.10) Unclean exterior requiring but not limited to steam cleaning. (b.11) Broken or inoperable lights. (b.12) Any Mirror damage. (b.13) Bent or broken steps. (b.14) Dented or bent wheel rims. (c.) Mechanical. (c.1) Mechanical - Mechanical components that are missing, broken or unsafe or that do not operate normally. The battery will need to be replaced if the battery is dead upon the delivery of the unit at lease end. (c.2) Equipment - Computer and precision farming/guidance systems or safety or emission control equipment not in proper working order. (c.3) Brakes - Brake drums that are cracked or exceed manufacturer's recommended wear limits, brake linings showing less than 50% remaining wear, or brakes that leak oil or fluid. (c.4) Power Train - Wear on power train assembly that exceeds manufacturer's then-current standards for normal wear (as shown by oil sample analysis). (c.5) Undercarriage - Leaky lubrication seals, improperly tightened/aligned track tension, cracked or broken track shoes or fasteners or drive/idler/roller/bogie wheels, less than 50% of original life remaining on any parts, or any undercarriage components not being of the original size, type, grade or manufacturer. (c.6) Combine threshing components - with less than 50% of original life remaining on any parts. (c.7) Hydraulic System - Any pumps, motors, valves or cylinders not in good operating condition or that fail to meet manufacturer's rated specifications, or hydraulic system exceeds manufacturer's then-current contaminant standards (as shown by oil sample analysis).

21009A    Rev 01/24 Previous editions may not be used.    Page 3 of 9

EXHIBIT 6 of 6



020069   / 2793443                                    **Agreement Provisions**

(c.8) Air Filters - Any filters not within manufacturer's specifications. (c.9) Electrical System - Any gauges or fluid indicators that are damaged or do not function, an alternator that fails to operate properly, a battery that fails to hold a charge, or any wire harnesses that are not tied down and kept secure, dry, clean and dust-free. (c.10) Leaks - Any general lubricant, engine coolant, water or A/C leaks that cost in excess of $100 to repair including labor. (c.11)Mufflers/Exhaust Pipes burnt out. (c.12) Damaged or inoperable horn. (d.) General; Other. (d.1) General - Failure to operate and maintain the Equipment in accordance with the manufacturer's specifications, or use of components, fuels or fluids on or in connection with the Equipment that do not meet manufacturer's standards. (d.2) Other - Any other damage or repair including but not limited to unlawful or unsafe operating conditions, or that make the Equipment either unlawful or unsafe to operate. (d.3) Any missing accessories or attachments. Upon any return of the Equipment, we shall, in our sole discretion, determine the existence of any Excessive Wear and Tear. All repair estimates will be based upon applicable Lessor rates or, if Lessor is unable to estimate and repair such excessive wear and tear, then at rates applicable to another outlet as reasonably selected by Lessor. Your failure to pay the invoiced wear and tear charges and/or to instead, make the required repair at an authorized dealer within 30 days of demand, shall constitute a default under the Agreement.

17. **Alterations/Repairs.** Lessee will not, without Assignee's prior written consent, affix or install any accessories or attachments to the Equipment nor change it so that it cannot be used by similarly situated lessees. Any improvements, replacements, additions, accessories, or repair parts to the Equipment shall become Assignee's property, free of all liens and encumbrances, and shall be deemed part of the Equipment. The Equipment is, and shall be personal property, even if it or any part of it becomes affixed or attached to real property or any improvement to real property.

18. **Security Deposit.** The Security Deposit may be applied to any amounts that Lessee fails to pay under this Agreement, including but not limited to damages to the Equipment in Assignment. Lessor will assign this Agreement to CNH Industrial Capital America LLC (herein "Assignee"or "CNH Capital"). Lessee acknowledges that Lessor has the right to assign this Agreement and that all rights and benefits but no obligations (if any) of Lessor under this Agreement may be exercised by any such Assignee and that no obligations (if any) of Lessor pass to Assignee. Upon receipt of notice from Assignee with instructions for payment, Lessee shall make all payments due under this Agreement directly to Assignee. This Agreement shall be binding on and inure to the benefit of Lessee and Lessor and their respective heirs, personal representatives, successors or assigns; provided, however, that Lessee may not assign its obligations under this Agreement to any person without Assignee's prior written consent.

19. **Risk of Loss.** All risk of loss, theft or damage to the Equipment is assumed by the Lessee, until the Equipment is returned to the Lessor. If the Equipment can be repaired for a cost less than its fair market value, Lessee will repair the Equipment at Lessee's sole expense but damage to the Equipment shall not release Lessee from the Obligations. If the Equipment cannot be so repaired, or is lost, stolen or destroyed, Lessee shall at Assignee's option and written consent either: (a) replace the Equipment at Lessee's sole expense with equivalent equipment of equal or greater value, as determined in the sole discretion of and with the consent of the Assignee and transfer clear title to such replacement equipment to Assignee, whereupon such replacement equipment shall be deemed the Equipment for all purposes of this Agreement; or (b) pay Assignee the Termination Value. Upon payment of the requisite Termination Value, Lessee shall be entitled to retain possession of the affected unit(s) of Equipment. Assignee may, at Assignee's sole option, apply proceeds of insurance, in whole or in part, to repair or comparably replace the Equipment or to satisfy such Termination Value or any of Lessee's Obligations pursuant to this Agreement. The "Termination Value" shall be an amount equal to: (a) any past due, unpaid Lease Payments and any late charges related thereto; plus (b) all remaining Lease Payments hereunder, less any future interest payments embedded therein; plus (c) (i) the Purchase Option Price, or (ii) if no purchase option is granted, the estimated residual value used to calculate the Lease Payments by Assignee; plus (d) any other costs to Lessor and/or Assignee arising from the loss, theft, wear and tear, or damage to the Equipment or from the collection of any amount due under this Lease. In no event shall the Termination Value exceed the maximum amount permitted by applicable law.

20. **Purchase Option.** So long as no default exists under this Lease and it has not been earlier terminated, Lessee may on the Termination Date, upon at least 90 days, but not more than 180 days, prior written notice to Assignee, purchase all (but not less than all) of the Equipment: (a) if stated dollar amount is provided as the Purchase Option Price, then for that amount together with all applicable taxes and other charges due in connection with such sale and all other amounts due and unpaid under this Lease; or (b) if no Purchase Option Price is identified, then at the fair market value, as determined at Assignee's sole discretion, at the time the Purchase Option is exercised, together with all applicable taxes and other charges due in connection with such sale and all other amounts due and unpaid under this Lease. Lessee's purchase of the Equipment shall be on an AS-IS, WHERE-IS BASIS.

21. **EARLY RETURN.** IF LESSEE RETURNS THE EQUIPMENT PRIOR TO THE TERMINATION DATE, LESSEE SHALL BE OBLIGATED TO IMMEDIATELY PAY TO LESSOR AN EARLY TERMINATION FEE EQUAL TO 1.0% OF: (A) IF A STATED DOLLAR AMOUNT IS PROVIDED AS THE PURCHASE OPTION PRICE, THEN FOR THAT AMOUNT, TOGETHER WITH ALL UNPAID LEASE PAYMENTS, REMAINING LEASE PAYMENTS, PLUS SEPARATELY, ANY AND ALL OTHER AMOUNTS PROVIDED FOR UNDER THIS LEASE; OR (B) IF NO PURCHASE OPTION PRICE IS IDENTIFIED OR IS STATED AS FMV, THE ESTIMATED RESIDUAL VALUE OF THE EQUIPMENT USED TO CALCULATE THE LEASE PAYMENTS DUE UNDER THE LEASE AS DETERMINED BY ASSIGNEE TOGETHER WITH ALL UNPAID LEASE PAYMENTS, REMAINING LEASE PAYMENTS, AND ALL OTHER AMOUNTS PROVIDED FOR UNDER THIS LEASE. THIS FEE IS IN ADDITION TO THE OTHER OBLIGATIONS OWED BY THE LESSEE TO THE ASSIGNEE.

22. **Return.** If Lessee does not exercise the purchase option (if any) as provided in this Lease, Lessee shall on the Termination Date or such earlier date of termination of this Lease: (a) at its expense, deliver the Equipment to a location designated by Assignee; (b) pay $400.00 per serial numbered unit to the Lessor as a return fee; and (c) pay all charges incurred by Lessor to repair any excessive wear and tear and for any hours in excess of the Maximum Annual Usage at the Excess Usage Rate. The risk of loss of the Equipment shall remain with Lessee until Assignee accepts the Equipment by executing a written acceptance. Unless and until all the Equipment is returned and accepted, or is otherwise disposed of by written agreement between Assignee, and Lessee, and until all other terms and conditions have been met, the term of the Lease with respect to such Equipment shall continue. This fee is in addition to the other Obligations owed by the Lessee to the Assignee.

23. **Failure to Return Equipment.** If Lessee does not exercise its option, if any, to purchase the Equipment in accordance with this Agreement and fails to return the Equipment at the termination of this Agreement, due to default or otherwise, then, in addition to any other amounts that may be due to Assignee under this Agreement or under applicable law, Lessee will be liable for a daily amount computed on the basis of the scheduled Lease Payment, if unequal, the highest lease payment will be used.

24. **Conflict with Law.** Any provision of this Agreement prohibited by applicable law shall be ineffective to the extent of the prohibition without invalidating the remaining portions of this Agreement. The validity, construction and enforcement of this Agreement shall be governed by the laws of the State of the Lessor (without regard to conflict of law principles of such State). All terms not otherwise defined have the meanings assigned to them by the UCC.

25. **Miscellaneous.** In the event that this contract is determined by a court of competent jurisdiction to be characterized as a loan or forbearance agreement, and not a lease, despite the terms and conditions found in this contract, then all parties agree that any interest charges computed and assessed in this contract that are in excess of the maximum allowed interest charges allowed by law shall be applied as a reduction to the principal balance owed on this contract only, and this shall be the agreed upon and satisfactory remedy to all parties. By providing any address, email address or telephone number, including a mobile phone number, either now or in the future to Lessor, Assignee, any of Assignee's affiliates or any debt collectors retained by Assignee, Lessee agrees that any of the above may contact Lessee using that address or number, including contact through calls or texts using an automatic dialing and announcing device and prerecorded calls, and that such calls are not "unsolicited" under state or federal law. Any attempted revocation of this consent to contact, if allowable by law, must be made in writing. Lessee acknowledges and agrees that CNH Capital and its third party service providers can access and use telematics data and other information regarding location, maintenance and operation of the Equipment for any lawful purpose, including without limitation, to locate and repossess the Equipment. See https://www.cnhindustrialcapital.com/en_us/Pages/Privacy.aspx for additional details. If a court finds that any part of this Agreement to be invalid or unenforceable, the remainder of this Agreement will remain in effect. All of Assignee's rights shall remain in effect after the expiration or termination of this Agreement. If more than one Lessee is named in the Agreement, the liability of each shall be joint and several. All notices required or permitted hereunder shall be in writing and shall be deemed adequate if sent to the first Lessee on the Lease and at its address noted herein or to such other address as such party may have specified in writing by notice as prescribed in this Agreement. The captions and headings of the sections of this Agreement are for convenience only and are not to be used to interpret or define the provisions hereof. Restrictive endorsements on checks or other forms of payment that Lessee sends to Assignee will not change or reduce Lessee's obligations to Assignee. Assignee will not lose any rights if Assignee accepts late or partial payments or delays enforcing its rights under this Agreement. For combine leases, the hours used will be based on separator hours rather than engine hours.

26. **WAIVER OF JURY TRIAL.** EXCEPT IN GEORGIA OR CALIFORNIA OR WHERE OTHERWISE PROHIBITED BY LAW, EACH LESSEE, LESSOR AND CNH CAPITAL WAIVE ANY AND ALL RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING RELATING TO THE OBLIGATIONS, THIS AGREEMENT, OR ANY OTHER DOCUMENT CONNECTED HEREWITH, OR ANY TRANSACTION ARISING FROM OR CONNECTED TO ANY OF THE FOREGOING. EACH LESSEE, LESSOR AND CNH CAPITAL REPRESENT THAT THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY GIVEN.

EXHIBIT 6 of 6



020089   / 2793443                                                    Agreement Provisions

27. **Additional Waivers.** To the extent permitted by applicable law, Lessee hereby waives any and all rights and remedies conferred upon a Lessee by Sections 2A-508 through 2A-522 of the UCC, including, without limitation, Lessee's rights to: (a) cancel any Lease; (b) repudiate any Lease; (c) reject any Equipment; (d) revoke acceptance of any Equipment; (e) recover damages from Lessor for any breaches of warranty or for any other reason; (f) a security interest in the Equipment in Lessee's possession or control for any reason; (g) deduct from amounts owed all or any part of any claimed damages resulting from Lessor's default, if any, under any Lease; (h) accept partial delivery of the Equipment; (i) "cover" by making any purchase or lease of or contract to purchase or lease Equipment in substitution for those due from Lessor; (j) recover any general, special, incidental or consequential damages for any reason whatsoever; and (k) specific performance, replevin, detinue, sequestration, claim and delivery or the like for any Equipment identified in any Lease. To the extent permitted by applicable law, Lessee also hereby waives any rights now or hereafter conferred by statute or otherwise which may require Lessor to sell, lease or otherwise use any Equipment in mitigation of Lessor's damages as set forth in Section 15 or which may otherwise limit or modify any of Lessor's rights or remedies under Section 15.

28. **Electronic Contracting, Signature Acknowledgment, Future Notices.** Lessee agrees that (i) this Agreement is an electronic agreement executed by Lessee using Lessee's electronic signature or that Assignee may convert this Agreement into an electronic agreement; (ii) Lessee's electronic signature signifies Lessee's intent to enter into this Agreement and that this Agreement shall be a legally valid and enforceable Agreement in accordance with its terms to the same extent as if Lessee had executed this Agreement using Lessee's written signature and (iii) the authoritative copy of the Agreement ("Authoritative Copy") shall be that electronic copy that resides in a document management system designated by Assignee for the storage and authoritative copies of electronic records, which shall be deemed held by us in the ordinary course of business. Notwithstanding the forgoing, if the Authoritative Copy is converted by printing a paper copy which is marked by Assignee as the original (the "Paper Contract", then Lessee acknowledges and agrees that (1) your signing of this Agreement with your electronic signature also constitutes issuance and delivery of such Paper Contract, (2) your electronic signature associated with this Agreement, when affixed to the Paper Contract, constitutes your legally valid and binding signature on the Paper Contract and (3) subsequent to such conversion, Lessee's duties and Obligations will be evidenced by the Paper Contract alone. By providing your e-mail address and electing to execute this Agreement electronically, Lessee agrees that all future notices, statements and communications relating to this Agreement shall be delivered to the Lessee via e-mail transmission to the e-mail address provided to Assignee by the Lessee. It is the Lessee's duty to provide any changes to Lessee's e-mail address to Assignee so that future communications can reach Lessee in a timely manner.

EXHIBIT 6 of 6

 | CAPITAL

020069  / 2793443

FX00000283736923143A0609

# MULTIPLE UNIT ADDENDUM

This Multiple Unit Addendum is hereby incorporated into the Lease Agreement dated _____February 06_____, ___2024___

with Lessor __BURKS TRACTOR COMPANY,INC._____ herein the ("Agreement"), and this addendum equipment list is made a part of the Equipment, as defined in the Agreement. Lessee acknowledges receipt of this Multiple Unit Addendum at the time it is executed, along with a copy of the Agreement and all its pages.

| # | New or Used | Equipment Description | Model | Serial Number/PIN | Hours | Maximum Annual Usage | Excess Usage Rate | Cash Price |
|---|---|---|---|---|---|---|---|---|
| 1 | NEW | Case IH Steiger | 620 | JEEZC620CPF509626 | 7.0 | 1,200 | 130 | N/A |
| 2 | NEW | Case IH Steiger | 620 | JEEZC620LPF509629 | 277.0 | 1,100 | 130 | N/A |
| 3 | NEW | Case IH Steiger | 620 | JEEZC620PPF509749 | 11.0 | 1,200 | 130 | N/A |
| 4 | NEW | Case IH Steiger | 620 | JEEZC620EPF510167 | N/A | 1,200 | 130 | N/A |
| 5 | NEW | Case IH Rear Re | N/A | NA | N/A | 1,100 | N/A | N/A |
| 6 | NEW | Case IH Rear Re | N/A | NA | N/A | 1,200 | N/A | N/A |
| 7 | NEW | Case IH Rear Re | N/A | NA | N/A | 1,200 | N/A | N/A |
| 8 | NEW | Case IH Rear Re | N/A | NA | N/A | 1,200 | N/A | N/A |

Executed this __06__ day of __February__, __2024__.

X _____     MILLENKAMP CATTLE, INC.          _____
Signature of Lessee/Lessee's Representative     Printed Name          Title (not for an individual Lessee)

X _____
Signature of Lessor's Representative          BURKS TRACTOR COMPANY,INC.
                                              Printed Lessor Name

23143A      Rev. 01/24 Previous editions may not be used.                                    Page 6 of 9

EXHIBIT 6 of 6



**CNH** | **CAPITAL**

020069  / 2793443

## PURCHASED PROTECTION PLAN ADDENDUM

This is the Purchased Protection Plan Addendum to that certain _____ Lease Agreement _____ dated _____ February 06 _____, 2024 _____ between the Lessee and the Lessor for the Equipment identified therein (herein the "Agreement"), into which this Purchased Protection Plan Addendum is hereby incorporated. If the price of a Purchased Protection Plan is financed under the Agreement, Lessee understands that a portion of the price may be paid to Lessor, to Lessor's designee or to Case New Holland Insurance Agency, LLC as an administrative or marketing fee. Assignee may deliver the Purchased Protection Plan price to Lessor and if Assignee does so, Lessor is solely responsible for remitting payment to the provider. Provider and Lessee agree that they shall not raise any claim, defense or setoff against Assignee if the Lessor fails to remit payment to the provider, unless prohibited by law. Your Dealer may receive certain brand discounts, program funds and incentives (hereafter the "Discounts"), and may elect to use or keep those Discounts, as part of their overall pricing package options presented to you. The Discounts are owned by your Dealer. Some of the cost of your potential Purchased Protection Plan may be paid for by your Dealer, utilizing those Discounts and/or rolled into your lease payment. You may ask your Dealer for additional information concerning the potential separate costs contained in your lease payment of a potential Purchased Protection Plan, prior to executing your lease Agreement. Lessee's electronic signature below indicates Lessee's consent to receive this disclosure statement electronically at the email address provided by Lessee to Lessor. Lessee accepts this disclosure statement in electronic form, and has retained a copy of the disclosure statement electronically or otherwise.

The Purchased Protection Plan is recommended but is not required. The precise protection afforded is subject to the terms, conditions and exclusions of the contract as issued. Purchased Protection Plans are issued by a licensed, independent third party unrelated to CNH Industrial Capital America LLC or Case New Holland Insurance Agency, LLC.

Lessee requests Lessor/Assignee to attempt to obtain a Purchased Protection Plan from a third party provider and to include as part of the Rental Payments the price as shown for the term as shown or for the total machine hours stated in the Purchased Protection Plan contract, whichever occurs first, for the Equipment listed below.

*Where NEW plan is shown below the Total Months and Total Machine Hours selected on new equipment plans include the Manufacturer's Base Warranty Period.*

*Where USED plan is shown below the Months and Machine Hours selected should commence on the used equipment Purchase Protection Plan contract effective date.*

| | PLAN | EQUIPMENT SERIAL/PIN | PRICE | TERM (MONTHS) |
|---|---|---|---|---|
| 1 | NEW | JEEZC620LPF509629 | $26,540.00 | 48 |
| 2 | NEW | JEEZC620PPF509749 | $26,540.00 | 48 |
| 3 | NEW | JEEZC620EPF510167 | $26,540.00 | 48 |
| 4 | NEW | JEEZC620CPF509626 | $26,540.00 | 48 |

Executed this 06  day of February _____, 2024

X _____    MILLENKAMP CATTLE, INC.    _____
Signature of Lessee/Lessee's Representative    Printed Name    Title (not for an individual Lessee)

EXHIBIT 6 of 6

**CNH** | **CAPITAL**

020069  / 2793443

F%0000028373692 3383A0809

## MAINTENANCE PLAN ADDENDUM

This is the Maintenance Plan Addendum to that certain _____ Lease Agreement _____ dated _____ February 06 _____, _____ 2024 _____ between the Lessee and the Lessor for the Equipment identified therein (herein the "Agreement"), into which this Maintenance Plan Addendum is hereby incorporated. If the price of a Maintenance Plan is financed under the Agreement, Lessee understands that a portion of the price may be paid to Lessor by the manufacturer. Lessee agrees that they shall not raise any claim, defense or setoff against Assignee if the Lessor fails to remit payment to the manufacturer, unless prohibited by law. Your dealer may receive certain brand discounts, program funds and incentives (hereafter the "Discounts"), and may elect to use or keep those Discounts, as part of their overall pricing package options presented to you. The Discounts are owned by your Dealer. Some of the cost of your potential maintenance plan may be paid for by your dealer, utilizing those Discounts and/or rolled into your lease payment. You may ask your dealer for additional information concerning the potential separate costs contained in your lease payment of a potential maintenance plan, prior to executing your lease.

The Maintenance Plan is recommended but is not required. The precise protection afforded is subject to the terms, conditions and exclusions of the contract as issued by the manufacturer. Program may not be available in all states. Eligible equipment or other program details may vary by state based on state regulations.

Lessee requests Lessor/Assignee to attempt to obtain a Maintenance Plan from the manufacturer and to include as part of the Lease Payments the price as shown for the term as shown or for the total machine hours stated in the Maintenance Agreement Form, whichever occurs first, for the Equipment listed below.

*Where NEW plan is shown below the Total Months and Total Machine Hours selected on new equipment plans.*

| | PLAN* | EQUIPMENT SERIAL/PIN | PRICE | TERM (MONTHS) | HOURS |
|---|---|---|---|---|---|
| 1 | NEW | JEEZC620CPF509626 | see Maintenance Agreement Form for full details | | |
| 2 | NEW | JEEZC620LPF509629 | see Maintenance Agreement Form for full details | | |
| 3 | NEW | JEEZC620PPF509749 | see Maintenance Agreement Form for full details | | |
| 4 | NEW | JEEZC620EPF510167 | see Maintenance Agreement Form for full details | | |
| 5 | NEW | NA | see Maintenance Agreement Form for full details | | |
| 6 | NEW | NA | see Maintenance Agreement Form for full details | | |
| 7 | NEW | NA | see Maintenance Agreement Form for full details | | |
| 8 | NEW | NA | see Maintenance Agreement Form for full details | | |

**Total Cost of Maintenance Plan** _____ 73,325.92 _____

*See Maintenance Agreement Form for the serial number(s) under plan.

Executed this ___06___ day of ___February___, ___2024___

X _____  MILLENKAMP CATTLE, INC.  _____
Signature of Lessee/Lessee's Representative    Printed Name    Title (not for an Individual Lessee)

23383A  Rev. 01/24 Previous editions may not be used.

EXHIBIT 6 of 6



**CNH | CAPITAL**

020069  /  2793443

F%0000028373692313 9A0909

# GUARANTEE

In consideration of the extension of credit as referenced by the application number above, and to induce the Secured Party, as hereinafter defined, to extend credit on the agreement dated          February 06          ,   2024     , (herein "Agreement") to:

MILLENKAMP CATTLE, INC.

of  471 NORTH 300 WEST, JEROME, ID 83338-5078

(collectively the "Lessee"), and for other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, each of the executing parties below (collectively the "Guarantor", whether one or more) makes this guarantee ("Guarantee") in favor of the Secured Party.

1.  The Guarantor, pursuant to the terms of this Guarantee, unconditionally and irrevocably guarantees the payment, performance and complete fulfillment of all Obligations, as defined in the Agreement described above, of the Lessee to Secured Party, and any amendments or supplements thereto, whether heretofore or hereafter incurred, including any revisions, renewals, consolidations and extensions thereof, any of which may be made without notice to the Guarantor. Guarantor has received and reviewed a copy of the Agreement prior to executing this Guarantee.

2.  This Guarantee does not limit, modify or cancel any unlimited guarantee that may have been previously given by the Guarantor, if any.

3.  Notice of acceptance is waived (and, in Louisiana, all pleas of division and discussion are waived). Presentment, protest, demand, and notice of protest, demand and dishonor of any of the Obligations, and the exercise of possessory, collection or other remedies for the Obligations, are also hereby waived.

4.  Without further authorization from or notice to Guarantor, Secured Party, in its sole discretion, may renew, refinance, revise, settle, alter, compromise, accelerate, extend, consolidate or otherwise change the time or manner of payments of any of the Obligations or increase or reduce the rate of interest thereon; or add or release any one or more other Guarantors. No exercise or nonexercise by Secured Party of any right hereby given to it, no dealing by Secured Party with Lessee or any other Guarantor, and no change, impairment, or extension of any right or remedy of Secured Party shall in any way affect the Guarantor's liability hereunder or give Guarantor any recourse against Secured Party. Notice of default in any of the Obligations is expressly waived by Guarantor.

5.  With or without notice to Guarantor, and without affecting the liability of Guarantor hereunder, Secured Party may from time to time before, at, or after any default by Lessee, together or separately, (1) accept additional collateral for the Obligations, (2) accept other collateral in exchange or substitution for the collateral then securing the Obligations, (3) obtain a credit bureau report for any Guarantor, and/or (4) surrender or release any collateral securing the Obligations.

6.  This is a Guarantee of prompt payment and performance, and not of collection. Secured Party does not have to exercise or exhaust its rights against the Lessee (or any other person or entity obligated with respect to the Obligations) or enforce its rights against any collateral before a claim is made against Guarantor.

7.  It is the mutual intention of the parties hereto that the Guarantor shall be bound notwithstanding any claim or defense Lessee may have or raise, and Guarantor waives any defense Lessee may have. Guarantor agrees to pay reasonable attorneys' fees and all costs and other expenses incurred by Secured Party in collecting or compromising any of the Obligations or in enforcing this Guarantee against Guarantor.

8.  In the event that any payment by Lessee to Secured Party is held to constitute a preference under the bankruptcy laws, or if for any other reason the Secured Party is required to refund such payment or pay the amount thereof to any other person or party, such payment by Lessee to Secured Party shall not constitute a release of Guarantor from any liability hereunder, but Guarantor agrees to pay such amount to Secured Party on demand.

9.  "Secured Party" shall mean CNH Industrial Capital America LLC and CNH Industrial America LLC and all parent, subsidiary and affiliated corporations and all successors and assigns of any of the foregoing. This Guarantee shall bind the respective heirs, executors, administrators, successors, legal representatives and assigns of each Guarantor and shall inure to the benefit of any Secured Party.

10. Each Guarantor shall be jointly and severally (and, in Louisiana, "in solido" with the Lessee) liable to Secured Party.

11. EXCEPT IN GEORGIA OR CALIFORNIA OR WHERE OTHERWISE PROHIBITED BY LAW, EACH GUARANTOR WAIVES ANY AND ALL RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING RELATING TO THE OBLIGATIONS, THIS GUARANTEE, OR ANY OTHER DOCUMENT CONNECTED HEREWITH, OR ANY TRANSACTION ARISING FROM OR CONNECTED TO ANY OF THE FOREGOING. EACH GUARANTOR REPRESENTS THAT THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY GIVEN.

Executed this   06     ,   day of   February     ,   2024

X _____          WILLIAM J MILLENKAMP                              Not Applicable
Signature of Guarantor/Guarantor Representative          Printed Name                              Title (not for individual Guarantor)

23139A    Rev. 01/24 Previous editions may not be used.                                        Page 9 of 9

EXHIBIT 6 of 6



020069  / 2793443

F%00000283736921143A

## PHYSICAL DAMAGE INSURANCE COVERAGE CONFIRMATION REQUEST

Date:  02-06-2024

| To: | Insured: |
|-----|----------|
| Insurance Carrier  Hub | Name  MILLENKAMP CATTLE, INC. |
| Agent | Address  471 NORTH 300 WEST |
| Phone Number  (208) 734-1711 | City, St/Pr, Zip/Postal  JEROME, ID 83338 5078 |
| Fax Number  (866) 912-7584 | Home Phone  (208) 324-2350 |
| Policy Number  * | Business Phone  (208) 324-2350 |

The above Insured authorizes you to furnish to the Seller/Lessor listed below with proof of insurance. **Please complete and send to the Seller/Lessor documentation (binder or policy) that confirms physical damage insurance coverage for the described Equipment and Value listed below, with the loss payable in favor of CNH Industrial Capital America LLC.**  Seller/Lessor is responsible for retaining the documentation provided by the Insurance Carrier as proof of initial insurance coverage.  This Request is for the benefit of the Seller/Lessor and Loss Payee only, and nothing in this document alters the Insured's obligation to obtain insurance on the Equipment as required by the underlying contract for its purchase and financing.

**Seller/Lessor**

Name  BURKS TRACTOR COMPANY,INC.

Address  3140 KIMBERLY RD.

City, St/Pr, Zip/Postal  TWIN FALLS, ID 83301

Business Phone  (208) 733-5543

Fax

Email

**Loss Payee**

CNH Industrial Capital America LLC
P.O. Box 1700
New Holland, PA 17557

### Equipment

| New / Used | Year | Manufacturer | Description | Model | Serial Number/PIN | Value |
|------------|------|--------------|-------------|-------|-------------------|-------|
| | | See attached Multiple Unit Addendum | | | | $ |
| | | | | | | $ |
| | | | | | | $ |
| | | | | | | $ |
| | | | | | | $ |
| | | | | | TOTAL | $   2,323,471.24 |

Attachments:

This authorization is for the period beginning  02-06-2024  and ending  02-06-2027  for the amount indicated above.

X
Insured Signature

### Trade-In

| Year | Manufacturer | Description | Model | Serial Number/PIN |
|------|--------------|-------------|-------|-------------------|
| | | | | |
| | | | | |
| | | | | |

Comment from Insured (if any) to Insurance Carrier regarding trade-in.

21143A     Rev. 01/24 Previous editions may not be used.

EXHIBIT 6 of 6

**CNH CAPITAL**

**LEASE GUARANTEE ADDENDUM**



020069   / 2793443

FX000002837369 23134A

**Lessor Name:** BURKS TRACTOR COMPANY,INC.

**Customer Name:** MILLENKAMP CATTLE, INC.

**Date of Equipment Lease Agreement:** 02-06-2024

**Description of Lease Equipment:** Case IH Steiger 620 JEEZC620CPF509626

**Credit Application Number:** 2793443

Not withstanding anything to the contrary in the ASSIGNMENT provision of the Equipment Lease Agreement described above (collectively the "Agreement") and the Retail Financing Agreement ("RFA"), in order to induce CNH Industrial Capital America LLC or, in Canada, CNH Industrial Capital Canada Ltd. (hereinafter "CNH Capital") to take assignment of the Agreement from Lessor, pursuant to the terms of the RFA and the Agreement, Lessor hereby agrees as follows, concerning the Agreement, the equipment described above, and all other equipment, attachments and accessories covered under the Agreement:

## Payment Guarantee

☐ **Full Guarantee.** If checked, Lessor agrees to guarantee full payment of all Lease Payments due on the Agreement. If Customer fails to timely make any Lease Payments when due under the Agreement in good and collected funds to CNH Capital, then Lessor shall immediately pay to CNH Capital upon demand, an amount equal to (a) any past due, unpaid Lease Payments and any late charges related thereto, plus (b) all remaining Lease Payments.

☑ **Alternative Guarantee.** If checked, Lessor agrees to guarantee full payment of all Lease Payments due on the Agreement until a prescribed number of Lease Payments have been paid by the customer. If the first __12__ scheduled Lease Payments are not timely made under the Agreement by the lessee, in good and collected funds to CNH Capital, then the Lessor guarantees all Lease Payments due under the Agreement. Lessor shall immediately pay to CNH Capital upon demand an amount equal to (a) any past due, unpaid Lease Payments and any late charges related thereto, plus (b) all remaining Lease Payments.

## Guarantee above Published Residual

☐ If checked, Lessor agrees to pay CNH Capital the amount described below, computed as follows: Upon termination of the Agreement for any reason, and/or, if customer does not exercise any purchase option or fails to make payment of an exercised purchase option on the Equipment, as defined in the Agreement, Lessor shall pay to CNH Capital, upon demand, an amount computed as follows: (i) the sum of (a) any matured and unpaid Lease Payments and any late charges related thereto, (b) all remaining Lease Payments, (c) the Purchase Option Price, (d) any excess hour charges, (e) reasonable attorney fees and legal expenses incurred in connection with the Agreement, and (f) any other liabilities accruing under the Agreement exceeds (ii) the net proceeds received upon disposition of the Leased Equipment; but in no event more than the Amount of Residual Value Under Guarantee identified below:

Amount of Residual Value Under Guarantee: $ _____

## Pro Lease Guarantee

☐ If checked, upon termination of the Agreement for any reason, if the customer does not exercise the purchase option or fails to make payment of an exercised purchase option on the Equipment, as defined in the Agreement, at the option of CNH Capital, Lessor shall purchase the Equipment for $ _____ , which payment shall be due immediately upon CNH Capital's demand.

If multiple boxes are checked, Lessor guarantees both payment and residual as described above. The person signing below represents that they have full power and authority to bind the Lessor to the terms above.

Executed this __08__ day of __February__ , __2024__ .

X _____
Signature of Lessor's Representative

BURKS TRACTOR COMPANY,INC.
Printed Lessor Name

02-06-2024
Date

23134A    Rev. 01/24 Previous editions may not be used.

EXHIBIT 6 of 6

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)
CSC    1-800-858-5294

B. E-MAIL CONTACT AT SUBMITTER (optional)
SPRFiling@cscglobal.com

C. SEND ACKNOWLEDGMENT TO:  (Name and Address)

2759 67568
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: Idaho
(S.O.S.)

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | MILLENKAMP CATTLE, INC. | | | |
|---|---|---|---|---|
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS  471 NORTH 300 WEST | CITY  Jerome | STATE  ID | POSTAL CODE  83338 | COUNTRY  USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | CNH Industrial Capital America LLC | | | |
|---|---|---|---|---|
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS  5729 Washington Avenue | CITY  Racine | STATE  WI | POSTAL CODE  53406 | COUNTRY  USA |

4. COLLATERAL: This financing statement covers the following collateral:
2023, Case IH, 620, Serial No.: JEEZC620LPF509629, Steiger Tractor.
2023, Case IH, 620, Serial No.: JEEZC620CPF509626, Steiger Tractor.
2023, Case IH, 620, Serial No.: JEEZC620PPF509749, Steiger Tractor.
2024, Case IH, 620, Serial No.: JEEZC620EPF510167, Steiger Tractor.
2023, Case IH, N/A, Serial No.: NA, Rear Remotes.
2023, Case IH, N/A, Serial No.: NA, Rear Remotes.
2023, Case IH, N/A, Serial No.: NA, Rear Remotes.
2023, Case IH, N/A, Serial No.: NA, Rear Remotes
THIS FINANCING STATEMENT IS BEING FILED SOLELY AS A PRECAUTION IF, CONTRARY TO THE INTENTION
OF THE PARTIES DESCRIBED ABOVE AS LESSEE AND LESSOR, THE TRANSACTION RELATING TO THE
PROPERTY DESCRIBED HEREIN IS DEEMED TO BE A SECURITY AGREEMENT RATHER THAN A LEASE WITHIN
THE MEANING OF 1-201 (37) OF THE UNIFORM COMMERICAL CODE.  THE EQUIPMENT MAY DISPLAY A SERIAL

5. Check only if applicable and check only one box:    Collateral is  ☐ held in a Trust (see UCC1Ad, item 17 and Instructions)  ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien  ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable):  ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

2759 67568

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 07/01/23)

EXHIBIT 6 of 6

## UCC FINANCING STATEMENT **ADDENDUM**
FOLLOW INSTRUCTIONS

**9. NAME OF FIRST DEBTOR:** Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

| 9a. ORGANIZATION'S NAME |
| MILLENKAMP CATTLE, INC. |

OR

| 9b. INDIVIDUAL'S SURNAME |
| FIRST PERSONAL NAME |
| ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**10. DEBTOR'S NAME:** Provide (10a or 10b) only **one** additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| 10a. ORGANIZATION'S NAME |

OR

| 10b. INDIVIDUAL'S SURNAME |
| INDIVIDUAL'S FIRST PERSONAL NAME |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**11.** ☐ ADDITIONAL SECURED PARTY'S NAME  or  ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only **one** name (11a or 11b)

| 11a. ORGANIZATION'S NAME |

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):**
NUMBER OR OTHER IDENTIFYING NUMBER, INCLUDING BUT NOT LIMITED TO, THE FOLLOWING: PRODUCT IDENTIFICATION NUMBER, TRACTOR NUMBER OR CHASSIS NUMBER..

**13.** ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS  (if applicable)

**14.** This FINANCING STATEMENT:
☐ covers timber to be cut    ☐ covers as-extracted collateral    ☐ is filed as a fixture filing

**15.** Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

**16.** Description of real estate:

**17. MISCELLANEOUS:**

SECURED PARTY COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 07/01/23)

EXHIBIT 6 of 6




20240209303

B0081-2757 02/13/2024 6:53 AM Received by Office of the Idaho Secretary of State



**STATE OF IDAHO**
*Office of the secretary of state, Phil McGrane*
**UCC1 FINANCING STATEMENT**
Idaho Secretary of State
PO Box 83720
Boise, ID 83720-0080
(208) 334-2301
Filing Fee - $3 submitted online, $6 print & mail or $12 if 3 or more
pages. Make checks payable to Secretary of State.

| Contact at Filer: | |
|---|---|
| Contact Name | CORPORATION SERVICE COMPANY |
| Contact Phone | 1-800-858-5294 |
| Contact Email | SPRFiling@cscglobal.com |

| Send acknowledgment to: | |
|---|---|
| Name | CORPORATION SERVICE COMPANY |
| Address | 801 ADLAI STEVENSON DRIVE SPRINGFIELD, IL 62703 |

Debtors:

| DEBTOR'S NAME | MAILING ADDRESS |
|---|---|
| MILLENKAMP CATTLE, INC. | 471 NORTH 300 WEST JEROME, ID 83338 |

Secured Parties:

| SECURED PARTY'S NAME | MAILING ADDRESS |
|---|---|
| CNH INDUSTRIAL CAPITAL AMERICA LLC | 5729 WASHINGTON AVENUE RACINE, WI 53406 |

Collateral:

The financing statement covers the following collateral:

2023, Case IH, 620, Serial No.: JEEZC620LPF509629, Steiger Tractor.
2023, Case IH, 620, Serial No.: JEEZC620CPF509626, Steiger Tractor.
2023, Case IH, 620, Serial No.: JEEZC620PPF509749, Steiger Tractor.
2024, Case IH, 620, Serial No.: JEEZC620EPF510167, Steiger Tractor.
2023, Case IH, N/A, Serial No.: NA, Rear Remotes.
2023, Case IH, N/A, Serial No.: NA, Rear Remotes.
2023, Case IH, N/A, Serial No.: NA, Rear Remotes.
2023, Case IH, N/A, Serial No.: NA, Rear Remotes
THIS FINANCING STATEMENT IS BEING FILED SOLELY
AS A PRECAUTION IF, CONTRARY TO THE INTENTION
OF THE PARTIES DESCRIBED ABOVE AS LESSEE AND
LESSOR, THE TRANSACTION RELATING TO THE
PROPERTY DESCRIBED HEREIN IS DEEMED TO BE A
SECURITY AGREEMENT RATHER THAN A LEASE
WITHIN THE MEANING OF 1-201 (37) OF THE UNIFORM
COMMERICAL CODE.  THE EQUIPMENT MAY DISPLAY
A SERIAL NUMBER OR OTHER IDENTIFYING NUMBER,
INCLUDING BUT NOT LIMITED TO, THE FOLLOWING:
PRODUCT IDENTIFICATION NUMBER, TRACTOR
NUMBER OR CHASSIS NUMBER..

The collateral is:

Designations:
Select a designation which describes this financing statement:  Not Applicable

**EXHIBIT 6 of 6**

B0081-2758 02/13/2024 6:53 AM Received by Office of the Idaho Secretary of State

| | |
|---|---|
| Select an additional designation which describes this financing statement: | Not Applicable |

Alternative Designations:

| | |
|---|---|
| Select the alternative designation which describes this financing statement: | Not Applicable |

Optional Filer Reference Data:

2759 67568

**EXHIBIT 6 of 6**



**CNH | CAPITAL**          **Commercial Equipment Credit Application**          FX600000283703221917A

## APPLICANT IDENTITY VERIFICATION

Federal law requires verification of an individual's identity for financial
state of residence, or, if none, than their official unexpired government
REPRESENTATIVE WILL VERIFY THE APPLICANT TO THE PHOTO
THE IDENTIFICATION FORM CHECKED BELOW IS AN EXACT MA
with CNH Capital. **CALIFORNIA RESIDENTS: BEFORE PRO**
THE CALIFORNIA CONSUMER PRIVACY ACT OF 2018 A
DEALER.

### PRIMARY APPLICANT (If a Partnership, obtain a copy of

| Usage: | ☑ AG | ☐ CE or non Ag business purposes | |
|---|---|---|---|

Identification: Expiration Date:                    Driver's License

Legal INDIVIDUAL Name (as PRINTED on above identification):

| Legal BUSINESS Name (NOT APPLICABLE IF APPLYING AS AN INDIVIDUAL): | Tax ID: | State Formed: | Business Phone: |
|---|---|---|---|
| MILLENKAMP CATTLE, INC. | 26-0803892 | ID | (208) 324-2350 |

| Residential Address of INDIVIDUAL or Physical Address of BUSINESS | City: | County: | State: | Zip Code: |
|---|---|---|---|---|
| 471 NORTH 300 WEST | JEROME | JEROME | ID | 83338-5078 |

| Occupation: | ☑ Full-time Farmer | ☐ Building Contractor | ☐ Road & Street | Bank Name: |
|---|---|---|---|---|
| ☐ Rental Yard | ☐ Part-time Farmer | ☐ Excavating/Trenching | ☐ Construction | Bank Contact: |
| ☐ Logging | ☐ Custom Operator | ☐ Lawn & Landscape | | |

Year Business Est.: 2004        Year Residence Est. (Individual):

### SECONDARY APPLICANT

| ☐ Co-App | ☐ Officer | ☐ Partner | ☐ Guarantor | |
|---|---|---|---|---|

Identification: Expiration Date:                    Driver's License

Legal INDIVIDUAL Name (as PRINTED on above identification):

| Legal BUSINESS Name (NOT APPLICABLE IF APPLYING AS AN INDIVIDUAL): | Tax ID: | State Formed: | Business Phone: |
|---|---|---|---|

| Residential Address of INDIVIDUAL or Physical Address of BUSINESS | City: | County: | State: | Zip Code: |
|---|---|---|---|---|

Year Business Est.:        Year Residence Est. (Individual):        Applicant Email Address:

| New/Used | Year | Equipment Manufacturer / Description | Model | Hours | Serial/PIN | Sales Price |
|---|---|---|---|---|---|---|
| | | See attached Multiple Unit Addendum | | | | |

| Year | Trade-In Equipment | Model | Hours | Serial/PIN | Allowance | Amount Owed | Net Trade-In | Owed To / Acct # |
|---|---|---|---|---|---|---|---|---|

| Cash Down | Program # | Program Description | Effective Date | Interest Start Date | First Payment Date | Term | Frequency | Est. Amt. Financed |
|---|---|---|---|---|---|---|---|---|
| N/A | 6340LP | | 02-06-2024 | 02-06-2024 | 03-06-2024 | 36 | Monthly | $2,522,078.24 |

| Insurance Carrier | Policy # | Agent | Phone |
|---|---|---|---|

By signing below, you certify: 1) This application is made for the sole purpose of obtaining commercial business credit from CNH Industrial Capital America LLC ("CNH Capital"); 2) Primary applicant, Co-applicant(s), Officer(s), Partner(s) or Guarantor(s), (collectively "Applicant", "you" and "your"), agrees that CNH Capital may obtain a consumer credit report from one or more consumer reporting agencies (credit bureaus) and other information about you in connection with this transaction for all legitimate purposes and as otherwise allowed by applicable law. Such purposes may include assisting in making a credit decision, securitization, secondary market sale and assisting in collection activity and monitoring; 3) Applicant agrees that CNH Capital shall be permitted to disclose such information and information regarding the Account and CNH Capital's experience with Applicants, with credit reporting agencies, the Dealer referenced below, other creditors of Applicant, third parties that CNH Capital reasonably believes are conducting credit inquiries in accordance with applicable law, subsidiaries and affiliates of CNH Capital, and with its successors in interest, buyers, investors and regulators, in our efforts to raise capital through securitization, secondary market sale, or other means. Applicant agrees to allow CNH Capital to verify your employment, pay history and financial information, and that anyone receiving a copy of this application is authorized to provide CNH Capital with such information. CNH Capital may keep this application and information about you whether or not the application is approved; 4) Dealer discussions of financing options are for illustrative purposes only. CNH Capital will conduct its own review of your application; 5) You are authorized to sign on behalf of any entity listed; 6) You agree that by providing CNH Capital or an authorized CNH Capital dealer with any telephone number, including any mobile number, that CNH Capital and any servicer, agent or debt collector it retains, may contact you using that number, including automatic dialing and announcing device and prerecorded calls; 7) If this application is approved, Dealer shall again validate the photo identification of the parties when they execute the agreement as set forth above; 8) All signatories hereby authorize CNH Capital to file any documents necessary to record a lien or security interest in favor of CNH Capital as lien holder or secured party; 9) In the event that the applicant enters into a lease following submission of this application, Dealer is hereby notified that CNH Capital has assigned its rights (but not its obligations) under the lease to purchase the asset(s) described in the lease to CNH Capital Leasing Exchange Services, Inc., a qualified intermediary, as part of an IRC Section 1031 exchange. NOTICE TO CALIFORNIA RESIDENTS: A married applicant may apply for an individual account. NOTICE TO MAINE RESIDENTS: You have the right to choose the agent and the insurer for the insurance required by this transaction, but the insurer must be approved by the creditor. NOTICE TO NEW YORK AND VERMONT RESIDENTS: A consumer credit report may be obtained to evaluate this application and subsequently in connection with any update, renewal, or extension of credit for which application was made and for purposes of reviewing the account, increasing any credit line, taking collection action or for other legitimate purposes. Upon request, New York residents will be informed whether a consumer report was obtained, and if so, the name and address of the consumer reporting agency. NOTICE TO OHIO RESIDENTS: The Ohio laws against discrimination require that all creditors make credit equally available to all credit worthy customers and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law. NOTICE TO MARRIED WISCONSIN RESIDENTS: Wisconsin law provides that no agreement, unilateral statement or court decree relative to marital property shall adversely affect a creditor's interest, unless prior to the time credit is granted the creditor is furnished a copy of the agreement, statement or decree, or has actual knowledge of the adverse provision. You must indicate the name of your spouse in the co-applicant/spouse/Secondary Applicant section of this application.

X _____        MILLENKAMP CATTLE, INC.                *President*        2.6.24
Signature of Primary Applicant or Representative        Printed Name        Title (not for Individual Applicant)        Date

X _____
Signature of Secondary Applicant or Representative        Printed Name        Title (not for Individual Applicant)        Date

**The undersigned certifies the name, address and expiration date on the identification checked above is an exact match to the information on this Application.**

X _____        BURKS TRACTOR COMPANY,INC.        | 020069 | 2793443 |        2-6-24
Signature of Authorized Dealer Representative        Printed Name        | Dealer # | App # |        Date

11917A    Rev. 01/24 Previous editions may not be used.                    Page 1 of 2

EXHIBIT 6 of 6



**CNH** | CAPITAL

020069 / 2793443

## MULTIPLE UNIT ADDENDUM

This Multiple Unit Addendum is hereby incorporated into the commercial Retail Installment Contract and Security Agreement or Lease Agreement dated _____February 06_____, _____2024_____ with Seller _____BURKS TRACTOR COMPANY, INC._____ herein the ("Agreement"), and this addendum equipment list is made a part of the Equipment, as defined in the Agreement. Buyer or Lessee acknowledges receipt of this Multiple Unit Addendum at the time it is executed, along with a copy of the Agreement and all its pages and agrees to all the Agreement terms.

| # | New or Used | Equipment Description | Model | Serial Number/PIN | Hours | Maximum Annual Usage | Excess Usage Rate | Cash Price |
|---|---|---|---|---|---|---|---|---|
| 1 | NEW | Case IH Steiger | 620 | JEEZC620CPF509626 | 7.0 | 1,200 | 130 | $ 576,592.50 |
| 2 | NEW | Case IH Steiger | 620 | JEEZC620LPF509629 | 277.0 | 1,100 | 130 | $ 576,592.50 |
| 3 | NEW | Case IH Steiger | 620 | JEEZC620PPF509749 | 11.0 | 1,200 | 130 | $ 576,592.50 |
| 4 | NEW | Case IH Steiger | 620 | JEEZC620EPF510167 | | 1,200 | 130 | $ 576,592.50 |
| 5 | NEW | Case IH Rear Re | N/A | NA | | 1,100 | N/A | $ 4,275.31 |
| 6 | NEW | Case IH Rear Re | N/A | NA | | 1,200 | N/A | $ 4,275.31 |
| 7 | NEW | Case IH Rear Re | N/A | NA | | 1,200 | N/A | $ 4,275.31 |
| 8 | NEW | Case IH Rear Re | N/A | NA | | 1,200 | N/A | $ 4,275.31 |

Executed this _06_ day of _February_, _2024_.

X _____
Signature of 's Representative

MILLENKAMP CATTLE, INC.
Printed Name

_President_
Title (not for an individual )

X _____
Signature of 's Representative

BURKS TRACTOR COMPANY, INC.
Printed Name

21008A    Rev. 01/24 Previous editions may not be used.                                    Page 2 of 2

EXHIBIT 6 of 6

**FleetEvaluator**

## 2024 CASE IH STEIGER 620 AFS CONNECT QUADTRAC

*Evaluation based off of limited data*

| | | | |
|---|---|---|---|
| **Added By** | Greg Arkatin | **Auction Value** | USD $ 601,680 |
| **Customer** | HRBK Values | **Market Value** | USD $ 707,859 |
| | | **Asking Value** | USD $ 743,052 |
| **Created On** | 3/22/2024 | **Approved Value** | |

## Specifications

| | |
|---|---|
| **Hours** | 0 |
| **Location** | Jerome, Idaho USA |
| **Year** | 2024 |
| **Drive** | Quad Track |
| **Engine Horsepower** | 620 HP |
| **Loader** | |
| **Front Tire Configuration** | |
| **Rear Tire Configuration** | |
| **Transmission Type** | Powershift |
| **Rear Three Point Hitch** | YES |
| **Rear PTO** | YES |
| **Front End Suspension** | |

EXHIBIT 6 of 6

**CNH CAPITAL INDUSTRIAL**

## *Repossession Wholesale Calculations*

### 1. Calculation for Equipment with Established Wholesale Book Value

| S/N | | MAKE | | MODEL | |
|---|---|---|---|---|---|
| | | YEAR | | HOURS | |

**BOOK VALUE**                    **SOURCE:**

**OPTIONS**

| | Option 1 | Description: | |
|---|---|---|---|
| | Option 2 | Description: | |
| | Option 3 | Description: | |
| | Option 4 | Description: | |

**ATTACHMENTS**

| | Attachment 1 | Description: | |
|---|---|---|---|
| | Attachment 2 | Description: | |
| | Attachment 3 | Description: | |
| | Attachment 4 | Description: | |

**HOUR ADJUSTMENT UNDER/(OVER)**
    U/(O) Mileage
    x Rate
                                        $0
            **WHOLESALE SUB-TOTAL:**            **$0**

**ADJUSTMENT FOR CONDITION**
    Rating: *

Comments: _____        **Equipment ID:**
          _____        **Buyout Price**
          _____        **Est. Value**        $        -
          _____        **W/S x 1.2**

            **ADJUSTED WHOLESALE VALUE:**        **$0.00**

Rating: Based on a scale of 0-10, with 10 in Excellent Condition

### 2. Calculation for Equipment with *NO* Established Wholesale Book Value

| CONTRACT YEAR: | 2024 | <--- Enter Contract Year Here | | | | | |
|---|---|---|---|---|---|---|---|

| S/N | MODEL | MAKE | TYPE | ORIGINAL AMT. | BREAKDOWNS | |
|---|---|---|---|---|---|---|
| | | | | | WHOLESALE | RETAIL |
| 4 Like Units | Rear RE | CaseIH | Attachment | $4,275 | 3,420 | 4,275 |
| | | | | | - | - |
| | | | | | - | - |
| | | | | | - | - |
| | | | | | - | - |
| | | | | | - | - |
| | | | **SUBTOTAL** | $4,275 | | |
| | | | **CALCULATED WHOLESALE:** | | $3,420 | $4,275 |

**EXHIBIT 6 of 6**

Asset Manager: _____        Jennifer Whisman        Calculation Date:  3/22/2024



**CNH | CAPITAL**

CNH Industrial Accounts
PO Box 71264 - Philadelphia, PA 19176-6264

# Statement of Account

| | |
|---|---|
| Date: | 3/22/2024 |
| ▮▮▮▮▮▮▮▮▮▮ | |
| Contract No: | 765542 |

MILLENKAMP CATTLE, INC.
471 NORTH 300 WEST
JEROME, ID  83338-5078

| Account Summary | |
|---|---|
| Contract Start Date: | 02/06/2024 |
| Maturity Date: | 02/06/2027 |
| | |
| **Next Payment Date:** | **04/06/2024** |
| **Next Payment Amt:** | **$27,172.92** |

| Description | Effective Date | Installment | \| Other Fees | \| Taxes | \| Transaction Total | \| Balance |
|---|---|---|---|---|---|---|
| Receivables | 2/6/24 | 1,146,052.12 | 0.00 | 0.00 | | 1,146,052.12 |
| Repayment | 2/6/24 | -195,000.00 | 0.00 | 0.00 | -195,000.00 | 951,052.12 |
| Financed Fees | 2/6/24 | 0.00 | -18,203.26 | 0.00 | | 951,052.12 |
| Financed Fees | 2/6/24 | 0.00 | -18,203.26 | 0.00 | | 951,052.12 |
| Financed Fees | 2/6/24 | 0.00 | -18,203.26 | 0.00 | | 951,052.12 |
| Financed Fees | 2/6/24 | 0.00 | -18,203.26 | 0.00 | | 951,052.12 |
| Financed Fees | 2/6/24 | 0.00 | -134.97 | 0.00 | | 951,052.12 |
| Financed Fees | 2/6/24 | 0.00 | -134.97 | 0.00 | | 951,052.12 |
| Financed Fees | 2/6/24 | 0.00 | -134.97 | 0.00 | | 951,052.12 |
| Financed Fees | 2/6/24 | 0.00 | -134.97 | 0.00 | | 951,052.12 |
| PPP | 2/6/24 | 0.00 | -26,540.00 | 0.00 | | 951,052.12 |
| PPP | 2/6/24 | 0.00 | -26,540.00 | 0.00 | | 951,052.12 |
| PPP | 2/6/24 | 0.00 | -26,540.00 | 0.00 | | 951,052.12 |
| PPP | 2/6/24 | 0.00 | -26,540.00 | 0.00 | | 951,052.12 |
| Purchase Price | 2/6/24 | 0.00 | -2,323,471.24 | 0.00 | | 951,052.12 |
| Repayment | 3/8/24 | -27,172.92 | 0.00 | 0.00 | -27,172.92 | 923,879.20 |

**The Current Balance shown above is not the amount needed to pay the account in full.**
**For a Payoff Quote, please contact our Customer Service Center at the number shown below.**

**The Next Payment Amount listed above may not include additional fees.**
**For the Current Total Amount Due, please contact our Customer Service Center.**

Please contact our Customer Service Center at 800-501-5711 if we can be of further assistance.
(Hours: M-TH: 7 AM to 6 PM CT; F: 7 AM to 5 PM CT)

Visit myaccount.cnhindustrialcapital.com to create an online profile and manage your account online!

Thank you for your business!

---

CNH Industrial Accounts - PO Box 71264 - Philadelphia, PA 19176-6264

EXHIBIT 6 of 6