After Recording Return To:
**Conterra Agricultural Capital, LLC**
**5465 Mills Civic Parkway, Suite 201**
**West Des Moines, IA 50266**
**Attn: Quiana Hampton**

**Instrument # 2224754**
JEROME COUNTY, JEROME, IDAHO
10-20-2022     03:43:16 PM     No. of Pages: 16
Recorded for: TITLEONE - BURLEY
MICHELLE EMERSON          Fee: $45.00
Ex-Officio Recorder Deputy: jw
Electronically Recorded by Simplifile

_____ [Space Above This Line For Recording Data] _____ 2245 8954

# MORTGAGE
## Security Agreement, Assignment of Rents and Fixture Filing

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in certain Sections of this document. Certain rules regarding the usage of words used in this document are also provided in Section 13.

**(A) "Security Instrument"** means this document, which is dated **October 20, 2022**, together with all Riders to this document.

**(B) "Borrower"** is **Millenkamp Properties, L.L.C., an Idaho limited liability company.** Borrower is the trustor under this Security Instrument. **"Borrower Parties"** are Borrower and **Millenkamp Cattle, Inc., Millenkamp Family LLC, Millenkamp Properties II LLC, East Valley Cattle, LLC, Idaho Jersey Girls Jerome Dairy LLC, and William J. Millenkamp.**

**(C) "Lender"** is **Conterra Agricultural Capital, LLC**. Lender is a **limited liability company** organized and existing under the laws of **Iowa**. Lender's address is **5465 Mills Civic Parkway, Suite 201 West Des Moines, IA 50266**. Lender is the beneficiary under this Security Instrument.

**(D) "Note"** means the promissory note signed by Borrower Parties and dated **October 20, 2022**. The Note states that Borrower Parties owe Lender **Two Million Five Hundred Forty-Nine Thousand Seven Hundred Fifty and 00/100** Dollars (U.S. **$2,549,750.00**) plus interest. Borrower Parties have promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **October 20, 2024**.

**IDAHO--UNIFORM INSTRUMENT (over 40 acres)**

1

EXHIBIT 7                                                    Page 1 of 19

**(E) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(F) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(G) "Riders"** mean all Riders to this Security Instrument that are executed by Borrower or Borrower Parties, whether recorded or whether unrecorded. The following Riders are to be executed [check box as applicable]:

| | |
|---|---|
| ☐ Irrigation Equipment Rider | ☐ Water Rights Rider |
| ☒ Financial Information and Covenants Rider | ☐ Permitted Prior Encumbrance Rider |
| ☐ Mortgage Insurance Rider | ☐ Other(s): |
| ☐ Adjustable Rate Rider | |

**(H) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(I) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(J) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 4) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(K) "Periodic Payment"** means the regularly scheduled amount due for principal and interest under the Note.

**(L) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the of Borrower Parties' covenants and agreements under the Note. For this purpose, Borrower irrevocably grants, bargains, sells and conveys to Lender the following described property located in the **County of Jerome, State of Idaho** (the "Land"):

**See Exhibit "A" attached hereto and made a part hereof.**

subject only to those matters set forth in the Permitted Prior Encumbrance Rider, if said rider is attached (hereafter "Permitted Prior Encumbrances");

   **TOGETHER WITH** all buildings, improvements, equipment, fixtures and permanent plantings located therein or thereon or appurtenant thereto, and all additions, replacements, and improvements hereafter made thereto or placed therein or thereon; all rights-of-way, easements, rents, issues, profits, income, proceeds and general intangibles there

**IDAHO--UNIFORM INSTRUMENT (over 40 acres)**

2

EXHIBIT 7                                             Page 2 of 19

from, tenements, hereditaments, remainders, reversions, privileges and appurtenances thereunto belonging, however evidenced which are used or enjoyed in connection with the Land now or hereafter owned or belonging to the same or which hereafter may be acquired and so used or enjoyed;

**TOGETHER WITH** all water and water rights now owned or hereafter acquired by Borrower and howsoever evidenced, including but not limited to any water rights specifically described in the Water Rights Rider if said rider is attached hereto, whether such water and water rights are riparian, appropriative or otherwise and whether or not appurtenant to the Land, along with all ditch and ditch rights and any shares of stock, licenses, permits and contracts evidencing such water or ditch rights, and all wells, reservoirs, dams, embankments or fixtures relating thereto;

**TOGETHER WITH** all personal property, including all windmills, pumps, irrigation equipment, motors, engines, and devices of every kind now or hereafter used for or in connection with the irrigation of the Land, or for stock watering or domestic purposes thereon, and all grain bins and storage bins, which are owned by Borrower and which are located on the Land in **Jerome County, Idaho**, described above together with all additional accessions, replacements, improvements, repairs and substitutions to said property and the proceeds thereof and all other fixtures now or hereafter located upon the Land, all of which are declared to be appurtenant to said Land, or incident to the ownership thereof, or used in connection therewith;

**TOGETHER WITH** all judgments, awards of damages, settlements and payments or security (i) hereafter made as a result of or in lieu of any taking of all or any part of the Land under the power of eminent domain or for any damage to the Land and/or the improvements located thereon, or any part thereof, and (ii) hereafter made for any damage to the Land and/or the improvements located thereon, or any part thereof resulting from exercise of or attempted exercise of mining rights or claims, however reserved or asserted, and resulting from the disturbance of any of the surface of the Land. Borrower does hereby covenant and agree that Borrower will not give such consent as may be required of the owner for mining or other surface disturbance by the terms of any patent, deed, statute, law or otherwise, without the prior written consent of Lender;

**TOGETHER WITH** all proceeds of and any unearned premiums on any insurance policies covering the Land and/or the improvements located thereon, including, without limitation, the right to receive and apply the proceeds of any insurance judgments, or settlements made in lieu thereof, for damage to the Land and/or the improvements located thereon or the indebtedness secured thereby;

**TOGETHER WITH** all contract rights, chattel paper, documents, accounts and general intangibles, rights to performance, entitlement to payment in cash or in kind, or any other benefits under any current or future governmental program which pertain to the Land, whether now or hereafter existing or acquired;

**TOGETHER WITH** all cash and noncash proceeds of the conversion, voluntary or involuntary, of any of the foregoing;

**TOGETHER WITH** any and all of Borrower's right, title, and/or interest in any and all system memberships and/or ownership certificates in any non-municipal water sewer systems now or in the future serving said property.

All replacements and additions shall also be covered by this Security Instrument.

All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record and specifically those permitted prior encumbrances, if any, set forth in the Permitted Prior Encumbrances Rider if said rider is attached to this Security Instrument. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

**IDAHO--UNIFORM INSTRUMENT (over 40 acres)**

3

EXHIBIT 7    Page 3 of 19

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering Land, fixtures, and certain personal property.

UNIFORM COVENANTS. Borrower covenants and agrees as follows:

**1. Payment of Principal, Interest, Prepayment Charges, Yield Maintenance Premiums and Late Charges.** Borrower Parties shall pay when due the principal of, and interest on, the debt evidenced by the Note and any yield maintenance premiums, any prepayment charges and late charges due under the Note. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 12. Lender may return any payment or partial payment if the payment or partial payment is insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payment in the future, but Lender is not obligated to apply such payments at the time such payments are accepted Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2.    Application of Payments or Proceeds.** Unless required by Applicable Law, payments will be applied first to collection expenses and protective advances under this Security Instrument, second to accrued unpaid interest, third to principal, and finally to late charges. Such payments shall be applied to each Periodic Payment in the order in which it became due.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 3.

**IDAHO--UNIFORM INSTRUMENT (over 40 acres)**

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**4. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, such failure shall constitute a default under the terms of this Security Instrument and the Loan. Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 4 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 25 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the

**IDAHO--UNIFORM INSTRUMENT (over 40 acres)**

5

EXHIBIT 7    Page 5 of 19

coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**5. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 4 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.
  If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

  Borrower will operate the Property in a good and workmanlike manner and in accordance with all Applicable Law and will pay all fees and charges of any kind in connection therewith. Borrower will use good farming and animal husbandry practices.

  Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**6. Borrower's Loan Application.** Borrower Parties shall be in default if, during the Loan application process, Borrower Parties or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan.

**7.    Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding, (d) perform any farming operations related to the planting, growing, maintenance, and harvesting of crops located on the Property, and (e) perform any ranching operations related to any animals located on the Property. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 7, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 7. Lender may perform these or any other actions it deems necessary in Lender's sole discretion to preserve the value of the Property, and/or assign to others the right to do same on behalf of Lender. Lender may make advances under this security instrument or other instrument providing security for the Note, to protect the Lender's interest in this security instrument or other instrument providing security for the Note from loss of value or damage. Any money so advanced (including reasonable costs of recovery and attorneys' fees) plus interest at the default rate indicated in the Note shall become an obligation due and owing under the terms of the Note immediately upon the date advanced by Lender and is an obligation of the Borrower secured by the security instrument or other instrument providing security for the Note.

  Any amounts disbursed by Lender under this Section 7 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

  If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease.

**IDAHO--UNIFORM INSTRUMENT (over 40 acres)**

Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**8. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 16, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**9. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by

**IDAHO--UNIFORM INSTRUMENT (over 40 acres)**

7

EXHIBIT 7                                                                                              Page 7 of 19

Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**10. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 15, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 17) and benefit the successors and assigns of Lender.

**11. Loan Charges.** Lender may charge Borrower Parties fees for services performed in connection with Borrower Parties' default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower Parties which exceeded permitted limits will be refunded to Borrower Parties. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower Parties. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower Parties' acceptance of any such refund made by direct payment to Borrower Parties will constitute a waiver of any right of action Borrower Parties might have arising out of such overcharge.

**12. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**13. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding

**IDAHO--UNIFORM INSTRUMENT (over 40 acres)**

8

EXHIBIT 7                                      Page 8 of 19

neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**14. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**15. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 15, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 12 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**16. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 15.

**17. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 12) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 25 and the notice of acceleration given to Borrower pursuant to Section 15 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 17.

**18. Hazardous Substances.** As used in this Section 18: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise

**IDAHO--UNIFORM INSTRUMENT (over 40 acres)**

9

EXHIBIT 7                                     Page 9 of 19

trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup. Borrower agrees to indemnify and hold Lender free and harmless from and against all loss, costs (including attorneys' fees and costs), damage (including consequential damages), and expenses Lender may sustain by reason of the assertion against Lender by any third-party of any claim in connection with Hazardous Substances on, in or affecting the Property. Borrower further agrees that Lender shall have the right to join and participate in, as a party if it so elects, any legal proceedings or actions initiated in connection with any claims related to Hazardous Substances on, in or affecting the Property, and shall pay any such attorney fees and expenses Lender incurs in connection therewith.

**19. Additional Property Subject To The Security Instrument.** This Security Instrument also constitutes a security agreement within the meaning of the Uniform Commercial Code as adopted in the State of Idaho (the "UCC") with respect to all fixtures and personal property included in the Property as described above (the "Personal Property"). All of the terms, provisions, conditions and agreements contained in this Security Instrument pertain and apply to the Personal Property as fully and to the same extent as to any other property covered. The provisions of this Section 19 shall not limit the generality or applicability of any other provision of this Security Instrument, but shall be in addition thereto.

**20. Fixture Filing.** This Security Instrument constitutes a "fixture filing" for the purposes of the UCC against all of the Property which is or is to become fixtures per the UCC.

**21. Use of Property; Compliance With Law.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**22. Assignment of Leases.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph , the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**23. Assignment of Rents; Appointment of Receiver; Lender In Possession.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Sections 12 and 25 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notices of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall

**IDAHO--UNIFORM INSTRUMENT (over 40 acres)**

pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorneys' fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 7 of the Security Instrument.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph. Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**24.    Cross-Default Provision.** Borrower Parties' default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

NON-UNIFORM COVENANTS. Borrower further covenants and agrees as follows:

**25.    Remedies on Default.** In some instances, federal and state law will require Lender to provide Borrower with notice of the right to cure, mediation notices or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Note and foreclosure this Security Instrument in a manner provided by law if Borrower is in default. At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the Note, other evidences of debt, this Security Instrument and any related documents. All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether expressly set forth or not. The acceptance by Lender of any sum in payment or partial payment on the Note after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require full and complete cure of any existing default. By not exercising any remedy on Borrower's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

**26,    Redemption.** The period of redemption after sale on foreclosure shall be one year if the Land sold consisted of a tract of land of more than twenty (20) acres, and within six (6) months after the sale if the Land sold consisted of a tract of land of twenty (20) acres or less. Any agreement to extend the redemption period must be in writing.

**27.    Release.** Upon payment of all sums secured by this Security Instrument, Lender shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for releasing the Property, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower or Borrower Parties.

## NOTICE
**UNDER IDAHO LAW, ANY PROMISE BY THE BANK TO GRANT OR EXTEND EXISTING CREDIT TO YOU MUST BE IN WRITING TO BE LEGALLY BINDING UPON THE BANK IF THE ORIGINAL AMOUNT OF SUCH CREDIT IS $50,000 OR MORE.**

Millenkamp Properties, L.L.C.,
an Idaho limited liability company
   By: Millenkamp Family LLC, its Member

   By: _/s/ William J. Millenkamp_  10/28/22
       Signature                    Date
       William J. Millenkamp, Manager

   By: _/s/ Susan J. Millenkamp_    10/20/22
       Signature                    Date
       Susan J. Millenkamp, Manager

Mailing address:
471 North 300 West
Jerome, ID 83338

*[Sign Originals Only]*

STATE OF IDAHO
COUNTY OF __Jerome__

Before me, the undersigned authority, on this day personally appeared **Susan J. Millenkamp and William J. Millenkamp**, known or proved to me according to law to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he/she/they voluntarily executed the same for the purposes of consideration therein expressed, and in the capacity stated.

Given under my hand and seal this __14__ day of __October__, 20__22__.

_/s/ Laury Lamb_
Notary, State of __Idaho__
Printed Name: __Laury Lamb__
My Commission Expires: __04/02/2028__

```
LAURY LAMB
Commission #41905
Notary Public
State of Idaho
My Commission Expires: 04/02/28
```

**IDAHO--UNIFORM INSTRUMENT (over 40 acres)**

12

EXHIBIT 7    Page 12 of 19

## Exhibit A

PARCEL NO. 1

TOWNSHIP 7 SOUTH, RANGE 16 EAST OF THE BOISE MERIDIAN, JEROME COUNTY, IDAHO

Section 26: SE¼SW¼

PARCEL NO. 2

TOWNSHIP 7 SOUTH, RANGE 16 EAST OF THE BOISE MERIDIAN, JEROME COUNTY, IDAHO

Section 26: SW¼SW¼

EXHIBIT 7          Page 13 of 19

# FINANCIAL INFORMATION AND COVENANTS RIDER

**Loan # R4014**

THIS FINANCIAL INFORMATION AND COVENANTS RIDER is made this **Twenth** day of **October, 2022**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Security Agreement, Assignment of Rents and Fixture Filing (the "Security Instrument") of the same date given by Millenkamp Properties, L.L.C. (the "**Borrower**") to secure the promissory note given by Borrower and Millenkamp Cattle, Inc., Millenkamp Family LLC, Millenkamp Properties II LLC, East Valley Cattle, LLC, Idaho Jersey Girls Jerome Dairy LLC, and William J. Millenkamp (collectively with Borrower, "Borrower Parties") to **Conterra Agricultural Capital, LLC** (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

See Exhibit "A" attached hereto and made a part hereof.

**FINANCIAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower Parties and Lender further covenant and agree that Borrower Parties will prepare and maintain Borrower Parties' financial records using consistently applied generally accepted accounting principles then in effect. Borrower Parties will provide Lender with financial information in a form acceptable to Lender and under the following terms:

**Access.** Borrower Parties shall, at any time during regular business hours following reasonable notice, permit Lender or any of its agents or representatives to have access and to examine all of Borrower Parties' books and records regarding Borrower Parties' operations.

**Annual Financial Statements and Tax Returns.** Borrower Parties agree to provide: (i) updated financial statements (such statements to include a balance sheet and cash flow statement for the year just ended, an income statement for the year just ended, and a statement of contingent liabilities) as soon as available and in any event no later than 120 days after the close of each fiscal year, (ii) other requested financial reports as lender may request no later than 90 days after Lender's written request, and (iii) tax returns within 30 days of mailing or filing such returns. The failure of Borrower Parties to provide annual financial statements, other financial reports, or tax returns as provided herein may be declared to be an Event of Default under this Note and a default under the Security Instrument by Lender, and Lender may exercise all remedies under the Note and/or the Security Instrument.

**Event of Default.** Upon any occurrence of an Event of Default (as defined in the Note), Borrower shall promptly notify Lender of such condition which constitutes an Event of Default.

---
**MULTISTATE FINANCIAL INFORMATION AND COVENANTS RIDER--
UNIFORM INSTRUMENT**

1

EXHIBIT 7    Page 14 of 19

**Financial Changes.** Borrower Parties shall (i) notify Lender of any material adverse financial change in financial condition, (ii) and maintain a standard and modern system of accounting in accordance with generally accepted accounting principles.

**Operating Commitment.** Annually, and any time upon Lender's request, Borrower Parties shall provide such evidence as Lender reasonably requires establishing that Borrower Parties, as applicable, have executed bona fide agreements to be provided such operating loans as may be required to continue operation of Borrower Parties' farming operation substantially in accordance with Borrower Parties' past practices.

**Property Taxes.** Annually, Borrower Parties shall provide Lender with proof acceptable to Lender that all real and personal property taxes have been paid, or, alternatively, if real and personal property taxes have not been paid and Borrower Parties have a good faith basis to contest any assessed taxes, Borrower Parties may submit evidence that such assessed taxes are being contested.

BY SIGNING BELOW, Borrower Parties accept and agree to the terms and covenants contained in this Financial Information and Covenants Rider.

**BORROWER PARTIES:**

Millenkamp Cattle, Inc.,
an Idaho corporation

_[signature]_ 10/20/22
Signature                Date
**William J. Millenkamp, President**

Millenkamp Family LLC,
an Idaho limited liability company

_[signature]_ 10/20/22
Signature                Date
**William J. Millenkamp, Manager**

_[signature]_ 10/20/22
Signature                Date
**Susan J. Millenkamp, Manager**

---

**MULTISTATE FINANCIAL INFORMATION AND COVENANTS RIDER--
UNIFORM INSTRUMENT**

2

EXHIBIT 7    Page 15 of 19

**Millenkamp Properties II LLC,**
an Idaho limited liability company
   By: Millenkamp Family LLC, its Member

By: _____ 10/30/22
   Signature / Date
   William J. Millenkamp, Manager

By: _____ 10/30/22
   Signature / Date
   Susan J. Millenkamp, Manager

**Millenkamp Properties, L.L.C.,**
an Idaho limited liability company
   By: Millenkamp Family LLC, its Member

By: _____ 10/30/22
   Signature / Date
   William J. Millenkamp, Manager

By: _____ 10/30/22
   Signature / Date
   Susan J. Millenkamp, Manager

**East Valley Cattle, LLC,**
an Idaho limited liability company

_____ 10/30/22
Signature / Date
William J. Millenkamp, Member

**Idaho Jersey Girls Jerome Dairy LLC,**
an Idaho limited liability company

_____ 10/30/22
Signature / Date
William J. Millenkamp, Managing Member

_____ 10/30/22
Signature / Date
Susan J. Millenkamp, Managing Member

**William J. Millenkamp,**
an individual

_____ 10/30/22
Signature / Date
William J. Millenkamp

*[Sign Originals Only]*

---

MULTISTATE FINANCIAL INFORMATION AND COVENANTS RIDER--
UNIFORM INSTRUMENT

3

EXHIBIT 7    Page 16 of 19

```
Instrument # 2224755
JEROME COUNTY, JEROME, IDAHO
10-20-2022     03:43:16 PM     No. of Pages: 3
Recorded for: TITLEONE - BURLEY
MICHELLE EMERSON          Fee: $45.00
Ex-Officio Recorder Deputy: jw
Electronically Recorded by Simplifile
```

Recording Requested By/Return To:

**Conterra Agricultural Capital, LLC**
**Attn: Quiana Hampton**
**5465 Mills Civic Parkway, Suite 201**
**West Des Moines, IA 50266**

--------------------------------------------- [Space Above This Line For Recording] --------------- 2 2 463558

# ASSIGNMENT OF MORTGAGE

Loan # R4014

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is **5465 Mills Civic Parkway, Suite 201, West Des Moines, IA 50266**, does hereby grant, sell, assign, transfer and convey, unto **Rooster Capital IV LLC**, a Delaware limited liability company, (herein "Assignee"), whose address is **5465 Mills Civic Parkway, Suite 201, West Des Moines, IA 50266**, all beneficial interest under that certain Mortgage, Security Agreement, Assignment of Rents and Fixture Filing dated **October 20, 2022**, made and executed by **Millenkamp Properties, L.L.C., an Idaho limited liability company**, to and in favor of **Conterra Agricultural Capital, LLC**, upon the following described property situated in **Jerome County, State of Idaho**:

**See Exhibit "A" attached hereto and made a part hereof.**

such Mortgage having been given to secure payment of **$2,549,750.00**, which Mortgage is of record in the Real Property Records of **Jerome County, State of Idaho**, together with the note and obligations therein described, the money due and to become due thereon with interest, and all rights accrued or to accrue under such Mortgage.

TO HAVE AND TO HOLD the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on October 20th_____, 2022.

**Multistate Mortgage Assignment**

1

EXHIBIT 7                                                         Page 17 of 19

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on October 20 _____, 2022.

**Conterra Agricultural Capital, LLC**

_____ 10/20/2022
Signature                          Date

Mark A. Smith, COO & General Counsel

_____
Witness

STATE OF IOWA
COUNTY OF POLK

Before me, the undersigned authority, on this day personally appeared Mark A. Smith, COO & General Counsel _____
, known or proved to me according to law to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he/she/they voluntarily executed the same for the purposes of consideration therein expressed, and in the capacity stated.

Given under my hand and seal this 20th day of October, 20 22.

_Lydia Denniston_____
Notary, State of Iowa

Printed Name: Lydia Denniston
My Commission Expires: 4/11/2025

LYDIA DENNISTON
Commission Number 838684
My Commission Expires
April 11, 2025

**Multistate Mortgage Assignment**

2

EXHIBIT 7     Page 18 of 19

## Exhibit A

PARCEL NO. 1

TOWNSHIP 7 SOUTH, RANGE 16 EAST OF THE BOISE MERIDIAN, JEROME COUNTY, IDAHO

Section 26: SE¼SW¼

PARCEL NO. 2

TOWNSHIP 7 SOUTH, RANGE 16 EAST OF THE BOISE MERIDIAN, JEROME COUNTY, IDAHO

Section 26: SW¼SW¼

EXHIBIT 7                    Page 19 of 19