Matthew T. Christensen, ISB: 7213
J. Justin May, ISB: 5818
JOHNSON MAY
199 N. Capitol Blvd, Ste 200
Boise, Idaho 83702
Phone: (208) 384-8588
Fax: (208) 629-2157
Email: mtc@johnsonmaylaw.com
       jjm@johnsonmaylaw.com


Krystal R. Mikkilineni, *PHV*
Robert E. Richards, *PHV*
Tirzah R. Roussell, *PHV*
DENTONS
215 10th Street, Ste 1300
Des Moines, IA 50309
Phone: (515) 288-2500
Fax: (515) 243-0654
Email: krystal.mikkilineni@dentons.com
       robert.richards@dentons.com
       tirzah.roussell@dentons.com

UNITED STATES BANKRUPTCY COURT
DISTRICT OF IDAHO

| | |
|---|---|
| In re:<br><br>MILLENKAMP CATTLE, INC., *et al.,*<br><br>Debtors. | Chapter 11<br><br>Case No. 24-40158-NGH |

**MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO (A) MAINTAIN THEIR INSURANCE PROGRAM, (B) PAY INSURANCE PREMIUMS IN THE ORDINARY COURSE; AND (C) PAY ALL OBLIGATIONS ASSOCIATED THEREWITH**

DEBTORS' INSURANCE MOTION – Page 1

Millenkamp Cattle, Inc. ("Millenkamp Cattle") and its affiliated debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), by and through their undersigned counsel, respectfully move the Court (the "Motion"), pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code"), for the entry of an order authorizing the Debtors to (a) maintain their insurance coverage levels, including authority to revise, extend, supplement, renew or change insurance coverage as needed, (b) pay insurance premiums, broker fees and/or deductibles in the ordinary course of business and (c) pay certain administrative obligations associated therewith (collectively, the "Insurance Obligations"). In support of this Motion, the Debtors have separately filed the Declaration of William John Millenkamp in Support of Debtors' First Day Motions (the "Millenkamp Declaration"). In further support of this Motion, the Debtors respectfully represent as follows:

## JURISDICTION

1.  This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2.  On April 2, 2024 (the "Petition Date"), the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for District of Idaho (the "Court") commencing the Chapter 11 Cases. The Debtors have continued in the management and operation of their businesses and properties as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

3. No trustee, examiner, or official statutory committee of unsecured creditors (such official committee, the "Committee") has yet been appointed in the Chapter 11 Cases.

4. The Debtors are ten affiliates that collectively own and operate several businesses, including a calf ranch raising approximately 50,000 calves located in Jerome, Idaho; a dairy heifer feedlot in Declo, Idaho, raising approximately 60,000 head of dairy cattle; a dairy operation at the Declo facility where the dairy cattle are milked several times a day; farming operations in Jerome, Twin Falls and Cassia counties; and custom harvest & trucking throughout the Magic Valley.

5. Through ten entities, the Debtors operate as a single enterprise, which includes common usage of debt and banking facilities.

6. Millenkamp Cattle is the primary entity from which all operations are directed, the revenues received, and the payables disbursed. Millenkamp Cattle is the operational entity which owns all of the cattle, feed, and equipment used to care for the cattle, employs the employees, and receives and disburses the majority of the monies. Millenkamp Cattle does not own any real property.

A. **Debtors' Insurance Policies**

7. The Debtors maintain various insurance policies issued by several insurance carriers (collectively, the "Insurance Carriers"). Collectively these policies provide coverage for, among other things: workers' compensation and employers liability, auto and general liability insurance (collectively, the "Insurance Policies"). A schedule of the Insurance Policies is attached hereto as Exhibit A.

8. Under Idaho law, the Debtors are required to maintain workers' compensation policies and programs to provide their employees with workers' compensation coverage for claims arising from or related to their employment with the Debtors (the "Workers' Compensation

DEBTORS' INSURANCE MOTION – Page 3

Programs"). The Debtors maintain Workers' Compensation Programs with the Idaho Workers' Compensation state insurance fund through Agent, Hub International Mountain States, Ltd.

9. Premiums for the Workers' Compensation Programs are paid monthly on the last day of the month, two months of arrears. The average premium with respect to the Workers' Compensation Programs is approximately $35,000 to $40,000. The February premium is due on April 30, 2024 in the amount of $35,577. The March premium is due on May 31, 2024 in the estimated amount of approximately $38,000.

10. The Debtors also maintain various general liability and property insurance policies, which provide the Debtors with primary, umbrella, and excess insurance coverage for claims relating to, among other things, commercial general liability, automobile liability, agribusiness property, cyber security, inland marine, and commercial excess (the "Liability and Property Programs"). These policies are essential to the ongoing operation of the Debtors' businesses.

11. The agribusinesss property, commercial general liability, information security protection cyber, inland marine, business auto, and commercial liability umbrella were issued by Penn Millers Insurance Company (the "Chubb Agribusiness Plan"). The Debtors pay for the Chubb Agribusiness Plan premiums on a 10-month payment plan for 12 months of coverage. The Chubb Agribusiness Plan is scheduled for renewal on July 20, 2024. The monthly premium is approximately $117,554.32. The Debtors owe their last payment of $117,554.32 on April 15, 2024.

12. The commercial excess liability policy was issued by Nationwide with underwriter Scottsdale Insurance Company. The Debtors have paid the premium which was a $52,000 flat fee.

13. All payments to the Insurance Carriers are made by Millenkamp Cattle.

**RELIEF REQUESTED**

14. By this Motion, pursuant to sections 105 and 363 of the Bankruptcy Code, the Debtors seek authorization to continue the Workers' Compensation Programs and maintain the Liability and Property Programs on an uninterrupted basis, consistent with prepetition practices, and pay, when due and in the ordinary course, all prepetition premiums, administrative fees, and other related prepetition obligations to either the Insurance Companies, or any relevant state agencies to the extent due and payable postpetition. Additionally, to the extent a premium payment or other administrative cost of the Workers' Compensation Programs and the Liability and Property Programs relating to a period prior to the Petition Date is currently due and payable, the Debtors seek authority to make such payment.

15. The Insurance Policies contain certain deductible amounts for claims that are submitted. To the extent a deductible payment or reimbursement relating to a period prior to the Petition Date is currently due and payable with respect to any Insurance Policy, the Debtors seek authority, in their discretion, to make such payments in the same manner that such payments were made prior to the Petition Date.

**BASIS FOR REQUESTED RELIEF**

A. **Ordinary Course Payments**

16. "[A] debtor receiving necessary benefits from a prepetition executory insurance contract must accord the nondebtor party an administrative expense priority for the pro rata share of the premium, during the period in which the estate received benefits from the contract." *In re Sharon Steel Corp.*, 161 B.R. 934, 937 (Bankr. W.D. Pa. 1994) (quoting *In re Gamma Fishing Co., Inc.*, 70 B.R. 949 (Bankr. S.D. Cal. 1987)).

17. Administrative expenses incurred in the ordinary course of business are payable in the ordinary course of business. *In re Wireless Telecomms. Inc.*, 449 B.R. 228, 235 n. 5 (Bankr. M.D. Pa. 2011) (quoting 4 Collier on Bankruptcy, 16th ed., ¶ 503.03[4], 503–17) ("'ordinary course of business' administrative expenses (such as current postpetition wages and trade debt) generally are paid when due. . . . Additionally, section 363(c) allows a trustee to use property of the estate in the ordinary course of business without providing for notice or an opportunity for a hearing."); *In re Pac. Forest Indus., Inc.*, 95 B.R. 740, 743 (Bankr. C.D. Cal. 1989) (quoting 3 Collier on Bankruptcy, 15th ed., ¶ 503.01) ("there is a virtually unstated assumption that 'ordinary course of business' administrative expenses (such as current postpetition wages and trade debt) will be paid when due.")).

18. The Debtors' insurance premiums that come due postpetition must be paid to maintain the Debtors' postpetition insurance coverage.

19. Also, the deductibles incurred for postpetition occurrences must be paid to maintain postpetition insurance coverage. The maintenance of the Debtors' postpetition insurance coverage is essential to the operation of the Debtors' business.

20. Thus, the Debtors' expenses for postpetition insurance premiums and deductibles are administrative in nature and are appropriately paid by Debtors in the ordinary course of business.

**B.   Payment of Insurance Obligations under sections 363(b) and 105**

21. In some limited circumstances, the insurance premiums and other Insurance Obligations owed by the Debtors relate to occurrences prior to the Petition Date. The Debtors believe those obligations are minimal since they are current on payment of their Insurance Obligations.

22. The Debtors submit that payment of these Insurance Obligations is appropriate pursuant to section 105(a), 363(b), 1107(a) and 1108 of the Bankruptcy Code, as well as the "necessity of payment" doctrine.

23. This Court may authorize the Debtors' proposed payment of Insurance Obligations under section 363(b)(l) of the Bankruptcy Code. Section 363(b)(l) authorizes a bankruptcy court, after notice and a hearing, to authorize a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the state." *See* 11 U.S.C. § 363(b)(l).

24. In order to obtain approval for the use of estate assets outside of the ordinary course of business, a debtor must articulate a valid business justification for the requested use. *See In re Walter,* 83 B.R. 14, 20 (B.A.P. 9th Cir. 1988) (quoting *In re Continental Air Lines, Inc*., 780 F.2d 1223 (5th Cir.1986)) ("for the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business"); *In re U.S. Airways Group, Inc*., 287 B.R. 643, 645 (Bankr. E.D. Va. 2002); *In re Ionosphere Clubs, Inc*., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989).

25. "The [business judgment] rule establishes a presumption that directors' decisions are based on sound business judgment, and it prohibits courts from interfering in business decisions made by the directors in good faith and in the absence of a conflict of interest." *Berg & Berg Enters. v. Boyle*, 178 Cal. App. 4th 1020, 1045 (Cal. 2009). "A hallmark of the business judgment rule is that, when the rule's requirements are met, a court will not substitute its own judgment for that of the corporation's board of directors." *Lamden v. La Jolla Shores Condo*. Homeowners Assn., 21 Cal. 4th 249, 257 (Cal. 1999) (citing Katz v. Chevron Corp., 22 Cal. App. 4th 1352, 1366 (Cal. 1994)).

DEBTORS' INSURANCE MOTION – Page 7

26. When applying the "business judgment" rule, courts show great deference to the debtor's decision making. See, e.g., In re Castre, 312 B.R. 426, 430 (Bankr. D. Colo. 2004); *In re Murphy,* 288 B.R. 1, 5 (D. Me. 2002); *In re Bakalis*, 220 B.R. 525, 532 (Bankr. E.D.N.Y. 1998); *In re First Wellington Canyon Assocs.*, 1989 WL 165028, *1 (N.D. Ill Dec. 28, 1989); *Summit Land Co. v. Allen (In re Summit Land Co.)*, 13 B.R. 310, 315 (Bankr. D. Utah 1981).

27. Because the Insurance Obligations are entitled to priority status, and because maintenance and renewal of insurance coverage is vital to the Debtors' ongoing operations and their prospects for successfully confirming a plan, it is in the best interest of the Debtors' estates to pay such Insurance Obligations in the ordinary course of business during these Chapter 11 Cases.

28. Additionally, it is critical that (i) the Debtors maintain their Insurance Policies and renew or enter into new insurance policies, as applicable, in order to provide a comprehensive range of coverage that protects their business and property; and (ii) the Debtors have no rupture in their relationship with carriers, from which they seek renewals, and their service providers that administer their professional and general liability coverage. The insurance coverage provided under the Insurance Policies is essential to the continued operations of the Debtors, and some of the Insurance Policies are required by various state and federal regulations and by contracts that govern the Debtors' business. Disruption of the Debtors' insurance coverage would expose the Debtors to serious risks, including: (a) the incurrence of direct liability for the payment of claims that otherwise would have been payable by the Insurance Carriers; (b) the occurrence of material costs and other losses that would have otherwise been reimbursed by the Insurance Carriers; (c) the loss of good-standing certification to conduct business in Idaho; (d) the inability to obtain similar types of insurance coverage; and (e) the incurrence of higher costs for obtaining new

insurance coverage. Granting the relief requested herein would avoid these consequences and would allow the Debtors' business operations to continue without interruption during the chapter 11 process.

29. Further, if the Debtors are unable to pay the premiums and obligations necessary to maintain the Insurance Policies, they may be unable to find alternative insurance carriers willing to offer them similar insurance at a competitive price given the magnitude of the insured's risk and the additional risk of non-payment. While the Debtors question the right of any insurer to terminate the Insurance Policies for non-payment of premiums, any litigation associated with such alleged termination would be contested, and thus, very costly to the Debtors' estates.

30. The Debtors represent that they have sufficient availability of funds to pay the amounts described herein in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to debtor in possession financing.

31. Further. the Debtors, operating their business as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code, are fiduciaries "holding the bankruptcy estate and operating the business for the benefit of its creditors and (if the value justifies) equity owners." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Implicit in the duties of a chapter 11 debtor in possession is the duty "to protect and preserve the estate, including an operating business's going-concern value." *Id*.

32. According to the Court in *CoServ*, there are instances in which a debtor in possession can fulfill its fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." *See id*. The Court in *CoServ* specifically noted that preplan satisfaction of prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." *Id*. The court provided a three-pronged test for determining

DEBTORS' INSURANCE MOTION – Page 9

whether a preplan payment on account of a prepetition claim was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

*Id.* at 498.

33. Payment of the prepetition Insurance Obligations meets each element of this standard. As discussed, the payment of the Insurance Obligations is necessary to maintain insurance coverage postpetition and allows the Debtors to continue to operate. Also, as a practical and legal matter, the Debtors cannot operate without general liability insurance, among other coverages. Further, if the Debtors are unable to pay the premiums necessary to maintain the Insurance Policies, they may be unable to find alternative insurance carriers willing to offer them similar insurance at a competitive price. The potential harm and economic disadvantage that could stem from the failure to pay the Insurance Obligations is grossly disproportionate to the amount of any prepetition claim that may be paid.

34. Accordingly, the Debtors can meet their fiduciary duties as debtors in possession under section 1107(a) and 1108 of the Bankruptcy Code only by payment of their Insurance Obligations.

35. Moreover, section 105 of the Bankruptcy Code provides a separate, additional basis for payment of the Insurance Obligations.

36. The Debtors' proposed payment of the Prepetition Obligations also should be authorized under the "doctrine of necessity," which is grounded in Bankruptcy Code section 105(a).

DEBTORS' INSURANCE MOTION – Page 10

37. Pursuant to section 105, this Court "may issue any order . . . that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105.

38. The doctrine of necessity permits a bankruptcy court to authorize payment of certain prepetition claims prior to the completion of the chapter 11 case where the payment of such claims is necessary to the chapter 11 efforts. *See In re Just for Feet, Inc.*, 242 B.R. 821, 826 (D. Del. 1999) (stating that where the debtor "cannot survive" absent payment of certain prepetition claims, the doctrine of necessity should be invoked to permit payment); *In re Columbia Gas Sys., Inc.,* 171 B.R. 189, 191-192 (Bankr. D. Del. 1994) (noting that debtors may pay prepetition claims that are essential to continued operation of business) (citing *In re Lehigh & New England Ry. Co.*, 657 10 F.2d 570, 581 (3d Cir. 1981)).

39. The doctrine of necessity is a widely accepted component of modern bankruptcy jurisprudence. *See, e.g., In re Braniff, Inc.*, 218 B.R. 628, 633 (Bankr. M.D. Fla. 1998) (noting that debtors may pay prepetition wages when necessary to ensure employees remain on the job postpetition); *Just For Feet,* 242 B.R. at 826 (approving payment of key inventory suppliers' prepetition claims when such suppliers could destroy debtor's business by refusing to deliver new inventory on eve of debtor's key sales season); *In re Ionosphere Clubs, Inc.,* 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (recognizing that the doctrine of necessity is derived from the court's equitable powers and allows debtors to make payment on prepetition claims to creditors who will refuse to supply services or material essential to the conduct of the debtors' business).[1]

---

[1] The Debtors are mindful that in *In re B&W Enters.*, 713 F.2d 534 (9th Cir. 1983), the Ninth Circuit refused to extend the "necessity of payment" doctrine beyond the railroad reorganization case where the debtor made unauthorized postpetition payments to trade suppliers on prepetition debts. In *B&W*, after conversion to chapter 7, the trustee sought to recover the payments under section 549 of the Bankruptcy Code. That case is factually distinguishable from the instant one in that *B&W* (a) involved ordinary trade suppliers for which the claims were not entitled to priority, (b) did not seek prior court approval for the payments, and (c) was liquidating, thereby rendering the "necessity" of such payments moot. Further, the payment authority requested by this Motion, as it relates to prepetition occurrences, is separately and independently warranted under § 363(b)(1), as noted at pages 13-16 supra.

DEBTORS' INSURANCE MOTION – Page 11

40. The maintenance of the Workers' Compensation Programs is indisputably justified, as applicable state law mandates this coverage. Furthermore, with respect to the Workers' Compensation Claims, the risk that eligible claimants will not receive timely payments with respect to employment-related injuries could have a devastating effect on the financial well-being and morale of the Debtors' employees, and their willingness to remain in the Debtors' employ. Departures by employees at this critical time may result in a severe disruption of the Debtors' businesses to the detriment of all parties in interest. A significant deterioration in employee morale undoubtedly will have a substantial adverse impact on the Debtors, the value of their assets and businesses, and their ability to reorganize.

41. The amounts the Debtors propose to pay in respect of the Insurance Programs are minimal in light of the size of the Debtors' estates and the potential exposure of the Debtors absent insurance coverage.

42. The Debtors submit that the payment of the Insurance Obligations represents a sound exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable harm to the Debtors' estates and is therefore justified under sections 105(a) and 363(b) of the Bankruptcy Code.

43. Paying insurance premiums, deductibles, and other Insurance Obligations will benefit the Debtors' estates and their creditors by allowing the Debtors' business operations to continue without interruption. Indeed, the Debtors believe that without the relief requested herein, they will be unable maintain their current insurance coverage or find suitable replacement or renewal insurance coverage. Without insurance coverage the Debtors will be unable to maintain care of their cattle, operate their business and successfully complete their bankruptcy cases.

44. For the reasons discussed herein, payment of the Insurance Obligations is necessary to ensure that the Debtors are able to continue and maintain operations post-petition. This Court should exercise its equitable powers to grant the relief requested in this Motion.

45. To the extent any Workers' Compensation Program, Insurance Policy, or related agreement is deemed an executory contract within the meaning of section 365 of the Bankruptcy Code the Debtors do not, at this time, seek to assume the same. Accordingly, the Debtors request if the Court authorizes the payments described above, such payment should not be deemed to constitute postpetition assumption or adoption of said programs, policies, or agreements as executory contracts pursuant to section 365 of the Bankruptcy Code.

## WAIVER OF STAY

46. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As set forth above, the relief requested herein is critically important to prevent irreparable damage to the Debtors' operations.

47. Accordingly, the Debtors submit that cause exists to justify a waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent it applies.

## NO PRIOR REQUEST

48. No prior request for the relief requested herein has been made to this or any other Court.

## CONCLUSION

**WHEREFORE**, the Debtors respectfully request entry of an order granting the relief requested herein and granting the Debtors such other and further relief as the Court deems just and proper.

DATED this 11th day of April, 2024.

    /s/ Matt Christensen
Matthew T. Christensen
Attorney for the Debtors

**EXHIBIT A**
**Proposed Order**

**ORDER GRANTING THE DEBTORS' MOTION AUTHORIZING THE DEBTORS TO (A) MAINTAIN THEIR INSURANCE PROGRAM, (B) PAY INSURANCE PREMIUMS IN THE ORDINARY COURSE; AND (C) PAY ALL OBLIGATIONS ASSOCIATED THEREWITH**

The Debtors' *Motion for Entry of Order authorizing the Debtors to (a) maintain their insurance coverage levels, including authority to revise, extend, supplement, renew or change insurance coverage as needed, (b) pay insurance premiums, self-insured retentions, broker fees and/or deductibles in the ordinary course of business and (c) pay certain administrative obligations associated therewith* (the "Motion"); and the Court, having reviewed the Motion and having held a hearing on the relief requested in the Motion; and having heard the statements of counsel in support of the relief requested in the Motion at the hearing, finds that the Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334, that this is a core matter under 28 U.S.C. § 157(b)(2), that notice of the Motion and the Hearing were sufficient under the circumstances and that no further notice need be given; and the legal and factual bases set forth in the Motion and at the hearing establish just cause for the relief granted herein; and any objections to the requested relief having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing, therefore

IT IS HEREBY ORDERED AS FOLLOWS:

1. The Motion is GRANTED as provided herein.

2. The Motion was appropriate under the circumstances and in compliance with the Bankruptcy Code and Bankruptcy Rules.

3. The Debtors are authorized to do the following:

    a. maintain their insurance coverage levels, including authority to revise, extend, supplement, renew or change insurance coverage as needed,

    b. pay insurance premiums, self-insured retentions, broker fees and deductibles in the ordinary course of business, and

    c. pay certain administrative obligations associated therewith.

4. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

5. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

//end of text//

Order submitted by:

Matthew T. Christensen, Attorneys for the Debtor

DEBTORS' INSURANCE MOTION – Page 16

**EXHIBIT B**
**Insurance Policies**

| Policy | Insurer | Summary of Coverage | Premium |
|---|---|---|---|
| Idaho Workers' Compensation Policy<br><br>Policy No. 668982 | Idaho Workers' Compensation (State insurance fund)<br><br><u>Agent</u>: Hub International Mountain States Ltd<br>PO Box 5099 Twin Falls, ID 83303-5099<br>(208) 734-1711 | Workers' Compensation | Average monthly premium is $35,000 to $45,000.<br><br>2/2024 premium is due on 4/30/2024 in the amount of $35,577.<br><br>3/2024 premium is due on 5/31/2024 in the estimated amount of approximately $38,000. |
| Chubb Agribusiness<br><br>Policy No. PAC 2607051-03<br><br>Account No.0002607051 | Penn Millers Insurance Company (Chubb)<br><br>Chubb Agribusiness Commercial Ag 72 N. Franklin Street P.O. Box P Wilkes-Barre, PA 18773 USA | ➢ Agribusiness Property<br>➢ Commercial General Liability<br>➢ Information Security Protection Cyber<br>➢ Inland Marine<br>➢ Business Auto<br>➢ Commercial Liability Umbrella | AGRIBUSINESS PROPERTY $775,121.00<br><br>COMMERCIAL GENERAL LIABILITY $46,827.00<br><br>INFORMATION SECURITY PROTECTION CYBER $385.00<br><br>INLAND MARINE $ 193,168.00<br><br>BUSINESS AUTO $191,591.00<br><br>COMMERCIAL LIABILITY UMBRELLA $ 87,372.00<br><br>Total: $1,294,464.00<br><br>10 month payment plan for 12 months of coverage. |

| | | | |
|---|---|---|---|
| | | | Plan is up for renewal on July 20, 2024.<br><br>The monthly premium is approximately $117,554.32.<br><br>The Debtors owe their last payment of $117,554.32 on April 15, 2024. |
| Commercial Excess Liability<br><br>Policy No. XLS2002518 | Nationwide<br><br>Underwriter: Scottsdale Insurance Company<br>18700 North Hayden Road<br>Scottsdale, AZ 85255<br><br>Agent: CRC Insurance Services<br>1 Metroples Dr STE 400<br>Birmingham, AL 35209-6895 | Commercial Excess Liability Coverage | $52,000 flat fee |

DEBTORS' INSURANCE MOTION – Page 18