Sheila R. Schwager, ISB No. 5059
Brent R. Wilson, ISB No. 8936
HAWLEY TROXELL ENNIS & HAWLEY LLP
877 W. Main Street, Suite 200
P.O. Box 1617
Boise, ID 83701-1617
Telephone: 208.344.6000
Facsimile: 208.954.5261
Email: sschwager@hawleytroxell.com
        bwilson@hawleytroxell.com

Andrew J. Schoulder (*pro hac vice*)
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, NY 10019
Telephone: 212.318.3030
Email: andrew.schoulder@nortonrosefulbright.com

Attorneys for Rabo AgriFinance LLC

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| In re | Chapter 11 |
| MILLENKAMP CATTLE, INC., *et al.*, | Case No. 24-40158 (NGH) |
| Debtors. | (Jointly Administered) |

**OBJECTION TO FORM OF PROPOSED INTERIM ORDER AUTHORIZING THE DEBTORS TO OBTAIN POST-PETITION FINANCING; (B) GRANTING ADEQUATE PROTECTION TO PRE-PETITION SECURED LENDERS; AND (C) SETTING A FINAL HEARING**

Rabo AgriFinance LLC, in its capacity as agent and lender ("**RAF**"), by and through its

attorneys of record, hereby respectfully submits this objection to the form the proposed order (the

OBJECTION TO FORM OF PROPOSED INTERIM ORDER AUTHORIZING THE DEBTORS TO OBTAIN POST-PETITION FINANCING; (B) GRANTING ADEQUATE PROTECTION TO PRE-PETITION SECURED LENDERS; AND (C) SETTING A FINAL HEARING - 1

59797.0007.17069703.2

"**Proposed Order**"), which RAF understands has already been submitted to the Court by the Debtors Millenkamp Cattle, Inc., *et al.* (the "**Debtors**").

The Proposed Order submitted is not consistent with the relief granted by this Court in its oral comments on April 16, 2024, as to the *Emergency Motion of Debtors for Interim and Final Orders (A) Authorizing the Debtors to Obtain Post-Petition Financing; (B) Granting Adequate Protection to Pre-Petition Secured Creditors; and (C) Setting a Final Hearing* (Dkt. No. 24) (the "**DIP Motion**").

RAF, along with other parties in interest, were provided a copy of the Proposed Order yesterday, April 17, 2024, at about 2:50 p.m. (MT).  Counsel for RAF responded via email at approximately 3:20 p.m. (MT) that RAF had noted in its initial review of the Proposed Order several inconsistencies in the Proposed Order as compared to this Court's oral ruling on the DIP Motion on April 16, 2024 (Dkt. No. 190), and stated that RAF would make it a priority to get those comments drafted and communicated to counsel.

Today, April 18, 2024, in an email at about 9:00 a.m. (MT), counsel for RAF sent to the Debtors' counsel its comments on the various inconsistencies in the Proposed Order, as compared to this Court's ruling on the DIP Motion, along with an attachment highlighting the inconsistencies and issues RAF identified with the Proposed Order and proposing minimal redline changes. Debtors' counsel responded shortly thereafter that the Proposed Order has already been submitted to the Court for entry, that the Court could revise the Proposed Order, and RAF could object after it was entered.

Although RAF would have preferred resolving with counsel, short of filing an objection, it now appears necessary to formally file an objection to the form of the Proposed Order as drafted

and submitted by the Debtors.  Attached hereto and incorporated by reference herein as **Exhibit A**

are the highlighted comments, redline suggestions, and issues in the Proposed Order that RAF

believes are inconsistent with the Court's ruling on the DIP Motion.

Accordingly, RAF respectfully requests that the Proposed Order as drafted by the Debtors

and pending for entry by this Court not be entered as presently drafted.

Dated: April 18, 2024                     HAWLEY TROXELL ENNIS & HAWLEY LLP


                                          /s/ Brent R. Wilson
                                          _____
                                          Brent R. Wilson, ISB No. 8936
                                          Attorneys for Rabo AgriFinance LLC

OBJECTION TO PROPOSED INTERIM ORDER AUTHORIZING THE DEBTORS TO
OBTAIN POST-PETITION FINANCING; (B) GRANTING ADEQUATE PROTECTION TO
PRE-PETITION SECURED LENDERS; AND (C) SETTING A FINAL HEARING - 3

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 18th day of April, 2024, I electronically filed the foregoing **OBJECTION TO PROPOSED INTERIM ORDER AUTHORIZING THE DEBTORS TO OBTAIN POST-PETITION FINANCING; (B) GRANTING ADEQUATE PROTECTION TO PRE-PETITION SECURED LENDERS; AND (C) SETTING A FINAL HEARING** with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to those identified in the CM/ECF system for this matter, at the time this document was filed, including the following persons:

| | |
|---|---|
| Matthew T. Christensen | mtc@johnsonmaylaw.com |
| Krystal R. Mikkilineni | krystal.mikkilineni@dentons.com |
| Tirzah R. Roussell | tirzah.roussell@dentons.com |
| U.S. Trustee | ustp.region18.bs.ecf@usdoj.gov |
| Heidi Buck Morrison | heidi@racineolson.com |
| David A. Coleman | david@colemanjacobsonlaw.com |
| Jon B. Evans | evans.jb@dorsey.com |
| Kimbell D. Gourley | kgourley@idalaw.com |
| Daniel C. Green | dan@racineolson.com |
| Scott C. Powers | spowers@spencerfane.com |
| Janine Patrice Reynard | janine@averylaw.net |
| Sheila Rae Schwager | sschwager@hawleytroxell.com |
| Brent Russel Wilson | bwilson@hawleytroxell.com |
| Zachary Fairlie | zfairlie@spencerfance.com |
| John O'Brien | jobrien@spencerfane.com |
| Gery W. Edson | gedson@gedson.com |
| Aaron Bell | abell@evanskeane.com |
| Brian Faria | brian@sawtoothlaw.com |
| Robert A. Faucher | rfaucher@hollandhart.com |
| Matthew W. Grimshaw | matt@grimshawlawgroup.com |
| Karen Lloyd | klloyd@grsm.com |
| James Justin May | jjm@johnsonmaylaw.com |
| Rhett Michael Miller | rmiller@magicvalley.law |

OBJECTION TO PROPOSED INTERIM ORDER AUTHORIZING THE DEBTORS TO OBTAIN POST-PETITION FINANCING; (B) GRANTING ADEQUATE PROTECTION TO PRE-PETITION SECURED LENDERS; AND (C) SETTING A FINAL HEARING - 4

| | |
|---|---|
| Robert E. Richards | robert.richards@dentons.com |
| Holly Roark | holly@roarklawboise.com |
| Evan Thomas Roth | evan@sawtoothlaw.com |
| Meredith Leigh Thielbahr | mthielbahr@grsm.com |
| John F. Kurtz, Jr. | jfk@kurtzlaw.com |
| And any others receiving cm/ecf notices | |

/s/ Brent R. Wilson

Brent R. Wilson

OBJECTION TO PROPOSED INTERIM ORDER AUTHORIZING THE DEBTORS TO
OBTAIN POST-PETITION FINANCING; (B) GRANTING ADEQUATE PROTECTION TO
PRE-PETITION SECURED LENDERS; AND (C) SETTING A FINAL HEARING - 5

# EXHIBIT

# A

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

In re

MILLENKAMP CATTLE, INC., *et. al.*,

               Debtors.

Case No. 24-40158-NGH

Chapter 11

**INTERIM ORDER AUTHORIZING THE DEBTORS TO OBTAIN POST-PETITION FINANCING; (B) GRANTING ADEQUATE PROTECTION TO PRE-PETITION SECURED LENDERS; AND (C) SETTING A FINAL HEARING**

Upon the motion, dated April 2, 2024 (the "Motion"), of Millenkamp Cattle, Inc. ("Millenkamp Cattle") and its affiliated debtors and debtors in possession (collectively, the "Debtors")[1] in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), seeking, pursuant to sections 105, 361, 362, 363, 364, 503, 506, 507, and 552 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), Rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), and the Local Bankruptcy Rules (the "Local Rules" or "LBR"), entry of an interim order (this "Interim Order"); the Court having jurisdiction to consider the matters raised in the Motion pursuant to 28 U.S.C. § 1334; and the Court having authority to hear the matters raised in the Motion pursuant to 28 U.S.C. § 157; and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and consideration of the Motion and the requested relief being a core proceeding that the

---

[1] The Debtors in the Chapter 11 Cases along with the last four digits of their respective tax identification number or registration number in the applicable jurisdiction are: Millenkamp Cattle, Inc. (26-0603892); Idaho Jersey Girls LLC (46-3084467); East Valley Cattle, LLC (20-3238613); Millenkamp Properties, L.L.C. (26-0604003); Millenkamp Properties II LLC (84-3797719); Millenkamp Family LLC (46-1868279); Goose Ranch, LLC; Idaho Jersey Girls Jerome Dairy LLC (81-4713431); Black Pine Cattle LLC; and Millenkamp Enterprises LLC. The location of the Debtors' service address for purposes of the Chapter 11 Cases is 471 N 300 W., Jerome, ID 83338.

Court can determine pursuant to 28 U.S.C. § 157(b)(2); and due and proper notice of the Motion and opportunity for a hearing on the Motion having been given, and it appearing that no other or further notice need be provided; and the Court having reviewed and considered the Motion, the *Declaration of William John Millenkamp in Support of the First-Day Motions and Relief* (the "Millenkamp Declaration"); and the Court having held a hearing on April 4, 9, 10 and 16, 2024 to consider entry of this Interim Order (the "Interim Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and in the Millenkamp Declaration, and at the Interim Hearing establish just cause for the relief granted herein; and the Court having found the relief requested in the Motion to be fair, reasonable, and in the best interests of the Debtors, their creditors, their estates, their livestock, and all other parties in interest; and the Court having determined that the relief requested in the Motion is essential for the continued operation of the Debtors' businesses and providing for the well-being of their livestock; and all objections, if any, to the entry of this Interim Order having been withdrawn, resolved or overruled by the Court; and upon all of the proceedings had before the Court; after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[2]**

A. **Petition Date.** On April 2, 2024 (the "Petition Date"), the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for District of Idaho (the "Court") commencing the Chapter 11 Cases. The Debtors have

---

[2]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

INTERIM ORDER AUTHORIZING DEBTORS TO OBTAIN POST-PETITION FINANCING – Page 2        59797.0007.17068253.1

continued in the management and operation of their businesses and properties as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  No trustee, examiner, or official statutory committee of unsecured creditors (such official committee, the "Committee") has yet been appointed in the Chapter 11 Cases.

B.  **Jurisdiction and Venue.**  The Court has jurisdiction over these proceedings, pursuant to 28 U.S.C. § 1334.  Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue for the Chapter 11 Cases and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  Pursuant to Bankruptcy Rule 7008, the Debtors consent to the entry of a final order by the Court in connection with the Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

C.  **Notice**.  Under the circumstances of the Chapter 11 Cases, proper, timely, adequate and sufficient notice of the Motion, the Interim Hearing, and the Interim Order has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice of the Motion, the Interim Hearing, or this Interim Order shall be required.

D.  **No Control.**  The DIP Lender[3] was not and is not in control of persons or insiders of the Debtors or any of their affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from the DIP Facility.

**Commented [A1]:** Finding was not made by the Court.

E.  **Immediate Need for Postpetition Financing and Use of Cash Collateral.** Good cause has been shown for entry of this Interim Order.  The immediate ability of the Debtors to preserve and maintain the value of their assets, maximize value for creditors and provide for

---

[3] Capitalized terms used, but not otherwise defined in this Interim Order, shall have the meaning ascribed to such terms in the Motion.

the well-being of Livestock requires the availability of working capital from the DIP Facility and use of Cash Collateral, to continue operations, pay the costs and expenses of administering the Chapter 11 Cases, and administer and preserve the value of their businesses and estates. In the absence of the continued availability of such funds and liquidity in accordance with the terms hereof (including access to the DIP Facility and use of Cash Collateral), the continued operation of the Debtors' businesses would not be possible, and immediate and irreparable harm to the Debtors, their estates, their creditors and their Livestock would occur. Further, the possibility for a successful restructuring and other value-maximizing transaction(s) would be jeopardized in the absence of the availability of funds in accordance with the terms of this Interim Order.

> **Commented [A2]:** The court did not make this finding.

F.    **No Credit Available on More Favorable Terms.** The Debtors have been unable to obtain credit on more favorable terms and conditions than those provided in this Interim Order. The Debtors are unable to obtain credit for borrowed money without granting the DIP Liens and the DIP Superpriority Claim and without granting the adequate protection as and to the extent set forth herein.

> **Commented [A3]:** Not determined by the Court, but instead stated that this was allowable business judgment by the debtors.

> **Commented [A4]:** "DIP Superpriority Claims" is defined as "superpriority administrative claim," which was not authorized by the Court.

G.    **Adequate Protection for Pre-Petition Secured Parties.**

(i)     The Pre-Petition Secured Lenders' interests are adequately protected through an "equity cushion" on their collateral (or as stated below with respect to Conterra Holdings, LLC d/b/a Conterra Ag Capital as loan servicer and power of attorney, pursuant to the stipulation attached hereto as "Exhibit A" (the "Conterra Stipulation")), and solely to the extent of any diminution in the value of their respective interests in the Pre-Petition Collateral resulting from, among other things, the subordination to the Carve Out and to the DIP Liens the Debtors' use, sale, or lease of such Pre- Petition Collateral, including Cash Collateral, and the

> **Commented [A5]:** The Court did not reference a subordination to a Carve Out on an interim basis.

> **Commented [A6]:** Cash collateral is governed by a different order.

imposition of the automatic stay from and after the Petition Date (collectively, and solely to the extent of such diminution in value, the "Diminution in Value") (and subject to the Carve Out and the Debtors' preserved rights, with respect solely to the Pre-Petition Collateral, pursuant to section 506(c) of the Bankruptcy Code), in the form of replacement security interests in and liens on substantially all of the Debtors' assets and property (with certain exclusions) and superpriority claims (in each case, in accordance with their relative priorities, and junior and subject to the liens and superpriority claims granted to the DIP Lender).

**Commented [A7]:** Same comment, as to Carve Out.

**Commented [A8]:** The Court expressly ruled he was not granting on an interim basis.

(ii)    Accordingly, under the circumstances of the Chapter 11 Cases, the Equity Cushions, together with the substantial benefits associated with the relief granted herein, provide adequate protection pursuant to Bankruptcy Code sections 361, 362, 363, and 364 to the Pre-Petition Secured Lenders.

(iii)    The DIP Loan is critical to the Debtors' ability to preserve the Debtors' assets; is in the best interests of the Debtors and their estates; and necessary to avoid irreparable harm to the Debtors, their creditors and their assets, businesses, goodwill, reputation, and employees. Further, access to the proceeds under the DIP Facility is necessary to avoid immediate and irreparable harm to the value of the Debtors' assets and the care of the livestock.

**Commented [A9]:** Finding not made.

H.    **Extension of Financing.** The DIP Lender committed to provide financing to the Debtors in accordance with the DIP Term Sheet and the other DIP Loan Documents, and subject to (i) the entry of this Interim Order, the entry of the Final Order, and approval of each provision of the DIP Loan Documents, and (ii) findings by this Court that financing up to $8.5 million is essential to the Debtors' estates through the Final DIP Hearing.

I.    **Business Judgment and Good Faith Pursuant to Section 364(e).** The terms and conditions of the DIP Facility (including the fees, expenses, and other amounts paid to and to

be paid thereunder), are fair, reasonable, and the best available under the circumstances, reflect

**Commented [A10]:** Not determined by the Court, but instead stated that this was allowable under the business judgment of the debtors.

the Debtors' exercise of their prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration. All obligations incurred, payments made, and transfers or grants of security set forth in this Interim Order and the other DIP Loan Documents by any Debtor are (and were) granted to or for the benefit of the DIP Lender for fair consideration and reasonably equivalent value, and are (and were) granted contemporaneously with the making of the loans and/or commitments and other financial accommodations secured thereby. The DIP Facility was negotiated in good faith and at arm's length among the Debtors, the DIP Lender, and, as applicable, their respective professionals. The use of the proceeds to be extended under the DIP Facility will be so extended in good faith and for valid business purposes and uses. The DIP Lender is entitled to the protection and benefits of Bankruptcy Code section 364(e).

  J. **Relief Essential; Best Interests.** The relief requested in the Motion (and granted or otherwise provided for in this Interim Order), is necessary, essential and appropriate for the continued operation of the Debtors' businesses and the management and preservation of the Debtors' assets and property and satisfies the requirements of Bankruptcy Rule 6003. It is in the best interest of the Debtors' estates and their creditors, and consistent with the Debtors' exercise of their fiduciary duties, that the Debtors be (a) allowed to enter into the DIP Facility with an interim draw of up to $8.5 million, with $5.2 Million being paid to the Critical Vendors, and the remaining balance to be disbursed in accordance with the Budget; and (b) grant the liens and claims contemplated herein and under the DIP Facility to or for the benefit of the DIP Lender, and (c) use Cash Collateral, as contemplated herein.

**Commented [A11]:** The use of cash collateral is governed by a different order.

  **NOW, THEREFORE,** based upon the foregoing, and after due consideration

INTERIM ORDER AUTHORIZING DEBTORS TO OBTAIN POST-PETITION 59797.0007.17068253.1
FINANCING – Page 6

and good cause appearing therefor, **IT IS ORDERED** that:

1.    **Motion Granted In Part.** The Motion is granted in part in accordance with the terms and conditions set forth in this Interim Order. Any objections to the Motion with respect to entry of this Interim Order to the extent not withdrawn, waived or otherwise resolved, and all reservation of rights included therein, are hereby denied and overruled, except as allowed herein.

2.    **DIP Facility.**

(a)    *DIP Obligations*. The Debtors are expressly and immediately authorized, empowered, and directed, on an interim basis, to enter into the DIP Facility and to continue to incur and to perform all obligations under the DIP Facility (except for, among other things, the section 6.19 of the Credit Agreement), up to $8.5 million, with $5.2 Million being paid to the Critical Vendors, and the remaining balance to be disbursed in accordance with the Budget; and during the interim period, in accordance with and subject to this Interim Order and the DIP Loan. The fee associated with the initial draw of $8.5 million, pursuant to the DIP Loan Documents, shall be an administrative priority claim subject to the pending entry of a Final DIP Order providing for such priority. The Debtors are hereby authorized and directed to pay all principal, interest, fees and expenses, indemnities, as applicable under the DIP Loan, and other amounts described herein and in the other DIP Loan Documents as such shall accrue and become due hereunder or thereunder (collectively, all loans, advances, extensions of credit, financial accommodations, fees, expenses, obligations, and all other Liabilities (including indemnities and similar obligations), as applicable, in respect of the DIP Facility (the "<u>DIP Obligations</u>"). The DIP Facility and all DIP Obligations shall represent, constitute and evidence, as the case may be, valid and binding obligations of the Debtors, enforceable against the Debtors, their estates, and any successors thereto in accordance with their terms. The failure specifically to identify or

> **Commented [A12]:** The court has not yet made this determination.

> **Commented [A13]:** Are these due during the interim period, because the court did not authorize payment during the interim payment.

refer to any particular provision of any DIP Loan Document or any other agreement in this Interim Order shall not diminish or impair the effectiveness of such provision.

(b)      *Authorization to Borrow*.  In order to enable the Debtors to continue to operate their businesses, subject to the terms and conditions of this Interim Order and the DIP Facility, the Debtors are hereby authorized to enter into the DIP Facility, up to $8.5 million during the interim period, and, subject to any conditions or limitations set forth in the DIP Term Sheet, to borrow under the DIP Facility.

**Commented [A14]:** Shouldn't this be the DIP Agreement.

(c)      *DIP Collateral*.  As used herein, "DIP Collateral" shall refer to and mean, all of the existing and after-acquired real property and personal, tangible and intangible, assets of the Debtors and all "property of the estate" (as that term is utilized in the Bankruptcy Code) including, without limitation, all cash, cash equivalents, bank deposit and securities accounts, accounts, other receivables, chattel paper, contract rights, inventory, instruments, documents, securities (whether or not marketable), equipment, fixtures, real property interests, franchise rights, general intangibles, investment property, supporting obligations, tax refunds, securities, franchise rights, letter of credit rights, commercial tort claims, causes of action (other than avoidance actions) and all substitutions, accessions and proceeds of the foregoing, wherever located, including insurance or other proceeds, patents, tradenames, trademarks, copyrights, intellectual property and all substitutions, accessions and proceeds of such intellectual property, wherever located, including insurance or other proceeds.

(d)      *DIP Liens*. Effective immediately upon entry of the Interim Order, and subject to the Carve-Out, and as set forth more fully in this Interim Order, and the DIP Facility, the DIP Lender is hereby granted, pursuant to and in accordance with Sections 364(c) and (d) of the Bankruptcy Code, valid, perfected, continuing, enforceable, non-avoidable first priority liens and

security interests on the DIP Collateral of each Debtor (the "DIP Liens"), and shall prime all other liens and security interests on the DIP Collateral, including any liens and security interests in existence on the Petition Date, and any other current or future liens granted on the DIP Collateral, including any adequate protection or replacement liens granted on the DIP Collateral (the "Primed Liens"). The DIP Liens shall be effective and perfected as of the entry of this Interim Order, without need for any additional filings or documentation, except to the extent requested by the DIP Lender in its sole discretion. The DIP Liens, DIP Superpriority Claim (defined below) and other rights and remedies granted under this Interim Order to the DIP Lender shall continue in these Chapter 11 Cases and any successor case(s), and shall be valid and enforceable against any trustee appointed in any or all of the Debtors' Chapter 11 Cases and upon the dismissal of any or all of the Debtors' Chapter 11 Cases, or in any successor case(s), and such liens and security interests shall maintain their priority as provided in this Interim Order until all the DIP Obligations have been indefeasibly paid in full in cash and the DIP Lender's commitments have been terminated in accordance with the DIP Loan Documents and this Interim Order. Notwithstanding, the DIP Liens shall not have priority, but shall have second priority, solely with respect to (i) any purchase money security interest liens ("PMSI Liens") held by any financing party holding a valid first-priority, non-avoidable PMSI lien on any equipment or other asset of the Debtors as of the Petition Date and (ii) any valid, first-priority, non-avoidable statutory lien held by feed or other suppliers existing as of the Petition Date. Further notwithstanding, with regard to the real property identified by the parties as the "German Dairy" (in which Conterra as servicer currently holds a first-priority perfected lien for Conterra's Rooster Loan in the original principal amount of $2,549,750), the DIP Liens shall not have a first-priority lien or super-priority lien status to the extent Conterra has a valid first-

**Commented [A15]:** Should be made clear that the critical vendors are paid per the Court's order up to $5.2 million and the secured creditors are only primed up to the $3.3 million amount.

**Commented [A16]:** Remove per the above comment.

priority, non-avoidable lien against the German Dairy, but shall be a second-priority lien behind Conterra's existing first-position lien.

(e)    *DIP Superpriority Claim.*  Effective immediately upon entry of this Interim Order, pursuant to Bankruptcy Code section 364(c)(1), and subject in each case to the Carve-Out, the DIP Loan shall be entitled to superpriority administrative expense claim status in the Chapter 11 Cases of each Borrower (the "DIP Superpriority Claims"), which DIP Superpriority Claims in respect of the DIP Facility shall have priority over any and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kinds specified in or arising or ordered under sections 105(a), 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, 1113, and 1114 and any other provision of the Bankruptcy Code or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which shall be payable from and have recourse to all assets and properties of the Debtors, and which shall be against each of the Debtors who are Debtors (jointly and severally), with priority over any and all other administrative expenses, adequate protection claims, diminution in value claims, and all other claims asserted against the Debtors now existing or hereafter arising of any kind whatsoever (whether secured or unsecured), subject only to the Carve-Out.

**Commented [A17]:** Should be removed per comment above.

3.    **Authorization and Approval to Use DIP Facility Proceeds.**  Subject to the terms and conditions of this Interim Order, the DIP Facility, and the DIP Budget attached hereto as Exhibit "B", each Debtor is authorized to use the DIP Facility proceeds, up to $8.5 million during the interim period, with $5.2 Million being paid to the Critical Vendors, and the remaining balance to be disbursed in accordance with the Budget. The requirement for a a cash

INTERIM ORDER AUTHORIZING DEBTORS TO OBTAIN POST-PETITION    59797.0007.17068253.1
FINANCING – Page 10

reserve ~~a equity cushion~~ of $1.5 million set forth in the DIP ,Loan Documents shall not be funded during the interim period from the DIP Facility proceeds.

4.      **Adequate Protection for Pre-Petition Secured Lenders.** The Pre-Petition Secured Lenders are provided adequate protection through an "equity cushion" on their collateral, and solely to the extent of any diminution in the value of their respective interests in the Pre- Petition Collateral resulting from, among other things, the subordination to the Carve Out and to the DIP Liens the Debtors' use, sale, or lease of such Pre-Petition Collateral, including Cash Collateral, and the imposition of the automatic stay from and after the Petition Date (collectively, and solely to the extent of such diminution in value, the "Diminution in Value") (and subject to the Carve Out and the Debtors' preserved rights pursuant to section 506(c) of the Bankruptcy Code), in the form of replacement security interests in and liens on substantially all of the Debtors' assets and property (with certain exclusions) and superpriority claims (in each case, in accordance with their relative priorities, and junior and subject to the liens and superpriority claims granted to the DIP Lender).

The Pre-Petition Secured Lenders shall further receive monthly interest-only payments at the pre-default rate of interest accruing on and after the Petition Date.

Accordingly, under the circumstances of the Chapter 11 Cases, the equity cushion, together with the substantial benefits associated with the relief granted herein, provide adequate protection pursuant to Bankruptcy Code sections 361, 362, 363, and 364 to the Pre-Petition Secured Lenders.

**Commented [A18]:** Not part of the Court's findings.

Further, as set forth in the Conterra Stipulation, Conterra, with respect to the German Dairy, will continue to have the first priority lien and the DIP Loan will have the second priority lien, as set forth in Paragraph 2(d) above.

5.     **DIP Lien and Adequate Protection Lien Perfection.**  This Interim Order shall be sufficient and conclusive evidence of the validity, perfection and priority of the DIP Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document that may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect the DIP Liens or to entitle the DIP Liens and to the priorities granted herein. Notwithstanding the foregoing:

(a)     The DIP Lender may file such financing statements, deeds of trust, mortgages, security agreements, notices of liens and other similar documents, and is hereby granted relief from the automatic stay of Bankruptcy Code section 362 in order to do so, and all such financing statements, deeds of trust, mortgages, security agreements, notices and other agreements or documents shall be deemed to have been filed or recorded as of the Petition Date and no defect in any such act shall affect or impair the validity, perfection and enforceability of the liens granted hereunder;

(b)     The Debtors shall execute and deliver to the DIP Lender all such financing statements, deeds of trust, mortgages, security agreements, notices and other documents as the DIP Lender may reasonably request to evidence, confirm, validate or perfect, or to insure the contemplated priority of the DIP Liens; and

(c)     In lieu of obtaining such consents or filing any mortgages, financing statements, notices of lien or similar instruments, the DIP Lender may, in its sole discretion, choose to file a true and complete copy of this Interim Order in any place at which any such instruments would or could be filed, together with a description of the DIP Collateral, and such filing shall have the same effect as if such mortgages, deeds of trust, financing statements, notices of lien or similar instruments had been filed or recorded as of the Petition Date.

INTERIM ORDER AUTHORIZING DEBTORS TO OBTAIN POST-PETITION
FINANCING – Page 12

59797.0007.17068253.1

6.     **Carve-Out.** The DIP Liens, DIP Superpriority Claim, the Prepetition Liens, the

> **Commented [A19]:** Remove, per the above comments.

Prepetition Replacement Liens, and the Prepetition Superiority Claims are subordinate only to

the Carve Out. The Carve Out shall mean a carve-out in an amount equal to the sum of (i) all

fees required to be paid to the Clerk of the Court and to the U.S. Trustee under section 1930(a)

of title 28 of the United States Code plus interest at the statutory rate; (ii) all reasonable and

documented fees and expenses incurred by a trustee under Bankruptcy Code section 726(b), in

an aggregate amount not to exceed $250,000; (iii) to the extent allowed by the Court at any time,

whether by interim order, procedural order or otherwise (unless subsequently disallowed), all

unpaid fees and expenses (the "Professional Fees") incurred by persons or firms retained by the

Debtors pursuant to Bankruptcy Code sections 327, 328, or 363 or by the Committee, pursuant

to Bankruptcy Code sections 328 and 1103 (collectively, the "Professional Persons").

> **Commented [A20]:** The Court did not rule on this.

7.     **Other Rights and Obligations.**

(a)     *Expenses*. The Debtors will be responsible for the DIP Lender's out of

pocket reasonable fees and expenses incurred by the DIP Lender to put the DIP Loan in place,

to manage the DIP Loan, and to enforce the terms of the DIP Loan (absent an event of default).

(b)     *Binding Effect*. The provisions of this Interim Order shall be binding

upon and inure to the benefit of the DIP Lender and the Pre-Petition Secured Lenders, the

Debtors, and their respective successors and assigns (including any trustee or other fiduciary

hereinafter appointed as a legal representative of the Debtors or with respect to the property of

the estates of the Debtors) whether in the Chapter 11 Cases, in any successor cases, or upon

dismissal of any such chapter 11 or chapter 7 cases.

(c)     *Limitation on Surcharge*. Without limiting the terms of the Carve-Out

> **Commented [A21]:** The court did not issue this ruling; but it is subject to the terms of a final order, so perhaps okay.

and subject to the entry of the Final Order, no costs or expenses of administration which have

been or may be incurred in the Chapter 11 Cases or any successor case(s) at any time shall be surcharged against, and no person may seek to surcharge any costs or expenses of administration against the DIP Lender or the DIP Collateral, pursuant to sections 105 or 506(c) of the Bankruptcy Code or otherwise, without the prior written consent of the DIP Lender. No action, inaction or acquiescence by the DIP Lender shall be deemed to be or shall be considered evidence of any alleged consent to a surcharge against the DIP Lender or the DIP Collateral.

(d)     *Application of Collateral Proceeds*. To the extent required by this Interim Order and the DIP Loan Documents, unless otherwise ordered by the Court, after (a) an Event of Default and (b) the receipt by the Debtors of written notice that the DIP Lender will no longer fund the Debtors through the proceeds of the DIP Loans, the Debtors are hereby authorized to remit to the DIP Lender, subject to the payment of the Carve-Out, one hundred percent (100%) of all collections on, and proceeds of, the DIP Collateral subject to the lien priorities set forth in Paragraph 2(d) herein until the DIP Obligations are paid in full, and the automatic stay provisions of section 362 of the Bankruptcy Code are hereby modified to permit the DIP Lender to retain and apply all collections, remittances, and proceeds of the DIP Collateral in accordance with the DIP Loan Documents. In furtherance of the foregoing, (a) all cash, securities, investment property and other items of any Debtor deposited with any bank or other financial institution shall be subject to a perfected, first priority security interest in favor of the DIP Lender, except for the cash reserve established for the benefit of RAF and Conterra under the Interim Cash Collateral Order, (b) upon the occurrence and during the continuance of a Termination Event (as defined in the DIP Loan Documents), each bank or other financial institution with an account of any Debtor is hereby authorized to (i) comply at all times with any instructions originated by the DIP Lender to such bank or financial institution directing the

> **Commented [A22]:** This was not ruled upon by the court and the modification of 362 is one of the unfavored provisions in the Local Rule Appendix

INTERIM ORDER AUTHORIZING DEBTORS TO OBTAIN POST-PETITION    59797.0007.17068253.1
FINANCING – Page 14

disposition of cash, securities, investment property and other items from time to time credited to such account, without further consent of any Debtor, including, without limitation, any instruction to send to the DIP Lender by wire transfer (to such account as the DIP Lender shall specify, or in such other manner as the DIP Lender shall direct) all such cash, securities, investment property and other items held by it, and (ii) waive any right of set off, banker's lien or other similar lien, security interest or encumbrance that is or may be invoked against the DIP Lender and (c) any deposit account or securities account control agreement executed and delivered by any bank or other financial institution or any Debtor prior to the Petition Date shall establish co-control in favor of the DIP Lender of any and all accounts subject thereto and any and all cash, securities, investment property and other items of any Debtor deposited therein to secure the DIP Obligations (provided that primary control rights shall vest in the DIP Lender), and all rights thereunder in favor of any pre-petition party shall inure also to the benefit of, and shall be exercisable exclusively by, the DIP Lender, until all of the DIP Obligations have been paid in full in cash.

> **Commented [A23]:** Same issue; its modifying the automatic stay.

(e)     Section 5.22(e) of the Credit Agreement shall not be approved on an interim basis. As such, the DIP Motion and Credit Agreement shall not, on an interim basis, grant superpriority administrative expense claims to the DIP Lender having priority over all administrative expense claims and unsecured claims against such Borrowers.

(f)     *No Marshaling.* In no event shall the DIP Lender be subject to the equitable doctrine of marshaling or any similar doctrine.

> **Commented [A24]:** Court did not issue a ruling on this.

(g)     *Collateral Rights.* Subject to this Order and any further order of the Bankruptcy Court entered without the objection of the DIP Lender authorizing the Debtors to make payments to prepetition creditors, if any party who holds a lien or security interest in DIP

INTERIM ORDER AUTHORIZING DEBTORS TO OBTAIN POST-PETITION FINANCING – Page 15    59797.0007.17068253.1

Collateral that is junior or otherwise subordinate to the DIP Liens in such DIP Collateral receives or is paid the proceeds of such DIP collateral, or receives any other payment with respect thereto from any other source prior to the indefeasible payment in full in cash and the complete satisfaction of all DIP Obligations under the DIP Loan Documents and termination of the commitments thereunder in accordance with the DIP Documents, such junior or subordinate lienholder shall be deemed to have received, and shall hold, the proceeds of any such DIP Collateral in trust for the DIP Lender and shall immediately turn over such proceeds to the DIP Lender for application to repay the DIP Obligations in accordance with the DIP Loan Documents and this Interim Order until the DIP Obligations are indefeasibly paid in full in cash.

> **Commented [A25]:** The court did not issue this ruling.

(h)      *Injunction*. Until such time as all DIP Obligations are indefeasibly paid in full in cash, the Debtors shall be enjoined and prohibited from, at any time during these Chapter 11 Cases, granting liens on DIP Collateral or any portion thereof to any other party, pursuant to section 364(d) of the Bankruptcy Code or otherwise, which liens are senior to or *pari passu* with the liens granted to the DIP Lender except in accordance with the DIP Loan Documents and this Interim Order.

> **Commented [A26]:** Court did not issue this ruling.

(i)      *No Third Party Rights*. Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, third party or incidental beneficiary.

(j)      *Limits on Lenders' Liability*. Nothing in this Interim Order or in any of the DIP Loan Documents or any other documents related to this transaction shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender of any liability for any claims arising from any and all activities by the Debtors or any of their subsidiaries or affiliates in the operation of their businesses or in connection with their restructuring efforts.  In

> **Commented [A27]:** No ruling.

(a) administering the DIP Facility and the DIP Loans, (b) extending other financial accommodations to the Debtors under the DIP Loan Documents, and (c) making the decision to collect the indebtedness and obligations of the Debtors, the DIP Lender shall not (x) owe any fiduciary obligation to the Debtors or any other party with respect to their exercise of any consent or other rights afforded them under the DIP Loan Documents or this Interim Order or (y) be exercising control over any operations of the Debtors or acting in any way as a responsible person.

(k)      *Amendment*.  The Debtors and the DIP Lender may amend, modify, supplement or waive any provision of the DIP Loan Documents without further notice to or approval of the Court (but upon two (2) Business Days' prior notice, solely to the extent reasonably practicable under the circumstances, having been given to Committee Counsel (if any) and the U.S. Trustee of any amendment or modification; *provided* that such notice shall not be deemed to create any Committee or U.S. Trustee approval rights), unless such amendment, modification, supplement or waiver (a) increases the interest rate or fees (other than consent fees in connection with such amendment, modification, supplement or waiver) charged in connection with the DIP Facility; or (b) increases the commitments of the DIP Lender to make extensions of credit under the DIP Facility. Except as otherwise provided herein, no other waiver, modification, or amendment of any of the provisions hereof shall be effective unless set forth in writing, signed by, or on behalf of, all the Debtors and the DIP Lender and approved by the Court after notice to parties in interest.

**Commented [A28]:** Not ruled upon.

(l)      *Priority of Terms*.  To the extent of any conflict between or among (i) the express terms or provisions of any of the other DIP Loan Documents, the Motion, any other order of this Court, or any other agreements, on the one hand, and (ii) the terms and provisions

INTERIM ORDER AUTHORIZING DEBTORS TO OBTAIN POST-PETITION     59797.0007.17068253.1
FINANCING – Page 17

of this Interim Order, on the other hand, unless such term or provision herein is phrased in terms of "defined in" or "as set forth in" the DIP Facility, the terms and provisions of this Interim Order shall govern.

(m) *Survival of Interim Order.* Except to the extent approved by the DIP Lender and as may be set forth in the Final Order, the provisions of this Interim Order and any actions taken pursuant hereto shall survive, and shall not be modified, impaired or discharged by, any order which may be entered (i) confirming any chapter 11 plan in the Chapter 11 Cases, (ii) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, (iii) dismissing any of the Chapter 11 Cases, (iv) terminating the joint administration of the Chapter 11 Cases, (v) withdrawing of the reference of any of the Chapter 11 Cases from this Court, or (vi) providing for abstention from handling or retaining of jurisdiction of any of the Chapter 11 Cases in this Court. Except to the extent approved by the DIP Lender and as may be set forth in the Final Order (if entered), the terms and provisions of this Interim Order, including all the rights, remedies, powers, privileges, liens, priorities, the DIP Liens and DIP Superpriority Claim granted pursuant to this Interim Order or the Final Order, and any protections granted to or for the benefit of the Pre-Petition Secured Lenders (including any adequate protection, if applicable), shall continue in full force and effect notwithstanding the entry of such order, or in the event any or all of the provisions of this Interim Order are hereafter modified, amended or vacated by a subsequent order of this Court or any other court, and such DIP Liens and DIP Superpriority Claim shall maintain their priorities as provided by this Interim Order and the other DIP Loan Documents, until all of the DIP Obligations have been indefeasibly paid and fully satisfied in accordance with the DIP Loan Documents, as the case may be, and discharged.

(n) *Dismissal and Conversion.* If an order dismissing or converting any of

**Commented [A29]:** Same comments above.

**Commented [A30]:** Same

these Chapter 11 Cases under sections 305 or 1112 of the Bankruptcy Code or otherwise, or appointing a chapter 11 trustee or a responsible officer or examiner with expanded powers, is at any time entered, such order shall provide that (a) the DIP Liens and the DIP Superpriority Claim, granted hereunder and in the DIP Loan Documents, shall continue in full force and effect, remain binding on all parties-in-interest, and maintain their priorities as provided in this Interim Order and the DIP Documents; and (b) this Court shall retain jurisdiction, notwithstanding such dismissal, for purposes of enforcing the DIP Liens and the DIP Superpriority Claim. Any order dismissing any of these Chapter 11 Cases shall not be effective until the DIP Liens on the DIP Collateral are fully perfected under applicable non-bankruptcy law.

> **Commented [A31]:** same

> **Commented [A32]:** same

(o)    *Subsequent Reversal or Modification*.   This Interim Order is entered pursuant to section 364 of the Bankruptcy Code, and Bankruptcy Rules 4001(b) and (c), granting the DIP Lender all protections and benefits afforded by section 364(e) of the Bankruptcy Code.

(p)    *Enforceability*.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof.

(q)    *Waiver of any Applicable Stay*.  Any applicable stay (including, without limitation, under Bankruptcy Rule 6004(h)) is hereby waived and shall not apply to this Interim Order and this Interim Order shall be immediately effective and enforceable upon its entry.

8.    **Final Hearing.** The Final Hearing to consider entry of the Final Order and final approval of the DIP Facility is scheduled for May 8, 2024, at 9:00 a.m. (Mountain Time) at the United States Bankruptcy Court for the District of Idaho.  The Debtors shall promptly mail copies of this Interim Order on the Notice Parties and to any other party that has filed a request for notices with this Court prior thereto and to any Committee after the same has been appointed,

or Committee Counsel, if the same shall have been appointed.  Any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Court no later than May 1, 2024, which objections shall be served so that the same are received on or before such date by: (a) counsel for the Debtors;(b) counsel to the DIP Lender; (c) counsel for Rabo (d) counsel for MetLife; (e) counsel to Conterra; (f) counsel to any Committee; and (g) the U.S. Trustee.

> **Commented [A33]:** Has the proposed final order at issue here been served?

9.    **Retention of Jurisdiction.**  The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

10.    Notwithstanding anything herein to the contrary, the Conterra Stipulation is not modified or altered in any way by this Order, and is hereby approved and authorized in all respects, and specifically, the Debtors shall make the adequate protection payments to Conterra pursuant to the Conterra Stipulation and the DIP Lender shall have a junior lien on the German Dairy.

// End of Text //

Order submitted by:

Matthew T. Christensen, attorney for the Debtors

INTERIM ORDER AUTHORIZING DEBTORS TO OBTAIN POST-PETITION FINANCING – Page 20        59797.0007.17068253.1

**Exhibit A**

**From:** OBrien, John <jobrien@spencerfane.com>
**Sent:** Sunday, April 14, 2024 11:58 AM
**To:** 'Matthew T. Christensen' <MTC@johnsonmaylaw.com>; Mikkilineni, Krystal
<krystal.mikkilineni@dentons.com>; richard.bernard@fagredrinker.com; jfk@kurtzlawllc.com
**Subject:** Millenkamp DIP Order with Sandton

[WARNING: EXTERNAL SENDER]

Matt, Richard and John:

Just following up to remind you to include in the DIP approval order the
stipulation we read into the record first thing in the morning on April 9. I
am trying to avoid a technical objection at the April 17 final hearing if
the stipulation is not addressed. The two points of our stipulation are as
follows:

1. Conterra will receive monthly adequate protection payments at the
   pre-default rate of interest on both loans accruing on and after the
   April 2, 2024 petition date payable monthly no later than the 10th
   day of the following month.
2. With respect to the German Dairy on which Conterra's Rooster
   loan (in the original principal amount of $2,549,750), Conterra's

INTERIM ORDER AUTHORIZING DEBTORS TO OBTAIN POST-PETITION      59797.0007.17068253.1
FINANCING – Page 21

Rooster loan will continue to have the first priority lien and Sandton's DIP loan will have the second priority lien.

Also, if needed, please be sure the adequate protection payments to Conterra are included in the final budget.

Conterra's promissory notes were included in the exhibits filed with the court. They show the pre-default interest rates on the two notes as follows:

1. 5% per annum on the Ag Funding Note serviced by Conterra in the original principal amount of $16,500,000.
2. 10.25% per annum on the Rooster Note serviced by Conterra in the original principal amount of $2,549,750.

Also, I will draft a short stipulation embodying the stipulation we read into the record on April 9.

Thank you.

**John O'Brien**
Spencer Fane LLP
1700 Lincoln Street, Suite 2000 | Denver, CO 80203
303.839.3800
jobrien@spencerfane.com | spencerfane.com |
My Profile

Colorado Springs | Dallas | Denver | Hendersonville | Houston | Jefferson City MO | Kansas City Las Vegas | Minneapolis | Nashville | Omaha | Oklahoma City | Overland Park Phoenix | Springfield MO | St Louis | Tampa

INTERIM ORDER AUTHORIZING DEBTORS TO OBTAIN POST-PETITION    59797.0007.17068253.1
FINANCING – Page 22