UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| In re:<br><br>MILLENKAMP CATTLE, INC.,<br><br>Debtor. | Case No. 24-40158-NGH |
| Filing relates to:<br><br>☒ ALL DEBTORS<br>☐ Millenkamp Cattle, Inc.<br>☐ Idaho Jersey Girls<br>☐ East Valley Cattle<br>☐ Millenkamp Properties<br>☐ Millenkamp Properties II<br>☐ Millenkamp Family<br>☐ Goose Ranch<br>☐ Black Pine Cattle<br>☐ Millenkamp Enterprises<br>☐ Idaho Jersey Girls Jerome Dairy | Jointly Administered With Case Nos.:<br><br>24-40159-NGH (Idaho Jersey Girls)<br>24-40160-NGH (East Valley Cattle)<br>24-40161-NGH (Millenkamp Properties)<br>24-40162-NGH (Millenkamp Properties II)<br>24-40163-NGH (Millenkamp Family)<br>24-40164-NGH (Goose Ranch)<br>24-40166-NGH (Black Pine Cattle)<br>24-40167-NGH (Millenkamp Enterprises)<br>24-40165-NGH (Idaho Jersey Girls Jerome Dairy)<br><br>Chapter 11 Cases |

**INTERIM ORDER (A) AUTHORIZING THE DEBTORS TO OBTAIN POST-PETITION FINANCING; (B) GRANTING ADEQUATE PROTECTION TO PRE-PETITION SECURED LENDERS; AND (C) SETTING A FINAL HEARING**

Upon the motion, dated April 2, 2024, Doc. No. 24 (the "Motion"), of Millenkamp Cattle, Inc. ("Millenkamp Cattle") and its affiliated debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), seeking, pursuant to §§ 105, 361, 362, 363, 364, 503, 506, 507, and 552 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), Rules 2002, 4001,

#3910712

6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), and the Local Bankruptcy Rules (the "Local Rules" or "LBR"), entry of an interim order (this "Interim Order"); the Court having jurisdiction to consider the matters raised in the Motion pursuant to 28 U.S.C. § 1334; and the Court having authority to hear the matters raised in the Motion pursuant to 28 U.S.C. § 157; and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and consideration of the Motion and the requested relief being a core proceeding that the Court can determine pursuant to 28 U.S.C. § 157(b)(2); and due and proper notice of the Motion and opportunity for a hearing on the Motion having been given, and it appearing that no other or further notice need be provided; and the Court having reviewed and considered the Motion, the *Declaration of William John Millenkamp in Support of the First-Day Motions and Relief*, Doc. No. 26 (the "Millenkamp Declaration"); and the Court having held a hearing on April 4, 9, 10 and 16, 2024 to consider entry of this Interim Order (the "Interim Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and in the Millenkamp Declaration, and at the Interim Hearing establish just cause for the relief granted herein; and the Court having found the relief requested in the Motion to be fair, reasonable, and in the best interests of the Debtors, their creditors, their estates, their livestock, and all other parties in interest; and the Court having determined that the relief requested in the Motion is essential for the continued operation of the Debtors' businesses and providing for the well-being of their livestock; and all objections, if any, to the entry of this Interim Order having been withdrawn, resolved or overruled by the Court; and upon all of the proceedings had before the Court; after due deliberation and consideration, and for good and sufficient cause appearing therefor:

INTERIM ORDER AUTHORIZING DEBTORS TO OBTAIN POST-PETITION
FINANCING – Page 2

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[1]

A. **Petition Date.** On April 2, 2024 (the "Petition Date"), the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for District of Idaho (the "Court") commencing the Chapter 11 Cases. The Debtors have continued in the management and operation of their businesses and properties as debtors-in-possession pursuant to Bankruptcy Code §§ 1107(a) and 1108. No trustee, examiner, or official statutory committee of unsecured creditors (such official committee, the "Committee") has yet been appointed in the Chapter 11 Cases.

B. **Jurisdiction and Venue.** The Court has jurisdiction over these proceedings, pursuant to 28 U.S.C. § 1334. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue for the Chapter 11 Cases and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. Pursuant to Bankruptcy Rule 7008, the Debtors consent to the entry of a final order by the Court in connection with the Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

C. **Notice**. Under the circumstances of the Chapter 11 Cases, proper, timely, adequate and sufficient notice of the Motion, the Interim Hearing, and the Interim Order has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice of the Motion, the Interim Hearing, or this Interim Order

---

[1] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

shall be required.

D.  **Immediate Need for Postpetition Financing and Use of Cash Collateral.** Good cause has been shown for entry of this Interim Order. The immediate ability of the Debtors to preserve and maintain the value of their assets, maximize value for creditors and provide for the well-being of Livestock requires the availability of working capital from the DIP Facility[2] and use of Cash Collateral, to continue operations, pay the costs and expenses of administering the Chapter 11 Cases, and administer and preserve the value of their businesses and estates. In the absence of the continued availability of such funds and liquidity in accordance with the terms hereof (including access to the DIP Facility and use of Cash Collateral), the continued operation of the Debtors' businesses would not be possible, and immediate and irreparable harm to the Debtors, their estates, their creditors and their Livestock would occur.

E.  **No Credit Available on More Favorable Terms.** The Debtors have exercised reasonable business judgment to obtain credit on the terms and conditions provided in this Interim Order. The Debtors are unable to obtain credit for borrowed money without granting the DIP Liens (as defined below) and without granting the adequate protection as and to the extent set forth herein.

F.  **Adequate Protection for Pre-Petition Secured Parties.**

(i)  The Pre-Petition Secured Lenders' interests are adequately protected through an "equity cushion" on their collateral (or as stated below with respect to Conterra Holdings, LLC d/b/a Conterra Ag Capital as loan servicer and power of attorney, pursuant to the stipulation attached hereto as "Exhibit A" (the "Conterra Stipulation")), and solely to the extent of any diminution in the value of their respective interests in the Pre-Petition Collateral

---

[2] Capitalized terms used, but not otherwise defined in this Interim Order, shall have the meaning ascribed to such terms in the Motion.

INTERIM ORDER AUTHORIZING DEBTORS TO OBTAIN POST-PETITION
FINANCING – Page 4

resulting from, among other things, the subordination to the DIP Liens, the Debtors' use, sale, or lease of such Pre-Petition Collateral, and the imposition of the automatic stay from and after the Petition Date (collectively, and solely to the extent of such diminution in value, the "Diminution in Value") (and subject to the Debtors' preserved rights, with respect solely to the Pre-Petition Collateral, pursuant to § 506(c) of the Bankruptcy Code), in the form of replacement security interests in and liens on substantially all of the Debtors' assets and property (with certain exclusions) and superpriority claims (in each case, in accordance with their relative priorities and subject to the liens granted to the DIP Lender).

(ii)     Accordingly, under the circumstances of the Chapter 11 Cases, the Equity Cushions, together with the substantial benefits associated with the relief granted herein, provide adequate protection pursuant to Bankruptcy Code §§ 361, 362, 363, and 364 to the Pre-Petition Secured Lenders.

(iii)    The DIP Loan is critical to the Debtors' ability to preserve the Debtors' assets; is in the best interests of the Debtors and their estates; and necessary to avoid irreparable harm to the Debtors.  Further, access to the proceeds under the DIP Facility is necessary to avoid immediate and irreparable harm to the value of the Debtors' assets and the care of the livestock.

G.    **Extension of Financing.**  The DIP Lender committed to provide financing to the Debtors in accordance with the DIP Term Sheet and the other DIP Loan Documents, and subject to (i) the entry of this Interim Order, the entry of the Final Order, and approval of each provision of the DIP Loan Documents, and (ii) findings by this Court that financing up to $8.5 million is essential to the Debtors' estates through the Final DIP Hearing.

H.    **Business Judgment and Good Faith Pursuant to Section 364(e).**  The terms and conditions of the DIP Facility (including the fees, expenses, and other amounts paid and to

be paid thereunder), reflect the Debtors' exercise of their reasonable business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration. All obligations incurred, payments made, and transfers or grants of security set forth in this Interim Order and the other DIP Loan Documents by any Debtor are (and were) granted to or for the benefit of the DIP Lender for fair consideration and reasonably equivalent value, and are (and were) granted contemporaneously with the making of the loans and/or commitments and other financial accommodations secured thereby. The DIP Facility was negotiated in good faith and at arm's length among the Debtors, the DIP Lender, and, as applicable, their respective professionals. The use of the proceeds to be extended under the DIP Facility will be so extended in good faith and for valid business purposes and uses. The DIP Lender is entitled to the protection and benefits of Bankruptcy Code § 364(e).

I.     **Relief Essential; Best Interests.** The relief requested in the Motion (and granted or otherwise provided for in this Interim Order), is necessary, essential and appropriate for the continued operation of the Debtors' businesses and the management and preservation of the Debtors' assets and property and satisfies the requirements of Bankruptcy Rule 6003. It is in the best interest of the Debtors' estates and their creditors, and consistent with the Debtors' exercise of their fiduciary duties, that the Debtors be (a) allowed to enter into the DIP Facility with an interim draw of up to $8.5 million, with $5.2 million being paid to the Critical Vendors authorized to be paid under the Interim Order Authorizing Debtor to Honor Prepetition Obligations to Critical Vendors, Doc. No. 173, and the remaining balance to be disbursed in accordance with Exhibit A attached to the Second Interim Order Granting Debtors' Emergency Motion for Authorization to Use Cash Collateral (Doc. No. 180)) (the "Budget"), and (b) grant the liens and claims contemplated herein and under the DIP Facility to or for the benefit of the

DIP Lender.

**NOW, THEREFORE,** based upon the foregoing, and after due consideration and good cause appearing therefor, **IT IS ORDERED** that:

1. **Motion Granted In Part.** The Motion is granted in part in accordance with the terms and conditions set forth in this Interim Order. Any objections to the Motion with respect to entry of this Interim Order to the extent not withdrawn, waived or otherwise resolved, and all reservation of rights included therein, are hereby denied and overruled, except as allowed herein.

2. **DIP Facility.**

    (a) *DIP Obligations*. The Debtors are expressly and immediately authorized, empowered, and directed, on an interim basis, to enter into the DIP Facility and to continue to incur and to perform all obligations under the DIP Facility (except for, among other things, section 6.19 of the Credit Agreement found in Doc. No. 170), up to $8.5 million during the interim period, with $5.2 million being paid to the Critical Vendors, and the remaining balance to be disbursed as provided in the Budget, in accordance with and subject to this Interim Order and the DIP Loan. The fee associated with the initial draw of $8.5 million, pursuant to the DIP Loan Documents, shall be an administrative priority claim subject to entry of a Final DIP Order providing for such priority. The Debtors are authorized to pay all principal, interest, fees and expenses, indemnities, as applicable under the DIP Loan, and other amounts described herein and in the other DIP Loan Documents as such shall accrue and become due hereunder or thereunder (collectively, all loans, advances, extensions of credit, financial accommodations, fees, expenses, obligations, and all other Liabilities (including indemnities and similar obligations), as applicable, in respect of the DIP Facility (the "DIP Obligations"), only to the extent such DIP Obligations are set forth in the Budget. The DIP Facility and all DIP Obligations

shall represent, constitute, and evidence, as the case may be, valid and binding obligations of the Debtors, enforceable against the Debtors, their estates, and any successors thereto in accordance with their terms. The failure specifically to identify or refer to any particular provision of any DIP Loan Document or any other agreement in this Interim Order shall not diminish or impair the effectiveness of such provision.

(b)     *Authorization to Borrow*. In order to enable the Debtors to continue to operate their businesses, subject to the terms and conditions of this Interim Order and the DIP Facility, the Debtors are hereby authorized to enter into the DIP Facility, up to $8.5 million during the interim period, and, subject to any conditions or limitations set forth in the DIP Agreement and this Interim Order, to borrow under the DIP Facility.

(c)     *DIP Collateral*. As used herein, "DIP Collateral" shall refer to and mean, all of the existing and after-acquired real property and personal, tangible and intangible, assets of the Debtors and all "property of the estate" (as that term is utilized in the Bankruptcy Code) including, without limitation, all cash, cash equivalents, bank deposit and securities accounts, accounts, other receivables, chattel paper, contract rights, inventory, instruments, documents, securities (whether or not marketable), equipment, fixtures, real property interests, franchise rights, general intangibles, investment property, supporting obligations, tax refunds, securities, franchise rights, letter of credit rights, commercial tort claims, causes of action (other than avoidance actions) and all substitutions, accessions and proceeds of the foregoing, wherever located, including insurance or other proceeds, patents, tradenames, trademarks, copyrights, intellectual property and all substitutions, accessions and proceeds of such intellectual property, wherever located, including insurance or other proceeds.

(d)     *DIP Liens*. Effective immediately upon entry of the Interim Order, and as

set forth more fully in this Interim Order and the DIP Facility, the DIP Lender is hereby granted, as collateral security for the DIP Obligations pursuant to and in accordance with § 364(c) and (d) of the Bankruptcy Code, valid, perfected, continuing, enforceable, non-avoidable first priority liens and security interests on the DIP Collateral of each Debtor (the "DIP Liens"), and shall prime all other liens and security interests on the DIP Collateral, including any liens and security interests in existence on the Petition Date, and any other current or future liens granted on the DIP Collateral, including any adequate protection or replacement liens granted on the DIP Collateral (the "Primed Liens"). The DIP Liens shall be effective and perfected as of the entry of this Interim Order, without need for any additional filings or documentation, except to the extent requested by the DIP Lender in its sole discretion. The DIP Liens and other rights and remedies granted under this Interim Order to the DIP Lender shall continue in these Chapter 11 Cases and any successor case(s), and shall be valid and enforceable against any trustee appointed in any or all of the Debtors' Chapter 11 Cases and upon the dismissal of any or all of the Debtors' Chapter 11 Cases, or in any successor case(s), and such liens and security interests shall maintain their priority as provided in this Interim Order until all the DIP Obligations have been indefeasibly paid in full in cash and the DIP Lender's commitments have been terminated in accordance with the DIP Loan Documents and this Interim Order. Notwithstanding, the DIP Liens shall not have priority, but shall have second priority, solely with respect to (i) any purchase money security interest liens ("PMSI Liens") held by any financing party holding a valid first-priority, non-avoidable PMSI lien on any equipment or other asset of the Debtors as of the Petition Date and (ii) any valid, first-priority, non-avoidable statutory lien held by feed or other suppliers existing as of the Petition Date. Further notwithstanding, with regard to the real property identified by the parties as the "German Dairy" (in which Conterra as servicer currently

holds a first-priority perfected lien for Conterra's Rooster Loan in the original principal amount of $2,549,750), the DIP Liens shall not have a first-priority lien or super-priority lien status to the extent Conterra has a valid first-priority, non-avoidable lien against the German Dairy, but shall be a second-priority lien behind Conterra's existing first-position lien.

3. **Authorization and Approval to Use DIP Facility Proceeds.** Subject to the terms and conditions of this Interim Order, the DIP Facility, and the Budget, each Debtor is authorized to use the DIP Facility proceeds, up to $8.5 million during the interim period. The Debtors are required and directed to use such DIP Facility proceeds to pay the Critical Vendors in the amounts approved by the Court, with the remaining balance to be disbursed in accordance with the Budget. The Debtors shall provide weekly variance reports to the Pre-Petition Secured Lenders (i.e., reports reflecting the difference between the budgeted amount of revenue and expenses and the actual amounts) in the same format as the Budget (the "Variance Reports"). Said Variance Reports shall be due on or before 5:00 p.m. (MDT), beginning on Wednesday, April 24, 2024, and continuing on the same day of each following week until termination of this Order or the entry of a Final Order. The Variance Reports shall be provided for informational purposes and the failure of the Debtors to abide by any line item in the Budget shall not constitute a default or violation of this Order.

4. **Adequate Protection for Pre-Petition Secured Lenders.** The Pre-Petition Secured Lenders are provided adequate protection through an "equity cushion" on their collateral, and solely to the extent of any diminution in the value of their respective interests in the Pre-Petition Collateral resulting from, among other things, the subordination to the DIP Liens, the Debtors' use, sale, or lease of such Pre-Petition Collateral, including Cash Collateral, and the imposition of the automatic stay from and after the Petition Date (collectively, and solely

to the extent of such diminution in value, the "Diminution in Value") (and subject to the Debtors' preserved rights pursuant to § 506(c) of the Bankruptcy Code), in the form of replacement security interests in and liens on substantially all of the Debtors' assets and property (with certain exclusions) and superpriority claims (in each case, in accordance with their relative priorities and subject to the liens granted to the DIP Lender).

The Pre-Petition Secured Lenders shall further receive monthly interest-only payments at the pre-default rate of interest accruing on and after the Petition Date on the due dates set forth in the applicable loan documents.

Accordingly, under the circumstances of the Chapter 11 Cases, the equity cushion provides adequate protection pursuant to Bankruptcy Code §§ 361, 362, 363, and 364 to the Pre-Petition Secured Lenders.

Further, as set forth in the Conterra Stipulation, Conterra, with respect to the German Dairy, will continue to have the first priority lien and the DIP Loan will have the second priority lien, as set forth in Paragraph 2(d) above.

5. **DIP Lien and Adequate Protection Lien Perfection.** This Interim Order shall be sufficient and conclusive evidence of the validity, perfection and priority of the DIP Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document that may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect the DIP Liens or to entitle the DIP Liens to the priorities granted herein. Notwithstanding the foregoing:

    (a) The DIP Lender may file such financing statements, deeds of trust, mortgages, security agreements, notices of liens and other similar documents, and is hereby granted relief from the automatic stay of

    Bankruptcy Code § 362 in order to do so, and all such financing statements, deeds of trust, mortgages, security agreements, notices and other agreements or documents shall be deemed to have been filed or recorded as of the Petition Date and no defect in any such act shall affect or impair the validity, perfection and enforceability of the liens granted hereunder;

 (b) The Debtors shall execute and deliver to the DIP Lender all such financing statements, deeds of trust, mortgages, security agreements, notices and other documents as the DIP Lender may reasonably request to evidence, confirm, validate or perfect, or to insure the contemplated priority of the DIP Liens; and

 (c) In lieu of obtaining such consents or filing any mortgages, financing statements, notices of lien or similar instruments, the DIP Lender may, in its sole discretion, choose to file a true and complete copy of this Interim Order in any place at which any such instruments would or could be filed, together with a description of the DIP Collateral, and such filing shall have the same effect as if such mortgages, deeds of trust, financing statements, notices of lien or similar instruments had been filed or recorded as of the Petition Date.

6. **Other Rights and Obligations.**

 (a) *Expenses*. The Debtors will be responsible for the DIP Lender's out of pocket reasonable fees and expenses incurred by the DIP Lender to put the DIP Loan in place, to manage the DIP Loan, and to enforce the terms of the DIP Loan (absent an event of default).

INTERIM ORDER AUTHORIZING DEBTORS TO OBTAIN POST-PETITION
FINANCING – Page 12

(b) *Binding Effect.* The provisions of this Interim Order shall be binding upon and inure to the benefit of the DIP Lender and the Pre-Petition Secured Lenders, the Debtors, and their respective successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors) whether in the Chapter 11 Cases, in any successor cases, or upon dismissal of any such chapter 11 or chapter 7 cases.

(c) *Limitation on Surcharge*. Subject to the entry of the Final Order, no costs or expenses of administration which have been or may be incurred in the Chapter 11 Cases or any successor case(s) at any time shall be surcharged against, and no person may seek to surcharge any costs or expenses of administration against the DIP Lender or the DIP Collateral, pursuant to §§ 105 or 506(c) of the Bankruptcy Code or otherwise, without the prior written consent of the DIP Lender. No action, inaction or acquiescence by the DIP Lender shall be deemed to be or shall be considered evidence of any alleged consent to a surcharge against the DIP Lender or the DIP Collateral.

(d) Section 5.22(e) of the Credit Agreement shall not be approved on an interim basis. As such, the DIP Motion and Credit Agreement shall not, on an interim basis, grant superpriority administrative expense claims to the DIP Lender having priority over all administrative expense claims and unsecured claims against such Borrowers.

(e) *No Third Party Rights*. Except as explicitly provided for herein, this Interim

Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, third party or incidental beneficiary.

(f) *Priority of Terms*. To the extent of any conflict between or among (i) the express terms or provisions of any of the other DIP Loan Documents, the Motion, any other order of this Court, or any other agreements, on the one hand, and (ii) the terms and provisions of this Interim Order, on the other hand, unless such term or provision herein is phrased in terms of "defined in" or "as set forth in" the DIP Facility, the terms and provisions of this Interim Order shall govern.

(g) *Survival of Interim Order*. Except to the extent approved by the DIP Lender and as may be set forth in the Final Order, the provisions of this Interim Order and any actions taken pursuant hereto shall survive, and shall not be modified, impaired or discharged by, any order which may be entered (i) confirming any chapter 11 plan in the Chapter 11 Cases, (ii) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, (iii) dismissing any of the Chapter 11 Cases, (iv) terminating the joint administration of the Chapter 11 Cases, (v) withdrawing of the reference of any of the Chapter 11 Cases from this Court, or (vi) providing for abstention from handling or retaining of jurisdiction of any of the Chapter 11 Cases in this Court. Except to the extent approved by the DIP Lender and as may be set forth in the Final Order (if entered), the terms and provisions of this Interim Order, including all the rights, remedies, powers, privileges, liens, priorities, and

     the DIP Liens granted pursuant to this Interim Order or the Final Order, and any protections granted to or for the benefit of the Pre-Petition Secured Lenders (including any adequate protection, if applicable), shall continue in full force and effect notwithstanding the entry of such order, or in the event any or all of the provisions of this Interim Order are hereafter modified, amended or vacated by a subsequent order of this Court or any other court, and such DIP Liens shall maintain their priorities as provided by this Interim Order and the other DIP Loan Documents, until all of the DIP Obligations have been indefeasibly paid and fully satisfied in accordance with the DIP Loan Documents, as the case may be, and discharged.

(h)  *Dismissal and Conversion.* If an order dismissing or converting any of these Chapter 11 Cases under §§ 305 or 1112 of the Bankruptcy Code or otherwise, or appointing a chapter 11 trustee or a responsible officer or examiner with expanded powers, is at any time entered, such order shall provide that (a) the DIP Liens granted hereunder and in the DIP Loan Documents, shall continue in full force and effect, remain binding on all parties-in-interest, and maintain their priorities as provided in this Interim Order and the DIP Documents; and (b) this Court shall retain jurisdiction, notwithstanding such dismissal, for purposes of enforcing the DIP Liens.

(i)  *Subsequent Reversal or Modification.* This Interim Order is entered pursuant to § 364 of the Bankruptcy Code, and Bankruptcy Rules 4001(b) and (c), granting the DIP Lender all protections and benefits afforded by

§ 364(e) of the Bankruptcy Code.

(j) *Enforceability.* This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof.

(k) *Waiver of any Applicable Stay.* Any applicable stay (including, without limitation, under Bankruptcy Rule 6004(h)) is hereby waived and shall not apply to this Interim Order and this Interim Order shall be immediately effective and enforceable upon its entry.

7. **Final Hearing.** The Final Hearing to consider entry of the Final Order and final approval of the DIP Facility is scheduled for May 8, 2024, at 9:00 a.m. (Mountain Time) at the United States Bankruptcy Court for the District of Idaho. The Debtors shall promptly mail copies of this Interim Order on the Notice Parties and to any other party that has filed a request for notices with this Court prior thereto and to any Committee after the same has been appointed, or Committee Counsel, if the same shall have been appointed. Any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Court no later than May 1, 2024, provided, however, the Debtors provide notice of such proposed Final Order to the Court and parties in interest no later than April 24, 2014, which objections shall be served so that the same are received on or before such date by: (a) counsel for the Debtors; (b) counsel for the DIP Lender; (c) counsel for Rabo (d) counsel for MetLife; (e) counsel for Conterra; (f) counsel for any Committee; and (g) the U.S. Trustee.

8. **Retention of Jurisdiction.** The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

9. Notwithstanding anything herein to the contrary, the Conterra Stipulation is not modified or altered in any way by this Order, and is hereby approved and authorized in all respects, and specifically, the Debtors shall make the adequate protection payments to Conterra pursuant to the Conterra Stipulation and the DIP Lender shall have a junior lien on the German Dairy.

DATED: April 19, 2024



_____
NOAH G. HILLEN
Chief U.S. Bankruptcy Judge

Order submitted by:
Krystal R. Mikkilineni, attorney for the Debtors
(Order extensively edited to make consistent with Court's ruling, *see* attached redline)

<u>Exhibit A</u>

**From:** OBrien, John <jobrien@spencerfane.com>
**Sent:** Sunday, April 14, 2024 11:58 AM
**To:** 'Matthew T. Christensen' <MTC@johnsonmaylaw.com>; Mikkilineni, Krystal <krystal.mikkilineni@dentons.com>; richard.bernard@fagredrinker.com; jfk@kurtzlawllc.com
**Subject:** Millenkamp DIP Order with Sandton

[WARNING: EXTERNAL SENDER]

Matt, Richard and John:

Just following up to remind you to include in the DIP approval order the stipulation we read into the record first thing in the morning on April 9. I am trying to avoid a technical objection at the April 17 final hearing if the stipulation is not addressed. The two points of our stipulation are as follows:

1. Conterra will receive monthly adequate protection payments at the pre-default rate of interest on both loans accruing on and after the April 2, 2024 petition date payable monthly no later than the 10th day of the following month.
2. With respect to the German Dairy on which Conterra's Rooster loan (in the original principal amount of $2,549,750), Conterra's Rooster loan will continue to have the first priority lien and Sandton's DIP loan will have the second priority lien.

Also, if needed, please be sure the adequate protection payments to Conterra are included in the final budget.

Conterra's promissory notes were included in the exhibits filed with the court. They show the pre-default interest rates on the two notes as follows:

1. 5% per annum on the Ag Funding Note serviced by Conterra in the original principal amount of $16,500,000.

INTERIM ORDER AUTHORIZING DEBTORS TO OBTAIN POST-PETITION FINANCING – Page 18

2. 10.25% per annum on the Rooster Note serviced by Conterra in the original principal amount of $2,549,750.

Also, I will draft a short stipulation embodying the stipulation we read into the record on April 9.

Thank you.

**John O'Brien**
Spencer Fane LLP
1700 Lincoln Street, Suite 2000 | Denver, CO 80203
303.839.3800
jobrien@spencerfane.com | spencerfane.com |
My Profile

Colorado Springs | Dallas | Denver | Hendersonville | Houston | Jefferson City MO | Kansas City
Las Vegas | Minneapolis | Nashville | Omaha | Oklahoma City | Overland Park
Phoenix | Springfield MO | St Louis | Tampa