Matthew T. Christensen, ISB: 7213
J. Justin May, ISB: 5818
JOHNSON MAY
199 N. Capitol Blvd, Ste 200
Boise, Idaho 83702
Phone: (208) 384-8588
Fax: (208) 629-2157
Email: mtc@johnsonmaylaw.com
        jjm@johnsonmaylaw.com


Krystal Mikkilineni, *PHV*
Robert E. Richards, *PHV*
Tirzah Roussell, *PHV*
DENTONS
215 10th Street, Ste 1300
Des Moines, IA 50309
Phone: (515) 288-2500
Fax: (515) 243-0654
Email: krystal.mikkilineni@dentons.com
        robert.richards@dentons.com
        tirzah.roussell@dentons.com

Attorneys for the Debtor

### UNITED STATES BANKRUPTCY COURT

### DISTRICT OF IDAHO

| | |
|---|---|
| In re: | Case No. 24-40158-NGH |
| MILLENKAMP CATTLE, INC., | |
| Debtor. | |
| Filing relates to: | Jointly Administered With Case Nos.: |
| ☒ ALL DEBTORS | 24-40159-NGH (Idaho Jersey Girls) |
| ☐ Millenkamp Cattle, Inc. | 24-40160-NGH (East Valley Cattle) |
| ☐ Idaho Jersey Girls | 24-40161-NGH (Millenkamp Properties) 24-40162-NGH (Millenkamp Properties II) |
| ☐ East Valley Cattle | 24-40163-NGH (Millenkamp Family) 24-40164-NGH (Goose Ranch) |
| ☐ Millenkamp Properties | 24-40166-NGH (Black Pine Cattle) 24-40167-NGH (Millenkamp Enterprises) |
| ☐ Millenkamp Properties II | 24-40165-NGH (Idaho Jersey Girls Jerome |

#3918337

|  | Dairy) |
|---|---|
| ☐ Millenkamp Family | |
| ☐ Goose Ranch | Chapter 11 Cases |
| ☐ Black Pine Cattle | |
| ☐ Millenkamp Enterprises | |
| ☐ Idaho Jersey Girls Jerome Dairy | |

### SUPPLEMENT TO DEBTORS' MOTION FOR FINAL ORDER (A) AUTHORIZING THE DEBTORS TO OBTAIN POST-PETITION FINANCING; AND (B) GRANTING ADEQUATE PROTECTION TO PRE-PETITION SECURED CREDITORS

Millenkamp Cattle, Inc. ("Millenkamp Cattle") and its affiliated debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 case (the "Chapter 11 Case"), by and through its undersigned counsel, hereby respectfully submit this *Supplement to Debtors' Motion for Final Order (A) Authorizing the Debtors to Obtain Post-Petition Financing; and (B) Granting Adequate Protection to Pre-Petition Secured Creditors* (the "Supplement") and in support of this Supplement, the Debtors represent as follows:

1. On April 2, 2024, the Debtors filed a *Motion for Interim and Final Orders (A) Authorizing the Debtors to Obtain Post-Petition Financing; (B) Granting Adequate Protection to Pre-Petition Secured Creditors; and (C) Setting a Final Hearing* (Docket No. 24) (the "DIP Motion").

2. On April 19, 2024, the Court entered the Interim DIP Order (Docket No. 206). Pursuant to the Interim DIP Order, the Debtors are to provide notice of the proposed Final DIP Order to the Court and parties in interest no later than April 24th.

3. As such, attached hereto as "Exhibit A" is a proposed Final DIP Order.

DATED this 24th day of April 2024

Respectfully submitted,

**DENTONS DAVIS BROWN**

/s/ Krystal R. Mikkilineni

Krystal. R. Mikkilineni
Attorney for the Debtors

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24th day of April 2024, I caused to be served a true and correct copy of the foregoing NOTICE electronically through the CM/ECF system, which caused the following parties to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Matthew T. Christensen mtc@johnsonmaylaw.com
Tirzah R. Roussell tirzah.roussell@dentons.com
US Trustee ustp.region18.bs.ecf@usdoj.gov
Heidi Buck Morrison heidi@racineolson.com
David A. Coleman david@colemanjacobsonlaw.com
Gery W. Edson gedson@gedson.com
J.B. Evans evans.jb@dorsey.com
Zachary Fairlie zfairlie@spencerfane.com
Kimbell D. Gourley kgourley@idalaw.com
Daniel C. Green dan@racineolson.com
John O'Brien jobrien@spencerfane.com
Scott C. Powers spowers@spencerfane.com
Janine P. Reynard janine@averylaw.net
Sheila R. Schwager sschwager@hawleytroxell.com
Brent R. Wilson bwilson@hawleytroxell.com
Zachary Fairlie zfairlie@spencerfance.com
John O'Brien jobrien@spencerfane.com
Gery W. Edson gedson@gedson.com
Aaron Bell abell@evanskeane.com
Brian Faria brian@sawtoothlaw.com
Robert A. Faucher rfaucher@hollandhart.com
Matthew W. Grimshaw matt@grimshawlawgroup.com
Karen Lloyd klloyd@grsm.com

SUPPLEMENT TO DEBTORS' MOTION FOR FINAL ORDER (A) AUTHORIZING THE DEBTORS TO OBTAIN POST-PETITION FINANCING; AND (B) GRANTING ADEQUATE PROTECTION TO PRE-PETITION SECURED CREDITORS - 3

James Justin May jjm@johnsonmaylaw.com
Rhett Michael Miller rmiller@magicvalley.law
Robert E. Richards robert.richards@dentons.com
Holly Roark holly@roarklawboise.com
Evan Thomas Roth evan@sawtoothlaw.com
Meredith Leigh Thielbahr mthielbahr@grsm.com
John F. Kurtz, Jr. jfk@kurtzlaw.com

Any others as listed on the Court's ECF Notice.


                              /s/ *Krystal R. Mikkilineni*
                              Krystal R. Mikkilineni

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| In re: | Case No. 24-40158-NGH |
| MILLENKAMP CATTLE, INC., | |
| Debtor. | |
| Filing relates to: | Jointly Administered With Case Nos.: |
| ☒  ALL DEBTORS | |
| ☐  Millenkamp Cattle, Inc. | 24-40159-NGH (Idaho Jersey Girls) |
| ☐  Idaho Jersey Girls | 24-40160-NGH (East Valley Cattle) 24-40161-NGH (Millenkamp Properties) |
| ☐  East Valley Cattle | 24-40162-NGH (Millenkamp Properties II) 24-40163-NGH (Millenkamp Family) |
| ☐  Millenkamp Properties | 24-40164-NGH (Goose Ranch) |
| ☐  Millenkamp Properties II | 24-40166-NGH (Black Pine Cattle) 24-40167-NGH (Millenkamp Enterprises) |
| ☐  Millenkamp Family | 24-40165-NGH (Idaho Jersey Girls Jerome Dairy) |
| ☐  Goose Ranch | |
| ☐  Black Pine Cattle | |
| ☐  Millenkamp Enterprises | Chapter 11 Cases |
| ☐  Idaho Jersey Girls Jerome Dairy | |

**FINAL ORDER AUTHORIZING THE DEBTORS TO (A) OBTAIN POST-PETITION FINANCING; AND (B) GRANTING ADEQUATE PROTECTION TO PRE-PETITION SECURED LENDERS**

Upon the motion, dated April 2, 2024 (the "Motion"), of Millenkamp Cattle, Inc.

("Millenkamp Cattle") and its affiliated debtors and debtors in possession (collectively, the

"Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), seeking, pursuant to

sections 105, 361, 362, 363, 364, 503, 506, 507, and 552 of title 11 of the United States Code, 11

U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), Rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), and the Local Bankruptcy Rules (the "Local Rules" or "LBR"), entry of a final order (this "Final Order"); the Court having jurisdiction to consider the matters raised in the Motion pursuant to 28 U.S.C. § 1334; and the Court having authority to hear the matters raised in the Motion pursuant to 28 U.S.C. § 157; and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and consideration of the Motion and the requested relief being a core proceeding that the Court can determine pursuant to 28 U.S.C. § 157(b)(2); and due and proper notice of the Motion and opportunity for a hearing on the Motion having been given, and it appearing that no other or further notice need be provided; and the Court having reviewed and considered the Motion, the *Declaration of William John Millenkamp in Support of the First-Day Motions and Relief* (the "Millenkamp Declaration"); and the Court having held an interim hearing on April 4, 9, 10 and 16, 2024 (the "Interim Hearing"), and a hearing on May 8 and 9, 2024 to consider entry of this Final Order (the "Final Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and in the Millenkamp Declaration, at the Interim Hearing, and the Final Hearing, establish just cause for the relief granted herein; and the Court having found the relief requested in the Motion to be fair, reasonable, and in the best interests of the Debtors, their creditors, and their estates, and all other parties in interest; and the Court having determined that the relief requested in the Motion is essential for the continued operation of the Debtors' businesses and providing for the well-being of their livestock; and all objections, if any, to the entry of this Final Order having been withdrawn, resolved or overruled by the Court; and upon all of the proceedings had before the Court; after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[1]**

A.    **Petition Date.**  On April 2, 2024 (the "Petition Date"), the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for District of Idaho (the "Court") commencing the Chapter 11 Cases.  The Debtors have continued in the management and operation of their businesses and properties as debtors-in-possession pursuant to Bankruptcy Code §§1107(a) and 1108.  No trustee, examiner, or official statutory committee of unsecured creditors (such official committee, the "Committee") has yet been appointed in the Chapter 11 Cases.

B.    **Jurisdiction and Venue.**  The Court has jurisdiction over these proceedings, pursuant to 28 U.S.C. § 1334.  Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue for the Chapter 11 Cases and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  Pursuant to Bankruptcy Rule 7008, the Debtors consent to the entry of a final order by the Court in connection with the Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

C.    **Notice**.   The Court entered the Interim Order on April 19, 2024 (Docket No. 206). Under the circumstances of the Chapter 11 Cases, proper, timely, adequate and sufficient notice of the Motion, the Final Hearing, and the Final Order has been provided in accordance with the

---

[1]   The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice of the Motion, the Final Hearing, or this Final Order shall be required.

D.      **Findings Regarding Corporate Authority.** As set forth in in the resolutions filed related to the bankruptcy petitions and the Millenkamp Declaration, each Debtor has the requisite corporate power and authority to execute and deliver the DIP Facility to which it is a party, to grant the DIP Liens and DIP Superpriority Claim, and to perform its obligations thereunder.

E.      **Immediate Need for Postpetition Financing.** Good cause has been shown for entry of this Final Order. The immediate ability of the Debtors to preserve and maintain the value of their assets, maximize value for creditors and provide for the well-being of livestock requires the availability of working capital from the DIP Facility[2], to continue operations, pay the costs and expenses of administering the Chapter 11 Cases, and administer and preserve the value of their businesses and estates. In the absence of the continued availability of such funds and liquidity in accordance with the terms hereof (including access to the DIP Facility), the continued operation of the Debtors' businesses would not be possible, and immediate and irreparable harm to the Debtors, their estates, and their creditors would occur. Further, the possibility for a successful restructuring and other value-maximizing transaction(s) would be jeopardized in the absence of the availability of funds in accordance with the terms of this Final Order.

F.      **No Credit Available on More Favorable Terms.** The Debtors have exercised reasonable business judgment to obtain credit on the terms and conditions provided in this Final Order. The Debtors are unable to obtain credit for borrowed money without granting the DIP

---

[2] Capitalized terms used, but not otherwise defined in this Final Order, shall have the meaning ascribed to such terms in the Motion, Interim Order, and/or DIP Facility.

Liens (as defined below) and the DIP Superpriority Claim (as defined below) and without

granting the adequate protection as and to the extent set forth herein.

      G.    **Adequate Protection for Pre-Petition Secured Lenders.**

      (i)    The Pre-Petition Secured Lenders' interests are  adequately protected

through an "equity cushion" on their collateral (or as stated below with respect to with respect to

Conterra Holdings, LLC d/b/a Conterra Ag Capital as loan servicer and power of attorney, pursuant to

the stipulation attached to the Interim Order as "Exhibit A" (the "Conterra Stipulation")). and solely to

the extent of any diminution in the value of their respective interests in the Pre-Petition

Collateral resulting from, among other things, the subordination to the Carve Out the DIP Liens,

and the DIP Superpriority Claim, the Debtors' use, sale, or lease of such Pre- Petition Collateral,

including Cash Collateral, and the imposition of the automatic stay from and after the Petition

Date (collectively, and solely to the extent of such diminution in value, the "Diminution in

Value") (and subject to the Carve Out and the Debtors' preserved rights, with respect solely to

the Pre-Petition Collateral, pursuant to section 506(c) of the Bankruptcy Code), in the form of

replacement security interests in and liens on substantially all of the Debtors' assets and property

(with certain exclusions) and superpriority claims (in each case, in accordance with their relative

priorities, and junior and subject to the liens and superpriority claims granted to the DIP Lender).

      (ii)    Accordingly, under the circumstances of the Chapter 11 Cases, the Equity

Cushions, together with the substantial benefits associated with the relief granted herein, provide

adequate protection to the Pre- Petition Secured Lenders pursuant to Bankruptcy Code §§361,

362, 363, and 364.

      (iii)    The DIP Loan is critical to the Debtors' ability to preserve the Debtors'

assets; is in the best interests of the Debtors and their estates; and necessary to avoid irreparable

harm to the Debtors, their creditors and their assets, businesses, goodwill, reputation, and employees.  Further, access to the proceeds under the DIP Facility is necessary to avoid immediate and irreparable harm to the value of the Debtors' assets and the care of the livestock.

H.    **Extension of Financing.**  The DIP Lender committed to provide financing to the Debtors in accordance with the DIP Facility, and subject to (i) the entry of this Final Order, and approval of each provision of the DIP Facility, and (ii) findings by this Court that financing pursuant to the DIP Facility of an aggregate principal amount not to exceed $45 million is essential to the Debtors' estates.

I.    **Business Judgment and Good Faith Pursuant to §364(e).**  The terms and conditions of the DIP Facility (including the fees, expenses, and other amounts paid and to be paid thereunder), are fair, reasonable, and the best available under the circumstances, reflect the Debtors' exercise of their reasonable business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration.  All obligations incurred, payments made, and transfers or grants of security set forth in this Final Order and the other DIP Loan documents by any Debtor are (and were) granted to or for the benefit of the DIP Lender for fair consideration and reasonably equivalent value, and are (and were) granted contemporaneously with the making of the loans and/or commitments and other financial accommodations secured thereby.  The DIP Facility was negotiated in good faith and at arm's length among the Debtors, the DIP Lender, and, as applicable, their respective professionals. The use of the proceeds to be extended under the DIP Facility will be so extended in good faith and for valid business purposes and uses.  The DIP Lender is entitled to the protection and benefits of Bankruptcy Code §364(e).

J.    **Relief Essential; Best Interests; Good Cause.**  The relief requested in the

Motion (and granted or otherwise provided for in this Final Order), is necessary, essential and appropriate for the continued operation of the Debtors' businesses and the management and preservation of the Debtors' assets and property and satisfies the requirements of Bankruptcy Rule 6003. It is in the best interest of the Debtors' estates and their creditors, and consistent with the Debtors' exercise of their fiduciary duties, that the Debtors be (a) allowed to enter into the DIP Facility in an aggregate principal amount of up to $45 million and (b) grant the liens and claims contemplated herein and under the DIP Facility to or for the benefit of the DIP Lender.

**NOW, THEREFORE,** based upon the foregoing, and after due consideration and good cause appearing therefor, **IT IS ORDERED** that:

1.      **Motion Granted.** The Motion is granted on a final basis in accordance with the terms and conditions set forth in this Final Order and in the DIP Loan. Any objections to the Motion with respect to entry of this Final Order to the extent not withdrawn, waived or otherwise resolved, and all reservation of rights included therein, are hereby denied and overruled, except as allowed herein.

2.      **DIP Facility.**

(a)      *DIP Obligations*. The Debtors are expressly and immediately authorized, empowered, and directed, to enter into the DIP Facility and to continue to incur and to perform all obligations under the DIP Facility, in accordance with and subject to the terms of this Final Order and the DIP Loan. The Debtors are hereby authorized and directed to pay all principal, interest, fees and expenses, indemnities, as applicable under the DIP Loan, and other amounts described herein and in the other DIP Credit Documents as such shall accrue and become due hereunder or thereunder (collectively, all loans, advances, extensions of credit, financial

accommodations, fees, expenses, obligations, and all other Liabilities (including indemnities and similar obligations), as applicable, in respect of the DIP Facility (the "DIP Obligations")). The DIP Facility and all DIP Obligations shall represent, constitute and evidence, as the case may be, valid and binding obligations of the Debtors, enforceable against the Debtors, their estates, and any successors thereto in accordance with their terms.  The failure specifically to identify or refer to any particular provision of any DIP Credit Document or any other agreement in this Final Order shall not diminish or impair the effectiveness of such provision.

(b)      *Authorization to Borrow*.  In order to enable the Debtors to continue to operate their businesses, subject to the terms and conditions of this Final Order and the DIP Facility, the Debtors are hereby authorized to enter into the DIP Facility, and are hereby authorized to borrow the DIP Loan up to an aggregate principal amount of $45 million under the DIP Loan.

(c)      *DIP Collateral*.  As used herein, "DIP Collateral" shall refer to and mean, all of the existing and after-acquired real property and personal, tangible and intangible, assets of the Debtors and all "property of the estate" (as that term is utilized in the Bankruptcy Code) including, without limitation, all cash, cash equivalents, bank deposit and securities accounts, accounts, other receivables, chattel paper, contract rights, inventory, instruments, documents, securities (whether or not marketable), equipment, fixtures, real property interests, franchise rights, general intangibles, investment property, supporting obligations, tax refunds, securities, franchise rights, letter of credit rights, commercial tort claims, causes of action (other than avoidance actions) and all substitutions, accessions and proceeds of the foregoing, wherever located, including insurance or other proceeds, patents, tradenames, trademarks, copyrights, intellectual property and all substitutions, accessions and proceeds of such intellectual property,

wherever located, including insurance or other proceeds.

   (d) *DIP Liens*. Effective immediately upon entry of this Final Order, and subject to the Carve-Out, and as set forth more fully in this Final Order, and the DIP Facility, the DIP Lender is hereby granted, pursuant to and in accordance with §§ 364(c) and (d) of the Bankruptcy Code, valid, perfected, continuing, enforceable, non-avoidable first priority liens and security interests on the DIP Collateral of each Debtor (the "DIP Liens"), and shall prime all other liens and security interests on the DIP Collateral, including any liens and security interests in existence on the Petition Date, and any other current or future liens granted on the DIP Collateral, including any adequate protection or replacement liens granted on the DIP Collateral (the "Primed Liens"). The DIP Liens shall be effective and perfected as of the entry of this Final Order, without need for any additional filings or documentation, except to the extent requested by the DIP Lender in its sole discretion.  The DIP Liens, DIP Superpriority Claim (defined below) and other rights and remedies granted under this Final Order to the DIP Lender shall continue in these Chapter 11 Cases and any successor case(s), and shall be valid and enforceable against any trustee appointed in any or all of the Debtors' Chapter 11 Cases and upon the dismissal of any or all of the Debtors' Chapter 11 Cases, or in any successor case(s), and such liens and security interests shall maintain their priority as provided in this Final Order until all the DIP Obligations have been indefeasibly paid in full in cash and the DIP Lender's commitments have been terminated in accordance with the DIP Credit Documents and this Final Order. Notwithstanding, the DIP Liens shall not have priority, but shall have second priority, solely with respect to (i) any purchase money security interest liens ("PMSI Liens") held by any financing party holding a valid first-priority, non-avoidable PMSI lien on any equipment or other asset of the Debtors as of the Petition Date and (ii) any valid, first-priority, non-avoidable

statutory lien held by feed or other suppliers existing as of the Petition Date. Further notwithstanding, with regard to the real property identified by the parties as the "German Dairy" (in which Conterra as servicer currently holds a first-priority perfected lien for Conterra's Rooster Loan in the original principal amount of $2,549,750), the DIP Liens shall not have a first-priority lien or super-priority lien status to the extent Conterra has a valid first-priority, non-avoidable lien against the German Dairy, but shall be a second-priority lien behind Conterra's existing first-position lien.

(e) *DIP Superpriority Claim.* Effective immediately upon entry of this Final Order, pursuant to Bankruptcy Code section 364(c)(1), and subject in each case to the Carve-Out, the DIP Loan shall be entitled to superpriority administrative expense claim status in the Chapter 11 Cases of each Borrower (the "DIP Superpriority Claims"), which DIP Superpriority Claims in respect of the DIP Facility shall have priority over any and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kinds specified in or arising or ordered under §§105(a), 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, 1113, and 1114 and any other provision of the Bankruptcy Code or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which shall be payable from and have recourse to all assets and properties of the Debtors, and which shall be against each of the Borrowers who are Debtors (jointly and severally), with priority over any and all other administrative expenses, adequate protection claims, diminution in value claims, and all other claims asserted against the Debtors now existing or hereafter arising of any kind whatsoever (whether secured or unsecured), subject only to the Carve-Out.

3.      **Authorization and Approval to Use DIP Facility Proceeds.**  Subject to the terms and conditions of this Final Order and the DIP Facility each Debtor is authorized to use the advances under the DIP Credit Agreement during the period commencing immediately after entry of this Final Order.

4.      **Adequate Protection for Pre-Petition Secured Lenders.** The Pre-Petition Secured Lenders are provided adequate protection through an "equity cushion" on their collateral, and solely to the extent of any diminution in the value of their respective interests in the Pre- Petition Collateral resulting from, among other things, the subordination to the Carve Out and to the DIP Liens the Debtors' use, sale, or lease of such Pre-Petition Collateral, including Cash Collateral, and the imposition of the automatic stay from and after the Petition Date (collectively, and solely to the extent of such diminution in value, the "Diminution in Value") (and subject to the Carve Out and the Debtors' preserved rights pursuant to section 506(c) of the Bankruptcy Code), in the form of replacement security interests in and liens on substantially all of the Debtors' assets and property (with certain exclusions) and superpriority claims (in each case, in accordance with their relative priorities, and junior and subject to the liens and superpriority claims granted to the DIP Lender).

The Pre-Petition Secured Lenders shall further receive monthly interest-only payments at the pre-default rate of interest accruing on and after the Petition Date (the "Monthly Interest Payments").

Accordingly, under the circumstances of the Chapter 11 Cases, the equity cushion, together with the Monthly Interest Payments and the substantial benefits associated with the relief granted herein, provide adequate protection pursuant to Bankruptcy Code §§361, 362, 363, and 364 to the Pre- Petition Secured Lenders.

Further, as set forth in the Conterra Stipulation, Conterra, with respect to the German Dairy, will continue to have the first priority lien and the DIP Loan will have the second priority lien, as set forth in Paragraph 2(d) above.

5.      **DIP Lien and Adequate Protection Lien Perfection.**  This Final Order shall be sufficient and conclusive evidence of the validity, perfection and priority of the DIP Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document that may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect the DIP Liens or to entitle the DIP Liens to the priorities granted herein. Notwithstanding the foregoing:

(a)      The DIP Lender may file such financing statements, deeds of trust, mortgages, security agreements, notices of liens and other similar documents, and is hereby granted relief from the automatic stay of Bankruptcy Code §362 in order to do so, and all such financing statements, deeds of trust, mortgages, security agreements, notices and other agreements or documents shall be deemed to have been filed or recorded as of the Petition Date and no defect in any such act shall affect or impair the validity, perfection and enforceability of the liens granted hereunder;

(b)      The Debtors shall execute and deliver to the DIP Lender all such financing statements, deeds of trust, mortgages, security agreements, notices and other documents as the DIP Lender may reasonably request to evidence, confirm, validate or perfect, or to insure the contemplated priority of the DIP Liens; and

(c)      In lieu of obtaining such consents or filing any mortgages, financing statements, notices of lien or similar instruments, the DIP Lender may, in its sole discretion, choose to file a true and complete copy of this Final Order in any place at which any such

instruments would or could be filed, together with a description of the DIP Collateral, and such filing shall have the same effect as if such mortgages, deeds of trust, financing statements, notices of lien or similar instruments had been filed or recorded as of the Petition Date.

6.      **Carve-Out.** The DIP Liens, DIP Superpriority Claim, the Prepetition Liens, the Prepetition Replacement Liens, and the Prepetition Superiority Claims are subordinate only to the Carve Out. The Carve Out shall mean a carve-out in an amount equal to the sum of (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee under §1930(a) of title 28 of the United States Code plus interest at the statutory rate; (ii) all reasonable and documented fees and expenses incurred by a trustee under Bankruptcy Code §726(b), in an aggregate amount not to exceed $250,000; (iii) to the extent allowed by the Court at any time, whether by interim order, procedural order or otherwise (unless subsequently disallowed), all unpaid fees and expenses (the "<u>Professional Fees</u>") incurred by persons or firms retained by the Debtors pursuant to Bankruptcy Code §§327, 328, or 363 or by the Committee, pursuant to Bankruptcy Code §§328 and 1103 (collectively, the "<u>Professional Persons</u>").

7.      **Other Rights and Obligations.**

(a)      *Expenses*.  The Debtors will be responsible for the DIP Lender's out of pocket reasonable fees and expenses incurred by the DIP Lender to put the DIP Loan in place, to manage the DIP Loan, and to enforce the terms of the DIP Loan (absent an event of default).

(b)      *Binding Effect*.  The provisions of this Final Order shall be binding upon and inure to the benefit of the DIP Lender and the Pre-Petition Secured Lenders, the Debtors, and their respective successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors) whether in the Chapter 11 Cases, in any successor cases, or upon dismissal of

any such chapter 11 or chapter 7 cases.

(c)      *Limitation on Surcharge*. Without limiting the terms of the Carve Out, no costs or expenses of administration which have been or may be incurred in the Chapter 11 Cases or any successor case(s) at any time shall be surcharged against, and no person may seek to surcharge any costs or expenses of administration against the DIP Lender or the DIP Collateral, pursuant to sections 105 or 506(c) of the Bankruptcy Code or otherwise, without the prior written consent of the DIP Lender. No action, inaction or acquiescence by the DIP Lender shall be deemed to be or shall be considered evidence of any alleged consent to a surcharge against the DIP Lender or the DIP Collateral.

(d)      *Application of Collateral Proceeds*. To the extent required by this Final Order and the DIP Credit Documents, unless otherwise ordered by the Court, after (a) an Event of Default and (b) the receipt by the Debtors of written notice that the DIP Lender will no longer fund the Debtors through the proceeds of the DIP Loans, the Debtors are hereby authorized to remit to the DIP Lender, subject to the payment of the Carve Out, one hundred percent (100%) of all collections on, and proceeds of, the DIP Collateral subject to the lien priorities set forth in Paragraph 2(d) herein until the DIP Obligations are paid in full, and the automatic stay provisions of §362 of the Bankruptcy Code are hereby modified to permit the DIP Lender to retain and apply all collections, remittances, and proceeds of the DIP Collateral in accordance with the DIP Credit Documents. In furtherance of the foregoing, (a) all cash, securities, investment property and other items of any Debtor deposited with any bank or other financial institution shall be subject to a perfected, first priority security interest in favor of the DIP Lender, (b) upon the occurrence and during the continuance of a Termination Event (as defined in the DIP Credit Documents), each bank or other financial institution with an account of any

Debtor is hereby authorized to (i) comply at all times with any instructions originated by the

DIP Lender to such bank or financial institution directing the disposition of cash, securities,

investment property and other items from time to time credited to such account, without further

consent of any Debtor, including, without limitation, any instruction to send to the DIP Lender

by wire transfer (to such account as the DIP Lender shall specify, or in such other manner as the

DIP Lender shall direct) all such cash, securities, investment property and other items held by

it, and (ii) waive any right of set off, banker's lien or other similar lien, security interest or

encumbrance that is or may be invoked against the DIP Lender and (c) any deposit account or

securities account control agreement executed and delivered by any bank or other financial

institution or any Debtor prior to the Petition Date shall establish co-control in favor of the DIP

Lender of any and all accounts subject thereto and any and all cash, securities, investment

property and other items of any Debtor deposited therein to secure the DIP Obligations

(provided that primary control rights shall vest in the DIP Lender), and all rights thereunder in

favor of any pre-petition party shall inure also to the benefit of, and shall be exercisable

exclusively by, the DIP Lender, until all of the DIP Obligations have been paid in full in cash.

   (e) *No Marshaling*. In no event shall the DIP Lender be subject to the

equitable doctrine of marshaling or any similar doctrine.

   (f) *Collateral Rights.* Subject to this Order and any further order of the

Bankruptcy Court entered without the objection of the DIP Lender authorizing the Debtors to

make payments to prepetition creditors, if any party who holds a lien or security interest in DIP

Collateral that is junior or otherwise subordinate to the DIP Liens in such DIP Collateral

receives or is paid the proceeds of such DIP collateral, or receives any other payment with

respect thereto from any other source prior to the indefeasible payment in full in cash and the

complete satisfaction of all DIP Obligations under the DIP Credit Documents and termination of the commitments thereunder in accordance with the DIP Credit Documents, such junior or subordinate lienholder shall be deemed to have received, and shall hold, the proceeds of any such DIP Collateral in trust for the DIP Lender and shall immediately turn over such proceeds to the DIP Lender for application to repay the DIP Obligations in accordance with the DIP Credit Documents and this Final Order until the DIP Obligations are indefeasibly paid in full in cash.

(g)     *Injunction*. Until such time as all DIP Obligations are indefeasibly paid in full in cash, the Debtors shall be enjoined and prohibited from, at any time during these Chapter 11 Cases, granting liens on DIP Collateral or any portion thereof to any other party, pursuant to §364(d) of the Bankruptcy Code or otherwise, which liens are senior to or *pari passu* with the liens granted to the DIP Lender except in accordance with the DIP Credit Documents and this Final Order.

(h)     *No Third Party Rights*. Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, third party or incidental beneficiary.

(i)     *Limits on Lenders' Liability.* Nothing in this Final Order or in any of the DIP Credit Documents or any other documents related to this transaction shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender of any liability for any claims arising from any and all activities by the Debtors or any of their subsidiaries or affiliates in the operation of their businesses or in connection with their restructuring efforts.  In (a) administering the DIP Facility and the DIP Loans, (b) extending other financial accommodations to the Debtors under the DIP Credit Documents, and (c) making the decision

to collect the indebtedness and obligations of the Debtors, the DIP Lender shall not (x) owe any fiduciary obligation to the Debtors or any other party with respect to their exercise of any consent or other rights afforded them under the DIP Credit Documents or this Final Order or (y) be exercising control over any operations of the Debtors or acting in any way as a responsible person.

(j)     *Amendment*.   The Debtors and the DIP Lender may amend, modify, supplement or waive any provision of the DIP Credit Documents without further notice to or approval of the Court (but upon two (2) Business Days' prior notice, solely to the extent reasonably practicable under the circumstances, having been given to Committee Counsel (if any) and the U.S. Trustee of any amendment or modification; *provided* that such notice shall not be deemed to create any Committee or U.S. Trustee approval rights), unless such amendment, modification, supplement or waiver (a) increases the interest rate or fees (other than consent fees in connection with such amendment, modification, supplement or waiver) charged in connection with the DIP Facility; or (b) increases the commitments of the DIP Lender to make extensions of credit under the DIP Facility. Except as otherwise provided herein, no other waiver, modification, or amendment of any of the provisions hereof shall be effective unless set forth in writing, signed by, or on behalf of, all the Debtors and the DIP Lender and approved by the Court after notice to parties in interest.

(k)     *Priority of Terms*.   To the extent of any conflict between or among (i) the express terms or provisions of any of the other DIP Credit Documents, the Motion, any other order of this Court, or any other agreements, on the one hand, and (ii) the terms and provisions of this Final Order, on the other hand, unless such term or provision herein is phrased in terms of "defined in" or "as set forth in" the DIP Facility, the terms and provisions of this Final Order

shall govern.

(l)     *Survival of Final Order.* Except to the extent approved by the DIP Lender and as may be set forth in the Final Order, the provisions of this Final Order and any actions taken pursuant hereto shall survive, and shall not be modified, impaired or discharged by, any order which may be entered (i) confirming any chapter 11 plan in the Chapter 11 Cases, (ii) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, (iii) dismissing any of the Chapter 11 Cases, (iv) terminating the joint administration of the Chapter 11 Cases, (v) withdrawing of the reference of any of the Chapter 11 Cases from this Court, or (vi) providing for abstention from handling or retaining of jurisdiction of any of the Chapter 11 Cases in this Court.  Except to the extent approved by the DIP Lender and as may be set forth in this Final Order, the terms and provisions of this Final Order, including all the rights, remedies, powers, privileges, liens, priorities, the DIP Liens and DIP Superpriority Claim granted pursuant to this Final Order, and any protections granted to or for the benefit of the Pre-Petition Secured Lenders (including any adequate protection, if applicable), shall continue in full force and effect notwithstanding the entry of such order, or in the event any or all of the provisions of this Final Order are hereafter modified, amended or vacated by a subsequent order of this Court or any other court, and such DIP Liens and DIP Superpriority Claim shall maintain their priorities as provided by this Final Order and the other DIP Credit Documents, until all of the DIP Obligations have been indefeasibly paid and fully satisfied in accordance with the DIP Credit Documents, as the case may be, and discharged.

(m)     *Dismissal and Conversion.* If an order dismissing or converting any of these Chapter 11 Cases under §§305 or 1112 of the Bankruptcy Code or otherwise, or appointing a chapter 11 trustee or a responsible officer or examiner with expanded powers, is at any time

entered, such order shall provide that (a) the DIP Liens and the DIP Superpriority Claim, granted

hereunder and in the DIP Credit Documents, shall continue in full force and effect, remain

binding on all parties-in-interest, and maintain their priorities as provided in this Final Order

and the DIP Credit Documents; and (b) this Court shall retain jurisdiction, notwithstanding such

dismissal, for purposes of enforcing the DIP Liens and the DIP Superpriority Claim. Any order

dismissing any of these Chapter 11 Cases shall not be effective until the DIP Liens on the DIP

Collateral are fully perfected under applicable non-bankruptcy law.

(n)     *Subsequent Reversal or Modification*.   This Final Order is entered

pursuant to §364 of the Bankruptcy Code, and Bankruptcy Rules 4001(b) and (c), granting the

DIP Lender all protections and benefits afforded by §364(e) of the Bankruptcy Code.

(o)     *Enforceability*.  This Final Order shall constitute findings of fact and

conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully

enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof.

Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, 9024, or any other

Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall

be immediately effective and enforceable upon its entry and there shall be no stay of execution

or effectiveness of this Final Order.

(p)     *Objections Overruled.*  All objections to the DIP Motion to the extent not

withdrawn or resolved, are hereby overruled.

(q)     *Waiver of any Applicable Stay*.  Any applicable stay (including, without

limitation, under Bankruptcy Rule 6004(h)) is hereby waived and shall not apply to this Final

Order and this Final Order shall be immediately effective and enforceable upon its entry.

8.     **Retention of Jurisdiction.**   The Court has and will retain jurisdiction to

enforce this Final Order according to its terms.

9.    Notwithstanding anything herein to the contrary, the Conterra Stipulation is not modified or altered in any way by this Order, and is hereby approved and authorized in all respects, and specifically, the Debtors shall make the adequate protection payments to Conterra pursuant to the Conterra Stipulation and the DIP Lender shall have a junior lien on the German Dairy.

// End of Text //

Order submitted by:

Krystal R. Mikkilineni, attorney for the Debtors