Matthew T. Christensen, ISB: 7213
J. Justin May, ISB: 5818
JOHNSON MAY
199 N. Capitol Blvd, Ste 200
Boise, Idaho 83702
Phone: (208) 384-8588
Fax: (208) 629-2157
Email: mtc@johnsonmaylaw.com
       jjm@johnsonmaylaw.com

Krystal Mikkilineni, *pro hac vice*
Robert E. Richards, *pro hac vice*
Tirzah Roussell, *pro hac vice*
DENTONS
215 10th Street, Ste 1300
Des Moines, IA 50309
Phone: (515) 288-2500
Fax: (515) 243-0654
Email: krystal.mikkilineni@dentons.com
       Robert.richards@dentons.com
       Tirzah.roussell@dentons.com

Attorneys for the Debtor

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| In re:<br><br>MILLENKAMP CATTLE, INC.,<br><br>Debtor. | Case No. 24-40158-NGH |
| Filing relates to:<br><br>☒ ALL DEBTORS<br><br>☐ Millenkamp Cattle, Inc.<br><br>☐ Idaho Jersey Girls<br><br>☐ East Valley Cattle<br><br>☐ Millenkamp Properties<br><br>☐ Millenkamp Properties II | Jointly Administered With Case Nos.:<br><br>24-40159-NGH (Idaho Jersey Girls)<br>24-40160-NGH (East Valley Cattle)<br>24-40161-NGH (Millenkamp Properties)<br>24-40162-NGH (Millenkamp Properties II)<br>24-40163-NGH (Millenkamp Family)<br>24-40164-NGH (Goose Ranch)<br>24-40166-NGH (Black Pine Cattle)<br>24-40167-NGH (Millenkamp Enterprises)<br>24-40165-NGH (Idaho Jersey Girls Jerome Dairy) |

SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR ENTRY OF AN ORDER AUTHORIZING DEBTORS TO HONOR PREPETITION OBLIGATIONS OF CRITICAL VENDORS – Page 1

| ☐ Millenkamp Family |                  |
| ☐ Goose Ranch | Chapter 11 Cases |
| ☐ Black Pine Cattle |            |
| ☐ Millenkamp Enterprises |      |
| ☐ Idaho Jersey Girls Jerome Dairy | |

## SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR ENTRY OF AN ORDER AUTHORIZING DEBTORS TO HONOR PREPETITION OBLIGATIONS OF CRITICAL VENDORS

The Debtors in the above-referenced matter, by and through their undersigned counsel, provide this Supplemental Memorandum in Support of Motion for Entry of an Order Authorizing Debtors to Honor Prepetition Obligations of Critical Vendors (Doc. No. 23 - the "Critical Vendor Motion"). Additionally, the Debtors provide the updated list of critical vendors and proposed payments, as outlined in the attached *Exhibit A*.

### FACTUAL AND PROCEDURAL BACKGROUND

On April 2, 2024 (the "Petition Date"), the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for District of Idaho (the "Court") commencing the Chapter 11 Cases. The Debtors have continued in the management and operation of their businesses and properties as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108. Millenkamp Cattle is the primary entity from which all operations are directed, the revenues received, and the payables disbursed. Millenkamp Cattle is the operational entity which owns all of the cattle, feed, and equipment used to care for the cattle, employs the employees, and receives and disburses the majority of the monies. Millenkamp Cattle does not own any real property.

As the Debtors operate a large and complex dairy operation and feedlot, it is vital that the Debtors are able to maintain relationships and operations with Critical Vendors. Any disruption with the Debtors' Critical Vendors could immediately and irreparably impair the Debtors' assets, and most importantly, their animals. The literal lifeblood of the Debtors' operations are the cattle. Debtors' Critical Vendors include, among other things, vendors supplying feed, chemicals, compost turning and hauling, insurance, equipment, repairs, and maintenance, vital supplies, veterinary services and medicine, payroll services, and trucking services.

On the Petition Date, the Debtors filed the Critical Vendor Motion, seeking authority to pay certain vendors who were still owed for pre-petition services or goods. The Motion itself outlines the reasons for paying the critical vendors. A preliminary hearing was held on the Critical Vendor Motion on the 4th, 9th and 10th of April, 2024. A final hearing on the Critical Vendor Motion is set for May 8, 2024. Only one objection to the Critical Vendor Motion has been filed – by the United States Trustee. This Memorandum in submitted in response to the Court's concerns outlined at the preliminary hearing regarding the legal basis for authorizing the critical vendor payments and in response to the US Trustee's objection.

## LEGAL ARGUMENT

Various legal theories have been adopted by different courts in support of critical vendor motions and payments. Each of those legal theories is addressed below, along with an indication of whether those theories have been addressed in the Ninth Circuit (either by the Circuit or other bankruptcy cases.

Preliminarily, the two main cases in the Ninth Circuit that are addressed here are *B & W Enterprises, Inc. v. Goodman Oil Company (In re B & W Enterprises)*, 713 F.2d 534 (1983); and *In re Macmillan*, 652 B.R. 812 (Bankr. D. Ore. 2023). *B & W Enterprises* did not actually involve

a critical vendor motion. Rather, the Chapter 11 Debtors had paid certain vendors holding pre-petition claims after the commencement of their Chapter 11 cases. These payments were made without notice, hearing, or authorization from the bankruptcy court. 713 F.2d at 535. Only later, after the case converted to Chapter 7 and the Trustee was pursuing the payments as unauthorized post-petition transfers (pursuant to 11 U.S.C. §549) was the defense raised that the transfers were not avoidable because they were to critical vendors. The Ninth Circuit discussed the so-called "Six Months Rule" and "Necessity of Payment" rule – and determined that both of those rules applied solely in railroad cases and could not support critical vendor status. No other applicable theories for critical vendor payments were addressed by *B & W Enterprises*.[1]

*Macmillan*, on the other hand, squarely dealt with a critical vendor motion. 652 B.R. at 813.[2] In *Macmillan*, the Debtor sought permission to pay a single creditor that creditor's entire pre-petition claim. *Id.* The creditor in question was a hay cutter that typically cut the Debtor's hay crop (which the Debtor used, presumably, to feed his cows). No other creditors were included in the critical vendor motion, and the Debtor did not propose to leave some of the pre-petition claim unpaid. The *Macmillan* court discussed several of the legal theories outlined below, and that discussion is addressed separately below.

<u>Section 105 of the Bankruptcy Code</u>

Section 105 of the Bankruptcy Code provides that the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C.

---

[1] B & W Enterprises did discussion whether equitable subordination principles applied, and determined that they did not (as the vendors were not advocating to subordinate any claims, but were in fact arguing to elevate their claims over other creditors). 713 F.2d at 537-38.

[2] In fact, in Macmillan, the critical vendor motion was filed twice. Between the filings, and notwithstanding the court's prior denial of the first motion, the Debtor paid the amount owed the vendor based on good delivered in the 20-day pre-petition period. 652 B.R. at 813.

SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR ENTRY OF AN ORDER
AUTHORIZING DEBTORS TO HONOR PREPETITION OBLIGATIONS OF CRITICAL VENDORS
– Page 4

Case 24-40158-NGH    Doc 248    Filed 05/01/24    Entered 05/01/24 18:12:08    Desc Main
Document      Page 5 of 19

§105(a). Prior to 2014, some courts had used this section to authorize critical vendor payments. However, after *Law v. Siegel* was decided by the U.S. Supreme Court, it was clear that Section 105, by itself, was insufficient grounds for authorizing an action which appeared to conflict with the Bankruptcy Code. *See Law v. Siegel*, 571 U.S. 415 (2014). *Macmillan* addressed this provision and determined that Section 105 does not provide sufficient authority to set aside the Code's requirements for priority and distributions. 651 B.R. at 816. However, *Macmillan* did not address Section 105 in connection with any other section of the Code – it was analyzed in a vacuum by itself. Section 105 may still be used in conjunction with another provision of Code to provide authority for a Court order allowing critical vendor payments.

<u>Section 363(b) of the Bankruptcy Code</u>

Section 363(b) of the Bankruptcy Code provides that "the [debtor-in-possession], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate…" 11 U.S.C. §363(b)(1). The theory goes that payment of a pre-petition debt is outside the ordinary court of business (due to the restrictions on payments of pre-petition debts), so, as long as the Debtor-in-possession seeks and obtains court authority for the payment, it may be authorized. *Macmillan* discussed this argument, and rejected it. *Macmillan* determined that simply having a good business reason for making the critical vendor payments was insufficient to reject the payment priority provisions of the Code. 652 B.R. at 815. However, *Macmillan* recognized that other leading decisions had opined that using Section 363 was a potential basis for critical vendor payments while warning that it was "prudent to … do the least damage possible to priorities established by contract and by other parts of the Bankruptcy Code." *Id.*; *see also In re Kmart Corp.*, 359 F.3d 866, 872 (7th Cir. 2004). There are no binding Ninth Circuit opinions on whether Section 363(b) can provide a basis for authorizing critical vendor payments. The Debtors

SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR ENTRY OF AN ORDER AUTHORIZING DEBTORS TO HONOR PREPETITION OBLIGATIONS OF CRITICAL VENDORS – Page 5

argue that this section supports allowing those payments, which would be "outside the ordinary course of Chapter 11 operations" and assist the Debtors with moving forward with the reorganization and confirmation of their plan.

<u>Section 362(d) of the Bankruptcy Code</u>

At least one bankruptcy court has opined that Section 362(d) of the Bankruptcy Code may provide a basis for the court to exercise its equitable authority pursuant to Section 105(a). *See, e.g., In re CEI Roofing, Inc.*, 315 B.R. 50 (Bankr. N.D. Tex. 2004). In *CEI Roofing*, the Court looked to Section 362 as a potential basis for authorizing payment of pre-petition claims. *Id.* at 59. Section 362 provides that the filing of a petition acts as a stay of "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. §362(a)(6). According to the *CEI Roofing* court:

> Under this provision, the collection of prepetition claims is not prohibited; it is only stayed. The *stay* of the collection of prepetition claims may be terminated, annulled or modified by the court "for cause." 11 U.S.C. § 362(d). In fact, the language of § 362(d) provides that "the court *shall* grant relief from the stay ... for cause ...." *Id.* (emphasis added). Furthermore, relief from the stay pursuant to § 362(d) may be requested by a "party in interest." *Id.* Thus, a debtor-in-possession and its "critical vendors," each of whom would certainly qualify as parties in interest in a bankruptcy case, could request relief from the stay under § 362(d) "for cause"— that "cause" being the urgency and necessity of paying the prepetition claims, such payment being the only means of protecting the going concern value of the operating business in Chapter 11. If the court is satisfied, based on the evidence presented by the parties, that "cause" exists for the lifting of the stay to allow the collection of prepetition claims from the estate prior to plan confirmation, it is authorized to do so under § 362(d).

*Id.*

Here, while not specifically cited in the original Critical Vendor Motion, Section 362 could provide the statutory basis for authorizing the payment of the pre-petition critical vendor payments. As testified to by Bill Millenkamp at the earlier hearing, the critical vendor payments are necessary

in order preserve the assets (namely, cattle) of the bankruptcy estate and keep the businesses operating sufficiently to support confirmation of a Chapter 11 plan.

*Section 1107 of the Bankruptcy Code*

In *In re CoServ, LLC*, the bankruptcy court for the Northern District of Texas determined that Section 1107 would support the exercise of Section 105 authority to allow pre-confirmation payment of critical vendor claims. *In re CoServ, LLC*, 273 B.R. 487 (Bankr. N.D. Tex. 2002). In *CoServ*, the court surveyed relevant cases, and ultimately concluded that the Debtor's duties under Section 1107 of the Code provided an avenue for the court to authorize critical vendor payments.

> [T]he Court must find a bridge that makes application to the Doctrine of Necessity "necessary or appropriate to carry out the provisions of" the Bankruptcy Code. The Court believes such a bridge exists in the debtor in possession's role as the equivalent of a trustee. *See* 11 U.S.C. § 1107(a). A debtor in possession, like a trustee, is a fiduciary holding the bankruptcy estate and operating the business for the benefit of its creditors and (if the value justifies) equity owners. Implicit in the duties of a Chapter 11 trustee or a debtor in possession as set out in Sections 1106 and 704 of the Bankruptcy Code is the duty of such a fiduciary to protect and preserve the estate, including an operating business's going-concern value. There are occasions when this duty can only be fulfilled by the preplan satisfaction of a prepetition claim.

273 B.R. at 496–97 (some internal citations omitted).

The *Macmillan* decision discounted *CoServ's* conclusion, arguing that it relied on the Doctrine of Necessity which (in the *Macmillan* court's view) had been determined by the Ninth Circuit to apply solely to railroad cases. However, this is a candidly simplistic view of the Doctrine of Necessity – which originated in the 19th century railroad cases. Judge Easterbrook in the *Kmart* decision recognized that the Code had replaced certain older doctrines:

> Today it is the Code rather than the norms of nineteenth century railroad reorganizations that must prevail…Today the Bankruptcy Code of 1978 supplies the rules. Congress did not in terms scuttle old commonlaw doctrines, because it did not need to; the Act curtailed, and then the Code replaced, the entire apparatus. Answers to contemporary issues must be found within the Code (or legislative

halls). Older doctrines may survive as glosses on ambiguous language enacted in 1978 or later, but not as freestanding entitlements to trump the text.

359 F.3d at 871.

The Doctrine of Necessity is a pre-Code tool developed by railroad cases to deal with the incomplete rules that applied to those cases. On the other hand, the Code contains a very clear grant to the Bankruptcy Court of authority to issue orders that are "necessary or appropriate" to carry out the provisions of the Code. In other words, the Doctrine of Necessity was replaced by a codified provisions allowing orders "as necessary." The Ninth Circuit's restriction of the Doctrine to railroad cases is not incongruent with the Code provision allowing necessary orders. The *Macmillan* court improperly equated the two as one.

Section 1107 (and, by application Sections 1106 and 704) require the Debtors to protect and preserve the estate, including protecting the companies as going concerns with significant value. Section 1107 provides the "bridge" for the court to use Section 105(a) orders to allow payment of pre-petition critical vendor claims.

<u>Rule 6003 of the Bankruptcy Rules</u>

Rule 6003 of the Bankruptcy Rules may also provide some authority for allowance of payment on pre-petition claims prior to confirmation. That Rule provides, in relevant part, as follows:

> Except to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, issue an order granting the following:…(b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition …

Fed. R. Bankr. Proc. 6003(b).

Here, while the 21-day post-petition time period has run prior to the final hearing on the Critical Vendor Motion, the Rule appears to allow payment on pre-petition claims before the

SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR ENTRY OF AN ORDER AUTHORIZING DEBTORS TO HONOR PREPETITION OBLIGATIONS OF CRITICAL VENDORS – Page 8

expiration of that period (upon a showing of immediate and irreparable harm) and after that period (without similar restriction). *See also In re Humboldt Creamery LLC*, 2009 WL 2820552 (Bankr. N.D. Cal. 2009). While the Rules are not specifically adopted by Congress, they provide additional potential support for the Debtors position – that the Court can grant it authority to preserve and protect the estate through payment of certain pre-petition claims.

*Potential 503(b)(9) status*

Section 503(b)(9) of the Code provides administrative priority for the "value of any goods received by the debtor within twenty (20) days before the date of commencement of a case under this title in which goods have been sold to the debtor in the ordinary course of such debtor's business." *See also In re Brown & Cole Stores, LLC*, 375 B.R. 873, 878 (B.A.P. 9th Cir. 2007) (recognizing that § 503(b)(9) applies to critical vendors supplying goods). These claims must be paid in full on or before the effective date of the Debtors' chapter 11 plan. See 11 U.S.C. § 1129(a)(9)(A).

In fact, the Bankruptcy Code does not prohibit a debtor from paying such claims prior to confirmation. As administrative claims incurred in the ordinary course of business, the Debtors submit that they may pay such claims in accordance with their business judgment pursuant to section 363(c)(1). Courts have regularly authorized the payment of claims arising under section 503(b)(9) in the ordinary course of business. *See e.g. In re Chassix Holdings, Inc*., No. 15-10578 (Bankr. S.D.N.Y. Apr. 14, 2015). Thus, payment of claims for supplies or other goods received by the Debtors within 20 days prior to the Petition Date would be allowed as administrative expenses. Many of the critical vendors provided supplies or other goods within this 20-day period, and therefore Section 503(b)(9) provides an additional basis for the Court to allow the Debtors to

pay these claims (at the very least, those critical vendors with valid 503(b)(9) claims) in accordance with the relief requested in the Critical Vendors Motion.

*Various goals of the Bankruptcy Code must be balanced*

The U.S. Supreme Court has recognized many competing objectives of the Bankruptcy Code. Principally, of course, is the competing objectives of providing a fresh start for Debtors and allowing creditors to receive as full and complete a distribution as possible. Other competing objectives may involve the ordinary distribution rules under the Code. However, the US Supreme Court has also recognized that, when these competing objectives clash, one objective may have to be sacrificed for another:

> We recognize that *Iridium* is not the only case in which a court has approved interim distributions that violate ordinary priority rules. But in such instances one can generally find significant Code-related objectives that the priority-violating distributions serve. Court, for example, have approved "first-day" wage orders that allow payment of employees' prepetition wages, "critical vendor" orders that allow payment of essential suppliers' prepetition invoices, and "roll-ups" that allow lenders who continue financing the debtor to be paid first on their prepetition claims. In doing so, these courts have usually found that the distributions at issue would "enable a successful reorganization and make even the disfavored creditors better off."

*Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 467-68 (2017); *see also In re Adams Apple, Inc.*, 829 F.2d 1484 (9th Cir. 1987) (recognizing that pre-petition debts may be paid when necessary for rehabilitation, including in the context of critical vendors).

Thus, not only has the US Supreme Court recognized that sometimes the distribution priority rules have to be sacrificed for other Code-related objectives – it has done so with specific reference to critical vendor orders. Contrary to this, the *Macmillan* court appears to have placed the priority distribution scheme above all other Code-related objectives, by disallowing the

payment of the pre-petition claims.³  In a chapter 11 case, the primary focus should be the rehabilitation and reorganization of the Debtors – not the rule that all creditors with pre-petition claims must wait for confirmation before getting paid.  By focusing on one objective to the exclusion of the other, courts risk driving more companies (like these Debtors) into a liquidation, rather than a reorganization.

*Lack of disparate treatment of similar creditors*

The largest concern in the cases which disallow critical vendor payments appears to be that there's a risk that the pre-confirmation payment to the critical vendors will prejudice or otherwise cause the other similarly-situated unsecured creditors to be adversely affected.  *See, e.g., In re Kmart Corp.*, 359 F.3d at 868-69 (noting that the critical vendors received 100% payment of their pre-petition claims; while the "non-critical" vendors received approximately 10% of their claims).  Here, however, the Debtors assets far exceed the total amount of claims against them.  Consequently, there is a very real likelihood that the Debtors' plans will pay 100% of the claims to the unsecured creditors.  *See, e.g.,* 11 U.S.C. §1129(a)(7) and (b)(2)(B).  Thus, the only potential prejudice to the remaining unsecured creditors is the passage of time between the petition date and the payments on their claims – not a risk of significant non-payment of their claims.  This passage of time is insufficient prejudice to justify the potential liquidation and shut-down of the Debtors altogether (in which case there is a high likelihood those remaining unsecured creditors would not

---

³ While not referenced specifically in the *Macmillan* case, it is also likely that the Court there saw a problem with the "critical-ness" of the vendor in question.  The Debtor argued the vendor was necessary in order to cut the Debtor's hay, which needed to be cut from time to time.  The amount of the pre-petition vendor's claim was $12,021, thus indicating the hay crop was not substantial.  Indeed, the total value of the hay crop listed on the Debtor's schedules was $6,000.00 (*see* District of Oregon Case No. 23-30159-thp11, Doc 19).  It is likely the Court in that case viewed with skepticism the Debtor's claim that the vendor's services were critical and irreplaceable by another hay-cutting vendor, especially as the Debtor resided in a county whose major industry was agricultural.

SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR ENTRY OF AN ORDER AUTHORIZING DEBTORS TO HONOR PREPETITION OBLIGATIONS OF CRITICAL VENDORS – Page 11

receive any payment on their unsecured claims). This practical lack of disparate treatment also favors granting the Critical Vendor Motion.

For the foregoing reasons, the Debtors assert the Court has the legal authority to authorize the critical vendor payments, and requests the Court exercise that authority and grant the Motion.

## RESPONSE TO UNITED STATES TRUSTEE'S OBJECTIONS

On April 5, 2024, the US Trustee filed an objection to the Critical Vendor Motion (the "Objection"). On April 24, 2024, the US Trustee filed a Supplemental Objection to the Critical Vendor Motion (the "Supplemental Objection"). In its Supplemental Objection, the US Trustee notes two main concerns which are in relation to Debtors' schedules filed with the Court. The Debtors believe those concerns have been addressed through the filing of this Brief with an attached updated Critical Vendor list and through the Debtor's Amended Schedules D and E/F filed with the Court on April 30, 2024 (the "Amended Schedules") (Docket No. 236).

The Debtors filed Amended Schedules and updated the Critical Vendor list after completing a reconciliation of their accounts payable. A complete reconciliation of the Debtors' accounts payable was not able to be completed when the initial Critical Vendor Motion had been developed as the accounts payable list was still being updated as of the Petition Date. As such, since the filing of the Critical Vendor Motion and Supplement thereto, the Debtors have finalized a complete reconciliation of their accounts payable as of the Petition Date and have updated the Critical Vendor list and amended the schedules accordingly. Therefore, the Critical Vendor list and Amended Schedules now both contain the reconciled accounts payable numbers as of the Petition Date.

In its Objection, the US Trustee states that the Debtors' Critical Vendor Motion identifies six critical vendors, proposing payments to four of them, on prepetition claims that are not listed

SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR ENTRY OF AN ORDER AUTHORIZING DEBTORS TO HONOR PREPETITION OBLIGATIONS OF CRITICAL VENDORS – Page 12

on the Debtors' schedules. Those critical vendors are: American Calf Products, David Clark DVM, Schows Truck Center-Heyburn, Western States Cat—Rent, Llanos Trucking LLC, and J & C Hoof Trimming, Inc. Those six critical vendors are owed prepetition amounts and have notified Mr. Millenkamp that they are going to stop providing goods and services (or will repossess the leased equipment) if they are not paid on their prepetition claims by receiving critical vendor status. Since the filing of the Objection, Millenkamp Cattle has filed Amended Schedules that include all six of those critical vendors. American Calf Products, David Clark DVM, Schow's Truck Center-Heyburn, Llanos Trucking, LLC, and J & C Hoof Trimming, Inc. all have been added to Schedule E/F and Western States Cat has been added to Schedule D. *See* Docket No. 236.

The US Trustee also notes in its Objection that the Debtors propose to pay six critical vendors in amounts beyond their scheduled claims. This issue has also been addressed through the Amended Schedules and updated Critical Vendor list. Below is a chart that lists the six critical vendors and their proposed payments to be paid through August 11, 2024 compared with the amounts listed in the Amended Schedules. Pursuant to the chart, none of the Critical Vendors are being paid an excess amount beyond their scheduled claims.

| **Vendor** | **Critical Vendor List Total: Apr. 2 through Aug. 11** | **Amended Schedules** |
|---|---|---|
| Aden Brook Trading Corp | $800,000 | $1,331,470 |
| Coastline | $140,000 | $151,844 |
| Floyd Lilly Company, Inc. | $0 | $217 |
| Schow's Auto Parts | $25,000 | $28,410 |
| Western States Cat | $596,071 | $688,965 |
| Taqueria Tamazula Trucking | $20,000 | $25,498 |

SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR ENTRY OF AN ORDER AUTHORIZING DEBTORS TO HONOR PREPETITION OBLIGATIONS OF CRITICAL VENDORS – Page 13

Counsel for the Debtors has also reached out to the US Trustee and discussed these discrepancies and the Debtors' reconciliation of the accounts payable. As such, the Amended Schedules and updated Critical Vendor list should resolve all of the US Trustee's concerns raised in their Objection. The Debtors respectfully request that the Court enter an order granting the relief requested in the Critical Vendor Motion.

## **UPDATED CRITICAL VENDOR SUMMARY**

Attached here as ***Exhibit A*** is the updated list of proposed critical vendor payments (after taking into account prior interim allowances). As argued above, many of these vendors also have liens on the Debtors' property and/or possess 503(b)(9) priority claims.

DATED this 1st day of May, 2024.

                                                                                       /s/ Matt Christensen
                                                                                       MATTHEW T. CHRISTENSEN
                                                                                       Attorney for Debtors

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on this 1st day of May 2024, I caused to be served a true and correct copy of the foregoing document electronically through the CM/ECF system, which caused the following parties to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

| | |
|---|---|
| Matthew T. Christensen | mtc@johnsonmaylaw.com |
| J. Justin May | jjm@johnsonmaylaw.com |
| Krystal R. Mikkilineni | krystal.mikkilineni@dentons.com |
| Tirzah R. Rousell | Tirzah.rousell@dentons.com |
| US Trustee | ustp.region18.bs.ecf@usdoj.gov |
| Heidi Buck Morrison | heidi@racineolson.com |
| David A. Coleman | david@colemanjacobsonlaw.com |
| Gery W. Edson | gedson@gedson.com |
| J.B. Evans | evans.jb@dorsey.com |
| Zachary Fairlie | zfairlie@spencerfane.com |
| Kimbell D. Gourley | kgourley@idalaw.com |
| Daniel C. Green | dan@racineolson.com |
| John O'Brien | jobrien@spencerfane.com |
| Scott C. Powers | spowers@spencerfane.com |
| Janine P. Reynard | janine@averylaw.net |
| Sheila R. Schwager | sschwager@hawleytroxell.com |
| Brent R. Wilson | bwilson@hawleytroxell.com |
| Brian Faria | brian@sawtoothlaw.com |
| Robert A. Foucher | rfaucher@hollandhart.com |
| Matthew W. Grimshaw | matt@grimshawlawgroup.com |
| John F. Kurtz | jfk@kurtzlawllc.com |
| Jed W. Manwaring | jmanwaring@evanskeane.com |
| Rhett M. Miller | rmiller@magicvalley.law |
| John D. Munding | john@mundinglaw.com |
| Jason R. Naess | jason.r.naess@usdoj.gov |
| Holly Roark | holly@roarklawboise.com |
| Evan R. Roth | evan@sawtoothlaw.com |

Any others as listed on the Court's ECF Notice.

                                                    /s/ Matt Christensen
                                                    MATTHEW T. CHRISTENSEN

# EXHIBIT A

| Critical Vendor List & Payments | Summary | | | | Weekly Details | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | BK Wk1-6 | BK Wk7-19 | TOTAL | | BK Wk1 | BK Wk2 | BK Wk3 | BK Wk4 | BK Wk5 | BK Wk6 | BK Wk7 | BK Wk8 | BK Wk9 | BK Wk10 | BK Wk11 | BK Wk12 |
| As of 04.17.24 Budget - Revised 04.30.24 | 2-Apr | 13-May | 2-Apr-24 | Scheduled | 2-Apr | 8-Apr | 15-Apr | 22-Apr | 29-Apr | 6-May | 13-May | 20-May | 27-May | 3-Jun | 10-Jun | 17-Jun |
| | 12-May | 11-Aug | 11-Aug-24 | Amounts | 7-Apr | 14-Apr | 21-Apr | 28-Apr | 5-May | 12-May | 19-May | 26-May | 2-Jun | 9-Jun | 16-Jun | 23-Jun |
| **Feed** | 4,560,000 | 10,919,000 | 15,479,000 | 34,136,227 | - | - | 4,560,000 | - | - | - | 4,694,000 | 50,000 | 1,550,000 | 650,000 | 525,000 | - |
| Aden Brook Trading Corp | - | 800,000 | 800,000 | 1,331,470 | - | - | - | - | - | - | 700,000 | 25,000 | 25,000 | 25,000 | 25,000 | - |
| American Calf Products | - | 100,000 | 100,000 | 240,197 | - | - | - | - | - | - | 100,000 | - | - | - | - | - |
| B & H Farming-Randy B & Tom Haynes | - | 247,000 | 247,000 | 323,120 | - | - | - | - | - | - | 247,000 | - | - | - | - | - |
| BUNGE Canada | - | - | - | 1,145,984 | - | - | - | - | - | - | - | - | - | - | - | - |
| Carne I Corp. | - | 200,000 | 200,000 | 438,453 | - | - | - | - | - | - | 125,000 | 25,000 | 25,000 | 25,000 | - | - |
| H&M Custom | 2,500,000 | 1,750,000 | 4,250,000 | 4,769,171 | - | - | 2,500,000 | - | - | - | 500,000 | - | 500,000 | - | 500,000 | - |
| Healthy Earth Enterprises, LLC | 60,000 | - | 60,000 | 60,000 | - | - | 60,000 | - | - | - | - | - | - | - | - | - |
| Holesinsky Farms LLC | - | 173,000 | 173,000 | 226,292 | - | - | - | - | - | - | 173,000 | - | - | - | - | - |
| J.D. Heiskell & Co. | - | 100,000 | 100,000 | 742,936 | - | - | - | - | - | - | 100,000 | - | - | - | - | - |
| Kody Youree | - | 86,000 | 86,000 | 112,157 | - | - | - | - | - | - | 86,000 | - | - | - | - | - |
| Land View, Inc-Livestock- Animal Care | - | 3,000,000 | 3,000,000 | 7,514,644 | - | - | - | - | - | - | 1,500,000 | - | 500,000 | - | - | - |
| Milner Hay Co. | - | 50,000 | 50,000 | 114,885 | - | - | - | - | - | - | 50,000 | - | - | - | - | - |
| Moss Grain Partnership | - | 329,000 | 329,000 | 430,000 | - | - | - | - | - | - | 329,000 | - | - | - | - | - |
| PerforMix Nutrition Systems | - | - | - | 213,744 | - | - | - | - | - | - | - | - | - | - | - | - |
| Receptor Food Group | - | 500,000 | 500,000 | 1,264,252 | - | - | - | - | - | - | 200,000 | - | - | 100,000 | - | - |
| Standlee Premium Products | - | 159,000 | 159,000 | 208,490 | - | - | - | - | - | - | 159,000 | - | - | - | - | - |
| Wada Farms | - | 275,000 | 275,000 | 374,433 | - | - | - | - | - | - | 275,000 | - | - | - | - | - |
| Viserion Grain, LLC | - | - | - | 3,168,353 | - | - | - | - | - | - | - | - | - | - | - | - |
| Viterra USA Grain, LLC | - | - | - | 4,688,718 | - | - | - | - | - | - | - | - | - | - | - | - |
| WAG Services Inc | - | 150,000 | 150,000 | 231,722 | - | - | - | - | - | - | 150,000 | - | - | - | - | - |
| [Silage Group] | 2,000,000 | 3,000,000 | 5,000,000 | 6,537,208 | - | - | 2,000,000 | - | - | - | - | - | 1,000,000 | - | - | - |
| **Vet/Med** | 500,000 | 1,007,500 | 1,507,500 | 2,574,020 | - | - | 500,000 | - | - | - | 132,500 | 125,000 | 125,000 | 125,000 | 125,000 | 125,000 |
| David Clark DVM | - | 7,500 | 7,500 | 8,164 | - | - | - | - | - | - | 7,500 | - | - | - | - | - |
| MWI Veterinary | 500,000 | 1,000,000 | 1,500,000 | 2,565,856 | - | - | 500,000 | - | - | - | 125,000 | 125,000 | 125,000 | 125,000 | 125,000 | 125,000 |
| **Repairs & Maintenance** | 140,000 | 1,643,571 | 1,783,571 | 3,533,295 | - | - | 140,000 | - | - | - | 1,307,381 | 12,500 | 12,500 | 12,500 | 211,190 | 12,500 |
| Automation Werx, LLC | - | 100,000 | 100,000 | 218,691 | - | - | - | - | - | - | 100,000 | - | - | - | - | - |
| Boyce Equipment & Parts Co., Inc. | - | 7,500 | 7,500 | 10,191 | - | - | - | - | - | - | 7,500 | - | - | - | - | - |
| Clear Water Products, LLC | - | 200,000 | 200,000 | 658,702 | - | - | - | - | - | - | 200,000 | - | - | - | - | - |
| Coastline | 140,000 | - | 140,000 | 151,844 | - | - | 140,000 | - | - | - | - | - | - | - | - | - |
| Electrical Werx & Construction, LLC | - | 50,000 | 50,000 | 81,741 | - | - | - | - | - | - | 50,000 | - | - | - | - | - |
| Elevation Electric | - | 200,000 | 200,000 | 609,454 | - | - | - | - | - | - | 62,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 |
| Ferguson Enterprises, Inc. | - | 5,000 | 5,000 | 6,880 | - | - | - | - | - | - | 5,000 | - | - | - | - | - |
| Floyd Lilly Company, Inc | - | - | - | 217 | - | - | - | - | - | - | - | - | - | - | - | - |
| G.J. Verti-line Pumps, Inc. | - | 135,000 | 135,000 | 154,531 | - | - | - | - | - | - | 135,000 | - | - | - | - | - |
| Green Source Automation | - | 150,000 | 150,000 | 390,781 | - | - | - | - | - | - | 150,000 | - | - | - | - | - |
| Progressive Dairy Service and Supplies | - | 60,000 | 60,000 | 138,280 | - | - | - | - | - | - | 60,000 | - | - | - | - | - |
| Schows Truck Center - Heyburn | - | - | - | 446 | - | - | - | - | - | - | - | - | - | - | - | - |
| Schow's Auto Parts - Rupert | - | 25,000 | 25,000 | 28,410 | - | - | - | - | - | - | 25,000 | - | - | - | - | - |
| The Dairy Solutions Group | - | 70,000 | 70,000 | 330,268 | - | - | - | - | - | - | 70,000 | - | - | - | - | - |
| Western States Cat | - | 596,071 | 596,071 | 688,965 | - | - | - | - | - | - | 397,381 | - | - | - | 198,690 | - |
| Xavier Farm Services, LLC | - | 45,000 | 45,000 | 63,895 | - | - | - | - | - | - | 45,000 | - | - | - | - | - |
| **Chemicals** | - | 600,000 | 600,000 | 1,457,335 | - | - | - | - | - | - | 342,500 | 32,500 | 32,500 | 32,500 | 32,500 | 32,500 |
| Rocky Mountain Agronomics | - | 400,000 | 400,000 | 769,471 | - | - | - | - | - | - | 280,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 |
| Clear Lakes Products | - | 200,000 | 200,000 | 687,864 | - | - | - | - | - | - | 62,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 |
| **Semen** | - | 86,551 | 86,551 | 817,330 | - | - | - | - | - | - | 86,551 | - | - | - | - | - |
| ABS Global, Inc. | - | 86,551 | 86,551 | 817,330 | - | - | - | - | - | - | 86,551 | - | - | - | - | - |
| **Trucking** | - | 221,000 | 221,000 | 367,877 | - | - | - | - | - | - | 221,000 | - | - | - | - | - |
| JF Fams Inc. | - | 75,000 | 75,000 | 205,675 | - | - | - | - | - | - | 75,000 | - | - | - | - | - |
| Llanos Trucking LLC | - | 51,000 | 51,000 | 52,590 | - | - | - | - | - | - | 51,000 | - | - | - | - | - |
| Novoa Trucking | - | 40,000 | 40,000 | 42,314 | - | - | - | - | - | - | 40,000 | - | - | - | - | - |
| S & O Mata Trucking LLC | - | 20,000 | 20,000 | 24,090 | - | - | - | - | - | - | 20,000 | - | - | - | - | - |
| Taqueria Tamazula Trucking | - | 20,000 | 20,000 | 25,498 | - | - | - | - | - | - | 20,000 | - | - | - | - | - |
| V & M Trucking LLC | - | 15,000 | 15,000 | 17,710 | - | - | - | - | - | - | 15,000 | - | - | - | - | - |
| **Other** | - | 105,000 | 105,000 | 272,169 | - | - | - | - | - | - | 105,000 | - | - | - | - | - |
| Butte Irrigation Inc | - | 50,000 | 50,000 | 204,910 | - | - | - | - | - | - | 50,000 | - | - | - | - | - |
| Darling Ingredients | - | 15,000 | 15,000 | 23,842 | - | - | - | - | - | - | 15,000 | - | - | - | - | - |
| J & C Hoof Trimming, Inc | - | 40,000 | 40,000 | 43,417 | - | - | - | - | - | - | 40,000 | - | - | - | - | - |
| **TOTAL** | $ 5,200,000 | $ 14,582,622 | $ 19,782,622 | $ 43,158,253 | $ - | $ - | $ 5,200,000 | $ - | $ - | $ - | $ 6,888,932 | $ 220,000 | $ 1,720,000 | $ 820,000 | $ 893,690 | $ 170,000 |

**Critical Vendor List & Payments**
*As of 04.17.24 Budget - Revised 04.30.24*

| | BK Wk13 | BK Wk14 | BK Wk15 | BK Wk16 | BK Wk17 | BK Wk18 | BK Wk19 |
|---|---|---|---|---|---|---|---|
| | 24-Jun | 1-Jul | 8-Jul | 15-Jul | 22-Jul | 29-Jul | 5-Aug |
| | 30-Jun | 7-Jul | 14-Jul | 21-Jul | 28-Jul | 4-Aug | 11-Aug |
| **Feed** | 250,000 | 1,600,000 | - | - | - | 1,600,000 | - |
| Aden Brook Trading Corp | - | - | - | - | - | - | - |
| American Calf Products | - | - | - | - | - | - | - |
| B & H Farming-Randy B & Tom Haynes | - | - | - | - | - | - | - |
| BUNGE Canada | - | - | - | - | - | - | - |
| Carne I Corp. | - | - | - | - | - | - | - |
| H&M Custom | 250,000 | - | - | - | - | - | - |
| Healthy Earth Enterprises, LLC | - | - | - | - | - | - | - |
| Holesinsky Farms LLC | - | - | - | - | - | - | - |
| J.D. Heiskell & Co. | - | - | - | - | - | - | - |
| Kody Youree | - | - | - | - | - | - | - |
| Land View, Inc-Livestock- Animal Care | - | 500,000 | - | - | - | 500,000 | - |
| Milner Hay Co. | - | - | - | - | - | - | - |
| Moss Grain Partnership | - | - | - | - | - | - | - |
| PerforMix Nutrition Systems | - | - | - | - | - | - | - |
| Receptor Food Group | - | 100,000 | - | - | - | 100,000 | - |
| Standlee Premium Products | - | - | - | - | - | - | - |
| Wada Farms | - | - | - | - | - | - | - |
| Viserion Grain, LLC | - | - | - | - | - | - | - |
| Viterra USA Grain, LLC | - | - | - | - | - | - | - |
| WAG Services Inc | - | - | - | - | - | - | - |
| [Silage Group] | - | 1,000,000 | - | - | - | 1,000,000 | - |
| **Vet/Med** | 125,000 | 125,000 | - | - | - | - | - |
| David Clark DVM | - | - | - | - | - | - | - |
| MWI Veterinary | 125,000 | 125,000 | - | - | - | - | - |
| **Repairs & Maintenance** | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | - |
| Automation Werx, LLC | - | - | - | - | - | - | - |
| Boyce Equipment & Parts Co., Inc. | - | - | - | - | - | - | - |
| Clear Water Products, LLC | - | - | - | - | - | - | - |
| Coastline | - | - | - | - | - | - | - |
| Electrical Werx & Construction, LLC | - | - | - | - | - | - | - |
| Elevation Electric | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | - |
| Ferguson Enterprises, Inc. | - | - | - | - | - | - | - |
| Floyd Lilly Company, Inc | - | - | - | - | - | - | - |
| G.J. Verti-line Pumps, Inc. | - | - | - | - | - | - | - |
| Green Source Automation | - | - | - | - | - | - | - |
| Progressive Dairy Service and Supplies | - | - | - | - | - | - | - |
| Schows Truck Center - Heyburn | - | - | - | - | - | - | - |
| Schow's Auto Parts - Rupert | - | - | - | - | - | - | - |
| The Dairy Solutions Group | - | - | - | - | - | - | - |
| Western States Cat | - | - | - | - | - | - | - |
| Xavier Farm Services, LLC | - | - | - | - | - | - | - |
| **Chemicals** | 32,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | - |
| Rocky Mountain Agronomics | 20,000 | - | - | - | - | - | - |
| Clear Lakes Products | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | - |
| **Semen** | - | - | - | - | - | - | - |
| ABS Global, Inc. | - | - | - | - | - | - | - |
| **Trucking** | - | - | - | - | - | - | - |
| JF Fams Inc. | - | - | - | - | - | - | - |
| Llanos Trucking LLC | - | - | - | - | - | - | - |
| Novoa Trucking | - | - | - | - | - | - | - |
| S & O Mata Trucking LLC | - | - | - | - | - | - | - |
| Taqueria Tamazula Trucking | - | - | - | - | - | - | - |
| V & M Trucking LLC | - | - | - | - | - | - | - |
| **Other** | - | - | - | - | - | - | - |
| Butte Irrigation Inc | - | - | - | - | - | - | - |
| Darling Ingredients | - | - | - | - | - | - | - |
| J & C Hoof Trimming, Inc | - | - | - | - | - | - | - |
| **TOTAL** | $ 420,000 | $ 1,750,000 | $ 25,000 | $ 25,000 | $ 25,000 | $ 1,625,000 | $ - |

| [Silage Group] | |
| --- | ---: |
| Chojnacky, Ed & Matt | 706,084 |
| Grant 4-D Farms, LLC | 396,602 |
| Grant & Hagan Inc. | 604,552 |
| Douglas J Grant | 222,617 |
| Hollifield Ranches, Inc | 2,044,794 |
| Star Falls-Steven & Doug Huettig | 202,439 |
| Bo Stevenson- B & A Farms | 195,479 |
| Triple C Farms | 1,000,195 |
| Reed Farms | 130,992 |
| Standing 16 Ranch | 541,454 |
| Clint Thompson | 49,000 |
| Ken or Jean Thompson | 38,000 |
| Steel Ranch LLC - Cody Nelson | 160,000 |
| Dusty Brow Farms - Brett Nelson | 245,000 |
| | **6,537,207.82** |