UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| In re:<br><br>MILLENKAMP CATTLE, INC.,<br><br>Debtor. | Case No. 24-40158-NGH |
| Filing relates to:<br><br>☒ ALL DEBTORS<br>☐ Millenkamp Cattle, Inc.<br>☐ Idaho Jersey Girls<br>☐ East Valley Cattle<br>☐ Millenkamp Properties<br>☐ Millenkamp Properties II<br>☐ Millenkamp Family<br>☐ Goose Ranch<br>☐ Black Pine Cattle<br>☐ Millenkamp Enterprises<br>☐ Idaho Jersey Girls Jerome Dairy | Jointly Administered With<br>Case Nos.:<br><br>24-40159-NGH (Idaho Jersey Girls)<br>24-40160-NGH (East Valley Cattle)<br>24-40161-NGH (Millenkamp Properties)<br>24-40162-NGH (Millenkamp Properties II)<br>24-40163-NGH (Millenkamp Family)<br>24-40164-NGH (Goose Ranch)<br>24-40166-NGH (Black Pine Cattle)<br>24-40167-NGH (Millenkamp Enterprises)<br>24-40165-NGH (Idaho Jersey Girls Jerome<br>Dairy)<br><br>Chapter 11 Cases |

**FINAL ORDER AUTHORIZING THE DEBTORS TO (A) OBTAIN POST-PETITION FINANCING; AND (B) GRANTING ADEQUATE PROTECTION TO PRE-PETITION SECURED LENDERS**

Upon the motion, dated April 2, 2024 (the "Motion"), of Millenkamp Cattle, Inc. ("Millenkamp Cattle") and its affiliated debtors and debtors-in- possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), seeking, pursuant to sections 105, 361, 362, 363, 364, 503, 506, 507, and 552 of title 11 of the United States Code, 11

#3944135

U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), Rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), and the Local Bankruptcy Rules (the "Local Rules" or "LBR"), entry of a final order (this "Final Order") authorizing the Debtors to enter into a senior secured, superpriority debtor-in-possession financing facility with Sandton Capital Solutions Master Fund VI, LP (the "DIP Lender") in an aggregate principal amount of not more than $45 million; the Court having jurisdiction to consider the matters raised in the Motion pursuant to 28 U.S.C. § 1334; and the Court having authority to hear the matters raised in the Motion pursuant to 28 U.S.C. § 157; and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and consideration of the Motion and the requested relief being a core proceeding that the Court can determine pursuant to 28 U.S.C. § 157(b)(2); and due and proper notice of the Motion and opportunity for a hearing on the Motion having been given, and it appearing that no other or further notice need be provided; and the Court having reviewed and considered the Motion, the *Declaration of William John Millenkamp in Support of the First-Day Motions and Relief* (the "Millenkamp Declaration"); and the Court having held an interim hearing on April 4, 9, 10 and 16, 2024 (the "Interim Hearing"), and a hearing on May 8 and 9, 2024 to consider entry of this Final Order (the "Final Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and in the Millenkamp Declaration, at the Interim Hearing, and the Final Hearing, establish just cause for the relief granted herein; and the Court having found the relief requested in the Motion to be fair, reasonable, and in the best interests of the Debtors, and their estates; and the Court having determined that the relief requested in the Motion is essential for the continued operation of the Debtors' businesses and providing for the well-being of their livestock; and all objections, if any, to the entry of this Final Order having been withdrawn, resolved or overruled by the Court; and upon all of the proceedings had before the

Court; after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[1]**

A.    **Petition Date.**  On April 2, 2024 (the "Petition Date"), the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for District of Idaho (the "Court") commencing the Chapter 11 Cases.  The Debtors have continued in the management and operation of their businesses and properties as debtors-in-possession pursuant to Bankruptcy Code §§1107(a) and 1108.  **No trustee or examiner has yet been appointed in the Chapter 11 cases. An official statutory committee of unsecured creditors (such official committee, the "Committee") was appointed on May 14, 2024.** *See* **Doc. No. 297.** ~~No trustee, examiner, or official statutory committee of unsecured creditors (such official committee, the "Committee") has yet been appointed in the Chapter 11 Cases.~~[2]

B.    **Jurisdiction and Venue.**  The Court has jurisdiction over these proceedings, pursuant to 28 U.S.C. § 1334.  Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue for the Chapter 11 Cases and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  Pursuant to Bankruptcy Rule 7008, the Debtors consent to the entry of a final order by the Court in connection with the Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

---

[1]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

[2]    Language modified by Court.

C.      **Notice**.  The Court entered the Interim Order on April 19, 2024 (Doc. No. 206). Under the circumstances of the Chapter 11 Cases, proper, timely, adequate and sufficient notice of the Motion, the Final Hearing, and the Final Order has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice of the Motion, the Final Hearing, or this Final Order shall be required.

D.      **Findings Regarding Corporate Authority.** As set forth in the resolutions filed related to the bankruptcy petitions and the Millenkamp Declaration, each Debtor has the requisite corporate power and authority to execute and deliver the DIP Facility to which it is a party, to grant the DIP Liens and DIP Superpriority Claim, and to perform its obligations thereunder.

E.      **Immediate Need for Postpetition Financing.**  Good cause has been shown for entry of this Final Order.  The immediate ability of the Debtors to preserve and maintain the value of their assets, and provide for the well-being of livestock requires the availability of working capital from the DIP Facility[3], to continue operations, pay the costs and expenses of administering the Chapter 11 Cases, and administer and preserve the value of their businesses and estates.  In the absence of the continued availability of such funds and liquidity in accordance with the terms hereof (including access to the DIP Facility), the continued operation of the Debtors' businesses would not be possible, and immediate and irreparable harm to the Debtors, their estates, and their creditors would occur.

F.      **No Credit Available on More Favorable Terms.**  The Debtors have exercised reasonable business judgment to obtain credit on the terms and conditions provided in this Final Order. The Debtors are unable to obtain unsecured credit for borrowed money, and the DIP

---

[3] Capitalized terms used, but not otherwise defined in this Final Order, shall have the meaning ascribed to such terms in the Motion, Interim Order, and/or DIP Facility.

Superpriority Claim (as defined below) and without granting the adequate protection as and to the extent set forth herein.

G.     **Adequate Protection for Pre-Petition Secured Lenders.**

(i)     The Pre-Petition Secured Lenders' interests are  adequately protected through an "equity cushion" on their collateral (and as stated below with respect to Conterra Holdings, LLC d/b/a Conterra Ag Capital as loan servicer and power of attorney, pursuant to the Conterra Stipulation (defined in Paragraph 9 below)), and solely to the extent of any diminution in the value of their respective interests in the Pre-Petition Collateral resulting from, among other things, the subordination to the Carve Out, the DIP Liens, and the DIP Superpriority Claim, the Debtors' use, sale, or lease of such Pre-Petition Collateral, including Cash Collateral, and the imposition of the automatic stay from and after the Petition Date (collectively, and solely to the extent of such diminution in value, the "Diminution in Value") (and subject to the Carve Out and the Debtors' preserved rights, with respect solely to the Pre-Petition Collateral, pursuant to section 506(c) of the Bankruptcy Code), in the form of replacement security interests in and liens on substantially all of the Debtors' assets and property (with certain exclusions) and superpriority claims (in each case, in accordance with their relative priorities, and junior and subject to the liens and superpriority claims granted to the DIP Lender).

(ii)     Accordingly, under the circumstances of the Chapter 11 Cases, the equity cushion provides adequate protection to the Pre-Petition Secured Lenders pursuant to Bankruptcy Code §§ 361, 362, 363, and 364.

(iii)     The DIP Facility is critical to the Debtors' ability to preserve the Debtors' assets; is in the best interests of the Debtors and their estates; and necessary to avoid irreparable harm to the Debtors.  Further, access to the proceeds under the DIP Facility is necessary to avoid

immediate and irreparable harm to the value of the Debtors' assets and the care of the livestock.

H.    **Extension of Financing.**  The DIP Lender committed to provide financing to the Debtors in accordance with the DIP Facility, and subject to (i) the entry of this Final Order, and approval of each provision of the DIP Facility, and (ii) findings by this Court that financing pursuant to the DIP Facility of an aggregate principal amount not to exceed $45 million is essential to the Debtors' estates.

I.    **Business Judgment and Good Faith Pursuant to § 364(e).**  The terms and conditions of the DIP Facility (including the fees, expenses, and other amounts paid and to be paid thereunder), are fair, reasonable, and adequate given the circumstances of the Debtors, reflect the Debtors' exercise of their reasonable business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration.  All obligations incurred, payments made, and transfers or grants of security set forth in this Final Order and the other DIP Facility documents by any Debtor are (and were) granted to or for the benefit of the DIP Lender for fair consideration and reasonably equivalent value, and are (and were) granted contemporaneously with the making of the Loans and/or commitments and other financial accommodations secured thereby.  The DIP Facility was negotiated in good faith and at arm's length among the Debtors, the DIP Lender, and, as applicable, their respective professionals. The use of the proceeds to be extended under the DIP Facility will be so extended in good faith and for valid business purposes and uses.  The DIP Lender is entitled to the protection and benefits of Bankruptcy Code § 364(e).

J.    **Relief Essential; Best Interests; Good Cause.**  The relief requested in the Motion (and granted or otherwise provided for in this Final Order), is necessary, essential and appropriate for the continued operation of the Debtors' businesses and the management and

preservation of the Debtors' assets and property and satisfies the requirements of Bankruptcy Rule 6003. It is in the best interest of the Debtors' estates, and consistent with the Debtors' exercise of their fiduciary duties, that the Debtors be (a) allowed to enter into the DIP Facility and (b) grant the liens and claims contemplated herein and under the DIP Facility to or for the benefit of the DIP Lender.

**NOW, THEREFORE,** based upon the foregoing, and after due consideration and good cause appearing therefor, **IT IS ORDERED** that:

1.     **Motion Granted.** The Motion is granted on a final basis in accordance with the terms and conditions set forth in this Final Order and in the DIP Facility and related documents (the "DIP Credit Documents"). Any objections to the Motion with respect to entry of this Final Order to the extent not withdrawn, waived or otherwise resolved, and all reservation of rights included therein, are hereby denied and overruled, except as allowed herein.

2.     **DIP Facility.**

(a)     *DIP Obligations*. The Debtors are expressly and immediately authorized, empowered, and directed, to enter into the DIP Facility and to continue to incur and to perform all obligations under the DIP Facility, in accordance with and subject to the terms of this Final Order and the DIP Facility. The Debtors are hereby authorized and directed to pay all principal, interest, fees and expenses, indemnities, as applicable under the DIP Facility, and other amounts described herein and in the other DIP Credit Documents as such shall accrue and become due hereunder or thereunder (collectively, all loans, advances, extensions of credit, financial accommodations, fees, expenses, obligations, and all other Liabilities (including indemnities and similar obligations), as applicable, in respect of the DIP Facility (the "DIP Obligations")). The DIP Facility and all DIP Obligations shall represent, constitute and evidence, as the case may

be, valid and binding obligations of the Debtors, enforceable against the Debtors, their estates, and any successors thereto in accordance with their terms. The failure specifically to identify or refer to any particular provision of any DIP Credit Document or any other agreement in this Final Order shall not diminish or impair the effectiveness of such provision.

(b)      *Authorization to Borrow*.  To enable the Debtors to continue to operate their businesses, subject to the terms and conditions of this Final Order and the DIP Facility, the Debtors are hereby authorized to enter into the DIP Facility, which may include the Debtors' borrowing an aggregate principal amount of $45 million under the DIP Facility. However, the Debtors are initially only authorized to draw an additional $10 million under the DIP Facility. To access additional funds under the DIP Facility, the Debtors are required to obtain an additional order from the Court authorizing such future advances on the $45 million DIP Facility. The Debtors are required to (i) move the Court for entry of an order authorizing such future advances with notice and opportunity to be heard by other parties in interest, specifically including the Pre-Petition Secured Lenders, any Committee, and the United States Trustee, and (ii) justify the need for any such future advances.

(c)      *DIP Collateral*.  As used herein, "DIP Collateral" shall refer to and mean, all of the existing and after-acquired real property and personal, tangible and intangible, assets of the Debtors and all "property of the estate" (as that term is utilized in the Bankruptcy Code) including, without limitation, all cash, cash equivalents, bank deposit and securities accounts, accounts, other receivables, chattel paper, contract rights, inventory, instruments, documents, securities (whether or not marketable), equipment, fixtures, real property interests, franchise rights, general intangibles, investment property, supporting obligations, tax refunds, securities, franchise rights, letter of credit rights, commercial tort claims, causes of action (other than

59797.0007.17166389.2

avoidance actions) and all substitutions, accessions and proceeds of the foregoing, wherever located, including insurance or other proceeds, patents, tradenames, trademarks, copyrights, intellectual property and all substitutions, accessions and proceeds of such intellectual property, wherever located, including insurance or other proceeds.

(d)    *DIP Liens*. Effective immediately upon entry of this Final Order, and subject to the Carve-Out, and as set forth more fully in this Final Order, and the DIP Facility, the DIP Lender is hereby granted, pursuant to and in accordance with §§ 364(c) and (d) of the Bankruptcy Code, valid, perfected, continuing, enforceable, non-avoidable first priority liens and security interests on the DIP Collateral of each Debtor (the "DIP Liens"), and shall prime all other liens and security interests on the DIP Collateral, including any liens and security interests in existence on the Petition Date, and any other current or future liens granted on the DIP Collateral, including any adequate protection or replacement liens granted on the DIP Collateral (the "Primed Liens"). The DIP Liens shall be effective and perfected as of the entry of this Final Order, without need for any additional filings or documentation, except to the extent requested by the DIP Lender in its sole discretion.  The DIP Liens, DIP Superpriority Claim (defined below) and other rights and remedies granted under this Final Order to the DIP Lender shall continue in these Chapter 11 Cases and any successor case(s), and shall be valid and enforceable against any trustee appointed in any or all of the Debtors' Chapter 11 Cases and upon the dismissal of any or all of the Debtors' Chapter 11 Cases, or in any successor case(s), and such liens and security interests shall maintain their priority as provided in this Final Order until all the DIP Obligations have been indefeasibly paid in full in cash and the DIP Lender's commitments have been terminated in accordance with the DIP Credit Documents and this Final Order.  Notwithstanding, the DIP Liens shall not have priority, but shall have second priority,

59797.0007.17166389.2

solely with respect to (i) any purchase money security interest lien ("PMSI Lien") held by any financing party holding a valid first-priority, non-avoidable PMSI Lien on any equipment or other asset of the Debtors as of the Petition Date and (ii) any valid, first-priority, non-avoidable statutory lien held by feed or other suppliers existing as of the Petition Date. Further notwithstanding, with regard to the real property identified by the parties as the "German Dairy" (in which Conterra as servicer currently holds a first-priority perfected lien for Conterra's Rooster Loan in the original principal amount of $2,549,750), the DIP Liens shall not have a first-priority lien or super-priority lien status to the extent Conterra has a valid first-priority, non-avoidable lien against the German Dairy as of the Petition Date, but shall be a second-priority lien behind Conterra's existing first-position lien.

(e)     *DIP Superpriority Claim*.  Effective immediately upon entry of this Final Order, pursuant to Bankruptcy Code § 364(c)(1), and subject in each case to the Carve-Out, the DIP Facility and Loans shall be entitled to superpriority administrative expense claim status in the Chapter 11 Cases of each Borrower (the "DIP Superpriority Claims"), which DIP Superpriority Claims in respect of the DIP Facility shall have priority over any and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kinds specified in or arising or ordered under §§ 105(a), 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, 1113, and 1114 and any other provision of the Bankruptcy Code or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which shall be payable from and have recourse to all assets and properties of the Debtors, and which shall be against each of the Borrowers who are Debtors (jointly and severally), with priority over any and all other administrative expenses, adequate protection

claims, diminution in value claims, and all other claims asserted against the Debtors now existing or hereafter arising of any kind whatsoever (whether secured or unsecured), subject only to the Carve-Out.

        (f)     **Authorization and Approval to Use DIP Facility Proceeds.**  Subject to the terms and conditions of this Final Order and the DIP Facility, each Debtor is authorized to use the $10 million advance under the DIP Facility during the period commencing immediately after entry of this Final Order, pursuant to the terms of the Budget attached to the Final Cash Collateral Order ("Budget").  As set forth in section 2(b) of this Final Order, to access additional funds from the DIP Facility, the Debtors are required to obtain an additional order from the Court authorizing future advances on the DIP Facility. Debtors are required to (i) move the Court for such future advances with notice and opportunity to be heard by other parties in interest, specifically including the Pre-Petition Secured Lenders, any Committee, and the United States Trustee, and (ii) justify the need for such future advances.  Nothing in this Final Order shall limit or act as a waiver of the Pre-Petition Secured Lenders' rights to object to the Debtors' motion for future advances.

        3.     **Adequate Protection for Pre-Petition Secured Lenders.** The Pre-Petition Secured Lenders are provided adequate protection through an equity cushion on their collateral, and solely to the extent of any diminution in the value of their respective interests in the Pre-Petition Collateral resulting from, among other things, the subordination to the Carve-Out and to the DIP Liens, the Debtors' use, sale, or lease of such Pre-Petition Collateral as set forth in the Budget, including Cash Collateral, and the imposition of the automatic stay from and after the Petition Date (collectively, and solely to the extent of such diminution in value, the "Diminution in Value") (and subject to the Carve-Out and the Debtors' preserved rights

pursuant to § 506(c) of the Bankruptcy Code), in the form of replacement security interests in and liens on all post-petition collateral to the same validity, extent, and priority, as existed pre-petition, and superpriority claims (in each case, in accordance with their relative collateral rights and priorities, and junior and subject to the liens and superpriority claims granted to the DIP Lender).

In addition, the Pre-Petition Secured Lenders shall further receive monthly interest-only payments at the pre-default rate of interest accruing on and after the Petition Date, on or before the tenth day of each month (the "Monthly Interest Payments").

Accordingly, under the circumstances of the Chapter 11 Cases, the equity cushion, together with the Monthly Interest Payments, provide adequate protection pursuant to Bankruptcy Code §§ 361, 362, 363, and 364 to the Pre- Petition Secured Lenders.

Further, as set forth in the Conterra Stipulation, Conterra, with respect to the German Dairy, will continue to have the first priority lien and the DIP Facility and Loans will have the second priority lien, as set forth in Paragraph 2(d) above.

4.     **DIP Lien and Adequate Protection Lien Perfection.**  This Final Order shall be sufficient and conclusive evidence of the validity, perfection and priority of the DIP Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document that may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect the DIP Liens or to entitle the DIP Liens to the priorities granted herein. Notwithstanding the foregoing:

(a)     The DIP Lender may file such financing statements, deeds of trust, mortgages, security agreements, notices of liens and other similar documents, and is hereby granted relief from the automatic stay of Bankruptcy Code § 362 in order to do so, and all such

financing statements, deeds of trust, mortgages, security agreements, notices and other agreements or documents shall be deemed to have been filed or recorded as of the Petition Date and no defect in any such act shall affect or impair the validity, perfection and enforceability of the liens granted hereunder;

(b)      The Debtors shall execute and deliver to the DIP Lender all such financing statements, deeds of trust, mortgages, security agreements, notices and other documents as the DIP Lender may reasonably request to evidence, confirm, validate or perfect, or to insure the contemplated priority of the DIP Liens; and

(c)      In lieu of obtaining such consents or filing any mortgages, financing statements, notices of lien or similar instruments, the DIP Lender may, in its sole discretion, choose to file a true and complete copy of this Final Order in any place at which any such instruments would or could be filed, together with a description of the DIP Collateral, and such filing shall have the same effect as if such mortgages, deeds of trust, financing statements, notices of lien or similar instruments had been filed or recorded as of the Petition Date.

5.      **Carve-Out.** The DIP Liens, DIP Superpriority Claim, the Prepetition Liens, the Prepetition Replacement Liens, and the Prepetition Superiority Claims are subordinate only to the Carve-Out. The Carve-Out shall mean a carve-out in an amount equal to the sum of (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee under § 1930(a) of title 28 of the United States Code plus interest at the statutory rate; (ii) all reasonable and documented fees and expenses incurred by a trustee under Bankruptcy Code §726(b), in an aggregate amount not to exceed $250,000; (iii) to the extent allowed by the Court at any time, whether by interim order, procedural order or otherwise (unless subsequently disallowed), all unpaid fees and expenses (the "Professional Fees") incurred by persons or firms retained by the Debtors

pursuant to Bankruptcy Code §§ 327, 328, or 363 or by the Committee, pursuant to Bankruptcy

Code §§328 and 1103 (collectively, the "Professional Persons").

      6.    **Other Rights and Obligations.**

      (a)    *Expenses*.  The Debtors will be responsible for the DIP Lender's out of

pocket reasonable fees and expenses incurred by the DIP Lender to put the DIP Facility in place,

to manage the DIP Facility and Loans, and to enforce the terms of the DIP Facility and Loans

(absent an event of default). The Lender Expenses (as defined in the DIP Credit Documents)

include reasonable and documented fees and disbursements of counsel for the DIP Lender.

      (b)    *Binding Effect*.  The provisions of this Final Order shall be binding upon

and inure to the benefit of the DIP Lender and the Pre-Petition Secured Lenders, the Debtors,

and their respective successors and assigns (including any trustee or other fiduciary hereinafter

appointed as a legal representative of the Debtors or with respect to the property of the estates

of the Debtors) whether in the Chapter 11 Cases, in any successor cases, or upon dismissal of

any such chapter 11 or chapter 7 cases.

      (c)    *Limitation on Surcharge*. Without limiting the terms of the Carve Out,

no costs or expenses of administration which have been or may be incurred in the Chapter 11

Cases or any successor case(s) at any time shall be surcharged against, and no person may seek

to surcharge any costs or expenses of administration against the DIP Lender or the DIP

Collateral, pursuant to sections 105 or 506(c) of the Bankruptcy Code or otherwise, without the

prior written consent of the DIP Lender. No action, inaction or acquiescence by the DIP Lender

shall be deemed to be or shall be considered evidence of any alleged consent to a surcharge

against the DIP Lender or the DIP Collateral.

      (d)    *Application of Collateral Proceeds*. To the extent required by this Final

Order and the DIP Credit Documents, unless otherwise ordered by the Court, after (a) an Event of Default and (b) the receipt by the Debtors of written notice that the DIP Lender will no longer fund the Debtors through the proceeds of the DIP Facility and Loans, the Debtors are hereby authorized to remit to the DIP Lender, subject to the payment of the Carve-Out, one hundred percent (100%) of all collections on, and proceeds of, the DIP Collateral subject to the lien priorities set forth in Paragraph 2(d) herein until the DIP Obligations are paid in full, and the automatic stay provisions of § 362 of the Bankruptcy Code are hereby modified to permit the DIP Lender to retain and apply all collections, remittances, and proceeds of the DIP Collateral in accordance with the DIP Credit Documents. In furtherance of the foregoing, (a) all cash, securities, investment property and other items of any Debtor deposited with any bank or other financial institution shall be subject to a perfected, first priority security interest in favor of the DIP Lender, (b) upon the occurrence and during the continuance of an Event of Default and after notice of a Termination Declaration (as defined in the DIP Credit Documents), each bank or other financial institution with an account of any Debtor is hereby authorized to (i) comply at all times with any instructions originated by the DIP Lender to such bank or financial institution directing the disposition of cash, securities, investment property and other items from time to time credited to such account, without further consent of any Debtor, including, without limitation, any instruction to send to the DIP Lender by wire transfer (to such account as the DIP Lender shall specify, or in such other manner as the DIP Lender shall direct) all such cash, securities, investment property and other items held by it, and (ii) waive any right of set off, banker's lien or other similar lien, security interest or encumbrance that is or may be invoked against the DIP Lender and (c) any deposit account or securities account control agreement executed and delivered by any bank or other financial institution or any Debtor prior to the

Petition Date shall establish co-control in favor of the DIP Lender of any and all accounts subject thereto and any and all cash, securities, investment property and other items of any Debtor deposited therein to secure the DIP Obligations (provided that primary control rights shall vest in the DIP Lender), and all rights thereunder in favor of any pre-petition party shall inure also to the benefit of, and shall be exercisable exclusively by, the DIP Lender, until all of the DIP Obligations have been paid in full in cash.

(e)     *No Marshaling*. In no event shall the DIP Lender be subject to the equitable doctrine of marshaling or any similar doctrine.

(f)     *Collateral Rights.* Subject to and except as set forth in this Final Order and any further order of the Bankruptcy Court entered without the objection of the DIP Lender authorizing the Debtors to make payments to prepetition creditors (including the Monthly Interest Payments), if any party who holds a lien or security interest in DIP Collateral that is junior or otherwise subordinate to the DIP Liens in such DIP Collateral receives or is paid the proceeds of such DIP collateral, or receives any other payment with respect thereto from any other source prior to the indefeasible payment in full in cash and the complete satisfaction of all DIP Obligations under the DIP Credit Documents and termination of the commitments thereunder in accordance with the DIP Credit Documents, such junior or subordinate lienholder shall be deemed to have received, and shall hold, the proceeds of any such DIP Collateral in trust for the DIP Lender and shall immediately turn over such proceeds to the DIP Lender for application to repay the DIP Obligations in accordance with the DIP Credit Documents and this Final Order until the DIP Obligations are indefeasibly paid in full in cash.

(g)     *Injunction*. Until such time as all DIP Obligations are indefeasibly paid in full in cash, the Debtors shall be enjoined and prohibited from, at any time during these

Chapter 11 Cases, granting liens on DIP Collateral or any portion thereof to any other party, pursuant to § 364(d) of the Bankruptcy Code or otherwise, which liens are senior to or *pari passu* with the liens granted to the DIP Lender except in accordance with the DIP Credit Documents and this Final Order.

(h)     *No Third Party Rights*. Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, third party or incidental beneficiary.

(i)     *Limits on Lenders' Liability.* Nothing in this Final Order or in any of the DIP Credit Documents or any other documents related to this transaction shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender of any liability for any claims arising from any and all activities by the Debtors or any of their subsidiaries or affiliates in the operation of their businesses or in connection with their restructuring efforts.  In (a) administering the DIP Facility and Loans, (b) extending other financial accommodations to the Debtors under the DIP Credit Documents, and (c) making the decision to collect the indebtedness and obligations of the Debtors, the DIP Lender shall not (x) owe any fiduciary obligation to the Debtors or any other party with respect to their exercise of any consent or other rights afforded them under the DIP Credit Documents or this Final Order or (y) be exercising control over any operations of the Debtors or acting in any way as a responsible person.

(j)     *Amendment*.  The Debtors and the DIP Lender may amend, modify, supplement or waive any provision of the DIP Credit Documents with notice and opportunity to be heard by other parties in interest upon reasonable notice, *provided* that such notice shall not be deemed to create any approval rights.  No waiver, modification, or amendment of any of the provisions hereof shall be effective unless set forth in writing, signed by, or on behalf of, all

the Debtors and the DIP Lender and approved by the Court after notice to parties in interest.

(k)    *Priority of Terms*.  To the extent of any conflict between or among (i) the express terms or provisions of any of the other DIP Credit Documents, the Motion, any other order of this Court, or any other agreements, on the one hand, and (ii) the terms and provisions of this Final Order, on the other hand, unless such term or provision herein is phrased in terms of "defined in" or "as set forth in" the DIP Facility, the terms and provisions of this Final Order shall govern.

(l)    *Survival of Final Order*.  Except to the extent approved by the DIP Lender and as may be set forth in the Final Order, the provisions of this Final Order and any actions taken pursuant hereto shall survive, and shall not be modified, impaired or discharged by, any order which may be entered (i) confirming any chapter 11 plan in the Chapter 11 Cases, (ii) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, (iii) dismissing any of the Chapter 11 Cases, (iv) terminating the joint administration of the Chapter 11 Cases, (v) withdrawing of the reference of any of the Chapter 11 Cases from this Court, or (vi) providing for abstention from handling or retaining of jurisdiction of any of the Chapter 11 Cases in this Court.  Except to the extent approved by the DIP Lender and as may be set forth in this Final Order, the terms and provisions of this Final Order, including all the rights, remedies, powers, privileges, liens, priorities, the DIP Liens and DIP Superpriority Claims granted pursuant to this Final Order, and any protections granted to or for the benefit of the Pre-Petition Secured Lenders (including any adequate protection, if applicable), shall continue in full force and effect notwithstanding the entry of such order, or in the event any or all of the provisions of this Final Order are hereafter modified, amended or vacated by a subsequent order of this Court

or any other court, and such DIP Liens and DIP Superpriority Claims shall maintain their priorities as provided by this Final Order and the other DIP Credit Documents, until all of the DIP Obligations have been indefeasibly paid and fully satisfied in accordance with the DIP Credit Documents, as the case may be, and discharged.

(m)     *Dismissal and Conversion.* If an order dismissing or converting any of these Chapter 11 Cases under §§ 305 or 1112 of the Bankruptcy Code or otherwise, or appointing a chapter 11 trustee or a responsible officer or examiner with expanded powers, is at any time entered, such order shall provide that (a) the DIP Liens and the DIP Superpriority Claims, granted hereunder and in the DIP Credit Documents, shall continue in full force and effect, remain binding on all parties-in-interest, and maintain their priorities as provided in this Final Order and the DIP Credit Documents; and (b) this Court shall retain jurisdiction, notwithstanding such dismissal, for purposes of enforcing the DIP Liens and the DIP Superpriority Claims. Any order dismissing any of these Chapter 11 Cases shall not be effective until the DIP Liens on the DIP Collateral are fully perfected under applicable non-bankruptcy law.

(n)     *Subsequent Reversal or Modification.*  This Final Order is entered pursuant to § 364 of the Bankruptcy Code, and Bankruptcy Rules 4001(b) and (c), granting the DIP Lender all protections and benefits afforded by § 364(e) of the Bankruptcy Code.

(o)     *Enforceability.* This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, 9024, or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall

be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

(p) *Objections Overruled.* All objections to the DIP Motion to the extent not addressed herein, withdrawn, or resolved, are hereby overruled.

(q) *Waiver of any Applicable Stay.* Any applicable stay (including, without limitation, under Bankruptcy Rule 6004(h) is hereby waived and shall not apply to this Final Order and this Final Order shall be immediately effective and enforceable upon its entry.

7. **Retention of Jurisdiction.** The Court has and will retain jurisdiction to enforce this Final Order according to its terms.

8. **Conterra Stipulation.** The "Conterra Stipulation" is as follows:

(i)     Conterra will receive monthly adequate protection payments at the pre-default rate of interest on both loans [the Ag Funding loan and the Rooster loan] accruing on and after the April 2, 2024 petition date payable monthly no later than the 10th day of the following month.

(ii)     With respect to the German Dairy on which Conterra's Rooster loan (in the original principal amount of $2,549,750), Conterra's Rooster loan will continue to have the first priority lien and Sandton's DIP loan will have the second priority lien.

// End of Text //

DATED: May 17, 2024

_____
NOAH G. HILLEN
Chief U.S. Bankruptcy Judge

Order submitted by:

Krystal R. Mikkilineni, attorney for the Debtors

FINAL ORDER AUTHORIZING DEBTORS TO OBTAIN POST-PETITION FINANCING – Page 20

59797.0007.17166389.2

Approved as to form:

/s/ *Richard J. Bernard*
John F. Kurtz, Jr.
Richard J. Bernard
*Attorneys for Sandton Capital Partners LP*


/s/ *Ron C. Bingham*
Kimbell D. Gourley
Nikolaus F. Schandlbauer
Ron C. Bingham
*Attorneys for Metropolitan Life Insuance Company*
*and MetLife Real Estate Lending LLC*


/s/ *John O'Brien*
John O'Brien
Scott C. Powers
*Attorneys for Conterra Holdings LLC d/b/a*
*Conterra Ag Capital as loan servicers and power*
*of attorney for Ag Funding SC II LLC and Conterra*
*Holdings LLC d/b/a Conterra Ag Capital as loan*
*servicer and power of attorney for Rooster Capital*
*IV LLC*


/s/ *Sheila R. Schwager*
Sheila R. Schwager
Andrew Schoulder
*Attorneys for Rabo Agrifinance LLC*