Matthew T. Christensen, ISB: 7213
J. Justin May, ISB: 5818
JOHNSON MAY
199 N. Capitol Blvd, Ste 200
Boise, Idaho 83702
Phone: (208) 384-8588
Fax: (208) 629-2157
Email: mtc@johnsonmaylaw.com
      jjm@johnsonmaylaw.com

Krystal Mikkilineni, *PHV*
Robert E. Richards, *PHV*
Tirzah Roussell, *PHV*
DENTONS
215 10th Street, Ste 1300
Des Moines, IA 50309
Phone: (515) 288-2500
Fax: (515) 243-0654
Email: krystal.mikkilineni@dentons.com
      robert.richards@dentons.com
      tirzah.roussell@dentons.com

Attorneys for the Debtor

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| In re:<br><br>MILLENKAMP CATTLE, INC.,<br><br>    Debtor.<br><br>Filing relates to:<br><br>☒   ALL DEBTORS<br><br>☐   Millenkamp Cattle, Inc.<br><br>☐   Idaho Jersey Girls<br><br>☐   East Valley Cattle<br><br>☐   Millenkamp Properties | Case No. 24-40158-NGH<br><br><br><br>Jointly Administered With<br>Case Nos.:<br><br>24-40159-NGH (Idaho Jersey Girls)<br>24-40160-NGH (East Valley Cattle)<br>24-40161-NGH (Millenkamp Properties)<br>24-40162-NGH (Millenkamp Properties II)<br>24-40163-NGH (Millenkamp Family)<br>24-40164-NGH (Goose Ranch)<br>24-40166-NGH (Black Pine Cattle) |
|---|---|

#3949434

| | |
|---|---|
| ☐ Millenkamp Properties II | 24-40167-NGH (Millenkamp Enterprises) |
| ☐ Millenkamp Family | 24-40165-NGH (Idaho Jersey Girls Jerome Dairy) |
| ☐ Goose Ranch | Chapter 11 Cases |
| ☐ Black Pine Cattle | |
| ☐ Millenkamp Enterprises | |
| ☐ Idaho Jersey Girls Jerome Dairy | |
| _____ | |

## DEBTORS' AMENDED MOTION FOR ALLOWANCE AND PAYMENT OF SECTION 503(B)(9) CLAIMS

Millenkamp Cattle, Inc. ("Millenkamp Cattle") and its affiliated debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Case"), by and through its undersigned counsel, hereby respectfully submit this Amended Motion for Allowance and Payment of Section 503(b)(9) Claims (the "Amended Motion"). In support of this Amended Motion, the Debtors respectfully represent as follows:

### JURISDICTION

1. The Court has jurisdiction over this Amendment pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of the Amended Motion is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue is also proper under 28 U.S.C. §§ 1408 and 1409.

### BACKGROUND

3. On April 2, 2024 (the "Petition Date"), the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for District of Idaho

(the "Court") commencing the Chapter 11 Cases. The Debtors have continued in the management and operation of their businesses and properties as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

4. On May 14, 2024, the Office of the United States Trustee (the "UST") appointed an official committee of unsecured creditors pursuant to 11 U.S.C. § 1102(a) (the "Committee") (Docket No. 297).

5. On April 2, 2024, the Debtors filed a Motion for Allowance and Payment of Section 503(b)(9) Claims (the "503(b)(9) Motion") (Docket No. 15).

6. On April 24, 2024, the UST filed a partial objection to the 503(b)(9) Motion (the "Objection") (Docket No. 230).

7. On May 9th and 10th, the Court held a hearing on Debtors' first day motions (the "Hearing"). At the Hearing, the Court issued an oral ruling denying the Debtors' critical vendor motion. At the Hearing, the Court noted the Debtors may have other avenues to pay vendors, such as some vendors that hold section 503(b)(9) claims.

8. As such, the Debtors file this Amended Motion in further support of the original 503(b)(9) Motion and to amend the list of 503(b)(9) claimants (the "503(b)(9) Claimants"). Attached as Exhibit A to this Amendment is an updated list of the 503(b)(9) Claimants.

9. The Debtors respectfully request this Court allow them to pay approximately $5,815,545 in 503(b)(9) claims (the "503(b)(9) Claims") pursuant to Exhibit A attached hereto and the Debtors' budget submitted with the Debtors' final cash collateral order.

10. Due to the nature of their business, the Debtors received significant goods or other materials in the ordinary course from various vendors, namely 503(b)(9) Claimants—within the

20 days before the Petition Date. The 503(b)(9) Claimants consist of (1) feed vendors, (2) veterinarian/medicine vendors, (3) repair & maintenance vendors, (4) chemical suppliers, (5) semen vendors, (6) and an irrigation vendor.

11. Many of the Debtors' relationships with 503(b)(9) Claimants are not governed by long-term contracts. Rather, the Debtors often obtain essential supplies on an order-by-order basis. As a result, a 503(b)(9) Claimant may, and many have already indicated they will, refuse to supply new orders without payment of its prepetition claims. As noted by Debtors' representative, Bill Millenkamp, at the Hearing, Debtors believe and have been made aware that these 503(b)(9) Claimants may or will refuse to provide further essential goods until they are paid at least some of the prepetition 503(b)(9) Claim amounts. As noted by Mr. Millenkamp, each of the 503(b)(9) Claimants has stated they may stop providing goods if they are not paid some of their prepetition amounts owing.

12. As Mr. Millenkamp noted at the Hearing, these 503(b)(9) Claimants are crucial to the Debtors' ongoing operations. Any interruption of the flow of these goods and supplies would be highly disruptive and detrimental to the operations and could be value-destructive for the Debtors' business. In light of these consequences, the Debtors conclude that payment of the 503(b)(9) Claimants is essential to the Debtors' operations.

13. The estimated amounts owing to the 503(b)(9) Claimants pale in comparison to the potential damage to the Debtors' business if the Debtors' operations were to experience significant disruption due the 503(b)(9) Claimants ceasing to provide their goods to the Debtors. The health of the livestock is also a major factor to consider when determining allowance of payment of the 503(b)(9) Claimants prior to confirmation.

14. Section 503(b)(9) of the Bankruptcy Code provides that, "[a]fter notice and a hearing, there shall be allowed administrative expenses … including … the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business." 11 U.S.C. § 503(b)(9). The Debtors will be required to pay in full all claims entitled to administrative priority under section 503(b)(9) of the Bankruptcy Code as part of confirming any chapter 11 plan filed in the Chapter 11 Cases. *See* 11 U.S.C. § 1129(a)(9)(A) (requiring payment in full of priority claims on or before the effective date in order for a chapter 11 plan to be confirmed).

15. Bankruptcy courts have broad discretion in determining whether a request for payment of a claim as an administrative expense should be allowed. *In re Allen Care Centers, Inc.*, 163 B.R. 180 (Bankr. D. Or.), aff'd, 175 B.R. 397 (D. Or. 1994), aff'd, 96 F.3d 1328 (9th Cir. 1996). The Ninth Circuit BAP has also noted that the "determination of when an administrative expense is to be paid is within the discretion of the [bankruptcy] court." *In re Verco Indus.*, 20 B.R. 664, 665 (B.A.P. 9th Cir. 1982).

16. Although section 503(b)(9) of the Bankruptcy Code does not specify a time for payment of these expenses, bankruptcy courts have the discretion to allow for distributions to administrative claimants prior to confirmation if the debtor has the ability to pay and there is a need to do so. *See In re Glob. Home Prods., LLC*, Case No. 06-10340 (KG), 2006 WL 3791955, at *3 (Bankr. D. Del. Dec. 21, 2006) ("[T]he timing of the payment of that administrative expense claim is left to the discretion of the Court."); *In re HQ Global Holdings, Inc.*, 282 B.R. 169, 173 (Bankr. D. Del. 2002) (it is well settled that determinations concerning the payment of

administrative expenses outside of a plan of reorganization are matters within the sound discretion of the bankruptcy court); *In Re Plastech Engineered Prods.*, 394 B.R. 147, 152 (Bankr. E.D. Mich. 2008) (the timing for payment of an administrative expense is left to the sound discretion of the court). Indeed, nothing in the Bankruptcy Code prohibits the Debtors from paying such claims sooner if they chose to do so or this Court from exercising its discretion to authorize the postpetition payment of such obligations prior to confirmation of a chapter 11 plan. *See In re Dura Auto. Sys. Inc*., Case No. 06-11202 (KJC) (Bankr. D. Del. Oct. 31, 2006) Hr'g Tr. 49:21– 23 ("I think arguably the [D]ebtor could pay its 503(b)(9) claimants without court approval.") *In re The Great Atlantic & Pacific Tea Co., et al*., No. 10-24549 (Bankr. S.D.N.Y. Dec. 14, 2010) (Nos. 55, 504) (authorizing payment of 503(b)(9) claims up to $5 million); *In re Lear Corp*., No. 09-14326 (Bankr. S.D.N.Y. July 8, 2009) [Docket No. 68, 245] (authorizing payment of 503(b)(9) claims up to $23.15 million on an interim basis and $46.3 million on a final basis); *In re Chrysler LLC*, No. 09-50002 (Bankr. S.D.N.Y. May 20, 2009) [Docket No. 1318] (authorizing debtors to pay uncapped "claims of any creditors or claimants entitled to administrative priority pursuant to section 503(b)(9)").

17.  Since the liability is an administrative expense and not a prepetition claim, a chapter 11 debtor with adequate resources can pay the allowed administrative expense prior to confirmation. In *In re Bookbinders' Restaurant, Inc.*, the court concluded that "since the liability is an administrative expense and not a prepetition claim, a chapter 11 debtor with adequate resources can pay the allowed administrative expense prior to confirmation." *In re Bookbinders' Restaurant, Inc.*, No. 06–12302ELF, 2006 WL 3858020 (Bankr. E.D. Pa. Dec. 28, 2006).

18.  Further, in *Petitt Oil*, the United States Bankruptcy Court for the Western District

of Washington noted that it allowed payment of the 503(b)(9) claimants because authorizing limited payment on certain 503(b)(9) claims was "the best option available that would allow the Debtor to temporarily continue its operations, the Debtor's employees to be paid, and the Home Oil Customers to continue to receiver product." *In re Pettit Oil Co.*, No. 13-47285, 2015 WL 6684225, at *7 (Bankr. W.D. Wash. Oct. 22, 2015). The *Petitt Oil* court further went on to note that the Ninth Circuit's holding in *B&W Enterprises* is distinguishable and not at issue when determining whether to pay 503(b)(9) claimants. *In re Pettit Oil Co.*, 2015 WL 6684225, at *8 (citing *Wetzel v. Goodman Oil Co. (In re B & W Enters., Inc.),* 713 F.2d 534 (9th Cir.1983)). The court noted that it "does not believe that *B&W Enterprises* holds that entry of an order allowing payment to a 503(b)(9) supplier is prohibited." *Id.* The court concluded that a 503(b)(9) motion does not seek entry of an order that would allow payment to a creditor supplier of prepetition debt incurred beyond the 20-day limit of section 503(b)(9). *Id.* Therefore, payment of 503(b)(9) Claims as set forth in this Amended Motion is not barred by *B&W Enterprises*. *See id.*

19. Here, the Debtors have the ability to pay these 503(b)(9) Claims and there is an essential need to do so as stated above and at the Hearing. Further, like *Pettit Oil*, the Debtors are not requesting to pay vendors for payments beyond the 20-day limit of section 503(b)(9).

20. As noted in the United States Trustee's Objection, courts have considered three factors in determining how to exercise its discretion on the timing of payment of an administrative expense claim: (1) the prejudice to the debtors, (2) hardship to claimant, and (3) potential detriment to other creditors. *In re Arts Dairy, LLC,* 414 B.R. at 221 (citing *In re Garden Ridge Corporation*, 323 B.R. 136 (Bankr. D. Del. 2005).

21. First, there is significant prejudice to the Debtors if they are not allowed to make

DEBTORS' AMENDED MOTION FOR ALLOWANCE AND PAYMENT OF SECTION 503(B)(9) CLAIMS
- 7 -

these payments to the 503(b)(9) Claimants. As noted throughout the Hearing, the 503(b)(9) Claimants are essential to the Debtors' operations. If the 503(b)(9) Claimants are not paid these amounts, many of them will be unable to continue providing goods to the Debtors. The Debtors' operations are vast and unique, and as noted at the Hearing, the Debtors are not able to find vendors that are able to provide the types of goods needed for an operation of the Debtors' size and uniqueness, in the timeframe needed. Not only would not paying these 503(b)(9) Claimants detrimentally impact the Debtors' operations, but it would also endanger the Debtors' livestock, the largest personal property asset which require constant care and nourishment, and which provide the means for the Debtors to confirm a Chapter 11 Plan. Therefore, there would be significant prejudice to the Debtors if they *are not* allowed to pay these Claimants pursuant to Exhibit A.

22. Further, the Debtors already have the funds to pay the 503(b)(9) Claims through the approved DIP Facility. In *Global Home Products*, the court denied the motion to pay 503(b)(9) claims. When analyzing the factor of prejudice to the debtor, the court noted that the debtor's chief restructuring officer stated that payment of 503(b)(9) claims would affect the debtors' borrowing ability under the DIP Facility because the 503(b)(9) claims that claimants were arguing needed to be paid (1) "far exceeded the company's availability to borrow", (2) the debtors did not have the funds available through the facility to pay those amounts, and (3) the debtors would have been unable to make payroll, purchase inventory, and continue paying operating costs. *In re Glob. Home Prod., LLC,* No. 06-10340 KG, 2006 WL 3791955, at *4 (Bankr. D. Del. Dec. 21, 2006). Additionally, the debtors in *Global Home Products* would have been in violation of the DIP order as the debtors were precluded from using proceeds from any

loans that were not included in the DIP budget. *Id.* Based on that testimony, the court concluded that the debtors would be prejudiced if the court granted the motion to pay 503(b)(9) claims. *Id.* Here, the Debtors have sufficient funds to pay the 503(b)(9) Claims through the DIP Facility and have provided the proposed payments in the budget attached to the Final Cash Collateral Order. Unlike *Global Home Products*, there are sufficient funds through the DIP Facility to pay for payroll and operating expenses *and* the 503(b)(9) Claims. The Debtors are also not precluded from making these payments under the DIP Order nor the Final Cash Collateral Order.

23. Courts routinely allow debtors to pay 503(b)(9) claims with DIP funds. *See In re Chassix Holdings, Inc., No. 15-10578 (*Bankr. S.D.N.Y. Apr. 14, 2015) [Docket No. 275] (authorizing debtors to pay 503(b)(9) claims "in the ordinary course if the Debtors determine it is in the estates' best interests to do so"); *In re Chrysler LLC*, No. 09-50002 (Bankr. S.D.N.Y. May 20, 2009) [Docket No. 1318]; *In re The Great Atlantic & Pacific Tea Co., et al.*, No. 10-24549 (Bankr. S.D.N.Y. Dec. 14, 2010) (Nos. 55, 504). For example, in *Chrysler*, the court authorized the debtors to pay uncapped "claims of any creditors or claimants entitled to administrative priority pursuant to section 503(b)(9) ... in the ordinary course of the [d]ebtors' businesses and on such terms and conditions as the [d]ebtors deem appropriate," subject to the terms of debtors' DIP facility.

24. There also is a hardship to these 503(b)(9) Claimants if they are not paid these amounts. As noted at the Hearing, the Debtors provide a significant amount of business to many of these vendors and are a top customer to many of the vendors. If the 503(b)(9) Claimants are not paid these 503(b)(9) amounts, they may not be able to even afford to continue business with not just the Debtors, but with anyone, as they will not be able to continue to operate themselves.

This would not only be detrimental to the 503(b)(9) Claimants and Debtors, but also the community that relies on these vendors.

25. Third, as noted above, there is a detriment to other creditors if the Debtors are not allowed to make payments to these critical 503(b)(9) Claimants. Failure to receive these goods moving forward would be devastating to the Debtors' operations and will disrupt the Debtors' progress in restructuring and filing their plan of reorganization to emerge from bankruptcy. There also may be significant costs to the estate if the Debtors are forced to replace some of these vendors (if they are even able to replace them) as other vendors may charge higher prices, require deposits, etc. Further, these 503(b)(9) Claimants receive administrative priority status, and they must be paid in full for the Debtors to confirm a chapter 11 plan. The Debtors intend to not only pay their administrative priority claims in full, but they intend to file a plan in which the unsecured creditors would receive 100 percent payment of their claims, due the vast amount of equity in the Debtors' property. As demonstrated at the Hearing, there is an approximate 47% equity cushion in the Debtors' assets. *See* Exhibit 1023 submitted to the Court at the Hearing and attached hereto as Exhibit B. This is more than sufficient equity to demonstrate the general unsecured creditors are not disadvantaged or treated detrimentally if the 503(b)(9) Claimants are paid in full prior to confirmation of the plan of reorganization. Further, the 503(b)(9) Claimants would be paid in full prior to payments to general unsecured creditors anyway. This is merely a matter of timing, and the Debtors argue there is no detriment to the other creditors by paying the 503(b)(9) Claimants prior to confirmation given the significant equity cushion here. There is also no valid argument that creditors are being harmed by the Debtors paying the 503(b)(9) Claims with a secured DIP loan, and essentially replacing an unsecured claim with a secured

claim, because even if an interest rate is factored into the equation, there is exponentially more harm that will result due to vendors discontinuing their supply of essential goods to maintain the Debtors' ongoing operations than the accrual of interest over this time period.

As such, there is likely little to no detriment to other creditors by approving this Amended Motion and paying these 503(b)(9) Claimants. In fact, it is in the best interest of other creditors for this Amended Motion to be approved. Therefore, when balancing the potential detriment to other creditors versus the impact on the Debtors and their estates, payment of the 503(b)(9) Claims heavily outweighs the potential detriment to other creditors.

26. Accordingly, this Court should approve this Amended Motion and authorize payment to the 503(b)(9) Claimants pursuant to the Budget and Exhibit A attached hereto.

**WHEREFORE**, based upon the foregoing, the Debtors respectfully request entry of an order (i) allowing the 503(b)(9) Claimants administrative expense claims in the amounts listed in the attached Exhibit A, pursuant to section 503(b)(9) of the Bankruptcy Code; (ii) allowing the Debtors to pay said administrative expense claims as outlined on the Debtors' budget; and (iii) granting such other and further relief as may be just and equitable under the circumstances.

Respectfully submitted,

/s/ Krystal R. Mikkilineni
Krystal R. Mikkilineni

/s/ Matt Christensen
Matthew T. Christensen

Attorneys for Debtors

DEBTORS' AMENDED MOTION FOR ALLOWANCE AND PAYMENT OF SECTION 503(B)(9) CLAIMS
- 11 -