Matthew T. Christensen, ISB: 7213
J. Justin May, ISB: 5818
JOHNSON MAY
199 N. Capitol Blvd, Ste 200
Boise, Idaho 83702
Phone: (208) 384-8588
Fax: (208) 629-2157
Email: mtc@johnsonmaylaw.com
      jjm@johnsonmaylaw.com


Krystal Mikkilineni, *pro hac vice*
Robert E. Richards, *pro hac vice*
Tirzah Roussell, *pro hac vice*
DENTONS
215 10th Street, Ste 1300
Des Moines, IA 50309
Phone: (515) 288-2500
Fax: (515) 243-0654
Email: krystal.mikkilineni@dentons.com
      Robert.richards@dentons.com
      Tirzah.roussell@dentons.com

Attorneys for the Debtor

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| In re:<br><br>MILLENKAMP CATTLE, INC.,<br><br>    Debtor. | Case No. 24-40158-NGH |
| Filing relates to:<br><br>☒ ALL DEBTORS<br><br>☐ Millenkamp Cattle, Inc.<br><br>☐ Idaho Jersey Girls<br><br>☐ East Valley Cattle<br><br>☐ Millenkamp Properties<br><br>☐ Millenkamp Properties II | Jointly Administered With Case Nos.:<br><br>24-40159-NGH (Idaho Jersey Girls)<br>24-40160-NGH (East Valley Cattle)<br>24-40161-NGH (Millenkamp Properties)<br>24-40162-NGH (Millenkamp Properties II)<br>24-40163-NGH (Millenkamp Family)<br>24-40164-NGH (Goose Ranch)<br>24-40166-NGH (Black Pine Cattle)<br>24-40167-NGH (Millenkamp Enterprises)<br>24-40165-NGH (Idaho Jersey Girls Jerome Dairy) |

MOTION FOR AUTHORITY TO PRE-PAY CERTAIN SILAGE AND HAY/STRAW VENDORS FOR FUTURE DELIVERIES – Page 1

| | |
|---|---|
| ☐ Millenkamp Family<br>☐ Goose Ranch<br>☐ Black Pine Cattle<br>☐ Millenkamp Enterprises<br>☐ Idaho Jersey Girls Jerome Dairy | Chapter 11 Cases |

## MOTION FOR AUTHORITY TO PRE-PAY CERTAIN SILAGE AND HAY/STRAW VENDORS FOR FUTURE DELIVERIES

The Debtors in the above-referenced matter, by and through their undersigned counsel, move the court for authority to pre-pay for 2024/2025 silage and hay/straw deliveries. As outlined below, silage and hay/straw are critical to maintain the milk production of the Debtors' operation. The silage and hay/straw suppliers identified herein are willing to sell the Debtor the required products, but only is a substantial pre-payment is made for 2024/2025 deliveries. Additionally, without the ability to provide a substantial pre-payment to additional farmers for silage and hay/straw suppliers, Debtors will not be able to secure enough silage and hay/straw for continued effective operations.

### FACTUAL AND PROCEDURAL BACKGROUND

As the Court is aware, Millenkamp Cattle operates large dairy and beef cattle facilities. The cows at each facility rely on a myriad of feed and care requirements. Hay and straw are necessary in order to feed the cattle and to line the various pens and other facilities to assist with cleanup after the cattle. Additionally, a main ingredient that supports milk production from the dairy cows is corn silage. Without the corn silage, the milk supply from the dairy cattle will drastically reduce, as will the quality of the milk that it supplied (thus affect operations in both

Case 24-40158-NGH Doc 374 Filed 06/06/24 Entered 06/06/24 13:01:10 Desc Main
Document Page 3 of 10

ways – decreased production and decreased quality), thereby resulting in decreased revenue. Without sufficient corn silage, the cattle would also be in danger of dying.

Historically, the Debtor's ordinary course of operations for hay and straw suppliers is to put a deposit down for straw and hay during the summer months for delivery during and after the harvest in the summer and fall months. Without the straw and hay, milk production will dramatically decrease, calves will not have proper bedding and there is a risk of cattle dying. Based on the normal course of operations, the Debtors need approximately $2.5 million for deposits for future hay and straw deliveries. The timing of payments for hay and straw are extremely important as there is a limited harvest season for straw and hay. In the event the Debtors are unable to prepay for straw and hay as soon as possible, the Debtors will not be able to secure adequate hay and straw for fall 2024 through spring of 2025 needs.

Silage, as mentioned, is an integral part of the dairy cows' diet. Silage is a form of feed that the Debtors use for the cattle. The silage is created by chopping the corn crops into small pieces and pressing it to eject oxygen, then later sealing it for use with the cattle. Corn silage is normally harvested, chopped, pressed and delivered in the fall months. The Debtors' historical silage suppliers are unwilling to sell silage to the Debtor for the upcoming year without a 50% deposit on this year's silage order. (Moreover, many of the Debtors' prior silage suppliers have already refused to sell any silage to the Debtors and have sold their corn crop to other buyers, thus further risking the Debtors' ability to continue to adequately care for the cattle.) In the ordinary course, the Debtor purchases approximately $5 million in corn silage each year. Without the ability to prepay silage now in the amount of $2.5 million, ensuring that farmers will receive adequate security for payment of this year's silage crop, the Debtors will not be able to secure

enough corn silage from the 2024 silage harvest.  Without proper silage, the Debtors risk losing at least $6-8 million in potential income from loss of milk production and/or loss of cattle.

Finally, the corn silage is formed after the crop is chopped and pressed.  The Debtor requires a large volume of chopped crop to continuously feed the cattle.  H&M Custom ("H&M)") chops crops for the Debtors, including corn and hay grown on the Debtors' own property.  The managing partner of H&M (which is not the Debtor or Bill Millenkamp) is requiring a deposit of $1.5 million for future chopping and deliveries.

The filing of the state-court receivership and subsequent Chapter 11 case have destroyed the Debtor's ability to secure hay, straw and silage on credit for its future needs.  Thus, in order to ensure the Debtors' ability to secure adequate hay, straw and silage, the Debtors seek authority to prepay approximately $6.5 million for future silage, hay/straw, and chopping services for the Debtor to continue caring and maintaining the animals in its operation.

**LEGAL ARGUMENT**

Because these payments are pre-payments, and not payments of pre-existing claims, they are arguably ordinary-course payments by the Debtor.  However, out of an abundance of caution, the Debtors seek court authority for the payments.  In the event they are deemed to be outside the ordinary course of business, there are several sections of the Bankruptcy Code which provide the Court authority to approve the requested payments.

*Section 363 of the Bankruptcy Code*

Section 363(b) of the Bankruptcy Code provides, in relevant part, that the debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  To approve the use of assets outside the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code, courts require only that the debtor "show that a sound

business purpose justifies such actions." *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (internal citations omitted); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987); *In re Adelphia Commc'ns Corp.*, Case No. 02-41729, 2003 WL 22316543, at *31 (Bankr. S.D.N.Y. Mar. 4, 2003); *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983). "Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task"). Accordingly, the business judgment rule is highly deferential to debtors and may be satisfied "'as long as the proposed action appears to enhance the debtor's estate.'" *Crystalin, LLC v. Selma Props. Inc. (In re Crystalin, LLC)*, 293 B.R. 455, 463–64 (B.A.P. 8th Cir. 2003) (quoting *Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.),* 107 F.3d 558, 566 n.16 (8th Cir. 1997)); *see also In re Farmland Indus. Inc.,* 294 B.R. 903, 913 (Bankr. W.D. Mo. 2003) ("Under the business judgment standard, the question is whether the [proposed action] is in the Debtors' best economic interests, based on the best business judgment in those circumstances."). Thus, section 363(b) "permit[s] debtors . . . to take actions for the benefit of the estate going forward based on their own business judgment." *In re Mallinckrodt PLC*, 2022 WL 906458, at *9 (D. Del. Mar. 28, 2022).

Here, it is a sound exercise of the Debtors' business judgment to pay for future silage, hay/straw, and chopping services because doing so will avoid value-destructive business interruption. The goods and services provided by these vendors are necessary for the continued operation of the Debtors' business. The Debtors anticipate that failure to pay for these future

deliveries and services as soon as possible will result in such vendors refusing to provide the necessary silage, hay/straw, and chopping services, thereby endangering the cattle and, in turn, the Debtors' business.

*Section 105 of the Bankruptcy Code*

In addition to being justified under section 363(b)(1) of the Code, payment to secure hay, straw and silage is warranted under section 105 of the Bankruptcy Code, which provides that the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. §105(a). The purpose of section 105(a) is to "assure the bankruptcy courts power to take whatever action is appropriate or necessary in aid to the exercise of its jurisdiction." Under section 105(a), the bankruptcy court may exercise its broad grant of equitable powers to permit the payment of obligations when such payment is essential to the continued operation of the debtor's business.[1]

As discussed, payment of future silage, hay/straw, and chopping service is critical to the continued operation of the Debtors' business and thus should be granted pursuant to the Court's equitable authority under Section 105(a).

*Section 1107 and 1108 of the Bankruptcy Code*

Finally, sections 1107(a) and 1108 of the Code provide more than sufficient authority for the payments in question. Section 1107(a) provides that a debtor in possession shall perform all the functions and duties as a trustee under the Bankruptcy Code, while section 1108 authorizes a

---

[1] After *Law v. Siegel* was decided by the U.S. Supreme Court, it is clear that Section 105, by itself, was likely insufficient grounds for authorizing an action which appeared to conflict with the Bankruptcy Code. *See Law v. Siegel*, 571 U.S. 415 (2014). However, here, the payments requested are for deposits on post-petition deliveries to the Debtor. Arguably, therefore, *Law v. Siegel*'s restrictions do not apply to this request. Section 105 provides sufficient authority for the Court to allow the Debtors' request.

MOTION FOR AUTHORITY TO PRE-PAY CERTAIN SILAGE AND HAY/STRAW VENDORS FOR FUTURE DELIVERIES – Page 6

debtor to continue operating its business post-petition as a debtor-in-possession. The Bankruptcy Court for the Northern District of Texas previously recognized the Debtors' requirements under this Section of the Code:

> A debtor in possession, like a trustee, is a fiduciary holding the bankruptcy estate and operating the business for the benefit of its creditors and (if the value justifies) equity owners. Implicit in the duties of a Chapter 11 trustee or a debtor in possession as set out in Sections 1106 and 704 of the Bankruptcy Code is the duty of such a fiduciary to protect and preserve the estate, including an operating business's going-concern value.

*In re Coserv, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). (some internal citations omitted). Thus, section 1107 (and, by application, Sections 1106 and 704) require the Debtors to protect and preserve the estate, including protecting the companies as going concerns with significant value.

To the extent necessary, sections 1107(a) and 1108 provide the support for the Court to use section 105(a) to authorize payment of costs and expenses necessary to both preserve the estate and continue operating the Debtors' business as a going concern. Here, the cattle are the main money-maker for the Debtors' operation. Maintaining the health and productivity of the cattle is the paramount concern when protecting and preserving the estate.

The Debtors have spoken to hay/straw vendors, various silage providers, and H&M, and the list attached hereto as Exhibit A are the vendors/providers who have agreed to provide product or service to the Debtors, but only if they receive the 50% deposit for future deliverables.

## CONCLUSION

The Debtors respectfully request the Court authorize the Debtors to pay the required deposits for later delivery of hay/straw and silage, as well as the chopping services from H&M.

## NOTICE OF INTENT TO PRESENT EVIDENCE

A hearing has been set on this Motion for June 20, 2024. Pursuant to Local Bankr. Rule 9014-1, the Debtors provide notice that they intend to produce evidence through witnesses and documents at that hearing.

DATED this 6th day of June, 2024.

                                               /s/ Matt Christensen
                                               MATTHEW T. CHRISTENSEN
                                               Attorney for Debtors

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 6th day of June 2024, I caused to be served a true and correct copy of the foregoing document electronically through the CM/ECF system, which caused the following parties to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

| | |
|---|---|
| Matthew T. Christensen | mtc@johnsonmaylaw.com |
| J. Justin May | jjm@johnsonmaylaw.com |
| Krystal R. Mikkilineni | krystal.mikkilineni@dentons.com |
| Tirzah R. Rousell | Tirzah.rousell@dentons.com |
| US Trustee | ustp.region18.bs.ecf@usdoj.gov |
| Heidi Buck Morrison | heidi@racineolson.com |
| David A. Coleman | david@colemanjacobsonlaw.com |
| Gery W. Edson | gedson@gedson.com |
| J.B. Evans | evans.jb@dorsey.com |
| Zachary Fairlie | zfairlie@spencerfane.com |
| Kimbell D. Gourley | kgourley@idalaw.com |
| Daniel C. Green | dan@racineolson.com |
| John O'Brien | jobrien@spencerfane.com |
| Scott C. Powers | spowers@spencerfane.com |
| Janine P. Reynard | janine@averylaw.net |
| Sheila R. Schwager | sschwager@hawleytroxell.com |
| Brent R. Wilson | bwilson@hawleytroxell.com |
| Brian Faria | brian@sawtoothlaw.com |
| Robert A. Foucher | rfaucher@hollandhart.com |
| Matthew W. Grimshaw | matt@grimshawlawgroup.com |
| John F. Kurtz | jfk@kurtzlawllc.com |
| Jed W. Manwaring | jmanwaring@evanskeane.com |
| Rhett M. Miller | rmiller@magicvalley.law |
| John D. Munding | john@mundinglaw.com |
| Jason R. Naess | jason.r.naess@usdoj.gov |
| Holly Roark | holly@roarklawboise.com |
| Evan R. Roth | evan@sawtoothlaw.com |

Any others as listed on the Court's ECF Notice.

/s/ Matt Christensen
MATTHEW T. CHRISTENSEN

MOTION FOR AUTHORITY TO PRE-PAY CERTAIN SILAGE AND HAY/STRAW VENDORS FOR FUTURE DELIVERIES – Page 9

**EXHIBIT A**

List of Vendors willing to provide hay/straw and silage or chopping service,

but only with a 50% deposit:

Straw/Hay:

    Steve Lam

    Jon Bingham

Corn Silage:

    Grant Hagan

    Terry Hollifield

    Moss Farms

H&M:

    Brian Heutig