Matthew T. Christensen, ISB: 7213
J. Justin May, ISB: 5818
JOHNSON MAY
199 N. Capitol Blvd, Ste 200
Boise, Idaho 83702
Phone: (208) 384-8588
Fax: (208) 629-2157
Email: mtc@johnsonmaylaw.com
          jjm@johnsonmaylaw.com


Krystal Mikkilineni, *pro hac vice*
Robert E. Richards, *pro hac vice*
Tirzah Roussell, *pro hac vice*
DENTONS
215 10th Street, Ste 1300
Des Moines, IA 50309
Phone: (515) 288-2500
Fax: (515) 243-0654
Email: krystal.mikkilineni@dentons.com
          Robert.richards@dentons.com
          Tirzah.roussell@dentons.com

Attorneys for the Debtor

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| In re:<br><br>MILLENKAMP CATTLE, INC.,<br><br>Debtor. | Case No. 24-40158-NGH |
| Filing relates to:<br><br>☒  ALL DEBTORS<br><br>☐  Millenkamp Cattle, Inc.<br><br>☐  Idaho Jersey Girls<br><br>☐  East Valley Cattle<br><br>☐  Millenkamp Properties<br><br>☐  Millenkamp Properties II | Jointly Administered With<br>Case Nos.:<br><br>24-40159-NGH (Idaho Jersey Girls)<br>24-40160-NGH (East Valley Cattle)<br>24-40161-NGH (Millenkamp Properties)<br>24-40162-NGH (Millenkamp Properties II)<br>24-40163-NGH (Millenkamp Family)<br>24-40164-NGH (Goose Ranch)<br>24-40166-NGH (Black Pine Cattle)<br>24-40167-NGH (Millenkamp Enterprises)<br>24-40165-NGH (Idaho Jersey Girls Jerome<br>                    Dairy) |

☐ Millenkamp Family

☐ Goose Ranch

☐ Black Pine Cattle

☐ Millenkamp Enterprises

☐ Idaho Jersey Girls Jerome Dairy

Chapter 11 Cases

## DEBTOR'S MOTION FOR ORDER AUTHORIZING THE DEBTOR TO ENTER INTO POST-PETITION EQUIPMENT LEASE WITH BURKS TRACTOR COMPANY, INC.

Millenkamp Cattle, Inc. ("Millenkamp Cattle") debtor and debtor in possession (the "Debtor") in the above-captioned chapter 11 case (the "Chapter 11 Case"), by and through its undersigned counsel, respectfully moves the Court (the "Motion") pursuant to sections 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order authorizing the entry of a new tractor lease agreement with Burks Tractor Company, Inc., in the form attached to this Motion as Exhibit A. In support of this Motion the Debtor states as follows:

### JURISDICTION

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 105, 363 and/or 365 of the Bankruptcy Code and Bankruptcy Rules 6004 and 9014.

### BACKGROUND

2.      On April 2, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for

District of Idaho (the "Court") commencing the Chapter 11 Case.  The Debtor has continued in the management and operation of its business and property as debtor-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  No trustee, examiner, or official statutory committee of unsecured creditors (such official committee, the "Committee") has yet been appointed in the Chapter 11 Case.

3.    The Debtor is one of ten affiliates that collectively own and operate several businesses, including a calf ranch raising approximately 50,000 calves located in Jerome, Idaho; a dairy heifer feedlot in Declo, Idaho, raising approximately 60,000 head of dairy cattle; a dairy operation at the Declo facility where the dairy cattle are milked several times a day; farming operations in Jerome, Twin Falls and Cassia counties; and custom harvest & trucking throughout the Magic Valley.

4.    On or about July 1, 2022, Western States Equipment Company ("Western States") and Debtor entered into a Rental Agreement (the "Previous Rental Agreement") pursuant to which Western States provided equipment to the Debtor on the terms and conditions set forth therein.  The Previous Rental Agreement expires on June 30, 2024, after which Western States will repossess the loaders subject to the Western States lease.  The equipment that Western States provided to the Debtor consists of loaders that are absolutely essential to the Debtors' operations and more specifically, the health of the Debtors' cattle.  Among other things, the loaders are used to load feed into feed trucks for delivery to the cattle, and to clean the cattle pens.

5.    After negotiations, the Debtor, and Burks have entered into a new Equipment Rental Agreement wherein Burks agrees to rent certain equipment to the Debtor (the "Lease"). A copy of the Lease is attached hereto as Exhibit A.  The equipment to be provided under the

Burks lease agreement is a replacement of the equipment leased to the Debtor by Western States, which equipment will be picked up after June 30.

## RELIEF REQUESTED

6.    By this Motion and for the reasons set forth herein, the Debtor seeks authority pursuant to Bankruptcy Code sections 105 and 363 for the entry of an order authorizing the new Lease.

## BASIS FOR RELIEF REQUESTED

7.    Bankruptcy Code section 365(a) provides, in pertinent part, that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." U.S.C. § 365(a).  While the new Lease is technically not a pre-petition lease subject to assumption or rejection, and the new Lease is arguably something done in the ordinary course of operating the Debtor's business (leased equipment is typically replaced every two years), the principles behind assumption or rejection of a pre-petition lease guide the Court's approval of this post-petition Lease.

8.    The Court may approve a debtor's assumption of an unexpired lease or executory contract if such assumption is made in the exercise of such debtor's sound business judgment, and if such assumption benefits its estate. *See, e.g., Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 39 (3d Cir. 1989); *NLRB v. Bildisco & Bildisco* (In re Bildisco), 682 F.2d 72, 79 (3d Cir. 1982), aff'd, 465 U.S. 513 (1984); *In re Network Access Solutions, Corp.*, 330 B.R. 67 (Bankr. D. Del. 2005) ("The standard for approving the assumption of an executory contract is the business judgment rule"); *Westbury Real Estate Ventures, Inc. v. Bradlees, Inc.* (In re Bradlees, Inc.), 194 B.R. 555, 558 n. l (Bankr. S.D.N.Y. 1996) ("In reviewing a debtor's decision to assume . . . an executory contract, the court must examine the contract and

circumstances and apply its best 'business judgment' to determine if the assumption . . . would be beneficial . . . to the estate").

9.       It is enough if a debtor determines in its business judgment that a benefit will be realized. *Sharon Steel Corp.*, 872 F.2d at 39. The business judgment standard requires that the Court approve the debtor's business decision unless it is the product of bad faith, whim, or caprice. *See In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001); *see also Lubrizol Enter., Inc. v. Richmond Metal Finishers*, 756 F.2d 1043, 1047 (4th Cir. 1985).

10.      The purpose behind allowing the assumption or rejection of executory contracts is to permit the debtor in possession to maximize the value of its estate by exercising business judgment to assume contracts that are beneficial to the estate and to reject such contracts and leases that are not. *See, e.g., In re Rickel Home Centers*, 209 F.3d 291, 298 (3d Cir. 2001). In assuming a contract or a lease, the debtor must assume the entire contract. *See, e.g., In re Fifth Taste Concepts Las Olas*, LLC, 325 B.R. 42 (Bankr. S.D. Fla. 2005).

11.      Upon finding that a debtor has exercised its sound business judgment in determining the assumption of an executory contract is in the best interest of the estate, the bankruptcy court should approve the assumption under Bankruptcy Code section 365, provided the debtor also demonstrates it can satisfy the statutory requirements for assumption under Bankruptcy Code section 365, if applicable. *See In re Quantegy, Inc.*, 326 B.R. 467, 470 (Bankr. M.D. Ala. 2005).

12.      The Debtor's entry into the Lease is an exercise of its sound business judgment and is in the best interest of the Debtor's estate.

13.     Here, there is more than ample business justification for the Debtor to enter into the Lease. As noted above, this equipment is vital to Debtors' operations. The Debtors would not be able to feed or maintain the cattle without the equipment.

14.     Based on the foregoing, the Debtor has satisfied all requirements for the Court to approve the new Lease (to the extent necessary as an "outside the ordinary course" transaction). As such, the Debtor respectfully requests that the Court enter an Order authorizing the entry of the Lease with Burks, in the form attached to the Lease.

## REQUEST FOR WAIVER OF STAY

15.     To immediately implement the relief sought in this Motion and avoid interruption in the Debtors' business operations, the Debtors respectfully request a waiver of the notice requirements under Rule 6004(a) of the Bankruptcy Rules and seek a waiver of the stay imposed by Rule 6004(h) of the Bankruptcy Rules. As explained above, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors. Accordingly, ample cause exists to justify the waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent such stay applies.

16.     Further, to the extent necessary, the Debtors requests modify the automatic stay to allow the Debtors and Burks to effectuate the terms and conditions of the Lease, including to allow Burks to enforce any rights and remedies as set forth in the Lease.

/

/

/

/

/

/

## **CONCLUSION**

**WHEREFORE,** the Debtor respectfully requests this Court enter an order authorizing the new equipment Lease with Burks and order such other and further relief as this Court deems just and appropriate under the circumstances.

DATED this 6th day of June, 2024.

JOHNSON MAY

*/s/ Matt Christensen*
_____
MATTHEW T. CHRISTENSEN
Attorney for the Debtor

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 6th day of June 2024, I caused to be served a true and correct copy of the foregoing document electronically through the CM/ECF system, which caused the following parties to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

| | |
|---|---|
| Matthew T. Christensen | mtc@johnsonmaylaw.com |
| J. Justin May | jjm@johnsonmaylaw.com |
| Krystal R. Mikkilineni | krystal.mikkilineni@dentons.com |
| Tirzah R. Rousell | Tirzah.rousell@dentons.com |
| US Trustee | ustp.region18.bs.ecf@usdoj.gov |
| Heidi Buck Morrison | heidi@racineolson.com |
| David A. Coleman | david@colemanjacobsonlaw.com |
| Gery W. Edson | gedson@gedson.com |
| J.B. Evans | evans.jb@dorsey.com |
| Zachary Fairlie | zfairlie@spencerfane.com |
| Kimbell D. Gourley | kgourley@idalaw.com |
| Daniel C. Green | dan@racineolson.com |
| John O'Brien | jobrien@spencerfane.com |
| Scott C. Powers | spowers@spencerfane.com |
| Janine P. Reynard | janine@averylaw.net |
| Sheila R. Schwager | sschwager@hawleytroxell.com |
| Brent R. Wilson | bwilson@hawleytroxell.com |
| Brian Faria | brian@sawtoothlaw.com |
| Robert A. Foucher | rfaucher@hollandhart.com |
| Matthew W. Grimshaw | matt@grimshawlawgroup.com |
| John F. Kurtz | jfk@kurtzlawllc.com |
| Jed W. Manwaring | jmanwaring@evanskeane.com |
| Rhett M. Miller | rmiller@magicvalley.law |
| John D. Munding | john@mundinglaw.com |
| Jason R. Naess | jason.r.naess@usdoj.gov |
| Holly Roark | holly@roarklawboise.com |
| Evan R. Roth | evan@sawtoothlaw.com |

Any others as listed on the Court's ECF Notice.

/s/ Matt Christensen

MATTHEW T. CHRISTENSEN

# EXHIBIT A

## EQUIPMENT RENTAL AGREEMENT

This EQUIPMENT RENTAL AGREEMENT ("**Agreement**"), effective immediately upon entry of a final, non-appealable order approving the Agreement (the "**Effective Date**"), is entered into by and between Burks Tractor Company, Inc., an Idaho corporation ("**Burks**") and Millenkamp Cattle, Inc., a debtor and debtor-in-possession ("**Debtor**"), jointly-administered with certain affiliated debtors and debtors-in-possession in case # 24-40158 ("**Bankruptcy Cases**"), currently pending in the United States Bankruptcy Court for the District of Idaho ("**Bankruptcy Court**"). Burks and the Debtor are each hereby referred to herein as a "**Party**" and together, as the "**Parties**."

**WHEREAS**, on April 2, 2024, the Debtor filed a petition in the Bankruptcy Court;

**WHEREAS**, on May 17, 2024, the Bankruptcy Court enter the Final Order Authorizing the Debtors to (A) Obtain Post-Petition Financing; and (B) Granting Adequate Protection to Pre-Petition Secured Lender ("**DIP Financing Order**") [Dkt. No. 305];

**WHEREAS**, on May 21, 2024, the Bankruptcy Court entered the Final Order Granting Debtors' Emergency Motion For Authorization To Use Cash Collateral ("**Cash Collateral Order**") [Dkt. No. 313];

**WHEREAS**, pursuant to the DIP Financing Order and Cash Collateral Order, the Debtors are authorized to operate their business pursuant to an approved budget;

**WHEREAS**, the Debtors have determined that renting the equipment pursuant to this Agreement is essential to the ongoing operation of their business; and

**WHEREAS**, the Parties wish to enter into this Agreement, which sets forth the terms upon which Burks rents certain of its equipment to MK Cattle.

**NOW, THEREFORE**, in consideration of the mutual premises and covenants contained herein and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Parties hereto covenant and agree as follows:

1.  **General Agreement**.

    a.  *Equipment*. Burks shall exercise "best efforts" deliver to the Debtor the equipment set forth on **Exhibit A** (the "**Rental Equipment**") by July 1, 2024 for rent pursuant to the terms and conditions set forth in this Agreement. This Agreement is a short-term rental of the Rental Equipment to the Debtor and is not a sale of the Rental Equipment. The Parties acknowledge and agree that, to the extent the Final Order (defined below) is not entered by the Bankruptcy Court by June 21, 2024, the delivery date for the Rental Equipment shall be delayed beyond July 1, 2024.

    b.  *Term*. This Agreement is effective on the Effective Date and renews monthly until the earlier of (i) June 30, 2026 or (ii) the occurrence of an Event of Default (as defined in Section 4) (the "**Termination Date**"). Upon the Termination Date, Burks shall have the immediate right to physical possession of the Rental Equipment, and Debtor shall not use or add hours to any of the Rental Equipment except to assemble the Rental Equipment at a reasonable location no later

than Noon (Mountain Time) on the day immediately following the Termination Date and surrender the Rental Equipment to Burks. Burks' right to repossession of the Rental Equipment and Debtor's duty to cease use except to surrender the Rental Equipment to the location designated by Burks shall be self-effectuating and require no further order from the Bankruptcy Court, or motion filed or action by any Party, or any third party. Debtor hereby acknowledges that Burks has no obligation to rent any of the Rental Equipment or any other equipment to Debtor after the Termination Date.

        c.  *Payment of Rent*.

        i.  Debtor shall pay rent so that Burks shall receive rent no later than the 10th day of each month (the "**Payment Due Date**"), with the first payment covering the period from the Effective Date through the last day of the following month. Debtor shall be entitled to a fourteen (14) calendar day grace period after the Payment Due Date to cure any default in the payment timing. Burks shall deliver an invoice to Debtor by the twenty- fifth (25th) of each month detailing the next month's monthly rent (the "**Rent**") and estimated service contract expense amounts ("**Estimated Expenses**") due for the next month based on the current monthly rental rate and the estimated service contract expense amounts derived from the projected over hours usage of the Rental Equipment, in each case as set forth on **Exhibit B** to this Agreement (each, a "**Monthly Invoice**"). For purposes of this Agreement, Estimated Expenses and Actual Expenses (defined below) shall constitute additional Rent.

        ii.  Within ten (10) days of the Termination Date, Burks will use electronic data retrieved from the Rental Equipment to provide Debtor with an accounting of the actual expenses for service contract expenses (the "**Expense Accounting**") based on the actual usage of the Rental Equipment (the "**Actual Expenses**") for the purpose of comparing it with the Estimated Expenses. If the Expense Accounting reflects that the amount of the Actual Expenses is greater than the amount of the Estimated Expenses, then Debtor shall pay to Burks the difference in costs within ten (10) days of Burks' determination. Expense Accounting shall be determined at the same rates per hour as set forth on **Exhibit B** and shall constitute a payment obligation that survives the Termination Date. Burks shall not be required to file a motion seeking allowance of an administrative expense claim for payment of any unpaid Rent after the Termination Date, nor shall Burks be required to wait for payment unpaid Rent (including without limitation Actual Expenses) until confirmation of a plan of reorganization in Debtors' cases. If there is a dispute over the amount of unpaid Rent due post-Terminate Date, the Parties agree to file a joint motion seeking immediate resolution of any dispute, including payment.

        d.  *Notice*. In order to provide notice of Debtor's obligations arising under this Agreement, Debtor authorizes the filing of a financing statement reflecting this Agreement as a lease or rental.

    **2.  Conditions to Effectiveness**. The effectiveness of this Agreement is conditioned upon entry by the Bankruptcy Court of a final non-appealable order ("**Final Order**") substantially in form and content as attached hereto as **Exhibit C** authorizing Debtor to enter into and perform under this Agreement, which Final Oder shall, among other things, modify the automatic stay to authorize Burks to file a UCC-1 statement, provide Debtor with a notice of termination or declare an Event of Default and repossess the Rental Equipment.

2

**3. Debtor's Covenants**.

a. *Surrender of Rental Equipment*. Upon the occurrence of the Termination Date, Debtor shall cooperate in all respects with the orderly return of the Rental Equipment. Debtor agrees to return the Rental Equipment in good working condition, reasonable wear and tear excepted. Debtor further agrees to repair/replace all or any portion of the Rental Equipment which becomes necessary because of damage, including that damage caused by Debtor, or its employees, agents, subcontractors, or affiliates, and also shall continue to pay rental on the Rental Equipment at the regular rental rate until repairs have been completed. The following shall not be deemed reasonable wear and tear: damage resulting from lack of lubrication or failing to maintain necessary oil, water, and air pressure levels; damage resulting from lack of daily inspection and maintenance; and damage resulting from exposure to leach pads, scrap metal operations or other corrosive or harsh environments. Repairs to the Rental Equipment shall be made to the reasonable satisfaction of Burks, and in a manner that will not adversely affect the operation or value of the Rental Equipment as determined by Burks (for example, welding repairs rather than replacing a part will be at Burks' discretion).

b. *Notification of Damage*. Burks and its designated representatives and agents shall have the right at all reasonable times to examine and inspect the Rental Equipment. Debtor will not commit or permit damage to or destruction of the Rental Equipment or any material part of the Rental Equipment. Debtor shall immediately notify Burks of all cases involving the loss or damage of or to any material portion of the Rental Equipment and generally of all material happenings and events affecting the Rental Equipment.

c. *Rental Equipment Operation and Care*. The Rental Equipment is authorized for use only for its ordinary purpose. Debtor understands that the operation of the Rental Equipment requires skill and experience and that failure to operate it safely may result in serious personal injury or death and/or property damage. Debtor is responsible for ensuring that all persons in and around the Rental Equipment follow the manufacturer's operation, maintenance, and safety instructions, and acknowledge that those instructions have been provided by Debtor. Debtor's operation and use of the Rental Equipment must comply with all laws, ordinances, and regulations relating to the possession, use, or maintenance of the Rental Equipment, including registration and/or licensing requirements, if any. Operating instructions and safety manuals have been provided to Debtor. Debtor must (i) protect the Rental Equipment against misuse, exposure to adverse conditions and any other abuse or neglect, (ii) ensure that it remains in good operating condition and (iii) is returned to Burks as required herein. Debtor will provide a qualified operator for each unit of the Rental Equipment, pay all costs of its operation, and provide all necessary fuel, lubricants, accessories, and supplies to operate the Rental Equipment with the exception of the manufacturer's preventative maintenance which shall be provided by Burks. Debtor shall not make any modifications, alterations, or additions to the Rental Equipment (other than as instructed or required by the manufacturer or by law) without the prior written consent of Burks.

d. *Maintain Insurance*. Debtor shall not operate, use, move, load, transport or otherwise handle the Rental Equipment without first having obtained insurance coverage, including for loss, theft, damage, or destruction, and the loss of income from the Rental Equipment.

During the term of this Agreement, each Party shall, at its own expense, maintain and carry insurance in full force and effect which includes, but is not limited to, (i) commercial general liability in occurrence form with a minimum limit of $1,000,000 per occurrence, plus a minimum $2,000,000 general aggregate limit; (ii) workers' compensation in an amount no *less* than the minimum required by law and employers' liability in a sum no less than $1,000,000; and (iii) any additional insurance Burks may reasonably require, in each case with financially sound and reputable insurers. Debtor will maintain insurance for the loss, theft, damage, or destruction to the Rental Equipment in the amount of the replacement value of the Rental Equipment. Upon either Party's request, the other Party shall provide the requesting Party with a certificate of insurance from such Party's insurer evidencing the insurance coverage specified above. The certificate of insurance shall name the requesting Party as an additional insured. The insured Party shall provide the requesting Party with thirty (30) days' advance written notice in the event of a cancellation or material change in the insured Party's insurance policy. Except where prohibited by law, the insured Party shall require its insurer to waive all rights of subrogation against the requesting Party and the requesting Party's insurers.

e.  *Compliance with Laws*. Debtor shall at all times comply with all federal, state, and local laws, rules, or regulations applicable to this Agreement. Without limiting the generality of the foregoing, Debtor shall (i) at its own expense, maintain all certifications, credentials, licenses and permits necessary to conduct its business relating to the use of the Rental Equipment and (ii) not engage in any activity or transaction involving the Rental Equipment, by way of shipment, use or otherwise, that violates any federal, state, and local laws, rules, or regulations.

f.  *Daily Inspection, Maintenance, and Safekeeping*. Debtor will conduct daily inspection and routine maintenance of the Rental Equipment consistent with the procedures in the manufacturer's operation and maintenance manuals provided with the Rental Equipment. Unless otherwise agreed by the parties, Burks will perform the required preventative maintenance during the Term, consistent with the procedures in the manufacturer's operation and maintenance manual. Upon request, Debtor will make the Rental Equipment available for Burks to perform such preventative maintenance during Burks' regular business hours. The Rental Equipment is personal property, and as such, Debtor shall not attach or affix the Rental Equipment to any real property or real property improvements.

g.  *Risk of Damage*. Debtor or its insurer bears the risk of loss as to the Rental Equipment while it is in the possession of Debtor and during the rental Term, and bears all risk of loss, theft, damage, or destruction to the Rental Equipment, regardless of cause (ordinary wear excepted). If the Rental Equipment is lost, stolen, damaged or destroyed during Debtor's possession or the rental period, whether or not the same is Debtor's fault, Debtor will notify Burks immediately and Debtor or its insurer will pay Burks (i) the retail value of the parts and labor necessary to repair the Rental Equipment if damaged, or (ii) the actual replacement value of a replacement unit if lost, stolen, destroyed or damaged beyond Burks' reasonable ability to repair it; and in either case, all packing, shipping, handling, storage and other associated costs. Rent previously paid will not be applied against the above-referenced charges and rental payments will continue to accrue during all repair and replacement periods. Debtor shall furnish Burks with a complete written report of any accident involving the Rental Equipment, including, but not limited to names and addresses of all witnesses and persons involved.

4

h. *Replacement Obligation*. If the Rental Equipment is lost, stolen, destroyed, or rendered unfit for use (as determined by Burks, at its sole discretion), Debtor or its insurer agrees to pay the full market replacement value and loss of rental income (as determined by Burks), necessary repairs, or lost rent, as the case may be.

i. *Wear Items and Overage Hours*. The Rental Equipment has various components which are subject to ordinary wear, specifically tires and bucket cutting edges. The Debtor shall be responsible for replacing bucket cutting edges during the term of the Agreement. Burks shall be responsible for providing tires and incurring the cost of their wear and replacement during the term of the Agreement with the exception of flat tires and punctures which shall be the responsibility of the Debtor. Rental Equipment shall not be subject to any overage hour charges during the term of the Agreement as all rental rates shall be in accordance with Exhibit B.

**4. Events of Default**. An "**Event of Default**" shall occur if:

a. Burks does not receive Rent or Estimated Expenses within 14 (fourteen) calendar days of the Payment Due Date;

b. Debtor fails to perform or observe any covenant, condition, or agreement to be performed by it in connection with this Agreement; or

c. Debtor attempts to sell, transfer, encumber, sublease or convey any of, or any interest in, the Rental Equipment; or

d. Burks, in good faith, believes that the Rental Equipment is being subjected to improper use, including excessive hours;

e. Bankruptcy Court does not provide Debtor with authority to pay and perform under this Agreement through the DIP Financing Order or Cash Collateral Order, as each may be amended and extended;

f. Any of Debtors' chapter 11 cases are converted to chapter 7, dismissed, or a chapter 11 trustee is appointed by the Bankruptcy Court;

g. Debtors move to sell substantially all of their assets pursuant to sections 363 or 1129 of the Bankruptcy Code, and Burks determines, in its sole and absolute discretion, that buyer has not provided adequate assurance of ability to perform under this Agreement, or alternatively, that Burks does not desire to rent the Rental Equipment to the purported assignee/buyer.

**5. Indemnification**. Debtors agree to indemnify, defend and hold harmless Burks from and against any and all claims, actions, suits, proceedings, costs, expenses, damages (including but not limited to consequential and incidental damages), liabilities, deficiencies, fees, interest, awards, penalties, fines, costs (including, but not limited to, attorney fees and court costs), judgments, and settlements, (including those brought or incurred by or in favor of Debtor's employees, agents and subcontractors), arising out of or related to (i) the selection, delivery, loading, unloading, towing, possession, use, misuse, failure or maintenance of the Rental Equipment, operation, handling, retaking, or transportation of the Rental Equipment (inclusive of any of the foregoing by

5

employees or agents of Debtor, or third parties), (ii) personal injury, death or property damage or loss of any nature whatsoever arising out of or related to the Rental Equipment while on rent or subject to this Agreement, (iii) any breach by Debtor of this Rental Agreement or any applicable law, (iv) use of the Rental Equipment in any manner that does not materially conform with the usage specifications provided by Burks or the equipment manufacturer, as applicable, or (v) any act or omission of Debtor or its employees, agents, contractors, subcontractors, affiliates or invitees. Additionally, Debtor agrees to defend, at its expense, any and all suits brought against Burks, either alone or in conjunction with others (including any third-party suits or actions) and additionally to satisfy, pay and discharge any and all judgments and fines against Burks in any such suits or actions, whether based in gross negligence, willful misconduct, negligence or otherwise.

6. **Miscellaneous**.

a. *Limitation of Liability*. In no event will Burks, its subsidiaries, affiliates, agents or employees be liable for any liquidated, incidental, indirect, exemplary, punitive, enhanced, special, or consequential damages in connection with, arising out of, or relating to this Agreement or furnishing of any equipment, goods, services or other items or any third party's ownership, maintenance, or use of any equipment, goods, services or other items furnished under this Agreement, including, but not limited to, lost profits or revenues, loss of use of the Rental Equipment or any associated goods, damage to associated goods, costs of capital, cost of substitute goods, or claims of Debtor for such damages, whether or not the possibility of such damages has been disclosed in advance or could have been reasonably foreseen by Debtor, regardless of the legal or equitable theory (contract, tort or otherwise) upon which the claim is based, and notwithstanding the failure of any agreed or other remedy of its essential purpose. Burks is not responsible for meeting any federal, state, local or municipal code, rules, regulations, or specifications (whether statutory, regulatory, or contractual), unless Debtor specifies it in writing and Burks agrees to it in writing. Debtor agrees that it has selected the Rental Equipment based upon its own judgment and particular needs and disclaims any reliance upon any statements or presentations made by Burks. **IN NO EVENT SHALL BURKS' AGGREGATE LIABILITY ARISING OUT OF OR RELATED TO THIS AGREEMENT, WHETHER ARISING OUT OF OR RELATED TO BREACH OF AGREEMENT, WARRANTY, STRICT LIABILITY TORT (INCLUDING NEGLIGENCE) OR OTHERWISE, EXCEED THE TOTAL RENT PAID UNDER THE PREVIOUS RENTAL AGREEMENT AND THIS AGREEMENT FOR THE PRIOR SIX (6) MONTHS**. The Parties recognize that the pricing associated with Rental Equipment reflects this allocation of risk and is the basis of the bargain between the Parties.

b. *Force Majeure*. Burks shall not be responsible or liable, and Burks' obligation to perform under this Agreement shall be excused during each period of delay, for any delay or failure to deliver any or all of the Rental Equipment and/or performance of the services where such delay or failure is caused by any act of God, any worldwide or *national* epidemic or pandemic, fire, flood, inclement weather, explosion, war, insurrection, riot, embargo, stature, ordinance, regulation or order of any government or agent thereof, shortage of power, shortage of labor, material fuel, supplies or transportation, strike or other labor dispute, or any other cause, contingency, occurrence or circumstance of any nature, whether or not similar to those herein before specified beyond Burks' control, which prevents, hinders or interferes with manufacture, assembly or delivery of the Rental Equipment or performance of the services. Any such cause, contingency, occurrence,

or circumstances shall release Burks from performance of its obligations hereunder. In the event of a Force Majeure event, Burks shall: (i) immediately notify Debtor of the Force Majeure event and its expected duration, and (ii) take all reasonable steps to recommence performance as soon as possible.

c. *Waiver*. No waiver of any provision of Agreement shall be effective unless it shall (a) be in writing; (b) specifically identify this Agreement; (c) specifically state that such document waives certain terms of this Agreement; and (d) be accepted and signed by an authorized representative of Burks. Any waiver authorized on one occasion is effective only in that instance and only for the purpose stated and does not operate as a waiver on any future occasion. None of the following constitutes a waiver or estoppel of any right, remedy, power, privilege, or condition arising from this Agreement: (i) any failure or delay in exercising any right, remedy, power, or privilege or in enforcing any condition under this Rental Agreement; or (ii) any act, omission, or course of dealing between the Parties. Unless otherwise specified, remedies hereunder shall not be exclusive, but shall be cumulative and in addition to all other remedies existing at law or in equity. The receipt, acceptance and/or negotiation of, or any endorsement on, any check or draft received from one Party will not operate to waive or release, in whole or in part, any claim of the other Party arising hereunder or in connection herewith (except as to the portion thereof actually received by the other Party in cash or other good funds). No delay or failure by either party to exercise any right or remedy under this Agreement, and no partial or single exercise of that right or remedy, shall constitute a waiver of that or any other right or remedy, unless otherwise expressly provided in this Agreement.

d. *Counterparts*. This Agreement may be executed in several counterparts, each of which shall be deemed an original but all of which counterparts collectively shall constitute one instrument, and in making proof of this Agreement, it shall never be necessary to produce or account for more than one such counterpart. Signatures of a Party to this Agreement or other documents executed in connection herewith which are sent to the other parties by facsimile or PDF transmission shall be binding as evidence of acceptance of the terms hereof or thereof by such signatory party, with originals to be circulated to the other parties in due course.

e. *Expenses*. Each Party shall be responsible for its own expenses in connection with the preparation, execution, and delivery of this Agreement.

f. *Governing Law, Jurisdiction and Venue*. This Agreement and the relationship between Burks and Debtor shall be governed and construed according to the laws of the State of Idaho. At the sole and exclusive election of Burks, jurisdiction and venue for any action or dispute arising under this Agreement shall be in the Bankruptcy Court. This Agreement, and the Rental Equipment rented herein, is controlled by the laws of the State of Idaho.

g. *Invalid Provisions / Severability*. If any part of this Agreement shall be determined to be invalid, illegal, or unenforceable, or declared null and void by any court of competent jurisdiction, then (i) such part shall be reformed, if possible, to conform to the law and (ii) in any event the remaining parts of this Agreement shall be fully effective and operative insofar as reasonably possible.

h.  *Assignments*. No right or interest in this Agreement shall be assigned by Debtor without the written consent and permission of Burks, and no delegation of any obligation owed or of the performance of any obligation by Debtor shall be made without written permission of Burks. Any attempted assignment or delegation by Debtor  shall be wholly void and totally ineffective for all purposes unless made in conformity with this paragraph. Burks may assign this Agreement in whole or in part to any third party.

i.  *Amendments*. No amendment to or modification of or rescission, termination or discharge of this Agreement is effective unless in a writing signed by an authorized representative of each Party.

j.  *Joint and Several Liability.*  The Debtor's estate is being jointly-administered with affiliated-debtors' estates in the Bankruptcy Cases under lead case # 24-40148.  The Debtors' estates, collectively, are being administered pursuant to a DIP Financing Order and Cash Collateral Order.  Notwithstanding only Debtor is entering into this Agreement, each of the affiliated estates being jointly-administered shall be jointly and severally liable for the payment and performance obligations incurred by Debtor hereunder.

k.  *Entire Agreement*. This Agreement, and associated invoices, constitute the entire agreement between the Parties and supersedes all prior oral and written agreements and understandings between the Parties. The Parties intend for the express terms and conditions contained in this Agreement (including any invoice and these Agreement terms and conditions) to exclusively govern and control each of the Parties' respective rights and obligations regarding the subject matter of this Agreement, and this Agreement is expressly limited to such terms and conditions. Without limitation of the foregoing, any additional, contrary, or different terms contained in any purchase order, third-party agreement, or other request or communication by Debtor pertaining to the rental of equipment by Burks, and any attempt to modify, supersede, supplement, or otherwise alter this Agreement, will not modify this Agreement or be binding on the Parties.

*[remainder of page intentionally left blank; signatures on next page]*

8

**PARTIES:**

BURKS TRACTOR COMPANY, INC., an Idaho
corporation

_____
By: Jared Burks
Its: President


Millenkamp Cattle, Inc., Debtor and Debtor-in-
Possession

_____
By: William Millenkamp

## EXHIBIT A

## Rental Equipment

| Vehicle model | Serial Number |
|---|---|
| 621G2 ZBAR T4F LEC | NZHE16553 |
| 621G2 ZBAR T4F LEC | NZHE16710 |
| 621G2 ZBAR T4F LEC | NZHE16716 |
| 621G2 ZBAR T4F LEC | NZHE16602 |
| 621G2 ZBAR T4F LEC | NZHE16603 |
| 621G2 ZBAR T4F LEC | NZHE16604 |
| 621G2 ZBAR T4F LEC | NZHE16605 |
| 621G2 ZBAR T4F LEC | NZHE16610 |
| 621G2 ZBAR T4F LEC | NZHE16627 |
| 621G2 ZBAR T4F LEC | NZHE16628 |
| 621G2 ZBAR T4F LEC | NZHE16631 |
| 621G2 ZBAR T4F LEC | NZHE16633 |
| 621G2 ZBAR T4F LEC | NZHE16636 |
| 621G2 ZBAR T4F LEC | NZHE16637 |
| 621G2 ZBAR T4F LEC | NZHE16638 |
| 621G2 ZBAR T4F LEC | NZHE16639 |
| 621G2 ZBAR T4F LEC | NZHE16640 |
| 621G2 ZBAR T4F LEC | NZHE16641 |
| 621G2 ZBAR T4F LEC | NZHE16642 |
| 621G2 ZBAR T4F LEC | NZHE16643 |
| 621G2 ZBAR T4F LEC | NZHE16647 |
| 621G2 ZBAR T4F LEC | NZHE16648 |
| 621G2 ZBAR T4F LEC | NZHE16649 |
| 621G2 ZBAR T4F LEC | NZHE16650 |
| 621G2 ZBAR T4F LEC | NZHE16651 |
| 621G2 ZBAR T4F LEC | NZHE16652 |
| 621G2 ZBAR T4F LEC | NZHE16653 |
| 621G2 ZBAR T4F LEC | NZHE16654 |
| 621G2 ZBAR T4F LEC | NZHE16696 |
| 621G2 ZBAR T4F LEC | NZHE16697 |
| 621G2 ZBAR T4F LEC | NZHE16700 |
| 621G2 ZBAR T4F LEC | NZHE16701 |
| 621G2 ZBAR T4F LEC | NZHE16702 |
| 621G2 ZBAR T4F LEC | NZHE16703 |
| 621G2 ZBAR T4F LEC | NZHE16704 |
| 621G2 ZBAR T4F LEC | NZHE16705 |
| 621G2 ZBAR T4F LEC | NZHE16706 |
| 621G2 ZBAR T4F LEC | NZHE16707 |

| 621G2 ZBAR T4F LEC | NZHE16708 |
|---|---|
| 621G2 ZBAR T4F LEC | NZHE16709 |
| 1021G | NZHE22461 |
| 1021G | NZHE22463 |
| 1021G | NZHE22471 |
| 1021G | NZHE22472 |
| 1021G | NZHE22477 |
| 1021G | NZHE22483 |
| 621GXR | NZHE16888 |
| 621GXR | NZHE16885 |
| 621G | NA |
| 621G | NA |
| 621G | NA |
| 621G | NA |

10

## <u>EXHIBIT B</u>

Monthly Rent

- Forty-six 621g case loaders for 7,283.33 hours/month for $127,458.33/month (@ $17.50 per hour)

- Six 1021g case loaders for 1,250 hours/month for $46,562.50/month (@ $37.25 per hour)

Total Rent/Month: $174,020.83

**<u>EXHIBIT C</u>**

<u>PROPOSED ORDER</u>

UNITED STATES BANKRUPTCY COURT
DISTRICT OF IDAHO

In re:

MILLENKAMP CATTLE, INC.,

Debtor.

Filing relates to:

☒ ALL DEBTORS

☐ Millenkamp Cattle, Inc.

☐ Idaho Jersey Girls

☐ East Valley Cattle

☐ Millenkamp Properties

☐ Millenkamp Properties II

☐ Millenkamp Family

☐ Goose Ranch

☐ Black Pine Cattle

☐ Millenkamp Enterprises

☐ Idaho Jersey Girls Jerome Dairy

Case No. 24-40158-NGH

Jointly Administered With Case Nos.:

24-40159-NGH (Idaho Jersey Girls)
24-40160-NGH (East Valley Cattle)
24-40161-NGH (Millenkamp Properties)
24-40162-NGH (Millenkamp Properties II)
24-40163-NGH (Millenkamp Family)
24-40164-NGH (Goose Ranch)
24-40166-NGH (Black Pine Cattle)
24-40167-NGH (Millenkamp Enterprises)
24-40168-NGH (Idaho Jersey Girls Jerome
Dairy)

Chapter 11 Cases

## ORDER GRANTING DEBTOR'S MOTION FOR ORDER AUTHORIZING THE DEBTOR TO ENTER INTO POST-PETITION EQUIPMENT LEASE

The Court, having reviewed the Debtors' Motion for Order Authorizing the

Debtor to Enter Into Post-Petition Equipment Lease (Docket No. _____ - the "Debtor's Motion"),

a final hearing having been held on Debtor's Motion on _____, 2024, and good cause

appearing,

IT IS HEREBY ORDERED that the Debtor's Motion is GRANTED as requested and the stay imposed by Fed. R. Bankr. Proc. 6004(h) is waived; and

IT IS FURTHER ORDERED that the Debtor and Burks Tractor Company, Inc. ("Burks") are authorized to take all actions necessary to effectuate the terms of the Equipment Rental Agreement ("Rental Agreement") immediately upon entry of this order, including without limitation the filing of any financing statements; and

IT IS FURTHER ORDERED that the Debtor shall maintain required insurance coverage on Burks' equipment that is the subject of the Rental Agreement (the "Rental Equipment"); and

IT IS FURTHER ORDERED that the automatic stay is hereby modified to allow the Parties to effectuate the terms and conditions of the Rental Agreement, including without limitation to enable Burks to enforce its rights and remedies as set forth expressly therein; and

IT IS FURTHER ORDERED that, in the event of a breach of the Rental Agreement, either Party may move on an expedited basis for enforcement of this order.  //end of text//

Order submitted by: Matthew T. Christensen, attorney for the Debtors

Approved as to form:

_____
Oren B. Haker, Attorney for Burks Tractor Company, Inc.