Sheila R. Schwager, ISB No. 5059
Brent R. Wilson, ISB No. 8936
HAWLEY TROXELL ENNIS & HAWLEY LLP
877 W. Main Street, Suite 200
P.O. Box 1617
Boise, ID 83701-1617
Telephone: 208.344.6000
Facsimile: 208.954.5261
Email: sschwager@hawleytroxell.com
        bwilson@hawleytroxell.com

Andrew J. Schoulder (pro hac vice)
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, NY 10019
Telephone: 212.318.3030
Email: andrew.schoulder@nortonrosefulbright.com

Attorneys for Rabo AgriFinance LLC

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| In re:<br><br>MILLENKAMP CATTLE, INC.,<br><br>Debtor. | Case No. 24-40158-NGH |
| Filing relates to:<br><br>☒ ALL DEBTORS<br><br>☐ Millenkamp Cattle, Inc.<br><br>☐ Idaho Jersey Girls<br><br>☐ East Valley Cattle<br><br>☐ Millenkamp Properties<br><br>☐ Millenkamp Properties II<br><br>☐ Millenkamp Family<br><br>☐ Goose Ranch | Jointly Administered With Case Nos.:<br><br>24-40159-NGH (Idaho Jersey Girls)<br>24-40160-NGH (East Valley Cattle)<br>24-40161-NGH (Millenkamp Properties)<br>24-40162-NGH (Millenkamp Properties II)<br>24-40163-NGH (Millenkamp Family)<br>24-40164-NGH (Goose Ranch)<br>24-40166-NGH (Black Pine Cattle)<br>24-40167-NGH (Millenkamp Enterprises)<br>24-40165-NGH (Idaho Jersey Girls Jerome<br>Dairy)<br><br>Chapter 11 Cases |

OMNIBUS OBJECTION TO DEBTORS' MOTIONS (Dkt. Nos. 374 and 378) - 1

☐ Black Pine Cattle

☐ Millenkamp Enterprises

☐ Idaho Jersey Girls Jerome Dairy

## OMNIBUS OBJECTION TO DEBTORS' MOTIONS (Dkt. Nos. 374 and 378)

Rabo AgriFinance LLC, in its capacity as agent and secured lender ("RAF"), by and through its attorneys of record, hereby files its omnibus objection to the following motions: (1) *Motion for Authority to Pre-pay Certain Silage and Hay/Straw Vendors for Future Deliveries (Dkt. No. 374)* (the "Silage Motion"); and (2) *Debtors' Motion for Authority to Advance on the DIP Facility (Dkt. No. 378)* (the "DIP Motion") (collectively, the Silage Motion and the DIP Motion, the "Motions"), both filed by the Debtors Millenkamp Cattle, Inc., *et al.* (the "Debtors") on June 6, 2024.

## I.
## PRELIMINARY STATEMENT

### A. The Silage Motion.

The Silage Motion seeks Court approval of immediate payment of $6.5 million in deposits for silage, hay/straw, and chopping services to be received by the Debtors in the future. Dkt. No. 374 at 4. This is made up of $2.5 million for deposits to the hay/straw providers, $2.5 million to the silage providers, and $1.5 million for chopping services to the Debtors' insider H&M Custom. *Id.* at 3-4. The Debtors submit that these deposits are in the ordinary course of business but seek Court approval of said deposits under 11 U.S.C. §§ 363(b), 105(a), 1107, and 1108 in the event they are not ordinary course transactions. *Id.* at 5-7. However, the Debtors make no effort to reconcile how $6.5 million of deposits could possibly be "ordinary course

payments" and yet are never identified in at least one of the five budgets filed with this Court to date.

With respect to the straw/hay deposit, the Debtors state that they "[h]istorically . . . put a deposit down for straw and hay during the summer months for delivery during the harvest in the summer and fall months[,]" however, the amount of the deposit historically provided is not disclosed to this Court so that creditors can evaluate what is actually the ordinary course. *Id.* at 3. For example, what was the amount of the deposit in 2023 and 2022 and the recipients of those deposits. As for silage, even though the Debtors claim that a deposit for silage farmers is in the ordinary course, the Debtors make no such similar statement regarding prior deposits. *Id.* Instead, the Debtors claim that the silage vendors have now required a deposit to continue to do business with the Debtors. *Id.* That is not in the ordinary course of the Debtors' business. Similarly, the Debtors assert that making a deposit to insider H&M is also in the ordinary course of their business, but in the same breath, state that they have not historically put a deposit down for those purchases. *Id.* at 4. Instead, the Debtors claim that H&M is now requiring a deposit of $1.5 million. *Id.* In sum, of the three categories of deposits the Debtors are seeking to make, by their own omission, only one category is actually claimed to be in the ordinary course of their business.

As an alternative, the Debtors request that the Court simply defer to their business judgment. However, the Silage Motion is void of any basis to defer to the Debtors' business judgment. Instead, the Silage Motion is simply further support that the Debtors have no intention of minimizing expenses other than, in the words of Mr. Millenkamp, expenses related to "soap." In particular, the Silage Motion makes no mention of protections for the estates if, after providing $6.5 million in deposits, the vendors do not deliver the products for which these

OMNIBUS OBJECTION TO DEBTORS' MOTIONS (Dkt. Nos. 374 and 378) - 3

deposits have been made. Moreover, the Silage Motion fails to explain why these deposits are necessary if, based on the Silage Motion, the deliveries will likely take place after a chapter 11 plan is filed (with some deliveries occurring in 2025), and if the Debtors are to be believed, after a plan is confirmed.

Like the critical vendor motion wherein the Debtors asserted that their operations and cattle would suffer if not paid immediately prior to confirmation, the Silage Motion also states that if these deposits are not made, as requested, the Debtors' operation and the health of the cattle may suffer. *Id.* at 7. While RAF is sensitive to the welfare of the livestock, it is becoming more and more difficult to identify true emergencies with the Debtors. In particular, upon information and belief from reports provided by the receiver in the Debtors' receivership proceedings, RAF understands that the Debtors had nearly 400 days of silage on hand in March 2024. Thus, the Silage Motion is void of any information that would enable creditors to reconcile the asserted emergency with this information.

## B. The DIP Motion.

The DIP Motion seeks authority to draw an additional $15,000,000 on the DIP facility, or nearly double the previous draws authorized by this Court. Dkt. No. 378 at 4. The DIP Motion states that the Debtors will take an "immediate draw" of $10,000,000 and an additional $5,000,000 by "mid-July." Dkt. No. 378 at 4. The basis for the draws can be broken down as follows:

- **§ 503(b)(9) Claimants**: According to the DIP Motion, the Debtors intend to use nearly $6,000,000 to pay § 503(b)(9) claimants *early,* prior to plan confirmation. *Id.* at 4. The DIP Motion makes this *full* request even though the documentation submitted by the Debtors to RAF upon the request of RAF, demonstrate that many of the claims that the

OMNIBUS OBJECTION TO DEBTORS' MOTIONS (Dkt. Nos. 374 and 378) - 4

Debtors seek payment are not valid § 503(b)(9) claims, despite the representations in the 503(b)(9) Motion and the testimony of Mr. Millenkamp, to the contrary. *See* Dkt. No. 373, RAF's Limited Objection to Debtor's Amended Motion for Allowance and Payment of Section 503(b)(9) Claims, pp.; 7-10; Dkt. Nos, 283, 286, Ex. 1030.  If the Court denies the 503(b)(9) Motion, then the Debtors would not have a need to incur $6 Million (or the approximate $5.1 Million identified in the supplement), and the associated fees and interest.

- **Silage Motion**: The DIP Motion proposes to pay $6,500,000 to the silage, hay/straw, and chopping vendors as a deposit, as requested in the Silage Motion.  Dkt. No. 378 at 4-5. However, to the extent that this Court denies or limits the relief sought in the Silage Motion as set forth herein, no such draw would be necessary.

- **Unexplained $2.5 million**: Based on Debtors' weekly reporting, the Debtors had approximately $10.7 million of cash on hand for the reporting period ending June 9.  The Debtors provide no explanation for the use of the additional $2.5 million draw, particularly in light of the material amount of cash on hand, increased milk prices, and access to cattle sale proceeds.

Ultimately, the Debtors are once again asking this Court and creditors to defer to their business judgment in agreeing to draw $15 million, allow and immediately pay § 503(b)(9) claimants prior to confirmation, and pay certain vocal constituents $6 million of deposits.  Yet, the Debtors now concede that the § 503(b)(9) claims they initially sought to be paid, were not valid § 503(b)(9) claims in the amounts sought.  Notably, the Debtors' professionals signed the 503(b)(9) Motion, which certifies the accuracy of the information contained therein.  Further, it was not simply an oversight, as the Debtors' principal, Mr. William Millenkamp, provided

OMNIBUS OBJECTION TO DEBTORS' MOTIONS (Dkt. Nos. 374 and 378) - 5

59797.0007.17318788.2

extensive testimony under oath, under *penalty of perjury*, with respect to the validity of the § 503(b)(9) claims. Dkt. Nos. 283, 286, Ex. 1030. However, as discussed herein, the certified pleadings and sworn testimony were proven by RAF to be false through the Debtors' own documents. If the Court and creditors were to simply have deferred to the Debtors' business judgment in allowing and paying § 503(b)(9) claimants, it would have been a clear violation of the Bankruptcy Code. The Debtors should no longer have the benefit of deference to their business judgment.

## II.

## LIMITED OBJECTION TO THE SILAGE MOTION

Between the critical vendor motion, the 503(b)(9) Motion, and now the Silage Motion, over the course of the first 77 days of these cases, the Debtors have effectively sought to obviate the need for a confirmed chapter 11 plan of reorganization by repeated attempts to pay unsecured creditor and vendors outside of a chapter 11 plan in violation of the absolute priority rule, and ahead of RAF and other secured creditors. The more the Debtors pay unsecured creditors out of order in violation of the absolute priority rule, prefer some creditors over others, and create their own classes of administrative classes that do not exist under the Bankruptcy Code, then there will be no need for the Debtors to reorganize and file a plan that treats all creditors fairly and in accordance with the Bankruptcy Code. Indeed, although the Debtors stated in their Status Report for the June 2024 Omnibus Hearing that "the Debtors are working towards a proposed reorganization plan and anticipate filing a Plan and Disclosure Statement as soon as possible," a review of the fee applications indicates that *no* time has been devoted to a plan, disclosure statement, or refinancing. *See* Dkt. Nos. 323, 344, 387, 406.

In the Silage Motion, the Debtors argue that the deposits requested therein are in their ordinary course of business. Dkt. No. 374 at 4. Section 363(c) provides:

OMNIBUS OBJECTION TO DEBTORS' MOTIONS (Dkt. Nos. 374 and 378) - 6

59797.0007.17318788.2

> If the business of the debtor is authorized to be operated under section . . . 1108 . . . of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(1).

The Debtors argue further that if the deposits are not ordinary course of business transactions, then the Court should approve the deposits under § 363(b)(1), as supplemented by § 105(a).  Dkt. No. 374 at 4-6.  Section 363(b)(1) provides that the Debtors "may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Notably, the request is not the use, sale, or lease of property of the estate; it's the pre-payment for a purchase of goods and services, not in the ordinary course of business.

In any event, in order to approve a transaction under § 363(b)(1), courts consider whether the debtor exercised sound business judgment.  *See, e.g., Official Comm. Of Unsecured Creditors v. The LTV Corporation, LTV (In re Chateaugay Corp.)*, 973 F.2d 141, 144-45 (2d Cir. 1992) (holding that § 363(b)(1) was met because sound business judgment supported the sale).  However, while deferential, § 363(b)(1) and the business judgment rule has limits.  The business judgment rule is not applicable when there is a conflict or bad faith.  *Steelman v. Mallory*, 110 Idaho 510, 513-514, 716 P.2d 1282, 1285-1286 (1986).  Further, it must be determined to be supported by "some articulated business justification, other than appeasement of major creditors, for using, selling or leasing property out of the ordinary course of business before a bankruptcy judge may order such disposition under section 363(b)."  *Comm. Of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983).  In addition, in its findings, "a bankruptcy judge must not blindly follow the hue and cry of the most vocal special

OMNIBUS OBJECTION TO DEBTORS' MOTIONS (Dkt. Nos. 374 and 378) - 7

interest groups; rather, he should consider all salient factors pertaining to the proceeding, and, accordingly, act to further the diverse interest of the debtor, creditors and equity holders, alike."

*Id.* at 1071. Specific "relevant factors" appropriate to be considered in this instance are:

> the proportionate value of the asset to the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed distribution on future plans of reorganization, the proceeds to be obtained from the disposition vis-à-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions and, most importantly perhaps, whether the asset is increasing or decreasing in value.

*Id.*; *see also Simantob v. Claims Prosecutor, LLC (In re Lahijani)*, 325 B.R. 282, 289 (B.A.P. 9th Cir. 2005) (declining to defer to business judgment of the trustee as to a sale under § 363(b) when the trustee's analysis on the sale was flawed resulting in lower value to the estate).

Finally, under this analysis, the Debtors bear the burden to demonstrate that the deposits outside the ordinary course will aid in the Debtors' reorganization, while the objecting party is required to produce some evidence as to its objections. *In re Lionel Corp.*, 722 F.2d at 1071-72; *see also In re Lahijani*, 325 B.R. at 288-89 (noting "[o]rdinarily, the position of the trustee is afforded deference, particularly where business judgment is entailed in the analysis or where there is no objection . . . [n]evertheless, particularly in the face of opposition by creditors, the requirement of court approval means that the responsibility ultimately is the court's"); *In re Frantz*, 534 B.R. 378, 388 (Bankr. D. Idaho 2015) (noting the Court's obligations as stated in *In re Lahijani*).

Applying these principles, the Debtors fail to support their burden under the Silage Motion. The Silage Motion further evidences an apparent intent by the Debtors to operate in this bankruptcy case much longer than previously represented. Without a plan or disclosure statement being filed, the Debtors seem content to continue to borrow, at significant costs,

OMNIBUS OBJECTION TO DEBTORS' MOTIONS (Dkt. Nos. 374 and 378) - 8

contrary to sound business judgment, and acquiesce to vocal creditors—amongst which is the Debtors' insider, H&M—in this bankruptcy case with no real plan of exit, to the detriment of their creditors.

## The Deposits Are Not Ordinary Course Payments

The deposits requested are not in the ordinary course of business and should not be approved under the authority cited in the Silage Motion. The Debtors seem to acknowledge the fact that the requests are outside the ordinary course of business. This is demonstrated by the Debtors' failure to conduct the applicable analysis or cite the applicable law on determining whether the transaction is in the ordinary course of business in the Silage Motion. *See, e.g.*, *In re Azevedo*, 2012 WL 3726752 (Bankr. D. Idaho Aug. 27, 2012) (discussing this standard). This contrasts with the Debtors' analysis on this issue in *Debtors' Omnibus Motion for Authority to Purchase and Sell Equipment and Machinery (Dkt. No. 379)*, which RAF disputes and will oppose at the appropriate time.

The Debtors do not provide any evidence of their historical deposits for hay/straw, other than to state that these have been made in the past. This is significant based upon prior testimony and evidence submitted by the Debtors that was ultimately determined to be false. Indeed, Mr. Millenkamp testified on May 8, 2024, that this Court should allow certain § 503(b)(9) claims and should allow those claims to be paid early. *See* Dkt. Nos., 283, 286. Specifically, Mr. Millenkamp directly testified when questioned by Debtors' counsel, *under penalty of perjury*, from Exhibit 1030, that each and every one of the following creditors under **"Goods Delivered within 20 days"** were unpaid for the following and *specified* amounts:

> Aden Brook Trading Corp., $802,625.39;
> Carne I Corp. $144,068.58;
> J.D. Heisekll & Co., $113,921.89;
> Receptor Food Group, $114,172;

OMNIBUS OBJECTION TO DEBTORS' MOTIONS (Dkt. Nos. 374 and 378) - 9

MWI Veterinary, $509,786.55;
Automation Werx, LLC $23,323.25;
Coastline, $8,421.06;
Elevation Electric $141,370.37;
G.J. Verti-line Pumps, Inc., $1,344.81;
Progressive Dairy Service and Supplies, $59,254.65;
The Dairy Solutions Group, $75,742.49;
Rocky Mountain Agronomics, $55,235.67;
Clear Lakes Products $133,158.18; and
Butte Irrigation, Inc., $45,241.99.

*See* Ex. A attached hereto, Exhibit 1030; testimony at Dkt. Nos., 283, 286.  It was only after

RAF requested and reviewed the Debtors' documentation that the Debtors claimed supported

their §503(b)(9) claims *and* still then only after RAF filed on June 6, 2024, an objection

demonstrating how the Debtors' representations as to the §503(b)(9) claims were not accurate;

that the Debtors then filed a revised itemization of §503(b)(9) claims on June 14, 2024.  *See* Dkt.

427, attached hereto as Ex. B.  Notably, despite Mr. Millenkamp's specific and direct testimony

to the contrary on May 8, 2024, the Debtors made the following adjustments to those creditors

referenced above, which amounts to an overstatement as to those specific creditors of

**$801,522.86**:

| Creditor | Testimony | | Revised Claim | | Difference | |
|---|---|---|---|---|---|---|
| Aden Brook Trading Corp | $ | 802,625.39 | $ | 746,600.02 | $ | 56,025.37 |
| Carne I Corp. | $ | 144,068.58 | $ | 131,312.90 | $ | 12,755.68 |
| J.D. Heisekll & Co. | $ | 113,921.89 | $ | - | $ | 113,921.89 |
| Land View, Inc.-Livestock-Animal Care | $ | 1,095,638.57 | $ | 1,057,117.09 | $ | 38,521.48 |
| Receptor Food Group | $ | 114,172.00 | $ | - | $ | 114,172.00 |
| MWI Veterinary | $ | 509,786.55 | $ | 484,255.92 | $ | 25,530.63 |
| Automation Werx, LLC | $ | 23,323.25 | $ | 1,287.03 | $ | 22,036.22 |
| Coastline | $ | 8,421.06 | $ | 4,386.53 | $ | 4,034.53 |
| G.J. Verti-line Pumps, Inc. | $ | 1,344.81 | $ | - | $ | 1,344.81 |
| Progressive Dairy Service and Supplies. | $ | 59,254.65 | $ | 4,858.75 | $ | 54,395.90 |
| The Dairy Solutions Group | $ | 75,742.49 | $ | 41,264.50 | $ | 34,477.99 |
| Rocky Mountain Agronomics | $ | 55,235.67 | $ | 44,527.47 | $ | 10,708.20 |
| Clear Lakes Products | $ | 133,158.18 | $ | 592.00 | $ | 132,566.18 |

OMNIBUS OBJECTION TO DEBTORS' MOTIONS (Dkt. Nos. 374 and 378) - 10

| Butte Irrigation, Inc., | $ | 45,241.99 | $ | 220.30 | $ | 45,021.69 |
| Elevation Electric | $ | 141,370.37 | $ | 5,360.08 | $ | 136,010.29 |

And yet, the Debtors continue to contend that deference should be submitted to their business judgment.

Accordingly, as to the unsupported claim of historical deposits, if there were historical deposits that have been made, then it's questionable why those amounts would not be included in the *five* budgets already provided by the Debtors in these cases. It is axiomatic that a payment in such a material amount, if in the ordinary course of historical operations, would have been included in each version of the Debtors' budgets. Yet, the Court and creditors are first finding out about these payments in a motion filed on shortened notice. Similarly, in respect to the silage providers, the Debtors do not even state that it has been their ordinary course of business to place a deposit for these goods, and instead state that these providers are now requiring the deposits to go forward with business with the Debtors. As such, this transaction proposed is not in the ordinary course of the Debtors' business either.

Finally, with respect to the Debtors' insider, H&M, that entity is a service provider, rather than a provider of goods to the Debtors. H&M chops the crops and prepares them to be fed to the cattle, which services are likely not necessary until October 2024. H&M is the proverbial "vocal special interest group." *In re Lionel Corp.*, 722 F.2d at 1071. It should not be lost on this Court or parties in interest that, according to the Silage Motion, the principal of H&M, again an insider of the Debtors, has concerns about the Debtors' viable operation and whether it will be paid for postpetition services. Thus, the Debtors are proposing to pay insider H&M an unprecedented deposit of $1.5 million after already paying H&M's unsecured claim, in full, to the tune of $4.25 million, under the interim order authorizing critical vendor payments. By itself, this demonstrates a lack of confidence in the Debtors by the Debtors' own principal and

OMNIBUS OBJECTION TO DEBTORS' MOTIONS (Dkt. Nos. 374 and 378) - 11

his business partner.  What message does this send to the rest of the creditors and what will be the ensuing avalanche of requests for prepayment in this case, as well as other cases?  The best way to build confidence is for the Debtors to file a plan that repays all creditors as Mr. Millenkamp and his professionals have represented to the Court over the last 77 days.  As such, there are no circumstances where a deposit should be paid to the insider H&M.

## The Debtors' Business Judgment to Pay $6.5M in Deposits

The Debtors are seeking to provide $5 million in deposits for the purchase of silage, hay, and straw (all of which would otherwise entitle the farmers to statutory agricultural liens in addition to administrative expense claims) without implementing any protections to ensure that their estates will actually receive these goods.  Thus, the Debtors have no assurances that after making these payments, the farms will still be in business or, after taking the estate assets, will not sell the goods to another customer.  Likewise, the Debtors have not provided any evidence as to what has historically been paid to these farms so that parties can evaluate whether the proposed payments are actually a good exercise of the Debtors' business judgment.

As stated, with respect to the Debtors' insider, H&M, that entity is a service provider, rather than a provider of goods to the Debtors.  H&M chops the crops and prepares them to be fed to the cattle, which services are likely not necessary until October 2024.  In the fall, when payment may be due to H&M, if the Debtors' comments are to be believed, it should be well after their chapter 11 plan confirmation, thus there is no business justification to pay these amounts now.

## RAF's Limited Objection to the Silage Motion

As a threshold matter, RAF respectfully requests that this Court deny any request to pay insider H&M a deposit for the reasons set forth herein.  In respect of the proposed deposits to the

OMNIBUS OBJECTION TO DEBTORS' MOTIONS (Dkt. Nos. 374 and 378) - 12

hay/straw and silage farmers, RAF does not object to the payment of deposits subject to the following conditions, which inure to the benefit of all stakeholders (including the Debtors):

- <u>Amounts Consistent with Past Practice</u>. The Debtors should provide evidence of historical deposits paid to each of the proposed farms. Upon provision and verification of this information, the Debtors should only be authorized to make payments that are consistent with such historical practices (such amounts, the "<u>Approved Deposits</u>"), subject to the other conditions herein and otherwise set by this Court.

- <u>Security in Goods or Cash</u>. As a further condition to the payment of any deposit, (i) the Debtors should receive a first priority lien in the goods being grown and purchased, or (ii) the recipients should be required to escrow such estate funds until the goods have been delivered to the Debtors.

To the extent that the Debtors comply with each of the foregoing conditions, RAF would not object to the entry of an order approving the use of the Approved Deposits.

## III.

## **RAF'S OBJECTION TO THE DIP MOTION**[1]

### **Limited Funding**

Since the Debtors intend to largely use the requested $15 million to make payments in violation of the absolute priority rule, RAF respectfully requests that the Court deny the draw except as set forth herein. Of the $15 million being requested, approximately $6 million (and perhaps now $5.1 Million, based on the Debtors' recent 503(b)(9) supplement) is in respect of amounts requested to be paid early—prior to chapter 11 plan confirmation—in the *Amended*

---

[1] With respect to the DIP Motion, RAF incorporates by reference the applicable law and arguments set forth in each of its filings objecting to the post-petition financing. *See* Dkt. Nos. 81, 99, 131, 181, and 244.

OMNIBUS OBJECTION TO DEBTORS' MOTIONS (Dkt. Nos. 374 and 378) - 13

*Motion for Allowance and Payment of Section 503(b)(9) Claims (Dkt. No. 308)* (the "503(b)(9) Motion"). Of the remaining amount, $6.5 million is requested in the Silage Motion. Consistent with prior DIP requests, the Debtors provide no explanation for the remaining $2.5 million being requested in the DIP Motion.

As pointed out by RAF in the *Limited Objection to Debtors' Amended Motion for Allowance and Payment of Section 503(b)(9) Claims (Dkt. No. 373)*, the initial 503(b)(9) Motion includes amounts that are not even valid § 503(b)(9) claims because they are for services provided and finance charges, rather than goods, contrary to the Debtors' certified representations to the Court in the 503(b)(9) Motion and the Debtors' prior, specific, sworn testimony. At present, the Debtors have now admitted that the prior requested claims were not accurate and have revised 22 of the 26 claims, with their revised supplement being filed just three business days prior to the scheduled evidentiary hearing sought on an expedited basis. Absent from the supplement was any documentation supporting the new, revised request for $5.1 Million. If this Court denies the Debtors' request to pay approximately $5.1 million of § 503(b)(9) claims prior to confirmation, the Debtors will no longer have a need to draw such expensive DIP financing amounts. Likewise, if the Court denies the Debtors' request to pay a $1.5 million unprecedented deposit to insider H&M and limits the deposits for silage and hay/straw to the Approved Deposits, the Debtors' cash needs under the Silage Motion will not exceed $5 million.

If the Debtors' spending need is limited to the Approved Deposits, it is unclear whether the Debtors even need to make any draw against the DIP facility. Based on the Debtors' variance reporting, the Debtors had $10.7 million of cash on hand for the reporting period ending June 9. Further, RAF understands that milk prices have increased, and the Debtors now have

OMNIBUS OBJECTION TO DEBTORS' MOTIONS (Dkt. Nos. 374 and 378) - 14

access to cattle proceeds. As such, the Debtors' operation should have additional funds with which to operate and avoid the necessity of incurring significant borrowing costs under the DIP facility. Accordingly, if the Court denies the Debtors' request to pay valid § 503(b)(9) claims prior to confirmation of a chapter 11 plan and limits the Silage Motion to Approved Deposits, again it is unclear whether the Debtors even have a bona fide need to make any draw against the DIP facility. However, the Debtors bear the burden of establishing that need and have failed to do so. Thus, as a condition to any such draw on the DIP facility, the Debtors should be required to establish that their cash on hand is insufficient to pay the amounts actually authorized under the Silage Motion and 503(b)(9) Motion.

### **RAF Is Not Adequately Protected**

Despite being 77 days into these chapter 11 cases, no chapter 11 plan or disclosure statement has been filed in any of the Debtors' cases. This is so even though the Debtors testified on multiple occasions that they intend to <u>exit this bankruptcy</u> in 130 days. *See, e.g.*, Ex. 3041, Apr. 9, 2024, Hr'g Tr., Pg. 264, lines 3-4 (testimony of Ms. Churchill of Kander stating a 130-day exit is the Debtors' intent). If the Debtors wish to pay unsecured creditors and insiders in full, as they have proposed to do, the Debtors should simply file a chapter 11 plan of reorganization within the promised timeframe. Instead, the Debtors continue to seek more ways to pay unsecured creditors prior to confirmation of such plan, in violation of the Bankruptcy Code and the absolute priority rule. In doing so, the Debtors are not only skipping unsecured creditors ahead of RAF in priority, but they are using an expensive priming DIP loan to the Estate's further detriment to do so.

To justify this prejudicial treatment, the Debtors continue to point to an equity cushion. However, as noted at prior hearings, an equity cushion will only adequately protect RAF's

OMNIBUS OBJECTION TO DEBTORS' MOTIONS (Dkt. Nos. 374 and 378) - 15

interests if there is a sale process to maximize that equity value. Based on the most recent report from the Forbes Group, the Debtors' investment banker, there has been effectively no progress in identifying a source of refinancing since prior to the Petition Date. Indeed, as of the filing of this objection, despite its request, RAF still has not even received an updated confidential information memorandum that corrects the material and false information provided to potential investors to comply with applicable securities laws. With effectively no progress from the Forbes Group and no chapter 11 plan or disclosure statement submitted, it is reasonably likely that RAF will find itself so far into a chapter 11 process, with no contingency planning for a sale process to actually monetize the asserted equity cushion. Likewise, as the Debtors continue to incur debt, they are silent on proposed operational improvements to address their historical inability to generate sufficient cash flow to service debt, as evidenced by the testimony and evidence presented by FTI Consulting, at the prior hearing for final DIP approval. At this pace, the only reasonable outcome will be the need to incur additional DIP financing (in excess of the current $45 million commitment), to start a sale process only after the Debtors have failed to obtain the necessary financing to effect a confirmable plan of reorganization.

Thus, to the to the extent that the Court authorizes any further draws on the DIP facility, RAF respectfully requests that the Court condition such funding on the following adequate protection rights:

1. <u>Interest at the Default Rate</u>. Based on the 503(b)(9) Motion and Silage Motion, the Debtors clearly believe they have sufficient cash resources to justify preferring unsecured creditors and insiders in violation of the absolute priority rule. However, these payments should not be to the detriment of RAF. Specifically, commencing on the date of the next subsequent advance, RAF requests that the Court condition such draw and further draws on RAF being paid

interest during the pendency of the cases at the default rate, which is similar to the rate approved for the DIP lender.

     2.  <u>Professional Fees</u>.  Since the commencement of these chapter 11 cases, RAF has incurred substantial professional fees that have benefited all stakeholders, including the Debtors. Specifically:

- **Material Reduction in Cost of Sandton Priming DIP**. Through RAF's competing DIP proposals, Sandton was required to reduce its proposed pricing. Based on FTI's estimates, the RAF competing proposal caused Sandton to reduce its fees and interest in a way that will save the estates approximately $2 million.[2] If RAF had not made its competing proposals, the Debtors would have acquiesced to those original terms.

- **Material Reduction in DIP Interest Expense and Fees.** Through their motions, the Debtors sought to draw $25 million of DIP financing for the interim period and $45 million upon entry of the final order. Instead, as a result of RAF's objections, as the sole objecting party, the Debtors were limited to $8.5 million of DIP financing on an interim basis and an additional $10 million draw on a final basis. As a result of RAF's efforts, the estates significantly reduced the amount of interest and fees that the Debtors sought to incur.

- **Identification of Invalid 503(b)(9) Claims.** As fiduciaries, in their 503(b)(9) Motion, the Debtors had an obligation to conduct due diligence and propose the allowance only of those claims that satisfied the requirements of § 503(b)(9). The Debtors did not, and instead made misrepresentations to the Court with respect to the validity of such claims.

---

[2] As a result of the RAF competing proposal, Sandton (i) reduced interest from 15% PIK to 12.5% PIK, (ii) reduced the issuance fee from 2.5% to 1.5%, (iii) reduced the exit fee from 2.5% to 1.5%, (iv) reduced the renewal fee from 2.5% to 1.5%, (v) reduced the unused fee from 2.5% to 1.0%, and (vi) eliminated the exorbitant 1.15x minimum multiple of investment capital fee.

OMNIBUS OBJECTION TO DEBTORS' MOTIONS (Dkt. Nos. 374 and 378) - 17

No other party in interest brought this issue to the Court's attention other than RAF after being forced to incur professional fees to identify the misrepresentations by requesting and reviewing the Debtors' invoices and delivery documents that were provided.

Given the lack of a promised confirmation within 130 days of the Petition Date and the lack of progress by the Forbes Group, there is a high risk of these bankruptcy cases languishing with additional DIP draw requests, like the DIP Motion, likely forthcoming.

## IV.
## CONCLUSION

Accordingly, RAF respectfully requests that the Court limit the relief granted in the Motions set forth herein.

Dated: June 18, 2024

HAWLEY TROXELL ENNIS & HAWLEY LLP

Brent R. Wilson, ISB No. 8936
Sheila R. Schwager, ISB No. 5059
Attorneys for Rabo AgriFinance LLC

OMNIBUS OBJECTION TO DEBTORS' MOTIONS (Dkt. Nos. 374 and 378) - 18

59797.0007.17318788.2

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of June, 2024, I electronically filed the foregoing **OMNIBUS OBJECTION TO DEBTORS' MOTIONS (Dkt. Nos. 374 and 378)** with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to those identified in the CM/ECF system for this matter, at the time this document was filed, including the following persons:

| | |
|---|---|
| Matthew T. Christensen | mtc@johnsonmaylaw.com |
| Krystal R. Mikkilineni | krystal.mikkilineni@dentons.com |
| Tirzah R. Roussell | tirzah.roussell@dentons.com |
| U.S. Trustee | ustp.region18.bs.ecf@usdoj.gov |
| Heidi Buck Morrison | heidi@racineolson.com |
| David A. Coleman | david@colemanjacobsonlaw.com |
| Jon B. Evans | evans.jb@dorsey.com |
| Kimbell D. Gourley | kgourley@idalaw.com |
| Daniel C. Green | dan@racineolson.com |
| Scott C. Powers | spowers@spencerfane.com |
| Janine Patrice Reynard | janine@averylaw.net |
| Sheila Rae Schwager | sschwager@hawleytroxell.com |
| Brent Russel Wilson | bwilson@hawleytroxell.com |
| Zachary Fairlie | zfairlie@spencerfance.com |
| John O'Brien | jobrien@spencerfane.com |
| Gery W. Edson | gedson@gedson.com |
| Aaron Bell | abell@evanskeane.com |
| Brian Faria | brian@sawtoothlaw.com |
| Robert A. Faucher | rfaucher@hollandhart.com |
| Matthew W. Grimshaw | matt@grimshawlawgroup.com |
| Karen Lloyd | klloyd@grsm.com |
| James Justin May | jjm@johnsonmaylaw.com |
| Rhett Michael Miller | rmiller@magicvalley.law |
| Robert E. Richards | robert.richards@dentons.com |
| Holly Roark | holly@roarklawboise.com |
| Evan Thomas Roth | evan@sawtoothlaw.com |

Meredith Leigh Thielbahr                      mthielbahr@grsm.com

John F. Kurtz, Jr.                                    jfk@kurtzlaw.com

And any others receiving cm/ecf notices

Sheila R. Schwager

OMNIBUS OBJECTION TO DEBTORS' MOTIONS (Dkt. Nos. 374 and 378) - 20

59797.0007.17318788.2

# Exhibit A-

# Debtors' Exhibit 1030

| Critical Vendors | Lien | Goods Delivered within 20 Days | Amount of Critical Vendor Payment | Scheduled Amount of Claim |
|---|---|---|---|---|
| Aden Brook Trading Corp | | $802,625.39 | $ 800,000.00 | $ 1,331,470.00 |
| American Calf Products | | $194,332.80 | $ 100,000.00 | $ 240,197.00 |
| B & H Farming-Randy B & Tom Haynes | Yes | $0.00 | $ 247,000.00 | $ 323,120.00 |
| BUNGE Canada | | $0.00 | $ - | $ 1,145,984.00 |
| Carne I Corp. | | $144,068.58 | $ 200,000.00 | $ 438,453.00 |
| H&M Custom | Yes | $0.00 | $ 4,250,000.00 | $ 4,769,171.00 |
| Healthy Earth Enterprises, LLC | Yes | $0.00 | $ 60,000.00 | $ 60,000.00 |
| Holesinsky Farms  LLC | | $0.00 | $ 173,000.00 | $ 226,292.00 |
| J.D. Heiskell & Co. | | $113,921.89 | $ 100,000.00 | $ 742,936.00 |
| Kody Youree | Yes | $0.00 | $ 86,000.00 | $ 112,157.00 |
| Land View, Inc-Livestock- Animal Care | | $1,095,638.57 | $ 3,000,000.00 | $ 7,514,644.00 |
| Milner Hay Co. | Yes | $0.00 | $ 50,000.00 | $ 114,885.00 |
| Moss Grain Partnership | Yes | $0.00 | $ 329,000.00 | $ 430,000.00 |
| PerforMix Nutrition Systems | Yes | $208,325.04 | $ - | $ 213,744.00 |
| Receptor Food Group | | $114,172.00 | $ 500,000.00 | $ 1,264,252.00 |
| Standlee Premium Products | | $0.00 | $ 159,000.00 | $ 208,490.00 |
| Wada Farms | Yes | $0.00 | $ 275,000.00 | $ 374,433.00 |
| Viserion Grain, LLC | | $0.00 | $ - | $ 3,168,353.00 |
| Viterra USA Grain, LLC | | $1,943,287.40 | $ - | $ 4,688,718.00 |
| WAG Services Inc | | $684.80 | $ 150,000.00 | $ 231,722.00 |
| Chojnacky, Ed & Matt | Yes | $0.00 | | |
| Grant 4-D Farms, LLC | Yes | $0.00 | | |
| Grant & Hagan Inc. | Yes | $0.00 | | |
| Douglas J Grant | Yes | $0.00 | | |
| Hollifield Ranches, Inc | Yes | $0.00 | | |
| Star Falls-Steven & Doug Huettig | Yes | $0.00 | | |
| Bo Stevenson- B & A Farms | Yes | $0.00 | | |
| Triple C Farms | Yes | $0.00 | | |
| Reed Farms | Yes | $0.00 | | |
| Standing 16 Ranch | Yes | $5,000.00 | | |
| Clint Thompson | Yes | $0.00 | | |
| Ken or Jean Thompson | Yes | $0.00 | | |
| Steel Ranch LLC - Cody Nelson | Yes | $0.00 | | |
| Dusty Brow Farms - Brett Nelson | Yes | $0.00 | | |
| [Farmer Silage Group] | | | $ 5,000,000.00 | $ 6,537,208.00 |
| **Vet/Med** | | | | |
| David Clark DVM | | $0.00 | $ 7,500.00 | $ 8,164.00 |
| MWI Veterinary | Yes | $509,786.65 | $ 1,500,000.00 | $ 2,565,856.00 |
| **Repairs & Maintenance** | | | | |
| Automation Werx, LLC | | $23,323.25 | $ 100,000.00 | $ 218,691.00 |
| Boyce Equipment & Parts Co., Inc. | | $0.00 | $ 7,500.00 | $ 10,191.00 |
| Clear Water Products, LLC | | $0.00 | $ 200,000.00 | $ 658,702.00 |

EXHIBIT 1030

| | | | | | |
|---|---|---|---|---|---|
| Coastline | Yes | $8,421.06 | $ | 140,000.00 | $ | 151,844.00 |
| Electrical Werx & Construction, LLC | | $0.00 | $ | 50,000.00 | $ | 81,741.00 |
| Elevation Electric | | $141,370.37 | $ | 200,000.00 | $ | 609,454.00 |
| Ferguson Enterprises, Inc. | | $96.59 | $ | 5,000.00 | $ | 6,880.00 |
| Floyd Lilly Company, Inc | | $64.80 | $ | - | $ | 217.00 |
| G.J. Verti-line Pumps, Inc. | | $1,344.81 | $ | 135,000.00 | $ | 154,531.00 |
| Green Source Automation | | $0.00 | $ | 150,000.00 | $ | 390,781.00 |
| Progressive Dairy Service and Supplies | | $59,254.65 | $ | 60,000.00 | $ | 138,280.00 |
| Schows Truck Center - Heyburn | | $0.00 | $ | - | $ | 446.00 |
| Schow's Auto Parts - Rupert | | $1,274.55 | $ | 25,000.00 | $ | 28,410.00 |
| The Dairy Solutions Group | | $75,742.49 | $ | 70,000.00 | $ | 330,268.00 |
| Western States Cat | | $0.00 | $ | 596,071.00 | $ | 688,965.00 |
| Xavier Farm Services, LLC | | $0.00 | $ | 45,000.00 | $ | 63,895.00 |

**Chemicals**

| | | | | | |
|---|---|---|---|---|---|
| Rocky Mountain Agronomics | $55,235.67 | $ | 400,000.00 | $ | 769,471.00 |
| Clear Lakes Products | $133,158.18 | $ | 200,000.00 | $ | 687,864.00 |

**Semen**

| | | | | | |
|---|---|---|---|---|---|
| ABS Global, Inc. | $187,563.30 | $ | 86,551.00 | $ | 817,330.00 |

**Trucking**

| | | | | | |
|---|---|---|---|---|---|
| JF Farms Inc. | $0.00 | $ | 75,000.00 | $ | 205,675.00 |
| Llanos Trucking LLC | $0.00 | $ | 51,000.00 | $ | 52,590.00 |
| Novoa Trucking | $0.00 | $ | 40,000.00 | $ | 42,314.00 |
| S & O Mata Trucking LLC | $0.00 | $ | 20,000.00 | $ | 24,090.00 |
| Taqueria Tamazula Trucking | $0.00 | $ | 20,000.00 | $ | 25,498.00 |
| V & M Trucking LLC | $0.00 | $ | 15,000.00 | $ | 17,710.00 |

**Other**

| | | | | | |
|---|---|---|---|---|---|
| Butte Irrigation Inc | $45,241.99 | $ | 50,000.00 | $ | 204,910.00 |
| Darling Ingredients | $0.00 | $ | 15,000.00 | $ | 23,842.00 |
| J & C Hoof Trimming, Inc | $0.00 | $ | 40,000.00 | $ | 43,417.00 |

| | | |
|---|---|---|
| $5,340,727.12 | $ | 19,782,622.00 |

EXHIBIT 1030

# Exhibit B-

# Debtors' June 14, 2024 503(b)(9) Supplement

Matthew T. Christensen, ISB: 7213
J. Justin May, ISB: 5818
JOHNSON MAY
199 N. Capitol Blvd, Ste 200
Boise, Idaho 83702
Phone: (208) 384-8588
Fax: (208) 629-2157
Email: mtc@johnsonmaylaw.com
        jjm@johnsonmaylaw.com


Krystal Mikkilineni, *PHV*
Robert E. Richards, *PHV*
Tirzah Roussell, *PHV*
DENTONS
215 10th Street, Ste 1300
Des Moines, IA 50309
Phone: (515) 288-2500
Fax: (515) 243-0654
Email: krystal.mikkilineni@dentons.com
        robert.richards@dentons.com
        tirzah.roussell@dentons.com

Attorneys for the Debtor

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| In re | Case No. 24-40158-NGH |
| MILLENKAMP CATTLE, INC., *et. al.*, | Chapter 11 |
| Debtors.[1] | |

---

[1] The Debtors in the Chapter 11 Cases along with the last four digits of their respective tax identification number or registration number in the applicable jurisdiction are: Millenkamp Cattle, Inc. (26-0603892); Idaho Jersey Girls LLC (46-3084467); East Valley Cattle, LLC (20-3238613); Millenkamp Properties, L.L.C. (26-0604003); Millenkamp Properties II LLC (84-3797719); Millenkamp Family LLC (46-1868279); Goose Ranch, LLC; Idaho Jersey Girls Jerome Dairy LLC (81-4713431); Black Pine Cattle LLC; and Millenkamp Enterprises LLC. The location of the Debtors' service address for purposes of the Chapter 11 Cases is 471 N 300 W., Jerome, ID 83338.

#4012835

**SUPPLEMENT TO DEBTORS' AMENDED MOTION FOR ALLOWANCE AND
PAYMENT OF SECTION 503(B)(9) CLAIMS**

Millenkamp Cattle, Inc. ("Millenkamp Cattle") and its affiliated debtors and debtors in
possession (collectively, the "Debtors") in the above-captioned chapter 11 case (the "Chapter 11
Case"), by and through its undersigned counsel, hereby respectfully submit this *Supplement to
Debtors' Amended Motion for Allowance and Payment of Section 503(b)(9) Claims* (the "Amended
Motion") and in support of this Supplement, the Debtors represent as follows:

1.      On April 2, 2024, the Debtors filed a Motion for Allowance and Payment of Section
503(b)(9) Claims (the "503(b)(9) Motion") (Docket No. 15).

2.      On April 24, 2024, the United States Trustee (the "UST") filed a partial objection
to the 503(b)(9) Motion (the "Objection") (Docket No. 230).

3.      On May 20, 2024, the Debtors filed the Amended Motion in further support of the
original 503(b)(9) Motion and to amend the list of 503(b)(9) claimants (the "503(b)(9) Claimants")
(Docket No. 308). Attached as Exhibit A to the Amended Motion was a list of the 503(b)(9)
Claimants.

4.      On May 30, 2024, the UST filed an Objection to the Amended Motion (Docket No.
356).

5.      On June 6, 2024, Rabo AgriFinance LLC filed an Objection to the Amended
Motion arguing that some of the 503(b)(9) Claims included amounts for finance charges and costs
for labor (Docket No. 273).

6.      Since the filing of the Amended Motion, the Debtors have engaged in discussions
with the 503(b)(9) Claimants and have done a further analysis of the claims. After further review,
the Debtors have amended the list of 503(b)(9) Claimants to remove any and all finance charges
and labor costs from the list. This also resulted in some creditors being removed as 503(b)(9)

SUPPLEMENT TO DEBTORS' AMENDED MOTION FOR ALLOWANCE AND PAYMENT OF SECTION
503(B)(9) CLAIMS - 2

Claimants.  The additional review and discussions with Claimants also resulted in some claims increasing or decreasing based on further review of the invoices.

7.    As such, the Debtors file this Supplement to amend and revise the list of 503(b)(9) Claimants.

8.    Attached hereto as Exhibit A is the updated list of the 503(b)(9) Claimants and the 503(b)(9) amounts owed to them. Attached as Exhibit B is a courtesy redline copy of the original 503(b)(9) Claimant list that was included in the Amended Motion.

DATED this 14th day of June 2024

Respectfully submitted,

DENTONS

/s/ Krystal R. Mikkilineni
Krystal R. Mikkilineni

JOHNSON MAY

/s/ Matt Christensen
Matthew T. Christensen

Attorneys for Debtors

SUPPLEMENT TO DEBTORS' AMENDED MOTION FOR ALLOWANCE AND PAYMENT OF SECTION 503(B)(9) CLAIMS - 3

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of June 2024, I caused to be served a true and correct copy of the foregoing document electronically through the CM/ECF system, which caused the following parties to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

| | |
|---|---|
| Matthew T. Christensen | mtc@johnsonmaylaw.com |
| J. Justin May | jjm@johnsonmaylaw.com |
| Krystal R. Mikkilineni | krystal.mikkilineni@dentons.com |
| Tirzah R. Roussell | tirzah.roussell@dentons.com |
| US Trustee | ustp.region18.bs.ecf@usdoj.gov |
| Heidi Buck Morrison | heidi@racineolson.com |
| David A. Coleman | david@colemanjacobsonlaw.com |
| Gery W. Edson | gedson@gedson.com |
| J.B. Evans | evans.jb@dorsey.com |
| Zachary Fairlie | zfairlie@spencerfane.com |
| Kimbell D. Gourley | kgourley@idalaw.com |
| Daniel C. Green | dan@racineolson.com |
| John O'Brien | jobrien@spencerfane.com |
| Scott C. Powers | spowers@spencerfane.com |
| Janine P. Reynard | janine@averylaw.net |
| Sheila R. Schwager | sschwager@hawleytroxell.com |
| Brent R. Wilson | bwilson@hawleytroxell.com |
| Brian Faria | brian@sawtoothlaw.com |
| Robert A. Foucher | rfaucher@hollandhart.com |
| Matthew W. Grimshaw | matt@grimshawlawgroup.com |
| John F. Kurtz | jfk@kurtzlawllc.com |
| Jed W. Manwaring | jmanwaring@evanskeane.com |
| Rhett M. Miller | rmiller@magicvalley.law |
| John D. Munding | john@mundinglaw.com |
| Jason R. Naess | jason.r.naess@usdoj.gov |
| Holly Roark | holly@roarklawboise.com |
| Evan R. Roth | evan@sawtoothlaw.com |

Any others as listed on the Court's ECF Notice.

/s/ Krystal Mikkilineni
KRYSTAL MIKKILINENI

# EXHIBIT A

| Feed | 503(b)(9) Payments |
|---|---|
| Aden Brook Trading Corp | $746,600.02 |
| Amalgamated Sugar | $230,824.66 |
| American Calf Products | 194,333 |
| Carne I Corp. | $131,312.90 |
| Land View, Inc-Livestock- Animal Care | $1,057,117.09 |
| MicroProteins, Inc. | $18,954.66 |
| Viterra USA Grain, LLC | $1,954,760 |
| WAG Services Inc | 685 |
| **Vet/Med** | |
| MWI Veterinary | $484,255.92 |
| **Repairs & Maintenance** | |
| Automation Werx, LLC | $1,287.03 |
| Coastline | $4,386.53 |
| Elevation Electric | $5,360.08 |
| Les Schwab Tire Center | $26,643.97 |
| Progressive Dairy Service and Supplies | $4,858.75 |
| Schow's Auto Parts | $1,274.55 |
| Tacoma Screw Products, Inc. | $3,238.17 |
| The Dairy Solutions Group | $41,264.50 |

| | |
|---|---|
| **Fuel** | |
| Conrad & Bischoff, Inc. | $35,299.91 |
| United Oil | 593 |
| | |
| **Chemicals** | |
| Rocky Mountain Agronomics | $44,527.47 |
| Clear Lakes Products | $592.00 |
| | |
| **Semen** | |
| ABS Global, Inc. | 187,563 |
| | |
| **Other** | |
| Butte Irrigation Inc | $220.30 |
| | |
| **Total** | $5,175,952.51 |

**EXHIBIT B**

| Feed | 503(b)(9) Payments |
|---|---|
| Aden Brook Trading Corp | ~~802,625~~ $746,600.02 |
| Amalgamated Sugar | ~~1,309~~ $230,824.66 |
| American Calf Products | 194,333 |
| Carne I Corp. | ~~144,069~~ $131,312.90 |
| ~~J.D. Heiskell & Co.~~ | ~~113,922~~ |
| Land View, Inc-Livestock- Animal Care | ~~1,095,639~~ $1,057,117.09 |
| MicroProteins, Inc. | ~~7,074~~ $18,954.66 |
| ~~Receptor Food Group~~ | ~~114,172~~ |
| Viterra USA Grain, LLC | ~~1,943,287~~ $1,954,760 |
| WAG Services Inc | 685 |
| **Vet/Med** | |
| MWI Veterinary | ~~509,787~~ $484,255.92 |
| **Repairs & Maintenance** | |
| Automation Werx, LLC | ~~23,323~~ $1,287.03 |
| Coastline | ~~8,421~~ $4,386.53 |
| Elevation Electric | ~~141,370~~ $5,360.08 |
| ~~G.J. Verti-line Pumps, Inc.~~ | ~~1,345~~ |
| Les Schwab Tire Center | ~~1,494~~ $26,643.97 |

#4011235#4011235

| | |
|---|---|
| Progressive Dairy Service and Supplies | ~~59,255~~ $4,858.75 |
| Schow's Auto Parts | ~~1,307~~ $1,274.55 |
| Tacoma Screw Products, Inc. | ~~815~~ $3,238.17 |
| The Dairy Solutions Group | ~~75,742~~ $41,264.50 |
| | |
| **Fuel** | |
| Conrad & Bischoff, Inc. | ~~153,799~~ $35,299.91 |
| United Oil | 593 |
| | |
| **Chemicals** | |
| Rocky Mountain Agronomics | ~~55,236~~ $44,527.47 |
| Clear Lakes Products | ~~133,158~~ $592.00 |
| | |
| **Semen** | |
| ABS Global, Inc. | 187,563 |
| | |
| **Other** | |
| Butte Irrigation Inc | ~~45,242~~ $220.30 |
| | |
| **Total** | ~~5,815,545~~ $5,175,952.51 |