Matthew T. Christensen, ISB: 7213
J. Justin May, ISB: 5818
JOHNSON MAY
199 N. Capitol Blvd, Ste 200
Boise, Idaho 83702
Phone: (208) 384-8588
Fax: (208) 629-2157
Email: mtc@johnsonmaylaw.com
       jjm@johnsonmaylaw.com


Krystal Mikkilineni, *pro hac vice*
Robert E. Richards, *pro hac vice*
Tirzah Roussell, *pro hac vice*
DENTONS
215 10th Street, Ste 1300
Des Moines, IA 50309
Phone: (515) 288-2500
Fax: (515) 243-0654
Email: krystal.mikkilineni@dentons.com
       Robert.richards@dentons.com
       Tirzah.roussell@dentons.com

Attorneys for the Debtor

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| In re:<br>MILLENKAMP CATTLE, INC.,<br>Debtor. | Case No. 24-40158-NGH |
| Filing relates to:<br>☒ ALL DEBTORS<br>☐ Millenkamp Cattle, Inc.<br>☐ Idaho Jersey Girls<br>☐ East Valley Cattle<br>☐ Millenkamp Properties<br>☐ Millenkamp Properties II | Jointly Administered With Case Nos.:<br>24-40159-NGH (Idaho Jersey Girls)<br>24-40160-NGH (East Valley Cattle)<br>24-40161-NGH (Millenkamp Properties)<br>24-40162-NGH (Millenkamp Properties II)<br>24-40163-NGH (Millenkamp Family)<br>24-40164-NGH (Goose Ranch)<br>24-40166-NGH (Black Pine Cattle)<br>24-40167-NGH (Millenkamp Enterprises)<br>24-40165-NGH (Idaho Jersey Girls Jerome Dairy) |

DEBTORS' SECOND MOTION FOR CONTINUED USE OF CASH COLLATERAL – Page 1

| | |
|---|---|
| ☐ Millenkamp Family<br>☐ Goose Ranch<br>☐ Black Pine Cattle<br>☐ Millenkamp Enterprises<br>☐ Idaho Jersey Girls Jerome Dairy | Chapter 11 Cases |

**DEBTORS' SECOND MOTION FOR CONTINUED USE OF CASH COLLATERAL**

The Debtor, Millenkamp Cattle, Inc. ("Millenkamp Cattle") and its affiliated debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), by and through their undersigned counsel, respectfully move the Court pursuant to sections 105, 361, 362, 363 and 364 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001.1 of the Local Rules of Bankruptcy Procedure for the District of Idaho (the "Local Rules" or "LBR"), for the entry of an Order (1) authorizing the Debtors' use of cash collateral in which Rabo, MetLife , Conterra and/or Sandton assert a security interest; and (2) authorizing the Debtors to grant adequate protection in favor of Rabo, MetLife, Conterra and Sandton on account of the Debtors' use of cash collateral (the "Motion").  This Motion is based upon the files and records herein, including the previously-filed Emergency and Continuing Motion for Interim and Final Order Authorizing Use of Cash Collateral and Granting Adequate Protection and Setting a Final Hearing (Docket No. 22 – the "First Motion"), the previously-filed Declaration of William J. Millenkamp in Support of First Day Motions (Docket No. 26 – the "Millenkamp Declaration"), and the exhibits thereto.

DEBTORS' SECOND MOTION FOR CONTINUED USE OF CASH COLLATERAL – Page 2

1.  On April 2, 2024 (the "Petition Date"), the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for District of Idaho (the "Court") commencing the Chapter 11 Cases. The Debtors have continued in the management and operation of their businesses and properties as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

2.  This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 105, 361, 362, 363 and 364 of the Bankruptcy Code, Bankruptcy Rule 2002, 4001 and 9014 and LBR 4001.1.

## FACTUAL BACKGROUND

3.  The history of the Debtors, their structure and operations and the underlying credit agreements were outlined in the First Motion and Millenkamp Declaration[1]. In addition to those documents, the Debtors have also received approval for post-petition financing from Sandton, for which a lien on assets subject to this motion was also granted.

*Cash Collateral*

4.  All of the Debtors' cash, including the Debtors' cash and other amounts on deposit or maintained in any banking, checking, or other deposit accounts by the Debtors, any amounts generated by the collection of accounts receivable or other disposition of the pre-petition collateral or deposited into the Debtors' banking, checking, or other deposit accounts as of the Petition Date, and the proceeds of any of the foregoing, wherever located, is cash collateral; *provided*, *however*, the Milk Receivables secured by MetLife pursuant to the First Intercreditor Agreement constitute

---

[1] Capitalized terms used herein were defined in the First Motion.

DEBTORS' SECOND MOTION FOR CONTINUED USE OF CASH COLLATERAL – Page 3

MetLife's Cash Collateral; *provided further* that any amounts generated by the collection of accounts receivable or other disposition of the Pre-Petition Conterra Collateral constitute Conterra's Cash Collateral; *provided further* that any collateral or identifiable cash proceeds of collateral in which the DIP Lender holds a valid, perfected, enforceable, and nonavoidable first-priority lien pursuant to the DIP Loan Documents is the DIP Lender's Cash Collateral.

5. Certain agricultural liens may arise under state law with respect to labor and seed provided in connection with the growing of crops, assessments on cattle and for agricultural commodities delivered. These liens may encumber crops, cattle, agricultural commodities and/or the proceeds thereof. The proceeds so encumbered constitute cash collateral (the "Agricultural Lien Cash Collateral").

***Use of Cash Collateral and Adequate Protection***

6. The Debtors require the continued use of the cash collateral to continue uninterrupted operations for the benefit of their creditors and their estates. The Debtors previously sought and obtained approval to use cash collateral through August 2024. The Debtors now seek to continue to use Cash Collateral in accordance with the budget attached as Exhibit A hereto (the "<u>Budget</u>"). Without the continued use of Cash Collateral, the Debtors will be unable to pay their ongoing operating expenses, including payroll, and will thus be unable to continue ongoing business operations. The immediate ability of the Debtors to preserve and maintain the value of their assets, maximize value for creditors and provide for the well-being of Livestock requires the availability of working capital from the use of Cash Collateral, to continue operations, pay the costs and expenses of administering the Chapter 11 Cases, and administer and preserve the value of their businesses and estates. In the absence of the continued availability of such funds and liquidity in accordance with the terms hereof, the continued operation of the Debtors' businesses

DEBTORS' SECOND MOTION FOR CONTINUED USE OF CASH COLLATERAL – Page 4

would not be possible, and immediate and irreparable harm to the Debtors, their estates, their creditors and their Livestock would occur. Further, the possibility for a successful restructuring and other value-maximizing transaction(s) would be jeopardized in the absence of the availability of funds in accordance with this Motion.

***Adequate Protection Lien***

7. Pursuant to sections 361 and 363 of the Bankruptcy Code, the Debtors propose to provide adequate protection of the interests of the Pre-Petition Secured Lenders and Sandton, by granting the Pre-Petition Secured Lenders and Sandton liens (the "Adequate Protection Liens) in (a) assets of the same kind, type, and nature as the collateral described above securing each of the Pre-Petition Secured Lenders' pre-petition obligations described above ("Prepetition Collateral") in which the Pre-Petition Secured Lenders held liens as of the Petition Date and which are acquired after the Petition Date (the "Postpetition Collateral"); and (b) all proceeds of the Postpetition Collateral, to secure the amount of any diminution in the Pre-Petition Secured Lenders' interests in the subject Prepetition Collateral as a result of the Debtors' use of Cash Collateral.

***Payment of Interest***

8. The Debtors shall pay to the Pre-Petition Secured Lenders interest at the non-default rate designated in the Pre-Petition Loan Documents on the interest payment dates set forth in the attached budget.

***Reporting***

9. The Debtors shall provide the Pre-Petition Secured Lenders with financial and other reporting in compliance with the proposed order submitted herewith and the requirements of the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

***Insurance***

DEBTORS' SECOND MOTION FOR CONTINUED USE OF CASH COLLATERAL – Page 5

10. The Debtors shall continue to maintain insurance on their assets as the same existed as of the Petition Date.

*Superpriority Administrative Expense Claim*

11. Under section 507(b) of the Bankruptcy Code, all obligations subject to the Adequate Protection Liens have priority in payment over all other administrative expenses of the estate subject to the Carve-Out (as defined herein), to the extent that the Adequate Protection Liens are insufficient to compensate the Pre-Petition Secured Lenders for any diminution in the value of their interests as a result of the Debtors' use of Cash Collateral.

*Carve-Out*

12. As used in the proposed order, the "Carve-Out" shall mean a carve-out from the any Adequate Protection Liens, Superpriority Administrative Expense Claims, and the Pre-Petition Liens, in an amount equal to the sum of (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code *plus* interest at the statutory rate; (ii) all reasonable and documented fees and expenses incurred by a trustee under Bankruptcy Code section 726(b), in an aggregate amount not to exceed $250,000; (iii) to the extent allowed by the Court at any time, whether by interim order, procedural order or otherwise (unless subsequently disallowed), all unpaid fees and expenses (the "Professional Fees") incurred by persons or firms retained by the Debtors pursuant to Bankruptcy Code sections 327, 328, or 363 or by the Committee, pursuant to Bankruptcy Code sections 328 and 1103 (collectively, the "Professional Persons").

## LEGAL DISCUSSION

*Use of Cash Collateral*

13. Section 363(c)(2) of the Bankruptcy Code sets forth the requirements for debtor's

DEBTORS' SECOND MOTION FOR CONTINUED USE OF CASH COLLATERAL – Page 6

proposed use of cash collateral. Specifically, section 363(c)(2) provides, in pertinent part:

> The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless - (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C. § 363(c)(2). Additionally, section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

14. Further, section 363(e) provides that "on request of an entity that has an interest in property . . . proposed to be used, sold or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). As described below, the Debtors have proposed a reasonable package of adequate protection for both cash collateral and their other assets securing the Prepetition Secured Debt. Conditioning the Debtors use of cash collateral in the manner proposed is an entirely equitable arrangement designed to protect operations and the livestock.

15. It is well settled that it is appropriate for a chapter 11 debtor to use cash collateral for a reasonable period of time for the purpose of maintaining and operating its property. *In re Oak Glen R-Vee*, 8 B.R. 213, 216 (Bankr. C.D. Cal 1981); *In re Tuscon Industrial Partners*, 129 B.R. 614 (9th Cir. BAP 1991). Where, as here, the debtor is operating a business, it is extremely important that the access to cash collateral be allowed to facilitate the survival of the debtors business units as going concerns: "the purpose of Chapter 11 is to rehabilitate debtors and generally access to cash collateral is necessary to operate a business." *In re Dynaco Corp.*, 162 B.R. 389 (Bankr. D.N.H. 1993), quoting *In re Stein*, 19 B.R. 458, 459 (Bankr. E.D. Pa. 1982).

16. The Court should authorize the Debtors to use Cash Collateral as requested herein.

DEBTORS' SECOND MOTION FOR CONTINUED USE OF CASH COLLATERAL – Page 7

It is essential to the continued operation of the Debtors that they obtain authority to use Cash Collateral to fund payroll and other operating needs, including the costs of administration of these Chapter 11 Cases.

17. The Debtors represent that they have insufficient funds to operate unless they use Cash Collateral, as they hold no unencumbered funds and do not have sources of unencumbered funds, and that the present circumstances require the Debtors to make use of Cash Collateral in order to maintain their ongoing business for the benefit of their estates and creditors. The Debtors have a continuing need to use Cash Collateral to maintain, preserve and protect their assets and have provided for adequate protection of the secured parties' interests in the Cash Collateral, as described above.

18. For these reasons, the Debtors respectfully request the Court authorize the continued use of Cash Collateral pursuant to the terms of the proposed Order filed herewith.

***Adequate Protection***

19. The purpose of adequate protection under Bankruptcy Code section 363 is to compensate a secured lender solely for the diminution in value of its collateral. *Qmect, Inc. v. Burlingame Capital Partners II, L.P.*, 373 B.R. 682, 689-90 (N.D. Cal. 2007) citing *In re Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 377, 108 S.Ct. 626 (1988)). Adequate protection payments are not to be used to compensate the creditor for lost interest or to provide lost opportunity costs. *In re Weinstein*, 227 B.R. 284, 296 (9th Cir. BAP 1998) citing *In re Timbers*. An equity cushion, standing alone, provides adequate protection justifying the restraint of lien enforcement by a bankruptcy court. *In re Mellor*, 734 F.2d 1400, 1401 (9th Cir. 1984). Adequate protection is not meant to be a guarantee that a creditor will be paid in full. Instead, the Court must determine whether the creditor's interests are protected as nearly as

possible against the possible risks to that interest. *In re Ernst Home Ctr.*, 209 B.R. 955, 966 (Bankr. W.D. Wash. 1997); *In re McCombs Properties VI, Ltd.*, 88 B.R. 261, 267 (Bankr.C.D.Cal.1988)).

20. The Debtors propose continuing replacement liens, interest payments and superpriority claims as adequate protection, which is commonplace. *See, e.g., MBank Dallas N.A. v. O'Connor (In re O'Connor),* 808 F.2d 1393, 1396-98 (10th Cir. 1987) (allowing the debtors to replace a lien on cash with a lien on property likely to be worth five times as much); *Owens-Corning Fiberglas Corp. v. Ctr. Wholesale, Inc. (In re Ctr. Wholesale. Inc.)*, 759 F.2d 1440, 1450 (9th Cir. 1985) (observing that a lien on additional property of the debtors would likely constitute adequate protection for the secured creditor); *Wrecelesham Grange*, 221 B.R. at 981) (noting that a replacement lien of equal value on postpetition rents is adequate protection); *In re Stein*, 19 B.R. 458. 459 (Bankr. E.D. Pa. 1982) (continued lien on debtors' crops, livestock and equipment resulted in an increase rather than a decrease in collateral, and debtors were granted authority to use cash collateral to meet operating expenses during chapter 11 proceedings). Finally, the Pre-Petition Secured Obligations each have a sufficient equity cushion arguably entitling them to postpetition interest, which they are being paid in the form of adequate protection payments. For the foregoing reasons, the Debtors respectfully submit that the adequate protection proposed by the Debtors (described in more detail above) is appropriate and should be approved.

21. The Debtors have a continuing need to use Cash Collateral to maintain, preserve and protect their assets and have provided terms for adequate protection of the secured lenders' interests in the Cash Collateral, and on that basis, the Debtors anticipate the secured lenders will consent to the use of their Cash Collateral. For these reasons, the Debtors respectfully request the Court authorize the use of Cash Collateral pursuant to the terms of the proposed Order filed herewith.

22. Should the Court grant the Motion and enter the DIP Orders, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay of an order authorizing the use, sale or lease of property under Bankruptcy Rule 6004(h).

23. Notice of this Motion has been provided to (i) the Office of the United States Trustee for the District of Idaho, (ii) the Prepetition Secured Creditors and their counsel, (iii) the DIP Lender and its counsel, (iv) the Debtors' unsecured creditors (including counsel if known), (v) the unsecured creditors committee and its counsel, and (vi) all parties requesting notices pursuant to Bankruptcy Rule 2002. The Debtors submit that no other or further notice need be provided.

24. A prior request for use of cash collateral was approved by this Court. See Docket No. 313.

## CONCLUSION

WHEREFORE, the Debtors respectfully request entry of an order in the form of the proposed Order submitted herewith, authorizing the Debtors' continued use of Cash Collateral as set forth herein.

DATED this 27th day of June, 2024.

      /s/ Matt Christensen
      MATTHEW T. CHRISTENSEN
      Attorney for Debtors

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 27th day of June 2024, I caused to be served a true and correct copy of the foregoing document electronically through the CM/ECF system, which caused the following parties to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

| | |
|---|---|
| Matthew T. Christensen | mtc@johnsonmaylaw.com |
| J. Justin May | jjm@johnsonmaylaw.com |
| Krystal R. Mikkilineni | krystal.mikkilineni@dentons.com |
| Tirzah R. Rousell | Tirzah.rousell@dentons.com |
| US Trustee | ustp.region18.bs.ecf@usdoj.gov |
| Heidi Buck Morrison | heidi@racineolson.com |
| David A. Coleman | david@colemanjacobsonlaw.com |
| Gery W. Edson | gedson@gedson.com |
| J.B. Evans | evans.jb@dorsey.com |
| Zachary Fairlie | zfairlie@spencerfane.com |
| Kimbell D. Gourley | kgourley@idalaw.com |
| Daniel C. Green | dan@racineolson.com |
| John O'Brien | jobrien@spencerfane.com |
| Scott C. Powers | spowers@spencerfane.com |
| Janine P. Reynard | janine@averylaw.net |
| Sheila R. Schwager | sschwager@hawleytroxell.com |
| Brent R. Wilson | bwilson@hawleytroxell.com |
| Brian Faria | brian@sawtoothlaw.com |
| Robert A. Foucher | rfaucher@hollandhart.com |
| Matthew W. Grimshaw | matt@grimshawlawgroup.com |
| John F. Kurtz | jfk@kurtzlawllc.com |
| Jed W. Manwaring | jmanwaring@evanskeane.com |
| Rhett M. Miller | rmiller@magicvalley.law |
| John D. Munding | john@mundinglaw.com |
| Jason R. Naess | jason.r.naess@usdoj.gov |
| Holly Roark | holly@roarklawboise.com |
| Evan R. Roth | evan@sawtoothlaw.com |
| Bruce A. Anderson | baafiling@eaidaho.com |
| Morton R. Branzburg | mbranzburg@klehr.com |
| Laura E. Burri | lburri@morrowfischer.com |
| William K. Carter | kentcarter@grsm.com |
| Alexandra O. Caval | alex@cavallawoffice.com |
| D. Blair Clark | dbc@dbclarklaw.com |
| Eric R. Clark | Eclark101@hotmail.com |
| Connor B. Edlund | edlund@mwsslawyers.com |
| Julian Gurule | jgurule@omm.com |
| Matthew Kremer | mkremer@omm.com |
| David T. Krueck | dkrueck@perkinscoie.com |
| Adam A. Lewis | alewis@mofo.com |
| Karyn Lloyd | klloyd@grsm.com |
| James Neimeier | jniemeier@mcgrathnorth.com |
| Gabriel L. Olivera | golivera@omm.com |
| Mark B. Perry | mbp@perrylawpc.com |
| Cheryl Rambo | Cheryl.rambo@isp.idaho.gov |
| Miranda K. Russell | mrussell@mofo.com |

DEBTORS' SECOND MOTION FOR CONTINUED USE OF CASH COLLATERAL – Page 11

| | |
|---|---|
| Andrew J. Schoulder | andrew.schoulder@nortonrosefulbright.com |
| Louis V. Spiker | louis.spiker@millernash.com |
| Matthew A. Sturzen | matt@shermlaw.com |
| Meredith L. Thielbahr | mthielbahr@grsm.com |
| Kim J. Trout | ktrout@trout-law.com |
| Joseph M. Wager | wager@mwsslawyers.com |

Any others as listed on the Court's ECF Notice.


   /s/ Matt Christensen
MATTHEW T. CHRISTENSEN

# EXHIBIT A

# PROPOSED ORDER

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| In re:<br><br>MILLENKAMP CATTLE, INC.,<br><br>Debtor. | Case No. 24-40158-NGH |
| Filing relates to:<br><br>☒ ALL DEBTORS<br>☐ Millenkamp Cattle, Inc.<br>☐ Idaho Jersey Girls<br>☐ East Valley Cattle<br>☐ Millenkamp Properties<br>☐ Millenkamp Properties II<br>☐ Millenkamp Family<br>☐ Goose Ranch<br>☐ Black Pine Cattle<br>☐ Millenkamp Enterprises<br>☐ Idaho Jersey Girls Jerome Dairy<br><br>_____ | Jointly Administered With<br>Case Nos.:<br><br>24-40159-NGH (Idaho Jersey Girls)<br>24-40160-NGH (East Valley Cattle)<br>24-40161-NGH (Millenkamp Properties)<br>24-40162-NGH (Millenkamp Properties II)<br>24-40163-NGH (Millenkamp Family)<br>24-40164-NGH (Goose Ranch)<br>24-40166-NGH (Black Pine Cattle)<br>24-40167-NGH (Millenkamp Enterprises)<br>24-40165-NGH (Idaho Jersey Girls Jerome Dairy)<br><br>Chapter 11 Cases |

**ORDER GRANTING DEBTORS' SECOND MOTION FOR CONTINUED USE OF CASH COLLATERAL**

THIS MATTER came before the court for a hearing on Debtors' *Second Motion for Continued Use of Cash Collateral* (Docket No. ___) (the "Second Cash Collateral Motion") held

DEBTORS' SECOND MOTION FOR CONTINUED USE OF CASH COLLATERAL – Page 13

on July 18, 2024; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the matter being a core proceeding within the meaning of 28 U.S.C. § 157; and venue of this proceeding and the Motion in this District being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and due and sufficient notice of the Motion having been given under the particular circumstances; and it appearing that no other or further notice is necessary; and it appearing that the relief requested in the Motion is in the best interests of the Debtor, its estate, its creditors; and other parties-in-interest; and after due deliberation thereon; and good and sufficient cause appearing therefor; it is hereby:

**ORDERED** that:

1. The Motion is granted as set forth herein.

2. The Debtors are authorized use of cash collateral effective through December 31, 2024, as follows:

   a. The Debtors are granted use of cash collateral through December 31, 2024, for payment of the expenses outlined on the attached ***Exhibit A*** (the "Budget"). By approving the Budget, the Court is not approving specific Debtor-in-Possession financings or borrowings. Notwithstanding anything in the budget to the contrary, any financings or borrowings (including the extent of draws on the Debtor-in-Possession financing) is subject to the Court's orders Authorizing the Debtors to (A) Obtain Post-Petition Financing and (B) Granting Adequate Protection to Pre-Petition Secured Lenders, or other further order of the Court.

   b. Rabo AgriFinance, LLC ("RAF"); Metropolitan Life Insurance Company ("MLIC") and MetLife Real Estate Lending LLC (collectively, "MetLife"); and Conterra Holdings, LLC, d/b/a Conterra Ag Capital ("Conterra") (collectively, the

DEBTORS' SECOND MOTION FOR CONTINUED USE OF CASH COLLATERAL – Page 14

"Pre-Petition Secured Lenders") shall be granted and shall maintain (without further action by any of RAF, MetLife or Conterra) adequate protection liens on all post-petition cash collateral to the same validity, extent and priority as existed pre-petition, to the extent of any cash collateral the secured creditor has an interest in and is actually used by the Debtors; provided, however, that such replacement liens shall not attach to any proceeds of any avoidance actions. To be clear, the use of cash collateral is also subject to a replacement lien on all Prepetition RLOC Collateral and Prepetition MetLife Collateral (as defined in the First Cash Collateral Motion), including milk proceeds, to the extent the secured creditor has a pre-petition security interest, and it is actually used by the Debtors.

c. Sandton Capital Solutions Master Fund VI, LP (the "DIP Lender") is granted and shall maintain (without further action by the DIP Lender) adequate protection liens on all post-petition cash collateral to the same validity, extent and priority as was granted in this Court's Final Order Authorizing Debtors to (A) Obtain Post-Petition Financing; and (B) Granting Adequate Protection to Pre-Petition Secured Lenders (Docket No. 305).

3. The Debtors use of cash collateral is further conditioned upon the following:

a. The Debtors shall provide weekly variance reports to the Pre-Petition Secured Lenders and DIP Lender (i.e., reports reflecting the difference between the budgeted amount of revenue and expenses and the actual amounts) in the same format as the Budget (the "Variance Reports"). The Pre-Petition Secured Lenders may make reasonable requests for additional terms or details regarding the Variance

DEBTORS' SECOND MOTION FOR CONTINUED USE OF CASH COLLATERAL – Page 15

        Reports provided by the Debtors. Said Variance Reports shall be due and continuing on Wednesdays of each week, until termination of this Order.

b. The Debtors shall also provide a weekly borrowing base certificate to RAF beginning on April 17, 2024, and computed as of the preceding Sunday of each such week. Each borrowing base certificate shall be in the form used for borrowing base certificates pre-petition (or such other form as the Debtors and RAF may establish by mutual agreement), and shall quantify the Debtors' then-current herd count and value, accounts receivable and milk accounts, utilizing the valuation principles and advance rates applicable to such assets in a manner consistent with the preparation of borrowing base certificates pursuant to the Pre-Petition RLOC Credit Agreement. Debtors may add new cattle (whether raised or purchased by Debtors in accordance with past and normal business practices) to the borrowing base. A copy of this borrowing base certificate shall also be provided to Conterra, MetLife and the DIP Lender.

c. The Debtors shall provide on a weekly basis beginning April 17, 2024, to the Pre-Petition Secured Lenders any production or sales reports prepared by or on behalf of the Debtors' product off-takers.

d. The Debtors shall provide to each of the Pre-Petition Secured Lenders, within forty-five (45) days of each month end, monthly accrual financials prepared on a basis consistent with the company's annual audited financial statements prepared in accordance with Generally Accepted Accounting Principles ("GAAP Financials").

e. Forbes Partners is subject to the following reporting requirements until further order of the Court:

DEBTORS' SECOND MOTION FOR CONTINUED USE OF CASH COLLATERAL – Page 16

      i. Forbes Partners shall provide a weekly email to the financial advisors for each of the Pre-Petition Secured Creditors and the Debtor, which email report shall include (for the prior week time period) (a) the number of new parties to whom a CIM was provided; (b) the number of new parties that have accessed the Forbes Partners data room; (c) the number of new parties that were engaged in initial meetings with Forbes Partners; and (d) the number of parties that remain actively negotiating with Forbes Partners and/or the Debtors.

      ii. To the extent any term sheets or letters of intent (or equivalent documents no matter the label) are provided by potential counter-parties in response to a Process Letter sent by Forbes Partners, the Debtors shall provide a copy of said term sheets or letters of intent to any Financial Advisor for any of the Pre-Petition Secured Creditors within 48 hours of receipt. The names and any identifying information in those term sheets or letters of intent shall be redacted by the Debtors prior to providing, and the Financial Advisors are not authorized to provide copies of the term sheets or letters of intent to any other party absent further order of the court.

  f. To the extent information is provided by the Debtors or Forbes Partners to any of the Pre-Petition Secured Creditors that is not otherwise covered by paragraphs 3(a) through (e) above, that information shall be provided to all of the Pre-Petition Secured Creditors or their financial advisors. (This provision is not meant to otherwise limit meetings or conversations between attorneys or financial advisors for the parties, or the parties themselves.)

DEBTORS' SECOND MOTION FOR CONTINUED USE OF CASH COLLATERAL – Page 17

    g.  Upon notice to this Court and this Court's entry of a suitable order, RAF or Conterra may withdraw its consent to the Debtor's use of the Prepetition RLOC Secured Parties' cash collateral in the event Debtors fail to pay, within forty-five (45) days after the applicable invoice date, one or more accounts payable in an amount not less than $100,000 in each instance or $500,000 in the aggregate during the Chapter 11 Cases, to any one or more trade creditors in respect of any of Debtors' obligations arising on or after the Petition Date. To facilitate monitoring of this issue, the Debtors shall provide, as part of its weekly reporting to the Pre-Petition Secured Lenders, a weekly Accounts Payable aging report as of the Sunday prior to each report.

4.    The Debtors will operate in compliance with the U.S. Trustee's Guidelines unless otherwise approved or directed by this court.

5.    Nothing in this Order will be deemed or construed as an admission or waiver by the Pre-Petition Secured Lenders as to adequate protection, or any other issue in the case, and this Order will not constitute consent by Pre-Petition Secured Lenders to the use of each of their Cash Collateral other than for the limited purpose expressly provided herein.

6.    Nothing herein alters or affects the valid liens and lien priority of the Pre-Petition Secured Lenders.

7.    This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Order.

//end of text//

DEBTORS' SECOND MOTION FOR CONTINUED USE OF CASH COLLATERAL – Page 18

Order submitted by: Matthew T. Christensen, counsel for the Debtors

# EXHIBIT B

# PROPOSED BUDGET

**(see attachment)**