Matthew T. Christensen, ISB: 7213
J. Justin May, ISB: 5818
JOHNSON MAY
199 N. Capitol Blvd, Ste 200
Boise, Idaho 83702
Phone: (208) 384-8588
Fax: (208) 629-2157
Email: mtc@johnsonmaylaw.com
        jjm@johnsonmaylaw.com

Krystal Mikkilineni, *pro hac vice*
Robert E. Richards, *pro hac vice*
Tirzah Roussell, *pro hac vice*
DENTONS
215 10th Street, Ste 1300
Des Moines, IA 50309
Phone: (515) 288-2500
Fax: (515) 243-0654
Email: krystal.mikkilineni@dentons.com
        Robert.richards@dentons.com
        Tirzah.roussell@dentons.com

Attorneys for the Debtors

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| In re: | Case No.  24-40158-NGH |
| MILLENKAMP CATTLE INC. | Chapter 11 |
| Debtor. | |
| Filing relates to: | Jointly Administered with Case Nos.: |
| ☒  ALL DEBTORS<br>☐  Millenkamp Cattle, Inc.<br>☐  Idaho Jersey Girls<br>☐  East Valley Cattle<br>☐  Millenkamp Properties<br>☐  Millenkamp Properties II<br>☐  Millenkamp Family<br>☐  Goose Ranch<br>☐  Black Pine Cattle<br>☐  Millenkamp Enterprises<br>☐  Idaho Jersey Girls Jerome Dairy | 24-40159-NGH (Idaho Jersey Girls)<br>24-40160-NGH (East Valley Cattle)<br>24-40161-NGH (Millenkamp Properties)<br>24-40162-NGH (Millenkamp Properties II)<br>24-40163-NGH (Millenkamp Family)<br>24-40164-NGH (Goose Ranch)<br>24-40166-NGH (Black Pine Cattle)<br>24-40167-NGH (Millenkamp Enterprises)<br>24-40165-NGH (Idaho Jersey Girls Jerome Dairy) |

---

**Notice of Application to Employ Local Co-Counsel for Debtor
and Opportunity to Object and for a Hearing**

<u>No Objection.</u> The Court may consider this request for an order without further notice or hearing unless a party in interest files an objection within twenty-one (21) days of the date of this notice. If an objection is not filed within the time permitted, the Court may consider that there is no opposition to the granting of the requested relief and may grant the relief without further notice or hearing.

<u>Objection.</u> Any objection shall set out the legal and/or factual basis for the objection. A copy of the objection shall be served on the movant.

<u>Hearing on Objection.</u> The objecting party shall also contact the Court's calendar clerk to schedule a hearing on the objection and file a separate notice of hearing.

---

## APPLICATION TO EMPLOY SPECIAL COUNSEL
## FOR DEBTORS IN POSSESSION

Millenkamp Cattle, Inc., ("Millenkamp Cattle") and its affiliated debtors and debtors in possession (collectively, the "Debtors" or "Applicants") make application for authority to retain special counsel, and in support thereof respectfully show:

1. Debtors have filed petitions initiating cases seeking relief under Chapter 11 of the Bankruptcy Code and are currently in possession of their property and operation of their business.

2. Pursuant to Bankruptcy Code Sections 1107 and 327(e), the Applicants wish to employ special counsel to render professional services for them as debtors-in-possession for the following specific matters (all as outlined on the Engagement Letters attached as **Exhibits A and B**):

    a. General corporate and business work for the Debtors;

    b. Representation of East Valley Cattle, LLC (and other Debtors as necessary) in Cassia County Case No. CV16-21-00486 (and any related appeals);

    c. Issues (including arbitration) with East Valley Development, LLC, related to the ongoing digester project.

3.      Applicants desire to retain special counsel immediately and would retain attorneys from Givens Pursley ("Firm").  These attorneys are admitted to practice before this court, and previously represented the Debtors for each of these specific areas.

4.      Said attorneys are familiar with the Bankruptcy Code and Rules and the Local Rules of the United States Bankruptcy Court for the District of Idaho.

5.      Filed contemporaneously with this Application is a Declaration of Thomas E. Dvorak in Support of Application to Employ Special Counsel for Debtors in Possession. The Declaration describes the connections between the Debtors and Givens Pursley.

6.      The Applicants have selected this Firm and its attorneys because they have prior relationships with the Debtors, including representation in these specific matters and other general corporate issues for the Debtors, and have experience in these types of matters in order to adequately and efficiently represent the Debtors.

7.      To the best of the Applicants' knowledge, the Firm does have connections with Debtors (as described in the Declaration contemporaneously filed with this Application, including prior representation of the Debtors), but does not have any connections related to any personnel employed in the Office of the United States Trustee, the creditors or any other party in interest (other than as described in the Declaration), or their respective attorneys or accountants (other than normal professional relationships), nor does this attorney represent or hold any interest adverse to the Debtors or the estates herein in the matters upon which they are to be engaged, and their employment would be in the best interests of the estates and their creditors.

8.      The Application is supported by the Declaration of Thomas E. Dvorak, filed contemporaneously herewith.

WHEREFORE, the Applicants pray that they be authorized to employ and retain Givens Pursley, to represent them as debtors-in-possession of these estates for the specific matters outlined herein.

DATED this 22nd day of July, 2024.

_____
David Heida, as General Manager of the Debtors

# EXHIBIT A

# GIVENS PURSLEY LLP

**Attorneys and Counselors at Law**

601 W. Bannock Street
PO Box 2720
Boise, ID 83701
Telephone: 208-388-1200
Facsimile: 208-388-1300

www.givenspursley.com

Thomas E. Dvorak
(208) 388-1245
ted@givenspursley.com

Taylor J. Barton
Charlie S. Baser
Christopher J. Beeson
Jason J. Blakley
Clint R. Bolinder
Jeff W. Bower
Preston N. Carter
Chynna K. Castoro
Jeremy C. Chou
Charlotte V. Cunnington
Joshua C. Dickinson

Amber N. Dina
Bradley J. Dixon
Thomas E. Dvorak
Rebecca M. Fitz
Morgan D. Goodin
Don Z. Gray
Brian J. Holleran
Kersti H. Kennedy
Elizabeth A. Koeckeritz
Neal A. Koskella
Michael P. Lawrence

Franklin G. Lee
Matthew E. Liebertz
David R. Lombardi
Kimberly D. Maloney
Kenneth R. McClure
Alex P. McLaughlin
Melodie A. McQuade
Christopher H. Meyer
L. Edward Miller
Judson B. Montgomery
Deborah E. Nelson

Randall A. Peterman
Blake W. Ringer
Michael O. Roe
Danielle M. Strollo
Robert B. White
Michael V. Woodhouse

Kenneth L. Pursley (1940-2015)
James A. McClure (1924-2011)
Raymond D. Givens (1917-2008)

> **PRIVILEGED AND CONFIDENTIAL**
> Attorney-Client Communication
> Attorney Work Product

June 28, 2024

*Via Email Only*

Bill Millenkamp
David Heida, General Manager
East Valley Cattle, LLC
Millenkamp Cattle, Inc.
471 N 300 W
Jerome, ID 83338-5078
*bill@millenkamp.com*
*david@millenkamp.com*

Re:   Engagement Agreement Including Conflict Disclosure and Consent

Dear Bill and David:

Thank you for retaining Givens Pursley LLP to represent Millenkamp Cattle, Inc. and East Valley Cattle, LLC, and affiliated entities, who are the debtors in that certain voluntary petitions were filed in the United States Bankruptcy Court for the District of Idaho (Case No. 24-40160-NGH and Case No. 24-40158-NGH)(collectively the "Bankruptcy").[1] This letter and the exhibits hereto constitute our entire Engagement Agreement, superseding any prior engagement agreement or understanding.

---

[1] Except where the context calls for a different meaning (such as the Acceptance of Engagement Agreement), the following terms have these meanings: "You" and "your" refer to the clients listed above. "I," "me," "my," "we," "us," "our," and "Firm" refer to the undersigned, to the lawyers identified in this letter, or to Givens Pursley LLP. You and the Firm may be referred to as a party or collectively as parties.

Millenkamp
June 28, 2024
Page 2 of 15

This Engagement Agreement will, because of the existence of the Bankruptcy, require Court approval in the Bankruptcy for Givens Pursley LLP to be engaged by the clients as a professional.

This is not a general representation. The Firm's representation is limited to the scope of work in the individual matters on which we agree to be retained.

Our legal representation will involve general corporate and business work for the Client. Our legal representation will not involve any direct representation in the Bankruptcy. Nor is any litigation work included in this representation.

We both will be the responsible attorneys for this matter, providing oversight and strategic advice. In order to provide you with the most efficient and cost-effective service, we may assign responsibility for some or all aspects of this representation to other lawyers in the firm. These assignments will be made with your best interests in mind, consistent with any direction we receive from you.

Our bills will generally be submitted to you on a monthly basis. With the understanding that you will keep your account current within 30 days of billing, we have agreed not to charge a retainer fee in this matter.

Current hourly rates are shown in the enclosed Fee and Cost Schedule (Exhibit C). Rates that have been in effect for four months or longer are typically adjusted in January of each year, but may be adjusted at other times as well. All new personnel or adjustments in billing rates will be clearly indicated on your billing statements.

This Engagement Agreement will continue in effect and its terms will apply to all active matters we undertake for you, unless you and the Firm agree otherwise in writing (including emails).

If this Engagement Agreement meets with your approval, please sign the acceptance below and return a hard or electronic copy of this letter to me. Alternatively, you may approve this engagement by separate letter or email.

We thank you for entrusting this work to Givens Pursley. We will do our best to provide you with the high-quality legal counsel you expect in an efficient and cost-effective manner. If you ever feel that we are not meeting your expectations or you have other questions about our relationship, please do not hesitate to call me.

Millenkamp
June 28, 2024
Page 3 of 15

We very much look forward to working with you on this matter.

Sincerely,

Ed Miller

Thomas E. Dvorak

TED:slc

Encl:    Exhibit A:    Conflict Disclosure and Waiver
         Exhibit B:    General Terms and Conditions
         Exhibit C:    Fee and Cost Schedule
         Exhibit D:    Retainer Fund Agreement

Millenkamp
June 28, 2024
Page 4 of 15

---

## ACCEPTANCE OF ENGAGEMENT AGREEMENT

I have read the preceding letter and the exhibits that follow, including the Conflict Disclosure and Waiver.  I agree to the Firm's representation on those terms.

Dated: _7-2-2024_  _____

Bill Millenkamp
President of Millenkamp Cattle, Inc. and Manager of
East Valley Cattle, LLC and associated limited liability
companies

18406160.2

Millenkamp
June 28, 2024
Page 5 of 15

**EXHIBIT A**

**GIVENS PURSLEY LLP**

***Conflict Disclosure and Waiver***

---

**Waiver in accordance with rules of professional conduct.**

Our representation of you is governed by Rule 1.7 of the Idaho Rules of Professional Conduct.[2] This rule and other relevant rules prohibits the Firm from representing two clients where a conflict of interest exists unless four conditions are met: (1) despite the conflict, we reasonably believe that we can provide competent and diligent representation to each client, (2) the representation is lawful, (3) we do not represent competing clients on the same matter in the same litigation or other formal proceeding, and (4) both clients waive the conflict after being fairly advised of the circumstances. The purpose of this letter is to advise you of actual and potential conflicts and seek your informed consent before we undertake your representation. In making your decision, we encourage you to consult with your own independent counsel.

By agreeing to this representation, you waive any conflicts of interest described in this letter and consent to our representation of you.

---

[2] Rule 1.7 of the Idaho Rules of Professional Responsibility provides:
RULE 1.7: Conflict of Interest: Current Clients
(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
    (1) the representation of one client will be directly adverse to another client; or
    (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by the personal interests of the lawyer, including family and domestic relationships.
(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
    (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
    (2) the representation is not prohibited by law;
    (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
    (4) each affected client gives informed consent, confirmed in writing.

Millenkamp
June 28, 2024
Page 6 of 15

### Potentially adverse or interested parties.

For conflict check purposes, you have provided the following names of potentially adverse or interested parties identified as follows:

- TO BE DETERMINED AT THE TIME OF THE SPECIFIC ENGAGMENT

We have relied on your disclosures of potential conflicts in preparing our conflict analysis. If there are other persons or entities that you believe may be potential adversaries or interested parties in this undertaking, please provide those names to us as soon as possible so that we may expand the conflict check.

Other than clients for whom specific or general waivers are sought elsewhere in this engagement letter, we are not aware of any current or former clients whom we represent or have represented that are now directly adverse to you.

Nor are we aware of any circumstances that would cause a member of this Firm to be materially limited in his or her representation of you.

### Specific waivers.

The Firm seeks specific waivers for our ongoing representation of the following client(s):

- None

### Firm's representation of governmental entities on unrelated matters.

From time to time we represent cities, counties, highway districts, states, and other governmental entities on a variety of matters including land use, municipal water supply and other services, taxation, impact and user fees, road and public access, condemnation, legislation, and other issues relevant to their function as governmental entities. During the course of our representation of you, we would not represent any governmental entity in a matter directly adverse to you on a matter that falls within the scope of our representation of you without first obtaining your consent. We might represent these governmental entities, however, on other governmental matters that do not fall within our representation of you. Accordingly, you consent that other lawyers in this Firm may represent a governmental entity on a different matter at the same time that we are representing you in a matter involving that governmental entity.

### Positional conflicts (policy issues or legal precedents).

The Firm's lawyers are engaged in a variety of public policy, regulatory, and legislative matters with broad implications. We represent clients that may hold viewpoints or advocate public policy positions contrary to yours. For example, we represent businesses and industries of all types, banks and other financial institutions, business owners, venture capitalists, trusts,

Millenkamp
June 28, 2024
Page 7 of 15

doctors and hospitals, trade organizations, real estate investors and developers, professional groups, industry associations, homeowner groups, citizen groups, user groups, policy advocacy organizations, nonprofits, and governmental entities at all levels, as well as other public and quasi-public entities. We appear before courts, agencies, regulatory and governmental bodies, and state and federal legislatures. Consequently, there could be instances in which we pursue a policy issue or legal precedent on behalf of one client that you might not consider favorable or desirable.

### Potential adversity in business competition.

Our Firm represents clients in a variety of commercial, and business ventures. Accordingly, it is inevitable that some of our clients will have interests and objectives that may conflict with those of other clients from time to time. For instance, some of our clients may be business competitors of each other. Even if they are not competing head-to-head, they may run into each other in the real estate market, for example. Such business adversity among our clients is natural and does not necessarily create a conflict of interest for this Firm—so long as we are not representing both clients in the same transaction or dispute.

We want you to be aware, however, that there may be times when we represent one client on some matter that another client finds undesirable. For instance, one client might ask for our assistance in acquiring a property that another client, whom we represent on an entirely unrelated matter, might be interested in. Or we might represent the developer of a project that another client, represented on a completely different matter, wished not be developed.

### Limited engagement.

As noted, our representation of you is limited to the particular matters we undertake for you. Accordingly, we ask your understanding and consent that our representation of you does not allow you to prevent us from undertaking unrelated work for other clients.

### Waiver as to future conflicts.

In giving the consents identified in this engagement letter, you should note in particular Comment 22 to Rule 1.7 of the Idaho Rules of Professional Conduct. That comment explains that waivers as to future conflicts may be effective where some or all of the following conditions are met: (1) we have undertaken a comprehensive explanation of the types of future representations that may arise and the consequences that may follow, (2) you are a sophisticated consumer of legal services, (3) you are represented by separate counsel, and (4) consent is sought solely as to unrelated matters.

### Your right to terminate.

You are free to terminate our representation of you for any reason at any time. This includes but is not limited to termination based on conflicts of interest. In the event you

Millenkamp
June 28, 2024
Page 8 of 15

terminate our representation based on a newly emerging conflict of interest or your decision that
you are no longer comfortable with a conflict waiver you previously provided, you agree that we
may continue to represent other clients whose conflicts with you are known today or may be
reasonably anticipated based on the disclosures made in this letter. Thus, even if you no longer
wish for us to represent you in the future, we may continue to represent those other clients of this
Firm. Of course, any secrets or confidences you have shared with us will be preserved in any
event. If you have questions about this or any other concerns, please do not hesitate to ask.

### Resolution of future conflicts.

In the event that a conflict of interest between you and another client of this Firm later
emerges during the course of this representation, we will call the situation promptly to the
attention of all affected entities. In such event, we will endeavor to resolve the conflict, if
possible, in a manner acceptable to all concerned. If that cannot be accomplished, it is possible
that we would need to withdraw from representation of one or all entities.

If, in the future, you were to take actions or positions in direct opposition to the interests
of another client of this Firm on a matter in which we were then representing the other client, we
would need to evaluate whether and under what circumstances we could continue to represent
you. In such a case, we reserve the right to terminate our representation of you and to continue
to represent another client of the Firm where doing so is consistent with our ethical
responsibilities. In any event, we would be bound to maintain any confidences and secrets
obtained from you, and we would continue the other representation only to the extent doing so is
permissible under the rules of professional responsibility.

### Communication regarding conflicts.

If you ever become aware of any circumstances that raise conflict concerns about the
appropriateness of our representation of you or another client, please inform us immediately.
The attorneys who represent our other clients on matters potentially adverse to you may not
always be familiar with all circumstances related to our representation of you. Consequently, the
Firm may not be in a position to detect every situation that may raise concerns. Therefore, we
rely on you to notify us of any concerns that come to your attention.

### Professional standards.

This Firm is committed not only to meeting the mandatory ethical standards imposed by
the bar but to achieving the highest level of professional conduct. At its core, that means that we
are committed to excellence in the practice of law and the zealous representation of your
interests. In doing so, we will always act within the bounds of our uncompromising respect for
the administrative and judicial system, the bar, and the rule of law.

Millenkamp
June 28, 2024
Page 9 of 15

<b>EXHIBIT B</b>

**GIVENS PURSLEY** LLP

***General Terms and Conditions***

---

**Engagement Agreement.** The preceding cover letter and the enclosed exhibits constitute our Engagement Agreement with you. This replaces any prior agreements or understandings. It will continue in effect and its terms will apply to all active matters we undertake for you, unless you and the Firm agree otherwise in writing. You agree to pay for legal services performed by the Firm in accordance with this Engagement Agreement. This Engagement Agreement also applies to work appropriately performed in connection with this matter prior to the Engagement Agreement. It will apply as well to any additional work you assign to this Firm, unless we enter into a different or amended engagement agreement.

**Acknowledgement of agreement.** We have asked you to acknowledge your agreement to these terms with your signature on the Acknowledgement below the cover letter. Your signature, however, is not necessary to effect this engagement. If we proceed with this engagement per your direction or other action by you acknowledging that the representation is underway, this Engagement Agreement will govern our attorney-client relationship, whether signed by you or not, unless and until otherwise by us agreed in writing. Of course, you retain the right to limit or terminate the representation at any time.

**Scope of work.** A description of the initial or current scope of work is provided in the cover letter. The authorized scope of work also encompasses any work already performed by the Firm on these matters, per your instruction. Changes to the scope of work are addressed below.

**Writing.** All requirements in this Engagement Agreement that a communication be in writing may be satisfied either by (1) a written communication on paper sent to the other person or (2) an email whose receipt is acknowledged or otherwise confirmed.

**Changes to scope of work need not be in writing.** You may assign additional work or order changes to the scope of work at any time. Such additions or changes to the scope of work need not be in writing, except for stop work orders which must be in writing.

**Changes to scope of work subject to further conflict review.** Additions or changes to the scope of work may raise new conflict of interest issues that could preclude our ability to represent you on that matter. Accordingly, no change or addition to the scope of work will be deemed a part of this representation unless and until we clearly and affirmatively state to you that we have agreed to represent you in the new matter. Our acceptance of the new work assignments may be acknowledged in writing or by actions we have taken in acting on new matter. Any new

Millenkamp
June 28, 2024
Page 10 of 15

assignments of work accepted by this Firm will be covered by this Engagement Agreement, unless provided otherwise in writing.

**Changes to this agreement must be confirmed in writing.** Except as described above with respect to changes in the scope of work, any material change or clarification in the terms of this Engagement Agreement must be memorialized in writing.

**Retainer fee**. With the understanding that you will keep your account current (paid within 30 days of billing), I have agreed not to charge an initial retainer fee in this matter. In the event that your account is not kept current or other relevant circumstances change, you may be requested to advance funds for the establishment of a Retainer Fund.

**Billing procedures**. The Firm typically provides monthly billing statements by regular mail. Billing statements are broken out by matter and are sent to the person and address identified for the particular matter. Please advise us if you would like the matters to be organized differently or if you wish for the statements to be directed to a different person.

**Payment method**. Acceptable payment methods include check, ACH, wire, cash, and credit card using our internet payment portal. Credit card terms will be provided on the card link on the internet payment portal and will include an administrative fee for payment by credit card. Receipts will be issued at the time any cash is rendered or upon request.

**Late fees**. The amounts shown on the Firm's statements are payable within 30 days after the date of the statement (unless chargeable to a Retainer Fund). Statements that are not paid within 30 days will be assessed a late payment charge at the rate of one and one-half percent per month (18.0 % per annum) on the unpaid balance. The Firm reserves the right to suspend all work, and to withhold work product to the extent permitted by law, if bills are not timely paid.

**Billing questions**. The Firm will be pleased to answer any questions you have about billing. If you have concerns about any portion of a bill, please raise them promptly. We expect you to pay without delay all but the disputed or questioned portion of the bill. The Firm's acceptance of partial payment does not constitute an accord and satisfaction. Any concerns or disputes about billing should be raised promptly. If the dispute cannot be resolved, you and the Firm are both free to terminate the representation, while the other party retains all rights and remedies.

**Fees and staffing**. Unless otherwise agreed, the Firm calculates fees based upon the hourly rates of the attorneys, paralegals, and other timekeepers who perform professional services for you. We will consult with or assign research or other tasks to timekeepers other than the person primarily responsible when, in our professional judgment, it is necessary or appropriate to do so. This may involve timekeepers with a higher or (more typically) lower billing rate than the responsible attorney. You will be billed for their time as well. In special circumstances, the Firm may negotiate a fixed fee agreement for specific projects. This is not the

Millenkamp
June 28, 2024
Page 11 of 15

case here, unless a separate written agreement to that effect has been provided. Billing rates for attorneys and other timekeepers currently expected to be working with you are provided in the accompanying Fee and Cost Schedule (Exhibit C). Rates for other attorneys and staff who work on your behalf are available upon request and will be displayed on our monthly bills. Billing rates are subject to adjustment from time to time. Any adjustment in the hourly rate or the addition of other timekeepers not listed on the attached Fee and Cost Schedule will be reflected in your monthly billing statements.

**Budget estimates and fee-tracking**. If directed by you to do so, we will prepare budget estimates or special fee-tracking from time to time. The preparation of budget estimates and special fee-tracking (beyond regular monthly statements) is a billable item. For most matters, it is difficult to predict the amount of time and costs that will be required, particularly where legal research, negotiation, or litigation are involved. Therefore, any estimates of fees or costs provided to you are not guarantees or caps on the fees that may be incurred, unless expressly so stated in writing.

**Billable time - general**. You will be charged for all time spent by timekeepers performing work reasonable and appropriate for your representation. This may include legal analysis and research, review and drafting of documents, telephone calls, correspondence, meetings, responding to client inquiries, site visits, data gathering and preparation, outlining and budget development, strategy development, task coordination, drafting and negotiation of agreements, lobbying, presentations, and travel. If you require budget estimates, periodic written updates or work charts, special billing formats, or other such administrative tasks that require attorney or paralegal time, or extraordinary time by any other Firm staff, you will be billed for such services.

**Billable costs**. You will be billed for all costs appropriately incurred on your behalf. This may include such things as messenger service and staff overtime on specific rush projects, filing fees, copying costs for substantial projects, and travel costs including meals and mileage. If extraordinary costs are expected to be incurred, you will be advised in advance and may be asked to make advance payment.

**Nonbillable time and costs**. The Firm does not bill for routine secretarial costs, word processing, or internet connections.

**Retention of experts and other professionals**. From time to time, it may be necessary to retain experts, consultants, mediators, lawyers, or other professionals outside of this Firm in connection with our representation of you. No such person or firm will be retained without your prior approval. Ordinarily, such professionals will submit their bills directly to you, and you will be solely responsible for paying their fees and costs. In some instances, it may be advantageous for the professionals to be retained directly by this Firm. The Firm agrees to add no administrative or overhead charge to fees or costs billed by the consultant or other professional. In the event that this Firm pays their fees and costs, you will be responsible to promptly

Millenkamp
June 28, 2024
Page 12 of 15

reimburse the Firm therefor. If the fees are expected to be substantial, you may be asked to provide advance funding. Whatever the arrangement, we will always obtain your prior approval.

**Confidentiality**. The Firm is obligated to protect your secrets and confidences, as provided in the Idaho Rules of Professional Conduct. This obligation continues after the Firm's representation is terminated. In special cases, confidentiality may be addressed in a separate written agreement.

**Work product**. You are entitled to copies of all work product developed by the Firm on your behalf. To the extent permitted by law, however, the Firm may withhold work product if you have failed to pay fees and costs properly charged to you.

**File retention**. The Firm generally keeps each client's legal file for five years after the matter is closed, after which time the file may be disposed of. If you wish to retain legal materials for a longer period, you should request that the file, or parts thereof, be copied for you. The Firm reserves the right to retain a copy of all files. Unless otherwise directed, the Firm will not retain original copies of executed documents, but will instead forward them to you. Please keep all documents provided to you in a safe location.

**Termination by client**. You may terminate your relationship with the Firm unilaterally at any time upon written notice to the Firm. Termination shall not affect your obligation to pay for services rendered. This includes fixed fees (if any), fees and costs associated with the provision of services prior to termination, and fees and costs necessarily incurred by the Firm in order to wind down or hand over the work.

**Suspension of work**. Your failure to timely pay bills may result in immediate suspension of services being provided by the Firm. Suspension will not occur without prior notice to you and an opportunity to cure.

**Withdrawal by Firm**. The Firm reserves the right to withdraw from this representation for good cause (subject, if required, to court approval). Good cause may include your failure to honor the terms of the Engagement Agreement, your failure to pay amounts billed in a timely manner, your failure to cooperate or follow the Firm's advice on a material matter, or any fact or circumstance that would, in the Firm's view, impair an effective attorney-client relationship or would render the Firm's continuing representation ineffective, unlawful, or unethical. If the Firm withdraws, you will take all steps necessary to free the Firm of any obligation to perform further, including the execution of any documents (including forms for substitution of counsel) necessary to complete its withdrawal, and the Firm will be entitled to be paid for all services rendered as well as disbursements, costs, and other charges made or incurred on your behalf. This includes fees and costs incurred prior to the date of the withdrawal or reasonably incurred in the course of winding down or transitioning following the withdrawal.

Millenkamp
June 28, 2024
Page 13 of 15

**EXHIBIT C**

**GIVENS PURSLEY LLP**

*Fee and Cost Schedule*

---

Fees and costs are subject to adjustment. Any adjustment will be reflected in your monthly billing statements.

**Professional fees**

Lawyers will be brought into this representation on an as-needed basis. The current hourly fees of lawyers who we anticipate might be called upon to assist in this representation are listed below.

| | |
|---|---|
| Frank G. Lee (partner) | $675 per hour |
| L. Edward Miller (partner) | $550 per hour |
| Thomas E. Dvorak (partner) | $450 per hour |
| Preston N. Carter (partner) | $400 per hour |
| Michael P. Lawrence (partner) | $425 per hour |
| Rob B. White (partner) | $450 per hour |
| Charlie S. Baser (associate) | $325 per hour |
| Don Z. Gray (associate) | $320 per hour |
| Morgan D. Goodin (associate) | $285 per hour |
| Martha W. Turner (paralegal) | $185 per hour |

Billing rates for other attorneys at Givens Pursley LLP range between $255 and $675 per hour. Paralegal billing rates range between $150 and $300 per hour. Document clerks bill between $30 and $60 per hour.

**Costs**

| | |
|---|---|
| In-House Messenger service | $10.00 (downtown), $15.00 (up to 20 miles), $20.00 (Eagle and Meridian), $30.00 (Nampa, Caldwell, and beyond, up to 30 miles) |
| Overtime Staff | $40.00 per hour |
| Westlaw | Prevailing rate |

Millenkamp
June 28, 2024
Page 14 of 15

EXHIBIT D

**GIVENS PURSLEY** LLP

*Retainer Fund Agreement*

No initial retainer shall be required. Depending on the matter we are asked to handle, a retainer may be required in the future. Any future retainer will not be a fee estimate or cap on fees.

All funds paid into the Retainer Fund are held by the Firm but belong to you until such time as fees or costs are properly incurred pursuant to the Engagement Agreement. Fees will be billed to you on a regular basis and should be paid upon receipt. They will not be charged against the Retainer Fund unless the representation is winding up. Upon termination of the Firm's representation of you, you are entitled to a full refund of any amount in the Retainer Fund in excess of unpaid costs and fees that have been properly incurred by this Firm.

All funds deposited in the Retainer Fund are hereby agreed to be subject to, and you hereby grant to the Firm, a lien on and security interest in such funds. This security interest is for the purpose of securing any and all amounts that are due or may become due to the Firm under this Engagement Agreement, whether presently due or to become due in the future. The amounts secured include payment for work done by this Firm and/or costs or expenses charged by the Firm or incurred by the Firm. This security interest shall be perfected by the Firm's possession of the Retainer Funds.

The Firm will maintain an accurate accounting of all funds placed into and paid out of the Retainer Fund. The balance of the Retainer Fund will be reflected in each billing statement to you. Interest earned on funds maintained in the Retainer Fund are contributed to charitable purposes in accordance with the Interest on Lawyer Trust Accounts ("IOLTA") program of the Idaho Bar.

The establishment of a Retainer Fund does not constitute either an estimate of nor a cap on total fees and costs.

As new matters are opened, either you or the Firm may request that a separate Retainer Fund be opened for each new matter. If that is not done, this Retainer Fund will be available to pay charges associated with all open matters.

The fact that funds in the Retainer Fund are available or have been used to pay fees and costs incurred does not impair your right to dispute any fee or cost. The Firm will reimburse the Retainer Fund (or you) for any amount determined not to have been properly charged.

Millenkamp
June 28, 2024
Page 15 of 15

If payments are not kept current or the scope of work is increased, the Firm may request your agreement to a modification in the retainer agreement including an adjustment in the size of the retainer.

EXHIBIT B

# GIVENS PURSLEY LLP

Attorneys and Counselors at Law

601 W. Bannock Street
PO Box 2720
Boise, ID 83701
Telephone: 208-388-1200
Facsimile: 208-388-1300

www.givenspursley.com

Thomas E. Dvorak
(208) 388-1245
ted@givenspursley.com

| | | | |
|---|---|---|---|
| Taylor J. Barton | Amber N. Dina | Franklin G. Lee | Randall A. Peterman |
| Charlie S. Baser | Bradley J. Dixon | Matthew E. Liebertz | Blake W. Ringer |
| Christopher J. Beeson | Thomas E. Dvorak | David R. Lombardi | Michael O. Roe |
| Jason J. Blakley | Rebecca M. Fitz | Kimberly D. Maloney | Danielle M. Strollo |
| Clint R. Bolinder | Morgan D. Goodin | Kenneth R. McClure | Robert B. White |
| Jeff W. Bower | Don Z. Gray | Alex P. McLaughlin | Michael V. Woodhouse |
| Preston N. Carter | Brian J. Holleran | Melodie A. McQuade | |
| Chynna K. Castoro | Kersti H. Kennedy | Christopher H. Meyer | |
| Jeremy C. Chou | Elizabeth A. Koeckeritz | L. Edward Miller | Kenneth L. Pursley (1940-2015) |
| Charlotte V. Cunnington | Neal A. Koskella | Judson B. Montgomery | James A. McClure (1924-2011) |
| Joshua C. Dickinson | Michael P. Lawrence | Deborah E. Nelson | Raymond D. Givens (1917-2008) |

> **PRIVILEGED AND CONFIDENTIAL**
> Attorney-Client Communication
> Attorney Work Product

July 9, 2024

***Via Email Only***

Bill Millenkamp
David Heida, General Manager
East Valley Cattle, LLC
Millenkamp Cattle, Inc.
471 N 300 W
Jerome, ID 83338-5078
bill@millenkamp.com
david@millenkamp.com

Re:   Engagement Agreement Including Conflict Disclosure and Consent—
McAlvain and Digested Litigation Matters

Dear Bill and David:

Thank you for retaining Givens Pursley LLP to represent Millenkamp Cattle, Inc. and East Valley Cattle, LLC, who are the debtors in that certain a voluntary petitions were filed in the United States Bankruptcy Court for the District of Idaho (Case Nos. 24-40160-NGH and Case No. 24-40158-NGH)(collectively the "Bankruptcy").[1]

This letter and the exhibits hereto constitute our entire Engagement Agreement on the litigation matters listed as follows:

---

[1] Except where the context calls for a different meaning (such as the Acceptance of Engagement Agreement), the following terms have these meanings: "You" and "your" refer to the clients listed above. "I," "me," "my," "we," "us," "our," and "Firm" refer to the undersigned, to the lawyers identified in this letter, or to Givens Pursley LLP. You and the Firm may be referred to as a party or collectively as parties.

Millenkamp
July 9, 2024
Page 2 of 16

1. *McAlvain v East Valley Cattle, LLC, et al.*, Case No. CV16-21-00486, Cassia County District Court Idaho: This is a state court case that has proceeded almost through to trial before Bankruptcy filing stayed the action. It had been set for an 8 day jury trial in Burley, Idaho July 2024 after several continuances and resolution of dispositive motions and a motion reconsideration. The lawsuit arises out of amounts Millenkamp/EVC withheld from McAlvain construction company due to incomplete punch list work. To date, Millenkamp withheld approximately $511K from McAlvain, which is the amount of McAlvain's lien it recorded against the property. Millenkamp bonded around this lien, and presently Argonaut Insurance is currently holding approximately $767K to secure the bond. McAlvain seeks to recover approximately $511K for unpaid work as well as costs and attorney's fees—an amount that now exceeds the bond. There are a multitude of defects and/or incomplete work that needs to be completed and repaired, but due to the Court's prior ruling on a motion for summary judgment, Millenkamp/EVC's counterclaim was dismissed, leaving only a claim that McAlvain did not substantially perform under the contract and is therefore not entitled to the remaining $511K owed under the contract. This case is currently set for an 8 day jury trial starting on July 9, 2024. As part of its defense, Millenkamp/EVC will need to show that there are substantial defects with McAlvain's work, which will require the testimony of two experts to testify about concrete and waterproofing details. We anticipate that the experts alone will cost approximately $40,000 to get them reengaged, prepared to testify, and testify at trial. Millenkamp's counterclaim was dismissed on summary judgment relied on the anticipated future structural damage related to water intrusion and based primarily on the expert's cost to repair and Bill Millenkamp's testimony put those amounts at about $20M. However, relying primarily on the experts did not have the estimates in time for their report when the same was due, and not allowing them to supplement (despite experts stating the issues in getting the information in time with respect to an evolving damage situation), the Judge dismissed the counterclaim and denied reconsideration. Although the judge has discretion, we believe that there is a good argument for reversal of this ruling on appeal. An estimated litigation budget through trial is attached as Exhibit D. A post-trial appeal and likely a retrial will be necessary to recover on the Counterclaim absent a settlement and are not reflected in the budget.

2. Digester: This is a ongoing construction and operation contract that may require engaging in an arbitration with the Digester builder/owner and operator East Valley Development, LLC. At present, the parties are still negotiating and no arbitration has been filed.

Other Engagement Agreements may govern other litigation and transactional matters, including that certain Engagement Agreement entered on June 28, 2024.

This Engagement Agreement will, because of the existence of the Bankruptcy, require Court approval in the Bankruptcy for Givens Pursley LLP to be engaged by the clients as a

Millenkamp
July 9, 2024
Page 3 of 16

professional.  The Bankruptcy Court may approve Givens Pursley LLP as counsel on both of these litigation matters or on just one of the matters.  Further, additional litigation matters may be approved by the Bankruptcy Court in the future and added to this Engagement by agreement of all concerned parties.  This engagement Agreement will continue in effect even if the matters covered by this Agreement are no longer subject to Bankruptcy Court jurisdiction and oversight.

This is not a general representation.  The Firm's representation is limited to the scope of work in the individual matters on which we agree to be retained.

Our legal representation will involve general corporate and business work for the Client. Our legal representation will not involve any direct representation in the Bankruptcy.

I will be the responsible attorney for these matters, providing oversight and strategic advice.  In order to provide you with the most efficient and cost-effective service, I may assign responsibility for some or all aspects of this representation to other lawyers.  These assignments will be made by me with your best interests in mind, consistent with any direction we receive from you.

We understand that our bills must be submitted through the Bankruptcy Court even after the Court approves our retention. We have discussed a process with your Bankruptcy Counsel Matt Christensen that is identical to the process Mr. Christensen is following in bankruptcy court.  This involves a monthly abbreviated submission of bills though the Bankruptcy Court, a payment of a certain percentage of those bills, and a more detailed submission quarterly of all outstanding bills, along with a more elaborate hearing or negative notice process before those quarterlies are paid.  Mr. Christensen's office will, without charge to our office, assist us and our billing department in making those necessary bankruptcy court submissions.

There is an outstanding amount of $17,000 that was due as of filing bankruptcy on the McAlvain matter.  As part of proceeding forward, we will not seek to collect that amount from Millenkamp but if an opportunity arises to claim attorneys fees against the adverse party in this case, and said amounts are sought and award, would retain the right to collect said amount as against said adverse party or parties.

In order to secure services of necessary consultants and expert witnesses for these matters, we will have to get them to agree to this same Bankruptcy Court approval and billing process for their work. We make no guarantee that they will be willing to do so, but we will make our best effort to convince them.

If Bankruptcy supervision ceases for any reason, our bills will generally be submitted to you on a monthly basis.  With the understanding that you will keep your account current within 30 days of billing, we have agreed not to charge a retainer fee in this matter.

Millenkamp
July 9, 2024
Page 4 of 16

Current hourly rates are shown in the enclosed Fee and Cost Schedule (Exhibit C). Rates that have been in effect for four months or longer are typically adjusted in January of each year, but may be adjusted at other times as well. All new personnel or adjustments in billing rates will be clearly indicated on your billing statements.

This Engagement Agreement will continue in effect and its terms will apply to all active matters we undertake for you, unless you and the Firm agree otherwise in writing (including emails).

If this Engagement Agreement meets with your approval, please sign the acceptance below and return a hard or electronic copy of this letter to me. Alternatively, you may approve this engagement by separate letter or email.

I thank you for entrusting this work to Givens Pursley. We will do our best to provide you with the high-quality legal counsel you expect in an efficient and cost-effective manner. If you ever feel that we are not meeting your expectations or you have other questions about our relationship, please do not hesitate to call me.

I very much look forward to working with you on this matter.

Sincerely,

Thomas E. Dvorak

TED:slc
Encl:    Exhibit A:    Conflict Disclosure and Waiver
         Exhibit B:    General Terms and Conditions
         Exhibit C:    Fee and Cost Schedule

Millenkamp
July 9, 2024
Page 5 of 16

## ACCEPTANCE OF ENGAGEMENT AGREEMENT

I have read the preceding letter and the exhibits that follow, including the Conflict Disclosure and Waiver.  I agree to the Firm's representation on those terms.

Dated: _7/10/2024_    _____

Bill Millenkamp
President of Millenkamp Cattle, Inc. and Manager of
East Valley Cattle, LLC and associated limited liability
companies

18320320.1

Millenkamp
July 9, 2024
Page 6 of 16

EXHIBIT A

### GIVENS PURSLEY LLP

*Conflict Disclosure and Waiver*

---

**Waiver in accordance with rules of professional conduct.**

Our representation of you is governed by Rule 1.7 of the Idaho Rules of Professional Conduct.[2]  This rule and other relevant rules prohibits the Firm from representing two clients where a conflict of interest exists unless four conditions are met:  (1) despite the conflict, we reasonably believe that we can provide competent and diligent representation to each client, (2) the representation is lawful, (3) we do not represent competing clients on the same matter in the same litigation or other formal proceeding, and (4) both clients waive the conflict after being fairly advised of the circumstances.  The purpose of this letter is to advise you of actual and potential conflicts and seek your informed consent before we undertake your representation.  In making your decision, we encourage you to consult with your own independent counsel.

By agreeing to this representation, you waive any conflicts of interest described in this letter and consent to our representation of you.

---

[2] Rule 1.7 of the Idaho Rules of Professional Responsibility provides:

RULE 1.7:  Conflict of Interest:  Current Clients

(a)  Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest.  A concurrent conflict of interest exists if:

   (1)  the representation of one client will be directly adverse to another client; or

   (2)  there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by the personal interests of the lawyer, including family and domestic relationships.

(b)  Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

   (1)  the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

   (2)  the representation is not prohibited by law;

   (3)  the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

   (4)  each affected client gives informed consent, confirmed in writing.

Millenkamp
July 9, 2024
Page 7 of 16

### Potentially adverse or interested parties.

For conflict check purposes, you have provided the following names of potentially adverse or interested parties identified as follows:

- o  McAlvain Construction, Inc.

- o  East Valley Development, LLC

We have relied on your disclosures of potential conflicts in preparing our conflict analysis.  If there are other persons or entities that you believe may be potential adversaries or interested parties in this undertaking, please provide those names to us as soon as possible so that we may expand the conflict check.

Other than clients for whom specific or general waivers are sought elsewhere in this engagement letter, we are not aware of any current or former clients whom we represent or have represented that are now directly adverse to you.

Nor are we aware of any circumstances that would cause a member of this Firm to be materially limited in his or her representation of you.

### Specific waivers.

The Firm seeks specific waivers for our ongoing representation of the following client(s):

- o  None

### Firm's representation of governmental entities on unrelated matters.

From time to time we represent cities, counties, highway districts, states, and other governmental entities on a variety of matters including land use, municipal water supply and other services, taxation, impact and user fees, road and public access, condemnation, legislation, and other issues relevant to their function as governmental entities.  During the course of our representation of you, we would not represent any governmental entity in a matter directly adverse to you on a matter that falls within the scope of our representation of you without first obtaining your consent.  We might represent these governmental entities, however, on other governmental matters that do not fall within our representation of you.  Accordingly, you consent that other lawyers in this Firm may represent a governmental entity on a different matter at the same time that we are representing you in a matter involving that governmental entity.

### Positional conflicts (policy issues or legal precedents).

The Firm's lawyers are engaged in a variety of public policy, regulatory, and legislative matters with broad implications.  We represent clients that may hold viewpoints or advocate

Millenkamp
July 9, 2024
Page 8 of 16

public policy positions contrary to yours. For example, we represent businesses and industries of all types, banks and other financial institutions, business owners, venture capitalists, trusts, doctors and hospitals, trade organizations, real estate investors and developers, professional groups, industry associations, homeowner groups, citizen groups, user groups, policy advocacy organizations, nonprofits, and governmental entities at all levels, as well as other public and quasi-public entities. We appear before courts, agencies, regulatory and governmental bodies, and state and federal legislatures. Consequently, there could be instances in which we pursue a policy issue or legal precedent on behalf of one client that you might not consider favorable or desirable.

### Potential adversity in business competition.

Our Firm represents clients in a variety of commercial, and business ventures. Accordingly, it is inevitable that some of our clients will have interests and objectives that may conflict with those of other clients from time to time. For instance, some of our clients may be business competitors of each other. Even if they are not competing head-to-head, they may run into each other in the real estate market, for example. Such business adversity among our clients is natural and does not necessarily create a conflict of interest for this Firm—so long as we are not representing both clients in the same transaction or dispute.

We want you to be aware, however, that there may be times when we represent one client on some matter that another client finds undesirable. For instance, one client might ask for our assistance in acquiring a property that another client, whom we represent on an entirely unrelated matter, might be interested in. Or we might represent the developer of a project that another client, represented on a completely different matter, wished not be developed.

### Limited engagement.

As noted, our representation of you is limited to the particular matters we undertake for you. Accordingly, we ask your understanding and consent that our representation of you does not allow you to prevent us from undertaking unrelated work for other clients.

### Waiver as to future conflicts.

In giving the consents identified in this engagement letter, you should note in particular Comment 22 to Rule 1.7 of the Idaho Rules of Professional Conduct. That comment explains that waivers as to future conflicts may be effective where some or all of the following conditions are met: (1) we have undertaken a comprehensive explanation of the types of future representations that may arise and the consequences that may follow, (2) you are a sophisticated consumer of legal services, (3) you are represented by separate counsel, and (4) consent is sought solely as to unrelated matters.

Millenkamp
July 9, 2024
Page 9 of 16

**Your right to terminate.**

You are free to terminate our representation of you for any reason at any time.  This includes but is not limited to termination based on conflicts of interest.  In the event you terminate our representation based on a newly emerging conflict of interest or your decision that you are no longer comfortable with a conflict waiver you previously provided, you agree that we may continue to represent other clients whose conflicts with you are known today or may be reasonably anticipated based on the disclosures made in this letter.  Thus, even if you no longer wish for us to represent you in the future, we may continue to represent those other clients of this Firm.  Of course, any secrets or confidences you have shared with us will be preserved in any event.  If you have questions about this or any other concerns, please do not hesitate to ask.

**Resolution of future conflicts.**

In the event that a conflict of interest between you and another client of this Firm later emerges during the course of this representation, we will call the situation promptly to the attention of all affected entities.  In such event, we will endeavor to resolve the conflict, if possible, in a manner acceptable to all concerned.  If that cannot be accomplished, it is possible that we would need to withdraw from representation of one or all entities.

If, in the future, you were to take actions or positions in direct opposition to the interests of another client of this Firm on a matter in which we were then representing the other client, we would need to evaluate whether and under what circumstances we could continue to represent you.  In such a case, we reserve the right to terminate our representation of you and to continue to represent another client of the Firm where doing so is consistent with our ethical responsibilities.  In any event, we would be bound to maintain any confidences and secrets obtained from you, and we would continue the other representation only to the extent doing so is permissible under the rules of professional responsibility.

**Communication regarding conflicts.**

If you ever become aware of any circumstances that raise conflict concerns about the appropriateness of our representation of you or another client, please inform us immediately.  The attorneys who represent our other clients on matters potentially adverse to you may not always be familiar with all circumstances related to our representation of you.  Consequently, the Firm may not be in a position to detect every situation that may raise concerns.  Therefore, we rely on you to notify us of any concerns that come to your attention.

**Professional standards.**

This Firm is committed not only to meeting the mandatory ethical standards imposed by the bar but to achieving the highest level of professional conduct.  At its core, that means that we are committed to excellence in the practice of law and the zealous representation of your

Millenkamp
July 9, 2024
Page 10 of 16

interests.  In doing so, we will always act within the bounds of our uncompromising respect for the administrative and judicial system, the bar, and the rule of law.

Millenkamp
July 9, 2024
Page 11 of 16

EXHIBIT B

GIVENS PURSLEY LLP

*General Terms and Conditions*

---

**Engagement Agreement.**  The preceding cover letter and the enclosed exhibits constitute our Engagement Agreement with you.  This replaces any prior agreements or understandings.  It will continue in effect and its terms will apply to all active matters we undertake for you, unless you and the Firm agree otherwise in writing.  You agree to pay for legal services performed by the Firm in accordance with this Engagement Agreement.  This Engagement Agreement also applies to work appropriately performed in connection with this matter prior to the Engagement Agreement.  It will apply as well to any additional work you assign to this Firm, unless we enter into a different or amended engagement agreement.

**Acknowledgement of agreement**.  We have asked you to acknowledge your agreement to these terms with your signature on the Acknowledgement below the cover letter.  Your signature, however, is not necessary to effect this engagement.  If we proceed with this engagement per your direction or other action by you acknowledging that the representation is underway, this Engagement Agreement will govern our attorney-client relationship, whether signed by you or not, unless and until otherwise by us agreed in writing.  Of course, you retain the right to limit or terminate the representation at any time.

**Scope of work**.  A description of the initial or current scope of work is provided in the cover letter.  The authorized scope of work also encompasses any work already performed by the Firm on these matters, per your instruction.  Changes to the scope of work are addressed below.

**Writing**.  All requirements in this Engagement Agreement that a communication be in writing may be satisfied either by (1) a written communication on paper sent to the other person or (2) an email whose receipt is acknowledged or otherwise confirmed.

**Changes to scope of work need not be in writing.**  You may assign additional work or order changes to the scope of work at any time.  Such additions or changes to the scope of work need not be in writing, except for stop work orders which must be in writing.

**Changes to scope of work subject to further conflict review.**  Additions or changes to the scope of work may raise new conflict of interest issues that could preclude our ability to represent you on that matter.  Accordingly, no change or addition to the scope of work will be deemed a part of this representation unless and until we clearly and affirmatively state to you that we have agreed to represent you in the new matter.  Our acceptance of the new work assignments may be acknowledged in writing or by actions we have taken in acting on new matter.  Any new

Millenkamp
July 9, 2024
Page 12 of 16

assignments of work accepted by this Firm will be covered by this Engagement Agreement, unless provided otherwise in writing.

**Changes to this agreement must be confirmed in writing.**  Except as described above with respect to changes in the scope of work, any material change or clarification in the terms of this Engagement Agreement must be memorialized in writing.

**Retainer fee**.  With the understanding that you will keep your account current (paid within 30 days of billing), I have agreed not to charge an initial retainer fee in this matter.  In the event that your account is not kept current or other relevant circumstances change, you may be requested to advance funds for the establishment of a Retainer Fund.

**Billing procedures**.  The Firm typically provides monthly billing statements by regular mail.  Billing statements are broken out by matter and are sent to the person and address identified for the particular matter.  Please advise us if you would like the matters to be organized differently or if you wish for the statements to be directed to a different person.

**Payment method**.  Acceptable payment methods include check, ACH, wire, cash, and credit card using our internet payment portal.  Credit card terms will be provided on the card link on the internet payment portal and will include an administrative fee for payment by credit card.  Receipts will be issued at the time any cash is rendered or upon request.

**Late fees**.  The amounts shown on the Firm's statements are payable within 30 days after the date of the statement (unless chargeable to a Retainer Fund).  Statements that are not paid within 30 days will be assessed a late payment charge at the rate of one and one-half percent per month (18.0 % per annum) on the unpaid balance.  The Firm reserves the right to suspend all work, and to withhold work product to the extent permitted by law, if bills are not timely paid.

**Billing questions**.  The Firm will be pleased to answer any questions you have about billing.  If you have concerns about any portion of a bill, please raise them promptly.  We expect you to pay without delay all but the disputed or questioned portion of the bill.  The Firm's acceptance of partial payment does not constitute an accord and satisfaction.  Any concerns or disputes about billing should be raised promptly.  If the dispute cannot be resolved, you and the Firm are both free to terminate the representation, while the other party retains all rights and remedies.

**Fees and staffing**.  Unless otherwise agreed, the Firm calculates fees based upon the hourly rates of the attorneys, paralegals, and other timekeepers who perform professional services for you.  We will consult with or assign research or other tasks to timekeepers other than the person primarily responsible when, in our professional judgment, it is necessary or appropriate to do so.  This may involve timekeepers with a higher or (more typically) lower billing rate than the responsible attorney.  You will be billed for their time as well.  In special circumstances, the Firm may negotiate a fixed fee agreement for specific projects.  This is not the

Millenkamp
July 9, 2024
Page 13 of 16

case here, unless a separate written agreement to that effect has been provided.  Billing rates for
attorneys and other timekeepers currently expected to be working with you are provided in the
accompanying Fee and Cost Schedule (Exhibit C).  Rates for other attorneys and staff who work
on your behalf are available upon request and will be displayed on our monthly bills.  Billing
rates are subject to adjustment from time to time.  Any adjustment in the hourly rate or the
addition of other timekeepers not listed on the attached Fee and Cost Schedule will be reflected
in your monthly billing statements.

   **Budget estimates and fee-tracking**.  If directed by you to do so, we will prepare budget
estimates or special fee-tracking from time to time.  The preparation of budget estimates and
special fee-tracking (beyond regular monthly statements) is a billable item.  For most matters, it
is difficult to predict the amount of time and costs that will be required, particularly where legal
research, negotiation, or litigation are involved.  Therefore, any estimates of fees or costs
provided to you are not guarantees or caps on the fees that may be incurred, unless expressly so
stated in writing.

   **Billable time - general**.  You will be charged for all time spent by timekeepers
performing work reasonable and appropriate for your representation.  This may include legal
analysis and research, review and drafting of documents, telephone calls, correspondence,
meetings, responding to client inquiries, site visits, data gathering and preparation, outlining and
budget development, strategy development, task coordination, drafting and negotiation of
agreements, lobbying, presentations, and travel.  If you require budget estimates, periodic written
updates or work charts, special billing formats, or other such administrative tasks that require
attorney or paralegal time, or extraordinary time by any other Firm staff, you will be billed for
such services.

   **Billable costs**.  You will be billed for all costs appropriately incurred on your behalf.
This may include such things as messenger service and staff overtime on specific rush projects,
filing fees, copying costs for substantial projects, and travel costs including meals and mileage.
If extraordinary costs are expected to be incurred, you will be advised in advance and may be
asked to make advance payment.

   **Nonbillable time and costs**.  The Firm does not bill for routine secretarial costs, word
processing, or internet connections.

   **Retention of experts and other professionals**.  From time to time, it may be necessary
to retain experts, consultants, mediators, lawyers, or other professionals outside of this Firm in
connection with our representation of you.  No such person or firm will be retained without your
prior approval.  Ordinarily, such professionals will submit their bills directly to you, and you will
be solely responsible for paying their fees and costs.  In some instances, it may be advantageous
for the professionals to be retained directly by this Firm.  The Firm agrees to add no
administrative or overhead charge to fees or costs billed by the consultant or other professional.
In the event that this Firm pays their fees and costs, you will be responsible to promptly

Millenkamp
July 9, 2024
Page 14 of 16

reimburse the Firm therefor.  If the fees are expected to be substantial, you may be asked to provide advance funding.  Whatever the arrangement, we will always obtain your prior approval.

**Confidentiality**.  The Firm is obligated to protect your secrets and confidences, as provided in the Idaho Rules of Professional Conduct.  This obligation continues after the Firm's representation is terminated.  In special cases, confidentiality may be addressed in a separate written agreement.

**Work product**.  You are entitled to copies of all work product developed by the Firm on your behalf.  To the extent permitted by law, however, the Firm may withhold work product if you have failed to pay fees and costs properly charged to you.

**File retention**.  The Firm generally keeps each client's legal file for five years after the matter is closed, after which time the file may be disposed of.  If you wish to retain legal materials for a longer period, you should request that the file, or parts thereof, be copied for you.  The Firm reserves the right to retain a copy of all files.  Unless otherwise directed, the Firm will not retain original copies of executed documents, but will instead forward them to you.  Please keep all documents provided to you in a safe location.

**Termination by client**.  You may terminate your relationship with the Firm unilaterally at any time upon written notice to the Firm.  Termination shall not affect your obligation to pay for services rendered.  This includes fixed fees (if any), fees and costs associated with the provision of services prior to termination, and fees and costs necessarily incurred by the Firm in order to wind down or hand over the work.

**Suspension of work**.  Your failure to timely pay bills may result in immediate suspension of services being provided by the Firm.  Suspension will not occur without prior notice to you and an opportunity to cure.

**Withdrawal by Firm**.  The Firm reserves the right to withdraw from this representation for good cause (subject, if required, to court approval).  Good cause may include your failure to honor the terms of the Engagement Agreement, your failure to pay amounts billed in a timely manner, your failure to cooperate or follow the Firm's advice on a material matter, or any fact or circumstance that would, in the Firm's view, impair an effective attorney-client relationship or would render the Firm's continuing representation ineffective, unlawful, or unethical.  If the Firm withdraws, you will take all steps necessary to free the Firm of any obligation to perform further, including the execution of any documents (including forms for substitution of counsel) necessary to complete its withdrawal, and the Firm will be entitled to be paid for all services rendered as well as disbursements, costs, and other charges made or incurred on your behalf.  This includes fees and costs incurred prior to the date of the withdrawal or reasonably incurred in the course of winding down or transitioning following the withdrawal.

Millenkamp
July 9, 2024
Page 15 of 16

**EXHIBIT C**

**GIVENS PURSLEY LLP**

*Fee and Cost Schedule*

_____

Fees and costs are subject to adjustment.  Any adjustment will be reflected in your monthly billing statements.

**Professional fees**

Lawyers will be brought into this representation on an as-needed basis.  The current hourly fees of lawyers who we anticipate might be called upon to assist in this representation are listed below.

Frank G. Lee (partner) ..............................................$675 per hour
L. Edward Miller (partner) ......................................$550 per hour
Thomas E. Dvorak (partner) ...................................$450 per hour
Preston N. Carter (partner)......................................$400 per hour
Michael P. Lawrence (partner) ...............................$425 per hour
Rob B. White (partner) ............................................$450 per hour
Charlie S. Baser (associate) ....................................$325 per hour
Don Z. Gray (associate) ...........................................$320 per hour
Morgan D. Goodin (associate).................................$285 per hour
Martha W. Turner (paralegal) ..................................$185 per hour

Billing rates for other attorneys at Givens Pursley LLP range between $255 and $675 per hour.  Paralegal billing rates range between $150 and $300 per hour.  Document clerks bill between $30 and $60 per hour.

**Costs**

| | |
|---|---|
| In-House Messenger service | $10.00 (downtown), $15.00 (up to 20 miles), $20.00 (Eagle and Meridian), $30.00 (Nampa, Caldwell, and beyond, up to 30 miles) |
| Overtime Staff | $40.00 per hour |
| Westlaw | Prevailing rate |

Millenkamp
July 9, 2024
Page 16 of 16

**EXHIBIT D**

**Sharon Cuslidge**

| | |
|---|---|
| **From:** | Thomas E Dvorak |
| **Sent:** | Thursday, March 7, 2024 5:58 PM |
| **To:** | BRothschild@parsonsbehle.com |
| **Cc:** | Edward Miller (edmiller@givenspursley.com); Don Gray (dongray@givenspursley.com) |
| **Subject:** | Cassia County Case No. CV16-00486 |
| **Attachments:** | Millenkamp Answer and Counterclaim to RM 3rd Party Complaint_15830498_1.pdf; Complaint_15684237_1.pdf; Litigation Budget(18236932.1).pdf |

Mr. Rothschild:

This email follows up on our conversation.  I have reviewed the Court's Order appointing your client as Receiver and my read of that Order is that your client clearly has charge now of any existing litigation matters of East Valley Cattle, LLC and Millenkamp Cattle, Inc.

As I told you, I represent East Valley Cattle, LLC and Millenkamp, in the Cassia County State Case no CV16-00486.  It is currently set for an 8 day jury trial in Burley, Idaho July 2024 after several continuances (and the other side protesting successfully when the Court initially set it for October 2024), so further delay is likely not possible.

The lawsuit arises out of amounts Millenkamp/EVC withheld from McAlvain construction company due to incomplete punch list work.  To date, Millenkamp withheld approximately $511K from McAlvain, which is the amount of McAlvain's lien it recorded against the property.  Millenkamp bonded around this lien, and presently Argonaut Insurance is currently holding approximately $767K to secure the bond.  McAlvain seeks to recover approximately $511K for unpaid work as well as costs and attorney's fees.  There are a multitude of defects and/or incomplete work that needs to be completed and repaired, but due to the Court's prior ruling on a motion for summary judgment, Millenkamp/EVC's counterclaim was dismissed, leaving only a claim that McAlvain did not substantially perform under the contract and is therefore not entitled to the remaining $511K owed under the contract.  This case is currently set for an 8 day jury trial starting on July 9, 2024.  As part of its defense, Millenkamp/EVC will need to show that there are substantial defects with McAlvain's work, which will require the testimony of two experts to testify about concrete and waterproofing details.  We anticipate that the experts alone will cost approximately $40,000 to get them reengaged, prepared to testify, and testify at trial.

The counterclaim that was dismissed on summary judgment summary judgment relied on the anticipated future structural damage related to water intrusion and based primarily on the expert's cost to repair and Bill Millenkamp's testimony put those amounts at about $20M.  However, relying primarily on the experts did not have the estimates in time for their report when do, and not allowing them to supplement (despite experts stating the issues in getting the information in time with respect to an evolving damage situation), the Judge dismissed the counterclaim and denied reconsideration. Although the judge has discretion, we believe that there is a good shot of reversing this ruling on appeal.

As it stands right now, our outstanding bill on this matter is about $17,000.  But within the next few weeks (no later than April 1) we need to have arrangements in place to fund the expert testimony that is going to be incurred ($40,000 on the enclosed estimated budget) and some realistic way to address the outstanding bill and pay the bill that will be incurred for taking this to trial and through appeal or taking other action with the case.  If arrangements cannot be firmed up, I will have no choice but to file a motion to withdraw as counsel by April 1, to minimize the risk that the Court will try to hold us in as counsel for the duration of trial without pay.

Please advise.

Tom

_____

THOMAS E. DVORAK

GIVENS PURSLEY LLP

601 W Bannock St, Boise, ID 83702
main 208-388-1200
direct 208-388-1245
fax 208-388-1300
ted@givenspursley.com
www.givenspursley.com

_____

CONFIDENTIALITY NOTICE: This communication is confidential and may contain privileged information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.

Filed: 05/24/2021 13:55pm
Fifth Judicial District, Cassia County
Joseph W Larsen, Clerk of the Court
By: Deputy Clerk-Bell, Lynette

Arnold L. Wagner, ISBN 5700
Joseph M. Wager, ISBN 8445
**McCONNELL WAGNER SYKES & STACEY** PLLC
827 East Park Boulevard, Suite 201
Boise, Idaho 83712
Telephone:  208.489.0100
Facsimile:  208.489.0110
wagner@mwsslawyers.com
wager@mwsslawyers.com

Attorneys For Plaintiff McAlvain Concrete, Inc.

### IN THE DISTRICT COURT OF THE FIFTH JUDICIAL DISTRICT
### OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF CASSIA

| | |
|---|---|
| **McALVAIN CONCRETE, INC.,** an Idaho corporation, | Case No. CV16-21-00486 |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| **EAST VALLEY CATTLE, LLC,** an Idaho limited liability company; **METLIFE REAL ESTATE LENDING LLC,** a Delaware limited liability company; **METROPOLITAN TOWER LIFE INSURANCE COMPANY,** a Nebraska corporation; **RABO AGRIFINANCE LLC,** a Delaware limited liability company; and **RM MECHANICAL, INC.,** an Idaho corporation, | Fee Category:    A. Fee:    $221.00 |
| Defendants. | |

**COMES NOW,** Plaintiff McAlvain Concrete, Inc., by and through its counsel,

McConnell Wagner Sykes & Stacey PLLC, and for a cause of action against Defendants

**COMPLAINT | Page 1**
I:\10831.005\PLD\COMPLAINT-FORECLOSURE.DOCX

East Valley Cattle, LLC, MetLife Real Estate Lending, LLC, Metropolitan Tower Life Insurance Company, RABO Agrifinance LLC, and RM Mechanical, Inc. (collectively, "Defendants"), alleges as follows:

### GENERAL ALLEGATIONS

1.      At all times material hereto, Plaintiff McAlvain Concrete, Inc. ("Plaintiff") was and is an Idaho corporation in good standing, with its principal place of business in the City of Boise, County of Ada, State of Idaho.

2.      At all times material hereto, Plaintiff was and is a contractor registered with the *Bureau of Occupational Licenses* of the State of Idaho, RCE-25213.

3.      Plaintiff is informed and believes, and on that basis alleges, that at all times material hereto Defendant East Valley Cattle, LLC ("EVC") was and is a limited liability company organized and existing under the laws of the State of Idaho, with its principal place of business in the City of Jerome, County of Jerome, State of Idaho.

4.      Plaintiff is informed and believes, and on that basis alleges, that at all times material hereto Defendant MetLife Real Estate Lending LLC ("MetLife") was and is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in the City of Fresno, County of Fresno, State of California.

5.      Plaintiff is informed and believes, and on that basis alleges, that at all times material hereto Defendant Metropolitan Tower Life Insurance Company ("Tower Life") was and is a Nebraska corporation in good standing, with its principal place of business in the City of Tampa, County of Hillsborough, State of Idaho.

6.      Plaintiff is informed and believes, and on that basis alleges, that at all times material hereto Defendant RABO Agrifinance LLC ("RABO") was and is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in the City of Chesterfield, County of St. Louis, State of Missouri, and authorized to do business and doing business in the State of Idaho.

7.      Plaintiff is informed and believes, and on that basis alleges, that at all times material hereto Defendant RM Mechanical, Inc. ("RM") was and is an Idaho corporation in good standing, with its principal place of business in the City of Boise, County of Ada, State of Idaho.

8.      Plaintiff is informed and believes, and on that basis alleges, that Defendants named herein, and each of them, claim or may claim an interest in and to all or a portion of the real property, and improvements thereon, located in the County of Cassia, State of Idaho, which is sometimes identified as *Cassia County Parcel ID No. RP11S27E36001A*, and is more particularly depicted and described in that certain *Claim of Lien* recorded November 24, 2020, as Instrument No. 2020-006030, Records of Cassia County, Idaho ("Lien"), a true and correct copy of which is attached hereto as <u>Exhibit 1</u>.  The foregoing real property, together with all improvements thereon, is hereinafter collectively referred to as the "Property."  Plaintiff alleges that Defendants' claims or titles or interests, or some of them, are inferior to the claim, title or interest of Plaintiff by virtue of the Lien.

9.      Jurisdiction is proper in the Fifth District since this Court has subject matter jurisdiction over this action pursuant to Idaho Code § 1-705 and personal jurisdiction over Defendants pursuant to Idaho Code § 5-514, and venue is proper in the Fifth District under Idaho Code § 5-401 since this action relates to real property situated within the Fifth District.

The amount in controversy, exclusive of interest and costs, exceeds the jurisdictional minimum of this Court.

10.    This lawsuit arises from a commercial transaction [as such term is defined in Idaho Code § 12-120(3)] between Plaintiff and EVC.

## FIRST CAUSE OF ACTION
### (For Breach Of Contract – Against EVC)

11.    Plaintiff repeats and incorporates all preceding paragraphs as if fully set forth herein.

12.    On or about July 13, 2018, Plaintiff entered into that certain *Construction Agreement* ("Contract") with EVC to provide labor, materials and supplies for the concrete work required for the construction of "Milking Parlor II" located at and on the Property ("Project").

13.    Plaintiff supplied labor, materials and equipment, and performed all other construction work in accordance with the terms and provisions of the Contract ("Work").

14.    Plaintiff agreed to perform its Work under the terms of the Contract in exchange for payment by EVC.

15.    Plaintiff fully performed all obligations required of it under the Contract, except as the same may have been waived, excused and/or prevented by the acts of EVC.

16.    EVC breached the Contract by, *inter alia*, failing and refusing to fully pay for the Work furnished by Plaintiff pursuant to the Contract.

17.    As a direct and proximate result of the foregoing breaches of contract, Plaintiff has been damaged in an amount to be proven at trial, but not less than $10,000.00, plus interest thereon at the maximum rate allowed by law.

**COMPLAINT | Page 4**
I:\10831.005\PLD\COMPLAINT-FORECLOSURE.DOCX

18.     At the time the debt was incurred, EVC agreed to pay interest on all past due amounts at the prime rate then in effect (as published by the *Wall Street Journal*), plus four hundred (400) basis points ("Interest Rate"), and Plaintiff is therefore entitled to recover interest on said amounts.

## SECOND CAUSE OF ACTION
### (For *Quantum Meruit* – Against EVC)

19.     Plaintiff repeats and incorporates all preceding paragraphs as if fully set forth herein.

20.     Plaintiff performed the Work for EVC upon EVC's request and promise to pay the reasonable value thereof.

21.     Plaintiff is entitled to the reasonable value of the Work it performed at EVC's request for which payment has not been received.

22.     Plaintiff is entitled to recover from EVC a sum of no less than $10,000.00, plus interest thereon at the agreed to Interest Rate.

## THIRD CAUSE OF ACTION
### (For Unjust Enrichment – Against EVC)

23.     Plaintiff repeats and incorporates all preceding paragraphs as if fully set forth herein.

24.     The Work performed by Plaintiff has been incorporated within improvements to the Property and EVC has thereby been unjustly enriched at the expense of, and to the detriment of Plaintiff.

25.     EVC has been unjustly enriched in the sum of no less than $10,000.00, plus interest thereon at the agreed to Interest Rate, and Plaintiff is entitled to recover such sums from EVC.

## FOURTH CAUSE OF ACTION
### (For Lien Foreclosure – Against Defendants)

26.     Plaintiff repeats and incorporates all preceding paragraphs as if fully set forth herein.

27.     The Lien recorded by Plaintiff against the Property is in the amount of $511,811.21, plus interest thereon at the agreed to Interest Rate.  *See* Exhibit 1.

28.     The Work was furnished and installed in and about the Property.

29.     The whole of the Property is required for the convenient use and occupancy of the Project.

30.     At or about the time Plaintiff recorded the Lien, it provided a copy of the Lien to EVC ("Lien Notice").

31.     The Lien Notice put EVC on notice of Plaintiff's interest in the Property.

32.     Plaintiff is entitled to judgment foreclosing its Lien and adjudicating its Lien to be superior to and prior in right to the interest claimed by Defendants, and each of them.

## ATTORNEYS' FEES AND COSTS

Plaintiff has been required to retain the services of an attorney to bring this suit and is entitled to recover its costs and reasonable attorneys' fees in the sum of not less than $5,000.00 if judgment is entered by default, and such other and further amounts as the Court may find reasonable if this matter is contested pursuant to, *inter alia*, the Contract, Idaho Code §§ 12-120, 12-121 and 45-513, and Rule 54(e) of the Idaho Rules of Civil Procedure.

**COMPLAINT | Page 6**
I:\10831.005\PLD\COMPLAINT-FORECLOSURE.DOCX

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays for judgment against Defendants, and each of them, as follows:

A.      As to the First, Second and Third Causes of Action, the entry of judgment in favor of Plaintiff and against EVC as follows:

(1)      The principal balance outstanding, but an amount of not less than $10,000.00, together with interest thereon at the agreed to Interest Rate;

(2)      Attorneys' fees and costs in the sum of not less than $5,000.00 if judgment is entered by default, and such further amounts as the Court may find reasonable if this matter is contested; and

(3)      For such other and further relief as this Court deems just and proper.

B.      As to the Fourth Cause of Action, the entry of judgment in favor of Plaintiff and against Defendants, and each of them, as follows:

(1)      Adjudicating the amount and priority date of Plaintiff's Lien;

(2)      Foreclosing Plaintiff's Lien;

(3)      Declaring that Defendants and all persons claiming or to claim an interest in the Property, or any part thereof, be barred and foreclosed of all right, title, interest, or claim in and to the Property;

(4)      Ordering the sale of all of the Property according to law and directing the proceeds of sale to be applied to the amount due to Plaintiff;

(5)     For attorneys' fees and costs in the sum of not less than $5,000.00 if judgment is entered by default, and such further amounts as the Court may find reasonable if this matter is contested; and

(6)     For such other and further relief as the Court deems just and proper.

**DATED:** May 24, 2021.

**McCONNELL WAGNER SYKES & STACEY PLLC**

_____ /s/ *Arnold L. Wagner* _____

By:     Arnold L. Wagner, Attorneys For Plaintiff
         McAlvain Concrete, Inc.

CASSIA COUNTY
RECORDED FOR:
MCCONNELL WAGNER SYKES & STA
03:43:27 PM  11-24-2020
**2020-006030**
NO. PAGES: 5     FEE: $15.00
**JOSEPH W. LARSEN
COUNTY CLERK
DEPUTY: CVELASQUEZ**
Electronically Recorded by Simplifile

<u>**AFTER RECORDING, RETURN TO:**</u>

McAlvain Concrete, Inc.
c/o Arnold L. Wagner, Esq.
McConnell Wagner Sykes & Stacey, PLLC
827 East Park Boulevard, Suite 201
Boise, Idaho 83712

## CLAIM OF LIEN

**TAKE NOTICE** that **McAlvain Concrete, Inc.,** an Idaho corporation ("Claimant"), claims a lien against the real property described hereinbelow for services, materials and equipment furnished in the improvement of said real property.

The materials and/or equipment were furnished to or at the request of **East Valley Cattle, LLC,** an Idaho limited liability company, and include, but are not limited to, labor, materials and equipment necessary to pour concrete and to perform all other associated construction work. The labor Claimant performed and the materials, supplies and equipment Claimant furnished were incorporated into a structure commonly referred to as "Milking Parlor II" ("Project") located in and around the City of Declo, County of Cassia, State of Idaho. The real property is further identified as *Cassia County Parcel ID No. RP11S27E36001A* ("Parcel No. RP11S27E36001A"). An aerial photograph showing the location of the Project is attached hereto as <u>**Exhibit A**</u>. Attached as <u>**Exhibit B**</u> is a copy of a document entitled "Cassia County Property Information Access" for Parcel No. RP11S27E36001A—the real property on which the Project is located.

The name and address of the owner(s) or reputed owner(s) of the foregoing real property is/are:

**East Valley Cattle, LLC**
**c/o William J. Millenkamp | Registered Agent**
**471 North 300 West**
**Jerome, Idaho 83338**

A copy of this Claim of Lien has been or will be sent no later than five (5) business days following the recording of this Claim of Lien to said owner(s) or reputed owner(s) by certified mail, return receipt requested, postage prepaid.

# EXHIBIT 1

The amount unpaid to Claimant, after deducting all just credits and offsets for which this Claim of Lien is claimed, is **$511,811.21**, plus interest, costs and attorneys' fees thereon.

**BEING FIRST DULY SWORN ON OATH,** the undersigned hereby affirms that the undersigned is knowledgeable of the matters stated herein and verily believes the same to be true and just.

**DATED:** November 24, 2020.

**CLAIMANT:**

**MCALVAIN CONCRETE, INC.,**
an Idaho corporation

By:     Torry McAlvain, Jr., Secretary

**VERIFICATION**

STATE OF IDAHO      )
                    ) ss.
COUNTY OF ADA       )

I, ___Kirk Davenport___, a Notary Public in and for said State, do hereby certify that on November 24, 2020, personally appeared before me Torry McAlvain, Jr., who, being by me first duly sworn, declared that he is the Secretary of McAlvain Concrete, Inc., that he signed the foregoing document as the Secretary of McAlvain Concrete, Inc., and that the statements therein contained are true.

S
E
A
L

NOTARY PUBLIC, State of Idaho
My Commission Expires: _10-1-2026_



**EXHIBIT A**

# Cassia County Property Information Access

Parcel ID Number: **RP11S27E360001A**

| Owner Information | Legal Description |
|---|---|
| EAST VALLEY CATTLE LLC<br>471 NORTH 300 WEST<br>JEROME ID 83338 | Tax Code: 170000   Zip: 83342<br><br>ALL LESS T 13103<br>S 36 T 11 R 27 |

| Category Information | | | |
|---|---|---|---|
| Category | Quantity | Unit | Value |
| 1 - IRRGTD AG | 582.740 | AC | 362464 |
| 5 - DRY GRAZING | 30.000 | AC | 1320 |
| 19 - WASTE | 3.050 | AC | 0 |

| Property Information | Tax Information |
|---|---|
| | Tax Year: **2019**<br>Bill #: 13354<br>Market: 346242<br>C.B.: 0.00<br>H.O.: 0<br>Special: 0.00<br>Tax: 3019.34<br><br>**First Half:**<br>Cost:  0.00<br>Interest:  0.00<br>Penalty:  0.00<br>Paid: 1509.67<br>Cancelled:  0.00<br><br>**Second Half:**<br>Cost:  0.00<br>Interest:  0.00<br>Penalty:  0.00<br>Paid: 1509.67<br>Cancelled:  0.00 |
| **800  SO 2750 EAST**<br><br>No Property Information Found | |

| Tax Payment History | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Year/Type | Date | Half | Batch/Tran# | Tax | Penalty | Interest | Total | Remark | Payor | User | PUP |
| 2019 Payment | 12-16-2019 | 1 | 1216190 - 39 | 1509.67 | 0.00 | 0.00 | 1509.67 | CK 36014 | MILLENKAMP CATTLE INC | LGREENER | |
| 2019 Payment | 06-22-2020 | 2 | 6230 - 6 | 1509.67 | 0.00 | 0.00 | 1509.67 | CK 38139 | MILLENKAMP CATTLE INC. | SBEDKE | |

# EXHIBIT B

**2020-006030**

11/24/2020

Cassia County Property Information Access                                                    Page 2 of 2

**Additional Property Sheets:**
(none)

**Deed Reference Numbers:**  306861 WD    227617    219690    219017        Last Change Date:  02-23-2006

**Related Parcel Numbers:**
(none)

**Parcel Comments:**
SPLIT FROM #> RP11S27E360000A;

**Ownership History:**
2019 EAST VALLEY CATTLE LLC

**Scanned Worksheets:**
(none)

Calculate taxes due- Interest as of date: [          ] (do not use hyphens, enter as mmddyyyy) [ Calculate ]

*Use the browser BACK button to return to search results.*

Begin New Parcel Search

©2006 Developed by Stephenson Computer Consulting, Inc.

Electronically Filed
9/9/2021 2:34 PM
Fifth Judicial District, Cassia County
Joseph W. Larsen, Clerk of the Court
By: Noemi Alanis, Deputy Clerk

Thomas E. Dvorak (ISB # 5043)
Donald Z. Gray  (ISB # 10070)
GIVENS PURSLEY LLP
601 West Bannock Street
Post Office Box 2720
Boise, Idaho  83701-2720
Telephone:  208-388-1200
Facsimile:  208-388-1300
tedservice@givenspursley.com
dongray@givenspursley.com
15812882_1.doc  (11054-184)

Attorneys for East Valley Cattle, LLC
        and Millenkamp Cattle, Inc.

IN THE DISTRICT COURT OF THE FIFTH JUDICIAL DISTRICT FOR THE

STATE OF IDAHO, IN AND FOR THE COUNTY OF CASSIA

| | |
|---|---|
| McALVAIN CONCRETE, INC., an Idaho corporation,<br><br>        Plaintiff,<br><br>   v.<br><br>EAST VALLEY CATTLE, LLC, an Idaho limited liability company; METLIFE REAL ESTATE LENDING LLC, a Delaware limited liability company; METROPOLITAN TOWER LIFE INSURANCE COMPANY, a Nebraska corporation; RABO AGRIFINANCE LLC, a Delaware limited liability company; and RM MECHANICAL, INC., an Idaho corporation,<br><br>        Defendants. | Case No. CV16-21-00486<br><br><br>**MILLENKAMP CATTLE INC.'S ANSWER AND COUNTERCLAIM TO RM MECHANICAL'S THIRD-PARTY COMPLAINT** |
| EAST VALLEY CATTLE, LLC, an Idaho limited liability company,<br><br>        Counterclaimant,<br><br>   v.<br><br>McALVAIN CONCRETE, INC., an Idaho corporation,<br><br>        Counterdefendant. | |

EAST VALLEY CATTLE, LLC, an Idaho limited
liability company,

                        Third Party Plaintiff,

      v.

McALVAIN COMPANIES, INC., an Idaho
corporation,

                        Third Party Defendant.

METLIFE REAL ESTATE LENDING, LLC, a
Delaware limited liability company,

                        Counterclaimant/
                        Cross-Claimant,

v.

McALVAIN CONCRETE, INC., an Idaho
corporation; METROPOLITAN TOWER LIFE
INSURANCE COMPANY, a Nebraska corporation;
RABO AGRIFINANCE LLC, a Delaware limited
liability company; and RM MECHANICAL, INC., an
Idaho corporation,

                        Counterdefendants and Cross-
                        Defendants

RM MECHANICAL, INC., an Idaho corporation,

                        Cross-Claimant,

v.

EAST VALLEY CATTLE, LLC, an Idaho limited
liability company; METLIFE REAL ESTATE
LENDING LLC, a Delaware limited liability
company; METROPOLITAN TOWER LIFE
INSURANCE COMPANY, a Nebraska corporation;
and RABO AGRIFINANCE LLC, a Delaware limited
liability company,

                        Cross-Defendants.

RM MECHANICAL, INC., an Idaho corporation,

                Third-Party Plaintiff,

v.

MILLENKAMP CATTLE, LLC, an Idaho limited
liability company; BLACK EAGLE
CONSTRUCTION, LLC, an Idaho limited liability
company; HARRIS REBAR ABCO, INC., a
Delaware corporation; BRUNDAGE-BONE
CONCRETE PUMPING, INC., a Colorado
corporation,

                Third-Party Defendants.

MILLENKAMP CATTLE, INC., an Idaho
corporation,

                Counterclaimant,

v.

RM MECHANICAL, INC., an Idaho corporation,

                Counterdefendant.

COMES NOW, Third-Party Defendant Millenkamp Cattle, Inc. ("Millenkamp"), by and

through its attorneys of record, Givens Pursley LLP, and for answer to the Third-Party Complaint

of RM Mechanical, Inc. ("RM") admits, denies and otherwise answers as follows:

### FIRST DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

### SECOND DEFENSE

Each and every allegation not specifically admitted herein is hereby denied.

### THIRD DEFENSE

1.      The following paragraphs are admitted: 1, 11, 13, 14, 15, 19, and 47.

2.      The following paragraphs pertain to other cross-defendants or to third-party defendants.  As a result, Millenkamp  is without knowledge of the truth or falsity of the allegations contained within the following paragraphs of the Complaint, and therefore denies the same:  3, 4, 5, 6, 7, 8, and 9.

3.      In response to the following paragraphs, Millenkamp states that these paragraphs simply repeat by reference and restate allegations found elsewhere in the Complaint, and therefore in response thereto, Millenkamp simply restates and incorporates by reference its responses in this Answer to those same paragraphs: 12, 25, 31, 37, 40, and 44.

4.      In response to the following paragraphs, these paragraphs are denied:  17, 18, 20, 21, 22, 24, 26, 27, 28, 29, 30, 32, 34, 35, 36, 38, 39, 41, 42, 43, 46, 49, 50, and 51.

5.      In response to paragraph 2, Millenkamp admits only that its principal place of business is in Jerome, Idaho.  Millenkamp denies that it is a limited liability company.

6.      In response to paragraph 10, Millenkamp admits only that EVC is the owner of Parcel No. RP11S27E350002 and that an alleged Claim of Lien was recorded at the Cassia County Recorder's Office on February 16, 2021, as Instrument No. 2021-000970.  The remainder of the allegations in this paragraph are denied.

7.      In response to paragraph 16, Millenkamp admits only that it had authority and control over the Property and the Project.  The remainder of the allegations in this paragraph are denied.

8.      In response to paragraph 23, Millenkamp admits only that an alleged Claim of Lien was recorded at the Cassia County Recorder's Office on February 16, 2021, as Instrument No. 2021-000970.  The remainder of the allegations in this paragraph are denied.

9.      In response to paragraph 33, Millenkamp admits only that William J. Millenkamp is an agent with authority to act on behalf of Millenkamp.  The remainder of the allegations in

this paragraph pertain to other cross-defendants or to third-party defendants.  As a result, Millenkamp is without knowledge of the truth or falsity of the allegations contained therein, and therefore denies the same.

10.      In response to paragraph 45, Millenkamp admits only that an alleged Claim of Lien was recorded at the Cassia County Recorder's Office on February 16, 2021, as Instrument No. 2021-000970.  The remainder of the allegations in this paragraph are denied.

11.      In response to paragraph 48, Millenkamp admits only that an alleged Claim of Lien was recorded at the Cassia County Recorder's Office on February 16, 2021, as Instrument No. 2021-000970.  The remainder of the allegations in this paragraph are denied.

## FIRST AFFIRMATIVE DEFENSE

### Failure to Mitigate Damages

RM's causes of action are barred in whole or in part because RM failed to take reasonable steps to mitigate its alleged damages.

## SECOND AFFIRMATIVE DEFENSE

### Prior Material Breach

RM's causes of action are barred in whole or in part because of RM's prior material breach of the contract in question.

## THIRD AFFIRMATIVE DEFENSE

### Unclean Hands

RM's causes of action are barred in whole or in part because RM has unclean hands.

## FOURTH AFFIRMATIVE DEFENSE

### Conditions Precedent

RM's causes of action are barred in whole or in part because RM failed to fulfill

conditions precedent under the applicable agreement by failing to perform the agreed-upon work

under the agreement free from defects.

## FIFTH AFFIRMATIVE DEFENSE

### Waiver and Estoppel

RM's causes of action are barred by the application of the doctrines of waiver and

estoppel.

## ATTORNEYS' FEES

Third-Party Defendant Millenkamp is entitled to an award of its costs and attorneys' fees

incurred in defending this action in such amount as this Court may deem appropriate in the

premises.  The basis for such award may include, without limitation, the contract between the

parties, Idaho Code Sections 12-120 and 12-121 and Rule 54 of the Idaho Rules of Civil

Procedure.

## COUNTERCLAIM

COMES NOW, Counterclaimant, Millenkamp Cattle, Inc. ("Millenkamp"), by and

through its attorneys of record, Givens Pursley LLP, and for a cause of action against RM

Mechanical, Inc. ("RM"), pleads, alleges and complains as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      Millenkamp is an Idaho corporation with its principal place of business in Jerome,

Idaho.

2.      RM is an Idaho corporation with its principal place of business in Boise, Idaho.

3.      Jurisdiction and venue are proper pursuant to Idaho Code sections 5-514, 5-404, 1-701, and 1-705.

## GENERAL ALLEGATIONS

4.      East Valley Cattle LLC ("EVC") and Millenkamp both operate in the cattle and dairy industries.

5.      RM is in the business of performing plumbing, utility piping, and heating, ventilation, and air conditioning ("HVAC") work in the construction industry.

6.      EVC desired to construct a dairy facility in Malta, Idaho, on property it owned. Millenkamp acted as the operator for the project and represented EVC's interests in the construction of the facility.

7.      Millenkamp retained RM to perform certain design, plumbing, utility piping, and HVAC work within the facility.

8.      Millenkamp and RM memorialized the terms of the agreement for RM to provide design, plumbing, utility piping, and HVAC work for the construction project ("Work") in that certain June 28, 2018, Master Services Agreement ("RM MSA").

9.      Consistent with the provisions of the RM MSA, Millenkamp and RM implemented two task orders:  Task Order 2018-RM-01, dated July 18, 2018, and Task Order 2018-RM-2018, dated October 12, 2018.   The two task orders and the Master Services Agreement constitute the agreement between the parties and will hereinafter be referred to collectively as the "RM Agreement".

10.      Pursuant to the RM Agreement, RM agreed to perform its Work in accordance with industry standards, customs, and applicable drawings and specifications (collectively, the "Specifications").  Specifically, paragraph 4.16 of the RM Agreement provides:

> Contractor warrants to Owner that all Work will (a) be of good
> quality and new unless the contract Documents require or permit

otherwise; (b) conform in all material respects with the Contract Documents, (c) be free from any defect (except defects inherent in the quality of the Work), . . .

11.     Paragraph 6.2.4 of the Agreement between Millenkamp and RM provides:

Owner may withhold any payment of any amounts otherwise due to Contractor only to the extent reasonably necessary in Owner's opinion to protect Owner from loss for which Contractor is responsible, including, but not limited to (a) defective Work not remedied; . . .

12.     RM failed to perform its Work free from defects.

13.     Prior to June 18, 2020, a major defect relating to Work performed by RM on the construction project was discovered.  Notice of this defect was provided to RM consistent with the provisions of the Agreement between the parties on or about June 18, 2020.

14.     Despite attempts by the parties, they were unable to resolve the issues surrounding the defects in RM's Work that was performed under the Agreement between the parties.

15.     On or about February 8, 2021, Millenkamp provided seven days' notice of termination and a demand for repairs under the RM Agreement as a result of RM's failure to address its defective Work.

16.     RM never resolved, repaired, or remediated the issues created by its defective Work under the RM Agreement.

### COUNT I
### Breach of Contract

17.     Millenkamp realleges and incorporates by reference all previous allegations.

18.     Millenkamp has performed all obligations required of it under the RM Agreement, except as the same have been waived, excused, and/or prevented by the acts or omissions of RM.

19.     RM has failed to perform its obligations under the RM Agreement, constituting a breach of the RM Agreement.

20.     As a direct and proximate result of said breaches, Millenkamp has been damaged in an amount to be determined at trial, but not less than $10,000.00.

21.     Millenkamp requests and is entitled to a judgment and corresponding order against RM for damages, to be assessed jointly and severally, resulting from their breach of the RM Agreement.

## ATTORNEYS' FEES AND COSTS

Millenkamp has been required to obtain the services of Givens Pursley LLP to prosecute this matter. Millenkamp has incurred, and will continue to incur, attorneys' fees and costs in connection with this lawsuit.  Pursuant to the terms of the Agreement, Idaho Code sections 12-120(3) and 12-121, Idaho Rule of Civil Procedure 54, and any other Idaho law, Millenkamp is entitled to its reasonable attorneys' fees and costs in the amount of $10,000 in the event of a judgment by default or in such other and further amount as this Court may deem appropriate at the appropriate time in these proceedings.

## PRAYER FOR RELIEF

WHEREFORE, Millenkamp prays for judgment in its favor and against RM as follows:

1.     That RM's third-party complaint against Millenkamp be dismissed with prejudice and that RM takes nothing thereby;

2.     For judgment in favor of Millenkamp and against RM on all counts of the Third-Party Complaint filed in this matter;

3.     For judgment in favor of Millenkamp and against RM on all counts of this Counterclaim;

4.     That Millenkamp be awarded its reasonable attorneys' fees and costs; and

5. For such other and further relief as this Court deems just and proper.

DATED this 9th day of September, 2021.

GIVENS PURSLEY LLP

*/s/ Donald Z. Gray*

Thomas E. Dvorak
Donald Z. Gray
Attorneys for East Valley Cattle, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of September, 2021, I caused to be served a true and correct copy of the foregoing by the method indicated below, and addressed to the following:

| | |
|---|---|
| Arnold L. Wagner<br>Joseph M. Wager<br>McConnell Wagner Sykes & Stacey PLLC<br>827 East Park Boulevard, Suite 201<br>Boise, ID 83712<br>*Counsel for McAlvain Concrete* | ☐ Hand Delivery<br>☐ Facsimile (208) 489-0110<br>☐ Overnight Courier<br>☐ U.S. Mail<br>☒ iCourts Email:<br>   wagner@mwsslawyers.com<br>   wager@mwsslawyers.com |
| Ron Kerl<br>Cooper & Larsen<br>151 N. 3rd Ave., 2nd Floor<br>Pocatello, ID 83201<br>*Counsel for RABO Agrifinance LLC* | ☐ Hand Delivery<br>☐ Facsimile (208) 235-1182<br>☐ Overnight Courier<br>☐ U.S. Mail<br>☒ iCourts Email:<br>   ron@cooper-larsen.com |
| Albert P. Barker<br>Scott A. Magnuson<br>Barker Rosholt & Simpson LLP<br>1010 W. Jefferson St., Ste. 102<br>Boise, ID 83701<br>*Counsel for RM Mechanical, Inc.* | ☐ Hand Delivery<br>☐ Facsimile (208) 344-6034<br>☐ Overnight Courier<br>☐ U.S. Mail<br>☒ iCourts Email:<br>   apb@idahowaters.com<br>   sam@idahowaters.com |
| Tamara L. Boeck<br>Andrea Carone<br>Stoel Rives LLP<br>101 S. Capitol Blvd., Ste.<br>Boise, ID 83702<br>*Counsel for Metropolitan Tower Life* | ☐ Hand Delivery<br>☐ Facsimile (208) 389-9040<br>☐ Overnight Courier<br>☐ U.S. Mail<br>☒ iCourts Email:<br>   tami.boeck@stoel.com<br>   andrea.carone@stoel.com |
| Jason R. Mau<br>Serena Buchert<br>Parsons Behle & Latimer<br>800 W. Main Street, Suite 1300<br>Boise, ID 83702<br>*Counsel for MetLife Real Estate Lending* | ☐ Hand Delivery<br>☐ Facsimile (208) 562-4901<br>☐ Overnight Courier<br>☐ U.S. Mail<br>☒ iCourts Email:<br>   jmau@parsonsbehle.com<br>   sbuchert@parsonsbehle.com |

Matthew K. Taylor                              ☐ Hand Delivery
Christian S. Martineau                         ☐ Facsimile
Taylor Law Offices, PLLC                       ☐ Overnight Courier
1112 W. Main Street, Ste. 101                  ☐ U.S. Mail
Boise, ID  83702                               ☒ iCourts Email:
Counsel for Harris Rebar ABCO, Inc.                    matthew@taylorlawoffices.com
                                                       christian@taylorlawoffices.com


Jonathan D. Hally                              ☐ Hand Delivery
Blewett Mushlitz Hally, LLP                    ☐ Facsimile  (208) 413-6682
710 16ᵗʰ Aveneu                                ☐ Overnight Courier
P.O. Box 1990                                  ☐ U.S. Mail
Lewiston, ID  83501                            ☒ iCourts Email:
*Counsel for Brundage-Bone Concrete*                   jonhally@idahoconstructionawyers.com


                    */s/ Donald Z. Gray*
                    Donald Z. Gray

## ESTIMATED REMAINING LITIGATION BUDGET - TRIAL

### Re: McAlvain Concrete, Inc. v. East Valley Cattle, LLC et. al

| | **Partner**<br>Hours x 450<br>Rate = Total | **Associate**<br>Hours x 320<br>Rate = Total | **Paralegal/ Summer Associate**<br>Hours x 185<br>Rate = Total | **Expenses** | **Total Cost** |
|---|---|---|---|---|---|
| Prepare case for trial, reindentify exhibits, create exhibits for court, create witness outlines | 15 | 40 | 20 | $   10,000.00 | $    33,250.00 |
| Miscellaneous legal research (as needed) | | 15 | 5 | | $     5,725.00 |
| Expert testimony (reengaging experts, trial prep & testimony) and amount for Expert Fees | 10 | 20 | 5 | $   45,000.00 | $    56,825.00 |
| Pretrial motions (research, draft, revise) | 8 | 16 | | | $     8,720.00 |
| Prepare for and engage in trial (8 days) | 80 | 110 | 60 | | $    82,300.00 |
| Miscellaneous costs, unanticipated lawyer time. | 5 | 15 | 10 | $    5,000.00 | $    13,900.00 |
| **Total** | 118 | 216 | 100 | $   60,000.00 | $   200,720.00 |

Note: the above is simply a best estimated projection.  This is not a "not to exceed" or guarantee.