UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| In re:<br><br>MILLENKAMP CATTLE, INC.,<br><br>Debtor. | Case No. 24-40158-NGH |
| Filing relates to:<br><br>☒ ALL DEBTORS<br>☐ Millenkamp Cattle, Inc.<br>☐ Idaho Jersey Girls<br>☐ East Valley Cattle<br>☐ Millenkamp Properties<br>☐ Millenkamp Properties II<br>☐ Millenkamp Family<br>☐ Goose Ranch<br>☐ Black Pine Cattle<br>☐ Millenkamp Enterprises<br>☐ Idaho Jersey Girls Jerome Dairy | Jointly Administered With Case Nos.:<br><br>24-40159-NGH (Idaho Jersey Girls)<br>24-40160-NGH (East Valley Cattle)<br>24-40161-NGH (Millenkamp Properties)<br>24-40162-NGH (Millenkamp Properties II)<br>24-40163-NGH (Millenkamp Family)<br>24-40164-NGH (Goose Ranch)<br>24-40166-NGH (Black Pine Cattle)<br>24-40167-NGH (Millenkamp Enterprises)<br>24-40165-NGH (Idaho Jersey Girls Jerome Dairy)<br><br>Chapter 11 Cases |

**INTERIM ORDER GRANTING DEBTORS' SECOND MOTION
FOR CONTINUED USE OF CASH COLLATERAL**

THIS MATTER came before the court for a hearing on Debtors' *Second Motion for Continued Use of Cash Collateral* (Docket No. 464 - the "Second Cash Collateral Motion") held on July 18, 2024; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the matter being a core proceeding within the meaning of 28 U.S.C. § 157; and

#4049413

venue of this proceeding and the Motion in this District being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and due and sufficient notice of the Motion having been given under the particular circumstances; and it appearing that no other or further notice is necessary; and it appearing that the relief requested in the Motion is in the best interests of the Debtor, its estate, its creditors; and other parties-in-interest; and after due deliberation thereon; and good and sufficient cause appearing therefor; it is hereby:

**ORDERED** that:

1. The Motion is granted as set forth herein.

2. The Debtors are authorized use of cash collateral effective through October 3, 2024, as follows:

    a. The Debtors are granted use of cash collateral through October 3, 2024, for payment of the expenses outlined on the budget attached here as ***Exhibit A*** (the "Budget"). By approving the Budget, the Court is not approving specific Debtor-in-Possession financings or borrowings. Notwithstanding anything in the Budget to the contrary, any financings or borrowings (including the extent of draws on the Debtor-in-Possession financing) is subject to the Court's orders Authorizing the Debtors to (A) Obtain Post-Petition Financing and (B) Granting Adequate Protection to Pre-Petition Secured Lenders, or other further order of the Court. Within a reasonable time in advance of filing any motion seeking to draw any Debtor-in-Possession financing, Kander LLC will confer with other Financial Advisors (defined below) to discuss such draw requests and uses in an effort to avoid unnecessary litigation.

    b. Rabo AgriFinance, LLC ("RAF"); Metropolitan Life Insurance Company ("MLIC") and MetLife Real Estate Lending LLC (collectively, "MetLife"); and

  Conterra Holdings, LLC, d/b/a Conterra Ag Capital ("Conterra") (collectively, the "Pre-Petition Secured Lenders") shall be granted and shall maintain (without further action by any of RAF, MetLife or Conterra) adequate protection liens on: (a) all post-petition cash collateral to the same validity, extent and priority as existed pre-petition, to the extent of any cash collateral the secured creditor has an interest in and is actually used by the Debtors and, for the avoidance of doubt (b) all Prepetition RLOC Collateral and Prepetition MetLife Collateral (as defined in the First Cash Collateral Motion), including milk proceeds, to the extent the secured creditor has a pre-petition security interest, and it is actually used by the Debtors; provided, however, that such replacement liens shall not attach to any proceeds of any avoidance actions and are subordinate, in all respects, to the DIP Liens in the DIP Collateral including, but not limited to, cash collateral under the terms of the Bankruptcy Court's Final Order Authorizing the Debtors to (A) Obtain Post-Petition Financing; and (B) Granting Adequate Protection to Pre-Petition Secured Lenders (Docket No. 305).

 c. Sandton Capital Solutions Master Fund VI, LP (the "DIP Lender") is granted and shall maintain (without further action by the DIP Lender) adequate protection liens on all post-petition cash collateral to the same validity, extent and priority as was granted in this Court's Final Order Authorizing Debtors to (A) Obtain Post-Petition Financing; and (B) Granting Adequate Protection to Pre-Petition Secured Lenders (Docket No. 305).

3. The Debtors use of cash collateral is further conditioned upon the following:

a. The Debtors shall provide weekly variance reports to the Pre-Petition Secured Lenders, DIP Lender and Unsecured Creditor's Committee (the "Committee") (i.e., reports reflecting the difference between the budgeted amount of revenue and expenses and the actual amounts) in the same format as the Budget (the "Variance Reports"). The Pre-Petition Secured Lenders may make reasonable requests for additional terms or details regarding the Variance Reports provided by the Debtors. Said Variance Reports shall be due and continuing on Wednesdays of each week, until termination of this Order.

b. The Debtors shall also provide a weekly borrowing base certificate to RAF beginning on April 17, 2024, and computed as of the preceding Sunday of each such week. Each borrowing base certificate shall be in the form used for borrowing base certificates pre-petition (or such other form as the Debtors and RAF may establish by mutual agreement), and shall quantify the Debtors' then-current herd count and value, accounts receivable and milk accounts, utilizing the valuation principles and advance rates applicable to such assets in a manner consistent with the preparation of borrowing base certificates pursuant to the Pre-Petition RLOC Credit Agreement. Debtors may add new cattle (whether raised or purchased by Debtors in accordance with past and normal business practices) to the borrowing base. A copy of this borrowing base certificate shall also be provided to Conterra, MetLife, the DIP Lender, and the Committee.

c. The Debtors shall provide on a weekly basis beginning April 17, 2024, to the Pre-Petition Secured Lenders, the DIP Lender and the Committee any production or sales reports prepared by or on behalf of the Debtors' product off-takers.

    d. Forbes Partners ("Forbes") is subject to the following reporting requirements until further order of the Court:

        i. Forbes shall provide a weekly email to the financial advisors for each of the Pre-Petition Secured Lenders, the Committee, and the Debtors, which email report shall include (for the prior week time period) (a) the number of new parties to whom a CIM was provided; (b) the number of new parties that have accessed the Forbes data room; (c) the number of new parties that were engaged in initial meetings with Forbes; and (d) the number of parties that remain actively negotiating with Forbes and/or the Debtors.

        ii. To the extent any term sheets or letters of intent (or equivalent documents no matter the label) are provided by potential counter-parties in response to a Process Letter sent by Forbes, the Debtors shall provide a copy of said term sheets or letters of intent to any Financial Advisor for any of the Pre-Petition Secured Lenders and the Committee within 48 hours of receipt. The names and any identifying information in those term sheets or letters of intent shall be redacted by the Debtors prior to providing, and the Financial Advisors are not authorized to provide copies of the term sheets or letters of intent to any other party absent further order of the Court.

    e. Forbes will supplement current reporting duties by participating in a weekly virtual meeting with the Financial Advisors (as defined below) to answer questions about the current weekly report. Forbes shall schedule a single call that the Financial Advisors may join. Forbes will provide non-confidential information reasonably requested by the Financial Advisors within a reasonable period of

time. The weekly meetings will include, but not be limited to, updates (on a Professional Eye's Only basis, as described below) on the status of each potential investor as set forth below:

    i. <u>Number of New Parties to whom CIM was provided</u>: The identity of investors in this category will <u>*not*</u> be discussed during the Forbes weekly virtual meeting.

    ii. <u>Number of new parties that were engaged in initial meetings with Forbes</u>: The identity of investors in this category will <u>*not*</u> be discussed during the Forbes weekly virtual meeting.

    iii. <u>Number of new parties that have accessed the Forbes data room</u>: The identity of investors in this category <u>*will*</u> be discussed during the Forbes weekly virtual meeting on a Professional Eye's Only basis.

    iv. <u>Number of parties that remain actively negotiating with Forbes and/or the Debtors</u>: The identity of investors in this category <u>*will*</u> be discussed during the Forbes weekly virtual meeting on a Professional Eye's Only basis, and may include, among others, the parties identified in Exhibit 1025 that was disclosed and publicly filed with the Bankruptcy Court.

    v. <u>Professional Eye's Only</u>. The term "Professional Eye's Only" shall refer only to employees, officers or directors of FTI Consulting, Focus Management Group, Kander LLC, Armory Securities, LLC, and Conterra's financial advisor (once designated) and shall exclude any attorneys or other professionals for the interested parties except counsel for the Committee (the "Financial Advisors"). Any information provided

     by Forbes to the Financial Advisors shall not be disclosed to any other party, including lenders, creditors or other parties (including counsel for those parties), unless expressly authorized by the Debtors in writing. Prior to participating in any meetings with Forbes, each of the Financial Advisors shall acknowledge in writing their understanding of, and agreement to adhere to, these restrictions.

  f. To the extent information is provided by the Debtors or Forbes to any of the Pre-Petition Secured Lenders that is not otherwise covered by paragraphs 3(a) through (e) above, that information shall be provided to all of the Pre-Petition Secured Lenders or their financial advisors. (This provision is not meant to otherwise limit meetings or conversations between attorneys or financial advisors for the parties, or the parties themselves.)

  g. <u>Term Sheets</u>. The Debtors will provide the Financial Advisors a copy of any term sheet, letter of intent (or similar equivalent document no matter the label) that the Debtors receive, whether or not through the Forbes' process. Names and any identifying information in these term sheets shall be redacted by the Debtors prior to providing, and the Financial Advisors are not authorized to provide copies of the term sheets to any other party absent further order of the Court.

  4. <u>Additional Financial Disclosures</u>. The Debtors shall provide the Pre-Petition Secured Lenders, the DIP Lender, and the Committee the following additional financial disclosures on or before the dates indicated:

    a. Completion of January through April 2024 CPA-prepared financial statements on or before July 31, 2024 with the May 2024 statements to be provided on or before August 15, 2024;

    b. Completion by Kander of a 'Financial Strength Monitor' reporting within 15 days after receipt of the above referenced CPA-prepared financial statements; and

    c. Completion of the Debtors' 2023 audit report by September 30, 2024.

5. <u>Information Access</u>. Upon reasonable request of the Pre-petition Secured Lenders, the DIP Lender or the Committee, Debtors will provide access to appraisals of all assets and contracts/agreements tied to the budget/forecast.

6. Upon notice to this Court and this Court's entry of a suitable order, RAF or Conterra may withdraw its consent to the Debtors' use of the Prepetition RLOC Secured Parties' cash collateral in the event Debtors fail to pay, within forty-five (45) days after the applicable invoice date, one or more accounts payable in an amount not less than $100,000 in each instance or $500,000 in the aggregate during the Chapter 11 Cases, to any one or more trade creditors in respect of any of Debtors' obligations arising on or after the Petition Date.  To facilitate monitoring of this issue, the Debtors shall provide, as part of its weekly reporting to the Pre-Petition Secured Lenders, a weekly accounts payable aging report as of the Sunday prior to each report.

7. The Debtors will operate in compliance with the U.S. Trustee's Guidelines unless otherwise approved or directed by this Court.

8. Nothing in this Order will be deemed or construed as an admission or waiver by the Pre-Petition Secured Lenders as to adequate protection, or any other issue in the case, and this Order will not constitute consent by Pre-Petition Secured Lenders to the use of each of their cash collateral other than for the limited purpose expressly provided herein.

9. Nothing herein alters or affects the valid liens and lien priority of the Pre-Petition Secured Lenders.

10. A further continued hearing shall be held on the Second Cash Collateral Motion on October 2 and 3, 2024 at 9:00 a.m. (MT) each day for further consideration of cash collateral use after October 3, 2024. In the event the relevant parties agree, a proposed final order granting the Second Cash Collateral Motion may be submitted, the entry of which would vacate the continued hearing date.

11. This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Order.

//end of text//

DATED: July 30, 2024



_____

NOAH G. HILLEN

Chief U.S. Bankruptcy Judge

Order submitted by: Matthew T. Christensen, counsel for the Debtors

Approved as to Form:

/s/ *Jason R. Naess (email approval)*

Jason R. Naess, Office of the United States Trustee

Approved as to Form and Content:

/s/ *Julian Gurule (email approval)*

Julian Gurule, attorney for Committee

/s/ *Ron Bingham (email approval)*

Ron Bingham, attorney for MetLife

/s/ *Andrew Schoulder (email approval)*

Andrew Schoulder, attorney for Rabo Agrifinance LLC

/s/ *John O'Brien (email approval)*

John O'Brien, attorney for Conterra

/s/      *Richard Bernard (email approval)*

Richard Bernard, attorney for Sandton