Janine P. Reynard (ISB #6030)
AVERY LAW
3090 E. Gentry Way, Ste 250
Meridian, ID 83642
Telephone:  (208) 639-9400
Facsimile:  (208) 994-3182

-and-

Adam Lewis (admitted *pro hac vice*)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522
Email:  ALewis@mofo.com

-and-

Miranda Russell (admitted *pro hac vice*)
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019-9601
Telephone:  (212) 468-8000
Facsimile:  (212) 468-7900
Email:  MRussell@mofo.com

*Attorneys for East Valley Development, LLC*

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| In re:<br><br>MILLENKAMP CATTLE, INC.,<br><br>Debtor. | Case No. 24-40158-NGH |
| Filing relates to:<br><br>☒ ALL DEBTORS<br><br>☐ Millenkamp Cattle, Inc.<br><br>☐ Idaho Jersey Girls<br><br>☐ East Valley Cattle | Jointly Administered With Case Nos.:<br><br>24-40159-NGH (Idaho Jersey Girls)<br>24-40160-NGH (East Valley Cattle)<br>24-40161-NGH (Millenkamp Properties)<br>24-40162-NGH (Millenkamp Properties II)<br>24-40163-NGH (Millenkamp Family)<br>24-40164-NGH (Goose Ranch)<br>24-40166-NGH (Black Pine Cattle) |

| | |
|---|---|
| ☐ Millenkamp Properties | 24-40167-NGH (Millenkamp Enterprises) |
| ☐ Millenkamp Family | 24-40165-NGH (Idaho Jersey Girls Jerome Dairy) |
| ☐ Goose Ranch | Chapter 11 Cases |
| ☐ Black Pine Cattle | |
| ☐ Millenkamp Enterprises | |
| ☐ Idaho Jersey Girls Jerome Dairy | |

### EAST VALLEY DEVELOPMENT'S MOTION TO COMPEL ASSUMPTION OR REJECTION OF EXECUTORY CONTRACTS, OR, IN THE ALTERNATIVE, <u>FOR EQUITABLE RELIEF</u>

East Valley Development, LLC ("<u>EVD</u>"), by and through its undersigned attorneys, hereby files this *Motion to Compel Assumption or Rejection of Executory Contracts, or, in the Alternative, for Equitable Relief* (the "<u>Motion</u>") for entry of an order, substantially in the form attached hereto as **<u>Exhibit A</u>** (the "<u>Proposed Order</u>"), pursuant to sections 105 and 365(d)(2) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rule 6006(b) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), compelling the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>" or "<u>Millenkamp</u>") in the above-captioned chapter 11 cases (the "<u>Cases</u>") to determine whether to assume or reject their Facility Agreements (as defined herein) with EVD no later than September 19, 2024, which is one week from the proposed hearing on this Motion, or, in the alternative, granting EVD equitable relief in the form set forth herein. In support of the Motion, EVD submits the *Declaration of William J. Flanagan in Support of East Valley Development's Motion to Compel Assumption or Rejection of Executory Contracts, or, in the Alternative, for Equitable Relief*, which is attached hereto as **<u>Exhibit B</u>** (the "<u>Flanagan Declaration</u>"), and respectfully states as follows:

# I. **PRELIMINARY STATEMENT**[1]

1.      EVD and the Debtors face the imminent choice of whether EVD should invest $65 million dollars over the next year to finish construction of a commercial-scale renewable methane gas ("RNG") production facility (the "Facility") that is anticipated to bring a new source of millions of dollars of revenue to the Debtors' businesses.[2]  The Facility project marries a critical operational and regulatory challenge for the large Millenkamp dairy farm (the removal of manure) with a state-of-the-art, environmentally friendly solution that has the added benefit of providing the Debtors with a revenue stream (a percentage of royalties on RNG revenues) independent from the ups and downs of milk and feed prices that have previously created economic headwinds for the Debtors.  The Facility will provide the Debtors with the manure handling needed to maintain and expand the Debtors' current dairy operations and is therefore crucial to the Debtors' go-forward success upon emergence from bankruptcy.  The Facility is a big-budget, big-reward construction project, which is essentially completely funded by EVD and memorialized in the Facility Agreements between EVD and the Debtors.

2.      EVD has made clear to the Debtors that it wants to continue to be a long-term strategic counterparty with Millenkamp and has asked the Debtors to assume the Facility Agreements.  Like the Debtors' other creditors and stakeholders, EVD has been patient over the past four months since the commencement of these Cases in awaiting the Debtors' decision on the appropriate path forward for the Millenkamp enterprise.  EVD has continued to dutifully perform under the Facility Agreements despite the pendency of the Cases, though in light of the uncertainty surrounding Debtors' assumption of the Facility Agreements, it has postponed commencement of

---

[1] Capitalized terms used but not otherwise defined in the Preliminary Statement shall have the definitions ascribed to such terms in the remainder of the Motion.

[2] This new source of revenue to Millenkamp is 5% of EVD's revenues from RNG produced by the Facility.

EVD's Motion to Compel Assumption or Rejection – Page 3
ny-2771798

certain major construction items needed to complete the Facility to the extent feasible and as permitted under the Facility Agreements. But EVD has now reached its own inflection point—namely, EVD stands to risk $43 million in U.S. federal investment tax credit ("ITC") proceeds if it does not finish constructing the Facility by October 2025. EVD has no hope of meeting this deadline unless it commences construction of the Facility's remaining components by October 2024 at the absolute latest. To meet the deadline, it also must begin the expenditure of another $65 million of its funds in construction costs, as explained presently. Thus, it needs an answer regarding assumption or rejection of the Facility Agreements within the next month.

3.     To be clear, EVD's goal is to have the Facility Agreements assumed as soon as possible and is eager to continue working with the Debtors. EVD believes that assumption of the Facility Agreements and completion of the Project is a "win-win" for all of the Debtors' stakeholders. With EVD footing the bill, the project will maximize the value of the Debtors' estates by providing the economic benefits described above and allow the Debtors' limited cash to go towards operations and other administrative expenses. Additionally, if the Facility Agreements are rejected, EVD intends to assert rejection damages of over $100 million, which will swamp the unsecured claims pool and use up unnecessary estate resources in costly litigation regarding EVD's claim per its Proofs of Claim. This value can be preserved—and more value can be created for decades to come—if the Debtors move now to assume the Facility Agreements.

4.     EVD's concern, however, is that it is potentially being asked to throw more good money after bad. As just noted, EVD has already spent over $100 million to partially construct the Facility and now is looking at spending another $65 million over the next year to finish the project. EVD's worst-case scenario is that in spending these additional funds, it is simply increasing its unsecured claims against the Debtors' estates. Although EVD remains optimistic

about Millenkamp's successful path forward, it cannot wait on anyone else's timeline any longer. If EVD does not have assurance by September 19, 2024 that it will have a go-forward, long-term contractual relationship with the Debtors, it will be expending significant additional funds while facing the dual threats of losing (i) its business relationship with the Debtors through rejection of the Facility Agreements, *and* (ii) the extremely valuable ITCs that are one of the key economic terms that EVD negotiated for under the terms of the Facility Agreements.

5.    EVD should not be denied the benefit of its bargain, and it should not be forced to bear the risk that the Debtors will further delay filing their chapter 11 plan of reorganization beyond the end of next month, all for the Debtors' advantage.  EVD needs to know now what its role in the Debtors' go-forward business will be.  Accordingly, for the reasons set forth herein, EVD respectfully requests that this Court compel the Debtors to decide whether to assume or reject the Facility Agreements on or before September 19, 2024, or, in the alternative, provide EVD with a kind of equitable adequate protection as set forth herein so that EVD's own economic interests are protected regardless of the Debtors' inaction.

## II. <u>JURISDICTION</u>

6.    This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are sections 105 and 365(d)(2) of the Bankruptcy Code and Bankruptcy Rule 6006(b).

## III. <u>BACKGROUND</u>

### A.    The Facility Agreements

7.    In 2021, EVD and the Debtors entered into (a) that certain Manure Supply Agreement, dated effective as of October 8, 2021, by and between Millenkamp Cattle, Inc., an Idaho corporation ("<u>Dairy Debtor</u>"), and EVD, and acknowledged and agreed to by East Valley

Cattle, LLC, an Idaho limited liability company ("Landlord Debtor"), as amended by that certain First Amendment to Manure Supply Agreement dated as of June 22, 2023, by and between Dairy Debtor and EVD (as amended, the "MSA"); and (b) that certain Ground Lease Agreement dated effective as of October 8, 2021, between Landlord Debtor and EVD, as amended by (i) that certain First Amendment to Ground Lease Agreement dated effective as of February 17, 2022, between Landlord Debtor and EVD, (ii) that certain Second Amendment to Ground Lease Agreement dated as of April 25, 2023, between Landlord Debtor and EVD, and (iii) that certain Third Amendment to Ground Lease Agreement dated as of June 22, 2023, between Landlord Debtor and EVD (as amended, the "Ground Lease" and, together with the MSA, collectively, the "Facility Agreements").[3]

8.      In general, pursuant to the Facility Agreements, Landlord Debtor leased to EVD certain real property in Cassia County, Idaho (the "Leased Premises"), which is located nine miles northeast of Malta, Idaho, and approximately one mile east of Interstate 84.  *See* Flanagan Decl. ¶ 5.  Dairy Debtor's dairy and feedlot operation is on property adjacent to the Leased Premises and surrounded by active agricultural and range land.  *See* Flanagan Decl. ¶ 5.  Pursuant to the Ground Lease, EVD leases the Leased Premises for the construction, operation, and maintenance of the Facility, and pursuant to the MSA, Dairy Debtor agreed to produce suitable manure and provide the same to EVD for the Facility.  The MSA has a 20-year initial term, which is reflective of EVD's role in a long-term strategic business arrangement with the Debtors.  *See* Flanagan Decl. ¶ 5.

9.      Other than certain byproducts that EVD agreed to return to Dairy Debtor, pursuant to the MSA, any and all hydrocarbons and noncombustible gases in a gaseous state consisting

---

[3] For the avoidance of doubt, EVD hereby reserves any and all rights, arguments, claims, and defenses with respect to the Facility Agreements, including, without limitation, any amounts allegedly due by EVD to the Debtors thereunder.

primarily of methane combustible gas, bio-methane, renewable natural gas, electricity, Environmental Attributes (as defined herein), or any other products of the anaerobic digestion process belong solely to EVD, with Dairy Debtor entitled to share in 5% of the revenues of renewable natural gas. Specifically, certain environmental attributes, as defined in the MSA and including renewable energy credits (collectively, "Environmental Attributes"), are EVD's property under the terms of the MSA. Moreover, pursuant to the MSA, Dairy Debtor agreed to assist and cooperate with EVD in securing Environmental Attributes.

10.    EVD considers October 29, 2021, as the beginning of construction date in relation to the Facility. *See* Flanagan Decl. ¶ 6. By that time, one of EVD's subcontractors, Sundt Construction, Inc ("Sundt"), had started grading and sitework in the digester area, as well as beginning to perform excavation work on the lagoon. *See* Flanagan Decl. ¶ 6. Sundt's first invoice to EVD charged the cost from inception to November 30, 2021, in the amount of $1,656,197. *See* Flanagan Decl. ¶ 6.

11.    EVD currently estimates that it will need to spend approximately $65 million in the next 12–14 months in order to finish construction of the Facility. *See* Flanagan Decl. ¶ 7. As of the date hereof, the most significant outstanding items are the construction of the six digesters and the pipeline interconnect, plus commissioning. *See* Flanagan Decl. ¶ 7. If this work is not commenced in earnest starting in October 2024, then EVD will foreclose the possibility of meeting the October 2025 deadline, because an absolute minimum of 12 months is necessary to complete the pipeline. *See* Flanagan Decl. ¶ 7. Meeting the deadline is critical for EVD because, as set forth herein, EVD risks losing over $43 million of ITC proceeds if the Facility is not constructed by this deadline. *See* Flanagan Decl. ¶ 9. Moreover, if the Facility has not commenced commercial operations by the October 2025 deadline, Millenkamp has the right to terminate the Facility

Agreements and retain all of the Facility improvements that EVD has constructed, essentially wiping out all of EVD's investment.

12.     As set forth in EVD's proofs of claim [Case No. 24-40158, Claim No. 125 and Case No. 24-40160, Claim No. 12] (collectively, the "Proofs of Claim"), as of July 11, 2024, EVD has already spent over $100 million in the aggregate in connection with this project, including funding partial construction of the Facility, rent payments for the Leased Premises, and manure-handling payments.  EVD continues to incur millions in costs each month as it performs its obligations under the Facility Agreements and anticipates that total project costs for construction of the Facility will be approximately $270 million in the aggregate.[4]  *See* Flanagan Decl. ¶ 8.  In anticipation of beginning pipeline construction on or around October 1, 2024, EVD has already begun, as of August 2024, engaging in the necessary preparation work, and estimates that it will spend approximately $1.6 million between August and October in connection with the pipeline construction.  *See* Flanagan Decl. ¶ 8.

**B.     The Debtors' Bankruptcy Cases**

13.     On April 2, 2024 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Idaho (the "Court") commencing these Cases.  The Debtors have continued in the management and operation of their business and property as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  No trustee or examiner has been appointed in the Cases.  On May 14, 2024, an official committee of unsecured creditors was constituted by the U.S.

---

[4] EVD has only claimed in its Proofs of Claim amounts expended that it reasonably believes, as of the date of filing such Proofs of Claim, could be claimed as damages, which is not inclusive of the entire $270 million amount based on information available today.  EVD reserves all of its rights to amend or modify its Proofs of Claim.

EVD's Motion to Compel Assumption or Rejection – Page 8
ny-2771798

Trustee.  *See Notice of Appointment of the Official Committee of Unsecured Creditors* [Docket No. 297].

14.     From the onset of these Cases, the Debtors have acknowledged the importance of their contractual relationship with EVD.  *See Declaration of William John Millenkamp in Support of First Day Motions* [Docket No. 26], ¶ 52 (noting that MetLife's appraisals of the Debtors' property "did not take into account the value of the $107 million manure separation facility that had commenced construction and was to be paid for by East Valley Development, LLC[.]").  EVD has engaged in informal communications with the Debtors, both principal-to-principal and through its counsel, regarding the Debtors' strategy for the Cases and, specifically, whether the Debtors intend to assume the Facility Agreements as desired by EVD.  *See* Flanagan Decl. ¶ 10.  Although Debtors' counsel has indicated via email that the Debtors intend to assume the Facility Agreements, despite numerous follow-ups from EVD's bankruptcy counsel, no motion has been filed with the Court to effectuate this decision.  Accordingly, out of an abundance of caution, on July 30, 2024, EVD timely filed the Proofs of Claim, which assert contingent rejection damages claims of over $100 million in the event that the Debtors move to reject either of the Facility Agreements.

15.     The Debtors' exclusive periods to file and solicit a chapter 11 plan of reorganization currently expire on September 30, 2024, and November 29, 2024, respectively.  *See Order Extending the Exclusive Periods During Which Only the Debtors May File and Confirm a Plan* [Docket No. 507].

## IV. <u>RELIEF REQUESTED</u>

16.     By this Motion, EVD respectfully requests entry of an order substantially in the form attached hereto as **<u>Exhibit A</u>**:  (i) compelling the Debtors to file a motion with the Court on or before September 19, 2024, to request prompt assumption or rejection of the Facility

Agreements; or (ii) if, in the alternative, the Court does not compel the Debtors to decide to assume or reject the Facility Agreements by September 19, 2024, granting EVD equitable adequate protection in the form of (a) the right to temporarily suspend all performance under the Facility Agreements pending the Debtors' decision to assume or reject the Facility Agreements, (b) a waiver of any claim by the Debtors arising from any such suspension (including, without limitation, any default or event of default under the Facility Agreements or any potential damages related thereto), and (c) an unsecured claim against the Debtors' estates in an amount not less than $43,315,040, which is the amount of ITCs at risk if EVD delays construction of the pipeline beyond October 2024.

### V. <u>BASIS FOR RELIEF REQUESTED</u>

**A.    The Court Should Compel Assumption or Rejection of the Facility Agreements by September 19, 2024**

17.    Section 365(d)(2) of the Bankruptcy Code provides that a debtor may assume or reject an executory contract at any point before confirmation of a plan.  Nevertheless, "the court, on the request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease."  11 U.S.C. § 365(d)(2); *see also Diamond Z. Trailer, Inc. v. JZ L.L.C. (In re JZ L.L.C.)*, 371 B.R. 412, 422 (9th Cir. B.A.P. 2007) ("A party to [an executory] contract is entitled to seek an earlier decision by requesting that the court fix an earlier deadline to a determination to be made, but the court is not required to grant such a request."); *Bonneville Power Admin v. Mirant Corp. (In re Mirant Corp.)*, 440 F.3d 238, 253 n. 20 (5th Cir. 2006) (recognizing the statutory right of the nondebtor to file a motion to compel assumption or rejection of a lease or executory contract within a specified period of time).  The settled rule is that the debtor in possession has a "reasonable time" within which to decide.  *See* 3 Collier on Bankruptcy ¶ 365.05 (16th 2024).

18.     "What constitutes a reasonable time is left to the bankruptcy court's discretion in light of the circumstances of each case." *Theatre Holding Corp. v. Mauro* (hereinafter, "Theatre Holding"), 681 F.2d 102, 105 (2d Cir. 1982); *see also In re Strata Title, LLC*, No. 12-24242, 2013 WL 1773619, at *4 (Bankr. D. Ariz. Apr. 25, 2013) ("What constitutes reasonable time is within the discretion of the bankruptcy court." (citation omitted)); *In re Att'ys Office Mgmt., Inc.*, 29 B.R. 96, 98 (Bankr. C.D. Cal. 1983) (noting that there is "no test to determine a reasonable time" and "[i]nstead, it depends upon the facts and circumstances of the particular case); *accord In re Anderson*, 36 B.R. 120, 125 (Bankr. D. Haw. 1983).  In determining what is a "reasonable time" under the circumstances, courts consider various factors, including "[t]he nature of the interests at stake, the balance of the hurt to the litigants, the good to be achieved, the safeguards afforded those litigants, and whether the action to be taken is so in derogation of Congress' scheme that the court may be said to be arbitrary."  *In re Dunes Casino Hotel*, 63 B.R. 939, 949 (D.N.J. 1986) (noting that "[a]bove all, the court should interpret reasonable time consistent with the broad purpose of Chapter 11, which is to permit successful rehabilitation of the debtors") (internal citations and quotations omitted); *see also Zions Credit Corp. v. Rebel Rents, Inc. (In re Rebel Rents, Inc.)*, 291 B.R. 520, 530 (Bankr. C.D. Cal. 2003) (citing to Theatre Holding for the consideration of the following factors:  (1) the damage the non-debtor will suffer beyond the compensation available under the Bankruptcy Code; (2) the importance of the contract to the debtor's business and reorganization; (3) whether the debtor has had sufficient time to appraise its financial situation and the potential value of its assets in formulating a plan; and (4) whether exclusivity has terminated). As the movant, EVD acknowledges that it bears the burden of demonstrating cause to shorten the Debtors' time to decide whether to assume or reject a contract, *see In re Memory Lane of Bremen,*

*LLC*, 535 B.R. 901, 906 (Bankr. N.D. Ga. 2015) (citing *In re Hawker Beechcraft, Inc.*, 483 B.R. 424, 429 (Bankr. S.D.N.Y. 2012)), but it can easily do so here.

19.    ***First*, EVD risks losing $43 million in ITCs if it does not begin pipeline construction for the Facility in October 2024.**  Section 48 of the Internal Revenue Code ("IRC") provides a U.S. federal investment tax credit for certain qualifying "energy property," including certain "qualified biogas property."  *See* 26 U.S.C. § 48.[5]  The Facility will include qualified biogas property because it will convert biomass into a gas that "consists of not less than 52 percent methane…."  *Id.*  The base amount of the credit is 6% of the eligible costs of the biogas property, but, under Treasury Department and Internal Revenue Service ("IRS") guidance, a taxpayer can take advantage of a five-times multiplier (*i.e.*, a 30% rate) if construction of the project is deemed to have begun, for U.S. federal income tax purposes, before January 29, 2023 (such project's beginning-of-construction date, its "BOC Date," and such deadline, the "BOC Deadline").  *See id*; Prop. Reg § 1.48-13(b)(2).  Under IRS guidance, if a project is not placed in service within four years of its claimed BOC Date, the project runs a material risk of not being able to claim such BOC Date for purposes of meeting the BOC Deadline because the taxpayer has not undertaken sufficient continuous construction efforts to build the project (the "Construction Continuity Safe Harbor").  *See* I.R.S. Notice 2022-61, 2022-52 I.R.B. 560.  Generally, a project developer may monetize the credits by claiming the credits itself on its tax returns or selling the credits to other taxpayers that could claim the credits on their tax returns.  *See, e.g.*, I.R.C. § 6418.  EVD currently expects to sell the credits.  *See* Flanagan Decl. ¶ 9.

20.    EVD's projections for the Facility have included these ITCs at the 30% rate as a fundamental component since these ITCs became available in 2022.  *See* Flanagan Decl. ¶ 9.

---

[5] Section 46 of the I.R.C. provides a number of investment tax credits for qualifying business property; this Section 48 ITC, one of the credits enumerated by section 46, is the only investment tax credit available to the Facility.

Because the Facility's BOC Date is October 29, 2021, the Facility must be placed into service within four years of this date (that is, by October 29, 2025) to meet the Construction Continuity Safe Harbor and ensure qualification for the higher rate.  Although the Debtors or another party could argue that a later date is the correct BOC Date or that the Facility could qualify as having begun construction prior to the BOC Deadline under a "facts and circumstances" analysis outside the Construction Continuity Safe Harbor, EVD submits that is irrelevant for the assumption or rejection consideration.  EVD must rely on the most conservative application of the statute and IRS administrative guidance in strategizing its go-forward construction plan given (i) the significant amounts at stake and (ii) because that is what any potential investor in the Facility, or buyer of the ITCs, would do, too (each of whom could turn to other projects of other taxpayers with more certain ITCs).  *See* Flanagan Decl. ¶ 9.  Thus, using a later date could potentially hamstring EVD in any future financing of the Facility or ITC sale transaction down the line.  *See* Flanagan Decl. ¶ 9.  The below chart sets forth the significant impact that missing the four-year cut-off would have on EVD's ITCs:

| Impact on EVD's ITC Tax Credits[6] | | |
|---|---|---|
| | **If Project Meets Four-year Continuity Safe Harbor Requirement** | **If Project Does *NOT* Meet Four-year Continuity Safe Harbor Requirement** |
| **Total Project Cost** | Approximately $270mm | Approximately $270mm |
| **ITC Eligible Costs** | Approximately $180mm | Approximately $180mm |
| **ITC Bonus Rate** | 30% | 6% |
| **Estimated ITC** | Approximately $54mm | Approximately $10.8mm |
| | | **Estimated ITCs at Risk:  Approximately $43.3mm** |

21.     Accordingly, for the past couple of months, EVD has been strategizing what steps need to be undertaken to meet this October 2025 deadline, which is also a contractual requirement.  *See* Flanagan Decl. ¶ 7.  EVD subsequently determined that it will need to spend approximately

---

[6] The below information and all information regarding potential ITCs discussed in this Motion is based on EVD's best understanding as of the date hereof and is subject to change upon the basis of new information or analysis.

$65 million in the next 12–14 months in order to finish construction of the Facility on time. *See* Flanagan Decl. ¶ 7. The most significant outstanding items are the construction of the six digesters and the pipeline interconnect, plus commissioning. *See* Flanagan Decl. ¶ 7. If EVD does not begin pipeline construction starting in October 2024, then it will not meet the construction deadline to (i) retain the higher amount of ITCs and (ii) prevent Millenkamp's right to terminate the Facility Agreements from ripening under the terms of the Facility Agreements. This is because an absolute minimum of 12 months is necessary to complete the pipeline. *See* Flanagan Decl. ¶ 7. Accordingly, if the Debtors do not make a decision regarding assumption or rejection of the Facility Agreements in short order, the tangible harms that EVD will suffer if it does not meet the October 2025 deadline weigh in favor of granting this Motion.

22. ***Second, EVD does not want to spend an additional $65 million or more to complete the project over the next year if the Debtors are going to reject the Facility Agreements in a year's time.*** If the Facility Agreements were rejected today, EVD would already be asserting a claim for rejection damages in an amount greater than $100 million, and such claim will only continue to increase as the Cases continue without a decision from the Debtors on the Facility Agreements. In a case with hundreds of millions of secured debt sitting before general unsecured creditors, there is a realistic possibility that EVD could take significant losses in connection with the Facility Agreements if it does not take steps now to mitigate future harm. EVD should not be forced to expend any further funds without assurance from the Debtors that they will be continuing to work together in Millenkamp's next chapter. These Cases have been pending for more than four months, during which time Debtors have not provided EVD nor any other constituent with meaningful insight as to the anticipated path forward. EVD believes that four months is a reasonable period of time given the circumstances of this case for Millenkamp to have made a

decision regarding assumption or rejection of the Facility Agreements, as well as sufficient time to appraise their financial situation and the potential value of their assets in formulating a chapter 11 plan.  Indeed, the Debtors' exclusive plan filing period is set to expire at the end of September as well.  The interests of justice and fairness should compel the Debtors to decide to assume or reject the Facility Agreements immediately, without continuing to impose the current asymmetry of costs and benefits.

23.     Moreover, the interests at stake for the Debtors and the EVD are largely aligned and mutually compel assumption of the Facility Agreements.  EVD should not have to expend millions more to build the Facility over the next year unless and until the Facility Agreements have been unequivocally assumed.  To allow the Facility Agreements to remain in suspense (not assumed, but not rejected) will inflict significant harm on EVD and provide little tangible benefit to the Debtors' estates, which will reap the benefits of the completed project in October 2025.  *See* Theatre Holding at 105 (affirming the bankruptcy court's order requiring the debtor to assume or reject a lease within 30 days of the order, in part due to the effect of allowing the debtor to "have its cake and eat it too" while the lease was in suspense and not yet rejected or assumed).  The only possible cost to the Debtors is if after assuming the Facility Agreements, they breach them, resulting in an expense of administration claim for EVD for the resulting damages during the Cases or a normal claim post-confirmation.

24.     Finally, the acceptance or rejection of the Facility Agreements will not impact the Debtors' ability to reorganize.  To the contrary, assumption would be a show of strength to constituents and potential new lenders and investors for the Debtors' reorganization prospects, in particular because of the importance of the Facility Agreements to the Debtors' businesses.  Even rejection, while unfortunate and undesirable, would still push the Debtors towards reorganization

by giving creditors more information about the Debtors' future business plans.  For the foregoing

reasons, EVD submits that the Debtors have already had reasonable time under the circumstances

to consider their intentions for the Facility Agreements, and the Court should now compel the

Debtors to make a decision regarding assumption or rejection to prevent substantial harm to EVD.

### B.    In the Alternative, the Court Should Compel the Debtors to Provide EVD with Equitable Relief Pending the Debtors' Decision

25.    Bankruptcy Courts are courts of equity with broad remedial powers to craft

appropriate orders.  *See e.g.*, *Alexander v. Compton (In re Bonham)*, 229 F.3d 750, 765 (9th Cir.

2000) (recognizing that bankruptcy courts' equitable power survived enactment of the Bankruptcy

Code); *In re Baldwin-United Corp. Litigation*, 765 F.2d 343 (2d Cir. 1985); *In re Jones*, 966 F.2d

169 (5th Cir. 1992).  Here, if the Court is not inclined to set an early election date for assumption

or rejection, it would be appropriate and proper for this Court in the alternative to provide relief

analogous to adequate protection for secured creditors under Section 361 of the Bankruptcy Code.

Specifically, EVD requests some resolution of how its legitimate expenditures and interests will

be protected and not sacrificed wholesale for the benefit of the Debtors and the rest of the creditor

body.  That relief could take the form of (a) the right to temporarily suspend all performance under

the Facility Agreements pending the Debtors' decision to assume or reject the Facility Agreements,

(b) a waiver of any claim by the Debtors arising from any such suspension (including, without

limitation, any default or event of default under the Facility Agreements or any potential damages

related thereto), and (c) an allowed unsecured claim against the Debtors' estates in an amount not

less than $43,315,040, which is the amount of ITCs at risk if EVD delays construction of the

pipeline beyond October 2024.

## VI. <u>CONCLUSION</u>

WHEREFORE, for the reasons set forth herein, EVD respectfully requests that the Court enter the Proposed Order granting the relief requested in this Motion and such other and further relief as is just and proper.

Dated:  August 12, 2024    AVERY LAW

            */s/ Janine P. Reynard*
            _____

            Janine P. Reynard (ISB #6030)

            -AND-

            MORRISON & FOERSTER LLP
            Adam Lewis (admitted *pro hac vice*)
            Miranda Russell (admitted *pro hac vice*)

            *Attorneys for East Valley Development, LLC*

**<u>Exhibit A</u>**

**Proposed Order**

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| In re: | Case No. 24-40158-NGH |
| MILLENKAMP CATTLE, INC., | |
| Debtor. | |
| Filing relates to: | Jointly Administered With Case Nos.: |
| ☒ ALL DEBTORS | 24-40159-NGH (Idaho Jersey Girls) |
| | 24-40160-NGH (East Valley Cattle) |
| ☐ Millenkamp Cattle, Inc. | 24-40161-NGH (Millenkamp Properties) |
| | 24-40162-NGH (Millenkamp Properties II) |
| ☐ Idaho Jersey Girls | 24-40163-NGH (Millenkamp Family) |
| | 24-40164-NGH (Goose Ranch) |
| ☐ East Valley Cattle | 24-40166-NGH (Black Pine Cattle) |
| | 24-40167-NGH (Millenkamp Enterprises) |
| ☐ Millenkamp Properties | 24-40165-NGH (Idaho Jersey Girls Jerome |
| | Dairy) |
| ☐ Millenkamp Family | |
| | Chapter 11 Cases |
| ☐ Goose Ranch | |
| ☐ Black Pine Cattle | |
| ☐ Millenkamp Enterprises | |
| ☐ Idaho Jersey Girls Jerome Dairy | |

**ORDER GRANTING EAST VALLEY DEVELOPMENT'S MOTION TO COMPEL
ASSUMPTION OR REJECTION OF EXECUTORY CONTRACTS, OR, IN THE
ALTERNATIVE, FOR EQUITABLE RELIEF**

Upon *East Valley Development's Motion to Compel Assumption or Rejection of Executory Contracts, or, in the Alternative, for Equitable Relief* (the "Motion")[1] filed by East Valley Development ("EVD"); and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that

---

[1] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Motion.

venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper

notice of the Motion having been provided, and it appearing that no other or further notice need

be provided; and the Court having reviewed the Motion; and all objections, if any, to the Motion

having been withdrawn, resolved, or overruled; and the Court having determined that the legal and

factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all

of the proceedings had before the Court and after due deliberation and sufficient cause appearing,

**IT IS HEREBY ORDERED THAT:**

1.     The Motion is granted;

2.     The Debtors are compelled to file a motion to reject or assume the Facility

Agreements on or before September 19, 2024, and if they fail to file a motion to reject or a motion

to assume by September 19, 2024, they shall be deemed to have rejected the Facility Agreements;

3.     If the Debtors reject the Facility Agreements, as per section 365(g) of the

Bankruptcy Code, rejection is a breach of each of the Facility Agreements as of the Petition Date;

4.     In the alternative, the Debtors may elect by September 19, 2024 to postpone a

decision to move to assume or reject by a written filing with this Court, in which case the Court

grants EVD equitable adequate protection in the form of (a) the right to temporarily suspend all

performance under the Facility Agreements pending the Debtors' decision to assume or reject the

Facility Agreements, (b) a waiver of any claim by the Debtors arising from any such suspension

(including, without limitation, any default or event of default under the Facility Agreements or any

potential damages related thereto), and (c) an unsecured claim against the Debtors' estates in an

amount not less than $43,315,040;

5.      Any stay of this Order under Rule 4001 of the Federal Rules of Bankruptcy Procedure or any similar rule is hereby waived for cause, and this Order shall be effective immediately upon entry of the Bankruptcy Court's docket; and

6.      This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated:  September __, 2024
        Boise, Idaho

_____
THE HONORABLE NOAH G. HILLEN
UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit B</u>**

**Declaration of William J. Flanagan**

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| In re: | Case No. 24-40158-NGH |
| MILLENKAMP CATTLE, INC., | |
| Debtor. | |
| Filing relates to: | Jointly Administered With Case Nos.: |
| ☒ ALL DEBTORS | 24-40159-NGH (Idaho Jersey Girls) |
| | 24-40160-NGH (East Valley Cattle) |
| ☐ Millenkamp Cattle, Inc. | 24-40161-NGH (Millenkamp Properties) |
| | 24-40162-NGH (Millenkamp Properties II) |
| ☐ Idaho Jersey Girls | 24-40163-NGH (Millenkamp Family) |
| | 24-40164-NGH (Goose Ranch) |
| ☐ East Valley Cattle | 24-40166-NGH (Black Pine Cattle) |
| | 24-40167-NGH (Millenkamp Enterprises) |
| ☐ Millenkamp Properties | 24-40165-NGH (Idaho Jersey Girls Jerome Dairy) |
| ☐ Millenkamp Family | |
| ☐ Goose Ranch | Chapter 11 Cases |
| ☐ Black Pine Cattle | |
| ☐ Millenkamp Enterprises | |
| ☐ Idaho Jersey Girls Jerome Dairy | |

**DECLARATION OF WILLIAM J. FLANAGAN IN SUPPORT OF
EAST VALLEY DEVELOPMENT'S MOTION TO COMPEL ASSUMPTION
OR REJECTION OF EXECUTORY CONTRACTS, OR, IN THE
ALTERNATIVE, FOR EQUITABLE RELIEF**

I, William J. Flanagan, hereby declare under penalty of perjury, pursuant to section 1746

of title 28 of the United States Code, as follows:

1.      I am the Vice President of Strategic Development for East Valley Development,

LLC ("EVD"), with an office located at 4675 MacArthur Court, Suite 800, Newport Beach,

California 92660.  I was appointed as an officer of EVD in October 2021, when the entity was

formed.

ny-2774194

2.      I submit this declaration (this "Declaration") in support of *East Valley Development's Motion to Compel Assumption or Rejection of Executory Contracts, or, in the Alternative, for Equitable Relief* (the "Motion")[1] seeking relief to (i) compel the Debtors to file a motion with the Court on or before September 19, 2024, to request prompt assumption or rejection of the Facility Agreements; and (ii) if, in the alternative, the Court does not compel the Debtors to decide to assume or reject the Facility Agreements by September 19, 2024, granting EVD equitable adequate protection in the form of (a) the right to temporarily suspend all performance under the Facility Agreements pending the Debtors' decision to assume or reject the Facility Agreements, (b) a waiver of any claim by the Debtors arising from any such suspension (including, without limitation, any default or event of default under the Facility Agreements or any potential damages related thereto), and (c) an unsecured claim against the Debtors' estates in an amount not less than $43,315,040, which is the amount of ITCs at risk if EVD delays construction of the pipeline beyond October 2024.

3.      The statements in this Declaration are, except where specifically noted, based on my personal knowledge or opinion, information that I have from EVD's regularly-kept books and records, employees, or other advisors and their employees, or from, EVD employees working directly with me or under my supervision or direction.

4.      I am not being specifically compensated for this testimony.  I am over the age of 18 years and authorized to submit this declaration on behalf of EVD.  If I were called upon to testify, I could and would competently testify to the facts set forth herein.

5.      In 2021, EVD and the Debtors entered into the Facility Agreements.  The MSA has a 20-year initial term, which I believe reflects EVD's role in a long-term strategic business

---

[1]      Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

ny-2774194

arrangement with Millenkamp.  The Leased Premises is located nine miles northeast of Malta, Idaho, and approximately one mile east of Interstate 84.  Dairy Debtor's dairy and feedlot operation is on property adjacent to the Leased Premises and surrounded by active agricultural and range land.

6.      In my view, October 29, 2021 is the BOC Date in relation to the Facility.  By that time, one of EVD's subcontractors, Sundt, had started grading and sitework in the digester area, as well as beginning to perform excavation work on the lagoon.  Sundt's first invoice to EVD charged the cost from inception to November 30, 2021, in the amount of $1,656,197.

7.      For the past couple of months, EVD has been strategizing what steps need to be undertaken to meet this October 2025 deadline.  As of the date hereof, I believe that the most significant outstanding items with respect to the Facility are the construction of the six digesters and the pipeline interconnect, plus commissioning.  I further believe that if this work is not commenced in earnest starting in October 2024, then EVD will foreclose the possibility of meeting the October 2025 deadline, because an absolute minimum of 12 months is necessary to complete the pipeline.  I understand that EVD will need to spend approximately $65 million in the next 12–14 months in order to finish construction of the Facility.

8.      Each month, EVD continues to incur millions in costs as it performs its obligations under the Facility Agreements.  I anticipate that total project costs for construction of the Facility will be approximately $270 million in the aggregate.  Moreover, in anticipation of beginning pipeline construction on or around October 1, 2024, EVD has already begun, as of August 2024, engaging in the necessary preparation work, and I estimate that EVD will spend approximately $1.6 million between August and October of this year in connection with the pipeline construction.

3

9.      I believe that meeting the October 2025 deadline is critical for EVD because EVD risks losing over $43 million of ITC proceeds if the Facility is not constructed by this deadline. EVD's projections for the Facility have since 2022 included these ITCs at the 30% rate as a fundamental component.  As of the date hereof, EVD intends to sell the credits.  I understand that any buyer of the ITCs (each of whom could turn to other projects of other taxpayers with more certain ITCs) would likely rely on the most conservative application of the applicable tax statute and administrative guidance in determining the BOC Date.  Accordingly, in my view, using a later BOC Date than October 29, 2021, could potentially hinder EVD in any future financing of the Facility or ITC sale transaction down the line.  EVD also is obligated to finish the Facility by the Facility Agreements at about the same time.

10.      Finally, I have engaged in informal telephone calls with Bill Millenkamp regarding the next steps for these Cases and the Debtors' intentions with respect to the Facility Agreements, but, unfortunately, I understand that the Debtors have yet to file a formal motion to assume the Facility Agreements.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct to the best of my knowledge, information, and belief.

Newport Beach, California
Dated:  August 12, 2024

Respectfully submitted,

*/s/ William J. Flanagan*
William J. Flanagan

5