**NORTON ROSE FULBRIGHT**

Norton Rose Fulbright US LLP
1301 Avenue of the Americas
New York, New York 10019-6022
United States of America

Direct line +1 212 318 3030
andrew.schoulder@nortonrosefulbright.com

Tel +1 212 318 3000
Fax +1 212 318 3400

August 19, 2024

**VIA ELECTRONIC MAIL**

Matthew T. Christensen
James Justin May
Johnson May, PLLC
199 N. Capitol Blvd.; Ste. 200
Boise, ID 83702
MTC@johnsonmaylaw.com
JJM@johnsonmaylaw.com

Krystal Mikkilineni
Dentons Davis Brown
215 10th St.; Ste. 1300
Des Moines, IA 50309
krystal.mikkilineni@dentons.com

Re:   In re Millenkamp Cattle, Inc. Case No. 24-40158 (Bankr. D. Idaho)

Dear Matt and Krystal,

On July 19, 2024, the United States Bankruptcy Court for the District of Idaho ("Bankruptcy Court") entered the *Order Extending the Exclusive Periods During Which Only the Debtors May File and Confirm a Plan* [Dkt. 507] ("Initial Exclusivity Order"). The Initial Exclusivity Order extends the period in which only Millenkamp Cattle, Inc. and its affiliated debtors (collectively, "Debtors") may file a chapter 11 plan to and including October 3, 2024 (by agreement).

As you know, amongst the Debtors' other lenders, creditors' committee, and equity owner, Rabo AgriFinance LLC ("RAF") was the only stakeholder to initiate dialogue that led to a completely consensual extension of the Debtors' first exclusivity period. The resulting stipulation between the Debtors and RAF formed the foundation that the Debtors used to facilitate the entry of the Initial Exclusivity Order on a consensual basis with all other stakeholders, including MetLife and Conterra. As you will recall, at the hearing to consider the Initial Exclusivity Order, Norton Rose Fulbright ("NRF"), as counsel to RAF, advised the Court that RAF supported an extension of the Debtors' exclusivity period in order to provide the Debtors with additional time to obtain a financing commitment capable of effecting a confirmable chapter 11 plan of reorganization. NRF likewise advised the Court that RAF would have a very different position if the Debtors failed to make meaningful progress towards a commitment capable of delivering such a confirmable chapter 11 plan of reorganization.

Based on weekly reports from Forbes Securities Group ("Forbes"), we understand that between March 2024 and the date of this letter, Forbes, on behalf of the Debtors, contacted approximately 100 parties seeking a financing commitment. Based on prior testimony from

**EXHIBIT 3133**

Norton Rose Fulbright US LLP is a limited liability partnership registered under the laws of Texas.

Norton Rose Fulbright US LLP, Norton Rose Fulbright LLP, Norton Rose Fulbright Australia, Norton Rose Fulbright Canada LLP and Norton Rose Fulbright South Africa Inc are separate legal entities and all of them are members of Norton Rose Fulbright Verein, a Swiss verein. Norton Rose Fulbright Verein helps coordinate the activities of the members but does not itself provide legal services to clients. Details of each entity, with certain regulatory information, are available at nortonrosefulbright.com.

Millenkamp Cattle, Inc.
Matthew T. Christensen
Krystal Mikkilineni

**NORTON ROSE FULBRIGHT**

August 19, 2024

Page 2

Forbes, we understand that the approximately 100 parties were incremental to the parties originally contacted by Riveron Consulting LLC between October 2022 and August 2023. Thus, after five months of bankruptcy and contacting approximately 100 parties in addition to those identified by Riveron Consulting, the Debtors received only two term sheets from the Forbes process (the "Forbes Term Sheets") – one of which was provided to RAF on August 9, 2024 ("Term Sheet 1") and the other provided on August 15, 2024 ("Term Sheet 2") - neither of which are capable of funding a confirmable plan of reorganization. Accordingly, after almost 2.2 years from the maturity date of the RAF RLOC Facility, the Debtors are not any closer to obtaining a refinancing commitment and should not continue to place the burden and the risk upon RAF and other creditors.

The Forbes Term Sheets suffer many defects that would prevent a confirmable plan of reorganization and weigh against a further extension of exclusivity -

- **Commitment Amounts Incapable of Repaying Senior Secured Lenders in Full.** The RAF RLOC Facility will likely exceed $100 million after taking into consideration the accrual of default interest and accrued fees owing, assuming an "exit" of February 2025. If there is an outstanding balance of the Sandton DIP Facility of $35 million, the Debtors would need a binding commitment of at least $135 million to support a confirmable plan of reorganization.

  Therefore, just taking RAF's and Santon's secured claims into consideration, Term Sheet 1 falls short of satisfying the RAF and DIP claims, in full, by at least $75 million. Further, while Term Sheet 2 purports to offer incremental financing, it still falls short by at least $35 million.[1] Finally, these amounts ignore the fact that most lenders will require some opening day availability under a revolving line of credit, which would likely be $10 million to $20 million for these Debtors.

- **Commitment Incapable of Paying Administrative Expense Claims.** Based on the Debtors' projections and other financial information, the estate will be required to pay at least $8.25 million to satisfy administrative expense claims arising from estate professional fees, claims arising under section 503(b)(9) of the Bankruptcy Code, and other obligations required to be paid as a condition to confirmation of a plan of reorganization.[2] Term Sheet

---

[1] Indeed, Term Sheet 2 is not only conditioned on diligence, appraisals, management meetings, customer interviews, and definitive documents, but it has brackets around each of the "funding commitments" with a notation that after further diligence, it could "get comfortable" increasing its total commitment of $100 million by up to an additional $20 million – which even if true, would still fall short of what is required for the Debtors to confirm a plan of reorganization.

[2] The foregoing administrative expense amount is an approximation and does not include any amounts owing as adequate protection payments for diminution in the value of RAF's collateral.

Millenkamp Cattle, Inc.
Matthew T. Christensen
Krystal Mikkilineni

NORTON ROSE FULBRIGHT

August 19, 2024

Page 3

2, in its effort to specify the proposed uses (including a $4 million upfront fee), does not even account for the payment of administrative expense claims – leaving a further funding deficit to confirm a plan of reorganization.

- **Inability to Satisfy Feasibility**. Even if the Forbes Term Sheets were improved to $135 million to satisfy the RAF and DIP claims, plus another $8.25 million to satisfy administrative expense claims, the Debtors would not have any working capital availability upon exit to satisfy operating expenses and service debt. Specifically, it is unclear how the Debtors will be able to satisfy the projected $2.2 million of accrued accounts payable (incremental to the $8.25 million of administrative expenses that must be paid as a condition to confirmation) given the inadequacy of the current Forbes Term Sheets. As a result, it is unlikely that the Debtors would be able to satisfy the feasibility requirements to confirm their chapter 11 plan of reorganization, under that scenario.

- **Lien Stripping / Subordination**. Notably, please be advised that RAF will not agree to anything less than repayment in full, in cash, on the effective date of a chapter 11 plan of reorganization, which is consistent with Mr. Millenkamp's testimony that he wanted to refinance the obligation owed to RAF, as it was necessary for the parties to go their separate ways. Thus, Term Sheet 2's express indication that RAF may "write down" any portion of its senior secured debt or release or subordinate any of its liens to such exit financing is unacceptable, non-confirmable, and directly contrary to the evidence and arguments presented by the Debtors in their cases.

- **Unsecured Claims "Cleansed"**. Further, we would note that Term Sheet 2 expressly conflicts with the Debtors' repeated promises to pay unsecured creditors in full, as it proposes to defer payment of these claims for 6 years or to "cleanse" such claims.

I understand at the status hearing that you informed the Court that Forbes remained in negotiations with the lenders that submitted the Forbes Term Sheets and that you expect two additional term sheets. Thus, it appears that the Debtors remain hopeful that the Forbes Term Sheets will lead to a successful refinancing of the RAF RLOC Facility and, ultimately, a successful plan of reorganization which the Debtors reiterated in their recently filed Status Report. However, neither the Debtors, RAF, nor other parties can ignore the fact that the Forbes Term Sheets are non-binding, highly contingent, and do not even purport to provide sufficient capital to implement a confirmable plan of reorganization. Given the material issues with the only two term sheets received after contacting approximately 100 parties since March 2024 and the Debtors' inability to refinance the RAF RLOC Facility since it matured in June 2022, RAF is not willing to consent to any further extension of exclusivity unless the Debtors agree to simultaneously move forward with a contingency plan in case the Debtors are not able to refinance, as they hope.

Millenkamp Cattle, Inc.
Matthew T. Christensen
Krystal Mikkilineni

**NORTON ROSE FULBRIGHT**

August 19, 2024

Page 4

Specifically, RAF would agree to a 90-day extension of the Initial Exclusivity Order (through and including December 30, 2024) subject to a mutually acceptable stipulation providing for, among other things, the following:

1. **Parallel Contingency Sale Process.** By October 1, 2024, the Debtors will have engaged and obtained Bankruptcy Court approval for the retention of an independent investment banker/broker acceptable to RAF (the "Investment Banker/Broker")[3] to begin a 90-day sale process to pursue a sale of assets, equity, property and/or businesses (the "Contingency Sale Process") that, in the opinion of the Investment Banker/Broker, would likely generate sufficient proceeds to facilitate both a repayment of the RAF RLOC, in cash in full, and a successful reorganization of the Debtors (the "IB Recommended Assets").[4]

2. **Bidding Procedures Order**. Within 30 days of the entry of a supplemental order extending the Debtors' exclusivity period (the "Second Exclusivity Order"), the Debtors will have obtained entry of an order approving bidding procedures reasonably acceptable to RAF for a sale of the IB Recommended Assets under Section 363 of the Bankruptcy Code. If the Debtors refuse or fail to obtain the entry of such bidding procedure order, the Second Exclusivity Order would terminate, after a hearing on shortened notice.

3. **Contingency Sale Process Milestones**. The Contingency Sale Process would be subject to reasonably acceptable milestones, such as deadlines for compilation of a list of prospective purchasers, preparation, and delivery of a confidential information memorandum, opening of a data room appropriate for a sale process for the IB Recommended Assets, and other customary milestones. In addition to other reporting obligations, the Investment Banker/Broker would be required to provide the Court with a bi-weekly report on its progress. The Second Exclusivity Order would terminate if the Debtors failed to meet any milestone, after a hearing on shortened notice.

4. **Compliance with Approved Budget**. The Debtors would continue to operate in accordance with the approved Budget as defined in the *Interim Order Granting Debtors' Second Motion for Continued Use of Cash Collateral* [Dkt. 524] ("Second Cash Collateral

---

[3] Due to the current engagement of Forbes to pursue a refinancing, the Investment Banker/Broker needs to be firm separate and independent from Forbes.

[4] For the avoidance of doubt, to the extent that Sandton does not elect to exercise its purported option to convert into an exit facility or the Debtors are unable to obtain committed refinancing to repay the DIP Facility in full in cash, the IB Recommended Assets would need to be sufficient to repay the DIP Facility and the RAF RLOC Facility in cash in full.

Millenkamp Cattle, Inc.
Matthew T. Christensen
Krystal Mikkilineni

NORTON ROSE FULBRIGHT

August 19, 2024

Page 5

Order"). The Debtors' failure to comply with the Budget would result in the termination of the Second Exclusivity Order, after a hearing on shortened notice.

5. **Stipulated Allowance of RAF Claim.** The Debtors would stipulate to the (a) allowance, amount and validity of RAF's proof of claim, claim no. 97-1; and (b) allowance of RAF's professional fees through and including June 30, 2024 (the "RAF Accrued Expenses").[5]

6. **Additional Adequate Protection**. Given the Debtors' prior representations of emerging from chapter 11 by August 2024, the Second Exclusivity Order further increases RAF's risk with respect to the Debtors' cases particularly since the Debtors' refinancing efforts have not yielded any proposals that commit to repay RAF in full, in cash. Accordingly, as additional adequate protection for such increased risk and duration, the Debtors would seek entry of a new cash collateral order providing for the following adequate protection to RAF: (a) beginning on September 1, 2024, the Debtors would begin paying RAF interest at the contractual default rate commencing with the accrued August interest payment; (b) the Debtors would pay fifty (50) percent of the RAF Accrued Expenses no later than October 11, 2024; and (c) the Debtors would pay the remaining fifty (50) percent of the RAF Accrued Expenses no later than November 8, 2024.

7. **Additional Reporting:**

    a. Contingency Sale Process: The Investment Banker/Broker would share its progress and results with the Debtors, RAF, the Committee and other interested secured lenders during a weekly videoconference.

    b. Refinancing Process: Paragraph 3(e)(v) of the Second Cash Collateral Order would be amended, restated, and replaced with the following:

    Professional Eye's Only. The term "Professional Eye's Only" shall refer only to employees, officers or directors of FTI Consulting, Focus Management Group, Kander LLC, Armory Securities, LLC, and Conterra's financial advisor (once designated) and shall exclude any attorneys or other professionals for the interested parties except counsel for the Committee (the "Financial Advisors"). The identity of potential investors and/or transaction counterparties provided to the Financial Advisors shall not be disclosed by the Financial Advisors to any other party, including lenders, creditors or other parties (including counsel for those parties), unless expressly authorized by the Debtors in writing. Prior to participating in any meetings with Forbes, each of the Financial Advisors shall acknowledge in writing their understanding of, and agreement to adhere to, these restrictions. For

---

[5] For the avoidance of doubt, RAF does not hereby waive its right or intention to seek allowance and payment of its professional fees accrued after June 30, 2024.

59797.0007.17518578.2

Millenkamp Cattle, Inc.
Matthew T. Christensen
Krystal Mikkilineni

**NORTON ROSE FULBRIGHT**

August 19, 2024

Page 6

    the avoidance of doubt, FTI Consulting, Focus Management and Armory Securities shall be permitted to provide RAF, MetLife and the Committee, respectively, with any other information received from Forbes, including but not limited to: proposed transaction values, investment structures, and other terms or conditions.

   c. <u>Management-Led Processes</u>: For the avoidance of doubt, the amended Cash Collateral Order and the Second Exclusivity Order, respectively, shall clarify that all reporting obligations shall include (a) any process for a refinancing or sale that the Debtors' management is conducting separate from the process being conducted by Forbes and the Investment Banker/Broker, and (b) meetings with potential refinancing parties or purchasers that the Debtors' management is conducting to the exclusion of Forbes or the Investment Banker/Broker. Further, the applicable orders will make clear that the Contingency Sale Process (and any other potential sale process) will be conducted by the Investment Banker/Broker, with full cooperation from the Debtors' management, shareholders, advisors, and consultants.

    To be sure, the above requirements and stipulations are only intended to form the backbone of necessary contingency planning in the event the Forbes Term Sheets fail to produce sufficient funding to support a confirmable plan of reorganization. In light of the current status of the cases (now entering their fifth month), the contingent nature of the Forbes Term Sheets, and the inadequate funding commitments therein, it is critical that the Debtors explore other avenues of recovery for their estates, their secured lenders, and other stakeholders by beginning contingency planning and providing greater transparency.

    If the Debtors are unwilling to agree to a stipulation on terms substantially as set forth above, RAF will be forced to move for termination of exclusivity and other relief to protect its interests. Further, RAF's willingness to consent to a further extension of the exclusivity period is without prejudice to its rights to rescind further use of cash collateral, or object to additional draws on the DIP Facility, each of which must be made by motion to the Bankruptcy Court.

    To ensure that the parties have sufficient time to address the proposed consensual extension of exclusivity, please send an email to the undersigned indicating whether or not the Debtors will agree to the proposed terms **by no later than 5 pm CST on August 21, 2024.**

Millenkamp Cattle, Inc.
Matthew T. Christensen
Krystal Mikkilineni

August 19, 2024

Page 7

**NORTON ROSE FULBRIGHT**

Sincerely,

*[signature]*

Andrew Schoulder

59797.0007.17518578.2