Sheila R. Schwager, ISB No. 5059
Brent R. Wilson, ISB No. 8936
HAWLEY TROXELL ENNIS & HAWLEY LLP
877 W. Main Street, Suite 200
P.O. Box 1617
Boise, ID 83701-1617
Telephone: 208.344.6000
Facsimile: 208.954.5261
Email: sschwager@hawleytroxell.com
bwilson@hawleytroxell.com

Andrew J. Schoulder (*pro hac vice*)
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, NY 10019
Telephone: 212.318.3030
Email: andrew.schoulder@nortonrosefulbright.com

Attorneys for Rabo AgriFinance LLC

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| In re: <br><br> MILLENKAMP CATTLE, INC., <br><br> Debtor. | Case No. 24-40158-NGH |
| Filing relates to: <br><br> ☒ ALL DEBTORS <br><br> ☐ Millenkamp Cattle, Inc. <br><br> ☐ Idaho Jersey Girls <br><br> ☐ East Valley Cattle <br><br> ☐ Millenkamp Properties <br><br> ☐ Millenkamp Properties II <br><br> ☐ Millenkamp Family <br><br> ☐ Goose Ranch | Jointly Administered With Case Nos.: <br><br> 24-40159-NGH (Idaho Jersey Girls) <br> 24-40160-NGH (East Valley Cattle) <br> 24-40161-NGH (Millenkamp Properties) <br> 24-40162-NGH (Millenkamp Properties II) <br> 24-40163-NGH (Millenkamp Family) <br> 24-40164-NGH (Goose Ranch) <br> 24-40166-NGH (Black Pine Cattle) <br> 24-40167-NGH (Millenkamp Enterprises) <br> 24-40165-NGH (Idaho Jersey Girls Jerome Dairy) <br><br> Chapter 11 Cases |

59797.0007.17883445.1

☐ Black Pine Cattle

☐ Millenkamp Enterprises

☐ Idaho Jersey Girls Jerome Dairy

**RABO AGRIFINANCE LLC'S SUPPLEMENT TO OBJECTION TO DEBTORS' CONTINUED USE OF CASH COLLATERAL AND MOTION TO TERMINATE EXCLUSIVITY (DKT. NO. 670)**

Rabo AgriFinance, LLC, in its capacity as agent and lender ("RAF"), hereby files this Supplement to its *Objection to Debtors' Continued Use of Cash Collateral and Motion to Terminate Exclusivity*, (Dkt. No 670) (the "Cash Collateral-Exclusivity Response") filed on October 11, 2024. The Cash Collateral-Exclusivity Response is set to be heard by the Court on December 10 and 11, 2024, beginning at 9:00 a.m. (MT) each day. *See* Dkt. No. 734.

As a threshold matter, and as discussed with this Court at the hearing on November 21, 2024, by this Supplement, RAF respectfully requests that the Court take notice that the Cash Collateral-Exclusivity Response applies with equal weight to the Second Cash Collateral Motion and Third Cash Collateral Motion (both defined below), as well as the relief requested by the Debtors in the Exclusivity Motion (also defined below).

For efficiency's sake and to not repeat the arguments stated in the following filings, RAF hereby incorporates herein by reference: (1) the Cash Collateral-Exclusivity Response; (2) *Rabo AgriFinance LLC's Omnibus Objection to (I) Emergency Motion Authorizing Use of Cash Collateral; and (II) Emergency Motion Authorizing the Debtors to Obtain Post-Petition Financing and Granting Adequate Protection* filed on April 3, 2024 (Dkt. No. 81) (the "Original Objection"), as supplemented by the Supplement thereto filed on April 4, 2024 (Dkt. No. 99) (the "First

RABO AGRIFINANCE LLC'S SUPPLEMENT TO OBJECTION TO DEBTORS' CONTINUED USE OF CASH COLLATERAL AND MOTION TO TERMINATE EXCLUSIVITY - 2

59797.0007.17883445.1

Supplement"), as further supplemented by the Second Supplement thereto filed on April 8, 2024 (Dkt. No. 131) (the "Second Supplement"), as further supplemented by the Third Supplement thereto filed on April 15, 2024 (Dkt. No. 181) (the "Third Supplement"), and as further supplemented by that certain *Omnibus Objection to (I) Emergency Motion Authorizing Use of Cash Collateral on a Final Basis; and (II) Emergency Motion Authorizing the Debtors to Obtain Post-Petition Financing and Granting Adequate Protection of a Final Basis* (Dkt. No. 244) (the "Omnibus Objection" and collectively, the "Objection"); and (3) *Rabo AgriFinance LLC' Motion to Appoint a Chapter 11 Trustee* filed on November 29, 2024 (Dkt. No. 748) (the "Trustee Motion").

The above-referenced filings establish that RAF is not adequately protected and that a chapter 11 trustee should be appointed promptly. RAF therefore objects to the Debtors' use of cash collateral and requests that exclusivity be terminated for the reasons stated in the above-filings and based on the following facts and analysis.

### I. SUPPLEMENT TO CASH COLLATERAL OBJECTION AND TERMINATION MOTION

1. On October 21, 2024, after RAF filed the Cash Collateral-Exclusivity Response, the Debtors, RAF, and other parties in interest stipulated to the continued use of cash collateral through December 11, 2024 (Dkt. No 682), pending a continued hearing on the Debtors' then pending *Debtor's Second Motion for Continued Use of Cash Collateral*, (Dkt. No. 464) ("Second Cash Collateral Motion"). In the interim, the Debtors attempted to solicit and obtain a financing commitment capable of supporting a confirmable plan of reorganization that would allow the

RABO AGRIFINANCE LLC'S SUPPLEMENT TO OBJECTION TO DEBTORS'
CONTINUED USE OF CASH COLLATERAL AND MOTION TO TERMINATE
EXCLUSIVITY - 3

59797.0007.17883445.1

Debtors to exit these chapter 11 cases while satisfying the RAF Secured Claim[1] in full, in cash, on the effective date.  That effort failed.

2. Also, following the Cash Collateral-Exclusivity Response, the Debtors filed *Debtors' Motion to Extend Exclusive Solicitation Period of 11 U.S.C. § 1121(c)*, (Dkt. No. 707) (the "Exclusivity Motion") on November 11, 2024.  The Exclusivity Motion seeks to extend the period for solicitation of acceptances of the Debtors' chapter 11 plan, as may be amended, through March 31, 2025.  For the reasons stated in the Cash Collateral-Exclusivity Response, RAF objects to the Exclusivity Motion and seeks the termination of exclusivity in these bankruptcy cases.

3. Then, on November 15, 2024, the Debtors filed *Debtors' Third Motion for Continued Use of Cash Collateral*, (Dkt. No. 716) ("Third Cash Collateral Motion").  The Third Cash Collateral Motion seeks approval of the use of cash collateral through April 30, 2025.  The Third Cash Collateral Motion "anticipate[s] the secured lenders will consent to the use of their Cash Collateral." Third Cash Collateral Motion at ¶ 21.

4. As RAF stated at the status hearing on November 21, 2024, and for the reasons set forth in the Cash Collateral-Exclusivity Response and in the Trustee Motion (which as noted above is incorporated herein by reference in its entirety), RAF does not, in fact, consent to the use of its cash collateral, as requested in both the Second Cash Collateral Motion and in the Third Cash Collateral Motion.

5. Since the Petition Date, the entire foundation of the Debtors' adequate protection argument has been the Debtors' extensive testimony that RAF is "grossly," "extremely," and

---

[1] On November 25, 2024, RAF filed an amendment to Proof of Claim 97-1, evidencing a secured claim as of October 31, 2024 of $96,469,917.04 (the "**RAF Secured Claim**").

RABO AGRIFINANCE LLC'S SUPPLEMENT TO OBJECTION TO DEBTORS'
CONTINUED USE OF CASH COLLATERAL AND MOTION TO TERMINATE
EXCLUSIVITY - 4

"wildly" oversecured, as well as numerous assurances that the Debtors would emerge from chapter 11 with a 100 cent plan that refinances the RAF Secured Claim, in full, in cash, on the effective date.[2] Indeed, Ms. Kati Churchill, of Kander LLC, the Debtors' expert financial advisor, even went so far as to testifying that "[a]n equity cushion has everything to do with financeability" even though she subsequently admitted that an equity cushion has nothing to do with whether a borrower can generate sufficient cash flow to service debt.[3]

6.  In contrast, throughout these hearings, RAF has urged that an equity cushion alone was insufficient to adequately protect RAF's interests, particularly given the Debtors' cash flow. Through the testimony of Mr. Daniel Kokini, a Managing Director of FTI Consulting, RAF provided uncontroverted evidence that the Debtors' historical cash flow could not satisfy their debt burden.[4] Mr. Kokini's testimony was supported by financial analysis, created from the Debtors' own information, demonstrating the Debtors' inability to generate enough cash flow to service their historical debt as reported in their financials.[5]

| ($ in thousands) | FY21 | FY22 | FY23 |
|---|---|---|---|
| **Est. Current Debt Service:** | | | |
| Est. Current Debt Service | $28,923 | $28,923 | $28,923 |
| **Total Est. Current Debt Service** | **$28,923** | **$28,923** | **$28,923** |
| | | | |
| Operating Cash Flow Incl. Historical Debt Service | ($22,111) | ($17,517) | ($10,675) |

7.  The foregoing analysis centered on the Debtors' pre-petition debt burden and cash flow. When asked what the inclusion of the Sandton DIP financing would do, Mr. Kokini testified

---

[2] *See* Cash Collateral-Exclusivity Response, ¶1.

[3] Transcript of Hearing May 9, 2024, 113:17-20; 114:25 -115:1-3 ("Q. Right. And so you could have as large of an equity cushion as imaginable. That's still not going to change whether you can generate sufficient cash flow to service debt, will it? A. No.").

[4] Transcript of Hearing April 9, 2024, 136:18–23.

[5] *See* FTI Cash Flow Analysis, admitted at Ex. 3058.

RABO AGRIFINANCE LLC'S SUPPLEMENT TO OBJECTION TO DEBTORS' CONTINUED USE OF CASH COLLATERAL AND MOTION TO TERMINATE EXCLUSIVITY - 5

that the inclusion of such debt would make the situation worse.[6] Indeed, Mr. Kokini testified that, "it would be very hard to refinance this full capital structure" because "it's unlikely that any new lender would want to step into this amount of leverage that points to at best stressed nature – stressed business if not distressed" and that the Sandton proposal would "just make it harder to pay off the already matured RLOC."[7] The Debtors' leveraged cash flow has not materially improved during the pendency of these chapter 11 cases. According to new analysis prepared by FTI, the Debtors' leveraged cash flow, on a cumulative basis, from the Petition Date through November 17, 2024, is between at least negative $1.967 million to at least negative $21.515 million when accounting for amortization payments not currently being paid to MetLife and default interest not currently being paid to MetLife, RAF, and Conterra.[8]

8.  In the end, the results speak for themselves – despite being "grossly" oversecured, after eight (8) months, the Debtors' refinancing efforts failed without obtaining a single proposal capable of repaying the RAF Secured Claim in full, in cash, on the effective and funding a confirmable plan. *See* Trustee Motion ¶¶ 48-53. Indeed, on August 21, 2024, the Debtors' investment banker expressly affirmed the reasoning for FTI's testimony as to why RAF was not adequately protected, reporting, "*The difficulty continues to be the amount of debt needed to take out the DIP facility and revolver and if cash flow can support that level of debt in a cyclical industry.*" [9]

---

[6] Transcript of Hearing April 10, 2024, 67:6–68:20.

[7] Transcript of Hearing April 10, 2024, 67:11–12, 14–16.

[8] *See also*, Trustee Motion, ¶¶ 43-45, and exhibits thereto.

[9] *See* Forbes Report, attached hereto as Exhibit 3134 (emphasis added).

RABO AGRIFINANCE LLC'S SUPPLEMENT TO OBJECTION TO DEBTORS'
CONTINUED USE OF CASH COLLATERAL AND MOTION TO TERMINATE
EXCLUSIVITY - 6

9. With the collapse of their second refinancing process involving over 100 potential lenders, the Debtors can no longer rely on an equity cushion to support their claim that RAF is adequately protected. Indeed, that is particularly the case where the Debtors are not even seeking to monetize that equity cushion to pay the RAF Secured Claim in full, in cash – the other premise that the Debtors relied on to support their claims that RAF was adequately protected. Instead, through the Insider Plan (defined in the Trustee Motion), the Debtors are seeking to preserve that equity cushion for the exclusive benefit of the Millenkamp Insiders (as defined in the Trustee Motion) for no consideration. The Insider Plan demonstrates that the Debtors' entire adequate protection position was a charade designed to protect the Millenkamp Insider's interests – not the interests of RAF. If RAF was truly adequately protected by that equity cushion, the Insider Plan would be seeking to monetize it for the benefit of RAF and other creditors – not gifting it to the Millenkamp Insiders.

10. With the failed refinancing process, the Debtors have clearly abandoned that charade and all pretenses. Now, through the unconfirmable Insider Plan, the Debtors are seeking to extend the RAF RLOC Facility – that matured on June 1, 2022 – through March 2027, effectively extending the contractual maturity date, that occurred 22 months prior to the Petition Date, by 5 years. Moreover, the unprecedented and unorthodox attempt to subordinate the RAF Secured Claim to priming liens of the proposed Exit Term Loan Facility (as defined in the Insider Plan) should leave no question as to whether RAF is "adequately protected" – it most definitely is not.

11. As discussed in the Trustee Motion, courts have overwhelmingly concluded that subordinating a lien—as proposed by the Insider Plan—falls short of the "indubitable equivalent"

RABO AGRIFINANCE LLC'S SUPPLEMENT TO OBJECTION TO DEBTORS'
CONTINUED USE OF CASH COLLATERAL AND MOTION TO TERMINATE
EXCLUSIVITY - 7

59797.0007.17883445.1

standard.[10] For the reasons discussed in the Trustee Motion, the Insider Plan (or any future plan proposing similar treatment of RAF), is therefore unconfirmable on its face and no amount of purported equity cushion can carry the Debtors' burden to demonstrate that RAF is adequately protected. *See* Trustee Motion at ¶¶ 51- 74 (detailing the multiple impediments to confirmation clearly evident).

12. Given the status of these cases now entering their eighth month, and the Debtors' continued inability to facilitate moving these cases forward toward a fair and equitable resolution, RAF is only willing to consent to the continued use of its cash collateral (subject to a reasonably agreed budget) upon the appointment of a chapter 11 trustee, as requested by the Trustee Motion, and the following protections:

    a. **Suspension of Payments to Estate Professionals**

13. As stated, these bankruptcy cases are entering their eighth month with no progress being made toward an exit plan. Moreover, it is evident that the Debtors are intent on draining bankruptcy estate resources to pursue a patently unconfirmable chapter 11 plan, favoring equity over creditors with no contribution by equity, among other obvious legal defects. On this course, it is foreseeable—indeed very likely—that the bankruptcy cases could move to a liquidation. In that very likely event, on this course, estate professionals may be required to disgorge the interim distributions they have received unless and until RAF is paid in full on its secured claims and chapter 7 administrative fees are paid. *See Matz v. Hoseman*, 197 B.R. 635, 639-40 (N.D. Ill. 1996) (affirming the bankruptcy court's order requiring disgorgement of professional fees paid on an interim basis in later converted chapter 11 case); *see also Czyzewski v. Jevic Holding Corp.*,

---

[10] *See* Trustee Motion, ¶¶ 75-87.

RABO AGRIFINANCE LLC'S SUPPLEMENT TO OBJECTION TO DEBTORS'
CONTINUED USE OF CASH COLLATERAL AND MOTION TO TERMINATE
EXCLUSIVITY - 8

59797.0007.17883445.1

580 U.S. 451, 465 (2017) ("In Chapter 7 liquidations, priority is in absolute command—lower priority creditors cannot receive anything until higher priority creditors have been paid in full.") (citations omitted)).

14. As such, RAF respectfully requests that the Court allow estate professional fees, but suspend future distributions to estate professionals until a chapter 11 trustee is appointed and has had an opportunity evaluate and make recommendations with respect to the outcome of these cases and the extent to which estate professionals should continue to receive interim distributions, if any.

### b. **Suspension of Other Adequate Protection Payments**

15. As set forth further in the Cash Collateral-Exclusivity Response and the Trustee Motion, it has come to RAF's attention that the Debtors have been making payments to pre-petition creditors based on the Debtors' unilateral determination and without authorization from this Court.[11]  Accordingly, RAF respectfully requests that this suspend the making of any and all "adequate protection" payments until this Court and parties-in-interest have an opportunity to evaluate the historical and future beneficiaries of these distributions to avoid any prohibited dissipation of estate assets.

---

[11] *See* Trustee Motion, ¶2.

RABO AGRIFINANCE LLC'S SUPPLEMENT TO OBJECTION TO DEBTORS' CONTINUED USE OF CASH COLLATERAL AND MOTION TO TERMINATE EXCLUSIVITY - 9

59797.0007.17883445.1

c. **Economic Adequate Protection**

16. The undisputed evidence in these cases is that RAF is oversecured. For eight months, RAF has expended significant resources to mitigate the costs of the DIP Facility, reduce borrowings under the DIP Facility (which, in hindsight, mitigated the current situation from being worse than it is), prevented the Debtors from allowing and paying invalid unsecured claims (and personal expenses of Mr. Millenkamp) under § 503(b)(9), and reduced the amount of deposits paid to the Debtors' insiders. In protecting its interests, RAF's results have directly and indirectly benefited creditors as a whole, but only RAF has carried the financial burden of these efforts. In many chapter 11 cases, it would fall on statutory watchdogs to carry the burden of many of these positions. However, in these cases, the burden has fallen on RAF.

17. Hopefully, the Court will agree with RAF's request for the appointment of a chapter 11 trustee, in which case much of RAF's future financial burden can be shifted to that appointee. However, as it stands, RAF is far from adequately protected. Moreover, the failed refinancing and subsequent value-grab under Insider Plan, demonstrates that RAF was never adequately protected. Accordingly, RAF respectfully requests that the Court require the Debtors to (i) immediately pay to RAF the accrued and unpaid default portion of RAF's contractual interest from the Petition Date through November 30, 2024, 2024, (ii) continue to pay RAF interest, current, at the contractual Default Rate (as defined in the RLOC Agreement), and (iii) reimburse RAF for all professional fees incurred through December 1, 2024.

## II. CONCLUSION

For the foregoing reasons, and for the reasons stated in RAF's above-referenced filings, including but not limited to the Trustee Motion, RAF respectfully requests the Court deny the

RABO AGRIFINANCE LLC'S SUPPLEMENT TO OBJECTION TO DEBTORS'
CONTINUED USE OF CASH COLLATERAL AND MOTION TO TERMINATE
EXCLUSIVITY - 10

59797.0007.17883445.1

continued use of cash collateral, as requested in the Second Cash Collateral Motion and in the Third Cash Collateral Motion, unless and until a chapter 11 trustee is appointed, deny the Exclusivity Motion, and terminate exclusivity, as requested by RAF in the Cash Collateral Objection and Termination Motion.

Dated: November 29, 2024                HAWLEY TROXELL ENNIS & HAWLEY LLP

/s/ Brent R. Wilson
_____
Brent R. Wilson, ISB No. 8936
Attorneys for Rabo AgriFinance LLC


Dated: November 29, 2024                NORTON ROSE FULBRIGHT US LLP

  /s/ Andrew J. Schoulder_____
Andrew J. Schoulder, *pro hac vice*
Attorneys for Rabo AgriFinance LLC

RABO AGRIFINANCE LLC'S SUPPLEMENT TO OBJECTION TO DEBTORS' CONTINUED USE OF CASH COLLATERAL AND MOTION TO TERMINATE EXCLUSIVITY - 11

59797.0007.17883445.1

CERTIFICATE OF SERVICE

       I HEREBY CERTIFY that on this November 29, 2024, I electronically filed the foregoing **RABO AGRIFINANCE LLC'S SUPPLEMENT TO OBJECTION TO DEBTORS' CONTINUED USE OF CASH COLLATERAL AND MOTION TO TERMINATE EXCLUSIVITY** with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to those identified in the CM/ECF system for this matter, at the time this document was filed, including the following persons:

| Name | Email |
|---|---|
| Matthew T. Christensen | mtc@johnsonmaylaw.com |
| Krystal R. Mikkilineni | krystal.mikkilineni@dentons.com |
| Tirzah R. Roussell | tirzah.roussell@dentons.com |
| U.S. Trustee | ustp.region18.bs.ecf@usdoj.gov |
| Heidi Buck Morrison | heidi@racineolson.com |
| David A. Coleman | david@colemanjacobsonlaw.com |
| Jon B. Evans | evans.jb@dorsey.com |
| Kimbell D. Gourley | kgourley@idalaw.com |
| Daniel C. Green | dan@racineolson.com |
| Scott C. Powers | spowers@spencerfane.com |
| Janine Patrice Reynard | janine@averylaw.net |
| Sheila Rae Schwager | sschwager@hawleytroxell.com |
| Brent Russel Wilson | bwilson@hawleytroxell.com |
| Zachary Fairlie | zfairlie@spencerfance.com |
| John O'Brien | jobrien@spencerfane.com |
| Gery W. Edson | gedson@gedson.com |
| Aaron Bell | abell@evanskeane.com |
| Brian Faria | brian@sawtoothlaw.com |
| Robert A. Faucher | rfaucher@hollandhart.com |
| Matthew W. Grimshaw | matt@grimshawlawgroup.com |
| Karen Lloyd | klloyd@grsm.com |
| James Justin May | jjm@johnsonmaylaw.com |
| Rhett Michael Miller | rmiller@magicvalley.law |
| Robert E. Richards | robert.richards@dentons.com |

RABO AGRIFINANCE LLC'S SUPPLEMENT TO OBJECTION TO DEBTORS' CONTINUED USE OF CASH COLLATERAL AND MOTION TO TERMINATE EXCLUSIVITY - 12

59797.0007.17883445.1

| | |
|---|---|
| Holly Roark | holly@roarklawboise.com |
| Evan Thomas Roth | evan@sawtoothlaw.com |
| Meredith Leigh Thielbahr | mthielbahr@grsm.com |
| John F. Kurtz, Jr. | jfk@kurtzlaw.com |
| And any others receiving cm/ecf notices | |

/s/ Brent R. Wilson
Brent R. Wilson

RABO AGRIFINANCE LLC'S SUPPLEMENT TO OBJECTION TO DEBTORS' CONTINUED USE OF CASH COLLATERAL AND MOTION TO TERMINATE EXCLUSIVITY - 13

59797.0007.17883445.1

### Historical Unlevered FCF

| ($ in thousands) | Audited FY21 | Audited FY22 | Unaudited FY23(1) |
|---|---:|---:|---:|
| Net Cash from Operating Activities | 26,938 | 27,358 | 49,691 |
| (+) Cash payments for interest, net of capitalized interest | 8,649 | 15,083 | 16,879 |
| **Unlevered Cash Provided by Operations** | **$35,587** | **$42,441** | **$66,570** |
| (-) Net Cash (used for) Investing Activities | (41,343) | (42,411) | (40,663) |
| **Unlevered Free Cash Flow** | **($5,756)** | **$29** | **$25,908** |
| (+) Capitalized improvements and purchases of land, equipment and trucks | 13,057 | 12,054 | 8,843 |
| (-) Proceeds from sale of property and equipment | (489) | (677) | (721) |
| **Unlevered Free Cash Flow of Core Operating Activities** | **$6,812** | **$11,406** | **$34,030** |
| (+/-) Reverse estimated stretched AP(2) | – | – | (11,837) |
| **Adj. Unlevered Free Cash Flow of Core Operating Activities** | **$6,812** | **$11,406** | **$22,193** |

| **Historical Debt Service:** | | | |
|---|---:|---:|---:|
| Cash payments for interest, net of capitalized interest | $8,649 | $15,083 | $16,879 |
| Payments on Long-Term Debt | 13,935 | 11,112 | 11,537 |
| **Total Debt Service** | **$22,584** | **$26,195** | **$28,417** |
| **Operating Cash Flow Incl. Historical Debt Service** | **($15,773)** | **($14,789)** | **($6,223)** |

| **Est. Current Debt Service:** | | | |
|---|---:|---:|---:|
| Est. Current Debt Service | $28,923 | $28,923 | $28,923 |
| **Total Est. Current Debt Service** | **$28,923** | **$28,923** | **$28,923** |
| **Operating Cash Flow Incl. Current Debt Service** | **($22,111)** | **($17,517)** | **($6,730)** |
| DIP to Exit Facility Debt Service(3) | 6,239 | 6,239 | 6,239 |
| **Operating Cash Flow Incl. Current Debt Service & DIP to Exit Facility Debt Service** | **($28,350)** | **($23,756)** | **($12,969)** |

| **Est. Current Debt Service Detail:** | | | |
|---|---:|---:|---:|
| Rabo Interest (Non-Default)(4) | $7,774 | $7,774 | $7,774 |
| MetLife Promissory Note A - $106M Mortgage(5) | 8,234 | 8,234 | 8,234 |
| MetLife Promissory Note B - $59.4M Mortgage(5) | 4,661 | 4,661 | 4,661 |
| MetLife Promissory Note C - $13M Mortgage(5) | 957 | 957 | 957 |
| MetLife Promissory Note D - $18M Mortgage(5) | 1,330 | 1,330 | 1,330 |
| MetLife Promissory Note E - $16M Mortgage(5) | 2,692 | 2,692 | 2,692 |
| MetLife Promissory Note F - $5.5M Mortgage(5) | 392 | 392 | 392 |
| Conterra Loan Interest(6) | 2,584 | 2,584 | 2,584 |
| Conterra Mortgage Principal and Interest(7) | 300 | 300 | 300 |
| **Total Est. Current Debt Service** | **$28,923** | **$28,923** | **$28,923** |

(1) Based on FY23 unaudited financials provided by Kander.
(2) Assumed that 60% of the change in AP in FY23 of $19.7M was from the management of AP vendors to manage liquidity.
(3) Assumed that the current proposed DIP PIK interest of 12.5% is converted to cash interest and applied to principal balance of $45M plus ~$4.9M of PIK interest and fees accrued during the duration of the bankruptcy cases.
(4) Calculated using principal balance of $92.2M from the 4/17 DIP Forecast and non-default interest rate of SOFR+3.11% (SOFR as of 4/29 of 5.32%).
(5) All monthly P&I based on docket #51 (Declaration of Jeremy Rasmussen) except for Promissory Note D which was from the 2022 audit.
(6) Calculated based on a principal balance of $16.5M with a non-default effective interest rate of 15.66% per the 2022 audit (instead of the default rate of interest of 18%).
(7) Calculated based on a principal balance of $2.5M with a non-default interest rate of 10%.

EXHIBIT
**3058**

# Matthew T. Christensen

| | |
|---|---|
| **From:** | Braiden Miller <Braiden.Miller@forbes-partners.com> |
| **Sent:** | Wednesday, August 21, 2024 4:40 PM |
| **To:** | Matthew T. Christensen |
| **Cc:** | Jon Wiley; James Morgan; Liam Narozanick |
| **Subject:** | Milkmen | Process Update (8/8 - 8/14) |

Matt,

I've included the update for 8/15 - 8/21 week below. Please review and let us know if you have any questions.

1. Number of New Parties to whom CIM was provided: 3
2. Number of new parties that were engaged in initial meetings with Forbes: 3
3. Number of new parties that have accessed the Forbes data room: 1 this week, 16 since May 17th (VDR Reporting)
4. Number of parties that remain actively negotiating with Forbes and/or the Debtors: 6

Our focus the past week was primarily split between getting the new groups up to speed as quickly as possible and going deeper with the two most active groups to get to a term sheet.  We have several groups that could form a portion of a facility (ABL or co-invest) but have removed those from the active parties list as they aren't an option unless we can get a lead lender in place.  The difficulty continues to be the amount of debt needed to take out the DIP facility and revolver and if cash flow can support that level of debt in a cyclical industry.  All parties are aware of the timing constraints and are actively trying to find solutions.



**Braiden Miller**
Analyst

Braiden.Miller@Forbes-Partners.com

970.402.5096

**Forbes-Partners.com**

6400 S Fiddlers Green, Suite 850
Greenwood Village, CO 80111



This electronic message transmission contains information from Forbes Partners, which may be confidential or privileged.  This information is intended for the use of the individual or entity named above. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited.

EXHIBIT
**3134**