Matthew T. Christensen, ISB: 7213
J. Justin May, ISB: 5818
JOHNSON MAY
199 N. Capitol Blvd, Ste 200
Boise, Idaho 83702
Phone: (208) 384-8588
Fax: (208) 629-2157
Email: mtc@johnsonmaylaw.com
         jjm@johnsonmaylaw.com

Krystal Mikkilineni, *pro hac vice*
Robert E. Richards, *pro hac vice*
Tirzah Roussell, *pro hac vice*
DENTONS DAVIS BROWN
215 10th Street, Ste 1300
Des Moines, IA 50309
Phone: (515) 288-2500
Fax: (515) 243-0654
Email: krystal.mikkilineni@dentons.com
         robert.richards@dentons.com
         tirzah.roussell@dentons.com

*Attorneys for the Debtors and Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF IDAHO

| | |
|---|---|
| In re: | Case No. 24-40158-NGH |
| MILLENKAMP CATTLE, INC., | |
| Debtor. | |
| Filing relates to: | |
| ⊠  ALL DEBTORS | Jointly Administered With Case Nos.: |
| ☐  Millenkamp Cattle, Inc. | 24-40159-NGH (Idaho Jersey Girls) |
| ☐  Idaho Jersey Girls | 24-40160-NGH (East Valley Cattle) 24-40161-NGH (Millenkamp Properties) |
| ☐  East Valley Cattle | 24-40162-NGH (Millenkamp Properties II) |
| ☐  Millenkamp Properties | 24-40163-NGH (Millenkamp Family) |
| ☐  Millenkamp Properties II | 24-40164-NGH (Goose Ranch) 24-40166-NGH (Black Pine Cattle) |
| ☐  Millenkamp Family | 24-40167-NGH (Millenkamp Enterprises) |

#4148577

☐    Goose Ranch

☐    Black Pine Cattle

☐    Millenkamp Enterprises

☐    Idaho Jersey Girls Jerome Dairy

24-40165-NGH (Idaho Jersey Girls
Jerome Dairy)

Chapter 11 Cases

## CHAPTER 11 AMENDED PLAN OF REORGANIZATION OF MILLENKAMP CATTLE, INC. AND ITS RELATED DEBTOR AFFILIATES, dated December 4, 2024

## TABLE OF CONTENTS

**INTRODUCTION**...........................................................................................10

**ARTICLE 1 DEFINED RULES AND RULES OF INTERPRETATION** ...........11

**ARTICLE 2 CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS** ...23

    2.1    Summary and Classification of Claims.................................................23

    2.2    Substantive Consolidation...................................................................25

    2.3    Classification & Voting Controversies. ...............................................26

**ARTICLE 3 CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS**..........................................................................................26

    3.1    Unclassified Claims............................................................................26

        3.1.1    Administrative Claims .........................................................26

        3.1.2    Professional Fee Claims.......................................................27

        3.1.3    Priority Tax Claims..............................................................29

        3.1.4    DIP Claims..........................................................................29

    3.2    Class 1: Other Priority Claims ............................................................29

    3.3    Class 2: Corn Silage Group Secured Claims........................................29

    3.4    Class 3: Other Secured Ag Liens ........................................................31

        3.4.1    Class 3A: A. Scott Jackson Trucking Secured Claim..............31

        3.4.2    Class 3B: B&H Farming Secured Claim. ...............................31

        3.4.3    Class 3C: H&M Custom, LLC Secured Claim.......................32

        3.4.4    Class 3D: Healthy Earth Enterprises, LLC Secured Claim .....32

        3.4.5    Class 3E: Kraus Farms, LLC Secured Claim..........................32

        3.4.6    Class 3F: Milner Hay Company, LLC Secured Claim ............33

        3.4.7    Class 3G: Moss Grain Partnership Secured Claim .................33

        3.4.8    Class 3H NorthWest Seed, Inc. Secured Claim......................34

        3.4.9    Class 3I: Performance Plus-Idaho, LLC Secured Claim .........34

|         | 3.4.10 | Class 3J: Tyche Ag, LLC Secured Claim ...............................34 |

3.4.11  Class 3K: Wada Farms Partnership Secured Claim.................35

3.4.12  Class 3L: Youree Land & Livestock Secured Claim...............35

3.4.13  Class 3M: Eagle Creek Northwest, LLC Claim......................35

3.4.14  Class 3N: Standlee Ag Resources and Premium Products Secured Claim........................................................................36

3.5    Class 4: Metlife Secured Claims ..........................................................36

3.6    Class 5: Rabo Secured Claims ..............................................................39

3.7    Class 6: Conterra Secured Claims........................................................42

3.8    Class 7: Secured Equipment & Vehicle Lien Claims ..........................43

3.8.1  Class 7A CNH Industrial Capital Secured Claim...................43

3.8.2  Class 7B: Daimler Truck Financial Services USA LLC Secured Claim....................................................................................45

3.8.3  Class 7C: Farmers Bank........................................................45

3.8.4  Class 7D: John Deere Construction & Forestry Secured Claim .............................................................................................46

3.8.5  Class 7E: Western States Cat Secured Claim ........................48

3.8.6  Class 7F: Kenworth Sales Company Secured Claim...............48

3.9    Class 8: Other Secured Claims..............................................................49

3.9.1  Class 8A: MWI Veterinary Secured Claim .............................49

3.9.2  Class 8B: PerforMix Nutrition Systems Secured Claim..........50

3.9.3  Class 8C: Rexel USA, Inc. d/b/a Platt Electric Supply Claim.50

3.9.4  Class 8D: Staker & Parson Company d/b/a Idaho Materials & Construction Claim................................................................50

3.9.5  Class 8E: Les Schwab Tire Centers ........................................51

3.10   Class 9: General Unsecured Claims.....................................................51

3.11   Class 10: Intercompany Claims............................................................52

3.12    Class 11: Equity Interests .................................................................52

3.13    Special Provisions Regarding Insured Claims ...................................52

**ARTICLE 4 <u>ACCEPTANCE OR REJECTION OF THE PLAN</u>** ........................53

4.1    Impaired Class of Claims Entitled to Vote..........................................53

4.2    Voting of Claims ..................................................................................53

4.3    Procedure/Voting Deadline ..................................................................53

4.4    Acceptance by an Impaired Class.........................................................53

4.5    Presumed Acceptances by Unimpaired Classes. .................................54

4.6    Impaired Classes Deemed to Reject Plan. ...........................................54

4.7    Confirmation Pursuant to Bankruptcy Code Section 1129(b). ............54

4.8    Elimination of Vacant Classes .............................................................54

**ARTICLE 5 <u>MEANS FOR IMPLEMENTATION OF THE PLAN</u>** ...................54

5.1    Substantive Consolidation....................................................................54

5.2    Restructuring Transactions...................................................................54

5.3    Sources of Consideration for Plan Distributions.................................55

5.4    Exit Term Loan Facility .......................................................................55

5.5    Exit Term Loan Facility Liens .............................................................55

5.6    Perfection of the Exit Term Loan Facility Liens..................................55

5.7    Subordination of Indebtedness and Liens ............................................56

5.8    Sale or Transfer of Subordinated Indebtedness....................................56

5.9    Restriction on Action by Subordinated Lenders ..................................57

5.10    Sale of Real Estate................................................................................57

5.11    Refinancing. .........................................................................................57

5.12    Conversion to Sale Process..................................................................57

5.13    Vesting of Assets of Reorganized Debtors ..........................................57

5.14    Authority ...................................................................................58

5.15    Corporate Existence ..................................................................58

5.16    Employee Obligations...............................................................59

5.17    Workers Compensation Program...............................................59

5.18    Pursuit and Resolution of Reorganized Debtors' Causes of Action ....59

5.19    No Successor Liability...............................................................60

5.20    Preservation of Privileges and Defenses...................................60

5.21    Preservation of Rights of Action...............................................60

        5.21.1  Maintenance of Avoidance Actions and Causes of Action......60

        5.21.2  Preservation of All Reorganized Debtors' Causes of Action Not
                Expressly Settled or Released ...................................................60

5.22    Cancellation of Instruments. ....................................................61

5.23    Insurance Policies. ...................................................................61

        5.23.1  Insurance Policies Remain in Force. .......................................61

        5.23.2  Insurance Policies; Employment Practice Liability Policies;
                Similar Policies. .....................................................................61

**ARTICLE 6 EXECUTORY CONTRACTS AND UNEXPIRED LEASES** .........61

6.1     Assumption and Rejection of Executory Contracts and Unexpired
        Leases. ....................................................................................62

6.2     Claims Based on Rejection of Executory Contracts or Unexpired Leases
        ................................................................................................63

6.3     Cure of Defaults for Assumed Executory Contracts and Unexpired
        Leases .....................................................................................63

6.4     Assumption Dispute Resolution.................................................64

6.5     Contracts and Leases Entered into After the Petition Date .................65

6.6     Modifications, Amendments, Supplements, Restatements, or Other
        Agreements...............................................................................65

6.7     Reservation of Rights ...............................................................65

6.8    Nonoccurence of Effective Date ................................................66

**ARTICLE 7 PROVISIONS GOVERNING DISTRIBUTIONS** ..........................66

7.1    Timing of Distributions for Allowed Claims. .....................................66

7.2    Calculating Distributions and Related Matters. ..................................66

7.3    Interest and Other Amounts Regarding Claims ..................................66

7.4    Means of Cash Payment..............................................................66

7.5    Form of Currency for Distributions. ................................................66

7.6    Fractional Distributions...............................................................67

7.7    De Minimis Distributions.............................................................67

7.8    No Distributions with Respect to Certain Claims. ..............................67

7.9    Distributions and Transfers Upon Resolution of Contingent Claims, Disputed Claims, or Unliquidated Claims. ........................................68

7.10   Delivery of Distributions..............................................................68

7.11   Application of Distribution Record Date & Other Transfer Restrictions. ........................................................................................68

7.12   Withholding, Payment, and Reporting Requirements Regarding Distributions...........................................................................68

7.13   Defenses and Setoffs. .................................................................69

7.14   Allocation of Distributions...........................................................69

7.15   Joint Distributions. ....................................................................69

7.16   Forfeiture of Distributions...........................................................69

**ARTICLE 8 PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS AND DISTRIBUTIONS WITH RESPECT THERETO**

8.1    Objections to and Resolution of Disputed Claims, Including Any Claims of Excluded Parties..................................................................70

8.2    Claim Objections.......................................................................70

8.3    Estimation of Certain Claims .......................................................70

8.4    Distributions Following Allowance. ....................................................70

8.5    Disposition of Assets in Reserves After Disallowance. .......................71


**ARTICLE 9 <u>CONDITIONS PRECEDENT TO THE EFFECTIVE DATE</u>**........71

9.1    Conditions to the Effective Date. ........................................................71

9.2    Waiver of Conditions to the Effective Date. .......................................71

9.3    Effect of Non-Occurrence of Conditions to the Effective Date. ..........71

9.4    Notice of the Effective Date. ...............................................................72


**ARTICLE 10 <u>RELEASES, INJUNCTION, AND RELATED PROVISIONS</u>** ....72

10.1   Debtors' Releases ................................................................................72

10.2   Exculpation and Limitation of Liability.................................................73

**ARTICLE 11 <u>RETENTION OF JURISDICTION AND POWER</u>** .......................73

11.1   Scope of Retained Jurisdiction and Power. ..........................................73

11.2   Non-Exercise of Jurisdiction. ..............................................................75

**ARTICLE 12 <u>MISCELLANEOUS PROVISIONS</u>**...................................................75

12.1   Payment of Statutory Fees....................................................................75

12.2   Dissolution of the Committees .............................................................75

12.3   Modifications and Amendments ...........................................................75

12.4   Severability of Plan Provisions. ...........................................................76

12.5   Compromises and Settlements. ............................................................76

12.6   Binding Effect of Plan .........................................................................76

12.7   Term of Injunctions or Stays. ...............................................................76

12.8   Revocation, Withdrawal, or Non-Consummation................................76

12.9   Exemption from Transfer Taxes...........................................................76

12.10  Computation of Time. ..........................................................................77

12.11   Transactions on Business Days. .........................................................77

12.12   Good Faith. ..........................................................................................77

12.13   Governing Law. ....................................................................................77

12.14   Notices. .................................................................................................77

12.15   Additional Documents. .........................................................................78

12.16   Conflicts with the Plan ........................................................................78

**ARTICLE 13 <u>REQUEST FOR CONFIRMATION AND RECOMMENDATION</u>**
..........................................................................................................................78

13.1   Request for Confirmation. ......................................................................78

13.2   Recommendation. ...................................................................................78

## INTRODUCTION

Millenkamp Cattle, Inc. and its affiliated debtors (the "Debtors") hereby propose this *Amended Plan of Reorganization* (the "Plan"). Holders of Claims and Interests may refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, historical financial information, and projections of future operations, as well as a summary and description of the Plan. The Plan provides for the substantive consolidation of the Debtors assets and liabilities for purposes of the Plan, as described in section 5.1 below, including all distributions hereunder.

All Holders of Claims who are entitled to vote on the Plan are encouraged to read the Plan and the Disclosure Statement in their entirety before voting to accept or reject the Plan. Subject to certain restrictions and requirements set forth in Bankruptcy Code section 1127, Bankruptcy Rule 3019, the Debtors reserve the right to alter, amend, modify, revoke, or withdraw the Plan prior to its substantial consummation.

No solicitation materials, other than the Disclosure Statement and related materials transmitted therewith, have been approved for use in soliciting acceptances and rejections of this Plan. Nothing in the Plan should be construed as constituting a solicitation of acceptances of the Plan unless and until the Disclosure Statement has been approved and distributed to Holders of Claims to the extent required by Bankruptcy Code section 1125.

**ALL HOLDERS OF CLAIMS AND INTERESTS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, RULE 3019 OF THE BANKRUPTCY RULES, AND ARTICLE X OF THE PLAN, THE DEBTORS RESERVE THE RIGHT TO ALTER, AMEND, MODIFY, SUPPLEMENT, REVOKE, OR WITHDRAW THE PLAN PRIOR TO ITS CONSUMMATION.**

*-REMAINDER OF PAGE INTENTIONALLY LEFT BLANK-*

# ARTICLE 1
## DEFINED TERMS AND RULES OF INTERPRETATION

A capitalized term used in this Plan shall have the meanings set forth in this Article I. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules.

**1.1** **503(b)(9) Order:** On August 29, 2024, the Court entered an Order on Debtors' Motion to Amend Order on the Amended Motion to Allow and Pay 503(b)(9) Claims (Docket Nos. 476 & 584).

**1.2** **Administrative Claim:** Any Claim against any Debtor for costs and expenses of administration of the Chapter 11 Cases pursuant to section 327, 328, 330, 365, 503(b), 507(a)(2) or 507(b) of the Bankruptcy Code, including (i) the actual and necessary costs and expenses incurred on or after the Petition Date and through the Effective Date of preserving the Estates and operating the Debtors' business, (ii) any Professional Fee Claim, (iii) any fee or charge assessed against the Estates pursuant to sections 1911 through 1930 of chapter 123 of title 28 of the United States Code, (iv) any Allowed Claim that is to be treated as an Administrative Claim pursuant to a Final Order of the Bankruptcy Court under section 546(c)(2) of the Bankruptcy Code, and (v) any Allowed Cure Claim.

**1.3** **Administrative Claims Bar Date:** The last date by which any Person must File a request for payment of an Administrative Claim, which date shall be the first Business Day that is at least thirty (30) calendar days after the Effective Date, or, alternatively, such earlier date as is set by the Bankruptcy Court. For the avoidance of doubt, post-petition statutory tax claims shall not be subject to any Administrative Claims Bar Date.

**1.4** **Allowed, Allowed Claim, or Allowed Administrative Claim:**

    a.    with respect to a Claim arising prior to the Petition Date (including a Section 503(b)(9) Claim):

        (i)    either (A) a proof of claim was timely Filed by the applicable Claims Bar Date, or (B) a proof of claim is deemed timely Filed either as a result of such Claim being Scheduled or by a Final Order; and

        (ii)    either (A) the Claim is not a Contingent Claim, a Disputed Claim, an Unliquidated Claim, or a Disallowed Claim; or (B) the Claim is expressly allowed by a Final Order or under the Plan;

    b.    with respect to a Claim arising on or after the Petition Date (excluding a Section 503(b)(9) Claim), a Claim that has been allowed by a Final Order or under the Plan.

Unless otherwise specified in the Plan or by a Final Order, an "Allowed Administrative Claim" or "Allowed Claim" shall not, for any purpose under the Plan, include interest, penalties, fees, or late charges on such Administrative Claim or Claim from and after the Petition Date.

Moreover, any portion of a Claim that is satisfied, released, or waived during the Chapter 11 Cases is not an Allowed Claim. For the avoidance of doubt, any and all Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder.

      **1.5**       **Asset:** With respect to a Person, all of the right, title and interest of such Person in and to property of whatever type or nature, including real, personal, mixed, intellectual, tangible and intangible property, which, for avoidance of doubt, includes insurance policies and any rights, claims or potential claims with respect thereto.

      **1.6**       **Assumption Notice** means a notice of the assumption or assumption and assignment, and any proposed Cure Amount provided to counterparties to executory contracts and unexpired leases pursuant to the Disclosure Statement Order.

      **1.7**       **Avoidance Actions:** Any and all causes of action, claims, remedies, or rights, that may be brought by or on behalf of the Debtors or the Estates under Bankruptcy Code sections 542, 544, 547, 548, 549, 550, 551, or 553, or under related state or federal statutes, or pursuant to any theory or cause of action under common law, regardless whether such action has been commenced prior to the Effective Date.

      **1.8**       **Ballot:** The ballot form authorized by the Bankruptcy Court to indicate acceptance or rejection of the Plan and to opt out of the release provided by Section 10.2 herein.

      **1.9**       **Bankruptcy Code:** Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as the same may be amended from time to time to the extent applicable to the Chapter 11 Cases.

      **1.10**      **Bankruptcy Court:** The United States Bankruptcy Court for the District of Idaho, or in the event such court ceases to exercise jurisdiction over any Chapter 11 Case, such other court or adjunct thereof that exercises jurisdiction over such Chapter 11 Case in lieu of the United States Bankruptcy Court for the District of Idaho.

      **1.11**      **Bankruptcy Rules:** The Federal Rules of Bankruptcy Procedure promulgated by the Supreme Court of the United States under 28 U.S.C. § 2075, as the same may be amended from time to time to the extent applicable to the Chapter 11 Cases.

      **1.12**      **Bar Date**: The General Bar Date or any other date established by the Bankruptcy Court as the deadline by which Proofs of Claim or requests for payment of Administrative Claims must be filed.

      **1.13**      **Bar Date Order**: The Order (I) Vacating the Original Bar Date and (II) Establishing a Deadline to File Proofs of Claim (Docket No. 393).

      **1.14**      **Benefit Plan:** Any "employee benefit plan" as defined in section 3(3) of ERISA, compensation, employment, consulting, severance, retention or similar plan, agreement, arrangement, program or policy, or other plan, agreement, arrangement, program or policy providing for compensation, bonuses or other forms of incentive compensation, including vacation benefits, insurance, medical, dental, vision, prescription or fringe benefits, life insurance, perquisites, disability sick leave benefits or employee assistance program, in each case, that is

sponsored, maintained or administered or entered into by the Debtors for the benefit of their respective employees or non-employee directors.

**1.15**     **Business Day:** Any day other than a Saturday, a Sunday, a "legal holiday" (as defined in Bankruptcy Rule 9006(a)), or any other day on which commercial banks in the State of Idaho are required or authorized to close by law or executive order.

**1.16**     **Canyonlands**:  731.53 acre tract of land located at 1657 River Road, Buhl, Idaho.

**1.17**     **Cash:** Cash and cash equivalents, including bank deposits, wire transfers, checks representing good funds, and legal tender of the United States of America or instrumentalities thereof.

**1.18**     **Cash Collateral Orders:** Collectively, the Final Cash Collateral Orders and the preceding interim orders entered by the Bankruptcy Court authorizing the Debtors to use Cash and providing adequate protection.

**1.19**     **Cause of Action:** any Claim, action, class action, claim, cross-claim, counterclaim, third-party claim, cause of action, controversy, dispute, demand, right, Lien, indemnity, contribution, rights of subrogation, reimbursement, guaranty, suit, obligation, liability, debt, damage, judgment, loss, cost, attorneys' fees and expenses, account, defense, remedy, offset, power, privilege, license or franchise, in each case, of any kind, character or nature whatsoever, asserted or unasserted, accrued or unaccrued, known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, foreseen or unforeseen, direct or indirect, choate or inchoate, secured or unsecured, allowable or disallowable, Allowed or Disallowed, assertible directly or derivatively (including, without limitation, under alter-ego theories), in rem, quasi in rem, in personam or otherwise, whether arising before, on or after the Petition Date, arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, in contract or in tort, at law, in equity or pursuant to any other theory or principle of law, including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, veil piercing, unjust enrichment, disgorgement, restitution, contribution, indemnification, rights of subrogation and joint liability, regardless of where in the world accrued or arising. For the avoidance of doubt, "Cause of Action" expressly includes (i) any Cause of Action held by a natural person who is not yet born or who has not yet attained majority as of the Petition Date or as of the Effective Date, (ii) any right of setoff, counterclaim or recoupment and any Cause of Action for breach of contract or for breach of duty imposed by law or in equity, (iii) the right to object to or otherwise contest Claims or Interests, (iv) any Cause of Action pursuant to section 362 of the Bankruptcy Code or chapter 5 of the Bankruptcy Code, (v) any claim or defense, including fraud, mistake, duress and usury and any other defense set forth in section 558 of the Bankruptcy Code, and (vi) any claim under any state or foreign law, including for the recovery of any fraudulent transfer or similar theory.

**1.20**     **Chapter 11 Cases:** The voluntary chapter 11 bankruptcy cases commenced by the Debtors consisting of Millenkamp Cattle, Inc., Case No. 24-40158-NGH; Idaho Jersey Girls,

LLC, Case No. 24-40159; East Valley Cattle, LLC, Case No. 40160; Millenkamp Properties, L.L.C., Case No. 24-40161; Millenkamp Properties II, LLC, Case No. 24-40162; Millenkamp Family, LLC, Case No. 24-40163; Goose Ranch, LLC, Case No. 24-40164; Black Pine Cattle, LLC, Case No. 40166; Millenkamp Enterprises, LLC, Case No. 24-40167; and Idaho Jersey Girls Jerome Dairy, LLC, Case No. 24-40165, which are being jointly administered under the case caption *In re Millenkamp Cattle, Inc., et al.*, Case No. 24-40158-NGH (Bankr. D. Idaho).

**1.21**     **Claim:** Any "claim" as defined in Bankruptcy Code section 101(5), against any of the Debtors or against any property of the Debtors.

**1.22**     **Claims Bar Date:** As applicable, the Administrative Claims Bar Date, the General Claims Bar Date, the Governmental Claims Bar Date, any Supplemental Bar Date, or the Rejection Claims Bar Date.

**1.23**     **Class:** A class of Claims or Interests designated pursuant to the Plan, or any subclass thereof pursuant to section 1122(a) of the Bankruptcy Code.

**1.24**     **Collateral:** Any Estate Asset that is subject to a Lien to secure the payment or performance of a Claim, which Lien is perfected and not subject to avoidance under the Bankruptcy Code or otherwise invalid or unenforceable under the Bankruptcy Code or applicable non-bankruptcy law.

**1.25**     **Confirmation:** The entry of the Confirmation Order by the Bankruptcy Court on the docket of the Chapter 11 Cases.

**1.26**     **Confirmation Hearing:** The hearing held by the Bankruptcy Court to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

**1.27**     **Confirmation Order:** The order of the Bankruptcy Court confirming this Plan pursuant to Bankruptcy Code section 1129.

**1.28**     **Corn Silage Group.** Consists of corn silage secured creditors: Ed Chonjnacky, Michael Chonjnacky, Dusty Brow Farms, Inc., Grant 4-D Farms, LLC, Grant & Hagan, Inc., Douglas J. Grant, Hollifield Ranches, Inc., Standing 16 Ranch Land Company, LLC, Star Falls Farms, LLC, Steel Ranch, LLC, Bo Stevenson dba B&A Farms, Alexander K. Reed, Triple C Farms, LLC, Clint D. Thompson, and Jean L. Thompson.

**1.29**     **Contingent Claim:** Any Claim that is Scheduled or Filed as contingent.

**1.30**     **Corporate Action:** Any action, approval, authorization, decision, or other act of any kind that would be necessary on the part of any Person for any corporation, limited liability company, general partnership, or other Person to in turn act.

**1.31**     **Conterra:** Conterra Holdings, LLC d/b/a Conterra Ag Capital as loan servicer and power of attorney for Ag Funding SC II LLC and Conterra Holdings, LLC d/b/a Conterra Ag Capital as loan servicer and power of attorney for Rooster Capital IV LLC.

**1.32**     **Creditors' Committee:**   The statutory committee of unsecured creditors

appointed by the U.S. Trustee on May 14, 2024, pursuant to section 1102(a)(1) of the Bankruptcy Code.

**1.33**    **Cure Amount:** The payment of Cash or the distribution of other property (as the parties may agree or the Bankruptcy Court may order) as necessary to (i) cure a monetary default by the Debtors in accordance with the terms of an executory contract or unexpired lease of the Debtors, and (ii) permit the Debtors to assume such executory contract or unexpired lease under section 365(a) of the Bankruptcy Code.

**1.34**    **Cure Claim:** A Claim for a Cure Amount in connection with the assumption or assumption and assignment of an executory contract or unexpired lease under section 365(a) of the Bankruptcy Code.

**1.35**    **Debtor** or **Debtors:** has the meaning set forth in the introductory paragraph of the Plan.

**1.36**    **Debtor Exculpated Parties:** The Debtors and their respective Related Parties. For the avoidance of doubt, Debtor Exculpated Parties shall include the Debtors' current officers and directors and their duly employed professionals in these Bankruptcy Cases.

**1.37**    **Debtors' Releases:** The releases given on behalf of the Debtors and their Estates to the Released Parties as set forth in Section 10.1 herein.

**1.38**    **DIP Claims:** Any Claim in respect of any DIP Obligations (as defined in the DIP Order) owed by the Debtors under the DIP Order.

**1.39**    **DIP Credit Agreement:** That certain Secured Superpriority Debtor-in-Possession Loan Agreement dated April 22, 2024, between Millenkamp Cattle, Inc., Black Pine Cattle, LLC, East Valley Cattle, LLC, Goose Ranch LLC, Idaho Jersey Girls, LLC, Idaho Jersey Girls Jerome Dairy LLC, Millenkamp Enterprises LLC, Millenkamp Family LLC, Millenkamp Properties LLC, and Millenkamp Properties II, LLC and Sandton Capital Solutions Master Fund VI, LP.

**1.40**    **DIP Financing:** The post-petition financing facility issued pursuant to the DIP Credit Agreement and the DIP Order.

**1.41**    **DIP Lender:** Sandton Capital Solutions Master Fund VI, LP.

**1.42**    **DIP Loan Documents:** As set forth in the DIP Order.

**1.43**    **DIP Order:** The Final order Authorizing the Debtors to (A) Obtain Post-Petition Financing; and (B) Granting Adequate Protection to Pre-Petition Secured Lenders (Docket No. 503).

**1.44**    **Disallowed Claim:** Any Claim that (a) is not Scheduled, or is listed thereon as contingent, unliquidated, disputed, or in an amount equal to zero, and whose Holder failed to timely File a proof of claim by the applicable Claims Bar Date (unless late filing was permitted by a Bankruptcy Court order), but excluding any Claim that is expressly Allowed by a Final Order or

under the Plan; or (b) has been disallowed pursuant to an order of the Bankruptcy Court.

**1.45** **Disclosure Statement:** That certain disclosure statement, including all exhibits and schedules thereto or referenced therein, that relates to this Plan and has been prepared and distributed by the Debtors, as plan proponents, as approved by the Bankruptcy Court pursuant to Bankruptcy Code section 1125, as the same may be amended, modified, or supplemented.

**1.46** **Disclosure Statement Order:** The order approving the Disclosure Statement, authorizing the Debtors to solicit acceptances of the Plan and establishing certain related procedures and deadlines.

**1.47** **Disputed Claim:** Any Claim:

    a.    that is disputed in whole or in part under the Plan; or

    b.    that is not expressly Allowed by a Final Order or under the Plan; and

        (i)    as to which a proof of claim is Filed or is deemed Filed as a result of such Claim being Scheduled; and

        (ii)    as to which either:

            (1)    an objection or request for estimation or subordination has been timely Filed within the applicable period of limitations fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order under which the applicable period of limitation has expired, and (B) has not been denied by a Final Order or withdrawn; or

            (2)    the Claim Objection Deadline has not passed as to such Claim (unless the Debtors determined that it will not object to such Claim).

**1.48** **Disputed Cure Claim:** The amount that a counterparty to a Contract Dispute alleges must be paid in order for an executory contract or unexpired lease to be assumed or assumed and assigned as provided under the Plan.

**1.49** **Distribution:** Any initial or subsequent issuance, payment, or transfer of consideration made under the Plan.

**1.50** **Distribution Date:** Any date on which a Distribution is made.

**1.51** **Distribution Record Date:** The record date for determining entitlement of Holders of Claims to receive Distributions under the Plan, which date shall be the Effective Date.

**1.52** **Distribution Reserve:** One or more reserves in respect of Contingent Claims, Disputed Claims, or Unliquidated Claims established by the Debtors.

**1.53    Effective Date:** Upon entry of a final and non-appealable order confirming the Plan.

**1.54    Entity:** The meaning as set forth in section 101(15) of the Bankruptcy Code.

**1.55    Estates:** Individually or collectively, the estate or estates of the Debtors created under section 541 of the Bankruptcy Code.

**1.56    Estate Assets:** Collectively, (a) any and all right, title, and interest of the Debtors and the Estates in and to property of whatever type or nature, including their books and records and all Avoidance Actions and Causes of Action, as of the Effective Date.

**1.57    Estate Released Parties:** Collectively, the Debtors and their respective Related Parties, including Dentons, Johnson May, and Kander.

**1.58    Exit Credit Agreement:** The credit agreement to be entered into in connection with the Exit Term Loan Facility (including any guarantee agreements, pledge and collateral agreements, and other security documents), which shall be materially consistent with the Plan and which shall be in form and substance acceptable to the Debtors in good faith.

**1.59    Exit Term Loan Facility:** The Senior Secured Exit Term Loan Facility between the Debtors and Sandton in the amount of $45 million, bearing PIK interest at 15% per annum on the outstanding principal amount on a monthly basis, with a 24-month maturity date.

**1.60    Exit Term Loan Facility Collateral:**  All right, title and interest of any Reorganized Debtor in and to all real estate, accounts, chattel paper, commercial tort claims, consumer goods, deposit accounts, documents, equipment, farm products, general intangibles, instruments, inventory, investment property, letter-of-credit rights, letters of credit, money, Real Estate, and fixtures, in each case whether a Grantor now has or hereafter acquires ownership or other rights therein.

**1.61    Exculpated Parties:** collectively, (i) the Debtor Exculpated Parties and (ii) the Creditors' Committee and their Related Parties.

**1.62    File, Filed, or Filing:** Duly and properly filed with the Bankruptcy Court and reflected on the docket of the Chapter 11 Cases.

**1.63    Final Decree:** An order entered pursuant to Bankruptcy Code section 350 and Bankruptcy Rule 3022 closing the Chapter 11 Cases of one or any of the Debtors.

**1.64    Final Order:** An order or judgment of the Bankruptcy Court entered on the docket of the Chapter 11 Cases:

a.    that has not been reversed, rescinded, stayed, modified, or amended;

b.    that is in full force and effect; and

c.    with respect to which (i) the time to appeal or to seek review, rehearing,

remand, or a writ of certiorari has expired and as to which no timely filed appeal or petition for review, rehearing, remand, or writ of certiorari is pending; or (ii) any such appeal or petition has been dismissed or resolved by the highest court to which the order or judgment was appealed or from which review, rehearing, remand, or a writ of certiorari was sought.

For the avoidance of doubt, no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Bankruptcy Code section 502(j), Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rule 9024 may be or has been filed with respect to such order.

  **1.65**  <u>**General Claims Bar Date**</u>: July 31, 2024.

  **1.66**  <u>**General Unsecured Claim**</u>: Any unsecured, non-priority Claim existing as of the Petition Date or a Rejection Claim that is asserted against one or all of the Debtors or the Estates and is not a Secured Claim, Intercompany Claim, or Subordinated Claim.

  **1.67**  <u>**Holder**</u>: The Person that is the owner of record of a Claim or Interest, as applicable.

  **1.68**  <u>**Impaired**</u>: Any Class of Claims or Interests that is impaired within the meaning of Bankruptcy Code section 1124.

  **1.69**  <u>**Insider**</u>: A person as defined by Bankruptcy Code section 101(31).

  **1.70**  <u>**Insurance Policies**</u>: All insurance policies that have been issued to, or provide coverage at, any of the Debtors and all agreements, instruments, or documents relating thereto.

  **1.71**  <u>**Insured Claim**</u>: Any Claim or portion of a Claim (other than a Claim held by an employee of the Debtors for workers' compensation coverage under the workers' compensation program applicable in the particular state in which the employee is employed by the Debtors) that is insured under the Debtors' insurance policies, but only to the extent of such coverage.

  **1.72**  <u>**Intercompany Claim**</u>: A Claim against a Debtor held by another Debtor.

  **1.73**  <u>**Intercompany Interest**</u>: Any Interest in any Debtor that is held by another Debtor.

  **1.74**  <u>**IRC**</u>: The Internal Revenue Code of 1986, as amended.

  **1.75**  <u>**IRS**</u>: The Internal Revenue Service.

  **1.76**  <u>**Lien**</u>: Any lien, security interest, pledge, title retention agreement, encumbrance, leasehold, charge, mortgage, or hypothecation to secure payment of a debt or performance of an obligation, other than, in the case of securities and any other equity ownership interests, any restrictions imposed by applicable United States or foreign securities laws, as set forth in section 101(37) of the Bankruptcy Code.

**1.77** **MetLife:** MetLife Real Estate Lending LLC and Metropolitan Life Insurance Company.

**1.78** **McGregor:** 322.45 acre tract of land located at 1050 South 2300 East, Hazelton, Idaho.

**1.79** **Payment in Full:** The indefeasible payment in full in cash of the "Loans" (as defined in the Exit Credit Agreement) and all other "Obligations" (as defined in the Exit Credit Agreement) (other than contingent indemnification obligations for which a claim has not been asserted).

**1.80** **Person:** Any person or organization created or recognized by law, including any association, company, cooperative, corporation, entity, estate, fund, individual, joint stock company, joint venture, limited liability company, partnership, trust, trustee, unincorporated organization, government or any political subdivision thereof, or any other entity or organization of whatever nature.

**1.81** **Petition Date:** April 2, 2024, the Date which Debtors filed their voluntary chapter 11 petitions for relief in the Bankruptcy Court.

**1.82** **Preference Claim:** Any Avoidance Action that may be brought by or on behalf of the Debtors or the Estates under Bankruptcy Code section 547, or under related state or federal statutes, or pursuant to any theory or cause of action under common law, regardless whether such action has been commenced prior to the Effective Date.

**1.83** **Priority Claim:** A Claim that is entitled to priority under Bankruptcy Code section 507(a), other than an Administrative Claim and a Priority Tax Claim.

**1.84** **Priority Tax Claim:** Any Claim against any Debtor that is held by a Governmental Unit and of the kind entitled to priority in payment under sections 502(i) and 507(a)(8) of the Bankruptcy Code

**1.85** **Professional:** Any professional (other than an Ordinary Course Professional) employed in the Chapter 11 Cases pursuant to Bankruptcy Code sections 327, 328, 1103, or 1104 or any professional or other Person (in each case, other than an Ordinary Course Professional) seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to Bankruptcy Code section 503(b)(3) or 503(b)(4).

**1.86** **Professional Fee Claim:** A Claim of a Professional for compensation or reimbursement of costs and expenses (or of members of any of the Committees for reimbursement of expenses) relating to services provided during the period from the Petition Date through and including the Effective Date.

**1.87** **Professional Fee Escrow:** The escrow established and funded by the Debtors pursuant to Section 3.1.2(c) of the Plan to provide sufficient funds to satisfy in full all unpaid Allowed Professional Fee Claims.

**1.88**    **Pro Rata:** Proportionately so that the ratio of (a) the amount of consideration distributed on account of a particular Allowed Claim to (b) the amount or number of that Allowed Claim, is the same as the ratio of (x) the amount of consideration available for Distribution on account of, as applicable, all Allowed Claims in the Class in which the particular Allowed Claim is included to (y) as applicable, the amount of all Allowed Claims of that Class, as adjusted to take into account any applicable Distribution Reserves.

**1.89**    **Proof(s) of Claim:** A Proof of Claim against any of the Debtors filed in the Chapter 11 Cases in accordance with section 501 of the Bankruptcy Code.

**1.90**    **Rabo**: Rabo AgriFinance LLC

**1.91**    **Rejection Claim:** Any Claim for monetary damages as a result of the rejection of any prepetition executory contract or unexpired lease, whether rejected pursuant to the Confirmation Order or otherwise.

**1.92**    **Rejection Claims Bar Date:** To the extent not previously established by prior order of the Bankruptcy Court, thirty (30) calendar days after the Effective Date.

**1.93**    **Related Parties:** Collectively, all of the respective professionals duly employed by the Debtors, including the professionals' representatives, and successors and assigns of the referenced professionals; provided however, for the avoidance of doubt, with respect to each Committee, "Related Parties" shall include the members of such Committee but solely in their capacity as a member of such Committee, each of such member's representatives with respect to the Committee, and their counsel.

**1.94**    **Released Parties:** Collectively, (a) the Debtors and their Related Parties and (b) the Committee and its Related Parties.

**1.95**    **Releasing Parties:** Collectively, (a) the Released Parties; and (b) all Holders of Claims that (i) vote to accept the Plan *provided that*, notwithstanding anything contained herein to the contrary, in no event shall the Holder of a Claim that (x) does not vote to accept or reject this Plan, or (y) votes to reject this Plan, and returns such Ballot in accordance with the Disclosure Statement Order, be a Releasing Party.

**1.96**    **Reorganized Debtors**: means the Debtors, or any successors thereto, by merger, consolidation, or otherwise, on or after the Effective Date.

**1.97**    **Restructuring**: The restructuring of the existing debt and other obligations of the Debtors and their non-Debtor Affiliates on the terms and conditions set forth in the Plan.

**1.98**    **Sandton**: Sandton Capital Partners LP and Sandton Capital Solutions Master Fund VI, LP.

**1.99**    **Scheduled:** As set forth in the Schedules.

**1.100**    **Schedules:** The Schedules of Assets and Liabilities Filed by the Debtors in the Chapter 11 Cases, as such Schedules may be amended from time to time in accordance with

Bankruptcy Rule 1009.

**1.101    Section 503(b)(9) Claim:** A Claim arising under Bankruptcy Code section 503(b)(9).

**1.102    Secured Claim:** A Claim that is secured by a valid, perfected, and enforceable Lien on property in which the Debtors or the Estates have an interest, which Lien is valid, perfected, and enforceable under applicable law and not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law. A Claim is a Secured Claim only to the extent of the value of the Holder's interest in the Debtors' interest in the Collateral or to the extent of the amount subject to set-off against a Cause of Action held by the Debtors, whichever is applicable, and as determined under Bankruptcy Code section 506(a). To the extent that the value of such interest in the Debtors' interest in the subject Collateral or the amount subject to set-off against a Cause of Action held by the Debtors (as applicable) is less than the amount of the Claim which has the benefit of such security or is supported by such setoff right, such portion of the Claim is unsecured and shall be treated as a General Unsecured Claim unless, in any such case, the Class of which the Secured Claim is a part makes a valid and timely election in accordance with Bankruptcy Code section 1111(b) to have such Claim(s) treated as a Secured Claim to the extent Allowed.

**1.103    Securities Act:** The Securities Act of 1933, as amended.

**1.104    State:** Any U.S. state, any U.S. territory or the District of Columbia.

**1.105    Subordinated Claim:** Collectively, any Claim that is subordinated to General Unsecured Claims pursuant to Bankruptcy Code section 510, a Final Order, or by consent of the Holder of such Claim.

**1.106    Subordinated Collection Action:** Any judicial proceeding or other action initiated or taken by any Subordinated Lender, or by any Subordinated Lender in concert with other Persons, against a Reorganized Debtor to collect the Subordinated Indebtedness or otherwise to enforce the rights of any Subordinated Lender under the Subordinated Instruments or applicable law with respect to the Subordinated Indebtedness.

**1.107    Subordinated Indebtedness:** All of the indebtedness of each Debtor or Reorganized Debtor to any Subordinated Lender under the Subordinated Instruments.

**1.108    Subordinated Instruments:** Collectively, all documents or instruments executed and delivered by any Debtor or Reorganized Debtor to any Subordinated Lender evidencing or pertaining to the Subordinated Indebtedness.

**1.109    Subordinated Lender:** Any Person, other than Sandton, holding an Allowed Secured Claim.

**1.110    Supplemental Bar Date:** Any supplemental bar date that may be established by an order of the Bankruptcy Court.

**1.111    U.S. Trustee:** The Office of the United States Trustee for the District of Idaho.

**1.112**    **Unimpaired:** Any Class of Claims that is not impaired within the meaning of Bankruptcy Code section 1124.

**1.113**    **Uninsured Portion:** The portion of any Insured Claim, if any, that is not insured under the Debtors' insurance policies or that is beyond the extent of such coverage.

**1.114**    **Unliquidated Claim:** Any Claim that is Scheduled as unliquidated or that was filed in an unliquidated amount.

**1.115**    **Voting Agent:** Krystal R. Mikkilineni, Dentons Davis Brown, The Davis Brown Tower, 215 10th St., Suite 1300, Des Moines, Iowa 50309, krystal.mikkilineni@dentons.com.

**1.116**    **Voting Deadline:** The date and time by which all Ballots to accept or reject the Plan must be received in order to be counted under the Disclosure Statement Order.

**Rules of Interpretation:**

For purposes herein: (i) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (ii) except as otherwise provided herein, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (iii) except as otherwise provided, any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, restated, supplemented, or otherwise modified in accordance with the Plan; (iv) unless otherwise specified herein, all references herein to "Articles" are references to Articles of the Plan or hereto; (v) unless otherwise stated herein, the words "herein," "hereof," and "hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; (vi) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (vii) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (viii) unless otherwise specified, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply to the Plan; (ix) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (x) any docket number references in the Plan shall refer to the docket number of any document Filed with the Bankruptcy Court in the Chapter 11 Cases; (xi) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "Holders of Interests," "Disputed Interests," and the like as applicable; (xii) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; (xiii) any immaterial effectuating provisions may be interpreted by the Debtors, or after the Effective Date, the Reorganized Debtors, in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; and (xiv) except

as otherwise provided, any references to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter.

## ARTICLE 2
## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

      **2.1**      **Summary and Classification of Claims.** This Section classifies Claims—except for Administrative Claims, Professional Fee Claims, and Priority Tax Claims, which are not classified – for all purposes, including Confirmation, Distributions, and voting. A Claim is classified in a particular Class only to the extent that the Claim falls within the Class description. To the extent that part of a Claim falls within a different Class description, that part of the Claim is classified in that different Class. The following table summarizes the Classes of Claims under the Plan:

| CLASS | DESCRIPTION | IMPAIRED/ UNIMPAIRED | VOTING STATUS |
|---|---|---|---|
| None | Administrative Claims | Unimpaired | Not Entitled to Vote |
| None | Professional Fee Claims | Unimpaired | Not Entitled to Vote |
| None | Priority Tax Claims | Unimpaired | Not Entitled to Vote |
| Class 1 | Other Priority Claims | Unimpaired | Not Entitled to Vote (deemed to accept) |
| Class 2 | Corn Silage Group Secured Claims | Impaired | Entitled to Vote |
| Class 3A | A. Scott Jackson Trucking Secured Claim | Impaired | Entitled to Vote |
| Class 3B | B&H Farming Secured Claim | Unimpaired | Not Entitled to Vote |
| Class 3C | H&M Custom, LLC Secured Claim | Unimpaired | Not Entitled to Vote |
| Class 3D | Healthy Earth Enterprises, LLC Secured Claim | Unimpaired | Not Entitled to Vote |

| Class 3E | Kraus Farms, LLC Secured Claim | Impaired | Entitled to Vote |
|---|---|---|---|
| Class 3F | Milner Hay Company, LLC Secured Claim | Unimpaired | Not Entitled to Vote |
| Class 3G | Moss Grain Partnership Secured Claim | Unimpaired | Not Entitled to Vote |
| Class 3H | NorthWest Seed, Inc. Secured Claim | Unimpaired | Not Entitled to Vote |
| Class 3I | Performance Plus-Idaho, LLC Secured Claim | Impaired | Entitled to Vote |
| Class 3J | Tyche Ag, LLC Secured Claim | Unimpaired | Not Entitled to Vote |
| Class 3K | Wada Farms Partnership Secured Claim | Unimpaired | Not Entitled to Vote |
| Class 3L | Youree Land & Livestock Secured Claim | Impaired | Entitled to Vote |
| Class 3M | Eagle Creek Northwest, LLC Claim | Unimpaired | Not Entitled to Vote |
| Class 3N | Standlee Ag Resources and Premium Products Secured Claim | Impaired | Entitled to Vote |
| Class 4 | MetLife Secured Claims | Impaired | Entitled to Vote |
| Class 5 | Rabo Secured Claims | Impaired | Entitled to Vote |
| Class 6 | Conterra Secured Claims | Impaired | Entitled to Vote |
| Class 7A | CNH Industrial Capital Secured Claim | Impaired | Entitled to Vote |
| Class 7B | Daimler Truck Financial Services USA LLC Secured Claim | Unimpaired | Not Entitled to Vote |

| | | | |
|---|---|---|---|
| Class 7C | Farmers Bank | Unimpaired | Not Entitled to Vote |
| Class 7D | John Deere Construction & Forestry Secured Claim | Impaired | Entitled to Vote |
| Class 7E | Western States Cat Secured Claim | Unimpaired | Not Entitled to Vote |
| Class 7F | Kenworth Sales Company Secured Claim | Impaired | Entitled to Vote |
| Class 8A | MWI Veterinary Secured Claim | Impaired | Entitled to Vote |
| Class 8B | PerforMix Nutrition Systems Secured Claim | Unimpaired | Not Entitled to Vote |
| Class 8C | Rexel USA, Inc. d/b/a Platt Electric Supply Claim | Disputed | Not Entitled to Vote |
| Class 8D | Staker & Parson Company d/b/a Idaho Materials & Construction Claim | Unimpaired | Not Entitled to Vote |
| Class 8E | Les Schwab Tire Centers of Idaho, LLC Claims | Impaired | Entitled to Vote |
| Class 9 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 10 | Intercompany Claims | Impaired | Not Entitled to Vote (deemed to reject) |
| Class 11 | Equity Interests | Unimpaired | Not Entitled to Vote |

**NOTWITHSTANDING ANY OTHER TERM OR PROVISION OF THE PLAN, NO DISTRIBUTIONS WILL BE MADE ON ACCOUNT OF ANY CLAIM THAT IS NOT AN ALLOWED CLAIM AND NO RIGHTS WILL BE RETAINED ON ACCOUNT OF ANY CLAIM THAT IS A DISALLOWED CLAIM.**

     **2.2**     **Substantive Consolidation.** For purposes of the Plan only, all remaining Assets and liabilities of the Debtors shall be deemed the Assets and liabilities of a single consolidated entity. On the Effective Date: (a) all Assets (and all proceeds thereof) and liabilities of each Debtor shall be merged or treated as though they were merged into and with the Assets and liabilities of the other Debtors, (b) no Distributions shall be made under the Plan on account of intercompany Claims among the Debtors and all such Claims shall be eliminated, (c) all guarantees of the Debtors of the obligations of any other Debtors shall be deemed eliminated and extinguished so that any

Allowed Claim against any Debtor and guarantee thereof executed by any other Debtor and any joint and several liability of any of the Debtors shall be deemed to be one obligation of the consolidated Debtors, (d) each and every Claim filed or to be filed against any Debtor shall be filed against the consolidated Debtors, and shall be deemed one Claim against and obligation of the consolidated Debtors, and (e) for purposes of determining the availability of the right of setoff under section 553 of the Bankruptcy Code, the Debtors shall be treated as one entity so that, subject to the other provisions of section 553 of the Bankruptcy Code, debts due to any of the Debtors may be set off against the debts of the other Debtors. Such substantive consolidation shall not (other than for purposes related to the Plan) affect the pre-petition legal and corporate structures of the Debtors, or the legal title ownership of any assets owned by the separate Debtors. Entry of the Confirmation Order shall constitute the approval, pursuant to section 105(a) of the Bankruptcy Code, effective as of the Effective Date, of the substantive consolidation of the Debtors for Plan purposes.

**2.3**　　　**Classification & Voting Controversies.**

a.　　If a controversy arises regarding whether any Claim is properly classified under the Plan, then the Bankruptcy Court shall, upon proper motion and notice, determine such controversy at the Confirmation Hearing.

b.　　If the Bankruptcy Court finds that the classification of any Claim is improper, then such Claim shall be reclassified and the Ballot previously cast by the Holder of such Claim shall be counted in, and the Claim shall receive the treatment prescribed in, the Class in which the Bankruptcy Court determines such Claim should have been classified, without the necessity of resoliciting any votes on the Plan.

# ARTICLE 3
## CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

**3.1**　**Unclassified Claims.**

**3.1.1**　　**Administrative Claims.** Administrative expenses are costs or expenses of administering the Debtors' Bankruptcy Cases which are allowed under Bankruptcy Code section 507(a)(2). All Persons requesting payment of Administrative Expense Claims, including but not limited to Claims under section 503(b)(9) of the Bankruptcy Code, **shall file a proof of Claim with the Court no later than the Administrative Claims Bar Date, which shall be within or no later than the first Business Day that is at least thirty (30) calendar days after the Effective Date.** The Administrative Claims Bar Date shall not apply to Professional Persons requesting payment of Professional Fee Claims, DIP Claims, or Priority Tax Claims, or to the extent that an Administrative Claim has already been Allowed or paid during the Chapter 11 Cases. Objections to such applications for payment (whether by Professional Persons requesting payment of Professional Fee Claims or Persons requesting payment of Administrative Expense Claims), if any, must be written, filed with the Court, and served on the applicable parties within thirty (30) days after such application or Claim is filed (the "Administrative Claims Objection Deadline").

On August 29, 2024, the Court entered an Order on Debtors' Motion to Amend Order on the Amended Motion to Allow and Pay 503(b)(9) Claims (Docket Nos. 476 & 584) (the "503(b)(9) Order"). Pursuant to the 503(b)(9) Order, 503(b)(9) Claims in the amount of approximately $5,170,846.56 have been deemed as Allowed 503(b)(9) Claims. Additional 503(b)(9) Claims have been allowed through motions and/or agreements with the Debtors. A full listing of the Allowed 503(b)(9) Claims as of the date of this Plan are included in the Disclosure Statement, totaling $5,258,329.47. To the extent additional 503(b)(9) Claims exist, such Claim Holders shall file a Claim for allowance of their 503(b)(9) Claim by the Administrative Claims Bar Date.

The Debtors or the Reorganized Debtors, as applicable, may object to any Administrative Claim no later than the Administrative Claims Objection Deadline, subject to extensions by the Bankruptcy Court, agreement in writing of the parties, or on motion of a party in interest approved by the Bankruptcy Court. Unless the Debtors or the Reorganized Debtors (or other party with standing) object to a timely-Filed and properly served Administrative Claim, such Administrative Claim will be deemed Allowed in the amount requested. In the event that the Debtors or the Reorganized Debtors object to an Administrative Claim, the parties may confer to try to reach a settlement and, failing that, the Bankruptcy Court will determine whether such Administrative Claim should be Allowed and, if so, in what amount.

Except with respect to Professional Fee Claims, DIP Claims, and Priority Tax Claims and except to the extent that an Administrative Claim has already been paid during the Chapter 11 Cases, or a Holder of an Allowed Administrative Claim and the applicable Debtor, or after the Effective Date, such Holder and the Reorganized Debtors, agree to less favorable treatment, each Holder of an Allowed Administrative Claim shall be paid in full in Cash (i) if such Administrative Claim is Allowed as of the Effective Date, on or as soon as reasonably practicable after the Effective Date; or (ii) if such Administrative Claim is not Allowed as of the Effective Date, upon entry of an order of the Bankruptcy Court Allowing such Claim, or as soon as reasonably practicable thereafter.

**HOLDERS OF ADMINISTRATIVE CLAIMS THAT ARE REQUIRED TO, BUT DO NOT, FILE AND SERVE A REQUEST FOR PAYMENT OF SUCH ADMINISTRATIVE CLAIMS BY THE ADMINISTRATIVE CLAIMS BAR DATE SHALL BE FOREVER BARRED, ESTOPPED, AND ENJOINED FROM ASSERTING SUCH ADMINISTRATIVE CLAIMS AGAINST THE DEBTORS OR THEIR PROPERTY, AND SUCH ADMINISTRATIVE CLAIMS SHALL BE DEEMED DISCHARGED AS OF THE EFFECTIVE DATE.**

### 3.1.2    Professional Fee Claims.

a.    <u>Final Fee Applications.</u> All final requests for allowance and payment of Professional Fee Claims must be Filed with the Bankruptcy Court no later than the first Business Day that is forty-five (45) days after the Effective Date unless otherwise ordered by the Bankruptcy Court.

b.    <u>Non-Estate Professionals.</u>    Pursuant to the order approving the

Debtor's motion to establish procedures for Bankruptcy Code 506(b) claims, Holders of 506(b) Claims must file, within forty-five (45) days after the Effective Date, either (i) an amended Proof of Claim encompassing the Holder's Professional Fee Claim; or (ii) file a Notice of 506(b) Claim pursuant to the 506(b) claim procedures. Such 506(b) claims submitted as an amended Proof of Claim or through a Notice of 506(b) Claim shall be considered a Professional Fee Claim and subject to the terms of this section 3.1.2.

c. Objections to Professional Fee Claims. Any objections to Professional Fee Claims shall be Filed and served no later than twenty-one (21) days after the filing of (i) final requests for allowance and payment of Professional Fee Claims; (ii) an amended Proof of Claim to include the Professional Fee Claim; or (iii) a Notice of 506(b) Claim.

d. Professional Fee Claims Estimate. Professionals shall estimate in good faith their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services compensable by the Debtors' Estates before and as of the Effective Date and shall deliver such reasonable, good faith estimate to the Debtors no later than five (5) Business Days prior to the Effective Date; provided, that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment of Filed Professional Fee Claims. If a Professional does not provide an estimate, the Debtors shall estimate in good faith the unpaid and unbilled fees and expenses of such Professional.

e. Professional Fee Escrow. As soon as reasonably practicable after the Confirmation Date and no later than the Effective Date, the Debtors shall establish and fund the Professional Fee Escrow with Cash based on their evaluation of the Professional Fee Claims Estimates, and no Liens, Claims, or Interests shall encumber the Professional Fee Escrow in any way. The Professional Fee Escrow (including funds held in the Professional Fee Escrow) (i) shall not be and shall not be deemed property of the Debtors or the Reorganized Debtors and (ii) shall be held in trust for the Professionals and for no other Person or Entity until all Professional Fee Claims have been irrevocably paid in full; provided, that funds remaining in the Professional Fee Escrow after all Allowed Professional Fee Claims have been irrevocably paid in full shall revert to the Reorganized Debtors. Allowed Professional Fee Claims shall be paid in Cash to such Professionals from funds held in the Professional Fee Escrow when such Claims are Allowed by an order of the Bankruptcy Court; provided that the Debtors' obligations with respect to Professional Fee Claims shall not be limited nor deemed to be limited in any way to the balance of funds held in the Professional Fee Escrow.

If the amount of funds in the Professional Fee Escrow is insufficient to fund payment in full of all Allowed Professional Fee Claims and any other Allowed amounts owed to Professionals, the deficiency shall be promptly funded to the Professional Fee Escrow by the Reorganized Debtors without any further notice to, action, order, or approval of the Bankruptcy Court or by any other Entity.

f. Post Effective Date Fees and Expenses. Except as otherwise specifically provided in the Plan, on and after the Effective Date, the Debtors or the Reorganized Debtors, as applicable, may, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and

Consummation incurred by the Debtors and the Reorganized Debtors, as applicable.

        **3.1.3**      **Priority Tax Claims.** Except to the extent a Holder of an Allowed Priority Tax Claim and the Debtor against which such Claim is asserted agree to different treatment, on the Effective Date or as soon as reasonably practicable thereafter, each Holder of an Allowed Priority Tax Claim shall receive, on account of such Allowed Priority Tax Claim, either Cash in an amount equal to the Allowed amount of such Claim or such other treatment as may satisfy section 1129(a)(9) of the Bankruptcy Code.

| **Priority Tax Claimant** | **Allowed Priority Amount** |
|---|---|
| Cassia County Tax Collector | $59,591.88 |
| Department of Treasury | $1,752.63 |
| Idaho State Tax Commission | $5,612.20 |

        **3.1.4**      **DIP Claims.** The DIP Claims will be paid in full on the Effective Date by the Exit Term Loan Facility.

**3.2**      **Class 1: Other Priority Claims**

a.        <u>Classification</u>. Class 1 consists of all Other Priority Claims against each Debtor. There are no known Other Priority Claims.

b.        <u>Treatment</u>. Except to the extent that a Holder of an Allowed Other Priority Claim and the applicable Debtor prior to the Effective Date, or after the Effective Date, such Holder and the applicable Reorganized Debtor agree to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Allowed Other Priority Claim, each such Holder shall receive payment in full, in Cash, of the unpaid portion of its Allowed Other Priority Claim on the Effective Date or as soon thereafter as reasonably practicable (or, if payment is not then due, shall be paid in accordance with its terms in the ordinary course).

c.        <u>Voting</u>. Class 1 is Unimpaired under the Plan. Each Holder of an Allowed Other Priority Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Allowed Other Priority Claims are not entitled to vote to accept or reject the Plan.

**3.3**      **Class 2: Corn Silage Group Secured Claims.**

        a.        <u>Classification</u>. Class 2 is classified as the Corn Silage Group Secured

Claims which consists of the Corn Silage Group Secured Creditors: Ed Chonjnacky, Michael Chonjnacky, Dusty Brow, Inc., Grant 4-D Farms, LLC, Grant & Hagan, Inc., Douglas J. Grant, Hollifield Ranches, Inc., Standing 16 Ranch Land Company, LLC, Star Falls Farms, LLC, Steel Ranch, LLC, Bo Stevenson dba B&A Farms, Alexander K. Reed, Triple C Farms, LLC, Clint D. Thompson, and Jean L. Thompson.

| Claimant | Allowed Claim Amount |
|---|---|
| Ed Chonjnacky | $312,330.00 |
| Michael Chonjnacky | $393,753.60 |
| Dusty Brow Farms, Inc. | $245,000.00 |
| Grant 4-D Farms, LLC | $396,601.71 |
| Grant & Hagan, Inc. | $604,551.60 |
| Douglas J. Grant | 222,617.06 |
| Hollifield Ranches, Inc. | $2,044,794.31 |
| Standing 16 Ranch Land Company, LLC | $526,454.40 |
| Star Falls Farms, LLC | $404,878.00 |
| Steel Ranch, LLC | $160,000.00 |
| Bo Stevenson dba B&A Farms | $195,478.80 |
| Alexander K. Reed | $130,674.66 |
| Triple C Farms, LLC | $1,011,955.80 |
| Clint D. Thompson | $49,000.00 |
| Jean L. Thompson | $38,000.00 |

        b.      Treatment. The Corn Silage Group Secured Claims will have been paid in full as of the Effective Date pursuant to monthly adequate protection payments, except as to any pre- and post-petition interest and attorneys' fees associated with their Claims.  The Corn Silage Group Secured Claim Holders shall provide to the Debtors no later than five (5) Business Days before the Effective Date a statement of interest and attorneys' fees.  Such interest and attorneys'

fees shall be paid pursuant to the Budget, with quarterly payments at 5% interest through March 2027.  The Corn Silage Group Secured Claims Liens shall retain the same validity, perfection, priority, and extent as existing on the Petition Date but shall be subordinate, in all respects to the Exit Term Loan Facility Priority Liens on the Exit Term Loan Facility Collateral.

c.      <u>Voting</u>. Class 2 is Impaired under the Plan. Each Holder of Class 2 Claims is entitled to vote to accept or reject the Plan.

### 3.4    <u>Class 3: Other Secured Ag Lien Claims.</u>

<u>Classification</u>. Class 3 consists of the subclasses of Other Secured Ag Lien Claims that are not considered to be part of the Corn Silage Group.

#### 3.4.1   <u>Class 3A: A. Scott Jackson Trucking Secured Claim.</u>

a.      <u>Classification</u>. Class 3A consists of the A. Scott Jackson Trucking Secured Claim.

b.      <u>Treatment</u>. A. Scott Jackson Trucking filed a Proof of Claim in the amount of $184,656.30. A. Scott Jackson Trucking shall have an Allowed Class 3A Claim in the amount of $184,656.30.

Except to the extent that A. Scott Jackson Trucking and the Debtors agree to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Allowed A. Scott Jackson Trucking Secured Claim, A. Scott Jackson Trucking shall be paid pursuant to the Budget, with quarterly payments at 5% interest through March 2027.  The A. Scott Jackson Trucking Secured Claim Lien shall retain the same validity, perfection, priority, and extent as existing on the Petition Date but shall be subordinate, in all respects to the Exit Term Loan Facility Priority Liens on the Exit Term Loan Facility Collateral.

c.      <u>Voting</u>. Class 3A is Impaired under the Plan. Class 3A is entitled to Vote under the Plan.

#### 3.4.2   <u>Class 3B: B&H Farming Secured Claim.</u>

a.      <u>Classification</u>. Class 3B consists of the B&H Farming Secured Claim.

b.      <u>Treatment</u>. B&H Farming filed a Proof of Claim in the amount of $474,674.79 and shall have an Allowed Class 3B Secured Claim in the amount of $474,674.79. B&H Farming has received and will receive adequate protection payments in the amount of $474,674.79 prior to the Effective Date.  As such, the B&H Farming Allowed Class 3B Secured Claim will be paid in full as of the Effective Date and B&H Farming shall receive no further Distribution under the Plan. Any pre-petition liens claimed by B&H Farming in property of the Debtors shall be considered released and have no further effect.

        c.      <u>Voting</u>. Class 3B is Unimpaired under the Plan. Class 3B is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

### 3.4.3    Class 3C: H&M Custom, LLC Secured Claim.

        a.      <u>Classification</u>. Class 3C consists of the H&M Custom, LLC ("H&M") Secured Claim.

        b.      <u>Treatment</u>. H&M filed a Proof of Claim in the amount of $4,769,170.78 and H&M shall have an Allowed Class 3C Claim in the amount of $4,769,170.78. H&M received a Court-approved $2,500,000.00 adequate protection payment during the pendency of the Chapter 11 Cases. H&M has received and will receive by the Effective Date additional adequate protection payments totaling $2,269,171.00.  As such, the H&M Allowed Class 3C Secured Claim will be paid in full as of the Effective Date and H&M shall receive no further Distribution under the Plan.  Any pre-petition liens claimed by H&M in property of the Debtors shall be considered released and have no further effect.

        c.      <u>Voting</u>. Class 3C is Unimpaired under the Plan. Class 3C is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

### 3.4.4    Class 3D: Healthy Earth Enterprises, LLC Secured Claim.

        a.      <u>Classification</u>. Class 3D consists of the Healthy Earth Enterprises, LLC ("Healthy Earth") Secured Claim.

        b.      <u>Treatment</u>. The Scheduled amount of the Healthy Earth Secured Claim is $60,000.00 and Healthy Earth did not file a Proof of Claim.  Healthy Earth shall have an Allowed Class 3D Secured Claim in the amount of $60,000.00.  Healthy Earth received a Court-approved $60,000.00 adequate protection payment during the pendency of the Chapter 11 Cases. No further amount will be owing by the Debtors to Healthy Earth as of the Effective Date and therefore Healthy Earth will receive no Distribution under the Plan.  Any pre-petition liens claimed by Healthy Earth Enterprises in property of the Debtors shall be considered released and have no further effect.

        c.      <u>Voting</u>. Class 3D is Unimpaired under the Plan. Class 3D is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

### 3.4.5    Class 3E: Kraus Farms, LLC Secured Claim.

        a.      <u>Classification</u>. Class 3E consists of the Kraus Farms, LLC ("Kraus Farms") Secured Clam.

        b.      <u>Treatment</u>. The Scheduled amount of the Kraus Farms Secured

Claim is $480,313.10. Kraus Farms filed a Proof of Claim in the amount of $499,473.53 and shall have an Allowed Class 3E Secured Claim in the amount of $499,473.53.

Except to the extent that Kraus Farms and the Debtors agree to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Allowed Class 3D Secured Claim, Kraus Farms shall be paid pursuant to the Budget, with quarterly payments at 5% interest through March 2027. The Kraus Farms Secured Claim Lien shall retain the same validity, perfection, priority, and extent as existing on the Petition Date but shall be subordinate, in all respects to the Exit Term Loan Facility Priority Liens on the Exit Term Loan Facility Collateral.

    c.  <u>Voting</u>. Class 3E is Impaired under the Plan. The Class 3E Claim is entitled to Vote under the Plan.

### 3.4.6  **Class 3F: Milner Hay Company, LLC Secured Claim.**

    a.  <u>Classification</u>. Class 3F consists of the Milner Hay Company, LLC ("Milner") Secured Claim.

    b.  <u>Treatment</u>. The Scheduled amount of the Milner Secured Claim is $64,885.00. Milner did not file a Proof of Claim. Milner shall have an Allowed Class 3F Claim in the amount of $64,885.00. Milner has received and will receive post-petition adequate protection payments totaling $64,885.00 prior to the Effective Date. No further amount will be owed by the Debtors to Milner as of the Effective Date and therefore Milner will receive no Distribution under the Plan. Any pre-petition liens claimed by Milner in any property of the Debtors shall be considered released and have no further effect.

    c.  <u>Voting</u>. Class 3F is Unimpaired under the Plan. Class 3F is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

### 3.4.7  **Class 3G: Moss Grain Partnership Secured Claim.**

    a.  <u>Classification</u>. Class 3G consists of the Moss Grain Partnership ("Moss Grain") Secured Claim.

    b.  <u>Treatment</u>. Moss Grain filed a Proof of Claim in the amount of $101,000.00 and shall have an Allowed Class 3G Secured Claim in the amount of $101,000.00. Moss Grain has received and will receive post-petition adequate protection payments totaling $101,000.00 prior to the Effective Date. No further amount will be owed by the Debtors to Moss Grain as of the Effective Date and therefore Moss Grain will receive no Distribution under the Plan. Any pre-petition liens claimed by Moss Grain in any property of the Debtors shall be considered released and have no further effect.

    c.  <u>Voting</u>. Class 3G is Unimpaired under the Plan. Class 3G is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

### 3.4.8    Class 3H: NorthWest Seed, Inc Secured Claim.

a.    Classification. Class 3H consists of the NorthWest Seed, Inc. ("NorthWest") Secured Claim.

b.    Treatment.   The Debtors Scheduled NorthWest as an unknown secured claim based on financing statements filed by NorthWest claiming a security interest in the Debtors' 2024 hay.  The Debtors have concluded there is no amount owing to NorthWest as of the Petition Date and NorthWest did not file a Proof of Claim.  As such, NorthWest will not receive a Distribution under the Plan.  Any pre-petition liens claimed or asserted by NorthWest in any property of the Debtors shall be considered released and have no further effect.

c.    Voting. Class 3H is Unimpaired under the Plan. Class 3H is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

### 3.4.9    Class 3I: Performance Plus-Idaho, LLC Secured Claim.

a.    Classification. Class 3I consists of the Performance Plus-Idaho, LLC ("Performance Plus") Secured Claim.

b.    Treatment. The Debtors Scheduled Performance Plus as a secured claim in the amount of $29,931.44. Performance Plus did not file a Proof of Claim and shall have an Allowed Class 3I Secured Claim in the amount of $29,931.44.

Except to the extent that Performance Plus-Idaho, LLC and the Debtors agree to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Allowed Class 3I Secured Claim, Performance Plus shall be paid pursuant to the Budget, with quarterly payments at 5% interest through March 2027.  The Performance Plus Secured Claim Lien shall retain the same validity, perfection, priority, and extent as existing on the Petition Date but shall be subordinate, in all respects to the Exit Term Loan Facility Priority Liens on the Exit Term Loan Facility Collateral.

c.    Voting. Class 3I is Impaired under the Plan. Class 3I Claims are entitled to Vote under the Plan.

### 3.4.10   Class 3J: Tyche Ag, LLC Secured Claim.

a.    Classification. Class 3J consists of the Tyche Ag, LLC ("Tyche") Secured Claim.

d.    Treatment.  The Debtors Scheduled Tyche as an unknown secured claim based on financing statements filed by Tyche claiming a security interest in the Debtors' 2023 hay.  The Debtors have concluded there is no amount owing to Tyche as of the Petition Date and Tyche did not file a Proof of Claim.  As such, Tyche will not receive a Distribution under the

Plan. Any pre-petition liens claimed or asserted by Tyche in any property of the Debtors shall be considered released and have no further effect.

b.     <u>Voting</u>. Class 3H is Unimpaired under the Plan. Class 3H is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

### 3.4.11  Class 3K: Wada Farms Partnership Secured Claim.

a.     <u>Classification</u>. Class 3K consists of the Wada Farms Partnership ("Wada Farms") Secured Claim.

b.     <u>Treatment</u>. The Debtors Scheduled Wada Farms as a secured claim in the amount of $374,432.50. Wada Farms did not file a Proof of Claim. It shall have an Allowed Class 3K Secured Claim in the amount of $374,432.50. Wada Farms has received and will receive post-petition adequate protection payments totaling $374,432.50 prior to the Effective Date. No further amount will be owed by the Debtors to Wada Farms as of the Effective Date and therefore Wada Farms will receive no Distribution under the Plan.  Any pre-petition liens claimed or asserted by Wada Farms in any property of the Debtors shall be considered released and have no further effect.

c.     <u>Voting</u>. Class 3K is Unimpaired under the Plan. Class 3K is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

### 3.4.12  Class 3L: Youree Land & Livestock Secured Claim.

a.     <u>Classification</u>. Class 3L consists of the Youree Land & Livestock ("Youree") Secured Claim.

b.     <u>Treatment</u>. Youree filed a Proof of Claim in the amount of $119,042.08 and shall have an Allowed Class 3L Secured Claim of $119,042.08. Youree has received and will receive post-petition adequate protection payments in the amount of $112,157.00 prior to the Effective Date. After payment of the adequate protection payments, the Debtors will owe Youree $6,885.06 on the Effective Date, which Plus shall be paid pursuant to the Budget, with quarterly payments at 5% interest through March 2027.  The Youree Secured Claim Lien shall retain the same validity, perfection, priority, and extent as existing on the Petition Date but shall be subordinate, in all respects to the Exit Term Loan Facility Priority Liens on the Exit Term Loan Facility Collateral.

c.     <u>Voting</u>. Class 3L is Impaired under the Plan. The Class 3L Secured Claim is entitled to Vote under the Plan.

### 3.4.13  Class 3M: Eagle Creek Northwest, LLC Claim.

a.     <u>Classification</u>. Class 3M consists of the Eagle Creek Northwest, LLC ("Eagle Creek") Secured Claim.

b.    <u>Treatment</u>. The Debtors Scheduled Eagle Creek as an unknown secured claim based on financing statements filed by Eagle Creek claiming a security interest in the Debtors' wheat, hay, potatoes, and sugar beets.  The Debtors have concluded there is no amount owing to Eagle Creek as of the Petition Date and Eagle Creek did not file a Proof of Claim.  As such, Eagle Creek will not receive a Distribution under the Plan.  Any pre-petition liens claimed or asserted by Eagle Creek in any property of the Debtors shall be considered released and have no further effect.

c.    <u>Voting</u>. Class 3M is Unimpaired under the Plan. Class 3M is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

### 3.4.14  Class 3N: Standlee Ag Resources and Premium Products Secured Claim.

a.    <u>Classification</u>. Class 3N consists of the Standlee Ag Resources and Premium Products (collectively referred to herein as "Standlee") Secured Claim.

b.    <u>Treatment</u>. Standlee filed a Proof of Claim in the amount of $214,915.55 and shall have an Allowed Class 3N Secured Claim in the amount of $214,915.55. Standlee has received and will receive post-petition adequate protection payments totaling $208,490.00 prior to the Effective Date. After payment of the adequate protection payments, the Debtors will owe Standlee $6,425.55 on the Effective Date, which shall be paid pursuant to the Budget, with quarterly payments at 5% interest through March 2027.  The Standlee Secured Claim Lien shall retain the same validity, perfection, priority, and extent as existing on the Petition Date but shall be subordinate, in all respects to the Exit Term Loan Facility Priority Liens on the Exit Term Loan Facility Collateral.

c.    <u>Voting</u>. Class 3N is Impaired under the Plan. The Class 3N Claim is entitled to Vote under the Plan.

### 3.5    Class 4: MetLife Secured Claims.

a.    <u>Classification.</u> Class 4 consists of MetLife's Secured Claims.

Metropolitan Life Insurance Company ("MLIC") and MetLife Real Estate Lending LLC (collectively, "MetLife") are the owners and holders of certain commercial real estate loans (collectively, the "Pre-Petition MetLife Loans" and, together with all related mortgages and other existing or future documents evidencing, securing, or executed in connection with the Pre-Petition MetLife Loans, in each case, as Amended, referred to herein as the "Pre-Petition MetLife Loan Documents") made by MetLife to the MetLife Borrowers.  The Pre-Petition MetLife Loans are secured by liens in and security interests on the MetLife Borrowers' real property and certain of the MetLife Borrowers' personal property, including: (x) crops grown after a foreclosure; (y) all wells, underground pipelines, sprinklers, and similar irrigation equipment located at the real property, as well as all lines, valve openers, pipes, and similar items pertaining to such irrigation equipment; and (z) all milking equipment located at the real property (the "Pre-Petition MetLife

Real Estate Collateral"). The Pre-Petition MetLife Loans are further secured, subject to the First Intercreditor Agreement (defined below), by the Milk Receivables (the "MetLife Milk Priority Claim," and collectively with the Pre-Petition MetLife Real Estate Collateral, the "Pre-Petition MetLife Collateral" and all liens and security interests on and in the Pre-Petition MetLife Collateral, the "Pre-Petition MetLife Liens"). As of the Petition Date, the MetLife Borrowers were indebted to MetLife, in the aggregate amount of approximately $180,473,929.72 under the Pre-Petition MetLife Loan Documents (collectively, the "Pre-Petition MetLife Obligations").

Rabo and MetLife are parties to (i) that certain Intercreditor Agreement, dated as of September 18, 2018, (as Amended, the "First Intercreditor Agreement") and (ii) that certain Subordination and Intercreditor Agreement, dated as of October 20, 2022 (as Amended, the "Second Intercreditor Agreement" and, together with the First Intercreditor Agreement, the "MetLife Intercreditor Agreements"). Pursuant to the First Intercreditor Agreement, Rabo agreed to subordinate any interests it may have or thereafter acquire in the Pre-Petition MetLife Collateral to those of MetLife, and MetLife agreed to subordinate any interests it may have or thereafter acquire in the Pre-Petition RLOC Collateral (other than any such property that may also constitute Pre-Petition MetLife Collateral) to those of Rabo.

Additionally, the First Intercreditor Agreement recognizes that Rabo and MetLife have separately entered into Milk Check Assignment Agreements (the "Milk Agreements") with Debtor Millenkamp Cattle and a milk purchaser, Glanbia Foods, Inc. ("Milk Purchaser"). The Milk Agreements direct the Milk Purchaser to make certain payments directly to Rabo (in certain situations) and MetLife (on a monthly basis), rather than to Millenkamp Cattle. Pursuant to the terms of the First Intercreditor Agreement, MetLife's priority interest in any Milk Receivables is equal to the aggregate amount of, in any month, the amount of the monthly installment payment of principal and accrued interest then due and payable by the applicable Debtors to MetLife, with such amount being capped at one month's principal and interest payment, unless MetLife has provided written notice to Rabo that amounts exceeding one month's principal and interest payment are due, owing, and unpaid.

On September 18, 2018, Rabo, Millenkamp Cattle, and the Milk Purchaser also entered into a Collateral Assignment of Milk Contracts, pursuant to which Millenkamp Cattle assigned to Rabo all contracts and proceeds related to certain purchase agreements between Millenkamp Cattle and the Milk Purchaser, to secure the obligations owed to the Pre-Petition RLOC Secured Parties. Subject to the foregoing, during the Borrowers' default under the Pre-Petition RLOC Documents, Rabo may collect the Milk Receivables. Other than the foregoing subordination, MetLife and Rabo expressly agreed that the First Intercreditor Agreement does not materially impair or adversely affect any of the Pre-Petition RLOC Secured Parties' rights, privileges, powers, or remedies with respect to the Pre-Petition RLOC Obligations or the Pre-Petition RLOC Collateral. Likewise, Rabo and MetLife expressly agreed that the First Intercreditor Agreement does not materially impair or adversely affect any of MetLife's rights, privileges, powers, or remedies with respect to the Pre-Petition MetLife Loans or the Pre-Petition MetLife Collateral. MetLife does not have any lien or security interest in any of the Debtors' Livestock, including, but not limited to, dairy cattle.

| Description | Principal Amount | Claim Amount | Security |
|---|---|---|---|
| **Promissory Note A** dated September 26, 2018, and First Amendment dated April 21, 2021 | $106,000,000.00 | $86,855,135.96 | Mortgage, Assignment of Rents, Security Agreement, Fixture Filing dated September 26, 2018 |
| **Promissory Note B** dated September 26, 2018, and First Amendment dated April 15, 2020, Second Amendment dated August 15, 2020 and Third Amendment dated April 21, 2021 | $59,400,000.00 | $51,693,035.58 | Mortgage, Assignment of Rents, Security Agreement, Fixture Filing dated September 26, 2018 |
| **Promissory Note C** dated April 15, 2020, and First Amendment dated April 15, 2020, Second Amendment dated August 15, 2020 and Third Amendment dated April 21, 2021 | $13,000,000.00 | $11,530,349.58 | Mortgage, Assignment of Rents, Security Agreement, Fixture Filing dated September 26, 2018 |
| **Promissory Note D** dated April 21, 2021 | $17,954,226.00 | $16,210,086.43 | Mortgage, Assignment of Rents, Security Agreement, Fixture Filing dated September 26, 2018 |
| **Promissory Note E** dated April 21, 2021 | $15,978,409.00 | $10,082,419.25 | Mortgage, Assignment of Rents, Security Agreement, Fixture Filing dated September 26, 2018 |

| **9858 Promissory Note** dated March 12, 2019 | $5,508,350.00 | $5,005,171.86 | Mortgage, Assignment of Rents, Security Agreement, Fixture Filing dated March 12, 2019<br><br>"Canyonlands" and "McGregor" property |
|---|---|---|---|

b.  <u>Treatment.</u> MetLife filed Proofs of Claim in the aggregate amount of $181,376,198.66. The Debtors' books and records reflect a total amount owing to MetLife of $184,177,739.10. The Debtors are conducting a reconciliation of their books and records and MetLife's Proofs of Claim. As of the filing of this Plan, MetLife shall have an Allowed Class 4 Secured Claim in the amount of $184,177,739.10.

The Allowed Class 4 Secured Claim shall receive the following treatment:

1) Interest-only payments at the non-default rate for the first 30 months following the Effective Date. The terms of the Pre-Petition MetLife Loans shall remain the same, except the interest rate on the Pre-Petition MetLife Loans shall be increased to 7% per annum.

2) MetLife shall file a Professional Fee Claim pursuant to section 3.1.2 of this Plan. Upon Allowance of MetLife's Professional Fee Claim, MetLife shall roll the amount of the Professional Fee Claim into the principal balance of the Pre-Petition MetLife Loans.

3) At month 31 following the Effective Date, the Allowed Class 4 Secured Claim shall begin receiving monthly principal and interest payments pursuant to the Budget.

4) The Pre-Petition MetLife Liens shall retain the same validity, perfection, and priority, and extent as existing on the Petition Date but shall be subordinate, in all respects to the Exit Term Loan Facility Priority Liens on the Exit Term Loan Facility Collateral.

c.  <u>Voting.</u> Class 4 is Impaired under the Plan. Class 4 is entitled to Vote under the Plan.

**3.6   <u>Class 5: Rabo Secured Claims.</u>**

a.  <u>Classification.</u> Class 5 consists of Rabo's Secured Claims.

Under that certain Third Amended and Restated Loan and Security Agreement, dated as of April 21, 2021, as Amended, the "Pre-Petition RLOC Credit Agreement" and collectively with all security, pledge, intercreditor, guaranty agreements, and other documentation executed in respect thereof, the "Pre-Petition RLOC Documents", by and among the Debtors[1], collectively as borrower, the lenders from time to time party thereto (in such capacity, collectively, the "Pre-Petition RLOC Lenders"), and Rabo, as sole lead arranger, agent, and swing-line lender (in its capacity as agent for the benefit of the Pre-Petition RLOC Lenders and each Issuer (as defined in the Pre-Petition RLOC Credit Agreement), the "Pre-Petition RLOC Agent" and collectively with the Pre-Petition RLOC Lenders and the Issuers, the "Pre-Petition RLOC Secured Parties" and each, a "Pre-Petition RLOC Secured Party"), the Debtors were provided with an asset-based revolving line of credit facility (the "Pre-Petition RLOC Facility") consisting of (a) revolving commitments in an aggregate amount of up to $91,000,00.00; (b) a swing-line credit facility for the Pre-Petition RLOC Agent to make Swing Line Advances (as defined in the Pre-Petition RLOC Credit Agreement) in an aggregate amount of up to $7,500,000.00; and (c) a letter-of-credit facility for the issuance of stand-by letters of credit in an aggregate amount of up to $1,000,000.00.

Pursuant to the terms of the Pre-Petition RLOC Credit Agreement, the Debtors granted to the Pre-Petition RLOC Agent a security interest to and in substantially all of the Debtors' and Borrowers' personal property, excluding their real property, and all other property defined as the "Collateral" in the Pre-Petition RLOC Credit Agreement (referred to herein as the "Pre-Petition RLOC Collateral" and the liens and security interests granted to or for the benefit of the Pre-Petition RLOC Secured Parties therein, the "Pre-Petition RLOC Personal Property Liens").

The Pre-Petition RLOC Collateral includes, among other interests (each as defined in the Pre-Petition RLOC Credit Agreement):  all Accounts, Farm Products (including, but not limited to) Livestock, Payment Intangibles, Deposit Accounts, Commodity Contracts, and, notably, the Borrowers' inventory, which consists of (in part) milk, other dairy products, and certain receivables from the sales of the Borrowers' milk and other dairy products (the "Milk Receivables").  The Pre-Petition RLOC Secured Parties' lien and security interest extends to all accessions to, substitutions for, and all replacements, products, and proceeds of the Pre-Petition RLOC Collateral.  As described below, the Pre-Petition RLOC Secured Parties' interest in the Milk Receivables is subject to the First Intercreditor Agreement (as defined below) entered into between them and MetLife.

Further, as consideration for the Pre-Petition RLOC Agent to enter into that certain Forbearance Agreement, made effective as of October 22, 2022, the Borrowers granted, among other things, a second priority mortgage on the Pre-Petition MetLife Real Estate Collateral (defined below) to secure the Pre-Petition RLOC Obligations, subject to the Second Intercreditor Agreement (defined below).  Accordingly, on October 20, 2022, the Borrowers executed and delivered that certain Mortgage, Assignment of Rents, Security Agreement, and Fixture Filing (Second Priority), in favor of the Pre-Petition RLOC Agent, to secure any and all obligations owed to the Pre-Petition RLOC Secured Parties, which was recorded in Cassia County, as Instrument No. 2022-004552, Twin Falls County as Instrument No. 2022018722, and Jerome County as

---

[1] Nondebtors Susan Millenkamp as Trustee of the WJM 2012 Trust; William Millenkamp as Trustee of the SJM 2012 Trust; William John Millenkamp and Susan Jo Millenkamp (the "Non-Debtor Borrowers") also executed the Pre-Petition RLOC Credit Agreement.  The Debtors and the Non-Debtor Borrowers are referred to herein as the "Borrowers."

Instrument No. 2224759 (the "Pre-Petition RLOC Second Mortgage" and together with the Pre-Petition RLOC Personal Property Liens, the "Pre-Petition RLOC Liens").

        a.      Treatment. Rabo filed a Proof of Claim in the amount of $96,469,917.04.

Proof of Claim Amount:

Principal:  $88,950,202.73
Pre-Petition Interest (as of April 2, 2024): $149,105.24
Post-Petition Interest (as of October 31, 2024): $2,751,368.26
Pre-Petition Professional Fees: $1,255,548.19
Post-Petition Professional Fees (as of October 31, 2024): $3,357,410.62
Unused Commitment Fee: $6,280.00
TOTAL: $96,469,917.04

        b.    The Debtors' books and records reflect a total principal amount owing to Rabo of $90,952,408.00.  The Debtors and Rabo conducted a reconciliation of Rabo's Claim amount as of the Petition Date and determined the amount owing to Rabo as of the Petition Date was $90,488,500.00.  Rabo shall provide the Debtors within five (5) business days of the Effective Date a calculation of its post-petition interest and professional fees.  Rabo shall further file a Professional Fee Claim pursuant to section 3.1.2 of this Plan.

Rabo's Allowed Class 5 Secured Claim shall include the amount owing as of the Petition Date, plus post-petition default interest and Allowed professional fees.

Rabo shall receive the following principal paydown:

1) $5 million on the Effective Date;

2) Three (3) quarterly payments following the Effective Date totaling $2,500,000 each;

3) One (1) payment totaling $1,925,000 in the second quarter of 2026; and

4) The net sale proceeds from the sale of Canyonlands and McGregor, estimated to be approximately $15,575,039.

Rabo shall further receive monthly interest payments at 8.5% until March 31, 2027.  On March 31, 2027, Rabo shall receive payment in full of the remainder of its Allowed Class 5 Secured Claim.

The Pre-Petition RLOC Liens shall retain the same validity, perfection, and priority, and extent as existing on the Petition Date but shall be subordinate, in all respects to the Exit Term Loan Facility Priority Liens on the Exit Term Loan Facility Collateral.

      c.      <u>Voting</u>. Class 5 is Impaired under the Plan. Class 5 is entitled to Vote under the Plan.

### 3.7    **Class 6: Conterra Secured Claims.**

      a.      <u>Classification.</u> Class 6 consists of Conterra's Secured Claims.

Millenkamp Cattle, Inc., Idaho Jersey Girls, LLC, Idaho Jersey Girls Jerome Dairy LLC, East Valley Cattle, LLC, Millenkamp Family LLC, Millenkamp Properties, L.L.C., Millenkamp Properties II LLC, Goose Ranch, LLC, William J. Millenkamp and Susan J. Millenkamp (collectively, the "Borrowers") executed and delivered to Conterra a promissory note dated October 20, 2022 in the original principal amount of $16,500,000 which Conterra endorsed to Ag Funding (the "Mezz Loan"). The Mezz Loan is secured by second priority liens and security interests in the Pre-Petition RLOC Collateral (the "Pre-Petition Conterra Mezz Collateral") and third priority mortgage on the Pre-Petition MetLife Real Estate Collateral (the "Pre-Petition Conterra Mezzanine Liens").

Millenkamp Cattle, Inc., Millenkamp Family LLC, Millenkamp Properties II LLC, Millenkamp Properties, L.L.C., East Valley Cattle, LLC, Idaho Jersey Girls Jerome Dairy LLC, and William J. Millenkamp (collectively, the "Rooster Borrowers") executed and delivered to Conterra a promissory note dated October 20, 2022 in the original principal amount of $2,549,750 (the "German Note") which Conterra endorsed to Rooster Capital IV LLC ("Rooster").

The German Note is secured by a first priority mortgage on certain real property owned by certain of the Debtors known as "German Dairy" located at 162 West 400 North, Jerome, Idaho 83338 (the "Pre-Petition Conterra Real Estate Collateral") and located in Jerome County, Idaho (the "Pre-Petition Conterra Real Estate Lien" and, together with the Pre-Petition Conterra Mezz Liens, the "Pre-Petition Conterra Liens"). The Pre-Petition Conterra Mezz Collateral and the Pre-Petition Conterra Real Estate Collateral is collectively referred to herein as the "Pre-Petition Conterra Collateral").

      b.      <u>Treatment.</u> Conterra filed Proofs of Claim in the aggregate amount of $21,460,993.60.

<u>German Note Proof of Claim Amount:</u>

Unpaid Principal: $2,508,860.41

Accrued Interest through 4/2/24: 67,867.67

Total unpaid balance as of 4/2/24: **$2,576,728.08**

<u>Mezz Loan Proof of Claim Amount:</u>

Unpaid Principal: $16,500,000.00

Accrued Interest through 4/2/24: $1,457,810.41

Late Fees: $830,614.58

Reimbursable Expenses: $95,840.53

Total unpaid balance as of 4/2/24: **$18,884,265.52**

Conterra has an Allowed Class 6 Secured Claim in the amount of $21,460,994, plus professional fees and costs upon Allowance of any Professional Fee Claim Conterra files pursuant to section 3.1.2 of this Plan.  Conterra's Allowed Professional Fee Claim shall be added to the principal balance of the Mezz Loan.  The Debtors are conducting a reconciliation of their books and records compared to Conterra's Proofs of Claim and will update the Allowed Claim as necessary based on such reconciliation.

The German Note shall be paid in full on the Effective Date.  Any pre-petition liens claimed by Conterra in the German Dairy shall be considered released and have no further effect.

The Mezz Loan shall receive monthly interest at 18% until March 31, 2027.  The interest payments shall be split, with one-half being paid in cash and one-half being PIK.  Beginning April 1, 2027, the Mezz Loan principal balance shall be re-amortized over three years and will receive monthly cash interest payments at 18%.  Conterra's Liens in the Pre-Petition Conterra Mezz Collateral and Pre-Petition Conterra Mezzanine Liens shall retain the same validity, perfection, and priority, and extent as existing on the Petition Date, but shall be subordinate, in all respects to the Exit Term Loan Facility Priority Liens on the Exit Term Loan Facility Collateral.

   c. <u>Voting.</u> Class 6 is Impaired under the Plan. Class 6 is entitled to Vote under the Plan.

### 3.8 Class 7:  Secured Equipment and Vehicle Lien Claims.

   <u>Classification:</u> Class 7 consists of the subclasses of the Secured Equipment and Vehicle Lien Claims.

### 3.8.1 Class 7A: CNH Industrial Capital Secured Claim.

   a. <u>Classification.</u> Class 7A consists of the CNH Industrial Capital ("CNH") Secured Claim.

   b. <u>Treatment.</u> CNH filed Proofs of Claim in the total aggregate amount of $17,915,944.14.

| POC # | POC Amount | Document | Collateral |
|---|---|---|---|
| Claim 110 | $1,980,095.12 | Equipment Lease 765512 | 6 Magnum Tractors |
| Claim 111 | $2,438,189.14 | Equipment Lease 765542 | 4 Case Steigers & Remotes |
| Claim 112 | $5,294,925.12 | Equipment Lease 210982 | 26 Magnum Tractors |
| Claim 113 | $4,796,579,94 | Equipment Lease 765784 | 16 Magnum Tractors |
| Claim 114 | $2,587,321.81 | Equipment Loan 765552 | 30 Case Maxxum Tractors |
| Claim 115 | $470,430.75 | Equipment Loan 765530 | 25 Kubota Tractors |
| Claim 116 | $207,310.38 | Productivity Plus Credit Line 373662 | All collateral financed/leased by CNH |
| Claim 117 | $141,091.88 | Productivity Plus Credit Line 373203 | All collateral financed/leased by CNH |

CNH shall have an Allowed Class 7A Claim in the amount of $17,915,944.14. CNH has received and will receive post-petition adequate protection payments prior to the Effective Date.

For the CNH Equipment Leases and Equipment Loans, CNH shall continue to be paid in accordance with the provisions of the pre-petition contracts in the amounts required by those contracts, currently approximately $242,716.00 per month. The Liens relating to the CNH Equipment Leases and Equipment Loans shall retain the same validity, perfection, priority, and extent as existing on the Petition Date but shall be subordinate, in all respects to the Exit Term Loan Facility Priority Liens on the Exit Term Loan Facility Collateral.

For the CNH Productivity Plus Credit Lines, totaling $348,402.26, CNH shall receive

quarterly payments at 5% interest through March of 2027 pursuant to the Budget.  The Liens relating to the CNH Productivity Plus Credit Lines shall retain the same validity, perfection, priority, and extent as existing on the Petition Date but shall be subordinate, in all respects to the Exit Term Loan Facility Priority Liens on the Exit Term Loan Facility Collateral.

> d.      <u>Voting</u>. Class 7A is Impaired under the Plan and is entitled to Vote under the Plan.

### 3.8.2    Class 7B: Daimler Truck Financial Services USA LLC Secured Claim

> a.      <u>Classification</u>. Class 7B consists of the Daimler Truck Financial Services USA LLC ("Daimler") Secured Claim.

> b.      <u>Treatment</u>. Daimler filed a Proof of Claim in the amount of $1,534,278.22. Daimler shall have an Allowed Secured Claim in the amount of $1,534,278.22. Daimler has received and will receive post-petition adequate protection payments before the Effective Date.

Except to the extent Daimler and the Debtors agree to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Allowed Class 7B Claim, Daimler shall continue to be paid in accordance with the provisions of the pre-petition contracts with Debtors, in the amounts required by those contracts, currently approximately $63,926.00 per month.  The Daimler Secured Claim Lien shall retain the same validity, perfection, priority, and extent as existing on the Petition Date but shall be subordinate, in all respects to the Exit Term Loan Facility Priority Liens on the Exit Term Loan Facility Collateral.

> c.      <u>Voting</u>. Class 7B is Unimpaired under the Plan. Class 7B is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

### 3.8.3    Class 7C: Farmers Bank

> a.      <u>Classification</u>. Class 7C consists of the Farmers Bank Secured Claim.

> b.      <u>Treatment</u>. Farmers Bank filed Proofs of Claim totaling $2,474,927.97.

| POC # | POC Amount | Collateral |
|-------|------------|------------|
| Claim 35 | $294,173.07 | 2024 Ram Pickups |
| Claim 36 | $10,975.50 | Con-Dor Peecon 1700 Feed Mixer |

| Claim 37 | $96,225.11 | 2021 Ram Pickups |
|---|---|---|
| Claim 38 | $26,211.20 | Nuhn Alley Vac Manure Wagon 7000 Gal Tank |
| Claim 39 | $269,908.99 | Caterpillar Diesel Generators |
| Claim 40 | $280,789.94 | Caterpillar Diesel Generators |
| Claim 41 | $140,596.63 | SmithCo Side Dump Trailers |
| Claim 42 | $166,267.09 | 2022 Ram Pickups |
| Claim 43 | $132,902.49 | Con Dor Peecon 1700 Feed Mixer |
| Claim 44 | $56,558.60 | 2022 Mahindra UTB |
| Claim 45 | $1,000,364.26 | 2024 Wilson 53' Livestock Trailers |

Farmers Bank shall have an Allowed Class 7C Secured Claim in the amount of $2,474,972.97. Farmers Bank has received and will receive post-petition adequate protection payments prior to the Effective Date.

Except to the extent Farmers Bank and the Debtors agree to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Allowed Class 7C Claim, Farmers Bank shall continue to be paid in accordance with the provisions of its pre-petition contract with the Debtors, in the amounts required by the contract, currently approximately $105,706.00 per month. The Farmers Bank Secured Claim Liens shall retain the same validity, perfection, priority, and extent as existing on the Petition Date but shall be subordinate, in all respects to the Exit Term Loan Facility Priority Liens on the Exit Term Loan Facility Collateral.

d.    <u>Voting</u>. Class 7C is Unimpaired under the Plan. Class 7C is Unimpaired under the Plan. Class 7C is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

### 3.8.4    Class 7D: John Deere Construction & Forestry Secured Claim.

a.    <u>Classification</u>. Class 7D consists of the John Deere Construction & Forestry ("John Deere") Secured Claim.

b.  <u>Treatment</u>. John Deere filed Proofs of Claim in the aggregate amount of $948,846.69.

| POC # | POC Amount | Collateral |
|-------|-----------|------------|
| Claim 20 | $119,606.55 | Cross Collateralized Loan with all Deere Loans/Collateral |
| Claim 21 | $121,475.50 | Hamm 10i Compactors |
| Claim 22 | $151,965.48 | Hamm 121 P |
| Claim 23 | $69,597.45 | John Deere 50G Compact Excavator |
| Claim 24 | $69,957.45 | John Deere 50G Compact Excavator |
| Claim 25 | $187,368.29 | 2023 John Deere 650P-Tier Utility Dozer |
| Claim 26 | $116,806.61 | John Deere 320 P-Tier Backhoe Loader |
| Claim 27 | $232,035.91 | 2023 John Dere 135 P-TIER Backhoe Loader AND 2023 John Deere EC13 QS60 COMPLETE SYSTEM W/ 2 BUCKETS |

John Deere shall have an Allowed Class 7D Secured Claim in the amount of $1,068,453.34. John Deere has received and will receive post-petition adequate protection payments in the amount of $212,083.62 prior to the Effective Date.

Except to the extent John Deere and the Debtors agree to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Allowed Class 7D Claim, John Deere shall receive the following treatment:

1) For Claims 21, 22, 23, 24, 25, 26, and 27, John Deere shall continue to be paid in accordance with the provisions of its pre-petition contracts with Debtors in the amounts required by the contracts.

2) For Claim 20, John Deere shall be paid quarterly payments at 15.15% interest through

March of 2027 pursuant to the Budget.

3) The John Deere Secured Claim Liens relating to Claims 20, 21, 22, 23, 24, 25, 26, and 27 shall retain the same validity, perfection, priority, and extent as existing on the Petition Date but shall be subordinate, in all respects to the Exit Term Loan Facility Priority Liens on the Exit Term Loan Facility Collateral.

c. <u>Voting</u>. Class 7D is Impaired under the Plan and is entitled to Vote under the Plan.

### 3.8.5   Class 7E: Western States Cat Secured Claim.

a. <u>Classification</u>. Class 7E consists of the Western States Cat ("Western States") Secured Claim.

b. <u>Treatment</u>. The Debtors Scheduled Western States as a secured claim in the amount of $688,964.59. Western States has received post-petition adequate protection payments in the amount of $596,071.02 prior to the Effective Date.

On May 22, 2024, the Bankruptcy Court approved the Debtors' assumption of the Western States rental agreement when it issued its Final Order (A) Granting Motion to Condition Use of WSECO's Equipment on Receipt of Adequate Protection, and (B) Granting Debtor's Motion for Order Authorizing the Debtor to Assume Unexpired Lease (Docket. No. 314). The rental agreement expired on June 30, 2024. Upon the return of the rented equipment, Western States notified Debtors it was owed approximately $244,994.48 due to damage to the rented equipment and other repairs. As such, Debtors made a post-petition payment to Western States in the amount of $244,994.48 pursuant to the rental agreement. Western States later presented an updated actual expense itemization, asserting that the Debtors owed an additional $6,882.63. However, the Debtors dispute certain items on the expense itemization, in the aggregate amount of $82,351.74, thus offsetting any amounts still owed to Western States. Consequently, all pre-petition and post-petition amounts due and owing to Western States have been paid. As such, Western States shall not receive any further Distribution under the Plan. Any pre-petition liens claimed by Western States Cat in property of the Debtors shall be considered released and have no further effect.

c. <u>Voting</u>. Class 7E is Unimpaired under the Plan. Class 7E is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

### 3.8.6   Class 7F: Kenworth Sales Company Secured Claim.

a. <u>Classification</u>. Class 7F consists of the Kenworth Sales Company ("Kenworth") Secured Claim.

b. <u>Treatment</u>. Kenworth filed a Proof of Claim in the amount of $49,359.77 and shall have an Allowed Class 7F Secured Claim in the amount of $49,359.77. Kenworth has received and will receive post-petition adequate protection payments totaling $48,677.75 prior the Effective Date. After payment of the adequate protection payments, the

Debtors will owe Kenworth $682.02 on the Effective Date, which shall be paid pursuant to the Budget, with quarterly payments at 5% interest through March 2027. The Kenworth Secured Claim Liens shall retain the same validity, perfection, priority, and extent as existing on the Petition Date but shall be subordinate, in all respects to the Exit Term Loan Facility Priority Liens on the Exit Term Loan Facility Collateral.

      c.      <u>Voting</u>. Class 7F is Impaired under the Plan and is entitled to Vote under the Plan.

### 3.9    Class 8: Other Secured Claims.

<u>Classification.</u> Class 8 consists of Other Secured Claims.

### 3.9.1    Class 8A: MWI Veterinary Secured Claim.

      a.      <u>Classification</u>. Class 8A consists of the MWI Veterinary Secured Claim.

      b.      <u>Treatment</u>. MWI Veterinary filed three Proofs of Claim in the aggregate amount of $2,566,485.40.

| **Case** | **Proof of Claim Amount** |
|---|---|
| Millenkamp Cattle, Inc. | $2,525,459.31 |
| Idaho Jersey Girls, LLC | $25,375.92 |
| Black Pine Cattle, LLC | $15,650.17 |

MWI Veterinary received a Court-approved adequate protection payment during the pendency of this Bankruptcy Case in the amount of $500,127.14 and has an Allowed 503(b)(9) Claim in the amount of $484,255.92. Based on the Debtors' books and records as of the filing of this Plan, MWI Veterinary is owed $2,063,428.20. After deduction of the 503(b)(9) Claim, MWI Veterinary shall have an Allowed Class 8A Secured Claim in the amount of $1,579,172.28.

Except to the extent MWI Veterinary and the Debtors agree to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Allowed Class 8A Secured Claim, the Allowed Class 8A Claim shall be paid pursuant to the Budget, with quarterly payments at 5% interest through March 2027. The MWI Veterinary Secured Claim Lien shall retain the same validity, perfection, priority, and extent as existing on the Petition Date but shall be subordinate, in all respects to the Exit Term Loan Facility Priority

Liens on the Exit Term Loan Facility Collateral.

        c.      <u>Voting</u>. Class 8A is Impaired under the Plan. Class 8A is entitled to Vote under the Plan.

### 3.9.2    Class 8B: PerforMix Nutrition Systems Secured Claim.

        a.      <u>Classification</u>. Class 8B consists of the PerforMix Nutrition Systems ("PerforMix") Secured Claim.

        b.      <u>Treatment</u>. PerforMix filed a Proof of Claim in the amount of $213,744.20 and shall have an Allowed Class 8B Secured Claim in the amount of $213,744.20. PerforMix has received and will receive post-petition adequate protection payments totaling $213,744.20 prior to the Effective Date. No further amount will be owed by the Debtors to PerforMix as of the Effective Date and therefore PerforMix will receive no Distribution under the Plan.  Any pre-petition liens claimed or asserted by PerforMix in any property of the Debtors shall be considered released and have no further effect.

        c.      <u>Voting</u>. Class 8B is Unimpaired under the Plan. Class 8B is deemed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

### 3.9.3    Class 8C: Rexel USA, Inc. d/b/a Platt Electric Supply Claim.

        a.      <u>Classification</u>. Class 8C consists of the Rexel USA, Inc. d/b/a Platt Electric Supply ("Platt") Claim.

        b.      <u>Treatment</u>. Platt filed a Proof of Claim in the secured amount of $504,414.02. The Proof of Claim is Disputed and the Debtors will be filing an objection to the full amount of the Proof of Claim.  As such, the Debtors will set aside the full amount of the Class 8C Claim in the amount of $504,414.02 in the Distribution Reserve.  The Platt Secured Claim Lien shall retain the same validity, perfection, priority, and extent as existing on the Petition Date but shall be subordinate, in all respects to the Exit Term Loan Facility Priority Liens on the Exit Term Loan Facility Collateral.

        c.      <u>Voting</u>. Class 8C is Impaired under the Plan. Class 8C Claims are entitled to Vote under the Plan.

### 3.9.4    Class 8D: Staker & Parson Company d/b/a Idaho Materials & Construction Claim.

        a.      <u>Classification</u>. Class 8D consists of the Staker & Parson Company d/b/a Idaho Material & Construction ("Idaho Material") Claim.

        b.      <u>Treatment</u>. Idaho Material filed an unsecured Proof of Claim in the amount of $48,207.17 in the Millenkamp Cattle, Inc. Case and a secured Proof of Claim in the amount of $48,207.17 in the East Valley Cattle, LLC Case. The Notice of Claim of Lien was recorded on April 30, 2024, as Cassia County Instrument No. 2024001489.

Idaho Material will receive by the Effective Date adequate protection payments totaling $48,207.17. As such, the Idaho Material Allowed Class 8D Secured Claim will be paid in full as of the Effective Date and Idaho Material shall receive no further Distribution under the Plan. Any pre-petition liens claimed by Idaho Material in property of the Debtors shall be considered released and have no further effect.

        d.    <u>Voting</u>. Class 8D is Unimpaired under the Plan. Class 8D is deemed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

### 3.9.5    Class 8E: Les Schwab Tire Centers of Idaho, LLC Claims.

        a.    <u>Classification</u>. Class 8E consists of the Les Schwab Tire Center of Idaho LLC ("Les Schwab") Claims.

        b.    <u>Treatment</u>. Les Schwab filed two Proofs of Claim in the aggregate amount of $255,256.55.

| **Case** | **Proof of Claim Amount** | **503(B)(9) Claim Amount Approved** |
|---|---|---|
| Millenkamp Cattle, Inc. | $151,173.71 | $26,643.97 |
| Black Pine Cattle, LLC | $102,082.84 | $0 |

Pursuant to the 503(b)(9) Order, Les Schwab has an Allowed 503(b)(9) Claim in the amount of $26,643.97. Les Schwab will be paid, in Cash, its Allowed 503(b)(9) Claim as an Administrative Claimant in the amount of $26,643.97, on or as soon as reasonably practicable after the Effective Date. The remainder of the Les Schwab Claim, in the amount of $226,612.58, shall be paid pursuant to the Budget, with quarterly payments at 5% interest through March 2027. The Les Schwab Secured Claim Liens shall retain the same validity, perfection, priority, and extent as existing on the Petition Date but shall be subordinate, in all respects to the Exit Term Loan Facility Priority Liens on the Exit Term Loan Facility Collateral.

        c.    <u>Voting</u>. Class 8E is Impaired under the Plan. The Class 8E Claim is entitled to Vote under the Plan.

### 3.10    Class 9: General Unsecured Claims.

        a.    <u>Classification</u>. Class 9 consists of all General Unsecured Claims, in the approximate amount of $27 million (the "GUC Principal Amount"). A full listing of the General Unsecured Claims and amounts of each Claim is included as Exhibit E of the Disclosure Statement.

b.    <u>Treatment</u>. The Holders of Class 9 Claims shall receive the following treatment under the Plan:

      i.    5% quarterly interest payments for four years, through December of 2028

      ii.    10% of the GUC Principal Amount paid as quarterly payments in 2025

      iii.    20% of the GUC Principal Amount paid as quarterly payments in 2026

      iv.    30% of the GUC Principal Amount paid as quarterly payments in 2027

      v.    40% of the GUC Principal Amount paid as quarterly payments in 2028

The Holders of Class 9 Claims shall be 100% of their Claims through the foregoing payment schedule by March of 2029.

c.    <u>Voting</u>.  Class 9 is Impaired under the Plan. The Holders of Class 9 Claims are entitled to Vote under the Plan.

### 3.11    <u>Class 10: Intercompany Claims</u>

a.    <u>Classification.</u> Class 11 consists of all Intercompany Claims.

b.    <u>Treatment</u>. On the Effective Date, all Intercompany Claims shall be extinguished. Holders of Intercompany Claims will receive no Distributions under the Plan.

c.    <u>Voting.</u>  Each Holder of a Class 10 Claim will be deemed to have rejected this Plan and, therefore, are not entitled to vote on this Plan.

### 3.12    <u>Class 11: Equity Interests.</u>

a.    <u>Classification.</u> Class 11 consists of all Equity Interests in the Debtors.

b.    <u>Treatment</u>. Each Debtors' pre-petition equity interests shall remain the same post-petition. Class 11 Claim Holders are retaining ownership interests in the Debtors.

c.    <u>Voting.</u>  Class 11 is Unimpaired under the Plan. Class 11 is deemed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

### 3.13    <u>Special Provisions Regarding Unimpaired Claims.</u>

**3.13.1**  Except as otherwise specifically provided in the Plan, nothing herein shall be deemed to affect, diminish, or impair the Debtors' or the Reorganized Debtors' rights and defenses, both legal and equitable, with respect to any Reinstated Claim or otherwise Unimpaired

Claim, including legal and equitable defenses to setoffs or recoupment against Reinstated Claims or otherwise Unimpaired Claims; and, except as otherwise specifically provided in the Plan, nothing herein shall be deemed to be a waiver or relinquishment of any Claim, Cause of Action, right of setoff, or other legal or equitable defense that the Debtors had immediately prior to the Petition Date, against or with respect to any Claim that is Unimpaired by the Plan. Except as otherwise specifically provided in the Plan, the Reorganized Debtors shall have, retain, reserve, and be entitled to assert all such Claims, Causes of Action, rights of setoff, and other legal or equitable defenses that the Debtors had immediately prior to the Petition Date fully as if the Chapter 11 Cases had not been commenced, and all of the Reorganized Debtors' legal and equitable rights and defenses with respect to any Reinstated Claim or otherwise Unimpaired Claim may be asserted after the Confirmation Date and the Effective Date to the same extent as if the Chapter 11 Cases had not been commenced.

## ARTICLE 4

## ACCEPTANCE OR REJECTION OF THE PLAN

**4.1**     **Impaired Class of Claims Entitled to Vote**. Only the votes of Holders of Allowed Claims in Class 2, Class 3A, Class 3E, Class 3H, Class 3I, Class 3J, Class 3L, Class 3N, Class 4, Class 5, Class 6, Class 8A, Class 8E, Class 9 shall be solicited with respect to the Plan.

**4.2**     **Voting of Claims.** Each Holder of an Allowed Claim in an Impaired Class of Claims that is entitled to vote on the Plan pursuant to Article 4 of the Plan shall be entitled to vote to accept or reject the Plan as provided in such order as is entered by the Bankruptcy Court establishing procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, or any other order(s) of the Bankruptcy Court. For purposes of calculating the number of Allowed Claims in a Class of Claims that have voted to accept or reject the Plan under section 1126(c) of the Bankruptcy Code, all Allowed Claims in such Class held by one Entity shall be aggregated and treated as one Allowed Claim in such Class.

**4.3**     **Procedure/Voting Deadline.** In order for a Ballot to count, it must be (i) completed, dated, and properly executed, and (ii) delivered to the Voting Agent by first class mail, postage prepaid, or by overnight courier, to the following address: Attn: Krystal R. Mikkilineni, Dentons Davis Brown, The Davis Brown Tower, 215 10th St., Suite 1300, Des Moines, Iowa 50309 or by email to the following address: krystal.mikkilineni@dentons.com. The Voting Agent must ACTUALLY RECEIVE Ballots on or before the Voting Deadline. Except as otherwise ordered by the Bankruptcy Court or agreed to by the Debtors, a vote may not be changed once a Ballot is submitted to the Voting Agent.

**4.4**     **Acceptance by an Impaired Class**.   In accordance with Bankruptcy Code section 1126(c), and except as provided in Bankruptcy Code section 1126(e), the Holders of Claims in any Class entitled to vote on the Plan shall have accepted the Plan if the Plan is accepted by the Holders of at least two-thirds (⅔) in dollar amount and more than one-half (½) in number of the Allowed Claims in such Class that have timely and properly voted to accept or reject the Plan.

**4.5** **Presumed Acceptances by Unimpaired Classes.** Class 1, Class 3B, Class 3C, Class 3D, Class 3F, Class 3G, Class 3K, Class 3M, Class 7A, Class 7B, Class 7C, Class 7D, Class 7E, Class 7F, Class 8B, Class 8D, Class 11 are Unimpaired under the Plan. Under Bankruptcy Code section 1126(f), the Holders of Claims in such Unimpaired Classes are conclusively presumed to have accepted the Plan, and, therefore, the votes of such Holders shall not be solicited.

**4.6** **Impaired Classes Deemed to Reject Plan.** Holders of Intercompany Claims in Class 10 are not entitled to receive or retain any property or interests in property under the Plan. Under Bankruptcy Code section 1126(g), such Holders are deemed to have rejected the Plan, and, therefore, the votes of such Holders shall not be solicited.

**4.7** **Confirmation Pursuant to Bankruptcy Code Section 1129(b).** Because at least one Impaired Class is deemed to have rejected the Plan, the Debtors will and hereby request confirmation of the Plan under Bankruptcy Code section 1129(b). The Debtors reserve the right to alter, amend, modify, revoke, or withdraw the Plan, or any schedule or exhibit, including to amend or modify it to satisfy the requirements of Bankruptcy Code section 1129(b), if necessary.

**4.8** **Elimination of Vacant Classes.** Any Class of Claims or Interests that does not contain, as of the date of the commencement of the Confirmation Hearing, a Holder of an Allowed Claim, or a Holder of a Claim temporarily allowed under Bankruptcy Rule 3018, shall be deemed deleted from the Plan for purposes of determining acceptance of the Plan by such Class under Bankruptcy Code section 1129(a)(8).

# ARTICLE 5
# MEANS FOR IMPLEMENTATION OF THE PLAN

**5.1** **Substantive Consolidation.** On the Effective Date, the Assets and liabilities of the Debtors shall be deemed substantively consolidated for purposes of implementing the Plan. Other than for purposes of implementing the Plan, the Debtors and their assets and liabilities shall not be deemed consolidated.

**5.2** **Restructuring Transactions.** On or before the Effective Date or as soon as reasonably practicable thereafter, the Debtors may take all actions consistent with this Plan as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by or necessary to effectuate the Restructuring Transactions under and in connection with this Plan, including (a) the execution and delivery of all appropriate agreements or other documents of merger, consolidation, sale, restructuring, conversion, disposition, transfer, dissolution or liquidation containing terms that are consistent with the Plan; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any Asset, property, interest, right, liability, debt or obligation on terms consistent with the Plan; (c) the filing of appropriate certificates or articles of organization, limited partnership, incorporation, reincorporation, merger, consolidation, conversion or dissolution pursuant to applicable law; (d) the execution, delivery, filing, recordation and issuance of any other documents, instruments or agreements in connection with the Restructuring Transactions.

The Confirmation Order shall and shall be deemed to, pursuant to sections 363 and 1123

of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including the Restructuring Transactions.

**5.3** **Sources of Consideration for Plan Distributions.** Except as otherwise provided in the Plan or the Confirmation Order, the Reorganized Debtors shall fund distributions under the Plan with Cash on hand from ongoing business operations, the net sale proceeds from the sale of Canyonlands and McGregor, the proceeds of the Exit Term Loan Facility, and the proceeds from the Refinancing Facility.

**5.4** **Exit Term Loan Facility.** Upon the Effective Date, Sandton shall fund the Exit Term Loan Facility in the amount of $45 million. The term sheet for the Exit Term Loan Facility is attached to the Disclosure Statement. The Reorganized Debtors shall use the $45 million for Effective Date payments, including priority Claims, 503(b)(9) Claims, Allowed Professional Fee Claims, United States Trustee fees, payment of the DIP Claims, payment of the Conterra German Note, an initial payment to Rabo, and operating Cash.

**5.5** **Exit Term Loan Facility Liens.** Effective immediately upon entry of Confirmation Order, and as set forth more fully in the Plan, and the Exit Term Loan Facility, Sandton is granted, pursuant to and in accordance with section 1129(b)(5) and (6), and 1142(a) and (b) of the Bankruptcy Code, valid, perfected, continuing, enforceable, non-avoidable first priority Liens and security interests on the Exit Term Loan Facility Collateral of each Reorganized Debtor (the "Exit Term Loan Facility Liens"), and shall prime all other Liens and security interests on the Exit Term Loan Facility Collateral, including any Liens and security interests in existence on the Petition Date, and any other current or future Liens granted on the Exit Term Loan Facility Collateral, including any adequate protection or replacement Liens granted on the Exit Term Loan Facility Collateral (the "Primed Liens"). The Exit Term Loan Facility Liens shall be effective and perfected as of the entry of the Confirmation Order.

**5.6** **Perfection of the Exit Term Loan Facility Liens.** The Confirmation Order shall be sufficient and conclusive evidence of the validity, perfection and priority of the Exit Term Loan Facility Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document that may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect the Exit Term Loan Facility Liens or to entitle the Exit Term Loan Facility Liens to the priorities granted herein. Notwithstanding the foregoing: (a) Sandton may file such financing statements, deeds of trust, mortgages, security agreements, notices of liens and other similar documents, and is hereby granted the authorization in order to do so, and all such financing statements, deeds of trust, mortgages, security agreements, notices and other agreements or documents shall be deemed to have been filed or recorded as of the date of the entry of the Confirmation Order and no defect in any such act shall affect or impair the validity, perfection and enforceability of the liens granted hereunder; (b) The Reorganized Debtors shall execute and deliver to Sandton all such financing statements, deeds of trust, mortgages, security agreements, notices and other documents as the Sandton may reasonably request to evidence, confirm, validate or perfect, or to insure the contemplated priority of the Exit Term Loan Facility Liens; and (c) in lieu of obtaining such consents or filing any mortgages, financing statements, notices of lien or similar instruments, Sandton may, in its sole discretion, choose to file a true and complete copy of the Confirmation

Order in any place at which any such instruments would or could be filed, together with a description of the Exit Term Loan Facility Collateral, and such filing shall have the same effect as if such mortgages, deeds of trust, financing statements, notices of lien or similar instruments had been filed or recorded as of the date of the entry of the Confirmation Order.

**5.7** **Subordination of Indebtedness and Liens.** Effective immediately upon entry of a Confirmation Order and except as otherwise provided under the Plan, the payment of any and all of the Subordinated Indebtedness is expressly subordinated and subjected to the prior Payment in Full in cash of the Exit Term Loan Facility. Any and all Liens existing on or after the Petition Date granted by or on behalf of any Debtor or Reorganized Debtor in favor of any Subordinated Lender shall be subordinate and junior in all respects to any and all Liens, including the Exit Term Loan Facility Liens, securing repayment of the Exit Term Loan Facility, and any and all Liens existing on or after the Petition Date granted by or on behalf of any Debtor or Reorganized Debtor in favor of Sandton, including the Exit Term Loan Facility Liens, shall be senior and superior in all respects to any and all Liens securing repayment of any Subordinated Indebtedness. Except as otherwise provided under the Plan, no payment of principal, interest, fees or any other amount due with respect to the Subordinated Indebtedness shall be made and no Subordinated Lender shall exercise any right of setoff or recoupment with respect to any Subordinated Indebtedness until all of the Exit Term Loan Facility is Paid in Full in cash; provided, notwithstanding the foregoing, so long as no Default or Event of Default (as each such term is defined in the Exit Credit Agreement) has occurred and is continuing or would result therefrom, the Reorganized Debtors may make, and the Subordinated Lenders may receive, payments expressly authorized by the Plan. Pursuant to section 1141(a) of the Bankruptcy Code, the Plan, and Confirmation Order, the subordinations effected in the Plan and Confirmation Order, and the rights and the obligations of each Subordinated Lender and Sandton arising thereunder, shall not be affected, modified or impaired in any manner. In the event that any Reorganized Debtor makes, or any Subordinated Lender receives, any payment in respect of any Subordinated Indebtedness in violation hereof, such payment shall be deemed to be held by such Subordinated Lender as the property of, and in trust for the benefit of, Sandton, and such Subordinated Lender shall immediately deliver such payment to Sandton in precisely the form received. The subordination provided for herein is for the benefit of and enforceable by Sandton, and no right of Sandton to enforce the subordination of any Subordinated Indebtedness shall be impaired by any act or failure to act by any Reorganized Debtor or any Subordinated Lender.  Sandton may from time to time enter into any and all amendments, waivers or other modifications of the Exit Credit Agreement or the other documents evidencing the Exit Term Loan Facility without providing any notice to, or seeking the consent of, any Subordinated Lender, and without affecting the subordination of each Subordinated Lender's Subordinated Indebtedness to the Exit Term Loan Facility and the Exit Term Loan Facility Liens as set forth herein.

**5.8** **Sale or Transfer of Subordinated Indebtedness.** No Subordinated Lender shall sell, assign, dispose of or otherwise transfer all or any portion of the Subordinated Indebtedness unless, prior to the consummation of any such action, the transferee thereof executes and delivers to Sandton and the Reorganized Debtors a duly executed agreement to be bound by the Plan and providing for the continued subordination of the Subordinated Indebtedness to the Exit Term Loan Facility as provided under the Plan and the continued effectiveness of all of the rights of Sandton arising under the Exit Term Loan Facility, the Bankruptcy Code, the Confirmation Order, and the Plan.  Notwithstanding the failure to execute or deliver any such

agreement, the subordination effected hereby shall survive any sale, assignment, disposition or other transfer of all or any portion of the Subordinated Indebtedness, and the terms of the Plan and Confirmation Order shall be binding upon the successors and assigns of each Subordinated Lender.

**5.9     Restriction on Action by Subordinated Lenders.** Until the Exit Term Loan Facility is Paid in Full in cash and Sandton has released the Exit Term Loan Facility Liens, and notwithstanding anything contained in the Subordinated Instruments or the Exit Credit Agreement to the contrary, (a) no Subordinated Lender shall agree to any amendment or modification of, or supplement to, the Subordinated Instruments as in effect on the date hereof, the effect of which is to require any Debtor to grant any Lien, or give any collateral, as security for Subordinated Indebtedness it being understood that, in the event that any Subordinated Lender obtains a Lien on any asset of any Debtor in violation of this Section, such Lien shall immediately be assigned to Sandton, and at all times prior to such assignment, such Subordinated Lender shall be acting as sub-agent of Sandton for the sole purpose of perfecting the Lien on such asset; (b) no Subordinated Lender shall, without the prior written consent of Sandton, take any Subordinated Collection Action with respect to the Subordinated Indebtedness; and (c) no Subordinated Lender shall, without the prior written consent of Sandton, commence any Proceeding against any Debtor or join with any creditor in bringing any Proceeding against any Debtor, or exercise or enforce any right or remedy available to any Subordinated Lender with respect to the Subordinated Instruments.

**5.10    Sale of Real Estate.** Within thirty (30) days following the Effective Date, the Reorganized Debtors shall employ a broker to market and sell Canyonlands and McGregor for fair market value and for no less than the appraised value of each. Canyonlands was appraised in June of 2024 at $16,000,000. McGregor was appraised in June of 2024 at $5,400,000. The Reorganized Debtors shall file a report of sale with the Court upon closing of the sale transaction for Canyonlands and McGregor. $5,000,000 of the net sale proceeds of Canyonlands shall be paid to MetLife as payment in full of the mortgage and loan related to Canyonlands. The remainder of the net sale proceeds from the sale of Canyonlands shall be paid to Rabo as principal paydown on its Allowed Class 5 Secured Claim. The net sale proceeds from the sale of McGregor shall be paid to Rabo as principal paydown on its Allowed Class 5 Secured Claim.

**5.11    Refinancing.** By September 30, 2026, the Reorganized Debtors shall employ an investment banker to secure a Refinancing Facility in the amount of $125 million. Such Refinancing Facility shall be secured and funded prior to March 31, 2027.

**5.12    Conversion to Sale Process.** If the Reorganized Debtors have not received any term sheets or commitments for the Refinancing Facility by January 31, 2027, the Reorganized Debtors shall employ a professional to facilitate a sale process of substantially all of the Reorganized Debtors assets. Such sale process shall not close prior to March 31, 2027. If a Refinancing Facility is obtained and funded by March 31, 2027, the sale process shall cease and shall not move forward.

**5.13    Vesting of Assets in the Reorganized Debtors.** Except as otherwise provided in the Plan, or any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, all property in each Estate, all the Debtors' Causes of Action (including, without express or implied limitation, all Causes of Action identified in the Schedule of Retained Causes

of Action), all Executory Contracts and Unexpired Leases assumed, but not assigned, by any of the Debtors, and any property acquired by any of the Debtors, including Interests held by the Debtors in non-Debtor subsidiaries, shall vest in the Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances unless expressly provided otherwise by the Plan or Confirmation Order. On and after the Effective Date, the Reorganized Debtor may operate its business and may use, acquire, or dispose of property, and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

  **5.14**  **Authority.** The Reorganized Debtors shall have the authority and right on behalf of the Debtors and the Estates and without the need for Bankruptcy Court approval (in each case, unless otherwise provided in the Plan) to carry out and implement all applicable provisions of the Plan, including to:

    a.  review, reconcile, compromise, settle, or object to Claims and resolve such objections as set forth in the Plan, free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules;

    b.  calculate and make Distributions and calculate and establish reserves under and in accordance with the Plan;

    c.  retain, compensate, and employ professionals and other Persons to represent the Reorganized Debtors with respect to and in connection with its rights and responsibilities;

    d.  establish, maintain, and administer documents and accounts of the Debtors or Reorganized Debtors as appropriate;

    e.  maintain, conserve, collect, settle, and protect the Reorganized Debtors' Assets (subject to the limitations described herein);

    f.  sell, liquidate, transfer, assign, distribute, abandon, or otherwise dispose of the Reorganized Debtors' Assets, or any part thereof or interest therein upon such terms as the Reorganized Debtors determine to be necessary, appropriate, or desirable;

    g.  negotiate, incur, and pay the Reorganized Debtors' Expenses; and

    h.  prepare and file any and all informational returns, reports, statements, returns, and other documents or disclosures relating to the Debtors or Reorganized Debtors that are required under the Plan, by any governmental unit, or by applicable law, including but not limited to filing any reports required by the Bankruptcy Code or Bankruptcy Rules that are due to be filed after the Effective Date and paying any fees required by 28 U.S.C. § 1930 that are due to be paid after the Effective Date.

  **5.15**  **Corporate Existence**. Except as otherwise provided in the Plan (including with respect to any Restructuring Transaction undertaken pursuant to the Plan), or any agreement, instrument, or other document incorporated in the Plan on and after the Effective Date, each Debtor shall continue to exist as a Reorganized Debtor and as a separate corporation, limited liability

company, partnership, or other form of entity, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form of entity, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other analogous formation documents) in effect before the Effective Date, except to the extent such certificate of incorporation and bylaws (or other analogous formation documents) are amended by the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, federal law, or other non- bankruptcy law).

5.16    **Employee Obligations.** Except as (i) otherwise provided in the Plan (ii) identified on the Rejected Executory Contracts and Unexpired Leases Schedule; (iii) was rejected by the Debtors pursuant to a Bankruptcy Court order; or (iv) is the subject of a motion to reject pending on the date of the Confirmation Hearing, the Reorganized Debtors shall honor the Debtors' Employee Obligations and, to the extent not already satisfied, the Debtors' Employee Obligations shall become obligations of the Reorganized Debtors in accordance with their terms.

5.16.1    To the extent the Employee Obligations are executory contracts and (i) such executory contracts are not identified on the Rejected Executory Contracts and Unexpired Leases Schedule, (ii) were not previously rejected by a Final Order, pursuant to section 365 and 1123 of the Bankruptcy Code, or (iii) are not the subject of a motion to reject pending on the date of the Confirmation Hearing, each will be deemed assumed as of the Effective Date and the obligations thereunder shall be paid in the ordinary course consistent with the terms thereof; provided, that, the consummation of the Restructuring Transactions and any associated organizational changes shall not constitute a "change of control," "change in control," or other similar event under any of the above-listed written contracts, agreements, policies, programs and plans.

5.16.2    On the Effective Date, each Employment Agreement will be deemed assumed and shall become obligations of the Reorganized Debtors in accordance with their terms.

5.17    **Workers Compensation Program.** As of the Effective Date, the Reorganized Debtors shall continue to honor their obligations under (i) all applicable workers' compensation laws in jurisdictions in which the Reorganized Debtors operate or the Debtors previously operated; and (ii) the Debtors' (a) written contracts, agreements, and agreements of indemnity, in each case relating to workers' compensation, (b) self-insurer workers' compensation bonds, policies, programs, and plans for workers' compensation and (c) workers' compensation insurance policies and programs.

5.18    **Pursuit and Resolution of Reorganized Debtors' Causes of Action.** The Reorganized Debtors, may, and will have the exclusive right, power, and interest on behalf of the Debtors, and the Estates to institute, commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw any and all Reorganized Debtors' Causes of Action without any further order of the Bankruptcy Court, except as otherwise provided in the Plan. From and after the Effective Date, the Reorganized Debtors, in accordance with Bankruptcy Code section 1123(b)(3), shall serve as representative of the Estates with respect to any and all

Reorganized Debtors' Causes of Action that were Estate Assets and shall retain and possess the right to institute, commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw, as appropriate, any and all Reorganized Debtors' Causes of Action in any court or other tribunal.

**5.19** **No Successor Liability**. Except as otherwise expressly provided in this Plan and Confirmation Order, the Reorganized Debtors (i) are not, and shall not be deemed to assume, agree to perform, pay, or otherwise have any responsibilities for any liabilities or obligations of the Debtors or any other Person relating to or arising out of the operations or the assets of the Debtors prior to the Effective Date; (ii) are not, and shall not be, successors to the Debtors by any reason of any theory of law or equity or responsible for the knowledge or conduct of any Debtor prior to the Effective Date; and (iii) shall not have any successor or transferee liability of any kind or character.

**5.20** **Preservation of Privileges and Defenses.** The actions taken by the Debtors, the Reorganized Debtors, or any of their respective Related Parties in connection with the Plan shall not be (or be deemed to be) a waiver of any privilege or defense of the Debtors or the Reorganized Debtors, as applicable, including any attorney-client privilege or work-product doctrine. Notwithstanding any Debtor providing any privileged information related to the Reorganized Debtors, or any Person associated with any of the foregoing, such privileged information shall be without waiver in recognition of the joint, common, or successor interest in prosecuting the Reorganized Debtors Causes of Action and shall remain privileged. The Reorganized Debtors shall retain the right to waive their own privileges. Only the Reorganized Debtors shall have the right to waive the attorney- client privilege, work-product doctrine, or other protections as to the Debtors and the Reorganized Debtors.

**5.21** **Preservation of Rights of Action.**

**5.21.1** **Maintenance of Avoidance Actions and Causes of Action.** Except as otherwise provided in the Plan or the Confirmation Order, from and after the Effective Date, the Reorganized Debtors will retain all rights to institute, commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw, as appropriate, any and all of the Debtors', the Estates', or the Reorganized Debtors' Causes of Action (whether existing as of the Petition Date or thereafter arising), and all Avoidance Actions, all as Reorganized Debtors' Causes of Action, in each case in any court or other tribunal, including in an adversary proceeding Filed in the Chapter 11 Cases. The Reorganized Debtors, as successor in interest to the Debtors and the Estates, may, and will have the exclusive right, power, and interest on behalf of itself, the Debtors, and the Estates to, enforce, sue on, settle, compromise, transfer, or assign (or decline to do any of the foregoing) any or all of the Reorganized Debtors' Causes of Action without notice to or approval from the Bankruptcy Court. In accordance with the Plan, and pursuant to Bankruptcy Code section 363 and Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, from and after the Effective Date, the Reorganized Debtors may compromise and settle the Reorganized Debtors' Causes of Action.

**5.21.2** **Preservation of All Reorganized Debtors' Causes of Action Not Expressly Settled or Released.** The failure to specifically identify in the Disclosure Statement or the Plan any potential or existing Avoidance Actions or Causes of Action as a Reorganized Debtors'

Cause of Action is not intended to and shall not limit the rights of the Reorganized Debtors to pursue any such Avoidance Actions or Causes of Action. Unless a Reorganized Debtors' Cause of Action is expressly waived, relinquished, released, compromised, or settled in the Plan or any Final Order (including the Confirmation Order), the Debtors expressly reserve such Causes of Action for later resolution by the Reorganized Debtors (including any Avoidance Actions or Causes of Action not specifically identified or of which the Debtors may presently be unaware or that may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances that may change or be different from those the Debtors now believe to exist). As such, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches will apply to any such Avoidance Actions or Causes of Action upon or after Confirmation of the Plan based on the Disclosure Statement, the Plan, or the Confirmation Order, except when such Avoidance Actions or Causes of Action have been expressly released. In addition, the right to pursue or adopt any claims alleged in any lawsuit in which the Debtors is a plaintiff, defendant, or an interested party is fully reserved as against any Person that is not a Released Party, including the plaintiffs or co- defendants in such lawsuits.

**5.22    Cancellation of Instruments.** Except to the extent necessary to give effect to the Exit Term Loan Facility and the Exit Term Loan Facility Liens on the Exit Term Loan Facility Collateral the treatment of any Holder of an Allowed Claim and except with respect to any executory contracts and unexpired leases that are assumed under the Plan or otherwise assumed and assigned pursuant to a Final Order, any agreement, bond, certificate, contract, indenture, lease, note, security, warrant, or other instrument or document evidencing or creating any indebtedness or obligation of the Debtors shall be deemed cancelled on the Effective Date, and all Liens, mortgages, pledges, grants, trusts, and other interests relating thereto shall be automatically cancelled, and all obligations of the Debtors thereunder or in any way related thereto shall be released.

**5.23    Insurance Policies.**

**5.23.1    Insurance Policies Remain in Force.** Up to and including their policy expiration date(s), any and all Insurance Policies in effect as of the Effective Date shall remain in full force and effect according to their terms and the coverage obligations of the insurers and third-party administrators under such Insurance Policies shall continue following the Effective Date (including any obligations to pay, defend, and process insured claims).

**5.23.2    Insurance Policies; Employment Practice Liability Policies.** Nothing contained in this Plan shall affect or impair the rights of any non- Debtor insured persons covered under any Insurance Policy, which expressly includes any director and officer, employment practices, or similar liability Insurance Policies (including, without limitation, policies for the benefit of the Debtors' directors, officers, employees, members, managers, or similar persons who served in such capacity either before or after the Petition Date).

**ARTICLE 6**
**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**6.1**      **Assumption and Rejection of Executory Contracts and Unexpired Leases**.
On the Effective Date, except as otherwise provided herein, all Executory Contracts or Unexpired Leases not otherwise assumed or rejected will be deemed assumed by the applicable Reorganized Debtor pursuant to sections 365 and 1123 of the Bankruptcy Code, other than those Executory Contracts and Unexpired Leases that (i) are identified on the Rejected Executory Contracts and Unexpired Leases Schedule; (ii) have been previously rejected by a Final Order; (iii) have been previously assumed or assumed and assigned by a Final Order; (iv) are the subject of a motion to reject Executory Contracts or Unexpired Leases that is pending on the Confirmation Date; (v) which the Debtors have, as of the Confirmation Date, received authority to reject pursuant to an order of the Bankruptcy Court with the effective date of such rejection is after the Effective Date; provided, that, nothing in the Plan or Confirmation Order shall constitute an admission or finding that any plan or agreement referenced in the immediately preceding clauses constitutes an Executory Contract; and provided further, that the Debtors reserve the right to seek enforcement of or other relief with respect to an assumed or assumed and assigned Executory Contract or Unexpired Lease following the Confirmation Date, including but not limited to seeking an order of the Bankruptcy Court for the rejection of such Executory Contract or Unexpired Lease for cause. The terms of any Final Order entered by the Bankruptcy Court prior to the entrance of the Confirmation Order that provide for the assumption and assignment of nonresidential real property shall control over the terms of the Plan and Confirmation Order.

**6.1.1**      Entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumptions and rejections of such Executory Contracts or Unexpired Leases as set forth in the Plan, the Assumed Executory Contracts and Unexpired Leases Schedule, and the Rejected Executory Contracts and Unexpired Leases Schedule, pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Except as otherwise specifically set forth herein, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date.

**6.1.2**      Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the applicable contracting Reorganized Debtor in accordance with its terms, except as such terms may have been modified by any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law (in each case, in accordance with applicable law, including by consent of the counterparty to such Executory Contract or Unexpired Lease). Subject to applicable law, including section 365(d)(4) of the Bankruptcy Code, any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by a Final Order of the Bankruptcy Court on or after the Effective Date but may be withdrawn, settled, or otherwise prosecuted by the Reorganized Debtors, with any such disposition to be deemed to effect an assumption, assumption and assignment, or rejection, as applicable, as of the Effective Date.

**6.1.3**      To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan restricts, conditions or prevents, or purports to restrict, condition or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such Executory Contract or Unexpired Lease (including any "anti- assignment," "change of control," consent right, or similar provision), then such provision shall be deemed modified such that the

transaction contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto. The consummation of the Plan and the implementation of the Restructuring Transactions are not intended to, and shall not, constitute a "change of control," "change in control," or other similar event under any lease, contract, or agreement to which a Debtor is a party.

> **6.2** **Claims Based on Rejection of Executory Contracts or Unexpired Leases.** Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be Filed with the Bankruptcy Court by the later of thirty (30) days from (i) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, and (ii) the effective date of the rejection of such Executory Contract or Unexpired Lease. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed within such time shall be Disallowed pursuant to the Confirmation Order, forever barred from assertion, and shall not be enforceable against, as applicable, the Debtors, the Reorganized Debtors, the Estates, or property of the foregoing parties, without the need for any objection by the Debtors or the Reorganized Debtors, as applicable, or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules, if any, or a Proof of Claim to the contrary**. Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with <u>Section 3.10</u>, and such claims may be objected to in accordance with this Plan.

> **6.3** **Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.** The Debtors or the Reorganized Debtors, as applicable, shall pay Cure Claims that are not subject to an Assumption Dispute on the Effective Date, or to the extent necessary, no later than three (3) Business Days following the Effective Date, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. The Reorganized Debtors may settle any Cure Claim on account of any Executory Contract or Unexpired Lease without any further notice to or action, order, or approval of the Bankruptcy Court.

> **6.3.1.** Except as set forth below, any Cure Claims shall be satisfied for the purposes of section 365(b)(1) of the Bankruptcy Code by payment in Cash of the cure amount set forth on the Assumed Executory Contracts or Unexpired Leases Schedule, as applicable, for the applicable Executory Contract or Unexpired Lease, or on such other terms as the parties to such Executory Contracts or Unexpired Leases and the Debtors or the Reorganized Debtors, as applicable, may otherwise agree or as determined by the Bankruptcy Court by a Final Order. Any Cure Claim shall be deemed fully satisfied, released, and discharged upon payment by the Debtors or the Reorganized Debtors of such Cure Claim, as applicable.

> **6.3.2.** Unless otherwise provided by an order of the Bankruptcy Court, the Debtors have attached as schedules their initial Assumed Executory Contracts[2] and Unexpired

---

[2] Pursuant to the Stipulation with East Valley Development ("EVD"), the Debtors have made their final decision on assumption or rejection of the EVD contracts and have made the decision to assume such contracts. As such, the EVD contracts are on the initial schedule of assumed contracts and will remain on such schedule.

Leases Schedule and Rejected Executory Contracts and Unexpired Leases Schedule. The Debtors shall file their final list of Assumed Executory Contracts and Unexpired Leases Schedule and Rejected Executory Contracts and Unexpired Leases Schedule no later than fourteen (14) days prior to the earlier to occur of (a) the Voting Deadline and (b) the deadline for objecting to the Plan, which shall supersede the initial schedule if any such initial schedule is filed. The Debtors shall cause all Filed Assumed Executory Contracts and Unexpired Leases Schedules and Rejected Executory Contracts and Unexpired Leases Schedules or notices of proposed assumption, proposed amounts of Cure Claims, and proposed rejections to be served by first class mail on counterparties to Executory Contracts and Unexpired Leases to be assumed or rejected pursuant to the Plan that are identified in such schedule. The Debtors may supplement or modify the Assumed Executory Contract and Unexpired Leases Schedule or Rejected Executory Contracts and Unexpired Leases Schedule up to one (1) Business Day prior to the Confirmation Hearing. Any objection to the assumption or rejection of an Executory Contract or Unexpired Lease under the Plan must be Filed, served and actually received by the Debtors by the later of (1) the Confirmation Objection Deadline or (2) with respect to any Executory Contract or Unexpired Lease that is added to the Assumed Executory Contract and Unexpired Leases Schedule after the date that is fourteen (14) days prior to the Confirmation Objection Deadline, the date that is fourteen (14) days following the filing of the relevant supplement to the Assumed Executory Contract and Unexpired Leases Schedule.

**6.3.3.    Any party that fails to timely object to the assumption of its Executory Contract or Unexpired Lease (including the ability of the applicable Reorganized Debtor or assignee to provide "adequate assurance of future performance" under such Executory Contract or Unexpired Lease within the meaning of section 365 of the Bankruptcy Code) or the amount of the Cure Claim listed on the Assumed Executory Contracts and Unexpired Leases Schedule as set forth in the paragraph above, shall be (i) deemed to have consented to the assumption of its Executory Contract or Unexpired Lease and to such Cure Claim and (ii) forever barred, estopped, and enjoined from disputing the amount of the Cure Claim set forth on the Assumed Executory Contracts and Unexpired Leases (including a cure amount of $0.00) and/or from asserting any Claim against the applicable Debtor or Reorganized Debtor arising under section 365(b)(1) of the Bankruptcy Code.**

**6.3.4.**    Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise, subject to the payment of the applicable Cure Claim, shall result in the full release and satisfaction of any Claims or defaults against the Debtors, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date that the Debtors assume such Executory Contract or Unexpired Lease; provided, that the Debtors or the Reorganized Debtors, as applicable, will remain obligated to pay any accrued but unbilled amounts under any such assumed Executory Contract or Unexpired Lease to the extent that such unbilled amounts were not due to be billed prior to the date of assumption. Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court upon payment of the applicable Cure Claim.

**6.4**    **Assumption Dispute Resolution.** In the event of a timely Filed objection

regarding (i) the amount of any Cure Claim; (ii) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under an Executory Contract or Unexpired Lease to be assumed; or (iii) any other matter pertaining to assumption or payment of a Cure Claim required by section 365(b)(1) of the Bankruptcy Code, such dispute (an "**Assumption Dispute**") shall be resolved by a Final Order of the Bankruptcy Court (which may be the Confirmation Order) or as may be agreed upon by the Debtors or the Reorganized Debtors, as applicable, and the counterparty to the Executory Contract or Unexpired Lease.

6.4.1    To the extent an Assumption Dispute relates solely to the amount of a Cure Claim, the Debtors may assume and/or assume and assign the applicable Executory Contract or Unexpired Lease prior to the resolution of such Assumption Dispute; provided, that the Debtors reserve Cash in an amount sufficient to pay the full amount reasonably asserted as the required cure payment by the counterparty or counterparties to such Executory Contract or Unexpired Lease. To the extent that the Assumption Dispute is resolved or determined unfavorably to the Debtors, the Debtors may reject the applicable Executory Contract or Unexpired Lease after such determination, which rejection shall supersede, nullify, and render of no force or effect the earlier assumption and/or assumption and assignment.

6.4.2    For the avoidance of doubt, if the Debtors are unable to resolve an Assumption Dispute relating solely to the amount of a Cure Claim prior to the Confirmation Hearing, such Assumption Dispute may be scheduled to be heard by the Bankruptcy Court after the Confirmation Hearing (the "**Adjourned Cure Dispute**").

6.5    **Contracts and Leases Entered into After the Petition Date**. Contracts and leases entered into after the Petition Date by the Debtors, including any Executory Contracts and Unexpired Leases assumed by the Debtors, and not assigned to a non-Debtor Entity, will be performed by the Debtors or the Reorganized Debtors in the ordinary course of its operations. Accordingly, such contracts and leases (including any assumed Executory Contract and Unexpired Leases) shall survive and remain unaffected by entry of the Confirmation Order.

6.6    **Modifications, Amendments, Supplements, Restatements, or Other Agreements.** Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

6.6.1    Modifications, amendments, and supplements to, or restatements of, prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

6.7    **Reservation of Rights.** Neither the inclusion of any Executory Contract or

DEBTORS' AMENDED CHAPTER 11 PLAN OF REORGANIZATION – PAGE 65

Unexpired Lease on the Debtors' Schedules, the Assumed Executory Contracts and Unexpired Leases Schedule or the Rejected Executory Contracts and Unexpired Leases Schedule, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Debtor or Reorganized Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors, or, after the Effective Date, the Reorganized Debtors, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease. For the avoidance of doubt, the Debtors reserve all rights with respect to any Causes of Action or other right with respect to any Executory Contract or Unexpired Lease.

**6.8** **Nonoccurrence of Effective Date.** If the Effective Date fails to occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to further extend the deadline for assuming or rejecting Unexpired Leases under section 365(d)(4) of the Bankruptcy Code.

## ARTICLE 7
## PROVISIONS GOVERNING DISTRIBUTIONS

**7.1** **Timing of Distributions for Allowed Claims.** Except as otherwise provided herein or as ordered by the Bankruptcy Court, all Distributions to Holders of Allowed Claims as of the applicable Distribution Date shall be made on or as soon as practicable after the applicable Distribution Date. Distributions made as soon as reasonably practicable after the Effective Date, or such other date set forth herein shall be deemed to have been made on such date.

**7.2** **Calculating Distributions and Related Matters.** The Reorganized Debtors shall undertake in their reasonable discretion to make in accordance with the Plan all calculations of amounts for or relating to Distributions for Holders of Allowed Claims to be made from the Reorganized Debtors or for reserves for Holders of Contingent Claims, Disputed Claims, and Unliquidated Claims to be established by the Reorganized Debtors, and, may establish and holdback from Distributions reasonable reserves for other contingencies.

**7.3** **Interest and Other Amounts Regarding Claims.** Except to the extent provided in Bankruptcy Code section 506(b) and Allowed by a Final Order or otherwise agreed, (i) in the Plan, or (ii) in the Confirmation Order, post-petition interest shall not accrue or be paid on any Claims, and no Holder of an Allowed Claim shall be entitled to interest, penalties, fees, or late charges accruing or chargeable on any Claim from and after the Petition Date.

**7.4** **Means of Cash Payment.** Cash payments under the Plan shall be made, at the option and in the sole discretion of the Reorganized Debtors, by checks drawn on or wire transfer, electronic funds transfer, or ACH from a domestic bank. Cash payments to foreign Creditors may be made, at the option and in the sole discretion of the Reorganized Debtors by such means as are necessary or customary in a particular foreign jurisdiction. Cash payments made pursuant to the Plan in the form of checks shall be null and void if not cashed within 180 calendar days of the date of the issuance thereof. Requests for reissuance of any check within 180 calendar days of the date of the issuance thereof shall be made directly to the Reorganized Debtors.

**7.5** **Form of Currency for Distributions.** All Distributions under the Plan shall be

made in U.S. Dollars. Where a Claim has been denominated in foreign currency on a proof of claim, the Allowed amount of such Claim shall be calculated in U.S. Dollars based upon the currency conversion rate in place as of the Petition Date and in accordance with Bankruptcy Code section 502(b).

7.6     **Fractional Distributions.** Notwithstanding anything in the Plan to the contrary, no payment of fractional cents shall be made pursuant to the Plan. Whenever any payment of a fraction of a cent under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole penny (up or down), with half cents or more being rounded up and fractions less than half of a cent being rounded down.

7.7     **De Minimis Distributions.** If the amount of Cash to be distributed to the Holder of an Allowed Claim is less than fifty dollars ($50) on a particular distribution date, the Reorganized Debtors may hold the Cash distributions to be made to such Holders until the aggregate amount of Cash to be distributed to each applicable Holder is in an amount equal to or greater than fifty dollars ($50). Notwithstanding the preceding sentence, if the aggregate amount of Cash distributions owed to any Holder of an Allowed Claim under the Plan never equals or exceeds fifty dollars ($50), then the Reorganized Debtors shall not be required to distribute Cash to any such Holder.

7.8     **No Distributions with Respect to Certain Claims.** Notwithstanding anything in the Plan to the contrary, no Distributions or other consideration of any kind shall be made on account of any Contingent Claim, Disputed Claim, or Unliquidated Claim unless and until such Claim becomes an Allowed Claim, and then only to the extent that such Claim becomes an Allowed Claim and as provided under the Plan for such Allowed Claim. Nonetheless, in undertaking the calculations concerning Allowed Claims under the Plan, including the determination of Distributions due to the Holders of Allowed Claims, each Contingent Claim, Disputed Claim, or Unliquidated Claim shall be treated as if it were an Allowed Claim (which, for Unliquidated Claims, shall mean they shall be treated as if Allowed in such amounts as determined in the reasonable discretion of the Reorganized Debtors), except that if the Bankruptcy Court estimates the likely portion of such a Claim to be Allowed or authorized or the Bankruptcy Court or the Holder of such Claim and the Reorganized Debtors otherwise determine the amount or number that would constitute a sufficient reserve for such a Claim, such amount or number as determined by the Bankruptcy Court or by agreement of the Holder of such Claim and the Reorganized Debtors shall be used with respect to such Claim. Distributions due in respect of a Contingent Claim, Disputed Claim, or Unliquidated Claim shall be held in reserve by the Reorganized Debtors in one or more Distribution Reserves. The Reorganized Debtors may elect to treat any Distribution Reserve as a "Disputed Ownership Fund," pursuant to Treasury Regulation section 1.468B-9(c)(2)(ii). As outlined in this election, Creditors holding such Claims are not treated as transferors of the money or property transferred to the "Disputed Ownership Fund." For U.S. federal income tax purposes, a "Disputed Ownership Fund" is treated as the owner of all assets that it holds. A "Disputed Ownership Fund" is treated as a C corporation for purposes of the Internal Revenue Code unless all assets transferred to the Disputed Ownership Fund are passive investment assets for tax purposes, in which case it will be treated as a "qualified settlement fund" for U.S. federal income tax purposes. A "Disputed Ownership Fund" must file all required income and information tax returns and make all tax payments.

**7.9** **Distributions and Transfers Upon Resolution of Contingent Claims, Disputed Claims, or Unliquidated Claims.** After an objection to a Disputed Claim is resolved or a Contingent Claim or Unliquidated Claim has been determined in whole or in part by a Final Order or by agreement, an amount of Cash held in the Disputed Ownership Fund corresponding to the amount of any resulting Allowed Claim shall be transferred, net of any tax payable by the Disputed Ownership Fund with respect to the transfer, in a taxable transaction to the Holder of the formerly Contingent Claim, Disputed Claim, or Unliquidated Claim. Upon each such resolution of a Claim against the Disputed Ownership Fund and such transfer with respect to any resulting Allowed Claim, any remaining Cash in the Disputed Ownership Fund that had been held with respect to such formerly Contingent Claim, Disputed Claim, or Unliquidated Claim prior to its resolution shall be transferred, net of any tax payable by the Disputed Ownership Fund with respect to such transfers, for payment, allocation, or reserve in accordance with the Plan for (a) unpaid or unutilized amounts for Reorganized Debtors' Expenses or (b) any post-Confirmation reserve requirements of the Reorganized Debtors in connection with the Plan, any agreements, or any Bankruptcy Court orders.

**7.10** **Delivery of Distributions.** Distributions shall be made by the Reorganized Debtors to Holders of the Allowed Claims as of the record date set for such Distribution. Distributions to Holders of Allowed Claims shall be made (a) at the addresses set forth in the proofs of claim Filed by such Holders, (b) at the addresses reflected in the Schedules if no proof of claim has been Filed, or (c) at the addresses set forth in any written notices of address changes delivered to the Debtors. If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made unless and until the Reorganized Debtors are notified of such Holder's then-current address. The responsibility to provide the Reorganized Debtors with a current address of a Holder of an Allowed Claim shall always be the responsibility of such Holder. Amounts in respect of undeliverable Distributions made by the Reorganized Debtors shall be held in trust on behalf of the Holder of the Allowed Claim to which they are payable by the Reorganized Debtors until the earlier of the date that such undeliverable Distributions are claimed by such Holder and 180 calendar days after the date the undeliverable Distributions were made.

**7.11** **Application of Distribution Record Date & Other Transfer Restrictions.** At the close of business on the Distribution Record Date, the claims registers for all Claims shall be closed, and there shall be no further changes in the record holders of any Claims. Except as provided herein, the Reorganized Debtors and their Related Parties shall have no obligation to recognize any putative transfer of Claims occurring after the Distribution Record Date and shall be entitled instead to recognize and deal for all purposes hereunder with only those record holders stated on the claims registers as of the close of business on the Distribution Record Date irrespective of the number of Distributions to be made under the Plan to such Persons or the date of such Distributions. In addition, the Reorganized Debtors and their Related Parties shall have no obligation to recognize any putative transfer of General Unsecured Claims occurring at any time prior to the Effective Date to which the Debtors did not expressly consent and shall be entitled instead to recognize and deal for all purposes hereunder with only the Holders of General Unsecured Claims as reflected on the claims registers.

**7.12** **Withholding, Payment, and Reporting Requirements Regarding Distributions.** All Distributions under the Plan shall, to the extent applicable, comply with all tax

withholding, payment, and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all Distributions shall be subject to any such withholding, payment, and reporting requirements. The Reorganized Debtors shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding, payment, and reporting requirements, including, to the extent such information is not already available to the Reorganized Debtors, requiring each Holder of a Claim to provide an executed current Form W-9, Form W-8, or similar tax form as a prerequisite to receiving a Distribution. Notwithstanding any other provision of the Plan, (a) each Holder of an Allowed Claim that is to receive a Distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such Distribution, and including, in the case of any Holder of a Disputed Claim that has become an Allowed Claim, any tax obligation that would be imposed on the Reorganized Debtors in connection with such Distribution; and (b) no Distribution shall be made to or on behalf of such Holder pursuant to the Plan unless and until such Holder has made arrangements reasonably satisfactory to the Reorganized Debtors for the payment and satisfaction of such withholding tax obligations or such tax obligation that would be imposed in connection with such Distribution.

**7.13** **Defenses and Setoffs.** Except as otherwise expressly provided herein, the Debtors, the Reorganized Debtors, as applicable, may, but shall not be required to, set off against or recoup from any Claims of any nature whatsoever that the Debtors or the Reorganized Debtors may have against the Holder, but neither the failure to do so nor the Allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any such Claim they may have against the Holder of such Claim. In no event shall any Holder of Claims be entitled to set off any such Claim against any claim, right, or Cause of Action of the Debtors or Reorganized Debtors (as applicable), unless (i) the Debtors have consented; and (ii) such Holder has Filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise. Notwithstanding anything set forth in this paragraph, any set off right with respect to a Reinstated General Unsecured Claim or an assumed Executory Contract or Unexpired Lease shall be governed by applicable non-bankruptcy law, including the terms of such assumed Executory Contract or Unexpired Lease.

**7.14** **Allocation of Distributions.** All Distributions received under the Plan by Holders of Claims shall be deemed to be allocated first to the principal amount of such Claim, as determined for U.S. federal income tax purposes, and then to accrued interest, if any, with respect to such Claim through the Petition Date.

**7.15** **Joint Distributions.** The Reorganized Debtors may, in their sole discretion, make Distributions jointly to any Holder of a Claim and any other Person that the Reorganized Debtors have determined to have an interest in such Claim.

**7.16** **Forfeiture of Distributions.** If the Holder of a Claim fails to cash a check payable to it within the time period set forth in Section 7.5, fails to claim an undeliverable Distribution within the time limit set forth in Section 7.11, or fails to complete and return to the

Reorganized Debtors the appropriate Form W-8 or Form W-9 within 180 calendar days after a request for the completion and return of the appropriate form pursuant to Section 7.13 (or such later time as approved by a Bankruptcy Court order), then such Holder shall be deemed to have forfeited its right to any reserved and future Distributions under the Plan. Any such forfeited Distributions shall be deemed Available Cash for all purposes, notwithstanding any federal or state escheat laws to the contrary.

## ARTICLE 8
## PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS AND DISTRIBUTIONS WITH RESPECT THERETO

**8.1** **Objections to and Resolution of Disputed Claims, Including Any Claims of Excluded Parties.** From and after the Effective Date, the Reorganized Debtors shall have the exclusive authority to compromise, resolve, and Allow any Disputed Claim without the need to obtain approval from the Bankruptcy Court, and any agreement entered into by the Reorganized Debtors with respect to the Allowance of any Claim shall be conclusive evidence and a final determination of the Allowance of such Claim.

**8.2** **Claim Objections.** All objections to Claims (other than Professional Fee Claims, which shall be governed by Section 3.1.2 of the Plan) shall be Filed by the Reorganized Debtors on or before the Claim Objection Deadline, which date may be extended by order of the Bankruptcy Court. If a timely objection has not been Filed to a proof of claim or the Schedules have not been amended with respect to a Claim that was Scheduled by the Debtors but was not Scheduled as contingent, unliquidated, or disputed, then the Claim to which the proof of claim or Scheduled Claim relates will be treated as an Allowed Claim.

**8.3** **Estimation of Certain Claims.** The Reorganized Debtors may, at any time, move for a Bankruptcy Court order estimating any Contingent Claim, Disputed Claim, or Unliquidated Claim pursuant to Bankruptcy Code section 502(c), regardless of whether the Debtors have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction and power to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. The estimated amount of any Claim so determined by the Bankruptcy Court shall constitute the maximum recovery that the Holder thereof may recover after the ultimate liquidation of its Claim, irrespective of the actual amount that is ultimately allowed. All of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and are not necessarily exclusive of one another.

**8.4** **Distributions Following Allowance.** Once a Contingent Claim, a Disputed Claim, or an Unliquidated Claim becomes an Allowed Claim, in whole or in part, including pursuant to the Plan, the Reorganized Debtors shall distribute from the Distribution Reserves to the Holder thereof the Distributions, if any, to which such Holder is then entitled under the Plan. Such Distributions, if any, shall be made on the next Distribution Date after the date on which the order or judgment allowing any such Claim becomes a Final Order or on which the Claim otherwise becomes an Allowed Claim, or, if there is no applicable Distribution Date, then within ninety (90) calendar days after the date on which the Claim becomes an Allowed Claim. Unless

otherwise specifically provided in the Plan or allowed by a Final Order, no interest shall be paid on Contingent Claims, Disputed Claims, or Unliquidated Claims that later become Allowed Claims.

**8.5** **Disposition of Assets in Reserves After Disallowance.** After an objection to a Disputed Claim is sustained or a Contingent Claim or Unliquidated Claim has been determined in whole or in part by a Final Order or by agreement, such that the Contingent Claim, Disputed Claim, or Unliquidated Claim is a Disallowed Claim in whole or in part, any Cash held in an applicable Distribution Reserve in respect of the particular Claim in excess of the Distributions due on account of any resulting Allowed Claim shall be used or distributed in a manner consistent with the Plan.

## ARTICLE 9
## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

**9.1** **Conditions to the Effective Date.** The occurrence of the Effective Date shall not occur, and the Plan shall not be consummated unless and until each of the following conditions has been satisfied or duly waived pursuant to Section 9.2 of the Plan:

a. the Bankruptcy Court shall have entered the Confirmation Order;

b. the Confirmation Order shall not be subject to any stay;

c. all governmental and material third-party approvals and consents necessary in connection with the transactions contemplated by the Plan, if any, shall have been obtained and be in full force and effect;

d. all actions and all agreements, instruments, or other documents necessary to implement the terms and provisions of this Plan are effected or executed and delivered, as applicable;

e. the Confirmation Order shall affirm the validity and enforceability of the various releases granted under the Plan and such releases shall be in full force and effect; and

f. the Professional Fee Escrow is funded pursuant to Section 3.1.2 hereof.

**9.2** **Waiver of Conditions to the Effective Date.** The conditions to the Effective Date may be waived in writing by the Debtors at any time without further order of the Bankruptcy Court.

**9.3** **Effect of Non-Occurrence of Conditions to the Effective Date.** If each of the conditions to the Effective Date is not satisfied or duly waived in accordance with Sections 9.1 and 9.2 of the Plan, upon notification filed by the Debtors with the Bankruptcy Court, (i) the Confirmation Order shall be vacated; (ii) no Distributions shall be made; (iii) the Debtors, the Estates, and all Creditors shall be restored to the *status quo* as of the day immediately preceding the Confirmation Hearing as though the Confirmation Order was not entered; (iv) all of the Debtors' and the Estates' obligations with respect to Claims shall remain unchanged and nothing contained in the Plan shall constitute a waiver or release of any Causes of Action by or against the Debtors,

the Estates, or any other Person or prejudice in any manner the rights, claims, or defenses of the Debtors, the Estates, or any other Person.

**9.4**      **Notice of the Effective Date.** Promptly after the occurrence of the Effective Date, the Reorganized Debtors or its agents shall mail or cause to be mailed to all Creditors a notice that informs such Creditors of (i) entry of the Confirmation Order and the resulting confirmation of the Plan; (ii) the occurrence of the Effective Date; (iii) the rejection of executory contracts and unexpired leases pursuant to the Plan, as well as the deadline for the filing of resulting Rejection Claims; (iv) the deadline established under the Plan for the filing of Administrative Claims; and (v) such other matters as the Reorganized Debtors find appropriate.

## ARTICLE 10
## RELEASES, INJUNCTION, AND RELATED PROVISIONS

**10.1**      **Debtors' Releases.**

**10.1.1**      **On the Effective Date and to the fullest extent authorized by applicable law, the Released Parties and their respective property will be expressly, unconditionally, generally, individually, and collectively released, acquitted, and discharged by the Debtors on behalf of themselves, their estates, the Reorganized Debtors, for the good and valuable consideration provided by each of the Released Parties, from any and all actions, claims, debts, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative or deficiency claims asserted or that could be asserted by or on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereinafter arising, in law, equity, contract, tort, or otherwise, by state law (including Idaho State partnership law), statute, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way to the Debtors, any of the Debtors' present or former assets, the Released Parties' interests in or management of the Debtors, this Plan, the Disclosure Statement, these Chapter 11 Cases, including those that the Debtors, the Reorganized Debtors would have been legally entitled to assert or that any Holder of a Claim against or interest in the Debtors or any other Entity could have been legally entitled to assert derivatively or on behalf of the Debtors or their Estates;** *provided,* *however,* **that the foregoing Debtors' Releases shall not operate to waive or release any Claims or Causes of Action of the Debtors or their Estates against a Released Party arising under any contractual obligation owed to the Debtors, the Reorganized Debtors that is entered into pursuant to this Plan.**

**10.1.2**      **Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtors' Releases set forth in Section 10.1(a) above, which includes by reference each of the related provisions and definitions contained in this Plan, and, further, shall constitute the Bankruptcy Court's finding that the Debtors' Releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good-faith settlement and compromise of the Claims released by the Debtors' Releases; (3) in the best interests of the Estates and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice**

and opportunity for hearing; and (6) a bar against any of the Estates, the Post-Effective Date Debtors, asserting any Claim or Cause of Action released pursuant to the Debtors' Releases.

**10.2** **Exculpation and Limitation of Liability**.

**The Exculpated Parties will neither have nor incur any liability to any entity for any claims or Causes of Action arising on or after the Petition Date and prior to the Effective Date for any act taken or omitted to be taken in connection with, or related to (i) the Chapter 11 Cases, (ii) any sales contemplated in connection with the Plan, (iii) formulating, negotiating, preparing, disseminating, implementing, administering, confirming or effecting the consummation of this Plan, or any other contract, instrument, release or other agreement or document created or entered into in connection with this Plan, including the Disclosure Statement, (iv) any other post-petition act taken or omitted to be taken in connection with or in contemplation of Confirmation of this Plan, or (v) the approval of the Disclosure Statement and Plan or Confirmation or Consummation of the Plan, *provided*, *however*, that the foregoing provisions will have no effect on the liability of any entity that results from any such act or omission that is determined in a Final Order of the Bankruptcy Court or other court of competent jurisdiction to have constituted gross negligence, actual fraud, or willful misconduct. The foregoing provisions shall also not apply to malpractice liability of legal professionals.**

## ARTICLE 11
## RETENTION OF JURISDICTION AND POWER

**11.1** **Scope of Retained Jurisdiction and Power.** Under Bankruptcy Code sections 105(a) and 1142, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, and except as otherwise ordered by the Bankruptcy Court, the Bankruptcy Court shall retain jurisdiction and power over all matters arising in, arising under, or related to the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including jurisdiction and power to do the following:

a.    except as otherwise Allowed pursuant to the Plan or in the Confirmation Order, Allow, classify, determine, disallow, establish the priority or secured or unsecured status of, estimate, limit, liquidate, or subordinate any Claim, in whole or in part, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the allowance or priority of Claims;

b.    hear and determine all applications for compensation and reimbursement of expenses of Professionals under the Plan or under Bankruptcy Code sections 327, 328, 330, 331, 363, 503(b), 1103, and 1129(a)(4);

c.    hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which a Debtor is a party or with respect to which a Debtor may be liable, including, if necessary, the nature or amount of any required cure or the liquidation or allowance of any Claims arising therefrom;

d.        effectuate performance of and payments under the provisions of the Plan and enforce remedies on any default under the Plan;

e.        hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Cases, including the Reorganized Debtors' Causes of Action;

f.        enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created, executed, or contemplated in connection with the Plan, the Disclosure Statement, or the Confirmation Order;

g.        hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including disputes arising under agreements, documents, or instruments executed in connection with the Plan, or to maintain the integrity of the Plan following consummation;

h.        consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

i.        issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with the implementation, consummation, or enforcement of the Plan or the Confirmation Order;

j.        enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

k.        hear and determine any matters arising in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created, executed, or contemplated in connection with any of the foregoing documents and orders;

l.        enforce, interpret, and determine any disputes arising in connection with any stipulations, orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings associated with the Plan or otherwise entered in connection with the Chapter 11 Cases (whether or not any or all of the Chapter 11 Cases have been closed);

m.        hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code sections 346, 505, and 1146;

n.        hear and determine all disputes involving the existence, nature, or scope of the Debtors' discharge;

o.        hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, the Bankruptcy Code and title 28 of the United States Code;

p.      resolve any cases, controversies, suits, or disputes related to the Debtors and Reorganized Debtors;

q.      enter a final decree closing the Chapter 11 Cases of the Debtors.

**11.2     Non-Exercise of Jurisdiction.** If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, the provisions of this Plan shall have no effect on, and shall not control, limit, or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to, such matter.

## ARTICLE 12
## MISCELLANEOUS PROVISIONS

**12.1     Payment of Statutory Fees.** All fees payable pursuant to 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid by the Debtors on or before the Effective Date. All such fees that relate to distributions by each Debtor after the Effective Date shall be paid by the Reorganized Debtors. Notwithstanding anything to the contrary in the Plan, the U.S. Trustee shall not be required to file any proofs of claim with respect to quarterly fees payable pursuant to 28 U.S.C. § 1930.

**12.2     Dissolution of the Committees.** The Committee shall be automatically dissolved on the Effective Date, and on the Effective Date, each member of the Committee (including each Related Party thereof) and each Professional retained by the Committee shall be released and discharged from all rights, duties, responsibilities, and obligations arising from, or related to, the Debtors, their membership on the Committee, the Plan, or the Chapter 11 Cases, except (i) with respect to any matters concerning any Professional Fee Claims held or asserted by any Professional retained by the Committee, and (ii) any appeals of, or related to, the Confirmation Order or any other appeal to which the Committee is a party to.

**12.3     Modifications and Amendments.**

a.      In the Debtors' reasonable discretion, the Debtors may alter, amend, or modify the Plan under Bankruptcy Code section 1127(a) at any time at or prior to the conclusion of the Confirmation Hearing. All alterations, amendments, or modifications to the Plan must comply with Bankruptcy Code section 1127. The Debtors shall provide parties in interest with notice of such amendments or modifications as may be required by the Bankruptcy Code, Bankruptcy Rules, or order of the Bankruptcy Court. A Creditor that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified, or clarified, if the proposed alteration, amendment, modification, or clarification does not materially and adversely change the treatment of the Claim of such Creditor.

b.      After entry of the Confirmation Order and prior to substantial consummation (as defined in Bankruptcy Code section 1101(2)) of the Plan, the Debtors or the Reorganized Debtors, as applicable, may, under Bankruptcy Code section 1127(b), institute proceedings in the Bankruptcy Court to remedy any defect or omission or to reconcile any

inconsistencies in the Plan, the Disclosure Statement approved with respect to the Plan, or the Confirmation Order, and such matters as may be necessary to carry out the purpose and effect of the Plan so long as such proceedings do not adversely affect the treatment of Holders of Claims under the Plan or Sandton. Such proceedings must comply with Bankruptcy Code section 1127. To the extent required, prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or an order of the Bankruptcy Court. A Creditor that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified, or clarified, if the proposed alteration, amendment, modification, or clarification does not materially and adversely change the treatment of the Claim of such Creditor.

12.4     **Severability of Plan Provisions.** If, at or before the Confirmation Hearing, the Bankruptcy Court holds that any Plan term or provision is invalid, void, or unenforceable, the Bankruptcy Court may alter or interpret that term or provision so that it is valid and enforceable to the maximum extent possible consistent with the original purpose of that term or provision. That term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the Plan's remaining terms and provisions will remain in full force and effect and will in no way be affected, impaired, or invalidated. The Confirmation Order will constitute a judicial determination providing that each Plan term and provision, as it may have been altered or interpreted in accordance with this Section 12.6, is valid and enforceable under its terms.   Notwithstanding the foregoing, Article V, Section 5.4 – 5.9 are not severable Plan provisions. In the event the Bankruptcy Court holds such provisions are invalid, void, or unenforceable, Sandton is relieved from any obligation to enter into or perform under the Exit Term Loan Facility.

12.5     **Compromises and Settlements.** From and after the Effective Date, the Reorganized Debtors may compromise and settle disputes about any applicable Claims or Reorganized Debtors' Causes of Action, without any further approval by the Bankruptcy Court. Until the Effective Date, the Debtors expressly reserve the right to compromise and settle (subject to the approval of the Bankruptcy Court) Claims against them or any Avoidance Actions and Causes of Action belonging to the Estates.

12.6     **Binding Effect of Plan.** Upon the Effective Date, Bankruptcy Code section 1141 shall become applicable with respect to the Plan and the Plan shall be binding on all Persons to the fullest extent permitted by Bankruptcy Code section 1141(a). Confirmation of the Plan binds each Holder of a Claim or Interest to all the terms and conditions of the Plan, whether or not such Holder's Claim or Interest is Allowed, whether or not such Holder holds a Claim or Interest that is in a Class that is Impaired under the Plan, and whether or not such Holder has accepted the Plan.

12.7     **Term of Injunctions or Stays.** Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays in the Chapter 11 Cases under Bankruptcy Code sections 105 or 362 or otherwise, and extant as of the Confirmation Hearing (excluding any injunctions or stays contained in or arising from the Plan or the Confirmation Order), shall remain in full force and effect through and inclusive of the Effective Date.

12.8     **Revocation, Withdrawal, or Non-Consummation.** The Debtors reserve the right to revoke or withdraw the Plan at any time prior to the Confirmation Hearing and to File subsequent plans. If the Debtors revoke or withdraw the Plan prior to the Confirmation Hearing,

or if the Effective Date does not occur, then (a) the Plan shall be null and void in all respects; and (b) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (i) constitute or be deemed to constitute a waiver or release of any Claims against, or any Interests in, any Debtor, or any Causes of Action by or against any Debtor or any other Person, (ii) prejudice in any manner the rights of any Debtor or any other Person in any further proceedings involving a Debtor, or (iii) constitute an admission of any sort by any Debtor or any other Person.

**12.9     Exemption from Transfer Taxes.** Pursuant to Bankruptcy Code section 1146, the vesting of the Reorganized Debtors' Assets in the Reorganized Debtors, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust, lien, pledge, or other security interest, or the making or assignment of any lease or sublease, or making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

**12.10     Computation of Time.** Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next Business Day.

**12.11     Transactions on Business Days.** If the Effective Date or any other date on which a transaction may occur under the Plan shall occur on a day that is not a Business Day, any transactions or other actions contemplated by the Plan to occur on such day shall instead occur on the next succeeding Business Day.

**12.12     Good Faith.** Confirmation of the Plan shall constitute a conclusive determination that: (a) the Plan, and all the transactions and settlements contemplated thereby, have been proposed in good faith and in compliance with all applicable provisions of the Bankruptcy Code and the Bankruptcy Rules; and (b) the solicitation of acceptances or rejections of the Plan has been in good faith and in compliance with all applicable provisions of the Bankruptcy Code, and the Bankruptcy Rules, and, in each case, that the Debtors and all Related Parties have acted in good faith in connection therewith.

**12.13     Governing Law.** Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), (a) the laws of the State of Idaho shall govern the construction and implementation of the Plan and (except as may be provided otherwise in any such agreements, documents, or instruments) any agreements, documents, and instruments executed in connection with the Plan and (b) the laws of the state of incorporation or formation of each Debtor shall govern corporate or limited liability company governance matters with respect to such Debtor; in each case without giving effect to the principles of conflicts of law thereof. Any applicable nonbankruptcy law that would prohibit, limit, or otherwise restrict implementation of the Plan based on (i) the commencement of the Chapter 11 Cases, (ii) the reorganization of some or all of the Reorganized Debtors' Assets, or (v) any other act or action to be done pursuant to or contemplated by the Plan is superseded and rendered inoperative by the Plan and federal bankruptcy law.

**12.14     Notices.** Following the Effective Date, all pleadings and notices Filed in the

Chapter 11 Cases shall be served solely on (a) the Reorganized Debtors and their counsel, (b) the U.S. Trustee, (c) any Person whose rights are affected by the applicable pleading or notice, and (d) any Person Filing a specific request for notices and papers on and after the Effective Date.

**12.15    Additional Documents.** On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors and the Reorganized Debtors, as applicable, and all Holders receiving Distributions pursuant to the Plan and all other parties in interest may, from time to time, prepare, execute, and deliver any agreements or documents and take any other acts as may be necessary or advisable to effectuate the provisions and intent of the Plan.

**12.16    Conflicts with the Plan.** In the event and to the extent that any provision of the Plan is inconsistent with the provisions of the Disclosure Statement, any other order entered in the Chapter 11 Cases, or any other agreement to be executed by any Person pursuant to the Plan, the provisions of the Plan shall control and take precedence; *provided, however*, that the Confirmation Order shall control and take precedence in the event of any inconsistency between the Confirmation Order, any provision of the Plan, and any of the foregoing documents.

## ARTICLE 13
## REQUEST FOR CONFIRMATION AND RECOMMENDATION

**13.1    Request for Confirmation.** The Debtors request confirmation of the Plan in accordance with Bankruptcy Code section 1129.

**13.2    Recommendation.** The Debtors believe that confirmation and implementation of the Plan are the best alternative under the circumstances and urge all Impaired Creditors entitled to vote on the Plan to vote in favor of and support confirmation of the Plan.

-SIGNATURE PAGES FOLLOW-

Respectfully,

**MILLENKAMP CATTLE, INC.**

By: _____
Name: William John Millenkamp
Title: President

**IDAHO JERSEY GIRLS, LLC**

By: _____
Name: William John Millenkamp
Title: Manager

**EAST VALLEY CATTLE, LLC**

By: _____
Name: William John Millenkamp
Title: Manager

**MILLENKAMP PROPERTIES, L.L.C.**

By: _____
Name: William John Millenkamp
Title: Manager

**MILLENKAMP PROPERTIES II, LLC**

By: _____
Name: William John Millenkamp
Title: Manager

**MILLENKAMP FAMILY, LLC**

By: _____
Name: William John Millenkamp

Title: Manager

**GOOSE RANCH, LLC**

By: _____
Name: William John Millenkamp
Title: Manager

**BLACK PINE CATTLE, LLC**

By: _____
Name: William John Millenkamp.
Title: Manager

**MILLENKAMP ENTERPRISES, LLC**

By: _____
Name: William John Millenkamp
Title: Manager

**IDAHO JERSEY GIRLS JEROME DAIRY, LLC**

By: _____
Name: William John Millenkamp
Title: Manager

<u>Submitted by:</u>

Dated:  12/4/24                    **DENTONS DAVIS BROWN, PC**

                                   */s/Krystal R. Mikkilineni*


                                   **JOHNSON MAY**

                                   */s/Matthew T. Christensen*


                                   *Attorneys for Debtors and Debtors in
                                   Possession*

**Schedule 6.3 – Initial Schedule of Assumed Executory Contracts & Unexpired Leases**

| **Contract/Lease Party** | **Contract Counterparty** | **Contract/Lease Title** | **Cure Amount** |
|---|---|---|---|
| Millenkamp Cattle, Inc. | Burks Tractor Company 3140 Kimberly Rd. Twin Falls, ID 83301 | Equipment Operating Lease Agreement, No. 2793337, dated February 6. 2024<br><br>6 Case IH Magnum<br><br>CNH Equipment Lease 765512 | $0.00 |
| Millenkamp Cattle, Inc. | Burks Tractor Company 3140 Kimberly Rd. Twin Falls, ID 83301 | Equipment Operating Lease Agreement, No. 2793339, dated February 6, 2024<br><br>16 Case IH Magnum and 16 Case IH Real Remote<br><br>CNH Equipment Lease 765784 | $0.00 |
| Millenkamp Cattle, Inc. | Burks Tractor Company 3140 Kimberly Rd. Twin Falls, ID 83301 | Equipment Operating Lease Agreement, No. 2793443, dated February 6, 2024<br><br>4 Case IH Steiger and 4 Case Rear Remote<br><br>CNH Equipment Lease 765542 | $0.00 |
| Millenkamp Cattle, Inc. | Burks Tractor Company 3140 Kimberly Rd. Twin Falls, ID 83301 | Equipment Operating Lease Agreement, No. 2609637, dated October 31, 2020, as amended<br><br>26 Case IH Mangum<br><br>CNH  Equipment Lease 210982 | $0.00 |
| Millenkamp Cattle, Inc. | Burks Tractor Company 3140 Kimberly Rd. Twin Falls, ID 83301 | Retail Installment Sales Contract and Security Agreement, No. 2783587<br><br>25 Kobuta Tractors<br><br>CNH  Equipment Loan | $0.00 |

| | | 765530 | |
|---|---|---|---|
| Millenkamp Cattle, Inc. | Burks Tractor Company 3140 Kimberly Rd. Twin Falls, ID 83301 | Retail Installment Sales Contract and Security Agreement, No. 2793874<br><br>30 Case IH Maxim<br><br>CNH  Equipment Loan 765552 | $0.00 |
| Millenkamp Cattle, Inc. | Daimler Truck Financial Services 14372 Heritage Pkwy Suite 400 Fort Worth, TX 76177 | Note and Security Agreement dated January 2024 | $0.00 |
| Millenkamp Cattle, Inc. | Daimler Truck Financial Services 14372 Heritage Pkwy Suite 400 Fort Worth, TX 76177 | Note and Security Agreement (Multi-State) dated February 23, 2022 | $0.00 |
| Millenkamp Cattle, Inc. | East Valley Cattle LLC 471 N 300 W Jerome, ID 83338 | Triple net lease for lease of East Valley Dairy | $0.00 |
| Millenkamp Cattle, Inc. East Valley Cattle, Inc. | East Valley Development, LLC Attn: General Counsel 4675 MacArthur Ct., Ste. 800 Newport Beach, CA 92660 | Third Amendment to Ground Lease Agreement between East Valley Cattle, LLC and Millenkamp Cattle, Inc. (Landlord) and East Valley Development, LLC (Tenant) dated June 22, 2023 | $0.00 |
| Millenkamp Cattle, Inc. East Valley Cattle, Inc. | East Valley Development, LLC Attn: General Counsel 4675 MacArthur Ct., Ste. 800 Newport Beach, CA 92660 | First Amendment Manure Supply Agreement between East Valley Cattle, LLC and Millenkamp Cattle, Inc. (Landlord) and East Valley Development, LLC (Developer) dated June 22, 2023 | $0.00 |
| Millenkamp Cattle, Inc. East Valley Cattle, Inc. | East Valley Development, LLC Attn: General Counsel 4675 MacArthur Ct., Ste. 800 Newport Beach, CA 92660 | Ground Lease Agreement between East Valley Cattle, LLC and Millenkamp Cattle, Inc. (Landlord) and East Valley Development, | $0.00 |

| | | LLC (Tenant) dated October 8, 2021. | |
|---|---|---|---|
| Millenkamp Cattle, Inc. East Valley Cattle, Inc. | East Valley Development, LLC Attn: General Counsel 4675 MacArthur Ct., Ste. 800 Newport Beach, CA 92660 | Manure Supply Agreement between East Valley Cattle, LLC and Millenkamp Cattle, Inc. (Landlord) and East Valley Development, LLC (Developer) dated October 8, 2021 | $0.00 |
| Millenkamp Cattle, Inc. East Valley Cattle, Inc. | East Valley Development, LLC Attn: General Counsel 4675 MacArthur Ct., Ste. 800 Newport Beach, CA 92660 | Memorandum of Ground Lease dated June 23, 2023. | $0.00 |
| Millenkamp Cattle, Inc. East Valley Cattle, Inc. | East Valley Development, LLC Attn: General Counsel 4675 MacArthur Ct., Ste. 800 Newport Beach, CA 92660 | Second Amendment to Ground Lease Agreement between East Valley Cattle, LLC and Millenkamp Cattle, Inc. (Landlord) and East Valley Development, LLC(Tenant) dated April 25, 2023. | $0.00 |
| Millenkamp Cattle, Inc. East Valley Cattle, Inc. | East Valley Development, LLC Attn: General Counsel 4675 MacArthur Ct., Ste. 800 Newport Beach, CA 92660 | First Amendment to Ground Lease Agreement between East Valley Cattle, LLC and Millenkamp Cattle, Inc. (Landlord) and East Valley Development, LLC (Tenant) dated February 17, 2022. | $0.00 |
| Millenkamp Cattle, Inc. | Goose Ranch LLC 471 N 300 W Jerome, ID 83338 | Triple net lease for Goose Ranch | $0.00 |
| Millenkamp Cattle, Inc. | GreatAmerica Financial Serv. PO Box 660831 Dallas, TX 75266-0831 | Lease Agreement for 8 HP E786Z Copiers; 2 HP E45028DN Copiers; 2 HP E40040DN Copiers 1931342 | $0.00 |

| | | | |
|---|---|---|---|
| Millenkamp Cattle, Inc. | Idaho Jersey Girls Jerome Dairy, LLC<br>471 N 300 W<br>Jerome, ID 83338 | Triple net lease of Idaho Jersey Girls Jerome Dairy | $0.00 |
| Millenkamp Cattle, Inc. | Innovative Food Solutions USA<br>Attn: Jordan Bowen<br>134 E. Highway 81<br>Burley, ID 83318 | Milk Producer Supply Agreement dated January 1, 2024 | $0.00 |
| Millenkamp Cattle, Inc. | Jake Millenkamp 1719 River Road<br>Buhl, ID 83316 | Rental Agreement for 1719 River Road, Buhl, ID 83316 | $0.00 |
| Millenkamp Cattle, Inc. | John Deere Const. & Forestry<br>One John Deere Place<br>Moline, IL 61265 | Loan Contract -Security Agreement dated June 12, 2023 | $0.00 |
| Millenkamp Cattle, Inc. | John Deere Const. & Forestry Company<br>One John Deere Place<br>Moline, IL 61265 | Loan Contract -Security Agreements dated May 23, 2023 | $0.00 |
| Millenkamp Cattle, Inc. | John Deere Const. & Forestry Company<br>One John Deere Place<br>Moline, IL 61265 | Loan Contract -Security Agreement dated July 12, 2023 | $0.00 |
| Millenkamp Cattle, Inc. | John Deere Const. & Forestry Company<br>One John Deere Place<br>Moline, IL 61265 | Loan Contract -Security Agreement dated July 31, 2023 | $0.00 |
| Millenkamp Cattle, Inc. | John Deere Const. & Forestry Company<br>One John Deere Place<br>Moline, IL 61265 | Loan Contract -Security Agreement dated July 28, 2023 | $0.00 |
| Millenkamp Cattle, Inc. | Keith D. and Janet Carlson<br>3866 E 3800 N<br>Hansen, ID 83334 | Lease Agreement dated June 1, 2020 | $0.00 |

| Millenkamp Cattle, Inc.<br>East Valley Cattle, Inc. | Mavrix, LLC<br>925 Main St., Ste. 300-18<br>Stone Mountain, GA 30083-3098 | Exclusivity Agreement between Millenkamp Cattle, Inc. and East Valley Cattle, LLC<br>(Dairy) and SKS EVC, LLC and Mavrix, LLC<br>(Developers) dated July 12, 2021. | $0.00 |
|---|---|---|---|
| Millenkamp Cattle, Inc. | Millenkamp Properties II LLC 471 N 300 W<br>Jerome, ID 83338 | Triple net lease for Canyonlands | $0.00 |
| Millenkamp Cattle, Inc. | Millenkamp Properties II LLC 471 N 300 W<br>Jerome, ID 83338 | Triple net lease for McGregor | $0.00 |
| Millenkamp Cattle, Inc. | Millenkamp Properties LLC 471 N 300 W<br>Jerome, ID 83338 | Triple net lease for lease of German Dairy | $0.00 |
| Millenkamp Cattle, Inc. | Millenkamp Properties LLC 471 N 300 W<br>Jerome, ID 83338 | Triple net lease for Moonshine Ranch | $0.00 |
| Millenkamp Cattle, Inc. | Millenkamp Properties LLC 471 N 300 W<br>Jerome, ID 83338 | Triple net lease for Calf Ranch | $0.00 |
| Millenkamp Cattle, Inc. | Millenkamp Properties II LLC 471 N 300 W<br>Jerome, ID 83338 | Triple Net Lease for Cow Palace | $0.00 |
| Black Pine Cattle, LLC | PerforMix Nutrition Systems 2201 N. 20th Street<br>Nampa, ID 83687 | Security Agreement dated September 13, 2023 | $0.00 |
| Millenkamp Cattle, Inc.<br>East Valley Cattle, LLC | Eagle Creek Northwest, LLC 10 State House Square<br>15th Floor<br>Hartford, CT 06103 | Lease Agreement | $0.00 |

## **Schedule 6.3 – Initial Schedule of Rejected Executory Contracts & Unexpired Leases**

None.