Sheila R. Schwager, ISB No. 5059
Brent R. Wilson, ISB No. 8936
HAWLEY TROXELL ENNIS & HAWLEY LLP
877 W. Main Street, Suite 200
P.O. Box 1617
Boise, ID 83701-1617
Telephone: 208.344.6000
Facsimile: 208.954.5261
Email: sschwager@hawleytroxell.com
        bwilson@hawleytroxell.com

Andrew J. Schoulder (*pro hac vice*)
Francisco Vazquez (*pro hac vice pending*)
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, NY 10019
Telephone: 212.318.3030
Email: andrew.schoulder@nortonrosefulbright.com
        francisco.vazquez@nortonrosefulbright.com

*Attorneys for Rabo AgriFinance LLC*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| In re: | Case No. 24-40158-NGH |
| MILLENKAMP CATTLE, INC., | |
| Debtor. | |
| Filing relates to: | Jointly Administered With Case Nos.: |
| ☒  ALL DEBTORS | 24-40159-NGH (Idaho Jersey Girls) |
| ☐  Millenkamp Cattle, Inc. | 24-40160-NGH (East Valley Cattle) |
| | 24-40161-NGH (Millenkamp Properties) |
| ☐  Idaho Jersey Girls | 24-40162-NGH (Millenkamp Properties II) |
| ☐  East Valley Cattle | 24-40163-NGH (Millenkamp Family) |
| | 24-40164-NGH (Goose Ranch) |
| ☐  Millenkamp Properties | 24-40166-NGH (Black Pine Cattle) |
| ☐  Millenkamp Properties II | 24-40167-NGH (Millenkamp Enterprises) |
| ☐  Millenkamp Family | 24-40165-NGH (Idaho Jersey Girls Jerome Dairy) |

| | |
|---|---|
| ☐ Goose Ranch | Chapter 11 Cases |
| ☐ Black Pine Cattle | |
| ☐ Millenkamp Enterprises | |
| ☐ Idaho Jersey Girls Jerome Dairy | |

**CHAPTER 11 PLAN FOR MILLENKAMP CATTLE, INC. AND ITS RELATED DEBTOR AFFILIATES PROPOSED BY PLAN PROPONENTS**

59797.0007.18169739.1

# TABLE OF CONTENTS

**INTRODUCTION** ...................................................................................................... **9**

**ARTICLE 1 DEFINED TERMS AND RULES OF INTERPRETATION** ........................... **10**

**ARTICLE 2 CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS** .................... **30**

2.1    Summary and Classification of Claims .................................................. 30

2.2    Substantive Consolidation ...................................................................... 33

2.3    Classification & Voting Controversies .................................................. 34

**ARTICLE 3 CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY
INTERESTS** ...................................................................................................... **34**

3.1    Treatment Generally ................................................................................ 34

3.2    Unclassified Claims ................................................................................. 34

    3.2.1    Administrative Claims ................................................................ 34

    3.2.2    Professional Fee Claims ............................................................. 35

    3.2.3    Priority Tax Claims .................................................................... 37

    3.2.4    DIP Claims ................................................................................. 37

3.3    Class 1: Other Priority Claims ............................................................... 37

3.4    Class 2: Corn Silage Group Secured Claims ......................................... 38

3.5    Class 3: Other Secured Ag Lien Claims ................................................. 39

    3.5.1    Class 3A: A. Scott Jackson Trucking Secured Claim. ............... 39

    3.5.2    Class 3B: B&H Farming Secured Claim .................................... 40

    3.5.3    Class 3C: H&M Custom, LLC Secured Claim ........................... 41

    3.5.4    Class 3D: Healthy Earth Enterprises, LLC Secured Claim ....... 41

    3.5.5    Class 3E: Kraus Farms, LLC Secured Claim ............................ 41

    3.5.6    Class 3F: Milner Hay Company, LLC Secured Claim ............... 42

    3.5.7    Class 3G: Moss Grain Partnership Secured Claim ................... 42

    3.5.8    Class 3H: NorthWest Seed, Inc Secured Claim ........................ 43

    3.5.9    Class 3I: Performance Plus-Idaho, LLC Secured Claim .......... 43

    3.5.10    Class 3J: Tyche Ag, LLC Secured Claim ................................ 44

    3.5.11    Class 3K: Wada Farms Partnership Secured Claim ................ 44

    3.5.12    Class 3L: Youree Land & Livestock Secured Claim ............... 45

    3.5.13    Class 3M: Eagle Creek Northwest, LLC Claim ...................... 45

    3.5.14    Class 3N: Standlee Ag Resources and Premium Products Secured
Claim ...................................................................................... 46

3.6    Class 4: MetLife Secured Claims ........................................................... 46

3.7     Class 5: RLOC Secured Claims ................................................................. 50

3.8     Class 6: Conterra Secured Claims ............................................................. 55

3.9     Class 7: Secured Equipment and Vehicle Lien Claims ............................ 57

    3.9.1    Class 7A: CNH Industrial Capital Secured Claim ................................... 57

    3.9.2    Class 7B: Daimler Truck Financial Services USA LLC Secured Claim .. 58

    3.9.3    Class 7C: Farmers Bank ........................................................................... 59

    3.9.4    Class 7D: John Deere Construction & Forestry Secured Claim .............. 61

    3.9.5    Class 7E: Western States Cat Secured Claim .......................................... 62

    3.9.6    Class 7F: Kenworth Sales Company Secured Claim ............................... 63

3.10    Class 8: Other Secured Claims ................................................................. 63

    3.10.1   Class 8A: MWI Veterinary Secured Claim ............................................. 63

    3.10.2   Class 8B: PerforMix Nutrition Systems Secured Claim .......................... 64

    3.10.3   Class 8C: Rexel USA, Inc. d/b/a Platt Electric Supply Claim ................. 65

    3.10.4   Class 8D: Staker & Parson Company d/b/a Idaho Materials &
            Construction Claim .................................................................................. 65

    3.10.5   Class 8E: Les Schwab Tire Centers of Idaho, LLC Claims ..................... 66

3.11    Class 9: General Unsecured Claims ........................................................... 66

3.12    Class 10: Intercompany Claims ................................................................. 67

3.13    Class 11: Equity Interests .......................................................................... 67

3.14    Special Provisions Regarding Unimpaired Claims .................................... 68

**ARTICLE 4 ACCEPTANCE OR REJECTION OF THE TOGGLE PLAN ..................... 68**

4.1     Impaired Class of Claims Entitled to Vote ............................................... 68

4.2     Voting of Claims ....................................................................................... 69

4.3     Procedure/Voting Deadline ....................................................................... 69

4.4     Acceptance by an Impaired Class ............................................................. 69

4.5     Presumed Acceptances by Unimpaired Classes ....................................... 69

4.6     Impaired Classes Deemed to Reject Plan ................................................. 69

4.7     Confirmation Pursuant to Bankruptcy Code Section 1129(b) .................. 70

4.8     Elimination of Vacant Classes .................................................................. 70

**ARTICLE 5 MEANS FOR IMPLEMENTATION OF THE TOGGLE PLAN ................... 70**

5.1     Substantive Consolidation ........................................................................ 70

5.2     Transaction Overview ............................................................................... 70

5.3     Restructuring Transactions ....................................................................... 70

5.4     Sources of Consideration for Plan Distributions ...................................... 71

5.5     Vesting of Assets of the Debtors .............................................................. 71

59797.0007.18169739.1

5.6    Authority .................................................................................................. 71

5.7    Corporate Existence ................................................................................ 72

5.8    Employee Obligations ............................................................................. 73

5.9    Workers Compensation Program ............................................................ 74

5.10   Pursuit and Resolution of Estate's Causes of Action ............................. 74

5.11   No Successor Liability ............................................................................ 75

5.12   Preservation of Privileges and Defenses ................................................ 75

5.13   Preservation of Rights of Action ............................................................ 75

5.14   Cancellation of Instruments .................................................................... 76

5.15   Insurance Policies ................................................................................... 76

5.16   Insurance Policies; Employment Practice Liability Policies .................. 76

5.17   Intercreditor Agreements ........................................................................ 77

**ARTICLE 6 REORGANIZATION TOGGLE ...................................................... 77**

6.1    Reorganization Toggle Requirements ..................................................... 77

6.2    Pre-Confirmation Transaction Milestones .............................................. 77

6.3    Priority-GUC Reserve ............................................................................. 78

6.4    Effective Date Reserve ............................................................................ 78

6.5    Reorganized Holding Company ............................................................. 79

6.6    Post-Effective Date Governance and Management ................................. 79

6.7    Post-Effective New Common Stock Ownership ...................................... 79

6.8    Post-Effective Reorganized Preferred Ownership .................................. 79

6.9    Animal Welfare Reserve .......................................................................... 80

6.10   Post-Effective Date Milestones ............................................................... 80

**ARTICLE 7 GOING CONCERN 363 SALE TOGGLE ...................................... 82**

7.1    Going Concern 363 Sale Toggle Event ................................................... 82

7.2    Going Concern 363 Sale .......................................................................... 82

7.3    Allocation of Going Concern Sale Proceeds ........................................... 83

**ARTICLE 8 BUSINESS UNIT 363 SALE TOGGLE ......................................... 83**

8.1    Business Unit 363 Sale Toggle Event ...................................................... 83

8.2    Business Unit 363 Sale ............................................................................ 84

8.3    No Qualified Business Unit 363 Sale Offers ........................................... 85

8.4    Distribution of Business Unit 363 Sale Proceeds .................................... 85

**ARTICLE 9 CORPORATE GOVERNANCE UNDER THE GOING CONCERN 363**
**SALE TOGGLE AND THE BUSINESS UNIT 363 SALE TOGGLE ...................... 86**

9.1    Corporate Governance ............................................................................. 86

59797.0007.18169739.1

| 9.2 | Plan Administrator Authority | 86 |
| 9.3 | GUC Backstop | 88 |
| 9.4 | Avoidance Actions | 89 |

**ARTICLE 10 EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ........................ **89**

| 10.1 | Assumption and Rejection of Executory Contracts and Unexpired Leases | 89 |
| 10.2 | Claims Based on Rejection of Executory Contracts or Unexpired Leases | 90 |
| 10.3 | Cure of Defaults for Assumed Executory Contracts and Unexpired Leases | 91 |
| 10.4 | Assumption Dispute Resolution | 93 |
| 10.5 | Contracts and Leases Entered into After the Petition Date | 94 |
| 10.6 | Modifications, Amendments, Supplements, Restatements, or Other Agreements | 94 |
| 10.7 | Reservation of Rights | 94 |
| 10.8 | Nonoccurrence of Effective Date | 94 |

**ARTICLE 11 PROVISIONS GOVERNING DISTRIBUTIONS** .......................................... **94**

| 11.1 | Timing of Distributions for Allowed Claims | 94 |
| 11.2 | Calculating Distributions and Related Matters | 95 |
| 11.3 | Interest and Other Amounts Regarding Claims | 95 |
| 11.4 | Means of Cash Payment | 95 |
| 11.5 | Form of Currency for Distributions | 95 |
| 11.6 | Fractional Distributions | 95 |
| 11.7 | De Minimis Distributions | 95 |
| 11.8 | No Distributions with Respect to Certain Claims | 96 |
| 11.9 | Consent Rights of Non-Debtor Plan Proponents | **Error! Bookmark not defined.** |
| 11.10 | Distributions and Transfers Upon Resolution of Contingent Claims, Disputed Claims, or Unliquidated Claims | 96 |
| 11.11 | Delivery of Distributions | 97 |
| 11.12 | Application of Distribution Record Date & Other Transfer Restrictions | 97 |
| 11.13 | Withholding, Payment, and Reporting Requirements Regarding Distributions | 97 |
| 11.14 | Defenses and Setoffs | 98 |
| 11.15 | Allocation of Distributions | 98 |
| 11.16 | Joint Distributions | 98 |
| 11.17 | Forfeiture of Distributions | 98 |

59797.0007.18169739.1

**ARTICLE 12 PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS AND DISTRIBUTIONS WITH RESPECT THERETO** ................................................................................................ **99**

    12.1    Objections to and Resolution of Disputed Claims, Including Any Claims of Excluded Parties .................................................................. 99

    12.2    Claim Objections ................................................................... 99

    12.3    Estimation of Certain Claims ............................................... 99

    12.4    Distributions Following Allowance ....................................... 99

    12.5    Disposition of Assets in Reserves After Disallowance ............ 100

**ARTICLE 13 CONDITIONS PRECEDENT TO THE EFFECTIVE DATE** ..................... **100**

    13.1    Conditions to the Effective Date .......................................... 100

    13.2    Waiver of Conditions to the Effective Date ........................... 100

    13.3    Effect of Non-Occurrence of Conditions to the Effective Date ......... 100

    13.4    Notice of the Effective Date ................................................. 101

**ARTICLE 14 RELEASES AND EXCULPATION PROVISIONS** .................................. **101**

    14.1    Debtors' Releases ................................................................ 101

    14.2    Exculpation and Limitation of Liability ................................ 102

**ARTICLE 15 RETENTION OF JURISDICTION AND POWER** ................................... **102**

    15.1    Scope of Retained Jurisdiction and Power ............................ 102

    15.2    Non-Exercise of Jurisdiction ............................................... 104

**ARTICLE 16 MISCELLANEOUS PROVISIONS** ......................................................... **104**

    16.1    Payment of Statutory Fees ................................................... 104

    16.2    Dissolution of the Creditors' Committees ............................ 104

    16.3    Modifications and Amendments ........................................... 104

    16.4    Severability of Plan Provisions ............................................ 105

    16.5    Compromises and Settlements ............................................. 105

    16.6    Binding Effect of Plan ......................................................... 105

    16.7    Term of Injunctions or Stays ............................................... 106

    16.8    Revocation, Withdrawal, or Non-Consummation .................. 106

    16.9    Exemption from Transfer Taxes ........................................... 106

    16.10    Computation of Time ........................................................... 106

    16.11    Transactions on Business Days ............................................ 106

    16.12    Good Faith .......................................................................... 106

    16.13    Governing Law .................................................................... 106

    16.14    Notices ...................................................**Error! Bookmark not defined.**

59797.0007.18169739.1

16.15    Additional Documents ..........................................**Error! Bookmark not defined.**

16.16    Conflicts with the Toggle Plan ............................**Error! Bookmark not defined.**

**ARTICLE 17 REQUEST FOR CONFIRMATION AND RECOMMENDATION........... 107**

17.1    Request for Confirmation ................................................................. 107

17.2    Recommendation ............................................................................... 107

59797.0007.18169739.1

## INTRODUCTION

Rabo AgriFinance LLC, in its capacity as agent and lender ("**RLOC Agent**" together with any other plan proponent, the "**Plan Proponents**") hereby propose this *Chapter 11 Plan* (the "**Toggle Plan**") for Millenkamp Cattle, Inc. and its affiliated debtors (the "**Debtors**"). Holders of Claims and Interests may refer to the Toggle Disclosure Statement (as defined below) for a discussion of the Debtors' history, businesses, assets, results of operations, historical financial information, and projections of future operations, as well as a summary and description of the Toggle Plan. Like the Debtors' Plan, the Toggle Plan provides for the substantive consolidation of the Debtors' Assets and liabilities for purposes of the Toggle Plan, as described in Section 5.1 below, including all distributions hereunder.

All Holders of Claims who are entitled to vote on the Toggle Plan are encouraged to read the Toggle Plan and the Toggle Disclosure Statement in their entirety before voting to accept or reject the Toggle Plan. Subject to certain restrictions and requirements set forth in Bankruptcy Code section 1127, Bankruptcy Rule 3019, the Plan Proponents reserve the right to alter, amend, modify, revoke, or withdraw the Toggle Plan prior to its substantial consummation.

No solicitation materials, other than the Toggle Disclosure Statement and related materials transmitted therewith, have been approved for use in soliciting acceptances and rejections of this Toggle Plan. Nothing in the Toggle Plan should be construed as constituting a solicitation of acceptances of the Toggle Plan unless and until the Toggle Disclosure Statement has been approved and distributed to Holders of Claims to the extent required by Bankruptcy Code section 1125.

ALL HOLDERS OF CLAIMS AND INTERESTS ENTITLED TO VOTE ON THE TOGGLE PLAN ARE ENCOURAGED TO READ THE TOGGLE PLAN AND THE Toggle DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE TOGGLE PLAN. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, RULE 3019 OF THE BANKRUPTCY RULES, AND ARTICLE X OF THE TOGGLE PLAN, THE PLAN PROPONENTS RESERVE THE RIGHT TO ALTER, AMEND, MODIFY, SUPPLEMENT, REVOKE, OR WITHDRAW THE TOGGLE PLAN PRIOR TO ITS CONSUMMATION.

*-REMAINDER OF PAGE INTENTIONALLY LEFT BLANK-*

59797.0007.18169739.1

# ARTICLE 1
## DEFINED TERMS AND RULES OF INTERPRETATION

A capitalized term used in this Toggle Plan shall have the meanings set forth in this Article 1. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules.

**1.1**    **503(b)(9) Order**: On August 29, 2024, the Court entered an Order on Debtors' Motion to Amend Order on the Amended Motion to Allow and Pay 503(b)(9) Claims (Docket Nos. 476 & 584).

**1.2**    **506(b) Motion**: Debtors' Motion to Establish Procedure for 11 U.S.C. §506(b) Claims (Docket No. 463) filed in the Chapter 11 Cases.

**1.3**    **Administrative Claim**: Any Claim against any Debtor for costs and expenses of administration of the Chapter 11 Cases pursuant to sections 327, 328, 330, 365, 503(b), 507(a)(2) or 507(b) of the Bankruptcy Code, including (i) the actual and necessary costs and expenses incurred on or after the Petition Date and through the Effective Date of preserving the Estates and operating the Debtors' business, (ii) any Professional Fee Claim, (iii) any fee or charge assessed against the Estates pursuant to sections 1911 through 1930 of chapter 123 of title 28 of the United States Code, (iv) any Allowed Claim that is to be treated as an Administrative Claim pursuant to a Final Order of the Bankruptcy Court under section 546(c)(2) of the Bankruptcy Code, and (v) any Allowed Cure Claim.

**1.4**    **Administrative Claims Bar Date**: The last date by which any Person must File a request for payment of an Administrative Claim, which date shall be (a) under the Reorganization Toggle, the date set forth in the Toggle Disclosure Statement Order, or (b) under the Going Concern 363 Sale Toggle and/or Business Unit 363 Sale Toggle, the first Business Day that is at least thirty (30) calendar days after the Effective Date, or, alternatively, such earlier date as is set by the Bankruptcy Court. For the avoidance of doubt, post-petition statutory tax claims shall not be subject to any Administrative Claims Bar Date.

**1.5**    **Aggregate Cash Target**: The meaning as set forth in Section 6.2 of the Toggle Plan.

**1.6**    **Allowed**, **Allowed Claim**, or **Allowed Administrative Claim**:

    a.    with respect to a Claim arising prior to the Petition Date (including a Section 503(b)(9) Claim):

        (i)    either (a) a proof of claim was timely Filed by the applicable Claims Bar Date, or (b) a proof of claim is deemed timely Filed either as a result of such Claim being Scheduled or by a Final Order; and

        (ii)    either (a) the Claim is not a Contingent Claim, a Disputed Claim, an Unliquidated Claim, or a Disallowed Claim; or (b) the Claim is expressly allowed by a Final Order or under the Toggle Plan;

59797.0007.18169739.1

      b.     with respect to a Claim arising on or after the Petition Date (excluding a Section 503(b)(9) Claim), a Claim that has been allowed by a Final Order or under the Toggle Plan.

Unless otherwise specified in the Toggle Plan or by a Final Order, an "Allowed Administrative Claim" or "Allowed Claim" shall not, for any purpose under the Toggle Plan, include interest, penalties, fees, or late charges on such Administrative Claim or Claim from and after the Petition Date. Moreover, any portion of a Claim that is satisfied, released, or waived during the Chapter 11 Cases is not an Allowed Claim. For the avoidance of doubt, any and all Claims allowed solely for the purpose of voting to accept or reject the Toggle Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder.

**1.7**    **Animal Welfare Reserve**: The meaning as set forth in Section 6.9 of the Toggle Plan.

**1.8**    **Animal Welfare Reserve Covenant**: The meaning as set forth in Section 6.9 of the Toggle Plan.

**1.9**    **Approved Going Concern 363 Sale Qualified Bid**: The meaning as set forth in Section 7.2.5 of the Toggle Plan.

**1.10**    **Asset**: With respect to a Person, all of the right, title and interest of such Person in and to property of whatever type or nature, including real, personal, mixed, intellectual, tangible and intangible property, which, for avoidance of doubt, includes insurance policies and any rights, claims or potential claims with respect thereto.

**1.11**    **Assumed Executory Contracts and Unexpired Leases Schedule**: List of executory contracts and unexpired leased being assumed under the Toggle Plan, Confirmation Order, Going Concern 363 Sale, and/or Business Unit 363 Sale, as applicable.

**1.12**    **Assumption Dispute**: The meaning as set forth in Section 10.4 of the Toggle Plan.

**1.13**    **Avoidance Actions**: Any and all Causes of Action, claims, remedies, or rights, that may be brought by or on behalf of the Debtors or the Estates under Bankruptcy Code sections 542, 544, 547, 548, 549, 550, 551, or 553, or under related state or federal statutes, or pursuant to any theory or cause of action under common law, regardless whether such action has been commenced prior to the Effective Date.

**1.14**    **Ballot**: The ballot form authorized by the Bankruptcy Court to indicate acceptance or rejection of the Toggle Plan.

**1.15**    **Bankruptcy Code**: Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as the same may be amended from time to time to the extent applicable to the Chapter 11 Cases.

**1.16**    **Bankruptcy Court**: The United States Bankruptcy Court for the District of Idaho, or in the event such court ceases to exercise jurisdiction over any Chapter 11 Case, such other court or adjunct thereof that exercises jurisdiction over such Chapter 11 Case in lieu of the United States Bankruptcy Court for the District of Idaho.

59797.0007.18169739.1

**1.17**    **Bankruptcy Rules**: The Federal Rules of Bankruptcy Procedure promulgated by the Supreme Court of the United States under 28 U.S.C. § 2075, as the same may be amended from time to time to the extent applicable to the Chapter 11 Cases.

**1.18**    **Bar Date**: The General Bar Date or any other date established by the Bankruptcy Court as the deadline by which Proofs of Claim or requests for payment of Administrative Claims must be filed.

**1.19**    **Bar Date Order**: The Order (i) Vacating the Original Bar Date and (ii) Establishing a Deadline to File Proofs of Claim (Docket No. 393).

**1.20**    **Baseline Valuation Report**: The meaning as set forth in Section 3.7 of the Toggle Plan.

**1.21**    **Benefit Plan**: Any "employee benefit plan" as defined in section 3(3) of ERISA, compensation, employment, consulting, severance, retention or similar plan, agreement, arrangement, program or policy, or other plan, agreement, arrangement, program or policy providing for compensation, bonuses or other forms of incentive compensation, including vacation benefits, insurance, medical, dental, vision, prescription or fringe benefits, life insurance, perquisites, disability sick leave benefits or employee assistance program, in each case, that is sponsored, maintained or administered or entered into by the Debtors for the benefit of their respective employees or non-employee directors.

**1.22**    **Business Day**: Any day other than a Saturday, a Sunday, a "legal holiday" (as defined in Bankruptcy Rule 9006(a)), or any other day on which commercial banks in the State of Idaho are required or authorized to close by law or executive order.

**1.23**    **Business Unit 363 Sale**: A sale of the Debtors' Assets, either as a separate business unit or individually, under the Business Unit 363 Sale Toggle.

**1.24**    **Business Unit 363 Sale Auction Notice**: The meaning as set forth in Section 8.2 of the Toggle Plan.

**1.25**    **Business Unit 363 Sale Competition Notice**: The meaning as set forth in Section 8.2 of the Toggle Plan.

**1.26**    **Business Unit 363 Sale Competition Notice Deadline**: The meaning as set forth in Section 8.2 of the Toggle Plan.

**1.27**    **Business Unit 363 Sale Offers**: The meaning as set forth in Section 8.2 of the Toggle Plan

**1.28**    **Business Unit 363 Sale Reserve Account**: The meaning as set forth in Section 8.1 of the Toggle Plan.

**1.29**    **Business Unit 363 Sale Toggle**: The meaning as set forth in Section 5.2 of the Toggle Plan.

59797.0007.18169739.1

**1.30** **Business Unit 363 Sale Toggle Notice**: The meaning as set forth in Section 8.1 of the Toggle Plan.

**1.31** **Canyonlands**: The 731.53 acre tract of land located at 1657 River Road, Buhl, Idaho.

**1.32** **Cash**: Cash and cash equivalents, including bank deposits, wire transfers, checks representing good funds, and legal tender of the United States of America or instrumentalities thereof.

**1.33** **Cash Equity Infusion**: The Cash equity contributions to be made by the Shareholders and/or the New Equity Holders in accordance with and pursuant to the Equity Commitment under the Reorganization Toggle.

**1.34** **Cause of Action**: Any Claim, action, class action, claim, cross-claim, counterclaim, third-party claim, cause of action, controversy, dispute, demand, right, Lien, indemnity, contribution, rights of subrogation, reimbursement, guaranty, suit, obligation, liability, debt, damage, judgment, loss, cost, attorneys' fees and expenses, account, defense, remedy, offset, power, privilege, license or franchise, in each case, of any kind, character or nature whatsoever, asserted or unasserted, accrued or unaccrued, known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, foreseen or unforeseen, direct or indirect, choate or inchoate, secured or unsecured, allowable or disallowable, Allowed or Disallowed, assertible directly or derivatively (including, without limitation, under alter-ego theories), in rem, quasi in rem, in personam or otherwise, whether arising before, on or after the Petition Date, arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, in contract or in tort, at law, in equity or pursuant to any other theory or principle of law, including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, veil piercing, unjust enrichment, disgorgement, restitution, contribution, indemnification, rights of subrogation and joint liability, regardless of where in the world accrued or arising. For the avoidance of doubt, "Cause of Action" expressly includes (i) any Cause of Action held by a natural person who is not yet born or who has not yet attained majority as of the Petition Date or as of the Effective Date, (ii) any right of setoff, counterclaim or recoupment and any Cause of Action for breach of contract or for breach of duty imposed by law or in equity, (iii) the right to object to or otherwise contest Claims or Interests, (iv) any Cause of Action pursuant to section 362 of the Bankruptcy Code or chapter 5 of the Bankruptcy Code, (v) any claim or defense, including fraud, mistake, duress and usury and any other defense set forth in section 558 of the Bankruptcy Code, and (vi) any claim under any state or foreign law, including for the recovery of any fraudulent transfer or similar theory.

**1.35** **Chapter 11 Cases**: The voluntary chapter 11 bankruptcy cases commenced by the Debtors consisting of Millenkamp Cattle, Inc., Case No. 24-40158-NGH; Idaho Jersey Girls, LLC, Case No. 24-40159; East Valley Cattle, LLC, Case No. 40160; Millenkamp Properties, L.L.C., Case No. 24-40161; Millenkamp Properties II, LLC, Case No. 24-40162; Millenkamp Family, LLC, Case No. 24-40163; Goose Ranch, LLC, Case No. 24-40164; Black Pine Cattle, LLC, Case No. 40166; Millenkamp Enterprises, LLC, Case No. 24-40167; and Idaho Jersey Girls Jerome

Dairy, LLC, Case No. 24-40165, which are being jointly administered under the case caption *In re Millenkamp Cattle, Inc., et al.*, Case No. 24-40158-NGH (Bankr. D. Idaho).

**1.36    Claim**: Any "claim" as defined in Bankruptcy Code section 101(5), against any of the Debtors or against Assets of any of the Debtors.

**1.37    Claims Bar Date**: As applicable, the Administrative Claims Bar Date, the General Claims Bar Date, the Governmental Claims Bar Date, any Supplemental Bar Date, or the Rejection Claims Bar Date.

**1.38    Class**: A Class of Claims or Interests designated pursuant to the Toggle Plan, or any subclass thereof pursuant to section 1122(a) of the Bankruptcy Code.

**1.39    Collateral**: Any Estate Asset that is subject to a Lien to secure the payment or performance of a Claim, which Lien is perfected and not subject to avoidance under the Bankruptcy Code or otherwise invalid or unenforceable under the Bankruptcy Code or applicable non-bankruptcy law.

**1.40    Confirmation**: The entry of the Confirmation Order by the Bankruptcy Court on the docket of the Chapter 11 Cases.

**1.41    Confirmation Date**: The date of entry of the Confirmation Order by the Bankruptcy Court.

**1.42    Confirmation Hearing**: The hearing held by the Bankruptcy Court to consider confirmation of the Toggle Plan, as such hearing may be adjourned or continued from time to time.

**1.43    Confirmation Order**: The order of the Bankruptcy Court confirming the Toggle Plan pursuant to Bankruptcy Code section 1129.

**1.44    Conterra**: Conterra Holdings, LLC d/b/a Conterra Ag Capital as loan servicer and power of attorney for Ag Funding SC II LLC and Conterra Holdings, LLC d/b/a Conterra Ag Capital as loan servicer and power of attorney for Rooster Capital IV LLC.

**1.45    Conterra Secured Claims**: The meaning as set forth in Section 3.8 of the Toggle Plan.

**1.46    Contingent Claim**: Any Claim that is Scheduled or Filed as contingent.

**1.47    Corn Silage Group**: Consists of corn silage secured creditors: Ed Chonjnacky, Michael Chonjnacky, Dusty Brow Farms, Inc., Grant 4-D Farms, LLC, Grant & Hagan, Inc., Douglas J. Grant, Hollifield Ranches, Inc., Standing 16 Ranch Land Company, LLC, Star Falls Farms, LLC, Steel Ranch, LLC, Bo Stevenson dba B&A Farms, Alexander K. Reed, Triple C Farms, LLC, Clint D. Thompson, and Jean L. Thompson.

**1.48    Creditors' Committee**: The statutory committee of unsecured creditors appointed by the U.S. Trustee on May 14, 2024, pursuant to section 1102(a)(1) of the Bankruptcy Code.

59797.0007.18169739.1

**1.49**    **Cure Amount**: The payment of Cash or the distribution of other property (as the contract or lease counterparty may agree with the Debtors, Reorganized Debtors, or Plan Administrator, as applicable) or the Bankruptcy Court may order as necessary to (i) cure a monetary default by the Debtors in accordance with the terms of an executory contract or unexpired lease of the Debtors, and (ii) permit the Debtors to assume such executory contract or unexpired lease under section 365(a) of the Bankruptcy Code.

**1.50**    **Cure Claim**: A Claim for a Cure Amount in connection with the assumption or assumption and assignment of an executory contract or unexpired lease under section 365(a) of the Bankruptcy Code.

**1.51**    **Current Market Value**: The meaning as set forth in Section 3.7 of the Toggle Plan.

**1.52**    **Daimler**: The meaning as set forth in Section 3.9 of the Toggle Plan.

**1.53**    **Debtor** or **Debtors**: The meaning as set forth in the introductory paragraph of the Toggle Plan.

**1.54**    **Debtor Exculpated Parties**: The Debtors and their respective Related Parties. For the avoidance of doubt, Debtor Exculpated Parties shall include the Debtors' current officers and directors and their duly employed professionals in these Bankruptcy Cases.

**1.55**    **Debtors' Liquidation Analysis**: The liquidation analysis attached to the disclosure statement filed in connection with the Debtors' Plan (as supplemented at Docket No.789).

**1.56**    **Debtors' Plan**: Chapter 11 Amended Plan of Reorganization of Millenkamp Cattle, Inc. and its Related Debtor Affiliates, dated December 5, 2024 filed by the Debtors in the Chapter 11 Cases (Docket No. 776), as may be amended, supplemented, or otherwise modified. To the extent the Debtors file a subsequent or amended chapter 11 plan, the Plan Proponents reserve the right to alter, amend, or otherwise modify the Toggle Plan and the Toggle Disclosure Statement to address the Debtors' revisions or amendments.

**1.57**    **Debtors' Releases**: The releases given on behalf of the Debtors and their Estates to the Released Parties as set forth in Section 14.1 herein.

**1.58**    **Designated GUC Backstop Assets**: The meaning as set forth in Section 9.3 of the Toggle Plan.

**1.59**    **DIP Claims**: Any Claim in respect of any DIP Obligations (as defined in the DIP Order) owed by the Debtors under the DIP Order.

**1.60**    **DIP Order**: The Final Order Authorizing the Debtors to (a) Obtain Post-Petition Financing; and (b) Granting Adequate Protection to Pre-Petition Secured Lenders (Docket No. 305).

**1.61**    **Disallowed Claim**: Any Claim that (a) is not Scheduled, or is listed thereon as contingent, unliquidated, disputed, or in an amount equal to zero, and whose Holder failed to

timely File a proof of claim by the applicable Claims Bar Date (unless late filing was permitted by a Bankruptcy Court order), but excluding any Claim that is expressly Allowed by a Final Order or under the Toggle Plan; or (b) has been disallowed pursuant to an order of the Bankruptcy Court.

    **1.62**    **Disputed Claim**: Any Claim:

    a.    that is disputed in whole or in part under the Toggle Plan; or

    b.    that is not expressly Allowed by a Final Order or under the Toggle Plan; and

    (i)    as to which a proof of claim is Filed or is deemed Filed as a result of such Claim being Scheduled; and

    (ii)    as to which either:

    (1)    (A) an objection or request for estimation or subordination has been timely Filed within the applicable period of limitations fixed by the Toggle Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order under which the applicable period of limitation has expired, and (B) has not been denied by a Final Order or withdrawn; or

    (2)    the Claim Objection Deadline has not passed as to such Claim.

    **1.63**    **Disputed Cure Claim**: The amount that a counterparty to a Contract Dispute alleges must be paid in order for an executory contract or unexpired lease to be assumed or assumed and assigned as provided under the Toggle Plan.

    **1.64**    **Distribution**: Any initial or subsequent issuance, payment, or transfer of consideration made under the Toggle Plan.

    **1.65**    **Distribution Date**: Any date on which a Distribution is made.

    **1.66**    **Distribution Record Date**: The record date for determining entitlement of Holders of Claims to receive Distributions under the Toggle Plan, which date shall be the Effective Date (unless otherwise set forth in the Toggle Plan or the Confirmation Order).

    **1.67**    **Distribution Reserve**: One or more reserves in respect of Contingent Claims, Disputed Claims, Unliquidated Claims, or Disputed Cure Claim established under the Toggle Plan.

    **1.68**    **Eagle Creek**: The meaning as set forth in Section 3.5 of the Toggle Plan.

    **1.69**    **Effective Date**: The first Business Day after the Confirmation Date on which (a) all conditions precedent to the occurrence of the Effective Date set forth in Article 13 of the Toggle Plan have been satisfied or waived in accordance with Article 13 of the Toggle Plan, (b) no stay

59797.0007.18169739.1

of the Confirmation Order is in effect, and (c) the Debtors, Reorganized Debtors, or Plan Administrator, as applicable, declare the Toggle Plan effective.

**1.70** **Effective Date Distributions**: The meaning as set forth in Section 6.4 of the Toggle Plan.

**1.71** **Effective Date Reserve**: The meaning as set forth in Section 6.4 of the Toggle Plan.

**1.72** **Entity**: The meaning as set forth in section 101(15) of the Bankruptcy Code.

**1.73** **Equity Commitment**: A binding, irrevocable commitment and statement of wherewithal by any Entity or Person, other than a Debtor, to make the Cash Equity Infusion made under the Reorganization Toggle.

**1.74** **Equity Interests**: The equity interests (including, but limited to, stock, membership interests, units, partner interests, and similar ownership interests) in the Debtors owned (whether beneficial, direct or indirect) by the Existing Equity Holders.

**1.75** **Estate Assets**: Collectively, any and all right, title, and interest of the Debtors and the Estates in and to property of whatever type or nature, including their books and records and all Avoidance Actions and Causes of Action, as of the Effective Date.

**1.76** **Estate Professional**: Any professional (other than an Ordinary Course Professional) employed by the Debtors or the Creditors' Committee in the Chapter 11 Cases pursuant to Bankruptcy Code sections 327, 328, 1103, or 1104.

**1.77** **Estate Professional Fee Claim**: A Claim of an Estate Professional for compensation or reimbursement of costs and expenses or a Claim of any members of the Creditors' Committee for reimbursement of expenses relating to services provided during the period from the Petition Date through and including the Effective Date.

**1.78** **Estate Professional Fee Escrow**: The escrow established and funded by the Reorganized Debtors or the Plan Administrator, as applicable, pursuant to Section 3.2.2(c) of the Toggle Plan to provide sufficient funds to satisfy in full all unpaid Allowed Estate Professional Fee Claims.

**1.79** **Estates**: Individually or collectively, the estate or estates of the Debtors created under section 541 of the Bankruptcy Code.

**1.80** **Estate's Causes of Action**: The meaning as set forth in Section 5.13.2 of the Toggle Plan.

**1.81** **EVD**: East Valley Development.

**1.82** **Exculpated Parties**: (A) If the Reorganization Toggle Requirements are satisfied by the Toggle Date, collectively, (i) the Debtor Exculpated Parties, (ii) the Existing Equity Holders and their Related Parties, (iii) the Plan Proponents and their Related Parties, (iv) the Plan Administrator, if appointed, and its Related Parties, (iv) the Plan Administration Board, if

59797.0007.18169739.1

appointed, and its members and their respective Related Parties, and (v) if the Creditors' Committee supports Confirmation of the Toggle Plan, the Creditors' Committee and its Related Parties, and (B) if the Reorganization Toggle Requirements are not satisfied by the Toggle Date, collectively (i) the Plan Proponents and their Related Parties, (ii) the Plan Administrator and its Related Parties, (iii) the Plan Administration Board and its members and their respective Related Parties, and (iv) if the Creditors' Committee supports Confirmation of the Toggle Plan, the Creditors' Committee and its Related Parties.

1.83    **Existing Equity Holders**: The Non-Debtor Borrowers, and each of their successors and assigns.

1.84    **Exit German Note**: The meaning as set forth in Section 3.8 of the Toggle Plan.

1.85    **Exit MetLife Term Notes**: The meaning as set forth in Section 3.6 of the Toggle Plan.

1.86    **Exit Mezz Note**: The meaning as set forth in Section 3.8 of the Toggle Plan.

1.87    **Exit RLOC Financial Covenants**: The meaning as set forth in Section 3.7 of the Toggle Plan.

1.88    **Exit RLOC PIK Interest**: The meaning as set forth in Section 3.7 of the Toggle Plan.

1.89    **Exit RLOC Term Note**: The meaning as set forth in Section 3.7 of the Toggle Plan.

1.90    **File**, **Filed**, or **Filing**: Duly and properly filed with the Bankruptcy Court and reflected on the docket of the Chapter 11 Cases.

1.91    **Final Decree**: An order entered pursuant to Bankruptcy Code section 350 and Bankruptcy Rule 3022 closing the Chapter 11 Cases of one or any of the Debtors.

1.92    **Final Order**: An order or judgment of the Bankruptcy Court entered on the docket of the Chapter 11 Cases:

    a.    that has not been reversed, rescinded, stayed, modified, or amended;

    b.    that is in full force and effect; and

    c.    with respect to which (i) the time to appeal or to seek review, rehearing, remand, or a writ of certiorari has expired and as to which no timely filed appeal or petition for review, rehearing, remand, or writ of certiorari is pending; or (ii) any such appeal or petition has been dismissed or resolved by the highest court to which the order or judgment was appealed or from which review, rehearing, remand, or a writ of certiorari was sought.

59797.0007.18169739.1

For the avoidance of doubt, no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Bankruptcy Code section 502(j), Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rule 9024 may be or has been filed with respect to such order.

**1.93    First Intercreditor Agreement**: The meaning as set forth in Section 3.6 of the Toggle Plan.

**1.94    General Claims Bar Date**: July 31, 2024.

**1.95    General Unsecured Claim**: Any unsecured, non-priority Claim existing as of the Petition Date or a Rejection Claim that is asserted against one or all of the Debtors or the Estates and is not a Secured Claim, Intercompany Claim, or Subordinated Claim.

**1.96    German Dairy**: The meaning as set forth in Section 3.8 of the Toggle Plan

**1.97    German Note**: The meaning as set forth in Section 3.8 of the Toggle Plan.

**1.98    Going Concern 363 Sale**: A sale of the Debtors' businesses as a going concern under the Going Concern 363 Sale Toggle.

**1.99    Going Concern 363 Sale Competition Notice**: The meaning as set forth in Section 7.2 of the Toggle Plan.

**1.100    Going Concern 363 Sale Competition Notice Deadline**: The meaning as set forth in Section 7.2 of the Toggle Plan.

**1.101    Going Concern 363 Sale Order**: The meaning as set forth in Section 7.2 of the Toggle Plan.

**1.102    Going Concern 363 Sale Order Deadline**: The meaning as set forth in Section 7.2 of the Toggle Plan.

**1.103    Going Concern 363 Sale Qualified Bid**: A binding commitment (i) from, as determined by the Plan Administration Board, in its discretion, a reputable party with demonstrated wherewithal to pay the purchase price at closing, maintain the welfare of animals, preserve jobs for employees, and pay vendors in accordance with ordinary course terms, (ii) providing for the payment to a reserve account maintained by the Plan Administrator for the benefit of the Debtors' Estates of net cash proceeds in an amount no less than the amount of the Going Concern 363 Sale Qualified Purchase Price, without being subject to any reserves, holdbacks, or other deductions, at closing, *provided* that any bid that proposes less than the Going Concern 363 Sale Qualified Purchase Price must be acceptable to each of the RLOC Agent and MetLife, (iii) on terms no less favorable than those set forth in the proposed purchase agreement filed with the Toggle Plan Supplement, and (iv) committed to close in accordance with the Going Concern 363 Sale Toggle set forth in the Toggle Plan.

**1.104    Going Concern 363 Sale Qualified Bid Deadline**: The meaning as set forth in Section 7.2 of the Toggle Plan.

59797.0007.18169739.1

**1.105** **Going Concern 363 Sale Qualified Purchase Price**:  A purchase price with net cash proceeds, at closing, of at least Three Hundred Fifty Million Dollars ($350,000,000), without being subject to any reserves, holdbacks, or other deductions; *provided* that any bid that proposes to pay less than Three Hundred Fifty Million Dollars ($350,000,000) must be acceptable to each of the RLOC Agent and MetLife, in their respective sole discretion.

**1.106** **Going Concern 363 Sale Toggle**: The meaning as set forth in Section 5.2 of the Toggle Plan.

**1.107** **GUC Backstop**: The backstop established under the Reorganization Toggle in accordance with Section 9.3 of the Toggle Plan.

**1.108** **GUC Backstop Amount**: The meaning as set forth in Section 9.3 of the Toggle Plan.

**1.109** **GUC Backstop True-Up**: The meaning as set forth in Section 9.3 of the Toggle Plan.

**1.110** **Healthy Earth**: The meaning as set forth in Section 3.5 of the Toggle Plan.

**1.111** **H&M**: The meaning as set forth in Section 3.5 of the Toggle Plan.

**1.112** **Holder**: The Person that is the owner of record of a Claim or Interest, as applicable.

**1.113** **Idaho Material**: The meaning as set forth in Section 3.10.4 of the Toggle Plan.

**1.114** **Impaired**: Any Class of Claims or Interests that is impaired within the meaning of Bankruptcy Code section 1124.

**1.115** **Independent Board**: The meaning as set forth in Section 6.6 of the Toggle Plan.

**1.116** **Insurance Policies**: All insurance policies that have been issued to, or provide coverage at, any of the Debtors and all agreements, instruments, or documents relating thereto.

**1.117** **Insured Claim**: Any Claim or portion of a Claim (other than a Claim held by an employee of the Debtors for workers' compensation coverage under the workers' compensation program applicable in the particular state in which the employee is employed by the Debtors) that is insured under the Debtors' insurance policies, but only to the extent of such coverage.

**1.118** **Intercompany Claim**: A Claim against a Debtor held by another Debtor.

**1.119** **Inventory Reserve Account**: The meaning as set forth in Section 3.7 of the Toggle Plan.

**1.120** **Inventory Valuation Report**: The meaning as set forth in Section 3.7 of the Toggle Plan.

**1.121** **IRC**: The Internal Revenue Code of 1986, as amended.

59797.0007.18169739.1

**1.122** **IRS**: The Internal Revenue Service.

**1.123** **John Deere**: The meaning as set forth in Section 3.9 of the Toggle Plan.

**1.124** **Joinder Agreement**: A binding, irrevocable commitment by a Plan Proponent (other than the RLOC Agent) to support and cooperate in the pursuit of the Confirmation of this Toggle Plan.

**1.125** **Kenworth**: The meaning as set forth in Section 3.9 of the Toggle Plan.

**1.126** **Kraus Farm**: The meaning as set forth in Section 3.5 of the Toggle Plan

**1.127** **Les Schwab**: The meaning as set forth in Section 3.10 of the Toggle Plan.

**1.128** **Lien**: Any lien, security interest, pledge, title retention agreement, encumbrance, leasehold, charge, mortgage, or hypothecation to secure payment of a debt or performance of an obligation, other than, in the case of securities and any other equity ownership interests, any restrictions imposed by applicable United States or foreign securities laws, as set forth in section 101(37) of the Bankruptcy Code.

**1.129** **Limited Sales Professionals**: The professionals to be identified in the Toggle Plan Supplement to advise and assist the Plan Administrator in connection with the Going Concern 363 Sale Toggle and/or Business Unit 363 Sale Toggle.

**1.130** **List of Acceptable Investment Bankers**: The meaning as set forth in Section 6.10 of the Toggle Plan.

**1.131** **Material Milestone Default**: The meaning as set forth in Section 6.10 of the Toggle Plan.

**1.132** **McGregor**: The 322.45 acre tract of land located at 1050 South 2300 East, Hazelton, Idaho.

**1.133** **MC Holdings**: MC Holdings, an Idaho limited liability company, formed under the Reorganization Toggle.

**1.134** **MetLife**: MetLife Real Estate Lending LLC and Metropolitan Life Insurance Company.

**1.135** **MetLife-Conterra Intercreditor Agreement**: The meaning as set forth in Section 3.6 of the Toggle Plan.

**1.136** **MetLife Intercreditor Agreements**: The meaning as set forth in Section 3.6 of the Toggle Plan.

**1.137** **MetLife Milk Priority Claim**: The meaning as set forth in Section 3.6 of the Toggle Plan.

59797.0007.18169739.1

**1.138    MetLife Secured Claim**: The meaning as set forth in Section 3.6 of the Toggle Plan.

**1.139    Mezz Loan**: The meaning as set forth in Section 3.8 of the Toggle Plan.

**1.140    Milk Agreements**: The meaning as set forth in Section 3.6 of the Toggle Plan.

**1.141    Milk Purchaser**: The meaning as set forth in Section 3.6 of the Toggle Plan.

**1.142    Milk Receivables**: The meaning as set forth in Section 3.7 of the Toggle Plan.

**1.143    Milner**: The meaning as set forth in Section 3.5 of the Toggle Plan.

**1.144    Moss Grain**: The meaning as set forth in Section 3.5 of the Toggle Plan.

**1.145    New Bylaws**: The bylaws of the Reorganized Debtors and MC Holdings adopted on the Effective Date in connection with the Reorganization Toggle, a draft of which shall be included in the Toggle Plan Supplement.

**1.146    New Common Stock**: The common stock or equity to be issued on the Effective Date in MC Holdings under the Reorganization Toggle.

**1.147    New Equity Holder Contribution Amount**: The meaning as set forth in Section 6.8 of the Toggle Plan.

**1.148    New Equity Holder Reallocation**: The meaning as set forth in Section 6.8 of the Toggle Plan.

**1.149    New Equity Holders**: The meaning as set forth in Section 6.2 of the Toggle Plan.

**1.150    Non-Debtor Borrowers**: The meaning as set forth in Section 3.7 of the Toggle Plan.

**1.151    Non-Debtor Plan Proponents**: The Plan Proponents other than the Debtors and Existing Equity Holders.

**1.152    Northwest**: The meaning as set forth in Section 3.5 of the Toggle Plan.

**1.153    Notice of 506(b) Claim**: Notice issued in accordance with the Bankruptcy Court's oral ruling on the 506(b) Motion.

**1.154    Notice of Approved Going Concern 363 Sale Qualified Bid**: The meaning as set forth in Section 7.2 of the Toggle Plan.

**1.155    PerforMix**: The meaning as set forth in Section 3.10 of the Toggle Plan.

**1.156    Person**: Any person or organization created or recognized by law, including any association, company, cooperative, corporation, entity, estate, fund, individual, joint stock company, joint venture, limited liability company, partnership, trust, trustee, unincorporated

59797.0007.18169739.1

organization, government or any political subdivision thereof, or any other entity or organization of whatever nature.

**1.157** **Petition Date**: April 2, 2024, the date on which Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

**1.158** **Plan Administrator**: A Person or Entity to be identified in the Plan Supplement.

**1.159** **Plan Administration Board**: The meaning as set forth in Section 9.2.2 of the Toggle Plan.

**1.160** **Plan Proponents**: The meaning as set forth in the introductory paragraph of the Toggle Plan.

**1.161** **Plan Sale Professionals**: A list of professionals approved by the Non-Debtor Plan Proponents, and included in the Toggle Plan Supplment, that may be necessary (but not required) for the Plan Administrator to retain, in its discretion, in connection with the performance of the Plan Administrator's duties under the Toggle Plan, which shall be comprised of (i) a list of 2-3 operators, (ii) a list of 2-3 investment bankers, (iii) a list of 2-3 cattle auction companies, (iv) a list of 2-3 equipment liquidators, and (v) a list of 2-3 real estate brokers. For the avoidance of doubt, a Plan Sale Professional may be approved for one or more scopes of work. The Toggle Plan Supplement will also include all information required by section 327(a) of the Bankruptcy Code for each Plan Sale Professional.

**1.162** **Platt**: The meaning as set forth in Section 3.10 of the Toggle Plan.

**1.163** **Pre-Confirmation Milestones**: The meaning as set forth in Section 6.2 of the Toggle Plan.

**1.164** **Pre-Confirmation Transactions**: The meaning as set forth in Section 6.2 of the Toggle Plan.

**1.165** **Preference Claim**: Any Avoidance Action that may be brought by or on behalf of the Debtors or the Estates under Bankruptcy Code section 547, or under related state or federal statutes, or pursuant to any theory or cause of action under common law, regardless whether such action has been commenced prior to the Effective Date.

**1.166** **Preferred Effective Date Par Value**: The meaning as set forth in Section 6.8 of the Toggle Plan.

**1.167** **Preferred GUC Allocation**: The meaning as set forth in Section 6.8 of the Toggle Plan.

**1.168** **Pre-Petition Conterra Mezz Collateral**: The meaning as set forth in Section 3.8 of the Toggle Plan.

**1.169** **Pre-Petition Conterra Real Estate Collateral**: The meaning as set forth in Section 3.8 of the Toggle Plan.

59797.0007.18169739.1

**1.170    Pre-Petition MetLife Collateral**: The meaning as set forth in Section 3.6 of the Toggle Plan.

**1.171    Pre-Petition MetLife Liens**: The meaning as set forth in Section 3.6 of the Toggle Plan.

**1.172    Pre-Petition MetLife Loans**: The meaning as set forth in Section 3.6 of the Toggle Plan.

**1.173    Pre-Petition MetLife Loan Documents**: The meaning as set forth in Section 3.6 of the Toggle Plan.

**1.174    Pre-Petition MetLife Real Estate Collateral**: The meaning as set forth in Section 3.6 of the Toggle Plan.

**1.175    Pre-Petition Real Estate Collateral**: The meaning as set forth in Section 3.8 of the Toggle Plan.

**1.176    Pre-Petition RLOC Collateral**: The meaning as set forth in Section 3.7 of the Toggle Plan.

**1.177    Pre-Petition RLOC Credit Agreement**: The meaning as set forth in Section 3.7 of the Toggle Plan.

**1.178    Pre-Petition RLOC Documents**: The meaning as set forth in Section 3.7 of the Toggle Plan.

**1.179    Pre-Petition RLOC Lenders**: The meaning as set forth in Section 3.7 of the Toggle Plan.

**1.180    Pre-Petition RLOC Liens**: The meaning as set forth in Section 3.7 of the Toggle Plan

**1.181    Pre-Petition RLOC Personal Property Liens**: The meaning as set forth in Section 3.7 of the Toggle Plan.

**1.182    Pre-Petition RLOC Second Mortgage**: The meaning as set forth in Section 3.7 of the Toggle Plan.

**1.183    Pre-Petition RLOC Secured Parties**: The meaning as set forth in Section 3.7 of the Toggle Plan.

**1.184    Post-Effective Date Business Unit Sale**: The meaning as set forth in Section 6.10 of the Toggle Plan.

**1.185    Post-Effective Date Refinancing Commitment Milestone**: The meaning as set forth in Section 6.10 of the Toggle Plan.

59797.0007.18169739.1

**1.186    Post-Effective Date Qualified Bid**: The meaning as set forth in Section 6.10 of the Toggle Plan.

**1.187    Post-Effective Date Qualified Sale Price**: The meaning as set forth in Section 6.10 of the Toggle Plan.

**1.188    Post-Effective Date Strategic Sale**: The meaning as set forth in Section 6.10 of the Toggle Plan.

**1.189    Priority Claim**: A Claim that is entitled to priority under Bankruptcy Code section 507(a), other than an Administrative Claim and a Priority Tax Claim.

**1.190    Priority-GUC Effective Date Distribution**: The meaning as set forth in Section 6.3 of the Toggle Plan.

**1.191    Priority-GUC Reserve**: A reserve to be established with Two Million Eight Hundred Thousand Dollars ($2,800,000.00) solely from the Cash Equity Infusion and maintained by the Debtors and/or Reorganized Debtors under the Reorganization Toggle for the express purpose of making distributions to Holders of Allowed Other Priority Claims and Allowed General Unsecured Claims.

**1.192    Priority Tax Claim**: Any Claim against any Debtor that is held by a Governmental Unit and of the kind entitled to priority in payment under sections 502(i) and 507(a)(8) of the Bankruptcy Code

**1.193    Professional Fee Claims**: Collectively, (a) Estate Professional Fee Claims, and (b) Secured Creditors' Fee Claims.

**1.194    Pro Rata**: Proportionately so that the ratio of (a) the amount of consideration distributed on account of a particular Allowed Claim to (b) the amount or number of that Allowed Claim, is the same as the ratio of (x) the amount of consideration available for Distribution on account of, as applicable, all Allowed Claims in the Class in which the particular Allowed Claim is included to (y) as applicable, the amount of all Allowed Claims of that Class, as adjusted to take into account any applicable Distribution Reserves.

**1.195    Proof(s) of Claim**: A Proof of Claim against any of the Debtors filed in the Chapter 11 Cases in accordance with section 501 of the Bankruptcy Code.

**1.196    Qualified Business Unit 363 Sale Offers**: The meaning as set forth in Section 8.2 of the Toggle Plan.

**1.197    Real Estate Sales**: Collectively, the sale(s) of Canyonlands and McGregor.

**1.198    Rejected Executory Contracts and Unexpired Leases Schedule**: List of executory contracts and unexpired leased being rejected under the Toggle Plan, Confirmation Order, Going Concern 363 Sale, and/or Business Unit 363 Sale, as applicable.

59797.0007.18169739.1

**1.199    Rejection Claim**: Any Claim for monetary damages as a result of the rejection of any prepetition executory contract or unexpired lease, whether rejected pursuant to the Confirmation Order or otherwise.

**1.200    Rejection Claims Bar Date**: To the extent not previously established by prior order of the Bankruptcy Court, including the Confirmation Order, thirty (30) calendar days after the Effective Date.

**1.201    Related Parties**: Collectively, all of the respective professionals duly employed by a Person or Entity, including the professionals' representatives, and successors and assigns of the referenced professionals; *provided however*, for the avoidance of doubt, with respect to the Creditors' Committee, "Related Parties" shall include the members of the Creditors' Committee but solely in their capacity as a member of the Creditors' Committee, each of such member's representatives with respect to the Creditors' Committee, and each member's counsel.

**1.202    Released Parties**: (A) If the Reorganization Toggle Requirements are satisfied by the Toggle Date, collectively, (i) the Debtors and their Related Parties, (ii) the Existing Equity Holders and their Related Parties, (iii) the Plan Proponents and their Related Parties, (iv) the Holders of Allowed Class 5 RLOC Secured Claims, and (v) if the Creditors' Committee supports Confirmation of the Toggle Plan, the Creditors' Committee and its Related Parties,  and (B) if the Reorganization Toggle Requirements are not satisfied by the Toggle Date, collectively (i) the Plan Proponents and their Related Parties, (ii) the Holders of Allowed Class 5 RLOC Secured Claims, and (iii)if the Creditors' Committee supports Confirmation of the Toggle Plan, the Creditors' Committee and its Related Parties.

**1.203    Reorganization Toggle**: The meaning as set forth in Section 5.2 of the Toggle Plan.

**1.204    Reorganization Toggle Requirements**: The meaning as set forth in Section 6.1 of the Toggle Plan.

**1.205    Reorganized Debtors**: The Debtors, or any successors thereto, by merger, consolidation, or otherwise, on or after the Effective Date under the Reorganization Toggle.

**1.206    Reorganized Preferred Stock**: The meaning as set forth in Section 6.8 of the Toggle Plan.

**1.207    Restructuring Transactions**: As the case may be, (i) the Pre-Confirmation Transactions and any other transaction contemplated under the Reorganization Toggle, (ii) the Going Concern 363 Sale and any other transactions contemplated under the Going Concern 363 Sale Toggle, and/or (iii) the sale of a Debtor's Asset and any other transaction contemplated under the Business Unit 363 Sale Toggle.

**1.208    RLOC Agent**: The meaning as set forth in the introductory paragraph of the Toggle Plan.

**1.209    RLOC-Conterra Intercreditor Agreement**: The meaning as set forth in Section 3.11 of the Toggle Plan.

59797.0007.18169739.1

**1.210**  **RLOC Secured Claims**: The meaning as set forth in Section 3.7 of the Toggle Plan.

**1.211**  **Rooster**: Rooster Capital IV LLC.

**1.212**  **Sale Toggles**: Collectively, (a) the Going Concern 363 Sale Toggle, and (b) the Business Unit 363 Sale Toggle.

**1.213**  **Sale Toggle Bidding Procedures Order**: The meaning as set forth in Section 7.2 of the Toggle Plan.

**1.214**  **Sandton**: Sandton Capital Partners LP and Sandton Capital Solutions Master Fund VI, LP.

**1.215**  **Sandton Exit Term Loan Facility**: The Senior Secured Exit Term Loan Facility between the Debtors and Sandton as identified and described in the Debtors' Plan.

**1.216**  **Scheduled**: As set forth in the Schedules.

**1.217**  **Schedules**: The Schedules of Assets and Liabilities Filed by the Debtors in the Chapter 11 Cases, as such Schedules may be amended from time to time in accordance with Bankruptcy Rule 1009.

**1.218**  **Second Intercreditor Agreement**: The meaning as set forth in Section 3.6 of the Toggle Plan.

**1.219**  **Section 503(b)(9) Claim**: A Claim arising under Bankruptcy Code section 503(b)(9).

**1.220**  **Secured Claim**: A Claim that is secured by a valid, perfected, and enforceable Lien on property in which the Debtors or the Estates have an interest, which Lien is valid, perfected, and enforceable under applicable law and not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law. A Claim is a Secured Claim only to the extent of the value of the Holder's interest in the Debtors' interest in the Collateral or to the extent of the amount subject to set-off against a Cause of Action held by the Debtors, whichever is applicable, and as determined under Bankruptcy Code section 506(a). To the extent that the value of such interest in the Debtors' interest in the subject Collateral or the amount subject to set-off against a Cause of Action held by the Debtors (as applicable) is less than the amount of the Claim which has the benefit of such security or is supported by such setoff right, such portion of the Claim is unsecured and shall be treated as a General Unsecured Claim unless, in any such case, the Class of which the Secured Claim is a part makes a valid and timely election in accordance with Bankruptcy Code section 1111(b) to have such Claim(s) treated as a Secured Claim to the extent Allowed.

**1.221**  **Secured Creditor**: A Holder of a Secured Claim.

**1.222**  **Secured Creditor's Professional Fee Claim**: A Claim of a Secured Creditor for reimbursement of fees, costs, and expenses relating to services provided by any professional,

59797.0007.18169739.1

including attorneys and financial advisors, during the period from the Petition Date through and including the Effective Date.

**1.223   Securities Act**: The Securities Act of 1933, as amended.

**1.224   SOFR**: The Secured Overnight Financing Rate for a tenor of one month as administered by the Federal Reserve Bank of New York (or a successor administrator) as determined on the day that is two Business Days prior to the first day of such calendar month..

**1.225   Standlee**: The meaning as set forth in Section 3.5 of the Toggle Plan.

**1.226   State**: Any U.S. state, any U.S. territory or the District of Columbia.

**1.227   Subordinated Claim**: Collectively, any Claim that is subordinated to General Unsecured Claims pursuant to Bankruptcy Code section 510, a Final Order, or by consent of the Holder of such Claim.

**1.228   Successful Going Concern 363 Sale Auction Bid**: The highest or best bid for a Going Concern 363 Sale as selected by the Plan Administrator and Plan Administration Board under the Reorganization Toggle.

**1.229   Successful Refinancing Event**: A transaction providing for the refinance or the repayment of the Exit RLOC Term Note and Exit German Note in full.

**1.230   Supplemental Bar Date**: Any supplemental bar date that may be established by an order of the Bankruptcy Court.

**1.231   Threshold Amount**: The meaning as set forth in Section 3.7 of the Toggle Plan.

**1.232   Toggle Date**: February 14, 2025.

**1.233   Toggle Disclosure Statement**: That certain disclosure statement, including all exhibits and schedules thereto or referenced therein, that relates to the Toggle Plan and has been prepared and distributed by the Plan Proponents, as approved by the Bankruptcy Court pursuant to Bankruptcy Code section 1125, as the same may be amended, modified, or supplemented.

**1.234   Toggle Disclosure Statement Order**: The order approving the Toggle Disclosure Statement, authorizing the Plan Proponents to solicit acceptances of the Toggle Plan and establishing certain related procedures and deadlines.

**1.235   Toggle Plan**: The meaning as set forth in the introductory paragraph of the Toggle Plan.

**1.236   Toggle Plan Supplement**: The compilation of documents and forms of documents, agreements, schedules, and exhibits to the Toggle Plan to be Filed by the Plan Proponents, as may be amended, supplemented, altered, or modified from time to time, and which includes: (a) the New Bylaws; (b) to the extent known, the identity and members of the Independent Board; (c) to the extent known, the identity of the Plan Administrator; (d) to the extent known, the identity and

59797.0007.18169739.1

members of the Plan Administration Board; (e) to the extent known, the identity of the Limited Sales Professionals and the Plan Sale Professionals, (f) the Assumed Executory Contracts and Unexpired Leases Schedule and the Rejected Executory Contracts and Unexpired Leases Schedule (g) List of Acceptable Investment Bankers; (h) the Reorganized Preferred Stock certificate of designation; (i) Debtors' Liquidation Analysis; and (j) any additional documents necessary to effectuate the Restructuring Transactions or that is contemplated by the Toggle Plan, subject to the Plan Proponents' right to amend such documents contained in, and exhibits to, the Toggle Plan Supplement through the Effective Date.

**1.237** **Tyche**: The meaning as set forth in Section 3.5 of the Toggle Plan.

**1.238** **U.S. Trustee**: The Office of the United States Trustee for the District of Idaho.

**1.239** **Unimpaired**: Any Class of Claims that is not impaired within the meaning of Bankruptcy Code section 1124.

**1.240** **Unliquidated Claim**: Any Claim that is Scheduled as unliquidated or that was filed in an unliquidated amount.

**1.241** **Voting Agent**: Under the Reorganization Toggle, Krystal R. Mikkilineni, Dentons Davis Brown, The Davis Brown Tower, 215 10th St., Suite 1300, Des Moines, Iowa 50309, email: krystal.mikkilineni@dentons.com, and under the Going Concern 363 Sale Toggle and/or Business Unit 363 Sale Toggle, Sheila Schwager, Hawley Troxell Ennis & Hawley LLP, 877 W. Main Street, Suite 200, P.O. Box 1617, Boise, Idaho 83701-1617, email: sschwager@hawleytroxell.com.

**1.242** **Voting Deadline**: The date and time by which all Ballots to accept or reject the Toggle Plan must be received in order to be counted under the Toggle Disclosure Statement Order.

**1.243** **Wada Farms**: The meaning as set forth in Section 3.5 of the Toggle Plan.

**1.244** **Western States**: The meaning as set forth in Section 3.9 of the Toggle Plan.

**1.245** **Youree**: The meaning as set forth in Section 3.5 of the Toggle Plan.

Rules of Interpretation:

For purposes herein: (i) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (ii) except as otherwise provided herein, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (iii) except as otherwise provided, any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, restated, supplemented, or otherwise modified in accordance with the Toggle Plan; (iv) unless otherwise specified herein, all references herein to "Articles" are references to Articles of the Toggle Plan or hereto; (v) unless otherwise stated herein, the words

59797.0007.18169739.1

"herein," "hereof," and "hereto" refer to the Toggle Plan in its entirety rather than to a particular portion of the Toggle Plan; (vi) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (vii) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (viii) unless otherwise specified, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply to the Toggle Plan; (ix) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (x) any docket number references in the Toggle Plan shall refer to the docket number of any document Filed with the Bankruptcy Court in the Chapter 11 Cases; (xi) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "Holders of Interests," "Disputed Interests," and the like as applicable; (xii) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; (xiii) any references to the Reorganized Debtors and/or the Debtors shall be deemed to refer to the Plan Administrator as appropriate to implement the Going Concern 363 Sale Toggle and/or the Business Unit 363 Sale Toggle, (xiv) any immaterial effectuating provisions may be interpreted by the Plan Proponents, or after the Effective Date, the Reorganized Debtors or the Plan Administrator, as applicable, in such a manner that is consistent with the overall purpose and intent of the Toggle Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; and (xv) except as otherwise provided, any references to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter.

## ARTICLE 2
## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

**2.1** **Summary and Classification of Claims**. This Section classifies Claims—except for Administrative Claims, Professional Fee Claims, and Priority Tax Claims, which are not classified—for all purposes, including Confirmation, Distributions, and voting. A Claim is classified in a particular Class only to the extent that the Claim falls within the Class description. To the extent that part of a Claim falls within a different Class description, that part of the Claim is classified in that different Class. Unless otherwise noted, a Class will be Impaired or Unimpaired under each toggle of the Toggle Plan. The following table summarizes the Classes of Claims under the Toggle Plan, including the impairment of each particular Class of Claims under the different toggles of the Toggle Plan:

| CLASS | DESCRIPTION | IMPAIRED/ UNIMPAIRED | VOTING STATUS |
|---|---|---|---|
| None | Administrative Claims | Unimpaired | Not Entitled to Vote |
| None | Professional Fee Claims | Unimpaired | Not Entitled to Vote |
| None | Priority Tax Claims | Unimpaired | Not Entitled to Vote |
| Class 1 | Other Priority Claims | Unimpaired | Not Entitled to Vote |

59797.0007.18169739.1

| Class 2 | Corn Silage Group Secured Claims | Impaired | Entitled to Vote |
|---------|----------------------------------|----------|------------------|
| Class 3A | A. Scott Jackson Trucking Secured Claim | Impaired | Entitled to Vote |
| Class 3B | B&H Farming Secured Claim | Unimpaired | Not Entitled to Vote |
| Class 3C | H&M Custom, LLC Secured Claim | Unimpaired | Not Entitled to Vote |
| Class 3D | Healthy Earth Enterprises, LLC Secured Claim | Unimpaired | Not Entitled to Vote |
| Class 3E | Kraus Farms, LLC Secured Claim | Impaired | Entitled to Vote |
| Class 3F | Milner Hay Company, LLC Secured Claim | Unimpaired | Not Entitled to Vote |
| Class 3G | Moss Grain Partnership Secured Claim | Unimpaired | Not Entitled to Vote |
| Class 3H | NorthWest Seed, Inc. Secured Claim | Unimpaired | Not Entitled to Vote |
| Class 3I | Performance Plus-Idaho, LLC Secured Claim | Impaired | Entitled to Vote |
| Class 3J | Tyche Ag, LLC Secured Claim | Unimpaired | Not Entitled to Vote |
| Class 3K | Wada Farms Partnership Secured Claim | Unimpaired | Not Entitled to Vote |
| Class 3L | Youree Land & Livestock Secured Claim | Impaired | Entitled to Vote |
| Class 3M | Eagle Creek Northwest, LLC Claim | Unimpaired | Not Entitled to Vote |
| Class 3N | Standlee Ag Resources and Premium Products Secured Claim | Impaired | Entitled to Vote |

59797.0007.18169739.1

| Class 4 | MetLife Secured Claims | Impaired | Entitled to Vote |
|---|---|---|---|
| Class 5 | RLOC Secured Claims | Impaired | Entitled to Vote |
| Class 6 | Conterra Secured Claims | Impaired | Entitled to Vote |
| Class 7A | CNH Industrial Capital Secured Claim | Impaired | Entitled to Vote |
| Class 7B | Daimler Truck Financial Services USA LLC Secured Claim | <u>Reorganization Toggle</u>: Unimpaired<br><br><u>Sale Toggles</u>: Impaired | <u>Reorganization Toggle</u>: Not Entitled to Vote<br><br><u>Sale Toggles</u>: Entitled to Vote |
| Class 7C | Farmers Bank | <u>Reorganization Toggle</u>: Unimpaired<br><br><u>Sale Toggles</u>: Impaired | <u>Reorganization Toggle</u>: Not Entitled to Vote<br><br><u>Sale Toggles</u>: Entitled to Vote |
| Class 7D | John Deere Construction & Forestry Secured Claim | Impaired | Entitled to Vote |
| Class 7E | Western States Cat Secured Claim | Unimpaired | Not Entitled to Vote |
| Class 7F | Kenworth Sales Company Secured Claim | <u>Reorganization Toggle</u>: Unimpaired<br><br><u>Sale Toggles</u>: Impaired | <u>Reorganization Toggle</u>: Not Entitled to Vote<br><br><u>Sale Toggles</u>: Entitled to Vote |
| Class 8A | MWI Veterinary Secured Claim | Impaired | Entitled to Vote |
| Class 8B | PerforMix Nutrition Systems Secured Claim | Unimpaired | Not Entitled to Vote |
| Class 8C | Rexel USA, Inc. d/b/a Platt Electric Supply Claim | Disputed | Entitled to Vote |

59797.0007.18169739.1

| Class 8D | Staker & Parson Company d/b/a Idaho Materials & Construction Claim | Unimpaired | Not Entitled to Vote |
|----------|------|------|------|
| Class 8E | Les Schwab Tire Centers of Idaho, LLC Claims | Impaired | Entitled to Vote |
| Class 9 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 10 | Intercompany Claims | Impaired | Not Entitled to Vote (deemed to reject) |
| Class 11 | Equity Interests | Impaired | <u>Reorganization Toggle</u>: Entitled to Vote<br><br><u>Sale Toggles</u>: Not entitled to vote (deemed to reject) |

**NOTWITHSTANDING ANY OTHER TERM OR PROVISION OF THE TOGGLE PLAN, NO DISTRIBUTIONS WILL BE MADE ON ACCOUNT OF ANY CLAIM THAT IS NOT AN ALLOWED CLAIM AND NO RIGHTS WILL BE RETAINED ON ACCOUNT OF ANY CLAIM THAT IS A DISALLOWED CLAIM.**

**2.2    <u>Substantive Consolidation</u>**. For purposes of the Toggle Plan only, all remaining Assets and liabilities of the Debtors shall be deemed the Assets and liabilities of a single consolidated entity. On the Effective Date: (a) all Assets (and all proceeds thereof) and liabilities of each Debtor shall be merged or treated as though they were merged into and with the Assets and liabilities of the other Debtors, (b) no Distributions shall be made under the Toggle Plan on account of intercompany Claims among the Debtors and all such Claims shall be eliminated, (c) all guarantees of the Debtors of the obligations of any other Debtors shall be deemed eliminated and extinguished so that any Allowed Claim against any Debtor and guarantee thereof executed by any other Debtor and any joint and several liability of any of the Debtors shall be deemed to be one obligation of the consolidated Debtors, (d) each and every Claim filed or to be filed against any Debtor shall be filed against the consolidated Debtors, and shall be deemed one Claim against and obligation of the consolidated Debtors, and (e) for purposes of determining the availability of the right of setoff under section 553 of the Bankruptcy Code, the Debtors shall be treated as one entity so that, subject to the other provisions of section 553 of the Bankruptcy Code, debts due to any of the Debtors may be set off against the debts of the other Debtors. Such substantive consolidation shall not (other than for purposes related to the Toggle Plan) affect the pre-petition legal and corporate structures of the Debtors, or the legal title ownership of any assets owned by the separate Debtors. Entry of the Confirmation Order shall constitute the approval, pursuant to

59797.0007.18169739.1

section 105(a) of the Bankruptcy Code, effective as of the Effective Date, of the substantive consolidation of the Debtors for Toggle Plan purposes.

**2.3**    **Classification & Voting Controversies**.

a.    If a controversy arises regarding whether any Claim is properly classified under the Toggle Plan, then the Bankruptcy Court shall, upon proper motion and notice, determine such controversy at the Confirmation Hearing.

b.    If the Bankruptcy Court finds that the classification of any Claim is improper, then such Claim shall be reclassified and the Ballot previously cast by the Holder of such Claim shall be counted in, and the Claim shall receive the treatment prescribed in, the Class in which the Bankruptcy Court determines such Claim should have been classified, without the necessity of resoliciting any votes on the Toggle Plan.

## ARTICLE 3
## CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

**3.1**    **Treatment Generally**. As described in greater detail below, the treatment of a particular Class may be different depending on the whether the Reorganization Toggle, the Going Concern 363 Sale Toggle, or the Business Unit 363 Sale Toggle is implemented.

**3.2**    **Unclassified Claims**.

**3.2.1**    **Administrative Claims**. Administrative expenses are costs or expenses of administering the Debtors' Bankruptcy Cases which are allowed under Bankruptcy Code section 507(a)(2). All Persons requesting payment of Administrative Expense Claims, including but not limited to Claims under section 503(b)(9) of the Bankruptcy Code, **shall file a proof of Claim with the Court no later than the Administrative Claims Bar Date.** The Administrative Claims Bar Date shall not apply to Estate Professionals or Secured Creditors' Professionals, or to the extent a Holder is requesting payment of Professional Fee Claims, DIP Claims, or Priority Tax Claims, or to the extent that an Administrative Claim has already been Allowed or paid during the Chapter 11 Cases. Objections to such applications for payment (whether by Estate Professionals requesting payment of Estate Professional Fee Claims or Persons requesting payment of Administrative Expense Claims), if any, must be written, filed with the Court, and served on the applicable parties within thirty (30) days after such application or Claim is filed (the "**Administrative Claims Objection Deadline**").

On August 29, 2024, the Court entered an Order on Debtors' Motion to Amend Order on the Amended Motion to Allow and Pay 503(b)(9) Claims (Docket Nos. 476 & 584) (the "**503(b)(9) Order**"). Pursuant to the 503(b)(9) Order, Claims in the amount of approximately $5,170,846.56 have been deemed as Allowed Section 503(b)(9) Claims. Additional Section 503(b)(9) Claims have been allowed through motions and/or agreements with the Debtors. A full listing of the Allowed Section 503(b)(9) Claims prepared by the Debtors is included in the Toggle Disclosure Statement, totaling $5,258,329.47. To the extent additional Section 503(b)(9) Claims exist, the Holder of such claims shall file a Proof of Claim (or amended Proof of Claim) for allowance of their Section 503(b)(9) Claim by the Administrative Claims Bar Date.

59797.0007.18169739.1

The Debtors, Reorganized Debtors, Plan Proponents, or Plan Administrator, as applicable, may object to any Administrative Claim no later than the Administrative Claims Objection Deadline, subject to extensions by the Bankruptcy Court, agreement in writing of the parties, or on motion of a party in interest approved by the Bankruptcy Court. Unless the Debtors, Reorganized Debtors, Plan Proponents, or Plan Administrator (or other party with standing) object to a timely-Filed and properly served Administrative Claim, such Administrative Claim will be deemed Allowed in the amount requested. In the event that the Debtors, Reorganized Debtors, Plan Proponents, or Plan Administrator object to an Administrative Claim, the parties may confer to try to reach a settlement and, failing that, the Bankruptcy Court will determine whether such Administrative Claim should be Allowed and, if so, in what amount.

Except with respect to Professional Fee Claims, DIP Claims, and Priority Tax Claims and except to the extent that an Administrative Claim has already been paid during the Chapter 11 Cases, or a Holder of an Allowed Administrative Claim and the applicable Debtor, or after the Effective Date, such Holder and the Reorganized Debtors or the Plan Administrator, as applicable, agree to less favorable treatment, each Holder of an Allowed Administrative Claim shall be paid in full in Cash (i) if such Administrative Claim is Allowed as of the Effective Date, on or as soon as reasonably practicable after the Effective Date; or (ii) if such Administrative Claim is not Allowed as of the Effective Date, upon entry of an order of the Bankruptcy Court Allowing such Claim, or as soon as reasonably practicable thereafter.

**HOLDERS OF ADMINISTRATIVE CLAIMS THAT ARE REQUIRED TO, BUT DO NOT, FILE AND SERVE A REQUEST FOR PAYMENT OF SUCH ADMINISTRATIVE CLAIMS BY THE ADMINISTRATIVE CLAIMS BAR DATE SHALL BE FOREVER BARRED, ESTOPPED, AND ENJOINED FROM ASSERTING SUCH ADMINISTRATIVE CLAIMS AGAINST THE DEBTORS OR THEIR PROPERTY, AND SUCH ADMINISTRATIVE CLAIMS SHALL BE DEEMED DISCHARGED AS OF THE EFFECTIVE DATE.**

### 3.2.2   Professional Fee Claims.

a.   Final Fee Applications. All final requests for allowance and payment of Estate Professional Fee Claims must be Filed with the Bankruptcy Court no later than the first Business Day that is forty-five (45) days after the Effective Date unless otherwise ordered by the Bankruptcy Court.

b.   Secured Creditors' Professionals. Holders of Secured Claims (other than a Plan Proponent) must file, on or before the Confirmation Date, either (i) an amended Proof of Claim encompassing the Holder's Professional Fee Claim; or (ii) file a Notice of 506(b) Claim. The amount asserted by such Holder as a Secured Creditor's Professional Fee Claim shall be Allowed, subject to Section 3.2.2(d) (below) and shall be capitalized, added to, and treated in the same manner as the Holder's Secured Claim under the Toggle Plan.

c.   Plan Proponents. A Secured Creditor that is a Plan Proponent must file, on or before the Confirmation Date, an amended Proof of Claim encompassing the Holder's Professional Fee Claim, which Professional Fee Claim shall be automatically

59797.0007.18169739.1

deemed Allowed in full in accordance with their contractual arrangements and as a condition precedent to Confirmation, in part as consideration for developing and proposing this Toggle Plan. A Plan Proponent may thereafter deliver an invoice to the Debtors for any additional amounts incurred through and including the Effective Date, which amounts shall also be automatically deemed Allowed in full. The amount asserted by such Holder as a Secured Creditor's Professional Fee Claim shall be treated in the same manner and fashion as the Holder's Secured Claim. In the case of the RLOC Agent, the RLOC Agent's Professional Fee Claim shall be treated in accordance with Section 3.7 of the Toggle Plan.

       d.     <u>Objections to Professional Fee Claims</u>. Any objections to Professional Fee Claims asserted under Section 3.2.2(a) or 3.2.2(b) (above) that are not otherwise Allowed pursuant to the Toggle Plan or the Confirmation Order shall be Filed and served no later than twenty-one (21) days after the filing of (i) final requests for allowance and payment of Professional Fee Claims; (ii) an amended Proof of Claim to include the Professional Fee Claim; or (iii) a Notice of 506(b) Claim.

       e.     <u>Professional Fee Claims Estimate</u>. Estate Professionals shall estimate in good faith their unpaid Estate Professional Fee Claims and other unpaid fees and expenses incurred in rendering services compensable by the Debtors' Estates before and as of the Effective Date and shall deliver such reasonable, good faith estimate to the Debtors and the Plan Proponents no later than five (5) Business Days prior to the Effective Date; *provided*, that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Estate Professional's final request for payment. If an Estate Professional does not provide an estimate, the Plan Proponents, in consultation with the Debtors, shall estimate in good faith the unpaid and unbilled fees and expenses of such Estate Professional.

       f.     <u>Estate Professional Fee Escrow</u>. As soon as reasonably practicable after the Confirmation Date and no later than the Effective Date, under the Reorganization Toggle, the Reorganized Debtors shall establish and fund the Estate Professional Fee Escrow with Cash based on their evaluation of the Estate Professional Fee Claims estimates from the Effective Date Reserve. In connection with the Going Concern 363 Sale Toggle or Business Unit 363 Sale Toggle, the Estate Professional Fee Escrow shall be established from proceeds of the applicable sale process. No Liens, Claims, or Interests shall encumber the Estate Professional Fee Escrow in any way. The Estate Professional Fee Escrow (including funds held in the Estate Professional Fee Escrow) (i) shall not be and shall not be deemed property of the Debtors or the Reorganized Debtors and (ii) shall be held in trust for the Estate Professionals and for no other Person or Entity until all Allowed Estate Professional Fee Claims have been irrevocably paid in full; *provided*, that funds remaining in the Estate Professional Fee Escrow after all Allowed Estate Professional Fee Claims have been irrevocably paid in full shall revert to the Reorganized Debtors or the Plan Administrator, as applicable. Allowed Estate Professional Fee Claims shall be paid in Cash to such Estate Professionals from funds held in the Estate Professional Fee Escrow when such Claims are Allowed by an order of the Bankruptcy Court; *provided* that the Debtors' obligations with respect to Estate Professional Fee Claims shall not be limited nor deemed to be limited in any way to the balance of funds held in the Estate Professional Fee Escrow.

59797.0007.18169739.1

If the amount of funds in the Estate Professional Fee Escrow is insufficient to fund payment in full of all Allowed Estate Professional Fee Claims and any other Allowed amounts owed to Estate Professionals, the deficiency shall be promptly funded to the Estate Professional Fee Escrow by the Reorganized Debtors or the Plan Administrator, as applicable, without any further notice to, action, order, or approval of the Bankruptcy Court or by any other Entity.

g.    Post Effective Date Fees and Expenses. Except as otherwise specifically provided in the Toggle Plan, on and after the Effective Date, the Debtors, Reorganized Debtors, or Plan Administrator, as applicable, may, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation and/or consummation of the Toggle Plan incurred by the Debtors, Reorganized Debtors, Plan Administrator, or Plan Administration Board, as applicable.

3.2.3    **Priority Tax Claims**. Except to the extent a Holder of an Allowed Priority Tax Claim and the Debtor against which such Claim is asserted agree to different treatment, on the Effective Date or as soon as reasonably practicable thereafter, each Holder of an Allowed Priority Tax Claim shall receive, on account of such Allowed Priority Tax Claim, either Cash in an amount equal to the Allowed amount of such Claim or such other treatment as may satisfy section 1129(a)(9) of the Bankruptcy Code.

| **Priority Tax Claimant** | **Allowed Priority Amount** |
|---|---|
| Cassia County Tax Collector | $59,591.88 |
| Department of Treasury | $1,752.63 |
| Idaho State Tax Commission | $5,612.20 |

3.2.4    **DIP Claims**. The DIP Claims will be paid in full on the Effective Date from the Effective Date Reserve under the Reorganization Toggle, proceeds of the Going Concern 363 Sale under the Going Concern 363 Sale Toggle, or from proceeds of Business Unit 363 Sales under the Business Unit 363 Sale Toggle.

3.3    **Class 1: Other Priority Claims**.

a.    Classification. Class 1 consists of all Other Priority Claims against each Debtor. There are no known Other Priority Claims.

b.    Treatment Generally. Holders of Allowed Other Priority Claim will receive the same treatment under the Going Concern 363 Sale Toggle and the Business Unit 363 Sale Toggle, but different treatment under the Reorganization Toggle.

c.    Treatment Under Reorganization Toggle. Except to the extent that a Holder of an Allowed Other Priority Claim agrees to a less favorable treatment with the applicable Debtor prior to the Effective Date, or after the Effective Date, the applicable

59797.0007.18169739.1

Reorganized Debtor, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Allowed Other Priority Claim, each such Holder shall receive payment in full, in Cash, of the unpaid portion of its Allowed Other Priority Claim from the Effective Date Reserve on the Effective Date or as soon thereafter as reasonably practicable (or, if payment is not then due, shall be paid in accordance with its terms in the ordinary course).

    d. <u>Treatment Under Going Concern 363 Sale Toggle</u>. Unless otherwise agreed, each Holder of Allowed Other Priority Claims shall receive its Pro Rata share of the GUC Backstop until paid in full, with balance of the GUC Backstop being distributed to Holders of Allowed Class 9 General Unsecured Claims. Based on the known amount of Allowed Other Priority Claims, the GUC Backstop will enable each Holder to receive payment in full, in Cash, of the unpaid portion of its Allowed Other Priority Claim on the Effective Date or as soon thereafter as reasonably practicable for payment of Allowed Other Priority Claims.

    e. <u>Treatment Under Business Unit 363 Sale Toggle</u>. Same treatment as under the Going Concern 363 Sale Toggle.

    f. <u>Voting</u>. Class 1 is Unimpaired under the Toggle Plan. Class 1 is conclusively presumed to have accepted the Toggle Plan and is not entitled to vote to accept or reject the Toggle Plan.

### 3.4 <u>Class 2: Corn Silage Group Secured Claims</u>.

    a. <u>Classification</u>. Class 2 is classified as the Corn Silage Group Secured Claims which consists of the Corn Silage Group Secured Creditors: Ed Chonjnacky, Michael Chonjnacky, Dusty Brow Farms, Inc., Grant 4-D Farms, LLC, Grant & Hagan, Inc., Douglas J. Grant, Hollifield Ranches, Inc., Standing 16 Ranch Land Company, LLC, Star Falls Farms, LLC, Steel Ranch, LLC, Bo Stevenson dba B&A Farms, Alexander K. Reed, Triple C Farms, LLC, Clint D. Thompson, and Jean L. Thompson.

| **Claimant** | **Allowed Claim Amount** |
|---|---|
| Ed Chonjnacky | $312,330.00 |
| Michael Chonjnacky | $393,753.60 |
| Dusty Brow Farms, Inc. | $245,000.00 |
| Grant 4-D Farms, LLC | $396,601.71 |
| Grant & Hagan, Inc. | $604,551.60 |
| Douglas J. Grant | $222,617.06 |
| Hollifield Ranches, Inc. | $2,044,794.31 |
| Standing 16 Ranch Land Company, LLC | $526,454.40 |
| Star Falls Farms, LLC | $404,878.00 |

59797.0007.18169739.1

| Steel Ranch, LLC | $160,000.00 |
|---|---|
| Bo Stevenson dba B&A Farms | $195,478.80 |
| Alexander K. Reed | $130,674.66 |
| Triple C Farms, LLC | $1,011,955.80 |
| Clint D. Thompson | $49,000.00 |
| Jean L. Thompson | $38,000.00 |

b.    Treatment Generally. Holders of the Corn Silage Group Secured Claims will receive different treatment under the Reorganization Toggle, the Going Concern 363 Sale Toggle, and the Business Unit 363 Sale Toggle.

c.    Treatment Under Reorganization Toggle. The Corn Silage Group Secured Claims will have been paid in full as of the Effective Date pursuant to monthly adequate protection payments, except as to any pre- and post-petition interest and attorneys' fees associated with their Claims. Notwithstanding anything to the contrary herein, the Corn Silage Group Secured Claim Holders shall provide to the Plan Proponents no later than five (5) Business Days before the Effective Date a statement of interest and attorneys' fees. Such interest and attorneys' fees shall be paid pursuant to the Budget, with quarterly interest payments at 5% per annum through March 2027.

d.    Treatment Under the Going Concern 363 Sale Toggle. Unless otherwise agreed or executory contract/unexpired lease, if any, assumed, a Holder will receive the proceeds of sales of its Collateral up to the amount of its Allowed Secured Claim in accordance with its respective lawful and contractual Lien and payment priorities, including any priority of payment set forth in the Toggle Plan. The balance of its Allowed Claim, if any, will be treated as a Class 9 General Unsecured Claim.

e.    Treatment Under the Business Unit 363 Sale Toggle. Unless otherwise agreed, a Holder will receive the proceeds of sales of its Collateral up to the amount of its Allowed Secured Claim in accordance with its respective lawful and contractual Lien and payment priorities. The balance of its Allowed Claim, if any, will be treated as a Class 9 General Unsecured Claim.

f.    Voting. Class 2 is Impaired under the Toggle Plan. Each Holder of Class 2 Claims is entitled to vote to accept or reject the Toggle Plan.

**3.5    Class 3: Other Secured Ag Lien Claims**.

Classification. Class 3 consists of the subclasses of Other Secured Ag Lien Claims that are not considered to be part of the Corn Silage Group.

### 3.5.1    Class 3A: A. Scott Jackson Trucking Secured Claim.

a.    Classification. Class 3A consists of the A. Scott Jackson Trucking Secured Claim.

CHAPTER 11 PLAN - PAGE 39

59797.0007.18169739.1

b.  <u>Treatment Generally</u>. A. Scott Jackson Trucking filed a Proof of Claim in the amount of $184,656.30. A. Scott Jackson Trucking shall have an Allowed Class 3A Secured Claim in the amount of $184,656.30. Holders of an Allowed Class 3A Secured Claim will receive different treatment under the Reorganization Toggle, the Going Concern 363 Sale Toggle, and the Business Unit 363 Sale Toggle.

c.  <u>Treatment Under Reorganization Toggle</u>. Except to the extent that A. Scott Jackson Trucking agrees to a less favorable treatment with the Debtors prior to the Effective Date, or after the Effective Date, the Reorganized Debtors, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Allowed Class 3A Secured Claim, A. Scott Jackson Trucking shall be paid pursuant to the Budget, with quarterly interest payments at 5% per annum through March 2027.

d.  <u>Treatment Under Going Concern 363 Sale Toggle</u>. Unless otherwise agreed or executory contract/unexpired lease, if any, is assumed, Holder will receive the proceeds of sales of its Collateral up to the amount of its Allowed Secured Claim in accordance with its respective lawful and contractual Lien and payment priorities. The balance of its Allowed Claim, if any, will be treated as a Class 9 General Unsecured Claim.

e.  <u>Treatment Under Business Unit 363 Sale Toggle</u>. Unless otherwise agreed, Holder will receive the proceeds of sales of its Collateral up to the amount of its Allowed Secured Claim in accordance with its respective lawful and contractual Lien and payment priorities The balance of its Allowed Claim, if any, will be treated as a Class 9 General Unsecured Claim.

f.  <u>Voting</u>. Class 3A is Impaired under the Toggle Plan. Class 3A is entitled to vote under the Toggle Plan.

### 3.5.2  <u>Class 3B: B&H Farming Secured Claim</u>.

a.  <u>Classification</u>. Class 3B consists of the B&H Farming Secured Claim.

b.  <u>Treatment</u>. B&H Farming filed a Proof of Claim in the amount of $474,674.79 and shall have an Allowed Class 3B Secured Claim in the amount of $474,674.79. B&H Farming has received and will receive adequate protection payments in the amount of $474,674.79 prior to the Effective Date. As such, the Allowed Class 3B Secured Claim will be paid in full as of the Effective Date and B&H Farming shall receive no further Distribution under the Toggle Plan. Any pre-petition Liens claimed by B&H Farming in property of the Debtors shall be considered released and have no further effect.

c.  <u>Voting</u>. Class 3B is Unimpaired under the Toggle Plan. Class 3B is conclusively presumed to have accepted the Toggle Plan and is not entitled to vote to accept or reject the Toggle Plan.

59797.0007.18169739.1

### 3.5.3 Class 3C: H&M Custom, LLC Secured Claim.

a.   Classification. Class 3C consists of the H&M Custom, LLC ("**H&M**") Secured Claim.

b.   Treatment. H&M filed a Proof of Claim in the amount of $4,769,170.78 and H&M shall have an Allowed Class 3C Claim in the amount of $4,769,170.78. H&M received a Court-approved $2,500,000.00 adequate protection payment during the pendency of the Chapter 11 Cases. H&M has received and will receive by the Effective Date additional adequate protection payments totaling $2,269,171.00. As such, the Allowed Class 3C Secured Claim will be paid in full as of the Effective Date and H&M shall receive no further Distribution under the Toggle Plan. Any pre-petition Liens claimed by H&M in property of the Debtors shall be considered released and have no further effect.

c.   Voting. Class 3C is Unimpaired under the Toggle Plan. Class 3C is conclusively presumed to have accepted the Toggle Plan and is not entitled to vote to accept or reject the Toggle Plan.

### 3.5.4 Class 3D: Healthy Earth Enterprises, LLC Secured Claim.

a.   Classification. Class 3D consists of the Healthy Earth Enterprises, LLC ("**Healthy Earth**") Secured Claim.

b.   Treatment. The Scheduled amount of the Healthy Earth Secured Claim is $60,000.00 and Healthy Earth did not file a Proof of Claim. Healthy Earth shall have an Allowed Class 3D Secured Claim in the amount of $60,000.00. Healthy Earth received a Court-approved $60,000.00 adequate protection payment during the pendency of the Chapter 11 Cases. No further amount will be owing by the Debtors to Healthy Earth as of the Effective Date and therefore Healthy Earth will receive no Distribution under the Toggle Plan. Any pre-petition Liens claimed by Healthy Earth Enterprises in property of the Debtors shall be considered released and have no further effect.

c.   Voting. Class 3D is Unimpaired under the Toggle Plan. Class 3D is conclusively presumed to have accepted the Toggle Plan and is not entitled to vote to accept or reject the Toggle Plan.

### 3.5.5 Class 3E: Kraus Farms, LLC Secured Claim.

a.   Classification. Class 3E consists of the Kraus Farms, LLC ("**Kraus Farms**") Secured Clam.

b.   Treatment Generally. The Scheduled amount of the Kraus Farms Secured Claim is $480,313.10. Kraus Farms filed a Proof of Claim in the amount of $499,473.53 and shall have an Allowed Class 3E Secured Claim in the amount of $499,473.53. Holders of an Allowed Class 3E Secured Claim will receive different treatment under the Reorganization Toggle, the Going Concern 363 Sale Toggle, and the Business Unit 363 Sale Toggle.

59797.0007.18169739.1

c.      <u>Treatment Under Reorganization Toggle</u>. Except to the extent that Kraus Farms agrees to a less favorable treatment with the Debtors prior to the Effective Date, or after the Effective Date, the Reorganized Debtors, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Allowed Class 3E Secured Claim, Kraus Farms shall be paid pursuant to the Budget, with quarterly interest payments at 5% per annum through March 2027.

d.      <u>Treatment Under Going Concern 363 Sale Toggle</u>. Unless otherwise agreed or executory contract/unexpired lease, if any, is assumed, Holder will receive the proceeds of sales of its Collateral up to the amount of its Allowed Secured Claim in accordance with its respective lawful and contractual Lien and payment priorities. The balance of its Allowed Claim, if any, will be treated as a Class 9 General Unsecured Claim.

e.      <u>Treatment Under Business Unit 363 Sale Toggle</u>. Unless otherwise agreed, Holder will receive the proceeds of sales of its Collateral up to the amount of its Allowed Secured Claim in accordance with its respective lawful and contractual Lien and payment priorities. The balance of its Allowed Claim, if any, will be treated as a Class 9 General Unsecured Claim.

f.      <u>Voting</u>. Class 3E is Impaired under the Toggle Plan. The Class 3E Claim is entitled to vote under the Toggle Plan.

### 3.5.6   Class 3F: Milner Hay Company, LLC Secured Claim.

a.      <u>Classification</u>. Class 3F consists of the Milner Hay Company, LLC ("**Milner**") Secured Claim.

b.      <u>Treatment</u>. The Scheduled amount of the Milner Secured Claim is $64,885.00. Milner did not file a Proof of Claim. Milner shall have an Allowed Class 3F Claim in the amount of $64,885.00. Milner has received and will receive post-petition adequate protection payments totaling $64,885.00 prior to the Effective Date. No further amount will be owed by the Debtors to Milner as of the Effective Date and therefore Milner will receive no Distribution under the Toggle Plan. Any pre-petition Liens claimed by Milner in any property of the Debtors shall be considered released and have no further effect.

c.      <u>Voting</u>. Class 3F is Unimpaired under the Toggle Plan. Class 3F is conclusively presumed to have accepted the Toggle Plan and is not entitled to vote to accept or reject the Toggle Plan.

### 3.5.7   Class 3G: Moss Grain Partnership Secured Claim.

a.      <u>Classification</u>. Class 3G consists of the Moss Grain Partnership ("**Moss Grain**") Secured Claim.

b.      <u>Treatment</u>. Moss Grain filed a Proof of Claim in the amount of $101,000.00 and shall have an Allowed Class 3G Secured Claim in the amount of $101,000.00. Moss Grain has received and will receive post-petition adequate protection

payments totaling $101,000.00 prior to the Effective Date. No further amount will be owed by the Debtors to Moss Grain as of the Effective Date and therefore Moss Grain will receive no Distribution under the Toggle Plan. Any pre-petition Liens claimed by Moss Grain in any property of the Debtors shall be considered released and have no further effect.

        c.    <u>Voting</u>. Class 3G is Unimpaired under the Toggle Plan. Class 3G is conclusively presumed to have accepted the Toggle Plan and is not entitled to vote to accept or reject the Toggle Plan.

### 3.5.8    Class 3H: NorthWest Seed, Inc Secured Claim.

        a.    <u>Classification</u>. Class 3H consists of the NorthWest Seed, Inc. ("**<u>NorthWest</u>**") Secured Claim.

        b.    <u>Treatment</u>. The Debtors Scheduled NorthWest as an unknown Secured Claim based on financing statements filed by NorthWest claiming a security interest in the Debtors' 2024 hay. The Debtors have concluded there is no amount owing to NorthWest as of the Petition Date and NorthWest did not file a Proof of Claim. As such, NorthWest will not receive a Distribution under the Toggle Plan. Any pre-petition Liens claimed or asserted by NorthWest in any property of the Debtors shall be considered released and have no further effect.

        c.    <u>Voting</u>. Class 3H is Unimpaired under the Toggle Plan. Class 3H is conclusively presumed to have accepted the Toggle Plan and is not entitled to vote to accept or reject the Toggle Plan.

### 3.5.9    Class 3I: Performance Plus-Idaho, LLC Secured Claim.

        a.    <u>Classification</u>. Class 3I consists of the Performance Plus-Idaho, LLC ("**<u>Performance Plus</u>**") Secured Claim.

        b.    <u>Treatment Generally</u>. The Debtors Scheduled Performance Plus as a Secured Claim in the amount of $29,931.44. Performance Plus did not file a Proof of Claim and shall have an Allowed Class 3I Secured Claim in the amount of $29,931.44. Holders of an Allowed Class 3E Secured Claim will receive different treatment under the Reorganization Toggle, the Going Concern 363 Sale Toggle, and the Business Unit 363 Sale Toggle.

        c.    <u>Treatment under Reorganization Toggle</u>. Except to the extent that Performance Plus-Idaho, LLC agrees to a less favorable treatment with the Debtors prior to the Effective Date, or after the Effective Date, the Reorganized Debtors, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Allowed Class 3I Secured Claim, Performance Plus shall be paid pursuant to the Budget, with quarterly interest payments at 5% per annum through March 2027.

        d.    <u>Treatment Under Going Concern 363 Sale Toggle</u>. Unless otherwise agreed or executory contract/unexpired lease, if any, is assumed, Holder will receive the proceeds of sales of its Collateral up to the amount of its Allowed Secured Claim

59797.0007.18169739.1

in accordance with its respective lawful and contractual Lien and payment priorities. The balance of its Allowed Claim, if any, will be treated as a Class 9 General Unsecured Claim.

        e.    <u>Treatment Under Business Unit 363 Sale Toggle</u>. Unless otherwise agreed, Holder will receive the proceeds of sales of its Collateral up to the amount of its Allowed Secured Claim in accordance with its respective lawful and contractual Lien and payment priorities. The balance of its Allowed Claim, if any, will be treated as a Class 9 General Unsecured Claim.

        f.    <u>Voting</u>. Class 3I is Impaired under the Toggle Plan. Class 3I Claims are entitled to vote under the Toggle Plan.

### 3.5.10  **Class 3J: Tyche Ag, LLC Secured Claim**.

        a.    <u>Classification</u>. Class 3J consists of the Tyche Ag, LLC ("**Tyche**") Secured Claim.

        b.    <u>Treatment</u>. The Debtors Scheduled Tyche as an unknown Secured Claim based on financing statements filed by Tyche claiming a security interest in the Debtors' 2023 hay. The Debtors have concluded there is no amount owing to Tyche as of the Petition Date and Tyche did not file a Proof of Claim. As such, Tyche will not receive a Distribution under the Toggle Plan. Any pre-petition Liens claimed or asserted by Tyche in any property of the Debtors shall be considered released and have no further effect.

        c.    <u>Voting</u>. Class 3J is Unimpaired under the Toggle Plan. Class 3J is conclusively presumed to have accepted the Toggle Plan and is not entitled to vote to accept or reject the Toggle Plan.

### 3.5.11  **Class 3K: Wada Farms Partnership Secured Claim**.

        a.    <u>Classification</u>. Class 3K consists of the Wada Farms Partnership ("**Wada Farms**") Secured Claim.

        b.    <u>Treatment</u>. The Debtors Scheduled Wada Farms as a Secured Claim in the amount of $374,432.50. Wada Farms did not file a Proof of Claim. It shall have an Allowed Class 3K Secured Claim in the amount of $374,432.50. Wada Farms has received and will receive post-petition adequate protection payments totaling $374,432.50 prior to the Effective Date. No further amount will be owed by the Debtors to Wada Farms as of the Effective Date and therefore Wada Farms will receive no Distribution under the Toggle Plan. Any pre-petition Liens claimed or asserted by Wada Farms in any property of the Debtors shall be considered released and have no further effect.

        c.    <u>Voting</u>. Class 3K is Unimpaired under the Toggle Plan. Class 3K is conclusively presumed to have accepted the Toggle Plan and is not entitled to vote to accept or reject the Toggle Plan.

59797.0007.18169739.1

### 3.5.12  Class 3L: Youree Land & Livestock Secured Claim.

a.  <u>Classification</u>. Class 3L consists of the Youree Land & Livestock ("**Youree**") Secured Claim.

b.  <u>Treatment Generally</u>. Youree filed a Proof of Claim in the amount of $119,042.08 and shall have an Allowed Class 3L Secured Claim of $119,042.08. Youree has received and will receive post-petition adequate protection payments in the amount of $112,157.00 prior to the Effective Date. Holders of an Allowed Class 3L Secured Claim will receive different treatment under the Reorganization Toggle, the Going Concern 363 Sale Toggle, and the Business Unit 363 Sale Toggle.

c.  <u>Treatment Under Reorganization Toggle</u>. After payment of the adequate protection payments, the Debtors will owe Youree $6,885.06 on the Effective Date, which amount shall be paid pursuant to the Budget, with quarterly interest payments at 5% per annum through March 2027.

d.  <u>Treatment Under Going Concern 363 Sale Toggle</u>. Unless otherwise agreed or executory contract/unexpired lease, if any, is assumed, Holder will receive the proceeds of sales of its Collateral up to the amount of its Allowed Secured Claim in accordance with its respective lawful and contractual Lien and payment priorities. The balance of its Allowed Claim, if any, will be treated as a Class 9 General Unsecured Claim.

e.  <u>Treatment Under Business Unit 363 Sale Toggle</u>. Unless otherwise agreed, Holder will receive the proceeds of sales of its Collateral up to the amount of its Allowed Secured Claim in accordance with its respective lawful and contractual Lien and payment priorities. The balance of its Allowed Claim, if any, will be treated as a Class 9 General Unsecured Claim.

f.  <u>Voting</u>. Class 3L is Impaired under the Toggle Plan. The Class 3L Secured Claim is entitled to vote under the Toggle Plan.

### 3.5.13  Class 3M: Eagle Creek Northwest, LLC Claim.

a.  <u>Classification</u>. Class 3M consists of the Eagle Creek Northwest, LLC ("**Eagle Creek**") Secured Claim.

b.  <u>Treatment</u>. The Debtors Scheduled Eagle Creek as an unknown Secured Claim based on financing statements filed by Eagle Creek claiming a security interest in the Debtors' wheat, hay, potatoes, and sugar beets. Any pre-petition Liens claimed or asserted by Eagle Creek in any property of the Debtors shall be considered released and have no further effect.

c.  <u>Voting</u>. Class 3M is Unimpaired under the Toggle Plan. Class 3M is conclusively presumed to have accepted the Toggle Plan and is not entitled to vote to accept or reject the Toggle Plan.

59797.0007.18169739.1

### 3.5.14 **Class 3N: Standlee Ag Resources and Premium Products Secured Claim**.

a.      Classification. Class 3N consists of the Standlee Ag Resources and Premium Products (collectively referred to herein as "**Standlee**") Secured Claim.

b.      Treatment Generally. Standlee filed a Proof of Claim in the amount of $214,915.55 and shall have an Allowed Class 3N Secured Claim in the amount of $214,915.55. Standlee has received and will receive post-petition adequate protection payments totaling $208,490.00 prior to the Effective Date. Holders of an Allowed Class 3N Secured Claim will receive different treatment under the Reorganization Toggle, the Going Concern 363 Sale Toggle, and the Business Unit 363 Sale Toggle.

c.      Treatment Under Reorganization Toggle. After payment of the adequate protection payments, the Debtors will owe Standlee $6,425.55 on the Effective Date, which shall be paid pursuant to the Budget, with quarterly interest payments at 5% per annum through March 2027.

d.      Treatment Under Going Concern 363 Sale Toggle. Unless otherwise agreed or executory contract/unexpired lease, if any, is assumed, Holder will receive the proceeds of sales of its Collateral up to the amount of its Allowed Secured Claim in accordance with its respective lawful and contractual Lien and payment priorities. The balance of its Allowed Claim, if any, will be treated as a Class 9 General Unsecured Claim.

e.      Treatment Under Business 363 Unit Sale Toggle. Unless otherwise agreed, Holder will receive the proceeds of sales of its Collateral up to the amount of its Allowed Secured Claim in accordance with its respective lawful and contractual Lien and payment priorities. The balance of its Allowed Claim, if any, will be treated as a Class 9 General Unsecured Claim.

f.      Voting. Class 3N is Impaired under the Toggle Plan. The Class 3N Claim is entitled to vote under the Toggle Plan.

### 3.6 **Class 4: MetLife Secured Claims**.

a.      Classification. Class 4 consists of MetLife's Secured Claims (collectively, the "**MetLife Secured Claims**").

MetLife owns and holds certain commercial real estate loans (collectively, the "**Pre-Petition MetLife Loans**" and, together with all related mortgages and other existing or future documents evidencing, securing, or executed in connection with the Pre-Petition MetLife Loans, in each case, as Amended, referred to herein as the "**Pre-Petition MetLife Loan Documents**") made by MetLife to certain Debtors. The Pre-Petition MetLife Loans are secured by Liens in and security interests on such Debtors' real property and certain of such Debtors' personal property, including: (x) crops grown after a foreclosure; (y) all wells, underground pipelines, sprinklers, and similar irrigation equipment located at the real property, as well as all lines, valve openers, pipes, and similar items pertaining to such irrigation equipment; and (z) all milking equipment located at the real property (the "**Pre-**

59797.0007.18169739.1

Petition MetLife Real Estate Collateral"). The Pre-Petition MetLife Loans are further secured, subject to the First Intercreditor Agreement, by the Milk Receivables (the "**MetLife Milk Priority Claim**," and collectively with the Pre-Petition MetLife Real Estate Collateral, the "**Pre-Petition MetLife Collateral**" and all Liens and security interests on and in the Pre-Petition MetLife Collateral, the "**Pre-Petition MetLife Liens**"). As of the Petition Date, the Debtors were indebted to MetLife, in the aggregate amount of approximately $180,473,929.72 under the Pre-Petition MetLife Loan Documents.

RLOC Agent and MetLife are parties to (i) that certain Intercreditor Agreement, dated as of September 18, 2018 (as Amended, the "**First Intercreditor Agreement**") and (ii) that certain Subordination and Intercreditor Agreement, dated as of October 20, 2022 (as Amended, the "**Second Intercreditor Agreement**" and, together with the First Intercreditor Agreement, the "**MetLife Intercreditor Agreements**"). Pursuant to the First Intercreditor Agreement, RLOC Agent agreed to subordinate any interests it may have or thereafter acquire in the Pre-Petition MetLife Collateral to those of MetLife, and MetLife agreed to subordinate any interests it may have or thereafter acquire in the Pre-Petition RLOC Collateral (other than any such property that may also constitute Pre-Petition MetLife Collateral) to those of the RLOC Agent.

Additionally, the First Intercreditor Agreement recognizes that the RLOC Agent and MetLife have separately entered into Milk Check Assignment Agreements (the "**Milk Agreements**") with Debtor Millenkamp Cattle and a milk purchaser, Glanbia Foods, Inc. ("**Milk Purchaser**"). The Milk Agreements direct the Milk Purchaser to make certain payments directly to the RLOC Agent (in certain situations) and MetLife (on a monthly basis), rather than to Millenkamp Cattle. Pursuant to the terms of the First Intercreditor Agreement, MetLife's priority interest in any Milk Receivables is equal to the aggregate amount of, in any month, the amount of the monthly installment payment of principal and accrued interest then due and payable by the applicable Debtors to MetLife, with such amount being capped at one month's principal and interest payment, unless MetLife has provided written notice to the RLOC Agent that amounts exceeding one month's principal and interest payment are due, owing, and unpaid.

On September 18, 2018, the RLOC Agent, Millenkamp Cattle, and the Milk Purchaser also entered into a Collateral Assignment of Milk Contracts, pursuant to which Millenkamp Cattle assigned to the RLOC Agent all contracts and proceeds related to certain purchase agreements between Millenkamp Cattle and the Milk Purchaser, to secure the obligations owed to the Pre-Petition RLOC Secured Parties. Subject to the foregoing, during the Debtors and Non-Debtor Borrowers' default under the Pre-Petition RLOC Documents, the RLOC Agent may collect the Milk Receivables. Other than the foregoing subordination, MetLife and the RLOC Agent expressly agreed that the First Intercreditor Agreement does not materially impair or adversely affect any of the Pre-Petition RLOC Secured Parties' rights, privileges, powers, or remedies with respect to the Pre-Petition RLOC Obligations or the Pre-Petition RLOC Collateral. Likewise, the RLOC Agent and MetLife expressly agreed that the First Intercreditor Agreement does not materially impair or adversely affect any of MetLife's rights, privileges, powers, or remedies with respect to the Pre-Petition MetLife Loans or the Pre-Petition MetLife Collateral. MetLife does not have any Lien or security interest in any of the Debtors' Livestock, including, but not limited to, dairy cattle.

59797.0007.18169739.1

| Description | Principal Amount | Claim Amount | Security |
|---|---|---|---|
| **Promissory Note A** dated September 26, 2018, and First Amendment dated April 21, 2021 | $106,000,000.00 | $86,855,135.96 | Mortgage, Assignment of Rents, Security Agreement, Fixture Filing dated September 26, 2018 |
| **Promissory Note B** dated September 26, 2018, and First Amendment dated April 15, 2020, Second Amendment dated August 15, 2020 and Third Amendment dated April 21, 2021 | $59,400,000.00 | $51,693,035.58 | Mortgage, Assignment of Rents, Security Agreement, Fixture Filing dated September 26, 2018 |
| **Promissory Note C** dated April 15, 2020, and First Amendment dated April 15, 2020, Second Amendment dated August 15, 2020 and Third Amendment dated April 21, 2021 | $13,000,000.00 | $11,530,349.58 | Mortgage, Assignment of Rents, Security Agreement, Fixture Filing dated September 26, 2018 |
| **Promissory Note D** dated April 21, 2021 | $17,954,226.00 | $16,210,086.43 | Mortgage, Assignment of Rents, Security Agreement, Fixture Filing dated September 26, 2018 |
| **Promissory Note E** dated April 21, 2021 | $15,978,409.00 | $10,082,419.25 | Mortgage, Assignment of Rents, Security Agreement, Fixture Filing dated September 26, 2018 |
| **9858 Promissory Note** dated March 12, 2019 | $5,508,350.00 | $5,005,171.86 | Mortgage, Assignment of Rents, Security Agreement, |

59797.0007.18169739.1

| | | | Fixture Filing dated March 12, 2019 |
| | | | "Canyonlands" and "McGregor" property |

        b.      <u>Treatment Generally</u>. MetLife filed Proofs of Claim in the aggregate amount of $181,376,198.66. The Debtors' books and records reflect a total amount owing to MetLife of $184,177,739.10. The Debtors are conducting a reconciliation of their books and records and MetLife's Proofs of Claim. As of the filing of the Toggle Plan, MetLife shall have an Allowed Secured Claim in the amount of $184,177,739.10. Upon completion of the Debtors' reconciliation, the Toggle Plan will be amended as necessary based on such reconciliation. The Allowed Class 4 MetLife Secured Claims may be amended to include additional accrued and unpaid post-petition default interest and professional fees, and upon amendment, shall be Allowed. Holders of an Allowed Class 4 MetLife Secured Claims will receive different treatment under the Reorganization Toggle, the Going Concern 363 Sale Toggle, and the Business Unit 363 Sale Toggle.

        c.      <u>Treatment Under Reorganization Toggle</u>. The Allowed Class 4 MetLife Secured Claims shall receive the following treatment:

        1)      On the Effective Date, MetLife will receive the net sale proceeds of Canyonlands and McGregor as necessary to pay the allocable portion of MetLife Secured Claim arising from the 9858 Promissory Note dated March 12, 2019 referred to above.

        2)      On the Effective Date, the Reorganized Debtors shall use the Effective Date Reserve to pay down Three Million Dollars ($3,000,000) of the Allowed Class 4 MetLife Secured Claims to be applied by MetLife in its sole and absolute discretion.

        3)      The balance of the unpaid Allowed Class 4 MetLife Secured Claims shall be reclassified and capitalized as senior term loan obligations on the same terms existing prior to the Petition Date, except that (a) MetLife shall receive interest-only payments at the non-default rate for the first thirty (30) months following the Effective Date and (b) the non-default interest rate on the Pre-Petition MetLife Loans shall be increased to 7% per annum (the "**Exit MetLife Term Notes**").

        4)      At month thirty-one (31) following the Effective Date, the Exit MetLife Term Notes shall begin receiving monthly principal and interest payments pursuant to the Budget and the terms of the Exit MetLife Term Notes.

        5)      The Allowed Class 4 MetLife Secured Claims shall continue to be secured to the same extent, validity and priority in the Collateral subject to the Pre-Petition MetLife Liens (except with respect to Canyonlands and McGregor).

59797.0007.18169739.1

d.    Treatment Under Going Concern 363 Sale Toggle. If the Plan Administrator closes on a Going Concern 363 Sale pursuant to a Going Concern 363 Sale Order in accordance with the Approved Going Concern 363 Sale Qualified Bid, if no competing bids were submitted, or the Successful Going Concern 363 Sale Auction Bid, as the case may be, unless otherwise agreed with the Holder of the Allowed Class 4 MetLife Secured Claims, the proceeds of such sale shall be used to satisfy the Allowed Class 4 MetLife Secured Claims in full.

e.    Treatment Under the Business Unit 363 Sale Toggle. If the Plan Administrator does not receive at least one Approved Going Concern 363 Sale Qualified Bid or the Bankruptcy Court does not enter the Going Concern 363 Sale Order, the Plan Administrator will proceed to sell the Debtors' Assets in accordance with the Business Unit 363 Sale Toggle. Unless otherwise agreed with the Holder of the Allowed Class 4 MetLife Secured Claims, the proceeds of such sale(s) shall be Distributed to such Holder of the Allowed Class 4 MetLife Secured Claims in accordance with their respective lawful and contractual Lien and payment priorities, subject to the GUC Backstop.

f.    Voting. Class 4 is Impaired under the Toggle Plan. Class 4 is entitled to vote under the Toggle Plan.

### 3.7    **Class 5: RLOC Secured Claims**.

a.    Classification. Class 5 consists of the RLOC Agent's Secured Claims (collectively, the "**RLOC Secured Claims**").

Under that certain Third Amended and Restated Loan and Security Agreement, dated as of April 21, 2021, as Amended, the "**Pre-Petition RLOC Credit Agreement**" and collectively with all security, pledge, intercreditor, guaranty agreements, and other documentation executed in respect thereof, the "**Pre-Petition RLOC Documents**", by and among the Debtors[1], collectively as borrower, the lenders from time to time party thereto (in such capacity, collectively, the "**Pre-Petition RLOC Lenders**"), and the RLOC Agent, as sole lead arranger, agent, and swing-line lender (in its capacity as agent for the benefit of the Pre-Petition RLOC Lenders and each Issuer (as defined in the Pre-Petition RLOC Credit Agreement), and collectively with the Pre-Petition RLOC Lenders and the Issuers, the "**Pre-Petition RLOC Secured Parties**"), the Debtors were provided with an asset-based revolving line of credit facility, consisting of (a) revolving commitments in an aggregate amount of up to $91,000,00.00; (b) a swing-line credit facility for the RLOC Agent to make Swing Line Advances (as defined in the Pre-Petition RLOC Credit Agreement) in an aggregate amount of up to $7,500,000.00; and (c) a letter-of-credit facility for the issuance of stand-by letters of credit in an aggregate amount of up to $1,000,000.00.

Pursuant to the terms of the Pre-Petition RLOC Credit Agreement, the Debtors granted to the RLOC Agent a security interest to and in substantially all of the Debtors' personal property, excluding their real property, and all other property defined as the

---

[1] Non-Debtors Susan Millenkamp as Trustee of the WJM 2012 Trust; William Millenkamp as Trustee of the SJM 2012 Trust; William John Millenkamp and Susan Jo Millenkamp (the "**Non-Debtor Borrowers**") also executed the Pre-Petition RLOC Credit Agreement.

59797.0007.18169739.1

"Collateral" in the Pre-Petition RLOC Credit Agreement (referred to herein as the "**Pre-Petition RLOC Collateral**" and the Liens and security interests granted to or for the benefit of the Pre-Petition RLOC Secured Parties therein, the "**Pre-Petition RLOC Personal Property Liens**").

The Pre-Petition RLOC Collateral includes, among other interests (each as defined in the Pre-Petition RLOC Credit Agreement): all Accounts, Farm Products (including, but not limited to) Livestock, Payment Intangibles, Deposit Accounts, Commodity Contracts, and, notably, the Debtors' inventory, which consists of (in part) milk, other dairy products, and certain receivables from the sales of the Debtors' milk and other dairy products (the "**Milk Receivables**"). The Pre-Petition RLOC Secured Parties' Lien and security interest extends to all accessions to, substitutions for, and all replacements, products, and proceeds of the Pre-Petition RLOC Collateral. As described below, the Pre-Petition RLOC Secured Parties' interest in the Milk Receivables is subject to the First Intercreditor Agreement entered into between them and MetLife.

Further, as consideration for the RLOC Agent to enter into that certain Forbearance Agreement, made effective as of October 22, 2022, the Debtors and the Non-Debtor Borrowers granted, among other things, a second priority mortgage on the Pre-Petition MetLife Real Estate Collateral to secure the Pre-Petition RLOC Obligations, subject to the Second Intercreditor Agreement. Accordingly, on October 20, 2022, the Debtors and the Non-Debtor Borrowers executed and delivered that certain Mortgage, Assignment of Rents, Security Agreement, and Fixture Filing (Second Priority), in favor of the RLOC Agent, to secure any and all obligations owed to the Pre-Petition RLOC Secured Parties, which was recorded in Cassia County, as Instrument No. 2022-004552, Twin Falls County as Instrument No. 202018722, and Jerome County as Instrument No. 2224759 (the "**Pre-Petition RLOC Second Mortgage**" and together with the Pre-Petition RLOC Personal Property Liens, the "**Pre-Petition RLOC Liens**").

b.     <u>Treatment Generally</u>. The RLOC Agent filed an Amended Proof of Claim in the amount of $96,469,917.04.

Proof of Claim Amount:

Principal: $88,950,202.73
Pre-Petition Interest (as of April 2, 2024): $149,105.24
Post-Petition Interest (as of October 31, 2024): $2,751,368.26
Pre-Petition Professional Fees: $1,255,548.19
Post-Petition Professional Fees and Costs (as of April 2, 2024): $1,219,525.43
Unused Commitment Fee: $6,280.00
Total: $96,469,917.04

For purposes of the Toggle Plan, the Class 5 RLOC Secured Claims shall be Allowed in the amount of $96,469,917.04 (as of October 31, 2024). The Class 5 RLOC Secured Claims shall be further amended to include additional accrued and unpaid post-petition default interest and professional fees, and upon amendment, shall be Allowed.

59797.0007.18169739.1

Holders of an Allowed Class 5 RLOC Secured Claims will receive different treatment under the Reorganization Toggle, the Going Concern 363 Sale Toggle, and the Business Unit 363 Sale Toggle.

            c.      <u>Treatment Under Reorganization Toggle</u>. The Allowed Class 5 RLOC Secured Claims shall receive the following treatment:

            1)      On the Effective Date, the Reorganized Debtors shall use the Effective Date Reserve to pay down $12.1 million of the Class 5 RLOC Secured Claims, to be applied by the RLOC Agent in its sole and absolute discretion, some of which is deemed to be partial consideration for the RLOC Agent releasing its Lien on the Equity Interests in the Debtors and the New Common Stock.

            2)      The balance of the unpaid Class 5 RLOC Secured Claims shall be reclassified and capitalized as a senior term loan obligation (the "**Exit RLOC Term Note**"). The Exit RLOC Term Note shall (a) mature on December 31, 2026, (b) accrue interest at rate equal to the sum of one month SOFR plus 6% per annum, subject to a floor of 10%, with accrued interest being due and payable on the last day of each month until the Exit RLOC Term Note matures, is refinanced, or otherwise repaid in full, (c) accrue interest at 2.17% per annum paid in kind (the "**Exit RLOC PIK Interest**"), (d) continue to be secured to the same extent, validity and priority in the Collateral subject to the Pre-Petition RLOC Liens, (e) provide for three (3) quarterly payments following the Effective Date, in the amount of Two Million Five Hundred Thousand Dollars ($2,500,000) per quarter, and (f) provide for one payment in the amount of One Million Nine Hundred Twenty Five Thousand Dollars ($1,925,000) on June 30, 2026.

            3)      In the event of a default under the Exit RLOC Term Note, interest on the Exit RLOC Term Note shall accrue at an additional 6% interest which shall be added to the rates set forth above.

            4)      The Exit RLOC Term Note shall contain customary and market covenants, including, but not limited to:

            a.      There shall be no outstanding amounts beyond thirty (30) days after the date of an invoice at any time owing to cattle or feed vendors or any other vendor or supplier by the Reorganized Debtors that could result in such vendor or supplier asserting a Lien on Collateral securing the Exit RLOC Term Note. The total amount owing to such vendors shall not exceed Ten Million Dollars ($10,000,000) at any time;

            b.      Proceeds from sales or other dispositions of equipment in an amount not less than 60% of the value of the applicable equipment sold or otherwise disposed (and not used to purchase, lease, or otherwise obtain new equipment) shall be immediately applied to pay amounts outstanding in respect of the Exit RLOC Term Note or to make any other payments expressly required under the Toggle Plan;

59797.0007.18169739.1

c.    Financial covenants, including (i) leverage ratio, which shall be measured on a monthly basis (specific covenant levels to be determined), (ii) limitations on capital expenditures, and (iii) limitations on repair and maintenance expenditures (together with the covenants identified in (a) and (b) above, the "**Exit RLOC Financial Covenants**");

d.    Compliance with the Animal Welfare Reserve Covenant;

e.    The RLOC Agent shall have the right to conduct frequent inspections of the Collateral securing the Exit RLOC Term Note on terms no less favorable than those set forth in the Pre-Petition RLOC Credit Agreement; and

f.    Other covenants substantially similar to those set forth in the Pre-Petition RLOC Credit Agreement or the Sandton Exit Term Loan Facility.

5)    The Exit RLOC Note shall also include the following covenant: In connection with the occurrence of the Effective Date, the Reorganized Debtors shall have prepared and delivered to the RLOC Agent a report in form and substance satisfactory to the RLOC Agent setting forth the market value of the Reorganized Debtors' cow and steer inventory as of the Effective Date based upon mutually acceptable third party market value assessments of comparable cow and steer assets (the "**Baseline Valuation Report**"). On the first Business Day of every other calendar week, commencing with the first full calendar week after the Effective Date, the Reorganized Debtors shall deliver to the RLOC Agent a cow and steer inventory valuation report (each, an "**Inventory Valuation Report**"), which report shall be in form and substance satisfactory to the RLOC Agent. The Reorganized Debtors shall calculate the valuations based upon mutually acceptable third party market value assessments of comparable cow and steer assets. In the event the market value of the Reorganized Debtors' cow and steer inventory, as set forth in the most recent Inventory Valuation Report (as applicable, the "**Current Market Value**"), is less than the remainder of (x) ninety five percent (95%) of the market value of such inventory as set forth in the Baseline Valuation Report minus (y) the amount of Cash then on deposit in the Inventory Reserve Account (as defined below) minus (z) any principal payments applied to the Exit RLOC Term Note after the Effective Date but prior to the date of the most recent Inventory Valuation Report (such remainder amount, the "**Threshold Amount**"), the Reorganized Debtors shall immediately deposit Cash in an amount equal to the difference between the Threshold Amount and the Current Market Value into a deposit account which shall be subject to a deposit account control agreement in form and substance satisfactory to the RLOC Agent (the "**Inventory Reserve Account**"). Upon the delivery of an Inventory Valuation Report at a time when Cash is on deposit in the Inventory Reserve Account, in addition to any deposit of Cash required pursuant to the preceding paragraph:

a.    if such report establishes that the Current Market Value is less than the then current Threshold Amount, any Cash on deposit in the

59797.0007.18169739.1

Inventory Reserve Account shall be applied by the RLOC Agent to amounts outstanding in respect of the Exit RLOC Term Note;

b.  if such report establishes that the Current Market Value is greater than or equal to the then current Threshold Amount, and provided that no Event of Default shall have occurred and be continuing, Cash on deposit in the Inventory Reserve Account in an amount equal to the excess of the Current Market Value over the Threshold Amount shall be released to the Reorganized Debtors; provided, however, that such release of Cash shall occur no more than two (2) times prior to the maturity date of the Exit RLOC Term Note; and

c.  after such time, if ever, that the Reorganized Debtors shall have received a second release of Cash under clause (b) above, any Cash on deposit or required to be deposited in the Inventory Reserve Account shall be applied by the RLOC Agent to amounts outstanding in respect of the Exit RLOC Term Note.

6)  The Exit RLOC Note shall include customary and market remedies upon the occurrence of an event of default, including remedies substantially similar to those set forth in the Pre-Petition RLOC Credit Agreement or the Sandton Exit Term Loan Facility.

7)  If the Exit RLOC Term Note is refinanced or otherwise repaid in full on or before June 30, 2026, the Exit RLOC PIK Interest will be waived and the Reorganized Debtors will be relieved of any obligation to pay such accrued amounts.

8)  On the Effective Date, the RLOC Agent shall release its Liens on and security interests in the Equity Interests and the New Common Stock solely in connection with the Cash Equity Infusion.

d.  <u>Treatment Under Going Concern 363 Sale Toggle</u>. If the Plan Administrator closes on a Going Concern 363 Sale pursuant to a Going Concern 363 Sale Order in accordance with the Approved Going Concern 363 Sale Qualified Bid, if no competing bids were submitted, or the Successful Going Concern 363 Sale Auction Bid, as the case may be, unless otherwise agreed with the Holder of the Allowed Class 5 RLOC Secured Claims, the proceeds of such sale shall be used to satisfy the Allowed Class 5 RLOC Secured Claims in full, subject to the GUC Backstop.

e.  <u>Treatment Under Business Unit 363 Sale Toggle</u>. If the Plan Administrator does not receive at least one Approved Going Concern 363 Sale Qualified Bid or the Bankruptcy Court does not enter the Going Concern 363 Sale Order, the Plan Administrator will proceed to sell the Debtors' Assets in accordance with the Business Unit 363 Sale Toggle. Unless otherwise agreed with the respective Holders, the proceeds of such sale(s) shall be Distributed to Holders in accordance with the their respective lawful and contractual Lien and payment priorities, subject to the GUC Backstop.

f.  <u>Voting</u>. Class 5 is Impaired under the Toggle Plan. Class 5 is entitled to vote under the Toggle Plan.

59797.0007.18169739.1

**3.8**      **Class 6: Conterra Secured Claims**.

         a.      Classification. Class 6 consists of Conterra's Secured Claims (collectively, the "**Conterra Secured Claims**").

         Millenkamp Cattle, Inc., Idaho Jersey Girls, LLC, Idaho Jersey Girls Jerome Dairy LLC, East Valley Cattle, LLC, Millenkamp Family LLC, Millenkamp Properties, L.L.C., Millenkamp Properties II LLC, Goose Ranch, LLC, William J. Millenkamp and Susan J. Millenkamp executed and delivered to Conterra a promissory note dated October 20, 2022 in the original principal amount of $16,500,000 which Conterra endorsed to Ag Funding (the "**Mezz Loan**"). The Mezz Loan is secured by second priority Liens and security interests in the Pre-Petition RLOC Collateral (the "**Pre-Petition Conterra Mezz Collateral**") and third priority mortgage on the Pre-Petition MetLife Real Estate Collateral.

         Conterra's rights and interests in the Pre-Petition Conterra Mezz Collateral and in the Pre-Petition MetLife Real Estate Collateral are subject to (i) that certain Intercreditor and Subordination Agreement, among Conterra and the RLOC Agent, date as of October 20, 2022 (the "**RLOC-Conterra Intercreditor Agreement**") and (ii) that certain Subordination and Intercreditor Agreement, among Conterra and MetLife, dated as of October 20, 2022 (the "**MetLife-Conterra Intercreditor Agreement**").

         Millenkamp Cattle, Inc., Millenkamp Family LLC, Millenkamp Properties II LLC, Millenkamp Properties, L.L.C., East Valley Cattle, LLC, Idaho Jersey Girls Jerome Dairy LLC, and William J. Millenkamp executed and delivered to Conterra a promissory note dated October 20, 2022 in the original principal amount of $2,549,750 (the "**German Note**"), which Conterra endorsed to Rooster.

         The German Note is secured by a first priority mortgage on certain real property owned by certain of the Debtors known as "**German Dairy**" located at 162 West 400 North, Jerome, Idaho 83338 (the "**Pre-Petition Conterra Real Estate Collateral**").

         b.      Treatment Generally. Conterra filed Proofs of Claim in the aggregate amount of $21,460,993.60.

German Note Proof of Claim Amount:

Unpaid Principal: $2,508,860.41
Accrued Interest through 4/2/24: 67,867.67
Total unpaid balance as of 4/2/24: $2,576,728.08

Mezz Loan Proof of Claim Amount:

Unpaid Principal: $16,500,000.00
Accrued Interest through 4/2/24: $1,457,810.41
Late Fees: $830,614.58
Reimbursable Expenses: $95,840.53
Total unpaid balance as of 4/2/24: $18,884,265.52

59797.0007.18169739.1

Conterra has an Allowed Class 6 Secured Claim in the amount of $21,460,994 (subject to reconciliation), plus professional fees and costs upon Allowance of its Secured Creditor's Professional Fee Claim Filed pursuant to Section 3.2.2 of this Toggle Plan. Of Conterra's Allowed Secured Creditor's Professional Fee Claim, 12% shall be allocated and added to the principal balance of the German Note with the remaining 88% allocated to the principal balance of the Mezz Loan. The Debtors are conducting a reconciliation of their books and records compared to Conterra's Proofs of Claim and the Toggle Plan will be amended as necessary based on such reconciliation. Holders of an Allowed Class 6 Secured Claim will receive different treatment under the Reorganization Toggle, the Going Concern 363 Sale Toggle, and the Business Unit 363 Sale Toggle.

      c.    <u>Treatment Under Reorganization Toggle</u>. The Allowed Class 6 Secured Claim will receive the following treatment:

      1)    The balance of the unpaid monetary claims or obligations under the German Note shall be reclassified and capitalized as a senior term loan obligation (the "**Exit German Note**"). The Exit German Note shall (a) mature on December 31, 2026, (b) bear interest at the same rate as the German Note, (c) contain terms and conditions and covenants consistent with the German Note, and (d) be secured by a first priority security interest in the Pre-Petition Conterra Real Estate Collateral.

      2)    The balance of the unpaid monetary claims or obligations under the Mezz Loan shall be reclassified and capitalized as a junior term loan obligation (the "**Exit Mezz Note**") and receive monthly interest at 18% until March 31, 2027. The interest payments shall be split, with one-half being paid in Cash and one-half being PIK. Beginning April 1, 2027, the Exit Mezz Loan principal balance shall be re-amortized over three years and will receive monthly Cash interest payments at 18%.

      d.    <u>Treatment Under Going Concern 363 Sale Toggle</u>. If the Plan Administrator closes on a Going Concern 363 Sale pursuant to a Going Concern 363 Sale Order in accordance with the Approved Going Concern 363 Sale Qualified Bid, if no competing bids were submitted, or the Successful Going Concern 363 Sale Auction Bid, as the case may be, after satisfying the Allowed Class 4 MetLife Secured Claims and the Allowed Class 5 RLOC Secured Claims in full, subject to the GUC Backstop, the proceeds of such sale shall be used to satisfy the Allowed Class 6 Secured Claims in full, subject to the GUC Backstop.

      e.    <u>Treatment Under Business 363 Sale Toggle</u>. In the event that the Plan Administrator does not receive at least one Approved Qualified Bid or the Bankruptcy Court does not enter the Going Concern 363 Sale Order, the Plan Administrator will proceed to sell the Debtors' Assets in accordance with the Business Unit 363 Toggle. Unless otherwise agreed with the respective Holders, the proceeds of such sale(s) shall be distributed to Holders in accordance with the Toggle Plan and their respective lawful and contractual Lien and payment priorities, subject to the GUC Backstop.

      f.    <u>Voting</u>. Class 6 is Impaired under the Toggle Plan. Class 6 is entitled to vote under the Toggle Plan.

59797.0007.18169739.1

**3.9**     **Class 7: Secured Equipment and Vehicle Lien Claims**.

        Classification: Class 7 consists of the subclasses of the Secured Equipment and Vehicle Lien Claims.

**3.9.1**    **Class 7A: CNH Industrial Capital Secured Claim**.

        a.    Classification. Class 7A consists of the CNH Industrial Capital ("**CNH**") Secured Claim.

        b.    Treatment Generally. CNH filed Proofs of Claim in the total aggregate amount of $17,915,944.14.

| POC # | POC Amount | Document | Collateral |
|---|---|---|---|
| Claim 110 | $1,980,095.12 | Equipment Lease 765512 | 6 Magnum Tractors |
| Claim 111 | $2,438,189.14 | Equipment Lease 765542 | 4 Case Steigers & Remotes |
| Claim 112 | $5,294,925.12 | Equipment Lease 210982 | 26 Magnum Tractors |
| Claim 113 | $4,796,579,94 | Equipment Lease 765784 | 16 Magnum Tractors |
| Claim 114 | $2,587,321.81 | Equipment Loan 765552 | 30 Case Maxxum Tractors |
| Claim 115 | $470,430.75 | Equipment Loan 765530 | 25 Kubota Tractors |
| Claim 116 | $207,310.38 | Productivity Plus Credit Line 373662 | All collateral financed/leased by CNH |
| Claim 117 | $141,091.88 | Productivity Plus Credit Line 373203 | All collateral financed/leased by CNH |

        CNH shall have an Allowed Class 7A Claim in the amount of $17,915,944.14. CNH has received and will receive post-petition adequate protection payments prior to the Effective Date. Holders of an Allowed Class 7A Secured Claim will receive different treatment under the Reorganization Toggle, the Going Concern 363 Sale Toggle, and the Business Unit 363 Sale Toggle.

59797.0007.18169739.1

c.      Treatment Under Reorganization Toggle. Allowed Class 7A Secured Claim will receive the following treatment:

1)      For the CNH Equipment Leases and Equipment Loans, CNH shall continue to be paid in accordance with the provisions of the pre-petition contracts in the amounts required by those contracts, currently approximately $242,716.00 per month.

2)      For the CNH Productivity Plus Credit Lines, totaling $348,402.26, CNH shall receive quarterly interest payments at 5% per annum through March of 2027 pursuant to the Budget.

d.      Treatment Under Going Concern 363 Sale Toggle. Unless otherwise agreed or executory contract/unexpired lease, if any, is assumed, Holder will receive the proceeds of sales of its Collateral up to the amount of its Allowed Secured Claim in accordance with its respective lawful and contractual Lien and payment priorities. The balance of its Allowed Claim, if any, will be treated as a Class 9 General Unsecured Claim.

e.      Treatment Under Business Unit 363 Sale Toggle. Unless otherwise agreed, Holder will receive the proceeds of sales of its Collateral up to the amount of its Allowed Secured Claim in accordance with its respective lawful and contractual Lien and payment priorities. The balance of its Allowed Claim, if any, will be treated as a Class 9 General Unsecured Claim.

f.      Voting. Class 7A is Impaired under the Toggle Plan and is entitled to Vote under the Toggle Plan.

### 3.9.2   Class 7B: Daimler Truck Financial Services USA LLC Secured Claim.

a.      Classification. Class 7B consists of the Daimler Truck Financial Services USA LLC ("**Daimler**") Secured Claim.

b.      Treatment Generally. Daimler filed a Proof of Claim in the amount of $1,534,278.22. Daimler shall have an Allowed Secured Claim in the amount of $1,534,278.22. Daimler has received and will receive post-petition adequate protection payments before the Effective Date. Holders of an Allowed Class 7B Secured Claim will receive different treatment under the Reorganization Toggle, the Going Concern 363 Sale Toggle, and the Business Unit 363 Sale Toggle.

c.      Treatment Under Reorganization Toggle. Except to the extent Daimler agrees to a less favorable treatment with the Debtors prior to the Effective Date, or after the Effective Date, the Reorganized Debtors, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Allowed Class 7B Claim, Daimler shall continue to be paid in accordance with the provisions of the pre-petition contracts with Debtors, in the amounts required by those contracts, currently approximately $63,926.00 per month.

d.      Treatment Under Going Concern 363 Sale Toggle. Unless otherwise agreed or executory contract/unexpired lease, if any, is assumed, Holder will

59797.0007.18169739.1

receive the proceeds of sales of its Collateral up to the amount of its Allowed Secured Claim in accordance with its respective lawful and contractual Lien and payment priorities. The balance of its Allowed Claim, if any, will be treated as a Class 9 General Unsecured Claim.

e.     <u>Treatment Under Business Unit 363 Sale Toggle</u>. Unless otherwise agreed, Holder will receive the proceeds of sales of its Collateral up to the amount of its Secured Claim in accordance with its respective lawful and contractual Lien and payment priorities. The balance of its Allowed Claim, if any, will be treated as a Class 9 General Unsecured Claim.

f.     <u>Voting</u>.

1)     Class 7B is Unimpaired under the Reorganization Toggle. As long as the Reorganization Toggle is implemented, each Holder of an Allowed Class 7B Claim is conclusively presumed to have accepted the Toggle Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Allowed Class 7 B Claim are not entitled to vote to accept or reject the Toggle Plan.

2)     If the Toggle Plan is being implemented pursuant to the Going Concern 363 Sale Toggle or the Business Unit 363 Sale Toggle, Class 7B is Impaired under the Toggle Plan and is entitled to vote under the Toggle Plan.

### 3.9.3   <u>Class 7C: Farmers Bank</u>.

a.     Classification. Class 7C consists of the Farmers Bank Secured Claim.

b.     Treatment Generally. Farmers Bank filed Proofs of Claim totaling $2,474,927.97.

| <u>POC #</u> | <u>POC Amount</u> | <u>Collateral</u> |
|---|---|---|
| Claim 35 | $294,173.07 | 2024 Ram Pickups |
| Claim 36 | $10,975.50 | Con-Dor Peecon 1700 Feed Mixer |
| Claim 37 | $96,225.11 | 2021 Ram Pickups |
| Claim 38 | $26,211.20 | Nuhn Alley Vac Manure Wagon 7000 Gal Tank |
| Claim 39 | $269,908.99 | Caterpillar Diesel Generators |
| Claim 40 | $280,789.94 | Caterpillar Diesel Generators |
| Claim 41 | $140,596.63 | SmithCo Side Dump Trailers |

59797.0007.18169739.1

| Claim 42 | $166,267.09 | 2022 Ram Pickups |
|---|---|---|
| Claim 43 | $132,902.49 | Con Dor Peecon 1700 Feed Mixer |
| Claim 44 | $56,558.60 | 2022 Mahindra UTB |
| Claim 45 | $1,000,364.26 | 2024 Wilson 53' Livestock Trailers |

Farmers Bank shall have an Allowed Class 7C Secured Claim in the amount of $2,474,972.97. Farmers Bank has received and will receive post-petition adequate protection payments prior to the Effective Date. Holders of an Allowed Class 7C Secured Claim will receive different treatment under the Reorganization Toggle, the Going Concern 363 Sale Toggle, and the Business Unit 363 Sale Toggle.

c.    <u>Treatment Under Reorganization Toggle</u>. Except to the extent Farmers Bank agrees to a less favorable treatment with the Debtors prior to the Effective Date, or after the Effective Date, the Reorganized Debtors, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Allowed Class 7C Claim, Farmers Bank shall continue to be paid in accordance with the provisions of its pre-petition contract with the Debtors, in the amounts required by the contract, currently approximately $105,706.00 per month.

d.    <u>Treatment Under Going Concern 363 Sale Toggle</u>. Unless otherwise agreed or executory contract/unexpired lease, if any, is assumed, Holder will receive the proceeds of sales of its Collateral up to the amount of its Secured Claim in accordance with it respective lawful and contractual Lien and payment priorities. The balance of its Allowed Claim, if any, will be treated as a Class 9 General Unsecured Claim.

e.    <u>Treatment Under Business Unit 363 Sale Toggle</u>. Unless otherwise agreed, Holder will receive the proceeds of sales of its Collateral up to the amount of its Secured Claim in accordance with its respective lawful and contractual Lien and payment priorities. The balance of its Allowed Claim, if any, will be treated as a Class 9 General Unsecured Claim.

f.    <u>Voting</u>.

1)    Class 7C is Unimpaired under the Reorganization Toggle. As long as the Reorganization Toggle is implemented, each Holder of an Allowed Class 7C Claim is conclusively presumed to have accepted the Toggle Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Allowed Class 7C Claims are not entitled to vote to accept or reject the Toggle Plan.

2)    If the Toggle Plan is being implemented pursuant to the Going Concern 363 Sale Toggle or the Business Unit 363 Sale Toggle, Class 7C is Impaired under the Toggle Plan and is entitled to vote under the Toggle Plan.

59797.0007.18169739.1

### 3.9.4    Class 7D: John Deere Construction & Forestry Secured Claim.

a.    Classification.    Class 7D consists of the John Deere Construction & Forestry ("**John Deere**") Secured Claim.

b.    Treatment Generally. John Deere filed Proofs of Claim in the aggregate amount of $948,846.69.

| POC # | POC Amount | Collateral |
|---|---|---|
| Claim 20 | $119,606.55 | Cross Collateralized Loan with all Deere Loans/Collateral |
| Claim 21 | $121,475.50 | Hamm 10i Compactors |
| Claim 22 | $151,965.48 | Hamm 121 P |
| Claim 23 | $69,597.45 | John Deere 50G Compact Excavator |
| Claim 24 | $69,957.45 | John Deere 50G Compact Excavator |
| Claim 25 | $187,368.29 | 2023 John Deere 650P-Tier Utility Dozer |
| Claim 26 | $116,806.61 | John Deere 320 P-Tier Backhoe Loader |
| Claim 27 | $232,035.91 | 2023 John Dere 135 P-TIER Backhoe Loader AND 2023 John Deere EC13 QS60 COMPLETE SYSTEM W/ 2 BUCKETS |

John Deere shall have an Allowed Class 7D Secured Claim in the amount of $1,068,453.34. John Deere has received and will receive post-petition adequate protection payments in the amount of $212,083.62 prior to the Effective Date. Holders of an Allowed Class 7D Secured Claim will receive different treatment under the Reorganization Toggle, the Going Concern 363 Sale Toggle, and the Business Unit 363 Sale Toggle.

c.    Treatment Under Reorganization Toggle. Except to the extent John Deere agrees to a less favorable treatment with the Debtors prior to the Effective Date, or after the Effective Date, the Reorganized Debtors, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Allowed Class 7D Claim, John Deere shall receive the following treatment:

1)    For Claims 21, 22, 23, 24, 25, 26, and 27, John Deere shall continue to be paid in accordance with the provisions of its pre-petition contracts with Debtors in the amounts required by the contracts.

59797.0007.18169739.1

        2)     For Claim 20, John Deere shall be paid quarterly interest payments at 15.15% per annum through March of 2027 pursuant to the Budget.

        d.    <u>Treatment Under Going Concern 363 Sale Toggle</u>. Unless otherwise agreed or executory contract/unexpired lease, if any, is assumed, Holder will receive the proceeds of sales of its Collateral up to the amount of its Allowed Secured Claim in accordance with its respective lawful and contractual Lien and payment priorities. The balance of its Allowed Claim, if any, will be treated as a Class 9 General Unsecured Claim.

        e.    <u>Treatment Under Business Unit 363 Sale Toggle</u>. Unless otherwise agreed, Holder will receive the proceeds of sales of its Collateral up to the amount of its Secured Claim in accordance with its respective lawful and contractual Lien and payment priorities. The balance of its Allowed Claim, if any, will be treated as a Class 9 General Unsecured Claim.

        f.    <u>Voting</u>. Class 7D is Impaired under the Toggle Plan and is entitled to vote under the Toggle Plan.

### 3.9.5    <u>Class 7E: Western States Cat Secured Claim</u>.

        a.    <u>Classification</u>. Class 7E consists of the Western States Cat ("**Western States**") Secured Claim.

        b.    <u>Treatment</u>. The Debtors Scheduled Western States as a Secured Claim in the amount of $688,964.59. Western States has received post-petition adequate protection payments in the amount of $596,071.02 prior to the Effective Date. On May 22, 2024, the Bankruptcy Court approved the Debtors' assumption of the Western States rental agreement when it issued its Final Order (a) Granting Motion to Condition Use of WSECO's Equipment on Receipt of Adequate Protection, and (b) Granting Debtor's Motion for Order Authorizing the Debtor to Assume Unexpired Lease (Docket. No. 314). Upon the return of the rented equipment, Western States notified Debtors it was owed approximately $244,994.48 due to damage to the rented equipment and other repairs. As such, Debtors made a post-petition payment to Western States in the amount of $244,994.48 pursuant to the rental agreement. Western States later presented an updated actual expense itemization, asserting that the Debtors owed an additional $6,882.63. However, the Debtors dispute certain items on the expense itemization, in the aggregate amount of $82,351.74, thus offsetting any amounts still owed to Western States. Consequently, all pre-petition and post-petition amounts due and owing to Western States have been paid. As such, Western States shall not receive any further Distribution under the Toggle Plan. Any pre-petition Liens claimed by Western States Cat shall be considered released and have no further effect.

        c.    <u>Voting</u>. Class 7E is Unimpaired under the Toggle Plan. Class 7E is conclusively presumed to have accepted the Toggle Plan and is not entitled to vote to accept or reject the Toggle Plan.

59797.0007.18169739.1

### 3.9.6    Class 7F: Kenworth Sales Company Secured Claim.

a.    Classification. Class 7F consists of the Kenworth Sales Company ("**Kenworth**") Secured Claim.

b.    Treatment Generally. Kenworth filed a Proof of Claim in the amount of $49,359.77 and shall have an Allowed Class 7F Secured Claim in the amount of $49,359.77. Kenworth has received and will receive post-petition adequate protection payments totaling $48,677.75 prior the Effective Date. Holders of an Allowed Class 7F Secured Claim will receive different treatment under the Reorganization Toggle, the Going Concern 363 Sale Toggle, and the Business Unit 363 Sale Toggle.

c.    Treatment Under Reorganization Toggle. After payment of the adequate protection payments, the Debtors will owe Kenworth $682.02 on the Effective Date, which shall be paid in full as a Distribution on the Effective Date.

d.    Treatment Under Going Concern 363 Sale Toggle. Unless otherwise agreed or executory contract/unexpired lease, if any, is assumed, Holder will receive the proceeds of sales of its Collateral up to the amount of its Secured Claim in accordance with its respective lawful and contractual Lien and payment priorities. The balance of its Allowed Claim, if any, will be treated as a Class 9 General Unsecured Claim.

e.    Treatment Under Business Unit 363 Sale Toggle. Unless otherwise agreed, Holder will receive the proceeds of sales of its Collateral up to the amount of its Secured Claim in accordance with its respective lawful and contractual Lien and payment priorities. The Balance of its Allowed Claim, if any, will be treated as a Class 9 General Unsecured Claim.

f.    Voting.

1)    Class 7F is Unimpaired under the Reorganization Toggle. As long as the Reorganization Toggle is implemented, each Holder of an Allowed Class 7F Claim is conclusively presumed to have accepted the Toggle Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Allowed Class 7F Claims are not entitled to vote to accept or reject the Toggle Plan.

2)    If the Toggle Plan is being implemented pursuant to the Going Concern 363 Sale Toggle or the Business Unit 363 Sale Toggle, Class 7F is Impaired under the Toggle Plan and is entitled to vote under the Toggle Plan.

### 3.10    Class 8: Other Secured Claims.

Classification. Class 8 consists of Other Secured Claims.

### 3.10.1  Class 8A: MWI Veterinary Secured Claim.

a.    Classification. Class 8A consists of the MWI Veterinary Secured Claim.

59797.0007.18169739.1

b.    <u>Treatment</u>. MWI Veterinary filed three Proofs of Claim in the aggregate amount of $2,566,485.40.

| <u>Case</u> | <u>Proof of Claim Amount</u> |
|---|---|
| Millenkamp Cattle, Inc. | $2,525,459.31 |
| Idaho Jersey Girls, LLC | $25,375.92 |
| Black Pine Cattle, LLC | $15,650.17 |

MWI Veterinary received a Court-approved adequate protection payment during the pendency of this Bankruptcy Case in the amount of $500,127.14 and has an Allowed Section 503(b)(9) Claim in the amount of $484,255.92. Based on the Debtors' books and records as of the filing of this Toggle Plan, MWI Veterinary is owed $2,063,428.20. After deduction of the Section 503(b)(9) Claim, MWI Veterinary shall have an Allowed Class 8A Secured Claim in the amount of $1,579,172.28. Holders of an Allowed Class 8A Secured Claim will receive different treatment under the Reorganization Toggle, the Going Concern 363 Sale Toggle, and the Business Unit 363 Sale Toggle.

c.    <u>Treatment Under Reorganization Toggle</u>. Except to the extent MWI Veterinary agrees to a less favorable treatment with the Debtors prior to the Effective Date, or after the Effective Date, the Reorganized Debtors, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Allowed Class 8A Secured Claim, the Allowed Class 8A Claim shall be paid pursuant to the Budget, with quarterly interest payments at 5% per annum through March 2027.

d.    <u>Treatment Under Going Concern 363 Sale Toggle</u>. Unless otherwise agreed or executory contract/unexpired lease, if any, is assumed, Holder will receive the proceeds of sales of its Collateral up to the amount of its Secured Claim in accordance with its respective lawful and contractual Lien and payment priorities. The balance of its Allowed Claim, if any, will be treated as a Class 9 General Unsecured Claim.

e.    <u>Treatment Under Business Unit 363 Sale Toggle</u>. Unless otherwise agreed, Holder will receive the proceeds of sales of its Collateral up to the amount of its Secured Claim in accordance with its respective lawful and contractual Lien and payment priorities. The balance of its Allowed Claim, if any, will be treated as a Class 9 General Unsecured Claim.

f.    <u>Voting</u>. Class 8A is Impaired under the Toggle Plan. Class 8A is entitled to vote under the Toggle Plan.

### 3.10.2  **Class 8B: PerforMix Nutrition Systems Secured Claim**.

a.    <u>Classification</u>. Class 8B consists of the PerforMix Nutrition Systems ("**PerforMix**") Secured Claim.

59797.0007.18169739.1

b.    <u>Treatment</u>. PerforMix filed a Proof of Claim in the amount of $213,744.20 and shall have an Allowed Class 8B Secured Claim in the amount of $213,744.20. PerforMix has received and will receive post-petition adequate protection payments totaling $213,744.20 prior to the Effective Date. No further amount will be owed by the Debtors to PerforMix as of the Effective Date and therefore PerforMix will receive no Distribution under the Toggle Plan. Any pre-petition Liens claimed or asserted by PerforMix in any property of the Debtors shall be considered released and have no further effect.

c.    <u>Voting</u>. Class 8B is Unimpaired under the Toggle Plan. Class 8B is deemed to have accepted the Toggle Plan and is not entitled to vote to accept or reject the Toggle Plan.

### 3.10.3  Class 8C: Rexel USA, Inc. d/b/a Platt Electric Supply Claim.

a.    <u>Classification</u>. Class 8C consists of the Rexel USA, Inc. d/b/a Platt Electric Supply ("**Platt**") Claim.

b.    <u>Treatment</u>. Platt filed a Proof of Claim in the amount of $504,414.02. According to the Debtors' Plan, the Proof of Claim is Disputed and the Debtors will be filing an objection to the full amount of the Proof of Claim. As such, the Debtors will set aside the full amount of the Class 8C Claim in the amount of $504,414.02 in the Distribution Reserve.

c.    <u>Voting</u>. Class 8C is Impaired under the Toggle Plan. Class 8C Claims are entitled to vote under the Toggle Plan.

### 3.10.4  Class 8D: Staker & Parson Company d/b/a Idaho Materials & Construction Claim.

a.    <u>Classification</u>. Class 8D consists of the Staker & Parson Company d/b/a Idaho Material & Construction ("**Idaho Material**") Claim.

b.    <u>Treatment</u>. Idaho Material filed an unsecured Proof of Claim in the amount of $48,207.17 in the Millenkamp Cattle, Inc. Case and a secured Proof of Claim in the amount of $48,207.17 in the East Valley Cattle, LLC Case. The Notice of Claim of Lien was recorded on April 30, 2024, as Cassia County Instrument No. 2024001489. Idaho Material will receive by the Effective Date adequate protection payments totaling $48,207.17. As such, the Idaho Material Allowed Class 8D Secured Claim will be paid in full as of the Effective Date and Idaho Material shall receive no further Distribution under the Toggle Plan. Any pre-petition Liens claimed by Idaho Material in property of the Debtors shall be considered released and have no further effect.

c.    <u>Voting</u>. Class 8D is Unimpaired under the Toggle Plan. Class 8D is deemed to have accepted the Toggle Plan and is not entitled to vote to accept or reject the Toggle Plan.

59797.0007.18169739.1

### 3.10.5  **Class 8E: Les Schwab Tire Centers of Idaho, LLC Claims**.

        a.      <u>Classification</u>. Class 8E consists of the Les Schwab Tire Center of Idaho LLC ("**Les Schwab**") Claims.

        b.      <u>Treatment Generally</u>. Les Schwab filed two Proofs of Claim in the aggregate amount of $255,256.55.

| **Case** | **Proof of Claim Amount** | **503(B)(9) Claim Amount Approved** |
|---|---|---|
| Millenkamp Cattle, Inc. | $151,173.71 | $26,643.97 |
| Black Pine Cattle, LLC | $102,082.84 | $0 |

Pursuant to the 503(b)(9) Order, Les Schwab has an Allowed Section 503(b)(9) Claim in the amount of $26,643.97. Les Schwab will be paid, in Cash, its Allowed Section 503(b)(9) Claim in the amount of $26,643.97, on or as soon as reasonably practicable after the Effective Date. Holders of an Allowed Class 8A Secured Claim will receive different treatment under the Reorganization Toggle, the Going Concern 363 Sale Toggle, and the Business Unit 363 Sale Toggle.

        c.      <u>Treatment Under Reorganization Toggle</u>. The remainder of the Les Schwab Claim, in the amount of $226,612.58, shall be paid pursuant to the Budget, with quarterly interest payments at 5% interest per annum through March 2027.

        d.      <u>Treatment Under Going Concern 363 Sale Toggle</u>. Unless otherwise agreed or executory contract/unexpired lease, if any, is assumed, Holder will receive the proceeds of sales of its Collateral up to the amount of its Secured Claim in accordance with its respective lawful and contractual Lien and payment priorities. The balance of its Allowed Claim, if any, will be treated as a Class 9 General Unsecured Claim.

        e.      <u>Treatment Under Business Unit 363 Sale Toggle</u>. Unless otherwise agreed or executory contract/unexpired lease, if any, is assumed, Holder will receive the proceeds of sales of its Collateral up to the amount of its Secured Claim in accordance with its respective lawful and contractual Lien and payment priorities. The balance of its Allowed Claim, if any, will be treated as a Class 9 General Unsecured Claim.

        f.      <u>Voting</u>. Class 8E is Impaired under the Toggle Plan. The Class 8E Claim is entitled to vote under the Toggle Plan.

### 3.11  **Class 9: General Unsecured Claims**.

        a.      <u>Classification</u>. Class 9 consists of all General Unsecured Claims, in the approximate amount of $27 million. A full listing of the General Unsecured Claims and amounts of each Claim is included as Exhibit C of the Toggle Disclosure Statement.

        b.      <u>Treatment Generally</u>. Holders of Allowed Class 9 General Unsecured Claims will receive the same treatment under the Going Concern 363 Sale Toggle

59797.0007.18169739.1

and the Business Unit 363 Sale Toggle, but will receive different treatment under the Reorganization Toggle.

c.    Treatment Under Reorganization Toggle. In full and final satisfaction of Allowed Class 9 General Unsecured Claims, Holders shall receive a Pro Rata share of: (a) the Priority-GUC Reserve, (b) the Preferred Equity GUC Allocation, as reduced by the New Equity Holder Reallocation, if at all, and (c) the New Equity Holder Contribution Amount to the extent of the New Equity Holder Reallocation, if any.

d.    Treatment Under Going Concern 363 Sale Toggle. Unless otherwise agreed or a Holder's executory contract/unexpired lease, if any, is assumed, each Holder of an Allowed General Unsecured Claim will receive its pro rata share of (i) the GUC Backstop, and (ii) after the Class 4 MetLife Secured Claim, Class 5 RLOC Secured Claims and Class 6 Conterra Secured Claims have been paid in full from their respective Collateral, including the GUC Backstop True-Up.

e.    Treatment Under Business Unit 363 Sale Toggle. Same treatment as under the Going Concern 363 Sale Toggle.

f.    Voting. Class 9 is Impaired under the Toggle Plan. The Holders of Class 9 Claims are entitled to vote under the Toggle Plan.

### 3.12    Class 10: Intercompany Claims.

a.    Classification. Class 10 consists of all Intercompany Claims.

b.    Treatment. On the Effective Date, all Intercompany Claims shall be extinguished. Holders of Intercompany Claims will receive no Distributions under the Toggle Plan.

c.    Voting. Each Holder of a Class 10 Intercompany Claim will be deemed to have rejected the Toggle Plan and, therefore, are not entitled to vote on the Toggle Plan.

### 3.13    Class 11: Equity Interests.

a.    Classification. Class 11 consists of all of the Equity Interests in the Debtors.

b.    Treatment Generally. On the Effective Date, all Equity Interests will be cancelled, released and extinguished, and will be of no further force or effect. Holders of Class 11 Equity Interests will receive the same treatment under the Going Concern 363 Sale Toggle and the Business Unit 363 Sale Toggle, but will receive different treatment under the Reorganization Toggle.

c.    Treatment Under Reorganization Toggle. Upon the Effective Date, Holders of Equity Interests (or their designees) shall receive the right to receive (i) their Pro Rata share of New Common Stock as consideration for the Cash Equity Infusion

and (ii) their Pro Rata share of the New Equity Holder Reallocation to the extent of their applicable New Equity Holder Contribution Amount, if any.

        d.    <u>Treatment Under Going Concern 363 Sale Toggle</u>. Holders of Equity Interests will receive a recovery only if all Allowed General Unsecured Claims and any subordinated claims are paid in full.

        e.    <u>Treatment Under Business Unit 363 Sale Toggle</u>. Same treatment as under the Going Concern 363 Sale Toggle.

        f.    <u>Voting</u>.

        1)    Class 11 is Impaired under the Reorganization Toggle. As long as the Reorganization Toggle is implemented, each Holder of an Allowed Class 11 Equity Interest is entitled to vote under the Toggle Plan.

        2)    If the Toggle Plan is being implemented pursuant to the Going Concern 363 Sale Toggle or the Business Unit 363 Sale Toggle, Holders of Equity Interests in Class 11 are not entitled to receive or retain any property or interests in property. Under Bankruptcy Code section 1126(g), such Holders are deemed to have rejected the Toggle Plan, and, therefore, the votes of such Holders shall not be solicited.

    **3.14**   <u>**Special Provisions Regarding Unimpaired Claims**</u>. Except as otherwise specifically provided in the Toggle Plan, nothing herein shall be deemed to affect, diminish, or impair the rights and defenses, both legal and equitable, of the Debtors, the Reorganized Debtors, or the Plan Administrator, as applicable, with respect to any Reinstated Claim or otherwise Unimpaired Claim, including legal and equitable defenses to setoffs or recoupment against Reinstated Claims or otherwise Unimpaired Claims; and, except as otherwise specifically provided in the Toggle Plan, nothing herein shall be deemed to be a waiver or relinquishment of any Claim, Cause of Action, right of setoff, or other legal or equitable defense that the Debtors had immediately prior to the Petition Date, against or with respect to any Claim that is Unimpaired by the Toggle Plan. Except as otherwise specifically provided in the Toggle Plan, the Reorganized Debtors and the Plan Administrator, as applicable, shall have, retain, reserve, and be entitled to assert all such Claims, Causes of Action, rights of setoff, and other legal or equitable defenses that the Debtors had immediately prior to the Petition Date fully as if the Chapter 11 Cases had not been commenced, and all of the legal and equitable rights and defenses of the Reorganized Debtors and the Plan Administrator, as the case may be, with respect to any Reinstated Claim or otherwise Unimpaired Claim may be asserted after the Confirmation Date and the Effective Date to the same extent as if the Chapter 11 Cases had not been commenced.

**ARTICLE 4**
**<u>ACCEPTANCE OR REJECTION OF THE TOGGLE PLAN</u>**

    **4.1**   <u>**Impaired Class of Claims Entitled to Vote**</u>. Only the votes of Holders of Allowed Claims in Class 2, Class 3A, Class 3E, Class 3I, Class 3L, Class 3N, Class 4, Class 5, Class 6, Class 7A, Class 7D, Class 8A, Class 8C, Class 8E, and Class 9 shall be solicited with respect to the Toggle Plan regardless of the toggle being pursued. The votes of Holders of Allowed Claims in Class 7B, Class 7C, Class 7F, shall be solicited only if the Going Concern 363 Sale Toggle

CHAPTER 11 PLAN - PAGE 68

and/or Business Unit 363 Sale Toggle is being pursued under the Toggle Plan. The votes of Holders of Allowed Class 11 Equity Interests shall be solicited only if the Reorganization Toggle is being pursued under the Toggle Plan.

**4.2    Voting of Claims**. Each Holder of an Allowed Claim in an Impaired Class of Claims or an Allowed Interest in an Impaired Class of Interests that is entitled to vote on the Toggle Plan pursuant to Article 4 of the Toggle Plan shall be entitled to vote to accept or reject the Toggle Plan as provided in such order as is entered by the Bankruptcy Court establishing procedures with respect to the solicitation and tabulation of votes to accept or reject the Toggle Plan, or any other order(s) of the Bankruptcy Court. For purposes of calculating the number of Allowed Claims in a Class of Claims that have voted to accept or reject the Toggle Plan under section 1126(c) of the Bankruptcy Code, all Allowed Claims in such Class held by one Entity shall be aggregated and treated as one Allowed Claim in such Class.

**4.3    Procedure/Voting Deadline**. In order for a Ballot to count, it must be (i) completed, dated, and properly executed, and (ii) delivered to the Voting Agent by first class mail, postage prepaid, or by overnight courier, to (x) under the Reorganization Toggle: Krystal R. Mikkilineni, Dentons Davis Brown, The Davis Brown Tower, 215 10th St., Suite 1300, Des Moines, Iowa 50309, email: krystal.mikkilineni@dentons.com, or (y) under the Going Concern 363 Sale Toggle and/or the Business Unit 363 Sale Toggle: Sheila Schwager, Hawley Troxell Ennis & Hawley LLP, 877 W. Main Street, Suite 200, P.O. Box 1617, Boise, Idaho 83701-1617. The Voting Agent must **ACTUALLY RECEIVE** Ballots on or before the Voting Deadline. Except as otherwise ordered by the Bankruptcy Court or agreed to by the Plan Proponents, a vote may not be changed once a Ballot is submitted to the Voting Agent.

**4.4    Acceptance by an Impaired Class**. In accordance with Bankruptcy Code section 1126(c), and except as provided in Bankruptcy Code section 1126(e), the Holders of Claims in any Class entitled to vote on the Toggle Plan shall have accepted the Toggle Plan if the Toggle Plan is accepted by the Holders of at least two-thirds (⅔) in dollar amount and more than one-half (½) in number of the Allowed Claims in such Class that have timely and properly voted to accept or reject the Toggle Plan.

**4.5    Presumed Acceptances by Unimpaired Classes**. Class 1, Class 3B, Class 3C, Class 3D, Class 3F, Class 3G, Class 3H, Class 3J, Class 3K, Class 3M, Class 7E, Class 8B, and Class 8D are Unimpaired under the Toggle Plan regardless of the toggle being pursued. Class 7B, Class 7C, and Class 7F are Unimpaired if the Reorganization Toggle is being pursued under the Toggle Plan. Under Bankruptcy Code section 1126(f), the Holders of Claims in such Unimpaired Classes are conclusively presumed to have accepted the Toggle Plan, and, therefore, the votes of such Holders Claims in such Unimpaired Classes shall not be solicited.

**4.6    Impaired Classes Deemed to Reject Plan**. Holders of Intercompany Claims in Class 10 are not entitled to receive or retain any property or interests in property under the Toggle Plan regardless of the toggle being pursued. Holders of Equity Interests in Class 11 are not entitled to receive or retain any property or interests in property if the Going Concern 363 Sale Toggle or the Business Unit 363 Sale Toggle is being pursued under the Toggle Plan. Under Bankruptcy Code section 1126(g), such Holders are deemed to have rejected the Toggle Plan, and, therefore, the votes of such Holders shall not be solicited.

59797.0007.18169739.1

**4.7** **Confirmation Pursuant to Bankruptcy Code Section 1129(b)**. Because at least one Impaired Class is deemed to have rejected the Toggle Plan, the Plan Proponents will and hereby request confirmation of the Toggle Plan under Bankruptcy Code section 1129(b). The Plan Proponents reserve the right to alter, amend, modify, revoke, or withdraw the Toggle Plan, or any schedule or exhibit, including to amend or modify it to satisfy the requirements of Bankruptcy Code section 1129(b), if necessary.

**4.8** **Elimination of Vacant Classes**. Any Class of Claims or Interests that does not contain, as of the date of the commencement of the Confirmation Hearing, a Holder of an Allowed Claim, or a Holder of a Claim temporarily allowed under Bankruptcy Rule 3018, shall be deemed deleted from the Toggle Plan for purposes of determining acceptance of the Toggle Plan by such Class under Bankruptcy Code section 1129(a)(8).

## ARTICLE 5
## MEANS FOR IMPLEMENTATION OF THE TOGGLE PLAN

**5.1** **Substantive Consolidation**. On the Effective Date, the Assets and liabilities of the Debtors shall be deemed substantively consolidated for purposes of implementing the Toggle Plan. Other than for purposes of implementing the Toggle Plan, the Debtors and their Assets and liabilities shall not be deemed consolidated.

**5.2** **Transaction Overview**. Upon entry of for the Confirmation Order, the Toggle Plan and the Confirmation Order shall provide for (a) a consensual reorganization of the Debtors in accordance with Article 6 of the Toggle Plan if the Reorganization Toggle Requirements and the Pre-Confirmation Milestones are satisfied (the "**Reorganization Toggle**"), (b) a going concern sale of the Debtors' Assets in accordance with Article 7 of the Toggle Plan if the Reorganization Toggle Requirements and/or the Pre-Confirmation Milestones are not satisfied (the "**Going Concern 363 Sale Toggle**"), and/or (c) the sale or sales of each of the Debtors' business units and/or their respective Assets if the Plan Administrator does not receive a Going Concern 363 Sale Qualified Bid by the Going Concern 363 Sale Qualified Bid Deadline or does not close on such a sale following entry of a Going Concern 363 Sale Order on or before the Going Concern 363 Sale Order Deadline in accordance with Article 8 of the Toggle Plan (the "**Business Unit 363 Sale Toggle**").

**5.3** **Restructuring Transactions**. On or after the Confirmation Date, the Debtors or the Plan Administrator, as applicable, may take all actions consistent with this Toggle Plan as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by or necessary to effectuate the Restructuring Transactions under and in connection with this Toggle Plan, including (a) the execution and delivery of all appropriate agreements or other documents of merger, consolidation, sale, restructuring, conversion, disposition, transfer, dissolution or liquidation containing terms that are consistent with the Toggle Plan; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any Asset, property, interest, right, liability, debt or obligation on terms consistent with the Toggle Plan; (c) the filing of appropriate certificates or articles of organization, limited partnership, incorporation, formation, reincorporation, merger, consolidation, designation, conversion or dissolution pursuant to applicable law; and (d) the execution, delivery, filing, recordation and

59797.0007.18169739.1

issuance of any other documents, instruments or agreements in connection with the Restructuring Transactions.

The Confirmation Order shall and shall be deemed to, pursuant to sections 363 and 1123 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Toggle Plan, including the Restructuring Transactions.

**5.4**    **Sources of Consideration for Plan Distributions**. Except as otherwise provided in the Toggle Plan or the Confirmation Order, the Reorganized Debtors or the Plan Administrator, as applicable, shall fund distributions under the Toggle Plan with (i) Cash on hand from ongoing business operations and (ii)(a) the proceeds from the Pre-Confirmation Transactions and the New Equity Holder Contribution Amount (if any) under the Reorganization Toggle, (b) the proceeds from the Going Concern 363 Sale under the Going Concern 363 Sale Toggle, or (c) the proceeds from the Business Unit 363 Sale under the Business Unit 363 Sale Toggle.

**5.5**    **Vesting of Assets of the Debtors**. Except as otherwise provided in the Toggle Plan, or any agreement, instrument, or other document incorporated in the Toggle Plan, on the Effective Date, all property in each Estate, all the Estates' Causes of Action, all Executory Contracts and Unexpired Leases assumed, but not assigned, by any of the Debtors, and any property acquired by any of the Debtors, including Interests held by the Debtors in non-Debtor entities, shall, under the Reorganization Toggle, vest in the Reorganized Debtors, and, under the Going Concern 363 Sale Toggle and/or the Business Unit 363 Sale Toggle, revest in the Debtors or a purchaser of a particular Asset(s) pursuant to the Going Concern 363 Sale Order or the Business Unit 363 Sale Order, as applicable, free and clear of all Liens, Claims, charges, or other encumbrances unless expressly provided otherwise by the Toggle Plan, the Confirmation Order, Going Concern 363 Sale Order or the Business Unit 363 Sale Order, as applicable. For the avoidance of doubt, and without limiting this Section 5.5 of the Toggle Plan, Section 3.13 of the Toggle Plan shall not operate to extinguish or otherwise abandon Interests held by the Debtors in non-Debtor entities, including but not limited to KANS LLC, H&M Custom LLC, East Valley Development LLC, and Raft River Rechargeable Group LLC, all of which are expressly preserved and vested in the Debtors or Reorganized Debtors, as applicable, under this Section 5.5. On and after the Effective Date, the Reorganized Debtors or the Plan Administrator, as applicable, may operate the business of the Reorganized Debtors or the Debtors, as applicable, and may use, acquire, or dispose of property or the Estates' Assets, and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

**5.6**    **Authority**. The Reorganized Debtors or the Plan Administrator, as applicable, shall have the authority and right on behalf of the Debtors and the Estates and without the need for Bankruptcy Court approval (in each case, unless otherwise provided in the Toggle Plan) to carry out and implement all applicable provisions of the Toggle Plan, including to:

a.    review, reconcile, compromise, settle, or object to Claims and resolve such objections as set forth in the Toggle Plan, free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules;

59797.0007.18169739.1

    b.  calculate and make Distributions and calculate and establish reserves under and in accordance with the Toggle Plan;

    c.  subject to the limitations set forth in each of the toggles, retain, compensate, and employ professionals and other Persons to represent the Reorganized Debtors, Plan Administrator, and/or the Plan Administration Board, as applicable, with respect to and in connection with their respective rights and responsibilities;

    d.  establish, maintain, and administer documents and accounts of the Debtors, Reorganized Debtors, or Plan Administrator, as appropriate;

    e.  maintain, conserve, collect, settle, and protect the Debtors or Reorganized Debtors' Assets, as applicable, (subject to the limitations described herein);

    f.  sell, liquidate, transfer, assign, distribute, abandon, or otherwise dispose of the Assets (or any part thereof) of the Debtors, in the case of the Going Concern 363 Sale Toggle or the Business Unit 363 Sale Toggle and the Reorganized Debtors, in the case of the Reorganization Toggle;

    g.  negotiate, incur, and pay the Expenses of the Reorganized Debtors, the Plan Administrator, and/or the Plan Administration Board; and

    h.  prepare and file any and all informational returns, reports, statements, returns, and other documents or disclosures relating to the Debtors or Reorganized Debtors that are required under the Toggle Plan, by any governmental unit, or by applicable law, including but not limited to filing any reports required by the Bankruptcy Code or Bankruptcy Rules that are due to be filed after the Effective Date and paying any fees required by 28 U.S.C. § 1930 that are due to be paid after the Effective Date.

## 5.7 **Corporate Existence**.

   **5.7.1**  Except as otherwise provided in the Toggle Plan (including with respect to any Restructuring Transaction undertaken pursuant to the Toggle Plan) or any agreement, instrument, or other document incorporated in the Toggle Plan on and after the Effective Date of the Reorganization Toggle, each Debtor shall continue to exist as a Reorganized Debtor and as a separate corporation, limited liability company, partnership, or other form of entity, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form of entity, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other analogous formation documents) in effect before the Effective Date, except to the extent such certificate of incorporation and bylaws (or other analogous formation documents) are amended by the Toggle Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Toggle Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, federal law, or other non- bankruptcy law).

59797.0007.18169739.1

**5.7.2**        Notwithstanding but without limiting Section 5.7.1 of this Toggle Plan, following the Confirmation Date under the Going Concern 363 Sale Toggle and/or Business Unit 363 Sale Toggle, the Plan Administrator shall have the discretion to make any and all decisions regarding the Debtors' continued corporate existence following the consummation of the Going Concern 363 Sale or the Business Unit 363 Sale(s), as applicable. The Plan Administrator shall have the authority and right to make such decisions with respect to the Debtors' continued corporate existence without the need for Bankruptcy Court approval. Except if the Plan Administrator determines otherwise, in its discretion, on the Effective Date, under the Going Concern 363 Sale Toggle and/or Business Unit 363 Sale Toggle all persons acting as directors and/or officers of the Debtors (other than the Plan Administrator) shall be deemed to have resigned, their appointments shall be rescinded for all purposes, and their respective authority and power, in their capacities as such, shall be revoked, in each case, without the necessity of taking any further action in connection therewith.

**5.8**        <u>**Employee Obligations**</u>[2]. Except as (i) otherwise provided in the Toggle Plan (ii) identified on the Rejected Executory Contracts and Unexpired Leases Schedule; (iii) was rejected by the Debtors pursuant to a Bankruptcy Court order; or (iv) is the subject of a motion to reject pending on the date of the Confirmation Hearing:

**5.8.1**        In connection with the Reorganization Toggle,

a.        the Reorganized Debtors shall perform the obligations and exercise the rights of the Debtors under any Benefit Plan in the ordinary course consistent with the terms and conditions of any such Benefit Plan. Nothing in this Section 5.8.1(a) shall alter or limit the ability of the Reorganized Debtors to amend, modify or terminate any Benefit Plan consistent with the terms and conditions of any such Benefit Plan;

b.        to the extent the Debtors' Benefit Plans are executory contracts and (i) such executory contracts are not identified on the Rejected Executory Contracts and Unexpired Leases Schedule, (ii) were not previously rejected by a Final Order, pursuant to section 365 and 1123 of the Bankruptcy Code, or (iii) are not the subject of a motion to reject pending on the date of the Confirmation Hearing, each will be deemed assumed as of the Effective Date and the obligations thereunder shall be performed in the ordinary course consistent with the terms thereof; *provided*, that, the consummation of the Restructuring Transactions and any associated organizational changes shall not constitute a "change of control," "change in control," or other similar event under any of the above-listed written contracts, agreements, policies, programs and plans; and

c.        except as otherwise provided herein, on the Effective Date, each of the Debtors' Benefit Plans will be deemed assumed and shall become obligations of

---

[2] The Plan Proponents have relied on the Debtors' Plan and the related draft disclosure statement in addressing the Debtors' obligations to employees under the Toggle Plan. Given certain ambiguities in the Debtors' Plan, the Plan Proponents reserve the right to alter, amend, or otherwise modify the manner in which the Reorganized Debtors shall address the Debtors' obligations to employees, including workers compensation, under the Reorganization Toggle. Under the Toggle Plan, the Plan Administrator in a Sale Toggle shall have discretion to continue to honor, assume, assign, or reject the obligations to employees and/or related arrangements

59797.0007.18169739.1

the Reorganized Debtors in accordance with the terms and conditions of any such Benefit Plan.

**5.8.2**    In connection with the Going Concern 363 Sale Toggle and the Business Unit 363 Sale Toggle, the Plan Administrator, on behalf of the Debtors and their Estates, shall have the discretion to continue to perform, assume, assign, or reject the Debtors' Benefit Plans based on the best interests of the Debtors' Estates and the terms of the sale of the Debtors' Assets pursuant to the Going Concern 363 Sale Order or Business Unit 363 Sale Order. In no event shall the Plan Administrator be considered an employer of and of the Debtors' employees under any statute governing the employer-employee relationship or conduct in the workplace.

## 5.9    Workers Compensation Program.

**5.9.1**    In connection with the Reorganization Toggle, as of the Effective Date, the Reorganized Debtors shall continue to perform their obligations under (i) all applicable workers' compensation laws in jurisdictions in which the Reorganized Debtors operate or the Debtors previously operated; and (ii) the Debtors' (a) written contracts, agreements, and agreements of indemnity, in each case relating to workers' compensation, (b) self-insurer workers' compensation bonds, policies, programs, and plans for workers' compensation and (c) workers' compensation insurance policies and programs.

**5.9.2**    In connection with the Going Concern 363 Sale Toggle and the Business Unit 363 Sale Toggle, the Plan Administrator, on behalf of the Debtors and their Estates, shall have the discretion to continue to perform, assume, assign, or reject the obligations and/or arrangements identified in Section 5.9.1(i) of this Toggle Plan, and (ii) based on the best interests of the Debtors' Estates and the terms of the sale of the Debtors' Assets pursuant to the Going Concern 363 Sale Order or Business Unit 363 Sale Order.

## 5.10    Pursuit and Resolution of Estate's Causes of Action.

**5.10.1**    The Reorganized Debtors and the Plan Administrator, as applicable, may, and will have the exclusive right, power, and interest on behalf of the Debtors, and the Estates to institute, commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw any and all Estates' Causes of Action without any further order of the Bankruptcy Court, except as otherwise provided in the Toggle Plan. From and after the Effective Date, the Reorganized Debtors and the Plan Administrator, as applicable, in accordance with Bankruptcy Code section 1123(b)(3), shall serve as representative of the Estates with respect to any and all Causes of Action that were Estate Assets or Assets of a Debtor and shall retain and possess the right to institute, commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw, as appropriate, any and all Causes of Action in any court or other tribunal.

**5.10.2**    On or before the one year anniversary of the Confirmation Date, the Reorganized Debtors or the Plan Administrator, as applicable, shall have completed its review, analysis, and evaluation of the Estates' Causes of Action, including Avoidance Actions, and Filed a report with the Bankruptcy Court summarizing its conclusions and stating its intent to litigate, settle, transfer, release or abandon and/or compromise in any manner any and all such Causes of

59797.0007.18169739.1

Action and delivered such report to the Independent Board or Plan Administration Board, as applicable.

**5.11**   **No Successor Liability**. Except as otherwise expressly provided in the Toggle Plan or Confirmation Order, Plan Proponents, the Reorganized Debtors and the Plan Administrator, as applicable, (i) are not, and shall not be deemed to assume, agree to perform, pay, or otherwise have any responsibilities for any liabilities or obligations of the Debtors or any other Person relating to or arising out of the operations or the Assets of the Debtors prior to the Effective Date; (ii) are not, and shall not be, successors to the Debtors by any reason of any theory of law or equity or responsible for the knowledge or conduct of any Debtor prior to the Effective Date; and (iii) shall not have any successor or transferee liability of any kind or character.

**5.12**   **Preservation of Privileges and Defenses**. The actions taken by the Debtors, the Plan Proponents, the Reorganized Debtors, the Plan Administrator, the Plan Administration Board, as applicable, or any of their respective Related Parties, in connection with the Toggle Plan shall not be (or be deemed to be) a waiver of any privilege or defense of the Debtors, the Plan Proponents, the Reorganized Debtors, the Plan Administrator, or the Plan Administration Board as applicable, including any attorney-client privilege or work-product doctrine. Notwithstanding any Debtor or Plan Proponent providing any privileged information related to the Reorganized Debtors, or any Person associated with any of the foregoing, such privileged information shall be without waiver in recognition of the joint, common, or successor interest in prosecuting the Estate's Causes of Action and shall remain privileged. The Plan Proponents, the Reorganized Debtors, the Plan Administrator and the Plan Administration Board, as applicable, shall retain the right to waive their own privileges. Only the Reorganized Debtors and the Plan Administrator, as applicable, shall have the right to waive the attorney- client privilege, work-product doctrine, or other protections as to the Debtors and the Reorganized Debtors.

**5.13**   **Preservation of Rights of Action.**

**5.13.1 Maintenance of Avoidance Actions and Causes of Action**. Except as otherwise provided in the Toggle Plan or the Confirmation Order, from and after the Effective Date, the Reorganized Debtors and the Plan Administrator, as applicable, will retain all rights to institute, commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw, as appropriate, any and all of the Debtors', the Estates', or their Causes of Action (whether existing as of the Petition Date or thereafter arising), and all Avoidance Actions, in each case in any court or other tribunal, including in an adversary proceeding Filed in the Chapter 11 Cases. The Plan Administrator or the Reorganized Debtors, as applicable successors in interest to the Debtors, and the Estates, may, and will have the exclusive right, power, and interest on behalf of itself, the Debtors, and the Estates to, enforce, sue on, settle, compromise, transfer, or assign (or decline to do any of the foregoing) any or all of the Estates' Causes of Action, without notice to or approval from the Bankruptcy Court. In accordance with the Toggle Plan, and pursuant to Bankruptcy Code section 363 and Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, from and after the Effective Date, in connection with the (i) Reorganization Toggle, the Reorganized Debtors may compromise and settle the Estates' Causes of Action and (ii) the Going Concern 363 sale Toggle or the Business Unit 363 Sale Toggle, the Plan Administrator may compromise and settle the Estates' Causes of Action. .

59797.0007.18169739.1

**5.13.2  Preservation of All Estates' Causes of Action Not Expressly Settled or Released**. The failure to specifically identify in the Toggle Disclosure Statement or the Toggle Plan any potential or existing Avoidance Actions or Causes of Action of the Debtors, the Reorganized Debtors, or the Estates (collectively, the "**Estates' Causes of Action**") is not intended to and shall not limit the rights of the Reorganized Debtors or the Plan Administrator, as applicable, to pursue any such Avoidance Actions or Causes of Action. Unless a Cause of Action is expressly waived, relinquished, released, compromised, or settled in the Toggle Plan or any Final Order (including the Confirmation Order), such Causes of Action are preserved for later resolution by the Reorganized Debtors or the Plan Administrator, as applicable, including any Avoidance Actions or Causes of Action not specifically identified or of which the Debtors or the Plan Proponents may presently be unaware or that may arise or exist by reason of additional facts or circumstances unknown to the Debtors or the Plan Proponents at this time or facts or circumstances that may change or be different from those the Debtors or the Plan Proponents now believe to exist. As such, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches will apply to any such Avoidance Actions or Causes of Action upon or after Confirmation of the Toggle Plan based on the Toggle Disclosure Statement, the Toggle Plan, or the Confirmation Order, except when such Avoidance Actions or Causes of Action have been expressly released. In addition, the right to pursue or adopt any claims alleged in any lawsuit in which the Debtors is a plaintiff, defendant, or an interested party is fully reserved as against any Person that is not a Released Party, including the plaintiffs or co- defendants in such lawsuits.

**5.14    Cancellation of Instruments**. Except as otherwise provided in the Toggle Plan, except to the extent necessary to give effect to the treatment of any Holder of an Allowed Claim, and except with respect to any executory contracts and unexpired leases that are assumed under the Toggle Plan or otherwise assumed and assigned pursuant to a Final Order, any agreement, bond, certificate, contract, indenture, lease, note, security, warrant, or other instrument or document evidencing or creating any indebtedness or obligation of the Debtors shall be deemed cancelled on the Effective Date, and all Liens, mortgages, pledges, grants, trusts, and other interests relating thereto shall be automatically cancelled, and all obligations of the Debtors thereunder or in any way related thereto shall be released. To the extent that there is any conflict or ambiguity in the interpretation and application of Article III of the Toggle Plan and this Section 5.14, Article III shall control.

**5.15    Insurance Policies Remain in Force**. Up to and including their policy expiration date(s), any and all Insurance Policies in effect as of the Effective Date shall remain in full force and effect according to their terms and the coverage obligations of the insurers and third-party administrators under such Insurance Policies shall continue following the Effective Date (including any obligations to pay, defend, and process Insured Claims).

**5.16    Insurance Policies; Employment Practice Liability Policies**. Nothing contained in this Toggle Plan shall affect or impair the rights of any non- Debtor insured persons covered under any Insurance Policy, which expressly includes any director and officer, employment practices, or similar liability Insurance Policies (including, without limitation, policies for the benefit of the Debtors' directors, officers, employees, members, managers, or similar persons who served in such capacity either before or after the Petition Date).

59797.0007.18169739.1

**5.17**    **Intercreditor Agreements**. Under the Reorganization Toggle, the MetLife Intercreditor Agreements, RLOC-Conterra Intercreditor Agreement, and MetLife-Conterra Intercreditor Agreement shall remain enforceable in accordance with their terms, subject to reasonably acceptable amendments necessary to conform to the terms of the Toggle Plan. For the avoidance of doubt, the MetLife Intercreditor Agreements, the RLOC-Conterra Intercreditor Agreement, and the MetLife-Conterra Intercreditor Agreement shall remain enforceable in accordance with their terms under the Going Concern 363 Sale Toggle and the Business Unit 363 Sale Toggle.

**ARTICLE 6**
**REORGANIZATION TOGGLE**

**6.1**    **Reorganization Toggle Requirements**.

**6.1.1**    The Debtors will (a) withdraw any plan previously filed by the Debtors prior to February 14, 2025 (the "**Toggle Date**"), (b) execute and deliver a joinder agreement with the Plan Proponents agreeing to support and cooperate in the pursuit of the Toggle Plan (the "**Joinder Agreement**"), and (c) receive and deliver to the Plan Proponents a Joinder Agreement duly executed by or on behalf of each of the Existing Equity Holders (the "**Reorganization Toggle Requirements**").

**6.1.2**    If the Reorganization Toggle Requirements are not satisfied by the Toggle Date and/or the Pre-Confirmation Milestones are not met, the Toggle Plan will automatically and irrevocably switch to the sole pursuit of the Going Concern 363 Sale Toggle and the Plan Proponents shall pursue Confirmation and implementation of the Going Concern 363 Sale Toggle.

**6.2**    **Pre-Confirmation Milestones**. Notwithstanding the satisfaction of the Reorganization Toggle Requirements, in the event the Debtors fail to meet any of the following milestones (the "**Pre-Confirmation Milestones**"), subject to the express prior written waiver by each of the Non-Debtor Plan Proponents, the Toggle Plan will automatically and irrevocably switch to the sole pursuit of the Going Concern 363 Sale Toggle and the Plan Proponents shall pursue Confirmation and implementation of the Going Concern 363 Sale Toggle:

a.    On or before February 21, 2025, the Debtors shall file a motion for authority to commence the process to implement the Real Estate Sales and the Cash Equity Infusion (collectively, the "**Pre-Confirmation Transactions**").

b.    On or before February 24, 2025, the Debtors shall file a motion for an order by the Bankruptcy Court authorizing the Debtors to retain a real estate broker mutually acceptable to the Plan Proponents to conduct the Real Estate Sales.

c.    By March 1, 2025, the Debtors shall retain an executive recruitment firm that shall assist the Debtors in identifying three potential candidates for the position of chief financial officer of the Reorganized Debtors.

d.    No later than five (5) days prior to the Confirmation Hearing for the Toggle Plan, the Existing Equity Holders shall provide the Non-Debtor Plan

CHAPTER 11 PLAN - PAGE 77

Proponents with copies of their personal financial statements as of the date thereof and reaffirm their liability to the RLOC Agent under the Pre-Petition RLOC Credit Agreement.

      e.  On or before May 1, 2025, (a) the Bankruptcy Court shall enter orders authorizing the Debtors to consummate the Real Estate Sales with net proceeds of no less than Fifteen Million Six Hundred Thousand Dollars ($15,600,000) and (b) the Existing Equity Holders and/or their designees (collectively, the "**New Equity Holders**") shall have delivered binding commitments and statements of wherewithal (the "**Equity Commitment**") for Cash Equity Infusions totaling no less than Twenty-Nine Million Dollars ($29,000,000) (the "**Cash Equity Infusion**") in exchange for the New Common Stock.

      f.  On or before May 6, 2025, the Debtors shall have closed on the Real Estate Sales, which shall have generated net proceeds of no less than Fifteen Million, Six Hundred Thousand Dollars ($15,600,000); *provided* that if the Real Estate Sales and the Cash Equity Infusion, when combined with Cash on hand, would generate net proceeds to the Estates of less than Fifty-Three Million, Six Hundred Thousand Dollars ($53,600,000) in the aggregate (the "**Aggregate Cash Target**"), the Debtors and/or the Existing Equity Holders may obtain additional cash equity contributions from the New Equity Holders to achieve the Aggregate Cash Target.

  **6.3**  **Priority-GUC Reserve**. The Cash Equity Infusion shall be used for, among other things, funding Two Million, Eight Hundred Thousand Dollars ($2,800,000) million of Distributions to Holders of Allowed Class 1 Other Priority Claims and Allowed Class 9 General Unsecured Claims solely in connection with the Reorganization Toggle (the "**Priority-GUC Effective Date Distribution**"). Upon receipt of the proceeds of the Cash Equity Infusion, the Debtors shall segregate Two Million Eight Hundred Thousand Dollars ($2,800,000) therefrom for purposes of making the Priority-GUC Effective Date Distribution (the "**Priority-GUC Reserve**"). The Priority-GUC Reserve shall not be funded with any other proceeds or Assets of the Debtors' Estates and if not so funded in accordance with this Section 6.3 and the Toggle Plan, Holders of Allowed Class 1 Other Priority Claims and Allowed Class 9 General Unsecured Claims shall not be entitled to receive the Priority-GUC Effective Date Distribution.

  **6.4**  **Effective Date Reserve**. Upon completion of the Pre-Confirmation Transactions, and as a condition precedent to the Effective Date, the Debtors shall reserve the net proceeds from the Pre-Confirmation Transactions (after payment of applicable and reasonable expenses in respect of the Real Estate Sales) for the following, among other, uses on the Effective Date of the Reorganization Toggle (the "**Effective Date Reserve**"): (i) payment of the Allowed DIP Claims, in full; (ii) satisfaction of Allowed Administrative Claims, in full; (iii) pay down $8 million of the Allowed Class 4 MetLife Secured Claim, which includes a portion of the proceeds from the Real Estate Sales in full satisfaction of the mortgages and loans related to Canyonlands and McGregor; (iv) pay down $12.1 million of the Allowed Class 5 RLOC Secured Claims; (v) establishing the Priority-GUC Reserve; (vi) creation of a working capital reserve in the amount of $4 million for use by the Reorganized Debtors in accordance with a budget and terms and conditions reasonably acceptable to the Plan Proponents; and (vii) creation of the Animal Welfare Reserve (the "**Effective Date Distributions**").

59797.0007.18169739.1

**6.5** **Reorganized Holding Company**. Following entry of the Confirmation Order and prior to the Effective Date, the Debtors shall create MC Holdings LLC (or such other name acceptable to the New Equity Holders), an Idaho limited liability company ("**MC Holdings**") or such other corporate form acceptable to the Plan Proponents. On the Effective Date, each of the Debtors shall emerge as direct or indirect subsidiaries of MC Holdings.

**6.6** **Post-Effective Date Governance and Management**.

**6.6.1** **Initial Executive Officers.** On the Effective Date, the new executive officers of the Reorganized Debtors shall include, among others:

a. Chief Executive Officer. Mr. William Millenkamp will continue in his role as chief executive officer, with an annual market compensation to be agreed with the Independent Board and Plan Proponents prior to the Effective Date.

b. Chief Financial Officer. Within 30 days of the Effective Date, the Independent Board shall select and appoint a chief financial officer reasonably acceptable to the Plan Proponents who shall report directly to the Independent Board and have primary oversight of, among other things, the Reorganized Debtors' pursuit of a Successful Refinancing Event. For the avoidance of doubt, the Chief Financial Officer role may not be filled by any individual currently or formerly affiliated or employed by the Debtors or Kander LLC.

**6.6.2** **Independent Board**. On the Effective Date, the Reorganized Debtors, along with MC Holdings, shall emerge with a duly appointed Board of Directors comprised of 5 members (the "**Independent Board**"). The initial directors of the Independent Board shall be (a) Mr. William Millenkamp, for so long as he serves as Chief Executive Officer of the Reorganized Debtors; (b) an independent designee of the RLOC Agent, (c) an independent designee of the Creditors' Committee, and (d) two independent directors, either with industry or restructuring experience, in each case reasonably acceptable to Mr. Millenkamp, the independent designee of the RLOC Agent, and the independent designee of the Creditors' Committee. The Independent Board may be discharged upon the effectiveness of a Successful Refinancing Event.

**6.7** **Post-Effective New Common Stock Ownership**. Upon the Effective Date, as consideration for the Cash Equity Infusion, the New Equity Holders shall receive New Common Stock representing 100% of the issued and outstanding voting equity interests of MC Holdings, subject to dilution by the Reorganized Preferred Stock. On a fully diluted and as-converted basis, the New Common Stock received in connection with the Cash Equity Infusion shall represent 90% of the issued and outstanding voting equity interests of MC Holdings.

**6.8** **Post-Effective Reorganized Preferred Ownership**.

**6.8.1** Upon the Effective Date, subject to the New Equity Holder Reallocation, in full and final satisfaction of Allowed Class 9 General Unsecured Claims, Holders of Allowed General Unsecured Claims shall receive, on a Pro Rata basis, a beneficial interest in cumulative convertible redeemable perpetual non-voting preferred equity of MC Holdings (the "**Reorganized Preferred Stock**") that, on a fully diluted as-converted basis, shall represent 10% of the total outstanding New Common Stock (the "**Preferred GUC Allocation**"). On the Effective Date,

59797.0007.18169739.1

subject to the New Equity Holder Reallocation, if any, the Reorganized Preferred Stock shall have a par value of Ten Million Dollars ($10,000,000) (the "**Preferred Effective Date Par Value**").

      **6.8.2**   Prior to the Effective Date, the New Equity Holders shall have a non-assignable right to contribute Cash in an amount up to the Preferred Effective Date Par Value (such contribution, the "**New Equity Holder Contribution Amount**"), in which case the Preferred GUC Allocation shall be reduced on a dollar for dollar basis (the "**New Equity Holder Reallocation**"). The New Equity Holder Contribution Amount, if any, shall be deposited in the Priority-GUC Reserve for Distributions, on a Pro Rata basis, on the Effective Date, to Holders of Allowed Class 1 Other Priority Claims and Allowed Class 9 General Unsecured Claims. In the event that the New Equity Holder Reallocation is not exercised prior to the Effective Date, the Reorganized Preferred Stock shall not otherwise be redeemable except in accordance with the applicable certificate of designation which shall be filed in connection with the Toggle Plan Supplement.

      **6.8.3**   In the event that the New Equity Holders exercise the New Equity Holder Reallocation in accordance with this Section 6.8, in lieu of Reorganized Preferred Stock, the New Equity Holders shall receive New Common Stock representing the percentage ownership of the Preferred GUC Allocation that would have otherwise been issued to Holders of Allowed Class 9 General Unsecured Claims.

      **6.8.4**   The form of the certificate of designation for the Reorganized Preferred Stock shall be set forth in the Plan Supplement. The certificate of designation shall include, among other terms, (i) customary conversion rights and anti-dilution protections, (ii) a dividend of 5% per annum, paid quarterly, for perpetuity, *provided*, that dividends not declared and paid in cash in an applicable quarter will automatically be capitalized to the stated value of the Reorganized Preferred Stock, (iii) customary redemption rights in connection with designated liquidity events, and (iv) rights and procedures for the Reorganized Debtors and/or the New Equity Holders to redeem the Reorganized Preferred Stock, at their election.

      **6.9**   **Animal Welfare Reserve**. On the Effective Date, the Debtors and/or Reorganized Debtors shall deposit Two Million Dollars ($2,000,000) into a segregated account for the express purpose of ensuring the health, safety and welfare of the Reorganized Debtors' cattle herd (the "**Animal Welfare Reserve**"). On each month following the Effective Date, until the Exit RLOC Term Note is repaid in full, the Reorganized Debtors shall deposit Seven Hundred Fifty Thousand Dollars ($750,000) per month into the Animal Welfare Reserve until the Animal Welfare Reserve totals Five Million Dollars ($5,000,000) (the "**Animal Welfare Reserve Covenant**"). The Reorganized Debtors shall be permitted to use the Animal Welfare Reserve in accordance with a budget and conditions reasonably acceptable to the Non-Debtor Plan Proponents, subject to continued compliance with the Animal Welfare Reserve Covenant.

      **6.10**   **Post-Effective Date Milestones**. The Confirmation Order and the New Bylaws shall require compliance with the following milestones after the occurrence of the Effective Date:

      **6.10.1**   **Refinancing Milestones**:

          a.      Within 21 days of the Effective Date, the Independent Board, in consultation with the Chief Financial Officer, shall have engaged an acceptable investment

59797.0007.18169739.1

banker from a list of at least two (2) institutions acceptable to the Non-Debtor Plan Proponents and identified in the Toggle Plan Supplement (the "**List of Acceptable Investment Bankers**"), or another reputable institution acceptable to the Non-Debtor Plan Proponents.

b.      On or before September 30, 2026, the Independent Board shall have received all binding commitment letters from prospective financing sources in an amount sufficient to consummate and close on a Successful Refinancing Event (the "**Post-Effective Date Refinancing Commitment Milestone**").

c.      On or before December 31, 2026, the Reorganized Debtors shall have consummated and closed on a Successful Refinancing Event.

### 6.10.2  Post-Effective Strategic Sale Milestones:

a.      In the event that the Reorganized Debtors have not received a binding commitment for a Successful Refinancing Event by the Post-Effective Date Refinancing Commitment Milestone, or a Material Milestone Default occurs, the Independent Board shall engage an investment banker from the List of Acceptable Investment Bankers or another reputable institution acceptable to the Non-Debtor Plan Proponents to market and sell (i) the Reorganized Debtors as a going concern, (ii) the Reorganized Debtors' Assets, in whole or in part, and (iii) all or a portion of the equity in the Reorganized Debtors (the "**Post-Effective Date Strategic Sale**"). The Post-Effective Date Strategic Sale will be pursued in parallel with continued efforts to achieve a Successful Refinancing Event. A "**Material Milestone Default**" shall be deemed to have occurred if the Reorganized Debtors breach the Animal Welfare Reserve Covenant or the Exit RLOC Financial Covenants, either on three separate or two consecutive occasions unless waived or cured in accordance with Section 13.2 of this Toggle Plan.

b.      On or before January 31, 2027, the Independent Board shall receive all binding commitment letters that, among other things (a "**Post-Effective Date Qualified Bid**"), (i) are from reputable parties with demonstrated wherewithal to pay the purchase price at closing and maintain the welfare of animals, preserve jobs for employees, and pay vendors in accordance with ordinary course terms, as determined by the Independent Board, in its discretion and (ii) provide for a purchase price with net cash proceeds that, at closing, will be sufficient to repay the outstanding indebtedness under the Exit RLOC Term Note, and the Exit MetLife Term Note in full, without being subject to any reserves, holdbacks, or other deductions except to the extent that each of the RLOC Agent and MetLife agreed to lesser amount (the "**Post-Effective Date Qualified Sale Price**").

c.      If the Independent Board does not receive at least one Post-Effective Date Qualified Bid, the Independent Board will cause the Reorganized Debtors to immediately pursue the sale or sales of the Reorganized Debtors' business units and/or their Assets (a "**Post-Effective Date Business Unit Sale**").

d.      On or before March 31, 2027, the Reorganized Debtors shall have consummated and closed on the Post-Effective Date Strategic Sale and distributed the

59797.0007.18169739.1

applicable amounts of the Post-Effective Date Qualified Sale Price in accordance with applicable lawful and contractual Lien and payment priorities; *provided, however,* that in the event that the Reorganized Debtors are required to pursue a Post-Effective Date Business Unit Sale, the Reorganized Debtors shall have consummated and closed on the sale of: (i) substantially all non-real estate assets by no later than April 30, 2027 and (ii) all real estate assets by no later than July 1, 2027, with all net proceeds therefrom distributed in accordance with applicable lawful and contractual Lien and payment priorities and on a timeframe determined by the Independent Board but consistent with the Toggle Plan, the Confirmation Order, and the New Bylaws.

## ARTICLE 7
## GOING CONCERN 363 SALE TOGGLE

**7.1**     **Going Concern 363 Sale Toggle Event**. If the Debtors do not satisfy the Reorganization Toggle Requirements on or before the Toggle Date and/or fail to satisfy the Pre-Confirmation Milestones, the Toggle Plan shall automatically irrevocably be deemed to seek confirmation of a chapter 11 plan that embodies the Going Concern 363 Sale Toggle.

**7.2**     **Going Concern 363 Sale**. Following entry of the Confirmation Order and prior to the occurrence of the Effective Date, the Plan Administrator shall commence the Going Concern 363 Sale process as follows:

**7.2.1**     Within three (3) days of the Confirmation Date, the Plan Administrator shall have selected and retained an investment banker from the List of Acceptable Investment Bankers or another reputable institution acceptable to the Non-Debtor Plan Proponents to pursue a Going Concern 363 Sale;

**7.2.2**     Within forty-five (45) days of the Confirmation Date, the Plan Administrator shall have obtained an order from the Bankruptcy Court authorizing the retention of an investment banker identified on the List of Acceptable Investment Bankers or another reputable institution acceptable to the Non-Debtor Plan Proponents to pursue a Going Concern 363 Sale;

**7.2.3**     Within forty-five (45) days of the Confirmation Date, the Plan Administrator shall have obtained an order from the Bankruptcy Court approving bidding procedures for the Going Concern 363 Sale and Business Unit 363 Sale, which shall include, among other things, a requirement that all interested parties submit binding indications of interest for the Going Concern 363 Sale and/or the Business Unit 363 Sale (the "**Sale Toggle Bidding Procedures Order**") by the Going Concern 363 Sale Qualified Bid Deadline;

**7.2.4**     Within one hundred twenty (120) days from the entry of the Sale Toggle Bidding Procedures Order (the "**Going Concern 363 Sale Qualified Bid Deadline**"), the Plan Administrator shall receive all binding indications of interest, which shall include, among other things, a proposed purchase agreement; and

**7.2.5**     In the event that the Plan Administrator receives at least one Going Concern 363 Sale Qualified Bid on or before the Going Concern 363 Sale Qualified Bid Deadline, the Going Concern 363 Sale will be conducted as follows:

59797.0007.18169739.1

a.      The Plan Administrator and the Plan Administration Board shall evaluate and determine the highest or best Going Concern 363 Sale Qualified Bid (the "**Approved Going Concern 363 Sale Qualified Bid**");

b.      The Plan Administrator will file a notice of Approved Going Concern 363 Sale Qualified Bid ("**Notice of Approved Going Concern 363 Sale Qualified Bid**") with the Bankruptcy Court, attaching such Approved Going Concern 363 Sale Qualified Bid, and requiring all interested parties to provide the Plan Administrator with (i) notice of intent to provide a competing bid at auction and (ii) a binding commitment to satisfy the applicable overbid requirement ("**Going Concern 363 Sale Competition Notice**"). The Plan Administrator will require all interested parties to deliver a Going Concern 363 Sale Competition Notice within (5) days of filing a Notice of Approved Going Concern 363 Sale Qualified Bid (the "**Going Concern 363 Sale Competition Notice Deadline**").

c.      In the event that the Plan Administrator receives at least one Going Concern 363 Sale Competition Notice, the Plan Administrator shall schedule and conduct an auction within three (3) days of the Going Concern 363 Sale Competition Notice Deadline at which the Plan Administrator and Plan Administration Board shall select the Successful Going Concern 363 Sale Auction Bid.

d.      On or before 35 days after the Going Concern 363 Sale Competition Notice Deadline (the "**Going Concern 363 Sale Order Deadline**"), the Bankruptcy Court shall enter an order approving the Going Concern 363 Sale in accordance with the Approved Going Concern 363 Sale Qualified Bid, if no competing bids were submitted, or the Successful Going Concern 363 Sale Auction Bid, as the case may be (the "**Going Concern 363 Sale Order**").

e.      The Plan Administrator shall close the Going Concern 363 Sale no later than 3 days from entry of the Going Concern 363 Sale Order by the Bankruptcy Court.

**7.3      Allocation of Going Concern Sale Proceeds**. Except to the extent an executory contract or unexpired lease is assumed by the Going Concern 363 Sale purchaser, or a party agrees to different treatment with the Plan Administrator, the proceeds from a Going Concern 363 Sale shall be used to pay secured creditors and unsecured creditors in accordance with their respective lawful and contractual Lien and payment priorities.

## ARTICLE 8
## BUSINESS UNIT 363 SALE TOGGLE

**8.1      Business Unit 363 Sale Toggle Event**. In the event that the Plan Administrator does not receive at least one Approved Going Concern 363 Sale Qualified Bid on or before the Going Concern 363 Sale Qualified Bid Deadline or the Bankruptcy Court does not enter the Going Concern 363 Sale Order on or before the Going Concern 363 Sale Order Deadline, the Plan Administrator will proceed to sell the Assets of each of the Debtors, either as a separate business unit or individually. The Plan Administrator shall file with the Bankruptcy Court a notice

59797.0007.18169739.1

informing the Bankruptcy Court and other parties in interest that the Plan Administrator will proceed to implement the Business Unit 363 Sale Toggle (the "**Business Unit 363 Sale Toggle Notice**"). The Plan Administrator will complete the sale of the Debtors' Assets in the manner set forth herein, with all proceeds, net of reasonable expenses, deposited in a segregated, interest bearing account (the "**Business Unit 363 Sale Reserve Account**").

      **8.2**    **Qualified Business Unit 363 Sale Offers**. Following the Filing of the Business Unit 363 Sale Toggle Notice, the Plan Administrator shall commence the Business Unit 363 Sale process as follows:

      **8.2.1**    If, during the Going Concern 363 Sale process, the Plan Administrator received bids or expressions of interest from prospective purchasers for the acquisition of one or more, but not all, of the Debtors' business units ("**Business Unit 363 Sale Offers**"), the Plan Administrator and the Plan Administration Board shall evaluate such Business Unit 363 Sale Offers. If the Plan Administrator and the Plan Administrator determine, in consultation with the Plan Sale Professionals, that the Business Unit 363 Sale Offers, on an aggregated basis, equal or, in the reasonable opinion of the Plan Sale Professionals, in connection with an auction would reasonably likely equal or exceed, the Going Concern 363 Sale Qualified Bid amount ("**Qualified Business Unit 363 Sale Offers**"), the Plan Administrator will file a notice of intent to conduct a Business Unit 363 Sale auction ("**Business Unit 363 Sale Auction Notice**") with the Bankruptcy Court within fourteen (14) days of the Business Unit 363 Sale Toggle Notice. The Business Unit 363 Sale Auction Notice shall, among other things, (i) schedule the auction for no later than seven (14) days from the Business Unit 363 Sale Auction Notice, (ii) attach a schedule of the higher or best Qualified Business Unit 363 Sale Offers for each of the Debtors' business units, and (iii) require all interested parties to deliver a binding commitment to satisfy the applicable overbid requirement ("**Business Unit 363 Sale Competition Notice**") within (7) days of the date of the Business Unit 363 Sale Auction Notice (the "**Business Unit 363 Sale Competition Notice Deadline**"). The Plan Administrator shall have the discretion to establish bidding procedures designed to maximize the value of the Debtors' Estates and/or Assets, which procedures may take into account the costs and benefits of Qualified Business Unit 363 Sale Offers that seek to purchase a single business unit versus multiple business units.

      **8.2.2**    If, after receiving and reviewing all Business Unit 363 Sale Competition Notices, the Plan Administrator and the Plan Administration Board, in their discretion, elect to conduct a Business Unit 363 Sale auction, the Plan Administrator shall schedule and conduct such auction within three (3) days of the Business Unit 363 Sale Competition Notice Deadline. The Plan Administrator and the Plan Administration Board shall conduct the auction and select the highest or best offers, in their discretion.

      **8.2.3**    Within five (5) days of the completion of such auction, the Plan Administrator shall file a schedule with the Bankruptcy Court identifying the final results for the Business Unit 363 Sales (the "**Successful Business Unit 363 Sales Offers**") and scheduling a hearing to approve such offers no later than thirty (30) days after the Business Unit 363 Sale Competition Notice Deadline (the "**Business Unit 363 Sale Order Deadline**"), at which time the Bankruptcy Court shall enter an order approving the Business Unit 363 Sale(s) in accordance with the Successful Business Unit 363 Sale Offers be (the "**Business Unit 363 Sale Order**").

59797.0007.18169739.1

8.2.4    The Plan Administrator shall close the Business Unit 363 Sales no later than three (3) days from entry of the Business Unit 363 Sale Order by the Bankruptcy Court.

**8.3    No Qualified Business Unit 363 Sale Offers**.

8.3.1    If the Plan Administrator does not receive Qualified Business Unit 363 Sale Offers or the Bankruptcy Court does not enter the Business Unit 363 Sale Order on or before the Business Unit 363 Sale Order Deadline, the Plan Administrator shall commence sales of the Debtors' Assets as set forth below:

a.    By no later than one hundred twenty (120) days after the filing of the Business Unit 363 Sale Toggle Notice with the Bankruptcy Court, the Plan Administrator shall have completed the sale of the Debtors' cattle herd and livestock;

b.    By no later than one hundred fifty (150) days of after the filing of the Business Unit 363 Sale Toggle Notice with the Bankruptcy Court, the Plan Administrator shall have completed the sale of the Debtors' dairy inventory, feed, medicine, supplements, and other inventory;

c.    By no later than one hundred eighty (180) days after the filing of the Business Unit 363 Sale Toggle Notice with the Bankruptcy Court, the Plan Administrator shall have completed the sale or abandonment of substantially all of the Debtors' equipment and vehicles; and

d.    By no later than two hundred seventy (270) days of after the filing of the Business Unit 363 Sale Toggle Notice with the Bankruptcy Court, the Plan Administrator shall have completed the sale or abandonment of the Debtors' real estate, subject to reasonable extensions to permit the sale or abandonment of any miscellaneous and/or remaining Assets.

8.3.2    The Plan Administrator shall not be required to obtain approval of the Business Unit 363 Sales conducted pursuant to Section 8.3.1, *provided* that the Plan Administrator shall be required to file monthly reports with the Bankruptcy Court pursuant to which the Plan Administrator shall disclose the Assets sold in each category identified in Section 8.3.1 and the aggregate net purchase price agreed to for such Assets, a copy of which shall be provided to each Plan Proponent.

**8.4    Distribution of Business Unit 363 Sale Proceeds**.

8.4.1    Except to the extent a party agrees to different treatment, the proceeds from Business Unit 363 Sales shall be used to pay secured creditors and unsecured creditors in accordance with their respective lawful and contractual Lien and payment priorities.

8.4.2    The Plan Administrator and the Plan Administration Board shall, in their reasonable, determine the applicable Distribution Dates for proceeds of Business Unite 363 Sales generated pursuant to Section 8.3; *provided* that the Plan Administrator shall be required to make final Distributions no later than 1-year from the date of the Business Unit 363 Sale Toggle Notice, except to the extent that the Plan Administrator has, upon motion to the Bankruptcy Court with

59797.0007.18169739.1

notice to the Plan Administration Board and Plan Proponents, obtained entry of an order granting an extension of such Distribution deadline.

8.4.3    Notwithstanding the foregoing, the Holders of Allowed Class 4 MetLife Secured Claims and Allowed Class 5 RLOC Secured Claims may, upon motion to the Bankruptcy Court, with notice to the Plan Administrator, seek entry of an order from the Bankruptcy Court authorizing and directing the Plan Administrator to make earlier Distributions to the extent that the Bankruptcy Court finds that such Distributions would be reasonably likely to reduce interest expense to the Debtors' estates, or for other cause shown.

## ARTICLE 9
## CORPORATE GOVERNANCE UNDER THE GOING CONCERN 363 SALE TOGGLE AND THE BUSINESS UNIT 363 SALE TOGGLE

9.1    **Corporate Governance**. Upon entry of the Confirmation Order in connection with the Going Concern 363 Sale Toggle or the Business Unit 363 Sale Toggle, the Plan Administrator shall be entrusted with managing the Debtors' operations and the sale of the Debtors' Assets under the Going Concern 363 Sale Toggle and the Business Unit 363 Sale Toggle, as applicable, subject to oversight by the Plan Administration Board. The Plan Proponents will designate the identity of the Plan Administrator in the Toggle Plan Supplement.

9.2    **Plan Administrator Authority**.

9.2.1    In accordance with and subject to the terms of the Toggle Plan, and in addition to the authority granted under Section 5.6 of the Toggle Plan, the Plan Administrator will be vested, subject to the authority of the Plan Administration Board, with complete corporate control over the Debtors, their operations, and their Assets and shall, among other things:

a.    control and administer the Debtors' Assets and businesses in accordance with and pursuant to the terms of the Going Concern 363 Sale Toggle and/or the Business Unit 363 Sale Toggle, as applicable;

b.    conduct, negotiate, authorize, implement, consummate, and close the transactions contemplated under the Going Concern 363 Sale Toggle, the Business Unit 363 Sale Toggle, the Going Concern 363 Sale Order, and the Business Unit 363 Sale Order; as applicable;

c.    have the power and authority to retain, as an expense of the Debtors and their Estates, and to dismiss the Plan Sales Professionals, attorneys, advisors, accountants, investment bankers, auctioneers, and other professionals and employees as may be appropriate to perform the duties, functions, responsibilities, and obligations required of the Plan Administrator under the Confirmation Order, the Going Concern 363 Sale Toggle, the Business Unit 363 Sale Toggle, the Going Concern 363 Sale Order, or the Business Unit 363 Sale Order, in each case within the Plan Administrator's reasonable discretion, unless otherwise set forth in the Toggle Plan;

d.    have the power and authority to obtain credit and incur debt, as appropriate or necessary to assist the Plan Administrator in administering the Debtors'

59797.0007.18169739.1

Assets and business and in otherwise performing the function, responsibilities, and obligations required of the Plan Administrator under the Confirmation Order, the Going Concern 363 Sale Toggle, the Business Unit 363 Sale Toggle, the Going Concern 363 Sale Order, or the Business Unit 363 Sale Order;

e.      evaluate and determine strategy with respect to the Contingent Claims, Disputed Claims, Unliquidated Claims, Disputed Cure Claims, and the Estates' Causes of Action, and to litigate, settle, transfer, release or abandon and/or compromise in any manner any and all such Claims or Causes of Action on any terms and conditions as it may determine in good faith based on the best interests of the Debtors' Estates;

f.      make all calculations of amounts for or relating to Distributions for Holders of Allowed Claims to be made from the Debtors or for reserves for Holders of Contingent Claims, Disputed Claims, and Unliquidated Claims and Disputed Cure Claims to be established under the Toggle Plan, and, may establish and holdback from Distributions reasonable reserves for other contingencies;

g.      make Distributions to Holders of Allowed Claims as provided in the Toggle Plan, the Confirmation Order, the Going Concern 363 Sale Order, or the Business Unit 363 Sale Order;

h.      have the right to receive reasonable compensation for performing services as the Plan Administrator and, in consultation with the Plan Administration Board, to pay the reasonable fees, costs and expenses of the Plan Administration Board and its members, any Plan Sales Professionals, attorneys, advisors, accountants, investment bankers, auctioneers, and other professionals and employees as may be contemplated or necessary to assist the Plan Administrator in performing the functions, responsibilities, and obligations required of the Plan Administrator under the Confirmation Order, the Going Concern 363 Sale Toggle, the Business Unit 363 Sale Toggle, the Going Concern 363 Sale Order, or the Business Unit 363 Sale Order;

i.      File, litigate, settle, compromise, or withdraw any objection to Claims as permitted under the Going Concern 363 Sale Toggle or the Business Unit 363 Sale Toggle;

j.      be considered the representative of the Debtors and their Estates as contemplated or necessary to assist the Plan Administrator in performing the functions, responsibilities, and obligations required of the Plan Administrator under the Confirmation Order, the Going Concern 363 Sale Toggle, the Business Unit 363 Sale Toggle, the Going Concern 363 Sale Order, or the Business Unit 363 Sale Order;

k.      have the right to File with the Bankruptcy Court and/or provide periodic reports and updates to creditors regarding the status of the administration of the Debtors' Assets, as contemplated or necessary to assist the Plan Administrator in performing the functions, responsibilities, and obligations required of the Plan Administrator under the Confirmation Order, the Going Concern 363 Sale Toggle, the Business Unit 363 Sale Toggle, the Going Concern 363 Sale Order, or the Business Unit 363 Sale Order; and

59797.0007.18169739.1

l.        have the right to File any papers with the Bankruptcy Court or any other court of competent jurisdiction as contemplated, appropriate, or necessary to assist the Plan Administrator in performing the function, responsibilities, and obligations required of the Plan Administrator under the Confirmation Order, the Going Concern 363 Sale Toggle, the Business Unit 363 Sale Toggle, the Going Concern 363 Sale Order, or the Business Unit 363 Sale Order, including a motion for entry of a Final Decree (at the appropriate time).

**9.2.2    Plan Administration Board.** Upon entry of the Confirmation Order, a board (the "**Plan Administration Board**") will be established to oversee the Plan Administrator on certain matters, including, (i) instructing and supervising the Plan Administrator with respect to its responsibilities under the Toggle Plan and reviewing and approving decisions of the Plan Administrator, (ii) reviewing and approving the Plan Administrator's selection of Plan Sale Professionals, (iii) reviewing and approving proposals for the sale and/or other monetization of the Debtors' Assets, (iv) Approving the prosecution of Avoidance Actions, Causes of Action, and adversary and other proceedings, including approving proposed settlements thereof, (v) reviewing and approving objections to and proposed settlements of Claims, and (vi) performing such other duties as the Plan Administration Board determines may be necessary and proper to assist the Plan Administrator and the Plan Administrator's retained professionals.

**9.2.3**    The Plan Administration Board shall be comprised of (i) an independent designee of the RLOC Agent, (ii) an independent designee of MetLife, and (iii) an independent designee of the Creditors' Committee. The Toggle Plan Supplement shall provide the names and professional biographies for each designee.

**9.3    GUC Backstop**. Under the Going Concern 363 Sale Toggle and the Business Unit 363 Sale Toggle, the RLOC Agent will agree to subordinate up to Four Million Five Hundred Twenty Three Thousand Dollars ($4,523,000) (the "**GUC Backstop Amount**") of its Allowed Class 5 RLOC Secured Claims to enable Holders of Allowed Class 1 Other Priority Claims and Allowed Class 9 General Unsecured Claims to receive a recovery in an amount in Cash not less than they would receive in a liquidation based on the Debtors' Liquidation Analysis as follows:

**9.3.1**    Prior to the Effective Date, the RLOC Agent shall designate certain of its Collateral or proceeds thereof (at the discretion of the RLOC Agent, in consultation with the Plan Administrator), with an appraised value of an amount necessary to fund the GUC Backstop Amount (the "**Designated GUC Backstop Assets**");

**9.3.2**    On the Effective Date, solely with respect to the Designated GUC Backstop Assets, (i) the RLOC Agent shall cause a limited release of the applicable Pre-Petition RLOC Liens with respect to such Designated GUC Backstop Assets, and (ii) Conterra shall cause a limited release of the applicable Pre-Petition Mezz Liens with respect to such Assets, *provided* that in the event Conterra does not grant such limited Lien release, the RLOC Agent, in its capacity as attorney-in-fact for Conterra pursuant to section 2.9.1 of the RLOC-Conterra Intercreditor Agreement, shall cause such limited release of the Pre-Petition Mezz Liens.

59797.0007.18169739.1

9.3.3    Once the GUC Backstop is fully funded, proceeds of the Pre-Petition RLOC Collateral from a Going Concern 363 Sale or Business Unit 363 Sale as well as proceeds from Avoidance Actions shall be allocated as follows (the "**GUC Backstop True-Up**"):

    a.    first, to the RLOC Agent in an amount equal to the Allowed Class 5 RLOC Secured Claim, less the GUC Backstop Amount;

    b.    second, to Conterra, in an amount equal to the GUC Backstop Amount;

    c.    third, to the RLOC Agent until the Allowed Class 5 RLOC Secured Claims have been paid in full;

    d.    fourth, to Conterra until the Allowed Class 6 Secured Mezz Claims have been paid in full; and

    e.    fifth, to Holders in accordance with the their respective lawful and contractual Lien and payment priorities.

**9.4    Avoidance Actions**. Avoidance Actions and other Causes of Action that are not otherwise expressly released by the Toggle Plan and their proceeds shall be preserved for the benefit of Allowed Other Priority Claims and Allowed General Unsecured Claims, subject to repayment of the GUC Backstop True-Up.

### ARTICLE 10
### EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**10.1    Assumption and Rejection of Executory Contracts and Unexpired Leases**.

### 10.1.1    Reorganization Toggle

    a.    On the Effective Date of the Reorganization Toggle, except as otherwise provided herein, all Executory Contracts or Unexpired Leases not otherwise assumed or rejected will be deemed assumed by the applicable Reorganized Debtor with and 1123 of the Bankruptcy Code, other than those Executory Contracts and Unexpired Leases that (i) are identified on the Rejected Executory Contracts and Unexpired Leases Schedule; (ii) have been previously rejected by a Final Order; (iii) have been previously assumed or assumed and assigned by a Final Order; (iv) are the subject of a motion to reject Executory Contracts or Unexpired Leases that is pending on the Confirmation Date; (v) which the Debtors have, as of the Confirmation Date, received authority to reject pursuant to an order of the Bankruptcy Court with the effective date of such rejection is after the Effective Date; *provided*, that, nothing in the Toggle Plan or Confirmation Order shall constitute an admission or finding that any plan or agreement referenced in the immediately preceding clauses constitutes an Executory Contract; and *provided further*, that the Reorganized Debtors reserve the right to seek enforcement of or other relief with respect to an assumed or assumed and assigned Executory Contract or Unexpired Lease following the Confirmation Date, including but not limited to seeking an order of the Bankruptcy Court for the rejection of such Executory Contract or Unexpired Lease for cause. The terms of any Final Order

59797.0007.18169739.1

entered by the Bankruptcy Court prior to the entrance of the Confirmation Order that provide for the assumption and assignment of nonresidential real property shall control over the terms of the Toggle Plan and Confirmation Order.

b.    Entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumptions and rejections of such Executory Contracts or Unexpired Leases as set forth in the Toggle Plan, the Assumed Executory Contracts and Unexpired Leases Schedule, and the Rejected Executory Contracts and Unexpired Leases Schedule, pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Except as otherwise specifically set forth herein, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Toggle Plan are effective as of the Effective Date.

c.    Each Executory Contract or Unexpired Lease assumed pursuant to the Toggle Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the applicable contracting Reorganized Debtor in accordance with its terms, except as such terms may have been modified by any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law (in each case, in accordance with applicable law, including by consent of the counterparty to such Executory Contract or Unexpired Lease). Subject to applicable law, including section 365(d)(4) of the Bankruptcy Code, any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by a Final Order of the Bankruptcy Court on or after the Effective Date but may be withdrawn, settled, or otherwise prosecuted by the Reorganized Debtors, with any such disposition to be deemed to effect an assumption, assumption and assignment, or rejection, as applicable, as of the Effective Date.

d.    To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Toggle Plan restricts, conditions or prevents, or purports to restrict, condition or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such Executory Contract or Unexpired Lease (including any "anti-assignment," "change of control," consent right, or similar provision), then such provision shall be deemed modified such that the transaction contemplated by the Toggle Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto. The consummation of the Toggle Plan and the implementation of the Restructuring Transactions are not intended to, and shall not, constitute a "change of control," "change in control," or other similar event under any lease, contract, or agreement to which a Debtor is a party.

**10.1.2  Going Concern 363 Sale Toggle and Business Unit 363 Sale Toggle**. Subject to the Plan Administrator's compliance with section 365 of the Bankruptcy Code, the Toggle Plan and the Confirmation Order, the Plan Administrator shall have the right to enforce Section 10.1.1 in connection with, and based upon the outcome of, the completion of the Going Concern 363 Sale Toggle or Business Unit 363 Sale Toggle.

**10.2  Claims Based on Rejection of Executory Contracts or Unexpired Leases**. Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or

Unexpired Leases, if any, must be Filed with the Bankruptcy Court by the later of thirty (30) days from (i) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, and (ii) the effective date of the rejection of such Executory Contract or Unexpired Lease. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed within such time shall be Disallowed pursuant to the Confirmation Order, forever barred from assertion, and shall not be enforceable against, as applicable, the Debtors, the Reorganized Debtors (if applicable), the Estates, or property of the foregoing parties, without the need for any objection by the Debtors, Reorganized Debtors, or Plan Administrator, as applicable, or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules, if any, or a Proof of Claim to the contrary.** Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Section 3.11 of this Toggle Plan, and such claims may be objected to in accordance with this Toggle Plan.

**10.3    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases**. The Debtors or the Reorganized Debtors, as applicable, shall pay Cure Claims that are not subject to an Assumption Dispute on the Effective Date, or to the extent necessary, no later than three (3) Business Days following the Effective Date, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. The Reorganized Debtors or the Plan Administrator, as applicable, may settle any Cure Claim on account of any Executory Contract or Unexpired Lease without any further notice to or action, order, or approval of the Bankruptcy Court.

**10.3.1** Except as set forth below, any Cure Claims shall be satisfied for the purposes of section 365(b)(1) of the Bankruptcy Code by payment in Cash of the cure amount set forth on the Assumed Executory Contracts or Unexpired Leases Schedule, as applicable, for the applicable Executory Contract or Unexpired Lease, or on such other terms as the parties to such Executory Contracts or Unexpired Leases and the Debtors, the Reorganized Debtors, or the Plan Administrator, as applicable, may otherwise agree or as determined by the Bankruptcy Court by a Final Order. Any Cure Claim shall be deemed fully satisfied, released, and discharged upon payment by the Debtors or the Reorganized Debtors of such Cure Claim, as applicable.

**10.3.2** Unless otherwise provided by an order of the Bankruptcy Court:

a.    In connection with the Reorganization Toggle, the Plan Proponents have attached as schedules their initial Assumed Executory Contracts[3] and Unexpired Leases Schedule and Rejected Executory Contracts and Unexpired Leases Schedule. In further connection with the Reorganization Toggle, the Plan Proponents shall file their final Assumed Executory Contracts and Unexpired Leases Schedule and Rejected Executory Contracts and Unexpired Leases Schedule no later than fourteen (14) days prior

---

[3] According to the Debtors' Disclosure Statement, the Debtors have made their final decision on assumption or rejection of their contracts with EVD and have made the decision to assume such contracts. As such, such contracts are on the Assumed Executory Contracts and Unexpired Leases Schedule and will remain on such schedule.

CHAPTER 11 PLAN - PAGE 91

to the earlier to occur of (a) the Voting Deadline and (b) the deadline for objecting to the Reorganization Toggle of the Toggle Plan, which shall supersede the initial schedule if any such initial schedule is filed. In connection with the Reorganization Toggle, the Plan Proponents shall cause all Filed Assumed Executory Contracts and Unexpired Leases Schedules and Rejected Executory Contracts and Unexpired Leases Schedules or notices of proposed assumption, proposed amounts of Cure Claims, and proposed rejections to be served by first class mail on counterparties to Executory Contracts and Unexpired Leases to be assumed or rejected pursuant to the Toggle Plan that are identified in such schedule. The Plan Proponents s may supplement or modify the Assumed Executory Contract and Unexpired Leases Schedule or Rejected Executory Contracts and Unexpired Leases Schedule up to one (1) Business Day prior to the Confirmation Hearing for the Reorganization Toggle of the Toggle Plan. Any objection to the assumption or rejection of an Executory Contract or Unexpired Lease under the Reorganization Toggle of the Toggle Plan must be Filed, served and actually received by the Debtors by the later of (1) the Confirmation Objection Deadline or (2) with respect to any Executory Contract or Unexpired Lease that is added to the Assumed Executory Contract and Unexpired Leases Schedule after the date that is fourteen (14) days prior to the Confirmation Objection Deadline, the date that is fourteen (14) days following the filing of the relevant supplement to the Assumed Executory Contract and Unexpired Leases Schedule.

    b.  In connection with the Going Concern 363 Sale Toggle and/or Business Unit 363 Sale Toggle, the Plan Administrator shall, subject to further Order from the Bankruptcy Court, file its Assumed Executory Contracts and Unexpired Leases Schedule and Rejected Executory Contracts and Unexpired Leases Schedule no later than fourteen (14) days prior to the hearing to consider the Plan Administrator's request for entry of the Going Concern 363 Sale Order or Business Unit 363 Sale Order, as applicable. The Plan Administrator shall cause all Filed Assumed Executory Contracts and Unexpired Leases Schedules and Rejected Executory Contracts and Unexpired Leases Schedules or notices of proposed assumption, proposed amounts of Cure Claims, and proposed rejections to be served by first class mail on counterparties to Executory Contracts and Unexpired Leases to be assumed or rejected pursuant to the Toggle Plan that are identified in such schedule. Any objection to the assumption or rejection of an Executory Contract or Unexpired Lease under the Going Concern 363 Sale Toggle or the Business Unit 363 Sale Toggle must be Filed, served and actually received by the Plan Administrator no later than two (2) Business Days prior to hearing to consider the Going Concern 363 Sale Order or the Business Unit 363 Sale Order.

**10.3.3  Any party that fails to timely object to the assumption of its Executory Contract or Unexpired Lease (including the ability of the applicable Reorganized Debtor or assignee to provide "adequate assurance of future performance" under such Executory Contract or Unexpired Lease within the meaning of section 365 of the Bankruptcy Code) or the amount of the Cure Claim listed on the Assumed Executory Contracts and Unexpired Leases Schedule as set forth in the paragraph above, shall be (i) deemed to have consented to the assumption of its Executory Contract or Unexpired Lease and to such Cure Claim and (ii) forever barred, estopped, and enjoined from disputing the amount of the Cure Claim set forth on the Assumed Executory Contracts and Unexpired Leases (including a cure amount**

59797.0007.18169739.1

**of $0.00) and/or from asserting any Claim against the applicable Debtor or Reorganized Debtor arising under section 365(b)(1) of the Bankruptcy Code.**

**10.3.4**  Assumption of any Executory Contract or Unexpired Lease pursuant to the Toggle Plan or otherwise, subject to the payment of the applicable Cure Claim, shall result in the full release and satisfaction of any Claims or defaults against the Debtors and/or Reorganized Debtors, as applicable, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date that the Debtors and/or Reorganized Debtors, as applicable, assume such Executory Contract or Unexpired Lease; *provided*, that the Debtors or the Reorganized Debtors, as applicable, will remain obligated to pay any accrued but unbilled amounts under any such assumed Executory Contract or Unexpired Lease to the extent that such unbilled amounts were not due to be billed prior to the date of assumption. Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court upon payment of the applicable Cure Claim.

**10.4**   **Assumption Dispute Resolution**. In the event of a timely Filed objection regarding (i) the amount of any Cure Claim; or (ii) any other matter pertaining to assumption or payment of a Cure Claim required by section 365(b)(1) of the Bankruptcy Code, including an objection premised on the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under an Executory Contract or Unexpired Lease to be assumed, such dispute (an "**Assumption Dispute**") shall be resolved by a Final Order of the Bankruptcy Court, which in the case of the Reorganization Toggle may be the Confirmation Order, or in the case of the Going Concern 363 Sale Toggle or Business Unit 363 Sale Toggle by a Final Order entered by the Bankruptcy Court prior to the closing of such a sale, which may be the Going Concern 363 Sale Order or Business Unit 363 Sale Order, as applicable, or as may be agreed upon by the Debtors, the Reorganized Debtors, or the Plan Administrator, as applicable, and the counterparty to the Executory Contract or Unexpired Lease.

**10.4.1**  To the extent an Assumption Dispute relates solely to the amount of a Cure Claim, the Reorganized Debtors or Plan Administrator, as applicable, may assume and/or assume and assign the applicable Executory Contract or Unexpired Lease prior to the resolution of such Assumption Dispute; *provided*, that the Reorganized Debtors or the Plan Administrator, as applicable, reserve Cash in an amount sufficient to pay the full amount reasonably asserted as the required cure payment by the counterparty or counterparties to such Executory Contract or Unexpired Lease. To the extent that the Assumption Dispute is resolved or determined unfavorably to the Estates, the Reorganized Debtors or the Plan Administrator, as applicable, may reject the applicable Executory Contract or Unexpired Lease after such determination, which rejection shall supersede, nullify, and render of no force or effect the earlier assumption and/or assumption and assignment.

**10.4.2**  For the avoidance of doubt, if the Debtors are unable to resolve an Assumption Dispute relating solely to the amount of a Cure Claim prior to the Confirmation Hearing, such Assumption Dispute may be scheduled to be heard by the Bankruptcy Court after

59797.0007.18169739.1

the Confirmation Hearing, or, if in connection with the Going Concern 363 Sale Toggle or the Business Unit 363 Sale Toggle, at the hearing to consider entry of the Going Concern 363 Sale Order or the Business Unit 363 Sale Order, as applicable, subject to further Order from the Bankruptcy Court.

**10.5** **Contracts and Leases Entered into After the Petition Date**. Unless otherwise rejected pursuant to the Toggle Plan, contracts and leases entered into after the Petition Date by the Debtors, including any Executory Contracts and Unexpired Leases assumed by the Debtors, and not assigned to a non-Debtor Entity, will be performed by the Debtors or the Reorganized Debtors in the ordinary course of its operations.

**10.6** **Modifications, Amendments, Supplements, Restatements, or Other Agreements**. Unless otherwise provided in the Toggle Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Toggle Plan.

Modifications, amendments, and supplements to, or restatements of, prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

**10.7** **Reservation of Rights**. Neither the inclusion of any Executory Contract or Unexpired Lease on the Debtors' Schedules, the Assumed Executory Contracts and Unexpired Leases Schedule or the Rejected Executory Contracts and Unexpired Leases Schedule, nor anything contained in the Toggle Plan, shall constitute an admission by the Debtors, the Reorganized Debtors, or the Plan Administrator that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Debtor or Reorganized Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors, or, after the Effective Date, the Reorganized Debtors or the Plan Administrator, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease. For the avoidance of doubt, the Debtors reserve all rights with respect to any Causes of Action or other right with respect to any Executory Contract or Unexpired Lease.

**10.8** **Nonoccurrence of Effective Date**. If the Effective Date fails to occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to further extend the deadline for assuming or rejecting Unexpired Leases under section 365(d)(4) of the Bankruptcy Code.

**ARTICLE 11**
**PROVISIONS GOVERNING DISTRIBUTIONS**

**11.1** **Timing of Distributions for Allowed Claims**. Except as otherwise provided herein or as ordered by the Bankruptcy Court, all Distributions to Holders of Allowed Claims as

59797.0007.18169739.1

of the applicable Distribution Date shall be made on or as soon as practicable after the applicable Distribution Date. Distributions made as soon as reasonably practicable after the Effective Date, or such other date set forth herein shall be deemed to have been made on such date.

**11.2** **Calculating Distributions and Related Matters**. The Reorganized Debtors or the Plan Administrator, as applicable, shall undertake in their reasonable discretion to make in accordance with the Toggle Plan all calculations of amounts for or relating to Distributions for Holders of Allowed Claims to be made from the Debtors, Reorganized Debtors or for reserves for Holders of Contingent Claims, Disputed Claims, and Unliquidated Claims and Disputed Cure Claims to be established by the Reorganized Debtors or the Plan Administrator, as applicable, and, may establish and holdback from Distributions reasonable reserves for other contingencies.

**11.3** **Interest and Other Amounts Regarding Claims**. Except to the extent provided in Bankruptcy Code section 506(b) and Allowed by a Final Order or otherwise agreed, (i) in the Toggle Plan, or (ii) in the Confirmation Order, post-petition interest shall not accrue or be paid on any Claims, and no Holder of an Allowed Claim shall be entitled to interest, penalties, fees, or late charges accruing or chargeable on any Claim from and after the Petition Date. Without limiting the foregoing, the Holders of Allowed Class 4 MetLife Secured Claims, Holders of Allowed Class 5 RLOC Secured Claims, and Holders of Allowed Class 6 Conterra Secured Claims shall be entitled to post-petition interest, penalties, fees and/or late charges accruing or chargeable on such Secured Claims from and after the Petition Date.

**11.4** **Means of Cash Payment**. Cash payments under the Toggle Plan shall be made, at the option and in the sole discretion of the Reorganized Debtors or the Plan Administrator, as applicable, by checks drawn on or wire transfer, electronic funds transfer, or ACH from a domestic bank. Cash payments to foreign Creditors may be made, at the option and in the sole discretion of the Reorganized Debtors or the Plan Administrator, as applicable, by such means as are necessary or customary in a particular foreign jurisdiction. Cash payments made pursuant to the Toggle Plan in the form of checks shall be null and void if not cashed within 180 calendar days of the date of the issuance thereof. Requests for reissuance of any check within 180 calendar days of the date of the issuance thereof shall be made directly to the Reorganized Debtors or the Plan Administrator, as applicable.

**11.5** **Form of Currency for Distributions**. All Distributions under the Toggle Plan shall be made in U.S. Dollars. Where a Claim has been denominated in foreign currency on a proof of claim, the Allowed amount of such Claim shall be calculated in U.S. Dollars based upon the currency conversion rate in place as of the Petition Date and in accordance with Bankruptcy Code section 502(b).

**11.6** **Fractional Distributions**. Notwithstanding anything in the Toggle Plan to the contrary, no payment of fractional cents shall be made pursuant to the Toggle Plan. Whenever any payment of a fraction of a cent under the Toggle Plan would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole penny (up or down), with half cents or more being rounded up and fractions less than half of a cent being rounded down.

**11.7** **De Minimis Distributions**. If the amount of Cash to be distributed to the Holder of an Allowed Claim is less than fifty dollars ($50) on a particular Distribution Date, the

59797.0007.18169739.1

Reorganized Debtors or the Plan Administrator, as applicable, may hold the Cash distributions to be made to such Holders until the aggregate amount of Cash to be distributed to each applicable Holder is in an amount equal to or greater than fifty dollars ($50). Notwithstanding the preceding sentence, if the aggregate amount of Cash distributions owed to any Holder of an Allowed Claim under the Toggle Plan never equals or exceeds fifty dollars ($50), then the Reorganized Debtors or Plan Administrator, as applicable, shall not be required to distribute Cash to any such Holder.

**11.8**   **No Distributions with Respect to Certain Claims**. Notwithstanding anything in the Toggle Plan to the contrary, no Distributions or other consideration of any kind shall be made on account of any Contingent Claim, Disputed Claim, Unliquidated Claim, or Disputed Cure Claim unless and until such Claim becomes an Allowed Claim, and then only to the extent that such Claim becomes an Allowed Claim and as provided under the Toggle Plan for such Allowed Claim. Nonetheless, in undertaking the calculations concerning Allowed Claims under the Toggle Plan, including the determination of Distributions due to the Holders of Allowed Claims, each Contingent Claim, Disputed Claim, or Unliquidated Claim shall be treated as if it were an Allowed Claim (which, for Unliquidated Claims, shall mean they shall be treated as if Allowed in such amounts as determined in the reasonable discretion of the Reorganized Debtors or the Plan Administrator, as applicable), except that if the Bankruptcy Court estimates the likely portion of such a Claim to be Allowed or authorized or the Bankruptcy Court or the Holder of such Claim and the Reorganized Debtors or the Plan Administrator, as applicable, otherwise determine the amount or number that would constitute a sufficient reserve for such a Claim, such amount or number as determined by the Bankruptcy Court or by agreement of the Holder of such Claim and the Reorganized Debtors or the Plan Administrator, as applicable, shall be used with respect to such Claim. Distributions due in respect of a Contingent Claim, Disputed Claim, or Unliquidated Claim shall be held in reserve by the Reorganized Debtors in one or more Distribution Reserves. The Reorganized Debtors or the Plan Administrator, as applicable, may elect to treat any Distribution Reserve as a "Disputed Ownership Fund," pursuant to Treasury Regulation section .468B-9(c)(2)(ii). As outlined in this election, Creditors holding such Claims are not treated as transferors of the money or property transferred to the "Disputed Ownership Fund." For U.S. federal income tax purposes, a "Disputed Ownership Fund" is treated as the owner of all assets that it holds. A "Disputed Ownership Fund" is treated as a C corporation for purposes of the Internal Revenue Code unless all assets transferred to the Disputed Ownership Fund are passive investment assets for tax purposes, in which case it will be treated as a "qualified settlement fund" for U.S. federal income tax purposes. A "Disputed Ownership Fund" must file all required income and information tax returns and make all tax payments.

**11.9**   **Distributions and Transfers Upon Resolution of Contingent Claims, Disputed Claims, or Unliquidated Claims**. After an objection to a Disputed Claim is resolved or a Contingent Claim or Unliquidated Claim has been determined in whole or in part by a Final Order or by agreement, an amount of Cash held in the Disputed Ownership Fund corresponding to the amount of any resulting Allowed Claim shall be transferred, net of any tax payable by the Disputed Ownership Fund with respect to the transfer, in a taxable transaction to the Holder of the formerly Contingent Claim, Disputed Claim, or Unliquidated Claim. Upon each such resolution of a Claim against the Disputed Ownership Fund and such transfer with respect to any resulting Allowed Claim, any remaining Cash in the Disputed Ownership Fund that had been held with respect to such formerly Contingent Claim, Disputed Claim, or Unliquidated Claim prior to its resolution shall be transferred, net of any tax payable by the Disputed Ownership Fund with respect to such

59797.0007.18169739.1

transfers, for payment, allocation, or reserve in accordance with the Toggle Plan for (a) unpaid or unutilized amounts for Reorganized Debtors' or Plan Administrator's Expenses, as applicable, or (b) any post-Confirmation reserve requirements of the Reorganized Debtors or the Plan Administrator, as applicable, in connection with the Toggle Plan, any agreements, or any Bankruptcy Court orders.

**11.10    Delivery of Distributions**. Distributions shall be made by the Reorganized Debtors or the Plan Administrator, as applicable, to Holders of the Allowed Claims as of the record date set for such Distribution. Distributions to Holders of Allowed Claims shall be made (a) at the addresses set forth in the proofs of claim Filed by such Holders, (b) at the addresses reflected in the Schedules if no proof of claim has been Filed, or (c) at the addresses set forth in any written notices of address changes delivered to the Debtors. If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made unless and until the Reorganized Debtors or the Plan Administrator, as applicable, are notified of such Holder's then-current address. The responsibility to provide the Reorganized Debtors and the Plan Administrator with a current address of a Holder of an Allowed Claim shall always be the responsibility of such Holder. Amounts in respect of undeliverable Distributions made by the Reorganized Debtors or the Plan Administrator, as applicable, shall be held in trust on behalf of the Holder of the Allowed Claim to which they are payable by the Reorganized Debtors until the earlier of the date that such undeliverable Distributions are claimed by such Holder and one hundred eighty (180) calendar days after the date the undeliverable Distributions were made.

**11.11    Application of Distribution Record Date & Other Transfer Restrictions**. At the close of business on the Distribution Record Date, the claims registers for all Claims shall be closed, and there shall be no further changes in the record holders of any Claims. Except as provided herein, the Reorganized Debtors, the Plan Administrator, and their Related Parties shall have no obligation to recognize any putative transfer of Claims occurring after the Distribution Record Date and shall be entitled instead to recognize and deal for all purposes hereunder with only those record holders stated on the claims registers as of the close of business on the Distribution Record Date irrespective of the number of Distributions to be made under the Toggle Plan to such Persons or the date of such Distributions. In addition, the Reorganized Debtors, the Plan Administrator and their Related Parties shall have no obligation to recognize any putative transfer of General Unsecured Claims occurring at any time prior to the Effective Date to which the Debtors did not expressly consent and shall be entitled instead to recognize and deal for all purposes hereunder with only the Holders of General Unsecured Claims as reflected on the claims registers.

**11.12    Withholding, Payment, and Reporting Requirements Regarding Distributions**. All Distributions under the Toggle Plan shall, to the extent applicable, comply with all tax withholding, payment, and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all Distributions shall be subject to any such withholding, payment, and reporting requirements. The Reorganized Debtors and the Plan Administrator, as applicable, shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding, payment, and reporting requirements, including, to the extent such information is not already available to the Reorganized Debtors or the Plan Administrator, as applicable, requiring each Holder of a Claim to provide an executed current Form W-9, Form W-8, or similar tax form as a prerequisite to receiving a Distribution. Notwithstanding any other

59797.0007.18169739.1

provision of the Toggle Plan, (a) each Holder of an Allowed Claim that is to receive a Distribution pursuant to the Toggle Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such Distribution, and including, in the case of any Holder of a Disputed Claim that has become an Allowed Claim, any tax obligation that would be imposed on the Reorganized Debtors or the Plan Administrator in connection with such Distribution; and (b) no Distribution shall be made to or on behalf of such Holder pursuant to the Toggle Plan unless and until such Holder has made arrangements reasonably satisfactory to the Reorganized Debtors or the Plan Administrator, as applicable, for the payment and satisfaction of such withholding tax obligations or such tax obligation that would be imposed in connection with such Distribution.

**11.13** **Defenses and Setoffs**. Except as otherwise expressly provided herein, the Debtors, Reorganized Debtors, or Plan Administrator, as applicable, may, but shall not be required to, set off against or recoup from any Claims of any nature whatsoever that the Debtors or the Reorganized Debtors may have against the Holder, but neither the failure to do so nor the Allowance of any Claim hereunder shall constitute a waiver or release by the Debtors, Reorganized Debtors, or Plan Administrator of any such Claim they may have against the Holder of such Claim. In no event shall any Holder of Claims be entitled to set off any such Claim against any claim, right, or Cause of Action of the Debtors or Reorganized Debtors (as applicable), unless (i) the Plan Administrator or Reorganized Debtors, as applicable, have consented; and (ii) such Holder has Filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise. Notwithstanding anything set forth in this paragraph, any set off right with respect to a Reinstated General Unsecured Claim or an assumed Executory Contract or Unexpired Lease shall be governed by applicable non-bankruptcy law, including the terms of such assumed Executory Contract or Unexpired Lease.

**11.14** **Allocation of Distributions**. All Distributions received under the Toggle Plan by Holders of Claims shall be deemed to be allocated first to the principal amount of such Claim, as determined for U.S. federal income tax purposes, and then to accrued interest, if any, with respect to such Claim.

**11.15** **Joint Distributions**. The Reorganized Debtors or the Plan Administrator, as applicable, may, in their sole discretion, make Distributions jointly to any Holder of a Claim and any other Person that the Reorganized Debtors or the Plan Administrator, as applicable, determine to have an interest in such Claim.

**11.16** **Forfeiture of Distributions**. If the Holder of a Claim fails to cash a check payable to it within the time period set forth in Section 11.4 of this Toggle Plan, fails to claim an undeliverable Distribution within the time limit set forth in Section 11.10, or fails to complete and return to the Reorganized Debtors or Plan Administrator, as applicable, the appropriate Form W-8 or Form W-9 within one hundred eighty (180) calendar days after a request for the completion and return of the appropriate form pursuant to Section 11.12 (or such later time as approved by a Bankruptcy Court order), then such Holder shall be deemed to have forfeited its right to any reserved and future Distributions under the Toggle Plan. Any such forfeited Distributions shall be

59797.0007.18169739.1

deemed Available Cash for all purposes, notwithstanding any federal or state escheat laws to the contrary.

## ARTICLE 12
## PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS AND DISTRIBUTIONS WITH RESPECT THERETO

**12.1** **Objections to and Resolution of Disputed Claims, Including Any Claims of Excluded Parties**. From and after the Effective Date, the Reorganized Debtors or the Plan Administrator, as applicable, shall have the exclusive authority to compromise, resolve, and Allow any Disputed Claim without the need to obtain approval from the Bankruptcy Court, and any agreement entered into by the Reorganized Debtors or the Plan Administrator, as applicable, with respect to the Allowance of any Claim shall be conclusive evidence and a final determination of the Allowance of such Claim.

**12.2** **Claim Objections**. All objections to Claims (other than Professional Fee Claims, which shall be governed by Section 3.2.2 of the Toggle Plan) shall be Filed by the Reorganized Debtors or the Plan Administrator, as applicable, on or before the Claim Objection Deadline, which date may be extended by order of the Bankruptcy Court. If a timely objection has not been Filed to a Proof of Claim or the Schedules have not been amended with respect to a Claim that was Scheduled by the Debtors but was not Scheduled as contingent, unliquidated, or disputed, then the Claim to which the proof of claim or Scheduled Claim relates will be treated as an Allowed Claim.

**12.3** **Estimation of Certain Claims**. The Reorganized Debtors or the Plan Administrator, as applicable, may, at any time, move for a Bankruptcy Court order estimating any Contingent Claim, Disputed Claim, or Unliquidated Claim pursuant to Bankruptcy Code section 502(c), regardless of whether the Debtors have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction and power to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. The estimated amount of any Claim so determined by the Bankruptcy Court shall constitute the maximum recovery that the Holder thereof may recover after the ultimate liquidation of its Claim, irrespective of the actual amount that is ultimately allowed. All of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and are not necessarily exclusive of one another.

**12.4** **Distributions Following Allowance**. Once a Contingent Claim, a Disputed Claim, or an Unliquidated Claim becomes an Allowed Claim, in whole or in part, including pursuant to the Toggle Plan, the Reorganized Debtors or the Plan Administrator, as applicable, shall distribute from the Distribution Reserves to the Holder thereof the Distributions, if any, to which such Holder is then entitled under the Toggle Plan. Such Distributions, if any, shall be made on the next Distribution Date after the date on which the order or judgment allowing any such Claim becomes a Final Order or on which the Claim otherwise becomes an Allowed Claim, or, if there is no applicable Distribution Date, then within ninety (90) calendar days after the date on which the Claim becomes an Allowed Claim. Unless otherwise specifically provided in the Toggle Plan or allowed by a Final Order, no interest shall be paid on Contingent Claims, Disputed Claims, or Unliquidated Claims that later become Allowed Claims.

59797.0007.18169739.1

**12.5** __Disposition of Assets in Reserves After Disallowance__. After an objection to a Disputed Claim is sustained or a Contingent Claim or Unliquidated Claim has been determined in whole or in part by a Final Order or by agreement, such that the Contingent Claim, Disputed Claim, or Unliquidated Claim is a Disallowed Claim in whole or in part, any Cash held in an applicable Distribution Reserve in respect of the particular Claim in excess of the Distributions due on account of any resulting Allowed Claim shall be used or distributed in a manner consistent with the Toggle Plan.

**ARTICLE 13**
__CONDITIONS PRECEDENT TO THE EFFECTIVE DATE__

**13.1** __Conditions to the Effective Date__. The occurrence of the Effective Date shall not occur, and the Toggle Plan shall not be consummated unless and until each of the following conditions has been satisfied or duly waived pursuant to Section 13.2 of the Toggle Plan:

    a. The terms and conditions shall have been with respect to either (i) the Reorganization Toggle as set forth in Article 6 of the Toggle Plan, including the Reorganization Toggle Requirements and the Pre-Confirmation Milestones, (ii) the Going Concern 363 Sale Toggle as set forth in Article 7 of the Toggle Plan, or (iii) the Business Unit 363 Sale Toggle as set forth in Article 8 of the Toggle Plan;

    b. the Bankruptcy Court shall have entered the Confirmation Order;

    c. the Confirmation Order shall not be subject to any stay;

    d. all governmental and material third-party approvals and consents necessary in connection with the transactions contemplated by the Toggle Plan, if any, shall have been obtained and be in full force and effect;

    e. all actions and all agreements, instruments, or other documents necessary to implement the terms and provisions of the Toggle Plan are effected or executed and delivered, as applicable;

    f. the Confirmation Order shall affirm the validity and enforceability of the various releases granted under the Toggle Plan and such releases shall be in full force and effect; and

    g. the Estate Professional Fee Escrow is funded pursuant to Section 3.2.2 hereof.

**13.2** __Waiver of Conditions to the Effective Date__. The conditions to the Effective Date may be waived in writing by the Plan Proponents at any time without further order of the Bankruptcy Court, except in the case of condition precedent described in Section 13.1(a), which may only be waived by the Non-Debtor Plan Proponents.

**13.3** __Effect of Non-Occurrence of Conditions to the Effective Date__. If each of the conditions to the Effective Date is not satisfied or duly waived in accordance with Sections 13.1

CHAPTER 11 PLAN - PAGE 100

and 13.2 of the Toggle Plan, upon notification filed by the Plan Proponents with the Bankruptcy Court, (i) the Confirmation Order shall be vacated; (ii) no Distributions shall be made; (iii) the Debtors, the Estates, and all Creditors shall be restored to the *status quo* as of the day immediately preceding the Confirmation Hearing as though the Confirmation Order was not entered; (iv) all of the Debtors' and the Estates' obligations with respect to Claims shall remain unchanged and nothing contained in the Toggle Plan shall constitute a waiver or release of any Causes of Action by or against the Debtors, the Estates, or any other Person or prejudice in any manner the rights, claims, or defenses of the Debtors, the Estates, or any other Person.

**13.4    Notice of the Effective Date**. Promptly after the occurrence of the Effective Date, the Reorganized Debtors or the Plan Administrator, as applicable, or their respective agents shall mail or cause to be mailed to all Creditors a notice that informs such Creditors of (i) entry of the Confirmation Order and the resulting confirmation of the Toggle Plan, including toggle being implemented under the Toggle Plan; (ii) the occurrence of the Effective Date; (iii) the rejection of executory contracts and unexpired leases pursuant to the Toggle Plan, as well as the deadline for the filing of resulting Rejection Claims; (iv) the deadline established under the Toggle Plan for the filing of Administrative Claims; and (v) such other matters as the Reorganized Debtors or the Plan Administrator, as applicable find appropriate.

**ARTICLE 14**
**RELEASES AND EXCULPATION PROVISIONS**

**14.1    Debtors' Releases**.

**14.1.1**   On the Effective Date and to the fullest extent authorized by applicable law, the Released Parties and their respective property will be expressly, unconditionally, generally, individually, and collectively released, acquitted, and discharged by the Debtors on behalf of themselves, their estates, the Reorganized Debtors, for the good and valuable consideration provided by each of the Released Parties, from any and all actions, claims, debts, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative or deficiency claims asserted or that could be asserted by or on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereinafter arising, in law, equity, contract, tort, or otherwise, by state law (including Idaho State partnership law), statute, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way to the Debtors, any of the Debtors' present or former Assets, the Released Parties' interests in or management of the Debtors, this Toggle Plan, the Toggle Disclosure Statement, these Chapter 11 Cases, including those that the Debtors, the Reorganized Debtors would have been legally entitled to assert or that any Holder of a Claim against or interest in the Debtors or any other Entity could have been legally entitled to assert derivatively or on behalf of the Debtors or their Estates; *provided, however*, that the foregoing Debtors' Releases shall not operate to waive or release any Claims or Causes of Action of the Debtors or their Estates against a Released Party arising under any contractual obligation owed to the Debtors, the Reorganized Debtors that is entered into pursuant to this Plan.

**14.1.2**   Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtors' Releases set forth in Section 14.1.1

above, which includes by reference each of the related provisions and definitions contained in this Plan, and, further, shall constitute the Bankruptcy Court's finding that the Debtors' Releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good-faith settlement and compromise of the Claims released by the Debtors' Releases; (3) in the best interests of the Estates and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar against any of the Estates, the Post-Effective Date Debtors, asserting any Claim or Cause of Action released pursuant to the Debtors' Releases.

**14.2    Exculpation and Limitation of Liability**. The Exculpated Parties will neither have nor incur any liability to any entity for any claims or Causes of Action arising on or after the Petition Date and prior to the Effective Date for any act taken or omitted to be taken in connection with, or related to (i) the Chapter 11 Cases, (ii) any sales contemplated in connection with the Toggle Plan, (iii) formulating, negotiating, preparing, disseminating, implementing, administering, confirming or effecting the consummation of this Plan, or any other contract, instrument, release or other agreement or document created or entered into in connection with this Toggle Plan, including the Toggle Disclosure Statement, (iv) any other post-petition act taken or omitted to be taken in connection with or in contemplation of Confirmation of this Toggle Plan, or (v) the approval of the Toggle Disclosure Statement and Toggle Plan or Confirmation or Consummation of the Toggle Plan, *provided, however*, that the foregoing provisions will have no effect on the liability of any entity that results from any such act or omission that is determined in a Final Order of the Bankruptcy Court or other court of competent jurisdiction to have constituted gross negligence, actual fraud, or willful misconduct. The foregoing provisions shall also not apply to malpractice liability of legal professionals.

## ARTICLE 15
## RETENTION OF JURISDICTION AND POWER

**15.1    Scope of Retained Jurisdiction and Power**. Under Bankruptcy Code sections 105(a) and 1142, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, and except as otherwise ordered by the Bankruptcy Court, the Bankruptcy Court shall retain jurisdiction and power over all matters arising in, arising under, or related to the Chapter 11 Cases and the Toggle Plan to the fullest extent permitted by law, including jurisdiction and power to do the following:

      a.    except as otherwise Allowed pursuant to the Toggle Plan or in the Confirmation Order, Allow, classify, determine, disallow, establish the priority or secured or unsecured status of, estimate, limit, liquidate, or subordinate any Claim, in whole or in part, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the allowance or priority of Claims;

      b.    hear and determine all applications for compensation and reimbursement of expenses of Professionals under the Toggle Plan or under Bankruptcy Code sections 327, 328, 330, 331, 363, 503(b), 1103, and 1129(a)(4);

      c.    hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which a Debtor is a party or with

59797.0007.18169739.1

respect to which a Debtor may be liable, including, if necessary, the nature or amount of any required cure or the liquidation or allowance of any Claims arising therefrom;

        d.     effectuate performance of and payments under the provisions of the Toggle Plan and enforce remedies on any default under the Toggle Plan;

        e.     hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Cases, including the Estates' Causes of Action;

        f.     enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Toggle Plan and all contracts, instruments, releases, and other agreements or documents created, executed, or contemplated in connection with the Toggle Plan, the Toggle Disclosure Statement, the Confirmation Order, Going Concern 363 Sale Order, or the Business Unit 363 Sale Order;

        g.     hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Toggle Plan, including disputes arising under agreements, documents, or instruments executed in connection with the Toggle Plan, or to maintain the integrity of the Toggle Plan following consummation;

        h.     consider any modifications of the Toggle Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order; the Going Concern 363 Sale Order, or the Business Unit 363 Sale Order;

        i.     issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with the implementation, consummation, or enforcement of the Toggle Plan, the Confirmation Order, Going Concern 363 Sale Order, or the Business Unit 363 Sale Order;

        j.     enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

        k.     hear and determine any matters arising in connection with or relating to the Toggle Plan, the Toggle Disclosure Statement, the Confirmation Order, the Going Concern 363 Sale Order, the Business Unit 363 Sale Order, or any contract, instrument, release, or other agreement or document created, executed, or contemplated in connection with any of the foregoing documents and orders;

        l.     enforce, interpret, and determine any disputes arising in connection with any stipulations, orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings associated with the Toggle Plan or otherwise entered in connection with the Chapter 11 Cases (whether or not any or all of the Chapter 11 Cases have been closed);

59797.0007.18169739.1

m.      hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code sections 346, 505, and 1146;

n.      hear and determine all disputes involving the existence, nature, or scope of the Debtors' discharge;

o.      hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, the Bankruptcy Code and title 28 of the United States Code;

p.      resolve any cases, controversies, suits, or disputes related to the Debtors and Reorganized Debtors;

q.      enter a final decree closing the Chapter 11 Cases of the Debtors.

**15.2      Non-Exercise of Jurisdiction**. If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, the provisions of this Toggle Plan shall have no effect on, and shall not control, limit, or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to, such matter.

**ARTICLE 16**
**MISCELLANEOUS PROVISIONS**

**16.1      Payment of Statutory Fees**. All fees payable pursuant to 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid by the Debtors on or before the Effective Date. All such fees that relate to distributions by each Debtor after the Effective Date shall be paid by the Reorganized Debtors or the Plan Administrator, as applicable. Notwithstanding anything to the contrary in the Toggle Plan, the U.S. Trustee shall not be required to file any proofs of claim with respect to quarterly fees payable pursuant to 28 U.S.C. § 1930.

**16.2      Dissolution of the Creditors' Committees**. The Creditors' Committee shall be automatically dissolved on the Effective Date, and on the Effective Date, each member of the Creditors' Committee (including each Related Party thereof) and each Professional retained by the Creditors' Committee shall be released and discharged from all rights, duties, responsibilities, and obligations arising from, or related to, the Debtors, their membership on the Creditors' Committee, the Toggle Plan, or the Chapter 11 Cases, except (i) with respect to any matters concerning any Estate Professional Fee Claims held or asserted by any Professional retained by the Creditors' Committee, and (ii) any appeals of, or related to, the Confirmation Order or any other appeal to which the Creditors' Committee is a party to.

**16.3      Modifications and Amendments**.

**16.3.1** In the Plan Proponents' reasonable discretion, the Plan Proponents may alter, amend, or modify the Toggle Plan under Bankruptcy Code section 1127(a) at any time at or prior to the conclusion of the Confirmation Hearing. All alterations, amendments, or modifications to the Toggle Plan must comply with Bankruptcy Code section 1127. The Plan Proponents shall

59797.0007.18169739.1

provide parties in interest with notice of such amendments or modifications as may be required by the Bankruptcy Code, Bankruptcy Rules, or order of the Bankruptcy Court. A Creditor that has accepted the Toggle Plan shall be deemed to have accepted the Toggle Plan, as altered, amended, modified, or clarified, if the proposed alteration, amendment, modification, or clarification does not materially and adversely change the treatment of the Claim of such Creditor.

      **16.3.2** After entry of the Confirmation Order and prior to substantial consummation (as defined in Bankruptcy Code section 1101(2)) of the Toggle Plan, the Reorganized Debtors or the Plan Administrator, as applicable, may, under Bankruptcy Code section 1127(b), institute proceedings in the Bankruptcy Court to remedy any defect or omission or to reconcile any inconsistencies in the Toggle Plan, the Toggle Disclosure Statement approved with respect to the Toggle Plan, or the Confirmation Order, and such matters as may be necessary to carry out the purpose and effect of the Toggle Plan so long as such proceedings do not adversely affect the treatment of Holders of Claims under the Toggle Plan. Such proceedings must comply with Bankruptcy Code section 1127. To the extent required, prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or an order of the Bankruptcy Court. A Creditor that has accepted the Toggle Plan shall be deemed to have accepted the Toggle Plan, as altered, amended, modified, or clarified, if the proposed alteration, amendment, modification, or clarification does not materially and adversely change the treatment of the Claim of such Creditor.

      **16.4** **Severability of Plan Provisions**. If, at or before the Confirmation Hearing, the Bankruptcy Court holds that any Toggle Plan term or provision is invalid, void, or unenforceable, the Bankruptcy Court may alter or interpret that term or provision so that it is valid and enforceable to the maximum extent possible consistent with the original purpose of that term or provision. That term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the Toggle Plan's remaining terms and provisions will remain in full force and effect and will in no way be affected, impaired, or invalidated. The Confirmation Order will constitute a judicial determination providing that each Plan term and provision, as it may have been altered or interpreted in accordance with this Section 16.4, is valid and enforceable under its terms.

      **16.5** **Compromises and Settlements**. From and after the Effective Date, the Reorganized Debtors or the Plan Administrator, as applicable, may compromise and settle disputes about any applicable Claims or Estates' Causes of Action, without any further approval by the Bankruptcy Court. Until the Effective Date, the Debtors expressly reserve the right to compromise and settle (subject to the approval of the Bankruptcy Court) Claims against them or any Avoidance Actions and Causes of Action belonging to the Estates.

      **16.6** **Binding Effect of Plan**. Upon the Effective Date, Bankruptcy Code section 1141 shall become applicable with respect to the Toggle Plan and the Toggle Plan shall be binding on all Persons to the fullest extent permitted by Bankruptcy Code section 1141(a). Confirmation of the Toggle Plan binds each Holder of a Claim or Interest to all the terms and conditions of the Toggle Plan, whether or not such Holder's Claim or Interest is Allowed, whether or not such Holder holds a Claim or Interest that is in a Class that is Impaired under the Toggle Plan, and whether or not such Holder has accepted the Toggle Plan.

**16.7**   **Term of Injunctions or Stays**. Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays in the Chapter 11 Cases under Bankruptcy Code sections 105 or 362 or otherwise, and extant as of the Confirmation Hearing (excluding any injunctions or stays contained in or arising from the Toggle Plan or the Confirmation Order), shall remain in full force and effect through and inclusive of the Effective Date.

**16.8**   **Revocation, Withdrawal, or Non-Consummation**. The Plan Proponents reserve the right to revoke or withdraw the Toggle Plan at any time prior to the Confirmation Hearing and to File subsequent plans. If the Plan Proponents revoke or withdraw the Toggle Plan prior to the Confirmation Hearing, or if the Effective Date does not occur, then (a) the Toggle Plan shall be null and void in all respects; and (b) nothing contained in the Toggle Plan, and no acts taken in preparation for consummation of the Toggle Plan, shall (i) constitute or be deemed to constitute a waiver or release of any Claims against, or any Interests in, any Debtor, or any Causes of Action by or against any Debtor or any other Person, (ii) prejudice in any manner the rights of any Debtor or any other Person in any further proceedings involving a Debtor, or (iii) constitute an admission of any sort by any Debtor or any other Person.

**16.9**   **Exemption from Transfer Taxes**. Pursuant to Bankruptcy Code section 1146, the vesting of the Reorganized Debtors' Assets in the Reorganized Debtors, the issuance, transfer, or exchange of notes or equity securities under the Toggle Plan, the creation of any mortgage, deed of trust, lien, pledge, or other security interest, or the making or assignment of any lease or sublease, or making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Toggle Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

**16.10**   **Computation of Time**. Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Toggle Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next Business Day.

**16.11**   **Transactions on Business Days**. If the Effective Date or any other date on which a transaction may occur under the Toggle Plan shall occur on a day that is not a Business Day, any transactions or other actions contemplated by the Toggle Plan to occur on such day shall instead occur on the next succeeding Business Day.

**16.12**   **Good Faith**. Confirmation of the Toggle Plan shall constitute a conclusive determination that: (a) the Toggle Plan, and all the transactions and settlements contemplated thereby, have been proposed in good faith and in compliance with all applicable provisions of the Bankruptcy Code and the Bankruptcy Rules; and (b) the solicitation of acceptances or rejections of the Toggle Plan has been in good faith and in compliance with all applicable provisions of the Bankruptcy Code, and the Bankruptcy Rules, and, in each case, that the Plan Proponents and all Related Parties have acted in good faith in connection therewith.

**16.13**   **Governing Law**. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), (a) the laws of the State of Idaho shall govern the construction and implementation of the Toggle Plan and (except as may be provided otherwise in any such agreements, documents, or instruments) any agreements, documents, and

59797.0007.18169739.1

instruments executed in connection with the Toggle Plan and (b) the laws of the state of incorporation or formation of each Debtor shall govern corporate or limited liability company governance matters with respect to such Debtor; in each case without giving effect to the principles of conflicts of law thereof. Any applicable nonbankruptcy law that would prohibit, limit, or otherwise restrict implementation of the Toggle Plan based on (i) the commencement of the Chapter 11 Cases, (ii) the reorganization of some or all of the Reorganized Debtors' Assets, or (v) any other act or action to be done pursuant to or contemplated by the Toggle Plan is superseded and rendered inoperative by the Toggle Plan and federal bankruptcy law.

**16.14** **Notices**. Following the Effective Date, all pleadings and notices Filed in the Chapter 11 Cases shall be served solely on (a) the Reorganized Debtors or the Plan Administrator, as applicable, and their respective counsel, (b) the U.S. Trustee, (c) the Plan Administration Board, if any, (d) any Person whose rights are affected by the applicable pleading or notice, and (e) any Person Filing a specific request for notices and papers on and after the Effective Date.

**16.15** **Additional Documents**. On or before the Effective Date, the Plan Proponents may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Toggle Plan. The Reorganized Debtors and the Plan Administrator, as applicable, and all Holders receiving Distributions pursuant to the Toggle Plan and all other parties in interest may, from time to time, prepare, execute, and deliver any agreements or documents and take any other acts as may be necessary or advisable to effectuate the provisions and intent of the Toggle Plan.**Conflicts with the Toggle Plan**. In the event and to the extent that any provision of the Toggle Plan is inconsistent with the provisions of the Toggle Disclosure Statement, any other order entered in the Chapter 11 Cases, or any other agreement to be executed by any Person pursuant to the Toggle Plan, the provisions of the Toggle Plan shall control and take precedence; *provided, however*, that the Confirmation Order shall control and take precedence in the event of any inconsistency between the Confirmation Order, any provision of the Toggle Plan, and any of the foregoing documents.

**16.17** **Continuation of the Automatic Stay**. For the avoidance of doubt, during the period between the Confirmation Date and the Effective Date, section 362 of the Bankruptcy Code will continue to apply to the Debtors and their Assets.

## ARTICLE 17
## REQUEST FOR CONFIRMATION AND RECOMMENDATION

**17.1** **Request for Confirmation**. The Plan Proponents request confirmation of the Toggle Plan in accordance with Bankruptcy Code section 1129.

**17.2** **Recommendation**. The Plan Proponents believe that confirmation and implementation of the Toggle Plan are the best alternative under the circumstances and urge all Impaired Creditors entitled to vote on the Toggle Plan to vote in favor of and support confirmation of the Toggle Plan.

59797.0007.18169739.1

Respectfully,

Dated: February 3, 2025      HAWLEY TROXELL ENNIS & HAWLEY LLP

/s/ Sheila R. Schwager

_____

Sheila R. Schwager, ISB No. 5059
Attorneys for Rabo AgriFinance LLC

Dated: February 3, 2025      HAWLEY TROXELL ENNIS & HAWLEY LLP

/s/ Brent R. Wilson

_____

Brent R. Wilson, ISB No. 8936
Attorneys for Rabo AgriFinance LLC

Dated: February 3, 2025      NORTON ROSE FULBRIGHT US LLP

  /s/ Andrew J. Schoulder
_____
Andrew J. Schoulder, *pro hac vice*
Attorneys for Rabo AgriFinance LLC

59797.0007.18169739.1

**Schedule 10.3 – Initial Schedule of Assumed Executory Contracts & Unexpired Leases**

| **Contract/Lease Party** | **Contract Counterparty** | **Contract/Lease Title** | **Cure Amount** |
|---|---|---|---|
| Millenkamp Cattle, Inc. | Burks Tractor Company 3140 Kimberly Rd. Twin Falls, ID 83301 | Equipment Operating Lease Agreement, No. 2793337, dated February 6. 2024<br><br>6 Case IH Magnum<br><br>CNH Equipment Lease 765512 | $0.00 |
| Millenkamp Cattle, Inc. | Burks Tractor Company 3140 Kimberly Rd. Twin Falls, ID 83301 | Equipment Operating Lease Agreement, No. 2793339, dated February 6, 2024<br><br>16 Case IH Magnum and 16 Case IH Real Remote<br><br>CNH Equipment Lease 765784 | $0.00 |
| Millenkamp Cattle, Inc. | Burks Tractor Company 3140 Kimberly Rd. Twin Falls, ID 83301 | Equipment Operating Lease Agreement, No. 2793443, dated February 6, 2024<br><br>4 Case IH Steiger and 4 Case Rear Remote<br><br>CNH Equipment Lease 765542 | $0.00 |
| Millenkamp Cattle, Inc. | Burks Tractor Company 3140 Kimberly Rd. Twin Falls, ID 83301 | Equipment Operating Lease Agreement, No. 2609637, dated October 31, 2020, as amended<br><br>26 Case IH Mangum<br><br>CNH Equipment Lease 210982 | $0.00 |
| Millenkamp Cattle, Inc. | Burks Tractor Company 3140 Kimberly Rd. Twin Falls, ID 83301 | Retail Installment Sales Contract and Security Agreement, No. 2783587<br><br>25 Kobuta Tractors<br><br>CNH Equipment Loan 765530 | $0.00 |

59797.0007.18169739.1

| Millenkamp Cattle, Inc. | Burks Tractor Company<br>3140 Kimberly Rd.<br>Twin Falls, ID 83301 | Retail Installment Sales Contract and Security Agreement, No. 2793874<br><br>30 Case IH Maxim<br><br>CNH Equipment Loan 765552 | $0.00 |
|---|---|---|---|
| Millenkamp Cattle, Inc. | Daimler Truck Financial Services<br>14372 Heritage Pkwy<br>Suite 400<br>Fort Worth, TX 76177 | Note and Security Agreement dated January 2024 | $0.00 |
| Millenkamp Cattle, Inc. | Daimler Truck Financial Services<br>14372 Heritage Pkwy<br>Suite 400<br>Fort Worth, TX 76177 | Note and Security Agreement (Multi-State) dated February 23, 2022 | $0.00 |
| Millenkamp Cattle, Inc. | East Valley Cattle LLC 471 N 300 W<br>Jerome, ID 83338 | Triple net lease for lease of East Valley Dairy | $0.00 |
| Millenkamp Cattle, Inc.<br>East Valley Cattle, Inc. | East Valley Development, LLC<br>Attn: General Counsel<br>4675 MacArthur Ct., Ste. 800 Newport Beach, CA 92660 | Third Amendment to Ground Lease Agreement between East Valley Cattle, LLC and Millenkamp Cattle, Inc. (Landlord) and East Valley Development, LLC (Tenant) dated June 22, 2023 | $0.00 |
| Millenkamp Cattle, Inc.<br>East Valley Cattle, Inc. | East Valley Development, LLC<br>Attn: General Counsel<br>4675 MacArthur Ct., Ste. 800 Newport Beach, CA 92660 | First Amendment Manure Supply Agreement between East Valley Cattle, LLC and Millenkamp Cattle, Inc. (Landlord) and East Valley Development, LLC (Developer) dated June 22, 2023 | $0.00 |
| Millenkamp Cattle, Inc.<br>East Valley Cattle, Inc. | East Valley Development, LLC<br>Attn: General Counsel<br>4675 MacArthur Ct., Ste. 800 Newport Beach, CA 92660 | Ground Lease Agreement between East Valley Cattle, LLC and Millenkamp Cattle, Inc. (Landlord) and East Valley Development, LLC (Tenant) dated October 8, 2021. | $0.00 |

59797.0007.18169739.1

| Millenkamp Cattle, Inc. East Valley Cattle, Inc. | East Valley Development, LLC Attn: General Counsel 4675 MacArthur Ct., Ste. 800 Newport Beach, CA 92660 | Manure Supply Agreement between East Valley Cattle, LLC and Millenkamp Cattle, Inc. (Landlord) and East Valley Development, LLC (Developer) dated October 8, 2021 | $0.00 |
|---|---|---|---|
| Millenkamp Cattle, Inc. East Valley Cattle, Inc. | East Valley Development, LLC Attn: General Counsel 4675 MacArthur Ct., Ste. 800 Newport Beach, CA 92660 | Memorandum of Ground Lease dated June 23, 2023. | $0.00 |
| Millenkamp Cattle, Inc. East Valley Cattle, Inc. | East Valley Development, LLC Attn: General Counsel 4675 MacArthur Ct., Ste. 800 Newport Beach, CA 92660 | Second Amendment to Ground Lease Agreement between East Valley Cattle, LLC and Millenkamp Cattle, Inc. (Landlord) and East Valley Development, LLC(Tenant) dated April 25, 2023. | $0.00 |
| Millenkamp Cattle, Inc. East Valley Cattle, Inc. | East Valley Development, LLC Attn: General Counsel 4675 MacArthur Ct., Ste. 800 Newport Beach, CA 92660 | First Amendment to Ground Lease Agreement between East Valley Cattle, LLC and Millenkamp Cattle, Inc. (Landlord) and East Valley Development, LLC (Tenant) dated February 17, 2022. | $0.00 |
| Millenkamp Cattle, Inc. | Goose Ranch LLC 471 N 300 W Jerome, ID 83338 | Triple net lease for Goose Ranch | $0.00 |
| Millenkamp Cattle, Inc. | GreatAmerica Financial Serv. PO Box 660831 Dallas, TX 75266-0831 | Lease Agreement for 8 HP E786Z Copiers; 2 HP E45028DN Copiers; 2 HP E40040DN Copiers 1931342 | $0.00 |
| Millenkamp Cattle, Inc. | Idaho Jersey Girls Jerome Dairy, LLC 471 N 300 W Jerome, ID 83338 | Triple net lease of Idaho Jersey Girls Jerome Dairy | $0.00 |
| Millenkamp Cattle, Inc. | Innovative Food Solutions USA Attn: Jordan Bowen 134 E. Highway 81 Burley, ID 83318 | Milk Producer Supply Agreement dated January 1, 2024 | $0.00 |

CHAPTER 11 PLAN - PAGE 111

| Millenkamp Cattle, Inc. | Jake Millenkamp 1719 River Road Buhl, ID 83316 | Rental Agreement for 1719 River Road, Buhl, ID 83316 | $0.00 |
|---|---|---|---|
| Millenkamp Cattle, Inc. | John Deere Const. & Forestry One John Deere Place Moline, IL 61265 | Loan Contract -Security Agreement dated June 12, 2023 | $0.00 |
| Millenkamp Cattle, Inc. | John Deere Const. & Forestry Company One John Deere Place Moline, IL 61265 | Loan Contract -Security Agreements dated May 23, 2023 | $0.00 |
| Millenkamp Cattle, Inc. | John Deere Const. & Forestry Company One John Deere Place Moline, IL 61265 | Loan Contract -Security Agreement dated July 12, 2023 | $0.00 |
| Millenkamp Cattle, Inc. | John Deere Const. & Forestry Company One John Deere Place Moline, IL 61265 | Loan Contract -Security Agreement dated July 31, 2023 | $0.00 |
| Millenkamp Cattle, Inc. | John Deere Const. & Forestry Company One John Deere Place Moline, IL 61265 | Loan Contract -Security Agreement dated July 28, 2023 | $0.00 |
| Millenkamp Cattle, Inc. | Keith D. and Janet Carlson 3866 E 3800 N Hansen, ID 83334 | Lease Agreement dated June 1, 2020 | $0.00 |
| Millenkamp Cattle, Inc. East Valley Cattle, Inc. | Mavrix, LLC 925 Main St., Ste. 300-18 Stone Mountain, GA 30083-3098 | Exclusivity Agreement between Millenkamp Cattle, Inc. and East Valley Cattle, LLC (Dairy) and SKS EVC, LLC and Mavrix, LLC (Developers) dated July 12, 2021. | $0.00 |
| Millenkamp Cattle, Inc. | Millenkamp Properties II LLC 471 N 300 W Jerome, ID 83338 | Triple net lease for Canyonlands | $0.00 |
| Millenkamp Cattle, Inc. | Millenkamp Properties II LLC 471 N 300 W Jerome, ID 83338 | Triple net lease for McGregor | $0.00 |
| Millenkamp Cattle, Inc. | Millenkamp Properties LLC 471 N 300 W Jerome, ID 83338 | Triple net lease for lease of German Dairy | $0.00 |
| Millenkamp Cattle, Inc. | Millenkamp Properties LLC 471 N 300 W Jerome, ID 83338 | Triple net lease for Moonshine Ranch | $0.00 |

CHAPTER 11 PLAN - PAGE 112

| Millenkamp Cattle, Inc. | Millenkamp Properties LLC<br>471 N 300 W<br>Jerome, ID 83338 | Triple net lease for Calf Ranch | $0.00 |
| Black Pine Cattle, LLC | PerforMix Nutrition Systems<br>2201 N. 20th Street<br>Nampa, ID 83687 | Security Agreement dated September 13, 2023 | $0.00 |
| Millenkamp Cattle, Inc.<br>East Valley Cattle, LLC | Eagle Creek Northwest, LLC<br>10 State House Square<br>15th Floor<br>Hartford, CT 06103 | Lease Agreement | $0.00 |

59797.0007.18169739.1

**<u>Schedule 6.3 – Initial Schedule of Rejected Executory Contracts & Unexpired Leases</u>**

None.

59797.0007.18169739.1