Jason R. Naess, ISBN 8407
Assistant United States Trustee
Brett R. Cahoon, ISBN 8607
United States Department of Justice
Office of the United States Trustee
720 Park Blvd, Ste. 220
Boise, Idaho 83712
(208) 334-1300
(208) 334-9756 [Facsimile]
ustp.region18.bs.ecf@usdoj.gov
Attorneys for the Acting United States Trustee

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF IDAHO

| | |
|---|---|
| In re:<br><br>MILLENKAMP CATTLE, INC.,<br><br>Debtor. | Case No. 24-40158-NGH |
| Filing relates to:<br><br>☒ ALL DEBTORS<br><br>☐ Millenkamp Cattle, Inc.<br><br>☐ Idaho Jersey Girls<br><br>☐ East Valley Cattle<br><br>☐ Millenkamp Properties<br><br>☐ Millenkamp Properties II<br><br>☐ Millenkamp Family<br><br>☐ Goose Ranch<br><br>☐ Black Pine Cattle<br><br>☐ Millenkamp Enterprises<br><br>☐ Idaho Jersey Girls Jerome Dairy | Jointly Administered With<br>Case Nos.:<br><br>24-40159-NGH (Idaho Jersey Girls)<br>24-40160-NGH (East Valley Cattle)<br>24-40161-NGH (Millenkamp Properties)<br>24-40162-NGH (Millenkamp Properties II)<br>24-40163-NGH (Millenkamp Family)<br>24-40164-NGH (Goose Ranch)<br>24-40166-NGH (Black Pine Cattle)<br>24-40167-NGH (Millenkamp Enterprises)<br>24-40165-NGH (Idaho Jersey Girls Jerome Dairy)<br><br>Chapter 11 Cases |

**UNITED STATES TRUSTEE'S OBJECTION TO SECOND APPLICATION OF O'MELVENY & MYERS LLP FOR ALLOWANCE AND PAYMENT OF INTERIM COMPENSATION AND REIMBURSEMENT OF EXPENSES (Docket No. 893)**

1

Jonas V. Anderson, the Acting United States Trustee ("United States Trustee"), hereby files this response and objection to the Second Application of O'Melveny & Myers for Allowance and Payment of Interim Compensation and Reimbursement of Expenses for the Period August 1, 2024 through November 30, 2024, filed on February 6, 2025 (Docket No. 893) ("OMM's Second Fee Application") for the reasons stated below.[1]

## BACKGROUND

1. On April 2, 2024, the Debtors initiated the above-captioned bankruptcy cases, which are being jointly administered, by filing voluntary Chapter 11 petitions.

2. On May 14, 2024, the United States Trustee filed a Notice of Appointment of the Official Committee of Unsecured Creditors (Docket No. 297).

3. On May 24, 2024, the Unsecured Creditors Committee (the "Committee") filed applications to employ Bruce Anderson as local co-counsel, and Julian Gurule/O'Melveny & Myers ("OMM") as lead co-counsel (Docket Nos. 334 and 335). An Order approving Bruce Anderson's employment was entered on June 21, 2024 (Docket No. 449). A hearing on OMM's employment application was held on July 18, 2024 (Docket No. 456). The minutes from that hearing reflect the Court's concerns with OMM's hourly rates. (Docket No. 503). On July 22, 2024, the Court entered an Order approving the employment of OMM; however, as noted in the Order, "the actual award of compensation is subject to § 330 and further order of the Court" (Docket No. 449).

---

[1] The United States Trustee reserves the right to raise the objections stated herein, or any other objections to this or any previous, or future interim fee applications filed by OMM in connection with any *final* fee application filed by OMM in connection with this bankruptcy case.

2

4. On August 29, 2024, OMM filed its first interim fee application covering the period of May 21, 2024 through July 31, 2024 ("OMM's First Fee Application") (Docket No. 585), in which OMM requested allowance of total fees and costs in the amount of $371,370.87. According to OMM's First Fee Application, OMM indicated that it had been paid a total of $215,722.63 from the Debtor, which represented 75% of fees and 100% of expenses for the first two months of the first interim period. These amounts were paid pursuant to the Order Establishing Interim Fee Procedures.

5. After a hearing on OMM's First Fee Application, the Court entered an Order approving all of its expenses in the amount of $2,310.65, but only awarded fees in the amount of $100,000 (Docket No. 660). As such, OMM had received $113,411.98 more from the Debtor than what the Court ultimately allowed for the first interim period. The Court's Order approving the First Fee Application indicates that any amounts not approved, fees in excess of $100,000 for the first interim period, would need to be set for an evidentiary hearing at a later date. OMM has not requested or set an evidentiary hearing seeking to justify an award of fees for the first interim period beyond what the Court already allowed.

6. OMM's Second Fee Application indicates that it has requested payment from the Debtors of fees and expenses during the second interim period, pursuant to cover sheet applications and the Order Establishing Interim Fee Procedures. The Debtor has apparently not paid OMM any additional fees or expenses during the second interim period.

7. OMM's Second Fee Application does not address whether OMM returned the excess $113,411.98 in fees that it received from the Debtor beyond what the Court approved under OMM's First Fee Application.

3

8. OMM's Second Fee Application includes billings by ten different attorneys, a paralegal, and a librarian.

9. There are numerous instances throughout the invoices attached to OMM's Second Fee Application where there are multiple attorneys attending or participating in the same meeting, call, conference or hearing, and several instances where multiple OMM attorneys are billing for meeting, discussing and consulting with one another. In addition, the application includes instances where multiple attorneys are billing for reviewing the same draft plans and disclosure statements, filed plans and disclosure statements, other pleadings, memos or emails.

10. OMM's librarian, whose hourly rate is nearly the same as the hourly rate of Bruce Anderson ($415 and $425, respectively), billed 3 hours for researching Idaho lien perfection issues (Dkt. No. 893, p. 15), even though the Committee has engaged and employed competent local counsel, Bruce Anderson, who is likely very familiar with Idaho lien perfection issues.

11. In August and September of 2024 alone, OMM billed approximately $178,000 for what it has coded as Asset Analysis & Recovery. The overwhelming majority of this time was spent on lien review issues. There are at least ten different people that billed for this type of work. The invoices include multiple entries, such as: lien review, draft lien review memo, confer about lien review, email about lien review, research lien issues, communication with OMM team about lien review issues, confer and assign research tasks, reviewing lien analysis, editing lien analysis, etc. However, none of the entries specify what lien or liens are being reviewed. There is no detail or information to analyze the value or benefit that such a review might yield relative to the cost and expense of such review. Nor is there any indication as to whether the lien or liens being reviewed would have been analyzed or scrutinized by the Debtor.

4

12. OMM's Second Fee Application does not indicate whether the Committee was given an opportunity to review the application, or whether they approve of the fees requested.

## ARGUMENT

Compensation of professionals employed by an unsecured creditors committee is governed by 11 U.S.C. § 330. Section 330(a)(1) provides for "reasonable compensation" for actual, necessary services rendered by the professionals and any paraprofessional and for actual and necessary expenses. The Court may, on its own motion or if the United States Trustee raises an objection, award less than the amount requested. 11 U.S.C. § 330(a)(2). The applicant bears the burden of establishing entitlement to and the reasonableness of the fees requested. *See In re Genay-Wolf*, 2012 WL 2064527 *2 (Bankr. D. Idaho 2012); *In re Root*, 2010 WL 4117455 *2 (Bankr. D. Idaho 2010) (applicant bears burden of showing the requested compensation is reasonable, compliant with applicable law and should be allowed). "This burden is not to be taken lightly, especially given that every dollar expended on legal fees results in a dollar less that is available for distribution to the creditors or use by the debtor." *In re Bailey Ridge Partners, LLC*, No. 17-00033, 2018 Bankr. LEXIS 1961, at *15 (Bankr. N.D. Iowa June 28, 2018) *quoting In re Living Hope Se., LLC*, 509 B.R. 629, 637 (Bankr. E.D. Ark. 2014).

Counsel applying for fees under Section 330 have a duty to exercise good billing discretion. *In re SonicBlue Inc.*, Nos. 03-51775, 03-51776, 03-51777, 03-51778-MM, 2006 Bankr. LEXIS 1576, at *10 (Bankr. N.D. Cal. July 20, 2006). "Hours that are excessive, redundant, or unnecessary in view of the services performed should not be compensated." *Id*.

5

I.  <u>The Court Should Deny All Fees Requested or Should Reduce the Fees Due to OMM's Failure to Disclose Whether the Committee Reviewed or Approved the Fees.</u>

OMM's fees should be denied or reduced due to its failure to disclose whether the Committee reviewed and approved of its fees and costs.   Alternatively, the Court should require OMM to obtain a statement from the Committee indicating whether it approves of the fees and costs requested.   The guidelines promulgated by the Executive Office of the United States Trustee entitled "Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330" (the "UST Guidelines"), provide that every fee application should disclose "[w]hether the person on whose behalf the applicant is employed has been given the opportunity to review the application and whether that person has approved the requested amount."   28 C.F.R. pt. 58, app. A. sec. (b)(1)(v).   Fees may be reduced or disallowed where an applicant did not clearly give the client an opportunity to review and approve of the fees.  *See Richardson & Richardson, P.C. v. Romano (In re Romano)*, 2012 Bankr. LEXIS 2042, at *33 (B.A.P. 9th Cir. May 7, 2012).   In that case, the attorney at least attempted to comply with the UST Guidelines, but altered the language by indicating the debtor did not object to his fees as opposed to affirmatively stating whether the debtor "approved" of the fees.   Here, OMM didn't even address the issue.   As such, the Court should not approve the application until this issue is addressed.   The failure to initially do so could also be grounds for reducing the fees.

II.  <u>The Court Should Deny Fees Where Applicant Failed to Provide Sufficient Detail Regarding the Services.</u>

Applicant bears the burden of showing his services were likely to benefit the estate and were necessary to the administration of the estate.   § 330(a)(4)(A).   "It is the applicant's burden

6

to submit sufficiently detailed records of the time spent and services provided, and lack of detail in the fee application warrants denial." *C. Douglas Wikle, Inc. v. Anderson (In re Smith)*, No. CC-05-1023-BKMo, 2005 Bankr. LEXIS 3362, at *13 (B.A.P. 9th Cir. Sep. 13, 2005) *citing In re Travel Headquarters, Inc.*, 140 B.R. 260, 261-62 (9th Cir. BAP 1992). "[T]he failure to provide an adequate explanation of services rendered is a basis for denial of fees." *In re Maas*, No. 05-41796, 2007 Bankr. LEXIS 2371, at *5 (Bankr. D. Idaho July 10, 2007) *citing In re Voechting*, 03.4 I.B.C.R. 237, 238 (Bankr. D. Idaho 2003). Insufficient detail regarding services rendered "requires the Court to speculate about what services [counsel] actually performed, and about any benefit to the bankruptcy estate…this renders the Court's task in reviewing the reasonableness of [counsel's] fee request an unnecessarily difficult and imprecise exercise." *Id*.

OMM's Second Fee Application lacks sufficient detail to evaluate whether the services benefited the estate or were reasonably likely to benefit the estate. The application, particularly with respect to lien review issues, does not provide sufficient detail to know whether there was one lien OMM was analyzing, whether it was multiple liens, or what liens they were. Without this information it is difficult to assess whether the time and cost spent reviewing the lien, or liens, was worth the potential benefit. One would suppose that the Debtor had already analyzed the validity, extent and priority of liens and would seek to avoid or contest liens, if possible. In this respect, any or all such work could be duplicative. The United States Trustee is unaware of challenges to liens or avoidance of liens by the Committee that has benefitted the unsecured creditors, or whether there were facts or circumstances that sufficiently called into question the extent or validity of any liens. More details and information are necessary to support OMM's Second Fee Application. Further, it is unclear why so many different attorneys were needed in

7

the lien review process. The involvement of so many different employees/attorneys likely increased the overall cost to the estate. Billing for these services appear excessive.

III. The Court Should Deny Duplicative Fees Where Multiple Attorneys Billed for the Same Services.

As noted previously, and as can be seen throughout OMM's invoices, OMM routinely had multiple attorneys from the firm on calls, consulting with one another, and attending meetings and/or hearings in the case. This included multiple attorneys reviewing emails, draft plans and disclosure statements, data rooms, memos, loan documents, pleadings, etc. "[T]he court shall not allow compensation for unnecessary duplication of services." 11 U.S.C. § 330(a)(4)(A)(i). Fees should not be allowed "for duplication of effort, such as conferences between attorneys representing the same parties, without explicit explanation for their necessity." *In re Nashville Union Stockyard Rest. Co.*, 54 B.R. 391, 396 (Bankr. M.D. Tenn. 1985). "Fees are not allowed for simply reviewing work product of another or for duplicative billing by attorneys involved in intra-office conferences." *In re Bailey Ridge Partners*, LLC, No. 17-00033, 2018 Bankr. LEXIS 1961, at *15 (Bankr. N.D. Iowa June 28, 2018). "When more than one attorney appears in court on a motion or argument or for a conference, no fee should be sought for non-participating counsel." *In re Cunningham*, No. 15 B 25417, 2017 Bankr. LEXIS 4229, at *2 (Bankr. N.D. Ill. Dec. 8, 2017) *citing In re Pettibone Corp.*, 74 B.R. 293, 307 (Bankr. N.D. Ill. 1987). "Normally, it is appropriate for only one attorney from a firm to attend a meeting, conference, or hearing. Absent an explanation, participation by multiple attorneys in the same meeting, conference, or hearing constitutes non-compensable duplicative services." *In re SonicBlue Inc.*, Nos. 03-51775, 03-51776, 03-51777, 03-51778-MM, 2006 Bankr. LEXIS 1576, at *17 (Bankr. N.D. Cal. July 20, 2006).

In this case, there are significant instances of duplicative billings. OMM regularly and frequently engaged in "OMM Team" conferences, calls, and meetings, calls with Debtor's counsel, calls with the Committee's financial advisor, or calls with the Committee, and in nearly every instance there were multiple OMM attorneys billing for all those calls, conferences, and meetings. The same appears to be true with respect to hearings as well as with respect to reviewing disclosure statements, plans and other filings or pleadings. In addition, there was substantial reviewing and editing of one another's research, memos, etc. Ultimately, OMM utilized the services of ten different attorneys and two paraprofessionals during this second interim period, which appears to have resulted in significant duplication or effort or duplicative services. Based upon the United States Trustee's review of the invoices, it appears that OMM consistently billed for three and sometimes four different attorneys for the same services, or attending the same conference, call or meeting. With respect to the lien research and review, there were up to ten different employees working in that regard, and as mentioned, it is unclear whether they were all researching the same lien, or liens. The United States Trustee believes it would be appropriate to reduce the total fees requested by at least 2/3 given the apparent and extensive duplication of services.

IV.   <u>The Court Should Reduce Fees Because it is Not Apparent from the Application What Value or Benefit the Estate, or the Committee, has Received from the Services.</u>

It is unclear from OMM's Second Fee Application what benefit has been realized or achieved as a result of the services OMM has rendered on behalf of the Committee. With respect to OMM's First Fee Application, the Court approved less than 1/3 of the total fees OMM requested. The Court ordered that allowance of any unapproved fees would need to be determined at an evidentiary hearing at a later date. Given the issues and concerns noted above,

9

the United States Trustee believes that a similar approach should be taken with respect to OMM's Second Fee Application. The United States Trustee would recommend approval of fees and costs in the total amount of $113,411.98, which represents the excess fees the Debtors already paid to OMM in connection with the Order Establishing Interim Fee Procedures beyond what the Court has previously approved. Any unapproved fees and costs requested under OMM's Second Fee Application should be set for an evidentiary hearing.

V. <u>Reimbursement of Certain Costs or Expenses Should be Disallowed Absent Additional Explanation or Documentation.</u>

The United States Trustee questions certain expenses for which OMM seeks reimbursement. Section 330 of the Bankruptcy Code only allows for reimbursement of "actual, necessary expenses." OMM seeks reimbursement for expenses associated with 'online research' in the amount of $6,023.20. At least one bankruptcy court has found expenses for online legal research are not compensable under Section 330. *In re Digerati Techs., Inc.*, 537 B.R. 317, 364 (Bankr. S.D. Tex. 2015). In that case, the court relied on the reasoning of the Seventh Circuit in *Haroco, Inc. v. Am. Nat. Bank & Trust Co. of Chicago*, 38 F.3d 1429, 1440-41 (7th Cir. 1994) to arrive at the view that, "[o]nline legal research is a cost that is reflected in an attorney's billing rate and is therefore subsumed into attorneys' fees."

Other courts have suggested that Lexis and Westlaw expenses *may* be compensable. *In re Underground Energy, Inc.*, No. 9:13-bk-10563-PC, 2015 Bankr. LEXIS 147, at *33 (Bankr. C.D. Cal. Jan. 14, 2015). However, it appears that courts open to allowing reimbursement of online legal research expenses require a showing that they are "both necessary and attributable to a particular client." *Id*. quoting In re Gillett Holdings, Inc., 137 B.R. 462, 471 (Bankr. D. Colo. 1992). Further, "the billing statements should indicate the date, the person conducting the

search, the length of the search, as well as providing evidence of the necessity for the use of the service." *Id.* quoting *In re Fibermark, Inc.*, 349 B.R. 385, 400 (Bankr. D. Vt. 2006). If a law firm has a subscription plan with an online legal research provider that has a fixed monthly, or annual fee, it would be difficult to establish that the fee is actual, or attributable to a particular client. "As a matter of law…an expense is not 'actual,' and therefore not reimbursable under section 330(a)(2), to the extent that it is based on any sort of guesswork, formula, or pro rata allocation." *In re Williams*, 102 B.R. 197, 199 (Bankr. N.D. Cal. 1989). As such, the United States Trustee believes OMM's request for reimbursement of expenses for "online research," should be disallowed. This expense should be subsumed into the already very high hourly rates of OMM's attorneys or should not otherwise be allowed absent concrete documentation establishing the actual amount of the online research expenses.

In addition, the United States Trustee questions the expenses for 'Document Production,' and 'Other Professionals.' (See Docket No. 893, pp. 23 and 36). Without additional explanation and documentation, the United States Trustee believes these expenses, in the combined amount of $2,553.90 should be denied.

## **CONCLUSION**

Based upon the foregoing, OMM's request for fees under its Second Fee Application should be reduced or denied. The Court should only allow reimbursement of expenses in the amount of $967.58, which is the requested amount less charges for 'online research,' 'document production,' and 'other professionals.' The United States Trustee recommends approval of fees in the amount of $112,444.40, which is equal to the payments that OMM has already received from the Debtors, less the fees and costs approved under OMM's First Fee Application, and less

the costs of $967.58 pursuant to the present application. OMM should be required to submit a statement or declaration with respect to whether the Committee has reviewed and approved of the fees requested under OMM's interim fee applications.

Date: February 27, 2025                                JONAS V. ANDERSON
                                                       Acting United States Trustee for Region 18


                                                       /s/ Brett R. Cahoon
                                                       BRETT R. CAHOON
                                                       Attorney for the Acting United States Trustee
                                                       brett.r.cahoon@usdoj.gov


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 27, 2025, I caused the foregoing to be filed with the Court's CM/ECF system which causes a copy of the foregoing to be served by electronic means on the parties reflected on the Notice of Electronic Filing.

Date: February 27, 2025                                /s/ Brett R. Cahoon
                                                       BRETT R. CAHOON