Janine P. Reynard (ISB #6030)
AVERY LAW
3090 E. Gentry Way, Ste 250
Meridian, ID 83642
Telephone:  (208) 639-9400
Facsimile:  (208) 994-3182

-and-

Lorenzo Marinuzzi (admitted *pro hac vice*)
Raff Ferraioli (admitted *pro hac vice*)
Miranda Russell (admitted *pro hac vice*)
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019-9601
Telephone:  (212) 468-8000
Facsimile:  (212) 468-7900
Email:  LMarinuzzi@mofo.com
          RFerraioli@mofo.com
          MRussell@mofo.com

*Attorneys for East Valley Development, LLC*

## UNITED STATES BANKRUPTCY COURT

### DISTRICT OF IDAHO

| | |
|---|---|
| In re: | Case No. 24-40158-NGH |
| MILLENKAMP CATTLE, INC., | |
| Debtor. | |
| Filing relates to: | Jointly Administered With Case Nos.: |
| ☒ ALL DEBTORS | 24-40159-NGH (Idaho Jersey Girls) |
| | 24-40160-NGH (East Valley Cattle) |
| ☐ Millenkamp Cattle, Inc. | 24-40161-NGH (Millenkamp Properties) |
| | 24-40162-NGH (Millenkamp Properties II) |
| ☐ Idaho Jersey Girls | 24-40163-NGH (Millenkamp Family) |
| | 24-40164-NGH (Goose Ranch) |
| ☐ East Valley Cattle | 24-40166-NGH (Black Pine Cattle) |
| | 24-40167-NGH (Millenkamp Enterprises) |
| ☐ Millenkamp Properties | 24-40165-NGH (Idaho Jersey Girls Jerome Dairy) |
| ☐ Millenkamp Family | |
| ☐ Goose Ranch | Chapter 11 Cases |

☐ Black Pine Cattle

☐ Millenkamp Enterprises

☐ Idaho Jersey Girls Jerome Dairy

## EAST VALLEY DEVELOPMENT'S AMENDED MOTION FOR RELIEF FROM THE AUTOMATIC STAY TO PROCEED WITH ARBITRATION

East Valley Development, LLC ("EVD"), by and through its undersigned attorneys, hereby files this *Amended Motion for Relief from the Automatic Stay to Proceed with Arbitration* (the "Amended Motion"), for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Revised Proposed Order"), pursuant to section 362(d) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Idaho Local Bankruptcy Rules (the "Local Rules"), confirming that EVD may seek emergency injunctive relief before the American Arbitration Association (the "AAA") without violating the automatic stay of section 362 of the Bankruptcy Code (the "Automatic Stay") or, in the alternative, granting limited relief from the Automatic Stay to seek such relief.  This Amended Motion supplements *East Valley Development's Motion for Relief from the Automatic Stay to Proceed with Arbitration* [Docket No. 908] (the "Original Motion") [1] and modifies the relief requested in the Original Motion in light of developments since the original filing.  In support of the Amended Motion, EVD respectfully represents as follows:

---

[1] Capitalized terms used but not otherwise defined herein shall have the definitions ascribed to such terms in the Original Motion.

ny-2919751

# I. <u>PRELIMINARY STATEMENT</u>[2]

1.      Since the filing of the Original Motion, the Debtors have withdrawn their Demand[3] and filed an adversary proceeding complaint with this Court, alleging near-identical claims for breach of contract and declaratory judgment arising from the Parties' obligations under the Facility Agreements.  In advance of the answer deadline on April 2, EVD intends to file a motion to compel arbitration in accordance with the Facility Agreements' mandatory arbitration provisions or, in the alternative, dismiss the claims set forth in the Complaint.  While the Debtors assert in their Objection to the Original Motion that stay relief is now unnecessary because of the withdrawn Demand, the Debtors have regrettably escalated their disagreement with EVD since filing the Complaint to the extent that immediate injunctive relief is needed in order to prevent irreparable harm.

2.      Specifically, on March 4, the Debtors sent their contractors to the Manure Separation Facility on EVD's leased property to perform physical modifications to the FAN[4] Header Manifold without EVD's consent.  The unauthorized work included cutting and welding activities without having obtained the appropriate permit, without personal protective equipment, and without even a nearby fire extinguisher.  The proposed modifications have also never been presented to the project's engineer of record for approval and would, if completed, jeopardize the workmanship warranty on the Manure Separation Facility.  EVD's operators were forced to evacuate the building for their own safety.  EVD's counsel sent a letter to Debtors' counsel on March 6, which is attached hereto as **<u>Exhibit C</u>** (the "<u>EVD March 6 Letter</u>"), requesting that the

---

[2] Capitalized terms used but not otherwise defined in the Preliminary Statement shall have the definitions ascribed to such terms in the remainder of the Amended Motion.

[3] The Demand is attached hereto as **<u>Exhibit B</u>**.

[4] FAN is the manufacturer.

ny-2919751

Debtors immediately cease and desist from any further activity relating to modifications of the FAN Header Manifold without EVD's consent and confirm that they would stop by close of business on March 7.  That same day, Debtors' counsel sent their own letter to EVD's counsel regarding the dispute, which is attached hereto as **Exhibit D**.  Debtors' counsel sent an additional response on March 7 denying the factual statements in the EVD March 6 Letter, which is attached hereto as **Exhibit E** (the "Debtors' March 7 Letter").  Among other things, the Debtors' March 7 Letter confirmed that the Debtors and their contractors intend to continue their modification activities over EVD's objection.

3.      As a result, the Parties are now in the untenable position where the Debtors are attempting to physically modify the FAN Header Manifold over EVD's objection.  The Debtors have sent their own contractors to the Manure Separation Facility to perform work without EVD's approval and have indicated that they are unwilling to withdraw their contractors from the Manure Separation Facility until the Parties are able to resolve their dispute over whether the Debtors' unilateral modifications are permitted under the governing Facility Agreements.  The Debtors are demanding that EVD shut down operations so that their contractors can install the unapproved modifications.  The parties are literally at a physical standoff.  Furthermore, the presence of the Debtors' contractors at the Manure Separation Facility has interfered with EVD's ongoing operation of the Manure Separation Facility.

4.      EVD now respectfully asks that this Court confirm that EVD may file with the AAA a demand requesting injunctive relief (the "Demand for Injunctive Relief") and a demand for arbitration (the "Demand for FAN Header Manifold Arbitration") with respect to the unauthorized FAN Header Manifold modifications, and a request for appointment of an emergency arbitrator and such other documents as may be needed to obtain the requested injunctive relief.  Since this

issue is a controversy arising out of and relating to the Facility Agreements, the Facility Agreements' Mandatory Arbitration Provisions are implicated, and the AAA is therefore the appropriate tribunal from which EVD must seek relief. Under the Commercial Rules, once such a request is made, an emergency arbitrator (the "Emergency Arbitrator") will be appointed by the AAA within one business day of the request. *See* Commercial Rules, Rule 39. This Emergency Arbitrator's decision-making powers will be limited to the discrete issue for which emergency relief is requested (here, the FAN Header Manifold modifications). If the Parties' dispute is ultimately moved back to an arbitration proceeding with the AAA rather than as an adversary proceeding before this Court, a permanent arbitrator will be appointed in accordance with the procedure outlined in the Facility Agreements and the AAA Commercial Rules.

5. EVD submits that the Automatic Stay is not implicated with respect to this entirely post-petition dispute, but nevertheless seeks a comfort order from this Court to confirm that it may proceed to file the Demand for Injunctive Relief and the Demand for FAN Header Manifold Arbitration without violating the Automatic Stay. In the alternative, if this Court finds that the Automatic Stay is implicated, EVD requests limited relief from the Automatic Stay to enforce its rights solely with respect to the FAN Header Manifold dispute.

6. Expedited relief with respect to this discrete issue is in the best interest of both Parties. In the Debtors' March 7 Letter, the Debtors demand that EVD provide adequate assurance that it will resume operations by Sunday, March 16 or the Debtors will attempt to take over operation of the Manure Separation Facility. But EVD does not believe it is safe to resume operations until the Debtors confirm that they will stop their contractors' unauthorized modifications of the FAN Header Manifold. The Debtors' March 7 Letter mocks these asserted safety concerns as "contrived excuses." Clearly, the Parties' negotiations are at a deadlock and

outside intervention from a third-party arbitrator is necessary to reach a resolution with respect to this critical issue.

7.      The injunctive relief that EVD seeks from the AAA would preserve the status quo until the Parties' forum dispute is resolved and there can be an adjudication of all the Parties' disputes on the merits.  While EVD reserves all of its rights, it will not be seeking payment of any damages in connection with the FAN Header Manifold modifications at this time and is simply asking that the Emergency Arbitrator have the Debtors cease their unauthorized, unsafe activities so that EVD can resume normal operations at the Manure Separation Facility while the other litigation issues are pending between the Parties.  As discussed below, cause exists to grant the relief requested herein and no parties will be prejudiced if such relief is granted.

## II. <u>JURISDICTION</u>

8.      This Court has jurisdiction over this Amended Motion pursuant to 28 U.S.C. §§ 157 and 1334.  EVD's request for stay relief is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are sections 362(d) of the Bankruptcy Code, Bankruptcy Rule 4001, and Local Rule 4001-2.

## III. <u>BACKGROUND</u>

### A.      Legal and Procedural Background

9.      On April 2, 2024 (the "<u>Petition Date</u>"), the above-captioned debtors (the "<u>Debtors</u>") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Idaho (the "<u>Court</u>").  Upon the Petition Date, the Automatic Stay came into effect and stayed the commencement of any action against the Debtors that could have been commenced before the Petition Date.

10.     Prior to the Petition Date, EVD and the Debtors (collectively, the "Parties" and each, a "Party") entered into (a) that certain Ground Lease Agreement dated effective as of October 8, 2021, between Debtor East Valley Cattle, LLC and EVD (as amended, the "Ground Lease") and (b) that certain Manure Supply Agreement dated effective as of October 8, 2021, between Debtor Millenkamp Cattle, Inc. and EVD (as amended, the "MSA," and together with the Ground Lease, the "Facility Agreements").[5]   The Ground Lease and the MSA provide for arbitration of all disputes arising out of the respective agreement before the AAA in accordance with the AAA's Commercial Arbitration Rules (the "Commercial Rules").   Specifically, Section 30.2 of the Ground Lease provides:

> Any controversy or claim arising out of or relating to this Lease, or the breach thereof, shall be determined by final and binding arbitration administered by the American Arbitration Association ("AAA") under its Commercial Arbitration Rules and Mediation Procedures ("Commercial Rules"). The award rendered by the arbitrator shall be final and binding on the parties and may be entered and enforced in any court having jurisdiction, and any court where a party or its assets is located (to whose jurisdiction the parties consent for the purposes of enforcing the award).

See Ground Lease at § 30.2 (the "Ground Lease Mandatory Arbitration Provision").   Similarly, the MSA provides:

> If resolution of a particular claim, dispute or other matter arising out of or related to this Agreement cannot be achieved through one or more meetings, then either Dairy or Developer may demand by notice to the other party that the claim, dispute or other matter be determined by final and binding arbitration. Unless Dairy and Developer otherwise agree, the arbitration will be administered by the American Arbitration Association ("AAA") under its Commercial Arbitration Rules and Mediation Procedures ("Commercial Rules"). The award rendered by the arbitrator shall be final and binding on the parties and may be entered and enforced in any court having jurisdiction, and any court where a party or its assets is located (to whose jurisdiction the parties consent for the purposes of enforcing the award).

---

[5] Additional background information regarding the Facility Agreements is set forth in *East Valley Development's Motion to Compel Assumption or Rejection of Executory Contracts, or, in the Alternative, for Equitable Relief* [Docket No. 549].

MSA at § 18.2.2 (the "MSA Mandatory Arbitration Provision," and together with the Ground Lease Mandatory Arbitration Provision, "Mandatory Arbitration Provisions"). The Mandatory Arbitration Provisions are mutual. That is, either Party may invoke its provisions and both Parties' rights are the same under the Mandatory Arbitration Provisions.

11.    On January 17, 2025, in accordance with the Mandatory Arbitration Provisions, the Debtors filed the Demand with the AAA, alleging claims for breach of contract and declaratory judgment arising from the Parties' obligations under the Facility Agreements. The Demand also requested that the arbitrator retain jurisdiction to resolve future disputes that may exist in the Parties' ongoing controversy. *See* Demand, at p. 23.

12.    On February 3, 2025, the Parties attended an administrative arbitration conference with the AAA for the sole purpose of determining preliminary arbitration logistics. At this administrative conference, the Parties agreed to continue the administrative conference for an additional 30 days pending the resolution of the issues raised the Original Motion. At this initial administrative arbitration conference, the Debtors represented that their asserted damages against EVD were less than $10 million.

13.    On February 14, 2025, EVD filed the Original Motion requesting limited stay relief so that EVD could fully participate in the Arbitration initiated by the Debtors. On February 28, 2025, the Debtors filed (a) the *Debtors' Objection to Motion for Relief from Automatic Stay* (the "Objection") [Docket No. 936] and (b) an adversary proceeding complaint (the "Complaint") against EVD [Case No. 25-08003-NGH, Docket No. 1] (such adversary proceeding, the "Adversary Proceeding"). EVD's response to the Complaint is due on April 2, 2025. *See* Adversary Proceeding, Docket No. 4. On March 6, 2025, Debtors' counsel emailed EVD's counsel confirmation that the Demand was withdrawn on February 28, 2025.

14.     EVD does not know and can only speculate as to why the Debtors decided to file for arbitration and then proceeded to change course and file an adversary proceeding asserting the same claims instead, despite EVD's assertion that it would not be waiving its contractual rights to mandatory arbitration.  The Debtors' abrupt pivot has created an unnecessary forum dispute that will only protract the litigation initiated by the Debtors.  The Debtors appear to concede that some of their asserted claims are non-core.  In the Adversary Proceeding Cover Sheet [Adversary Proceeding, Docket No. 1-1], the Debtors assert an "Other" claim, *e.g.*, "other actions that would have been brought in state court if unrelated to bankruptcy case."  For the avoidance of doubt, EVD does not consent to the entry of final orders or judgment by this Court with respect to the claims asserted by the Debtors in the Complaint because some or all of such claims are subject to binding arbitration.

**B.      Factual Background with Respect to the FAN Header Manifold Dispute**

15.     At a high level and for basic background purposes, the FAN[6] Header Manifold is a central pipe with five branches emerging from such pipe that each distribute thickened manure flow to screwpresses.  Each screwpress is a piece of agricultural equipment that takes incoming fluid manure flow made up of solids and liquids and physically squeezes approximately 30% of those solids from the incoming liquid.  This process results in two products:  a solid "fiber" product that has been squeezed from the incoming fluid flow, and an "effluent" which is the remaining liquid portion of the incoming manure flow, less the 30% of the solids that came in.  After this separation step, the "effluent" product that was created goes through yet another physical separation step using centrifuges, which allows for finer manure particles that would otherwise slip through the screwpresses to be collected.

---

[6] FAN is the manufacturer.

ny-2919751

16.     The FAN Header Manifold was constructed exactly pursuant to the engineering plans that were approved by the Debtors, pursuant to the design approval provisions of the Ground Lease.

17.     On March 4, 2025, the Debtors sent their contractors to the Manure Separation Facility to modify the FAN Header Manifold to a different design, without advance notice and without EVD's consent.  The unauthorized work included cutting and welding activities without having obtained a hot work permit, without personal protective equipment, and without even a nearby fire extinguisher.  The Debtors' contractors also started drilling into the concrete base where the separators are installed, raising concerns about the integrity of the surrounding equipment and the impact on EVD's operations.  EVD's operators were forced to evacuate the building for their own safety, and the ongoing activity by the Debtors' contactors has interfered with EVD's ability to address routine operational issues at the Manure Separation Facility.  Additional details regarding the Debtors' activities are set forth in the EVD March 6 Letter, which is attached hereto as **Exhibit C**.

18.     Importantly, the Debtors' proposed modifications to the FAN Header Manifold have never been submitted to EVD or to the engineer of record for the project.  EVD is therefore in the dark as to specific changes the Debtors are attempting to make.  In addition, the proposed modifications, if made, threaten to void the warranty of workmanship applicable to the Manure Separation Facility and void the byproduct specification requirements.

19.     In the EVD March 6 Letter, EVD's counsel requested that the Debtors immediately cease and desist from any further activity relating to modifications of the FAN Header Manifold without EVD's consent.  That same day, Debtors' counsel sent their own letter to EVD's counsel regarding the same issue, which is attached hereto as **Exhibit D**.  The Debtors' March 7 Letter

10

outlines the Parties' different views of the facts underlying this dispute and indicated that the Debtors would not cease and desist their activities as requested by EVD. In consultation with its counsel, EVD decided to file this Amended Motion to confirm it is authorized to request emergency relief from the AAA with respect to this dispute.

## IV. <u>RELIEF REQUESTED</u>

20. By this Amended Motion, EVD respectfully requests entry of an order substantially in the form of the Revised Proposed Order attached hereto as <u>**Exhibit A**</u> confirming that (a) EVD may file with the AAA a (i) Demand for Injunctive Relief, (ii) Demand for FAN Header Manifold Arbitration, and (iii) request for appointment of an emergency arbitrator to adjudicate the Demand for Injunctive Relief, in each case without violating the Automatic Stay; and (b) the AAA may adjudicate the Demand for Injunctive Relief and the Demand for FAN Header Manifold Arbitration in accordance with the Commercial Rules, including entry of a final and binding decision by the Emergency Arbitrator and any other procedures and determinations that the Emergency Arbitrator may deem necessary in order to render any decision related thereto. In the alternative, EVD respectfully requests entry of an order lifting the Automatic Stay to the limited extent needed to effectuate the same relief.

## V. <u>BASIS FOR RELIEF REQUESTED</u>

### A. The Mandatory Arbitration Provisions in the Facility Agreements Require that this Dispute Be Settled Through Arbitration with the AAA.

21. The Federal Arbitration Act (the "<u>FAA</u>"), 9 U.S.C. § 1 et seq., governs the enforcement of arbitration agreements involving interstate commerce. *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 232–34 (2013). As relevant here, the FAA provides:

> A written provision in any maritime transaction or contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

11

9 U.S.C. § 2.  This text reflects a "liberal federal policy favoring arbitration agreements."  *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *see also Shearson/American Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987) ("The Arbitration Act thus establishes a 'federal policy favoring arbitration.'").  The relevant language also reflects that arbitration is a matter of contract.  *See Italian Colors,* 570 U.S. at 233 (citing *Rent–A–Center, West, Inc. v. Jackson,* 561 U.S. 63, 66–67 (2010)).  Accordingly, because the "preeminent concern of Congress in passing the [FAA] was to enforce private agreements" courts must "rigorously enforce" arbitration agreements according to their terms, *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 221 (1985), including "the rules under which that arbitration will be conducted," *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989).

22.    "The standard for demonstrating arbitrability is not a high one; in fact, a district court has little discretion to deny an arbitration motion, since the [FAA] is phrased in mandatory terms." *Crooks v. Wells Fargo Bank, N.A.*, 312 F. Supp. 3d 932, 936 (S.D. Cal. 2018) (quoting *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991)).  "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."  *Moses,* 460 U.S. at 24–25.  "The Act leaves no place for the exercise of discretion by a district court but instead mandates that district courts ***shall*** direct parties to arbitration on issues as to which an arbitration agreement has been signed."  *Dean Witter*, 470 U.S. 213 at 218 (emphasis in original).  Importantly, the burden of proving that the claims are unsuitable for arbitration lies with the party

resisting arbitration (here, the Debtors).  *See Green Tree Fin. Corp.–Ala. v. Randolph*, 531 U.S. 79, 91–92 (2000).

23.    The Ninth Circuit has made clear that there is no evidence in the text of the Bankruptcy Code or in the legislative history suggesting that Congress intended to create an exception to the FAA in the Bankruptcy Code.  "In non-core proceedings, the bankruptcy court generally does not have discretion to deny enforcement of a valid prepetition arbitration agreement."  *In re Thorpe Insulation Co.*, 671 F.3d 1011, 1021 (9th Cir. 2012) (citing cases); *MCI Telecomms. Corp. v. Gurga (In re Gurga)*, 176 B.R. 196, 199 (B.A.P. 9th Cir. 1994) (holding that a bankruptcy court did not have discretion to refuse to enforce an arbitration clause in a prepetition agreement where the underlying action was based on a non-core breach of contract claim).  "Actions that do not depend on bankruptcy laws for their existence and that could proceed in another court are considered 'non-core.'"  *Security Farms v. Int'l Broth. of Teamsters*, 124 F.3d 999, 1008 (9th Cir. 1997) (citing *In re Castlerock Properties*, 781 F.2d 159, 162 (9th Cir. 1986)).  Even in core proceedings, the bankruptcy court "has discretion to decline to enforce an otherwise applicable arbitration provision ***only if*** the arbitration would conflict with the underlying purpose of the Bankruptcy Code."  *In re Thorpe Insulation Co.*, 671 F.3d at 1021 (emphasis added).

24.    For example, in *In re Snake River Dairyman's Ass'n, Inc.*, No. 03-41124, 2004 WL 4960361, at *6 (Bankr. D. Idaho Mar. 31, 2004), this Court considered breach of contract claims asserted by a creditor against a debtor and held that the facts in that case favored resolution by arbitration.  This Court declined to decide whether such claims were core or non-core; however, this Court did express that if such claims were non-core, then "the Court is without discretion and must order [arbitration]."  *Id.*  Even if the claims were core, this Court determined that arbitration was warranted because, among other reasons, the creditor's claims were "based solely upon state

13

law" and "[would] be resolved without resort to interpreting the Bankruptcy Code or Rules." *Id.*
In addition, this Court recognized that "Congress has established a strong policy favoring the
enforcement of arbitration clauses in private contracts." *Id.* at *7.

25.     In deciding whether to compel arbitration, a court must determine two gateway
issues: "'(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement
encompasses the dispute at issue.'" *Kilgore v. KeyBank, Nat. Ass'n*, 673 F.3d 947, 955–56 (9th
Cir. 2012) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir.
2000)). If both requirements are satisfied, "'the [FAA] requires the court to enforce the arbitration
agreement in accordance with its terms.'" *Id.* (quoting *Chiron*, 207 F.3d at 1130).

26.     In this case, it is axiomatic that the Parties intended to bind themselves to mandatory
arbitration when negotiating and executing the Facility Agreements. *See* Ground Lease at § 30.2;
MSA at § 18.2.2. Both Parties agree that the Debtors and EVD entered into the Facility
Agreements. *See* Complaint, at ¶¶ 12, 13. The Facility Agreements contain the broad Mandatory
Arbitration Provisions, and the injunctive relief sought by EVD clearly arises out of and relates to
the Facility Agreements. EVD's request for injunctive relief is a non-core claim because such
claim does not depend on bankruptcy law for its existence. *See Security Farms,* 124 F.3d at 1008
(citing *Castlerock*, 781 F.2d at 162). Because this is a non-core claim, the dispute must be
arbitrated with the AAA pursuant to the Mandatory Arbitration Provisions.[7] Under the FAA and
relevant Supreme Court and Ninth Circuit case law, EVD respectfully submits that this Court lacks
discretion to deny arbitration of EVD's request for injunctive relief.

---

[7] Even if this Court were to determine that the FAN Header Manifold dispute is a core claim, the adjudication of the
matter in arbitration will not "frustrate any underlying purpose of the Bankruptcy Code, or have such potential adverse
impact on the bankruptcy proceedings." *In re Snake River Dairyman's Ass'n, Inc.*, 2004 WL 4960361, at *6.

27.     Notwithstanding the foregoing, if this Amended Motion is denied, then EVD reserves its rights to request injunctive relief from this Court in the alternative.

**B.      The Automatic Stay Is Not Implicated with Respect to an Entirely Post-Petition Dispute.**

28.     Section 362(a)(1) of the Bankruptcy Code stays "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title." *See* 11 U.S.C. § 362(a)(1).  The automatic stay is not intended to "to bar proceedings for post-petition claims that could not have been commenced before the petition was filed." *AFCM, Inc. v. Elite Glob. Farming & Logistics, Inc.*, No. 11-4677, 2013 WL 1333787, at *4 (N.D. Cal. Mar. 29, 2013) (quoting *Taylor v. First Federal Sav. & Loan Ass'n of Monessen,* 843 F.2d 153, 154 (3d Cir.1988)); *accord* 3 Collier on Bankruptcy ¶ 362.03 (16th 2024).

29.     Indeed, bankruptcy courts are clear that "[t]he automatic stay is applicable only to claims that arise pre-petition, and not to claims that arise post-petition." *In re Rodriguez*, 629 F.3d 136, 138 (3d Cir. 2010); *see also In re Dunbar*, 245 F.3d 1058, 1063 n.3 (9th Cir. 2001) (noting that the distinction between a post-petition claim and a post-petition judgment "is important because post-petition claims are not subject to the automatic stay"); *In re Miller*, 262 B.R. 499, 507 (B.A.P. 9th Cir. 2001) (holding that automatic stay was not implicated where parties' request for sanctions arose from debtor's post-petition conduct); *In re Jackson*, 403 B.R. 95, 100 (Bankr. D. Idaho 2009) ("Debtors conceded (correctly) that § 362(a) does not prohibit the prosecution of an action by a creditor against a debtor to collect a post-petition debt."); *In re Colorado Altitude Training LLC*, No. 10-21951 EEB, 2012 WL 993530, at *3 (Bankr. D. Colo. Mar. 23, 2012) ("The

15

automatic stay does not apply to actions seeking to enjoin allegedly unlawful post-petition conduct by the Debtor.").

30.      The Automatic Stay is not implicated with respect to the Demand for Injunctive Relief, the Demand for FAN Header Manifold Arbitration, and EVD's forthcoming request for appointment of an emergency arbitrator in connection therewith.  In this case, EVD is seeking confirmation from this Court that it can request narrowly construed injunctive relief from the AAA solely with respect to the Debtors' conduct in March 2025.  This dispute only relates to controversies in the post-petition period, and EVD could not have requested injunctive relief with respect to this issue prior to the Petition Date.  The Debtors should not be permitted to use the automatic stay as a sword to violate the contractual and property rights of their lessee, EVD.  *See In re Scarborough-St. James Corp.*, 535 B.R. 60, 67 (Bankr. D. Del. 2015) (recognizing that the "stay is a shield, not a sword").  Moreover, EVD is not requesting any damages in connection with this dispute at this time (although it reserves all rights to request such damages in the future) but is simply requesting that the status quo be maintained and operations at the Manure Separation Facility be permitted to continue as normal without the Debtors' hazardous and unauthorized interventions.  Any injunctive relief granted will not prejudice the Debtors' rights in the Adversary Proceeding (or any subsequent arbitration proceedings).

**C.      In the Alternative, Cause Exists to Lift the Automatic Stay for the Limited Purpose of Filing the Demand for Injunctive Relief and the Demand for FAN Header Manifold Arbitration.**

31.      In the alternative, EVD asserts that cause exists to lift the Automatic Stay so that EVD can file the Demand for Injunctive Relief and the Demand for FAN Header Manifold Arbitration.  Section 362 of the Bankruptcy Code provides that the court shall grant relief from the automatic stay for cause.  *See* 11 U.S.C. § 362(d)(1).  EVD has the initial burden of establishing a prima facie case that cause exists.  *In re Hawkeye Entm't*, No. 23-11501, 2024 WL 1528460, at

16

*10 (Bankr. C.D. Cal. Apr. 8, 2024) (citations omitted).  Thereafter, pursuant to section 362(g)(2) of the Bankruptcy Code, the Debtors bear the burden of proof on all other issues, to show that relief from the stay is unwarranted, including the absence of cause for relief under section 362(d)(1).  *Id.*

32.     The term "cause" is not defined in the Bankruptcy Code and whether cause exists is to be determined on a case-by-case basis after examining the totality of the circumstances.  *In re Kronemyer*, 405 B.R. 915, 921 (B.A.P. 9th Cir. 2009); *In re Hawkeye Entm't*, 2024 WL 1528460, at *9–10; *accord In re Lyon*, No. 19-00129, 2019 WL 2866558, at *3 (Bankr. D. Idaho July 2, 2019).  In determining whether to grant relief from the stay so that an action can proceed in another forum, courts in this circuit generally consider judicial economy, the expertise of the alternative forum, prejudice to the parties, and whether exclusively bankruptcy issues are involved.  *In re Kronemyer*, 405 B.R. at 921 (citations omitted); *see also In re Jardine*, 647 B.R. 224, 235 (Bankr. D. Idaho 2022).  Courts in this circuit have recognized a non-exhaustive list of factors that articulate the foregoing considerations and are relevant to the court's determination of whether or not to grant relief from the automatic stay, including the following *Curtis* factors:

(1) Whether the relief will result in a partial or complete resolution of the issues;

(2) The lack of any connection with or interference with the bankruptcy case;

(3) Whether the foreign proceeding involves the debtor as a fiduciary;

(4) Whether a specialized tribunal has been established to hear the particular cause of action and whether that tribunal has the expertise to hear such cases;

(5) Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;

(6) Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question;

(7) Whether the litigation in another forum would prejudice the interests of other creditors, the creditors' committee, and other interested parties;

(8) Whether the judgment claim arising from the foreign action is subject to equitable subordination under section 510(c);

(9) Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under section 522(f);

(10) The interests of judicial economy and the expeditious and economical determination of litigation for the parties;

(11) Whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and

(12) The impact of the stay on the parties and the "balance of hurt."

*See In re Hawkeye Entm't*, 2024 WL 1528460, at *10 (citing *In re Curtis*, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984)); *see also In re Altman*, No. 16-15248, 2018 WL 3133164, at *7 (B.A.P. 9th Cir. June 26, 2018) (acknowledging the *Curtis* factors as well as additional factors under *Christensen v. Tucson Estate, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1167 (9th Cir. 1990) that can be considered).

33.    Not all of these factors are relevant in each case, and the court does not have to give equal weight to each factor in deciding whether to modify the stay. *In re Hawkeye Entm't*, 2024 WL 1528460, at *10. As such, EVD believes the relevant factors discussed herein weigh in favor of modifying the Automatic Stay to the limited extent as set forth herein:

- ***The Relief Requested Will Result in a Complete Resolution of the Issues.*** The Demand for Injunctive Relief and the Demand for FAN Header Manifold Arbitration are narrowly tailored requests relating to a discrete (but material) harm. While other outstanding issues remain between the Parties, the Demand for Injunctive Relief and the Demand for FAN Header Manifold Arbitration will completely resolve the issue of the Debtors' contractors' entry onto EVD's leased property to modify the FAN Header Manifold.

- ***This is a State Law Contractual and Property Dispute Under the Facility Agreements and Will Not Interfere with the Debtors' Bankruptcy Cases.*** The injunctive relief sought by EVD is based in Idaho state law, not bankruptcy law.

Here, whether the Debtors' contractors are permitted to modify the FAN Header Manifold on EVD's leased property will not impact the Debtors' ability to reorganize.

- ***The Arbitration Will Not Prejudice the Interests of Other Creditors, the Creditors' Committee, or Other Interested Parties.*** The Demand for Injunctive Relief and the Demand for FAN Header Manifold Arbitration concern a two-party dispute (exclusive of the parties' respective agents and employees). The rights of other interested parties in these chapter 11 cases are not directly implicated by the injunctive relief sought.[8] Additionally, as noted above, EVD is not seeking monetary damages at this time, but, for the avoidance of doubt, if any are awarded, then EVD will not enforce such award against the Debtors' estates without further order of this Court. This will ensure that the Debtors' estates will still be administered in accordance with the Bankruptcy Code and in the best interests of all creditors.

- ***The Interests of Judicial Economy and the Expeditious and Economical Determination for the Parties Supports Granting the Requested Relief.*** There is no doubt that the Parties vehemently disagree with respect to (i) the facts underlying the FAN Header Manifold modifications and (ii) the Parties' legal obligations and rights under the Facility Agreements with respect to the FAN Header Manifold. EVD requires a decision regarding these issues before the parties will have a resolution regarding their forum dispute. The AAA already has expeditious procedures in place for emergency relief through its mechanism to permit the appointment of an emergency arbitrator. The Debtors and EVD submitted to these procedures when they agreed to the Mandatory Arbitration Provisions and the Parties can rely on the resources provided by the AAA rather than burdening this Court with non-core bankruptcy issues.

- ***The Balance of "Hurt" Will Weigh More Heavily Towards EVD if EVD Cannot File the Demand for Injunctive Relief and Demand for FAN Header Manifold Arbitration.*** If EVD does not have leave to file the Demand for Injunctive Relief and the Demand for FAN Header Manifold Arbitration, it will be without its contractually agreed upon civil recourse against the Debtors to assert its rights under the Facility Agreements. Further, if EVD cannot continue operations safely, its performance under the Facility Agreements will be adversely impacted daily until the Debtors' conduct stops. Finally, Givens Pursley LLP, the Debtors' special litigation counsel, is representing the Debtors in this dispute with EVD, not the Debtors' bankruptcy counsel, so the arbitration regarding the Demand for Injunctive Relief and the Demand for FAN Header Manifold Arbitration is unlikely to impose any burden on the Debtors' bankruptcy advisors. EVD stands to be the only party harmed if the Automatic Stay is not modified as requested.

---

[8] Additionally, the mere presence of creditors in the main bankruptcy proceeding who might (or might not) be affected by the arbitration decision also does not require that such dispute be heard in the bankruptcy court. *See Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1158 (3d Cir. 1989).

ny-2919751

34.     The Debtors assert in the Debtors' March 7 Letter that EVD "will not be able to show the requisite likelihood of success on the merits and balancing of equities in EVD's favor" in seeking a preliminary injunction and may argue the same to this Court. This assertion is irrelevant to the relief requested by this Amended Motion. Unlike a request for injunctive relief itself, likelihood of success on the merits is not a factor for consideration under the *Curtis* or *Tucson Estates* factors for granting stay relief.

## VI. <u>CONCLUSION</u>

WHEREFORE, for the reasons set forth herein, EVD respectfully requests that the Court enter the Revised Proposed Order granting the relief requested in this Amended Motion and such other and further relief as is just and proper.

*[Remainder of Page Intentionally Left Blank]*

Dated:  March 11, 2025                MORRISON & FOERSTER LLP


                              /s/ Lorenzo Marinuzzi
                              Lorenzo Marinuzzi (admitted *pro hac vice*)
                              Raff Ferraioli (admitted *pro hac vice*)
                              Miranda Russell (admitted *pro hac vice*)



                              -AND-



                              AVERY LAW



                              /s/ Janine P. Reynard
                              Janine P. Reynard
                              *Attorneys for East Valley Development, LLC*


21

**Exhibit A**

**Revised Proposed Order**

ny-2919751

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| In re: | Case No. 24-40158-NGH |
| MILLENKAMP CATTLE, INC., | |
| Debtor. | |
| Filing relates to: | Jointly Administered With Case Nos.: |
| ☒ ALL DEBTORS | 24-40159-NGH (Idaho Jersey Girls) |
| ☐ Millenkamp Cattle, Inc. | 24-40160-NGH (East Valley Cattle)<br>24-40161-NGH (Millenkamp Properties) |
| ☐ Idaho Jersey Girls | 24-40162-NGH (Millenkamp Properties II)<br>24-40163-NGH (Millenkamp Family) |
| ☐ East Valley Cattle | 24-40164-NGH (Goose Ranch)<br>24-40166-NGH (Black Pine Cattle) |
| ☐ Millenkamp Properties | 24-40167-NGH (Millenkamp Enterprises)<br>24-40165-NGH (Idaho Jersey Girls Jerome |
| ☐ Millenkamp Family | Dairy) |
| ☐ Goose Ranch | Chapter 11 Cases |
| ☐ Black Pine Cattle | |
| ☐ Millenkamp Enterprises | |
| ☐ Idaho Jersey Girls Jerome Dairy | |

**ORDER GRANTING EAST VALLEY DEVELOPMENT'S AMENDED MOTION FOR
RELIEF FROM THE AUTOMATIC STAY TO PROCEED WITH ARBITRATION**

Upon consideration of the record before this Court and *East Valley Development's Amended
Motion for Relief from the Automatic Stay to Proceed with Arbitration* [D.I. [  ]] (the "Motion")[1]
filed on March 11, 2025, with notice of the Motion having been given in accordance with the
applicable Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rules, and no objections
having been raised (or having been overruled), and good cause existing:

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is approved.

2.      EVD may file with the AAA a (i) Demand for Injunctive Relief, (ii) Demand for FAN Header Manifold Arbitration, and (iii) request for appointment of an emergency arbitrator to adjudicate the Demand for Injunctive Relief, in each case without violating the Automatic Stay.

3.      The AAA may adjudicate the Demand for Injunctive Relief and the Demand for FAN Header Manifold Arbitration in accordance with the Commercial Rules, including entry of a final and binding decision by the Emergency Arbitrator and any other procedures and determinations that the Emergency Arbitrator may deem necessary in order to render any decision related thereto.

4.      The limited relief set forth herein shall not be construed to impact the Parties' rights in the arbitration of the Demand for Injunctive Relief, the Demand for FAN Header Manifold Arbitration, or in the Adversary Proceeding.

5.      Nothing contained herein shall be construed as an admission of liability by the Debtors or EVD regarding any claim or cause of action arising from, or relating to, the Facility Agreements, the arbitration of the Demand for Injunctive Relief, the Demand for FAN Header Manifold Arbitration, the Adversary Proceeding, or any other matter.  For the avoidance of doubt, both Parties' rights with respect to the enforcement of the Mandatory Arbitration Provisions and the jurisdiction of this Court with respect to the claims and allegations set forth in the Adversary Proceeding are fully reserved.

6.      For the avoidance of doubt, any monetary or other award(s) that may be issued in the arbitration of the Demand for Injunctive Relief against the Debtors or agreed upon between the Parties in connection with a settlement agreement may not be enforced against the Debtors' estates

other than pursuant to a further order of this Court or a confirmed chapter 11 plan for the Debtors,

and nothing contained herein shall be construed as modification of the Automatic Stay to permit

any such enforcement.

7.      Any stay of this Order under Rule 4001 of the Federal Rules of Bankruptcy

Procedure or any similar rule is hereby waived for cause, and this Order shall be effective

immediately upon entry on the Court's docket.

8.      This Court shall retain jurisdiction with respect to all matters arising from or related

to the implementation of this Order.

Dated:  March [___], 2025
        Boise, Idaho


_____
THE HONORABLE NOAH G. HILLEN
UNITED STATES BANKRUPTCY JUDGE

3

## Exhibit B

**The Debtors' Demand**

*(see attached)*

## __Exhibit C__

**EVD March 6 Letter**

*(see attached)*

ny-2919751

## <u>Exhibit D</u>

**Debtors' March 6 Letter**

*(see attached)*

## <u>Exhibit E</u>

**Debtors' March 7 Letter**

*(see attached)*