# GIVENS PURSLEY LLP
### Attorneys and Counselors at Law

601 W. Bannock Street
PO Box 2720
Boise, ID 83701
Telephone: 208-388-1200
Facsimile: 208-388-1300

www.givenspursley.com

Thomas E.. Dvorak
(208) 388-1245
ted@givenspursley.com

| | | | |
|---|---|---|---|
| Taylor J. Barton | Amber N. Dina | Kimberly D. Maloney | James B. Smith |
| Charlie S. Baser | Bradley J. Dixon | Kenneth R. McClure | Danielle M. Strollo |
| Jeff S. Beelaert | Thomas E. Dvorak | Alex P. McLaughlin | Marcus H. Waterman |
| Christopher J. Beeson | Morgan D. Goodin | Melodie A. McQuade | Robert B. White |
| Jason J. Blakley | Don Z. Gray | Megann E. Meier | Michael V. Woodhouse |
| Clint R. Bolinder | Brian J. Holleran | Christopher H. Meyer | |
| Jeff W. Bower | Kersti H. Kennedy | L. Edward Miller | |
| Preston N. Carter | Elizabeth A. Koeckeritz | Judson B. Montgomery | Kenneth L. Pursley (1940-2015) |
| Chynna K. Castoro | Neal A. Koskella | Deborah E. Nelson | James A. McClure (1924-2011) |
| Jeremy C. Chou | Michael P. Lawrence | Randall A. Peterman | Raymond D. Givens (1917-2008) |
| Charlotte V. Cunnington | Franklin G. Lee | Blake W. Ringer | |
| Joshua C. Dickinson | Matthew E. Liebertz | Michael O. Roe | |

March 7, 2025

*Via Email*
Gregory B. Koltun
Morrison & Foerster LLP
707 Wilshire Blvd., Ste. 6000
Los Angeles, CA 90017
GKoltun@mofo.com

Re:    East Valley Cattle-Millenkamp Cattle / East Valley Development, LLC ("EVD")

Dear Mr. Koltun:

This responds to your letter of March 6, 2025. It appears to have crossed with my letter of the same date (copy enclosed), in which I gave additional notice of default and demanded adequate assurances. Both our letters address the same subject matter, which is necessary self-help work by East Valley Cattle, LLC ("EVC") and Millenkamp Cattle, Inc. ("Millenkamp Cattle") on the FAN Header Manifold in the dewatering building at the Manure Separation Facility ("MSF")

As alluded to in my enclosed letter, much of your recitation of the "facts" of the situation are not such. I will proceed by setting forth your inaccurate statements from your letter, and correct the same.

Inaccurate Statement 1: "We understand that on March 4, 2024, Millenkamp's contractors -- Ridgeline and Farmore -- began work at the MSF to modify the FAN Header Manifold without EVD's permission, including cutting and welding activities without having obtained a hot work permit, without personal protective equipment ("PPE") and without even a nearby fire extinguisher."

<span style="color:red">Correct Facts:  Not true, the contractors checked into the EVD office and had all their required PPE on during the time.  EVD's operators continually misrepresented to Ridgeline on Tuesday, March 4, that the job did not require an OSHA Hot Work permit.  The next day on Wednesday, East Valley Cattle, the owner of the facility, issued a Hot Work Permit to Ridgeline because of the material misrepresentations of EVD.</span>

18822399.1

March 7, 2025
Page 2

Inaccurate Statement 2: "Millenkamp's contractors also started drilling into the concrete base where the separators are installed, raising concerns about the integrity of the surrounding equipment and the impact on EVD's operations."

Correct Facts: The work being done is on FAN Manifold equipment that is located on a 22'' double mat rebar floor, and physically cannot affect the surrounding equipment.

Inaccurate Statement 3: "EVD's operators were forced to evacuate the building for their own safety, and the ongoing activity by Millenkamp's contactors has interfered with EVD's ability to address routine operational issues at the MSF."

Correct Facts: There was no interference. As stated above, the work was done in accordance with OSHA requirements and under a Hot Work Permit. The conclusory statement your letter makes in this respect is in keeping with the nature of this attempt by EVD to raise a false alarm when no danger whatsoever was present, simply as an excuse to prevent Millenkamp Cattle from exercising its contractual self-help remedy.

Inaccurate Statement 4: "The MSF is an OSHA-regulated facility. Millenkamp was expressly instructed (via e-mail) not to access the building without proper OSHA compliance procedures, including checking-in and wearing the required PPE. But Millenkamp's contractors disregarded those procedures."

Correct Facts: Again, not true, the contractor checked in, wore PPE and obtained an OSHA Hot Work permit.

Inaccurate Statement 5: "Furthermore, EVD has never had the opportunity to vet the unapproved design with its safety team or the engineer of record, creating the potential for unsafe working conditions and improper alteration of the existing equipment."

Correct Facts: EVD has always been welcome to review the proposed work or to undertake it themselves, but EVD has disregarded the notice in November and subsequent notices to its own peril. EVD now has finally acknowledged the design flaw 4 months after notice and only on the eve of EVC/Millenkamp Cattle replacing their poor, inadequate design with the design recommended by the manufacturer.

Inaccurate Statement 6: Millenkamp has no right, contractual or otherwise, to make the alterations it is attempting to make on a unilateral basis (even apart from the obvious safety issues). Millenkamp complains about the quantity of bedding produced by the MSF, but the alterations it is trying to make will not change the quantity of material produced (we note that Millenkamp has not been able to keep up with the volume of material already being produced).

Correct Facts: Millenkamp Cattle does in fact keep up with the bedding, not to mention the contract requires 7 days of covered storage which EVD currently does

March 7, 2025
Page 3

> not afford.  The reason for the change is because the lines which feed the FANs are constantly plugged because of the numerous 90 degree bends.  The manufacturer has inspected the installation and made abundantly clear the engineering design was improper because it did not have a straight inlet from the header to the FAN Header Manifold.

Inaccurate Statement 7:  Regardless, however, the FAN Header Manifold cannot be altered without first having both agreement of the parties and approval of the engineer of record.  Furthermore, aside from the fact that neither the Ground Lease nor the Manure Supply Agreement gives Millenkamp the right to make unilateral changes to the project design, if any such unilateral changes are made to the FAN Header Manifold, it risks voiding the warranty for all workmanship in the Manure Separation Facility and voiding the byproduct specification requirements.

> Correct Facts:  The Agreements provide otherwise.   The language of the MSA provides that if EVD does not operate the MSF "in a good and workmanlike manner in accordance with the operation maintenance standards of the manufacturer of the Manure Separation Facility," then EVC may "undertake such operation, maintenance, and/or repair at [EVD's] expense.  MSA Section 6.4.2.  See also GL Sections 8.3 and 17.1.7  There is no reference to approval of the engineer of record or agreement in such instance where self-help is authorized for EVC or Millenkamp Cattle.  And the specific Fan Header Manifold here was not in compliance with the standards of the manufacturer.

Inaccurate Statement 8:  EVD previously advised on February 28, 2025 via e-mail to Millenkamp that it has itself commissioned plans to modify the FAN Header Manifold in a manner similar to what Millenkamp is apparently now attempting to do without approved plans. Millenkamp has not responded to EVD's modification request from the February 28, 2025 email.

> Correct Facts:  There was never a design provided nor a date given.  Just an acknowledgement the design is flawed, but no hard date it is to be replaced.

Inaccurate Statement 9:  As indicated above, the modifications will not materially increase the production of bedding; they will simply reduce the cost of operating the MSF, which of course EVD already bears. EVD is prepared to share the completed design with Millenkamp and work in good faith to proceed to make the modifications on an expeditious basis once approved by all relevant parties.

> Correct Facts:  The current configuration jams constantly and thus cannot run on a 24-hour, 365-days-a-year basis.  The appropriate configuration of the FAN Header Manifold will alleviate this bottleneck and allow it to run on a continual basis, which will increase production of bedding.  EVC and Millenkamp Cattle have attempted to work with EVD on a good faith basis but EVD has had ongoing operational and engineering failures from the start, which Millenkamp Cattle has had to continually rectify.  For example, the supposedly "temporary" lagoon is now full and

March 7, 2025
Page 4

> Millenkamp Cattle has had to once again hire an expensive dredge to clean out EVD's problem.

Inaccurate Statement 10: But EVD is not willing to allow changes to be made on a haphazard and unsafe basis, without approved plans.

> Correct Facts: These changes were neither haphazard nor unsafe. EVD had plenty of notice of exactly what needed to happen here and opportunity for months to accede to the need for this change and undertake it itself or review the proposed fix. EVD's belated and half-hearted effort approximately a week ago to finally just acknowledge the issue without even proposing a fix is typical of EVD's too-little too-late approach to its obligations to operate the Manure Separation Facilities.

The current situation will be easily understood by a Court. EVD signed the MSA and the Ground Lease, both of which provide for self help remedies. Specifically, if EVD does not operate the MSF "in a good and workmanlike manner in accordance with the operation maintenance standards of the manufacturer of the Manure Separation Facility," then EVC may "undertake such operation, maintenance, and/or repair at [EVD's] expense. MSA Section 6.4.2. The FAN Header Manifold was determined by EVC some time ago to be out of compliance with the manufacturer's standards. EVD received timely notice in 2024 on this issue and did not engage until a week ago and even at that point only acknowledged the deficiency, but did not offer any specifics for a remedy. EVC is simply exercising its self-help rights, and intends to continue to do so with respect to the FAN Header Manifold and any other items of operation, maintenance, and/or repair that EVD has not timely addressed.

Thus, in response to the main question in your letter, I reiterate what was evident from my letter yesterday, namely that EVC and Millenkamp Cattle, through their contractors, intend to continue such work as may be necessary with notice in the way that they have been doing so up to this point.

Indeed, as demanded by the adequate assurances portion of my letter, if EVD does not give written and adequate assurance that it will continue operation after the exercise of such self-help rights, that will be a separate breach of the relevant agreements and may even result in EVC and Millenkamp Cattle having to take over the operation of the MSF at the expense of EVD.

If EVD acts to attempt to bar Millenkamp Cattle/EVC and their contractors from the premises in engaging in such work, rest assured there will be repercussions, not the least of which is additional breach of the agreements and damages resulting therefrom for wasted mobilization costs and otherwise.

Rather than seeking a preliminary injunction where EVD will not be able to show the requisite likelihood of success on the merits and balancing of equities in EVD's favor, I suggest that EVD put its time and resources to a better end of cooperating with EVC on the necessary operational replacements that have been noticed up by EVC for months. Most pressing, I would suggest that instead EVD focus on immediate cooperation occurring with EVC on replacing the

18822399.1 [11054.187]

March 7, 2025
Page 5

wholly inadequate FAN Separators that EVC sent notice of engaging self help on in December and avoid EVC having to take this next step.

  Please instruct your client to act accordingly and in compliance with its obligations under the agreements.  Also, please provide the requested written adequate assurance that such compliance will be forthcoming.

            Sincerely,

            Thomas E. Dvorak

TED/slc
Enclosure
cc: Client

# GIVENS PURSLEY LLP
### Attorneys and Counselors at Law

| | | | | |
|---|---|---|---|---|
| 601 W. Bannock Street | Taylor J. Barton | Amber N. Dina | Kimberly D. Maloney | James B. Smith |
| PO Box 2720 | Charlie S. Baser | Bradley J. Dixon | Kenneth R. McClure | Danielle M. Strollo |
| Boise, ID 83701 | Jeff S. Beelaert | Thomas E. Dvorak | Alex P. McLaughlin | Marcus H. Waterman |
| Telephone: 208-388-1200 | Christopher J. Beeson | Morgan D. Goodin | Melodie A. McQuade | Robert B. White |
| Facsimile: 208-388-1300 | Jason J. Blakley | Don Z. Gray | Megann E. Meier | Michael V. Woodhouse |
| | Clint R. Bolinder | Brian J. Holleran | Christopher H. Meyer | |
| www.givenspursley.com | Jeff W. Bower | Kersti H. Kennedy | L. Edward Miller | |
| | Preston N. Carter | Elizabeth A. Koeckeritz | Judson B. Montgomery | Kenneth L. Pursley (1940-2015) |
| Thomas E.. Dvorak | Chynna K. Castoro | Neal A. Koskella | Deborah E. Nelson | James A. McClure (1924-2011) |
| (208) 388-1245 | Jeremy C. Chou | Michael P. Lawrence | Randall A. Peterman | Raymond D. Givens (1917-2008) |
| ted@givenspursley.com | Charlotte V. Cunnington | Franklin G. Lee | Blake W. Ringer | |
| | Joshua C. Dickinson | Matthew E. Liebertz | Michael O. Roe | |

March 6, 2025

*Via Certified Mail,*
*Return Receipt Requested,*
*and Email*
William J. Flanagan
VP, Strategic Development
East Valley Development, LLC
4675 MacArthur Court, Suite 800
Newport Beach, CA  92660
Will.Flanagan@cleanenergyfuels.com

*Via Certified Mail,*
*Return Receipt Requested,*
*and Email*
East Valley Development, LLC
Attention: General Counsel
4675 MacArthur Court, Suite 800
Newport Beach, CA  92660
jim.sytsma@cleanenergyfuels.com

*Via Email*
Gregory B. Koltun
Alexandra Preece Barlow
Miranda Russell
Rachel A. Kaiser
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105
GKoltun@mofo.com
ABarlow@mofo.com
MRussell@mofo.com
RKaiser@mofo.com

    Re:    Demand for Adequate Assurances; Notice of Default to East Valley Development, LLC ("EVD")

Dear EVD General Counsel,

This letter follows up on prior notices that have been given of self-help pursuant to the Ground Lease Agreement ("Lease") between EVD and East Valley Cattle, LLC ("EVC") and the Manure Supply Agreement ("MSA") between EVD and Millenkamp Cattle, Inc. ("Millenkamp Cattle").  More specifically, EVC has, after adequate and timely notice, undertaken efforts to remedy issues with the FAN Header Manifold in the dewatering building.

March 6, 2025
Page 2

Under Section 8.3 of the Lease, if EVD "fails to maintain or operate the Project, Manure Separation Facilities, and/or the Leased Premises in accordance with the foregoing and the MSA," EVC "may take such action as [EVC] deems reasonably necessary to cause the [same] to be so maintained and [EVD] shall promptly reimburse [EVC] for [EVC's] reasonable costs and expenses in connection therewith . . . ."

Similarly, under Section 6.4 of the Manure Supply Agreement, with respect to Manure Separation Facilities, and specifically Section 6.4.2,

> Developer shall be solely responsible for, and bear the cost of, operating, maintaining, repairing and replacing the Manure Separation Facilities in a good and workmanlike manner in accordance with the operation maintenance standards of the manufacturer of the Manure Separation Facility. . . . The cost of maintenance, repair and replacement parts required by the Manure Separation Facilities shall be Developer's sole cost and expense. In the event that Developer fails to operate, maintain, repair and/or replace the Manure Separation Facilities in accordance with this Section 6.4.2, Dairy may (subject to the same conditions and requirements of Dairy as would apply to Self-Help Measures under Section 11.6.3) undertake such operation, maintenance, and/or repair at Developer's expense, and Developer shall promptly reimburse Dairy for all costs and expenses incurred by Dairy thereof. Developer and Dairy acknowledge and agree that Dairy shall incur no expense and suffer no liability whatsoever with respect to the operation, maintenance, repair and/or replacement of the Manure Separation Facilities.

The FAN Header Manifold in the dewatering building was not built in accordance with the manufacturer's recommendations. The manufacturer has visited the site and indicated as much. This deficiency has materially impacted operation and is a violation of EVD's duties under the forgoing provisions. The details of this deficiency have repeatedly been shared with EVD, yet nothing has occurred. Any cure period with respect to the deficiencies in the FAN Header Manifold that may be applicable for a material default under the MSA (13.1) and Lease (17.1) has run without remedial action. Accordingly, after due notice of intent to invoke self-help, on March 4, 2025, a contractor at the direction of EVC and Millenkamp Cattle attempted to effect repair of this non-pressurized unit in accordance with the manufacturer's specifications. EVD's management caused the contractor to leave the site under the threat of OSHA violations.

The contractor returned on March 5, 2025, accompanied by representatives of EVC and Millenkamp Cattle to ensure that the self-help work was commenced. It is anticipated that the contractor will return to the site next week on Monday and complete the work on Tuesday.

Now, I understand that management of EVD is threatening not to resume operation of the Manure Separation Facilities, claiming that the work is rendering the facility unsafe or that the

18819247.2 [11054.187]

March 6, 2025
Page 3

engineer of record has to sign off.  These are contrived excuses that have no basis in reality or fact.  None of the work on the pipes associated with the FAN Header Manifold is making the facility unsafe, such work involves reusing 90% of the existing material, and such work is all being done strictly in accordance with the manufacturer's recommendations.  EVC has stood ready at all times (and remains so willing) to cooperate with any kind of inspection or sign-off by EVD's or SKS's engineer (who I understand is on call and/or on site) with any modifications that are made.  EVC and Millenkamp Cattle will provide EVD with the costs of this work and will expect the same to be timely paid by EVD.

      The recent communications from EVD regarding this work give doubt as to whether EVD will honor its obligation to operate, maintain, repair and/or replace the Manure Separation Facilities.  If EVD will not acknowledge and continue its obligation to continue to operate, maintain and repair the Manure Separation Facilities, this will likely result in great damage to the operations of EVC and Millenkamp Cattle.  If EVC and Millenkamp Cattle have to assume this operation, they will hold EVD liable for all costs and damages that ensue.

      Accordingly, demand is made that EVD immediately provide written and adequate assurance that it will resume such operations timely as it is required to do under the contract.  EVD's failure to provide such adequate assurance within ten (10) days will be deemed an anticipatory repudiation of the Manure Supply Agreement.  If the same occurs, EVC and Millenkamp Cattle will deem the same a breach of EVD's duty to operate and will have no option but to take over operation under the Agreement and will, of course, claim all damages for breach and violation of the MSA and the Lease.

      This letter is without prejudice to, nor does it constitute a waiver of, any and all rights of EVC or Millenkamp Cattle under the MSA or Lease or at law or equity.

      Sincerely,

      Thomas E. Dvorak

TED/slc
cc:    Client

18819247.2  [11054.187]