Ron Kerl, Esq., ISB #1768
**COOPER & LARSEN**, **CHARTERED**
151 North Third Avenue, Suite 210
P.O. Box 4229
Pocatello, ID 83205-4229
Telephone:    (208) 235-1145
Facsimile:    (208) 235-1182
Email: ron@cooper-larsen.com

Attorneys for Rabo AgriFinance LLC


## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF IDAHO

| | |
|---|---|
| In re:<br><br>MILLENKAMP CATTLE, INC.<br><br>      Debtor. | **Case No. 24-40158-NGH** |
| RABO AGRIFINANCE, LLC,<br>     Plaintiff,<br>vs.<br><br>BURKS TRACTOR COMPANY, INC., an Idaho corporation; and IDAHO AGRI INVESTMENTS LLC, an Idaho limited liability company;<br><br>      Defendants. | **ADV. NO. 24-08028-NGH**<br><br>**AMENDED VERIFIED COMPLAINT** |

Plaintiff Rabo AgriFinance LLC, through counsel, hereby files its Amended Verified Complaint and for its claims against Defendants Burks Tractor Company, Inc. and Idaho Agri Investments, LLC, and alleges the following:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Rabo AgriFinance LLC, ("**Plaintiff**" or "**Rabo**"), is an agricultural lender authorized to transact business in the State of Idaho.

2. Upon information and belief, Burks Tractor Company, Inc. ("**Burks Tractor**") is an Idaho corporation with its principal place of business located in Twin Falls County, state of Idaho.

3. Upon information and belief, Idaho Agri Investments LLC is an Idaho limited liability company with its principal place of business located in Jerome County, state of Idaho.  On information and belief, Defendant Idaho Agri Investments LLC may have a claim to have an interest in the personal property collateral (defined below) which is the subject of this Amended Verified Complaint.

4. The personal property collateral which is the subject of this Amended Verified Complaint is, upon information and belief, located in Twin Falls County, State of Idaho.

5. All contracts, agreements, and transactions at issue herein were negotiated, consummated and made performable, at least in part, within the state of Idaho.

6. This Court has jurisdiction pursuant to 28 U.S.C. §157 and §1334, as the dispute describe herein is related to a case filed under the Bankruptcy Code.

7. Venue is proper pursuant to 28 U.S.C. §1408 and §1409.  This matter is a core proceeding pursuant to 28 U.S.C. §157.

**Verified Complaint**
**Page 2**

## <u>GENERAL ALLEGATIONS</u>

8.      Rabo has entered into a lending relationship with Millenkamp Cattle, Inc. ("**Millenkamp Cattle**"), and in connection therewith Millenkamp Cattle has granted Rabo a security interest in the following collateral:

> All accounts, inventory, equipment, farm products, goods, general intangibles, payment intangibles, commercial tort claims, deposit accounts, margin accounts commodity accounts, commodity contracts, securities accounts, investment property, instruments, letter of credit rights, documents, chattel paper, electronic chattel paper, tangible chattel paper, all accessions to, substitutions for, and all replacements, products, and proceeds of the foregoing. (the "**Collateral**")

9.      Rabo's lending relationship with Millenkamp Cattle is evidenced, in substantial part, by the following documents and instruments (the "**Loan Documents**"):

> Third Amended and Restated Loan and Security Agreement dated April 21, 2021between Rabo AgriFinance LLC (Lender) and Millenkamp Cattle, Inc. (and others) (Borrower)

> First Amendment dated June 23, 2021, to Third Amended and Restated Loan and Security Agreement dated April 21, 2021between Rabo AgriFinance LLC (Lender) and Millenkamp Cattle, Inc. (and others) (Borrower).

> Forbearance Agreement dated October 20, 2022 between Rabo AgriFinance LLC (Lender) and Millenkamp Cattle, Inc. (and others) (Borrower).

> Mortgage, Assignment of Rents, Security Agreement, and Fixture Filing (Second Priority) dated October 20, 2022, between Rabo AgriFinance LLC (Lender) and Millenkamp Cattle, Inc. (and others) (Borrower) on lands in Cassia, Jerome and Twin Falls counties, Idaho.

> Second Amendment dated October 21, 2022, to Third Amended and Restated Loan and Security Agreement dated April 21, 2021 between Rabo AgriFinance LLC (Lender) and Millenkamp Cattle, Inc. (and others) (Borrower).

> Milk Check Assignment Agreement for Glambia Foods, Inc. [Rabo] dated September 24, 2018, between Rabo AgriFinance LLC (Lender); Millenkamp Cattle, Inc. (Producer)); and Glambia Foods, Inc. (Buyer).

**Verified Complaint**
**Page 3**

Collateral Assignment of Milk Contracts dated September 18, 2018, between Rabo AgriFinance LLC (Lender); Millenkamp Cattle, Inc. (Producer)); and Glambia Foods, Inc. (Buyer).

10.    Rabo has a perfected security interest in the Collateral superior to the rights of the above-named Defendants by reason of the following Uniform Commercial Code Financing Statements on file with the Idaho Secretary of State:

(i) July 7, 2014, as Filing No. B 2014-1142699-3, now known as File No. 20142552479, which was amended on March 4, 2019, as Filing No. 20194483515, which was continued on March 4, 2019, by Filing No. 20194483614 and amended on August 30, 2022, by Filing No.20221458635;

(ii) July 7, 2014, as Filing No. B201411427007, now known as File No. 20142552480, which was continued on March 4, 2019, by Filing No. 20194483630, and amended on August 30, 2022, by Filing No. 20221458644;

(iii) July 7, 2014, as Filing No. B201411427025, now known as File No. 20142552482, which was continued on March 4, 2019, by Filing No. 20194483885, amended on March 4, 2019 by Filing No. 20194483591 and further amended on August 30, 2022 by Filing No.20221458653;

(iv) July 8, 2014, as Filing No. B 2014-1142756-1, now known as File No. 20142552536, which was amended on July 8, 2015, by Filing No. B 6643251, and further amended on July 15, 2015, by Filing No. B 6643619, continued on March 12, 2019, by Filing No. 20194537328, and amended on August 30, 2022, by Filing No. 20221458662;

(v) July 8, 2014, as Filing No. B 2014-1142763-2, now known as File No. 20142552543, which was continued on March 4, 2019, by Filing No. 20194483795, and amended on August 30, 2022, by Filing No. 20221458582;

(vi) July 8, 2014, as Filing No. B 2014-1142764-1, now known as File No. 20142552544, which was continued on March 4, 2019, as Filing No. 20194483837, and amended on August 30, 2022, by Filing No. 20221458591;

(vii) July 8, 2014, as Filing No. B201411427589, now known as File No. 20142552538, which was continued on March 4, 2019, by Filing No. 20194483690, and amended on August 30,2022, by Filing No. 20221458546;

**Verified Complaint**
**Page 4**

(viii) July 8, 2014, as Filing No. B201411427570, now known as File No. 20142552537, which was continued on March 4, 2019, as Filing No. 20194483751 and amended on August 30, 2022, by Filing No. 20221458537;

(ix) July 8, 2014, as Filing No. B201411427598, now known as File No. 20142552539, which was continued on March 4, 2019, as Filing No. 20194483730, and amended on August 30, 2022, by Filing No. 20221458555;

(x) July 8, 2014, as Filing No. B201411427614, now known as File No. 20142552541, which was continued on March 4, 2019, as Filing No. 20194483899 and amended on August 30, 2022, by Filing No. 20221458564;

(xi) July 8, 2014, as Filing No. B201411427623, now known as File No. 20142552542, which was continued on March 4, 2019, as Filing No. 20194482858 and amended on August 30, 2022, by Filing No. 20221458573;

(xii) September 24, 2015, as Filing No. B201511637274, now known as File No. 20152573469, which was continued on April 13, 2020, by Filing No. 20200559141;

(xiii) December 31, 2015, as Filing No. B201511682331, now known as File No. 20152577972, which was continued on July 6, 2020 by Filing No. 20201001930 and amended on August 30, 2022, by Filing No. 20221458608;

(xiv) March 8, 2017, as Filing No. B201711900605, now known as File No. 20172599772, which was continued on September 15, 2021, by Filing No. 202111654509;

(xv) October 3, 2018, as Filing No. 2018-1221627-5, now known as File No. 20182631175, which was amended on August 26, 2022, by Filing No. 20221445683, amended on August 30, 2022, by Filing No. 20221458733, and continued on July 14, 2023 by Filing No. 20231127709;

(xvi) April 15, 2019, as Filing No. 20194717525, which was amended on August 26, 2022, by Filing No. 20221445674 and further amended on August 30, 2022, by Filing No. 20221458751;

(xvii) August 14, 2019, as Filing No. 20195488256, which was amended on August 30, 2022, by Filing No. 20221458760 and further amended on September 7, 2022, by Filing No. 20221510596;

(xviii) January 20, 2020, as Filing No. 20200099884, which was amended on August 30, 2022, by Filing No. 20221473874;

(xix) January 20, 2020, as Filing No. 2020009897, which was amended on August 30, 2022, by Filing No. 20221473892;

(xx) January 20, 2020, as Filing No. 20200099914, and amended on August 30, 2022, by Filing No. 20221458742;

(xxi) April 21, 2021, as Filing No. 20210612507, and amended on August 30, 2022, by Filing No. 20221458680;

(xxii) September 28, 2021, as Filing No. 20211731930; and

(xxiii) September 28, 2021, as Filing No. 20211731903.

(the "**UCC Financing Statements**")

11.     Millenkamp Cattle is in default of the Loan Documents and Rabo is contractually and lawfully entitled to enforce its perfected security interests against the Defendants.

12.     On February 6, 2024, Millenkamp entered into two (2) Retail Installment Sales Contract and Security Agreement Fixed Rate with Defendant Burks Tractor for the purpose of purchasing equipment (the "**Millenkamp Purchase Agreements**").   True, complete, and accurate copies of the Millenkamp Purchase Agreements are attached to this Verified Complaint as Exhibits "A" and "B".

13.     As part of the Millenkamp Purchase Agreements, Millenkamp traded in fifty-five (55) pieces of equipment it owned and which were then Collateral subject to Rabo's perfected security interest (the "**Trade-Ins**").   Millenkamp Cattle's trade-in of Rabo's Collateral constituted a sale and transfer of the Trade-Ins to Burks Tractor without Rabo's consent or knowledge.   A description of the Trade-Ins, and their net trade-in value, were set out in a Multiple Trade-in Unit Addendum included within the Millenkamp Purchase Agreements executed by both Burks Tractor and Millenkamp Cattle.

**Verified Complaint**
**Page 6**

14.    By accepting the Trade-Ins, Burks Tractor acquired ownership of the Trade-Ins subject to Rabo's perfected security interest.

15.    As evidenced by the Millenkamp Purchase Agreements, the total net trade-in value received by Burks Tractor at the time it acquired ownership of the Trade-Ins, totaled $1,667,104.00 (the "**Net Trade-In Value**").  Burks Tractor accepted the Trade-Ins and applied the Net Trade-In Value to reduce the sales price of the equipment purchased by Millenkamp Cattle through the Millenkamp Purchase Agreements.

16.    Rabo's perfected security interest in the Trade-Ins attached to the sale proceeds or Net Trade-In Value accepted by Millenkamp Cattle and Burks Tractor.  Neither Millenkamp Cattle nor Burks Tractor have paid over to Rabo the Net Trade-In Value or net sale proceeds of $1,667,104.00 from Burks Tractor's purchase of the Trade-Ins.  As a result, Burks Tractor has converted both Rabo's Collateral and Rabo's perfected security interest in the sales proceeds generated by Millenkamp Cattle's sale and transfer of the Trade-Ins to Burks Tractor.

17.    Burks Tractor has expressly admitted to Rabo that after the closing of the transactions evidenced by the Millenkamp Purchase Agreements, Burks Tractor sold and transferred all but eleven of the Trade-Ins to a single third party and eleven of the Trade-Ins were sold to purchasers at auction sales (the "**Third Party Purchase of Trade-Ins**").  Burks Tractor did not pay to Rabo the proceeds from the Third-Party Purchase of Trade-Ins.  As a result, Burks Tractor has converted the Collateral consisting of the Trade-Ins, and Rabo's perfected security interest in the proceeds of sale arising from the Third-Party Purchase of Trade-Ins.

**Verified Complaint**
**Page 7**

18.     All but eleven pieces of the Trade-Ins were sold or transferred to Defendant Idaho Agri Investments.[1]

19.     As a direct and proximate result of the actions of Burks Tractor, Rabo has been damaged in the amount of the Net Trade In Value, or the purchase price paid in connection with the Third-Party Purchase of Trade-Ins, whichever is greater.

20.     Because the value of the property converted, and the damages sustained by Rabo are certain of calculation, Rabo is entitled to pre-judgment interest on the Net Trade In Value or the amount of the net sale proceeds received by Burks Tractor from the Third-Party Purchase of Trade-Ins, at the legal rate of 12% per annum from February 6, 2024 until paid in full.

21.     Alternatively, Defendant Idaho Agri Investments LLC's right, title or interest in the Trade-Ins it purchased from Burks Tractor is junior and subordinate to the rights, claims, and perfected security interests of Rabo and, by reason of Millenkamp Cattle's default under the Loan Documents, and Rabo is entitled to the immediate possession and control of the Trade-Ins purchased by Defendant Idaho Agri Investments LLC.

22.     If the value of the Trade-Ins at the time of their surrender to Rabo is less than the Net Trade-In Value or the purchase price paid by Defendant Idaho Agri Investments LLC, then and in that event Rabo has been damaged by that reduction in value and is entitled to an award of damages equal to the loss of value while the Trade-Ins were in the possession of said Defendants.

---

[1]  Eleven of the Trade-Ins were sold by the Defendant Burks Tractor Company, Inc. *via* auction sales. The Net Trade-In Value of those items sold at auction, to wit: $182,848.00, has been placed in the Cooper & Larsen, Chtd. Trust Account pursuant to an Escrow Agreement entered into by the Plaintiff and Defendant Burks Tractor Company, Inc. The eleven items of equipment sold at auction are described in Exhibit "C". attached to this Amended Verified Complaint.

**Verified Complaint**
**Page 8**

23.     The transactions described herein constitute commercial transactions under Idaho law.  Therefore, should Rabo prevail in its claims against the Defendants, or any of them, Rabo is entitled to an order awarding reasonable attorney's fee pursuant to Idaho Code §12-120(3) and its costs of suit.  Should judgment be rendered by default, Rabo seeks an award of attorney fees in the amount of $1500 or such other sums as may be just and proper, together with its costs of suit.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Rabo AgriFinance LLC prays judgment in its favor, and against the Defendants as follows:

A.     Judgment against Burkes Tractor for the sum of $1,667,104.00 (or the amount of the net sale proceeds it received from the Third-Party Purchase of Trade-Ins, whichever is greater), plus pre-judgment interest at the of 12% per annum from February 6, 2024 until paid in full; together with its reasonable attorney fees pursuant to Idaho Code §12-120(3) and its costs of suit.

B.     Judgment against Defendant Idaho Agri Investments directing it to immediately turn over possession of the Trade-Ins  it purchased from Burks Tractor to Rabo; if the value of the Trade-Ins at the time of their surrender to Rabo is less than the Net Trade-In Value or the purchase price paid by Defendant Idaho Agri Investments to Burks Tractor, then and in that event Rabo should be awarded damages against said Defendant Idaho Agri Investments LLC equal to the loss of value while the Trade-Ins were in the possession of said Defendant; and, Rabo should be award an amount equal to Rabo's reasonable attorney fees pursuant to Idaho Code §12-120(3) and its costs of suit

C.     Judgment awarding Rabo such other and further relief as may be just in the premises.

**Verified Complaint**
**Page 9**

DATED this _____ day of March 2025.

Ron Kerl, Esq. ISB #1768
**COOPER & LARSEN, CHARTERED**
151 North Third Avenue, Suite 210
P.O. Box 4229
Pocatello, ID  83205-4229
Telephone:  (208) 235-1145
Facsimile:   (208) 235-1182
Email: ron@cooper-larsen.com

*/s/ Ron Kerl*
Ron Kerl
*Attorneys for Rabo AgriFinance LLC*

## VERIFICATION

I declare under penalty of perjury under the laws of the state of Iowa that I am an authorized representative of Rabo AgriFinance LLC, and that the foregoing is true and correct to the best of my information, knowledge, and belief.

EXECUTED this _19th_ day of March, 2025, at Cedar Fals, IA.

**RABO AGRIFINANCE LLC**

By:  Kurt Leistikow
Title: V.P. Legal Counsel

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY on the _____day of March, 2025, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to

the following persons:

Britta E. Warren
britta.warren@bhlaw.com

Mark B. Perry
mbp@perrylawpc.com

Oren B. Haker
oren.haker@bhlaw.com

                              **COOPER & LARSEN, CHTD.**


                              By: /s/Ron Kerl_____
                                    Ron Kerl, Esq.

**EXHIBIT "A"**

**Verified Complaint**
**Page 13**

**CNH | CAPITAL**

**RETAIL INSTALLMENT SALE CONTRACT AND SECURITY AGREEMENT**

**SPLIT RATE**

020069 / 2793674

FX0000028373622100‪4A0112

| "Buyer(s): Legal Name(s) | Address | | City | St | Zip Code |
|---|---|---|---|---|---|
| MILLENKAMP CATTLE, INC. | 471 NORTH 300 WEST | | JEROME | ID | 83338-5078 |

| "Seller" Legal Name | Address | | City | St | Zip Code |
|---|---|---|---|---|---|
| BURKS TRACTOR COMPANY,INC | 3140 KIMBERLY RD. | | TWIN FALLS | ID | 83301 |

The undersigned Buyer(s) (collectively called "Buyer") hereby purchases from Seller and Seller hereby sells to Buyer the following goods (the "Equipment") at the Time Sale Price and the terms set forth herein. The Equipment is purchased for commercial ☐ business use ☑ agricultural use.

| NEW*/USED | EQUIPMENT DESCRIPTION | | MODEL | SERIAL NUMBER/PIN | "CASH SALE PRICE" |
|---|---|---|---|---|---|
| | See attached Multiple Unit Addendum | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

*New Equipment is unused equipment, a rental unit or a demonstrator, not previously sold, for which the manufacturer will supply all or a portion of a new equipment warranty; this Equipment may have been manufactured in a year prior to the year of this purchase.

| TRADE-IN EQUIPMENT | MODEL | SERIAL NUMBER/PIN | ALLOWANCE | AMT. OWED | NET TRADE-IN | OWED TO (Address details Page 4) |
|---|---|---|---|---|---|---|
| See attached Trade-In Addendum | | | | | | |
| | | | | | | |
| | | | | | | |

### STATEMENT OF TRANSACTION

| | | | |
|---|---|---|---|
| 1. Cash Price (Cash Sale Price) | 1. $ | 3,048,650.00 | |
| 2. Cash Down Payment | $ | N/A | |
| Net Trade-in Allowance | $ | 1,155,000.00 | |
| Manufacturer's Rebate | $ | N/A | |
| Total Down Payment | 2. $ | 1,155,000.00 | |
| 3. Unpaid Balance of Cash Price (1 minus 2) | 3. $ | 1,891,650.00 | |
| 4. Other Charges | | | |
| (a) Taxes (Not in Cash Price) | $ | N/A | |
| (b) Official Fees (Filing and Termination) | $ | 5.00 | |
| (c) UCC Service Fee (Filing and Termination) | $ | 22.00 | |
| (d) Administrative Fee | $ | N/A | |
| (e) Physical Damage Insurance | $ | N/A | |
| (f) Credit Life Insurance | $ | N/A | |
| (g) Credit Accident & Health Insurance | $ | N/A | |
| (h) Purchased Protection Plan | $ | 241,350.00 | |
| (i) Other    Maintenance Plan CNHi | $ | 495,608.50 | |
| Total Other Charges | 4. $ | 736,985.50 | |
| 5. Unpaid Balance (Amount Financed) (3+4) | 5. $ | 2,628,535.50 | |
| 6. INTEREST CHARGE | 6. $ | 379,371.08 | |
| 7 Total of Payments (Time Balance) (5+6) | 7. $ | 3,007,906.58 | |
| 8. Deferred Payment Price (Time Sale Price) (1+4+6) | 8. $ | 4,162,906.58 | |

Buyer agrees to pay to the Seller the Time Balance as follows:

| NBR OF PAYMENTS | PERIOD OF PAYMENTS | AMOUNT OF EACH PAYMENT | BEGINNING MM/DD/YYYY |
|---|---|---|---|
| 47 | 1 MONTHS | $ 62,664.72 | 03/05/2024 |
| 1 | 1 MONTHS | $ 62,664.74 | 02/05/2028 |

The payments have been calculated to pay in full principal and interest over the term of this Agreement using the interest Rate in effect on the date of this Agreement, and assuming that all required payments are made in full on the scheduled due dates. The final payment due hereunder shall be recalculated to pay the Obligations in full.

Buyer hereby conveys to Seller all rights, title and interest in the Trade-in Equipment free and clear of all encumbrances except as noted above.

☑ If checked, Seller represents and warrants that the above Amt. Owed has been paid.

9. The Unpaid Balance shall bear an interest Charge computed at a per annum rate [the INTEREST RATE] equal to ____6.38__ % from the date the Interest Rate begins accruing (see item 10, below) through and including 02 / 05 / 2025;

| | | | |
|---|---|---|---|
| __7.90__ % from | 02 / 05 / 2025 | through and including | 02 / 05 / 2028 |
| ____ % from | __ / __ / __ | through and including | __ / __ / __ |
| ____ % from | __ / __ / __ | through and including | __ / __ / __ |
| ____ % from | __ / __ / __ | through and including the date the Time | |

Balance is paid in full (this is a *SPLIT RATE* contract)

10. Date Interest Rate begins accruing    2024-02-05

Buyer agrees to the terms of the above titled agreement (herein the "Agreement"). Buyer has received and examined the Equipment, which is in good operating order and condition and is as described above. Buyer acknowledges receipt of a copy of this Agreement. Buyer agrees to purchase the Equipment described above and pay the Time Balance based on the terms of this Agreement.

**NOTICE TO THE BUYER:**
1. DO NOT SIGN THIS BEFORE YOU READ THE TERMS ON THE FOUR AGREEMENT PAGES (PLUS ANY ADDENDUMS), EVEN IF OTHERWISE ADVISED.
2. DO NOT SIGN THIS IF IT CONTAINS ANY BLANK SPACES.
3. YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN. KEEP IT TO PROTECT YOUR LEGAL RIGHTS.
4. BUYER REPRESENTS THAT THE EQUIPMENT IS NOT BEING PURCHASED FOR FAMILY, HOUSEHOLD OR PERSONAL USE.

ADDITIONAL PROVISIONS CONCERNING RIGHTS AND DUTIES OF THE PARTIES ON THE ADDITIONAL PAGES OF THIS AGREEMENT ARE A PART OF THIS AGREEMENT.

| X _____ | MILLENKAMP CATTLE, INC. | _President_ | 02-06-2024 |
|---|---|---|---|
| Signature of Buyer/Buyer's Representative | Printed Name | Title (not for an individual Buyer) | Date |

| X _____ | | | |
|---|---|---|---|
| Signature of Buyer/Buyer's Representative | Printed Name | Title (not for an individual Buyer) | Date |

Seller (hereinafter "Assignor" or "Seller") hereby assigns all of its rights, title and interest in and to the Agreement and the Equipment to CNH Industrial Capital America LLC (hereinafter "Assignee" or "CNH Capital"), under terms also described in the Retail Finance Agreement, Program Procedures, Dealer Handbook or other related documents (collectively hereinafter the "RFA") executed by the Assignor and Assignee. Seller has obtained a signed credit application for this Agreement. The Equipment has been paid in full or will be paid in full with Agreement proceeds pursuant to the terms of the RFA. Assignor waives notice of acceptance of this Assignment and notice of non-payment and non-performance of the Agreement and any other notices required by law and waives any and all setoffs and counterclaims. This Assignment shall become effective upon delivery of the Agreement to Assignee or upon Assignee's payment of the purchase price thereof, whichever occurs first.

Basis of Acceptance: ☐ Nonrecourse    ☐ Repurchase    ☐ Full Recourse    ☑ Other

Other explanation:  If the first 12 payments are not paid by the Buyer, then the Agreement becomes Full Recourse

| X _____ | BURKS TRACTOR COMPANY,INC. | 02-06-2024 |
|---|---|---|
| Signature of Seller's Representative | Printed Seller Name | Date |

21004A    Rev. 01/24 Previous editions may not be used.    Page 1 of 12

EXHIBIT 2 of 6



020069 / 2793674

**Agreement Provisions**



1. **NO WARRANTY. THE EQUIPMENT IS SOLD AS IS AND WITH ALL FAULTS, SUBJECT TO ANY APPLICABLE MANUFACTURER'S EXPRESS, WRITTEN WARRANTY. NEITHER SELLER NOR MANUFACTURER MAKE ANY OTHER REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AND SPECIFICALLY DISCLAIM THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR PARTICULAR PURPOSES.* NEITHER SELLER NOR MANUFACTURER WILL BE LIABLE FOR ANY SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES RESULTING FROM A BREACH OF THE EXPRESS WARRANTY OR ANY IMPLIED WARRANTY IMPOSED BY LAW.***

   *Some states do not allow these limitations and exclusions, and they shall not apply to the extent such limitations or exclusions are not allowed by applicable state law.*

2. **Prepayments.** Buyer may make a partial prepayment of the unpaid Time Balance at any time, but any partial prepayments will not change or defer Buyer's next scheduled payments.

3. **Late Charges/Default Rate/Returned Checks.** Buyer shall pay a late charge on each payment not paid within 10 days after the due date at the highest amount, both as permitted by applicable law. Buyer shall pay interest on the unpaid balance after maturity (as scheduled, by acceleration or otherwise) at the highest rate, as permitted by applicable law. If a check is returned for any reason, Assignee may charge Buyer a returned check processing fee as established by Assignee from time to time not to exceed the maximum permitted under applicable law. Assignee may apply any payment or proceed received toward the Obligations, in its sole discretion regardless of how requested or directed.

4. **Fees.** All parties to this Agreement acknowledge and agree that some fees and charges scheduled under section 4 in the Statement of Transaction may be shared between the Seller and CNH Capital as permitted by law and may result in profit for the Seller and CNH Capital. The parties further agree that Administrative or Other Fees are reasonable consideration for credit determination, handling, review, and approval of the transaction, and are not a document preparation fee nor an official fee. CNH Capital may make UCC related filings and/or termination statements pursuant to this Agreement. CNH Capital reserves its right to assess additional fees and other charges to the Obligations including but not limited to, if fees and other charges increase or other actions are needed to protect its lien upon the Equipment. If any fees and/or other charges scheduled and/or assessed under any part of this Agreement exceed the maximum permitted by applicable law, any excess shall be applied toward a reduction of the principal balance and that shall be the sole and satisfactory remedy under this Agreement.

5. **Extensions and Refinancing.** If Assignee extends, defers or refinances any payments due under this Agreement, Assignee may, at its option, increase the Interest Rate or Interest Charge (herein collectively referred to as the Finance Rate).

6. **Security Interests/Cross Collateralization.** Buyer hereby grants to Seller and its successors and assigns (including Assignee) a first priority purchase money security interest in the Equipment, and in all improvements, parts and accessories belonging to the Equipment, and all substitutions, replacements, products, proceeds (including any insurance proceeds) thereof and premium refunds, refunds of any other charges hereunder and all accessions related to the Equipment (the Equipment and such items are collectively referred to herein as the "Collateral"), to secure payment and performance of all existing and future obligations of Buyer under this Agreement or any other agreement between Buyer and Seller, between Buyer and Assignee or any affiliate of Assignee, or where Buyer, under another agreement in favor of Seller or Assignee, is a guarantor or obligor (the "Obligations"). Loss of or damage to the Equipment shall not release Buyer from any of the Obligations. Upon request, Buyer shall take any action reasonably deemed necessary by Assignee to protect and enforce Assignee's interest in the Collateral or rights under this Agreement. Assignee or Seller is authorized to examine the Collateral wherever located at any reasonable time or times. Buyer authorizes Assignee to insert in this Agreement, or amend any financing statement or title registration documentation to reflect the serial/PIN and/or model numbers of the Equipment if unknown at the time this Agreement is executed and to correct any errors in such numbers or any other errors in the description of the Equipment.

7. **Assignment.** Seller hereby assigns this Agreement, and any guarantee(s) ("Guarantee") hereof (together, "Assignment") to Assignee. Buyer acknowledges that Seller has the right to assign this Agreement and such Guarantee, that all rights and benefits but no obligations (if any) of Seller under this Agreement may be exercised by Assignee and that no obligations (if any) of Seller pass to Assignee. Buyer shall make all payments due under this Agreement directly to Assignee. This Agreement shall be binding on and inure to the benefit of Buyer, Seller and Assignee and their respective heirs, personal representatives, successors and assigns, provided however, that Buyer may not assign its interest in the Collateral, rights, nor its obligations under this Agreement to any person without Assignee's prior written consent. CNH Capital may pay a fee to the Assignor as consideration for the Assignor's assignment of this Agreement to CNH Capital.

8. **Notification of Change in Residence, Principal Office, or Organizational Form.** If Buyer changes (as applicable): (a) its state of principal residence; or (b) the state in which its chief executive office is located; or (c) the state in which it is organized; or (d) its form of organization (such as from an individual to a corporation); or (e) its name, as printed on a State filed registration document or individual name, as printed on a valid driver's license, then Buyer will notify Assignee in writing promptly, but in no event more than 30 days after such change.

9. **Waiver of Defenses Against Assignee; Indemnification.** Buyer will not assert against Assignee any claim or defense which Buyer may have against Seller, the manufacturer of the Equipment, or any other person. Buyer agrees that its obligation to remit payments will not be subject to, and it will not make any claim against Assignee for breach of any representation, warranty or condition with respect to the Equipment and that its obligation to pay Assignee all amounts under this Agreement is absolute and unconditional without abatement, reduction, set-off, counterclaim or interruption for any reason whatsoever, including any dispute which now or hereafter arises between Buyer and Seller or any other person. Time is of the essence. Buyer shall indemnify and hold harmless Seller, Assignee and their respective officers, directors, employees and agents from and against any damage, loss, theft or destruction of the Equipment or any part thereof, and from and against any and all loss, damage, injuries, claims, demands, costs and expenses (including without limitation reasonable attorneys' fees and expenses) of any kind and nature, arising out of or connected with this Agreement or the use, condition (including without limitation, all defects whether or not discoverable by Buyer, Seller or Assignee) or operation of the Equipment or any part thereof. Buyer shall promptly notify Seller and Assignee in writing of any loss, damage, theft, destruction, injury, claim, demand, cost or expense related to this Agreement or the Equipment of which Buyer has knowledge.

10. **Buyer's Covenants.** Buyer shall: (a) keep the Equipment in the state listed on page 1 of this Agreement and not remove the Equipment from such location, except temporarily in connection with its ordinary use or repair, unless Assignee consents in writing; (b) maintain the Equipment in good condition and repair and not permit its intended function or value to be impaired; (c) keep the Collateral free of all liens, encumbrances and security interests of all persons other than Seller and Assignee, (d) defend the Collateral against all claims and legal proceedings by persons other than Seller and Assignee; (e) pay and discharge when due all taxes, fees, levies and other charges upon the Collateral (including all personal property and ad valorem taxes); (f) pay when due all taxes arising from the purchase of the Equipment under this Agreement, excluding any taxes based upon Seller's net income; (g) use the Equipment solely in the conduct of Buyer's business; (h) ensure the Equipment will be used solely within the intended uses of the manufacturer and that manufacturer warranty remains valid; (i) not sell, lease or otherwise dispose of the Equipment nor permit the Equipment to become an accession to other goods or a fixture; and (j) not permit the Equipment to be used in violation of any law, regulation or policy of insurance; and (k) strictly follow the terms on page 1 of this Agreement; (l) perform (at Buyer's expense) all maintenance and repairs necessary to keep the Equipment in as good a condition as when delivered to Buyer, reasonable wear excepted; (m) not permit the Equipment to be used by, or to be in the possession of, anyone other than Buyer or Buyer's or Buyer's employees. Buyer represents and warrants that: (i) each individual executing this Agreement authorized by or on behalf of Buyer has the requisite power and authority to execute this Agreement and all related documents, (ii) Buyer is fully authorized to perform its obligations and consummate the transactions contemplated under this Agreement and related documents; (iii) the execution and delivery of this Agreement and all related documents and the consummation of the transactions under this Agreement have been duly authorized by Buyer; and (iv) this Agreement and all related documents constitute valid and legally binding obligations of Buyer, enforceable against Buyer in accordance with their respective terms

EXHIBIT 2 of 6



020069   / 2793674

**Agreement Provisions**



F%0000028373622 1004AD312

**11. Insurance.** Buyer shall keep Assignee's Interests in the Equipment insured against fire, theft, physical damage and other hazards under policies listing Assignee as Lender's loss payee or as an additional insured, for such amounts (but not less than the unpaid balance outstanding under this Agreement) and by such insurers and terms as shall be satisfactory to Assignee from time to time, and shall furnish to Assignee evidence of such insurance satisfactory to Assignee. Such insurance shall provide at least 30 days' written notice of cancellation, lapse or expiration to Assignee. Buyer assigns (and directs any insurer to pay) to Assignee Buyer's interest in the proceeds of any and all insurance related to the Equipment and any premium refund, and Assignee may, at its option, apply such proceeds and refunds to any unpaid balance of the Obligations, whether or not due, and/or to repair or restore the Equipment. Buyer must make all payments due under this Agreement whether or not the Equipment is insured or underinsured. Assignee is authorized, in the name of Buyer or otherwise, to make, adjust and/or settle claims under any insurance on the Equipment, or cancel the same after the occurrence of an event of default, or set off amounts owed Assignee against any rebates, credits or refunds due Buyer and/or any guarantor. If Buyer purchased physical damage insurance that is financed under this Agreement, Buyer hereby requests and authorizes Seller (provided Seller is properly licensed to do so) or its designee: (a) to arrange physical damage insurance for the benefit of Seller or Assignee and Buyer that covers physical damage to the Equipment; (b) to replace or otherwise modify such insurance as Seller deems appropriate; and (c) to be Buyer's attorney-in-fact to make claim for, receive payment of and execute, endorse and negotiate all documents, checks or drafts received in payment of loss, damage or premium refunds under any insurance. This Agreement includes and hereby incorporates by reference any Insurance Addendum signed in connection with this Agreement.

STATEMENT TO BUYER. THE PHYSICAL DAMAGE INSURANCE PURCHASED UNDER THE TERMS OF THIS AGREEMENT COVERS ONLY LOSS OF OR DAMAGE TO THE EQUIPMENT. LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED AS PART OF THE PHYSICAL DAMAGE INSURANCE. BUYER UNDERSTANDS THAT IF INSURANCE IS FINANCED UNDER THIS AGREEMENT, PREPAYMENT OF BUYER'S OBLIGATIONS OR TERMINATION OF THIS AGREEMENT WILL RESULT IN CANCELLATION OF INSURANCE COVERAGE, UNLESS OTHERWISE EXPLICITLY AGREED TO IN WRITING BY ASSIGNEE.

**12. Modifications and Waivers.** This Agreement sets forth the entire understanding among Seller, Assignee and Buyer. No modification, amendment or extension of this Agreement and no waiver of any provision of this Agreement shall be valid unless in writing and signed by the parties and a waiver of any default hereunder by Assignee shall not constitute a waiver of any other prior or subsequent default, except that Buyer authorizes Assignee to insert in this Agreement the serial number/PIN and/or model number of any Equipment if this information is unknown when this Agreement is executed or to correct any errors in such numbers or any other patent errors in the description of the Equipment.

**13. Authority of Assignee to Perform for Buyer.** If Buyer fails to perform any of Buyer's duties set forth in this Agreement (including, without limitation, the purchase of insurance), Assignee may at its option, in Buyer's name or otherwise, take any such action, including, without limitation, signing Buyer's name or paying any amount so required, and all costs and expenses incurred by Assignee in connection therewith shall form part of the Obligations and shall be payable by Buyer upon demand with interest from the date of payment by Assignee at the highest rate permitted by applicable law.

**14. Default/Cross Default.** Buyer shall be in default under this Agreement, and any other agreement with or assigned to Assignee, if any of the following occurs (each, an "event of default"): (a) Buyer fails to pay when due any of the Obligations, or to perform any covenant or other obligation of Buyer under this Agreement or any other agreement with or assigned to Assignee; (b) Buyer or any guarantor dies, ceases to exist, becomes insolvent or the subject of bankruptcy, insolvency or liquidation proceedings, attempts to or does assign this Agreement or attempts to or does remove, sell, transfer, further encumber, part with possession of or sublet any Equipment; (c) any warranty or representation made by Buyer or any guarantor to induce Seller or Assignee to extend credit to Buyer, under this Agreement or otherwise, is false in any material respect when made; (d) Buyer fails to maintain insurance required hereunder or fails to comply with the requirements of any such insurance; (e) any other event occurs that causes Assignee, in good faith, to consider that payment or performance of the Obligations is impaired or that the Equipment is at risk; (f) the Equipment is impounded or confiscated by any federal, state or local governmental authority; (g) Buyer fails to produce Collateral for inspection within 10 days, upon demand; or (h) Buyer breaches any of the other terms of this Agreement or any other agreement with or assigned to Assignee.

**15. Expenses.** To the extent not prohibited by law, Buyer shall reimburse Seller or Assignee for any expense incurred by Seller or Assignee in protecting, defending or enforcing their rights under this Agreement, including, without limitation, reasonable attorneys' fees and legal expenses and all expenses of taking possession, transporting, holding, repairing, refurbishing, preparing for disposition and disposing of the Collateral, and all expenses and costs incurred in collecting the Obligations, including collection agency fees based on a maximum of 25% of the Obligations, and all shall be part of the Obligations.

**16. Conflict with Law.** Any provision of this Agreement prohibited by applicable law shall be ineffective to the extent of the prohibition without invalidating the remaining portions of this Agreement. The validity, construction and enforcement of this Agreement shall be governed by the laws of the State of the Seller (without regard to conflict of law principles of such State). All terms not otherwise defined have the meanings assigned to them by the applicable Uniform Commercial Code.

**17. Authorization to Execute and File Financing Statements and Lien Documents.** Buyer hereby authorizes Assignee or its designee to execute and file financing statements, and any motor vehicle title, registration and lien notification documentation, and any amendments thereto, on behalf and in the name of Buyer to evidence the security interest in the Collateral granted pursuant to this Agreement. Buyer hereby irrevocably appoints Assignee or its designee as Buyer's agent and attorney-in-fact to sign such instruments on Buyer's behalf and to file them

**18. Time Price Calculations.** If this is a variable rate contract, the Prime Rate for a given calendar month shall be the rate designated as the "Prime Rate" published in The Wall Street Journal on the twentieth day of the prior calendar month (or on the next day published if not published on the twentieth day). If The Wall Street Journal ceases publication permanently or no longer publishes a "Prime Rate", the Prime Rate shall mean the prime loan rate of any federally chartered bank selected by Assignee. For all contracts the interest Rate shall never be less than 0% Interest Rate shall be calculated using a daily rate determined by dividing the annual rate by 365. Buyer shall make all payments in lawful money of the United States of America.

**19. Remedies.** Upon the occurrence of any event of default, Seller or Assignee shall have all rights and remedies provided by the Uniform Commercial Code or any other applicable law and Seller or Assignee may, except where prohibited by law, at its option: (i) declare all Obligations immediately due and payable without notice or demand; (ii) enter onto any premises where the Collateral may be located, take possession of all Collateral, without notice or hearing, and, Buyer or any guarantor, also expressly waives any right to notice or to require Assignee to post any bond; (iii) render the Equipment unusable; (iv) require Buyer to assemble all Collateral and make it available to Assignee at any convenient place designated by Assignee within 10 days after notice from Assignee; (v) sell (including at wholesale) or otherwise dispose of all Collateral at public or private sale for cash or on credit terms, without notice; and if notice is required by law, ten (10) days' notice to Buyer shall be deemed reasonable notice; and/or (vi) obtain a consumer credit bureau report on any Buyer or any guarantor. All rights and remedies may be exercised by Seller or Assignee either separately or in combination and any action taken by Assignee to recover payment from Buyer of the Obligations shall not limit Assignee's rights with respect to all Collateral. Assignee may apply all proceeds of realization of the Collateral to such part or parts of the Obligations as Assignee may decide. If there is a deficiency, Buyer will pay the amount of the deficiency upon demand. Buyer waives notice of dishonor, presentment and demand as to this Agreement.

21004A   Rev. 01/24 Previous editions may not be used.   Page 3 of 12

EXHIBIT 2 of 6



CNH CAPITAL

020069 / 2793674      Agreement Provisions      F%00000283736221004A0412

**20. Miscellaneous.** In the event that this contract is determined by a court of competent jurisdiction to be characterized as a loan or forbearance agreement, and not a sale, despite the terms and conditions found in this contract, then all parties agree that any interest charges computed and assessed in this contract that are in excess of the maximum allowed interest charges allowed by law shall be applied as a reduction to the principal balance owed on this contract only, and this shall be the agreed upon and satisfactory remedy to all parties. By providing any address, email address or telephone number, including a mobile phone number, either now or in the future to Seller, Assignee, any of Assignee's affiliates or any debt collectors retained by Assignee, Buyer agrees that any of the above may contact Buyer using that address or number, including contact through calls or texts using an automatic dialing and announcing device and prerecorded calls, and that such calls are not "unsolicited" under state or federal law. Any attempted revocation of this consent to contact, if allowable by law, must be made in writing. Buyer acknowledges and agrees that CNH Capital and its third party service providers can access and use telematics data and other information regarding location, maintenance and operation of the Equipment for any lawful purpose, including without limitation, to locate and repossess the Equipment. See https://www.cnhindustrialcapital.com/en_us/Pages/Privacy.aspx for additional details. If a court finds that any part of this Agreement to be invalid or unenforceable, the remainder of this Agreement will remain in effect. All of Assignee's rights shall remain in effect after the expiration or termination of this Agreement. If more than one Buyer is named in the Agreement, the liability of each shall be joint and several. All notices required or permitted hereunder shall be in writing and shall be deemed adequate if sent to the first Buyer on page 1 of the Agreement. The captions and headings of the sections of this Agreement are for convenience only and are not to be used to interpret or define the provisions hereof. Restrictive endorsements on checks or other forms of payment that Buyer sends to Assignee will not change or reduce Buyer's obligations to Assignee. Assignee will not lose any rights if Assignee accepts late or partial payments or delays enforcing its rights under this Agreement. South Dakota Residents: If there are any improprieties in making the loan or in loan practices, you may contact the South Dakota Division of Banking: South Dakota Division of Banking, 1714 Lincoln Ave, Suite 2, Pierre, SD 57501, phone number: (605) 773-3421.

**21. WAIVER OF JURY TRIAL.** EXCEPT IN GEORGIA OR CALIFORNIA OR WHERE OTHERWISE PROHIBITED BY LAW, EACH BUYER, SELLER AND CNH CAPITAL WAIVES ANY AND ALL RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING RELATING TO THE OBLIGATIONS, THIS AGREEMENT, OR ANY OTHER DOCUMENT CONNECTED HEREWITH, OR ANY TRANSACTION ARISING FROM OR CONNECTED TO ANY OF THE FOREGOING. EACH BUYER, SELLER AND CNH CAPITAL REPRESENTS THAT THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY GIVEN.

**22. Electronic Contracting, Signature Acknowledgment, Future Notices.** Buyer agrees that (i) this Agreement is an electronic agreement executed by Buyer using Buyer's electronic signature or that Assignee may convert this Agreement into an electronic agreement; (ii) Buyer's electronic signature signifies Buyer's intent to enter into this Agreement and that this Agreement shall be a legally valid and enforceable Agreement in accordance with its terms to the same extent as if Buyer had executed this Agreement using Buyer's written signature and (iii) the authoritative copy of this Agreement ("Authoritative Copy") shall be that electronic copy that resides in a document management system designated by Assignee for the storage and authoritative copies of electronic records, which shall be deemed held by us in the ordinary course of business. Notwithstanding the foregoing, if the Authoritative Copy is converted by printing a paper copy which is marked by Assignee as the original (the "Paper Contract"), then Buyer acknowledges and agrees that (1) your signing of this Agreement with your electronic signature also constitutes issuance and delivery of such Paper Contract, (2) your electronic signature associated with this Agreement, when affixed to the Paper Contract, constitutes your legally valid and binding signature on the Paper Contract and (3) subsequent to such conversion, Buyer's duties and Obligations will be evidenced by the Paper Contract alone. By providing your e-mail address and electing to execute this Agreement electronically, Buyer agrees that all future notices, statements and communications relating to this Agreement shall be delivered to the Buyer via e-mail transmission to the e-mail address provided to Assignee by the Buyer. It is the Buyer's duty to provide any changes to Buyer's e-mail address to Assignee so that future communications can reach Buyer in a timely manner.

EXHIBIT 2 of 6



CNH | CAPITAL

FX000002837362210 08A0512

020069 / 2793674

## MULTIPLE UNIT ADDENDUM

This Multiple Unit Addendum is hereby incorporated into the commercial Retail Installment Contract and Security Agreement or Lease Agreement dated February 06 , 2024 with Seller BURKS TRACTOR COMPANY,INC. herein the ("Agreement"), and this addendum equipment list is made a part of the Equipment, as defined in the Agreement. Buyer or Lessee acknowledges receipt of this Multiple Unit Addendum at the time it is executed, along with a copy of the Agreement and all its pages and agrees to all the Agreement terms.

| # | New or Used | Equipment Description | Model | Serial Number/PIN | Hours | Maximum Annual Usage | Excess Usage Rate | Cash Price |
|---|---|---|---|---|---|---|---|---|
| 1 | NEW | Case IH Maxxum | 115 | HACMX115EPDH01475 | | N/A | N/A | $ 101,555.00 |
| 2 | NEW | Case IH Maxxum | 115 | HACMX115APDH01598 | | N/A | N/A | $ 101,555.00 |
| 3 | NEW | Case IH Maxxum | 115 | HACMX115CPDH01601 | | N/A | N/A | $ 101,555.00 |
| 4 | NEW | Case IH Maxxum | 115 | HACMX115TPDH01606 | | N/A | N/A | $ 101,555 00 |
| 5 | NEW | Case IH Maxxum | 115 | HACMX115PPDH01710 | | N/A | N/A | $ 101,555.00 |
| 6 | NEW | Case IH Maxxum | 115 | HACMX115LPDH04728 | | N/A | N/A | $ 101,555 00 |
| 7 | NEW | Case IH Maxxum | 115 | HACMX115APDH02069 | | N/A | N/A | $ 101,555.00 |
| 8 | NEW | Case IH Maxxum | 115 | HACMX115EPDH02027 | | N/A | N/A | $ 101,555 00 |
| 9 | NEW | Case IH Maxxum | 115 | HACMX115LPDH04326 | | N/A | N/A | $ 101,555 00 |
| 10 | NEW | Case IH Maxxum | 115 | HACMX115KPDH04613 | | N/A | N/A | $ 101,555.00 |
| 11 | NEW | Case IH Maxxum | 115 | HACMX115EPDH04621 | | N/A | N/A | $ 101,555.00 |
| 12 | NEW | Case IH Maxxum | 115 | HACMX115KPDH04625 | | N/A | N/A | $ 101,555 00 |
| 13 | NEW | Case IH Maxxum | 115 | HACMX115JPDH04724 | | N/A | N/A | $ 101,555.00 |
| 14 | NEW | Case IH Maxxum | 115 | HACMX115HPDH04729 | | N/A | N/A | $ 101,555.00 |
| 15 | NEW | Case IH Maxxum | 115 | HACMX115LPDH04731 | | N/A | N/A | $ 101,555.00 |

Executed this 06 day of February , 2024 .

X _____
Signature of Buyer/Buyer's Representative

MILLENKAMP CATTLE, INC.
Printed Name

_____
Title (not for an individual Buyer)

X _____
Signature of Seller's Representative

BURKS TRACTOR COMPANY,INC.
Printed Seller Name

21008A     Rev. 01/24 Previous editions may not be used.

Page 5 of 12

EXHIBIT 2 of 6



CNH CAPITAL

020069 / 2793674

## MULTIPLE UNIT ADDENDUM



F%000002837362210 08A0612

This Multiple Unit Addendum is hereby incorporated into the commercial Retail Installment Contract and Security Agreement or Lease Agreement dated
February 06_____, 2024_____ with Seller BURKS TRACTOR COMPANY,INC._____ herein the ("Agreement"), and this addendum
equipment list is made a part of the Equipment, as defined in the Agreement. Buyer or Lessee acknowledges receipt of this Multiple Unit Addendum at the time
it is executed, along with a copy of the Agreement and all its pages and agrees to all the Agreement terms.

| # | New or Used | Equipment Description | Model | Serial Number/PIN | Hours | Maximum Annual Usage | Excess Usage Rate | Cash Price |
|---|---|---|---|---|---|---|---|---|
| 16 | NEW | Case IH Maxxum | 115 | HACMX115CPDH04823 | | N/A | N/A | $ 101,555.00 |
| 17 | NEW | Case IH Maxxum | 115 | HACMX115EPDH04828 | | N/A | N/A | $ 101,555.00 |
| 18 | NEW | Case IH Maxxum | 115 | HACMX115TPDH04878 | | N/A | N/A | $ 101,555.00 |
| 19 | NEW | Case IH Maxxum | 115 | HACMX115PPDH04879 | | N/A | N/A | $ 101,555.00 |
| 20 | NEW | Case IH Maxxum | 115 | HACMX115CPDH04921 | | N/A | N/A | $ 101,555.00 |
| 21 | NEW | Case IH Maxxum | 115 | HACMX115VPDH05035 | | N/A | N/A | $ 101,555.00 |
| 22 | NEW | Case IH Maxxum | 115 | HACMX115HPDH05038 | | N/A | N/A | $ 101,555.00 |
| 23 | NEW | Case IH Maxxum | 115 | HACMX115EPDH05235 | | N/A | N/A | $ 101,555.00 |
| 24 | NEW | Case IH Maxxum | 115 | HACMX115JPDH05078 | | N/A | N/A | $ 101,555.00 |
| 25 | NEW | Case IH Maxxum | 115 | HACMX115APDH05302 | | N/A | N/A | $ 101,555.00 |
| 26 | NEW | Case IH Maxxum | 115 | HACMX115CPDH05910 | | N/A | N/A | $ 101,555.00 |
| 27 | NEW | Case IH Maxxum | 115 | HACMX115JPDH06375 | | N/A | N/A | $ 101,555.00 |
| 28 | NEW | Case IH Maxxum | 115 | HACMX115CPDH06466 | | N/A | N/A | $ 101,555.00 |
| 29 | NEW | Case IH Maxxum | 115 | HACMX115HPDH06707 | | N/A | N/A | $ 101,555.00 |
| 30 | NEW | Case IH Maxxum | 115 | HACMX115LPDH04826 | | N/A | N/A | $ 101,555.00 |

Executed this 06 day of February , 2024 .

X_____
Signature of Buyer/Buyer's Representative

MILLENKAMP CATTLE, INC.
Printed Name

_____
Title (not for an individual Buyer)

X_____
Signature of Seller's Representative

BURKS TRACTOR COMPANY,INC.
Printed Seller Name

21008A    Rev. 01/24 Previous editions may not be used

Page 6 of 12

EXHIBIT 2 of 6



020089  / 2793674

# MULTIPLE TRADE-IN UNIT ADDENDUM

This Multiple Trade-In Unit Addendum is hereby incorporated into the commercial Retail Installment Contract and Security Agreement or Lease Agreement dated February 06_____, 2024_____ with Seller BURKS TRACTOR COMPANY,INC._____ herein the ("Agreement").  Buyer or Lessee acknowledges receipt of this Multiple Trade-In Unit Addendum at the time it is executed, along with a copy of the Agreement and all its pages.

| # | Equipment Description | Model | Serial Number/PIN | Allowance | Amt. Owed | Net Trade-In | Owed To |
|---|---|---|---|---|---|---|---|
| 1 | Case IH  Maxxum Tractor | 115 | HACMX115PLEH20410 | $ 38,500.00 | $ 0.00 | $ 38,500.00 | |
| 2 | Case IH  Maxxum Tractor | 115 | HACMX115JLEH20829 | $ 38,500.00 | $ 0.00 | $ 38,500.00 | |
| 3 | Case IH  Maxxum Tractor | 115 | HACMX115KLEH20423 | $ 38,500.00 | $ 0.00 | $ 38,500.00 | |
| 4 | Case IH  Maxxum Tractor | 115 | HACMX115CLEH20413 | $ 38,500.00 | $ 0.00 | $ 38,500.00 | |
| 5 | Case IH  Maxxum Tractor | 115 | HACMX115VLEH20414 | $ 38,500.00 | $ 0.00 | $ 38,500.00 | |
| 6 | Case IH  Maxxum Tractor | 115 | HACMX115ELEH20421 | $ 38,500.00 | $ 0.00 | $ 38,500.00 | |
| 7 | Case IH  Maxxum Tractor | 115 | HACMX115ALEH20432 | $ 38,500.00 | $ 0.00 | $ 38,500.00 | |
| 8 | Case IH  Maxxum Tractor | 115 | HACMX115LLEH20433 | $ 38,500.00 | $ 0.00 | $ 38,500.00 | |
| 9 | Case IH  Maxxum Tractor | 115 | HACMX115JLEH20457 | $ 38,500.00 | $ 0.00 | $ 38,500.00 | |
| 10 | Case IH  Maxxum Tractor | 115 | HACMX115HLEH20434 | $ 38,500.00 | $ 0.00 | $ 38,500.00 | |
| 11 | Case IH  Maxxum Tractor | 115 | HACMX115ELEH20435 | $ 38,500.00 | $ 0.00 | $ 38,500.00 | |
| 12 | Case IH  Maxxum Tractor | 115 | HACMX115CLEH20436 | $ 38,500.00 | $ 0.00 | $ 38,500.00 | |
| 13 | Case IH  Maxxum Tractor | 115 | HACMX115TLEH20437 | $ 38,500.00 | $ 0.00 | $ 38,500.00 | |
| 14 | Case IH  Maxxum Tractor | 115 | HACMX115PLEH20438 | $ 38,500.00 | $ 0.00 | $ 38,500.00 | |
| 15 | Case IH  Maxxum Tractor | 115 | HACMX115CLEH20587 | $ 38,500.00 | $ 0.00 | $ 38,500.00 | |

Buyer hereby conveys to Seller all rights, title and interest in the Trade-in Equipment free and clear of all encumbrances except as noted above,

☑ If checked, Seller represents and warrants that the above Amt. Owed has been paid.

Executed this 06_ day of February_____, 2024___ ,

X_____
Signature of Buyer/Buyer's Representative

MILLENKAMP CATTLE, INC.
Printed Name

_____
Title (not for an individual Buyer)

X_____
Signature of Seller's Representative

BURKS TRACTOR COMPANY,INC.
Printed Seller Name

21142A    Rev. 01/24  Previous editions may not be used.

Page 7 of 12

EXHIBIT 2 of 6



**CNH** | **CAPITAL**

020069  / 2793674

## MULTIPLE TRADE-IN UNIT ADDENDUM

This Multiple Trade-In Unit Addendum is hereby incorporated into the commercial Retail Installment Contract and Security Agreement or Lease Agreement dated ___February 06___, ___2024___ with Seller ___BURKS TRACTOR COMPANY,INC.___ herein the ("Agreement"). Buyer or Lessee acknowledges receipt of this Multiple Trade-In Unit Addendum at the time it is executed, along with a copy of the Agreement and all its pages.

| # | Equipment Description | Model | Serial Number/PIN | Allowance | Amt. Owed | Net Trade-In | Owed To |
|---|---|---|---|---|---|---|---|
| 16 | Case IH  Maxxum Tractor | 115 | HACMX115TLEH20599 | $  38,500.00 | $  0.00 | $  38,500.00 | |
| 17 | Case IH  Maxxum Tractor | 115 | HACMX115VLEH20560 | $  38,500.00 | $  0.00 | $  38,500.00 | |
| 18 | Case IH  Maxxum Tractor | 115 | HACMX115ALEH20589 | $  38,500.00 | $  0.00 | $  38,500.00 | |
| 19 | Case IH  Maxxum Tractor | 115 | HACMX115JLEH20412 | $  38,500.00 | $  0.00 | $  38,500.00 | |
| 20 | Case IH  Maxxum Tractor | 115 | HACMX115CLEH20590 | $  38,500.00 | $  0.00 | $  38,500.00 | |
| 21 | Case IH  Maxxum Tractor | 115 | HACMX115LLEH20688 | $  38,500.00 | $  0.00 | $  38,500.00 | |
| 22 | Case IH  Maxxum Tractor | 115 | HACMX115CLEH20744 | $  38,500.00 | $  0.00 | $  38,500.00 | |
| 23 | Case IH  Maxxum Tractor | 115 | HACMX115LLEH20738 | $  38,500.00 | $  0.00 | $  38,500.00 | |
| 24 | Case IH  Maxxum Tractor | 115 | HACMX115KLEH20778 | $  38,500.00 | $  0.00 | $  38,500.00 | |
| 25 | Case IH  Maxxum Tractor | 115 | HACMX115TLEH20745 | $  38,500.00 | $  0.00 | $  38,500.00 | |
| 26 | Case IH  Maxxum Tractor | 115 | HACMX115ELEH20791 | $  38,500.00 | $  0.00 | $  38,500.00 | |
| 27 | Case IH  Maxxum Tractor | 115 | HACMX115HLEH20787 | $  38,500.00 | $  0.00 | $  38,500.00 | |
| 28 | Case IH  Maxxum Tractor | 115 | HACMX115ELEH20841 | $  38,500.00 | $  0.00 | $  38,500.00 | |
| 29 | Case IH  Maxxum Tractor | 115 | HACMX115ELEH20838 | $  38,500.00 | $  0.00 | $  38,500.00 | |
| 30 | Case IH  Maxxum Tractor | 115 | HACMX115KLEH20411 | $  38,500.00 | $  0.00 | $  38,500.00 | |

Buyer hereby conveys to Seller all rights, title and interest in the Trade-In Equipment free and clear of all encumbrances except as noted above.

☑ If checked, Seller represents and warrants that the above Amt. Owed has been paid.

Executed this __06__ day of __February__, __2024__.

X_____
Signature of Buyer/Buyer's Representative

MILLENKAMP CATTLE, INC.
Printed Name

_____
Title (not for an individual Buyer)

X_____
Signature of Seller's Representative

BURKS TRACTOR COMPANY,INC.
Printed Seller Name

211420    Rev. 01/24 Previous editions may not be used.

Page 8 of 12

EXHIBIT 2 of 6



020069   / 2793674

## PURCHASED PROTECTION PLAN ADDENDUM

This is the Purchased Protection Plan Addendum to that certain commercial _____ Retail Installment Sale Contract and Security Agreement _____ dated _____ February 06 _____, _____ 2024 _____ between the Buyer and the Seller for the Equipment identified therein (herein the "Agreement"), into which this Purchased Protection Plan Addendum is hereby incorporated. If the price of a Purchased Protection Plan is financed under the Agreement, Buyer understands that a portion of the price may be paid to Seller, to Seller's designee or to Case New Holland Insurance Agency, LLC, as an administrative or marketing fee. Assignee may deliver the Purchased Protection Plan price to Seller and if Assignee does so, Seller is solely responsible for remitting payment to the provider. Provider and Buyer agree that they shall not raise any claim, defense or setoff against Assignee if the Seller fails to remit payment to the provider, unless prohibited by law. Your Dealer may receive certain brand discounts, program funds and incentives (hereafter the "Discounts"), and may elect to use or keep those Discounts, as part of their overall pricing package options presented to you. The Discounts are owned by your Dealer. Some of the cost of your potential Purchased Protection Plan may be paid for by your Dealer, utilizing those Discounts and/or rolled into your payment. You may ask your Dealer for additional information concerning the potential separate costs contained in your payment of a potential Purchased Protection Plan, prior to executing your Agreement. Buyer's electronic signature below indicates Buyer's consent to receive this disclosure statement electronically at the email address provided by Buyer to Seller. Buyer accepts this disclosure statement in electronic form, and has retained a copy of the disclosure statement electronically or otherwise.

The Purchased Protection Plan is recommended but is not required. The precise protection afforded is subject to the terms, conditions and exclusions of the contract as issued. Purchased Protection Plans are issued by a licensed, independent third party unrelated to CNH Industrial Capital America LLC or Case New Holland Insurance Agency, LLC.

Buyer requests Seller/Assignee to attempt to obtain a Purchased Protection Plan from a third party provider and to finance as part of the Unpaid Balance (Amount Financed) the price as shown for the term as shown or for the total machine hours stated in the Purchased Protection Plan contract, whichever occurs first, for the Equipment listed below.

_Where NEW plan is shown below the Total Months and Total Machine Hours selected on new equipment plans include the Manufacturer's Base Warranty Period._

_Where USED plan is shown below the Months and Machine Hours selected commence on the used equipment Purchase Protection Plan contract effective date._

| | PLAN | EQUIPMENT SERIAL/PIN | PRICE | TERM (MONTHS) | | PLAN | EQUIPMENT SERIAL/PIN | PRICE | TERM (MONTHS) |
|---|---|---|---|---|---|---|---|---|---|
| 1 | NEW | HACMX115APDH01598 | $8,045.00 | 36 | 14 | NEW | HACMX115LPDH04826 | $8,045.00 | 36 |
| 2 | NEW | HACMX115JPDH04724 | $8,045.00 | 36 | 15 | NEW | HACMX115TPDH01608 | $8,045.00 | 36 |
| 3 | NEW | HACMX115LPDH04731 | $8,045.00 | 36 | 16 | NEW | HACMX115KPDH04513 | $8,045.00 | 36 |
| 4 | NEW | HACMX115EPDH04828 | $8,045.00 | 36 | 17 | NEW | HACMX115EPDH02027 | $8,045.00 | 36 |
| 5 | NEW | HACMX115PPDH04879 | $8,045.00 | 36 | 18 | NEW | HACMX115APDH02069 | $8,045.00 | 36 |
| 6 | NEW | HACMX115CPDH01601 | $8,045.00 | 36 | 19 | NEW | HACMX115EPDH01475 | $8,045.00 | 36 |
| 7 | NEW | HACMX115HPDH05038 | $8,045.00 | 36 | 20 | NEW | HACMX115EPDH04621 | $8,045.00 | 36 |
| 8 | NEW | HACMX115JPDH05076 | $8,045.00 | 36 | 21 | NEW | HACMX115KPDH04625 | $8,045.00 | 36 |
| 9 | NEW | HACMX115CPDH05910 | $8,045.00 | 36 | 22 | NEW | HACMX115HPDH04729 | $8,045.00 | 36 |
| 10 | NEW | HACMX115CPDH06466 | $8,045.00 | 36 | 23 | NEW | HACMX115CPDH04823 | $8,045.00 | 36 |
| 11 | NEW | HACMX115PPDH01710 | $8,045.00 | 36 | 24 | NEW | HACMX115TPDH04878 | $8,045.00 | 36 |
| 12 | NEW | HACMX115LPDH04325 | $8,045.00 | 36 | 25 | NEW | HACMX115CPDH04921 | $8,045.00 | 36 |
| 13 | NEW | HACMX115LPDH04728 | $8,045.00 | 36 | 26 | NEW | HACMX115VPDH05035 | $8,045.00 | 36 |

Executed this 06 day of February , 2024 .

X _____   MILLENKAMP CATTLE, INC   _____
Signature of Buyer/Buyer's Representative      Printed Name      Title (not for an Individual Buyer)

21017A   Rev. 01/24 Previous editions may not be used.

Page 9 of 12

EXHIBIT 2 of 6



**CAPITAL**

020069   / 2793674



F%00000283736221017A1012

## PURCHASED PROTECTION PLAN ADDENDUM

This is the Purchased Protection Plan Addendum to that certain commercial _____Retail Installment Sale Contract and Security Agreement_____ dated _____February 06_____, _____2024_____ between the Buyer and the Seller for the Equipment identified therein (herein the "Agreement"), into which this Purchased Protection Plan Addendum is hereby incorporated. If the price of a Purchased Protection Plan is financed under the Agreement, Buyer understands that a portion of the price may be paid to Seller, to Seller's designee or to Case New Holland Insurance Agency, LLC, as an administrative or marketing fee. Assignee may deliver the Purchased Protection Plan price to Seller and if Assignee does so, Seller is solely responsible for remitting payment to the provider. Provider and Buyer agree that they shall not raise any claim, defense or setoff against Assignee if the Seller fails to remit payment to the provider, unless prohibited by law. Your Dealer may receive certain brand discounts, program funds and incentives (hereafter the "Discounts"), and may elect to use or keep those Discounts, as part of their overall pricing package options presented to you. The Discounts are owned by your Dealer. Some of the cost of your potential Purchased Protection Plan may be paid for by your Dealer, utilizing those Discounts and/or rolled into your payment. You may ask your Dealer for additional information concerning the potential separate costs contained in your payment of a potential Purchased Protection Plan, prior to executing your Agreement. Buyer's electronic signature below indicates Buyer's consent to receive this disclosure statement electronically at the email address provided by Buyer to Seller. Buyer accepts this disclosure statement in electronic form, and has retained a copy of the disclosure statement electronically or otherwise.

The Purchased Protection Plan is recommended but is not required. The precise protection afforded is subject to the terms, conditions and exclusions of the contract as issued. Purchased Protection Plans are issued by a licensed, independent third party unrelated to CNH Industrial Capital America LLC or Case New Holland Insurance Agency, LLC.

Buyer requests Seller/Assignee to attempt to obtain a Purchased Protection Plan from a third party provider and to finance as part of the Unpaid Balance (Amount Financed) the price as shown for the term as shown or for the total machine hours stated in the Purchased Protection Plan contract, whichever occurs first, for the Equipment listed below.

_Where NEW plan is shown below the Total Months and Total Machine Hours selected on new equipment plans include the Manufacturer's Base Warranty Period._

_Where USED plan is shown below the Months and Machine Hours selected commence on the used equipment Purchase Protection Plan contract effective date._

| | PLAN | EQUIPMENT SERIAL/PIN | PRICE | TERM (MONTHS) | | PLAN | EQUIPMENT SERIAL/PIN | PRICE | TERM (MONTHS) |
|---|---|---|---|---|---|---|---|---|---|
| 27 | NEW | HACMX115EPDH05235 | $8,045.00 | 36 | | | | | |
| 28 | NEW | HACMX115APDH06302 | $8,045.00 | 36 | | | | | |
| 29 | NEW | HACMX115JPDH06375 | $8,045.00 | 36 | | | | | |
| 30 | NEW | HACMX115HPDH06707 | $8,045.00 | 36 | | | | | |

Executed this _06_ day of _February_ , _2024_ .

X _____
Signature of Buyer/Buyer's Representative

MILLENKAMP CATTLE, INC.
Printed Name

_Pres/tot_
Title (not for an individual Buyer)

EXHIBIT 2 of 6

 **CAPITAL**

020069 / 2793674



F%0000028373622338 4A1112

## MAINTENANCE PLAN ADDENDUM

This is the Maintenance Plan Addendum to that certain commercial _____ Retail Installment Sale Contract and Security Agreement _____ dated
_____ February 06 _____ , _____ 2024 _____ between the Buyer and the Seller for the Equipment identified therein (herein the "Agreement"), into which this Maintenance Plan Addendum is hereby incorporated. If the price of a Maintenance Plan is financed under the Agreement, Buyer understands that a portion of the price may be paid to Seller by the manufacturer. Assignee may deliver the Maintenance Plan price to Seller and if Assignee does so, Seller is solely responsible for remitting payment to the manufacturer. Buyer agrees that they shall not raise any claim, defense or setoff against Assignee if the Seller fails to remit payment to the manufacturer, unless prohibited by law. Your dealer may receive certain brand discounts, program funds and incentives (hereafter the "Discounts"), and may elect to use or keep those Discounts, as part of their overall pricing package options presented to you. The Discounts are owned by your Dealer. Some of the cost of your potential maintenance plan may be paid for by your dealer, utilizing those Discounts and/or rolled into your payment. You may ask your dealer for additional information concerning the potential separate costs contained in your payment of a potential maintenance plan, prior to executing your Agreement.

The Maintenance Plan is recommended but is not required. The precise protection afforded is subject to the terms, conditions and exclusions of the contract as issued by the manufacturer. Program may not be available in all states. Eligible equipment or other program details may vary by state based on state regulations.

Buyer requests Seller/Assignee to attempt to obtain a Maintenance Plan from the manufacturer and to include as part of the payments the price as shown for the term as shown or for the total machine hours stated in the Maintenance Agreement Form, whichever occurs first, for the Equipment listed below.

Where NEW plan is shown below the Total Months and Total Machine Hours selected on new equipment plans.

| | PLAN* | EQUIPMENT SERIAL/PIN | PRICE | TERM (MONTHS) | HOURS | | PLAN* | EQUIPMENT SERIAL/PIN | PRICE | TERM (MONTHS) | HOUR |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | NEW | HACMX115EPDH01476 | see Maintenance Agreement Form for full details | | | 14 | NEW | HACMX115HPDH04729 | see Maintenance Agreement Form for full details | | |
| 2 | NEW | HACMX115APDH01598 | see Maintenance Agreement Form for full details | | | 15 | NEW | HACMX115LPDH04731 | see Maintenance Agreement Form for full details | | |
| 3 | NEW | HACMX115CPDH01601 | see Maintenance Agreement Form for full details | | | 16 | NEW | HACMX115GPDH04623 | see Maintenance Agreement Form for full details | | |
| 4 | NEW | HACMX115TPDH01608 | see Maintenance Agreement Form for full details | | | 17 | NEW | HACMX115EPDH04828 | see Maintenance Agreement Form for full details | | |
| 5 | NEW | HACMX115PPDH01710 | see Maintenance Agreement Form for full details | | | 18 | NEW | HACMX115TPDH04878 | see Maintenance Agreement Form for full details | | |
| 6 | NEW | HACMX115LPDH04728 | see Maintenance Agreement Form for full details | | | 19 | NEW | HACMX115PPDH04879 | see Maintenance Agreement Form for full details | | |
| 7 | NEW | HACMX115APDH02069 | see Maintenance Agreement Form for full details | | | 20 | NEW | HACMX115CPDH04921 | see Maintenance Agreement Form for full details | | |
| 8 | NEW | HACMX115EPDH02027 | see Maintenance Agreement Form for full details | | | 21 | NEW | HACMX115VPDH05035 | see Maintenance Agreement Form for full details | | |
| 9 | NEW | HACMX115LPDH04325 | see Maintenance Agreement Form for full details | | | 22 | NEW | HACMX115LPDH05038 | see Maintenance Agreement Form for full details | | |
| 10 | NEW | HACMX115KPDH04513 | see Maintenance Agreement Form for full details | | | 23 | NEW | HACMX115EPDH05235 | see Maintenance Agreement Form for full details | | |
| 11 | NEW | HACMX115EPDH04621 | see Maintenance Agreement Form for full details | | | 24 | NEW | HACMX115JPDH05078 | see Maintenance Agreement Form for full details | | |
| 12 | NEW | HACMX115KPDH04625 | see Maintenance Agreement Form for full details | | | 25 | NEW | HACMX115APDH05302 | see Maintenance Agreement Form for full details | | |
| 13 | NEW | HACMX115JPDH04724 | see Maintenance Agreement Form for full details | | | 26 | NEW | HACMX115CPDH05910 | see Maintenance Agreement Form for full details | | |

**Total Cost of Maintenance Plan** _____

*See Maintenance Agreement Form for the serial number(s) under plan.

Executed this 06 day of February , 2024 ,

X ~~[signature]~~       MILLENKAMP CATTLE, INC.        ~~[signature]~~
Signature of Buyer/Buyer's Representative    Printed Name           Title (not for an individual Buyer)

EXHIBIT 2 of 6

**CNH | CAPITAL**

020069 / 2793674

## GUARANTEE

In consideration of the extension of credit as referenced by the application number above, and to induce the Secured Party, as hereinafter defined, to extend credit on the agreement dated ___February 06___, ___2024___, (herein "Agreement") to:

MILLENKAMP CATTLE, INC.

of 471 NORTH 300 WEST, JEROME, ID 83338-5078

(collectively the "Buyer"), and for other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, each of the executing parties below (collectively the "Guarantor", whether one or more) makes this guarantee ("Guarantee") in favor of the Secured Party.

1. The Guarantor, pursuant to the terms of this Guarantee, unconditionally and irrevocably guarantees the payment, performance and complete fulfillment of all Obligations, as defined in the Agreement described above, of the Buyer to Secured Party, and any amendments or supplements thereto, whether heretofore or hereafter incurred, including any revisions, renewals, consolidations and extensions thereof, any of which may be made without notice to the Guarantor. Guarantor has received and reviewed a copy of the Agreement prior to executing this Guarantee.

2. This Guarantee does not limit, modify or cancel any unlimited guarantee that may have been previously given by the Guarantor, if any.

3. Notice of acceptance is waived (and, in Louisiana, all pleas of division and discussion are waived). Presentment, protest, demand, and notice of protest, demand and dishonor of any of the Obligations, and the exercise of possessory, collection or other remedies for the Obligations, are also hereby waived.

4. Without further authorization from or notice to Guarantor, Secured Party, in its sole discretion, may renew, refinance, revise, settle, alter, compromise, accelerate, extend, consolidate or otherwise change the time or manner of payments of any of the Obligations or increase or reduce the rate of interest thereon; or add or release any one or more other Guarantors. No exercise or nonexercise by Secured Party of any right hereby given to it, no dealing by Secured Party with Buyer or any other Guarantor, and no change, impairment, or extension of any right or remedy of Secured Party shall in any way affect the Guarantor's liability hereunder or give Guarantor any recourse against Secured Party. Notice of default in any of the Obligations is expressly waived by Guarantor.

5. With or without notice to Guarantor, and without affecting the liability of Guarantor hereunder, Secured Party may from time to time before, at, or after any default by Buyer, together or separately, (1) accept additional collateral for the Obligations, (2) accept other collateral in exchange or substitution for the collateral than securing the Obligations, (3) obtain a credit bureau report for any Guarantor, and/or (4) surrender or release any collateral securing the Obligations.

6. This is a Guarantee of prompt payment and performance, and not of collection. Secured Party does not have to exercise or exhaust its rights against the Buyer (or any other person or entity obligated with respect to the Obligations) or enforce its rights against any collateral before a claim is made against Guarantor.

7. It is the mutual intention of the parties hereto that the Guarantor shall be bound notwithstanding any claim or defense Buyer may have or raise, and Guarantor waives any defense Buyer may have. Guarantor agrees to pay reasonable attorneys' fees and all costs and other expenses incurred by Secured Party in collecting or compromising any of the Obligations or in enforcing this Guarantee against Guarantor.

8. In the event that any payment by Buyer to Secured Party is held to constitute a preference under the bankruptcy laws, or if for any other reason the Secured Party is required to refund such payment or pay the amount thereof to any other person or party, such payment by Buyer to Secured Party shall not constitute a release of Guarantor from any liability hereunder, but Guarantor agrees to pay such amount to Secured Party on demand.

9. "Secured Party" shall mean CNH Industrial Capital America LLC and CNH Industrial America LLC and all parent, subsidiary and affiliated corporations and all successors and assigns of any of the foregoing. This Guarantee shall bind the respective heirs, executors, administrators, successors, legal representatives and assigns of each Guarantor and shall inure to the benefit of any Secured Party.

10. Each Guarantor shall be jointly and severally (and, in Louisiana, "in solido" with the Buyer) liable to Secured Party.

11. EXCEPT IN GEORGIA OR CALIFORNIA OR WHERE OTHERWISE PROHIBITED BY LAW, EACH GUARANTOR WAIVES ANY AND ALL RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING RELATING TO THE OBLIGATIONS, THIS GUARANTEE, OR ANY OTHER DOCUMENT CONNECTED HEREWITH, OR ANY TRANSACTION ARISING FROM OR CONNECTED TO ANY OF THE FOREGOING  EACH GUARANTOR REPRESENTS THAT THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY GIVEN.

Executed this ___06___ day of ___February___, ___2024___.

X _____

Signature of Guarantor/Guarantor Representative

WILLIAM J MILLENKAMP

Printed Name

Not Applicable

Title (not for individual Guarantor)

EXHIBIT 2 of 6

**EXHIBIT "B"**

**Verified Complaint**
**Page 14**

**CNH CAPITAL**

**RETAIL INSTALLMENT SALE CONTRACT AND SECURITY AGREEMENT**

**FIXED RATE**

020069 / 2793587

FX0000002837011210004A0109

| "Buyer(s)": Legal Name(s) | Address | City | St | Zip Code |
|---|---|---|---|---|
| MILLENKAMP CATTLE, INC. | 471 NORTH 300 WEST | JEROME | IO | 83338-5078 |

| "Seller": Legal Name | Address | City | St | Zip Code |
|---|---|---|---|---|
| BURKS TRACTOR COMPANY,INC. | 3140 KIMBERLY RD. | TWIN FALLS | ID | 83301 |

The undersigned Buyer(s) (collectively called "Buyer") hereby purchases from Seller and Seller hereby sells to Buyer the following goods (the "Equipment") at the Time Sale Price and the terms set forth herein. The Equipment is purchased for commercial ☐ business use ☑ agricultural use.

| NEW*/USED | EQUIPMENT DESCRIPTION | MODEL | SERIAL NUMBER/PIN | "CASH SALE PRICE" |
|---|---|---|---|---|
| | See attached Multiple Unit Addendum | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

*New Equipment is unused equipment, a rental unit or a demonstrator, not previously sold, for which the manufacturer will supply all or a portion of a new equipment warranty; this Equipment may have been manufactured in a year prior to the year of this purchase.

| TRADE-IN EQUIPMENT | MODEL | SERIAL NUMBER/PIN | ALLOWANCE | AMT. OWED | NET TRADE-IN | OWED TO (Address details Page 4) |
|---|---|---|---|---|---|---|
| See attached Trade-In Addendum | | | | | | |
| | | | | | | |

**STATEMENT OF TRANSACTION**

| | | | | |
|---|---|---|---|---|
| 1. Cash Price (Cash Sale Price) | | 1 $ | 999,270.00 | |
| 2. Cash Down Payment | $ | N/A | | |
| Net Trade-In Allowance | $ | 512,104.00 | | |
| Manufacturer's Rebate | $ | N/A | | |
| Total Down Payment | 2 $ | 512,104.00 | | |
| 3. Unpaid Balance of Cash Price (1 minus 2) | 3. $ | 487,166.00 | | |
| 4. Other Charges | | | | |
| (a) Taxes (Not in Cash Price) | $ | N/A | | |
| (b) Official Fees (Filing and Termination) | $ | 5.00 | | |
| (c) UCC Service Fee (Filing and Termination) | $ | 22.00 | | |
| (d) Administrative Fee | $ | N/A | | |
| (e) Physical Damage Insurance | $ | N/A | | |
| (f) Credit Life Insurance | $ | N/A | | |
| (g) Credit Accident & Health Insurance | $ | N/A | | |
| (h) Purchased Protection Plan | $ | N/A | | |
| (i) Other | $ | N/A | | |
| Total Other Charges | 4. $ | 27.00 | | |
| 5. Unpaid Balance (Amount Financed) (3+4) | 5 $ | 487,193.00 | | |
| 6. INTEREST CHARGE | 6. $ | 35,521.55 | | |
| 7. Total of Payments (Time Balance) (5+6) | 7 $ | 522,714.55 | | |
| 8. Deferred Payment Price (Time Sale Price) (1+4+6) | 8. $ | 1,034,818.55 | | |
| 9. The Unpaid Balance (Amount Financed) shall bear an Interest Charge computed at a per annum rate (the INTEREST RATE) equal to | 6.95 % (this is a | | | |
| FIXED RATE contract) | | | | |

Buyer agrees to pay to the Seller the Time Balance as follows:

| NBR OF PAYMENTS | PERIOD OF PAYMENTS | AMOUNT OF EACH PAYMENT | BEGINNING MM/DD/YYYY |
|---|---|---|---|
| 23 | 1 MONTHS | $ 21,779.76 | 03/06/2024 |
| 1 | 1 MONTHS | $ 21,779.61 | 02/06/2026 |

The payments have been calculated to pay in full principal and interest over the term of this Agreement using the Interest Rate in effect on the date of this Agreement, and assuming that all required payments are made in full on the scheduled due dates. The final payment due hereunder shall be recalculated to pay the Obligations in full

Buyer hereby conveys to Seller all rights, title and interest in the Trade-in Equipment free and clear of all encumbrances except as noted above.

☑ If checked, Seller represents and warrants that the above Amt. Owed has been paid.

10. Date Interest Rate begins accruing: 02-06-2024

Buyer agrees to the terms of the above titled agreement (herein the "Agreement"). Buyer has received and examined the Equipment, which is in good operating order and condition and is as described above. Buyer acknowledges receipt of a copy of this Agreement. Buyer agrees to purchase the Equipment described above and pay the Time Balance based on the terms of this Agreement.

**NOTICE TO THE BUYER:**
1 DO NOT SIGN THIS BEFORE YOU READ THE TERMS ON THE FOUR AGREEMENT PAGES (PLUS ANY ADDENDUMS), EVEN IF OTHERWISE ADVISED
2 DO NOT SIGN THIS IF IT CONTAINS ANY BLANK SPACES.
3 YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN. KEEP IT TO PROTECT YOUR LEGAL RIGHTS.
4 BUYER REPRESENTS THAT THE EQUIPMENT IS NOT BEING PURCHASED FOR FAMILY, HOUSEHOLD OR PERSONAL USE.
ADDITIONAL PROVISIONS CONCERNING RIGHTS AND DUTIES OF THE PARTIES ON THE ADDITIONAL PAGES OF THIS AGREEMENT ARE A PART OF THIS AGREEMENT.

| X | MILLENKAMP CATTLE, INC. | | 02-06-2024 |
|---|---|---|---|
| Signature of Buyer/Buyer's Representative | Printed Name | Title (not for an individual Buyer) | Date |

| X | | | |
|---|---|---|---|
| Signature of Buyer/Buyer's Representative | Printed Name | Title (not for an individual Buyer) | Date |

Dealer (hereinafter "Assignor" or "Seller") hereby assigns all of its rights, title and interest in and to the Agreement and the Equipment to CNH Industrial Capital America LLC (hereinafter "Assignee" or "CNH Capital"), under terms also described in the Retail Finance Agreement, Program Procedures, Dealer Handbook or other related documents (collectively hereinafter the "RFA") executed by the Assignor and Assignee. Seller has obtained a signed credit application for this Agreement. The Equipment has been paid in full or will be paid in full with Agreement proceeds pursuant to the terms of the RFA. Assignor waives notice of acceptance of this Assignment and notice of non-payment and non-performance of the Agreement and any other notices required by law and waives any and all setoffs and counterclaims. This Assignment shall become effective upon delivery of the Agreement to Assignee or upon Assignor's payment of the purchase price thereof, whichever occurs first.

Basis of Acceptance: ☐ Nonrecourse ☐ Repurchase ☑ Full Recourse ☑ Other

Other explanation: If the first 12 payments are not paid by the Buyer, then the Agreement becomes Full Recourse

| X | BURKS TRACTOR COMPANY,INC. | 02-06-2024 |
|---|---|---|
| Signature of Seller's Representative | Printed Seller Name | Date |

21004A Rev 01/24 Previous editions may not be used.

Page 1 of 9

EXHIBIT 1 of 6

Case 24-40158-NGH  Doc 126  Filed 04/08/24  Entered 04/08/24 11:54:16  Desc Main
Document  Page 28 of 38



020069 / 2793587        Agreement Provisions



FX000002837011210004A0209

1. **NO WARRANTY. THE EQUIPMENT IS SOLD AS IS AND WITH ALL FAULTS, SUBJECT TO ANY APPLICABLE MANUFACTURER'S EXPRESS, WRITTEN WARRANTY. NEITHER SELLER NOR MANUFACTURER MAKE ANY OTHER REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AND SPECIFICALLY DISCLAIM THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR PARTICULAR PURPOSES.* NEITHER SELLER NOR MANUFACTURER WILL BE LIABLE FOR ANY SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES RESULTING FROM A BREACH OF THE EXPRESS WARRANTY OR ANY IMPLIED WARRANTY IMPOSED BY LAW.***

   *Some states do not allow these limitations and exclusions, and they shall not apply to the extent such limitations or exclusions are not allowed by applicable state law.*

2. **Prepayments.** Buyer may make a partial prepayment of the unpaid Time Balance at any time, but any partial prepayments will not change or defer Buyer's next scheduled payments.

3. **Late Charges/Default Rate/Returned Checks.** Buyer shall pay a late charge on each payment not paid within 10 days after the due date at the highest amount, both as permitted by applicable law. Buyer shall pay interest on the unpaid balance after maturity (as scheduled, by acceleration or otherwise) at the highest rate, as permitted by applicable law. If a check is returned for any reason, Assignee may charge Buyer a returned check processing fee as established by Assignee from time to time not to exceed the maximum permitted under applicable law. Assignee may apply any payment or proceed received toward the Obligations, in its sole discretion regardless of how requested or directed.

4. **Fees.** All parties to this Agreement acknowledge and agree that some fees and charges scheduled under section 4 in the Statement of Transaction may be shared between the Seller and CNH Capital as permitted by law and may result in profit for the Seller and CNH Capital. The parties further agree that Administrative or Other Fees are reasonable consideration for credit determination, handling, review, and approval of the transaction, and are not a document preparation fee nor an official fee. CNH Capital may make UCC related filings and/or termination statements pursuant to this Agreement. CNH Capital reserves its right to assess additional fees and other charges to the Obligations including but not limited to, if fees and other charges increase or other actions are needed to protect its lien upon the Equipment. If any fees and/or other charges scheduled and/or assessed under any part of this Agreement exceed the maximum permitted by applicable law, any excess shall be applied toward a reduction of the principal balance and that shall be the sole and satisfactory remedy under this Agreement.

5. **Extensions and Refinancing.** If Assignee extends, defers or refinances any payments due under this Agreement, Assignee may, at its option, increase the Interest Rate or Interest Charge (herein collectively referred to as the Interest Rate).

6. **Security Interests/Cross Collateralization.** Buyer hereby grants to Seller and its successors and assigns (including Assignee) a first priority purchase money security interest in the Equipment, and in all improvements, parts and accessories belonging to the Equipment, and all substitutions, replacements, products, proceeds (including any insurance proceeds) thereof and premium refunds, refunds of any other charges hereunder and all accessions related to the Equipment (the Equipment and such items are collectively referred to herein as the "Collateral"), to secure payment and performance of all existing and future obligations of Buyer under this Agreement or any other agreement between Buyer and Seller, between Buyer and Assignee or any affiliate of Assignee, or where Buyer, under another agreement in favor of Seller or Assignee, is a guarantor or obligor (the "Obligations"). Loss of or damage to the Equipment shall not release Buyer from any of the Obligations. Upon request, Buyer shall take any action reasonably deemed necessary by Assignee to protect and enforce Assignee's interest in the Collateral or rights under this Agreement. Assignee or Seller is authorized to examine the Collateral wherever located at any reasonable time or times. Buyer authorizes Assignee to insert in this Agreement, or amend any financing statement or title registration documentation to reflect the serial/PIN and/or model numbers of the Equipment if unknown at the time this Agreement is executed and to correct any errors in such numbers or any other errors in the description of the Equipment.

7. **Assignment.** Seller hereby assigns this Agreement, and any guarantee(s) ("Guarantee") hereof (together, "Assignment") to Assignee. Buyer acknowledges that Seller has the right to assign this Agreement and such Guarantee, that all rights and benefits but no obligations (if any) of Seller under this Agreement may be exercised by Assignee and that no obligations (if any) of Seller pass to Assignee. Buyer shall make all payments due under this Agreement directly to Assignee. This Agreement shall be binding on and inure to the benefit of Buyer, Seller and Assignee and their respective heirs, personal representatives, successors and assigns, provided however, that Buyer may not assign its interest in the Collateral, rights, nor its obligations under this Agreement to any person without Assignee's prior written consent. CNH Capital may pay a fee to the Assignor as consideration for the Assignor's assignment of this Agreement to CNH Capital.

8. **Notification of Change in Residence, Principal Office, or Organizational Form.** If Buyer changes (as applicable): (a) its state of principal residence; or (b) the state in which its chief executive office is located; or (c) the state in which it is organized, or (d) its form of organization (such as from an individual to a corporation); or (e) its name, as printed on a State filed registration document or individual name, as printed on a valid driver's license, then Buyer will notify Assignee in writing promptly, but in no event more than 30 days after such change.

9. **Waiver of Defenses Against Assignee; Indemnification.** Buyer will not assert against Assignee any claim or defense which Buyer may have against Seller, the manufacturer of the Equipment, or any other person. Buyer agrees that its obligation to remit payments will not be subject to, and it will not make any claim against Assignee for breach of any representation, warranty or condition with respect to the Equipment and that its obligation to pay Assignee all amounts under this Agreement is absolute and unconditional without abatement, reduction, set-off, counterclaim or interruption for any reason whatsoever, including any dispute which now or hereafter arises between Buyer and Seller or any other person. Time is of the essence. Buyer shall indemnify and hold harmless Seller, Assignee and their respective officers, directors, employees and agents from and against any damage, loss, theft or destruction of the Equipment or any part thereof, and from and against any and all loss, damage, injuries, claims, demands, costs and expenses (including without limitation reasonable attorneys' fees and expenses) of any kind and nature, arising out of or connected with this Agreement or the use, condition (including without limitation, all defects whether or not discoverable by Buyer, Seller or Assignee) or operation of the Equipment or any part thereof. Buyer shall promptly notify Seller and Assignee in writing of any loss, damage, theft, destruction, injury, claim, demand, cost or expense related to this Agreement or the Equipment of which Buyer has knowledge.

10. **Buyer's Covenants.** Buyer shall. (a) keep the Equipment in the state listed on page 1 of this Agreement and not remove the Equipment from such location, except temporarily in connection with its ordinary use or repair, unless Assignee consents in writing; (b) maintain the Equipment in good condition and repair and not permit its intended function or value to be impaired; (c) keep the Collateral free of all liens, encumbrances and security interests of all persons other than Seller and Assignee; (d) defend the Collateral against all claims and legal proceedings by persons other than Assignee; (e) pay and discharge when due all taxes, fees, levies and other charges upon the Collateral (including all personal property and ad valorem taxes), (f) pay when due all taxes arising from the purchase of the Equipment under this Agreement, excluding any taxes based upon Seller's net income; (g) use the Equipment solely in the conduct of Buyer's business; (h) ensure the Equipment will be used solely within the intended uses of the manufacturer and that manufacturer warranty remains valid; (i) not sell, lease or otherwise dispose of the Equipment or permit the Equipment to become an accession to other goods or a fixture; and (j) not permit the Equipment to be used in violation of any law, regulation or policy of insurance; and (k) strictly follow the terms on page 1 of this Agreement; (l) perform (at Buyer's expense) all maintenance and repairs necessary to keep the Equipment in as good a condition as when delivered to Buyer, reasonable wear excepted; (m) not permit the Equipment to be used by, or to be in the possession of, anyone other than Buyer or Buyer's employees. Buyer represents and warrants that: (i) each individual executing this Agreement authorized by or on behalf of Buyer has the requisite power and authority to execute this Agreement and all related documents, (ii) Buyer is fully authorized to perform its obligations and consummate the transactions contemplated under this Agreement and related documents; (iii) the execution and delivery of this Agreement and all related documents and the consummation of the transactions under this Agreement have been duly authorized by Buyer; and (iv) this Agreement and all related documents constitute valid and legally binding obligations of Buyer, enforceable against Buyer in accordance with their respective terms.

EXHIBIT 1 of 6



020069 / 2793567

**Agreement Provisions**



F%00000283701121004A0309

**11. Insurance.** Buyer shall keep Assignee's interests in the Equipment insured against fire, theft, physical damage and other hazards under policies listing Assignee as Lender's loss payee or as an additional insured, with such provisions, for such amounts (but not less than the unpaid balance outstanding under this Agreement) and by such insurers and terms as shall be satisfactory to Assignee from time to time, and shall furnish to Assignee evidence of such insurance satisfactory to Assignee. Such insurance shall provide at least 30 days' written notice of cancellation, lapse or expiration to Assignee. Buyer assigns (and directs any insurer to pay) to Assignee Buyer's interest in the proceeds of any and all insurance related to the Equipment and any premium refund, and Assignee may, at its option, apply such proceeds and refunds to any unpaid balance of the Obligations, whether or not due, and/or to repair or restore the Equipment. Buyer must make all payments due under this Agreement whether or not the Equipment is insured or underinsured. Assignee is authorized, in the name of Assignee or otherwise, to make, adjust and/or settle claims under any insurance on the Equipment, or cancel the same after the occurrence of an event of default, or set off amounts owed Assignee against any rebates, credits or refunds due Buyer and/or any guarantor. If Buyer purchased physical damage insurance that is financed under this Agreement, Buyer hereby requests and authorizes Seller (provided Seller is properly licensed to do so) or its designee: (a) to arrange physical damage insurance for the benefit of Seller or Assignee and Buyer that covers physical damage to the Equipment, (b) to replace or otherwise modify such insurance as Seller deems appropriate; and (c) to be Buyer's attorney-in-fact to make claim for, receive payment of and execute, endorse and negotiate all documents, checks or drafts received in payment of loss, damage or premium refunds under any insurance. This Agreement includes and hereby incorporates by reference any Insurance Addendum signed in connection with this Agreement.

STATEMENT TO BUYER: THE PHYSICAL DAMAGE INSURANCE PURCHASED UNDER THE TERMS OF THIS AGREEMENT COVERS ONLY LOSS OF OR DAMAGE TO THE EQUIPMENT. LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED AS PART OF THE PHYSICAL DAMAGE INSURANCE. BUYER UNDERSTANDS THAT IF INSURANCE IS FINANCED UNDER THIS AGREEMENT, PREPAYMENT OF BUYER'S OBLIGATIONS OR TERMINATION OF THIS AGREEMENT WILL RESULT IN CANCELLATION OF INSURANCE COVERAGE, UNLESS OTHERWISE EXPLICITLY AGREED TO IN WRITING BY ASSIGNEE.

**12. Modifications and Waivers.** This Agreement sets forth the entire understanding among Seller, Assignee and Buyer. No modification, amendment or extension of this Agreement and no waiver of any provision of this Agreement shall be valid unless in writing and signed by the parties and a waiver of any default hereunder by Assignee shall not constitute a waiver of any other prior or subsequent default, except that Buyer authorizes Assignee to insert in this Agreement the serial number/PIN and/or model number of any Equipment if this information is unknown when this Agreement is executed and to correct any errors in such numbers or any other patent errors in the description of the Equipment.

**13. Authority of Assignee to Perform for Buyer.** If Buyer fails to perform any of Buyer's duties set forth in this Agreement (including, without limitation, the purchase of insurance), Assignee may at its option, in Buyer's name or otherwise, take any such action, including, without limitation, signing Buyer's name or paying any amount so required, and all costs and expenses incurred by Assignee in connection therewith shall form part of the Obligations and shall be payable by Buyer upon demand with interest from the date of payment by Assignee at the highest rate permitted by applicable law.

**14. Default/Cross Default.** Buyer shall be in default under this Agreement, and any other agreement with or assigned to Assignee, if any of the following occurs (each, an "event of default"): (a) Buyer fails to pay when due any of the Obligations, or to perform any covenant or other obligation of Buyer under this Agreement or any other agreement with or assigned to Assignee; (b) Buyer or any guarantor dies, ceases to exist, becomes insolvent or the subject of bankruptcy, insolvency or liquidation proceedings, attempts to or does assign this Agreement or attempts to or does remove, sell, transfer, further encumber, part with possession of or sublet any Equipment; (c) any warranty or representation made by Buyer or any guarantor to induce Seller or Assignee to extend credit to Buyer, under this Agreement or otherwise, is false in any material respect when made; (d) Buyer fails to maintain insurance required hereunder or fails to comply with the requirements of any such insurance; (e) any other event occurs that causes Assignee, in good faith, to consider that payment or performance of the Obligations is impaired or that the Equipment is at risk, (f) the Equipment is impaired or confiscated by any federal, state or local governmental authority; (g) Buyer fails to produce Collateral for inspection within 10 days, upon demand; or (h) Buyer breaches any of the other terms of this Agreement or any other agreement with or assigned to Assignee

**15. Expenses.** To the extent not prohibited by law, Buyer shall reimburse Seller or Assignee for any expense incurred by Seller or Assignee in protecting, defending or enforcing their rights under this Agreement, including, without limitation, reasonable attorneys' fees and legal expenses and all expenses of taking possession, transporting, holding, repairing, refurbishing, preparing for disposition and disposing of the Collateral, and all expenses and costs incurred in collecting the Obligations, including collection agency fees based on a maximum of 25% of the Obligations, and all shall be part of the Obligations.

**16. Conflict with Law.** Any provision of this Agreement prohibited by applicable law shall be ineffective to the extent of the prohibition without invalidating the remaining portions of this Agreement. The validity, construction and enforcement of this Agreement shall be governed by the laws of the State of the Seller (without regard to conflict of law principles of such State). All terms not otherwise defined have the meanings assigned to them by the applicable Uniform Commercial Code

**17. Authorization to Execute and File Financing Statements and Lien Documents.** Buyer hereby authorizes Assignee or its designee to execute and file financing statements, and any motor vehicle title, registration and lien notification documentation, and any amendments thereto, on behalf and in the name of Buyer to evidence the security interest in the Collateral granted pursuant to this Agreement. Buyer hereby irrevocably appoints Assignee or its designee as Buyer's agent and attorney-in-fact to sign such instruments on Buyer's behalf and to file them.

**18. Time Price Calculations.** If this is a variable rate contract, the Prime Rate for a given calendar month shall be the rate designated as the "Prime Rate" published in The Wall Street Journal on the twentieth day of the prior calendar month (or on the next day published if not published on the twentieth day). If The Wall Street Journal ceases publication permanently or no longer publishes a "Prime Rate", the Prime Rate shall mean the prime loan rate of any federally chartered bank selected by Assignee. For all contracts the Interest Rate shall never be less than 0%. Interest Rate shall be calculated using a daily rate determined by dividing the annual rate by 365. Buyer shall make all payments in lawful money of the United States of America.

**19. Remedies.** Upon the occurrence of any event of default, Seller or Assignee shall have all rights and remedies provided by the Uniform Commercial Code or any other applicable law and Seller or Assignee may, except where prohibited by law, at its option: (i) declare all Obligations immediately due and payable without notice or demand; (ii) enter onto any premises where the Collateral may be located, take possession of all Collateral, without notice or hearing, and, Buyer or any guarantor, also expressly waives any right to notice or a prior hearing or to require Assignee to post any bond; (iii) render the Collateral unusable; (iv) require Buyer to assemble all Collateral and make it available to Assignee at any convenient place designated by Assignee within 10 days after notice from Assignee; (v) sell (including at wholesale) or otherwise dispose of all Collateral at public or private sale for cash or on credit terms, without notice; and if notice is required by law, ten (10) days' notice to Buyer shall be deemed reasonable notice; and/or (vi) obtain a consumer credit bureau report upon any Buyer or any guarantor. All rights and remedies may be exercised by Seller or Assignee either separately or in combination and any action taken by Assignee to recover payment from Buyer of the Obligations shall not limit Assignee's rights with respect to all Collateral. Assignee may apply all proceeds of realization of the Collateral to such part or parts of the Obligations as Assignee may decide. If there is a deficiency, Buyer will pay the amount of the deficiency upon demand. Buyer waives notice of dishonor, presentment and demand as to this Agreement.

EXHIBIT 1 of 6





020069    / 2793587                     Agreement Provisions                     F%C00002 83701 12 1004A 0409

**20. Miscellaneous.** In the event that this contract is determined by a court of competent jurisdiction to be characterized as a loan or forbearance agreement, and not a sale, despite the terms and conditions found in this contract, then all parties agree that any interest charges computed and assessed in this contract that are in excess of the maximum allowed interest charges allowed by law shall be applied as a reduction to the principal balance owed on this contract only, and this shall be the agreed upon and satisfactory remedy to all parties. By providing any address, email address or telephone number, including a mobile phone number, either now or in the future to Seller, Assignee, any of Assignee's affiliates or any debt collectors retained by Assignee, Buyer agrees that any of the above may contact Buyer using that address or number, including contact through calls or texts using an automatic dialing and announcing device and prerecorded calls, and that such calls are not "unsolicited" under state or federal law. Any attempted revocation of this consent to contact, if allowable by law, must be made in writing. Buyer acknowledges and agrees that CNH Capital and its third party service providers can access and use telematics data and other information regarding location, maintenance and operation of the Equipment for any lawful purpose, including without limitation, to locate and repossess the Equipment.  See https://www.cnhindustrialcapital.com/en_us/Pages/Privacy.aspx for additional details  If a court finds that any part of this Agreement to be invalid or unenforceable, the remainder of this Agreement will remain in effect. All of Assignee's rights shall remain in effect after the expiration or termination of this Agreement.  If more than one Buyer is named in the Agreement, the liability of each shall be joint and several. All notices required or permitted hereunder shall be in writing and shall be deemed adequate if sent to the first Buyer on page 1 of the Agreement. The captions and headings of the sections of this Agreement are for convenience only and are not to be used to interpret or define the provisions hereof. Restrictive endorsements on checks or other forms of payment that Buyer sends to Assignee will not change or reduce Buyer's obligations to Assignee. Assignee will not lose any rights if Assignee accepts late or partial payments or delays enforcing its rights under this Agreement. South Dakota Residents'  If there are any improprieties in making the loan or in loan practices, you may contact the South Dakota Division of Banking:  South Dakota Division of Banking, 1714 Lincoln Ave, Suite 2, Pierre, SD 57601, phone number: (605) 773-3421.

**21. WAIVER OF JURY TRIAL.**  EXCEPT IN GEORGIA OR CALIFORNIA OR WHERE OTHERWISE PROHIBITED BY LAW, EACH BUYER, SELLER AND CNH CAPITAL WAIVES ANY AND ALL RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING RELATING TO THE OBLIGATIONS, THIS AGREEMENT, OR ANY OTHER DOCUMENT CONNECTED HEREWITH, OR ANY TRANSACTION ARISING FROM OR CONNECTED TO ANY OF THE FOREGOING  EACH BUYER, SELLER AND CNH CAPITAL REPRESENTS THAT THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY GIVEN.

**22. Electronic Contracting, Signature Acknowledgment, Future Notices.**  Buyer agrees that (i) this Agreement is an electronic agreement executed by Buyer using Buyer's electronic signature or that Assignee may convert this Agreement into an electronic agreement; (ii) Buyer's electronic signature signifies Buyer's intent to enter into this Agreement and that this Agreement shall be a legally valid and enforceable Agreement in accordance with its terms to the same extent as if Buyer had executed this Agreement using Buyer's written signature and (iii) the authoritative copy of this Agreement ("Authoritative Copy") shall be that electronic copy that resides in a document management system designated by Assignee for the storage and authoritative copies of electronic records, which shall be deemed held by us in the ordinary course of business.  Notwithstanding the forgoing, if the Authoritative Copy is converted by printing a paper copy which is marked by Assignee as the original (the "Paper Contract"), then Buyer acknowledges and agrees that (1) your signing of this Agreement with your electronic signature also constitutes issuance and delivery of such Paper Contract, (2) your electronic signature associated with this Agreement, when affixed to the Paper Contract, constitutes your legally valid and binding signature on the Paper Contract and (3) subsequent to such conversion, Buyer's duties and Obligations will be evidenced by the Paper Contract alone.  By providing your e-mail address and electing to execute this Agreement electronically, Buyer agrees that all future notices, statements and communications relating to this Agreement shall be delivered to the Buyer via e-mail transmission to the e-mail address provided to Assignee by the Buyer.  It is the Buyer's duty to provide any changes to Buyer's e-mail address to Assignee so that future communications can reach Buyer in a timely manner.

EXHIBIT 1 of 6





FX0000028370112100BA0509

020069 / 2793587

## MULTIPLE UNIT ADDENDUM

This Multiple Unit Addendum is hereby incorporated into the commercial Retail Installment Contract and Security Agreement or Lease Agreement dated
February 06 , 2024 with Seller BURKS TRACTOR COMPANY,INC.
herein the ("Agreement"), and this addendum equipment list is made a part of the Equipment, as defined in the Agreement. Buyer or Lessee acknowledges receipt of this Multiple Unit Addendum at the time it is executed, along with a copy of the Agreement and all its pages and agrees to all the Agreement terms.

| # | New or Used | Equipment Description | Model | Serial Number/PIN | Hours | Maximum Annual Usage | Excess Usage Rate | Cash Price |
|---|---|---|---|---|---|---|---|---|
| 1 | NEW | Kubota Tractor | L3902 | 11862 | | N/A | N/A | $ 33,850.00 |
| 2 | NEW | Kubota Tractor | L3902 | 11873 | | N/A | N/A | $ 33,850.00 |
| 3 | NEW | Kubota Tractor | L3902 | 11876 | | N/A | N/A | $ 33,850.00 |
| 4 | NEW | Kubota Tractor | L3902 | 11877 | | N/A | N/A | $ 33,850.00 |
| 5 | NEW | Kubota Tractor | L3902 | 11888 | | N/A | N/A | $ 33,850.00 |
| 6 | NEW | Kubota Tractor | L3902 | 11897 | | N/A | N/A | $ 33,850.00 |
| 7 | NEW | Kubota Tractor | L3902 | 11901 | | N/A | N/A | $ 33,850.00 |
| 8 | NEW | Kubota Tractor | L3902 | 11902 | | N/A | N/A | $ 33,850.00 |
| 9 | NEW | Kubota Tractor | L3902 | 11903 | | N/A | N/A | $ 33,850.00 |
| 10 | NEW | Kubota Tractor | L3902 | 11904 | | N/A | N/A | $ 33,850.00 |
| 11 | NEW | Kubota Tractor | L3902 | 11907 | | N/A | N/A | $ 33,850.00 |
| 12 | NEW | Kubota Tractor | L4701 | 80496 | | N/A | N/A | $ 37,630.00 |
| 13 | NEW | Kubota Tractor | L4701 | 80712 | | N/A | N/A | $ 37,630.00 |
| 14 | NEW | Kubota Tractor | L4701 | 79332 | | N/A | N/A | $ 37,630.00 |
| 15 | NEW | Kubota Tractor | L4701 | 79344 | | N/A | N/A | $ 37,630.00 |

Executed this 06 day of February , 2024 .

X_____
Signature of Buyer/Buyer's Representative

MILLENKAMP CATTLE, INC.
Printed Name

_____
Title (not for an individual Buyer)

X_____
Signature of Seller's Representative

BURKS TRACTOR COMPANY,INC.
Printed Seller Name

21008A Rev. 01/24 Previous editions may not be used

Page 5 of 9

EXHIBIT 1 of 6





020069 / 2793587

## MULTIPLE UNIT ADDENDUM

This Multiple Unit Addendum is hereby incorporated into the commercial Retail Installment Contract and Security Agreement or Lease Agreement dated ___February 06___ ___2024___ with Seller ___BURKS TRACTOR COMPANY,INC.___ _____ herein the ("Agreement"), and this addendum equipment list is made a part of the Equipment, as defined in the Agreement. Buyer or Lessee acknowledges receipt of this Multiple Unit Addendum at the time it is executed, along with a copy of the Agreement and all its pages and agrees to all the Agreement terms.

| # | New or Used | Equipment Description | Model | Serial Number/PIN | Hours | Maximum Annual Usage | Excess Usage Rate | Cash Price |
|----|------|----------------|-------|-------|---|------|------|---------------|
| 16 | NEW | Kubota Tractor | L4701 | 79519 | | N/A | N/A | $ 37,630.00 |
| 17 | NEW | Kubota Tractor | L4701 | 79654 | | N/A | N/A | $ 37,630.00 |
| 18 | NEW | Kubota Tractor | L4701 | 79694 | | N/A | N/A | $ 37,630.00 |
| 19 | NEW | Kubota Tractor | M5091 | 58881 | | N/A | N/A | $ 51,930.00 |
| 20 | NEW | Kubota Tractor | M5091 | 58884 | | N/A | N/A | $ 51,930.00 |
| 21 | NEW | Kubota Tractor | M5091 | 58885 | | N/A | N/A | $ 51,930.00 |
| 22 | NEW | Kubota Tractor | M5091 | 58905 | | N/A | N/A | $ 51,930.00 |
| 23 | NEW | Kubota Tractor | M5091 | 58908 | | N/A | N/A | $ 51,930.00 |
| 24 | NEW | Kubota Tractor | M5091 | 58909 | | N/A | N/A | $ 51,930.00 |
| 25 | NEW | Kubota Tractor | M5091 | 58910 | | N/A | N/A | $ 51,930.00 |

Executed this __06__ day of __February__, __2024__.

X _____    MILLENKAMP CATTLE, INC.
Signature of Buyer/Buyer's Representative    Printed Name

_____
Title (not for an Individual Buyer)

X _____    BURKS TRACTOR COMPANY,INC.
Signature of Seller's Representative    Printed Seller Name

21008A    Rev. 01/24 Previous editions may not be used    Page 6 of 9

EXHIBIT 1 of 6



FX0000002837011211142A0709

020069 / 2793587

# MULTIPLE TRADE-IN UNIT ADDENDUM

This Multiple Trade-In Unit Addendum is hereby incorporated into the commercial Retail Installment Contract and Security Agreement or Lease Agreement dated February 06 2024 with Seller BURKS TRACTOR COMPANY, INC. herein the ("Agreement"). Buyer or Lessee acknowledges receipt of this Multiple Trade-In Unit Addendum at the time it is executed, along with a copy of the Agreement and all its pages.

| # | Equipment Description | | Model | Serial Number/PIN | Allowance | Amt. Owed | Net Trade-In | Owed To |
|---|---|---|---|---|---|---|---|---|
| 1 | Kubota | Tractor 61-99 PTO HP | M5091 | 56581 | $ 28,560.00 | $ 0.00 | $ 28,560.00 | |
| 2 | Kubota | Tractor 61-99 PTO HP | M5091 | 56290 | $ 28,110.00 | $ 0.00 | $ 28,110.00 | |
| 3 | Kubota | Tractor 61-99 PTO HP | M5091 | 56236 | $ 28,752.00 | $ 0.00 | $ 28,752.00 | |
| 4 | Kubota | Tractor 61-99 PTO HP | M5091 | 56232 | $ 35,745.00 | $ 0.00 | $ 35,745.00 | |
| 5 | Kubota | Tractor 61-99 PTO HP | M5091 | 55770 | $ 25,198.00 | $ 0.00 | $ 25,198.00 | |
| 6 | Kubota | Tractor 61-99 PTO HP | M5091 | 55635 | $ 28,220.00 | $ 0.00 | $ 28,220.00 | |
| 7 | Kubota | Tractor 61-99 PTO HP | M5091 | 56683 | $ 28,535.00 | $ 0.00 | $ 28,535.00 | |
| 8 | Kubota | Tractor 60 PTO HP and below | L4701 | 69824 | $ 21,648.00 | $ 0.00 | $ 21,648.00 | |
| 9 | Kubota | Tractor 60 PTO HP and below | L4701 | 70033 | $ 21,000.00 | $ 0.00 | $ 21,000.00 | |
| 10 | Kubota | Tractor 60 PTO HP and below | L4701 | 69153 | $ 19,760.00 | $ 0.00 | $ 19,760.00 | |
| 11 | Kubota | Tractor 60 PTO HP and below | L4701 | 68844 | $ 17,356.00 | $ 0.00 | $ 17,356.00 | |
| 12 | Kubota | Tractor 60 PTO HP and below | L4701 | 68830 | $ 18,416.00 | $ 0.00 | $ 18,416.00 | |
| 13 | Kubota | Tractor 60 PTO HP and below | L4701 | 68812 | $ 21,000.00 | $ 0.00 | $ 21,000.00 | |
| 14 | Kubota | Tractor 60 PTO HP and below | L4701 | 68834 | $ 14,956.00 | $ 0.00 | $ 14,956.00 | |
| 15 | Kubota | Tractor 60 PTO HP and below | L3901 | 84853 | $ 14,816.00 | $ 0.00 | $ 14,816.00 | |

Buyer hereby conveys to Seller all rights, title and interest in the Trade-In Equipment free and clear of all encumbrances except as noted above.

✓ If checked, Seller represents and warrants that the above Amt. Owed has been paid.

Executed this 06 day of February , 2024 .

X _____    MILLENKAMP CATTLE, INC.
Signature of Buyer/Buyer's Representative    Printed Name

_____
Title (not for an individual Buyer)

X _____    BURKS TRACTOR COMPANY, INC.
Signature of Seller's Representative    Printed Seller Name

21142A    Rev 01/24 Previous editions may not be used.    Page 7 of 9

EXHIBIT 1 of 6



**CNH | CAPITAL**

020069   / 2793587

F%00000283701121142A0809

## MULTIPLE TRADE-IN UNIT ADDENDUM

This Multiple Trade-In Unit Addendum is hereby incorporated into the commercial Retail installment Contract and Security Agreement or Lease Agreement dated
February 06     2024     with Seller BURKS TRACTOR COMPANY,INC                                    herein the ("Agreement").  Buyer or Lessee
acknowledges receipt of this Multiple Trade-In Unit Addendum at the time it is executed, along with a copy of the Agreement and all its pages.

| # | Equipment Description | | Model | Serial Number/PIN | Allowance | Amt. Owed | Net Trade-In | Owed To |
|---|---|---|---|---|---|---|---|---|
| 16 | Kubota | Tractor 60 PTO HP and below | L3901 | 84850 | $ 14,964.00 | $ 0.00 | $ 14,964.00 | |
| 17 | Kubota | Tractor 60 PTO HP and below | L3901 | 84829 | $ 22,080.00 | $ 0.00 | $ 22,080.00 | |
| 18 | Kubota | Tractor 60 PTO HP and below | L3901 | 90036 | $ 16,012.00 | $ 0.00 | $ 16,012.00 | |
| 19 | Kubota | Tractor 60 PTO HP and below | L3901 | 90026 | $ 14,412.00 | $ 0.00 | $ 14,412.00 | |
| 20 | Kubota | Tractor 60 PTO HP and below | L3901 | 86244 | $ 22,904.00 | $ 0.00 | $ 22,904.00 | |
| 21 | Kubota | Tractor 60 PTO HP and below | L3901 | 84858 | $ 16,300.00 | $ 0.00 | $ 16,300.00 | |
| 22 | Kubota | Tractor 60 PTO HP and below | L3901 | 89939 | $ 16,360.00 | $ 0.00 | $ 16,360.00 | |
| 23 | Kubota | Tractor 60 PTO HP and below | L3901 | 89908 | $ 15,000.00 | $ 0.00 | $ 15,000.00 | |
| 24 | Kubota | Tractor 60 PTO HP and below | L3901 | 89904 | $ 15,000.00 | $ 0.00 | $ 15,000.00 | |
| 25 | Kubota | Tractor 60 PTO HP and below | L3901 | 86242 | $ 15,000.00 | $ 0.00 | $ 15,000.00 | |

Buyer hereby conveys to Seller all rights, title and interest in the Trade-In Equipment free and clear of all encumbrances except as noted above.
☑ If checked, Seller represents and warrents that the above Amt. Owed has been paid.

Executed this 06   day of February        2024   .

X _____     MILLENKAMP CATTLE, INC.          _____
Signature of Buyer/Buyer's Representative     Printed Name                          Title (not for an individual Buyer)

X _____     BURKS TRACTOR COMPANY,INC.
Signature of Seller's Representative          Printed Seller Name

21142A     Rev. 01/24  Previous editions may not be used                                    Page 8 of 9

EXHIBIT 1 of 6



**CAPITAL**

020069 / 2793587

F%000002837011121030A0909

## GUARANTEE

In consideration of the extension of credit as referenced by the application number above, and to induce the Secured Party, as hereinafter defined, to extend credit on the agreement dated _____February 06_____ , _2024_ , (herein "Agreement") to:

MILLENKAMP CATTLE, INC

of 471 NORTH 300 WEST, JEROME, ID 83338-5078

(collectively the "Buyer"), and for other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, each of the executing parties below (collectively the "Guarantor", whether one or more) makes this guarantee ("Guarantee") in favor of the Secured Party.

1. The Guarantor, pursuant to the terms of this Guarantee, unconditionally and irrevocably guarantees the payment, performance and complete fulfillment of all Obligations, as defined in the Agreement described above, of the Buyer to Secured Party, and any amendments or supplements thereto, whether heretofore or hereafter incurred, including any revisions, renewals, consolidations and extensions thereof, any of which may be made without notice to the Guarantor. Guarantor has received and reviewed a copy of the Agreement prior to executing this Guarantee.

2. This Guarantee does not limit, modify or cancel any unlimited guarantee that may have been previously given by the Guarantor, if any.

3. Notice of acceptance is waived (and, in Louisiana, all pleas of division and discussion are waived). Presentment, protest, demand, and notice of protest, demand and dishonor of any of the Obligations, and the exercise of possessory, collection or other remedies for the Obligations, are also hereby waived

4. Without further authorization from or notice to Guarantor, Secured Party, in its sole discretion, may renew, refinance, revise, settle, alter, compromise, accelerate, extend, consolidate or otherwise change the time or manner of payments of any of the Obligations or increase or reduce the rate of interest thereon, or add or release any one or more other Guarantors. No exercise or nonexercise by Secured Party of any right hereby given to it, no dealing by Secured Party with Buyer or any other Guarantor, and no change, impairment, or extension of any right or remedy of Secured Party shall in any way affect the Guarantor's liability hereunder or give Guarantor any recourse against Secured Party. Notice of default in any of the Obligations is expressly waived by Guarantor.

5. With or without notice to Guarantor, and without affecting the liability of Guarantor hereunder, Secured Party may from time to time before, at, or after any default by Buyer, together or separately, (1) accept additional collateral for the Obligations, (2) accept other collateral in exchange or substitution for the collateral then securing the Obligations, (3) obtain a credit bureau report for any Guarantor, and/or (4) surrender or release any collateral securing the Obligations

6. This is a Guarantee of prompt payment and performance, and not of collection. Secured Party does not have to exercise or exhaust its rights against the Buyer (or any other person or entity obligated with respect to the Obligations) or enforce its rights against any collateral before a claim is made against Guarantor.

7. It is the mutual intention of the parties hereto that the Guarantor shall be bound notwithstanding any claim or defense Buyer may have or raise, and Guarantor waives any defense Buyer may have. Guarantor agrees to pay reasonable attorneys' fees and all costs and other expenses incurred by Secured Party in collecting or compromising any of the Obligations or in enforcing this Guarantee against Guarantor.

8. In the event that any payment by Buyer to Secured Party is held to constitute a preference under the bankruptcy laws, or if for any other reason the Secured Party is required to refund such payment or pay the amount thereof to any other person or party, such payment by Buyer to Secured Party shall not constitute a release of Guarantor from any liability hereunder, but Guarantor agrees to pay such amount to Secured Party on demand.

9. "Secured Party" shall mean CNH Industrial Capital America LLC and CNH Industrial America LLC and all parent, subsidiary and affiliated corporations and all successors and assigns of any of the foregoing This Guarantee shall bind the respective heirs, executors, administrators, successors, legal representatives and assigns of each Guarantor and shall inure to the benefit of any Secured Party

10. Each Guarantor shall be jointly and severally (and, in Louisiana, "in solido" with the Buyer) liable to Secured Party.

11. EXCEPT IN GEORGIA OR CALIFORNIA OR WHERE OTHERWISE PROHIBITED BY LAW, EACH GUARANTOR WAIVES ANY AND ALL RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING RELATING TO THE OBLIGATIONS, THIS GUARANTEE, OR ANY OTHER DOCUMENT CONNECTED HEREWITH, OR ANY TRANSACTION ARISING FROM OR CONNECTED TO ANY OF THE FOREGOING EACH GUARANTOR REPRESENTS THAT THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY GIVEN.

Executed this _06_ day of _February_ , _2024_

X _[signature]_

Signature of Guarantor/Guarantor Representative

WILLIAM J MILLENKAMP

Printed Name

Not Applicable

Title (not for individual Guarantor)

21030A    Rev. 01/24 Previous editions may not be used

Page 9 of 9

EXHIBIT 1 of 6



**CNH CAPITAL**

**ADDENDUM**
**TO EQUIPMENT OPERATING LEASE AGREEMENT**

This Addendum to Equipment Operating Lease Agreement dated February 6th, 2024 (the "Addendum") supplements that certain Equipment Operating Lease Agreement dated February 6th, 2024 (hereafter the "Lease") between Millenkamp Cattle, Inc. (hereafter the "Lessee") and CNH Industrial Capital America LLC (hereafter the "CNH"). By signing this Addendum, the Lessee and CNH (collectively, the "Parties") agree to amend the terms and conditions of the Lease as set forth herein. The Addendum does not otherwise modify or supersede the provisions of the Lease beyond the terms contained herein. Unless otherwise specified, capitalized terms in this Addendum have the same meaning as defined in the Assurant Agreements, and those definitions are incorporated herein by reference.

NOW, THEREFORE, in consideration of the mutual promises and agreements set forth in this Addendum, the Parties agree as follows:

1. **Representations, Warranties and Affirmative Covenants.** For so long as any Obligations remain unpaid and/or the Lease remains in effect, Lessee represents, warrants and covenants to and with CNH:

    (a) <u>Notices of Claims and Litigation.</u> Promptly provide written notice of: (1) all material adverse changes in Lessee's financial condition, and (2) all existing and all threatened litigation, claims, investigations, administrative proceedings or similar actions affecting Lessee or any Guarantor which could materially affect the financial condition of Lessee or the financial condition of any Guarantor.

    (b) <u>Financial Records.</u> Maintain its books and records in accordance with GAAP reasonably acceptable to CNH, applied on a consistent basis, and permit CNH to examine and audit Lessee's books and records at reasonable times.

    (c) <u>Financial Reporting.</u> Furnish CNH with financial statements audited by a firm of independent certified public accountants selected by Lessee and reasonably acceptable to CNH. If requested by CNH, Lessee shall provide consolidating balance sheets and statements of the entities included in consolidated financial statements.

2. **Entire Addendum.** This Addendum shall be governed by the laws of the State of Wisconsin and shall become effective upon its acceptance by CNH. This Addendum shall not be deemed or construed to be modified, amended, rescinded, cancelled or waived, in whole or in part, unless in writing and signed by the parties hereto.

**Millenkamp Cattle, Inc.**

By: _____
Name: _____
Its: _____

**CNH Industrial Capital America LLC**

By: _____
Name: _____
Its: _____

EXHIBIT 1 of 6

**ADDENDUM
TO RETAIL INSTALLMENT CONTRACT**

This Addendum to Retail Installment Contract dated February 6th, 2024 (the "Addendum") supplements that certain Retail Installment Contract and Security Agreement dated February 6th, 2024 (hereafter the "Loan Agreement") between Millenkamp Cattle, Inc. (hereafter the "Borrower") and CNH Industrial Capital America LLC (hereafter the "CNH"). By signing this Addendum, the Borrower and CNH (collectively, the "Parties") agree to amend the terms and conditions of the Loan Agreement as set forth herein. The Addendum does not otherwise modify or supersede the provisions of the Loan Agreement beyond the terms contained herein. Unless otherwise specified, capitalized terms in this Addendum have the same meaning as defined in the Assurant Agreements, and those definitions are incorporated herein by reference.

NOW, THEREFORE, in consideration of the mutual promises and agreements set forth in this Addendum, the Parties agree as follows:

1. <u>Representations, Warranties and Affirmative Covenants.</u> For so long as any Obligations remain unpaid and/or the Loan Agreement remains in effect, Borrower represents, warrants and covenants to and with CNH:

   (a) <u>Notices of Claims and Litigation.</u> Promptly provide written notice of: (1) all material adverse changes in Borrower's financial condition, and (2) all existing and all threatened litigation, claims, investigations, administrative proceedings or similar actions affecting Borrower or any Guarantor which could materially affect the financial condition of Borrower or the financial condition of any Guarantor.

   (b) <u>Financial Records.</u> Maintain its books and records in accordance with GAAP reasonably acceptable to CNH, applied on a consistent basis, and permit CNH to examine and audit Borrower's books and records at reasonable times.

   (c) <u>Financial Reporting.</u> Furnish CNH with financial statements audited by a firm of independent certified public accountants selected by Borrower and reasonably acceptable to CNH. If requested by CNH, Borrower shall provide consolidating balance sheets and statements of the entities included in consolidated financial statements.

2. <u>Entire Addendum.</u> This Addendum shall be governed by the laws of the State of Wisconsin and shall become effective upon its acceptance by CNH. This Addendum shall not be deemed or construed to be modified, amended, rescinded, cancelled or waived, in whole or in part, unless in writing and signed by the parties hereto.

Millenkamp Cattle, Inc.                          CNH Industrial Capital America LLC

By: _____                     By: _____
Name: _____                      Name: _____
Its: _____                     Its: _____

EXHIBIT 1 of 6

**EXHIBIT "C"**

| | | | |
|---|---|---|---|
| UKT020 | Kubota | L3902 | 90020 |
| UKT04D | Kubota | L3902 | 89904 |
| UKT244 | Kubota | L3902 | 88244 |
| UKT42B | Kubota | L3902 | 88242 |
| UKT829 | Kubota | L3902 | 84829 |
| UKT850 | Kubota | L3902 | 84850 |
| UKT853 | Kubota | L3902 | 84853 |
| UKT856 | Kubota | L3902 | 84856 |
| UKT939 | Kubota | L3902 | 89939 |
| UKT036 | Kubota | L3902 | 90036 |
| UKT908 | Kubota | L3902 | 89908 |

**Verified Complaint**
**Page 15**