Janine P. Reynard (ISB #6030)
AVERY LAW
3090 E. Gentry Way, Ste 250
Meridian, ID 83642
Telephone: (208) 639-9400
Facsimile: (208) 994-3182

-and-

Lorenzo Marinuzzi (admitted *pro hac vice*)
Raff Ferraioli (admitted *pro hac vice*)
Miranda Russell (admitted *pro hac vice*)
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019-9601
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Email: LMarinuzzi@mofo.com
        RFerraioli@mofo.com
        MRussell@mofo.com

*Attorneys for East Valley Development, LLC*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| In re: | Case No. 24-40158-NGH |
| MILLENKAMP CATTLE, INC., | |
| Debtor. | |
| Filing relates to: | Jointly Administered With Case Nos.: |
| ☒ ALL DEBTORS | 24-40159-NGH (Idaho Jersey Girls) |
| ☐ Millenkamp Cattle, Inc. | 24-40160-NGH (East Valley Cattle) |
| | 24-40161-NGH (Millenkamp Properties) |
| ☐ Idaho Jersey Girls | 24-40162-NGH (Millenkamp Properties II) |
| | 24-40163-NGH (Millenkamp Family) |
| ☐ East Valley Cattle | 24-40164-NGH (Goose Ranch) |
| | 24-40166-NGH (Black Pine Cattle) |
| ☐ Millenkamp Properties | 24-40167-NGH (Millenkamp Enterprises) |
| | 24-40165-NGH (Idaho Jersey Girls Jerome Dairy) |
| ☐ Millenkamp Family | |
| | Chapter 11 Cases |
| ☐ Goose Ranch | |

☐ Black Pine Cattle

☐ Millenkamp Enterprises

☐ Idaho Jersey Girls Jerome Dairy

## EAST VALLEY DEVELOPMENT'S SECOND AMENDED MOTION FOR RELIEF FROM THE AUTOMATIC STAY TO PROCEED WITH ARBITRATION

East Valley Development, LLC ("EVD"), by and through its undersigned attorneys, hereby files this *Second Amended Motion for Relief from the Automatic Stay to Proceed with Arbitration* (the "Second Amended Motion"), for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Revised Proposed Order"), pursuant to section 362(d) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Idaho Local Bankruptcy Rules (the "Local Rules"), granting limited relief from the automatic stay of section 362 of the Bankruptcy Code (the "Automatic Stay") so that EVD may file a demand for emergency injunctive relief, in substantially the form attached hereto as **Exhibit B** (the "EVD Demand for Arbitration") before the American Arbitration Association (the "AAA").  This Second Amended Motion supplements *East Valley Development's Motion for Relief from the Automatic Stay to Proceed with Arbitration* [Docket No. 908] (the "Original Motion"), *East Valley Development's Amended Motion for Relief from the Automatic Stay to Proceed with Arbitration* [Docket No. 950] (the "Amended Motion"), and the *Supplement to East Valley Development's Amended Motion for Relief from the Automatic Stay to Proceed with Arbitration* [Docket No. 956] (the "Amended Motion Supplement")[1] and modifies the relief requested in the Original Motion and the Amended Motion in light of

---

[1] Capitalized terms used but not otherwise defined herein shall have the definitions ascribed to such terms in the Original Motion, the Amended Motion, or the Amended Motion Supplement, as applicable.

ny-2926387

developments since the prior filings.  In support of the Second Amended Motion, EVD respectfully

represents as follows:

I. **PRELIMINARY STATEMENT**[2]

1.      Unfortunately, as EVD anticipated, conflict between the Debtors and EVD has only

continued to escalate.  As set forth in the Amended Motion Supplement and on the record at the

March 13 hearing, the unauthorized physical modifications done by the Debtors' contractors on

the FAN Header Manifold not only voided the warranty of workmanship on a substantial portion

of the facility (as EVD advised would happen), but created a dangerous working environment

while violating a host of OSHA safety regulations that caused EVD to shut down the equipment

in accordance with its "lock out and tag out" safety procedures.  Undeterred, starting mere hours

after the conclusion of last week's omnibus hearing, the Debtors' contractors then cut EVD's safety

locks (not once but twice) and powered on the facility without EVD's approval.  Meanwhile,

EVD's operators cannot even resume operation of the facility without violating OSHA rules,

because the Debtors will not allow EVD to do the work necessary to determine that the facility is

safe for operation.  Upon information and belief, Millenkamp has been unlawfully operating the

Manure Separation Facility since March 14, 2025.

2.      The result is that the parties are now at a standoff at the Manure Separation Facility.

The Debtors have demanded that "EVD provide adequate assurances that it will immediately

recommence operation of the MSF by no later than Friday, March 21, 2025" otherwise the Debtors

"will treat the MSA and Ground Lease as terminated."  *See* **Exhibit C** (the "Debtors' March 19

Letter").  But under the parties' agreements, EVD is entitled to operate the facility, and is entitled

---

[2] Capitalized terms used but not otherwise defined in the Preliminary Statement shall have the definitions ascribed to
such terms in the remainder of the Second Amended Motion.

ny-2926387

to do so in accordance with the Parties' agreements and all applicable law, including OSHA regulations. Further, EVD explicitly holds the right to such self-help measures as may be necessary to cure a breach by the Debtors.

3.      To be clear, EVD stands ready, willing, and able to recommence operation of the Manure Separation Facility as soon as can reasonably be done in accordance with applicable law and safety standards. As soon as the Debtors confirm that EVD will be permitted to begin that process, EVD will begin immediately. Importantly, EVD would still be operating the Manure Separation Facility today in accordance with the governing contract documents if not for the Debtors' brazen conduct in breaking into the facility multiple times.

4.      EVD therefore respectfully seeks limited stay relief from this Court in order to file the EVD Demand for Arbitration with the AAA, requesting that the Emergency Arbitrator[3] (a) enjoin the Debtors from interfering with EVD's ability to evaluate the safety of the facility and (b) authorize EVD to take such action as may be necessary to return it to safe operation (including, for example, reworking the FAN Header Manifold in accordance with a design approved by the project's engineer-of-record, should that be necessary).

5.      Since this issue is a controversy arising out of and relating to the Facility Agreements, the Facility Agreements' Mandatory Arbitration Provisions are implicated, and the AAA is therefore the appropriate tribunal from which EVD must seek relief. Cause exists to lift the Automatic Stay for this limited purpose.

---

[3] As set forth in the Amended Motion, under the Commercial Rules, once a request is made, an emergency arbitrator (the "Emergency Arbitrator") will be appointed by the AAA within one business day of the request. *See* Commercial Rules, Rule 39. This Emergency Arbitrator's decision-making powers will be limited to the discrete issue for which emergency relief is requested (here, the relief set forth in the EVD Demand for Arbitration). If the Debtors' Adversary Proceeding is ultimately moved back to an arbitration proceeding with the AAA rather than continue as an adversary proceeding before this Court, a permanent arbitrator will be appointed in accordance with the procedure outlined in the Facility Agreements and the AAA Commercial Rules.

4

Case 24-40158-NGH    Doc 978    Filed 03/21/25    Entered 03/21/25 12:59:50    Desc Main
Document    Page 5 of 27

6.      EVD continues to believe that expedited relief with respect to this discrete issue is in the best interests of both the Debtors and EVD.  By the time this Second Amended Motion will be heard, the Debtors will presumably already consider the Facility Agreements between the parties to be "terminated," as the Debtors' March 19 Letter set a deadline of March 21, 2025.  The parties need clarity on these issues immediately to prevent further harm and, ideally, build a consensus for a path forward to resolve these issues, which is in the best interests of all stakeholders.  As discussed below, cause exists to grant the relief requested herein and no parties will be prejudiced if such relief is granted.

## II. JURISDICTION

7.      This Court has jurisdiction over this Second Amended Motion pursuant to 28 U.S.C. §§ 157 and 1334.  EVD's request for stay relief is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are sections 362(d) of the Bankruptcy Code, Bankruptcy Rule 4001, and Local Rule 4001-2.

## III. BACKGROUND

### A.      Legal and Procedural Background

8.      On April 2, 2024 (the "Petition Date"), the above-captioned debtors (the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Idaho (the "Court").  Upon the Petition Date, the Automatic Stay came into effect and stayed the commencement of any action against the Debtors that could have been commenced before the Petition Date.

9.      Prior to the Petition Date, EVD and the Debtors (collectively, the "Parties" and each, a "Party") entered into (a) that certain Ground Lease Agreement dated effective as of October 8, 2021, between Debtor East Valley Cattle, LLC and EVD (as amended, the "Ground

ny-2926387

Lease") and (b) that certain Manure Supply Agreement dated effective as of October 8, 2021, between Debtor Millenkamp Cattle, Inc. and EVD (as amended, the "MSA," and together with the Ground Lease, the "Facility Agreements"). [4]   The Ground Lease and the MSA provide for arbitration of all disputes arising out of the respective agreement before the AAA in accordance with the AAA's Commercial Arbitration Rules (the "Commercial Rules").    Specifically, Section 30.2 of the Ground Lease provides:

> Any controversy or claim arising out of or relating to this Lease, or the breach thereof, shall be determined by final and binding arbitration administered by the American Arbitration Association ("AAA") under its Commercial Arbitration Rules and Mediation Procedures ("Commercial Rules").  The award rendered by the arbitrator shall be final and binding on the parties and may be entered and enforced in any court having jurisdiction, and any court where a party or its assets is located (to whose jurisdiction the parties consent for the purposes of enforcing the award).

*See* Ground Lease at § 30.2 (the "Ground Lease Mandatory Arbitration Provision").  Similarly, the MSA provides:

> If resolution of a particular claim, dispute or other matter arising out of or related to this Agreement cannot be achieved through one or more meetings, then either Dairy or Developer may demand by notice to the other party that the claim, dispute or other matter be determined by final and binding arbitration.  Unless Dairy and Developer otherwise agree, the arbitration will be administered by the American Arbitration Association ("AAA") under its Commercial Arbitration Rules and Mediation Procedures ("Commercial Rules").  The award rendered by the arbitrator shall be final and binding on the parties and may be entered and enforced in any court having jurisdiction, and any court where a party or its assets is located (to whose jurisdiction the parties consent for the purposes of enforcing the award).

MSA at § 18.2.2 (the "MSA Mandatory Arbitration Provision," and together with the Ground Lease Mandatory Arbitration Provision, the "Mandatory Arbitration Provisions").   The Mandatory

---

[4] Additional background information regarding the Facility Agreements is set forth in *East Valley Development's Motion to Compel Assumption or Rejection of Executory Contracts, or, in the Alternative, for Equitable Relief* [Docket No. 549].

Arbitration Provisions are mutual.  That is, either Party may invoke such provisions and both Parties' rights are the same under the Mandatory Arbitration Provisions.

10.     On January 17, 2025, in accordance with the Mandatory Arbitration Provisions, the Debtors filed the Demand with the AAA, alleging claims for breach of contract and declaratory judgment arising from the Parties' obligations under the Facility Agreements.  The Demand, which is attached to the Amended Motion as Exhibit B, also requested that the arbitrator retain jurisdiction to resolve future disputes that may exist in the Parties' ongoing controversy.  *See* Demand, at p. 23.

11.     On February 3, 2025, the Parties attended an administrative arbitration conference with the AAA for the sole purpose of determining preliminary arbitration logistics.  At this administrative conference, the Parties agreed to continue the administrative conference for an additional 30 days pending the resolution of the issues raised the Original Motion.  At this initial administrative arbitration conference, the Debtors represented that their asserted damages against EVD were less than $10 million.

12.     On February 14, 2025, EVD filed the Original Motion requesting limited stay relief so that EVD could fully participate in the Arbitration initiated by the Debtors.  On February 28, 2025, the Debtors filed (a) the *Debtors' Objection to Motion for Relief from Automatic Stay* [Docket No. 936] and (b) an adversary proceeding complaint (the "Complaint") against EVD [Case No. 25-08003-NGH, Docket No. 1] (such adversary proceeding, the "Adversary Proceeding").  EVD's response to the Complaint is due on April 2, 2025.  *See* Adversary Proceeding, Docket No. 4.  On March 6, 2025, Debtors' counsel emailed EVD's counsel confirmation that the Demand was withdrawn on February 28, 2025.

13.     The Debtors and EVD have separately agreed that EVD will file its Motion to Compel Arbitration with respect to the Adversary Proceeding on March 24, 2025, and will set the Motion to Compel Arbitration to be heard on April 10, 2025.

**B.     Factual Background with Respect to the FAN Header Manifold Dispute**

14.     At a high level and for basic background purposes, the FAN[5] Header Manifold is a central pipe in the Manure Separation Facility with five branches emerging from such pipe that each distribute thickened manure flow to screw presses.  Each screw press is a piece of agricultural equipment that takes incoming fluid manure flow made up of solids and liquids and physically squeezes approximately 30% of those solids from the incoming liquid.  This process results in two products:  a solid "fiber" product that has been squeezed from the incoming fluid flow, and an "effluent" which is the remaining liquid portion of the incoming manure flow, less the 30% of the solids that came in.  After this separation step, the "effluent" product that was created goes through yet another physical separation step using centrifuges, which allows for finer manure particles that would otherwise slip through the screw presses to be collected.

15.     The FAN Header Manifold was constructed exactly pursuant to the engineering plans that were approved by the Debtors, pursuant to the design approval provisions of the Ground Lease.

16.     On March 4, 2025, the Debtors sent their contractors to the Manure Separation Facility to modify the FAN Header Manifold to a different design, without contractual authority or EVD's consent.  The unauthorized work included cutting and welding activities without having obtained a valid hot work permit, without personal protective equipment, and without even a nearby fire extinguisher.  The Debtors' contractors also started drilling into the concrete base where

---

[5] FAN is the manufacturer.

ny-2926387

the separators are installed, raising concerns about the integrity of the surrounding equipment and the impact on EVD's operations.  EVD's operators were forced to evacuate the building for their own safety.  Additional details are set forth in the EVD March 6 Letter, which is attached to the Amended Motion as Exhibit C.

17.     In the EVD March 6 Letter, EVD's counsel requested that the Debtors immediately cease and desist from any further activity relating to modifications of the FAN Header Manifold without EVD's consent.  That same day, Debtors' counsel sent their own letter to EVD's counsel regarding the same issue, which is attached to the Amended Motion as Exhibit D.  On March 11, 2025, EVD filed the Amended Motion as a final attempt to prevent the Debtors and their contractors from performing the unauthorized physical modifications to the FAN Header Manifold without EVD's or the engineer-of-record's consent.

18.     But in advance of the hearing on the Amended Motion, EVD was informed that the Debtors' unauthorized work was complete.  EVD was also informed by its contractor that the Debtors' unauthorized modifications have voided the warranty of workmanship applicable to the Manure Separation Facility, and the contractor noted that "[i]t does not look like the new header is adequately supported causing unknown stresses through the line into the sections that were installed."  As such, by the time of the March 13 hearing on the Amended Motion, operations at the Manure Separation Facility were completely shut down and locked out, in accordance with EVD's written safety protocol.  On March 12, 2025, EVD filed the Amended Motion Supplement to reflect this change in circumstances.

19.     Only a few hours after the hearing, on March 13, at approximately 7:00 p.m. (MT), EVD's operators observed from a distance that the facility was running.  The assistant manager on duty went to inspect the situation and found that unauthorized personnel had entered the building

9

and broken the locks that EVD placed on the screw presses.  EVD operators again shut down the facility and put new locks on the screw presses.  On March 14, 2025, at approximately 8:00 a.m. (MT), EVD's operators again noticed that the Manure Separation Facility had started running, indicating that the Debtors had broken the locks placed on the facility pursuant to the "lockout/tagout" procedures for a second time.  Upon information and belief, Millenkamp has been unlawfully operating the Manure Separation Facility since March 14, 2025.  EVD has been working diligently with its counsel since these developments to prepare the EVD Demand for Arbitration.

20.    Debtors' counsel subsequently sent to EVD's counsel the Debtors' March 19 Letter, which is attached hereto as **Exhibit C**.  Among other things, the Debtors' March 19 Letter demands that "EVD provide adequate assurances that it will immediately recommence operation of the MSF by no later than Friday, March 21, 2025" otherwise the Debtors "will treat the MSA and Ground Lease as terminated."  In response, on March 20, 2025, EVD's counsel responded with the letter attached hereto as **Exhibit D**, which (i) demanded that the Debtors agree to not interfere with EVD's process to get the facility up and running as soon as possible in compliance with applicable engineering and safety standards and (ii) made clear that there are no grounds for termination of the Facility Agreements.

21.    EVD is ready, willing, and able to recommence operation of the Manure Separation Facility as soon as can possibly be done in accordance with applicable law and safety standards. To do so, the Debtors and their contractors must be enjoined from entering the property so that EVD can assess the safety of the facility.  In consultation with its counsel, EVD decided to file this Second Amended Motion to request limited stay relief to request emergency relief from the AAA with respect to this dispute.

ny-2926387

## IV. <u>RELIEF REQUESTED</u>

22.    By this Second Amended Motion, EVD respectfully requests entry of an order substantially in the form of the Revised Proposed Order attached hereto as <u>**Exhibit A**</u> lifting the Automatic Stay for the limited purpose of (a) permitting EVD to (i) file the EVD Demand for Arbitration and any subsequent pleadings relating to the EVD Demand for Arbitration related to the relief requested in the demand and (ii) request the appointment of an Emergency Arbitrator to adjudicate the EVD Demand for Arbitration; and (b) permitting the AAA to adjudicate the EVD Demand for Arbitration in accordance with the Commercial Rules, including entry of a final and binding decision by the Emergency Arbitrator and any other procedures and determinations that the Emergency Arbitrator may deem necessary in order to render any decision related thereto.

## V. <u>BASIS FOR RELIEF REQUESTED</u>

23.    EVD asserts that cause exists to lift the Automatic Stay for the limited purpose of permitting EVD to file the EVD Demand for Arbitration.  Section 362 of the Bankruptcy Code provides that the court shall grant relief from the automatic stay for cause.  *See* 11 U.S.C. § 362(d)(1). EVD has the initial burden of establishing a prima facie case that cause exists.  *In re Hawkeye Entm't*, No. 23-11501, 2024 WL 1528460, at *10 (Bankr. C.D. Cal. Apr. 8, 2024) (citations omitted).  Thereafter, pursuant to section 362(g)(2) of the Bankruptcy Code, the Debtors bear the burden of proof on all other issues, to show that relief from the stay is unwarranted, including the absence of cause for relief under section 362(d)(1).  *Id.*

24.    The term "cause" is not defined in the Bankruptcy Code and whether cause exists is to be determined on a case-by-case basis after examining the totality of the circumstances.  *In re Kronemyer*, 405 B.R. 915, 921 (B.A.P. 9th Cir. 2009); *In re Hawkeye Entm't*, 2024 WL 1528460, at *9–10; *accord In re Lyon*, No. 19-00129, 2019 WL 2866558, at *3 (Bankr. D. Idaho July 2, 2019).  In determining whether to grant relief from the stay so that an action can proceed in another

ny-2926387

forum, courts in this circuit generally consider judicial economy, the expertise of the alternative forum, prejudice to the parties, and whether exclusively bankruptcy issues are involved. *In re Kronemyer*, 405 B.R. at 921 (citations omitted); *see also In re Jardine*, 647 B.R. 224, 235 (Bankr. D. Idaho 2022).   Courts in this circuit have recognized a non-exhaustive list of factors that articulate the foregoing considerations and are relevant to the court's determination of whether or not to grant relief from the automatic stay, including the following *Curtis* factors:

(1) Whether the relief will result in a partial or complete resolution of the issues;

(2) The lack of any connection with or interference with the bankruptcy case;

(3) Whether the foreign proceeding involves the debtor as a fiduciary;

(4) Whether a specialized tribunal has been established to hear the particular cause of action and whether that tribunal has the expertise to hear such cases;

(5) Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;

(6) Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question;

(7) Whether the litigation in another forum would prejudice the interests of other creditors, the creditors' committee, and other interested parties;

(8) Whether the judgment claim arising from the foreign action is subject to equitable subordination under section 510(c);

(9) Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under section 522(f);

(10) The interests of judicial economy and the expeditious and economical determination of litigation for the parties;

(11) Whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and

(12) The impact of the stay on the parties and the "balance of hurt."

ny-2926387

*See In re Hawkeye Entm't*, 2024 WL 1528460, at *10 (citing *In re Curtis*, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984)).

25.     Courts in the Ninth Circuit have also looked to the non-exclusive list of factors identified in *Christensen v. Tucson Estate, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1167 (9th Cir. 1990), which suggest cause for permissive abstention and, consequently, for relief from the automatic stay.  *See Shin v. Altman (In re Altman)*, No. 16-15248, 2018 WL 3133164, at *7 (B.A.P. 9th Cir. June 26, 2018).  The *Tucson Estates* factors are as follows:

(1) The effect or lack thereof on the efficient administration of the estate if a [c]ourt recommends abstention,

(2) The extent to which state law issues predominate over bankruptcy issues,

(3) The difficulty or unsettled nature of the applicable law,

(4) The presence of a related proceeding commenced in state court or other nonbankruptcy court,

(5) The jurisdictional basis, if any, other than 28 U.S.C. § 1334,

(6) The degree of relatedness or remoteness of the proceeding to the main bankruptcy case,

(7) The substance rather than form of an asserted "core" proceeding,

(8) The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court,

(9) The burden of the bankruptcy court's docket,

(10) The likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties,

(11) The existence of a right to a jury trial, and

(12) The presence in the proceeding of nondebtor parties.

*Tucson Estates*, 912 F.2d at 1167 (internal quotations omitted).

26.     Not all of these factors are relevant in each case, and the court does not have to give equal weight to each factor in deciding whether to modify the stay.  *In re Hawkeye Entm't*, 2024 WL 1528460, at \*10.  As such, EVD believes the relevant factors discussed herein weigh in favor of modifying the Automatic Stay to the limited extent as set forth herein:

- ***The Relief Requested Will Result in a Complete Resolution of the Issues.***  The EVD Demand for Arbitration is narrowly tailored and relates to a discrete (but material) harm.  While other outstanding issues remain between the Parties, the EVD Demand for Arbitration will completely resolve the issue of the Debtors' and their contractors' unauthorized operation of the Manure Separation Facility.  The other issues outstanding between the parties (which overall relate to monetary, rather than injunctive, relief) can be resolved after the Parties' forum dispute is decided on April 10, 2025.

- ***This is a State Law Contractual and Property Dispute Under the Facility Agreements and Will Not Interfere with the Debtors' Bankruptcy Cases.***  The injunctive relief sought by EVD is based in Idaho state law, not bankruptcy law.  Here, a decision by the Emergency Arbitrator regarding whether the Debtors' contractors are permitted to unilaterally take over operations of the Manure Separation Facility in violation of the parties' contractual agreements will not impact the Debtors' ability to reorganize.  Indeed, the Debtors recently filed their Third Amended Disclosure Statement [Docket No. 966], which makes no mention of the Debtors' intention to attempt to terminate the Facility Agreements without a valid basis, but, to the contrary, affirms the parties' prior agreement that the Debtors would be assuming these contracts.

- ***The Arbitration Will Not Prejudice the Interests of Other Creditors, the Creditors' Committee, or Other Interested Parties.***  The EVD Demand for Arbitration concerns a two-party dispute (exclusive of the parties' respective agents and employees).  The rights of other interested parties in these chapter 11 cases are not directly implicated by the injunctive relief sought.[6]  Additionally, EVD is not seeking monetary damages at this time,[7] but, for the avoidance of doubt, if any are awarded, then EVD will not enforce such award against the Debtors' estates without further order of this Court.  This will ensure that the Debtors' estates will still be administered in accordance with the Bankruptcy Code and in the best interests of all creditors.

---

[6] Additionally, the mere presence of creditors in the main bankruptcy proceeding who might (or might not) be affected by the arbitration decision also does not require that such dispute be heard in the bankruptcy court.  *See Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1158 (3d Cir. 1989).

[7] EVD intends to seek monetary damages in connection with its counterclaims, which will be addressed in its forthcoming Motion to Compel Arbitration.

14

- ***The Interests of Judicial Economy and the Expeditious and Economical Determination for the Parties Supports Granting the Requested Relief.*** There is no doubt that the Parties vehemently disagree with respect to (i) the facts underlying the FAN Header Manifold modifications and (ii) the Parties' legal obligations and rights under the Facility Agreements with respect to the operation of the Manure Separation Facility. EVD respectfully submits that a decision regarding the specific issues raised in the EVD Demand for Arbitration is necessary before the parties will have a resolution regarding their forum dispute on April 10, 2025. The AAA already has expeditious procedures in place for emergency relief through its mechanism to permit the appointment of an emergency arbitrator. The Debtors and EVD submitted to these procedures when they agreed to the Mandatory Arbitration Provisions and the Parties can rely on the resources provided by the AAA rather than burdening this Court with non-core bankruptcy issues. The alternative is that the parties will be waiting at almost three weeks for a determination on these issues, which are clearly an urgent concern for both parties.

- ***The Balance of "Hurt" Will Weigh More Heavily Towards EVD if EVD Cannot File the EVD Demand for Arbitration.*** If EVD does not have leave to file the EVD Demand for Arbitration, it will be without its contractually agreed upon civil recourse against the Debtors to assert its rights under the Facility Agreements.[8] Further, if EVD cannot resume operations safely, its performance under the Facility Agreements will be adversely impacted daily until the Debtors return control of the facility to EVD. Finally, Givens Pursley LLP, the Debtors' special litigation counsel, is representing the Debtors in this dispute with EVD, not the Debtors' bankruptcy counsel, so the arbitration regarding the EVD Demand for Arbitration is unlikely to impose any burden on the Debtors' bankruptcy advisors. EVD stands to be the only party harmed if the Automatic Stay is not modified as requested.

27. In addition to the foregoing factors, the Debtors' forum reversal with respect to its dispute with EVD suggests that the withdrawal of the Demand with the AAA and the commencement of the Adversary Proceeding was an act of forum shopping, which is a consideration under *Tucson Estates*. Cause exists to lift the automatic stay because the Debtors should not be permitted to tie EVD's hands in its ability to respond to the Debtors' reckless and unlawful conduct by circumventing the Mandatory Arbitration Provisions.

---

[8] The Debtors should not be permitted to use the automatic stay as a sword to violate the contractual and property rights of their lessee, EVD. *See In re Scarborough-St. James Corp.*, 535 B.R. 60, 67 (Bankr. D. Del. 2015) (recognizing that the "stay is a shield, not a sword").

ny-2926387

28.    The Federal Arbitration Act (the "<u>FAA</u>"), 9 U.S.C. § 1 et seq., governs the enforcement of arbitration agreements involving interstate commerce. *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 232–34 (2013). As relevant here, the FAA provides:

> A written provision in any maritime transaction or contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. This text reflects a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *see also Shearson/American Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987) ("The Arbitration Act thus establishes a 'federal policy favoring arbitration.'"). The relevant language also reflects that arbitration is a matter of contract. *See Italian Colors*, 570 U.S. at 233 (citing *Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. 63, 66–67 (2010)). Accordingly, because the "preeminent concern of Congress in passing the [FAA] was to enforce private agreements" courts must "rigorously enforce" arbitration agreements according to their terms, *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985), including "the rules under which that arbitration will be conducted," *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989).

29.    "The standard for demonstrating arbitrability is not a high one; in fact, a district court has little discretion to deny an arbitration motion, since the [FAA] is phrased in mandatory terms." *Crooks v. Wells Fargo Bank, N.A.*, 312 F. Supp. 3d 932, 936 (S.D. Cal. 2018) (quoting *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991)). "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses*,

460 U.S. at 24–25.  "The Act leaves no place for the exercise of discretion by a district court but instead mandates that district courts *shall* direct parties to arbitration on issues as to which an arbitration agreement has been signed."  *Dean Witter*, 470 U.S. 213 at 218 (emphasis in original). Importantly, the burden of proving that the claims are unsuitable for arbitration lies with the party resisting arbitration (here, the Debtors).  *See Green Tree Fin. Corp.–Ala. v. Randolph*, 531 U.S. 79, 91–92 (2000).

30.    The Ninth Circuit has made clear that there is no evidence in the text of the Bankruptcy Code or in the legislative history suggesting that Congress intended to create an exception to the FAA in the Bankruptcy Code.  "In non-core proceedings, the bankruptcy court generally does not have discretion to deny enforcement of a valid prepetition arbitration agreement."  *In re Thorpe Insulation Co.*, 671 F.3d 1011, 1021 (9th Cir. 2012) (citing cases); *MCI Telecomms. Corp. v. Gurga (In re Gurga)*, 176 B.R. 196, 199 (B.A.P. 9th Cir. 1994) (holding that a bankruptcy court did not have discretion to refuse to enforce an arbitration clause in a prepetition agreement where the underlying action was based on a non-core breach of contract claim). "Actions that do not depend on bankruptcy laws for their existence and that could proceed in another court are considered 'non-core.'"  *Security Farms v. Int'l Broth. of Teamsters*, 124 F.3d 999, 1008 (9th Cir. 1997) (citing *In re Castlerock Properties*, 781 F.2d 159, 162 (9th Cir. 1986)). Even in core proceedings, the bankruptcy court "has discretion to decline to enforce an otherwise applicable arbitration provision *only if* the arbitration would conflict with the underlying purpose of the Bankruptcy Code."  *In re Thorpe Insulation Co.*, 671 F.3d at 1021 (emphasis added).

31.    For example, in *In re Snake River Dairyman's Ass'n, Inc.*, No. 03-41124, 2004 WL 4960361, at *6 (Bankr. D. Idaho Mar. 31, 2004), this Court considered breach of contract claims asserted by a creditor against a debtor and held that the facts in that case favored resolution by

arbitration. This Court declined to decide whether such claims were core or non-core; however, this Court did express that if such claims were non-core, then "the Court is without discretion and must order [arbitration]." *Id.* Even if the claims were core, this Court determined that arbitration was warranted because, among other reasons, the creditor's claims were "based solely upon state law" and "[would] be resolved without resort to interpreting the Bankruptcy Code or Rules." *Id.* In addition, this Court recognized that "Congress has established a strong policy favoring the enforcement of arbitration clauses in private contracts." *Id.* at *7.

32.     In this case, it is axiomatic that the Parties intended to bind themselves to mandatory arbitration when negotiating and executing the Facility Agreements. *See* Ground Lease at § 30.2; MSA at § 18.2.2. Both Parties agree that the Debtors and EVD entered into the Facility Agreements. *See* Complaint, at ¶¶ 12, 13. The Facility Agreements contain the broad Mandatory Arbitration Provisions, and the injunctive relief sought by EVD clearly arises out of and relates to the Facility Agreements. EVD's request for injunctive relief is a non-core claim because such claim does not depend on bankruptcy law for its existence. *See Security Farms*, 124 F.3d at 1008 (citing *Castlerock*, 781 F.2d at 162). Because this is a non-core claim, the dispute must be arbitrated with the AAA pursuant to the Mandatory Arbitration Provisions, so abstention by this Court to permit limited stay relief in favor of EVD is appropriate.[9] Under the FAA and relevant Supreme Court and Ninth Circuit case law, EVD respectfully submits that this Court lacks discretion to deny arbitration of EVD's request for injunctive relief.

33.     The Debtors assert in the Debtors' March 7 Letter that EVD, attached to the Amended Motion as <u>Exhibit E</u>, "will not be able to show the requisite likelihood of success on the

---

[9] Even if this Court were to determine that this dispute is a core claim, the adjudication of the matter in arbitration will not "frustrate any underlying purpose of the Bankruptcy Code, or have such potential adverse impact on the bankruptcy proceedings." *In re Snake River Dairyman's Ass'n, Inc.*, 2004 WL 4960361, at *6.

merits and balancing of equities in EVD's favor" in seeking a preliminary injunction and may argue the same to this Court. This assertion is irrelevant to the relief requested by this Second Amended Motion. Unlike a request for injunctive relief itself, likelihood of success on the merits is not a factor for consideration under the *Curtis* or *Tucson Estates* factors for granting stay relief.

34.     Notwithstanding the foregoing, if this Second Amended Motion is denied, then EVD reserves its rights to request injunctive relief from this Court in the alternative.

## VI. <u>CONCLUSION</u>

WHEREFORE, for the reasons set forth herein, EVD respectfully requests that the Court enter the Revised Proposed Order granting the relief requested in this Second Amended Motion and such other and further relief as is just and proper.

[*Remainder of Page Intentionally Left Blank*]

ny-2926387

Dated:  March 21, 2025                    MORRISON & FOERSTER LLP


/s/ Lorenzo Marinuzzi_____
Lorenzo Marinuzzi (admitted *pro hac vice*)
Raff Ferraioli (admitted *pro hac vice*)
Miranda Russell (admitted *pro hac vice*)


-AND-


AVERY LAW


/s/ Janine P. Reynard_____
Janine P. Reynard (ISB #6030)
*Attorneys for East Valley Development, LLC*

## **Exhibit A**

**Revised Proposed Order**

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| In re:<br><br>MILLENKAMP CATTLE, INC.,<br><br>Debtor. | Case No. 24-40158-NGH |
| Filing relates to:<br><br>☒ ALL DEBTORS<br><br>☐ Millenkamp Cattle, Inc.<br><br>☐ Idaho Jersey Girls<br><br>☐ East Valley Cattle<br><br>☐ Millenkamp Properties<br><br>☐ Millenkamp Family<br><br>☐ Goose Ranch<br><br>☐ Black Pine Cattle<br><br>☐ Millenkamp Enterprises<br><br>☐ Idaho Jersey Girls Jerome Dairy | Jointly Administered With Case Nos.:<br><br>24-40159-NGH (Idaho Jersey Girls)<br>24-40160-NGH (East Valley Cattle)<br>24-40161-NGH (Millenkamp Properties)<br>24-40162-NGH (Millenkamp Properties II)<br>24-40163-NGH (Millenkamp Family)<br>24-40164-NGH (Goose Ranch)<br>24-40166-NGH (Black Pine Cattle)<br>24-40167-NGH (Millenkamp Enterprises)<br>24-40165-NGH (Idaho Jersey Girls Jerome<br>Dairy)<br><br>Chapter 11 Cases |

**ORDER GRANTING EAST VALLEY DEVELOPMENT'S
SECOND AMENDED MOTION FOR RELIEF FROM
THE AUTOMATIC STAY TO PROCEED WITH ARBITRATION**

Upon consideration of the record before this Court and *East Valley Development's Second Amended Motion for Relief from the Automatic Stay to Proceed with Arbitration* [D.I. [  ]] (the "Motion")[1] filed on March [•], 2025, with notice of the Motion having been given in accordance with the applicable Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rules, and no objections having been raised (or having been overruled), and good cause existing:

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

ny-2926387

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is approved.

2.      The Automatic Stay is lifted for the limited purpose of permitting:

   a.   EVD to (i) file the EVD Demand for Arbitration and any subsequent pleadings relating to the EVD Demand for Arbitration related to the relief requested in the demand and (ii) request the appointment of an Emergency Arbitrator to adjudicate the EVD Demand for Arbitration.

   b.   AAA to adjudicate the EVD Demand for Arbitration in accordance with the Commercial Rules, including entry of a final and binding decision by the Emergency Arbitrator and any other procedures and determinations that the Emergency Arbitrator may deem necessary in order to render any decision related thereto.

3.      The limited relief set forth herein shall not be construed to impact the Parties' rights in the arbitration of the EVD Demand for Arbitration, in the Adversary Proceeding, or in any other dispute between the Parties.

4.      Nothing contained herein shall be construed as an admission of liability by the Debtors or EVD regarding any claim or cause of action arising from, or relating to, the Facility Agreements, the arbitration of the EVD Demand for Arbitration, the Adversary Proceeding, or any other matter.  For the avoidance of doubt, both Parties' rights with respect to the enforcement of the Mandatory Arbitration Provisions and the jurisdiction of this Court with respect to the claims and allegations set forth in the Adversary Proceeding are fully reserved.

5.      For the avoidance of doubt, any monetary or other award(s) that may be issued in the arbitration of the EVD Demand for Arbitration against the Debtors or agreed upon between the Parties in connection with a settlement agreement may not be enforced against the Debtors' estates other than pursuant to a further order of this Court or a confirmed chapter 11 plan for the Debtors, and nothing contained herein shall be construed as modification of the Automatic Stay to permit any such enforcement.

2

6.      Any stay of this Order under Rule 4001 of the Federal Rules of Bankruptcy Procedure or any similar rule is hereby waived for cause, and this Order shall be effective immediately upon entry on the Court's docket.

7.      This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated:  March [___], 2025
        Boise, Idaho

_____
THE HONORABLE NOAH G. HILLEN
UNITED STATES BANKRUPTCY JUDGE

3

## **Exhibit B**

**Form of EVD Demand for Arbitration**

*(see attached)*

## <u>Exhibit C</u>

**Debtors' March 19 Letter**

(*see attached*)

**<u>Exhibit D</u>**

**EVD's March 20 Letter**

(*see attached*)