GREGORY B. KOLTUN (CA SBN 130454)
GKoltun@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, California 90017-3545
T:  (213) 892.5200
F:  (213) 892.5454


ALEXANDRA PREECE BARLOW (CA SBN 299715)
ABarlow@mofo.com
RACHEL A. KAISER (CA SBN 352803)
RKaiser@mofo.com
MORRISON & FOERSTER LLP
12531 High Bluff Drive, Suite 100
San Diego, California 92130
T:  (858) 720-5100
F:  (858) 720-5125


Attorneys for Claimant
EAST VALLEY DEVELOPMENT, LLC

BEFORE THE AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| EAST VALLEY DEVELOPMENT, LLC, a Delaware limited liability, | AAA Case No. _____ |
| Claimant, | |
| v. | DEMAND FOR ARBITRATION |
| EAST VALLEY CATTLE, LLC, an Idaho limited liability company; and MILLENKAMP CATTLE, INC., an Idaho corporation, | **EMERGENCY RELIEF REQUESTED** |
| Respondents. | |

1

Claimant East Valley Development, LLC ("EVD") hereby demands arbitration of its dispute with Respondents East Valley Cattle, LLC and Millenkamp Cattle, Inc. (collectively, "Millenkamp").[1]

EVD is constructing a large biogas facility in Cassia County, Idaho that uses cow manure to generate renewable natural gas ("RNG"). Millenkamp owns the dairy supplying the manure for the facility and the land on which EVD is constructing the facility. Under the governing agreements, EVD fully constructed and now operates a "Manure Separation Facility" ("MSF") that processes incoming manure streams for the purposes of the RNG generation facility, ultimately returning flush water and manure solids to the dairy. The MSF includes a piping structure known as the "Header Manifold," which distributes thickened manure through a header and five pipes to "screw presses" that dewater the manure. EVD constructed the Header Manifold exactly in accordance with the design approved by Millenkamp. Millenkamp later became unhappy with the design it approved, and on March 4, 2025 sent its contractors to the MSF and unilaterally changed the Header Manifold to a different design that EVD has never seen, let alone approved (EVD does not even know if an engineer was involved in creating plans for Millenkamp's changes).

Millenkamp's contractors welded in a dangerous environment without a "hot work" permit, cut power to the facility without following protocol, and installed modified piping that is obviously not structurally sound. The work done by Millenkamp's contractors not only voided the warranty of workmanship on a substantial portion of the MSF (as EVD advised would happen), but violated a host of OSHA safety regulations that caused EVD's operators to determine they needed to shut down the equipment in accordance with the facility's "lock out and tag out" procedures.

---

[1] EVD and Millenkamp are collectively referred to as the "parties."

sf-6614999

Undeterred, Millenkamp's contractors cut the safety locks (not once, but twice) and powered on the facility without EVD's approval. Meanwhile, EVD's operators cannot resume operation of the facility without violating OSHA rules, because Millenkamp will not allow EVD to do the work necessary to determine that the facility is safe for operation (if indeed it is).

Now the parties are at a standoff at the MSF. Millenkamp has prevented EVD from operating the MSF, and has even threatened to terminate the parties' agreements because EVD cannot (as a result of Millenkamp's actions) operate the MSF. Under the parties' agreements, EVD is responsible for operating the MSF and is entitled to do so in accordance the parties' agreement and all applicable law, including OSHA regulations. Further, EVD holds the explicit right to such self help measures as may be necessary to cure a breach by Millenkamp.

EVD therefore seeks an immediate order from the Arbitrator enjoining Millenkamp from interfering with EVD's ability to evaluate the safety of the MSF and to take such action as may be necessary to return it to safe operation (including for example reworking the Header Manifold in accordance with a design approved by the project's Engineer of Record, should that be necessary).

## I.     PARTIES

### A.     The Claimant

EVD is a Delaware limited liability company.

The address of EVD is:

> Attention: General Counsel
> 4675 MacArthur Court, Suite 800
> Newport Beach, CA 92660
> Telephone: (949) 437-1000
> Email: jim.sytsma@cleanenergyfuels.com


> William J. Flanagan
> VP, Strategic Development
> East Valley Development, LLC

4675 MacArthur Court, Suite 800
Newport Beach, CA 92660
Email: Will.Flanagan@cleanenergyfuels.com

The known representatives for EVD are:

Gregory Koltun
Alexandra Preece Barlow
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Telephone: (415)268-7000
Email: gkoltun@mofo.com
        abarlow@mofo.com

### B.      The Respondents

Upon information and belief, East Valley Cattle, LLC is an Idaho limited liability company.

The address of East Valley Cattle, LLC is:

East Valley Cattle, LLC
Attention: Bill Millenkamp
471 N. 300 W.
Jerome, Idaho 83338
Telephone: (208) 731-5518
Email: bill@millenkamp.com

The known representatives for East Valley Cattle, LLC are:

Thomas E. Dvorak
Jason J. Blakley
GIVENS PURSLEY LLP
601 West Bannock Street
P.O. Box 2720
Boise, Idaho 83701-2720
Telephone: (208) 388-1200
Fax: (208) 388-1300
Email: tedservice@givenspursley.com
        jasonblakley@givenspursley.com

Upon information and belief, Millenkamp Cattle, Inc. is an Idaho corporation.

The address of Millenkamp Cattle, Inc. is:

Millenkamp Cattle, Inc.
Attention: Bill Millenkamp

4

sf-6614999

471 N. 300 W.
Jerome, Idaho 83338
Telephone: (208) 731-5518
Email: bill@millenkamp.com

The known representatives for Millenkamp Cattle, Inc. are:

Thomas E. Dvorak
Jason J. Blakley
GIVENS PURSLEY LLP
601 West Bannock Street
P.O. Box 2720
Boise, Idaho 83701-2720
Telephone: (208) 388-1200
Fax: (208) 388-1300
Email: tedservice@givenspursley.com
        jasonblakley@givenspursley.com

## II.    CHOICE OF LAW

The laws of the State of Idaho govern this dispute.  *See* Exhibit A (Ground Lease, § 30.1
(the agreement "shall be governed, interpreted, construed and regulated in accordance with the
laws of the State of Idaho")).  Because this arbitration involves EVD's urgent claim for
injunctive relief, EVD's request is governed by AAA Commercial Rule-39 for Emergency
Measures of Protection.  Rule 39 allows for the appointment of an emergency arbitrator to order
interim measures for the protection or conservation of property and to grant interim measures in
the form of an award or an order.  *See* AAA Commercial Rule-38 & Rule-39.  Because this
matter involves more than two parties, EVD does not agree to conduct the arbitration under the
AAA Expedited Procedures.  *See* AAA Commercial Rule R-1(b).

## III.    AGREEMENT TO ARBITRATE

1.      AAA has jurisdiction over this dispute by virtue of the arbitration provisions in
the parties' agreements.  EVD and Millenkamp entered into (a) the Ground Lease dated effective
as of October 8, 2021, between East Valley Cattle, LLC and EVD and (b) the Manure Supply
Agreement dated effective as of October 8, 2021, between Millenkamp Cattle, Inc. and EVD (as

5

amended, the "MSA," and together with the Ground Lease, the "Facility Agreements"). *See*

Exhibit A (Ground Lease); Exhibit B (MSA). The Ground Lease and the MSA provide for

arbitration of all disputes arising out of the respective agreements before the AAA in accordance

with the AAA's Commercial Arbitration Rules. Specifically, Section 30.2 of the Ground Lease

provides:

> Any controversy or claim arising out of or relating to this Lease, or the breach thereof, shall be determined by final and binding arbitration administered by the American Arbitration Association ("AAA") under its Commercial Arbitration Rules and Mediation Procedures ("Commercial Rules"). The award rendered by the arbitrator shall be final and binding on the parties and may be entered and enforced in any court having jurisdiction, and any court where a party or its assets is located (to whose jurisdiction the parties consent for the purposes of enforcing the award).

*See* Ground Lease at § 30.2. Similarly, the MSA provides:

> If resolution of a particular claim, dispute or other matter arising out of or related to this Agreement cannot be achieved through one or more meetings, then either Dairy or Developer may demand by notice to the other party that the claim, dispute or other matter be determined by final and binding arbitration. Unless Dairy and Developer otherwise agree, the arbitration will be administered by the American Arbitration Association ("AAA") under its Commercial Arbitration Rules and Mediation Procedures ("Commercial Rules"). The award rendered by the arbitrator shall be final and binding on the parties and may be entered and enforced in any court having jurisdiction, and any court where a party or its assets is located (to whose jurisdiction the parties consent for the purposes of enforcing the award).

MSA at § 18.2.2. The mandatory arbitration provisions in the Ground Lease and MSA are mutual.

That is, either party may invoke its provisions and both parties' rights are the same under the

mandatory arbitration provisions.[2]

---

[2] On April 2, 2024, Millenkamp filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Idaho. On March 20, 2025, EVD filed a Second Amended Motion for Relief From the Automatic Stay to Proceed With Arbitration, requesting an order from the bankruptcy court confirming that EVD may seek the emergency injunctive relief requested in this demand before the AAA.

2.      The instant dispute relates to Millenkamp's unauthorized modification of a piping

structure at the MSF, constructed and operated by EVD.  As such, the dispute arises out of the

Ground Lease and MSA, and is subject to arbitration.

IV.     **FACTUAL BACKGROUND**

A.      **The Facility and Agreements**

3.      EVD is an alternative energy developer in the process of constructing a large

facility in Cassia County, Idaho that will convert cow manure into ultra low carbon renewable

natural gas ("RNG").  When finished, the Facility will consist of a number of different buildings

and processes, including a "Manure Separation Facility" ("MSF") that processes incoming

manure streams for the purposes of the RNG generation facility, ultimately returning flush water

and manure solids to the dairy.  EVD commissioned the MSF in August 2024, and has been

operating continuously since that time, until on or about March 5, 2025.

4.      Respondent Millenkamp Cattle, Inc. ("Millenkamp Cattle") operates a large dairy

farm in Cassia County, Idaho, while Respondent East Valley Cattle, LLC ("EVC") owns real

property in and around the dairy farm.  EVD and Millenkamp entered into the Facility

Agreements in 2021 to facilitate the building and operation of the facility discussed in Paragraph

3 on Millenkamp's property.

5.      Pursuant to the Ground Lease, EVD is required to bear all costs of designing and

constructing the facility, and then has the right to operate the facility for its own benefit for the

entire duration of the lease term.  The Ground Lease contains a design review process (in Exhibit

G), pursuant to which EVD designed the project subject to EVC's defined consent rights.

6.      Under the Ground Lease, EVD was required to "construct, install and commission

the Manure Separation Facilities in accordance with the MSF Plans."  Pursuant to Section 6.4.2

of the Manure Supply Agreement, EVD is "solely responsible for, and bear[s] the cost of,

7

operating, maintaining, repairing and replacing the Manure Separation Facilities in a good and workmanlike manner in accordance with the operation and maintenance standards of the manufacturer of the Manure Separation Facilities."  In addition, "[w]ithout limiting the foregoing, [EVD]  shall operate and maintain the Manure Separation Facilities to extract the maximum amounts of NPK Solids [and] shall operate the Manure Separation Facilities on a continuous basis (i.e., 24 hours per day, 7 days per week), including during an Outage, except during unanticipated downtime beyond the reasonable control of Developer, or Force Majeure events, which precludes operation of the Manure Separation Facilities."

> **B.** **Millenkamp Performed Unauthorized Work on the FAN Header Manifold**

7.     This dispute arises because of an unauthorized redesign that Millenkamp performed on the Header Manifold, which is housed in the Dewatering Building at the MSF.  As stated above, EVD commissioned the MSF in August 2024, and had been (until recently) operating the MSF on a continuing basis.

8.     The MSF includes a Dewatering Building that houses a set of five "screw presses" operating in parallel that are designed to separate solids from liquids .  The Header Manifold (manufactured by FAN), is a large central pipe with five branches that each distribute thickened manure flow to the screw presses.  Each screw press takes incoming fluid manure flow made up of solids and liquids and physically squeezes approximately 30% of those solids from the incoming liquid.  This process results in two products: (1) a solid "fiber" product that has been squeezed from the incoming fluid flow; and (2) an "effluent" made up of the remaining liquid portion of the incoming manure flow, less the 30% of the solids that came in.  After the manure is separated into fiber and effluent, the fiber is returned to the dairy as bedding for the cows.  The effluent goes through yet another physical separation step using centrifuges, which

sf-6614999

allows for the collection of the finer manure particles that would otherwise slip through the

screw presses.  Pursuant to the Parties' agreement, EVD oversees and operates the MSF where

the Header Manifold is located.

      9.    EVD constructed the entire MSF, including the Header Manifold, according to the

engineering plans that were approved by Millenkamp pursuant to the design approval provisions

of the Ground Lease.  EVD had an Engineer of Record specializing in agricultural manure and

biogas handling design the facility, including all areas of the Dewatering Building.  The Engineer

of Record also approved of the design of the facility (i.e., provided their Professional

Engineering stamp to the design drawings), as is required for engineering projects that have the

potential to impact public health, safety, and property in Idaho.  Millenkamp does not have the

right to make design changes to any part of the MSF under the Facility Agreements.

      10.    As designed, the Header Manifold includes a pipe that turns at a 90° angle.  This

design, as with every design in the MSF, was approved by Millenkamp.  The pipe in the Header

Manifold can clog from time to time, but EVD monitors the Header Manifold daily to ensure that

any clogs are resolved quickly.  The design of the Header Manifold in no way interferes with the

function of the Dewatering Building, the overall function of the MSF, or the operation of

Millenkamp's dairy or farm business.  Before the instant dispute, the Header Manifold was

operating as intended and the facility was producing ample bedding for the dairy and meeting all

contractually required byproduct specifications.

sf-6614999





**Figures 1 & 2.  Piles of Bedding at the MSF That Were Ready For Pickup, February 26, 2025.**

11.     Millenkamp began claiming that modifying the Header Manifold was necessary in order to prevent clogging (even though the labor and cost of unclogging was born by EVD).  But the alterations Millenkamp was requesting would not change the quantity or quality of bedding material produced.  Millenkamp has no shortage of bedding for its cows—indeed, Millenkamp has not been able to keep up with the volume of bedding material already being produced by the MSF.  The MSF has produced so much bedding onsite that Millenkamp has simply left it piled up around the property.  *See* Figures 1 & 2 above.

sf-6614999

12.     On March 4, 2025, Millenkamp sent its contractors to the MSF to modify the Header Manifold without contractual authority or EVD's consent.  The unauthorized work included cutting and welding activities without having obtained a "hot work" permit for a dangerous environment, without personal protective equipment, and without even a nearby fire extinguisher.  Millenkamp's contractors also started drilling into the concrete base where the separators are installed, raising concerns about the integrity of the surrounding equipment and the impact on EVD's operations.  EVD's operators were forced to evacuate the building for their own safety.

13.     On March 6, 2025, EVD sent a letter to Millenkamp's counsel requesting that Millenkamp (1) immediately cease and desist from any further activity relating to modifications of the Header Manifold without EVD's consent; and (2) confirm that they would stop by close of business on March 7.  Counsel for Millenkamp responded via letter on March 7, 2025, confirming that Millenkamp and its contractors intended to continue their modification activities over EVD's objection.

14.     On March 10, Millenkamp informed EVD that they were shutting down the Dewatering Building at 9:00 a.m. the following day to install a newly designed Header Manifold. Millenkamp claimed that the work would be completed that afternoon, and the operations should recommence at that time.  In response, EVD reiterated to Millenkamp that they would not shut down operations at the facility because Millenkamp's work was unauthorized and shutting down power risked damage to the facility.

15.     On March 11, Millenkamp's contractor notified one of EVD's operators that they would be entering the facility in 30 minutes and shutting down the feed pumps.  EVD operators again evacuated the building for safety reasons.

sf-6614999

16.     Because of potential safety risks caused by Millenkamp's unauthorized work on the MSF, once Millenkamp completed their work and left the premises, EVD was forced to shut down the MSF for safety reasons.

17.     On the evening of March 11, 2025, EVD informed Millenkamp that it needed to shut down the facility due to Millenkamp's unauthorized entry and work performed in the facility.  EVD also informed Millenkamp that due to the unsafe situation at the facility—including many OSHA safety regulations that Millenkamp violated—it had determined that it needed to shut down the equipment in the Dewatering Building in accordance with its "lockout/tagout" (LOTO) procedures, an OSHA-required safety procedure ensuring equipment is safely shut down and cannot be restarted during maintenance or repair, preventing unexpected energization or release of stored energy, and protecting workers from injury.

18.     On March 13, at approximately 7:00 p.m. MT, EVD's operators observed from a distance that the facility was running.  The Assistant Manager on duty went to inspect the situation and found that unauthorized personnel had entered the building and broken the locks that EVD placed on the screw presses.  Breaking locks on a facility that were placed pursuant to LOTO procedures is an OSHA violation.

19.     EVD operators again shut down the facility and put new locks on the screw presses.  On March 14 at approximately 8:00 a.m. MT, EVD's operators again noticed that the MSF had started running, indicating that Millenkamp had broken the locks placed on the facility pursuant to the LOTO procedures for a second time (again violating OSHA regulations).

20.     Upon information and belief, Millenkamp has been unlawfully operating the MSF since March 14, 2025.

sf-6614999

21.     Millenkamp never provided its proposed modifications to the Header Manifold to EVD or to the Engineer of Record for the project.  As such, Millenkamp's work on the Header Manifold has not been permitted or verified as safe design by the Engineer of Record for the EVD facility.  In addition, the work done by Millenkamp voided the warranty of workmanship on a substantial portion of the MSF.

22.     Millenkamp has no right under the Facility Agreements to make unilateral changes to the design of the MSF.  In fact, the Ground Lease specifically provides that "[i]f there are any material changes to the MSF Plans, Landlord and Tenant shall comply with the design process described on Exhibit G-1 hereto."  Exhibit G-1 provides for design "in accordance with applicable design codes per the standard of care for an industrial anaerobic digester (AD) facility," and provides for Landlord (Millenkamp) approval of EVD's design.  Millenkamp made unilateral changes itself, without sharing any details with EVD as to a proposed design.

23.     Millenkamp's unilateral changes to the design of the Header Manifold violate OSHA requirements and basic engineering standards.  The MSF is an OSHA-regulated facility.  Pursuant to OSHA requirements, contractors that work at the MSF must be verified as having adequate safety trainings and ratings before performing work on site.  Millenkamp's contractors have not been vetted or reviewed by EVD in any capacity.

24.     Due to Millenkamp's actions, EVD cannot safely operate the MSF.  EVD cannot resume operations at the facility until the facility has undergone engineering review and verification of all work performed by Millenkamp.  If it were to resume operations without engineering review and verification, EVD would risk an OSHA violation.

sf-6614999

25.     On March 19, 2025, Millenkamp sent a letter to EVD's counsel demanding that EVD resume operations at the MSF by March 21, 2025, or Millenkamp will treat the MSA and Ground Lease as terminated.

26.     EVD is ready, willing, and able to recommence operation of the MSF as soon as can possibly be done in accordance with applicable law and safety standards (reserving its rights to recoup damages caused by Millenkamp).  To do so, Millenkamp must be enjoined from entering the property so that EVD can assess the safety of the facility.

### C.     The Self-Help Provisions Do Not Apply

27.     Millenkamp has alleged that its actions related to the Header Manifold are allowed pursuant to the self-help provisions in the Ground Lease and/or MSA.  No self-help provision applies here.

28.     Under Section 11.6.3 of the MSA, Millenkamp is permitted to enter the MSF to engage in reasonable self-help measures *only if* EVD has delivered byproduct to Millenkamp that does not meet the standards specified under the contract.  EVD has met all of the byproduct specifications.  Indeed, Millenkamp as not alleged that EVD has failed in that regard. Millenkamp therefore cannot rely on this provision to justify its unilateral modifications to the Header Manifold.  Millenkamp can only invoke self-help measures "necessary to protect the operation of the Farm Business."  There was no arguable necessity for Millenkamp to invoke self-help measures, as the MSF provided abundant stock of bedding.  Furthermore, the self-help provisions are completely inapplicable to a re-design of an approved structure, i.e., neither the Ground Lease nor the Manure Supply Agreement provide Millenkamp with a unilateral right to redesign a structure that has already been approved and built.

29.     Indeed, EVD itself has the right at this point to self-help under Section 17.3 of the Ground Lease, which provides that in the event of Millenkamp's breach, "[EVD] shall have the

14

sf-6614999

right to cure any such [Millenkamp] default by engaging in reasonable self-help remedies, or take any other action with respect to the Project which is reasonably necessary or desirable for Tenant to ensure the operation of the Project in the ordinary course of business, and [EVD] shall be entitled to recover from [Millenkamp] any reasonable costs and expenses incurred."

## V.    CAUSES OF ACTION

### A.    Breach of Contract

30.    EVD hereby incorporates all foregoing paragraphs as though fully restated and set forth.

31.    A "controversy" has arisen between the Parties—as that term is used in § 30.2 of the Ground Lease and § 18.2.2 of the MSA—related to Millenkamp's breaches of the Ground Lease and MSA.  The Parties agreed to resolve such controversies in binding arbitration, utilizing the AAA's Commercial Arbitration Rules.  *See* Ground Lease, § 30.2; MSA § 18.2.2.

32.    EVD constructed the entire MSF, including the Header Manifold, according to the engineering plans that were approved by Millenkamp pursuant to the design approval provisions of the Ground Lease.  EVD had an Engineer of Record specializing in agricultural manure and biogas handling design the facility, including all areas of the Dewatering Building.  The Engineer of Record also approved of the design of the facility (i.e., provided their Professional Engineering stamp to the design drawings), as is required for engineering projects that have the potential to impact public health, safety, and property in Idaho.

33.    Before the instant dispute, the Header Manifold was operating as intended and the facility was producing ample bedding for the dairy.  Indeed, Millenkamp has not been able to keep up with the volume of bedding material already being produced by the MSF.

34.    Millenkamp unlawfully entered the Dewatering Building to engage in unilateral design changes to the Header Manifold, violating multiple OSHA regulations and voiding the

sf-6614999

warranty of workmanship on a portion of the MSF facility.  These unilateral modifications were

not permitted under the self-help provisions of the MSA or Ground Lease.

35.     Millenkamp changed the design of the Header Manifold without obtaining

approval from EVD of the Engineer of Record.  Millenkamp still has not provided any design

documents to EVD for the work performed in the Dewatering Building under the direction of

Millenkamp.  Millenkamp has no right under the Facility Agreements to make unilateral changes

to the design of the Manure Separation Facility.  Millenkamp's work has not been permitted or

verified as safe design by the Engineer of Record for the EVD facility, and has in fact voided the

warranty of workmanship on a substantial portion of the MSF.

36.     Millenkamp's unilateral changes the design of the Header Manifold violate

OSHA requirements and basic engineering standards.

37.     After EVD shut down the Dewatering Building pursuant to LOTO procedures,

Millenkamp cut the locks and entered the facility.  Millenkamp turned on the equipment that had

been turned off pursuant to EVD's LOTO procedures, violating OSHA standards.

38.     EVD placed new locks on the facility after Millenkamp's unauthorized access.

Millenkamp again cut the locks and took over operations at the Manure Separation Facility,

again violating OSHA standards.  Millenkamp has been unlawfully operating the Manure

Separation Facility since March 14.

39.     Millenkamp's changes to the Header Manifold, unlawful access of the MSF, and

assumption of the operations at the MSF are material breaches of the Facility Agreements.

40.     As a direct result of Millenkamp's breach, EVD has been damaged in an amount

to be proven in arbitration.

sf-6614999

### B.    Injunctive Relief

41.    EVD hereby incorporates all foregoing paragraphs as though fully restated and set forth.

42.    A "controversy" has arisen between the Parties, as that term is used in § 30.2 of the Ground Lease and § 18.2.2 of the MSA.

43.    AAA Rule 38 allows an arbitrator to take whatever interim measures he or she deems necessary, including injunctive relief and measures for the protection or conservation of property and disposition of perishable goods.

44.    AAA Rule 39 allows an emergency arbitrator to order interim measures for the protection or conservation of property and to grant interim measures in the form of an award or an order.

45.    Idaho Rules of Civil Procedure Rule 65 allows the court to issue a preliminary injunction on notice to the adverse party.

46.    EVD is a "person," as defined by Idaho Code section 10-1213, interested under a contract or contracts and are entitled to have a declaration of their rights, status, or other legal relations thereunder declared by the arbitrator.

47.    EVD constructed the entire MSF, including the Header Manifold, according to the engineering plans that were approved by Millenkamp pursuant to the design approval provisions of the Ground Lease.  EVD had an Engineer of Record specializing in agricultural manure and biogas handling design the facility, including all areas of the Dewatering Building.  The Engineer of Record also approved of the design of the facility (i.e., provided their Professional Engineering stamp to the design drawings), as is required for engineering projects that have the potential to impact public health, safety, and property in Idaho.

sf-6614999

48.     Before the instant dispute, the Header Manifold was operating as intended and the facility was producing ample bedding for the dairy.  Indeed, Millenkamp has not been able to keep up with the volume of bedding material already being produced by the Manure Separation Facility.

49.     Millenkamp unlawfully entered the Dewatering Building to engage in unilateral design changes to the Header Manifold.  These unilateral modifications were not permitted under the self-help provisions of the MSA or Ground Lease.

50.     Millenkamp changed the design of the Header Manifold without obtaining approval from EVD of the Engineer of Record.  Millenkamp still has not provided any design documents to EVD for the work performed in the Dewatering Building under the direction of Millenkamp.  Millenkamp has no right under the Facility Agreements to make unilateral changes to the design of the Manure Separation Facility.  Millenkamp's work has not been permitted or verified as safe design by the Engineer of Record for the EVD facility, and has in fact voided the warranty of workmanship on a substantial portion of the MSF.

51.     Millenkamp's unilateral changes the design of the Header Manifold violate OSHA requirements and basic engineering standards.

52.     After EVD shut down the Dewatering Building pursuant to LOTO procedures, Millenkamp cut the locks and entered the facility.  Millenkamp turned on the equipment that had been turned off pursuant to EVD's LOTO, violating OSHA standards.

53.     EVD placed new locks on the facility after Millenkamp's unauthorized access.  Millenkamp again cut the locks and took over operations at the Manure Separation Facility, again violating OSHA standards.  Millenkamp has been unlawfully operating the MSF since March 14.

18

sf-6614999

54.    On March 19, 2025, Millenkamp demanded that EVD resume operations at the unsafe MSF, or Millenkamp would treat the MSA and Ground Lease as terminated.

55.    EVD holds the explicit right to perform self-help measures as may be necessary to cure a breach by Millenkamp.

56.    So that EVD can safely resume operations at the MSF, EVD requests entry of an award enjoining Millenkamp from interfering with EVD's ability to evaluate the safety of the MSF and to take such action as may be necessary to return it to safe operation (including for example reworking the Header Manifold in accordance with a design approved by the project's Engineer of Record, should that be necessary). EVD further requests an award declaring that EVD is entitled to exercise its right to self-help under Section 17.3 of the Ground Lease, providing that "to the extent that any such Landlord default materially and adversely affects the operations of the Project, Tenant [EVD] shall have the right to cure any such Landlord default by engaging in reasonable self-help remedies, or take any other action with respect to the Project which is reasonably necessary or desirable for Tenant to ensure the operation of the Project in the ordinary course of business."

## VI.    PRAYER FOR RELIEF

EVD prays for relief as follows:

57.    That the Arbitrator find for EVD on each and every cause of action in this Demand for Arbitration and afford EVD the relief sought in each cause of action;

58.    For immediate injunctive relief as requested above;

59.    For an award of EVD's costs and attorney's fees; and

60.    For such other and further relief as the arbitrator deems just and appropriate under the circumstances.

sf-6614999

Dated: _____, 2025    MORRISON & FOERSTER LLP

By: _____

　　Gregory B. Koltun
　　Alexandra Preece Barlow
　　Rachel A. Kaiser

　　*Attorneys for Claimant*
　　EAST VALLEY DEVELOPMENT, LLC

(***Proposed Exhibits Omitted***)