UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

IN RE:

MILLENKAMP CATTLE, INC.,

     Debtor.

Case No. 24-40158-NGH

Filing relates to:

☒  ALL DEBTORS

☐  Millenkamp Cattle, Inc.

☐  Idaho Jersey Girls

☐  East Valley Cattle

☐  Millenkamp Properties

☐  Millenkamp Properties II

☐  Millenkamp Family

☐  Goose Ranch

☐  Black Pine Cattle

☐  Millenkamp Enterprises

☐  Idaho Jersey Girls Jerome Dairy

Jointly Administered With
Case Nos.:

24-40159-NGH (Idaho Jersey Girls)
24-40160-NGH (East Valley Cattle)
24-40161-NGH (Millenkamp Properties)
24-40162-NGH (Millenkamp Properties II)
24-40163-NGH (Millenkamp Family)
24-40164-NGH (Goose Ranch)
24-40166-NGH (Black Pine Cattle)
24-40167-NGH (Millenkamp Enterprises)
24-40165-NGH (Idaho Jersey Girls
               Jerome Dairy)

Chapter 11 Cases

## MEMORANDUM OF DECISION

**INTRODUCTION**

Before the Court is the Final Application of O'Melveny & Myers LLP ("OMM")

for Allowance and Payment of Compensation and Reimbursement of Expenses ("Fee

Application").  Doc. No. 1506.  Two objections to the Fee Application were filed: first by

MEMORANDUM OF DECISION - 1

the United States Trustee ("UST"), Doc. No. 930 (objecting to interim fee application); Doc. No. 1521 (objecting to final fee application), and second by Creditor Land View, Inc. ("Creditor"), Doc. No. 1522.  OMM filed a response to Creditor's objection.  Doc. No. 1563.

Following several hearings, the Court took the matter under advisement. However, noting shortcomings and inconsistencies in the filings, on March 23, 2026, the Court entered an order requiring supplementation of the record.  Doc. No. 1643. Pursuant to the order, both OMM and the debtors were required to clarify the amount the debtors have already paid to OMM, and OMM was asked to provide a more detailed itemization to support its request for expenses.  On April 6, 2026, the supplemental responses were filed.  Doc. Nos. 1662 and 1663.  Having now considered the record before it, this decision constitutes the Court's findings of fact and conclusions of law in accordance with Rules 7052 and 9014.[1]

**RELEVANT FACTS**

The various debtor entities associated with the Millenkamp dairy, farming, and cattle operations filed petitions under chapter 11 of the Bankruptcy Code on April 2, 2024, and those cases were jointly administered under *In re Millenkamp Cattle, Inc.*, 24-40158-NGH.  On May 14, 2024, the UST appointed an official committee of unsecured creditors pursuant to 11 U.S.C. § 1102(a) (the "Committee"), Doc. No. 297, after which OMM filed an application for employment as counsel for the Committee, Doc. No. 335.

---

[1] Unless otherwise indicated, all statutory citations are to the Bankruptcy Code, Title 11 U.S.C. §§ 101–1532, and all citations to "Rule" are to the Federal Rules of Bankruptcy Procedure.

MEMORANDUM OF DECISION - 2

On July 22, 2024, the Court approved OMM's application to serve as lead counsel for the Committee pursuant to § 327 and indicated any award of compensation would be governed by § 330.  Doc. No. 513.

On October 16, 2025, OMM filed its final Fee Application.  The Court conducted a hearing on November 13, 2025, which was continued to December 11, 2025.  In the interim, OMM and the UST reached an agreement by which OMM agreed to reduce the fees requested by $125,000, attributable to a $75,000 reduction for work performed in connection with investigating liens and a $50,000 reduction to address the instances of overstaffing, where more than one attorney participated in hearings or meetings.  Doc. No. 1554.  Moreover, on the day prior to the continued hearing, OMM and Creditor reached an agreement by which OMM would further reduce its fees by $100,000, thereby resolving Creditor's objections to the Fee Application.  Doc. No. 1571.  At the hearing on December 11, 2025, the Court requested more detailed briefing from OMM and set a continued hearing.  A supplement to the Fee Application was filed, Doc. No. 1601, and following the January 22, 2026, continued hearing, the matter was taken under advisement.

Pursuant to the Fee Application, OMM sought an order allowing $1,385,637.05 in total fees and $36,244.91 in total expenses.  Doc. No. 1506.  After deducting the voluntary reductions according to the agreements made with the UST and the Creditor, OMM's total fee request was $1,160,637.02.  Of that amount, OMM asserts that it has been paid $838,041.07 in fees and $23,935.24 in expenses.  *See* Doc. Nos. 585, 660, 893 (covering 637, 694, 745, and 831), 974, 1154 (covering 873, 925, 1008, and 1151), 1279,

MEMORANDUM OF DECISION - 3

1331, 1389, 1420, 1443, 1506, and 1663.  Following the supplementation filed on April

6, 2026, OMM now seeks payment of the outstanding balance in the amount of

$322,595.95 in fees[2] and $12,295.07 in expenses[3] for a total of $334,891.02.

**ANALYSIS**

A.      **Standards for Compensation**

The Court has a duty to review fee applications, including those from counsel to

the unsecured creditors' committee, and to award only reasonable compensation.  The

Court may award less than the amount requested.  11 U.S.C. § 330(a)(2).  Fees awarded

under § 330(a) are administrative expenses paid from the bankruptcy estate ahead of most

unsecured creditor claims.  11 U.S.C. §§ 503(b), 507(a).  This priority has real

consequences for creditors.  In cases where the estate lacks sufficient assets to pay all

claims in full, attorney fee awards directly reduce the funds available for distribution to

unsecured creditors.  Even in cases where full payment of all claims is anticipated,

administrative expenses must be satisfied first, meaning that every dollar awarded in

attorney fees can delay distributions to most unsecured creditors.

Under § 330(a)(1), a professional employed pursuant to § 327(a) may be awarded

reasonable compensation for actual, necessary services rendered by the professional and

any paraprofessional staff, as well as reimbursement for actual, necessary expenses.  In

---

[2] $1,385,637.05 - $125,000 - $100,000 - $838,041.07 = $322,595.95.

[3] OMM voluntarily reduced its expense request by $14.60 due to an erroneous PACER charge,
Doc. No. 1663 at n.3, resulting in a request for expenses totaling $36,230.31 - $23,935.24 = $12,295.07.

MEMORANDUM OF DECISION - 4

determining reasonable compensation, the Court must consider "the nature, the extent, and the value of such services, taking into account all relevant factors," including:

> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

§ 330(a)(3).  Moreover, the Court cannot allow compensation for unnecessary duplication of services or those not reasonably likely to benefit the estate or necessary for administration of the case.  *See* § 330(a)(4)(A).

The burden rests on the applicant to demonstrate that the fees requested are reasonable.  *In re Gilsvik*, 673 B.R. 745, 751 (9th Cir. BAP 2025) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).  Relevant evidence of reasonableness includes proof that the requested rates are consistent with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *Id.* at 751–52 (citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).  The Court may also consider fees awarded in similar cases in the same locality and may rely on its own knowledge of customary rates and experience with reasonable fees.  *Id.* at 751 (quoting *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011)); *In re Thueson*, No. 4-08-BK-

MEMORANDUM OF DECISION - 5

10121-JMM, 2009 WL 1076888, at *14 (Bankr. D. Ariz. Mar. 12, 2009) (stating "a court may utilize its own knowledge of, and experience with, market rates and fees charged in comparable cases as a guide").

### B.    Local v. National Rates

In determining whether an applicant's fees are reasonable, courts consider fees awarded in similar cases in the same locality.  Since the fees at issue in this case were incurred in a bankruptcy case filed in the District of Idaho, the entire district would be the applicable market area for determining reasonable fees.  *Holland & Hart, LLP v. Oversight Comm. Under Confirmed Plan of Liquidation (In re Hopkins Nw. Fund, LLC)*, 567 B.R. 590, 592 (Bankr. D. Idaho 2017).  In support of its fees, however, OMM relies in large part on rates approved in bankruptcy cases outside the district, and many outside the Ninth Circuit.  OMM argues the size and complexity of this bankruptcy case justifies the expansion of the applicable market area.  Thus, the Court must first determine whether the applicable market area should be expanded beyond the District of Idaho.

OMM argues that in unusual circumstances, attorneys should be allowed to charge fees based on the rates they would typically charge in their normal areas of practice.  *In re Frontier Airlines, Inc.*, 74 B.R. 973, 977 (Bankr. D. Colo. 1987); *Ramos v. Lamm*, 713 F.2d 546 (10th Cir. 1983).  An award of fees is generally based on the "lodestar" formula, which utilizes the number of hours reasonably expended multiplied by the applicable hourly market rate for legal services.  *See Hensley v. Eckerhart*, 461 U.S. 424 (1983); *Blum v. Stenson*, 465 U.S. 886 (1984).  In the Ninth Circuit, a reasonable hourly rate multiplied by the number of hours actually and reasonably expended, is presumptively a

MEMORANDUM OF DECISION - 6

reasonable fee in a bankruptcy case.  *Burgess v. Klenske (In re Manoa Fin. Co.)*, 853

F.2d 687, 691–92 (9th Cir. 1988).

Under the lodestar formula, the applicable market rate is generally the forum in

which the trial court sits.  *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997) (citing

*Davis v. Mason County*, 927 F.2d 1473, 1488 (9th Cir.1991)).  Rates outside the forum

may be used, however, "if local counsel was unavailable, either because they are

unwilling or unable to perform because they lack the degree of experience, expertise, or

specialization required to handle properly the case." *Id*. (citation modified).

OMM contends that this bankruptcy case was larger and more complex than most

cases filed in the District of Idaho.  As discussed below, the Court agrees.  Nevertheless,

OMM presented no evidence that local counsel was unwilling or unable to serve as

counsel for the Committee.[4]  Without such evidence, the Court is unable to find that the

relevant market rate should extend beyond the District of Idaho.

### C.        Reasonableness Analysis

Turning to the factors set forth in § 330(a)(3), the Court's analysis focuses on

three of those factors: the time spent, the rates charged, and the overall reasonableness of

the compensation requested compared to similarly skilled counsel in comparable

bankruptcy cases.  The Court does not dispute that OMM's attorneys are experienced

---

[4] The hearing on OMM's fee application was continued from December 11, 2025 to January 22, 2026 to allow OMM to submit additional briefing and declarations in support of its application.  At the December 11 hearing, the Court also offered OMM the option of an in-person evidentiary hearing.  OMM did not request an evidentiary hearing but did submit supplemental briefing and a supporting declaration. *See* Doc. No. 1601.

MEMORANDUM OF DECISION - 7

bankruptcy practitioners or that their services benefited the Committee and contributed to plan confirmation.

### 1. Time Spent

The Court and the UST both had concerns about two aspects of OMM's fee request: (1) the time spent investigating liens and lien perfection issues, and (2) duplicative staffing, including multiple attorneys attending weekly calls with debtors' counsel and the Committee, as well as hearings. To resolve the UST's objections on both issues, OMM agreed to reduce its fee request by a total of $125,000, consisting of $75,000 for the lien work and $50,000 for the duplicative efforts. Although OMM's invoices reflect at least $210,158 billed for lien-related work alone, the Court will not impose further reductions for either issue beyond what OMM has already conceded.

### 2. Rates charged and overall reasonableness

The Court now considers the reasonableness of OMM's hourly rates, as required by § 330(a). OMM requests the following rates:

Partners and counsel: $1,155 – $1,595
Associates: $760 – $1,215
Summer associates: $370
Paralegals: $510
Other paraprofessionals: $230 – $415

As previously noted, this Court measures reasonable hourly rates against the prevailing market rates in the District of Idaho. By that standard, the hourly rates requested by OMM and the professional staff are not in accord with the market rate for this legal community.

MEMORANDUM OF DECISION - 8

The Ninth Circuit has recognized that determining an appropriate market rate for the services of a lawyer can be inherently difficult. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). A reasonable rate should account for the lawyer's experience, skill, and reputation, as well as the rates awarded in the legal community in which the Court sits. *Id.* In evaluating hourly rates, the Court may consider declarations regarding fees in the community, hourly rates paid in other cases, and a court may utilize its own knowledge of, and experience with, market rates and fees charged in comparable cases as a guide. Here, OMM declined to provide any declarations detailing fees typically charged in the district. Neither did OMM identify the hourly rates approved in other cases in the District of Idaho. Thus, despite holding the burden of demonstrating that its requested fees are reasonable, OMM provided this Court little evidence on which to make that determination.

Drawing on its own knowledge of and experience with rates charged in District of Idaho bankruptcy cases, the Court finds that reasonable market rates are $200 to $475 per hour for attorneys, and $75 to $190 per hour for paralegals. These amounts are consistent with rates approved in non-bankruptcy cases in this district. *See SBP LLLP v. Hoffman Constr. Co. of Am.*, No. 1:19-CV-00266-DCN, 2025 WL 959517, at *5 (D. Idaho Mar. 31, 2025) (reducing a Washington attorney's rate from $575 to $460 per hour, notwithstanding more than 40 years of experience); *J.R. Simplot Co. v. McCain Foods USA, Inc.*, 713 F. Supp. 3d 904, 983 (D. Idaho 2024) (noting that rates above $400 per hour for attorneys and $170 per hour for paralegals would not be unreasonable, but declining to entertain requests that "amount to double or triple the applicable Boise

MEMORANDUM OF DECISION - 9

rates."); *Composite Res., Inc. v. Rood*, No. 2:21-CV-00500-BLW, 2023 WL 2354831, at *4–7 (D. Idaho Mar. 3, 2023) (reducing an out-of-state attorney's rate of $650–$705 to $450 to reflect Boise market rates and reducing the paralegal rate to $175 per hour); *F.V. v. Jeppesen*, No. 1:17-CV-00170-CWD, 2022 WL 2150052, at *8 (D. Idaho June 8, 2022) (reducing a California attorney's rate of $650-$675 per hour to $410 per hour); *Dickinson Frozen Foods, Inc. v. FPS Food Process Sols. Corp.*, 2021 WL 2444157, at *15–16 (D. Idaho June 15, 2021) (awarding a newer partner $330 per hour and finding $190 per hour was reasonable for paralegals).

In its objection to the Fee Application, Creditor expressed trepidation about the billing rates of OMM attorneys, and the Court shares that concern.  In fact, the Court expressed its uneasiness with the proposed billing rates at the time OMM was appointed and several times since.  During this bankruptcy case, the lead attorneys and paraprofessionals for OMM[5] charged the following rates:

| Professional | Hourly Rate 2024 and Balance of 2025 | Hourly Rate Q1 2025 |
|---|---|---|
| **Partner** | | |
| Matthew P. Kremer | $ 1,405.00 | $ 1,575.00 |
| Julian Gurule | $ 1,385.00 | $ 1,595.00 |
| **Counsel** | | |
| Gabriel L. Olivera | $ 1,265.00 | $ 1,375.00 |
| **Associate** | | |
| Nicole Molner | $ 1,070.00 | $ 1,215.00 |
| Declan P. Kelly | $ 1,070.00 | $ 1,215.00 |

---

[5] The invoices reflect the involvement of numerous other professionals, including partners, associates, paralegals, summer associates, a "librarian," and a "project assistant" who worked on this case.  Doc. No. 1506.

MEMORANDUM OF DECISION - 10

| Paralegal | | |
|---|---|---|
| Lake Grey | $ | 510.00 |
| Regina Braman | $ | 510.00 |

In contrast, Krystal R. Mikkilineni, counsel for the debtors based in Des Moines, charged an hourly rate of $415, Doc. No. 933, while Matthew Christensen, debtors' counsel in Boise, billed at $450 per hour and his paralegal charged $150 per hour, Doc. No. 1447.  By comparison, much of OMM's counsel charged more than three times what debtors' counsel did.  Notably, OMM's paralegals billed at a higher hourly rate than either of the debtors' attorneys.

The Court acknowledges that rates in New York and Los Angeles, where OMM's attorneys are based, are generally higher than those in the District of Idaho.  Even so, it bears emphasis that debtors' counsel carries a significantly broader and more complex role than Committee's counsel.  By virtue of who they represent and the nature of that representation, debtors' attorneys must navigate a wider range of issues, including more complicated ones, than counsel for the Committee.  That OMM's rates so dramatically exceed those of debtors' counsel is therefore difficult to justify on the basis of complexity or responsibility alone.

During the final hearing on the Fee Application, counsel for OMM argued that the position of the Committee in the case was most akin to that of creditor Conterra Holdings, LLC ("Conterra").  In considering the claims at stake in the case, Conterra's claims were larger than those of the UCC members combined, yet the fees charged in this case by Conterra's counsel, John O'Brien, at their highest are just over half what OMM's lead partner, Matthew P. Kremer, charged.  As of November 13, 2025, Conterra's proofs

MEMORANDUM OF DECISION - 11

of claim showed debts owing in the amounts of $3,483,212.90 and $23,560,389.68.

Claims Reg. Nos. 18-2 and 19-2.  In contrast, the five members of the Committee filed

proofs of claim in the following amounts, totaling $13,690,199.17:

   J.D. Heiskell Holding, LLC: $619,291.96 (Claims Reg. No. 89-1)
   Wilbur Ellis Nutrition, LLC: $591,860.48 (Claims Reg. No. 69-2)
   Bunge Canada: $1,159,843.85 (Claims Reg. No. 80-1)
   Viterra USA Grain, LLC: $2,042,848.90 (Claims Reg. No. 34-1)
   Land View, Inc.: $9,276,353.98 (Claims Reg. No. 31-2)

In 2024, Mr. O'Brien's hourly rate was $745, and in 2025 his hourly rate was

$795.  Claims Reg. Nos. 18-2 at 19; 19-2 at 24.  He is based out of Denver with the firm

Spencer Fane.  Spencer Fane's paralegal billed for their work at a rate of $300 per hour in

2024 and $360 in 2025.  *Id*.

In short, although this is a large and complex case, especially for this District,

other counsel, including those from other areas, did not charge fees anywhere near the

same tier as OMM, and in fact charged rates that were approximately half what OMM's

counsel charged, or less.  While especially large and complex cases may warrant

approving hourly rates above the community average, the Court has discretion in doing

so.  *Hopkins Nw. Fund, LLC*, 567 B.R. at 596 (the court may consider the "overall size

and complexity of a case" when determining the reasonableness of a firm's rates and

approve rates higher than those charged in the community).

The Court cannot find that OMM's rates are reasonable in this district, even in a

large case such as this one and where the various parties spanned the country.  Moreover,

the Court concludes OMM's requested compensation is not wholly reasonable in light of

MEMORANDUM OF DECISION - 12

the role it played.  This is not to suggest the claims of the Committee or the role of its counsel were unimportant or insignificant.  Far from it.  However, from the outset the debtors expressed their intention to pay all unsecured creditors in full.  OMM had only to carefully monitor and protect that assertion.  Its role took on greater significance when it came to creditor Rabo Agrifinance's competing "toggle" plan, which had the potential to seriously impact the rights of unsecured creditors if certain scenarios came to fruition.  Nevertheless, the heavy lifting to adapt and modify debtors' plan was done by debtors' counsel along with Rabo Agrifinance and its counsel, leaving the Committee somewhat on the sidelines to monitor the discussions in order to protect the interests of the Committee's members.  As such, it is not appropriate for OMM to bill so many hours at such high rates.

This was also not a case that required the Committee to investigate prepetition transactions between the debtors and their insiders, assess potential causes of action against the insiders, or evaluate avoidance actions under §§ 544, 547, or 548.  Nor was the Committee called upon to seek Court approval to pursue such actions on the estate's behalf.  In short, the debtors' consistent commitment to repaying unsecured creditors in full simplified the issues the Committee needed to address.

Finally, OMM argues that its fees fell within the debtors' monthly cash collateral budget, citing this as evidence of reasonableness.  The Court disagrees.  Whether fees fit within a budgeted amount is simply not relevant to the § 330(a) reasonableness analysis and carries little persuasive weight.

MEMORANDUM OF DECISION - 13

Considering the market hourly rate for the District of Idaho and adjusting that rate upwards to reflect the complexity of this case, the Court concludes an award of fees closer to what Conterra's counsel charges is appropriate under the circumstances. To this end, the Court has determined a reduction in the rates of each professional will be imposed as set forth in the chart below. Attorney hourly rates vary based on years of experience. The Court considers an award of fees in this range to be a concession to the size and complexity of this case, and an outlier when compared to most other bankruptcy and non-bankruptcy cases filed in this district.

| Professional | Years in Practice | Hourly Rate | Hours Billed | Total Billed |
|---|---|---|---|---|
| **Partner** | | | | |
| Matthew P. Kremer | 12 | $775.00 | 267.3 | $207,157.50 |
| Matthew P. Kremer (1/2) | | $387.50 | 6.0 | $2,325.00 |
| Julian Gurule | 18 | $785.00 | 139.5 | $109,507.50 |
| Julian Gurule (1/2) | | $392.50 | 4.4 | $1,727.00 |
| Tim Evans | 25 | $790.00 | 15.1 | $11,929.00 |
| Ryan Cicero | 14 | $775.00 | 3.5 | $2,712.50 |
| **Counsel** | | | | |
| Gabriel L. Olivera | 12 | $725.00 | 452.6 | $328,135.00 |
| Zach Smith | 6 | $450.00 | 9.4 | $4,230.00 |
| **Associate** | | | | |
| Nicole Molner | 4 | $400.00 | 242.2 | $96,880.00 |
| Declan P. Kelly | 4 | $400.00 | 95.4 | $38,160.00 |
| Hattie McKinney | 2 | $350.00 | 28.2 | $9,870.00 |
| Daniel W. Leal | 2 | $350.00 | 27.6 | $9,660.00 |
| Sean Milde | 2 | $350.00 | 21.7 | $7,595.00 |
| Austin Damiani | Summer Associate | $100.00 | 6.0 | $600.00 |
| Gavin Reece Barrett | Summer Associate | $100.00 | 3.6 | $360.00 |
| **Paraprofessionals** | | | | |
| Lake Grey | Paralegal | $275.00 | 15.8 | $4,345.00 |
| Regina Braman | Paralegal | $275.00 | 9.2 | $2,530.00 |
| Christine A. Davis | Librarian | $175.00 | 3.0 | $525.00 |
| Alexander Roti | Practice Assistant | $100.00 | 1.5 | $150.00 |

MEMORANDUM OF DECISION - 14

| Grand Total | 1,352.0[6] | $838,398.50 |
|---|---|---|
| Blended Rate | | $620.12 |

The Court is mindful that OMM agreed to reduce its fees by $100,000 in response to Creditor's objection, which was specifically targeted at the reasonableness of OMM's billing rates. OMM also reduced its first quarter 2025 invoices by $23,697.56 to negate an automatic rate increase implemented by the firm. The Court will not apply these two reductions separately since they are subsumed by the reductions imposed by the Court above. In other words, because the Court is recalculating fees from scratch using new rates, any prior voluntary adjustments to invoiced amounts are already reflected in the new totals. Finally, to resolve the objection by the UST, OMM voluntarily reduced its requested fees by $125,000 to account for the UST's concerns regarding OMM's robust lien work and duplicative billings. The Court is aware that OMM agreed to such reduction when its blended rate in this case totaled $1,024 per hour. OMM's original blended rate of $1,024 was reduced to $620.12, a reduction of approximately 39.4%; applying that same percentage to the $125,000 agreed reduction yields a separate reduction totaling $75,698.24.

---

[6] The Court started its table utilizing the hours billed from Exhibit A, a summary sheet, attached to the Final Application of O'Melveny & Myers LLP for Allowance and Payment of Compensation and Reimbursement of Expenses. (Doc. No. 1506). However, the hours listed in the summary sheet added up to 1,355 even though the summary sheet listed 1,352 hours as the grand total. After reviewing the underlying, itemized billing statements, the Court found the 3-hour difference and adjusted the chart accordingly. Thus, the hours for Matthew P. Kremer, which were mistakenly listed as 270.7 were decreased in the Court's table to 267.3, and the hours for Julian Gurule, which were mistakenly listed as 139.1, were increased to 139.5.

MEMORANDUM OF DECISION - 15

Finally, while the Court takes issue with specific time entries, such as those billed by summer associates, librarians, and project managers, as well as other excessive billing that is not reasonably borne by a bankruptcy debtor, the Court finds the overall reduction in fees is sufficient to address those items. As such, the Court will forego a line-item approach to scrutinizing OMM's invoices in this decision.

Given the foregoing, the figures are calculated as follows:

| | |
|---|---|
| Total OMM fees billed at $620.12 blended rate: | $838,398.50 |
| Modified Deduction via agreement with UST: | -$75,698.24 |
| Total fees allowed: | $762,700.26 |

Debtor has already paid OMM $838,041.07 and therefore has overpaid fees in the amount of $75,340.81.

### 3.    Costs and Expenses

The Court will now turn to OMM's request for costs and expenses. As noted above, OMM seeks approval of a total of $36,230.31 in expenses, asserting $23,935.24 has already been received from the debtor. Upon review of the Itemized Cost and Expense Sheet, Doc. No. 1663-1, the Court finds the printing and the travel expenses are reasonable, and they will be approved.

The Court will now discuss items that bear closer scrutiny. During the interim approval process, the UST objected to the expenses associated with "online research," "document production," and "other professionals." *See* Doc. No. 930 at 10-11. The Court similarly questions these charges. While the supplementation provided little additional detail to support these charges, it is now clear that the category of "online

MEMORANDUM OF DECISION - 16

research" applies to not only PACER charges but also to legal research through Westlaw or Lexis-Nexis, and the "other professionals" category apparently corresponds to work provided by "CT Lien Solutions." Finally, under the category of "document production" are apparently costs for "Text Editing/Proofreading." The Court will consider each of these expense requests in turn.

Concerning the PACER charges, the Court finds these are reasonable. Connected with this case were a number of individual bankruptcy cases and adversary proceedings in which OMM was not employed as counsel and therefore the firm would not have been able to take advantage of PACER's "one free look" policy available to litigants appearing in a particular case. As such, the PACER charges will be approved as reasonable costs.

The Westlaw and Lexis-Nexis charges, totaling $7,627.16, present a closer question. Doc. 1663-1. While some courts have permitted the recovery of online legal research expenses as costs, others have found them to be more akin to overhead and therefore included within the hourly fees charged.

> Some courts flatly disallow online legal research expenses under § 330. *In re King*, 546 B.R. 682, 734 (Bankr. S.D. Tex. 2016) (allowing charges for online legal research would represent double-billing, as such amounts are factored into the hourly rates of the professionals); *In re Digerati Technologies, Inc.*, 537 B.R. 317, 364 (Bankr. S.D. Tex. 2015) (finding online legal research as a cost that is "reflected in an attorney's billing rate and is therefore subsumed into attorneys' fees."); *In re Bob's Supermarkets, Inc.*, 146 B.R. 20, 23 (Bankr. D. Mont. 1992) (finding Lexis charges akin to overhead and the costs of maintaining a library)[7]; *In re Bicoastal Corp.*, 121 B.R. 653, 656 (Bankr. M.D. Fla. 1990) ("[T]o accept the proposition that Lexis charges or any other computer research charges are compensable, one should also then conclude that the cost of acquisition of the lawyer's library

---

[7] Since the *Bob's Supermarkets* decision, Montana has enacted a local rule allowing as an expense the actual cost of computerized legal research. *See* Mont. LBR 2016-1(e).

MEMORANDUM OF DECISION - 17

and the cost of maintaining the library . . . would also be compensable."). *But see In re Hillsborough Holdings Corp.*, 127 F.3d 1398, 1404 (11th Cir. 1997) (reversing the bankruptcy court's decision at the outset of the case that several categories of expenses including legal research were non-compensable because they were overhead costs, without considering evidence as to the usual billing practices of the attorneys involved or those of other comparable attorneys).

Other courts have found that online research expenses may be reimbursable under limited circumstances. *In re Cmty. Home Fin. Servs, Inc.*, No. 1201703EE, 2015 WL 6511183, at *28 (Bankr. S.D. Miss. Oct. 27, 2015); *In re McKenzie*, 460 B.R. 181, 187 (Bankr. E.D. Tenn. 2011); *In re Fibermark, Inc.*, No. 04-10463, 2004 WL 2418317, at *5 (Bankr. D. Ver. Oct. 22, 2004); *In re Drexel Burnham Lambert Group, Inc.*, 133 B.R. 13, 32 (Bankr. S.D.N.Y. 1991); *Leonard Jed Co.*, 103 B.R. at 712. In *Fibermark*, the court crafted a three part standard that requires the applicant to (1) show the use charges incurred were reasonable and necessary (including a description of the research topic and the length of time spent on each topic); (2) affirm that the applicant bills its non-bankruptcy clients for computer assisted legal research, including the rate at which it bills such clients; and (3) certify the invoiced cost from the vendor. *Fibermark*, 2004 WL 2418317, at *5. The court in *Community Home* specifically adopted the *Fibermark* three-part standard. *Community Home*, 2015 WL 6511183, at *28. In *McKenzie*, the court considered whether (1) the expense was actually incurred; (2) the applicant customarily charges its clients separately for such research; and (3) the amount of the charges is reasonable. In support of the application in *McKenzie*, the applicant testified as to how the firm charged its clients for computer assisted legal research. 460 B.R. at 186.

*In re ASCO Liquidating Co.*, 611 B.R. 245, 249–50 (Bankr. M.D.N.C. 2019).  As the

Seventh Circuit explained:

The added cost of computerized research is normally matched with a corresponding reduction in the amount of time an attorney must spend researching. Therefore, we see no difference between a situation where an attorney researches manually and bills only the time spent and a situation where the attorney does the research on a computer and bills for both the time and the computer fee. In both cases the total costs are attorney's fees and may not be recovered as "costs."

MEMORANDUM OF DECISION - 18

*Haroco, Inc. v. Am. Nat. Bank & Trust Co. of Chicago*, 38 F.3d 1429, 1440–41 (7th Cir. 1994). As such, the panel in *Haroco* held that the Westlaw fees were already factored into the hourly rates of the employed professionals, and that to award those fees as reimbursable expenses would result in double-counting, which is unreasonable.

This Court has considered the costs of computerized legal research when awarding fees under Idaho Code § 12-120 and the Idaho Rules of Civil Procedure in cases where state law governs the substantive issues before the court. Specifically, Idaho Rule of Civil Procedure 54(e)(3)(K) requires the court to consider "the reasonable cost of automated legal research (Computer Assisted Legal Research), if the court finds it was reasonably necessary in preparing a party's case." However, it is noteworthy that this expense is to be considered in the context of the amount of *attorney's fees*, and not as a separate cost item.

Similarly, this Court's Local Bankruptcy Rules do not include computer assisted legal research as a cost item. *Kilborn v. Haun (In re Haun)*, 396 B.R. 522, 535 n.28 (Bankr. D. Idaho 2008) (sustaining objection to charges for computerized legal research in an exception to discharge case in part because costs incurred doing legal research are not listed as taxable costs under LBR 7054-1(c)); *High Country Bed & Breakfast, Inc. v. AMRESCO Indep. Funding, Inc. (In re High Country Bed & Breakfast, Inc.),* 02.2 I.B.C.R. 89, 90 (Bankr. D. Idaho 2002) (noting that Westlaw research is not a cost allowable under LBR 7054-1). Finally, this Court noted that "as the modern-day equivalent of a law firm's library, it is hard to see how routine online legal research should not simply be one component of a firm's hourly rates." *Beach v. Wells Fargo*

MEMORANDUM OF DECISION - 19

*Bank, NA (In re Beach)*, Case No. 10-8114-JDP, 2011 WL 4963003, at *8 (Bankr. D. Idaho Oct. 19, 2011).

Having considered the case law, the approach taken in the Idaho Rules of Civil Procedure, as well as this Court's local bankruptcy rules, the Court concludes charges for computerized legal research such as Westlaw or Lexis-Nexis are not compensable as costs. Rather, those expenses are part of a law firm's overhead and included in an attorney's hourly rate. As such, the Court concludes the $7,627.16 in Westlaw and Lexis-Nexis charges cannot be claimed or paid as costs, and those charges will be disallowed.

Next, the Court will consider the issue of OMM's request to compensate "other professionals" via an expense to be borne by the debtors. A careful review of OMM's expense sheet suggests the costs associated with "CT Lien Solutions" fall into this category. There are two entries for CT Lien Solutions: the first is for $2,301 on June 12, 2024, and the second is for $7,804.81 on October 4, 2024. The "cost type" for both entries is labeled as "Other Professional Services." It is understandable that OMM does not seek to have those expenses paid pursuant to § 330(a)(1)(A), because CT Lien Solutions was never employed as an estate professional under § 327(a). Rather, OMM seeks reimbursement as costs under § 330(a)(1)(B).

Here, the UST has already questioned the necessity of OMM's investigation into liens on the debtors' property, and the Court has echoed that concern. Nevertheless, it is not unreasonable for OMM to obtain copies of the various liens securing those creditors ahead in priority of the Committee members. While extensive lien work was not justified

MEMORANDUM OF DECISION - 20

given the purpose for which the Committee was established and its counsel employed, which is to ensure the Committee's members received payment in full through the debtors' chapter 11 plan on as favorable terms as possible, a review of the liens is not beyond the mark, and obtaining copies of those liens is necessary to undertake that task.

Accordingly, the $10,105.81 in expenses sought by OMM for its use of CT Lien Solutions is reasonable and compensable as a cost to be paid by the debtors.

Finally, the Court will disallow the charges for "TEXT EDITING / PROOFREADING" listed on the itemized expense sheet as follows:

| | |
|---|---|
| August 13, 2024 | $145.80 |
| September 17, 2024 | $ 23.40 |
| September 17, 2024 | $ 83.70 |
| January 14, 2025 | $ 20.25 |
| Total | $273.15 |

The Court can find nothing in the record to explain how this is somehow a reimbursable cost as opposed to merely a service encapsulated in the hours and fees charged by attorneys and other professionals at OMM.

Based upon the foregoing analysis, the Court's calculation is rendered as follows:

| | |
|---|---|
| Total costs sought: | $36,230.31 |
| Disallowed Westlaw/Lexis-Nexis charges: | -$7,627.16 |
| Disallowed Text Editing/Proofreading charges: | -$273.15 |
| Total costs and expenses allowed: | $28,330.00 |

As the debtor has already paid $23,935.24 to OMM, the balance owed to OMM by the debtor is $4,394.76.

MEMORANDUM OF DECISION - 21

**CONCLUSION**

Pursuant to the Court's duty under § 330 to assure the reasonableness of professional fees to be paid by a debtor in bankruptcy, the Court has reviewed the invoices submitted by OMM in detail and has determined that the hours and rates sought are not supported by the circumstances of this case. Accordingly, the Court will reduce the hourly fees to more closely align the fee award with what is reasonable in a case such as this in the District of Idaho. Additionally, the Court finds certain of the costs and expenses to be unreasonable.

OMM will be allowed total fees of $762,700.26 and expenses in the amount of $28,330. As such, according to the Court's calculation, debtor has overpaid OMM for attorney fees in the amount of $75,340.81 but owes a balance of $4,394.76 in costs, resulting in a total overpayment of $70,946.05.

A separate order will be entered.

DATED: April 27, 2026

_____
NOAH G. HILLEN
Chief U.S. Bankruptcy Judge

MEMORANDUM OF DECISION - 22